ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
DOMINIC LANZA (Cal. Bar No. 225989, dominic.lanza@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-18-00422-PHX-SPL (BSB) |
|---|---|
| Plaintiff, | **UNITED STATES' MOTION TO DISQUALIFY COUNSEL** |
| v. | |
| 1.  Michael Lacey, and | |
| 2.  James Larkin, | |
| Defendants. | |

## INTRODUCTION AND SUMMARY OF ARGUMENT

Carl Ferrer, Michael Lacey, and James Larkin are the co-founders of the website Backpage.com.  Over the last decade, the law firm of Davis Wright Tremaine ("DWT") has represented Ferrer in an array of civil and criminal matters related to Ferrer's work at

Backpage.  In addition, the law firm of Henze Cook Murphy ("HCM") has represented Ferrer in certain criminal proceedings related to Ferrer's work at Backpage.

Recently, Ferrer severed his relationship with the DWT and HCM firms and entered a plea of guilty to federal criminal charges arising from his work at Backpage.  *See* Case No. CR 18-464-PHX-DJH.  Additionally, the grand jury recently returned a 93-count indictment charging seven other individuals, including Lacey and Larkin, with various crimes arising from their work at Backpage.  It is expected that Ferrer will be a prosecution witness in any trial against Lacey and Larkin.

Notwithstanding all of this, lawyers from the DWT and HCM firms have now entered notices of appearance on behalf of Lacey (and, in the DWT firm's case, also on behalf of Larkin).  In the United States' view, such representation is improper—a long line of cases (not to mention the applicable ethical rules) prohibit an attorney from representing a client in a criminal trial if a former client will be called as a cooperating prosecution witness and the former client does not consent to the representation.  Here, Ferrer has specifically advised the DWT and HCM firms that he does *not* consent to their representation of Lacey and Larkin.  *See* Exhibits A, B (Ferrer letters to DWT and HCM).  Furthermore, DWT's engagement letter with Ferrer, Lacey, and Larkin expressly provided that DWT would "withdraw from representing each and all of you individually" if the parties' interests ever became adverse.  *See* Exhibit A at 1 n.1.  Accordingly, the United States moves to disqualify the DWT and HCM firms from further participation in this case.

Finally, the Court should be aware that, before filing this motion, the United States met and conferred with attorneys from DWT and HCM (and certain other defense attorneys).  As part of this process, the United States provided the citations discussed in this motion and participated in a conference call with defense counsel.  Unfortunately, the parties were not able to reach a resolution.  Defense counsel also requested that the United States postpone filing this motion until they had an opportunity to conduct further research and consultation.  Although this was not an unreasonable request, the United States felt it appropriate (and required by the relevant case law) to file the motion as soon as possible,

particularly because some of the arguably-conflicted defense attorneys will be appearing at the April 30 status conference at which important trial deadlines may be established.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   <u>DWT's and HCM's Long Track Record Of Representing Ferrer</u>

Since 2010, Ferrer has been named a defendant, in his personal capacity, in an array of Backpage-related lawsuits in state and federal courts across the country.  The law firms of DWT and HCM have repeatedly represented Ferrer in those lawsuits.  For example:

• In October 2015, the Senate Permanent Subcommittee on Investigations ("PSI") issued a subpoena to Ferrer for certain Backpage-related documents.  Later, the PSI filed a motion to compel in federal court in the District of Columbia.  *See* Exhibit C.  In response, the DWT firm filed a notice of appearance on Ferrer's behalf (*see* Exhibit D) and proceeded to litigate the matter on Ferrer's behalf.  The district court ultimately ruled against Ferrer and ordered him to comply.  *Senate Perm. Subcomm. v. Ferrer*, 199 F. Supp. 3d 125 (D.D.C. 2016).  Afterward, the DWT firm filed a notice of appeal on Ferrer's behalf and sought a stay pending appeal.    This request was denied by the district court, the D.C. Circuit, and the Supreme Court.  *Ferrer v. Senate Perm. Subcomm.*, 137 S. Ct. 28 (2016).

• In September 2016, Ferrer, Lacey, and Larkin were charged with pimping-related offenses in a 10-count criminal complaint filed in California state court.  *People v. Ferrer et al.,* 2016 WL 6091120 (Sac. Cty. Sup. Ct. 2016).  Afterward, the DWT firm made an appearance on behalf of all three defendants and the HCM firm made an appearance solely on behalf of Ferrer.  The DWT firm and the HCM firm then filed a joint motion to dismiss on Ferrer's behalf.  *See* Exhibit E (demurrer, identifying DWT firm as "Counsel for Defendants Carl Ferrer, Michael Lacey and James Larkin" and the HCM firm as "Counsel for Defendant Carl Ferrer").  In December 2016, the trial court granted the demurrer (based on state-law defenses not applicable in this case).  *People v. Ferrer,* 2016 WL 7237305 (Sac. Cty. Sup. Ct. 2016).

• Since October 2016, certain sealed proceedings have occurred in the District of Arizona in which the DWT firm and the HCM firm have acted as Ferrer's attorneys.  *See,*

*e.g.,* Sealed Exhibit F (February 2017 minute entry from sealed hearing: "Attorneys for Backpage.com and Carl Ferrer, Tom Henze, James Grant, Janey Henze Cook . . . ."); Sealed Exhibit G (April 2017 minute entry from sealed hearing: "Attorneys for Backpage.com and Carl Ferrer, Tom Henze, James Grant, Janey Henze Cook, client Carl Ferrer . . . .").

• In January 2017, Ferrer was one of the named defendants in a civil lawsuit in California state court filed by a victim who had been trafficked via Backpage. Afterward, the DWT firm filed a notice of appearance on behalf of Ferrer and certain other defendants (*see* Exhibit H) and litigated on his behalf, including by removing the case to federal court (*see* Exhibit I). *See Jane Doe v. Medalist Holdings LLC et al.*, CV 17-1264 (C.D. Cal.).

• In January 2017, Ferrer was one of the named defendants in a civil lawsuit in Alabama state court filed by a victim who had been trafficked via Backpage. Afterward, the DWT firm filed a notice of appearance on behalf of Ferrer and certain other defendants (*see* Exhibit J) and litigated on his behalf, including by removing the case to federal court (*see* Exhibit K). *See K.R. v. Backpage.com, LLC et al.*, CV 17-299 (M.D. Ala.).

• In February 2017, Ferrer was one of the named defendants in a civil lawsuit in the Middle District of Florida filed by an advocacy group and by a victim who had been trafficked via Backpage. *See Florida Abolitionist et al. v. Backpage.com LLC et al.*, CV 17-218 (M.D. Fla.). Afterward, members of the DWT firm filed a representation certificate stating they represented all of the defendants, including Ferrer (*see* Exhibit L), and filed a motion to dismiss on Ferrer's behalf (*see* Exhibit M).

• In February 2017, Ferrer was one of the named defendants in a civil lawsuit in the District of Arizona filed by domestic violence shelter. *See Soujourner Center et al. v. Backpage.com LLC et al.*, CV 17-399-PHX-GMS (D. Ariz.). Afterward, members of the DWT firm filed a motion to dismiss on Ferrer's behalf (*see* Exhibit N).

• In May 2017, the Missouri Attorney General's office served a civil investigative demand notice on Ferrer seeking certain Backpage-related records. *See* Exhibit O. Afterward, the DWT firm contacted the Attorney General's office, sought an extension of the compliance deadline, and made clear that the DWT firm was representing Ferrer in his

personal capacity.  *See* Exhibit P (email from DWT firm dated June 19, 2017:  "My firm is counsel for Mr. Ferrer <u>and</u> Backpage, and I made that clear in my call.") (emphasis in original).  The DWT firm then sought a permanent injunction to prevent Missouri "from enforcing the Civil Investigative Demand served on Backpage and its CEO Carl Ferrer."  *See* Exhibit Q.  In November 2017, a federal district court denied this motion.  *See Backpage.com LLC v. Hawley*, 2017 WL 5726868 (E.D. Mo. 2017).

• In June 2017, Ferrer was one of the named defendants in a civil lawsuit in Oregon state court filed by a victim who had been trafficked via Backpage.  Afterward, the DWT firm filed a notice of appearance on behalf of Ferrer and certain other defendants (*see* Exhibit R) and litigated on his behalf, including by removing the case to federal court (*see* Exhibit S).  *See Kocher v. Hilton Worldwide Holdings, Inc. et al.*, CV 18-449 (D. Or.).

• In June 2017, Ferrer was one of the named defendants in a civil lawsuit in the District of Massachusetts filed by several victims who had been trafficked via Backpage.  *See Jane Doe No. 1 et al. v. Backpage.com LLC et al.*, CV 17-11069 (D. Mass.).  Afterward, members of the DWT firm filed a notice of appearance on behalf of Ferrer and the other defendants, in which they claimed to "have particularized knowledge of the facts and legal issues in this case" (*see* Exhibit T), and later filed a motion to dismiss on the defendants' behalf.  Just recently, the district court denied that motion in part, holding that one of the plaintiffs had made a plausible allegation that Backpage "redrafted [her] advertisement . . . to suggest she was an adult."  *See Jane Doe No. 1 v. Backpage.com, LLC*, 2018 WL 1542056, * 1 (D. Mass. 2018).

B.    <u>Mr. Ferrer's Guilty Plea</u>

On April 5, 2018, Mr. Ferrer pleaded guilty to the crime of conspiracy to facilitate prostitution and to engage in money laundering.  *See* CR 18-464-PHX-DJH, Dkt. No. 7.  In the factual basis of his plea agreement, Mr. Ferrer specifically identified M.L. (*i.e.*, Michael Lacey) and J.L. (*i.e.*, James Larkin) as two of the individuals with whom he conspired.  The factual basis, in its entirety, provides as follows:

*In 2004, I co-founded the website www.Backpage.com ("Backpage"), along with M.L. and J.L.* Backpage eventually became the second-largest classified advertising website in the world and, during its 14 years of existence, has derived the great majority of its revenue from fees charged in return for publishing advertisements for "adult" and "escort" services.

I have long been aware that the great majority of these advertisements are, in fact, advertisements for prostitution services (which are not protected by the First Amendment and which are illegal in 49 states and in much of Nevada). *Acting with this knowledge, I conspired with other Backpage principals (including but not limited to M.L, J.L, S.S., D.H., A.P, and J.V.) to find ways to knowingly facilitate the state-law prostitution crimes being committed by Backpage's customers.* For example, I worked with my co-conspirators to create "moderation" processes through which Backpage would remove terms and pictures that were particularly indicative of prostitution and then publish a revised version of the ad. Such editing did not, of course, change the essential nature of the illegal service being offered in the ad—it was merely intended to create a veneer of deniability for Backpage. These editing practices were only one component of an overall, company-wide culture and policy of concealing and refusing to officially acknowledge the true nature of the services being offered in Backpage's "escort" and "adult" ads.

*In addition to conspiring to knowingly facilitate the state-law prostitution offenses being committed by Backpage's customers, I also conspired with other Backpage principals (including but not limited to M.L, J.L, S.S., J.B., and D.H.) to engage in various money laundering offenses.* Since 2004, Backpage has earned hundreds of millions of dollars in revenue from publishing "escort" and "adult" ads. Over time, many banks, credit card companies, and other financial institutions refused to do business with Backpage due to the illegal nature of its business. In response, I worked with my co-conspirators to find ways to fool credit card companies into believing that Backpage-associated charges were being incurred on different websites, to route Backpage-related payments and proceeds through bank accounts held in the name of seemingly unconnected entities (including but not limited to Posting Solutions, Website Technologies, and Cereus Properties), and to use cryptocurrency-processing companies . . . for similar purposes.

*Id.* at 12-14 (emphases added).

After entering his guilty plea, Ferrer wrote letters to the DWT and HCM firms requesting that they comply with the ethical duties they owed to him, as a former client, and withdraw from representing Lacey and Larkin. *See* Exhibits A, B.

C.     The Proceedings In This Case

On April 6, 2018, Lacey and Larkin were arrested based on the charges contained in a 93-count federal indictment.  *See* CR 4.  The charges include conspiracy to facilitate prostitution (Count 1) and conspiracy to engage in money laundering (Count 52)—the same crimes to which Mr. Ferrer pleaded guilty—and are based on the same conduct addressed in the factual basis of Mr. Ferrer's plea agreement.

On April 9, 2018, the Court granted the *pro hac vice* applications of two attorneys from the DWT law firm (Robert Corn-Revere and Ronald London) to appear on behalf of Lacey.  The following day, the Court granted the *pro hac vice* application of a third attorney from the DWT law firm (James Grant).  This application was to appear on behalf of Lacey and Larkin.

On April 9, 2018, Lacey filed an opposition to the government's detention motion. *See* CR 23.  The top of the first page identifies two DWT attorneys (James Grant and Robert Corn-Revere) as "Attorneys for Defendant MICHAEL LACEY."  *Id.*

On April 11, 2018, Judge Bade presided over a detention hearing for Lacey.  One of the attorneys who represented Lacey at this hearing was from the HCM firm.  *See* CR 62 (minute entry:  "Appearances: AUSA Kevin Rapp and AUSA Dominic Lanza for the Government, retained attorney Paul Cambria and Janey Cook for the defendant.").

On April 13, 2018, Judge Bade presided over a continuation of Lacey's detention hearing.  This time, both of Lacey's attorneys were from the HCM firm.  *See* CR 65 (minute entry: "Appearances: AUSA Kevin Rapp and Dominic Lanza for the Government, retained attorney Tom Henze and Janey Cook for defendant.").

D.     DWT's Withdrawal From Other Ferrer Representations

On April 20, 2018, DWT submitted a letter to Ferrer explaining that, in light of recent developments, it would be withdrawing from all pending matters in which the firm had previously represented him in his personal capacity and/or any of the Backpage corporate entities.  *See* Exhibit U.  Included with the letter was a table identifying 17 such cases.  *Id.*

**ARGUMENT**

For years, the DWT and HCM firms represented Ferrer in civil and criminal litigation arising from Ferrer's work at Backpage.  Recently, Ferrer chose to terminate his relationship with those firms and to plead guilty to Backpage-related criminal charges.  In the factual basis of his plea agreement, Ferrer expressly implicated Lacey and Larkin as his co-conspirators, and it is expected that Ferrer will be a key prosecution witness against Lacey and Larkin at trial.  Notwithstanding all of this, the DWT and HCM firms are attempting to represent Lacey and Larkin in this matter.  As explained below, such representation is improper.  The DWT and HCM firms have an obvious and incurable conflict of interest and should be precluded from further participation in this case.

A.      Arizona's Ethical Rules Mandate Disqualification

The Arizona Rules of Professional Conduct provide the starting point for any disqualification analysis.  *Roosevelt Irr. Dist. v. Salt River Project Agr. Imr. & Power Dist.*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2010) ("The United States District Court for the District of Arizona has adopted the Arizona Rules of Professional Conduct as its ethical standards.  Accordingly, this Court applies the Arizona ethical rules when evaluating motions to disqualify counsel.").

Here, the Arizona rules are directly on point and compel disqualification.  Rule 1.9(a) of the Arizona Rules of Professional Conduct provides that "[a] lawyer who has formerly represented a client in a matter ***shall not*** thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  Comment 1 to Rule 1.9 elaborates:  "Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same or a substantially related matter after a dispute arose among the clients, unless all affected clients give informed consent."

Similarly, Rule 1.7(a)(2) of the Arizona Rules of Professional Conduct provides that, absent written consent from the prior client, an attorney may not represent a current

client if "there is a significant risk that the representation . . . will be materially limited by the lawyer's responsibilities to . . . a former client."  Comment 28 to Rule 1.7 further explains that, "[i]n considering whether to represent multiple clients in the same matter, a lawyer should be mindful that . . . [o]rdinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails."

The Arizona rules, in short, provide that the representation arrangement being pursued by the DWT and HCM firms is improper.  Furthermore, one of the potential solutions that defense counsel proposed during the parties' meet-and-confer process (*i.e.,* setting up an internal screen within the defense team that would preclude the DWT and HCM firms from cross-examining Ferrer or otherwise sharing any privileged information they learned through their prior representation of Ferrer) is not an appropriate one.  Indeed, in an ethics opinion issued more than 20 years ago, the Arizona State Bar's Ethics Committee rejected this exact suggestion.  *See* Az. Ethics Op. 91-05.  There, a lawyer sought to represent the defendant in a federal criminal trial even though his firm had previously represented a key prosecution witness.  In an effort to "cure" the conflict posed by this arrangement, the lawyer proposed hiring auxiliary counsel to conduct the cross-examination of the former client at trial.  The ethics opinion rejected this proposal, explaining:

> Does the involvement of [auxiliary counsel] eliminate the conflict of interest for [the attorney] and his law firm?  If [auxiliary counsel] is not part of [the attorney's] firm, and will conduct an independent investigation and cross examination of [the former client], may [the attorney] ethically continue the representation?  ***We think not.  One must remember that ER 1.9(a) is designed to protect [the former client]***.  It is intended to give [the former client] the assurance that her lawyer-client confidences will not be used against her.  ***No matter how carefully [auxiliary counsel] and [the attorney] avoid discussing [the former client] or her prior representation by [the attorney's] firm, they necessarily will engage in many communications about the criminal defense of [the defendant].  They will have to coordinate their facts, coordinate their theories, coordinate their arguments.  [The former client] will thus be confronted with the uncomfortable fact that her former lawyers are cooperating closely with the lawyer who will cross examine her at trial.  ER 1.9(a) is designed to prevent precisely such***

1
2

> ***discomfort from arising***.   [The former client] is "'entitled to freedom from apprehension' that confidences will be revealed in a succeeding representation."

3

*Id.* (emphases added).

4

Finally, it is notable that Ethics Opinion 91-05 also cited, with approval, the opinion

5

in *United States v. Cheshire*, 707 F. Supp. 235 (M.D. La. 1989)—a case with obvious

6

parallels to this case.  In *Cheshire*, a defendant (Dyer) was charged with conspiring to bribe

7

a public official (Jones).  *Id.* at 237.  During the early stages of the case, the official was

8

represented by attorney Marabella, but the official subsequently hired new counsel, pleaded

9

guilty, and agreed to serve as a prosecution witness at trial.  *Id.*  Afterward, Marabella

10

sought to represent Dyer and argued he could "cure" any conflict of interest by

11

"independently [hiring] co-counsel for the specific and limited purpose of cross

12

examination of Jones and that Mr. Marabella will participate in neither the preparation for

13

nor the cross examination."  *Id.* at 238.  The district court rejected this suggestion and

14

disqualified Marabella from further participation in the case, holding that the positions of

15

Dyer and Jones were "materially adverse," that the Dyer and Jones representations arose

16

from a "substantially related matter," and Marabella's proposed solution would "not

17

eliminate the conflict. . . .  [T]his judge views it as an almost impossible task for a lawyer

18

to participate throughout the course of a trial but not suggest a single question or style for

19

cross examination of the most important witness against his present client."  *Id.* at 240.

20

The court concluded by emphasizing that, although Dyer might have a Sixth Amendment-

21

protected interest in being represented by his counsel of choice at trial, that interest was

22

not absolute and could be overridden by the federal judiciary's "independent interest in

23

ensuring that criminal trials are conducted within the ethical standards of the profession

24

and that legal proceedings appear fair to all who observe them."  *Id.* (quoting *Wheat v.*

25

*United States*, 486 U.S. 153, 160 (1988)).

26
27
28

B.     The Case Law Supports Disqualification

The relevant case law further supports the conclusion that the DWT and HCM firms should be disqualified from representing Lacey and Larkin in this matter.  The *Cheshire* case, discussed above, is simply one of a long line of decisions disqualifying criminal defense attorneys from participating in cases due to the expected participation of former clients as cooperators.  For example:

- *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994).  In *Ross*, the defendant retained a particular law firm to represent him in a drug trafficking case.  *Id.* at 1522.  One of the key prosecution witnesses was Aspuru, who had previously been represented by the same firm in a different drug-trafficking case.  *Id.*  As a result, the prosecution moved to disqualify the firm from representing Ross.  *Id.*  The district court granted the motion and the Eleventh Circuit affirmed, holding that "*[t]he need for fair, efficient, and orderly administration of justice overcomes the [Sixth Amendment] right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial*."  *Id.* at 1523 (emphasis added).  In reaching this conclusion, the court emphasized that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. . . .  Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation."  *Id.* at 1524 (citation omitted).

- *United States v. Moscony*, 927 F.2d 742 (3d Cir. 1991).  In *Moscony*, several employees of a real estate business were represented by the same law firm ("the Sprague firm") during a grand jury investigation.  *Id.* at 747.  The grand jury then returned an indictment charging two of the individuals (Moscony and Cullen) with various crimes, and the government determined that the remaining individuals (including Thiel and Napolitano) were potential prosecution witnesses at trial.  *Id.*  When Moscony sought to retain the Sprague firm to represent him at trial, the government moved to disqualify.  *Id.*

1    The district court granted the motion, holding that "Thiel's trial testimony, which was to

2    be corroborated by Napolitano, would be central to the government's case," that "vigorous

3    cross-examination of these witnesses would be necessary," and that "such cross-

4    examination . . . if pursued would have violated ethical standards regarding privileged

5    communications." *Id.* at 747-48. The Third Circuit affirmed, emphasizing that "an actual

6    conflict of interest obviously existed. ***Conflicts of interest arise whenever an attorney's***

7    ***loyalties are divided, and an attorney who cross-examines former clients inherently***

8    ***encounters divided loyalties***." *Id.* at 750 (emphasis added).

9         • <u>*United States v. Williams*</u>, 81 F.3d 1321 (4th Cir. 1996). In *Williams*, an engaged

10   couple (Williams and Martin) were the subjects of an FBI investigation into bank fraud.

11   *Id.* at 1322-23. During the investigation, Martin retained an attorney, Crawley, to represent

12   her. *Id.* The government eventually indicted Williams, declined to charge Martin because

13   she did not engage in any wrongdoing, and voiced its intention to call Martin as a

14   prosecution witness against Williams at trial. *Id.* Accordingly, when Williams sought to

15   retain Crawley (Martin's former attorney) to represent him at trial, the prosecution moved

16   to disqualify. *Id.* The district court granted the motion and the Fourth Circuit affirmed,

17   holding that "disqualification of Williams's counsel was well within the district court's

18   discretion here. . . . ***Williams desired representation by the same lawyer who had***

19   ***represented a significant potential witness for the government with respect to the same***

20   ***crime. That lawyer would have faced [a] potential conflict*** . . . . Nor could that conflict

21   so surely have been avoided by the device of retaining auxiliary counsel for the special

22   purpose of cross-examining Ms. Williams that abuse occurred by not employing it rather

23   than disqualifying counsel. Significant, unavoidable risks would have remained. After all,

24   Crawley would remain at counsel table and likely be the auxiliary lawyer's chief source of

25   information about the case." *Id.* at 1325 (emphasis added).

26        • <u>*United States v. Alfonzo-Reyes*</u>, 592 F.3d 280 (1st Cir. 2010): Defendant Morales

27   attempted to retain a particular attorney, Sandoval, to represent her at trial, but the trial

28   court determined that Sandoval was disqualified because Sandoval had previously

represented a potential prosecution witness (who had entered into a cooperation-based plea agreement) in a related matter. *Id.* at 293-94. Ultimately, the prosecution declined to call this witness at trial, and Morales was convicted. *Id.* On appeal, Morales argued the trial court's disqualification decision violated her Sixth Amendment rights, but the First Circuit affirmed, explaining that "Attorney Sandoval's representation may have placed her in the position of having to cross-examine her former client, a witness with whom she shared confidences protected by attorney-client privilege. The district court could conclude the matters were sufficiently related given some evidence linking the government's potential witness . . . to co-defendant Morales. . . . Under these circumstances, the district court did not abuse its broad discretion in disqualifying Attorney Sandoval." *Id.* at 294-95.

Notably, some of the defense attorneys in this case have been involved in decisions applying these principles. In *United States v. Falzone*, 766 F. Supp. 1265 (W.D.N.Y. 1991), a defendant in a RICO case (Spano) retained "Mr. Paul J. Cambria, Jr., Esq., of the law firm of Lipsitz, Green, Fahringer, Roll, Salisbury and Cambria" to represent him at trial. *Id.* at 1266. Because one of the key prosecution witnesses (Fino) had been previously represented by Mr. Cambria, the prosecution moved for disqualification. *Id.* The district court granted the motion, holding that Fino hadn't waived his right to confidentiality by cooperating with the government (*id.* at 1272-73) and that "it would be unfair to the government and Fino to allow Mr. Cambria to remain in the case. Mr. Cambria may have received confidential information from Fino during the course of their attorney-client relationship, and it would be unfair to allow him to use that information, either purposely or inadvertently, during a cross-examination of Fino at trial. . . . In addition, if it were to become known to the jury that Mr. Cambria was formerly Fino's attorney, the jury might give undue weight to Mr. Cambria's attack on Fino's credibility during his opening statement, his cross-examination of Fino, and his summation." *Id.* at 1275-76.

Finally, the Court should also be aware that the failure to order disqualification could result in future appellate issues. In *United States v. Iorizzo*, 786 F.2d 52 (2d Cir. 1986), the defendant was the owner of a petroleum company who was charged with certain

financial crimes.  *Id.* at 53.  The government's key witness was Tietz, a supervisor in the company's accounting department, and Iorizzo's trial counsel had previously represented Tietz in a state investigation into the same conduct.  *Id.* at 54.  Before trial, the prosecutor brought this conflict of interest to the trial court's attention but did not expressly move for disqualification.  *Id.* at 54-55.  As a result, Iorizzo's counsel was allowed to remain on the case.  *Id.*  However, when it came time to cross-examine Tietz, Iorizzo's counsel refrained from asking certain questions due to concerns about the ethical propriety of doing so.  *Id.* at 57-58.  As a result, the Second Circuit reversed Iorizzo's conviction, holding that "Iorizzo . . . was entitled to a counsel unburdened by the ethical constraints resulting from prior representation of the government's key witness."  *Id.* at 58.  The Second Circuit concluded its opinion by encouraging prosecutors in future cases to file pretrial disqualification motions should similar concerns arise:  "The prosecutors here were aware of defense counsel's conflict of interest at an early stage and were invited by the district judge to make a disqualification motion in writing.  We trust that this decision will ensure that a pretrial disposition of such issues will occur in the future."  *Id.* at 59.

Similarly, in *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000), three co-workers (Henke, Desaigoudar, and Gupta) were indicted on securities fraud charges.  *Id.* at 636.  They initially entered into a joint defense agreement ("JDA"), but Gupta later withdrew from the JDA, entered into a cooperation-based plea agreement, and promised to testify against the remaining defendants at trial.  *Id.* at 637.  In response, the attorneys for Henke and Desaigoudar moved to withdraw on the ground that their "duty of confidentiality to Gupta under the joint defense agreement prevented [them] from cross-examining Gupta on matters involving information [they] learned as a result of the privileged pre-trial meetings," but the district court denied the motion.  *Id.*  As a result, during trial, "Defense counsel conducted no cross-examination [of Gupta] for fear that the examination would lead to inquiries into material covered by the joint defense privilege."  *Id.*  The jury voted to convict but the Ninth Circuit reversed, holding that the defense "lawyers' ability to conduct their defense was impaired by a conflict of interest."  *Id.* at 635.  Although the

1    Court stopped short of holding that disqualification is automatically required in such

2    circumstances, the Court observed  that an attorney ordinarily should "not be allowed to

3    proceed against his former client in a cause of action substantially related to the matters in

4    which he previously represented that client." *Id.* at 637-38 (citation omitted).

5                                      **CONCLUSION**

6           For the reasons discuss above, the Court should disqualify the DWT and HCM firms

7    from further participation in this case.  The Court also may wish to inquire whether the

8    DWT and HCM firms have shared any privileged information, gleaned from their prior

9    representation of Ferrer, with the other defense attorneys in this case.

10          Respectfully submitted this 25th day of April 2018.

11                                    ELIZABETH A. STRANGE
                                      First Assistant United States Attorney
12                                    District of Arizona

13                                    JOHN P. CRONAN
                                      Acting Assistant Attorney General
14                                    Criminal Division, U.S. Department of Justice

15                                    */s Kevin Rapp*
                                      KEVIN M. RAPP
16                                    DOMINIC LANZA
                                      MARGARET PERLMETER
17                                    Assistant U.S. Attorneys

18                                    JOHN J. KUCERA
                                      Special Assistant U.S. Attorney
19

20                                    REGINALD E. JONES
                                      Senior Trial Attorney
21                                    U.S. Department of Justice, Criminal Division
                                      Child Exploitation and Obscenity Section

22                          **Certificate of Service:**

23   I hereby certify that on this date, I electronically transmitted the attached document to the
     Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic
24   Filing to the following CM/ECF registrants: Paul Cambria, James Grant, Robert Corn-
     Revere, Ronald London, Janey Henze Cook. Exhibits Under Seal have been emailed to
25   Paul Cambria, James Grant, Robert Corn-Revere, and Janey Henze Cook.
26

27   s/Zachry Stoebe
     U.S. Attorney's Office
28

# **<u>Exhibit A</u>**

April 13, 2018

*Via Email*
jimgrant@dwt.com

Mr. Jim Grant
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045

CC:   Mr. Robert Corn-Revere
       Davis Wright Tremaine LLP
       1919 Pennsylvania Ave., NW, Suite 800
       Washington, DC 20006-3401

Dear Mr. Grant,

I respectfully request that you and your firm comply with the terms outlined in your engagement letter of December 12, 2017 ("Engagement Letter"). Specifically, my understanding is that this requires that your firm withdraw from representing Mr. Larkin and Mr. Lacey individually.[1]

Now that I have entered guilty pleas in the federal and California matters related to Backpage, I believe an incurable conflict has now arisen as between me and each of the defendants in federal Case No. 2:18-cr-00422-SPL (D. Ariz.) and California Superior Court Case No. 16FE024013. This includes a direct, incurable conflict between me and Mr. Larkin and Mr. Lacey.

To the extent that you assert that I have waived the protections afforded to me as a current and former client of your firm,[2] I do not agree. As stated in my letter to you dated

---

[1] Engagement Letter, Page 3, para. 1: "If an incurable conflict were to arise among the three of you (which also appears unlikely), and agreement cannot be reached regarding DWT's continued representation of one or more of you, DWT will withdraw from representing each and all of you individually, while continuing to represent Backpage.com, as set forth above."

[2] *See, e.g.*, Wash. Rule of Professional Conduct 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing"); RPC 1.9(c)(1)-(2) ("A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.").

April 6, 2018, I have withdrawn any prior waiver that may have existed regarding conflicts of interest. I further believe that any prior informed consent would no longer be valid, as the issuance of a federal indictment in this matter has materially changed the facts and circumstances surrounding any such consent.

Sincerely,

Carl Ferrer

CC:   Nanci Clarence, Jonathan Baum

# **<u>Exhibit B</u>**

April 13, 2018

*Via Email*
tom@henzecookmurphy.com
janey@henzecookmurphy.com

Tom Henze
Janey Henze Cook
Henze Cook Murphy PLLC
4645 North 32nd Street, Suite 150
Phoenix, AZ 85018

Dear Mr. Henze and Ms. Henze Cook,

I respectfully request that you and your firm comply with the Arizona Rules of Professional Conduct as they relate to your duties to former clients.[1]

Now that I have entered guilty pleas in the federal and California matters related to Backpage, I believe an incurable conflict has now arisen as between me and each of the defendants in federal Case No. 2:18-cr-00422-SPL (D. Ariz.) and California Superior Court Case No. 16FE024013. This includes a direct, incurable conflict between me and Mr. Larkin and Mr. Lacey.

To the extent that you may assert that I have waived the protections afforded to me as a former client of your firm, I do not agree. As stated in my letter to your firm dated April 6, 2018, I have withdrawn any prior waiver that may have existed regarding conflicts of interest. I further believe that any prior informed consent would no longer be valid, as the issuance of a federal indictment in this matter has materially changed the facts and circumstances surrounding any such consent.

Sincerely,

Carl Ferrer

CC:   Nanci Clarence, Jonathan Baum

---

[1] *See* Rule of Professional Conduct 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.").

# **<u>Exhibit C</u>**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

SENATE PERMANENT SUBCOMMITTEE ON     )
INVESTIGATIONS,                      )
                                     )
The United States Senate             )
Washington, D.C.  20510,             )          Misc. No. _____
                                     )
                     Applicant,      )
                                     )
          v.                         )
                                     )
CARL FERRER,                         )
                                     )
Chief Executive Officer              )
Backpage.com, LLC                    )
2501 Oak Lawn Avenue                 )
Dallas, TX 75219,                    )
                                     )
                     Respondent.     )
_____)

**APPLICATION TO ENFORCE SUBPOENA DUCES TECUM OF
SENATE PERMANENT SUBCOMMITTEE ON INVESTIGATIONS**

1.  The Senate Permanent Subcommittee on Investigations of the Committee on

Homeland Security and Governmental Affairs (the "Subcommittee") applies, pursuant to 28

U.S.C. § 1365, for an order of this Court requiring Carl Ferrer to comply forthwith with a

subpoena of the Subcommittee issued to him on October 1, 2015, requiring the production of

documents to the Subcommittee.  Specifically, the Subcommittee seeks an order that Mr. Ferrer

produce all documents responsive to subpoena requests 1, 2, and 3.

**JURISDICTION**

2.  This Court has jurisdiction under 28 U.S.C. § 1365(a).

## PARTIES

3.  Under Rule XXV.1(k)(1) of the Standing Rules of the Senate, and Senate Resolution 445, 108th Congress (2004), the Committee on Homeland Security and Governmental Affairs is a duly authorized Senate committee.  Under Rule 7(A) of the Rules of Procedure for the Committee on Homeland Security and Governmental Affairs, the Permanent Subcommittee on Investigations is a duly authorized subcommittee of the Senate.  *See* 161 Cong. Rec. S413 (daily ed. Jan. 22, 2015) (publishing rules of Committee on Homeland Security and Governmental Affairs), *reprinted in* S. Doc. No. 114-6, at 131, 146 (2015).

4.  Respondent Carl Ferrer is the Chief Executive Officer of Backpage.com, LLC, an online classified advertisement website.

## FACTS

5.  Under section 12(e)(1) of Senate Resolution 73, 114th Cong. (2015), the Subcommittee, as a duly authorized subcommittee of the Committee on Homeland Security and Governmental Affairs, is authorized to study or investigate:

> (C) organized criminal activity which may operate in or otherwise utilize the facilities of interstate or international commerce in furtherance of any transactions and the manner and extent to which, and the identity of the persons, firms, or corporations, or other entities by whom such utilization is being made, and further, to study and investigate the manner in which and the extent to which persons engaged in organized criminal activity have infiltrated lawful business enterprise, and to study the adequacy of Federal laws to prevent the operations of organized crime in interstate or international commerce, and to determine whether any changes are required in the laws of the United States in order to protect the public against such practices or activities;

> (D) all other aspects of crime and lawlessness within the United States which have an impact upon or affect the national health, welfare, and safety, including investment fraud schemes, commodity and security fraud, computer fraud, and the use of offshore banking and corporate facilities to carry out criminal objectives;

[and]

(G) the efficiency and economy of all branches and functions of Government with particular references to the operations and management of Federal regulatory policies and programs.

6.  Pursuant to Senate Rule XXVI.1 and Senate Resolution 73, 114th Cong., the Subcommittee, or its Chairman, is authorized "to require by subpoena or otherwise the attendance of witnesses and production of correspondence, books, papers, and documents."  S. Res. 73, 114th Cong., § 12(e)(3) (2015), *reprinted in* S. Doc. No. 114-6, at 137 (2015).

7.  Under its authority in Senate Rules and Senate Resolution 73, the Subcommittee initiated an investigation of sex trafficking on the Internet.

8.  As part of that investigation, and acting pursuant to its rules of procedure, on October 1, 2015, the Subcommittee issued a subpoena duces tecum to Carl Ferrer, Chief Executive Officer of Backpage.com, LLC, requiring Mr. Ferrer to appear for testimony before the Subcommittee and to produce to the Subcommittee eight specified categories of records.  Exhibit F (Oct. 1, 2015 Subpoena to Carl Ferrer)[1].  The subpoena requested materials about the steps Backpage takes to review advertisements for possible illegal activity (particularly child sex trafficking), Backpage's interaction with law enforcement, its data retention policies, and its basic corporate structure.  The subpoena clarified that the Subcommittee is not seeking, and the subpoena's requests do not include, personally identifying information of any Backpage user or account holder, and that Backpage.com should redact any such information from documents produced.  The subpoena required production of the requested records on October 23, 2015.

---

[1]  All exhibits referenced herein are attached to the Memorandum of Points and Authorities in Support of Application to Enforce Subpoena Duces Tecum of Senate Permanent Subcommittee on Investigations that accompanies this Application.

9. The Subcommittee's subpoena was served on Mr. Ferrer's attorney, who accepted service on Mr. Ferrer's behalf, by e-mail and U.S. mail on October 1, 2015.

10. On October 20, 2015, the Subcommittee continued the date of Mr. Ferrer's testimonial appearance but did not extend the time for him to comply with the document requests in the subpoena. Ex. G (Oct. 20, 2015 Letter).

11. On October 23, 2015, Mr. Ferrer's counsel filed objections to the subpoena's document requests on the grounds that the subpoena is outside the Subcommittee's jurisdiction, intrudes on First Amendment rights, and seeks materials not pertinent to the Subcommittee's investigation. Ex. H (Oct. 23, 2015 Letter). Mr. Ferrer voluntarily produced a limited number of publicly available documents in response to requests 1, 2, and 3 in the subpoena but objected to producing any other documents.[2]

12. On November 3, 2015, after considering the objections raised by Mr. Ferrer, the Chairman and Ranking Member, on behalf of the Subcommittee, issued a ruling and order that overruled Mr. Ferrer's objections and directed him to produce documents responsive to the subpoena by November 12, 2015 at 10:00 a.m. In addition, the Subcommittee's order continued the personal appearance required by the subpoena to November 19, 2015, at 10:00 a.m. Ex. I (Nov. 3, 2015 Letter Ruling).

13. On November 13, 2015, a day after the date by which Mr. Ferrer was ordered by the Subcommittee to produce documents in compliance with the subpoena, Mr. Ferrer's counsel

---

[2] Mr. Ferrer indicated that Backpage would compile certain records regarding its cooperation with law enforcement responsive to request 4 of the subpoena, and would investigate and seek to compile statistical information responsive to requests 6 and 7 regarding the number of advertisements in Backpage's adult sections and the number that were blocked or deleted by Backpage's screening mechanisms. Mr. Ferrer did not produce any documents responsive to requests 5 or 8.

responded to the Subcommittee order. Mr. Ferrer provided the Subcommittee with some additional documents and information in response to the subpoena, including a large cache of documents in response to request 4 of the subpoena, but a limited number responsive to the other requests.[3] However, Mr. Ferrer again asserted his general jurisdictional, First Amendment, and pertinence objections as to all of the subpoena's requests, Ex. K (Nov. 13, 2015 Letter), objections that had been overruled in the Subcommittee's November 3, 2015 Letter Ruling. Mr. Ferrer did not assert any objection as to specific documents covered by the Subcommittee's subpoena, nor did Mr. Ferrer provide the Subcommittee with a log identifying the responsive documents being withheld, as required by the subpoena. Indeed, Mr. Ferrer objected even to undertaking a complete search for responsive documents and failed to describe with any particularity the contours of the search that yielded the documents he voluntarily produced.[4]

---

[3] Mr. Ferrer produced approximately 16,800 pages with the November 13 letter. Over 16,300 of those pages consisted of Backpage's responses to law enforcement subpoenas, each response containing numerous repetitive pages of advertisements and photos – including one response of more than 750 pages – relating to a single Backpage user. Mr. Ferrer's counsel explained that the company had over five million additional pages of this material it could produce, but Subcommittee staff informed Mr. Ferrer that Backpage need not collect and submit those pages as the Subcommittee needed no further material of that nature. Mr. Ferrer also produced e-mails received by Backpage from law enforcement officials thanking Backpage employees for responding to police inquiries – material Backpage indicated was responsive to request 4.

In addition, Mr. Ferrer reported statistics responsive to requests 6 and 7 regarding: the total number of monthly advertisements placed on Backpage and the number placed in the adult section of the website; the number of reports made by Backpage each month to the National Center for Missing and Exploited Children; and the number of advertisements deleted through Backpage's screening process.

[4] In addition, Mr. Ferrer's counsel, in letters of November 16 and 18, 2015, asked that Mr. Ferrer's personal appearance on November 19, 2015, be waived, as counsel indicated that Mr. Ferrer intended to refuse to answer questions based on his Fifth Amendment privilege against self-incrimination and on the same First Amendment grounds that were the subject of his

(continued...)

14.  The Subcommittee has determined that production of the withheld documents will materially aid the Subcommittee's investigation and that Mr. Ferrer has no privilege against complying with the Subcommittee's subpoena.  To narrow the matters in dispute, and to conserve the resources of the Senate, Backpage, and the Court, the Subcommittee is seeking to enforce only requests 1, 2, and 3 of the subpoena at this time.[5]

15.  On February 29, 2016, the Committee on Homeland Security and Governmental Affairs reported to the Senate by a vote of 15-0 a resolution directing the Senate Legal Counsel to initiate these proceedings to enforce the Subcommittee's documentary subpoena to Mr. Ferrer. 162 Cong. Rec. S1085, 1087-88 (daily ed. Feb. 29, 2016).

16.  On March 17, 2016, the Senate agreed, by a vote of 96 to 0, to that resolution, Senate Resolution 377, 114th Congress (2016), authorizing the Subcommittee under section 705(b) of the Ethics in Government Act of 1978, 2 U.S.C. § 288d(b), to bring this action under 28 U.S.C. § 1365. 162 Cong. Rec. S1561 (daily ed. Mar. 17, 2016).

---

[4](...continued)
objections to producing documents.  Exs. L, M.  The Subcommittee declined to excuse Mr. Ferrer's appearance.  Ex. N (Nov. 18, 2015 letter).  Despite not being excused from his duty to appear under the subpoena, and having known of the time and date of his scheduled appearance since November 3, Mr. Ferrer failed to appear at the Subcommittee's hearing on November 19. Mr. Ferrer's defiance of the testimonial aspect of the Subcommittee's subpoena is not the subject of this enforcement action as the Subcommittee has not yet determined how it will proceed regarding Mr. Ferrer's appearance and testimony.

[5]  At the time of this filing, Mr. Ferrer has produced in response to requests 1, 2, and 3 of the subpoena, which are the subject of this enforcement action, a total of 65 pages – 21 pages of which were publicly available documents: the website's Terms of Use, Posting Rules, and User Agreement, and testimony by Backpage's General Counsel before the New York City Council in 2012.  *See* Ex. H at 6-7 (Letter of Oct. 23, 2015); Recommendation to Enforce Subpoena Issued to the CEO of Backpage.com, LLC, Staff Report to the Permanent Subcommittee on Investigations, Nov. 19, 2015, at 30-31, *reprinted in Human Trafficking Investigation: Hearing Before the Permanent Subcomm. on Investigations of the Senate Comm. on Homeland Security and Governmental Affairs*, S. Hrg. No. 114-179, 114th Cong., 85-86 (2015).

17. The Subcommittee is seeking expedited consideration of this Application pursuant to 28 U.S.C. § 1657 (courts "shall expedite the consideration of any action . . . if good cause therefor is shown").[6]  Good cause exists as the Subcommittee is in the midst of an important investigation of sex trafficking on the Internet and is seeking to complete its investigation and report its findings and recommendations as soon as possible.  The Subcommittee has been seeking this information from Backpage since last July, and the failure of Mr. Ferrer to comply with the duly authorized process of the Subcommittee has created substantial delay in the Subcommittee's receipt of this information and thereby in its ability to finish its inquiry into this area and provide the Senate with the results of its investigation.

18. The Subcommittee has conferred with Mr. Ferrer's counsel, and is submitting an accompanying unopposed motion to set a briefing schedule on this application, proposing that Mr. Ferrer respond to the Application no later than April 26, 2016, which is 28 days from the Application's filing, and that the Subcommittee be permitted to submit a reply in support of its Application no later than May 17, 2016, which is 21 days after Mr. Ferrer's response is due.

19.  This Court has expedited all prior actions to enforce Senate subpoenas under 28 U.S.C. § 1365, with a similar or more advanced schedule than that proposed by the Subcommittee here.

---

[6]  Originally, the civil enforcement statute for Senate subpoenas expressly required that courts expedite actions seeking to enforce subpoenas.  *See* Ethics in Government Act of 1978, Pub. L. No. 95-521, § 705(f)(1), 92 Stat. 1824, 1879.  When that requirement was removed as part of legislation that repealed most statutory requirements for expediting specific civil matters in favor of a general requirement that courts "shall expedite the consideration of any action  . . . if good cause therefor is shown," *enacted by* Pub. L. No. 98-620, §§ 401(a), 402 (29)(D), 98 Stat. 3335, 3356, 3359 (1984), the House committee reporting the legislation considered it "virtually certain" that Senate subpoena enforcement actions "will qualify for expedited treatment under the 'good cause shown' standard set forth in proposed section 1657 of Title 28."  H.R. Rep. No. 985, 98th Cong., 2d Sess. 11 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5779, 5789.

## CLAIM

20. Respondent Carl Ferrer has failed to invoke a valid privilege against complying with the subpoena duces tecum of the Subcommittee. Pursuant to 28 U.S.C. § 1365, this Court should issue an order that directs him to comply with the subpoena of the Subcommittee and produce forthwith all documents responsive to requests 1, 2, and 3 of that subpoena.

## PRAYER FOR RELIEF

WHEREFORE, the Subcommittee respectfully prays:

1. That this Court issue an order directing Carl Ferrer, Chief Executive Officer of Backpage.com, LLC, to comply forthwith with the October 1, 2015 subpoena of the Subcommittee and produce to the Subcommittee all documents responsive to requests 1, 2, and 3 of the subpoena within 10 days of the Court's order; and

2. That the Subcommittee have such other and further relief as may be necessary and appropriate.

Respectfully submitted,

Patricia Mack Bryan, Bar #335463
Senate Legal Counsel

Morgan J. Frankel, Bar #342022
Deputy Senate Legal Counsel

Grant R. Vinik, Bar #459848
Assistant Senate Legal Counsel

Thomas E. Caballero
Assistant Senate Legal Counsel

Office of Senate Legal Counsel
642 Hart Senate Office Building

8

Washington, D.C. 20510-7250
(202) 224-4435 (tel)
(202) 224-3391 (fax)

Dated: March 29, 2016

Counsel for Senate Permanent Subcommittee
on Investigations

# **<u>Exhibit D</u>**

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT
for the

District of Columbia ▾

| | | |
|---|---|---|
| Senate Permanent Subcommittee on Investigations | ) | |
| *Plaintiff* | ) | |
| v. | ) | Case No.    16-mc-00621-RMC |
| Carl Ferrer | ) | |
| *Defendant* | ) | |

## APPEARANCE OF COUNSEL

To:    The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Carl Ferrer

Date:    04/26/2016

_____
*Attorney's signature*

Robert Corn-Revere (DC Bar # 375415)
*Printed name and bar number*

DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave. NW, Ste. 800
Washington, DC  20006
*Address*

bobcornrevere@dwt.com
*E-mail address*

(202) 973-4225
*Telephone number*

(202) 973-4499
*FAX number*

# Exhibit E

James C. Grant (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101
Telephone:      (206) 622-3150
Facsimile:      (206) 757-7700
Email:         jamesgrant@dwt.com
*Counsel for Defendants Carl Ferrer, Michael Lacey and James Larkin*

Cristina C. Arguedas (SBN 87787)
Ted W. Cassman (SBN 98932)
ARGUEDAS CASSMAN & HEADLEY LLP
803 Hearst Ave
Berkeley, CA 94710
Telephone:      (510) 845-3000
Facsimile:      (510) 845-3003
Email:         arguedas@achlaw.com
               cassman@achlaw.com
*Counsel for Defendants Michael Lacey and James Larkin*

Tom Henze (admitted *pro hac vice*)
Janey Henze Cook (SBN 244088)
HENZE COOK MURPHY PLLC
4645 N. 32nd St., Suite 150
Phoenix, AZ  85018
Telephone:      (602) 956-1730
Facsimile:      (602) 956-1220
Email:         tom@henzecookmurphy.com
               janey@henzecookmurphy.com
*Counsel for Defendant Carl Ferrer*

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>CARL FERRER, MICHAEL LACEY, and JAMES LARKIN,<br><br>Defendants. | Case No. 16FE019224, Dept. No. 61<br><br>**NOTICE OF DEMURRER AND DEMURRER OF DEFENDANTS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br>[California Penal Code § 1004]<br><br>Opposition Due:  November 4, 2016<br>Reply Due:        November 10, 2016<br>Hearing Date:     November 16, 2016<br>Time:             1:30 p.m.<br><br>Complaint Filed:  September 26, 2016<br>Trial Date:       N/A |

DAVIS WRIGHT TREMAINE LLP

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

1  *Additional Counsel*:

2  Don Bennett Moon (*pro hac vice* application to be filed)
   500 Downer Trail
3  Prescott, AZ  86305
   Telephone:      (928) 778-7934
4  Email:          don.moon@azbar.org

5  *Counsel for Defendants Michael Lacey and James Larkin*

6
   Robert Corn-Revere (*pro hac vice* application to be filed)
7  DAVIS WRIGHT TREMAINE LLP
   1919 Pennsylvania Avenue, NW, Suite 800
8  Washington, D.C.  20006
   Telephone:      (202) 973-4200
9  Facsimile:      (202) 973-4499
   Email:          bobcornrevere@dwt.com
10

11 Rochelle L. Wilcox (SBN 197790)
   DAVIS WRIGHT TREMAINE LLP
12 505 Montgomery Street, Suite 800
   San Francisco, California  94111
13 Telephone:      (415) 276-6500
   Facsimile:      (415) 276-6599
14 Email:          rochellewilcox@dwt.com

15 *Counsel for Defendants Carl Ferrer, Michael Lacey and James Larkin*

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that, on November 16, 2016, at 1:30 p.m. or as soon thereafter

3   as the matter may be heard in Department 61 of the Sacramento County Superior Court, 651

4   I Street, Sacramento, California 95814, defendants Carl Ferrer, Michael Lacey and James Larkin,

5   respectively the CEO and former owners of an online publisher, Backpage.com, LLC, pursuant to

6   California Penal Code §§ 1002-1005, will and hereby do demur to the criminal Complaint filed by

7   California Attorney General Kamala D. Harris and all charges asserted on the following grounds:

8       1.     The Demurrer should be sustained under Penal Code §§ 1004(4) and (5) because

9   the Complaint and the prosecution are legally barred under the First Amendment to the United

10  States Constitution, as the Attorney General seeks to hold an online publisher of third-party speech

11  criminally liable, with no allegation of scienter that Backpage.com knew the specific speech upon

12  which the charges are based was unlawful, much less that the named Defendants had *any*

13  knowledge of or participated in any way in the creation or posting of the speech.  The First

14  Amendment bars the prosecution because imposing an obligation on publishers to review all

15  speech to ensure that none is unlawful would severely chill free expression.

16      2.     The Demurrer should be sustained under Penal Code §§ 1004(4) and (5) because

17  the Complaint and prosecution are legally barred by Section 230 of the Communications Decency

18  Act, 47 U.S.C. § 230, which grants immunity to interactive computer services such as

19  Backpage.com for any liability based on publishing third-party content or for failing to remove

20  any such content, regardless of any allegations that the website knew or should have known of

21  illegal content.  Section 230 expressly preempts *all* state criminal laws and absolutely precludes

22  the prosecution in this case.  Indeed, the Attorney General has admitted she has no authority to

23  bring state criminal charges against Backpage.com for publishing third-party content.

24      3.     The Demurrer should be sustained under Penal Code §§ 1004(2) and (4) because

25  the Complaint does not state facts that constitute public offenses under the criminal statutes

26  charged.  Contrary to Penal Code § 950, the Complaint (and the supporting declaration it

27  incorporates) fails to allege facts supporting each element of the charged offenses.

28

DAVIS WRIGHT TREMAINE LLP

1

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

a.      With regard to the charges of pimping under Cal. Penal Code § 266h, the Complaint alleges no facts that Mr. Ferrer knew anything about the nine individuals who posted ads that are the premise for the charges, much less that they were prostitutes, as required by section 266h.  *See Wooten v. Superior Court*, 93 Cal. App. 4th 422, 437-38 (2001) (directing dismissal of claims based on failure to show defendants had any knowledge of alleged prostitution, and holding that allegations of generalized knowledge are insufficient under Section 266h).  Moreover, the First Amendment requires that, as essential elements of the charges against Mr. Ferrer, the State must allege facts (and ultimately prove) that he knew of the unlawful nature and content of the specific ads that are the subject of the charges, and, for Counts Two-Six, knew that the individuals involved were minors.  Yet, the Complaint and declaration allege no such facts, and do not even allege that Mr. Ferrer ever saw the subject ads or knew *anything* about them or the individuals who posted the ads.

b.      With regard to the charges of conspiracy under Penal Code § 182, the Complaint fails to allege any facts to establish the elements of the crime charged.  The Complaint and supporting declaration do not anywhere allege that Messrs. Lacey, Larkin and Ferrer entered into any agreement with anyone, or that they had any specific intent to commit a public offense of pimping as to any individual or engaged in any overt acts even remotely showing a purpose of accomplishing the illegal objective of any such (nonexistent) agreement.

The demurrer should be sustained without leave to amend, because the charges contained in the Complaint and the Attorney General's prosecution are absolutely barred by the First Amendment and Section 230 of the CDA and cannot be cured by amendment, and the Complaint does not and cannot state facts that constitute public offenses under the criminal statutes charged.

This Demurrer is supported by the concurrently filed Memorandum of Points and Authorities, Request for Judicial Notice (with accompanying Declaration of James C. Grant), and the papers and pleadings on file in this matter.

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

1    DATED:  October 19, 2016.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:                    C.
       James C. Grant

Attorneys for Defendants
Carl Ferrer, Michael Lacey and James Larkin

3

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

1

**TABLE OF CONTENTS**

2                                                                                    **Page**

3    MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

4    I.      INTRODUCTION...............................................................................................................1

5    II.     BACKGROUND.................................................................................................................2

6            A.      Backpage.com. ........................................................................................................3

7            B.      Unsuccessful Efforts of AG Harris and Other AGs to Shut Down Adult Online
                     Advertising and Admissions that CDA Section 230 Bars State Prosecutions. .........4
8

9            C.      The Criminal Complaint and Arrest Warrant Declaration. .......................................6

10           D.      The AG's Arrests and Incarceration of Defendants, Searches and Seizures, and
                     Opposition to Defendants' Efforts to Post Bail........................................................7

11   III.    ARGUMENT .....................................................................................................................8

12           A.      Standards for a Demurrer Under Penal Code § 1004..................................................8

13           B.      The Complaint and Prosecution Are Legally Barred By the First Amendment. .......9

14           C.      The Complaint and Prosecution Are Legally Deficient Under Section 230 of
                     the CDA, as the Attorney General Has Admitted. ...................................................14
15

16           D.      The Complaint Does Not State Facts that Constitute Public Offenses under the
                     Criminal Statutes Charged. .....................................................................................21

17                   1.       The "Pimping" Allegations Against Mr. Ferrer Are Wholly Deficient. .....23

18                   2.       The Conspiracy Charges Against Defendants Are Likewise Deficient. .....25

19   IV.     CONCLUSION ................................................................................................................27

20

21

22

23

24

25

26

27

28

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Almeida v. Amazon.com, Inc.*,
   456 F.3d 1316 (11th Cir. 2006) ................................................................16

5

6

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004) ................................................................................10

7

*Ashcroft v. Free Speech Coalition*,
   535 U.S. 234 (2002) ................................................................................12

8

9

*Backpage.com, LLC v. Cooper*,
   939 F. Supp. 2d 805 (M.D. Tenn. 2013) ........................................... *passim*

10

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) ...................................................11, 12, 22

11

12

*Backpage.com, LLC v. Hoffman*,
   2013 WL 4502097 (D.N.J. Aug. 20, 2013) .........................5, 11, 18, 19

13

14

*Backpage.com, LLC v. McKenna*,
   881 F. Supp. 2d 1262 (W.D. Wash. 2012) ........................................ *passim*

15

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) ................................................................................11

16

17

*Barrett v. Rosenthal*,
   40 Cal. 4th 33 (2006) ................................................14, 15, 16, 17

18

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ...................................................15, 16

19

20

*Ben Ezra, Weinstein & Co. v. America Online, Inc.*,
   206 F.3d 980, 985 n.3 (10th Cir. 2000) ..................................................17

21

22

*Berry v. City of Santa Barbara*,
   40 Cal. App. 4th 1075 (1995) ..................................................................13

23

*Bursey v. United States*,
   466 F.2d 1059 (9th Cir. 1972) ................................................................23

24

25

*Carafano v. Metrosplash.com, Inc.*,
   339 F.3d 1119 (9th Cir. 2003) ...................................................16, 17

26

27

*Dart v. Craigslist, Inc.*,
   665 F. Supp. 2d 961 (N.D. Ill. 2009) ......................................................22

28

DAVIS WRIGHT TREMAINE LLP

ii

*Delfino v. Agilent Techs., Inc.*,
145 Cal. App. 4th 790 (2006)...................................................................15, 16, 20

*Doe ex rel. Roe v. Backpage.com, LLC*,
104 F. Supp. 3d 149, 156 (D. Mass. 2015) ...............................................5, 22

*Doe II v. MySpace Inc.*,
175 Cal. App. 4th 561 (2009)........................................................... *passim*

*Doe v. GTE Corp.*,
347 F.3d 655 (7th Cir. 2003)......................................................................22, 26

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008).......................................................................16

*Doe v. MySpace, Inc.*,
629 F. Supp. 2d 663 (E.D. Tex. 2009) ......................................................20

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) .......................................................................................14

*Dulaney v. Municipal Court*,
11 Cal. 3d 77 (1974).......................................................................................9

*Elrod v. Burns*,
427 U.S. 347 (1976) .......................................................................................14

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008)...............................................17, 18, 19, 20

*Gentry v. eBay, Inc.*,
99 Cal. App. 4th 816 (2002)...................................................15, 19, 20

*Goddard v. Google, Inc.*,
640 F. Supp. 2d 1193 (N.D. Cal. 2009) ...................................................20

*Green v. Am. Online*,
318 F.3d 465 (3d Cir. 2003)........................................................................16

*Hupp v. Freedom Commc'ns, Inc.*,
221 Cal. App. 4th 398 (2013).....................................................................14

*Johnson v. Arden*,
614 F.3d 785 (8th Cir. 2010)......................................................................16

*Jones v. Dirty World Entertainment Recordings LLC*,
755 F.3d 398 (6th Cir. 2014)...............................................................16, 18

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) ...........................................................16, 19

DAVIS WRIGHT TREMAINE LLP

iii

DAVIS WRIGHT TREMAINE LLP

*Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
  519 F.3d 666, 671 (7th Cir. 2008) ...................................................................................16

*M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*,
  809 F. Supp. 2d 1041 (E.D. Mo. 2011) .......................................................................21, 22

*Mandel v. Municipal Court*,
  276 Cal. App. 2d 649 (1969) .........................................................................................9

*Mishkin v. New York*,
  383 U.S. 502 (1966) ......................................................................................................12

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ....................................................................................16, 18

*Osman v. Appellate Div. of Superior Court*,
  134 Cal. App. 4th 32 (2005) ..........................................................................................9

*People v. Bollaert*,
  248 Cal. App. 699 (2016) ...............................................................................................20

*People v. Gourlay*,
  2009 WL 529216 (Mich. Ct. App. Mar. 3, 2009) ..........................................................18

*People v. Morante*,
  20 Cal. 4th 403 (1999) ...............................................................................................25, 26

*People v. Osorio*,
  235 Cal. App. 4th 1408 (2015) ......................................................................................8

*People v. Superior Court*,
  49 Cal. 3d 14 (1989) .......................................................................................................9

*People v. Tolbert*,
  176 Cal. App. 3d 685 (1986) ..........................................................................................8

*People v. Toledo*,
  26 Cal. 4th 221 (2001) ..................................................................................................25

*Reno v. American Civil Liberties Union*,
  521 U.S. 844, 872 (1997) ....................................................................................10, 13, 17

*Ricci v. Teamsters Union Local 456*,
  781 F.3d 25 (2d Cir. 2015) ............................................................................................17

*Sea Horse Ranch, Inc. v. Superior Court*,
  24 Cal. App. 4th 446 (1994) ..........................................................................................26

*Smith v. California*,
  361 U.S. 147 (1959) ...................................................................................................1, 12

iv

*Stratton Oakmont, Inc. v. Prodigy Services Co.*,
    1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ...................................................................15

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000) ...................................................................12

*United States v. United States District Court*,
    858 F.2d 534 (9th Cir. 1988) ...................................................................13

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) ...................................................................13

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ...............................................................15, 17

*Video Software Dealers Ass'n v. Webster*,
    968 F.2d 684 (8th Cir. 1992) ...................................................................13

*Voicenet Commn'cns, Inc. v. Corbett*,
    2006 WL 2506318 (E.D. Pa. Aug. 30, 2006) ...................................................................18

*Whitney v. Municipal Court*,
    58 Cal. 2d 907 (1962) ...................................................................9

*Williams v. Superior Court*,
    111 Cal. App. 4th Supp. 1 (Cal. App. Dep't Super. Ct. 2003) ...................................................................8

*Wooten v. Superior Court*,
    93 Cal. App. 4th 422 (2001) ...................................................................25

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ...............................................................16, 17

**Statutes**

18 U.S.C. § 2 ...................................................................21

18 U.S.C. § 2255 ...................................................................21

47 U.S.C. § 230(a) ................................................................... *passim*

47 U.S.C. § 230(b) ................................................................... *passim*

47 U.S.C. § 230(c) ................................................................... *passim*

47 U.S.C. § 230(e) ...............................................................14, 17

47 U.S.C. § 230(f) ...................................................................14

DAVIS WRIGHT TREMAINE LLP

California Penal Code § 182 ...................................................................................1, 2

California Penal Code § 266h ............................................................................. *passim*

California Penal Code § 664 ............................................................................. 2, 25

California Penal Code § 1004 ............................................................................ *passim*

California Penal Code § 1275.1 ...........................................................................7, 8

Los Angeles County Code Chapter 7.38 ..............................................................10

Orange County Code, Title 5, Article 22 .............................................................10

Sacramento City Code Chapter 5.04 ....................................................................10

San Francisco Police Code, art. 15.6....................................................................10

**Other Authorities**

California Criminal Jury Instructions for Judges and Attorneys (CALCRIM) 1150......................24

Fed. R. Crim. P. 17................................................................................................23

DAVIS WRIGHT TREMAINE LLP

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

The Attorney General arrested and incarcerated the CEO of Backpage.com, LLC ("Backpage.com"), charging him with "pimping" under Penal Code § 266h, as well as two former owners of the company (Michael Lacey and James Larkin) on charges of conspiring to commit pimping, Penal Code § 182.  The basis for the AG's charges is that third-party users posted ads on Backpage.com, and the AG's office determined by responding to the ads that the users were offering prostitution.  With no allegations that Backpage.com had any knowledge of this—much less that any of the individual Defendants had knowledge or participated in any way in the ads that were created and posted by users—the Complaint alleges that Defendants are guilty of pimping and conspiracy because the users paid to post their ads.

The AG's Complaint and theory of prosecution are frankly outrageous.  The AG seeks to impose criminal liability on a website simply because it published and received fees for third-party ads.  The AG's chrages directly contravene the First Amendment and the immunity afforded to websites under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230.  Escort ads on Backpage.com are protected speech under the First Amendment, as several courts have held.  The AG cannot arrest, imprison and refuse to release individuals associated with the website simply based on an investigator's opinions about what he believes is "obvious" about escort ads.  Courts upholding the First Amendment rights of Backpage.com and its users have rejected the same tack time and again.  The First Amendment also expressly precludes state authorities from imposing criminal liability on parties that publish or distribute speech absent proof of scienter, *i.e.*, that the publisher knew the specific information published was unlawful.  The Supreme Court so held over fifty years ago, *Smith v. California*, 361 U.S. 147 (1959), recognizing the First Amendment prohibits states from imposing criminal liability that would require publishers to review all materials they distribute, because such a requirement would severely chill speech.

More specifically, the AG's theory expressly violates Section 230, which Congress enacted twenty years ago to preserve and promote free speech on the Internet by immunizing website

1

1   operators from liability for publishing content provided by third-party users.  Section 230

2   preempts all contrary state laws—including state criminal laws.  Indeed, Attorney General Harris

3   has acknowledged that Section 230 precludes her from prosecuting Backpage.com, but she has

4   now commenced a prosecution to do precisely what she admits Section 230 prohibits.

5          The AG's Complaint should be dismissed immediately.  The charges the state asserts

6   amount to a brazen effort to intimidate or shut down an online publisher by using all the criminal

7   sanctions at the AG's disposal, despite that she has no authority whatsoever to do so.

8                                    **II.     BACKGROUND**

9          On September 26, 2016, the Attorney General's office filed the Complaint, charging

10  Mr. Ferrer with nine counts of pimping and attempted pimping under Cal. Penal Code § 266h, and

11  charging him and Messrs. Lacey and Larkin with one count of conspiracy based on the same

12  alleged pimping charges.[1]  In support of arrest warrants, the AG submitted a declaration of Special

13  Agent Brian Fichtner of the California Department of Justice ("Fitchner Decl.").[2]  The Complaint

14  also expressly incorporates the supporting declaration.  Complaint at 9.

15         The AG coordinated with Texas authorities to arrest Mr. Ferrer at the Houston airport on

16  October 6, 2016, transferring him to California and holding him in custody.  Messrs. Lacey and

17  Larkin voluntarily traveled to and appeared in Sacramento, California on October 10, and were

18  arrested and incarcerated that day.  In the meantime, on October 6-7, Texas authorities executed

19  search warrants for Backpage.com's offices in Dallas and Mr. Ferrer's home.

20

21

22

23  [1] More specifically, the Complaint alleges against Mr. Ferrer four counts of pimping under Penal
    Code § 266h(b)(2) (Counts Two-Four and Six), one count of attempting pimping under Sections
24  266h(b)(2) and 664 (Count Five), and four counts of pimping under Section 266h(a) (Counts
    Seven-Ten).  The Complaint also charges Mr. Ferrer in the single conspiracy count under Penal
25  Code § 182 (Count One), along with Messrs. Lacey and Larkin.

26  [2] Materials supporting this motion are provided with the accompanying Motion for Judicial Notice
    with Declaration of James C. Grant ("MJN").  For the Court's convenience, the Complaint, the
27  Fitchner Declaration and the Texas search warrant for Backpage.com offices are attached to this
    Demurrer as Exhibits A, B and C, respectively.
28

DAVIS WRIGHT TREMAINE LLP

                                              2
DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

A.      **Backpage.com.**

Backpage.com operates an online classified advertising service through which users can post ads in a variety of categories, including local places, buy/sell/trade, automotive, rentals, real estate, jobs, dating, adult, and services. *See* Fitchner Decl. at 2-3; *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2013).  The site is organized geographically, by state and municipality. *Id*.  Users post millions of ads every month, making Backpage.com the second-largest online classified ad service in the country, after Craigslist. *See* Fitchner Decl. at 2 ("BACKPAGE is similar to Craigslist.org"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1266 (W.D. Wash. 2012).

Users provide all the content for ads they post on the website, using an automated interface; Backpage.com does not dictate or require any content.  Until July 2015, the website charged for ads in the adult and dating categories, while users could post ads for free in other categories. *See* Fitchner Decl. at 12; *Cooper*, 939 F. Supp. 2d at 813, 815 (noting the charges helped to discourage improper posting and state AGs originally encouraged Craigslist to impose charges to aid law enforcement).

Backpage.com imposes rules for ads posted on the site, and all users must affirmatively accept the posting rules. *Cooper*, 939 F. Supp. 2d at 813-14.  The rules are designed to prevent improper ads or misuse of the website.  The site's Terms of Use also prohibit illegal acts and warn that improper posts will be reported to law enforcement and subject to criminal prosecution. *See McKenna*, 881 F. Supp. 2d at 1266.  The site contains numerous hyperlinks to a "User Safety" page, which includes phone numbers and links for the National Center for Missing and Exploited Children ("NCMEC") and similar resources. *Id.*  Every ad contains a "Report Ad" button, and Backpage.com has an email address (abuse@backpage.com) for users to identify ads they believe improper or suspect. *See Cooper*, 939 F. Supp. 2d at 814.

"In addition to user reports, Backpage.com monitors potentially inappropriate ads through automated and manual reviews." *Id.*  Through this screening, Backpage.com blocks and removes posts and refers any that may indicate child exploitation to NCMEC. *See McKenna*, 881 F. Supp. 2d at 1266-67.  In his declaration, Agent Fichtner confirms that Backpage.com's practices are

3

effective.  When he sought to post an escort ad "containing sexual verbiage indicative of a prostitution ad," Backpage.com blocked the ad.  Fitchner Decl. at 6-7.  On another occasion, Agent Fichtner attempted to repost an ad that had been removed, "but Backpage.com did not allow it to go through."  *Id.* at 6.

"Backpage.com also regularly works with local, state and federal law enforcement officials by responding to subpoena requests, providing officials with Internet search tools, and removing posts and blocking users at the request of officials."  *Cooper*, 939 F. Supp. 2d at 814.  Here again, Agent Fichtner attests to Backpage.com's cooperation with law enforcement.  After he posted "undercover ads" on the website, he contacted Mr. Ferrer, identified himself as law enforcement, said that he "had identified a prostitution ad," and asked that it be removed.  Backpage.com removed the ad that day (as well as another ad Agent Fichtner had posted), and would not allow it to be re-posted.  Fichtner Decl. at 6.

**B.     Unsuccessful Efforts of AG Harris and Other AGs to Shut Down Adult Online Advertising and Admissions that CDA Section 230 Bars State Prosecutions.**

In 2010, Craigslist shut down its adult services category in response to pressure from a group of state attorneys general.[3]  Less than a week later, the AGs targeted Backpage.com, demanding it shut down its adult category.[4]  Attorney General Harris joined and signed an August 31, 2011 letter from the National Association of Attorneys General ("NAAG") to Backpage.com (which was publicly released and promoted by NAAG) demanding that it remove its adult category as Craigslist had done.[5]  Yet, NAAG's president at the time admitted the state AGs "have little legal standing to forcibly shut down" Backpage.com, because Section 230

---

[3] *See* M. Lindenberger, *Craigslist Comes Clean: No More 'Adult Services,' Ever*, TIME, Sept. 16, 2010, http://content.time.com/time/nation/article/0,8599,2019499,00.html.

[4] *See* State Attorney General Letter, http://www.illinoisattorneygeneral.gov/ pressroom/2010_09/Backpage_com9-20-2010.pdf).

[5] *See* MJN Ex. D (NAAG August 31, 2011 letter to Backpage.com counsel, http://www.ct.gov/ag/ lib/ag/press_releases/2011/083111backpageletter.pdf).

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

1    provides "broad immunity" to websites for third-party content, presenting a "high barrier"

2    precluding any action by the state AGs.[6]

3        In July 2013, AG Harris signed on to another NAAG letter addressed to various members

4    of Congress, urging that Section 230 be amended to exempt state criminal laws from immunity so

5    that state authorities could pursue Backpage.com.  The letter acknowledged that "[f]ederal courts

6    have broadly interpreted the immunity provided by the CDA," to "prevent[] State and local law

7    enforcement agencies from prosecuting" Backpage.com and insisted that "[t]his must change."[7]

8        The efforts of NAAG and Attorney General Harris to amend Section 230 to allow state

9    prosecutions of websites have been unsuccessful, as have their other efforts to censor

10   Backpage.com.  As discussed below, *see* Section III.B, three states (Washington, Tennessee and

11   New Jersey) passed criminal laws aimed at Backpage.com, but courts promptly enjoined and

12   struck down all three laws as unconstitutional and preempted by Section 230.  *See McKenna*, 881

13   F. Supp. 2d 1262; *Cooper*, 939 F. Supp. 2d 805; *Backpage.com, LLC v. Hoffman*, 2013 WL

14   4502097 (D.N.J. Aug. 20, 2013).  And, rather than lessen the CDA's strong immunity to websites,

15   Congress has "ratcheted it up … by expanding the scope of Section 230 immunity to preempt the

16   enforcement of inconsistent foreign judgments."  *Doe ex rel. Roe v. Backpage.com, LLC*, 104 F.

17   Supp. 3d 149, 156 (D. Mass. 2015) (dismissing under Section 230 private claims alleging

18   Backpage.com violated federal sex trafficking laws), *aff'd sub nom. Jane Doe No. 1 v.*

19   *Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016), *cert. petition filed*, No. 16-276 (U.S. Aug. 31,

20   2016).

21

22

---

23   [6] *See* MJN Ex. E (Washington AG gubernatorial campaign website quoting press statements about
24   AG's efforts against Backpage.com and the bar presented by Section 230).

25   [7] *See* MJN Ex. F (NAAG July 23, 2013 letter to members of Congress, https://www.eff.org/files/
     cda-ag-letter.pdf).  This letter was promoted by a group within NAAG called the "Backpage
26   Executive Committee," which explained that the purpose of the proposed Section 230 amendment
     was to "extend[] criminal jurisdiction … to state and local governments," because under the law
27   only the federal government has authority to prosecute websites.  *See id.* Ex. G (June 14, 2013
     letter from the Backpage Executive Committee to all Attorneys General, Chief Deputies, and
28   Executive Assistants, https://www.cdt.org/files/file/AG-Letter-Section-230.pdf).

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

### C.    The Criminal Complaint and Arrest Warrant Declaration.

The AG asserts eight charges of pimping and one charge of attempted pimping against Mr. Ferrer based on allegations that nine individuals posted and paid for ads on Backpage.com. Complaint at 4-9 (Counts Two-Ten).[8]  The Complaint and declaration provide no basis for these charges except that Mr. Ferrer is the CEO of Backpage.com and the named partner of the corporate parent of Backpage.com, LLC.  Fichtner Decl. at 3.  Agent Fichtner's declaration explains that all of the ads about these individuals were written and posted by the individuals themselves.  *Id.* at 7-11.  The AG does not allege that Mr.Ferrer had any role in or any knowledge of the ads or that he ever even saw them.  Indeed, Agent Fichtner alleges the individuals who posted ads evaded the website's rules and restrictions, so that Backpage.com could not have known the ads were improper or concerned prostitution.  *Id.* at 8, 10 (including statement by one individual:  "how are they supposed to know I'm underage?").  The only specific allegations Agent Fichtner offers concerning Mr. Ferrer relating to ads on the website are that he promptly removed ads when requested and he was copied on Backpage.com's responses to "numerous law enforcement subpoenas and search warrants."  Fichtner Decl. at 4, 6.

Instead, the Complaint charges that Mr. Ferrer is guilty of pimping because the individuals paid for their ads (in amounts totaling $79.60, *see* Complaint at 3-4), Backpage.com received these payments, and therefore Mr. Ferrer "did live and derive support and maintenance" from persons engaged in prostitution or "solicit[ed] and receive[d] compensation for soliciting for said prostitute[s]."  Complaint at 5 (*see* Penal Code § 266h).

The one-count conspiracy charge alleged against Messrs. Ferrer, Lacey and Larkin is even more attenuated.  These gentlemen were, respectively, the chief editor and publisher of Village Voice Media Holdings, the company that formerly owned Backpage.com as well as fourteen weekly newspapers across the country.  As Agent Fichtner asserts, they no longer own interests in Backpage.com and haven't for almost two years.  Fichtner Decl. at 3.  Nonetheless, the AG charges them with conspiracy to commit pimping as to the nine individuals who advertised on the

---

[8] The nine individuals are identified as:  A.C., E.V., L.F., E.S., Z.G., A.H, S.C., L.B., and K.A.

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

website (the ads that are the predicate for the claims against Mr. Ferrer) based solely on their

former ownership interests in Backpage.com and that the website charged for escort ads,

employed a process to screen ads, arranged for a processor to handle credit card transactions; and

the nine individuals paid for the ads.  Complaint at 2-4.  As with Mr. Ferrer, the Complaint and

declaration offer no allegations that Messrs. Lacey and Larkin ever had anything to do with or

knew anything about these ads.

### D.      The AG's Arrests and Incarceration of Defendants, Searches and Seizures, and Opposition to Defendants' Efforts to Post Bail.

The Attorney General's office did not contact Backpage.com, its counsel, or the

Defendants before moving forward with arrests and searches based on the Complaint

(notwithstanding that Backpage.com has cooperated with the AG's office many times before).

Rather, the AG enlisted Texas law enforcement authorities to arrest Mr. Ferrer on October 6,

2016, as he deplaned in Houston from a flight from Amsterdam, based on the California AG's

Complaint and arrest warrant.  The Texas authorities jailed Mr. Ferrer, while the California AG's

office sought to extradite him.  Through counsel, Mr. Ferrer agreed to be transferred to California,

and he was flown to Sacramento and incarcerated there on October 7.

On October 6 and 7, 2016, Texas authorities executed search warrants based on the

declaration supplied by the California AG.  In a two-day search of Backpage.com's offices in

Dallas, authorities seized computers, servers, passwords, and scores of boxes of documents,

effectively anything relating to Backpage.com's operation of its business and the website.[9]  Texas

law enforcement also searched Mr. Ferrer's home.

In the meantime, the AG obtained an order requiring bail of $500,000 to secure

Mr. Ferrer's release.  Counsel for Mr. Ferrer sought to make arrangements to post bail, but the

AG's office insisted it would object to any payment of the bail or posting of a bond under Cal.

Penal Code § 1275.1, and would demand proof that funds were not "tainted" as being connected in

some way to revenues from Backpage.com (notwithstanding that AG lacked authority to prosecute

and the Complaint did not and could not allege that all funds associated with Backpage.com were

---

[9] *See* Texas search warrant for Backpage.com offices, attached as Exhibit C.

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

1  unlawful).  Mr. Ferrer's counsel communicated to the AG's office that bond could be posted based

2  on funds unrelated to Backpage.com (and offered to provide proof), but the AG still insisted that

3  Mr. Ferrer remain incarcerated until a hearing could be held on its demands under Penal Code

4  § 1275.1.

5       Messrs. Lacey and Larkin agreed to voluntarily travel to and appear to state authorities in

6  Sacramento on October 10, 2016.  They expected and were prepared to post bail (set at $250,000

7  for each), but, again, the AG insisted that it would contest any bond or bail under Section 1275.1.

8  As a consequence, these gentlemen were also taken into custody.

9       While defendants' counsel sought to resolve the bail issues as soon as possible, the AG

10  asked for a delay until after the defendants appeared for a public arraignment, which they did on

11  October 12, 2016.  The next day, the Court held the 1275.1 hearing and promptly ordered that the

12  defendants be released on bail.  Mr. Ferrer was finally released in the early hours of October 14,

13  after he had been held in custody for a week, and Messrs. Lacey and Larkin were released after

14  being incarcerated for four days.

### III.    ARGUMENT

#### A.    Standards for a Demurrer Under Penal Code § 1004.

17      Penal Code § 1004 authorizes a defendant to demur to an accusatory pleading that (1) fails

18  to "substantially conform" to the provisions of Sections 950 and 952, which govern the form and

19  content of accusatory pleadings, (2) alleges facts that "do not constitute a public offense," or

20  (3) "contains matter which, if true, would constitute a legal justification or excuse of the offense

21  charged, or other legal bar to the prosecution."  *Id*. §§ 1004(2), (4), (5).  A demurrer "tests only

22  those defects appearing on the face of [the accusatory] pleading," and is appropriate when it

23  "raises an issue of law as to the sufficiency of the ... pleading."  *People v. Osorio*, 235 Cal. App.

24  4th 1408, 1412 (2015) (quoting *People v. Manfredi*, 169 Cal. App. 4th 622, 626 (2008)).  "[F]or

25  purposes of demurrer ... matters which may be judicially noticed may be said to appear

26  constructively on the face of the pleading."  *People v. Tolbert*, 176 Cal. App. 3d 685, 689 (1986).

27      A demurrer is appropriate to dismiss charges that are unconstitutional or preempted.  *See*

28  *Williams v. Superior Court*, 111 Cal. App. 4th Supp. 1, 6 (Cal. App. Dep't Super. Ct. 2003) ("A

8

demurrer's purpose under section 1004 is dismissal of a pleading which lacks adequate notice of the public offense charged or charges one that is unconstitutional so as to generate a legally sufficient accusation."), *disagreed with on other grounds*, *Osman v. Appellate Div. of Superior Court*, 134 Cal. App. 4th 32 (2005).  Indeed, the California Supreme Court has often sustained demurrers dismissing criminal charges that violate the First Amendment.  *See, e.g.*, *People v. Superior Court*, 49 Cal. 3d 14, 27 (1989) (sustaining superior court demurrer to charges against theatre for unlawfully displaying adult films based on standard that violated the First Amendment); *Dulaney v. Municipal Court*, 11 Cal. 3d 77, 89 (1974) (sustaining demurrer and entering writ of prohibition prohibiting prosecution under municipal ordinance precluding posting of signs on utility poles as violating the First Amendment); *Whitney v. Municipal Court*, 58 Cal. 2d 907, 910-11 (1962) (sustaining demurrer to prosecution under municipal obscenity ordinance preempted by state law); *see also Mandel v. Municipal Court*, 276 Cal. App. 2d 649, 673-74 (1969) (reversing trial court decision refusing to grant demurrer and holding that prosecution of defendant under vagrancy ordinance for distributing anti-draft leaflets on high school campuses violated First Amendment).  As the case law demonstrates, when the State seeks to prosecute criminal charges that violate the Constitution or as to which the State has no authority, a Section 1004 demurrer is the proper remedy to dismiss the charges and stop the prosecution at the outset.

**B.     The Complaint and Prosecution Are Legally Barred By the First Amendment.**

The Attorney General's theory of prosecution violates basic principles of First Amendment law.  The AG's theory, reflected in the Complaint and supporting declaration, is that the State may prosecute individuals associated with an online publisher simply for publishing third-party speech if it turns out that some content implicates unlawful conduct, *i.e.* prostitution.  Ample Supreme Court precedent expressly rejects such a theory of unknowing criminal liability, given the chilling effect it would have on free speech.

The AG initiated this prosecution in the face of an unbroken line of cases holding that online forums for classified ads—and specifically Backpage.com—are protected by the First Amendment.  Government officials at various levels have attempted to censor such advertising forums in many ways, and each has been held to violate the Constitution.  Speech through the

DAVIS WRIGHT TREMAINE LLP

9

1  Internet is subject to the same First Amendment protections and judicial scrutiny as applied to

2  other media.  *Reno v. ACLU*, 521 U.S. 844, 870 (1997).  And, the First Amendment concerns in

3  this case are particularly acute, where the state has commenced a criminal prosecution.  *Ashcroft v.*

4  *ACLU*, 542 U.S. 656, 660 (2004) (speech restrictions "enforced by severe criminal penalties, have

5  the constant potential to be a repressive force in the lives and thoughts of a free people").

6          In a series of cases, federal courts enjoined state criminal laws that targeted Backpage.com,

7  holding that escort ads on the website are protected speech and states' efforts to criminalize

8  publication violated the First Amendment.  First, in *Backpage.com, LLC v. McKenna*, 881 F.

9  Supp. 2d 1262, the court enjoined enforcement of  a Washington state statute that made it a felony

10 to publish, disseminate or display content that contained a "depiction of a minor" and any "explicit

11 or implicit offer" of sex for "something of value."  881 F. Supp. 2d at 1268.  The court rejected the

12 state's argument that the law affected only speech proposing illegal transactions, noting that escort

13 ads have long been permitted and escort services are licensed and regulated in many states.  *Id.* at

14 1282;[10] *see also id.* at 1280 ("The statue criminalizes more than offers to engage in illegal

15 transactions because the statute encompasses transactions that are not illegal.").  The court went on

16 to note that the Washington law was problematic not only because of "the protected speech that it

17 regulates by its terms," but also because it would "chill a substantial amount of protected speech,"

18 by creating a Hobson's choice for websites of either shutting down escort advertising or requiring

19 age verification and risking prosecution.  *Id.* at 1282.

20          The court in *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, struck down a similar

21 Tennessee statute, likewise holding that third-party ads on Backpage.com are protected speech

22 under the First Amendment.[11]  Here again, the court rejected the state's argument that the statute

23 "[did] not implicate First Amendment scrutiny because it criminalize[d] only offers to engage in

24

[10] The same is true in California, as many cities and counties in the state license and regulate

25 escort services.  *See, e.g.*, Sacramento City Code ch. 5.04; San Francisco Police Code, art. 15.6;

26 Los Angeles County Code ch. 7.38; Orange County Code, tit. 5, art. 22

27 [11] The Tennessee law made it a felony to sell or offer to sell "an advertisement that would appear

to a reasonable person to be for the purpose of engaging in what would be a commercial sex act."

28 *Cooper*, 939 F.3d at 816.

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

illegal transactions," noting that the "statute's potential reach extend[ed] to notices related to legal, consensual activity by adults." *Id.* at 833-34.  As the court aptly said in that case:

> The Constitution tells us that—when freedom of speech hangs in the balance—the state may not use a butcher knife on a problem that requires a scalpel to fix.  Nor may a state enforce a law that flatly conflicts with federal law.

*Id.* at 813.

In the third case of the trilogy concerning state criminal laws aimed at Backpage.com, *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, the court struck down a New Jersey statute almost identical to the Washington law that had been invalidated, again rejecting arguments of the state that escort ads on the website are unprotected speech.  *Id.* at *9-11 (accepting argument that the law would impermissibly burden any Internet "forum for communication … if it does not police or eliminate user postings").

In each of these cases, state authorities falsely sought to cast all escort ads as ads for prostitution, and each time courts rejected the arguments because the states' theories and laws would have burdened broad swaths of constitutionally protected speech.  *See McKenna*, 881 F. Supp. 2d at 1280, 1282; *Cooper*, 939 F. Supp. 2d at 831; *Hoffman*, 2013 WL 4502097, at *9-11.[12] More recently, the Seventh Circuit underscored this point when it enjoined efforts by the Sheriff of Cook County to bully credit card companies into terminating services to Backpage.com based on the same false premise.  In *Backpage.com, LLC v. Dart*, 807 F.3d 229, 235-36 (7th Cir. 2015), *cert. denied*, 2016 WL 1723950 (U.S. Oct. 3, 2016), the Seventh Circuit held that Sheriff Dart's threatening letters and other actions toward Visa and MasterCard constituted an unconstitutional prior restraint under *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963).  Here too, the Sheriff argued that all ads in the adult section of Backpage.com were unlawful, but the Seventh Circuit rejected the argument and held that First Amendment protections applied.  807 F.3d at 234 ("Nor

---

[12] The courts in the three cases discussed above barred enforcement of the respective state laws because they forced Backpage.com to choose between "foregoing the right to publish third-party content and risking felony charges."  *Cooper*, 939 F. Supp. 2d at 845.  Here, there is not just a risk but the reality of criminal charges, coupled with incarceration of the individual defendants and dragnet searches and seizures of the publisher's home and business offices.  The constitutional stakes here exceed the possible chilling effect that persuaded courts to invalidate state laws in *McKenna*, *Cooper*, and *Hoffman*.

1    is Sheriff Dart on solid ground in suggesting that *everything* in the adult section of Backpage's

2    website is criminal, violent, or exploitive.... [N]ot all advertisements for sex are advertisements for

3    illegal sex.").  As Judge Posner wrote, "a public official who tries to shut down an avenue of

4    expression of ideas and opinions through actual or threatened imposition of government power or

5    sanction is violating the First Amendment."  *Id.* at 230 (internal quotation marks omitted).

6           The Attorney General's Complaint and theory of prosecution is likewise based on the

7    flawed (and oft-rejected) premise that the State can assert criminal charges based merely on

8    allegations that escort ads are illegal or may concern unlawful conduct.  The First Amendment

9    does not permit such a blunderbuss approach.  Under the First Amendment, in all contexts, it is the

10   *government's burden* to establish and justify actions that burden speech rights.  *United States v.*

11   *Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, [it]

12   bears the burden of proving the constitutionality of its actions.").  In short, the state may not

13   merely presume that speech is unlawful.

> The Government may not suppress lawful speech as the means to suppress
> unlawful speech.  Protected speech does not become unprotected merely because
> it resembles the latter.  The Constitution requires the reverse.  "[T]he possible
> harm to society in permitting some unprotected speech to go unpunished is
> outweighed by the possibility that protected speech of others will be muted ...."

17   *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002) (quoting *Broadrick v. Oklahoma*, 413

18   U.S. 601, 612 (1973)).

19          Thus, it is a basic proposition of First Amendment law that states cannot criminally punish

20   publishers or distributors of speech without proof of scienter, *i.e.*, sufficient proof that a defendant

21   knew that the specific speech that is the basis for criminal charges was unlawful.  In *Smith v.*

22   *California*, 361 U.S. 147, the Supreme Court struck down a Los Angeles ordinance imposing

23   criminal sanctions on the sale of obscene books which required no scienter, because absent proof

24   that a seller had knowledge, "he will tend to restrict the books he sells" and the law would

25   "impose a severe limitation on the public's access to constitutionally protected matter" because the

26   threat of unknowing criminal liability would cause self-censorship, and "the bookseller's burden

27   would become the public's burden."  *Id.* at 153-54.  *See also Mishkin v. New York*, 383 U.S. 502,

28   511 (1966) ("[t]he Constitution requires proof of scienter to avoid the hazard of self-censorship of

DAVIS WRIGHT TREMAINE LLP

12

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

constitutionally protected material and to compensate for the ambiguities inherent in the definition of obscenity").  Similarly, in *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the Court interpreted a federal statute prohibiting interstate transfer of child pornography to require that the government prove a defendant had knowledge of "both … the sexually explicit nature of the material and … the age of the performers," because a lack of such scienter requirements "would raise serious constitutional doubts."  *Id.* at 78.[13]  California cases recognize and follow these constitutional principles, holding that statutes criminalizing the distribution of obscene or unlawful materials must contain scienter requirements (or be fairly interpreted as doing so) because otherwise such laws "would have an unacceptable chilling effect on the public's access to constitutionally protected materials."  *Berry v. City of Santa Barbara*, 40 Cal. App. 4th 1075, 1087 (1995).

The AG's Complaint in this case ignores and is irreparably deficient under these First Amendment principles.  Nothing in the Complaint or Agent Ficthner's declaration alleges that the advertisements posted by the nine individuals upon which the charges are based were unlawful on their face.  The declaration states that all of the ads were written and posted by the individuals themselves.  There is no allegation that the defendants or anyone from Backpage.com had any role in creating or posting the ads.  The AG does not even allege that Mr. Ferrer ever saw or had any knowledge of the ads.  The Complaint is still more deficient as to Messrs. Lacey and Larkin, as it alleges that their only connection is that they formerly owned interests in Backpage.com and so should be criminally liable because the website received payments of $79.60 for ads from the nine individuals.  The allegations set forth in Agent Fitchner's declaration do not even attempt to establish scienter as to any of the defendants for any of the ads that are the basis for the state's prosecution.  The First Amendment expressly forbids criminal charges on this premise.

Criminal sanctions inhibiting free speech rights are among the most pernicious forms of government violations of the First Amendment.  *See Reno*, 521 U.S. at 872 ("The severity of

---

[13] *See also United States v. United States District Court*, 858 F.2d 534, 540 (9th Cir. 1988) ("the first amendment does not permit the imposition of criminal sanctions on the basis of strict liability where doing so would seriously chill protected speech"); *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992) ("Statutes that impose criminal responsibility for dissemination of unprotected speech must contain a knowledge requirement.").

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

criminal sanctions may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images."); *Dombrowski v. Pfister*, 380 U.S. 479, 494 (1965) (even as to criminal charges that are groundless, the threat of prosecution "is a real and substantial one" that can have a "chilling effect on protected expression").  Here, the severity of the charges leveled, and the aggressiveness with which the AG has sought to demonize and punish the defendants on baseless charges illustrates why this Court should promptly dismiss this prosecution.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

### C.   The Complaint and Prosecution Are Legally Deficient Under Section 230 of the CDA, as the Attorney General Has Admitted.

Free speech on the Internet is protected not only by the First Amendment, but also by Section 230 of the CDA.  "[T]he plain language of section 230 'creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user.'"  *Barrett v. Rosenthal*, 40 Cal. 4th 33, 43 (2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).  In simple terms, Section 230 bars any state-law claims—civil or criminal—against an online publisher such as Backpage.com (and the defendants) based on third-party content it publishes.  Attorney General Harris knows and has admitted she has no authority to prosecute Backpage.com for ads it publishes, yet the Complaint and the prosecution here seek to do exactly that.

Section 230 states:  "No provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).[14]  The statute expressly preempts state laws:  "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).[15]

---

[14] An "information content provider" is one "responsible, in whole or in part, for the creation or development of information," 47 U.S.C. § 230(f)(3), such as users who post on Backpage.com.

[15] California courts routinely reject claims based on Section 230 on preliminary motions.  *E.g.*, *Barrett*, 40 Cal. 4th 33 (2006) (affirming trial court order granting special motion to strike claims based on Section 230); *Hupp v. Freedom Commc'ns, Inc.*, 221 Cal. App. 4th 398 (2013) (same); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 563, 566 (2009) (affirming trial court orders

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1   Congress enacted Section 230 to achieve two goals.  First, the statute is meant "to

2   encourage the unfettered and unregulated development of free speech on the Internet, and to

3   promote the development of e-commerce."  *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003);

4   *accord Barrett*, 40 Cal. 4th at 56 (Section 230 reflects "legislative commitment to the value of

5   maintaining a free market for online expression"); *Delfino v. Agilent Techs., Inc.*, 145 Cal. App.

6   4th 790, 802-03 (2006) (CDA was intended to "avoid the chilling effect upon Internet free speech"

7   that would arise from imposing liability on "companies that do not create potentially harmful

8   messages but are simply intermediaries for their delivery").  Congress recognized the Internet

9   would be crippled if online providers could be held liable for third-party content, "given the

10  volume of material communicated …, the difficulty of separating lawful from unlawful speech,

11  and the relative lack of incentives to protect lawful speech."  *Universal Commc'n Sys., Inc. v.*

12  *Lycos, Inc.*, 478 F.3d 413, 418-19 (1st Cir. 2007); *see Batzel*, 333 F.3d at 1034 (absent Section

13  230, "speech over the Internet will be chilled rather than encouraged"); *see* 47 U.S.C. § 230(a)(4)

14  and (b)(2) (finding the Internet has "flourished, to the benefit of all Americans, with a minimum of

15  government regulation," and Section 230 is intended to "preserve the vibrant and competitive free

16  market that presently exists for the Internet").

17  Second, Congress sought to encourage online providers to self-police for potentially

18  harmful or offensive material by providing immunity for such efforts.  *See Doe II*, 175 Cal. App.

19  4th at 570 (emphasizing "Congress' intent 'to remove disincentives for the development and

20  utilization of blocking and filtering technologies'" (quoting 47 U.S.C. § 230(b)(4)); *Batzel*, 333

21  F.3d at 1028.  Congress recognized that if websites undertook to screen or block improper content

22  but could be held liable for doing so imperfectly, they likely would do no screening at all.  *See*

23  *Barrett*, 40 Cal. 4th at 44 (noting that, in passing Section 230, Congress expressly rejected *Stratton*

24  *Oakmont, Inc. v. Prodigy Services Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), which

25  applied common law principles to hold Prodigy liable as a publisher because it screened and

26  edited some bulletin board messages to prevent offensive content but failed to delete the posts

27

28  sustaining demurrers based on Section 230); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 819
    (2002) (same).

15

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

1  about which the plaintiff claimed); *see also Batzel*, 333 F.3d at 1029 ("If efforts to review and

2  omit third-party defamatory, obscene or inappropriate material make a computer service provider

3  or user liable for posted speech, then website operators and Internet service providers are likely to

4  abandon efforts to eliminate such material from their site[s].").

5       The purposes and scope of Section 230 immunity were summarized by the Fourth Circuit

6  in *Zeran*, which California courts have followed as "[t]he leading case on immunity protection

7  under Section 230," *Doe II*, 175 Cal. App. 4th at 569; *see Barrett*, 40 Cal. 4th at 42-46; *Delfino*,

8  145 Cal. App. 4th at 802-803:

> 9     Congress' purpose in providing the § 230 immunity was thus evident.  Interactive
> 10  computer services have millions of users.  The amount of information
> communicated via interactive computer services is therefore staggering.  The
> 11  specter of tort liability in an area of such prolific speech would have an obvious
> chilling effect.  It would be impossible for service providers to screen each of
> 12  their millions of postings for possible problems.  Faced with potential liability for
> each message republished by their services, interactive computer service
> 13  providers might choose to severely restrict the number and type of messages
> posted.  Congress considered the weight of the speech interests implicated and
> 14  chose to immunize service providers to avoid any such restrictive effect.

15  *Zeran*, 129 F.3d at 331 (citations omitted), *quoted in Doe II*, 175 Cal. App. 4th at 569.[16]

16       Courts have interpreted Section 230 in accordance with its purposes.  Thus, California

17  courts have followed the uniform interpretation of the federal circuit courts in holding that Section

18  230 establishes broad immunity for online providers.  *Barrett*, 40 Cal. 4th at 53 (Section 230

19  "broadly shield[s] all providers from liability for 'publishing' information received from third

20  parties"); *Doe II*, 175 Cal. App. 4th at 572 (noting "consensus to interpret Section 230 broadly").[17]

21

---

22  [16] Congress recognized that some material on the Internet could be harmful, but made a policy
23  choice that liability could be imposed on "the person who creates or develops unlawful content,
but not the interactive computer service provider who merely enables that content to be posted
online."  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009).

24
25  [17] *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) ("circuits have
interpreted [Section 230] to establish broad federal immunity"); *Carafano v. Metrosplash.com,
26  Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003) (noting "consensus" that "§ 230(c) provides broad
immunity for publishing content provided primarily by third parties"); *Green v. Am. Online*, 318
27  F.3d 465, 471 (3d Cir. 2003); *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010); *Doe v.
MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Chi. Lawyers' Comm. for Civil Rights Under
28  Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008); *Jones v. Dirty World Entm't
Recordings LLC*, 755 F.3d 398, 406-07 (6th Cir. 2014); *Klayman v. Zuckerberg*, 753 F.3d 1354,

16

DAVIS WRIGHT TREMAINE LLP

Likewise, the case law uniformly holds that Section 230 forbids claims against a website "for the exercise of its editorial and self-regulatory functions" about whether to block or allow content. *Zeran*, 129 F.3d at 331. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is *perforce* immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc); *accord Doe II*, 175 Cal. App. 4th at 572 (Section 230 protects "exercise of a publisher's traditional editorial functions, such as editing, altering, or deciding whether or not to publish certain material"); *Carafano*, 339 F.3d at 1124 ("[u]nder section 230(c), … so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process").

Section 230 immunity applies and protects a website notwithstanding allegations that it knew or should have known of unlawful content or conduct, as "[s]ubjecting service providers to notice liability would defeat 'the dual purposes' of section 230, by encouraging providers to restrict speech and abstain from self-regulation." *Barrett*, 40 Cal. 4th at 45 (quoting *Zeran*, 129 F.3d at 333). "It is, by now, well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech." *Lycos*, 478 F.3d at 420 (citing *Barrett*, 40 Cal. 4th at 51).

By its terms, Section 230 preempts and precludes not only state *civil* claims but also charges under state *criminal* laws. Section 230(c)(1) states, without qualification, that "[n]o cause of action may be brought and *no liability may be imposed* under *any State or local law* that is inconsistent with this section." 47 U.S.C. § 230(e)(3) (emphasis added). While immunity does not extend to prosecutions under a "*Federal* criminal statute," *id.* § 230(e)(1) (emphasis added), *state* criminal statutes are not exempt from its reach. "If Congress had wanted all criminal statutes to trump the CDA, it could have written subsection [230(e)](1) to cover 'any criminal statute' or 'any similar State criminal statute.' Instead, sub-subsection (1) is limited to *federal* criminal

---

1359 (D.C. Cir. 2014); *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015); *Ben Ezra, Weinstein & Co. v. Am. Online Inc.*, 206 F.3d 980, 985 n.3 (10th Cir. 2000); *Zeran*, 129 F.3d at 330-31.

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

statutes." *Voicenet Commn'cns, Inc. v. Corbett*, 2006 WL 2506318, at *4 (E.D. Pa. Aug. 30, 2006) (emphasis added).  Every court to consider this issue has reached the same conclusion, holding that Section 230 preempts state criminal laws.  *See McKenna*, 881 F. Supp. 2d at 1275 ("If Congress did not want the CDA to apply in state criminal actions, it would have said so."); *Cooper*, 939 F. Supp. 2d at 821-26; *Hoffman*, 2013 WL 4502097, at *6; *People v. Gourlay*, 2009 WL 529216, at *3 (Mich. Ct. App. Mar. 3, 2009) ("the phrase 'any State or local law' includes civil and criminal laws").[18]

Section 230 provides "an *immunity from suit* rather than a mere defense to liability." *Nemet Chevrolet*, 591 F.3d at 254, and, as a result, courts uniformly hold that claims against online providers based on third-party content should be dismissed at the earliest possible opportunity, to avoid "costly and protracted legal battles," *Roommates.com, LLC*, 521 F.3d at 1175.  Congress's intent to protect Internet free speech and the purpose of the immunity are "effectively lost if a case is erroneously permitted to go to trial" rather than being dismissed at the outset.  *Nemet Chevrolet*, 591 F.3d at 254; *accord Jones*, 755 F.3d at 417 ("[g]iven the role that the CDA plays in an open and robust internet by preventing the speech-chilling threat of the heckler's veto, we point out that determinations of immunity under the CDA should be resolved at an earlier stage of litigation").

In the trilogy of cases striking down state laws aimed at Backpage.com, all three federal courts held that the laws were invalid and Backpage.com was entitled to immunity under Section 230.  In *McKenna*, the court held the Washington law "impos[ed] liability on Backpage.com … for information created by third parties—namely ads for commercial sex acts depicting minors— so long as it 'knows' that it is publishing, disseminating, displaying, or causing to be published, disseminated, or displayed such information." 881 F. Supp. 2d at 1273.  In doing so, the law "create[d] an incentive for online service providers *not* to monitor content … precisely the situation that the CDA was enacted to remedy." *Id.*; *see also Cooper*, 939 F. Supp. 2d at 823

---

[18] The legislative history of Section 230 reinforces this conclusion.  As originally written, Section 230(b)(5) stated "[i]t is the policy of the United States to… ensure vigorous enforcement of criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer."  H.R. 1978 (June 30, 1995).  But it was later changed to say "[i]t is the policy of the United States … to ensure vigorous enforcement of *Federal* criminal laws …." 47 U.S.C. § 230(b)(5) (emphasis added).

18

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

1   (enjoining Tennessee statute because it "impose[d] liability on websites such as Backpage.com for

2   selling or offering to sell advertisements, activity inherent in their role as publishers"); *Hoffman*,

3   2013 WL 4502097, at *6 (similar law "r[a]n[] afoul of Section 230 by imposing liability … for

4   information created by third parties—namely ads for commercial sex acts depicting minors").

5       The AG's tack to impose criminal liability on the Defendants for Backpage.com's

6   publication of third-party content is likewise expressly barred and preempted under Section 230.

7   Section 230 immunity applies when:  "(1) the defendant [is] a provider or user of an interactive

8   computer service; (2) the cause of action treat[s] the defendant as a publisher or speaker of

9   information; and (3) the information at issue [is] provided by another information content

10  provider."  *Gentry*, 99 Cal. App. 4th at 830 (citing 47 U.S.C. § 230(c)(1)).  All of the elements of

11  the three-part test for Section 230 immunity are established here.

12      First, Backpage.com indisputably is a "provider … of an interactive computer service."  47

13  U.S.C. § 230(c)(1).  *See Roommates.com*, 521 F.3d at 1162 n.6 (the "most common interactive

14  computer services are websites"); *Hoffman*, 2013 WL 4502097, at *6 (Backpage is a "provider[]

15  of an interactive computer service within the meaning of CDA Section 230.").  The defendants are

16  also entitled to immunity, as Section 230 extends to individuals who operate websites, as well as

17  to the websites themselves.  *See, e.g.*, *Klayman*, 753 F.3d at 1357-58 ("Mark Zuckerberg, too,

18  qualifies for protection [under § 230] because he is a 'provider' of Facebook's interactive

19  computer service and Klayman's complaint seeks to hold him accountable for his role in making

20  that service available.").

21      Second, the AG's charges against Defendants are based on third-party ads on the website,

22  *i.e.*, content provided by other information content providers.  The AG nowhere alleges that

23  Defendants authored, created, or participated in posting the ads of the nine individuals.  To the

24  contrary, the Complaint and declaration admit the opposite.  *See, e.g.*, Complaint at 2 (alleging

25  that "users of Backpage.com … post[ed] escort advertisements"); Fitchner Decl. at 2-3

26  ("BACKPAGE is similar to Craigslist.org in that it is an on-line general classified advertising site"

27  allowing "user[s] to post advertisements for 'escorts'" for certain fees); *id.* at 7-10 (noting that

28  users identified as A.H. , E.S., A.C. S.C. L.B. E.V. K.A. and L.F. stated that they posted ads on

DAVIS WRIGHT TREMAINE LLP

19

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

1   Backpage.com).  *See Delfino*, 145 Cal. App. 4th at 807-08 (Section 230 provided immunity to

2   defendant where "the complaint consistently and repeatedly attributes authorship of the offensive

3   messages to [a third party]").[19]

4         Finally, the charges target Backpage.com for publishing information online and alleged

5   harms "caused by content provided by … third part[ies]."  *Gentry*, 99 Cal. App. 4th at 830; *see*

6   *also id.* at 832 (Section 230 forbids putting a website "in the shoes" of individuals who misused

7   the site for unlawful purposes).  Indeed, the AG *admits* Backpage.com takes measures to screen

8   and block inappropriate ads, *see* Complaint at 2 (alleging Mr. Ferrer "developed and oversaw a

9   process to screen escort ads"); Fitchner Decl. at 4 (acknowledging screening process), and the only

10  *facts* alleged concerning the website's screening and removal of ads are that they were effective,

11  *see* Fitchner Decl. at 6-7 (stating that he was unable to post ads with inappropriate terms,

12  Mr. Ferrer removed ads as requested, and the website thereafter blocked reposting of the same

13  ads).  These are precisely the efforts the CDA was designed to protect, and the AG's charges

14  based on Agent Fitchner's opinions about the "obvious nature" of escort ads or the efficacy of

15  Backpage.com's screening processes are precisely what the CDA prohibits.  As *Cooper* held,

16  "Backpage.com is the quintessential publisher contemplated by the CDA: it hosts and maintains

17  an ongoing forum for user-generated postings—some paid, others free—that it shares with the

18  public at large."  939 F. Supp. 2d at 823.  *See also Doe II v. Myspace Inc.*, 175 Cal. App. at 573

19  _____

20  [19] Because there is no dispute here that third-party users created and posted the ads that are the
    premise of the AG's charges, *People v. Bollaert*, 248 Cal. App. 699 (2016), is inapplicable.

21  There, the Court of Appeal held that a website was not immune under Section 230 because it
    forced users to provide information that was itself unlawful and violated privacy rights of

22  individuals whose compromising photos were posted by other users (*i.e.*, the website required
    users to provide names, locations and Facebook addresses of the persons photographed).  *Id.* at

23  833-34.  In so doing, the court followed the narrow exception to Section 230 immunity discussed
    in *Roommates.com*, 521 F.3d 1157.  *See Goddard v. Google, Inc*., 640 F. Supp. 2d 1193, 1198

24  (N.D. Cal. 2009) (*Roommates.com* "carved out only a narrow exception" that "turned entirely on
    the website's decision to force subscribers to divulge the protected characteristics and

25  discriminatory preferences as a condition of using its services." (internal quotation marks
    omitted)); *see also Doe v. MySpace, Inc.*, 629 F. Supp. 2d 663, 665 (E.D. Tex. 2009)

26  (distinguishing *Roommates.com* because "[t]he Ninth Circuit repeatedly stated … that the

27  Roommates.com website *required* its users to provide certain information as a condition of its use

28  …." (emphasis in original)).

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

1    (barring claims by four minors against social networking site where they met men who sexually

2    assaulted them; plaintiffs wanted website "to ensure that sexual predators do not gain access to

3    (i.e., communicate with) minors" and "[t]hat type of activity—to restrict or make available certain

4    material—is expressly covered by section 230").

5         This case does not present a close question.  The AG's abuse of prosecutorial powers is

6    obvious because she has *admitted* Section 230 preempts state laws and precludes a state criminal

7    prosecution of Backpage.com.  With other state attorneys general, in 2013 she urged Congress to

8    amend Section 230 because the law "prevents State and local law enforcement agencies from

9    prosecuting" Backpage.com, noting the *McKenna* decision, which "held that the CDA preempts

10   state criminal law."  MJN Ex. F.  The AG knows full well that Section 230 precludes the charges

11   alleged in the Complaint.  Yet, she has brought them anyway, in a blatant misuse of prosecutorial

12   authority.  This is particularly egregious in the context of threatening a publisher with criminal

13   penalties—coupled with arrest and incarceration to enforce the threats.

14        **D.    The Complaint Does Not State Facts that Constitute Public Offenses under the
             Criminal Statutes Charged.**

15

16        Even setting aside that the AG's prosecution is legally barred under the First Amendment

17   and Section 230 of the CDA, the Court should grant the demurrer because the Complaint fails to

18   allege any public offense.  Indeed, the AG has failed to allege essentially all of the elements of the

19   charges or any facts to support any claim.

20        As noted, the AG's theory is that the state can prosecute a website (and individuals

21   associated with the website in some way, no matter how attenuated) based on allegations that

22   users posted content allegedly relating to unlawful conduct, regardless of whether the defendants

23   knew of or participated in the unlawful activity.  Every court that has considered this theory has

24   rejected it.

25        For example, the court in *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F.

26   Supp. 2d 1041 (E.D. Mo. 2011), rejected arguments that Backpage.com could be held liable "as an

27   aider and abettor of minor sex trafficking."  *Id.* at 1053-54 (under 18 U.S.C. §§ 2, 2255).  Noting

28   that such a charge requires the government to prove that a defendant participated in a specific

DAVIS WRIGHT TREMAINE LLP

21

1    unlawful venture and acted to make the venture succeed, the court held that accusations attacking

2    the website fell well short of "the specific intent required for aiding and abetting." *Id.* at 1054.

3       Sheriff Dart raised and lost a similar claim in *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961

4    (N.D. Ill. 2009).  The court rejected his argument that Craigslist violated criminal prostitution laws

5    because it had an "adult services" category, holding this does not "cause" postings except "'in the

6    sense of providing a place where people can post," and websites "are not culpable for 'aiding and

7    abetting' their customers who misuse their services to commit unlawful acts." *Id.* at 967, 969

8    ("having an adult services category is not unlawful in itself nor does it necessarily call for

9    unlawful content").

10      More recently, the court in *Doe v. Backpage.com*, 104 F. Supp. 3d 149, held that

11    accusations attacking the Backpage.com website could not establish "affirmative participation in

12    an illegal venture" because having "an escorts section in a classified ad service, whatever its social

13    merits, is not illegal" and other features of the website or allegations about its efforts to screen

14    improper content could not be the basis for criminal liability.  104 F. Supp. 3d at 157.  *See also*

15    *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003) (noting that "[e]ven entities that know the

16    information's content do not become liable for the sponsor's deeds," and asking rhetorically:

17    "Does a newspaper that carries an advertisement for 'escort services' or 'massage parlors' aid and

18    abet the crime of prostitution, if it turns out that some (or many) of the advertisers make money

19    from that activity?").  "A web host cannot be classified as an aider and abettor of criminal

20    activities conducted through access to the Internet" any more so than a telephone company aids or

21    abets the sale of tapes or narcotics sold by phone or the Postal Service aids and abets such sales

22    delivered by mail.  *Id.*  Backpage.com simply cannot be subject to criminal liability as "an

23    intermediary between the advertisers of adult services and visitors to [the] website."

24    *Backpage.com, LLC v. Dart*, 807 F.3d at 234.

25       Similarly, the U.S. Department of Justice has expressly acknowledged that federal sex

26    trafficking laws do not impose criminal liability on websites for publishing third-party content that

27    may concern illegal acts.  The DOJ's National Coordinator for Child Exploitation Prevention and

28

*DAVIS WRIGHT TREMAINE LLP*

22

DAVIS WRIGHT TREMAINE LLP

Interdiction was asked in Congressional hearings:  "[W]hat laws apply to Internet providers like craigslist that would make them criminally liable for the postings?"  She responded:

> I am not aware of any laws that would make them liable [for third-party postings], unless there was evidence that craigslist was a participant ... conspiring with those who were misusing their site, that is, knowingly conspiring to violate the laws. . .. [T]he standard for prosecution would be knowing or willful. ... I am not aware of anything that shows us that craigslist might be criminally liable.  [A]t this point we have the proper tools.  We have what we need to prosecute the guilty, that is, the people who are using the Internet....  And I don't think anyone ... here would propose closing the Internet.

*Domestic Minor Sex Trafficking: Hearing Before Subcomm. on Crime, Terrorism, & Homeland Security of the H Comm. on the Judiciary,* 11th Cong. 215-16 (2010).

In fact, when the U.S. Attorney for the Western District of Washington later launched a criminal investigation of Backpage.com, the federal court in that district quashed the grand jury subpoenas issued at the government's behest.  Backpage.com argued that the subpoenas and investigation violated the First Amendment, *see, e.g.*, *Bursey v. United States*, 466 F.2d 1059, 1087-88 (9th Cir. 1972) ("Were we to hold that the exercise of editorial judgments ... raised an inference that the persons involved in the judgments had or may have had criminal intent, we would destroy effective First Amendment protection ...."), were unreasonable and oppressive under Fed. R. Crim. P. 17, and reflected an improper motive rather than a legitimate investigation. The court's orders remain sealed but, as noted, the court quashed the government's subpoenas, and the U.S. Attorney's Office then terminated its investigation.

### *1.  The "Pimping" Allegations Against Mr. Ferrer Are Wholly Deficient.*

The allegations of the Complaint and incorporated declaration regarding all defendants are wholly deficient in that they allege nothing more than that they were associated with Backpage.com, which published and received $79.60 in payment for ads from nine individuals who allegedly were involved in prostitution.  The Complaint and declaration provide no allegations of any knowledge, involvement or participation by any of the defendants in any illegal conduct of any of the nine individuals.

First, with regard to the charges against Mr. Ferrer for pimping, the Complaint and declaration allege only that he is the CEO of Backpage.com, Fitchner Decl. at 2; has been the sole

23

named partner of Backpage.com's parent company since late 2014, *id.* at 3; "runs the day-to-day

operations" of Backpage.com, *id.* at 4; was "copied on" Backpage.com's responses to law

enforcement subpoenas, *id.*; had been the recipient of communications from the National Center

for Missing and Exploited Children (without mentioning whether this relates to Backpage.com's

regular reporting to NCMEC of suspect ads), *id.* at 3-4; has "publicly acknowledged" that

"prostitution occurs on BACKPAGE" while acting to "mitigate[ ] criminal activity through a

screening process," *id.*; cooperated and promptly acted to remove an ad that Agent Fitchner had

posted when he told Mr. Ferrer that he was "law enforcement" and had "identified a prostitution

ad," *id.* at 6; and emailed a payment processor about whether banks might be concerned about

"sexy email address names" of customers, *id.* at 12.

Otherwise, Agent Fitchner describes information he and other DOJ personnel learned in

interviews of the nine individuals about *their* activities, *id.* at 7-11; *see also* Complaint at 4-9;

mentions unrelated "undercover operations" conducted by DOJ (*i.e.*, posting sting ads on the

website), *id.* at 4, and offers his opinion that "it [is] plain to any individual … that BACKPAGE's

'Escort' ads are for prostitution," *id.*

None of this shows or even alleges that Mr. Ferrer (or anyone at Backpage.com, for that

matter) had any connection to any ads of the nine individuals that are the premise for the criminal

charges.  The AG alleges no facts that Mr. Ferrer ever saw any advertisements of these

individuals, much less that he knew any of them were acting as prostitutes, which is the central

element of Penal Code § 266h (liability applicable only to "any person who, knowing another

person is a prostitute …."); *see also* CALCRIM 1150.  Similarly, there is no allegation whatsoever

that Mr. Ferrer "derive[d] support or maintenance … from the earnings or proceeds of [these]

persons' prostitution," or that he knowingly "solicit[ed] or receiv[ed] compensation for soliciting

[prostitution services] for [these] person[s]."  Penal Code § 266h.[20]  Nor does the AG assert any

---

[20] Penal Codes § 266h(a) provides:

> [A]ny person who, knowing another person is a prostitute, lives or derives support
> or maintenance in whole or in part from the earnings or proceeds of the person's
> prostitution, or from money loaned or advanced to or charged against that person
> by any keeper or manager or inmate of a house or other place where prostitution
> is practiced or allowed, or who solicits or receives compensation for soliciting for

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1  allegations that Mr. Ferrer had any knowledge that the ads posted by the nine individuals were for

2  unlawful conduct or knew that the individuals who are the subject of Counts Two-Six were

3  minors, as is constitutionally required.

4      California law does not allow a charge or conviction under Penal Code § 266h without

5  proof that the defendant had knowledge that another person (from whom he obtained support) was

6  acting as a prostitute.  *See Wooten v. Superior Court*, 93 Cal. App. 4th 422, 437 (2001) (reversing

7  trial court's denial of motion to set aside information alleging pimping charges against strip club

8  owners where there was no showing they had knowledge that a dancer had offered to perform a

9  sex act; "pimping requires that a defendant know that another person is a prostitute").  So too, the

10  government's obligation is to allege and prove the defendant's knowledge of specific acts of

11  prostitution; allegations of "general knowledge" are not enough.  *Id.* at 438 (rejecting argument

12  that strip club owners could be convicted of pimping or pandering based on "general awareness of

13  sex acts occurring at the club"). [21]

14          **2.      The Conspiracy Charges Against Defendants Are Likewise Deficient.**

15      The Complaint's charge of conspiracy to commit pimping against all three defendants,

16  Complaint at 1-4 (Count One), is also completely deficient under California law.

17      To convict on a charge of conspiracy, the government must prove that the defendant and

18  another person entered into an agreement with the specific intent to commit an offense, as well as

19  the specific intent to commit the elements of that offense, together with proof of the commission

20  of an overt act "by one or more of the parties to such agreement" in furtherance of the conspiracy.

21  *People v. Morante*, 20 Cal. 4th 403, 416 (1999) (quoting Penal Code § 184).  The Complaint

22  alleges none of these elements, and the declaration offers no facts to support any conspiracy

23  charge.

24

25          the person, is guilty of pimping, a felony, and shall be punishable by
26          imprisonment in the state prison for three, four, or six years.

27  [21] Count Five alleges attempted pimping in violation of Penal Code §§ 266h and 664.  Complaint
    at 6.  This charge would require proof that the defendant had the specific intent to engage in
28  pimping.  *People v. Toledo*, 26 Cal. 4th 221, 229-30 (2001).

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

DAVIS WRIGHT TREMAINE LLP

1   Again, the Complaint and declaration do not purport to allege that the defendants knew

2   about any of the supposedly improper advertisements before they appeared on Backpage.com, or

3   that the ads concerned any illegal activity, or that defendants knew of and agreed to commit any

4   crime.  The allegations concerning Mr. Ferrer (discussed above) do not assert or suggest he

5   entered into any agreement with anyone with the intent to commit a crime.

6   The allegations concerning Messrs. Lacey and Larkin are no better.  The Complaint and

7   declaration assert that these gentlemen founded Backpage.com in 2004 and remained controlling

8   shareholders until 2012, when Backpage.com separated from its former parent company, Fitchner

9   Decl. at 2; owned and participated in operating Backpage.com until late 2014, Complaint at 2,

10   Fitchner Decl. at 3;[22] received communications from NCMEC, as did Mr. Ferrer, Fitchner Decl. at

11   3-4; received "regular updates, correspondence, and meeting notices" from Mr. Ferrer, *id.* at 4;

12   received "bonuses" in September 2014 (before they sold their interests in Backpage.com), *id.* at 4;

13   and revenues from Backpage.com were once used to pay them salaries and bonuses, *id.* at 6.

14   Nothing in these meager alleged facts suggests participation in a criminal conspiracy.

15   There is no alleged agreement to commit a crime, no suggestion that Mr. Lacey, Mr. Larkin or Mr.

16   Ferrer intended to commit the crime of pimping, no contention that any man knew that any of the

17   subject ads concerned prostitution or any illegal activity, and not even a hint that they knew

18   anything about or had anything to do with the ads.  Instead, the AG charges Messrs. Lacey and

19   Larkin with a criminal conspiracy on the sole basis that they once owned Backpage.com.  Such

20   allegations are a far cry from meeting the statutory definition of conspiracy.  *See Morante*, 20 Cal.

21   4th at 416; *cf. Doe v. GTE Corp.*, 347 F.3d at 659 ("[Under] the ordinary understanding of

22   culpable assistance to a wrongdoer," the defendant must have "a desire to promote the wrongful

23   venture's success . ... That web hosting services … may be used to carry out illegal activities does

24   not justify condemning their provision whenever a given customer turns out to be crooked.").

25

26   [22] The status of the defendants as corporate officers and shareholders is irrelevant.  "It is well
settled that '[a]n officer of a corporation is not criminally answerable for any act of a corporation

27   in which he [or she] is not personally a participant.'"  *Sea Horse Ranch, Inc. v. Superior Court*, 24
Cal. App. 4th 446, 457 (1994) (alterations by *Sea Horse Ranch* court) (quoting *Otis v. Superior*

28   *Court*, 148 Cal. 129, 131 (1905).

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

1

### IV.    CONCLUSION

2      This prosecution is patently improper, given the obvious disconnect between the charges in

3   the Complaint and the factual allegations asserted by the AG.  The state cannot marshal any facts

4   even suggesting that the defendants committed any crime.  The AG's prosecution tramples First

5   Amendment rights and is flatly barred by Section 230, as she has admitted.  Defendants' demurrer

6   should be granted without leave to amend, and this proceeding should be swiftly terminated.

7   DATED:  October 19, 2016                          Respectfully submitted,

8                                                     DAVIS WRIGHT TREMAINE LLP

9

10                                              By:

11                                                  James C. Grant

12                                              Attorneys for Defendants
                                                Carl Ferrer, Michael Lacey and James Larkin

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEMURRER TO CRIMINAL COMPLAINT, Case No. 16FE019224

# **<u>Exhibit H</u>**

Brendan Charney (CA State Bar No. 293378)
Davis Wright Tremaine LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Tel: (213) 633-6824; Fax: (213) 633-6899

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| Jane Doe, | CASE NUMBER |
|---|---|
| Plaintiff(s) | 5:17-cv-01264-MWF-FFM |
| v. | |
| Medalist Holdings, Inc., et al | **ORDER ON APPLICATION OF NON-RESIDENT ATTORNEY TO APPEAR IN A SPECIFIC CASE *PRO HAC VICE*** |
| Defendant(s). | |

**The Court, having determined whether the required fee has been paid, and having reviewed the Application of Non-Resident Attorney to Appear in a Specific Case *Pro Hac Vice* filed by**

Grant, James C.                                            of     Davis Wright Tremaine LLP
*Applicant's Name (Last Name, First Name & Middle Initial*          1201 Third Ave., Ste 2200
(206) 757-8096              (206) 757-7096                          Seattle, WA 98101
*Telephone Number*          *Fax Number*
jamesgrant@dwt.com
              *E-Mail Address*                                      *Firm/Agency Name & Address*

**for permission to appear and participate in this case on behalf of**

Defendants Medalist Holdings, Inc.; Leeward Holdings, LLC; Camarillo Holdings, LLC; Dartmoor Holdings, LLC; IC Holdings, LLC; Backpage.com LLC; UGC Tech Group CV; Carl Ferrar; James Larkin; Michael Lacey; And Atlantische Bedrijven CV

*Name(s) of Party(ies) Represent*     ☐ *Plaintiff(s)* ☒ *Defendant(s)* ☐ *Other:* _____

**and designating as Local Counsel**

Charney, Brendan                                          of     Davis Wright Tremaine LLP
*Designee's Name (Last Name, First Name & Middle Initial*          865 S. Figueroa Street, Suite 2400
                                      (213) 633-                   Los Angeles, CA 90017
293378              (213) 633-6800     6899
*Designee's Cal. Bar No.*   *Telephone Number*   *Fax Number*
brendancharney@dwt.com
              *E-Mail Address*                                      *Firm/Agency Name & Address*

**HEREBY ORDERS THAT the Application be:**

☒ GRANTED

☐ DENIED:
    ☐ for failure to pay the required fee.

    ☐ for failure to attach a Certificate of Good Standing issued within 30 days prior to filing of Application.

    ☐ for failure to complete Application: _____

    ☐ pursuant to L.R. 83-2.1.3.2: ☐ Applicant resides in California; ☐ previous Applications listed indicate Applicant is regularly employed or engaged in business, professional, or other similar activities in California.

    ☐ pursuant to L.R. 83-2.1.3.4; Local Counsel: ☐ is not member of Bar of this Court; ☐ does not maintain office District.

    ☐ because _____

**IT IS HEREBY FURTHER ORDERED THAT the Application fee, if paid:** ☐ be refunded ☐ not be refunded.

**Dated: June 30, 2017**

_____
**U.S. District Judge**

# **<u>Exhibit I</u>**

1  DAVIS WRIGHT TREMAINE LLP
   SCOTT R. COMMERSON (State Bar
2      No. 227460)
       scottcommerson@dwt.com
3  BRENDAN N. CHARNEY (State Bar
       No. 293378)
4      brendancharney@dwt.com
   865 South Figueroa Street, Suite 2400
5  Los Angeles, CA 90017-2566
   Telephone: (213) 633-6800
6
   DAVIS WRIGHT TREMAINE LLP
7  ROBERT CORN-REVERE (*pro hac vice*
       *pending*)
8      robertcornrevere@dwt.com
   RONALD LONDON (*pro hac vice*
9      *pending*)
       ronaldlondon@dwt.com
10 1919 Pennsylvania Avenue, N.W., Suite
   800
11 Washington, D.C. 20006-3401
   Telephone: (202) 973-4200
12
   Attorneys for Defendants
13 MEDALIST HOLDINGS, INC.; LEEWARD HOLDINGS, L.L.C.; CAMARILLO
   HOLDINGS, L.L.C.; DARTMOOR HOLDINGS, L.L.C.; IC HOLDINGS, L.L.C.;
14 BACKPAGE.COM, L.L.C; UGC TECH GROUP C.V.; CARL FERRER; JAMES
   LARKIN; MICHAEL LACEY; and ATLANTISCHE BEDRIJVEN C.V.
15

DAVIS WRIGHT TREMAINE LLP
JAMES GRANT (*pro hac vice*
    *pending*)
    jamesgrant@dwt.com
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone: (206)622-3150

16              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
17

| | |
|---|---|
| JANE DOE, individually, by and through her Guardian Ad Litem, S.B., | Case No. 5:17-CV-1264 |
| Plaintiff, | **NOTICE OF REMOVAL** |
| vs. | (Removed from Riverside County Superior Court Case No. MCC1700068) |
| MEDALIST HOLDINGS, L.L.C.; LEEWARD HOLDINGS, L.L.C.; CAMARILLO HOLDINGS, L.L.C.; DARTMOOR HOLDINGS, L.L.C.; IC HOLDINGS, L.L.C.; BACKPAGE.COM, L.L.C, NEW TIMES MEDIA, L.L.C., UGC TECH GROUP C.V.; CARL FERRER; JAMES LARKIN; MICHAEL LACEY; and, JOHN DOE 1-5, | [Appendix with Exhibits A-NN; Declaration of Scott Commerson with Exhibits OO-TT; and Declaration of Ambika Doran with Exhibits UU-VV filed concurrently] |
| Defendants. | |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

Defendant Atlantische Bedrijven C.V., joined by Medalist Holdings, Inc.; Leeward Holdings, L.L.C.; Camarillo Holdings, L.L.C.; Dartmoor Holdings, L.L.C.; IC Holdings, L.L.C.; Backpage.com, L.L.C.; UGC Tech Group C.V.; Carl Ferrer; James Larkin; and Michael Lacey (the "Backpage.com Defendants"); hereby give notice of removal of the above-captioned civil action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, from the Superior Court of the State of California for Riverside County to the United States District Court for the Central District of California. Pursuant to 28 U.S.C. § 1446(a), the Backpage.com Defendants attach a true and correct "copy of all process, pleadings, and orders served upon [the Backpage.com Defendants]" in the state court action. In support of this Notice of Removal, the Backpage.com Defendants state as follows:

1. Plaintiff Jane Doe ("Plaintiff") filed a California state court action on January 25, 2017, alleging California state-law claims against the Backpage.com Defendants, as well as New Times Media, L.L.C., a Delaware limited liability company. Exhibit A.

2. Plaintiff filed a First Amended Complaint on February 10, 2017, which, among other things, purported to add as a defendant Atlantische Bedrijven C.V., a Dutch limited partnership, and Reson Tredon Richard ("Richard"), a resident of California currently incarcerated at the Chuckawalla Valley State Prison in Blythe, California. Exhibit F; Commerson Decl. ¶ 10, Exhibit RR.

3. On April 3, 2017, Plaintiff requested dismissal of New Times Media, LLC without prejudice. Exhibit I.

4. On April 21, 2017, Plaintiff filed a filed an Amendment to the First Amended Complaint naming Medalist Holdings, Inc., a Delaware corporation, as a defendant instead of the defendant Medalist Holdings, LLC., a Delaware limited liability company, which apparently was named in error.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

5.    Medalist Holdings, Inc. accepted service through counsel on April 25, 2017.  Commerson Decl. ¶¶ 5-6, Exhibit OO.

6.    Atlantische Bedrijven C.V.  accepted service through counsel on May 24, 2017.  Commerson Decl. ¶¶ 7-8, Exhibit PP.

7.    This Notice of Removal is timely because Atlantische Bedrijven C.V., joined by the other Backpage.com Defendants, is filing it within 30 days after the Complaint was served on it.  28 U.S.C. § 1446 (b)(1), (2).

8.    Removal is proper based on diversity jurisdiction under 28 U.S.C. § 1332, and the doctrine of procedural misjoinder.

9.    Plaintiff is a citizen of California.  The Backpage.com Defendants are citizens of Delaware, Arizona, and Texas.  Accordingly, there is complete diversity between Plaintiff and the Backpage.com Defendants.  Defendant Reson Tredon Richard appears to be a citizen of California, where he is currently incarcerated.  However, the citizenship of Richard should be disregarded and he need not join in seeking removal of this action because Plaintiff has procedurally misjoined the claims against him with the claims against the Backpage.com Defendants in violation of Rules 20 and 21 of the Federal Rules of Civil Procedure.  Plaintiff's claims against Richard for his trafficking, exploitation, and abuse of her have no connection to her claims against the Backpage.com Defendants for, in essence, providing a forum for third-party Internet advertising – which claims are absolutely barred in any event under the Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230").

10.    Plaintiff's Complaint does not pray for a specific amount of damages.  However, pursuant to 28 U.S.C. §§ 1332(a) and 1446(c)(2)(A), it is clear from the nature of Plaintiff's claims and alleged harm, as well as evidence proffered by the plaintiffs in a nearly identical lawsuit, that the amount in controversy in this action substantially exceeds the requisite minimum of $75,000.

11.    Accordingly, this Court has diversity jurisdiction over all claims between Plaintiff and the Backpage.com Defendants, and should sever and remand

3

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the claims against Richard to the Superior Court of Riverside County.

### A.    This Notice Is Timely.

12.    On January 25, 2017, an individual alleged to have been a minor at the time of the events at issue, and identified pseudonymously as Jane Doe, filed a complaint in the Superior Court of the State of California for the County of Riverside, Case No. MCC1700068 against the Backpage.com Defendants and Richard ("the Complaint").  The Complaint is captioned *JANE DOE, individually, by and through her Guardian Ad Litem, S.B., Plaintiff, v. MEDALIST HOLDINGS, L.L.C.; LEEWARD HOLDINGS, L.L.C.; CAMARILLO HOLDINGS, L.L.C.; DARTMOOR HOLDINGS, L.L.C.; IC HOLDINGS, L.L.C.; BACKPAGE.COM, L.L.C.[;] NEW TIMES MEDIA, L.L.C.[;] UGC TECH GROUP C.V.; CARL FERRER; JAMES LARKIN; MICHAEL LACEY; and, JOHN DOE 1-5, Defendants*. Exhibits A, F.

13.    Plaintiff filed a First Amended Complaint ("FAC") on February 10, 2017.  Exhibit F.  In addition to adding certain substantive allegations, the FAC added Richard and Atlantische Bedrijven C.V. as defendants.[1]  *Id.*

14.    Plaintiff's FAC alleges six causes of action:  Negligence (First Cause of Action); Intentional Infliction Of Emotional Distress (Second Cause of Action); Assault And Battery (Third Cause of Action); Unjust Enrichment (Fourth Cause of Action); Invasion Of Privacy (Fifth Cause of Action); and Civil Conspiracy (Sixth Cause of Action).  Exhibit F at ¶¶ 5.1 - 5.32.  Causes of Action Two through Four and Six are alleged against all defendants; the First Cause of Action for Negligence and the Fifth Cause of Action for Invasion of Privacy are alleged against only the Backpage.com Defendants.  *Id.*

15.    On April 21, 2017 Plaintiff filed an Amendment to the First Amended

---

[1] Missing from the caption, Atlantische Bedrijven C.V. and Richard are described as defendants in the Complaint's body.  *See, e.g.*, FAC ¶¶ 2.13, 2.21.

NOTICE OF REMOVAL
4815-2965-5112v.30 3710078-000083

4

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Complaint naming Medalist Holdings, Inc. as a defendant. Exhibit JJ; Commerson Decl. at ¶¶ 2-4. The First Amended Complaint, as amended, is the operative complaint in this action.

16. On April 25, 2017, counsel for the Backpage.com Defendants accepted service (by e-mail) of the FAC, as amended, on behalf of Medalist Holdings, Inc. *See* Commerson Decl. at ¶¶ 5-6, Exhibit OO.

17. On May 24, 2017, counsel for the Backpage.com Defendants and counsel for Plaintiff agreed that counsel for the Backpage.com Defendants would accept service on behalf of then-unserved defendant Atlantische Bedrijven C.V. and that the deadline for all of the Backpage.com Defendants to respond to the FAC would be 30 days from the date Atlantische Bedrijven C.V. was served, *i.e.* June 23, 2017. *See* Commerson Decl. at ¶¶ 7-8, Exhibit PP.

18. On May 24, 2017, counsel for the Backpage.com Defendants accepted service (by e-mail) of the FAC, as amended, on behalf of Atlantische Bedrijven C.V. *See id.*

19. The Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), because the Backpage.com Defendants have filed it within 30 days after Atlantische Bedrijven C.V. accepted service.

**B. Complete Diversity Exists Between Plaintiff and the Backpage.Com Defendants.**

20. Pursuant to 28 U.S.C. § 1441(a), defendants may remove any civil action brought in a state court over which the district courts of the United States have original jurisdiction.

21. Federal district courts have original jurisdiction over all civil actions between citizens of different states, and between a citizen of a state and a citizen or subject of a foreign state, where the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1), (2).

22. A natural person is a citizen of the state where the person is domiciled,

5

NOTICE OF REMOVAL
4815-2965-5112v.30 3710078-000083

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*i.e.*, where the person resides with the intention to remain or return for more than a temporary period. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

23. LLCs are treated like limited partnerships for purposes of determining diversity jurisdiction, and are deemed to be citizens of every state of which a member is a citizen. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

24. For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is determined by the "nerve center" test, *i.e.*, "the place where a corporation's officers direct, control, and coordinate the corporations' activities," which ordinarily is the "place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

### C. Plaintiff Is A California Citizen.

25. Although the FAC does not plead Plaintiff's citizenship, her counsel has disclosed facts showing that she is a citizen of California. Specifically, Plaintiff's counsel stated in an April 19, 2017 e-mail to counsel for the Backpage.com Defendants that:

> "Plaintiff's family ***temporarily left California*** for Oklahoma for safety reasons pending the criminal prosecution of the pimp. The pimp has now been prosecuted and sentenced, and the ***family is in the process of moving back to California*** in a few weeks. Given the ***temporary nature of the move***, the Plaintiff's parents maintained their CA driver's licenses and license plates. When the family moves back to California, the victim's mother will be resuming her employment as a CPS social worker for the State of California. The family is moving back to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Riverside County where Plaintiff will be completing her final year of high school*."

Commerson Decl., ¶ 9, Exhibit QQ (emphasis added).

**D. None Of The Backpage.com Defendants Are California Citizens.**

26. The FAC, as amended, correctly alleges that Leeward Holdings, LLC; Camarillo Holdings, LLC; Dartmoor Holdings, LLC; IC Holdings, LLC; and Backpage.com, LLC all are Delaware Limited Liability Companies ("LLCs"). FAC at ¶¶ 2.6 - 2.11.

27. At the time the Complaint was filed, and as of the date of the filing of this Notice, Medalist Holdings, Inc. was and is a Delaware corporation, with its principal place of business in Arizona. It has always been privately held, and no publicly held corporation has ever owned an interest in it.

28. At the time the Complaint was filed, and as of the date of the filing of this Notice, Leeward Holdings, LLC was and is a Delaware limited liability company, wholly owned by Medalist Holdings, Inc. Leeward Holdings, LLC has always been privately held, and no publicly held corporation has ever owned an interest in it.

29. At the time the Complaint was filed, and as of the date of the filing of this Notice, Camarillo Holdings, LLC was and is a Delaware limited liability company, wholly owned by Leeward Holdings LLC. Camarillo Holdings, LLC has always been privately held, and no publicly held corporation has ever owned an interest in it.

30. Therefore, at the time the Complaint was filed, and as of the date of the filing of this Notice, Medalist Holdings Inc., Leeward Holdings, LLC, and Camarillo Holdings, LLC were and are all citizens of Delaware and Arizona.

31. At the time the Complaint was filed, and as of the date of the filing of this Notice, James Larkin was and is a resident and citizen of Arizona.

32. James Larkin owns a residence near Phoenix in the State of Arizona and

7

has owned a residence in or near Phoenix since 1982. He has lived near Phoenix since 1952. His current residence near Phoenix is his primary residence and has been so since 2007.

33. James Larkin considers his residence in Arizona to be his permanent home and, when he departs the State of Arizona, he does so with the intent to return to his residence in Arizona.

34. James Larkin has been employed in or near Phoenix, Arizona since 1970.

35. James Larkin files his state income taxes in Arizona as a resident of Arizona and has done so since 1968. He also pays and has always paid real and personal property taxes in Arizona.

36. James Larkin is registered to vote in the State of Arizona and has been registered to vote in Arizona since about 2000.

37. James Larkin has an Arizona driver's license and has had an Arizona driver's license since 1966.

38. James Larkin has automobiles in Arizona, which are registered in Arizona. He has owned or leased automobiles that have been registered in Arizona since 1968.

39. At the time the Complaint was filed, and as of the date of the filing of this Notice, Michael Lacey was and is a resident and citizen of Arizona.

40. Michael Lacey owns a residence near Phoenix in the State of Arizona and has owned a residence in or near Phoenix since the mid-1990s. He has lived in Phoenix since 1966. His current residence near Phoenix is his primary residence and has been so since the late 1990's.

41. Michael Lacey considers his residence in Arizona to be his permanent home and, when he departs the State of Arizona, he does so with the intent to return to his residence in Arizona.

42. Michael Lacey has been employed in or near Phoenix, Arizona since

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1970.

43.     Michael Lacey files his state income taxes in Arizona as a resident of Arizona and has done so since 1970.  He also pays, and for many years has paid, real and personal property taxes in Arizona.

44.     Michael Lacey is registered to vote in the State of Arizona and has been registered to vote in Arizona since the mid-1990s.

45.     Michael Lacey has an Arizona driver's license and has had an Arizona driver's license since the 1990s.

46.     Michael Lacey has automobiles in Arizona, which are registered in Arizona.  He has owned or leased automobiles that have been registered in Arizona since 1990.

47.     At the time the Complaint was filed, and as of the date of the filing of this Notice, the ownership structure of the remaining Backpage.com Defendants was and is as follows:

> a.  Backpage.com, LLC was and is a Delaware limited liability company, wholly owned by IC Holdings, LLC.
>
> b.  IC Holdings, LLC was and is a Delaware limited liability company, wholly owned by Dartmoor Holdings, LLC.
>
> c.  Dartmoor Holdings, LLC was and is a Delaware limited liability company, wholly owned by Atlantische Bedrijven C.V.
>
> d.  Atlantische Bedrijven C.V. was and is a Dutch limited partnership, wholly owned by Kickapoo River Investments, LLC and Lupine Investments LLC.
>
> e.  Kickapoo River Investments, LLC and Lupine Investments LLC are each Delaware limited liability companies, each wholly owned by Amstel River Holdings, LLC.
>
> f.  Amstel River Holdings, LLC is a Delaware limited liability company, wholly owned by the Vicky Ferrer Family Trust.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

g. Backpage.com, LLC, IC Holdings, LLC, Dartmoor Holdings, LLC, Atlantische Bedrijven C.V., Kickapoo River Investments, LLC, Lupine Investments LLC, and Amstel River Holdings, LLC have always been privately held, and no publicly held corporation has ever owned an interest in any of them.

48.     Thus, tracing up the ownership chain, at all relevant times, the citizenship of Backpage.com, LLC, IC Holdings, LLC, Dartmoor Holdings, LLC, Atlantische Bedrijven C.V., Kickapoo River Investments, LLC, Lupine Investments LLC, and Amstel River Holdings, LLC, for diversity purposes, are based on the citizenship of their ultimate owner, the Vicky Ferrer Family Trust.

49.     The Trustee of the Vicky Ferrer Family Trust is Carl Ferrer. The current beneficiaries of the Trust are Carl Ferrer and his wife, April E. Ferrer.

50.     Any potential future beneficiaries of the trust who currently are identifiable are citizens of either Texas or Oklahoma. No current beneficiary of the trust, or potential future beneficiary of the trust who is currently identifiable, is or has been a citizen of California.

51.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Carl Ferrer and April Ferrer were and are residents and citizens of Texas.

52.     Carl and April Ferrer have owned a residence near Dallas in the State of Texas since August 2005. The residence is their primary residence and has been so since August, 2005.

53.     Carl and April Ferrer consider their residence in Texas to be their permanent home and, when they depart the State of Texas, they do so with the intent to return to their residence in Texas.

54.     Carl Ferrer has been employed in or near Dallas since August 2005.

55.     Carl and April Ferrer file their income taxes in Texas as residents of Texas and have done so since 2005. They also pay real and personal property taxes in Texas.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

56. Carl Ferrer is registered to vote in the State of Texas and has been registered to vote in Texas since 2008. April Ferrer is registered to vote in the State of Texas and has been registered to vote in Texas since approximately 2005.

57. Carl and April Ferrer have Texas driver's licenses and have had Texas driver's licenses since 2006.

58. Carl and April Ferrer have automobile in Texas, which are registered in Texas. They have owned automobiles that have been registered in Texas since 2006.

59. Carl Ferrer has had the same physician for over 16 years; the physician's office is in Dallas, Texas.

60. Therefore, at the time the Complaint was filed, and as of the date of the filing of this Notice, the Vicky Ferrer Family Trust was and is a citizen of Texas, given that its trustee and all its current beneficiaries are citizens of Texas. Accordingly, the LLCs and limited partnership owned, directly and indirectly, by the Trust were and are all citizens of Texas for purposes of removal, including Backpage.com, LLC; IC Holdings, LLC; Dartmoor Holdings, LLC; Atlantische Bedrijven C.V.; Kickapoo River Investments, LLC; Lupine Investments LLC; and Amstel River Holdings, LLC.

61. None of the Backpage.com Defendants, either individually or through corporate ownership or membership, are or ever have been citizens of the State of California.

62. Accordingly, at the time the Complaint was filed, and as of the date of the filing of this Notice, complete diversity of citizenship existed and exists between Plaintiff (who is a citizen of California) and all of the Backpage.com Defendants (which are citizens of Delaware, Arizona, and Texas).

**E.    Claims Are Procedurally Misjoined When There Is No Real Connection Between Them.**

63. When a plaintiff improperly joins claims in a state court action, a federal district court to which the case is removed should disregard the citizenship of non-

NOTICE OF REMOVAL
4815-2965-5112v.30 3710078-000083

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

diverse parties that are not properly joined under Fed. R. Civ. P. 20, sever and
remand claims involving such non-diverse parties under Fed. R. Civ. P. 21, and
recognize federal diversity jurisdiction for the remaining claims. *Tapscott v. MS
Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other
grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072-73 (11th Cir. 2000). This
doctrine is variously referred to as "procedural" or "fraudulent" [2] misjoinder; courts
find procedural misjoinder when a diverse defendant is joined with a non-diverse
defendant as to whom there is no joint, several, or alternative liability, and the claims
against the two defendants have no real connection. *Triggs v. John Crump Toyota,
Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

     64.    Several courts within the Ninth Circuit have upheld removal based on
the procedural misjoinder rule, reasoning, among other bases, that the "rule is a
logical extension of the established precedent [recognized in the Ninth Circuit] that a
plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction
in federal court." *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684–85 (D. Nev. 2004);
*Anglada v. Bank of America Corp.*, 2011 WL 5196710, *4-5 (D. Nev. Oct. 27, 2011)
(citing *Wyeth*); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503 (E.D. Cal. 2008)
("Misjoinder may be just as fraudulent as the joinder of a resident defendant against
whom a plaintiff has no possibility of a cause of action" (quoting *Tapscott*, 77 F.3d at
1360)); *see also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998)
(upholding removal premised on disregarding fraudulently joined defendants).

---

[2] Notwithstanding some courts' use of the word "fraudulent" to describe the
doctrine, its application does not depend on a showing actual fraud, culpable mental
state, or bad faith on the part of Plaintiff or counsel. *See Mercado v. Allstate Ins.
Co.*, 340 F.3d 824, 826, (9th Cir.2003) (noting that "fraudulent joinder" is a term of
art); *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000,
1003 (4th Cir. 1990); *Triggs*, 154 F.3d at 1291. Accordingly, for clarity, this Notice
will refer to the doctrine as "procedural misjoinder." *See Caouette v. Bristol-Myers
Squibb Co.*, 2012 WL 3283858, at *5 (N.D. Cal. Aug. 10, 2012).

## F.    Non-Diverse Defendant Richard Is Procedurally Misjoined.

65.    Under Fed. R. Civ. P. 20, joinder of defendants in a single action requires a claim for relief against all defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and a common question of law or fact.  Fed. R. Civ. P. 20(a)(2).[3]  At any time, and by motion or on its own, a federal court may add or drop any party that has been improperly or procedurally misjoined.  Fed. R. Civ. P. 21; *Wyeth*, 344 F. Supp. 2d at 685 (noting that court, "mindful of its authority under the Federal Rules of Civil Procedure, Rule 21, to add or drop parties to a suit 'at any stage of the action and on such terms as are just.'… is inclined to sever claims where the joinder is procedurally inappropriate and clearly accomplishes no other objective than the manipulation of the forum").

66.    A defendant's right of removal cannot be defeated by a procedural misjoinder of claims or parties that have no real connection with one another. *Tapscott*, 77 F.3d at 1360; *Sutton*, 251 F.R.D. at 503; *see also Hughes v. Sears, Roebuck & Co.*, 2009 WL 2877424, at *5 (N.D. W.Va. Sept. 3, 2009) ("Where a non-diverse party cannot be properly joined under the Federal Rules of Civil Procedure, the defendant's right of removal should prevail over that of permitting a plaintiff's choice of forum."); *Atkins v. Smalbach*, 2015 U.S. Dist. Lexis 31185, at *8 (M.D. Fla. Feb. 6, 2015) ("Fraudulently joining Mick to the claims against Smalbach would unfairly deprive Mick of its constitutionally and statutorily protected right to adjudicate the claims against it in a federal forum"); *Wyeth*, 344 F. Supp. 2d at 685 ("[T]he Court is inclined to sever claims where the joinder is procedurally inappropriate and clearly accomplishes no other objective than the manipulation of the forum, and where the rights of the parties and interest of justice is best served by

---

[3] California's permissive joinder rule is substantially identical to Rule 20.  *See* Cal. Code Civ. Pro § 379(a); *Sutton*, 251 F.R.D. at 504.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

severance.").

67.     Plaintiff has procedurally misjoined Richard in this action under Fed. R. Civ. P. 20 and 21 and applicable case law.

68.     Courts find defendants are procedurally misjoined when the claims against them are "factually distinct" and there is "no real connection between the[m.]" *Baums v. General Insurance Co.*, 2006 U.S. Dist. Lexis 77820, at *7 (M.D. Ala. Oct. 23, 2006).  Procedural misjoinder is found when, among other things, the claims against one defendant involve markedly different facts and evidence from the claims against another defendant — such as where the claims involve different circumstances, actions, or omissions; or different legal theories.  *See, e.g.*, *Wyeth*, 344 F. Supp. 2d at 684-85 (claims against pharmaceutical manufacturer procedurally misjoined with claims against physicians and sales representatives, because "[i]ndividual circumstances, actions, and omissions were involved in each Plaintiff's choice to ingest the medication, as well as each Defendant's role in, and responsibility for, that decision"); *Sutton*, 251 F.R.D. at 504 ("claims based on strict products liability against the removing Defendants are separate from Plaintiffs' claims of medical malpractice against the California Defendants"); *M.W. v. Ford Motor Co.*, 2015 U.S. Dist. Lexis 36895, at *11-21 (M.D. Fla. March 24, 2015) (finding procedural misjoinder where facts needed to support medical malpractice claim concerning  treatment of Plaintiff's injuries were wholly distinct from facts that would support product liability and negligence claims about vehicle in which injuries occurred); *Atkins*, 2015 U.S. Dist. Lexis 31185, at *15-16 (M.D. Fla. Feb. 6, 2015) (finding procedural misjoinder where claim seeking approval of arbitration award against non-diverse defendant over fraudulent sales of securities shared no common questions of law or fact with claim alleging diverse defendant was an agent that participated in sale); *Lopez v. Sturdivant*, 2010 WL 3121750, at *3 (S.D. Miss. Aug. 6, 2010) (finding procedural misjoinder of plaintiffs' claims against contractor for defective construction of a house with claims against insurer for improper denial of

NOTICE OF REMOVAL
4815-2965-5112v.30 3710078-000083

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

coverage); *Willingham v. State Farm Ins. Co.,* 2009 WL 2767679 at *3-4 (N.D. Miss. Aug. 27, 2009) (finding procedural misjoinder of claims against insurance company arising from house fire, with claims against non-diverse construction company for defective work in rebuilding the house after the fire); *Frankland v. State Farm Fire & Cas. Co*, 2008 WL 4072819, at *5 (W.D. La. July 2, 2008) (finding fraudulent misjoinder of claims against non-diverse private insurance adjuster and diverse insurer for damages to property from hurricane because there was no community of interest, plaintiff's claims arose from different contracts and evidence would be different); *Nsight Technologies, LLC v. Fed. Ins. Co.*, 2009 WL 1106868, at *4 (S.D. Miss. Apr. 23, 2009) (claims against employee for conversion and against insurer concerning coverage for alleged conversion were procedurally misjoined because "[w]hile the claims against [both defendants] arise out of the alleged embezzlement, the claims 'involve different factual issues and different legal issues.'").

**G.     The Claims Against Richard And The Backpage.Com Defendants Arise Out Of Different Occurrences,  Do Not Involve Shared Liability, And Concern Different Questions Of Fact And Law.**

69.     The Complaint alleges that Richard took illicit photographs of Plaintiff, sexually abused her, induced her to engage in commercial sex acts, and unjustly enriched himself by taking money from adults who paid to have sex with Plaintiff. FAC at ¶¶ 2.21, 5.18.

70.     On November 30, 2016, Richard pleaded guilty to inducing or persuading a minor to engage in a commercial sex act (Cal. Pen. C. § 236.1(C)(1)). Commerson Decl. ¶¶ 11-12, Exhibits SS, TT.

71.     Plaintiff's claims against Richard are based on his trafficking, exploitation, and abuse of her.

72.     Plaintiff's claims against the Backpage.com Defendants, on the other hand, are based on the allegations that the Backpage.com website was at least one Internet site where Richard posted advertisements about her, Backpage.com did not "take any steps to prevent [Plaintiff] from being advertised for sex on

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

www.backpage.com," and Plaintiff did not consent to having her photograph appear on Backpage.com. *See, e.g.,* FAC at ¶¶ 4.2, 4.6, 4.7 - 4.8, 4.10.

73.     Plaintiff's claims against Richard, on the one hand, and Plaintiffs' claims against the Backpage.com Defendants, on the other hand, involve different alleged injuries to Plaintiff. The essence of Plaintiff's claim against Richard is that he harmed her by trafficking, exploiting, and abusing her in physical space; the essence of Plaintiff's claim against the Backpage.com Defendants is that they allegedly harmed her by permitting her private photograph to appear on a website without her consent, and they did not take steps to remove her information from the website. *See, e.g.,* FAC at ¶¶ 4.2, 4.6, 4.7 - 4.8, 4.10. Indeed, Plaintiff's core claims against the Backpage.com Defendants sound in negligence and invasion of privacy in operating a website — claims that are *not* alleged against Richard. *See* FAC at ¶¶ 5.1 - 5.5, 5.26 - 5.29. On the other hand, the claims against Richard – including assault and battery – sound in his physical exploitation and abuse of her. *See* FAC at ¶¶ 5.10, 5.15.

74.     For similar reasons, markedly different evidence and questions of law are involved in Plaintiff's claims against Richard in contrast with Plaintiffs' claims against the Backpage.com Defendants. *See, e.g.*, *Hughes*, 2009 WL 2877424, at *6 (finding fraudulent misjoinder of claims against manufacturer and retailer of treadmill with claims against doctor for misdiagnosis after plaintiff suffered injuries using the treadmill, noting "the evidence supporting these claims will be markedly different")

75.     Specifically, the evidence concerning Plaintiff's claims against Richard would concern his trafficking, exploitation, and abuse of her. The evidence to establish Richard's illegal conduct is wholly unrelated to the operation of the Backpage.com website or the circumstances of the ads about the Plaintiff posted on the website.

76.     Moreover, a central issue with respect to the Backpage.com Defendants

16

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

is whether they are immune from suit pursuant to the Communications Decency Act ("CDA"). Section 230 of the CDA states that "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It expressly preempts state laws: "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). Because the Backpage.com Defendants are being sued based entirely on third-party speech posted online, the claims against them raise issues of law entirely distinct from the claims concerning Richard's physically exploitative and abusive conduct.

77. In short, the Backpage.com Defendants' operation of a website in which third parties allegedly posted online advertisements is markedly different from the commission of physical and sexual abuse by misjoined defendant Richard. Indeed, the Complaint alleges, at most, independent successive torts, rather than conduct by tortfeasors acting jointly.[4] *See Stone v. Zimmer, Inc.*, 2009 WL 1809990, at *4 (S.D.

---

[4] Plaintiff's defective Civil Conspiracy claim cannot convert the successive, independent actions of the Backpage.com defendants, on the one hand, and Richard, on the other, into joint conduct. Plaintiff's conspiracy claim is premised on her conclusory allegation that "defendants engaged in a plan or conspiracy to use www.backpage.com to advertise coerced adults and children for sex, including Plaintiff," FAC ¶ 5.30, but Plaintiff alleges no *facts* to support this conclusory conspiracy claim. To state a claim for conspiracy, Plaintiff "must allege the formation and operation of the conspiracy, the wrongful act or acts done pursuant to it, and the damage resulting from such acts. In making such allegations bare legal conclusions, inferences, generalities, presumptions, and conclusions are insufficient." *State of Cal.ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 419 (2007) (internal citations omitted) (sustaining demurrer because allegations that defendants and unnamed parties "conspired to conceal their improper loss valuations" amounted to "bare legal conclusions"); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("a conclusory allegation of agreement at some unidentified point" does not establish conspiracy); *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992) (complaint must "allege specific facts to support the existence of a conspiracy among the defendants"); *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) ("allegations of conspiracy must be supported by material facts, not merely conclusory statements" (quoting *Lockary v. Kayfetz*, 587 F.Supp. 631, 639 (N.D.Cal.1984)); *Jaspar v. Khoury*, 2009 WL 213106, at *4 (E.D. Cal. Jan. 29, 2009) (same). Further, "actual knowledge of the planned tort, without more, is insufficient … Knowledge of the planned tort must be

---

Fla. June 25, 2009) (claims against manufacturer of hip implant fraudulently misjoined with malpractice claims against doctor for failing to diagnose that implant had fractured); *see also, e.g., Ash v. Mortensen*, 24 Cal. 2d 654, 657 (1944) (holding that a negligent motorist, on the one hand, and doctors who maltreated plaintiff's injuries, on the other, were "independent successive tort feasors" because "[t]he independent and successive acts of [the motorist] and defendant doctors, differing in time and place of commission as well as in nature, produced two separate injuries and gave rise to two distinct causes of action").

### H. Richard Is a "Sham" Defendant Against Whom Plaintiff Evidently Does Not Seek A Judgment.

78.    That Richard is fraudulently misjoined in this action is further demonstrated because Plaintiff has shown no real intention of seeking a judgment against him. *See Diaz v. Kaplan Univ.*, 567 F. Supp. 2d 1394, 1403 (S.D. Fla. 2008) ("Where 'common sense' leads the court to 'strongly doubt' that plaintiff has a real intention in good faith to seek a judgment against the non-consenting defendants, joinder of those non-consenting defendants is fraudulent." (citation omitted)); *Hunt Skansie Land, LLC v. City of Gig Harbor*, 2010 WL 2650502, at *4 (W.D. Wash. July 1, 2010) (denying motion to remand partly because "Plaintiffs appear to be

---

combined with intent to aid in its commission." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995).

Plaintiff's complaint not only fails to state a claim for conspiracy, but her conclusory allegations of conspiracy cannot defeat the Backpage.com Defendants' charge of procedural misjoinder. *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392-93 (5th Cir. 2000) (finding misjoinder where complaint alleging conspiracy failed to detail "any particular or specific activity, agreement, or state of mind" on the part of misjoined defendants); *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 408 (S.D. W.Va. 2005) (finding misjoinder and rejecting conspiracy claim as having no factual basis); *Lyons v. Am. Tobacco Co.*, 1997 WL 809677, at *4 (S.D. Ala. Sep. 30, 1997) (finding claims against in-state distributors were fraudulently joined with claims against diverse tobacco companies, where plaintiffs "essentially contend that their alleged conspiracy claim constitutes a catch-all mechanism by which to boot-strap claims against tobacco distributors … to the alleged misconduct of tobacco manufacturers. It is indeed a novel, albeit ludicrous, proposition."); *Addison v. Allstate Ins. Co.*, 58 F. Supp. 2d 729, 734 (S.D. Miss. 1999) (plaintiff "must plead specific facts, not mere conclusory allegations" to defeat charge of fraudulent joinder).

18

attempting to manipulate the forum").

79.     Plaintiff served Richard with the amended summons and FAC on February 14, 2017 at the Wasco State Prison-Reception Center, where Richard was then incarcerated.  Exh. II; *see also* Exh. KK at ¶ 4 ("On February 14, 2017, Defendant Richard was personally served").

80.     Richard has not answered or otherwise responded to the FAC and is therefore in default.  *See* Cal. R. Ct. 3.110(g) (requiring plaintiff to request entry of default within 10 days after expiration of defendant's time to respond to complaint).  Indeed, ***Plaintiff's counsel expressly represented to the Court that Plaintiff does not expect Richard to respond to the FAC***.  Exh. KK at ¶ 14 ("[I]t is my understanding that all Defendants have been served in this action, and that all Defendants, ***except Defendant Richard***, will be responding to the complaint" (emphasis added)).

81.     Despite anticipating that Richard will not respond to the FAC, Plaintiff has not sought entry of default or a default judgment against Richard.  *See* Cal. R. Ct. 3.110(g)-(h).  Plaintiff apparently has no real intention of seeking relief from Richard, but joined him as a defendant in this action in an attempt to defeat diversity jurisdiction.  *See Rodriguez v. Casa Chapa S.A.*, 394 F. Supp. 2d 901, 908 (W.D. Tex. 2005) (finding fraudulent joinder of decedent driver's estate as a defendant in action arising out of auto accident in part because the estate failed to answer the complaint and plaintiffs did not seek default judgment).

## I.     A Misjoined Defendant Need Not Consent To Removal.

82.     Although ordinarily all defendants in a state court action must join in the petition for removal, 28 U.S.C. § 1446(b)(2)(A) , "this general rule applies … only to defendants properly joined and served in the action." *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984).  In particular, the rule of unanimity does not apply to procedurally joined parties, who need not consent to removal.  *See Sutton*, 251 F.R.D. at 506 (citing *United Computer Sys., Inc. v. AT&T corp.*, 298 F.3d 756, 762 (9th Cir 2002); *see Triggs*, 154 F.3d at 1287.

83.     Because Richard is procedurally misjoined as a defendant in Plaintiff's Complaint, this action may be removed without his consent.

84.     All other defendants join in this Notice of Removal.

### J.     Fictitious Defendants Shall Be Disregarded.

85.     Plaintiff has named John Does 1 through 5 as other defendants in this action.  Because those defendants are fictitious, however, and because they have not yet been served, their consent to joinder in removal is not necessary.  28 U.S.C. § 1441(a)  ("For purposes of removal . . . the citizenship of defendants sued under fictitious names shall be disregarded.").  Thus, the fictitious "John Does 1 to 5" in this action should be disregarded for determining diversity jurisdiction, and there is complete diversity between the parties for purposes of removal.

### K.     The Amount-In-Controversy Requirement Is Satisfied.

86.     In the Ninth Circuit, when a complaint does not specify a dollar amount for damages, the court may determine the amount in controversy is satisfied based on a removing defendant's showing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount if the plaintiff's allegations are taken as true.  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012); *see also Amado v. US Bancorp*, 2015 WL 5618877, at *2 (C.D. Cal. Sept. 24, 2015) (amount in controversy held met based on likelihood that emotional distress damages, punitive damages, and attorneys' fees, when coupled with compensatory damages, would exceed $75,000); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (holding jurisdictional minimum "clearly satisfied" when viewed in combination with possible attorneys' fees and alleged compensatory, punitive, and emotional distress damages); *Sawyer v. Retail Data, LLC*, 2015 WL 3929695, at *3 (C.D. Cal. Apr. 29, 2015) (same).

87.     To establish the amount in controversy by a preponderance of the evidence, defendants may introduce evidence of jury verdicts in other cases.  In

NOTICE OF REMOVAL
4815-2965-5112v.30 3710078-000083

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

particular, where a plaintiff seeks damages for emotional distress, a defendant may introduce evidence of jury verdicts on emotional-distress claims in other analogous cases. *Cain*, 890 F. Supp. 2d at 1250. Likewise, where a plaintiff seeks punitive damages, "a party asserting federal diversity jurisdiction may introduce evidence of jury verdicts in cases involving analogous facts." *Sawyer v. Retail Data, LLC*, 2015 WL 3929695, at *2 (C.D. Cal. Apr. 29, 2015) (unpublished) (quoting *Surber v. Reliance Nat. Indem. Co.,* 110 F.Supp.2d 1227, 1232 (N.D.Cal.2000)).

88.  Moreover, "where an underlying statute authorizes an award of attorney's fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy," irrespective of whether the plaintiff will in fact recover them.  *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015).

89.  Here, the Complaint seeks compensatory damages, costs, interest, civil penalties, punitive damage, and attorneys' fees against the Backpage.com Defendants.  FAC at ¶ 7.1.  The Complaint also seeks damages for alleged intentional infliction of emotional distress.  FAC at ¶¶ 5.6 - 5.11.  Plaintiff alleges that she "has suffered, and continues to suffer, general and specific damages" that "include, but are not limited to, severe emotional distress, humiliation, mental anguish, physical and mental pain and suffering, a decrease in her ability to enjoy llife, [and] past and future medical expenses," among other things.  FAC at ¶¶ 5.5, 5.9, 5.11, 5.21, 5.25, 5.29, 5.32.

90.  Although the Complaint does not pray for a specific amount of damages, the amount in controversy here is demonstrated by a nearly identical action filed July 30, 2012, in the Western District of Washington alleging sex trafficking of a minor against Backpage.com, LLC and others.  *See* Second Amended Complaint at ¶ 1.1 - 1.2, 4.1 - 6.7,  *J.S. v. Village Voice Media Holdings, LLC, d/b/a Backpage.com*, Case No. 12-2-11362-4 ("Washington Action."), attached as Exhibit UU to the Declaration of Ambika Kumar Doran ("Doran Decl.").  The complaint in the Washington Action

21

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

mirrored many of the claims asserted here, including negligence, unjust enrichment, invasion of privacy, assault and battery, and civil conspiracy. Doran Decl. at ¶ 2, Exhibit UU at ¶ 7.1 - 7.4, 7.16 - 7.21, 7.22 - 26. As Plaintiff alleges here, the Washington Action alleged that each plaintiff had suffered "severe emotional distress, humiliation, mental anguish, physical and mental pain and suffering, a decrease in her ability to enjoy life, past and future medical expenses" and was owed "general and special damages[.]" *See* Doran Decl., Exhibit UU at ¶¶ 4.4, 5.5, 6.7. In the Washington Action, Backpage.com requested a statement of damages, as permitted by Washington law, and the plaintiffs responded that they each sought damages of at least $250,000, and ranging up to $1,500,000. Doran Decl. at ¶ 3, Exhibit VV.

91. The amount in controversy here easily exceeds the requisite minimum of $75,000. Plaintiff asserts nearly identical claims against the Backpage.com Defendants, and seeks similar relief. *See* FAC at ¶¶ 5.5, 5.9, 5.11, 5.21, 5.25, 5.29, 5.32, 7.1 (alleging Plaintiff has suffered "severe emotional distress, humiliation, mental anguish, physical and mental pain and suffering, a decrease in her ability to enjoy life, past and future medical expenses," and seeking punitive damages, and attorneys' fees ). The Court can reasonably infer that the same or a substantially similar level of damages are at issue here as in the Washington Action.

92. Moreover, the requisite amount in controversy is further demonstrated by numerous jury verdicts, bench verdicts, settlements, and arbitration judgments in California cases involving claims analogous to those here. *See, e.g., Couche v. Coons,* No. 101CV799596, 2003 WL 26080732 (Santa Clara Super. Ct., Jan. 3, 2003) ($200,000 awarded to plaintiff in damages for invasion of privacy, intentional infliction of emotional distress, fraud, assault and battery, plus $15,000.00 in punitive damages for, among other things, defendant's publication of sexually explicit videos of plaintiff on website without her consent); *Hernandez v. Univision Radio*, No. 437656, 2005 WL 4131000 (San Francisco Super. Ct. Aug. 15, 2005) (bench verdict

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

for $250,000 in emotional-distress damages arising from radio station's publication of private facts concerning plaintiff's sexuality); *O'Hara v. KCST*, No. 72775, 1991 WL 444858 (San Diego Super. Ct., Jan. 27, 1991) ($300,000 in damages awarded to plaintiff falsely identified as a prostitute in a news report, where plaintiff claimed emotional distress as her primary injury); *[Confidential] vs. Los Angeles Unified School District*, 42 Trials Digest 12th 14, 2009 WL 3250201 (Los Angeles Super. Ct., Aug. 31, 2009) (school district paid settlement of $175,000 to plaintiff student for negligently failing to prevent plaintiff's rape while on school district's premises).

**L.    Miscellaneous**

93.    Because the State Action is pending in the Riverside County Superior Court, removal of the State Action to this District Court is proper under 28 U.S.C. §§ 1441(a), 1446(a).

94.    The following constitutes all of the process, pleadings, or orders received or served by Plaintiff or otherwise found in the State Action court file, and available to Defendants at the time of the filing of this removal.  True and correct copies are attached:

Ex. A.    Complaint, filed by Plaintiff;

Ex. B.    Certificate of Counsel

Ex. C.    Order Allowing Plaintiff Jane Doe and Her Guardian Ad Litem to Proceed Under Fictitious Name

Ex. D.    Order Granting Plaintiff & Her Guardian Ad Litem's Motion to Proceed Under Fictitious Name

Ex. E.    Summons Issued on Plaintiff's Complaint

Ex. F.    First Amended Complaint ("FAC")

Ex. G.    Summons Issued on First Amended Complaint.

Ex. H.    Order to Show Cause Why Sanctions Should Not Be Imposed To Jane Doe/Zalkin Law Firm, PC.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

| | | |
|---|---|---|
| 1 | Ex. I. | Request for Dismissal Without Prejudice as to New Times |
| 2 | | Media LLC. |
| 3 | Ex. J. | Proof of Service of FAC on Medalist Holdings, LLC |
| 4 | Ex. K. | Proof of Service of FAC on Medalist Holdings, LLC |
| 5 | Ex. L. | Proof of Service of FAC on Leeward Holdings, LLC |
| 6 | Ex. M. | Proof of Service of FAC on Leeward Holdings LLC |
| 7 | Ex. N. | Proof of Service of FAC on Camarillo Holdings, LLC |
| 8 | Ex. O. | Proof of Service of FAC on Camarillo Holdings, LLC |
| 9 | Ex. P. | Affidavit of Service on Leeward Holdings, LLC by Jane |
| 10 | | Doe |
| 11 | Ex. Q. | Proof of Service of FAC on Dartmoor Holdings, LLC |
| 12 | Ex. R. | Proof of Service of FAC on Dartmoor Holdings, LLC |
| 13 | Ex. S. | Affidavit of Service on Camarillo Holdings, LLC |
| 14 | Ex. T. | Proof of Service of FAC on IC Holdings LLC |
| 15 | Ex. U. | Affidavit of Service on Dartmoor Holdings LLC |
| 16 | Ex. V. | Affidavit of Service on IC Holdings, LLC |
| 17 | Ex. W. | Proof of Service of FAC on IC Holdings LLC |
| 18 | Ex. X. | Affidavit of Service on New Times Media, LLC |
| 19 | Ex. Y. | Proof of Service of FAC on New Times Media, LLC |
| 20 | Ex. Z. | Proof of Service of FAC on New Times Media LLC |
| 21 | Ex. AA. | Affidavit of Service on Backpage.com, LLC |
| 22 | Ex. BB. | Proof of Service of FAC on Backpage.com LLC |
| 23 | Ex. CC. | Proof of Service of FAC on Backpage.com LLC |
| 24 | Ex. DD. | Proof of Service of FAC on Carl Ferrer |
| 25 | Ex. EE. | Proof of Service of FAC on UGC Tech Group CV |
| 26 | Ex. FF. | Proof of Service of FAC on UGC Tech Group CV |
| 27 | Ex. GG. | Proof of Service of FAC on James Larkin |
| 28 | Ex. HH. | Plaintiff's Notice of Deposit of Advanced Jury Fees |

NOTICE OF REMOVAL
4815-2965-5112v.30 3710078-000083

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Ex. II.          Proof of Service of FAC on Reson Tredon Richard

Ex. JJ.         Amendment to First Amended Complaint

Ex. KK.        Declaration of Devin M Storey Re Service of Summons on Defendants

Ex. LL.         Order to Show Cause

Ex. MM.       Notice of Ruling Regarding Order to Show Cause

Ex. NN         Summons Issued on May 19, 2017

95.     The Backpage.com Defendants have good and sufficient defenses to this action and do not waive any defenses, jurisdictional or otherwise, by the filing of this Notice.

96.     Based on the foregoing, the Backpage.com Defendants hereby remove this action from the Riverside County Superior Court to this Court, and requests that further proceedings be conducted in this Court as provided by law.

DATED: June 23, 2017

DAVIS WRIGHT TREMAINE LLP
SCOTT COMMERSON
BRENDAN N. CHARNEY
JAMES GRANT
ROBERT CORN-REVERE
RONALD LONDON

By: /s/ Scott R. Commerson
          Scott R. Commerson
Attorneys for Defendants
MEDALIST HOLDINGS, INC.;
LEEWARD HOLDINGS, L.L.C.;
CAMARILLO HOLDINGS, L.L.C.;
DARTMOOR HOLDINGS, L.L.C.; IC
HOLDINGS, L.L.C.; BACKPAGE.COM,
L.L.C; UGC TECH GROUP C.V.; CARL
FERRER; JAMES LARKIN; MICHAEL
LACEY; and ATLANTISCHE
BEDRIJVEN C.V.

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am an employee of the law firm of DAVIS WRIGHT TREMAINE LLP, and that on the date shown below, I caused service of a true and correct copy of the attached:

## NOTICE OF REMOVAL

to be completed by:

_____     personally delivering

_____     delivery via Nationwide Legal Services

_____     sending via Federal Express or other overnight delivery service

__X__     depositing for mailing in the U.S. mail with sufficient postage affixed thereto

_____     delivery via email

_____     electronic filing, and thereby delivery via e-mail to:

IRWIN M. ZALKIN, ESQ. (#89957)     Reson Tredon Richard
DEVIN M. STOREY, ESQ. (#234271)     Chuckawalla Valley State Prison
ALEXANDERS. ZALKIN, ESQ. (#280813)     P.O. Box 2349
The Zalkin Law Firm, P.C.     Blythe, CA 92226
12555 High Bluff Drive, Suite 301
San Diego, CA 92130
Tel: 858-259-3011
Fax: 858-259-3015
Email: Irwin@zalkin.com
dms@zalkin.com
alex@zalkin.com
Counsel for Plaintiff Jane Doe

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 23, 2017     _/s/ Lina Pearmain_
    Lina Pearmain

NOTICE OF REMOVAL
4815-2965-5112v.30 3710078-000083

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# **<u>Exhibit J</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| K. R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-00299-WKW-WC |
| | ) | |
| BACKPAGE.COM, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO ADMIT PRO HAC VICE**
**(James Condon Grant)**

**COMES NOW** Robert D. Segall ("Movant") a member of the Bar of this Court, and hereby respectfully moves this Court, pursuant to Local Rule 83.1, M.D. Ala., to grant *pro hac vice* admission to James Condon Grant as co-counsel for Defendants Backpage.com LLC; Camarillo Holdings LLC; Medalist Holdings, Inc.; Leeward Holdings LLC; Dartmoor Holdings LLC; IC Holdings LLC; Atlantische Bedrijven C.V.; Carl Ferrer; Michael Lacey; and James Larkin in the above-styled matter. In support thereof, Movant provides the following:

1. James Condon Grant ("Applicant") is an attorney with the firm Davis Wright Tremaine, LLP, located at 1201 Third Avenue, Suite 2200, Seattle, Washington, 98101, telephone number (206) 757-8096, and is a member in good standing of the Bar of the State of Washington. A Certificate of Good Standing from the United States District Court, Western District of Washington is attached.

2. Applicant has been a member in good standing of the Washington State Bar since November 1, 1984. Since January 23, 1986, Applicant has been admitted to practice before the United States District Court, Western District of Washington.

3.      Applicant is not presently, nor has he ever been, the subject of any disbarment or suspension proceedings.

4.      Applicant further certifies that he shall submit to the Local Rules of this Court, the Rules of Professional Conduct, and all other requirements of the Middle District of Alabama.

WHEREFORE, Movant respectfully requests this Court to enter an Order granting *pro hac vice* admission to the Applicant in the above-styled matter.

s/Robert D. Segall
Robert D. Segall (ASB-7354-E68R)
Copeland, Franco, Screws & Gill, P.A.
444 South Perry Street (36104)
P.O. Box 347
Montgomery, AL 36101-0347
Telephone:  (334) 834-1180
Fax:  (334) 834-3172
Email:  segall@copelandfranco.com

**OF COUNSEL:**
Robert Corn-Revere (*pro hac vice pending*)
bobcornrevere@dwt.com
Ronald G. London (*pro hac vice pending*)
ronnielondon@dwt.com
Peter Karanjia (*pro hac vice pending*)
peterkaranjia@dwt.com
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4225
Fax: (202) 973-4425

Brendan N. Charney (*pro hac vice pending*)
Scott R. Commerson (*pro hac vice pending*)
Davis Wright Tremaine, LLP
865 S. Figueroa Street
Suite 2400
Los Angeles, CA  90017
Phone:  (213) 633-6800
Fax: (213) 633-6899
brendancharney@dwt.com
scottcommerson@dwt.com

*Counsel for Defendants Backpage.com LLC; Camarillo Holdings LLC; Leeward Holdings LLC; Dartmoor Holdings LLC; IC Holdings LLC; Atlantische Bedrijven C.V.; Carl Ferrer; Michael Lacey; Medalist Holdings, Inc. and James Larkin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gregory M. Zarzaur, Esq.
Zarzaur Mujumdar & Debrosse
2332 2nd Avenue North
Birmingham, AL 35203
Phone: (205) 983-7985
gregory@zarzaur.com
**Counsel for Plaintiff**

John P. Kavanagh, Jr., Esq.
jkavanagh@burr.com
John P. Browning, Esq.
jbrowning@burr.com
Taylor Barr Johnson, Esq.
tjohnson@burr.com
Burr Forman, LLP
Post Office Box 2287
Mobile, AL 36652
**Counsel for Veda LLC**

Sara M. Turner, Esq.
Austin K. Smith, Esq.
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
420 North 20th Street
Wells Fargo Tower, Suite 1400
Birmingham, AL 35203
Phone: (205) 328-0480
smturner@bakerdonelson.com
aksmith@bakersdonelson.com
**Counsel for Defendant Choice Hotels
International, Inc.**

and that I served a copy of same via U.S. Mail, postage prepaid and properly addressed to the following:

Santiago Alonso
AIS # 00295466
Bibb Correctional Facility
565 Bibb Lane
Brent, AL 35034

Nirav Joshi
3011 Ross Clark Circle
Dothan, AL 36301

s/ Robert D. Segall
Of Counsel

# United States District Court
## Western District of Washington



## CERTIFICATE OF GOOD STANDING

I, William M. McCool, Clerk of the United States District Court for the Western District of Washington, Do Hereby Certify that

**James C Grant** was admitted to practice in said Court on **January 23, 1986** to the Western District of Washington, and is in good standing as a member of the bar of said Court.

Dated at Seattle, Washington on May 15, 2017.

William M. McCool
Clerk

By _____
Deputy Clerk



# **<u>Exhibit K</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION** RECEIVED

| | |
|---|---|
| [REDACTED] | 2017 MAY -5  P 2: 00 |
| Plaintiff, | DEBRA P. HACKETT, CLK<br>U.S. DISTRICT COURT<br>MIDDLE DISTRICT ALA |
| v. | |
| BACKPAGE.COM, LLC, et al.; | CIVIL ACTION NO. 1:17-cv-299-WKW |
| Defendants. | (removed from Houston County<br>Circuit Court, No. 38-CV-2017-<br>900041.00) |

## NOTICE OF REMOVAL

COMES NOW Medalist Holdings, Inc., joined by Leeward Holdings, LLC; Camarillo

Holdings, LLC; Michael Lacey; James Larkin; Backpage.com, LLC; IC Holdings, LLC;

Dartmoor Holdings, LLC; Atlantische Bedrijven C.V.; and Carl Ferrer (collectively, "the

Backpage.com Defendants"); to give notice of removal of the above-captioned civil action

pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, from the Circuit Court of Houston County,

Alabama to the United States District Court for the Middle District of Alabama.  In accordance

with Local Rule 81.1, clear, legible copies of the Complaint as well as all records and

proceedings in this matter from the state court are attached together to this Notice as **Appendix**

**A**.  In support of this Notice of Removal, the Backpage.com Defendants state as follows:

## A. Introduction

1.     Plaintiff filed an Alabama state court action on January 25, 2017, alleging Alabama state-law claims against the Backpage.com Defendants,[1] as well as Choice Hotels, International, Inc., Veda LLC, and Nirav Joshi, who are the corporate owners and operator of a Houston County hotel (collectively, the "Hotel Defendants"), and Santiago Alonso, who is incarcerated at the Bibb County Correction Facility.

2.     Plaintiff has served copies of the Complaint on all of the defendants. The last defendant served was Medalist Holdings, Inc., which waived service on April 7, 2017. This Notice of Removal is timely because Medalist Holdings, Inc., joined by the other Backpage.com Defendants, is filing it within 30 days after the Complaint was served on it. 28 U.S.C. § 1446 (b)(1), (2).

3.     Removal is proper based on diversity jurisdiction under 28 U.S.C. § 1332, and the doctrine of fraudulent misjoinder.

4.     Plaintiff is a citizen of Mississippi. The Backpage.com Defendants are citizens of Delaware, Arizona, and Texas. Accordingly, there is complete diversity between Plaintiff and the Backpage.com Defendants. The Hotel Defendants are citizens of Maryland and Alabama, and Defendant Santiago Alonso is a citizen of Alabama, where he is currently incarcerated. However, the citizenship of Alonso and the Hotel Defendants should be disregarded, and they need not join in seeking removal of this action, because Plaintiff has fraudulently misjoined the claims against them with the claims against the Backpage.com Defendants in violation of Rules 20 and 21 of the Federal Rules of Civil Procedure. Plaintiff's claims against Alonso for his trafficking, exploitation, and abuse of her, and against the Hotel Defendants for their alleged roles in facilitating her trafficking and exploitation, have no connection to her claims against the Backpage.com Defendants for, in essence, providing an

---

[1] On April 7, 2017, Plaintiff substituted Medalist Holdings, Inc. for the erroneously named defendant Medalist Holdings, LLC.  Declaration of Robert D. Segall ("Segall Decl."), Exh. Q.

online forum for third-party advertising – which claims are absolutely barred in any event under the Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230").

5.     The Plaintiff's Complaint does not pray for a specific amount of damages. However, pursuant to 28 U.S.C. §§ 1332(a) and 1446(c)(2)(A), it is clear from the nature of Plaintiff's claims and alleged harm, as well as evidence proffered by the plaintiffs in a nearly identical lawsuit filed by Plaintiff's counsel, that the amount in controversy in this action substantially exceeds the requisite minimum of $75,000.

6.     Accordingly, this Court has diversity jurisdiction of all claims between Plaintiff and the Backpage.com Defendants, and should sever and remand to the Houston County Circuit Court the claims against the Hotel Defendants and Alonso.

**B. This Notice Is Timely.**

7.     On January 25, 2017, an individual alleged to have been a minor at the time of the events at issue, and identified as "K.R.," filed a complaint in the Circuit Court of Houston County, Alabama, Case No. 38-CV-2017-900041.00, against the Backpage.com Defendants and others ("the Complaint"). The Complaint is captioned *[Redacted] v. Backpage.com, LLC; Camarillo Holdings, LLC; Medalist Holdings, LLC; Leeward Holdings, LLC; Dartmoor Holdings, LLC; IC Holdings, LLC; Atlantische Bedrijven C.V.; Carl Ferrer; James Larkin; Michael Lacey; Choice Hotels International, Inc.; Veda LLC; Nirav Joshi; Santiago Alonso; FICTITIOUS DEFENDANTS A, B, and C are those entities or persons that owned managed, and/or operated the motel located at 3011 Ross Clark Circle, Dothan, Alabama in July 2013 and August 2013; FICTITIOUS DEFENDANTS D, E, and F are those entities or persons that financially benefitted from the human trafficking of the Plaintiff; FICTITIOUS DEFENDANTS G, H, and I are those persons or entities responsible for training the employees of the motel located at 3011 Ross Clark Circle, Dothan, AL; FICTITIOUS DEFENDANTS J, K, and L are those persons or entities that were involved in the human trafficking of the Plaintiff; FICTITIOUS DEFENDANTS M, N, and O are those persons or entities who owned, operated, and controlled www.backpage.com, including its content, during and after the time that the*

'adult' advertisements involving Plaintiff were published on www.backpage.com; FICTITIOUS DEFENDANTS P, Q, and R, whether singular or plural, that entity which, concerning the occasion made the basis of this suit, that was the principal of any of the named or above-described fictitious party defendants; FICTITIOUS DEFENDANTS S, T, and U, whether singular or plural, that entity which is the successor-in-interest of the named or above-described fictitious party defendants. Plaintiff avers that the identity of the fictitious party defendants herein is otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff at this time, their identity as proper party defendants is not known to Plaintiff at this time, and their true names will be substituted by amendment when ascertained. See Segall Decl. at ¶ 4, Exhibit A.

8.　　On January 27, 2017, Plaintiff served the Complaint on Choice Hotels International, Inc. See Segall Decl. at ¶ 5, Exhibit B.

9.　　On January 28, 2017, Plaintiff served the Complaint on Veda LLC and Nirav Joshi. See Segall Decl. at ¶ 6, Exhibits C-D.

10.　　On January 30, 2017, Plaintiff served the Complaint on Santiago Alonso. See Segall Decl. at ¶ 7, Exhibit E.

11.　　On January 30, 2017, Plaintiff served the Complaint on Camarillo Holdings, LLC; Leeward Holdings, LLC; Backpage.com, LLC; and IC Holdings, LLC. See Segall Decl. at ¶ 8-11, Exhibits F-I. On the same day, Plaintiff served the Complaint on Dartmoor Holdings, LLC, though a "Notice of No Service" was erroneously filed by the Clerk of the Houston Circuit Court instead of a return of service. See id. at ¶ 12, Exhibit J.

12.　　On January 31, 2017, Plaintiff served the Complaint on Atlantische Bedrijven C.V. See Segall Decl. at ¶ 13, Exhibit K.

13.　　On March 6, 2017, Carl Ferrer signed a waiver of service of the Complaint pursuant to Ala. R. Civ. Proc. 4(h). See Segall Decl. at ¶ 15, Exhibit M.

14.　　On March 8, 2017, James Larkin signed a waiver of service of the Complaint pursuant to Ala. R. Civ. Proc. 4(h). See Segall Decl. at ¶ 16, Exhibit N.

15.     On March 9, 2017, Michael Lacey signed a waiver of service of the Complaint pursuant to Ala. R. Civ. Proc. 4(h).  *See* Segall Decl. at ¶ 17, Exhibit O.

16.     On April 3, 2017, service was attempted but not completed on erroneously named defendant Medalist Holdings LLC.  *See* Segall Decl. at ¶ 18, Exhibit P.

17.     On April 7, 2017, Plaintiff filed a Notice of Substitution and Plaintiff's First Amended and/or Restated Complaint, which substituted the name Medalist Holdings, Inc. in lieu of and in place of Medalist Holdings LLC.  *See* Segall Decl. at ¶ 19, Exhibit Q.  This is the operative complaint in this action.

18.     On April 7, 2017, Medalist Holdings, Inc., through its counsel, signed a waiver of service of the Complaint pursuant to Ala. R. Civ. Proc. 4(h).  *See* Segall Decl. at ¶ 20, Exhibit R.

19.     Plaintiff's Complaint alleges four causes of action:  Violation of Alabama's Anti-Human Trafficking Statute, Ala. § 13A-6-150 *et seq.* (Count I); Outrage (Count II); Negligent and/or Wanton Conduct (Count III); and Unjust Enrichment (Count IV).  *See* Compl. ¶¶ 61-73.

20.     The Backpage.com Defendants are named in all four Counts.

21.     Counts I and IV are alleged against all Defendants.  Count II is alleged against the Backpage.com Defendants, Veda LLC, Joshi, and Alonso.  Count III is alleged against the Backpage.com Defendants and the Hotel Defendants.

22.     Plaintiff seeks damages against all Defendants "separately and severally."  *See* Compl., Prayer for Relief.

23.     The Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), because the Backpage.com Defendants have filed it within 30 days after defendant Medalist Holdings, Inc. signed a waiver of service of a copy of the Complaint.

**C. There Is Complete Diversity Between Plaintiff and the Backpage.com Defendants.**

24.     Pursuant to 28 U.S.C. § 1441(a), defendants may remove any civil action brought in a state court of which the district courts of the United States have original jurisdiction.

25.     Federal district courts have original jurisdiction of all civil actions between citizens of different states, and between a citizen of a state and a citizen or subject of a foreign state, where the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1), (2).

26.     A natural person is a citizen of the state where the person is domiciled, *i.e.*, where the person resides with the intention to remain or return for more than a temporary period. *McCormick v. Aderholt*, 293 F.3d 1254, 1258 (11th Cir. 2002).

27.     LLCs are treated like limited partnerships for purposes of determining diversity jurisdiction, and are deemed to be citizens of every state of which a member is a citizen. *Rolling Greens MHP v. Comcast SCH Holdings*, 374 F.3d 1020, 1022 (11th Cir. 2004).

28.     For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is determined by the "nerve center" test, *i.e.*, "the place where a corporation's officers direct, control, and coordinate the corporations' activities," which ordinarily is the "place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

29.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Plaintiff was and is a resident and citizen of Lauderdale County, Mississippi (which is also the location of her childhood home). Compl. ¶¶ 5, 49.

30.     Plaintiff's Complaint correctly alleges that Backpage.com, LLC; Camarillo Holdings, LLC; Medalist Holdings, Inc.; Leeward Holdings, LLC; Dartmoor Holdings, LLC; and IC Holdings, LLC all are Delaware Limited Liability Companies ("LLCs"). Compl. ¶ 6-11.

31.　　At the time the Complaint was filed, and as of the date of the filing of this Notice, Medalist Holdings, Inc. was and is a Delaware corporation, with its principal place of business in Arizona. It has always been privately held, and no publicly held corporation has ever owned an interest in it.

32.　　At the time the Complaint was filed, and as of the date of the filing of this Notice, Leeward Holdings, LLC was and is a Delaware limited liability company, wholly owned by Medalist Holdings, Inc. Leeward Holdings, LLC has always been privately held, and no publicly held corporation has ever owned an interest in it.

33.　　At the time the Complaint was filed, and as of the date of the filing of this Notice, Camarillo Holdings, LLC was and is a Delaware limited liability company, wholly owned by Leeward Holdings LLC. Camarillo Holdings, LLC has always been privately held, and no publicly held corporation has ever owned an interest in it.

34.　　Therefore, at the time the Complaint was filed, and as of the date of the filing of this Notice, Medalist Holdings Inc., Leeward Holdings, LLC, and Camarillo Holdings, LLC were and are all citizens of Delaware and Arizona.

35.　　At the time the Complaint was filed, and as of the date of the filing of this Notice, James Larkin was and is a resident and citizen of Arizona.

36.　　James Larkin owns a residence near Phoenix in the State of Arizona and has owned a residence in or near Phoenix since 1982. He has lived near Phoenix since 1952. His current residence near Phoenix is his primary residence and has been so since 2007.

37.　　James Larkin considers his residence in Arizona to be his permanent home and, when he departs the State of Arizona, he does so with the intent to return to his residence in Arizona.

38.　　James Larkin has been employed in or near Phoenix, Arizona since 1970.

39.　　James Larkin files his state income taxes in Arizona as a resident of Arizona and has done so since 1968. He also pays and has always paid real and personal property taxes in Arizona.

40.     James Larkin is registered to vote in the State of Arizona and has been registered to vote in Arizona since about 2000.

41.     James Larkin has an Arizona driver's license and has had an Arizona driver's license since 1966.

42.     James Larkin has automobiles in Arizona, which are registered in Arizona. He has owned or leased automobiles that have been registered in Arizona since 1968.

43.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Michael Lacey was and is a resident and citizen of Arizona.

44.     Michael Lacey owns a residence near Phoenix in the State of Arizona and has owned a residence in or near Phoenix since the mid-1990s. He has lived in Phoenix since 1966. His current residence near Phoenix is his primary residence and has been so since the late 1990's.

45.     Michael Lacey considers his residence in Arizona to be his permanent home and, when he departs the State of Arizona, he does so with the intent to return to his residence in Arizona.

46.     Michael Lacey has been employed in or near Phoenix, Arizona since 1970.

47.     Michael Lacey files his state income taxes in Arizona as a resident of Arizona and has done so since 1970. He also pays, and for many years has paid, real and personal property taxes in Arizona.

48.     Michael Lacey is registered to vote in the State of Arizona and has been registered to vote in Arizona since the mid-1990s.

49.     Michael Lacey has an Arizona driver's license and has had an Arizona driver's license since the 1990s.

50.     Michael Lacey has automobiles in Arizona, which are registered in Arizona. He has owned or leased automobiles that have been registered in Arizona since 1990.

NOTICE OF REMOVAL – 8

51. At the time the Complaint was filed, and as of the date of the filing of this Notice, the ownership structure of the remaining Backpage.com Defendants was and is as follows:

      a. Backpage.com, LLC was and is a Delaware limited liability company, wholly owned by IC Holdings, LLC.

      b. IC Holdings, LLC was and is a Delaware limited liability company, wholly owned by Dartmoor Holdings, LLC.

      c. Dartmoor Holdings, LLC was and is a Delaware limited liability company, wholly owned by Atlantische Bedrijven C.V.

      d. Atlantische Bedrijven C.V. was and is a Dutch limited partnership, wholly owned by Kickapoo River Investments, LLC and Lupine Investments LLC.

      e. Kickapoo River Investments, LLC and Lupine Investments LLC are each Delaware limited liability companies, each wholly owned by Amstel River Holdings, LLC.

      f. Amstel River Holdings, LLC is a Delaware limited liability company, wholly owned by the Vicky Ferrer Family Trust.

      g. Backpage.com, LLC, IC Holdings, LLC, Dartmoor Holdings, LLC, Atlantische Bedrijven C.V., Kickapoo River Investments, LLC, Lupine Investments LLC, and Amstel River Holdings, LLC have always been privately held, and no publicly held corporation has ever owned an interest in any of them.

52. Thus, tracing up the ownership chain, at all relevant times, the citizenship of Backpage.com, LLC, IC Holdings, LLC, Dartmoor Holdings, LLC, Atlantische Bedrijven C.V., Kickapoo River Investments, LLC, Lupine Investments LLC, and Amstel River Holdings, LLC, for diversity purposes, are based on the citizenship of their ultimate owner, the Vicky Ferrer Family Trust.

53.     The Trustee of the Vicky Ferrer Family Trust is Carl Ferrer.  The current beneficiaries of the Trust are Carl Ferrer and his wife, April E. Ferrer.

54.     Any potential future beneficiaries of the trust who currently are identifiable are citizens of either Texas or Oklahoma.  No current beneficiary of the trust, or potential future beneficiary of the trust who is currently identifiable, is or has been a citizen of Alabama.

55.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Carl Ferrer and April Ferrer were and are residents and citizens of Texas.

56.     Carl and April Ferrer have owned a residence near Dallas in the State of Texas since August 2005.  The residence is their primary residence and has been so since August, 2005.

57.     Carl and April Ferrer consider their residence in Texas to be their permanent home and, when they depart the State of Texas, they do so with the intent to return to their residence in Texas.

58.     Carl Ferrer has been employed in or near Dallas since August 2005.

59.     Carl and April Ferrer file their income taxes in Texas as residents of Texas and have done so since 2005.  They also pay real and personal property taxes in Texas.

60.     Carl Ferrer is registered to vote in the State of Texas and has been registered to vote in Texas since 2008.  April Ferrer is registered to vote in the State of Texas and has been registered to vote in Texas since approximately 2005.

61.     Carl and April Ferrer have Texas driver's licenses and have had Texas driver's licenses since 2006.

62.     Carl and April Ferrer have automobiles in Texas, which are registered in Texas. They have owned automobiles that have been registered in Texas since 2006.

63.     Carl Ferrer has had the same physician for over 16 years; the physician's office is in Dallas, Texas.

64.     Therefore, at the time the Complaint was filed, and as of the date of the filing of this Notice, the Vicky Ferrer Family Trust was and is a citizen of Texas, given that its trustee

and all its current beneficiaries are citizens of Texas. Accordingly, the LLCs and limited partnership owned, directly and indirectly, by the Trust were and are all citizens of Texas for diversity purposes, including Backpage.com, LLC; IC Holdings, LLC; Dartmoor Holdings, LLC; Atlantische Bedrijven C.V.; Kickapoo River Investments, LLC; Lupine Investments LLC; and Amstel River Holdings, LLC.

65.     None of the Backpage.com Defendants, either individually or through corporate ownership or membership, are or ever have been citizens of the State of Alabama.

66.     Accordingly, at the time the Complaint was filed, and as of the date of the filing of this Notice, complete diversity of citizenship existed and exists between Plaintiff (who is a Mississippi citizen) and all of the Backpage.com Defendants (which are citizens of Delaware, Arizona, and Texas).

67.     When a plaintiff improperly joins claims in a state court action, a federal district court to which the case is removed should disregard the citizenship of non-diverse parties that are not properly joined under Fed. R. Civ. P. 20, sever and remand claims involving such non-diverse parties under Fed. R. Civ. P. 21, and recognize federal diversity jurisdiction for the remaining claims. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072-73 (11th Cir. 2000). This doctrine is commonly referred to as "fraudulent" misjoinder; courts find misjoinder is "fraudulent"[2] when a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability, and the claims against the two defendants have no real connection. *Triggs*, 154 F.3d at 1287; *Callen v. Daimler Trucks North America*, 2016 U.S. Dist. Lexis 84112, at *5 (M.D. Al. June 29, 2016).

---

[2] Notwithstanding the use of the word "fraudulent," the application of the doctrine does not depend on showing actual fraud, culpable mental state, or bad faith on the part of Plaintiff or counsel. *See AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1291 (11th Cir. 1998).

### D. The Non-Diverse Defendants Are "Fraudulently" Misjoined.

68.    Under Fed. R. Civ. P. 20, joinder of defendants in a single action requires a claim for relief against all defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and a common question of law or fact. Fed. R. Civ. P. 20(a)(2). At any time, and by motion or on its own, a federal court may add or drop any party that has been improperly or fraudulently misjoined. Fed. R. Civ. P. 21.

69.    A defendant's right of removal cannot be defeated by a fraudulent misjoinder of claims or parties that have no real connection with one another. *Tapscott*, 77 F.3d at 1360; *Callen*, 2016 U.S. Dist. Lexis 84112, at *5-10; *Atkins v. Smalbach*, 2015 U.S. Dist. Lexis 31185, at *8 (M.D. Fla. Feb. 6, 2015) ("Fraudulently joining Mick to the claims against Smalbach would unfairly deprive Mick of its constitutionally and statutorily protected right to adjudicate the claims against it in a federal forum.")

70.    Plaintiff has fraudulently misjoined Santiago Alonso and the Hotel Defendants in this action under Fed. R. Civ. P. 20 and 21 and applicable case law.

71.    Courts find that defendants are fraudulently misjoined when the claims against them are "factually distinct" and there is "no real connection between the[m.]" *Baums v. General Insurance Co.*, 2006 U.S. Dist. Lexis 77820, at *7 (M.D. Ala. Oct. 23, 2006). Fraudulent joinder is found when, among other things, the claims against one defendant involve markedly different facts and evidence from the claims against another defendant. *See, e.g., M.W. v. Ford Motor Co.*, 2015 U.S. Dist. Lexis 36895, at *11-21 (M.D. Fla. March 24, 2015) (finding fraudulent joinder where facts needed to support medical malpractice claim concerning treatment of Plaintiff's injuries were wholly distinct from facts that would support product liability and negligence claims about vehicle in which injuries occurred); *Atkins*, 2015 U.S. Dist. Lexis 31185, at *15-16 (M.D. Fla. Feb. 6, 2015) (finding fraudulent misjoinder where claim seeking approval of arbitration award against non-diverse defendant over fraudulent sales of securities shared no common questions of law or fact with claim alleging that diverse

NOTICE OF REMOVAL – 12

defendant was an agent that participated in the sale of the securities); *Lopez v. Sturdivant*, 2010 WL 3121750, at *3 (S.D. Miss. Aug. 6, 2010) (finding fraudulent misjoinder of plaintiffs' claims against in-state contractor for defective construction of a house with claims against out-of-state insurer for improper denial of coverage); *Willingham v. State Farm Ins. Co.,* 2009 WL 2767679 at *3-4 (N.D. Miss. Aug. 27, 2009) (finding fraudulent joinder of claims against insurance company arising from house fire, with claims against non-diverse construction company for defective work in rebuilding the house after the fire); *Nsight Technologies, LLC v. Fed. Ins. Co.*, 2009 WL 1106868, at *4 (S.D. Miss. Apr. 23, 2009) (claims against employee for conversion and against insurer concerning coverage for alleged conversion were fraudulently misjoined because "[w]hile the claims against [both defendants] arise out of the alleged embezzlement, the claims 'involve different factual issues and different legal issues.'").

**E. Defendant Alonso and the Hotel Defendants Are Fraudulently Misjoined.**

72.     The Complaint alleges that Alonso is a prisoner incarcerated in Bibb County, Alabama. Compl. ¶ 19. It further alleges that Alonso was a pimp who posted photographs of K.R. on Backpage.com, solicited and arranged for adults to have sex with K.R., and received money for prostituting her. *Id.* ¶ 54.

73.     On May 15, 2014, Alonso was convicted after a jury trial on one count of first-degree human trafficking and one count of felony distribution of drugs to a minor. *Alonso v. State*, No. CR-13-1546, 2016 WL 661274, at *1 (Ala. Crim. App. Feb. 12, 2016). Plaintiff K.R. was the victim of both crimes. *Id.* On June 18, 2014, Alonso was sentenced to forty years in prison for the human-trafficking charge and ten years in prison for distribution of drugs to a minor, to be served concurrently with a 12-month sentence for misdemeanor marijuana possession. *Id.*

74.     K.R.'s claims against Alonso are based on his rape, physical assault, trafficking, exploitation and abuse of her. *See* Compl. ¶¶ 49-55.

75.     The Complaint alleges that the Hotel Defendants owed a duty to Plaintiff in owning and operating the Quality Inn in Dothan, Alabama, where Alonso's trafficking,

exploitation, and abuse allegedly occurred, and that they breached that duty by variously permitting Alonso to commit his crimes there, or not intervening to stop him and others from doing so. *See* Compl. at ¶¶ 57, 69-70.

76.  K.R.'s claims against the Hotel Defendants are based on principles of physical premises liability, in particular, the Hotel Defendants' alleged indifference to the fact that Alonso's actions occurred in a hotel they owned and operated.

77.  K.R.'s claims against the Backpage.com Defendants, on the other hand, are based on the allegations that the Backpage.com website was at least one Internet site where Alonso posted advertisements about her, Backpage.com received fees for the ads, and that it "made no effort at any time to stop his criminal activity." Compl. at ¶¶ 68.

78.  Markedly different evidence and questions of law are involved in K.R.'s claims against Alonso and the Hotel Defendants, on the one hand, and Plaintiffs' claims against the Backpage.com Defendants, on the other.

79.  Specifically, the evidence with regard to K.R.'s claims against Alonso would concern his trafficking, exploitation, and abuse of her. The evidence for claims against the Hotel Defendants apparently would concern the extent to which they were privy to Alonso's trafficking and exploitation of K.R., and, in particular: how the Hotel Defendants operated the hotel; hotel policies with respect to training employees and monitoring hotel activities; how the Hotel Defendants' employees interacted with Alonso and K.R., what they knew, and whether and how they reported it; and other factual questions grounded in the operation of these particular hotels and hotel brands. *See* Compl. at ¶¶ 57, 69-70. What's more, the case against the Hotel Defendants is further complicated by issues related to the franchise relationship among the Hotel Defendants; Choice Hotels' liability may turn on whether it is found to have exercised sufficient supervisory control over, or had an agency relationship with, the franchisee that operated the hotel where K.R. allegedly was exploited and abused. *See* Defendant Choice Hotels International, Inc.'s Motion to Dismiss and Memorandum in Support, attached as Exhibit L to the Segall Decl.

80.   The evidence to establish Alonso's illegal conduct, and to resolve factual questions concerning hotel policy, training and operations; employee conduct; and legal and factual questions concerning franchisor liability is wholly unrelated to the operation of the Backpage.com website or the circumstances of the ads about the Plaintiff posted on the website.

81.   Moreover, a central issue with respect to the Backpage.com is the immunity from suit prescribed by the CDA. Section 230 of the CDA states that "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  It expressly preempts state laws: "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id.* § 230(e)(3).  Because the Backpage.com Defendants are being sued based entirely on third-party speech posted online, the claims against them raise issues of law entirely distinct from the claims concerning Mr. Alonso's physical conduct, or the Hotel Defendants' operation of their physical premises.

82.   In short, the Backpage.com Defendants' operation of a Web site in which third parties allegedly posted online advertisements is markedly different from the alleged commission or facilitation of the physical and sexual abuse by the misjoined defendants.  As Alabama courts repeatedly have held, defendants are "not deemed to be 'joint tortfeasors where the acts of the two defendants 'did not combine to cause any one injury.'"  *Nicholson v. Pickett*, 2016 WL 854370, at *18 (M.D. Ala. Mar. 4, 2016) (quoting *Lowry v. Garrett*, 792 So. 2d 1119, 1123 (Ala. Civ. App. 2001) and *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 325 (Ala. 1999)).  Here, the Complaint alleges, at most, successive torts, rather than conduct by tortfeasors acting jointly.  Alonso's liability for trafficking, exploiting, and abusing K.R. is independent from any acts or omissions by the Backpage.com Defendants.  Even assuming the Backpage.com Defendants could be liable for running a website where K.R.'s picture was posted by a third party, the manner in which the Backpage.com Defendants operated this website is utterly unnecessary to establish Alonso's liability for coercing K.R. into sexual

servitude and abusing her. *See* Compl. at ¶¶ 50-57; Al. Crim. C. § 13A-6-152(a). Likewise, the alleged liability of the Hotel Defendants in connection with hotel premises does not depend on any acts or omissions by the Backpage.com Defendants in running a website. *See* Compl. at ¶¶ 54, 47. Rather, the allegations are analogous to numerous decisions finding claims based on separate or successive torts were fraudulently misjoined. *E.g., Stone v. Zimmer, Inc.*, 2009 U.S. Dist. Lexis 59125, at *10-11 (S.D. Fla. June 25, 2009) (claims against manufacturer of hip implant were fraudulently misjoined with malpractice claims against doctor for failing to diagnose that implant had fractured); *Sturdivant*, 2010 WL 3121750 at *3; *Willingham,* 2009 WL 2767679 at *3-4.

### F.    A Misjoined Defendant Need Not Consent to Removal.

83.    Although ordinarily all defendants in a state court action must join in the petition for removal, 28 U.S.C. § 1446(b)(2)(A), the rule of unanimity does not apply to fraudulently joined parties, who need not consent to removal. *Callen*, 2016 U.S. Dist. Lexis 84112, at *9.

84.    Because Alonso and the Hotel Defendants are fraudulently misjoined as defendants in Plaintiff's Complaint, this action may be removed without their joinder or consent.

85.    All other defendants join in this Notice of Removal.

### G. The Amount-in-Controversy Requirement Is Satisfied.

86.    In the Eleventh Circuit, when a complaint does not specify a dollar amount for damages, the court may determine that the amount in controversy is facially apparent from the complaint on the basis of evidence submitted by the defendant combined with "reasonable deductions, reasonable inferences, or other reasonable extrapolations" and the court's "judicial experience and common sense." *Abner v. U.S. Pipe & Foundry*, 2017 U.S. Dist. Lexis 19058, at *16-17 (N.D. Ala. Feb. 10, 2017) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) and *Roe v. Michelin N. America*, 613 F.3d 1058, 1062 (11th Cir. 2010)); *see also Johnson v. Blackburn*, 2016 U.S. Dist. Lexis 138108 (N.D. Ala. Oct. 5, 2016)

(requirement satisfied where plaintiff demanded compensatory and punitive damages and alleged she suffered "serious injuries to her head and neck, causing 'great physical pain and mental anguish,' and to her lower back, knees, and shoulders, resulting in necessary medical expenses"); *Case v. Cincinnati Insurance Co.*, 2016 U.S. Dist. Lexis 124483, at *1-2 (M.D. Fla. Sept. 14, 2016) (requirement met where plaintiff's alleged damages included permanent injuries to body and mind, physical and mental pain and suffering and disability, medical, nursing, hospitalization treatment/expenses; travel expenses; loss wages; permanent impairment and loss of ability to work and earn money; and impairment in capacity to lead and enjoy a normal life). When the amount of a plaintiff's claim for damages is unspecified, "a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer." *Tapscott*, 77 F.3d at 1356–57.

87.     Here, the Complaint seeks compensatory damages, punitive damages, treble damages, and attorneys' fees. Compl. ¶ 63. Plaintiff alleges that she has "suffered and continues to suffer damages, including, but not limited to personal injury, mental anguish, loss of quality of life, and emotional pain and suffering," and that she has incurred or will incur medical or therapy expenses. *Id.* ¶¶ 65, 70.

88.     Although Plaintiff's Complaint does not pray for a specific amount of damages, the amount in controversy here is demonstrated by a nearly identical action filed July 30, 2012, in the Western District of Washington alleging sex trafficking of a minor against Backpage.com, LLC and others. *See* Second Amended Complaint at ¶ 1.1 - 1.2, 4.1 - 6.7, *J.S. v. Village Voice Media Holdings, LLC, d/b/a Backpage.com*, Case No. 12-2-11362-4 ("Washington Action."), attached as Exhibit S to the Declaration of Ambika Kumar Doran ("Doran Decl."). In the Washington Action, Backpage.com requested a statement of damages, as permitted by Washington law, and the plaintiffs responded that they each sought damages of at least $250,000, and ranging up to $1,500,000. Doran Decl. at ¶ 3, Exhibit T. The complaint in the Washington Action mirrored many of the claims asserted here, including negligence, outrage, violation of the state's Sexual Exploitation of Children Act, and unjust enrichment.

Doran Decl., Exhibit S at ¶ 7.1 - 7.11, 7.16 - 7.18. As K.R. alleges here, the Washington Action alleged that each plaintiff had suffered "severe emotional distress, humiliation, mental anguish, physical and mental pain and suffering, a decrease in her ability to enjoy life, past and future medical expenses" and was owed "general and special damages[.]" *See* Doran Decl., Exhibit S at ¶¶ 4.4, 5.5, 6.7.

89.     The amount in controversy in the instant action easily exceeds the requisite minimum $75,000. The Plaintiff asserts nearly identical claims against Backpage.com, LLC, and seeks similar relief. *See* Compl. at ¶¶ 65, 68, 70 (alleging Plaintiff "has suffered and continues to suffer damages, including, but not limited to personal injury, mental anguish, loss of quality of life, and emotional pain and suffering," that she either has or expects to "incur medical and/or therapy expenses[,]" and that she seeks "compensatory damages, punitive damages, and treble damages[.]") *See, e.g., Brown v. State Farm Fire & Casualty Co.*, 2017 U.S. Dist. Lexis 16898, at *8 (N.D. Ala. Feb. 7, 2017) (where plaintiff did not contest amount in controversy, court found requirement met on basis of, among other things, punitive damages sought). The Court can reasonably infer that the same or a  substantially similar level of damages are at issue here as in the Washington Action.

### H.     The Remaining Procedural Requirements for Removal Are Satisfied.

90.     The Backpage.com Defendants will promptly give written notice of the filing of the Notice of Removal to Plaintiffs, and will file a copy of the Notice of Removal with the Clerk of the Circuit Court of Alabama for Houston County, pursuant to 28 U.S.C. § 1446(d).

///

///

///

///

///

///

///

91.     Pursuant to 28 U.S.C. § 1446(a) and Middle District of Alabama Local Rule 81.1, the Backpage.com Defendants have attached as **Appendix A** a true and correct "copy of all process, pleadings, and orders served upon [the Backpage.com Defendants]" in the state court action, together with clear and legible copies of all additional records and proceedings in the state court file as of May 5, 2017.

DATED this 5th day of May, 2017.

DAVIS WRIGHT TREMAINE LLP
JAMES C. GRANT (*pro hac vice pending*)
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 622-3150
Facsimile: (206)757-7700
jimgrant@dwt.com

DAVIS WRIGHT TREMAINE LLP
BOB CORN-REVERE (*pro hac vice pending*)
RONALD LONDON (*pro hac vice pending*)
PETER KARANJIA (*pro hac vice pending*)
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
bobcornrevere@dwt.com
ronnielondon@dwt.com
peterkaranjia@dwt.com

DAVIS WRIGHT TREMAINE LLP
SCOTT COMMERSON (*pro hac vice pending*)
BRENDAN N. CHARNEY (*pro hac vice pending*)
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 633-6800
Facsilike: (213) 633-6899
scottcommerson@dwt.com
brendancharney@dwt.com

Robert D. Segall ASB-7354-E68R
Attorneys for Defendants
BACKPAGE.COM, LLC; CAMARILLO
HOLDINGS, LLC; MEDALIST
HOLDINGS, INC.; LEEWARD
HOLDINGS, LLC; BACKPAGE.COM,
LLC; DARTMOOR HOLDINGS, LLC; IC
HOLDINGS, LLC; ATLANTISCHE
BEDRIJVEN C.V.; CARL FERRER;
JAMES LARKIN; and MICHAEL LACEY

# CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2017, I filed the foregoing with the Clerk of the Court and will serve the following counsel of record with a copy of such filing by U.S. Mail and/or, at their election, electronic mail:

Gregory M. Zarzaur, Esq.
Zarzaur Mujumdar & Debrosse
2332 2nd Avenue North
Birmingham, AL 35203
Phone: (205) 983-7985
gregory@zarzaur.com
Counsel for Plaintiff

Pamela S. Hallford, Esq.
Carr Allison
256 Honeysuckle Rd
Brightleaf Court, Suite 6
Dothan, AL 36305
Phone: (334) 712-6459
Email: pshallford@carrallison.com

Vincent A. Noletto, Jr., Esq.
Carr Allison
6251 Monroe St.
Suite 200
Daphne, AL 36526
Phone: (251) 626-9340
vnoletto@carrallison.com

***Counsel for Veda LLC***

Sara M. Turner, Esq.
Austin K. Smith, Esq.
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
420 North 20th Street
Wells Fargo Tower, Suite 1400
Birmingham, AL 35203
Phone: (205) 328-0480
smturner@bakerdonelson.com
aksmith@bakersdonelson.com
***Counsel for Defendant Choice Hotels International, Inc.***

and that I served a copy of same via U.S. Mail, postage prepaid and properly addressed to the following:

Santiago Alonso
AIS # 00295466
Bibb Correctional Facility
565 Bibb Lane
Brent, AL 35034

Nirav Joshi
3011 Ross Clark Circle
Dothan, AL 36301


_____
Of Counsel

# **Exhibit L**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FLORIDA ABOLITIONIST and JANE
DOE,

                                    Case No.: 6:17-cv-218-Orl-28TBS

           Plaintiffs,

v.

BACKPAGE.COM, LLC,
EVILEMPIRE.COM, BIGCITY.COM,
CARL FERRER, MICHAEL LACEY, and
JAMES LARKIN,

           Defendants.
_____/

**DEFENDANTS' CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

Defendants BACKPAGE.COM, LLC, EVILEMPIRE.COM, BIGCITY.COM, CARL

FERRER, MICHAEL LACEY, and JAMES LARKIN (collectively, "Defendants") hereby

disclose the following pursuant to this Court's Order on Interested Persons and Corporate

Disclosure Statement (ECF 24):

       1.       The name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in a party to this action or in the outcome of this action, including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to a party:

      a.    Backpage.com, LLC, which is a Delaware limited liability company that is a subsidiary of and owned by several other privately-held companies, respectively: IC Holdings, LLC; Dartmoor Holdings, LLC; Atlantische Bedrijven C.V.; Kickapoo River Investments, LLC; Lupine Investments LLC; and Amstel River Holdings, LLC. No publicly-held corporation owns any interest in Backpage.com, LLC or its parent companies.

b. EvilEmpire.com and BigCity.com are not entities, but rather are Internet domain name registrations and web sites. EvilEmpire.com is owned by Backpage.com LLC. BigCity.com is owned by IC Holdings, LLC.
c. Carl Ferrer, individually, and as trustee of the Vicky Ferrer Family Trust
d. James Larkin
e. Michael Lacey
f. Lawrence G. Walters, Attorney for Defendants
g. Walters Law Group, Law Firm for Defendants
h. Robert Corn-Revere, Attorney for Defendants
i. Ronald London, Attorney for Defendants
j. Davis, Wright, Tremaine LLP, Law Firm for Defendants
k. Florida Abolitionist
l. Jane Doe (currently anonymous Plaintiff)
m. Penny Venetis, Attorney for Plaintiffs
n. Legal Momentum, Legal Organization for Plaintiffs
o. David Boies, Attorney for Plaintiffs
p. Karen A. Chesley, Attorney for Plaintiffs
q. Karen C. Dyer, Attorney for Plaintiffs
r. Joanna Wright, Attorney for Plaintiffs
s. Alexander Boies, Attorney for Plaintiffs
t. Boies, Schiller & Flexner, LLP, Law Firm for Plaintiffs

2.      The name of every other entity whose publicly-traded stock, equity, or debt may be substantially affected by the outcome of the proceedings:

None.

3.      The name of each victim (individual and corporate), including every person who may be entitled to restitution:

None.

4.      Check one of the following:

_X___ I certify that I am unaware of any actual or potential conflict of interest involving the District Judge and Magistrate Judge assigned to this case and will immediately notify the Court in writing upon learning of any such conflict.

-or-

_____ I certify that I am aware of a conflict or basis of recusal of the District Judge or Magistrate Judge as follows:



Lawrence G. Walters
Florida Bar No.: 0776599
**Walters Law Group**
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 975-9150
Facsimile: (408) 774-6151
Email: Larry@FirstAmendment.com
Email: Paralegal@FirstAmendment.com

*Local Counsel for Defendants*

Robert Corn-Revere *(pro hac vice)*
Ronald London *(pro hac vice)*
**Davis, Wright, Tremaine LLP**
1919 Pennsylvania Ave. NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: ronnielondon@dwt.com
Email: bobcornrevere@dwt.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed through the CM/ECF system on March 20, 2017, which will serve a copy by email on the following: Karen C. Dyer, Esq., kdyer@bsfllp.com, Boies, Schiller, Flexner, LLP, 121 South Orange Avenue, Suite 840, Orlando, FL 32801; David Boies, Esq., dboies@bsfllp.com, Boies, Schiller, Flexner, LLP, 333 Main Street, Armonk, NY 10504; Karen Chesley, Esq., kchesley@bsfllp.com, Boies, Schiller, Flexner, LLP, 575 Lexington Avenue, New York, NY 10022. Notice will be provided via email to Joanna Wright, Esq. (jwright@bsfllp.com) and Alexander Boies, Esq. (aboies@bsfllp.com), Boies, Schiller, Flexner, LLP, 575 Lexington Avenue, New York, NY 10022, and via U.S. Mail to Penny Venetis, Esq., Legal Momentum, 16 East 34th Street, New York, NY 10016.

_____
**Lawrence G. Walters**

# **<u>Exhibit M</u>**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

Case No. 6:17-cv-218-ORL-28-TBS

|  |  |
|---|---|
| FLORIDA ABOLITIONIST and JANE DOE, ) | |
| Plaintiffs, ) | |
| -against- ) | Local R. 3.01(h) – Dispositive Motion |
| BACKPAGE.COM, LLC, EVILEMPIRE.COM, BIGCITY.COM, CARL FERRER, MICHAEL LACEY, and JAMES LARKIN, ) | |
| Defendants. ) | |

**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)**

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 3

    A.    Backpage.com and Affiliated Websites. ................................... 3

    B.    Plaintiffs' Allegations and Claims. ....................................... 7

STANDARDS UNDER RULES 12(B)(6) AND 12(B)(1) ......................... 8

ARGUMENT ................................................................... 9

I.    SECTION 230 BARS ALL OF PLAINTIFFS' CLAIMS........................... 9

    A.    Section 230 Was Designed to Promote Free Speech Online and the Unfettered Growth of the Internet. ....................................... 9

    B.    Plaintiffs' Claims are Barred Under Section 230's Three-Part Test.............. 11

    C.    Plaintiffs Cannot Evade Section 230 Through Artful Pleading..................... 16

        1.    Plaintiffs Cannot Evade Section 230 By Alleging That a Website Encourages Posting Unlawful Content. ................................. 16

        2.    Plaintiffs' Content-Creation Allegations Cannot Overcome Section 230 Immunity. ......................................... 18

    D.    Ms. Doe's Right-of-Publicity Claims are Not Saved by Section 230's "Intellectual Property" Exception. ....................................... 21

    E.    Imposing Liability on Online Service Providers is Not the Solution to Preventing Trafficking. ................................................. 23

II.    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW ...................... 24

    A.    Plaintiffs Lack Standing. ............................................... 24

    B.    The Right-of-Publicity Claims Fail. ..................................... 25

    C.    The Defamation Claim Is Time-Barred And Otherwise Defective. ............. 27

    D.    Other Claims Based on Publication of the Ad are Barred by the Single Action Rule. ......................................................... 28

    E.    The Civil Conspiracy Claim Fails....................................... 29

    F.    The Section 1591 Claim Fails. ......................................... 30

CONCLUSION ................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ...........................................................................11, 26, 27

*Ascentive, LLC v. Opinion Corp.*,
    842 F. Supp. 2d 450 (E.D.N.Y. 2011) ............................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................................8

*Backpage.com, LLC v. Cooper*,
    939 F. Supp. 2d 805 (M.D. Tenn. 2013) ................................................................. *passim*

*Backpage.com, LLC v. Dart*,
    807 F.3d 229 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2016) ....................................2, 4

*Backpage.com, LLC v. Hoffman*,
    2013 WL 4502097 (D.N.J. Aug. 20, 2013) ...............................................................1, 11

*Backpage.com, LLC v. Lynch*,
    2016 WL 6208368 (D.D.C. Oct. 24, 2016) ....................................................................30

*Backpage.com, LLC v. McKenna*,
    881 F. Supp. 2d 1262 (W.D. Wash. 2012) .............................................................. *passim*

*Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*,
    2008 WL 1817294 (M.D. Fla. Apr. 22, 2008) ................................................................29

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ...................................................................................9, 10

*Bouton v. Ocean Props., Ltd.*,
    --- F. Supp. 3d --, 2016 WL 7324145 (S.D. Fla. Dec. 12, 2016) ........................................4

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) .......................................................................................4

*Byrd v. Hustler Magazine*,
    433 So. 2d 593 (Fla. 4th DCA 1983) ..............................................................................28

*Camp v. Alabama Telco Credit Union*,
2013 WL 2106727 (N.D. Ala. May 13, 2013) .................................................................4

*Carafano v. Metrosplash.com*,
339 F.3d 1119 (9th Cir. 2003) .................................................................20, 22

*Chicago Lawyers' Comm. for Civil Rights Under the Law v. Craigslist, Inc.*,
519 F.3d 666 (7th Cir. 2008) .................................................................17

*Comins v. Vanvoorhis*,
135 So. 3d 545 (Fla. 5th DCA 2014) .................................................................27

*Cone Corp. v. Florida Dep't of Transp.*,
921 F.2d 1190 (11th Cir. 1991) .................................................................9, 24

*Dart v. Craigslist, Inc.*,
665 F. Supp. 2d 961 (N.D. Ill. 2009) .................................................................12, 17

*Doe II v. MySpace Inc.*,
175 Cal. App. 4th 561 (2009) .................................................................14

*Doe v. AOL*,
783 So. 2d 1010 (Fla. 2001) .................................................................18

*Doe v. Backpage.com, LLC*,
104 F. Supp. 3d 149 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016),
*cert. denied*, 137 S. Ct. 622 (2017) ............................................................. *passim*

*Doe v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016) ............................................................. *passim*

*Doe v. Bates*,
2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) .................................................................23

*Doe v. MySpace*,
528 F.3d 413 (5th Cir. 2008) .................................................................14, 16

*Dowbenko v. Google Inc.*,
991 F. Supp. 2d 1219 (S.D. Fla. 2013),
*aff'd*, 582 F. App'x 801 (11th Cir. 2014).................................................................22

*e-ventures Worldwide, LLC v. Google, Inc.*,
No. 2:14-cv-646-FtM-PAM-CM (M.D. Fla. Feb. 8, 2017) .................................................................10

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .................................................................11, 12, 18

iii

*Franklin v. Curry*,
738 F.3d 1246 (11th Cir. 2013) ..................................................................9, 19, 21

*Fridovich v. Fridovich*,
598 So. 2d 65 (Fla. 1992)......................................................................................28

*FTC v. Accusearch, Inc.*,
570 F.3d 1187 (10th Cir. 2009) ............................................................................20

*Fuentes v. Mega Media Holdings, Inc.*,
721 F. Supp. 2d 1255 (S.D. Fla. 2010) ................................................................26

*Giordano v. Romeo*,
76 So. 3d 1100 (Fla. 3d DCA 2011) .....................................................................27

*GoDaddy.com, LLC v. Toups*,
429 S.W.3d 752 (Tex. App. 2014)........................................................................18

*Goddard v. Google, Inc.*,
640 F. Supp. 2d 1193 (N.D. Cal. 2009) ...............................................................18

*Google v. Hood*,
822 F.3d 212 (5th Cir. 2016) .................................................................................3

*Green v. AOL*,
318 F.3d 465 (3d Cir. 2003)..................................................................................14

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) ........................................................................9, 19

*Haddad v. Dudek*,
784 F. Supp. 2d 1038 (M.D. Fla. 2011)..................................................................4

*Herrick v. Grindr, LLC*,
2017 WL 744605 (S.D.N.Y. Feb. 24, 2017).........................................................16

*J.S. v. Village Voice Media Holdings, LLC*,
184 Wash. 2d 95 (2015).........................................................................................20

*Jews for Jesus, Inc. v. Rapp*,
997 So. 2d 1098 (Fla. 2008).................................................................................22

*Jones v. Dirty World Entm't Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ..................................................................... *passim*

iv

*Jones v. Dirty World Entm't Recordings, LLC*,
965 F. Supp. 2d 818 (E.D. Ky. 2013) ............................................................17

*Kamau v. Slate*,
2012 WL 5390001 (N.D. Fla. Oct. 1, 2012), *adopted*, 2012 WL 5389836
(N.D. Fla. Nov. 5, 2012) .................................................................................28

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) ..............................................................3, 16, 19

*LaGrasta v. First Union Secs., Inc.*,
358 F.3d 840 (11th Cir. 2004) ........................................................................28

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................................25

*M.A. v. Village Voice Media Holdings, LLC*,
809 F. Supp. 2d 1041 (E.D. Mo. 2011)................................................. *passim*

*Miljkovic v. Shafritz & Dinkin, P.A.*,
791 F.3d 1291 (11th Cir. 2015) ........................................................................9

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ......................................................................21

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ....................................................................9, 30

*Nicklaw v. Citimortgage, Inc.*,
839 F.3d 998 (11th Cir. 2016), *reh'g en banc denied*,
2017 WL 1548204 (11th Cir. May 1, 2017) ...................................................24

*Obado v. Magedson*,
2014 WL 3778261 (D.N.J. July 31, 2014),
*aff'd*, 612 F. App'x 90 (3d Cir. 2015)............................................................21

*People v. Ferrer*,
2016 WL 7237305 (Sup. Ct. Sacramento Cty. Dec. 9, 2016)................... *passim*

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
2010 WL 1408391 (M.D. Fla. Apr. 6, 2010), *aff'd*, 451 F. App'x 862
(11th Cir. 2012)...............................................................................................29

*Schurz Commc'ns, Inc. v. FCC*,
982 F.2d 1043 (7th Cir. 1992) ..........................................................................3

*Trujillo v. Banco Cen. Del Ecuador,*
    17 F. Supp. 2d 1334 (S.D. Fla. 1998) ............................................................28

*United States v. Ackerman,*
    831 F.3d 1292 (10th Cir. 2016) ......................................................................6

*Universal Commc'n Sys., Inc. v. Lycos, Inc.,*
    478 F.3d 413 (1st Cir. 2007) ...........................................................10, 11, 15

*U.S. ex rel. Osheroff v. Humana Inc.,*
    776 F.3d 805 (11th Cir. 2015) ........................................................................4

*Wagner, Nugent v. Flanagan,*
    629 So. 2d 113 (Fla. 1993)............................................................................28

*Whitney Info. Net., Inc. v. Xcentric Ventures, LLC,*
    2008 WL 450095 (M.D. Fla. Feb. 15, 2008) ................................................17

*Wollschlaeger v. Governor of Fla.,*
    848 F.3d 1293 (11th Cir. 2017) ...............................................................24, 25

*Zeran v. Am. Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997) ........................................................10, 15, 23

## Constitutional Provisions

U.S. Const. amend. I ...........................................................................1, 2, 9, 10

## Federal Statutes

18 U.S.C.
    § 1591..................................................................................................8, 12, 30
    § 1595...............................................................................................................22
    § 2255...............................................................................................................22

47 U.S.C.
    § 230................................................................................................... *passim*
    § 230(c)(1) .............................................................................10, 15, 16, 19
    § 230(e)(1) .....................................................................................................21
    § 230(e)(2) ...............................................................................................21, 22
    § 230(e)(3) .....................................................................................................10

## State Statutes

Fla. Stat.
§ 95.11(4)(g) ................................................................................27
§ 540.08 ................................................................8, 21, 25, 26
§ 540.08(1) ................................................................................26
§ 770.07 ................................................................................28

## Rules

Fed. R. Civ. P.
9(b) ................................................................................21
12(b)(1) ................................................................1, 8, 9, 24
12(b)(6) ................................................................1, 8, 25

## Other Authorities

*Backpage.com Succumbing to Government Is Blow to Free Speech Online*,
Jan. 10, 2017, Center for Democracy & Technology, available at
https://cdt.org/press/backpage-com-succumbing-to-government-is-blow-
to-free-speech-online/ ................................................................4

*Black's Law Dictionary* (10th ed. 2014) ................................................22

Danah Boyd, *Combating Sexual Exploitation Online: Focus on
the Networks of People, not the Technology* (Oct. 19, 2010),
http://www.danah.org/papers/talks/2010/CombatingSexualExploitation
Online.pdf ................................................................23, 24

Mark Latonero, *The Rise of Mobile and the Diffusion of Technology-
Facilitated Trafficking*, Nov. 2012 (USC Annenberg Ctr. on Commc'ns
Leadership & Policy Research Series on Tech. & Human Trafficking) ................24

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Backpage.com LLC, Evilempire.com, BigCity.com, Carl Ferrer, Michael Lacey, and James Larkin (collectively, "Defendants" or "Backpage") hereby move to dismiss the Complaint.

## INTRODUCTION

The Plaintiffs in this case, an advocacy organization and a young woman (Jane Doe), allege she was victimized by her drug-addicted mother and third-party criminals who involved her in sex trafficking by posting on the classified advertising website Backpage.com. They seek to blame the website, its CEO, and its former owners—not the perpetrators of the abuse and the sex trafficking scheme—despite scores of cases (including decisions involving some of the *same* defendants sued here) that hold such online publishing activities are protected by the First Amendment and immunized from liability under Section 230 of the Communications Decency Act. 47 U.S.C. § 230 ("Section 230"). These new claims add nothing to what is already well-trod ground, and their meritless allegations should be dismissed.

Numerous courts have addressed the allegations raised in this Complaint in various contexts and found them contrary to constitutional law and foreclosed by federal policy. The states of Washington, Tennessee, and New Jersey passed statutes targeting Backpage.com based on the assumption that ads in its adult section were for prostitution, and all were enjoined as violations of the First Amendment and Section 230. *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 20, 2013); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013). California attempted to bring a criminal prosecution against Backpage, its principals and former owners, but the court rejected the State's arguments and granted the

1

defendants' demurer, holding the AG impermissibly sought to impose criminal liability for Backpage's actions as a publisher, which are protected by the First Amendment principles embodied in Section 230. *People v. Ferrer*, 2016 WL 7237305, at *1, *4 (Sup. Ct. Sacramento Cty. Dec. 9, 2016). Even informal actions taken by local governments to suppress Backpage have been enjoined as violations of the First Amendment. *Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015) (enjoining Sheriff's actions as unconstitutional prior restraint), *cert. denied*, 137 S. Ct. 46 (2016).

Particularly relevant here, courts have granted motions to dismiss virtually identical civil claims against Backpage, finding them foreclosed by Section 230's command that that "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." In *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1053-54 (E.D. Mo. 2011), the court dismissed all claims despite allegations that the website's structure and operation, and Backpage's alleged knowledge of illegal activity, made it culpable for sex trafficking. And in *Doe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 152 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017), the district and appellate courts held Backpage's editorial choices were protected, rejecting claims that the website's policies were intended to promote "illicit sex trade" and "trafficking of children." The district court dismissed all claims, holding Backpage's practices "[s]ingly or in the aggregate … amount to neither affirmative participation in an illegal venture nor active web content creation." *Id.* at 157.

The Plaintiffs here try to avoid this growing body of law by peppering the Complaint with conclusory assertions that Backpage somehow "conspired" with those who purchased

ads on its site or in some way "created" content through editorial practices. But "[s]tripped of verbiage," the Complaint, "like a Persian cat with its fur shaved, is alarmingly pale and thin." *Schurz Commc'ns, Inc. v. FCC*, 982 F.2d 1043, 1050 (7th Cir. 1992) (Posner, J.). The only specific factual allegation about the ad involving Ms. Doe is that it was conceived, created, and posted entirely by her abusers. Compl. ¶¶ 97-98. And the various practices that Plaintiffs' assert make Backpage a "conspirator" or "content creator" are all publishing pre-rogatives that courts uniformly have found to be editorial policies that the law immunizes. The courts have been firm in holding such "artful" pleading cannot be used to "skirt[]" Section 230. *Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1266 (9th Cir. 2016).

Backpage does not mean to minimize the grievous harms that Plaintiffs allege Ms. Doe suffered. But Congress made a considered policy judgment that plaintiffs should hold the actual wrongdoers liable rather than rather than cripple the Internet by imposing liability on websites that host third-party-created content. Cases like this illustrate "the importance of preserving free speech on the internet, even though that medium serves as a conduit for much that is distasteful or unlawful." *Google v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016). In accordance with that policy judgment, this case must be dismissed.

## BACKGROUND

### A.     Backpage.com and Affiliated Websites.

Backpage operates an online classified advertising service through which users can post ads in a variety of categories, including local places, buy/sell/trade, automotive, rentals, real estate, jobs, dating, and services. *See Cooper*, 939 F. Supp. 2d at 813. The site is

organized geographically, by state and municipality.[1]  Until January 2017, Backpage also included a category for "adult" services (such as escort services), which—following years of pressure from government actors, including a campaign that the Seventh Circuit described as an unconstitutional effort to "crush Backpage," *Backpage.com, LLC v. Dart*, 807 F.3d at 230—has now been shuttered.[2]

Millions of ads are posted on the website every month, making Backpage.com the second-largest online classified ad service in the country, after Craigslist.  *See McKenna*, 881 F. Supp. 2d at 1266.  Users provide all the content for ads they post on the website, using an automated interface; Backpage.com does not dictate or require any content.  Compl. ¶¶ 30, 40, 66, 97-98; *Cooper*, 939 F. Supp. 2d at 813 ("The website works by allowing users to post their own advertisements in a range of categories.").  Until July 2015, the website charged for ads in the adult and dating categories, while users could post ads for free in other categories.

---

[1]  *See* http://southflorida.backpage.com.  *See* Complaint (ECF No. 1) ("Compl.") ¶ 28. Plaintiffs reference the Backpage.com website throughout the Complaint, and the Court may consider it in deciding this motion.  *Bouton v. Ocean Props., Ltd.*, --- F. Supp. 3d --, 2016 WL 7324145, at *4 (S.D. Fla. Dec. 12, 2016) (considering website on 12(b)(6) motion); *Camp v. Alabama Telco Credit Union*, 2013 WL 2106727, at *2 (N.D. Ala. May 13, 2013) (same) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (complaint's allegations based on documents central to plaintiff's claim may be considered on 12(b)(6) motion)).  The Court may also take judicial notice of court decisions about the site and similar claims.  *See Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811-12 & n.4 (11th Cir. 2015).

[2]  Compl. ¶¶ 27, 74.  *See* http://www.backpage.com/classifieds/Media.  *See also Backpage.com Succumbing to Government Is Blow to Free Speech Online*, Jan. 10, 2017, Center for Democracy & Technology, https://cdt.org/press/backpage-com-succumbing-to-government-is-blow-to-free-speech-online/.

EvilEmpire.com and BigCity.com—websites affiliated with Backpage.com—repost some of the same ads that customers create and post on Backpage.com.  Compl. ¶¶ 79, 82.

Backpage imposes rules for ads posted on its site, and all users must affirmatively accept those posting rules.  *Cooper*, 939 F. Supp. 2d at 813-14.  They are designed to prevent improper ads or misuse of the site.  Before Backpage.com will accept such user-submitted ads, the user must agree to Backpage.com's Terms of Use, and confirm (for ads in the dating section and, while it was active, the adult section) that he or she is 18 or older.  Compl. ¶ 52; *Cooper*, 939 F. Supp. 2d at 813-14; Backpage.com Terms of Use ¶ 4(a)(2), available at http://www.backpage.com/classifieds/termsofuse.  The Terms of Use prohibit illegal acts and nude or lewd photos.  *See id.* ¶¶ 4(b), 5.  They also specifically forbid:  "[p]osting any solicitation directly or in 'coded' fashion for any illegal service exchanging sexual favors for money or other valuable consideration" (*id.* ¶ 4(c)); "[p]osting any material on the Site that exploits minors in any way" (*id.* ¶ 4(d)); "[p]osting any material on the Site that in any way constitutes or assists in human trafficking" (*id.* ¶ 4(e)); and posting any ad for products or services, use or sale of which is prohibited by any law or regulation" (*id.* ¶ 5).  In addition, all Backpage.com users are directed to "report any violations of these Terms to:  abuse@backpage.com."  *Id.* ¶ 18.  *See also Cooper*, 939 F. Supp. 2d at 814.

When a user attempts to post an ad in the dating section (or, while it was active, the adult section), the following notice appears:

**Posting Rules**

You agree to the following when posting in this category:

- I will not post obscene or lewd and lascivious graphics or photographs which depict genitalia, actual or simulated sexual acts or naked images;

> - I will not post any solicitation directly or in "coded" fashion for any illegal service, including exchanging sexual favors for money or other valuable consideration;
> - I will not post any material on the Site that exploits minors in any way;
> - I will not post any material on the Site that in any way constitutes or assists in human trafficking;
> - I am at least 18 years of age or older and not considered to be a minor in my state of residence.

**Any post exploiting a minor in any way will be subject to criminal prosecution and will be reported to the <u>Cybertipline</u> for law enforcement.**

Postings violating these rules and our Terms of Use are subject to removal without refund.[3]

The "Cybertipline"—included as a hypertext link in the above warning—is an online tool operated by the National Center for Missing and Exploited Children ("NCMEC"), which helps law enforcement locate and rescue missing and exploited children. *United States v. Ackerman*, 831 F.3d 1292, 1294 (10th Cir. 2016). The site also contains numerous hyper-links to a "User Safety" page which includes links to NCMEC and similar resources. *McKenna*, 881 F. Supp. 2d at 1266. Every ad contains a "Report Ad" button, and Back-page.com has an email address (abuse@backpage.com) for users to identify ads they believe improper or suspect. *See Cooper*, 939 F. Supp. 2d at 814.

Backpage takes additional measures to police user posts. *See* Compl. ¶¶ 40-41, 45 (alluding to screening). "In addition to user reports, Backpage.com monitors … ads through automated and manual reviews." *Cooper*, 939 F. Supp. 2d at 814. Through this screening, Backpage blocks and removes posts and refers ads that may involve child exploitation to

---

[3] http://posting.miami.backpage.com/online/classifieds/PostAdPPI.html/mia/posting.miami.backpage.com/?serverName=miami.backpage.com&superRegion=Florida%20Keys&u=mth&section=4383&category=4454.

NCMEC. *See McKenna*, 881 F. Supp. 2d at 1266-67; *Cooper*, 939 F. Supp. 2d at 814. "Backpage.com also regularly works with local, state, and federal law enforcement officials by responding to subpoena requests, providing officials with Internet search tools, and removing posts and blocking users at the request of officials." *Cooper*, 939 F. Supp. 2d at 814.

### B.      Plaintiffs' Allegations and Claims.

Plaintiffs—an anti-trafficking organization and individual who alleges that she was victimized by traffickers who created and posted an ad selling her for sex on Backpage.com—seek to hold Backpage.com and its principals liable for ads on Backpage.com that were created and submitted by third parties. Compl. ¶¶ 1, 17-18, 97-98. Jane Doe alleges that, in March 2013, her mother "sold her daughter for sex to support her addiction," that third party traffickers took photos of her without her consent, "created an advertisement for Ms. Doe," and posted the ad (along with photos of Ms. Doe) on Backpage.com, offering to "sell[] [her] for sex." *Id.* ¶¶ 95-98. Ms. Doe alleges that she was subsequently raped by other third parties who responded to this ad. *Id.* ¶ 98. The institutional Plaintiff, Florida Abolitionist, identifies itself as an organization "whose mission is to end human trafficking," and claims that, because of Backpage, it has "diverted its resources from its main mission" and been "frustrated." *Id.* ¶¶ 17, 103, 110.

Plaintiffs do not allege any of the Defendants created or developed the content of the single ad that allegedly resulted in Ms. Doe's victimization. The Complaint contains only conclusory allegations that "Backpage takes an active role in creating the content of" the ads it hosts, *id.* ¶ 48, and vaguely alleges that Backpage "creates" and "develops" the content of certain "Sponsored Ads." *Id.* ¶ 37. There is no suggestion that the ad that led to Ms. Doe's

victimization was a Sponsored Ad, nor is there any attempt to connect other harms alleged in the Complaint to these ads. Plaintiffs also claim Backpage is liable for "reposting" on EvilEmpire.com and BigCity.com ads created by third-party users that were initially posted on Backpage.com. Compl. ¶¶ 79, 82. However, the Complaint contains no specific or plausible allegation that any of Defendants created the content of these reposted ads. *See*, *e.g.*, *id.* ¶ 79 ("EvilEmpire organizes and reposts advertisements posted on Backpage.").

Plaintiffs' claims target Backpage's editorial functions in general—as opposed to creation of the content of particular ads that allegedly harmed Plaintiffs. Plaintiffs allege, for example, that Backpage failed to take adequate measures to screen ads involving trafficking and deliberately facilitated such trafficking (for instance, by not requiring certain forms of identity verification and by allowing payment using prepaid credit cards and digital currency such as Bitcoin). *See, e.g.*, Compl. ¶¶ 1, 52, 64, 65, 67-69.

Plaintiffs assert seven causes of action. The first claim alleges civil liability based on 18 U.S.C. § 1591 (the criminal anti-trafficking statute). Compl. Count I. The remaining claims are under Florida law: (1) imposing "distributor or publisher liability" for allegedly "defamatory matter" (Count II); (2) "outrage" (Count III); (3) common law invasion of privacy or right of publicity (Count IV); (4) statutory right of publicity (Fla. Stat. 540.08) (Count V); (5) civil conspiracy (Count VI); and (6) negligence (Count VII).

### STANDARDS UNDER RULES 12(B)(6) AND 12(B)(1)

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "'[C]onclusory allegations ... are not entitled to an assumption

8

of truth—legal conclusions must be supported by factual allegations.'" *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015) (citation omitted); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citation omitted). Where plaintiffs lack standing to assert certain claims, dismissal for lack of subject matter jurisdiction is required under Rule 12(b)(1). *See, e.g.*, *Cone Corp. v. Florida Dep't of Transp.*, 921 F.2d 1190, 1203 (11th Cir. 1991). Here, Plaintiffs' claims are barred by Section 230 of the CDA, enforcement of which at the earliest phase of litigation is vital because it provides "*immunity from suit* rather than a mere defense to liability and it is effectively lost if a case is erroneously permitted to go to trial." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quotation marks omitted); *accord Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014) ("determinations of immunity … should be resolved at an earlier stage of litigation" given the law's role "in an open and robust internet").

## ARGUMENT

### I. SECTION 230 BARS ALL OF PLAINTIFFS' CLAIMS

#### A. Section 230 Was Designed to Promote Free Speech Online and the Unfettered Growth of the Internet.

Section 230 is a statutory embodiment of First Amendment principles for online speech. Congress designed Section 230 to "to encourage the unfettered and unregulated development of free speech on the Internet," *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003), "to promote the development of e-commerce," *id*., and to encourage online providers

9

to "self-police" for potentially harmful or offensive material by providing immunity for such efforts, *id.* at 1028. Congress sought to eliminate the "'obvious chilling effect'" that imposing liability on online providers would cause, "'given the volume of material communicated through [the Internet], the difficulty of separating lawful from unlawful speech, and the relative lack of incentives to protect lawful speech.'" *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-19 (1st Cir. 2007) (citation omitted). "[T]he protections afforded by the First Amendment were the motivating factors behind" Section 230. *People v. Ferrer*, 2016 WL 7237305, at *3; *Batzel*, 333 F.3d at 1028.[4]

To safeguard these important values, Section 230(c)(1) mandates that "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Thus, the "plain language" of Section 230 "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Additionally, Section 230(e)(3) expressly preempts all civil claims and all state-law claims, whether civil or criminal, barring any state-law claims against an online publisher such as Backpage.com (and

---

[4] Because Section 230 immunity implements First Amendment principles, efforts to impose liability on editorial choices by online intermediaries may be barred even where the technical statutory requirements are not met. *E.g.*, *e-ventures Worldwide, LLC v. Google, Inc.*, No. 2:14-cv-646-FtM-PAM-CM (M.D. Fla., Feb. 8, 2017), slip op. at 9 (ECF No. 153) ("Google's actions in formulating rankings for its search engine and in determining whether certain websites are contrary to Google's guidelines and thereby subject to removal are the same as decisions by a newspaper editor regarding which content to publish, which article belongs on the front page, and which article is unworthy of publication. The First Amendment protects these decisions, whether they are fair or unfair, or motivated by profit or altruism.").

the other Defendants) based on third-party content it publishes.  *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006).

### B.  Plaintiffs' Claims are Barred Under Section 230's Three-Part Test.

The consensus is that Section 230 immunity applies expansively, *id.* at 1321; *Lycos*, 478 F.3d at 419, and that "close cases ... must be resolved in favor of immunity."  *Jones*, 755 F.3d at 408 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (*en banc*)).  Immunity must be granted where three conditions are met: "(1) [the defendant] is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider; and (3) the claim would treat [the defendant] as the publisher or speaker of that information."  *Doe No. 1*, 817 F.3d at 19 (quoting *Lycos* at 418).

Applying this test, at least six courts have held that Backpage is immunized under Section 230, and the same conclusion is warranted here.[5]  First, "Backpage.com is the quintessential publisher contemplated by the CDA," *Cooper*, 939 F. Supp. 2d at 823, and the same is true of affiliated websites Evil Empire and BigCity.com.  *People v. Ferrer*, 2016 WL 7237305, at *6.  Second, Plaintiffs base their claims on an advertisement about Jane Doe that they allege third-party traffickers "created" and "posted" on Backpage.com.  *See* Compl. ¶¶ 97-98; *see also infra* § I.C.  Such postings are the essence of "information provided by another content provider," as contemplated in Section 230.  *E.g.*, *Doe No. 1*, 817 F.3d at 17-21; *M.A.*, 809 F. Supp. 2d at 1050-53.  Third, Plaintiffs' claims treat Backpage.com and its

---

[5] *Doe No. 1*, 104 F. Supp. 3d at 157-58, *aff'd*, 817 F.3d at 20-22; *Hoffman*, 2013 WL 4502097, at *8; *Cooper*, 939 F. Supp. 2d at 823-25; *McKenna*, 881 F. Supp. 2d at 1271-75; *M.A.*, 809 F. Supp. 2d at 1050-54; *People v. Ferrer*, 2016 WL 7237305.

affiliated websites "as the publisher or speaker" of the ads, yet the factual allegations take Backpage to task for decisions about "whether to publish, withdraw, postpone or alter content," the traditional editorial functions that Section 230 protects.[6]

In *Doe No. 1*, for example, the plaintiffs invoked the same federal sex trafficking statute (18 U.S.C. § 1591), as well as theories of state tort law based on allegations traffickers posted ads for them on Backpage.com. Like Plaintiffs here, they alleged that Backpage— "with an eye to maximizing its profits"—had "deliberate[ly] structur[ed] … its website to facilitate sex trafficking" by, among other things, not requiring phone number verification for postings, failing to take sufficient measures to block postings by users who falsely claim to be 18 or older, accepting payment using prepaid credit cards and digital currencies such as Bitcoin, stripping out metadata from photos uploaded by users, editing ads to remove banned terms such as "barely legal" (while allowing users to instead use alternative terms such as "brly legal"), and creating "Sponsored Ads." 817 F.3d at 16-17 & n.2.[7] The district court dismissed the action, explaining that these general website features "amount to neither

---

[6] *Jones*, 755 F.3d at 407 (citation omitted); *Roommates.com*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967-68 (N.D. Ill. 2009) ("A claim against an online service provider for negligently publishing harmful information created by its users treats the defendant as the 'publisher' of that information."). As noted, other courts have rejected the exact same allegations made in this case, that Backpage's editorial practices amount to participation in trafficking.

[7] *Compare* Compl. ¶¶ 68-69 (phone number verification), 52 (postings claiming that user is over 18 after prior attempts blocked), 64-65 (accepting prepaid credit cards and Bitcoin), 67 ("strip[ping] out … metadata"), 40-49 (banning certain terms, but allowing "brly legal"), 37-39 (creating "Sponsored Ads"); *see also* Appendix A (comparing allegations in this case to those in *Doe No. 1*).

affirmative participation in an illegal venture nor active web content creation," and "courts have repeatedly rejected this 'entire website' theory as inconsistent with the substance and policy of section 230." *Doe No. 1*, 104 F. Supp. 3d at 157, 162.[8]

The First Circuit affirmed. It held plaintiffs' claims uniformly "address the structure and operation of the Backpage website"—in other words, "Backpage's decisions about how to treat [third-party] postings." *Doe No. 1*, 817 F.3d at 21. As with the allegations here, the

> claims challenge features that are *part and parcel of the overall design and operation of the website* (such as the lack of phone number verification, the rules about whether a person may post after attempting to enter a forbidden term, and the procedure for uploading photographs). *Features such as these*, which reflect choices about what content can appear on the website and in what form, are *editorial choices that fall within the purview of traditional publisher functions*.

*Id.* (emphasis added).

Likewise, in *M.A.*, the plaintiff alleged she was trafficked by a third party who posted ads on Backpage.com. 809 F. Supp. 2d at 1043-44. As do Plaintiffs here, M.A. attacked the website's general features, alleging Backpage set out to create "a highly tuned marketing site" with a " veil of legality," but "had knowledge" that postings "were advertisements for prostitution" and "illegal sexual contact with minors." *Id.* at 1044. And, like Plaintiffs here, she alleged Backpage sought to profit from the posters' "illegal prostitution activities" and thus aided and abetted sex trafficking of minors. *Id.* at 1045, 1053. The court rejected the plaintiff's arguments challenging general aspects of the site's "construct and operation," *id.* at 1050, observing that a website is "immune under § 230 unless it created the offending

---

[8] The court also dismissed other causes of action (including alleged violations of state consumer protection laws, and alleged violations of the plaintiffs' rights of publicity and copyright interests) for failure to state a claim. *Doe No. 1*, 817 F.3d at 24-29.

13

ads," and "however horrific the consequences to M.A., … the ads were created by [the pimp]." *Id.* at 1051 (quotation marks and citation omitted). Similarly, it was "immaterial" that Backpage.com allegedly elicit[ed] online content for profit"; what matters is whether the website or third parties create the content at issue. *Id.* at 1050 (quotation marks omitted). The court rejected M.A.'s assertion that she was not seeking to hold Backpage liable as a publisher but rather "as an aider and abettor of minor sex trafficking." *Id.* at 1053-54.

Applying this same view of the law, another court recently dismissed a criminal indictment under Section 230—based on strikingly similar allegations to the Complaint in this case—against the same Backpage principals and former owners that Plaintiffs sued here. *People v. Ferrer*, 2016 WL 7237305, at *1-5. The prosecution alleged the defendants "actively 'manipulated' the content provided by third parties so that they could profit from activity resulting from the ad placement." *Id.* at *5. But because "the substance of the ads came from the original ad placed on Backpage, the only 'manipulation' would be in the act of extracting the content from the original ad and/or from the act of physically posting the extracted content on a new site." *Id.* The court concluded "[t]his is not prohibited activity. Indeed, it generally falls within the scope of protected editorial functions." *Id.* (citing, *inter alia, Doe No. 1*, 817 F.3d at 20-21). Numerous other decisions are to the same effect.[9]

---

[9] *See, e.g., Doe v. MySpace*, 528 F.3d 413, 419-20 (5th Cir. 2008) (Section 230 barred claims seeking to hold social networking site Myspace liable for sexual assault of 14-year-old victim by a man who met her on MySpace); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 573 (2009) (plaintiffs "want MySpace to ensure that sexual predators do not gain access to (*i.e.*, communicate with) minors on its Web site," yet "[t]hat type of activity—to restrict or make available certain material—is expressly covered by section 230."); *Green v. AOL*, 318 F.3d 465, 471 (3d Cir. 2003) (plaintiff was "attempt[ing] to hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role").

The common thread throughout these cases is that plaintiffs may not hold a website operator liable for exercising its traditional editorial functions, including deciding what third-party-created content—including classified ads—to post, delete, or edit.  Nor may plaintiffs evade the protections of Section 230 by attacking the fundamental design and configuration of a website.  Where "third-party content … appears as an essential component of each and all" of Plaintiffs' claims, *Doe No. 1*, 817 F.3d at 22, Plaintiffs seek to do what Section 230 expressly prohibits: impose liability on Defendants "as the publisher or speaker," 47 U.S.C. § 230(c)(1), of ads created by third parties.  *See, e.g.*, Compl. Count II (seeking to subject Defendants to "DISTRIBUTOR OR PUBLISHER LIABILITY").

Nor can Plaintiffs evade Section 230 by alleging that Defendants know (or should know) that third parties may misuse its websites for sex trafficking.  *See, e.g.*, Compl. ¶¶ 2, 26.  "It is … well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech."  *Lycos*, 478 F.3d at 420.  The law under Section 230 is clear that, even if an online provider has *actual* knowledge of illegal content posted on its site, a failure to delete the offending content does not make it liable for that content.  *See, e.g.*, *Zeran*, 129 F.3d at 331-33.  That is because "[l]iability upon notice would defeat the dual purposes advanced by § 230."  *Id.* at 333.  Thus, in *M.A.*, the court rejected the same argument Plaintiffs make here—that Backpage.com should be denied immunity because it allegedly knows or should know "of minors being sexually trafficked on its website."  *M.A.*, 809 F. Supp. 2d at 1050-51; *see also People v. Ferrer*, 2016 WL 7237305, at *7 ("[O]nline publishers are not subject to notice liability.").

### C. Plaintiffs Cannot Evade Section 230 Through Artful Pleading.

Faced with this overwhelming body of law requiring dismissal of their claims, Plaintiffs—like others before them—resort to creative pleading in an effort to evade Section 230's protections. This Court should "decline to open the door to such artful skirting of the CDA's safe harbor provision." *Kimzey*, 836 F.3d at 1266. Efforts to plead around Section 230 are common but typically fail. *Doe v. MySpace*, 528 F.3d at 419-20 ("No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward MySpace in its publishing, editorial, and/or screening capacities."). *See also Herrick v. Grindr, LLC*, 2017 WL 744605, at *3 (S.D.N.Y. Feb. 24, 2017) ("[P]ast cases suggest strongly that Plaintiff's attempt to artfully plead his case in order to separate the Defendant from the protections of [Section 230] is a losing proposition.").

#### 1. Plaintiffs Cannot Evade Section 230 By Alleging That a Website Encourages Posting Unlawful Content.

Just as Plaintiffs cannot bypass Section 230 by alleging the Backpage.com's overall design "facilitates" unlawful content, they cannot get around the law by recasting their claims under an "encouragement theory." *See, e.g.*, Compl. ¶¶ 1, 23, 34, 49. To be clear, Defendants categorically deny these and other accusations in the Complaint—Backpage works to *prevent* misuse of the website and to *combat* sex trafficking. But even if such allegations were true, they would not salvage a defective Complaint. Such claims "*necessarily* treat the website as a publisher or speaker of content provided by third parties and, thus, are precluded by section 230(c)(1)." *Doe No. 1*, 817 F.3d at 22 (emphasis added).

The Sixth Circuit specifically rejected Plaintiffs' "encouragement" theory in *Jones*, 755 F.3d 398. There, the plaintiff sued a gossip website (TheDirty.com) for disparaging user

16

posts about her, and the district court refused to apply Section 230 because it concluded the site "intentionally encourage[d] illegal or actionable third-party postings." *Jones v. Dirty World Entm't Recordings, LLC*, 965 F. Supp. 2d 818, 821 (E.D. Ky. 2013). The circuit court reversed, noting that "[m]any websites not only allow but also actively invite and encourage users to post particular types of content," which might be "unwelcome to others." *Jones*, 755 F.3d at 414. But such websites cannot be sued on an "encouragement" theory because that would "eclips[e] the immunity from publisher-liability that Congress established." *Id.* "Congress envisioned an uninhibited, robust, and wide-open internet … but the muddiness of an encouragement rule would cloud that vision."[10]

This precedent is essential to preserve Section 230's purpose. Its grant of immunity "would serve little if any purpose if companies like Craigslist [or Backpage] were found liable … for 'causing' or 'inducing' users to post unlawful content in this fashion." *Craigslist*, 665 F. Supp. 2d at 969. In such cases, where "users routinely flout Craigslist's guidelines, it is not because Craigslist has caused them to do so." *Id.* "Or if it has, it is only 'in the sense that no one could post [unlawful content] if craigslist did not offer a forum.'" *Id.* (quoting *Chicago Lawyers' Comm. for Civil Rights Under the Law v. Craigslist, Inc.*, 519

---

[10] *Jones*, 755 F.3d at 415. *See also Whitney Info. Net., Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095, at *10, *13 (M.D. Fla. Feb. 15, 2008) (Section 230 foreclosed defamation claim against operator of www.ripoffreport.com, a website devoted to exposing scams, even where evidence showed operator itself "created categories, such as 'con artists,' 'corrupt companies' and 'false TV advertisements,' from which a poster must make a selection to categorize his or her report as part of the submission process"); *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 476 (E.D.N.Y. 2011) ("[T]here is simply 'no authority for the proposition that [encouraging the publication of defamatory content] makes the website operator responsible, in whole or in part, for the "creation or development" of every post on the site.'") (citation omitted).

F.3d 666, 671 (7th Cir. 2008)).  In many cases, "a clever lawyer could argue that *something* the website operator did encouraged the illegality," but such cases "must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties."  *Roommates.com*, 521 F.3d at 1174.

That principle applies fully here, where Plaintiffs allege the Defendants encourage criminal conduct by third parties.  In *People v Ferrer*, for example, the court dismissed charges against the same Backpage executive and former owners sued in this case, rejecting the prosecution's knowing encouragement theory.  2016 WL 7237305, at *7 (citation omitted).[11]  Likewise, this Complaint should be dismissed for the same reasons.

### 2. *Plaintiffs' Content-Creation Allegations Cannot Overcome Section 230 Immunity.*

Plaintiffs fare no better in trying to paint Backpage as a content creator of certain "Sponsored Advertisements."  *See* Compl. ¶ 37 (alleging "Backpage creates, develops, and posts illegal content … in the 'Sponsored Ads' part of the 'Adult Services' section of its website.").  First, the suggestion that Backpage itself is the originator and creator of the allegedly actionable content is refuted by Plaintiffs' own allegations.  The Complaint's only specific factual averments make clear that this alleged content creation actually involves

---

[11] *See also Doe v. AOL*, 783 So. 2d 1010, 1017 (Fla. 2001) (AOL immune from claims it knowingly hosted chat rooms where users violated child pornography laws); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 759-60 (Tex. App. 2014) (rejecting plaintiff's allegations that a "revenge porn" website published and promoted "obscenity and child pornography"); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) (Google immune despite allegations it "encourages[,] collaborates in the development of [and] effectively, requires [illegal content]" in ad program).

nothing more than "enhanc[ing]" user-submitted ads by "rewriting" and "reorganizing" those ads (including "adding" and "summarizing" the submitted text)—in other words, editing. Compl. ¶¶ 37-38. In this regard, the Complaint's specific factual allegations undermine Plaintiffs' efforts to generalize and relabel them. *See Griffin Indus.*, 496 F.3d at 1205-06 ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations."); *Franklin*, 738 F.3d at 1250 ("The district court's … error was finding purely conclusory allegations—*i.e.*, a 'formulaic recitation of the elements of a cause of action'—sufficient ….") (citation omitted).

Plaintiffs' precise argument about content "creation" has been rejected before. The District Court in *Doe No. 1* explained, "[t]he creation of sponsored ads with excerpts taken from the original posts reflects the illegality (or legality) of the original posts and *nothing more*." 104 F. Supp. 3d at 157 (emphasis added). The First Circuit affirmed, finding such "attempted end runs" to recast editing as "content creation" "are futile, and do not cast the slightest doubt on our conclusion that the district court appropriately dismissed the appellants' sex trafficking claims as barred by section 230(c)(1)." *Doe No. 1*, 817 F.3d at 17, 24. Similarly, here, Plaintiffs cannot circumvent Section 230 by alleging in conclusory fashion that Defendants "create" and "control" the content posted on Backpage-affiliated websites EvilEmpire.com and BigCity.com. Compl. ¶¶ 77, 82. As Plaintiffs concede, those websites simply "repost[]" ads posted by users on Backpage.com. *See id.* ¶¶ 79, 82. Once again, this same argument has been rejected. *People v. Ferrer*, 2016 WL 7237305, at *6.[12]

---

[12] *See also Kimzey*, 836 F.3d at 1268 (plaintiff's "threadbare allegations of fabrication of statements" were "insufficient to avoid immunity" under Section 230 where "careful reading of the complaint reveal[ed] that [plaintiff] never specifically alleged that Yelp authored or

Even more fundamentally, Plaintiffs make no effort to connect any particular ads to any allegedly unlawful conduct by Defendants. This is fatal to their effort to plead around Section 230, as courts uniformly hold that a website may be held liable only to the extent that it created or developed "*specific content* that was the *source* of the alleged liability." *FTC v. Accusearch, Inc.*, 570 F.3d 1187, 1198-99 (10th Cir. 2009) (emphasis added); *see Jones*, 755 F.3d at 410 (to overcome Section 230 immunity, website must be "responsible for what makes the displayed content allegedly unlawful"); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (service provider must have "created or developed the particular information at issue). Specifically with respect to Backpage, the court in *M.A.* agreed the relevant question was whether the website operator is "responsible for the development of the specific content that was the source of the alleged liability." 809 F. Supp. 2d at 1051 (citation omitted). On that basis, it held Backpage not liable "for the content and consequences of the ads posted by [the pimp]." *Id*. The same goes here.[13]

Plaintiffs never allege that the harms asserted resulted from the particular ads that Backpage supposedly created. To the contrary, the Complaint makes clear that the harms sustained by Plaintiff Doe resulted from a single ad *created by the third-party criminals* who abused and trafficked her. *See* Compl. ¶¶ 97-98 (pimps "created an advertisement for Ms.

---

created the *content* of the statements posted …, but rather … adopted them from another website and transformed them into its own stylized promotions on Yelp and Google").

[13] Any suggestion that *J.S. v. Village Voice Media Holdings, LLC*, 184 Wash. 2d 95 (2015), requires a different result would be meritless. That case, in which the Washington Supreme Court held a plaintiff's complaint contained sufficient allegations that Backpage had created the relevant content at issue to survive a motion to dismiss, was decided under far more lenient pleadings standards than permitted in federal court. Moreover, the state court's crabbed view of Section 230 immunity—a question of federal law—cannot trump the overwhelming body of federal law clearly establishing Section 230 in cases such as this.

Doe on Backpage."). It further alleges that Plaintiff had been trafficked since the age of 11 and that, at the time the single ad appeared on Backpage.com in March 2013, Plaintiff was 26 years old and had been victimized by her mother (and perhaps others) for *15 years*. *See id.* ¶¶ 9, 95-96. In light of these allegations, Plaintiffs cannot rely on their vague and boilerplate recitations that "[a]s a direct and proximate cause of Defendants' conduct"—conduct that is neither specified nor linked to the allegedly Backpage-created ads—"Plaintiff Doe" was injured. *See, e.g.*, *id.* ¶¶ 118, 124, 129; *see also infra* at 24-25 (lack of standing to raise claims).[14] And, for the same reasons, it is irrelevant whether Backpage creates some *other* content that Plaintiffs do not plausibly allege harmed them.

### D.     Ms. Doe's Right-of-Publicity Claims are Not Saved by Section 230's "Intellectual Property" Exception.

In Count V of the Complaint, Ms. Doe asserts a claim under Florida's right-of-publicity statute, Fla. Stat. § 540.08, and appears to assert an equivalent claim under Florida common law in Count IV. *See* Compl. ¶ 131. To the extent Ms. Doe asserts these claims in order to argue Section 230's safe harbor does not apply pursuant to the exception for "intellectual property" claims, *see* 47 U.S.C. § 230(e)(2), she is mistaken.[15]

---

[14] Nor can Plaintiffs shore up these shortcomings by relying on vague allegations that Defendants made false statements *to third parties*—*i.e.*, unidentified payment processors and a child who was allegedly trafficked. *See* Compl. ¶¶ 86-88; *see also Doe No. 1*, 817 F.3d at 24-25 (rejecting similar theory as relying on a "causal chain … shot through with conjecture," including speculation regarding the effect of "the alleged misrepresentations on an indeterminate number of third parties"). In any event, Plaintiffs fail to meet the exacting pleading requirements to "state with particularity the circumstances constituting [the] fraud," Fed. R. Civ. P. 9(b)—in other words, "the who, what, when, where, and how of the allegedly false statements." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

[15] Section 230 also contains an exception for federal criminal prosecutions. *See* 47 U.S.C. § 230(e)(1). That exemption is inapplicable here, however, because it "applies to

While Section 230(e)(2) provides that immunity does not extend to claims pursuant to "any law pertaining to intellectual property," *id.*—such as those under copyright, trademark, and patent law—a right-of-publicity claim is not one "pertaining to intellectual property." "Intellectual property" is a "category of intangible rights protecting commercially valuable products of the human intellect." *Black's Law Dictionary* (10th ed. 2014). Here, Plaintiff Doe's right-of-publicity claims allege misappropriation of her "image" and "personality." Compl. ¶¶ 131, 136. But "a person's image is not a 'product of the human intellect.'" *Doe No. 1*, 104 F. Supp. 3d at 163 n.13. Rather, the right of publicity "'flows from the right to privacy,'" *id.* (citation omitted). Indeed, Plaintiffs appear to acknowledge as much. *See* Count IV (captioned "INVASION OF PRIVACY OR RIGHT TO PUBLICITY").

To the extent Count IV alleges invasion of privacy based on "intrusion into Plaintiff Doe's private affairs," on "public disclosure" of private facts about Ms. Doe, and/or on "false light" (a claim no longer recognized under Florida law, *see Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1114 (Fla. 2008)), *see* Compl. ¶¶ 131-132, those claims are even farther afield from any "law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). They are thus foreclosed by Section 230. *See, e.g.*, *Carafano*, 339 F.3d at 1125; *Dowbenko v. Google Inc.*, 991 F. Supp. 2d 1219, 1220 (S.D. Fla. 2013), *aff'd*, 582 F. App'x 801 (11th Cir. 2014).

---

*government prosecutions*, *not* to civil private rights of action under [statutes] with criminal aspects." *Obado v. Magedson*, 2014 WL 3778261, at *8 (D.N.J. July 31, 2014) (emphasis added), *aff'd*, 612 F. App'x 90 (3d Cir. 2015); *see also M.A.*, 809 F. Supp. 2d at 1053-56 (Section 230 barred civil claims predicated on alleged violations of criminal trafficking statutes, 18 U.S.C. §§ 2255 and 1595).

### E. Imposing Liability on Online Service Providers is Not the Solution to Preventing Trafficking.

Jane Doe's tragic plight cannot help but evoke sympathy and concern, but the Complaint is far off base in alleging she "was repeatedly raped *as a result of Backpage*," when, on the same page that statement appears, Ms. Doe reveals her mother sold her for sex, forced her to provide sexual services, and others then raped her, photographed her, and trafficked her. The bad acts of third parties are the very reason Congress provided immunity for "companies that serve as intermediaries for other parties' potentially injurious messages." *Zeran*, 129 F.3d at 330-31. Respecting Congress' policy judgment does not condone the scourge of trafficking—especially child trafficking—nor does it undermine public safety. *Doe v. Bates*, 2006 WL 3813758, *4 (E.D. Tex. Dec. 27, 2006). Rather, courts applying Section 230 have emphasized that the proper response is for law enforcement to pursue the *actual wrongdoers* (here, the criminals who trafficked Ms. Doe). *M.A.*, 809 F. Supp. 2d at 1046 ("The actual injury suffered by M.A. is … her victimization by [the pimp]."); *Jones*, 755 F.3d at 417 (plaintiff should go after the one who authored and posted the content).

Pursuing intermediaries because of the bad acts of others may satisfy an emotional impulse, but will not deter trafficking. It may even have unintended and counterproductive effects by making it harder for law enforcement to ferret out illegal trafficking and thus more difficult to aid its victims. Censorship of online content is not an effective or permissible approach to combat sex trafficking.[16]

---

[16] Many experts and law enforcement officials agree. *See, e.g.*, Danah Boyd, *Combating Sexual Exploitation Online: Focus on the Networks of People, not the Technology* (Oct. 19, 2010), http://www.danah.org/papers/talks/2010/CombatingSexualExploitationOnline.pdf ("Going after specific sites where exploitation becomes visible and attempting to eradicate

## II.     PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW

### A.     Plaintiffs Lack Standing.

Fundamental principles of Article III standing separately require dismissal of Plaintiffs' claims.  "To have standing under Article III, a plaintiff 'must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly *traceable to the challenged action of the defendant* and likely to be redressed by a favorable judicial decision.'"  *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1303-04 (11th Cir. 2017) (*en banc*) (emphasis added; citation omitted); *see also Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016) ("causation" is an element of the "'irreducible constitutional minimum of standing'") (citation omitted), *reh'g en banc denied*, 2017 WL 1548204 (11th Cir. May 1, 2017).  Here, there can be no causation where the Complaint alleges third parties created and posted the offending ads, not by any of the Defendants.  Thus, even setting aside Section 230, Ms. Doe's claims must be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).  *See, e.g.*, *Cone Corp.*, 921 F.2d at 1203.

For the same reasons, plaintiff Florida Abolitionist lacks standing.  That organization vaguely alleges that, "[a]s a result of the increase in sex trafficking, Florida Abolitionist has diverted its resources from its main mission to end human trafficking to provide treatment and services to trafficking victims" (Compl. ¶ 110), but it makes no effort to link these

---

the visibility does nothing to address the networks of supply and demand—it simply pushes them to evolve and exploiters find new digital haunts and go further underground."); Mark Latonero, *The Rise of Mobile and the Diffusion of Technology-Facilitated Trafficking*, Nov. 2012 (USC Annenberg Ctr. on Commc'ns Leadership & Policy Research Series on Tech. & Human Trafficking), at 30 ("online classified ad sites like Backpage ... are visible, accessible, and well known to law enforcement staff," and this helps law enforcement investigations); *id.* at 26 ("[L]aw enforcement agents ... suggest[ed] that closing one site runs the risk of sending traffic to other online advertisement and social networking sites.").

alleged resource burdens to any ads specifically posted on Backpage.com. This is fatal. Even assuming the abstract harms Florida Abolitionist alleges were sufficiently "particularized," *see Wollschlaeger*, 848 F.3d at 1303-04, there is no "causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). In particular, Florida Abolitionists' claimed injury is not "'trace[able] to the challenged action of the defendant, and not … the independent action of some third party not before the court.'" *Id.* Florida Abolitionists' contention that the specific conduct of defendants resulted in an overall spike in sex trafficking, which, in turn, supposedly caused the diversion of their resources, is entirely speculative and cannot serve as a basis for standing.[17]

## B. The Right-of-Publicity Claims Fail.

As noted above, Ms. Doe's right-of-publicity claims are foreclosed by Section 230. But they fail on their own weight as a matter of law. As in *Doe No. 1*, these claims are premised solely on the claim that ads posted by the third-party traffickers on Backpage.com "displayed" Ms. Doe's "image, photograph, and likeness." Compl. ¶¶ 97-98, 136-137. However, Ms. Doe cannot assert a claim under Fla. Stat. § 540.08 or Florida common law, because she does not (and cannot) allege Backpage.com used her image, photograph, and likenesses for *its own commercial benefit*.

---

[17] Plaintiffs' conceded "estimate[]" that "at least half of the victims" served by Florida Abolitionist "were trafficked via Backpage" (Compl. ¶ 114) is precisely the sort of speculation courts reject on motions to dismiss. *See, e.g.*, *Doe No. 1*, 817 F.3d at 25 (refusing to "credit[] at the Rule 12(b)(6) stage" plaintiffs' alleged "causal chain," which "pyramids speculative inference upon speculative inference," including surmise about "the real impact of Backpage's behavior on the overall marketplace for sex trafficking") (citation omitted).

Like its common law counterpart,[18] Section 540.08 of the Florida Statutes requires a plaintiff to show her image, photograph, or likeness was published by the defendant "for purposes of trade or for any commercial or advertising purpose." Fla. Stat. § 540.08(1). Florida "[c]ourts have interpreted the statute's commercial purpose requirement to require that a defendant's unauthorized use 'directly promote' a product or service." *Almeida*, 456 F.3d at 1325 (citations omitted). Here, however, the Complaint contains no plausible allegations that Backpage.com published photos of Ms. Doe to "directly promote" its own product or service. *Id.* Nor does Ms. Doe allege Backpage.com used her likenesses to advertise or promote the website itself. Rather, she alleges *third-party traffickers* used her photos "with an advertisement selling Ms. Doe for sex." Compl. ¶ 97.

Ms. Doe therefore fails to state a legally cognizable claim for the same reasons the First Circuit rejected plaintiffs' right-of-publicity claims in *Doe No. 1*. There, applying Massachusetts and Rhode Island law—which is in all relevant respects identical to Florida law[19]—the court explained that "there is no basis for an inference that Backpage appropriated the commercial value of the [plaintiffs'] images. Although Backpage does profit from the sale of advertisements, *it is not the entity that benefits* from the misappropriation." 817 F.3d at 27 (emphasis added). Rather, "[a] publisher like Backpage is 'merely the conduit through

---

[18] Florida's statutory and common law rights of publicity are "substantially identical." *Almeida*, 456 F.3d at 1320 n.1; *Fuentes v. Mega Media Holdings, Inc*., 721 F. Supp. 2d 1255, 1260 (S.D. Fla. 2010).

[19] Under the laws of all three states, (1) a right of publicity claim lies only when the defendant uses the plaintiff's image or likeness for defendant's *own commercial benefit*; (2) a defendant's "incidental" use is not actionable; and (3) it is irrelevant that defendant is engaged in a profit-making enterprise. *Compare Doe No. 1*, 817 F.3d at 26-27 (Massachusetts and Rhode Island law), *with Almeida*, 456 F.3d at 1324-26 (Florida law).

26

which the advertising and publicity matter of customers' is conveyed," while "the party who actually benefits … is *the advertiser*." *Id.* (citation omitted; emphasis added).

The Eleventh Circuit's holding in *Almeida*—which affirmed dismissal of the same right-of-publicity claims under Florida law that Ms. Doe asserts here—is to similar effect. In that case, the plaintiff sought to hold Amazon.com liable for publishing a photo of her online that appeared on the cover of a book that the website advertised for sale. 456 F.3d at 1318-19. Rejecting the argument that this was an actionable "commercial" use on a theory that Internet retailers use such content to promote sales and their "brand identity," *id.* at 1325, the court held Amazon's use was "merely incidental to, and customary for, the business of internet book sales." *Id.* at 1326. These holdings equally apply here, and for good reason. As the First Circuit explained, "[t]here would be obviously deleterious consequences to a rule placing advertising media, such as newspapers, television stations, or websites, at risk of liability every time they sell an advertisement to a party who engages in misappropriation of another's likeness." *Doe No. 1*, 817 F.3d at 27.

### C. The Defamation Claim Is Time-Barred And Otherwise Defective.

Ms. Doe's claim for defamation (Compl. Count II) must be dismissed on the independent grounds that (1) Plaintiffs never allege that they served Defendants with a retraction notice—a prerequisite for bringing a claim for defamation under Florida law, *see Comins v. Vanvoorhis*, 135 So. 3d 545 (Fla. 5th DCA 2014)—and (2) the claim is time-barred. As to the latter point, Florida's statute of limitations for defamation is two years. *See* Fla. Stat. § 95.11(4)(g); *Giordano v. Romeo*, 76 So. 3d 1100 (Fla. 3d DCA 2011). Here, the events giving rise to the defamation claim allegedly took place *March 30, 2013* (the date on which

the ad about Ms. Doe allegedly was posted).  Compl. ¶¶ 96-97.  Ms. Doe filed the Complaint

on *February 7, 2017*—almost two years too late.  Nor can Plaintiffs salvage this by relying

on a theory of subsequent publications or continuing publication.  *See* Compl. ¶ 121 (alleging

Defendants "failed to remove the defamatory matter").  Under Florida's single publication

rule, the two-year statute of limitations runs from date of first publication—*not* a subsequent

publication or subsequent discovery of alleged defamatory matter.  *See* Fla. Stat. § 770.07;

*Wagner, Nugent v. Flanagan*, 629 So. 2d 113 (Fla. 1993).  This claim must, therefore, be

dismissed.  *See, e.g.*, *LaGrasta v. First Union Secs., Inc.*, 358 F.3d 840 (11th Cir. 2004).

### D.    Other Claims Based on Publication of the Ad are Barred by the Single Action Rule.

Plaintiffs' other causes of action predicated on the same allegations as the defamation

claim (*i.e.*, the allegedly defamatory posting of the ad concerning Ms. Doe), also fail under

Florida's "single action rule."  *See Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. 4th

DCA 1983); *Fridovich v. Fridovich*, 598 So. 2d 65, 69-70 (Fla. 1992).  The rule "prevents [a

plaintiff from] circumventing the short two-year statute of limitations by re-describing a

slander action to fit a different category of intentional wrong."  *Kamau v. Slate*, 2012 WL

5390001, at *7 (N.D. Fla. Oct. 1, 2012), *adopted*, 2012 WL 5389836 (N.D. Fla. Nov. 5,

2012).  For example, a claim for defamation "cannot be re-characterized in additional,

separate counts" including "intentional infliction of emotional distress" where "the claim

arises from the same publication."  *Id.  See also Trujillo v. Banco Cen. Del Ecuador*, 17 F.

Supp. 2d 1334, 1339-40 (S.D. Fla. 1998) (dismissing false light invasion of privacy claim

based on single action rule, even though defamation claims survived dismissal).  In this case,

Plaintiffs' claims for false light invasion of privacy (*see* Compl. ¶ 132), outrage (*id*. ¶ 126),

right of publicity (*id.* ¶¶ 131, 136), conspiracy (*id.* ¶ 141), and negligence (*id.* ¶ 146), all are predicated on the same facts as Ms. Doe's defamation claim, and must be dismissed under the single action rule.

### E. The Civil Conspiracy Claim Fails.

Plaintiffs also fail to plead a cognizable claim for civil conspiracy (Compl. Count VI). "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 WL 1408391, at *23-24 (M.D. Fla. Apr. 6, 2010), *aff'd*, 451 F. App'x 862 (11th Cir. 2012) (quotation marks and citation omitted). The Complaint falls far short of these basic requirements.

Plaintiffs rest on the vague allegation that "Defendants had an agreement between themselves and an agreement with trafficker co-conspirators to traffic children and coerced adults." Compl. ¶ 140. But they never identify the "who, what, when, where, and how" of this supposed agreement. While the Complaint dubs various third-parties who allegedly committed sex crimes Defendants' "co-conspirators," *see id.* ¶¶ 90-93, Plaintiffs make no effort to identify any specific "agreement(s)" between Defendants and these alleged co-conspirators. Such "[c]onclusory allegations of an agreement are not sufficient to state a cause of action for conspiracy." *Pierson*, 2010 WL 1408391, at *23-24; *accord Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, 2008 WL 1817294 (M.D. Fla. Apr. 22, 2008). Thus, even setting aside Section 230, the allegations of civil conspiracy—which are in any event utterly false—must be dismissed.

### F. The Section 1591 Claim Fails.

For similar reasons, Ms. Doe's claim under 18 U.S.C. § 1591 fails. Ms. Doe alleges that Backpage is liable for violating that statute because it knowingly posted the ad concerning her. *See* Compl. ¶¶ 117-118. But, as the government has acknowledged in another case involving Backpage, "[e]ven if an advertisement for illegal sex trafficking appeared on [its] website, [Backpage] could not be convicted under [Section 1591] without proving that *[it] knew that the advertisement at issue* related to illegal sex trafficking of a minor or of a victim of force, fraud, or coercion." DOJ's Reply in Support of Motion to Dismiss at 7-8 ("DOJ Brief"), *Backpage.com, LLC v. Lynch*, No. 1:15-2155(RBW), ECF No. 13 (DDC); *accord Backpage.com, LLC v. Lynch*, 2016 WL 6208368, at *9 (D.D.C. Oct. 24, 2016). Here, the Complaint contains no plausible allegation that, of the millions of ads posted on Backpage.com each month (*see supra* at 4), Defendants saw the ad concerning Ms. Doe and specifically knew it "related to illegal sex trafficking of a minor or of a victim of force, fraud, or coercion," DOJ Brief at 7-8. Lacking the requisite allegations of scienter, this claim, too, must be dismissed.

### CONCLUSION

Consistent with Congress' binding policy judgment in Section 230 that "plaintiffs may hold liable the person who creates or develops [the] unlawful content, but not the interactive computer service provider who merely enables that content to be posted online," *Nemet Chevrolet*, 591 F.3d at 254, this Court should dismiss the Complaint in its entirety.

Dated: May 5, 2017

Respectfully submitted,

Lawrence G. Walters
Florida Bar No.: 0776599
**Walters Law Group**
195 W. Pine Ave.
Longwood, FL 32750-4104
Telephone: (407) 975-9150
Facsimile: (407) 774-6151
Email: Larry@FirstAmendment.com
Email: Paralegal@FirstAmendment.com

Robert Corn-Revere *(pro hac vice)*
*Lead Trial Counsel*
Ronald G. London *(pro hac vice)*
**Davis, Wright, Tremaine LLP**
1919 Pennsylvania Ave. NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email: bobcornrevere@dwt.com
         ronnielondon@dwt.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed through the CM/ECF system on May 5, 2017, which will serve a copy by email on the following: Karen C. Dyer, Esq., kdyer@bsfllp.com, Boies, Schiller, Flexner, LLP, 121 South Orange Avenue, Suite 840, Orlando, FL 32801; David Boies, Esq., dboies@bsfllp.com, Boies, Schiller, Flexner, LLP, 333 Main Street, Armonk, NY 10504; Karen Chesley, Esq., kchesley@bsfllp.com, Boies, Schiller, Flexner, LLP, 575 Lexington Avenue, New York, NY 10022; Joanna Wright, Esq., jwright@bsfllp.com, Boies, Schiller, Flexner, LLP, 575 Lexington Avenue, New York, NY 10022. Notice will be provided via email to Alexander Boies, Esq. (aboies@bsfllp.com), Boies, Schiller, Flexner, LLP, 575 Lexington Avenue, New York, NY 10022, and via U.S. Mail to Penny Venetis, Esq., Legal Momentum, 16 East 34th Street, New York, NY 10016.

_____

Lawrence G. Walters

**Appendix A**
**Allegations in This Case Compared With Allegations in *Doe No. 1 v. Backpage***

| *Florida Abolitionist and Doe v. Backpage.com et al.* | *Doe No. 1 et al. v. Backpage.com et al. (D. Mass./1st Cir.)* |
|---|---|
| "Because Backpage's profitability and survival depends on sex trafficking, it has created tools … to ensure that traffickers are not identified and apprehended by law enforcement." (Compl. ¶63.) | Backpage "assist[ed] in the crafting, placement, and promotion of illegal advertisements offering the plaintiffs for sale that would attract potential customers yet escape detection by law enforcement." (Compl. ¶ 4.) |
| "Backpage's 'filter' is nothing more than a coaching mechanism intentionally designed by Backpage to facilitate and profit from sex trafficking." (Compl. ¶ 53.) | Backpage.com "attempts to essentially coach individuals about how to advertise the sale of sexual services and the exploitation of underage sex trafficking victims without including terms that will most likely trigger detection by law enforcement." (Compl. ¶ 57.) |
| "As a result of Backpage's actions, trafficking victims regularly report being sold in multiple states in a single day or week." (Compl. ¶ 62.) | Backpage "enables sellers to post advertisements in multiple cities and regions, allowing them to maximize profitability by traveling to the location with the highest amount of Backpage generated interest in their services." (Compl. ¶ 42.) |
| "[T]he Backpage website processes any photograph posted as part of an advertisement in the 'Adult Services' section and automatically strips it of all metadata." (Compl. ¶ 67.) | "The Backpage Defendants deliberately adjusted their server software, at additional expense, to delete the metadata on each uploaded photo." (Comp. ¶ 51.) |
| "Defendants also allow traffickers to evade law enforcement by allowing traffickers to post their phone numbers by spelling out the digits of their telephone numbers instead of using Arabic numbers…. Defendants designed its [*sic*] website so that sex traffickers would not have to verify the phone numbers they post in connection with an advertisement for a trafficked child or adult." (Compl. ¶¶ 68-69.) | "Backpage.com does not require phone number verification and allows posters to include phone numbers in obscured forms that include letters and numbers rather than strictly numeric characters." (Compl. ¶ 49.) |
| "Defendants knowingly advertised, and financially benefitted from, ventures that they know (a) involved a person under 18 years of age engaging in 'commercial sex acts' and (b) involved persons (including under the age of 18) engaging in 'commercial sex acts' as the result of force, threats of force, fraud, and coercion in violation of 18 U.S.C. § 1591." (Compl. ¶ 117.) | "The Backpage Defendants knowingly participated in and benefitted financially from the unlawful sexual exploitation suffered by the plaintiffs…. Jane Doe No. 1, Jane Doe No. 2, and Jane Doe No. 3 are victims of child sex trafficking within the meaning of 18 U.S.C. § 1591." (Compl. ¶¶ 4, 109.) |
| "Traffickers are coached to use code words such as 'high schl' and 'brly legal' rather than words that would explicitly state that a child being trafficked is under [legal age]." (Compl. ¶ 49.) | "Despite creating the appearance that it prohibits certain transactions, Backpage.com allows a poster to include close synonyms and misspellings of the non-permitted terms after receiving the advisory 'Oops!' message. For example, rather than 'teenage' or 'schoolgirl,' the poster may include the terms 'girl,' 'young,' 'underage,' or 'fresh.' Similarly, while a poster may not include 'barely legal' or 'high school,' which are known to be code words for underage, Backpage.com permits 'brly legal' (as shown below) and 'high schl.'<br><br>By flagging certain terms for posters and allowing the |

## Appendix A
## Allegations in This Case Compared With Allegations in *Doe No. 1 v. Backpage*

| | posters to adjust those terms and continue posting their advertisements, Backpage.com attempts to essentially coach individuals about how to advertise the sale of sexual services and the exploitation of underage sex trafficking victims without including terms that will most likely trigger detection by law enforcement." (Compl. ¶¶ 56-57.) |
|---|---|
| "Backpage also provides a 'filter' for traffickers who attempt to include in the advertisement that the child being sold is under 18 years of age… Backpage allows traffickers to input a different age for the same person in the same advertisement repeatedly—with absolutely no form of age verification—until the trafficker inputs an age of 18 or older." (Compl. ¶ 52.) | "Backpage.com also does not require any age verification to post an advertisement in the 'Escorts' section. While a poster must enter his or her age as part of the advertisement drafting interface prior to paying for and posting an advertisement in the 'Escorts' section, if the poster enters an age under 18, he or she receives a message that reads: 'Oops! Sorry, the ad poster must be over 18 years of age.' Then, no matter how many times the poster has entered an age under 18 along with other information necessary to complete the advertisement, the poster has the option to then enter an age above 18, but to otherwise use the same information entered previously, without being blocked from completing the advertisement." (Compl. ¶ 48). |
| "Backpage enabled traffickers to pay for advertisements in a covert manner by permitting the use of prepaid credit cards that did not need to be linked to a name, address, or any other identifying information." (Compl. ¶ 64.) | "Backpage.com allows users to pay for advertisements using prepaid credit cards that need not be linked to a name, address, or any other identifying information. This makes it more difficult to track these transactions, and allows users to maintain anonymity and evade law enforcement." (Compl. ¶ 47.) |
| "Backpage emphasized its other anonymous payment options so that traffickers could pay to post their advertisements using the digital currency Bitcoin. Because Bitcoin is not linked to a bank and is largely untraceable, it allows traffickers to provide payment for advertisement enhancements without leaving any evidence of their identity." (Compl. ¶ 65.) | "Backpage Defendants now accept Bitcoin as payment. Bitcoin is a digital currency that permits transactions to be completed without a bank. Backpage.com is the first adult website in the country to accept Bitcoin. The Backpage Defendants accept Bitcoin because they know that such payments are largely untraceable and therefore attractive to traffickers and other predators." (Compl. ¶ 47.) |

# **<u>Exhibit N</u>**

**Davis Wright Tremaine LLP**
Scott R. Commerson (*pro hac vice* to be filed)
Brendan N. Charney (*pro hac vice* to be filed)
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone: (213) 633-6800
scottcommerson@dwt.com
brendancharney@dwt.com

**Rusing Lopez & Lizardi, P.L.L.C.**
Daniel J. Quigley (#011052)
Sarah S. Letzkus (#027314)
6363 North Swan Road, Suite 151
Tucson, Arizona  85718
Telephone: (520) 792-4800
dquigley@rllaz.com
sletzkus@rllaz.com

(*Counsel Continued on Next Page*)

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Sojourner Center, | Case No. 2:17-cv-00399-GMS |
| Plaintiff, | **MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| Backpage.com LLC; *et al.*, | |
| Defendants. | (Oral Argument Requested) |

**Davis Wright Tremaine LLP**
Robert Corn-Revere (*pro hac vice* to be filed)
Ronald G. London (*pro hac vice* to be filed)
1919 Pennsylvania Avenue NW, Suite 800
Washington, D.C.  20006-3401
Telephone: (202) 973-4200
bobcornrevere@dwt.com
ronnielondon@dwt.com

**Davis Wright Tremaine LLP**
James C. Grant (*pro hac vice* to be filed)
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone: (206) 622-3150
jamesgrant@dwt.com

Attorneys for Defendants

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.    BACKGROUND.............................................................................................. 2

    A.    Backpage.com ............................................................................... 2

    B.    The Complaint............................................................................... 4

    C.    Standard of Review. ...................................................................... 6

II.    ARGUMENT ................................................................................................. 6

    A.    Plaintiff Lacks Standing to Sue Backpage. .................................. 6

    B.    Section 230 Bars Plaintiff's Claims. ........................................... 10

        1.    Section 230 Was Designed to Promote Free Speech Online. .... 10

        2.    The Three-Part Test for Section 230 Immunity is Satisfied Here...................................................................................... 10

        3.    Plaintiffs Cannot Evade Section 230 Through Artful Pleading. ................................................................................ 11

            a.    Backpage's Editorial Choices Are Protected by Section 230......................................................................... 11

            b.    Notice Liability Cannot Defeat Section 230. .................. 14

            c.    Allegations of Conspiracy Cannot Overcome Section 230............................................................................. 15

    C.    Plaintiff Also Fails to State a Claim on Its Various Causes of Action. ......................................................................................... 17

        1.    The RICO Claim Fails. ............................................................. 17

            a.    There Is No "Pattern of Racketeering Activity." ............ 18

            b.    Plaintiff Lacks Standing As A Remote Party Whose Claimed Injury Was Not Proximately Caused by Backpage. ....................................................................... 21

            c.    Plaintiff Does Not State A Claim For RICO Conspiracy. .................................................................... 23

        2.    The Negligence Claim Fails....................................................... 24

        3.    The Nuisance Claim Fails. ......................................................... 24

III.    CONCLUSION ............................................................................................ 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**Cases**

*In re African-Am. Slave Descendants Litig.*,
471 F.3d 754 (7th Cir. 2006) ..........................................................................8

*In re Am. Exp. Co. S'holder Litig.*,
39 F.3d 395 (2d Cir. 1994) ...........................................................................22

*American Income Life Ins. Co. v. Google, Inc.*,
2014 WL 4452679 (N.D. Ala. Sept. 8, 2014) ...............................................11

*Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*,
148 Ariz. 1 (1985) .........................................................................................25

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989) ........................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................6, 14

*Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*,
241 F.3d 696 (9th Cir. 2001) .....................................................18, 21, 22, 23

*Backpage.com, LLC v. Cooper*,
939 F. Supp. 2d 805 (M.D. Tenn. 2013) .............................................*passim*

*Backpage.com, LLC v. Dart*,
807 F.3d 229 (7th Cir. 2015) ..........................................................................3

*Backpage.com, LLC v. Hoffman*,
2013 WL 4502097 (D. N.J. Aug. 20, 2013) .................................................11

*Backpage.com, LLC v. McKenna*,
881 F. Supp. 2d 1262 (W.D. Wash. 2012) .............................................3, 4, 11

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,
88 F. Supp. 3d 543 (E.D. Va. 2015) .............................................................17

*Barkhurst v. Kingsmen of Route 66, Inc.*,
234 Ariz. 470 (Ct. App. 2014) ......................................................................24

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) .................................................................10, 17

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 6, 18, 23

*Bowker v. Morton*,
    541 F.2d 1347 (9th Cir. 1976) ................................................................................. 8

*Carafano v. Metrosplash.com*,
    339 F.3d 1119 (9th Cir. 2003) ............................................................................... 15

*Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.*,
    519 F.3d 666 (7th Cir. 2008) ............................................................................. 7, 23

*Dart v. Craigslist, Inc.*,
    665 F. Supp. 2d 961 (N.D. Ill. 2009) ............................................................. 7, 11, 24

*Davis v. Motiva Enterprises, L.L.C.*,
    2015 WL 1535694 (Tx. App. Beaumont Apr. 2, 2015) ......................................... 14, 17

*Doe No. 1 v. Backpage.com*,
    817 F.3d 12 (1st Cir. 2016) ............................................................................. *passim*

*Doe v. AOL*,
    783 So.2d 1010 (Fla. 2001) .............................................................................. 16, 19

*Doe v. Backpage.com, LLC*,
    104 F. Supp. 3d 149 (D. Mass. 2015) ............................................................... 2, 11, 13

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ..................................................... 2, 14, 15

*Doe v. Roe*,
    958 F.2d 763 (7th Cir. 1992) ................................................................................. 22

*Duquesne Light Co. v. E.P.A.*,
    166 F.3d 609 (3d Cir. 1999) .................................................................................... 7

*Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*,
    28 F.3d 1268 (D.C. Cir. 1994) ................................................................................. 9

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ........................................................................ 10, 11, 16

*Fulani v. Brady*,
    935 F.2d 1324 (D.C. Cir. 1991) ............................................................................ 7, 8

*GoDaddy.com, LLC v. Toups*,
    429 S.W.3d 752 (Tex. App. Beaumont 2015) ....................................................... 13, 14

iii

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Google v. Hood*,
   822 F.3d 212 (5th Cir. 2016) ................................................................................ 2

*Goren v. New Vision Int'l, Inc.*,
   156 F.3d 721 (7th Cir. 1998) .............................................................................. 23

*H.J. Inc. v. Northwestern Bell Telephone, Co.*
   492 U.S. 229 (1989) ............................................................................................ 21

*Hebert v. Club 37 Bar*,
   145 Ariz. 351 (Ct. App. 1984) ............................................................................ 24

*Holmes v. Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) ............................................................................................ 22

*Jones v. Dirty World Entm't Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) ........................................................... 6, 10, 11, 16

*Kathleen R. v. City of Livermore*,
   87 Cal.App.4th 684 (2001) ................................................................................. 25

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ........................................................................ 2, 12

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .............................................................................. 1

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) .............................................................................. 9

*Levine v. Vilsack*,
   587 F.3d 986 (9th Cir. 2009) ................................................................................ 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................................. 7

*M.A. v. Village Voice Media Holdings, LLC*,
   809 F. Supp. 2d 1041 (E.D. Mo. 2011) .................................................. 1, 11, 13, 15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) .................................................................... 6, 14, 25

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
   981 F.2d 429 (9th Cir. 1992) ................................................................................ 1

*Oscar v. Univ. Students Co-op. Ass'n*,
   965 F.2d 783 (9th Cir. 1992) .............................................................................. 22

iv

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*People v. Ferrer*,
    2016 WL 7237305 (Cal. Super. Dec. 9, 2016) ............................................ 10, 11, 16, 19

*Peters v. LifeLock Inc.*,
    2014 WL 12544495 (D. Ariz. Sept. 19, 2014) ............................................ 10

*Pritikin v. Dep't of Energy*,
    254 F.3d 791 (9th Cir. 2001) ............................................ 7

*Salinas v. United States*,
    522 U.S. 52 (1997) ............................................ 23

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ............................................ 18

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999) ............................................ 22

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*,
    770 F.3d 834 (9th Cir. 2014) ............................................ 18

*United States v. Ackerman*,
    831 F.3d 1292 (10th Cir. 2016) ............................................ 4

*United States v. Campbell*,
    977 F.2d 854 (4th Cir. 1992) ............................................ 20

*United States v. Sanders*,
    929 F.2d 1466 (10th Cir. 1991) ............................................ 20

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ............................................ 10, 11, 14

*Van Buskirk v. CNN, Inc.*,
    284 F.3d 977 (9th Cir. 2002) ............................................ 1

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................ 7

*Witkoff v. Topix, LLC*,
    2015 WL 5297912 (Cal. Ct. App. Sept. 10, 2015) ............................................ 25

*Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996) ............................................ 18, 21

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Yslava v. Hughes Aircraft Co.*,
  1998 WL 35298580 (D. Ariz. June 29, 1998)................................................................25

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997)........................................................................10, 14

**Statutes**

18 U.S.C.
  § 1591....................................................................................................19
  § 1956....................................................................................................20
  § 1956(a)(1)..............................................................................................20
  § 1956(a)(1)(B)(i)-(ii)..................................................................................21
  §§ 1961-1968 (RICO)....................................................................................*passim*
  § 1962....................................................................................................21
  § 1962(a)..............................................................................................6, 17
  § 1962(b)..................................................................................................6
  § 1962(c)..................................................................................................6
  § 1964(c)..............................................................................................18, 21
  § 1964(d)............................................................................................6, 23, 24
  § 2251....................................................................................................19
  § 2252....................................................................................................19
  § 2422....................................................................................................19

47 U.S.C.
  § 230 (Communications Decency Act) ..................................................................*passim*
  § 230(c)(1)...........................................................................................10, 16
  § 230(e)(3)..............................................................................................10

**Rules**

Federal Rules of Civil Procedure
  12(b)(1)...................................................................................................1
  12(b)(6)................................................................................................1, 6

Federal Rules of Evidence 201 ..............................................................................1

**Constitutional Provisions**

U.S. Const. amend. I ...................................................................................1, 10

U.S. Const. art. III ......................................................................................6

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**Other Authorities**

Mark Latonero, *The Rise of Mobile and the Diffusion of Technology-
    Facilitated Trafficking*, Nov. 2012 (USC Annenberg Ctr. on Commc'n
    Leadership & Policy Research Series on Tech. & Human Trafficking) ........................ 9

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Defendants (collectively, "Defendants" or "Backpage") move, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss for lack of standing and failure to state a claim, including because Section 230 of the Communications Decency Act provides Backpage with complete immunity against liability arising from content created by website users and posted to Backpage.com, 47 U.S.C. § 230 ("Section 230"), and because the Complaint fails to allege sufficient facts to support any of the purported causes of action.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff, a domestic violence shelter, alleges several of its clients were victimized by third-party criminals who involved the clients in sex trafficking by posting on the classified advertising website Backpage.com.[1]  Plaintiff has not sued the criminals, but rather the owner and operator of the Backpage.com website, its CEO, and its former owners and executives, despite scores of decisions holding such online publication is protected by the First Amendment and immunized from suit and liability under Section 230.  Plaintiff lacks standing to pursue its claims, which add nothing to well-trod ground establishing federal immunity, fail on their own merits as a matter of law, and should be dismissed.

Numerous courts have held the kinds of claims raised in this Complaint are contrary to constitutional law and foreclosed by federal policy, dismissing virtually identical claims alleged against Backpage based on Section 230's command that "[n]o provider…of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  In *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1053-54 (E.D. Mo. 2011), the court rejected claims that Backpage was culpable for sex trafficking based on the website's structure and operation, alleged editorial functions, and purported knowledge by Backpage of illegal acts. The First Circuit also affirmed dismissal of claims that Backpage's policies sought to

---

[1] Plaintiff references the website throughout the Complaint, *see, e.g., id.* ¶¶ 42, 48, 51, 58-59, 65, and the Court may consider it in deciding this motion.  *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).  Judicial notice may be taken of court decisions about the site. Fed R. Evid. 201; *see Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 435 (9th Cir. 1992).

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

promote "illicit sex trade" and "trafficking of children", holding its practices "[s]ingly or in the aggregate…amount to neither affirmative participation in an illegal venture nor active web content creation." *Doe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 152, 157 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017).

The Complaint is peppered with conclusory assertions that Backpage somehow "conspired" with purchasers of ads on its site or "created" content via editorial practices. But, stripped of its conclusory verbiage, the Complaint's factual averments about the ads involving Plaintiff's clients show they ***were created and posted by third parties***, *not* Backpage.  Compl. ¶¶ 115, 122, 129-132.  The practices Plaintiff claims make Backpage a "conspirator" or "content creator" are editorial prerogatives uniformly held immune under Section 230.  Such "artful" pleading cannot "skirt[]" Section 230—especially where Plaintiff does not make any *factual* allegations that Backpage created the *specific* ads at issue, but instead relies on conclusions and innuendo drawn from the general design and operation of the website.  *See Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1266 (9th Cir. 2016).

Backpage by no means minimizes the grievous harms Plaintiff's clients may have suffered.  But Congress made a considered policy judgment that plaintiffs should hold the actual wrongdoers liable rather than cripple the Internet by imposing liability on websites that host third-party-created content.  Courts similarly recognize "the importance of preserving free speech on the internet, even though that medium serves as a conduit for much that is distasteful or unlawful." *Google v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016). Even in cases where facts are "highly offensive, Congress has decided that the parties to be punished and deterred are not the internet service providers but rather are those who created and posted the illegal material[.]" *Doe v. Bates*, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006).  In accord with those policy judgments, this case should be dismissed.  Not only does Section 230 bar this action, Plaintiff lacks standing and it has failed to state a claim.

## I.     BACKGROUND

### A.     Backpage.com

Defendants are all allegedly the owners or operators of Backpage.com, or otherwise

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

associated with Backpage.com.  Compl. ¶¶ 12- 32.  Backpage.com is an online classified advertising service through which users can post ads in a variety of categories, including buy/sell/trade, automotive, musician, rentals, real estate, jobs, dating, and services.  *See Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2013).  The site is organized geographically, by state and municipality. *See* Compl. ¶ 42.  Until January 2017, Backpage included a category for "adult" services (such as escort services), which—following years of pressure from government actors, including a campaign the Seventh Circuit described as an unconstitutional effort to "crush Backpage," *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015)—has now been shuttered.

Millions of ads are posted every month, making Backpage.com the second-largest online classified ad service in the U.S., after Craigslist.  *See Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1266 (W.D. Wash. 2012).  Users create and provide all content for ads they post on the site (both text and images), using an automated interface; Backpage.com does not dictate or require any ad content. *Cooper*, 939 F. Supp. 2d at 813 ("The website works by allowing users to post their own advertisements").

To prevent improper ads or misuse of the site, Backpage.com has terms and rules for posting ads.  Users must affirmatively accept the Terms of Use to post ads in any category on the website.  *Cooper*, 939 F. Supp. 2d at 813-14.  The Terms of Use expressly prohibit the posting or viewing of any adult content or explicit material by anyone under 18 years of age.  *Id.*; Backpage.com Terms of Use ¶ 4(a)(ii), available at http://phoenix.backpage.com/ classifieds/TermsOfUse.  The Terms of Use prohibit advertising illegal activities and nude or lewd photos.  *See id.* ¶¶ 4(b), 5.  In particular, they specifically forbid: "[p]osting any solicitation directly or in 'coded' fashion for any illegal service exchanging sexual favors for money or other valuable consideration," (*id.* ¶ 4(c)); "[p]osting any material on the Site that exploits minors in any way" (*id.* ¶ 4(d)); "[p]osting any material on the Site that in any way constitutes or assists in human trafficking" (*id.* ¶ 4(e)); and posting "any ad for products or services, use or sale of which is prohibited by any law or regulation" (*id.* ¶ 5). Users are directed to "report any violations of these Terms to: abuse@backpage.com." *Id.*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

¶ 18; *see also Cooper*, 939 F. Supp. 2d at 814.

When a user attempts to post an ad in the Backpage.com dating section (or, while it was active, the Adult Services section), a notice appears again warning the user not to post ads about illegal activities, ads that exploit minors, or ads with other harmful content. Commerson Decl. at ¶ 3, Exh. A. The notice includes a link to the "Cybertipline"—an online tool operated by the National Center for Missing and Exploited Children ("NCMEC"), which helps law enforcement locate and rescue missing and exploited children. *United States v. Ackerman*, 831 F.3d 1292, 1294 (10th Cir. 2016). The site also contains numerous hyperlinks to a "User Safety" page with links to NCMEC and similar resources. *McKenna*, 881 F. Supp. 2d at 1266. Every ad contains a "Report Ad" button, and Backpage.com has an email address (abuse@backpage.com) for users to notify Backpage.com of any potentially inappropriate ads. *See Cooper*, 939 F. Supp. 2d at 814.

Backpage.com takes other measures to police user posts. *See* Compl. ¶¶ 54-56, 58-59, 65, 67 (screening). "In addition to user reports, Backpage.com monitors…ad[s] through automated and manual reviews." *Cooper*, 939 F. Supp. 2d at 814. By screening, Backpage.com blocks or removes posts and refers ads that may involve child exploitation to NCMEC. *See McKenna*, 881 F. Supp. 2d at 1266-67; *Cooper*, 939 F. Supp. 2d at 814. "Backpage.com also regularly works with local, state, and federal law enforcement officials by responding to subpoena requests, providing officials with Internet search tools, and re-moving posts and blocking users at the request of officials." 939 F. Supp. 2d at 814.

**B.    The Complaint.**

Plaintiff identifies itself as a shelter providing care to victims of domestic violence and claims that, because of Backpage, its mission has been "frustrated" as it has had to "divert" resources "from its mission" so it can care for trafficking victims. Compl. ¶¶ 33, 116-120. The Complaint alleges several unidentified clients of Plaintiff were harmed by third-party criminals. Compl. ¶¶ 33, 121-128. The Complaint also makes allegations about purported "co-conspirators" of Backpage, apparently based on third parties posting ads on Backpage.com—but those allegations appear to have nothing to do with Plaintiff or any of

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

its clients.  Compl. ¶¶ 129-133.  Plaintiff also alleges that Defendants somehow "knowingly conspired" with traffickers to make trafficking "more efficient" by, among things, operating other websites—BigCity.com and EvilEmpire.com—aggregating content from Backpage.com.  Compl. ¶¶ 90-97, 134.  The Complaint is replete with claims about Backpage's purported structure and editorial practices, but contains no plausible allegation that any of the Defendants created either the content of any ads posted concerning Plaintiff's clients or the content of any ads Backpage.com reposted on other websites (much less that any reposted ads pertained to Plaintiff's clients).  *See*, *e.g.*, Compl. ¶ 92 ("EvilEmpire organizes and reposts ad[s] posted on Backpage.").  Plaintiff alleges Defendants' website operation and acceptance of payment for ads constitute the RICO predicates of sex trafficking, exploitation, and money laundering.  Compl. ¶¶ 134-147.

Apart from conclusory allegations that one of the Backpage entities "owns, operates, designs, and controls the website," *id.* ¶ 12, that "Defendants actively participate in the creation of" ads it hosts, *id.* ¶ 6, that Backpage somehow is "on notice" traffickers may use the website, *id.* ¶ 40, and "took no precautions to prevent [ ] misconduct" by third-party traffickers, *id.* ¶ 173, Plaintiff alleges no specific facts to support a claim that any Defendants either created or developed the content of ads at www.backpage.com or—even more importantly—created or developed any content in the ads that allegedly involved Plaintiff's clients.  *See* Compl. ¶¶ 129-133.  The Complaint vaguely alleges Backpage "creates" and "develops" the content of certain "Sponsored Advertisements" by "enhanc[ing]" them, Compl. ¶¶ 50-52, but there is no claim that any ads concerning Plaintiff's clients were "sponsored," nor is there any attempt to connect other harms alleged in the Complaint to the ads concerning Plaintiff's clients.  *See id.*

Plaintiff's other allegations rely on Backpage's general editorial functions—as opposed to any claim that Backpage.com created the content of any particular ad.  *See, e.g.*, Compl. ¶¶ 53-69; *see also id.* ¶ 64 (Backpage.com uses filters to ban certain terms from ads posted by users); ¶ 65 (Backpage.com filters ads posted by "*traffickers* who attempt to advertise" a child under 18) (emphasis added); ¶ 173 ("*traffickers* used Backpage to post

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

advertisements") (emphasis added).  Plaintiff emphasizes Backpage.com's editing and deletion of offending terms from ads, but takes care to avoid acknowledging the ads are written and posted in the first place by third-party users of Backpage.com.  *See id.*

Plaintiff alleges six causes of action against all Defendants: 1) violation of RICO, § 1962(c); 2) violation of RICO, § 1962(a); 3) violation of RICO, § 1962(b); 4) violation of RICO, § 1964(d);[2] public nuisance, and negligence under Arizona state law.

## C.    Standard of Review.

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard" requires more than "a sheer possibility that a defendant has acted unlawfully" and is met only when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation and internal quotation marks omitted).  Further, Section 230 immunity should be resolved at the earliest phase of litigation because it provides "***immunity from suit*** rather than a mere defense to liability and it is effectively lost" if a case is improperly allowed to proceed.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quotation marks and citation omitted); *accord Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014) (Section 230 "immunity…should be resolved at an earlier stage of litigation" given law's purpose to protect "an open and robust internet").

## II.    ARGUMENT

## A.    Plaintiff Lacks Standing to Sue Backpage.

Article III of the U.S. Constitution requires Plaintiff to show 1) a concrete and particularized "injury in fact;" 2) that is "fairly ... trace[able] to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the

---

[2] 18 U.S.C. § 1964(d) creates no cause of action; rather, it involves estoppel after a criminal conviction—a circumstance not present here.  The substance of the allegations suggests Plaintiff intended to assert a cause of action for conspiracy under Section 1962(d).

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

court;" and 3) "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff cannot satisfy the requirements for standing.

*First*, Plaintiff cannot show Backpage caused Plaintiff's injury. The requisite element of causation is lacking when a plaintiff brings an action "to change the defendant's behavior **only as a means** to alter the conduct of a third party, not before the court, who is the direct source of the plaintiff's injury." *Fulani v. Brady*, 935 F.2d 1324, 1330 (D.C. Cir. 1991) (internal citation omitted); *see also Warth v. Seldin*, 422 U.S. 490, 506 (1975). In *Warth*, the Supreme Court held prospective town residents lacked standing to sue a town for alleged exclusionary zoning, because their difficulty finding housing depended on "the efforts and willingness of **third parties** to build low- and moderate-cost housing"; their claims thus "fail to support an actionable causal relationship between [the town's] zoning practices and petitioners' asserted injury." *Warth*, 422 U.S. at 506-507 (emphasis added). In *Fulani*, the court held that a presidential candidate lacked standing to sue the IRS to challenge the tax-exempt status of a debate commission, because her claimed injury—exclusion from the debate—arose from the *Commission's* decision, not the IRS' conduct in "facilitat[ing] the [commission] through tax-exempt funds[.]" *Fulani v. Brady*, 935 F.2d at 1330. *See also Pritikin v. Dep't of Energy*, 254 F.3d 791, 798 (9th Cir. 2001) (denying standing where injury is "manifestly the product of the independent action of a third party" (quoting *Duquesne Light Co. v. E.P.A.*, 166 F.3d 609, 613 (3d Cir. 1999)).

Here, the Complaint admits **third parties** created and posted the offending ads—not Defendants. *See, e.g.,* Compl. ¶¶ 54, 62, 65, 129-133; s*ee also Chi. Lawyers' Comm. for Civ. Rights Under Law, Inc. v. Craigslist, Inc.,* 519 F.3d 666, 671 (7th Cir. 2008) (Craigslist did not "cause" publication of notice by a user, reasoning that "[d]oubtless craigslist plays a causal role in the sense that no one could post a discriminatory ad if craigslist did not offer a forum. That is not, however, a useful definition of cause"); *see also Dart*, 665 F. Supp. 2d at 969. Plaintiff's lawsuit seeks to "end sex trafficking" by third parties, Compl. ¶ 128, by preventing what the Complaint characterizes as Backpage's "enablement" or "facilitation"

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of their conduct—*i.e.,* permitting these third parties to post ads on Backpage.com, *see* Compl. ¶¶ 129-133, 172-173. In other words, Plaintiff targets Backpage to alter the conduct of traffickers who directly caused injuries to Plaintiff's clients and allegedly injured Plaintiff. This does not confer standing.

Nor can there be a plausible allegation the claimed "increase in sex trafficking" is because of Backpage, as the "causal chain is too long and has too many weak links for a court to be able to find that the defendants' conduct harmed [Plaintiff]." *In re African-Am. Slave Descendants Litig.*, 471 F.3d 754, 759 (7th Cir. 2006). There, the Seventh Circuit held descendants of slaves lacked standing to sue companies involved in American slavery for injuries caused by their alleged facilitation of slavery because, among other things, "it is impossible to determine how much, if any, less slavery there would have been had the defendants not done business with slaveowners, [or] what effect a diminution of slavery would have had on bequests by ancestors of the class members." *Id.* at 760. Similarly, here, Plaintiff's conclusory allegation that Backpage's alleged allowance of postings by third parties "caused the number of trafficking victims to increase" in an unspecified amount, causing Plaintiff to expend resources, *see* Compl. ¶ 11, is too attenuated to support standing. Trafficking existed long before Backpage.com began hosting online classified ads and trafficking will exist if Backpage.com no longer hosts classified ads. *See* Commerson Decl. at ¶ 4, Exh. B ("Sojourner Center … has been providing services to people who have experienced human trafficking throughout its nearly 40 years in operation"); s*ee also, e.g.*, *Cooper*, 939 F. Supp. 2d at 840 (when one site is shut down ads merely migrate elsewhere).

*Second*, and for similar reasons, the relief sought by the Complaint will not redress the harm suffered by Plaintiff and its clients, because traffickers, not Backpage.com, cause that harm. *See* Compl. ¶¶ 121-133; *Fulani*, 935 F.3d at 1331; *see also ASARCO Inc. v. Kadish,* 490 U.S. 605, 614 (1989) (standing denied where redressability uncertain)*; Bowker v. Morton*, 541 F.2d 1347, 1350 (9th Cir. 1976) ("the solution to plaintiffs' problem depends upon decisions and actions by third parties who are not before the court and who could not properly be the subject of a decree directing the result sought by plaintiffs");

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Levine v. Vilsack*, 587 F.3d 986, 995 (9th Cir. 2009); *see also Cooper*, 939 F. Supp. 2d at 840 (law restricting advertising platform less effective than holding liable "those who post ad[s] for sex acts with minors"). Plaintiff's pursuit of Backpage may be *counterproductive* by making it harder for law enforcement to ferret out illegal trafficking, and thus is likely to *hamper* redress of the injuries caused by trafficking. *See, e.g.*, Mark Latonero, *The Rise of Mobile and the Diffusion of Technology-Facilitated Trafficking*, Nov. 2012 (USC Annenberg Ctr. on Commc'n Leadership & Policy Research Series on Tech. & Human Trafficking), at 30 ("online classified ad sites like Backpage ... are visible, accessible, and well known to law enforcement staff," and this helps investigations); *id.* at 26.

*Third*, while an organization suing on its own behalf can establish an injury when it suffers "both a diversion of its resources and a frustration of its mission" as a result of the defendant's conduct, it "cannot manufacture the injury by … choosing to spend money fixing a problem that otherwise would not affect the organization." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (citing *Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994) (fair housing group's choice to divert resources from one program to another in response to defendant's actions did not constitute cognizable injury)).

Here, Plaintiff identifies its mission to "create a world free from domestic violence," Compl. ¶ 116, and claims an "increase in sex trafficking has frustrated this mission" because Plaintiff is required to "divert scarce resources from its mission to caring for trafficking victims" by, among other things, performing "a holistic assessment of its organization" to "adjust[ ]" "its services and training" so as to "care for trafficking victims as compared to victims of domestic violence." Compl. ¶¶ 117-118, 170. But Plaintiff's claimed institutional "harm is self-inflicted; it results not from any actions taken by [Defendants], but rather from [Plaintiff's] own … choice[ ]" to "adjust" its mission from a focus on domestic violence to care for trafficking victims. *BMC Mktg. Corp.*, 28 F.3d at 1276. Plaintiff cannot choose to "adjust" its mission, and then cast its choice as an "injury" caused by Backpage. Thus, Plaintiff lacks standing to pursue its claims.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**B.** **Section 230 Bars Plaintiff's Claims.**

**1.** **Section 230 Was Designed to Promote Free Speech Online.**

Section 230 is a statutory embodiment of First Amendment principles for online speech. Congress designed Section 230 "to encourage the unfettered and unregulated development of free speech on the Internet," *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003), "to promote the development of e-commerce," *id.*, and to encourage online providers to "self-police" for potentially harmful or offensive material by providing immunity for such efforts, *id.* at 1028. Congress sought to eliminate the "'obvious chilling effect'" that imposing liability on online providers would cause, "'given the volume of material communicated through [the Internet], the difficulty of separating lawful from unlawful speech, and the relative lack of incentives to protect lawful speech.'" *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-19 (1st Cir. 2007) (citation omitted). "[T]he protections afforded by the First Amendment were the motivating factors behind" Section 230. *People v. Ferrer*, 2016 WL 7237305, at *3 (Cal. Super. Dec. 9, 2016); *Batzel*, 333 F.3d at 1028.

Section 230(c)(1) mandates that "[n]o provider…of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Additionally, Section 230 expressly preempts all federal civil claims and all state-law claims, whether civil or criminal, effectively barring any civil claims against an online publisher based on third-party content it publishes. *Peters v. LifeLock Inc.*, 2014 WL 12544495, at *3 (D. Ariz. Sept. 19, 2014).

**2.** **The Three-Part Test for Section 230 Immunity is Satisfied Here.**

Section 230 immunity applies expansively, *Lycos*, 478 F.3d at 419, and "close cases ... must be resolved in favor of immunity." *Jones*, 755 F.3d at 408 (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1174 (9th Cir. 2008) (*en banc*)). Immunity must be granted where "(1) [defendant] is a provider or user of

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

an interactive computer service, (2) the claim is based on information provided by another information content provider; and (3) the claim would treat [defendant] as the publisher or speaker of that information." *Doe No. 1 v. Backpage.com*, 817 F.3d 12 (1st Cir. 2016) (quoting *Lycos*, 478 F.3d at 418); *accord American Income Life Ins. Co. v. Google, Inc.,* 2014 WL 4452679 at *7 (N.D. Ala. Sept. 8, 2014). At least six courts have held Section 230 immunizes Backpage from liability. *Doe No. 1*, 104 F. Supp. 3d at 157-58, *aff'd*, 817 F.3d at 20-22; *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 at *8 (D. N.J. Aug. 20, 2013); *Cooper*, 939 F. Supp. 2d at 823-25; *McKenna,* 881 F. Supp. 2d at 1271-75; *M.A.*, 809 F. Supp. 2d at 1050-54; *Ferrer*, 2016 WL 7237305.

The same conclusion holds here. *First*, "Backpage.com is the quintessential publisher contemplated by [Section 230.]" *Cooper*, 939 F. Supp. 2d at 823; *see also Ferrer*, 2016 WL 7237305, at *6. *Second*, Plaintiff bases its claims on ads about its clients that third-party traffickers allegedly "listed" and "posted" on Backpage.com. *See* Compl. ¶ 130; *see also id.* ¶¶ 129, 131 (third-party trafficker "used Backpage.com"); ¶ 132 (third-party traffickers made promises of support to Plaintiff's client "before *advertising her* for sexual services on Backpage") (emphasis added). Such postings are the essence of "information provided by another content provider." *E.g.*, *Doe No. 1*, 817 F.3d at 17-21; *M.A.*, 809 F. Supp. 2d at 1050-53. *Third*, Plaintiff's claims treat Backpage.com "as the publisher or speaker" of the ads, as the factual allegations take Backpage to task for decisions about "whether to publish, withdraw, postpone or alter content," traditional editorial functions Section 230 protects. *Jones*, 755 F.3d at 407 (citation omitted); *Roommates.com*, 521 F.3d at 1170-71 ("deciding whether to exclude material that third parties seek to post online is perforce immune."); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967-68 (N.D. Ill. 2009).

### 3. Plaintiffs Cannot Evade Section 230 Through Artful Pleading.

#### a. Backpage's Editorial Choices Are Protected by Section 230.

Plaintiff cannot evade Section 230 by characterizing Backpage.com as "providing content, authoring text, deleting text, and editing information." *See, e.g.*, Compl. ¶¶ 6, 50-57. In particular, Plaintiff points to Backpage.com's alleged practices of: (1) "review[ing]"

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

and "edit[ing]" ads through its filter and moderation processes, Compl. ¶¶ 53-57; and (2) "enhanc[ing]" "Sponsored Advertisements", Compl. ¶¶ 50-52. Neither of these editorial practices, however, removes immunity under Section 230, because Backpage.com is not the originator or creator of the allegedly actionable content. The Complaint's repetitive, conclusory allegations that Backpage.com "create[s]," or "author[s]" content based on general features of its website cannot suffice to evade Section 230, because a "plausible" claim that a website created content appearing to come from a user requires "specific alleg[ations]" of fact showing the defendant "created the content of the statements" at issue (the ads concerning Plaintiff's clients). *Kimzey*, 836 F.3d at 1268-1269. Here, the conclusory recitations of Backpage.com's "authorship" are belied by averments underscoring that the content of the ads concerning Plaintiff's clients was provided by *third-party users*. Compl. ¶ 65 (Backpage.com includes a "filter" that prevents posting of ads by "*traffickers who attempt to advertise* that the child being sold is under 18 years of age" (emphasis added)); *id.* ¶ 94 ("EvilEmpire organizes ad[s] based on the *trafficker posting them*" (emphasis added)). Most importantly, the Complaint does not allege the specific ads concerning Plaintiff's clients were created by Backpage.com, nor does it connect Backpage.com's purported editorial practices and website structure to those ads. *See* Compl. ¶¶ 121-128. This telling omission cannot be cured by amendment, because, even if the Complaint claimed Backpage moderated, filtered, reposted, or otherwise edited specific ads about Plaintiff's clients, Section 230 immunity still would apply.

Where "third-party content … appears as an essential component of each and all" of Plaintiff's claims—as it does here—the claims are barred by Section 230. *Doe No. 1*, 817 F.3d at 22. There, the plaintiff similarly alleged Backpage had deliberately structured its website, selectively removed content, permitted anonymous posting, stripped metadata from photos, and otherwise tailored its posting requirements to facilitate sex trafficking in order to maximize profits. The district court found the alleged website features "amount to neither affirmative participation in an illegal venture nor active web content creation," and noted "courts have repeatedly rejected this 'entire website' theory as inconsistent with the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  substance and policy of section 230." *Doe No. 1*, 104 F. Supp. 3d at 152, 156-157, 162.

2  The First Circuit affirmed, holding "Backpage's decisions about how to treat [third-party]

3  postings" were "***editorial choices that fall within the purview of traditional publisher***

4  ***functions.***" *Doe No. 1*, 817 F.3d at 21 (emphasis added).

5    Likewise, in *M.A.*, the court rejected the plaintiff's arguments challenging general

6  aspects of the site's "construct and operation," *M.A.*, 809 F. Supp. 2d at 1050, holding a

7  website is "immune under § 230 unless it 'created the offending ads,'" and "however

8  horrific the consequences to M.A … the ads were created by [the pimp]." *Id.* at 1051. It

9  was "immaterial" that Backpage allegedly "elicit[ed] online content for profit"; what

10  matters is whether the website or third parties create the content at issue. *Id.* at 1050.

11  *Compare* Compl. ¶¶ 1, 141. Where a plaintiff attempts to impose liability on a service

12  provider based on allegations it "profited from the activity," such complaints must be

13  dismissed under Section 230. *E.g.*, *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752 (Tex.

14  App. Beaumont 2015). That is so even if it is alleged those posting content engaged in such

15  illegal activity as child pornography, or obscenity. *Id.* at 760 (statute's plain language

16  "contemplates [] immunity from civil suit …even when the posted content is illegal…or

17  otherwise may form the basis of a criminal prosecution.")

18    Plaintiff fares no better in trying to paint Backpage.com as a content creator for

19  certain "Sponsored Advertisements." *See* Compl. ¶¶ 50-52 (alleging "Backpage creates,

20  develops, and posts illegal content … in the 'Sponsored Ads' part of the 'Adult Services'

21  section of its website.") Plaintiff does not allege its clients were the subject of Sponsored

22  Ads. Moreover, the suggestion that Backpage.com itself is the originator and creator of

23  Sponsored Ads is refuted by Plaintiff's own allegations, stating the alleged content creation

24  actually involves nothing more than "enhanc[ing]" user-submitted ads by "rewriting" and

25  "reorganizing" those ads (including "adding" and "summarizing" the submitted text)—in

26  other words, editing. Compl. ¶ 50. The Complaint characterizes Backpage.com as

27  "writ[ing] and design[ing] the text and layout of the advertisement," but the same sentence

28  makes clear it is the ***trafficker*** who "submits information to Backpage." Compl. ¶ 51.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Again, this simple fact undercuts the unfounded characterizations on which Plaintiff premises its claims.  *See Nemet*, 951 F.3d at 255 ("legal conclusions, elements of a cause of action, and bare assertions" do not prevent dismissal) (citing *Iqbal*, 556 U.S. at 678).

### b.    Notice Liability Cannot Defeat Section 230.

Nor can Plaintiff evade Section 230 by alleging Defendants knew (or should have known) third parties may misuse its website.  *See, e.g.*, Compl. ¶¶ 40, 97, 135, 137, 173.  First, these general claims of "knowledge" invoke traditional editorial functions that Section 230 immunizes from liability as explained above.  *See supra* I.A.1.a.  Second, Plaintiff's allegations of knowledge are pure conclusion, with no supporting facts tying Backpage's purported knowledge to the ads concerning Plaintiff's clients.  The Complaint fails to explain *how*, from among Backpage.com's millions of users and ads, Backpage may have acquired knowledge about the ads concerning Plaintiff's clients.  All allegations of "knowledge," rather, are about Backpage's alleged practices as a general matter.  *See, e.g.,* Compl. ¶¶ 39-40.  The Complaint "does not contain facts alleging how [Backpage] received notice of [the alleged 'co-conspirators'] conduct against [Plaintiff's clients]."  *Davis v. Motiva Enterprises, L.L.C.*, 2015 WL 1535694, at *4 (Tx. App. Beaumont Apr. 2, 2015).

Moreover, "[i]t is … well established that notice of the unlawful nature of the information provided is not enough to make it the service provider's own speech." *Lycos*, 478 F.3d at 420.  *See Bates*, 2006 WL 3813758, at *3, *6, *18 (immunity applied even where it was alleged Yahoo! "knew or had reason to know about the illegal nature" of the activities of its users).  Any "contention that [Backpage] is not entitled to immunity from plaintiff['s] state law claims" based simply on "the alleged…unlawful nature of the material posted on the website [] is without merit." *GoDaddy*, 429 S.W.3d at 760-61.  Indeed, even *actual* knowledge of illegal content posted on its site does not make an online provider liable if it fails to delete the content.  *See, e.g., Zeran*, 129 F.3d at 331-332. That is because "[l]iability upon notice would defeat the dual purposes advanced by § 230." *Zeran, 129 F. 3d.* at 333.  Thus, courts reject the same argument Plaintiff makes here—that Backpage should be denied immunity because it allegedly knows or should know "of minors being

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

sexually trafficked on its website." *M.A.*, 809 F. Supp. 2d at 1050-51. *Compare* Compl. ¶ 173 ("Defendants took no precautions to prevent [traffickers'] misconduct").

Plaintiff offers only conclusory, unfounded allegations of "conspiracy" in its attempt to connect particular ads or knowledge by Backpage to alleged unlawful conduct. Plaintiff refers to five alleged "co-conspirators"—third-party traffickers who allegedly posted ads on Backpage.com—but conspicuously fails to allege any facts showing Backpage created the content of those ads, or that these ads have anything to do with Plaintiff or its clients. *See* Compl. ¶ 129-133. Instead, Plaintiff claims Backpage.com creates "efficiencies" rendering Backpage a "co-conspirator" with any user—trafficker or otherwise—who posts an ad. Compl. ¶ 134 (citing *id.* ¶¶ 103-113). These "efficiencies" refer merely to Backpage.com's general editorial practices, *see id.*, and the Complaint does not allege Backpage.com did *anything* different or in particular to the ads concerning Plaintiff's clients.

This is fatal to Plaintiff's attempt to plead around Section 230, as the "the immunity analysis turns on who was responsible for *the specific harmful material at issue*, not on whether the service provider was responsible for the general features and mechanisms of the service or other content…that might have also appeared on the service." *Bates*, 2006 WL 3813758, at *17 (citing *Carafano v. Metrosplash.com*, 339 F.3d 1119 (9th Cir. 2003). Specifically with respect to Backpage, the *M.A.* court agreed the relevant question was whether Backpage developed "the specific content that was the source of the alleged liability" and held Backpage was not liable for "content and consequences of the ads posted by [the pimp]." 809 F. Supp. 2d at 1051 (citation omitted). The same is true here.

### c. Allegations of Conspiracy Cannot Overcome Section 230.

Nor can Plaintiff evade Section 230 by recasting claims under "encouragement" or "conspiracy" theories, or by alleging Backpage "financially benefited" from trafficking by operating a website containing information posted by others. *See, e.g.*, Compl. ¶¶ 129-132, 152(e). To be clear, Backpage works to *prevent* misuse of the website and to *combat* sex trafficking. But even if the allegations were true, they would not salvage defective claims. Such attempts to impose liability "*necessarily* treat the website as a publisher or

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

speaker of content provided by third parties and, thus, are precluded by section 230(c)(1)." *Doe No. 1*, 817 F.3d at 22 (emphasis added). Further, the practices Plaintiff claims "facilitate" or "assist" traffickers are general features of Backpage.com not specifically tied to any ads concerning Plaintiff's clients. *See* Compl. ¶¶ 121-128.

In any event, websites cannot be sued on an "encouragement" theory because that would "eclips[e] the immunity from publisher-liability that Congress established." *Jones*, 755 F.3d at 414. In many cases "a clever lawyer could argue that ***something*** the website operator did encouraged the illegality," but such cases "must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented—to the illegality of third parties." *Roommates.com*, 521 F.3d at 1174. In *People v Ferrer*, for example, the court dismissed charges against some of the defendants sued here, rejecting the knowing encouragement theory. 2016 WL 7237305 at *7; *see also, e.g.*, *Doe v. AOL*, 783 So.2d 1010, 1017 (Fla. 2001) (AOL immune from claims it knowingly hosted chat rooms where users violated child pornography laws).

The same applies to allegations that Backpage somehow "educates" or "coach[es]" traffickers on how to draft ads to avoid detection by law enforcement. *See, e.g.*, Compl. ¶¶ 61-69. This is pure speculation, contradicted by Backpage's well-documented work to assist law enforcement. *See* Section I.A, *supra*. And Plaintiff's allegation that Backpage "takes an active role in creating the content of…advertisements" by "educat[ing] traffickers on the best terms to use," *id.* ¶ 61, merely characterizes in sinister language the fact that Backpage.com informs its users of its posting and moderation policies (which prohibit posts made by minors and posts for illegal activities) and generally does not ban or report a user simply for using a banned term or entering a wrong age. *See also id.* ¶¶ 58, 64, 65, 67. Nor can Plaintiff evade Section 230 by characterizing as "bad faith" design "features that are part and parcel of the overall design and operation of the website (such as the lack of phone number verification, the rules about whether a person may post after attempting to enter a forbidden term, and the procedure for uploading photographs)" because "[f]eatures such as

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

these, which reflect choices about what content can appear on the website and in what form, are editorial choices" protected by Section 230. *Doe No. 1*, 817 F.3d at 21; *see* Compl. ¶¶ 76-84. Ultimately, the Complaint's allegations of "content creation," "bad faith" website design, and "encouragement" are precisely the sort of allegations the court in *Doe No. 1* held could not overcome Section 230 immunity. *Id.* ¶¶ 16-17, 20-21. Any other result would have the perverse effect of discouraging the self-policing Section 230 was specifically enacted to encourage. *Davis*, 2015 WL 1535694, at *4 (Section 230 "allows an interactive computer service provider to 'establish standards of decency without risking liability for doing so'") (citation omitted); *see also Batzel*, 333 F.3d at 1027-28.

## C. Plaintiff Also Fails to State a Claim on Its Various Causes of Action.

### 1. The RICO Claim Fails.

Plaintiff characterizes Backpage.com and its publication of advertisements submitted by third parties as an alleged "Sex Trafficking Enterprise," *see* Compl. ¶149, in violation of RICO, § 1962 subsection (a) (investing income from racketeering into an enterprise); (b) (using a pattern of racketeering to maintain an enterprise); (c) (participating in an enterprise through racketeering); and (d) (conspiring to violate the above subsections).

These claims are barred by Section 230 because they are all founded on publication of content submitted by third parties. In *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, licensed locksmiths made claims—similar to those here—that Google and other directory websites are liable under RICO because they "facilitate" false advertising by unlicensed locksmiths who provided content to the website. 88 F. Supp. 3d 543, 546 (E.D. Va. 2015), *aff'd,* 624 F. App'x 81 (4th Cir. 2015). The court easily dismissed the plaintiff's RICO claims, reiterating the well-established principle that "[b]y providing a platform for third-party users to publish information, Defendants have allowed locksmiths access to a portal to post information and the speech is not properly attributable to them. Absent an exception, Defendants are immune under Section 230 as the publishing website, despite their knowledge of the false information." *Id.* at 547; *see also* Sections I.B, II.B.2, *supra*.

In addition to being barred by Section 230, the elements of a RICO claim are not

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

adequately pled.  To state a cause of action under the pertinent sections of RICO, Plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), and must also show that violation of RICO caused a cognizable injury to its "business or property" under 18 U.S.C. § 1964(c), *Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001).  The Complaint's conclusory and hyperbolic allegations fail to establish these basic elements of a RICO claim, and the claims therefore must be dismissed.

### a.  There Is No "Pattern of Racketeering Activity."

Most fatal to Plaintiff's claims is that the Complaint fails to plausibly allege Backpage engaged in illegal "racketeering activity" at all.  Where alleged RICO predicate acts are "part and parcel of a single, otherwise lawful transaction," a "pattern of racketeering activity" has not been shown.  *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996) (dismissing RICO claim because "[t]he alleged acts were all part of a single, lawful endeavor—namely the production of television news reports concerning a particular subject").

Here, the Complaint's allegations, stripped of characterization and conclusory allegations of conspiracy, show that all of Backpage's alleged conduct is "part and parcel of a … lawful transaction"—Backpage.com's editorial decisions and publication of third-party content on a website.  The Complaint makes clear the alleged predicate acts of trafficking, exploitation, coercion and enticement, and money laundering are all founded on the allegedly wrongful conduct or content provided by third party sex traffickers, *see* Compl. ¶¶ 129-147.  The Complaint's conclusory allegations of "conspiracy" between Backpage and third-party traffickers who posted ads to Backpage.com, *see id.* ¶¶ 129-133, do not make Backpage liable for third parties' conduct, *see, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007) ("conclusory allegation" will not save claim founded on conspiracy from dismissal); *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 842 (9th Cir. 2014) (conclusory allegations of conspiracy with non-parties insufficient to support civil RICO claims founded on alleged extortion).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In particular, the Complaint does not adequately plead Backpage's commission of the predicate offenses of sex trafficking (18 U.S.C. § 1591), *see* Compl. ¶ 135, or coercion and enticement (18 U.S.C. § 2422), *see* Compl. ¶¶ 141-142, because any trafficking or coercion or enticement of prostitution was committed by third parties whose only link to Backpage is the allegation they posted ads on Backpage.com, *see* Compl. ¶¶ 129-133. Generalized and conclusory allegations that Backpage knew traffickers posted on the site does not make Backpage liable for trafficking committed by others. *See, e.g., People v. Ferrer*, 2016 WL 7237305, at *7. That is especially true here, where the Complaint includes no allegation that, out of the millions of posts and users on Backpage.com, Backpage specifically knew of the particular ads concerning Plaintiff's clients, or interacted with the third parties who trafficked Plaintiff's clients. *See* Complaint ¶¶ 121-133. Rather, Plaintiff's allegations of knowledge are apparently founded on Backpage.com's editorial decisions to remove certain objectionable content from postings, *see* Compl. ¶ 62; the way it structures its website, and, in particular, the fallacious inferential leap that because multiple ages (of majority) may be listed for a given poster, Backpage somehow knows the poster is a minor, *see* Compl. ¶ 97; and the unsupportable proposition that, because Backpage has been given "notice" by certain elected officials that some postings on the site may be connected to trafficking or prostitution, it is charged with knowledge as to every specific instance in which an advertisement is allegedly connected to trafficking or prostitution, *see* Compl. ¶ 40. These conclusory and illogical allegations of notice do not suffice to create liability. *See, e.g., People v. Ferrer*, 2016 WL 7237305, at *7.

Nor does the Complaint plead that Backpage violated 18 U.S.C. § 2251 (sexual exploitation of children), Compl. ¶¶ 136-138, or 18 U.S.C. § 2252 (material involving the sexual exploitation of minors), Compl. ¶¶ 139-140, given that the alleged exploitation was done—and any depictions posted—by third-party users. *See AOL*, 783 So.2d at 1017. Moreover, there is no allegation that any of the content concerning Plaintiff's clients on Backpage.com actually contained or involved a "visual depiction" of a minor engaging in sexually explicit conduct. *See* Compl. ¶ 140. Rather, the only specific allegations of visual

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

depictions are that unidentified third-party traffickers posted an undescribed "picture" of one of Plaintiff's unnamed clients, with no allegation about the client's age at the time the picture allegedly was taken, *see* Compl. ¶ 122, and another alleged trafficker posted pictures of a minor, apparently not a client of Plaintiff, "in revealing clothing," *see* Compl. ¶ 130. And, again, Plaintiff's conclusory and generalized allegations of Backpage's "knowledge" fail to plead *facts* showing Backpage **knew** any ad involved or offered sexually explicit conduct, or depictions of such conduct, by a minor, *see* Compl. ¶¶ 136-137.

Finally, because Backpage's conduct—online publication—was lawful, Plaintiffs cannot plead that Backpage engaged in money laundering under 18 U.S.C. § 1956. *See, e.g., United States v. Sanders*, 929 F.2d 1466, 1472 (10th Cir. 1991) (rejecting "argument that the money laundering statute should be interpreted to broadly encompass all transactions, however ordinary on their face, which involve the proceeds of unlawful activity"), *abrogated on other grounds* by *Salinas v. United States*, 522 U.S. 52 (1997); *see* Compl. ¶¶ 143-147. As discussed throughout this Motion, Plaintiff's conclusory and generalized allegations that Backpage knew some users may be engaged in trafficking do not mean it knew the fee for any particular ad involved the proceeds of unlawful activity. *See* 18 U.S.C. § 1956(a)(1). Rather, "the statute requires actual subjective knowledge. [A defendant] cannot be convicted on what she objectively should have known … or because she was negligent in failing to recognize what was occurring or even because she was reckless or foolish in failing to recognize what was occurring." *United States v. Campbell*, 977 F.2d 854, 857 (4th Cir. 1992) (actual knowledge or willful blindness found where nature of large under-the-table real-estate transaction was on its face "fraudulent"). Nor does the Complaint offer anything more than speculation or innuendo that any transaction "in fact" involved proceeds of unlawful activity. *See* 18 U.S.C. § 1956(a)(1). Backpage.com's routine acceptance of fees for ads cannot be characterized as intended to promote unlawful activity, *see* Compl. ¶ 143, where (1) the *only factual* claim of intent is based on the claim Backpage was "on notice" that some unspecified users engaged in trafficking, *see id.* ¶ 40; and (2) the Complaint repeatedly acknowledges Backpage.com

*banned* content advertising illegal or underage transactions from its site, *id*. ¶¶ 58, 65. Allegations of intent here boil down to a suggestion that, having received vague "notice" of potential trafficking, Backpage didn't take Plaintiff's preferred "precautions" to stop it —a claim that, even if true, at most would sound in *negligence*, not intent. *Id*. ¶¶ 40, 173. Finally, there can be no plausible allegation that a website's ordinary acceptance of modest advertising fees from customers operates to "conceal" the funds' source, or avoid a transaction reporting requirement—let alone Backpage knew customers' routine payments were so intended. *See* 18 U.S.C. § 1956(a)(1)(B)(i)-(ii); Compl. ¶ 144.

Finally, to establish a "pattern" of racketeering activity, a plaintiff "must show the racketeering predicates are related, and they amount to or pose a threat of *continued criminal activity*." *H.J. Inc. v. Northwestern Bell Telephone, Co*. 492 U.S. 229, 239 (1989) (emphasis added). First, there is no pattern, as the conduct alleged against Backpage amounts to a "single, lawful endeavor"—running a website. *See Sawyer*, 90 F.3d at 123. Second, putting aside the legality of Backpage's conduct, there is no "continuity" given as the Complaint admits Backpage.com closed its Adult Services section. Compl. ¶ 87.

### b. Plaintiff Lacks Standing As A Remote Party Whose Claimed Injury Was Not Proximately Caused by Backpage.

Plaintiff does not have standing to bring the RICO claim because the Complaint alleges activities that would have, at most, harmed *third parties*—victims of trafficking— not Plaintiff. Any claimed injury to Plaintiff based on its treatment of such victims was not proximately caused by Backpage because of the lack of "direct relationship between the injury and the alleged wrongdoing." *Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001).

A plaintiff has standing under RICO only if it has been "injured in [its] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Flowing from this provision is the "requirement that the alleged violations of the law be the 'proximate cause' of the injury suffered" by a plaintiff to have standing to sue. *Wash. Pub.*, 241 F.3d at 705. Courts consistently hold that "a plaintiff who complained of harm flowing merely from the

misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 932 (3d Cir. 1999) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).  The rationale for this rule is "(1) the more indirect the injury, 'the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to [defendant's wrongdoing], as distinct from other, independent, factors'; (2) allowing recovery by indirectly injured parties would require complicated rules for apportioning damages; and (3) direct victims could generally be counted on to vindicate the policies underlying the relevant law." *Wash. Pub.*, 241 F.3d at 705 (quoting *Holmes*, 503 U.S. at 268).  Moreover, the "potential for duplicative recoveries created by granting standing to attenuated and indirect parties weighs against finding proximate causation." *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 401 (2d Cir. 1994) (holding shareholders did not have standing to sue officers and directors for alleged RICO violations since the shareholders were "not the intended targets of the RICO violations" and only the "target and victim of the scheme" had standing to sue).

Here, similarly, there is a "fundamental defect" with Plaintiff's claim: Plaintiff is "attempting to recover for harm that is derivative of personal injuries visited upon [its clients]." *See Wash. Pub.*, 241 F.3d at 705.  The injuries that Plaintiff's clients allegedly suffered, Compl. ¶¶ 129-133, would not be cognizable under RICO because they are not injuries to "business or property." *See, e.g.*, *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785–86 (9th Cir. 1992) ("it is clear that personal injuries are not compensable under RICO," collecting cases), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897, 899 (9th Cir. 2005); *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992) (forced exaction of sexual services not cognizable under RICO where services are illegal under state law).  Plaintiff cannot convert clients' non-cognizable injuries into grounds for Plaintiff's suit by claiming Plaintiff "diverted and drained" its resources to provide services to its clients.  Compl. ¶ 120; *see also id.* ¶¶ 114-119.  Indeed, the Ninth Circuit has repeatedly rejected attempts by hospitals and other service providers to premise RICO standing on costs spent to treat

1  others.  *See, e.g.*, *Wash. Pub.*, 241 F.3d at 705 (hospital districts lacked RICO standing to

2  sue alleged source of injury to patients).  For the same reason, Plaintiff here lacks standing.

3    As discussed above, Backpage was not the cause in fact of any injuries suffered by

4  Plaintiff's clients, *see Chicago Lawyers' Comm.*, 519 F.3d at 671 (not a "useful definition

5  of cause" to ascribe users' activity to website); based on settled RICO principles, neither is

6  it the proximate cause of any injuries Plaintiff suffered.  The elements of proximate and in-

7  fact causation under RICO are therefore absent, and the RICO claims should be dismissed.

8    ### c.    Plaintiff Does Not State A Claim For RICO Conspiracy.

9    Plaintiff's Complaint is premised on conclusory allegations of conspiracy between

10  Backpage and third-party traffickers, but no allegation can be made there was any actual

11  agreement between Backpage and any trafficker—let alone the particular traffickers who

12  harmed Plaintiff's clients.  Because there was no agreement, not only is Backpage not

13  responsible for the traffickers' action, but Plaintiff's RICO conspiracy claim fails.

14    The "touchstone of liability under § 1962(d) is an *agreement* to participate in an

15  endeavor which, if completed, would constitute a violation of the substantive statute."

16  *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 731–33 (7th Cir. 1998) *holding modified by*

17  *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000) (emphasis added);

18  *see also Salinas v. United States*, 522 U.S. 52, 63 (1997) ("The partners in the criminal plan

19  must agree to pursue the same criminal objective").  Allegations of conspiracy under

20  Section 1962(d) must be dismissed where there is no allegation of "either a specific

21  agreement by these defendants to participate in the affairs of the enterprise or an agreement

22  to the commission of two specific predicate acts."  *Goren*, 156 F.3d at 732.  It is also "well

23  established that a complaint may be dismissed if it contains only conclusory, vague and

24  general allegations of a conspiracy."  *Id.* at 733; *see also Twombly*, 550 U.S. at 557, 564.

25    Here, the Complaint does not plead any facts showing agreement between Backpage

26  and any of the alleged conspirators—nor could it.  *See* Compl. ¶¶ 97-102, 129-134, 165.

27  Instead, the Complaint attempts to manufacture a conspiracy from conclusion and

28  conjecture, positing that "aggregation features on BigCity and EvilEmpire" somehow

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"make it clear that Defendants know that they are conspiring with traffickers"—apparently because "sometimes" individuals are "listed multiple times as different ages." *Id.* 97. This conclusory innuendo falls far short of plausible allegations of agreement, and the Section 1962(d) claim must be dismissed for this independent reason.

### 2. The Negligence Claim Fails.

Plaintiff's negligence claim is premised on a contradiction: on one hand, Plaintiff insists Backpage.com must take precautions to prevent the posting of "advertisements selling trafficked adults and children," Compl. ¶ 173; on the other hand, Plaintiff castigates Backpage.com for imposing posting guidelines, moderation, and filters that remove the very terms that could advertise illegal services or conduct, *Id.* ¶¶ 53-60, 65-66.

Putting aside the Catch-22 created by these allegations—as well as Section 230 immunity—the negligence claim fails because the alleged harm was caused by third-party traffickers and Backpage had "no duty to prevent a third person from causing physical harm to another." *See, e.g., Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 472–73 (Ct. App. 2014) (organization did not owe a duty to individual assaulted by third parties even though it sponsored event where plaintiff was injured and advertised location on its website). Even if Backpage had some duty to individuals depicted in ads—and it does not—it certainly owes no duty to Plaintiff, a shelter with no relationship to Backpage. Moreover, the actions of third-party criminals were intervening causes breaking the claimed chain of causation between Backpage and Plaintiff's clients—and breaks the even more attenuated claimed chain of causation between Backpage and Plaintiff. *See, e.g., Hebert v. Club 37 Bar*, 145 Ariz. 351, 352 (Ct. App. 1984) (tavern owner not liable for negligence where drunk patron's criminal act was intervening cause of victim's murder, even though owner knew patron was intoxicated and kept gun in his car). The claimed organizational harm to Plaintiff's mission is even more causally remote. The negligence claim thus fails.

### 3. The Nuisance Claim Fails.

*First*, courts do not hesitate to dismiss public nuisance claims arising from a website's facilitation of posting of content by third parties. *See, e.g., Dart*, 665 F. Supp. 2d

---

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

24

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

at 968 (nuisance claim alleging website facilitated prostitution); *Kathleen R. v. City of Livermore,* 87 Cal.App.4th 684 (2001) (nuisance claim arising from minor patron's receipt of pornography through computers in city library); *Witkoff v. Topix, LLC,* 2015 WL 5297912, at *2 (Cal. Ct. App. Sept. 10, 2015) (unpublished), *as modified* (Sept. 18, 2015) (nuisance and wrongful-death claims against website for operating webpages where users could post information concerning availability of controlled narcotics).

*Second*, even if Section 230 did not bar the nuisance claim, the Complaint does not plead that Backpage—as opposed to certain users—intentionally caused a significant interference with public rights. Backpage was not the proximate or factual cause of Plaintiff's or its' clients' injuries. The Complaint instead attempts to hold Backpage was "on notice" some users might engage in trafficking. *See* Compl. ¶ 40. "[G]eneral warnings," however, cannot establish Backpage *intentionally* caused a public nuisance. *Yslava v. Hughes Aircraft Co.*, 1998 WL 35298580, at *16 (D. Ariz. June 29, 1998).

*Finally*, putting aside the above defenses, Plaintiff does not have standing to bring a nuisance claim founded on an interference that purportedly affects a common wrong to the public at large. *See* Compl. ¶ 169 (alleging that the interference affects "a large number of children and vulnerable adults" and "the surrounding communities as well"). Standing to bring a nuisance claim that involves an interference with the public at large is restricted in order to, first, "relieve defendants and the courts of the multiple actions that might follow if every member of the public were allowed to sue for a common wrong. Second, it was believed that a harm which affected all members of the public equally should be handled by public officials." *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 148 Ariz. 1, 5 (1985). For the above reasons, the nuisance claim should be dismissed.

## III. CONCLUSION

Consistent with Congress' binding policy judgment in Section 230 that "plaintiffs may hold liable the person who creates or develops [the] unlawful content, but not the interactive computer service provider who merely enables that content to be posted online," *Nemet*, 591 F.3d at 254, this Court should dismiss the Complaint in its entirety.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DATED: June 8, 2017

**Davis Wright Tremaine LLP**
Scott Commerson( *pro hac vice* to be filed)
Brendan N. Charney (*pro hac vice* to be filed)
James Grant (*pro hac vice* to be filed)
Robert Corn-Revere (*pro hac vice* to be filed)
Ronald London (*pro hac vice* to be filed)

**Rusing Lopez & Lizardi, PLLC**
Daniel J. Quigley
Sarah S. Letzkus

By: /s/ Daniel J. Quigley
      Daniel J. Quigley

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that, on June 8, 2017, I electronically transmitted this document to the Clerk's office using the CM/ECF System and copies were served on the parties by Notice of Electronic Filing generated and transmitted by the CM/ECF system of the District of Arizona.

/s/ Daniel J. Quigley

MOTION TO DISMISS
4848-0630-8682v.1 3710078-000081

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

Sojourner Center,

                Plaintiff,

vs.

Backpage.com LLC; *et al.*,

                Defendants.

Case No. 2:17-cv-00399-GMS

**DECLARATION OF SCOTT R. COMMERSON AND NOTICE OF CERTIFICATION OF CONFERRAL**

(Motion to Dismiss and Memorandum of Points and Authorities; [Proposed] Order filed concurrently)

I, Scott R. Commerson, declare as follows:

1.     My name is Scott R. Commerson. I am a partner with the law firm of Davis Wright Tremaine, LLP, one of the law firms representing Defendants in the above-captioned action. I am over the age of eighteen (18) years, am fully competent to make this declaration, and make the statements in this declaration based on my own personal knowledge, except where a statement is specifically identified as based on information and belief. The facts stated in this declaration all are true and correct and, if called to testify, I would and could competently testify as set forth below.

2.     On June 5, 2017, at approximately 3:15 PM Pacific Standard Time, I spoke with Karen Chesley, a partner in the law firm of Boies Schiller Flexner LLC, via a conference call. Additional counsel for both Plaintiff and Defendants (collectively, the "Parties") participated in the conference call. During the call, counsel for Parties conferred to determine whether an amendment could cure any of the deficiencies in the Complaint

1  identified in my June 4, 2017 e-mail to Ms. Chesley.   Counsel for the Parties, however,

2  were unable to agree that any of the grounds for Defendants' Motion to Dismiss would be

3  curable by a permissible amendment to the Complaint.

4        3.    On June 6, 2017, I caused to be printed a true and correct copy of the notice

5  that appears when a user of Backpage.com attempts to post an ad in the Phoenix dating

6  section of Backpage.com.  In particular, this notice are available at

7  <http://posting.phoenix.backpage.com/online/classifieds/PostAdPPI.html/phx/phoenix.back

8  page.com/?region=4458&serverName=phoenix.backpage.com&superRegion=Phoenix&u=

9  phx&section=4383&category=4454>.  A true and correct copy of the notice, as printed

10  from the above URL, is attached hereto as **Exhibit A**.

11        4.    On June 7, 2017, I caused to be printed a true and correct copy of a section of

12  Plaintiff's website titled "Safe Action Project"  available at

13  <https://www.sojournercenter.org/about-us/safe-action-project/> .  A true and correct copy

14  of the website, as printed from the above URL, is attached hereto as **Exhibit B**.

15        I declare under penalty of perjury that the foregoing is true and correct.

16        Executed on June 8, 2017.

17

18        Scott R. Commerson

19

20

21

22

23

24

25

26

27

28

**Exhibit A**

**Post Ad**

**phoenix, az**    **free classifieds**

backpage.com > post ad > dating > men seeking women

# Posting Rules

You agree to the following when posting in this category:

- I will not post obscene or lewd and lascivious graphics or photographs which depict genitalia, actual or simulated sexual acts or naked images;
- I will not post any solicitation directly or in "coded" fashion for any illegal service, including exchanging sexual favors for money or other valuable consideration;
- I will not post any material on the Site that exploits minors in any way;
- I will not post any material on the Site that in any way constitutes or assists in human trafficking;
- I am at least 18 years of age or older and not considered to be a minor in my state of residence.

**Any post exploiting a minor in any way will be subject to criminal prosecution and will be reported to the Cybertipline for law enforcement.**

Postings violating these rules and our Terms of Use are subject to removal without refund.

**Continue**

My Account | Buy Credits | Contact | Help | Privacy | Terms | Safety

phoenix.backpage.com is an interactive computer service that enables access by multiple users and should not be treated as the publisher or speaker of any information provided by another information content provider. © 2017 backpage.com

**Exhibit B**



GIVE NOW



# SAFE Action Project

## Raising Awareness of Human Trafficking

Domestic violence takes many forms, including the trafficking of adults and children. A new program of Sojourner Center, the SAFE Action Project will educate the community that exploitation through force, fraud and coercion are all forms of domestic violence, and that, with a coordinated community strategy, human trafficking can be stopped.

The Sandra Day O'Connor Institute created the SAFE Action Project in 2013 to educate the hospitality industry to recognize and report commercial sexual exploitation of children. In 2016, the Institute chose Sojourner Center to carry on SAFE Action's important work and expand its reach. Sojourner Center will guide the expansion of the program to include training the broader tourism industry to recognize and report all forms of human trafficking.

Sojourner Center's SAFE Action Project will work to raise public awareness of how an informed community can effectively end the cycle of violence. Sojourner Center is a full-service human and social services agency that is dedicated to moving the conversation on the issues of domestic violence, raising awareness through targeted education and outreach, while working to change societal norms to end the silence.

## Our Program

Sojourner's SAFE Action Project offers a wide variety of human trafficking training resources to help tourism staff, along with travelers nationwide, to recognize warning signs of human trafficking and to report suspicious behavior, with a "see

something, say something" approach. The training program aims to reach all aspects of the tourism industry, including hotels, restaurants, theaters, airports, stadiums and other places where large groups of people gather and travel.

Sojourner Center has worked in the field of domestic violence for nearly 40 years. During that time the shelter has helped thousands of people known to be victims of human trafficking. The issues of human trafficking and domestic violence go hand-in-hand, and both circumstances require similar responses and services such as case management and trauma-informed care. The SAFE Action Project represents another opportunity for Sojourner Center to be a voice for those person been subject to exploitation and abuse.

In addition to in-person trainings, there are an abundance of free resour and airport staff available on the program website: http://www.safeactionproject.org

For more information about holding the training at your business, pleas Sojourner Center at communications@sojournercenter.org.

**LEAVE SITE**
Deje esta sitio

**CRISIS NUMBERS**

**Metro Phoenix**
602.244.0089
602.889.1610 (TDD)

**Out of Town**
888.886.8793
888.886.8794 (TDD)

## FAQs

**Q: How does training about human trafficking fit into the services provided by a domestic violence shelter like Sojourner Center?**
A: Sojourner Center is a human and social services agency that has been providing services to people who have experienced human trafficking throughout its nearly 40 years in operation. The SAFE Action Project adds to our efforts to help community members recognize the warning signs of abuse. There are deep connections between domestic violence and human trafficking, and both circumstances require similar responses and services such as case management and trauma-informed care. The SAFE Action Project is a natural expansion of services for Sojourner Center and will draw upon our existing strengths.

The SAFE Action Project represents another opportunity for Sojourner Center to be a voice for those persons who have been subject to exploitation and abuse. We have deep empathy for these women, children and men. We are fortunate to offer a service that helps prevent abuse by raising community awareness about human trafficking.

**Q: Why is Sojourner Center taking over a program of the Sandra Day O'Connor Institute?**
A: Sojourner Center was chosen by the O'Connor Institute to take over a successful

program it had incubated to address child sex trafficking in the Southwest. The program grew to a point that it outside the scope of the Institute's work. It needed a partner with the capability to handle that growth and also to expand the program. It will be the responsibility of Sojourner Center to secure the funding that will allow us to sustain and grow the program. Over the nearly 40 years of Sojourner Center's existence, we have demonstrated the ability to operate and support a social service program of this nature.

**Q: Has Sojourner Center worked in the human trafficking space before?**
A: Sojourner Center has worked in the field of domestic violence for nea
During that time we have helped thousands of people known to be victi
human trafficking. The issues of human trafficking and domestic violence go
hand-in-hand. We are merely moving in the direction of formally recog
issue. The SAFE Action Project enables us to do that. The program is con
our mission and the skill sets of our employees.

**LEAVE SITE**
Deje esta sitio

**CRISIS NUMBERS**

**Metro Phoenix**
602.244.0089
602.889.1610 (TDD)

**Out of Town**
888.886.8793
888.886.8794 (TDD)

**Q: Who is behind human trafficking in the United States? Is it foreign
bringing women and children across our borders?**
A: While the media and popular culture have frequently depicted huma
occurring in other countries, human trafficking also is prevalent throug
United States. There is no one snapshot of a trafficker. People of every ge
nationality, race and socio-economic status are involved in human trafficking. No one stereotype should be applied to traffickers, buyers or people who are being trafficked.

**Q: What types of businesses can receive the SAFE Action Project training?**
A: The program aims to reach all aspects of the tourism industry, including hotels, restaurants, theaters, airports, stadiums and other places where large groups of people gather and travel. In addition to in-person trainings, we have an abundance of free resources for hotel and airport staff, accessible on our website at http://www.safeactionproject.org/training/stop-sex-trafficking-toolkit/. For more information about holding the training at your business, please contact Sojourner Center at communications@sojournercenter.org.

# Key Facts

- Human trafficking is the world's fastest growing criminal enterprise, with global profits estimated in excess of $150 billion annually.

- There are 20.9 million victims of human trafficking globally, including 5.5 million

children."

- More than 25,000 human trafficking cases were identified on the U.S.-based National Human Trafficking Resource Center hotline.[iii]

- Of the millions of people estimated to be victims of human trafficking globally, 55 percent are women and girls, and 45 percent are men and boys.[iv]


## For More Information Please Contact:

Community Outreach Programs Manager

Ramoncita Cocova
Email

**References**
[i] Estimates according to the International Labour Organization
[ii] Ibid
[iii] Polaris Project
[iv] International Labour Organization

LEAVE SITE
Deje esta sitio

CRISIS NUMBERS

Metro Phoenix
602.244.0089
602.889.1610 (TDD)

Out of Town
888.886.8793
888.886.8794 (TDD)

Contact Us

Sojourner Center P.O. Box 20156, Phoenix, AZ 85036 © Copyright 2014-2016 all rights reserved

# **<u>Exhibit O</u>**



| Consumer Division | Governmental Affairs | | Labor Division | Litigation Division |
| Phone: (314) 340-6816 | Phone: (314) 340-7544 | | Phone: (314) 340-7827 | Phone: (314) 340-7861 |
| Fax: (314) 340-7957 | Fax: (314) 340-7891 | | Fax: (314) 340-7850 | Fax: (314) 340-7029 |

Financial Services
Phone: (314) 340-4746
Fax: (314) 340-7121

No Call Division
Phone: (314) 340-7977
Fax: (314) 340-7981

## ATTORNEY GENERAL OF MISSOURI

JOSHUA D. HAWLEY
ATTORNEY GENERAL

## JEFFERSON CITY

65102

Reply to:
P.O. Box 861
St. Louis, MO 63188

IN THE MATTER OF:

*VIA Hand Delivery*

**Backpage.com**

C.I.D. NO. SL-01-17
DATE: May 10, 2017

## INVESTIGATIVE DEMAND

TO:  Carl Ferrer
     2531 Tumbleweed Way
     Frisco, TX 75034

*MHH*
*5-11-79*

The Attorney General of the State of Missouri believes it to be in the public interest that an investigation be made to ascertain whether Backpage.com, Carl Ferrer, Michael Lacey, James Larkin, and agents thereof (collectively referred to as the "Subjects") have engaged in or are engaging in any merchandising practices declared to be unlawful by § 407.020, RSMo.

The investigation will inquire into the activities of Subjects in connection with the sale or advertisement, as defined in Section 407.010, RSMo, of commercial sexual conduct, other sexually oriented services, massage services, dating services and other merchandise.

Please note that this demand will be subject to disclosure to other state and federal law enforcement agencies pursuant to an information sharing agreement. You are advised that you are under an obligation not to destroy any documents because you are on notice of this investigation.

The Attorney General has reason to believe that it is in the public interest to determine whether the Subjects have used deception, fraud, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of material fact in connection with the sale or advertisement of the above merchandise.

The Attorney General believes that you have information, documentary material, or physical evidence relevant to the above-mentioned suspected violation.

## DEFINITIONS

In this demand the following terms shall have these meanings:

1. "Identify," when used with respect to a person or entity, means information sufficient to allow employees of the Attorney General to ascertain the name, address, telephone number, and if not a natural person, the contact person of the entity or facility to be identified, as well as the relationship of that person or entity to you.

2. "Identify," when used with respect to a fact or event, means information sufficient to allow employees of the Attorney General to ascertain the fact or event with reasonable particularity, and to identify each person believed to have knowledge with respect to the fact or event and each document that refers or relates to the fact or event.

3. "Document" means all written, printed, typed, and recorded matter of every kind and description, originals and copies, and all attachments and appendices thereto. Without limiting the foregoing, "documents" include all agreements, contracts, correspondence and other communications including notes, memoranda and marginal notations, records, reports, books, manuals, instructions, statistical data and data compilations, drafts, charts, graphs and tables, bills, statements and invoices, advertising, surveys, transcripts, microfilm and microfiche, electronic records that can be reproduced in paper form, recordings, film, tapes, photographs, electronic mail and Web pages, and all other computer-generated, computer-stored, or electronically-stored matter, however and by whomever produced, prepared, reproduced, disseminated, or made.

4. "You," including your, means Backpage.com, Carl Ferrer, Michael Lacey, James Larkin, and any agents thereof.

5. "Backpage" includes, but is not limited to, Backpage.com LLC, Camarillo Holdings LLC, New Times Media LLC, or any other predecessors, successors, or other entity administering, owning, operating, or controlling the website or suite of websites comprising Backpage.com and its affiliated websites from January 1, 2010 to the present day.

6.    "Adult Sections" includes, but is not limited to all subsections in the "adult" section of Backpage ("escorts," "body rubs," "strippers and strip clubs," "dom & fetish," "ts," "male escorts," "phone & websites," and "adult jobs") and the subsection "massages" in the "services" section of Backpage.

7.    "Relating to," "related to," "relate to" means to be relevant in any way to the subject matter in question, including without limitation all information that directly or indirectly contains, records, reflects, summarizes, evaluates, refers to, is pertinent to, indicates, comments upon, or discusses the subject matter; or that states the background of, or was the basis for, or that records, evaluates, comments, was referred to, relied upon, utilized, generated, transmitted, or received in arriving at any conclusion, opinion, estimate, position, decision, belief, policy, practice, course of business, course of conduct, procedure, or assertion concerning the subject matter.

8.    "Missouri Locations" means the Backpage location-specific pages for "Columbia/Jeff City," Missouri; Joplin, Missouri; Kansas City, Missouri; Kirksville, Missouri; "Lake of the Ozarks," Missouri; "Southeast Missouri"; Springfield, Missouri; St. Joseph, Misouri; and St. Louis, Missouri.

## DEMAND FOR DOCUMENTS AND INFORMATION

Demand is hereby made upon you, under the authority granted by § 407.030, RSMo to produce to Jennifer Grayson, Analyst, P.O. Box 861, St. Louis, Missouri 63188 no later than **Wednesday, June 7, 2017 at 10:00 a.m.**, answers to the following Demands for Documents and Information that may be in your possession, custody, or control:

1.    Identify the names, the position and title, and the percentage of ownership interest held by all current and former owners, officers, and directors of Backpage.

2.    Provide copies of all advertising and promotional materials, including a copy of each substantially different advertisement, fax, brochure, marketing script, website, YouTube video, training document, or other material related to the advertising or marketing of Backpage.

3.    Identify each and every individual by name, address and date of birth that has either been employed by Backpage or has acted as an agent,

SDprincipal, representative, or volunteer responsible for locating and interdicting inappropriate or illegal content on the Backpage website.

4. Provide all documents concerning Backpage's reviewing, blocking, deleting, editing, or modifying advertisements that appear on its website, either by Backpage employees or agents, or by automated software processes, including but not limited to policies, manuals, memoranda, and guidelines.

5. Provide all documents concerning advertising posting limitations, including but not limited to the "Banned Terms List," the "Grey List," and error messages, prompts, or other messages conveyed to users during the advertisement drafting or creation process.

6. Provide all documents concerning reviewing, verifying, blocking, deleting, disabling, or flagging user accounts or user account information, including but not limited to the verification of name, age, phone number, payment information, email address, photo, and IP address. *This request does not include the personally identifying information of any Backpage user or account holder.*

7. Provide all documents concerning human trafficking, sex trafficking, human smuggling, prostitution, or the facilitation or investigation thereof, including but not limited to policies, manuals, staff training materials, memoranda, and guidelines.

8. Provide all documents concerning Backpage policies regarding data retention, retention or removal of metadata of images, and hashing of images.

9. Provide documents sufficient to show, for each of the past three years, the number of advertisements posted in the Adult Sections on a monthly and yearly basis.

10. Produce documents sufficient to show, for each of the past three years, the number of advertisements posted in the Adult Sections for the Missouri Locations on a monthly and yearly basis.

11. Identify every posting or advertisement posted in the Adult Sections of any of the Missouri Locations that was either (a) deleted, edited,

or modified by Backpage employees or agents, or (b) blocked, deleted, edited, or modified by any automated software process.

12.    For each posting or advertisement identified in response to Paragraph 11 above, provide both (a) a copy of the posting or advertisement as originally submitted by the Backpage user, and (b) a copy of the posting or advertisement as it was publicly posted on Backpage.

13.    Provide documents sufficient to show, for each of the past three years, the number of advertisements posted in the Services Section, Massage subsection on a monthly and yearly basis.

14.    Provide documents sufficient to show, for each of the past three years, the number of advertisements posted in the Services Section, Massage subsection for the Missouri Locations on a monthly and yearly basis.

15.    Provide documents sufficient to show, for each of the past three years, the number of advertisements in the Services Section, Massage subsection deleted or blocked by automated review, or by employee, independent contractor, or agent review.

16.    Provide documents sufficient to show, for each of the past five years, Backpage's annual revenue and profit.

17.    Provide documents sufficient to show, for each of the past five years, Backpage's annual revenue and profit derived from the Services Section, Massage subsection.

18.    Provide documents sufficient to show, for each of the past three years, the number of advertisements posted in the Services Section, Miscellaneous subsection on a monthly and yearly basis.

19.    Provide documents sufficient to show, for each of the past three years, the number of advertisements in the Services Section, Miscellaneous subsection deleted or blocked by automated review, or by employee, independent contractor or agent review.

20.    Provide documents sufficient to show, for each of the past five years, Backpage's annual revenue and profit, including annual revenue and profit derived from the Services Section, Miscellaneous subsection.

21. Provide documents sufficient to show, for each of the past three years, the number of advertisements posted in the Dating Section on a monthly and yearly basis.

22. Provide documents sufficient to show, for each of the past three years, the number of advertisements in the Dating Section deleted or blocked by automated review, or by employee, independent contractor or agent review.

23. Provide documents sufficient to show, for each of the past five years, Backpage's annual revenue and profit, including annual revenue and profit derived from the Dating Section.

24. Identify all banks, and account numbers You have or have had and have received payments, checks, or other payments that have been deposited on behalf of Backpage.

Except where indicated otherwise, the time period covered by this Investigative Demand is from January 1, 2010 to the present.

You are further notified that upon notice, further information or documentation may be required by the Attorney General pursuant to this Investigative Demand.

You are advised that an extension of time or modification of the terms of the Investigative Demand may be sought only for good cause pursuant to the terms of the Section 407.070, RSMo.

Your attention is respectfully called to the provisions of Section 407.080, RSMo, which makes certain acts done with the intent to avoid, evade, or prevent compliance in whole or in part with any Investigative Demand served hereunder a Class A Misdemeanor, which is punishable by a fine not to exceed $1,000 for individuals and $5,000 for corporations, or by imprisonment for a term of not more than one year, or both a fine and imprisonment.

Please note that the Attorney General reserves the right to seek access to additional documents and to pursue additional avenues of inquiry as may be appropriate under Chapter 407 and other Missouri statutes and regulations.

Submit the foregoing Certification of Compliance and produce all requested documentation and information to the Attorney General's Office by causing the same to be hand-delivered, mailed, or sent by overnight courier to arrive no later than 10:00 a.m. June 7, 2017, to:

Jennifer Grayson
Missouri Attorney General's Office
P.O. Box 861
St. Louis, MO 63188

Respectfully,

**JOSHUA D. HAWLEY**
Attorney General

Mary D. Morris
Assistant Attorney General
Consumer Protection Section

# **<u>Exhibit P</u>**

**From:** Grant, James
**Sent:** Monday, June 19, 2017 9:04 AM
**To:** 'Morris, Mary'
**Cc:** Corn-Revere, Bob
**Subject:** RE: Civil Investigative Demand

Ms. Morris,

My firm is counsel for Mr. Ferrer and Backpage, and I made that clear in our call. Note that, in my confirming email, I indicated the extension was on behalf of "my clients," not solely Mr. Ferrer. We strongly object to the AG's office filing any suit under these circumstances, and, if you have done so, demand that your office withdraw the suit immediately.

**Jim Grant | Davis Wright Tremaine LLP**
1201 Third Avenue, Suite 2200 | Seattle, WA 98101
Tel: (206) 757-8096 | Fax: (206) 757-7096
Email: jamesgrant@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** Morris, Mary [mailto:Mary.Morris@ago.mo.gov]
**Sent:** Monday, June 19, 2017 8:35 AM
**To:** Grant, James
**Cc:** Corn-Revere, Bob
**Subject:** RE: Civil Investigative Demand

Jim,

We are honoring the extension of time to respond to the CID directed to Mr. Ferrer as we discussed. The lawsuit was filed against Backpage, not Mr. Ferrer.

When we spoke on May 19, Backpage had not accepted service of the CID. In fact, in attempting to serve Backpage, the Registered Agent directed us to contact attorney Jason Brookner prior to accepting service. We did not contact Mr. Brookner, and upon a subsequent attempt, the Registered Agent accepted service on May 26, 2017. Upon completing service, I did not hear from Mr. Brookner or from anyone on Backpage's behalf.

Mary

**From:** Grant, James [mailto:jimgrant@dwt.com]
**Sent:** Sunday, June 18, 2017 9:32 AM
**To:** Morris, Mary
**Cc:** Corn-Revere, Bob
**Subject:** RE: Civil Investigative Demand

Mary,

We have seen the following published reports about your office filing suit against Backpage: http://www.joplinglobe.com/news/local_news/attorney-general-seeks-court-s-help-in-backpage-investigation/article_ac84b87b-f364-5197-9ef2-b78dfbd0f33d.html
and:

We assume this is a mistake in light of the extension we agreed upon, that no response would be due until July 7 (see notes below). Will you please confirm that the State continues to honor its commitment concerning the response date we set. If your office in fact has filed suit, we expect that you will dismiss it immediately. Thank you.

**Jim Grant | Davis Wright Tremaine LLP**
1201 Third Avenue, Suite 2200 | Seattle, WA 98101
Tel: (206) 757-8096 | Fax: (206) 757-7096
Email: jamesgrant@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

**From:** Morris, Mary [mailto:Mary.Morris@ago.mo.gov]
**Sent:** Friday, May 19, 2017 1:23 PM
**To:** Grant, James
**Subject:** RE: Civil Investigative Demand

Thank you. My full contact information can be found below.

Have a nice weekend.

Mary Delworth Morris
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
(314) 340-6816
Mary.Morris@ago.mo.gov

**From:** Grant, James [mailto:jimgrant@dwt.com]
**Sent:** Friday, May 19, 2017 1:42 PM
**To:** Morris, Mary
**Subject:** Civil Investigative Demand

Ms. Morris,

Thanks for returning my call this morning and for agreeing to an extension to July 7, 2017 for my clients to assess and respond with regard to the civil investigative demand served by our office on Mr. Ferrer. I appreciate the courtesy.

**Jim Grant** | Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200 | Seattle, WA 98101
Tel: (206) 757-8096 | Fax: (206) 757-7096
Email: jamesgrant@dwt.com | Website: www.dwt.com

Anchorage | Bellevue | Los Angeles | New York | Portland | San Francisco | Seattle | Shanghai | Washington, D.C.

This email message, including the attachments, is from the Missouri Attorney General's Office. It is for the sole use of the intended recipient(s) and may contain confidential and privileged information, including that covered by § 32.057, RSMo. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Thank you.
This email message, including the attachments, is from the Missouri Attorney General's Office. It is for the sole use of the intended recipient(s) and may contain confidential and privileged information, including that covered by § 32.057, RSMo. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Thank you.

# **<u>Exhibit Q</u>**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| BACKPAGE.COM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17 CV 1951 |
| | ) | |
| JOSHUA D. HAWLEY, in his official | ) | |
| capacity as Attorney General of the State of | ) | |
| Missouri, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Backpage.com, LLC "(Backpage") moves pursuant to Fed. R. Civ. P. 65 for a preliminary injunction, enjoining Missouri Attorney General Joshua D. Hawley from enforcing the Civil Investigative Demand served on Backpage and its CEO Carl Ferrer, and from further pursuing or threatening other action against Backpage.

The motion is based on Backpage's statutory immunity from state law claims based on its activities as an online publisher and distributor of third-party content, and on Backpage's constitutional rights under the First, Fourth, and Fifth Amendments to the United States Constitution.

As further explained in the accompanying Memorandum, Attorney General Hawley has taken actions that, unless enjoined, will chill, inhibit, and prevent expressive activities protected by the First Amendment of the United States Constitution. Because the activities that Attorney General Hawley targets are expressly immunized by federal law from any state action, civil or criminal, Attorney General Hawley's investigation and legal action cannot be legally justified and must be enjoined.

A 1996 federal law makes it "the policy of the United States" to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation."  47 U.S.C. § 230(b)(2).  This act—Section 230 of the Telecommunications Act of 1996, 47 U.S.C. § 230 ("Section 230"; sometimes known as the Communications Decency Act because of the subchapter in which it appeared)—totally immunizes interactive computer services with respect to their publishing or distributing of content created by others, and with respect to their self-policing of their services, which Section 230 permits and encourages.  In hundreds of cases, courts have applied and enforced Section 230, including multiple cases regarding Backpage, one of which was decided in this district.  *See M.A. v. Village Voice Media Holdings, LLC,* 809 F.Supp.2d 1041 (E.D. Mo. 2011).  Because section 230 absolutely immunizes Backpage's conduct in carrying third-party content, and taking protective review and selection activities with respect to it, it cannot be liable under state law based on those activities.

Attorney General Hawley, however, has publicly announced that he seeks to investigate and prosecute Backpage, under the Missouri Merchandising Practices Act, for those protected activities, and that his goal is to shut it down. He initiated such actions with a Civil Investigative Demand directed to Backpage, and a preemptive Petition to Enforce it, even before Backpage's response was due.  His actions clearly threaten the First Amendment rights of Backpage and its users, and therefore should be enjoined. *Backpage.com v. Dart*, 807 F.3d at 230, 235 (7th Cir. 2015) (upholding injunction against sheriff's effort to "shut down" and "crush" Backpage by threatening credit card companies as a prior restraint and  "censorship . . . prohibited by the First Amendment"; "[A] public official who tries to shut down an avenue of expression of ideas and opinions through actual or threatened imposition of government power or sanction is violating

the First Amendment." ).  *See also Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003) ("[I]nvestigations premised solely upon *legal* activity are the very type of 'fishing expeditions' that were the target of Justice Holmes's assault in *American Tobacco*."; "[I]t is clear that an investigation predicated solely upon legal activates does not pass muster under *any* standard.") (emphasis in original).

For the reasons more fully stated in the Complaint and accompanying Memorandum, Backpage requests that the Court issue a preliminary injunction, enjoining Missouri Attorney General Hawley from enforcing the Civil Investigative Demand served on Backpage and its CEO Carl Ferrer, and from further pursuing or threatening other action against Backpage, and that it provide for such other and further relief as are just and proper in the circumstances.

DATED:  July 27, 2017.

Respectfully submitted,

*/s/  Mark Sableman*
Mark Sableman, MO - 36276
Jan Paul Miller, MO – 58112
Michael L. Nepple, MO – 42082
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri  63101
314-552-6000
FAX 314-552-7000
msableman@thompsoncoburn.com
jmiller@thompsoncoburn.com
mnepple@thompsoncoburn.com

Attorneys for Plaintiff Backpage.com, LLC

James C. Grant
(*Pro hac vice application submitted*)
Robert E. Miller
(*Pro hac vice application to be submitted*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
(206) 622-3150 (tel.); (206) 757-7700 (fax)
jimgrant@dwt.com
robertmiller@dwt.com

Robert L. Corn-Revere
(*Pro hac vice application granted*)
Ronald London
(*Pro hac vice application submitted*)
DAVIS WRIGHT TREMAINE LLP
Suite 800, 1919 Pennsylvania Avenue NW
Washington, DC 20006-3401
(202) 973-4225 (tel.); (202) 973-4499 (fax)
bobcornrevere@dwt.com
ronnielondon@dwt.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2017, the foregoing was filed electronically with the Clerk of Court, and, additionally served in the following manner on Defendant Joshua Hawley and his representatives:

Mary Delworth Morris
Assistant Attorney General
Old Post Office Building
8154 Olive Street, suite 200
St. Louis, MO 63188
Mary.Morris@ago.mo.gov
BY HAND DELIVERY (on 7/28/17) and EMAIL

Joshua D. Hawley
Attorney General
Supreme Court Building
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102
Phones: (573) 751-3321
Fax: (573) 751-0774
attorney.general@ago.mo.gov
BY FAX and FEDERAL EXPRESS (7/28/17) and EMAIL

*/s/  Mark Sableman*
Mark Sableman, MO - 36276

# <u>**Exhibit R**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

Civil Case No. ___3:18-cv-00449-SB___

SCOTT KOCHER,

**Plaintiff(s),**

v.

HILTON WORLDWIDE HOLDINGS, INC., et al.,

**Defendant(s).**

APPLICATION FOR SPECIAL
ADMISSION – *PRO HAC VICE*

Attorney ___James C. Grant_____ requests special admission *pro hac vice* in the above-captioned case.

**Certification of Attorney Seeking *Pro Hac Vice* Admission:**   I have read and understand the requirements of LR 83-3, and certify that the following information is correct:

**(1)    PERSONAL DATA:**

Name: ___Grant_____ ___James_____ ___C._____
       *(Last Name)*         *(First Name)*         *(MI)*      *(Suffix)*

Firm or Business Affiliation: ___Davis Wright Tremaine LLP___

Mailing Address: ___1201 3rd Ave., Ste. 2200___

City: ___Seattle___    State: ___WA___    Zip: ___98101___

Phone Number: ___(206) 757-8096___    Fax Number: ___(206) 757-7096___

Business E-mail Address: ___jimgrant@dwt.com___

(2)    **BAR ADMISSIONS INFORMATION:**

    (a)    State bar admission(s), date(s) of admission, and bar ID number(s):

        Washington State Bar #14358, admitted on 11/01/1984

    (b)    Other federal court admission(s), date(s) of admission, and bar ID number(s):

        *USDC, Western District of Washington, admitted on 01/23/1986*

        *Ninth Circuit Court of Appeals, admitted on 01/30/2006*

(3)    **CERTIFICATION OF DISCIPLINARY ACTIONS:**

    (a)    ☑ I am not now, nor have I ever been subject to any disciplinary action by any state or federal bar association; or

    (b)    ☐ I am now or have been subject to disciplinary action from a state or federal bar association.  (See attached letter of explanation.)

(4)    **CERTIFICATION OF PROFESSIONAL LIABILITY INSURANCE:**

Per LR 83-3(a)(3), I have professional liability insurance, or financial responsibility equivalent to liability insurance, that meets the insurance requirements of the Oregon State Bar for attorneys practicing in this District, and that will apply and remain in force for the duration of the case, including any appeal proceedings.

(5)    **REPRESENTATION STATEMENT:**

I am representing the following party(s) in this case:

Leeward Holdings, LLC; Camarillo Holdings, LLC; Dartmoor Holdings, LLC; IC Holdings, LLC;

Backpage.com, LLC; Website Technologies, LLC; Amstel River Holdings, LLC; Lupine Holdings, LLC;

Kickapoo River Investments, LLC; CF Holdings GP, LLC; CF Acquisitions, LLC; Carl Ferrer; Michael Lacey; James Larkin

(6)    **CM/ECF REGISTRATION:**

Concurrent with approval of this *pro hac vice* application, I acknowledge that I will become a registered user of the Court's Case Management/Electronic Case File system. (*See* the Court's website at ord.uscourts.gov), and I consent to electronic service pursuant to Fed. R. Civ. P 5(b)(2)(E) and the Local Rules of the District of Oregon.

**DATED** this ___15th___ day of ___March___, 2018

                            *(Signature of Pro Hac Counsel)*

                            James C. Grant

                            *(Typed Name)*

**REQUIREMENT TO ASSOCIATE WITH LOCAL COUNSEL:**

LR 83-3(a)(1) requires you to associate with local counsel unless are requesting waiver of the requirement under LR 45-1.  To associate with local counsel, obtain the signature of local counsel in the following section.  To request waiver of the requirement to associate with local counsel under LR 45-1, check the following box.

☐  I seek admission for the limited purpose of filing a motion related to a subpoena that this Court did not issue.  Pursuant to LR 45-1(b), I request waiver of the requirement of LR 83-3(a)(1) to associate with local counsel and therefore do not include a certification from local counsel below.

**CERTIFICATION OF ASSOCIATED LOCAL COUNSEL:**

I certify that I am a member in good standing of the bar of this Court, that I have read and understand the requirements of LR 83-3, and that I will serve as designated local counsel in this particular case.

**DATED** this _19th_ day of _March_, _2018_

_s/ Tim Cunningham_
*(Signature of Local Counsel)*

Name: _Cunningham_       _Timothy_                _M_
      *(Last Name)*       *(First Name)*          *(MI)*      *(Suffix)*

Oregon State Bar Number: _100906_

Firm or Business Affiliation: _Davis Wright Tremaine LLP_

Mailing Address: _1300 SW 5th Ave., Ste. 2400_

City: _Portland_       State: _OR_       Zip: _97201_

Phone Number: _(503) 241-2300_       Business E-mail Address: _timcunningham@dwt.com_

---

**COURT ACTION**

---

☐ Application approved subject to payment of fees.
☐ Application denied.

**DATED** this _____ day of _____, _____

_____
Judge

# **Exhibit S**

**TIM CUNNINGHAM, OSB #100906**
timcunningham@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

**JAMES C. GRANT,** *Pro Hac Vice Forthcoming*
jimgrant@dwt.com
**ERIC STAHL,** *Pro Hac Vice Forthcoming*
ericstahl@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone: (206) 622-3150
Facsimile:  (206) 757-7700

      Attorneys for Defendants Leeward Holdings, LLC, Camarillo Holdings, LLC,
      Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website
      Technologies, LLC, Amstel River Holdings, LLC, Lupine Holdings, LLC,
      Kickapoo River Investments, LLC, CF Holdings GP, LLC, CF Acquisitions,
      LLC, Carl Ferrer, Michael Lacey and James Larkin

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SCOTT KOCHER, in his capacity as Personal Representative of The Estate of ASHLEY BENSON,**<br><br>          **PLAINTIFF**,<br><br>    v.<br><br>**HILTON WORLDWIDE HOLDINGS, INC.; HILTON DOMESTIC OPERATING COMPANY, INC.; HILTON FRANCHISE HOLDING, LLC; WMK PORTLAND, LCC; GRACE LIAL; MEDALIST HOLDINGS, LLC; LEEWARD HOLDINGS, LLC; CAMARILLO HOLDINGS, LLC; DARTMOOR HOLDINGS, LLC; IC HOLDINGS, LLC; BACKPAGE.COM, LCC; UGC TECH GROUP C.V.; WEBSITE TECHNOLOGIES, LLC; ATLANTISCHE BEDRIJVEN C.V.; AMSTEL RIVER** | Case No.<br><br>**NOTICE OF REMOVAL** |

Page 1 - NOTICE OF REMOVAL

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

HOLDINGS, LLC; LUPINE HOLDINGS,
LLC; KICKAPOO RIVER
INVESTMENTS, LLC; CF HOLDINGS GP,
LLC; CF ACQUISITIONS, LLC; CARL
FERRER; MICHAEL LACEY; JAMES
LARKIN; AND JOHN DOES 1-5,

                              **DEFENDANTS**.

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, defendants Carl Ferrer, Michael Lacey

and James Larkin (collectively, "Individual Defendants") remove this action from the Circuit

Court of the State of Oregon for the County of Multnomah to the United States District Court for

the District of Oregon in Portland, Oregon.

1.      As set out more fully below, this case is properly removed to this Court, pursuant

to 28 U.S.C. §§ 1441 and 1446, because Individual Defendants have satisfied the procedural

requirements for removal.  This action is being removed to federal court based on diversity of

citizenship jurisdiction.  28 U.S.C. § 1332.

## I.      INTRODUCTION AND BACKGROUND

2.      On or around December 22, 2017, plaintiff Scott Kocher ("Plaintiff"), as personal

representative for the Estate of Ashley Benson, filed a complaint in the Circuit Court of the State

of Oregon for the County of Multnomah, titled *Scott Kocher v. Hilton Worldwide Holdings, Inc.,

et al.*, Case No. 17CV55605 (hereinafter, the "Complaint" ).  Named as defendants are:

(a)     Dartmoor Holdings, LLC; IC Holdings, LLC; Backpage.com, LLC;

        Website Technologies, LLC; Amstel River Holdings, LLC; Lupine

        Holdings, LLC; Kickapoo River Investments, LLC; CF Holdings GP,

        LLC; CF Acquisitions, LLC; Leeward Holdings, LLC; and Camarillo

        Holdings, LLC; (collectively, "Backpage.com Defendants");

(b)     Medalist Holdings, LLC; UGC Tech Group C.V.; and Atlantische

        Bedrijven C.V.;

(c)     Carl Ferrer, Michael Lacey and James Larkin (collectively, "Individual

        Defendants");

4836-2859-0683v.8 3710078-000091                    DAVIS WRIGHT TREMAINE LLP
                                                  1300 S.W. Fifth Avenue, Suite 2400
                                                  Portland, Oregon  97201-5610
                                                  (503) 241-2300 main · (503) 778-5299 fax

(d)    Hilton Worldwide Holdings, Inc.; Hilton Domestic Operating Company, Inc.; Hilton Franchise Holding, LLC; WMK Portland, LLC (collectively, "Hilton Defendants"); and

(e)    Grace Lial ("defendant Lial" or "Lial").

3.    Removal is proper based on diversity jurisdiction under 28 U.S.C. § 1332, and the doctrines of fraudulent joinder and fraudulent misjoinder.

4.    Plaintiff is a citizen of Oregon.  The Backpage.com Defendants are citizens of Delaware, Arizona, and Texas.  UGC Tech Group C.V. and Atlantische Bedrijven C.V. are citizens of Texas.  Individual Defendants are citizens of Arizona and Texas.  Individual Defendants are informed and believe that none of the Hilton Defendants is a citizen of Oregon. The only defendant who is a citizen of Oregon is defendant Lial.  However, the citizenship of Lial should be disregarded, and she need not join in seeking removal of this action, because Plaintiff has fraudulently joined the claims against her.

5.    Defendant Lial is fraudulently joined because Plaintiff fails to state a cause of action against her.  Plaintiff has not, and cannot, allege facts sufficient to show that Plaintiff's harms were the result of a reasonably foreseeable risk created by Lial's alleged negligence. Furthermore, Defendant Lial is fraudulently misjoined because the claims against her are unrelated, by fact or law, to the claims against Individual Defendants and the Backpage.com Defendants.

6.    Medalist Holdings, LLC is a misnamed party and has no relation to this matter.  If Defendant Medalist Holdings, LLC is determined to be non-diverse, it is also fraudulently joined because Plaintiff fails to state a claim against this unrelated entity.  Medalist Holdings, LLC is also fraudulently misjoined because any claims Plaintiff may have against this unknown entity are unrelated, by fact or law, to the claims against the Individual Defendants and the Backpage.com Defendants.

4836-2859-0683v.8 3710078-000091          DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## II.    THIS NOTICE IS TIMELY

7.      Counsel for Individual Defendants waived service and accepted a copy of the Complaint on Individual Defendants' behalf on February 13, 2018.  This notice of Removal is timely because Individual Defendants are filing it within 30 days after the Complaint was served on them.  28 U.S.C. § 1446(b)(1), (2); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

8.      Service, or alleged service, on the Backpage.com Defendants is as follows:

a.      On January 5, 2018, defendants Leeward Holdings, LLC and Camarillo Holdings, LLC were served with summons and Complaint through The Corporation Trust Company.   Defendants Leeward Holdings, LLC, and Camarillo Holdings, LLC expressly reserve and do not waive all defenses relating to defects in service.

b.      On January 5, 2018, defendants Dartmoor Holdings, LLC; IC Holdings, LLC; Backpage.com, LLC; Website Technologies, LLC; Amstel River Holdings, LLC; Lupine Holdings, LLC; Kickapoo River Investments, LLC; CF Holdings GP, LLC; and CF Acquisitions, LLC were served with summons and Complaint through Cogency Global, Inc.  Defendants Dartmoor Holdings, LLC; IC Holdings, LLC; Backpage.com, LLC; Website Technologies, LLC; Amstel River Holdings, LLC; Lupine Holdings, LLC; Kickapoo River Investments, LLC; CF Holdings GP, LLC; and CF Acquisitions, LLC expressly reserve and do not waive all defenses relating to defects in service.

9.      Service, or alleged service, on other certain defendants is as follows:

a.      Plaintiff purported to serve UGC Tech Group C.V. by service on the Oregon Secretary of State (received February 14, 2018), service on the Delaware Secretary of State (date of receipt unknown), and service on the

4836-2859-0683v.8 3710078-000091                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

undersigned, who did not agree to accept service for UGC Tech Group C.V.

    b.    Plaintiff purported to serve Atlantische Bedrijven C.V. by service on the Oregon Secretary of State (received February 14, 2018), service on the Texas Secretary of State (date of receipt unknown), and service on the undersigned, who did not agree to accept service for Atlantische Bedrijven C.V.

    c.    UGC Tech Group C.V. and Atlantische Bedrijven C.V. expressly reserve and do not waive all defenses relating to defects in service.

    d.    Plaintiff purported to serve Medalist Holdings, LLC by service on the Oregon Secretary of State (received February 14, 2018), service on the Delaware Secretary of State (date of receipt unknown), and service on the undersigned, who did not agree to accept service for Medalist Holdings, LLC. Plaintiff erroneously named "Medalist Holdings, LLC" as a defendant in the state court action. Individual Defendants and Backpage.com Defendants have no involvement with, or knowledge of, the entity Medalist Holdings, LLC. As Individual Defendants and Backpage.com Defendants are unaware of an entity named Medalist Holdings, LLC, they do not concede the sufficiency of any service on the same and expressly reserve and do not waive any defenses relating to defects in service for Medalist Holdings, LLC.

    10.    On March 1, 2018, Plaintiff filed the First Amended Complaint for the action ("FAC"). A copy of all summonses and both complaints are attached hereto as Exhibit 1, and constitute all process, pleadings, and orders served on Individual Defendants, Backpage.com defendants, and the undersigned, in this action up to the present date.

4836-2859-0683v.8 3710078-000091

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### III.    REMOVING INDIVIDUAL DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

11.    Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action filed in a state court to the United States District Court if the district court has original jurisdiction over the action.

12.    All defendants who have been properly joined and served consent to the removal of this action.

13.    Although ordinarily all defendants in a state court action must join in the petition for removal, 28 U.S.C. § 1446(b)(2)(A), the rule of unanimity does not apply to fraudulently joined parties.  *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002). Furthermore, procedurally misjoined parties also need not consent to removal.  *See Sutton v. Davol, Inc.*, 251 F.R.D. 500, 506 (E.D. Cal. 2008) (citing *United Computer Sys., Inc.*, 298 F.3d at 762).  Thus, assuming Medalist Holdings, LLC has been properly served, its consent is not necessary for this notice.  While Defendant Lial's consent is not necessary for this notice, she has, in fact, consented to the notice.

14.    Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over this action because complete diversity of citizenship exists between the parties and the matter in controversy exceeds the sum or value of $75,000.

15.    Pursuant to 28 U.S.C. § 1446(a), venue lies with this Court because Plaintiff's action is pending in the Circuit Court of the State of Oregon for the County of Multnomah, which is within this District and Division.

16.    Concurrently with the filing of this Notice of Removal, Individual Defendants have given written notice of the filing of this Notice of Removal to Plaintiff's counsel. Individual Defendants have also filed a copy of this Notice with the Clerk of the Circuit Court of the State of Oregon for the County of Multnomah, pursuant to 28 U.S.C. § 1446(d).

17.    Individual Defendants have good and sufficient defenses to this action and do not waive any defenses, jurisdictional or otherwise, by the filing of this Notice.

4836-2859-0683v.8 3710078-000091                                DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

18.     This Notice is filed pursuant to Fed. R. Civ. P. 11.

### IV.     THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED

19.     Plaintiff's Complaint seeks $3,600,000 in economic damages and attorney fees. Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over this action because the matter in controversy exceeds the sum or value of $75,000.

### V.     THERE IS COMPLETE DIVERSITY BETWEEN PLAINTIFF AND INDIVIDUAL DEFENDANTS, BACKPAGE.COM DEFENDANTS, HILTON DEFENDANTS, UGC TECH GROUP C.V., AND ATLANTISCHE BEDRIJVEN C.V.

20.     Pursuant to 28 U.S.C. § 1441(a), defendants may remove any civil action brought in a state court of which the district courts of the United States have original jurisdiction.

21.     Federal district courts have original jurisdiction of all civil actions between citizens of different states, and between a citizen of a state and a citizen or subject of a foreign state, where the amount in controversy exceeds the sum or value of $75,000.  28 U.S.C. § 1332(a)(1)(2).

22.     For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).  A corporation's principal place of business is determined by the "nerve center" test, i.e., "the place where the corporation's officers direct, control, and coordinate the corporations' activities," which ordinarily is the "place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

23.     The citizenship of a limited partnership is the citizenship of all of its members. *See Johnson v. Columbia Properties Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006).

24.     The citizenship of a limited liability company is the citizenship of all of its members.  *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

25.     An individual's citizenship is determined by his or her domicile, *i.e.* his or her permanent home.  *Kanter v. Warner-Lambert Co.* 265 F.3d 853, 857 (9th Cir.2001)

4836-2859-0683v.8 3710078-000091                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

26.     Individual Defendants are informed and believe, and Plaintiff alleges, that Plaintiff is a citizen of the state of Oregon because, at the time the Complaint was filed, Plaintiff resided in Oregon and, as of the date of the filing of this Notice, resides in Oregon.

27.     Individual Defendants are informed and believe that, at the time the Complaint was filed, and as of the date of the filing of this Notice, defendant Hilton Worldwide Holdings, Inc. was and is a Delaware corporation, with its principal place of business in Virginia, and, therefore, is a citizen of Delaware and Virginia.  Individual Defendants are informed and believe that defendant Hilton Worldwide Holdings, Inc. is misnamed in this litigation.

28.     Individual Defendants are informed and believe that, at the time the Complaint was filed, and as of the date of the filing of this Notice, defendant Hilton Domestic Operating Company, Inc. was and is a Delaware corporation, with its principal place of business in Virginia, and, therefore, is a citizen of Delaware and Virginia.

29.     Individual Defendants are informed and believe that, at the time the Complaint was filed, and as of the date of the filing of this Notice, defendant Hilton Franchise Holding, LLC was and is a wholly-owned subsidiary of Hilton Domestic Operating Company, Inc. and, therefore, is a citizen of Delaware and Virginia.

30.     Individual Defendants are informed and believe that no member of defendant WMK Portland, LLC is a citizen of Oregon, nor is any member of any of WMK Portland, LLC's members a citizen of Oregon, such that WMK Portland, LLC is not a citizen of Oregon.

31.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Medalist Holdings, Inc. [1] was and is a Delaware corporation, with its principal place of business

---

[1] As stated, Individual Defendants are unaware of an entity named Medalist Holdings, LLC.  Individual Defendants allege the citizenship of the entity Medalist Holdings, Inc. (not named a party to this action) to explain the citizenship of the LLCs of which Medalist Holdings, Inc. is a member.  To the extent the Court determines service on Medalist Holdings, LLC constitutes service on Medalist Holdings, Inc., Medalist Holdings, Inc. is diverse and consents to removal.

Page 8 - NOTICE OF REMOVAL

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

in Arizona.  It has always been privately held, and no publicly held corporation has ever owned an interest in it.

32.     Individual Defendants lack knowledge as to the citizenship of the misnamed entity Medalist Holdings, LLC.  However, Individual Defendants have no reason to believe this entity is an Oregon citizen.  Furthermore, Plaintiff cannot allege facts sufficient to state a claim against Medalist Holdings, LLC nor can Plaintiff allege that Medalist Holdings, LLC was involved or related in any way to his claims as the company has no relationship to the individuals or entities named as defendants in this action.  To the extent that Medalist Holdings, LLC is a non-diverse defendant, it is fraudulently joined and/or fraudulently misjoined and its citizenship should be disregarded for diversity purposes.  *See infra*, Section VI for an analysis of fraudulent joinder and fraudulent misjoinder.

33.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Leeward Holdings, LLC was and is a Delaware limited liability company, wholly owned by Medalist Holdings, Inc.  Leeward Holdings, LLC has always been privately held, and no publicly held corporation has ever owned an interest in it.

34.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Camarillo Holdings, LLC was and is a Delaware limited liability company, wholly owned by Leeward Holdings, LLC.  Camarillo Holdings, LLC has always been privately held, and no publicly held corporation has ever owned an interest in it.

35.     Therefore, at the time the Complaint was filed, and as of the date of the filing of this Notice, Medalist Holdings, Inc.; Leeward Holdings, LLC; and Camarillo Holdings, LLC were and are all citizens of Delaware and Arizona.

36.     At the time the Complaint was filed, and as of the date of the filing of this Notice, the ownership structure of the remaining company defendants was and is as follows:

        a.     Backpage.com, LLC was and is a Delaware limited liability company, wholly owned by IC Holdings, LLC.

Page 9 - NOTICE OF REMOVAL

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

b.    IC Holdings, LLC was and is a Delaware limited liability company, wholly owned by Dartmoor Holdings, LLC.

c.    Website Technologies, LLC was and is a Delaware limited liability company, wholly owned by Dartmoor Holdings, LLC.

d.    Dartmoor Holdings, LLC was and is a Delaware limited liability company, wholly owned by Atlantische Bedrijven C.V.[2]

e.    UGC Tech Group C.V. was and is a Dutch limited partnership, wholly owned by its general partner CF Holdings GP, LLC and its limited partner CF Acquisitions, LLC.

f.    CF Holdings GP, LLC and CF Acquisitions, LLC each were and are Delaware limited liability companies, each wholly owned by their sole member Atlantische Bedrijven C.V.

g.    Atlantische Bedrijven C.V. was and is a Dutch limited partnership, wholly owned by Kickapoo River Investments, LLC and Lupine Holdings, LLC.

h.    Kickapoo River Investments, LLC and Lupine Holdings, LLC are each Delaware limited liability companies, each wholly owned by Amstel River Holdings, LLC.

i.    Amstel River Holdings, LLC is a Delaware limited liability company, wholly owned by the Vicky Ferrer Family Trust.

j.    Backpage.com, LLC; IC Holdings, LLC; Dartmoor Holdings, LLC; Lupine Holdings, LLC; Website Technologies, LLC; CF Holdings GP, LLC; CF Acquisitions, LLC; UGC Tech Group C.V.; and Amstel River

---

[2] As stated, Defendants Atlantische Bedrijven C.V. and UGC Tech Group C.V. have not been properly served.  Individual Defendants allege the citizenship of these entities to explain the citizenship of the LLCs of which they are members.  Defendants Atlantische Bedrijven C.V. and UGC Tech Group C.V. are diverse and, to the extent the Court determines service has been completed on these defendants, they consent to removal.

4836-2859-0683v.8 3710078-000091

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Holdings, LLC have always been privately held, and no publicly held corporation has ever owned an interest in any of them.

37.     Thus, tracing up the ownership chain, at all relevant times, the citizenship of Backpage.com, LLC; IC Holdings, LLC; Website Technologies, LLC; Dartmoor Holdings, LLC; Atlantische Bedrijven C.V.; Kickapoo River Investments, LLC; Lupine Holdings, LLC,; UGC Tech Group C.V.; CF Holdings GP, LLC; CF Acquisitions, LLC; and Amstel River Holdings, LLC, for diversity purposes, are based on the citizenship of their ultimate owner, the Vicky Ferrer Family Trust.

38.     The Trustee of the Vicky Ferrer Family Trust is Carl Ferrer.  The current beneficiaries of the Trust are Carl Ferrer and his wife, April E. Ferrer.

39.     Any potential future beneficiaries of the trust who currently are identifiable are citizens of either Texas or Oklahoma. No current beneficiary of the trust, or potential future beneficiary of the trust who is currently identifiable, is or has been citizen of Oregon.

40.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Carl Ferrer and April Ferrer were and are residents and citizens of Texas.

41.     Carl and April Ferrer have owed a residence near Dallas in Texas since August 2005 and their primary residence has been near Dallas in Texas since August 2005.

42.     Carl and April Ferrer consider Texas to be their permanent place of residence and, when they depart Texas, they do so with the intent to return to Texas.

43.     Carl Ferrer has been employed in or near Dallas since August 2005.

44.     Carl and April Ferrer file their income taxes in Texas as residents of Texas and have done so since 2005. They also pay real and personal property taxes in Texas.

45.     Carl Ferrer is registered to vote in Texas and has been registered to vote in Texas since 2008. April Ferrer is registered to vote in Texas and has been registered to vote in Texas since approximately 2005.

4836-2859-0683v.8 3710078-000091                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

46.    Carl and April Ferrer have Texas driver's licenses and have had Texas driver's licenses since 2006.

47.    Carl and April Ferrer have automobiles in Texas, which are registered in Texas. They have owned automobiles that have been registered in Texas since 2006.

48.    Carl Ferrer has had the same physician for over 16 years; the physician's office is in Dallas, Texas.

49.    Therefore, at the time of the Complaint was filed, and as of the date of the filing of this Notice, the Vicky Ferrer Family Trust was and is a citizen of Texas, given that its trustee and all its current beneficiaries are citizens of Texas. Accordingly, the LLCs and limited partnerships owned, directly and indirectly, by the Trust were all citizens of Texas for diversity purposes, including Backpage.com, LLC; IC Holdings, LLC; Website Technologies, LLC; Dartmoor Holdings, LLC; Atlantische Bedrijven C.V.; Kickapoo River Investments, LLC; Lupine Holdings, LLC; UGC Tech Group C.V.; CF Holdings GP, LLC; CF Acquisitions, LLC; and Amstel River Holdings, LLC.

50.    At the time the Complaint was filed, and as of the date of the filing of this Notice, James Larkin was and is a resident and citizen of Arizona.

51.    James Larkin owns a residence near Phoenix in Arizona and has owned a residence in or near Phoenix since 1982.  He has lived near Phoenix since 1952.  His current residence near Phoenix is his primary residence and has been so since 2007.

52.    James Larkin considers his residence in Arizona to be his permanent home and, when he departs Arizona, he does so with the intent to return to his residence in Arizona.

53.    James Larkin has been employed in or near Phoenix, Arizona since 1970.

54.    James Larkin files his state income taxes in Arizona as a resident of Arizona and has done so since 1968.  He also pays and has always paid real and personal property taxes in Arizona.

4836-2859-0683v.8 3710078-000091                    DAVIS WRIGHT TREMAINE LLP
                                                1300 S.W. Fifth Avenue, Suite 2400
                                                Portland, Oregon  97201-5610
                                           (503) 241-2300 main · (503) 778-5299 fax

55.     James Larkin is registered to vote in Arizona and has been registered to vote in Arizona since about 2000.

56.     James Larkin has an Arizona driver's license and has had an Arizona driver's license since 1966.

57.     James Larkin has automobiles in Arizona, which are registered in Arizona.  He has owned or leased automobiles that have been registered in Arizona since 1968.

58.     At the time the Complaint was filed, and as of the date of the filing of this Notice, Michael Lacey was and is a resident and citizen of Arizona.

59.     Michael Lacey owns a residence near Phoenix in Arizona and has owned a residence in or near Phoenix since the mid-1990s.  He has lived in Phoenix since 1966.  His current residence near Phoenix is his primary residence and has been so since the late 1990s.

60.     Michael Lacey considers his residence in Arizona to be his permanent home and, when he departs Arizona, he does so with the intent to return to his residence in Arizona.

61.     Michael Lacey has been employed in or near Phoenix, Arizona since 1970.

62.     Michael Lacey files his state income taxes in Arizona as a resident of Arizona and has done so since 1970.  He also pays, and for many years has paid, real and personal property taxes in Arizona.

63.     Michael Lacey is registered to vote in Arizona and has been registered to vote in Arizona since the mid-1990s.

64.     Michael Lacey has an Arizona driver's license and has had an Arizona driver's license since the 1990s.

65.     Michael Lacey has automobiles in Arizona, which are registered in Arizona.  He has owned or leased automobiles that have been registered in Arizona since 1990.

66.     None of Individual Defendants; Backpage.com Defendants; Hilton Defendants; UGC Tech Group C.V.; or Atlantische Bedrijven C.V., either individually or through corporate ownership or membership, are or ever have been citizens of Oregon.

4836-2859-0683v.8 3710078-000091                    DAVIS WRIGHT TREMAINE LLP
                                        1300 S.W. Fifth Avenue, Suite 2400
                                        Portland, Oregon  97201-5610
                                        (503) 241-2300 main · (503) 778-5299 fax

67.     Accordingly, at the time the Complaint was filed, and as of the date of the filing of this Notice, complete diversity of citizenship existed and exists between Plaintiff (who is an Oregon citizen) and; all of Individual Defendants (who are citizens of Arizona and Texas); Backpage.com Defendants (which are citizens of Arizona, Delaware, and Texas); Hilton Defendants (which are citizens of Delaware and Virginia); UGC Tech Group C.V. (which is a citizen of Texas); and Atlantische Bedrijven C.V. (which is a citizen of Texas).[3]

68.     Individual Defendants are informed and believe, and Plaintiff alleges, that defendant Grace Lial is an individual and a citizen of Oregon.

69.     Defendant Lial is the only non-diverse defendant.

## VI.    THE COURT SHOULD NOT CONSIDER THE CITIZENSHIP OF DEFENDANT LIAL BECAUSE SHE IS FRAUDULENTLY JOINED AND FRAUDULENTLY MISJOINED

70.     When a plaintiff fraudulently joins a defendant, a federal district court to which the case is removed should disregard the citizenship of non-diverse parties that are not properly joined, dismiss the fraudulently joined defendant(s), and recognize federal diversity jurisdiction for the claims against the remaining defendants. *Morris v. Princess Cruise, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Defendant Lial is both fraudulently joined and fraudulently misjoined, and her citizenship should be disregarded for diversity purposes.

### A.    Courts Ignore the Citizenship of Fraudulently Joined Defendants.

71.     Under the fraudulent joinder doctrine, "joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.* (internal quotations omitted) (*quoting McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

---

[3] As discussed, the citizenship of Medalist Holdings, LLC and Lial should be disregarded for diversity purposes.

4836-2859-0683v.8 3710078-000091          DAVIS WRIGHT TREMAINE LLP
                                        1300 S.W. Fifth Avenue, Suite 2400
                                        Portland, Oregon  97201-5610
                                        (503) 241-2300 main · (503) 778-5299 fax

72.    A defendant seeking to remove to federal court "is entitled to present the facts showing the joinder to be fraudulent."  *McCabe*, 811 F.2d at 1339 (internal citation omitted).

73.    Courts find that defendants are fraudulently joined when plaintiff fails to state a cause of action against the non-diverse defendant.  *See, e.g. id.* (holding that two non-diverse individual defendants were fraudulently joined when the complaint failed to allege facts that they acted outside the scope of their managerial capacity); *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (holding that non-diverse defendants were fraudulently joined when the plaintiff alleged claims that were clearly time-barred); *and DaCosta v. Novartis AG*, 2002 WL 31957424 (D. Or. Mar. 1, 2002) (holding that non-diverse defendant was fraudulently joined in a negligence action when plaintiff failed to allege facts to demonstrate pharmaceutical salesman defendant owed a duty to patient plaintiff to warn patient's doctor about certain side risks of a drug).

**B.    Defendant Lial is Fraudulently Joined.**

74.    The Complaint alleges that Defendant Lial "was at all material times the Director of Services acting in the course and scope of her employment by DoubleTree."  FAC at ¶ 15.

75.    Plaintiff does not allege that Lial was involved in any way with the facts of Ms. Benson's murder.  Plaintiff does not allege that Lial saw Ms. Benson or Mr. Yoon the evening they were at the hotel.  Plaintiff does not allege that Lial was even working the night Ms. Benson was killed.

76.    Plaintiff's only allegations against Lial are insufficient to support any claim against her.  Plaintiff alleges that Lial was employed by the DoubleTree Hotel. FAC at ¶ 15.  The only factual allegations against Lial relate to another, wholly unrelated instance where, eleven months prior to the events in question, she merely confirmed to the police that someone had ***stayed in the hotel*** (not that they were a victim of sex trafficking).  FAC at ¶ 58(b).  Plaintiff alleges that Lial "had personal knowledge that sex trafficking and prostitution was taking place at the DoubleTree Hotel," and that she "refused to implement policies… which would have

Page 15 - NOTICE OF REMOVAL

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main • (503) 778-5299 fax

prevented the harm that Benson experienced at the DoubleTree Hotel," *id.* at 58(c), but such statements are insufficient to support the claims against Lial. Plaintiff does not allege that Lial had any authority to adopt and implement policies for her employer, that Lial owed a duty to Ms. Benson (who was not a guest of the hotel), that Lial breached a duty she owed to Ms. Benson, or that any policies that Lial might have adopted would have prevented Ms. Benson's murder.

77.    Defendant Lial is fraudulently joined because Plaintiff fails to state a cause of action against her. Plaintiff has not, and cannot, allege facts sufficient to show that Plaintiff's harms were the result of a reasonably foreseeable risk created by Lial's alleged negligence. Lial is merely an employee of the DoubleTree Hotel. *See Fazzolari v. Portland Sch. Dist. 1J*, 303 Or. 1 (1987). She had no involvement whatsoever in the facts of Ms. Benson's murder. Plaintiff does not even allege that Lial was present in the hotel at the time of Ms. Benson's murder.

78.    Defendant Lial is far removed from any corporate policies of Hilton Worldwide Holdings, Inc., and those policies did not create a legal duty on behalf of Lial. The existence of a "Hilton Global Code of Conduct" or other international conduct code allegedly signed onto by Hilton Worldwide Holdings, Inc. is insufficient to demonstrate that the risk of Ms. Benson's murder was reasonably foreseeable to Lial merely by her status as an employee of a franchisee of a subsidiary of Hilton Worldwide Holdings, Inc. *See, e.g., In re: Tylenol (Acetaminophen) Mktg., Sales Practices, and Products Liab. Litig.*, 2016 WL 807377, at *8 n. 22 (E.D. Pa. Mar. 2, 2016) (holding that the "defendants' own [internal policy] should not be held out as the legal standard by which it should conduct its affairs").

### C.    Courts Ignore the Citizenship of Fraudulently Misjoined Defendants.

79.    Under Fed. R. Civ. P. 20, joinder of defendants in a single action requires a claim for relief against all defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and a common question of law or fact. Fed. R. Civ. P. 20(a)(2). At any time, and by motion or on its own, a

4836-2859-0683v.8 3710078-000091

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

federal court may add or drop any party that has been improperly or procedurally misjoined. Fed. R. Civ. P. 21.

80.     Courts applying procedural misjoinder recognize that the same principles that prevent a plaintiff from defeating diversity jurisdiction by adding a sham defendant preclude the plaintiff from achieving the same result by misjoining claims.  *See, e.g.*, *Tapscott v. MS Dealer Service Corp.*, 77 F. 3d 1353, 1360 (11th Cir. 1996) ("[a] defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy'"); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503 (E.D. Cal. 2008) ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action" (quoting *Tapscott*, 77 F.3d at 1360)); *Greene v. Wyeth*, 344 F.Supp.2d 674 (D. Nev. 2004) (agreeing with the Fifth and Eleventh Circuits and permitting removal where a non-diverse party was joined on unrelated facts).  Courts in this District have also recognized the theory.  *See, e.g., Selman v. Pfizer, Inc.*, 2011 WL 6655354, at *12 (D. Or. Dec. 16, 2011) (recognizing that although the Ninth Circuit has not yet adopted the theory of fraudulent misjoinder, some of its district courts have); *Leif's Auto Collision Centers v. Progressive Halcyon Ins. Co.*, 2006 WL 2054552, at *1 (D. Or. July 21, 2006) (recognizing the doctrine of fraudulent misjoinder, although not applying it in based on the facts of that particular case).

81.     As explained in more detail below, Plaintiff has procedurally misjoined defendant Lial in this action in violation of Fed. R. Civ. P. 20 and 21 and applicable case law.

82.     Courts find defendants procedurally misjoined when the claims against them are factually distinct and plaintiff cannot satisfy Fed. R. Civ. P. 20 (governing permissive joinder of parties). *Goodwin v. Kojian*, 2013 WL 1528966, at *3 (C.D. Cal. Apr. 12, 2013) ("Fraudulent, or procedural, misjoinder looks at the factual commonality among the plaintiff's claims against different defendants and determines if they are sufficient to satisfy the standards provided in Federal Rule of Civil Procedure 20."); *see also Greene*, 344 F.Supp.2d at 683–84 (when a non-

4836-2859-0683v.8 3710078-000091                DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main • (503) 778-5299 fax

diverse party cannot be properly joined under Fed. R. Civ. P. 20, that party is fraudulently misjoined and will not be considered by the court for diversity purposes).  Procedural misjoinder is found when, among other things, the claims against one defendant involve markedly different facts and evidence from the claims against another defendant—such as where the claims involve different circumstances, actions, or omissions; or different legal theories.  *See, e.g.*, *Greene*, 344 F.Supp.2d at 683–84 (claims against pharmaceutical manufacturer procedurally misjoined with claims against physicians and sales representatives, because "[i]ndividual circumstances, actions, and omissions were involved in each Plaintiff's choice to ingest the medication, as well as each Defendant's role in, and responsibility for, that decision"); *and Sutton*, 251 F.R.D. at 504 ("claims based on strict products liability against the removing Defendants are separate from Plaintiffs' claims of medical malpractice against the California Defendants").

### D.    The Claims Against Defendant Lial and the Individual and Backpage.com Defendants Arise Out of Different Transactions or Occurrences, Do Not Involve Shared Liability, and Concern Different Questions of Fact and Law.

#### 1.    The Claims Arise Out Of Different Transactions or Occurrences.

83.    On December 25 or 26, 2014, Tae Bum Yoon murdered Ms. Benson at the DoubleTree Hilton located at 1000 NE Multnomah St. in Portland, Oregon.  FAC at ¶ 4.  He has since been criminally convicted of her murder and is serving 18 years in prison.  FAC at ¶ 75.

84.    Plaintiff's claims against Lial are based on Yoon's murder of Benson.  FAC at ¶¶ 56–58(a-c).

85.    Plaintiff's claims against Individual Defendants and Backpage.com Defendants are based on allegations that the Backpage.com website was at least one Internet site through which Yoon could have contacted Benson, and Individual Defendants and Backpage.com Defendants somehow failed to prevent Yoon from doing so.  *See, e.g.*, FAC at ¶¶ 55, 65.  The FAC does not allege that Yoon posted any advertisements on Backpage.com; the sole allegation in connection to Individual Defendants and Backpage.com Defendants is that Yoon allegedly

4836-2859-0683v.8 3710078-000091                    DAVIS WRIGHT TREMAINE LLP
                                                                    1300 S.W. Fifth Avenue, Suite 2400
                                                                    Portland, Oregon  97201-5610
                                                                    (503) 241-2300 main • (503) 778-5299 fax

viewed and responded to an advertisement about Ms. Benson that a ***third party*** posted on the website, some unidentified number of months before attacking her in December 2014. [4]

86.    Only two of the alleged claims against Lial (Violation of ORS 30.867 (Sex Trafficking) and Negligent Infliction of Emotional Distress) are also alleged against the Individual and Backpage.com Defendants, but those claims are based on separate duties and facts, with no allegations that the defendants' violations were in any way related to each other. *See* FAC at ¶¶ 98–109.

87.    Thus, the claims against Defendant Lial and those against Individual Defendants and the Backpage.com Defendants arise out of different transaction or occurrences, do not involve shared liability, and concern different questions of fact and law.  Defendant Lial is fraudulently misjoined and her citizenship should not be considered for diversity purposes.

### 2.    The Complaint Does Not Allege Facts Supporting Joint and Several Liability.

88.    Claims are fraudulently misjoined where "[a]ny liability that may be found against [one defendant] would not be a basis for liability as to the other, and separate liability as to each could be found."  *Stone v. Zimmer, Inc.,* 2009 WL 1809990, at *4 (S.D. Fla. June 25, 2009) (manufacturer's sale of a defective product, and a doctor's malpractice in treating the resulting injury, did not combine "to cause a single injury" and therefore were improperly joined, as the defendants were "properly viewed as successive, rather than joint tortfeasors").

89.    The FAC alleges ***separate*** events or, ***at most, successive*** torts by Lial and the Individual and Backpage.com Defendants:  Plaintiff's claims against Lial are based on her purported failure to adopt policies designed to prevent sex trafficking at the DoubleTree Hotel, while the claims against the Backpage.com Defendants are based on the allegation that they allowed ads posted by third-parties about Ms. Benson to run on the website.  *See, e.g.*, FAC at

---

[4] For the same reasons that Plaintiff's claims are unrelated to those against Individual Defendants and Backpage.com Defendants, Plaintiff's claims are unrelated to those against UGC Tech Group C.V. and Atlantische Bedrijven C.V.

4836-2859-0683v.8 3710078-000091                    DAVIS WRIGHT TREMAINE LLP
                                      1300 S.W. Fifth Avenue, Suite 2400
                                      Portland, Oregon  97201-5610
                                      (503) 241-2300 main · (503) 778-5299 fax

¶¶ 33–79.  Notably, the FAC does not allege that Yoon ever posted any ad on Backpage.com or had any other connection to the website except that he reviewed and responded to an ad posted by another third party, as millions of users of Backpage.com and other websites do every day.

### 3.    The Claims Involve Different Evidence and Legal Issues.

90.    Even assuming Plaintiff could assert claims against the Backpage.com Defendants and Individual Defendants in these circumstances, they would involve entirely different evidence and questions of law as contrasted to claims against Lial (or against the other defendants generally).

91.    Plaintiff's claims against Lial concerning Benson's murder (to the extent they are even cognizable) center on Lial's role as an employee at the hotel where the murder took place. As pleaded in the FAC, Plaintiff's claims against Individual and Backpage.com Defendants are based on allegations that a third party posted ads about Benson on the website and, apparently, accusations and attacks against the website as a whole (which are precluded under federal law, 47 U.S.C. § 230).  The claims, and any evidence relating to them, are completely separate and unrelated.  *See, e.g.*, *Hughes v. Sears, Roebuck and Co.*, 2009 WL 2877424, at *6 (N.D.W.V. Sept. 3, 2009) (finding misjoinder of claims against manufacturer and retailer of treadmill with claims against doctor for misdiagnosis after plaintiff suffered injuries using the treadmill, noting "the evidence supporting these claims will be markedly different").

92.    Moreover, a central issue concerning the Individual and Backpage.com Defendants is Backpage.com's immunity from suit pursuant to the Communications Decency Act ("CDA").  Section 230 of the CDA states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  It expressly preempts state laws:  "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id*. § 230(e)(3).  Because the Backpage.com Defendants are being sued based entirely on third-party speech posted online, the claims against them raise

4836-2859-0683v.8 3710078-000091

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

issues of law entirely distinct from the claims concerning any policies or practices of the Doubletree Hotel. *See Lyons v. Am. Tobacco Co.*, 1997 WL 809677 at \*4, \*6 (S.D. Ala. Sep. 30, 1997) (denying motion to remand and holding that parties were fraudulently misjoined in part because claims of misjoined parties would involve different "affirmative defenses").

93.     Furthermore, Plaintiff's tack demonstrates that the fraudulent misjoinder doctrine is critical for claims relating to the Internet. No case has ever held that a website could be liable for the actions of an individual who simply posted or viewed content on the site. Proper application of the fraudulent misjoinder doctrine in this context and as regards the Internet is thus especially important. The reason Plaintiff seeks to avoid federal court is obvious, as in over 300 cases federal courts have held that Section 230 broadly immunizes websites from all claims that arise from third-party content. If Plaintiff can deprive Backpage.com of its right to a federal forum based on conclusory allegations that cannot support claims against the website *at all*, then online providers across the Internet are at risk. For example, consider claims against Yelp! (for critical reviews posted by third parties), Google (for not blocking allegedly harmful websites), eBay (for allegedly harmful products or services sold by third parties)—a plaintiff could avoid federal court (and thereby seek to avoid the broad and exacting enforcement of Section 230 that federal courts have provided) by merely alleging that a resident of a state might have had some type of interaction with someone about whom a user posted challenged content, regardless of the fact that the online providers had nothing whatsoever to do with the later interactions or the content *except that they provided an online forum*.

94.     In short, the Plaintiff's claims about the operation of the Backpage.com website – a website on which millions of third parties viewed millions of online advertisements – simply have no connection with, and will involve markedly different evidence and legal issues than, Plaintiff's claim that misjoined defendant Lial should have adopted policies relating to the operation of DoubleTree Hotel.

4836-2859-0683v.8 3710078-000091                    DAVIS WRIGHT TREMAINE LLP
                                                  1300 S.W. Fifth Avenue, Suite 2400
                                                    Portland, Oregon  97201-5610
                                              (503) 241-2300 main · (503) 778-5299 fax

WHEREFORE, Individual Defendants remove this action from the Circuit Court of the State of Oregon for the County of Multnomah to the Portland Division of the United States District Court for the District of Oregon.

DATED this 14th day of March, 2018.

**DAVIS WRIGHT TREMAINE** LLP


By  s/ Tim Cunningham
  Tim Cunningham, OSB #100906
  timcunningham@dwt.com
  Telephone: (503) 241-2300
  Facsimile: (503) 778-5299

  Attorneys for Defendants Leeward Holdings, LLC,
  Camarillo Holdings, LLC, Dartmoor Holdings, LLC,
  IC Holdings, LLC, Backpage.com, LLC, Website
  Technologies, LLC, Amstel River Holdings, LLC,
  Lupine Holdings, LLC, Kickapoo River Investments,
  LLC, CF Holdings GP, LLC, CF Acquisitions, LLC,
  Carl Ferrer, Michael Lacey and James Larkin

4836-2859-0683v.8 3710078-000091    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# Exhibit T

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
JANE DOE NO. 1, JANE DOE NO. 2, and                 )
JANE DOE NO. 3,                                     )
                                                    )
             Plaintiffs,                            )
                                                    )
      v.                                            )        C.A. No. 17-cv-11069-LTS
                                                    )
BACKPAGE.COM, LLC, CARL FERRER,                     )
MICHAEL LACEY, and JAMES LARKIN,                    )
                                                    )
             Defendants.                            )
_____               )

## ASSENTED-TO MOTION FOR ADMISSION PRO HAC VICE

Pursuant to Local Rule 83.5.3 of the United States District Court for the District of

Massachusetts, Defendants Backpage.com, LLC, Carl Ferrer, Michael Lacey, and James Larkin

hereby move that James C. Grant, Robert Corn-Revere, and Ronald London of the law firm

Davis Wright Tremaine LLP be admitted *pro hac vice* in the above-captioned matter. Robert A.

Bertsche and Jeffrey J. Pyle of Prince Lobel Tye LLP in Boston will remain as counsel to

defendants.

In support of this motion, defendants state that Attorneys Grant, Corn-Revere and

London have particularized knowledge of the facts and legal issues in this case. In further

support of this motion, attached hereto as Exhibits A, B and C are certificates establishing the

qualifications of Mr. Grant, Mr. Corn-Revere, and Mr. London, respectively, to practice in this

Court.

Plaintiffs have assented to the relief requested in this motion.

WHEREFORE, Defendants Backpage.com, LLC, Carl Ferrer, Michael Lacey, and James

Larkin respectfully request that this motion for admission *pro hac vice* be allowed.

Respectfully submitted,

BACKPAGE.COM, LLC, CARL FERRER,
MICHAEL LACEY and JAMES LARKIN,

By their attorneys,

/s/    *Jeffrey J. Pyle*
Robert A. Bertsche (BBO #554333)
Jeffrey J. Pyle (BBO #647438)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
(617) 456-8143 (tel.); (617) 456-8100 (fax)
rbertsche@PrinceLobel.com
jpyle@PrinceLobel.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2017, the within document filed through the CM/ECF
system will be sent electronically to the registered participants as identified on the Notice of
Electronic Filing and by first-class mail to any non-registered participants.

/s/    *Jeffrey J. Pyle*
Jeffrey J. Pyle

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE NO. 1, JANE DOE NO. 2, and JANE DOE NO. 3, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | C.A. No. 17-cv-11069-LTS |
| BACKPAGE.COM, LLC, CARL FERRER, MICHAEL LACEY, and JAMES LARKIN, ) ) ) | |
| Defendants. ) ) ) | |

## _PRO HAC VICE_ CERTIFICATE OF JAMES C. GRANT

Pursuant to Local Rule 83.5.3 of the United States District Court for the District of Massachusetts, I hereby certify the following:

1.     I am a partner in the law firm Davis Wright Tremaine LLP, 1201 Third Avenue, Suite 2200, Seattle, Washington 98101, and a member of the bar of the State of Washington. I am in good standing in every jurisdiction in which I am admitted to practice.

2.     I am not the subject of disciplinary proceedings in any jurisdiction in which I am a member of the bar.

3.     I have not previously had a _pro hac vice_ admission to this court (or admission for a limited purpose under Local Rule 83.5.3) revoked for misconduct.

4.     I have read and agree to comply with the Local Rules for the United States District Court for the District of Massachusetts.

James C. Grant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JANE DOE NO. 1, JANE DOE NO. 2, and JANE DOE NO. 3, )<br>)<br>) | |
| Plaintiffs, )<br>) | |
| v. )<br>) | C.A. No. 17-cv-11069-LTS |
| BACKPAGE.COM, LLC, CARL FERRER, MICHAEL LACEY, and JAMES LARKIN, )<br>)<br>) | |
| Defendants. )<br>) | |

## _**PRO HAC VICE**_ **CERTIFICATE OF ROBERT CORN-REVERE**

Pursuant to Local Rule 83.5.3 of the United States District Court for the District of Massachusetts, I hereby certify the following:

1. I am a partner in the law firm Davis Wright Tremaine LLP, 1919 Pennsylvania Avenue NW, Suite 800, Washington, DC, and a member of the District of Columbia bar. I am in good standing in every jurisdiction in which I am admitted to practice.

2. I am not the subject of disciplinary proceedings in any jurisdiction in which I am a member of the bar.

3. I have not previously had a _pro hac vice_ admission to this court (or admission for a limited purpose under Local Rule 83.5.3) revoked for misconduct.

4. I have read and agree to comply with the Local Rules for the United States District Court for the District of Massachusetts.

Robert Corn-Revere

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE NO. 1, JANE DOE NO. 2, and JANE DOE NO. 3, ) ) ) ) Plaintiffs, ) ) v. ) ) BACKPAGE.COM, LLC, CARL FERRER, ) MICHAEL LACEY, and JAMES LARKIN, ) ) Defendants. ) ) | C.A. No. 17-cv-11069-LTS |

## *PRO HAC VICE* CERTIFICATE OF RONALD LONDON

Pursuant to Local Rule 83.5.3 of the United States District Court for the District of Massachusetts, I hereby certify the following:

1.    I am of counsel to the law firm Davis Wright Tremaine LLP, 1919 Pennsylvania Avenue NW, Suite 800, Washington, DC, and a member of the Maryland bar and District of Columbia bar. I am in good standing in every jurisdiction in which I am admitted to practice.

2.    I am not the subject of disciplinary proceedings in any jurisdiction in which I am a member of the bar.

3.    I have not previously had a *pro hac vice* admission to this court (or admission for a limited purpose under Local Rule 83.5.3) revoked for misconduct.

4.    I have read and agree to comply with the Local Rules for the United States District Court for the District of Massachusetts.

Ronald London

# **<u>Exhibit U</u>**



Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045

**James Grant**
206-757-8096 tel
206-757-7096 fax

jimgrant@dwt.com

**VIA EMAIL**

April 20, 2018

Carl Ferrer
Backpage.com, LLC
c/o Nanci Clarence, Clarence Dyer & Cohen LLP
899 Ellis Street
San Francisco, CA 94109

> **Re:**   **Termination of Representation**

Dear Mr. Ferrer**:**

This is to inform you that, in light of your April 6, 2018 letter and other actions, Davis Wright Tremaine LLP ("DWT") must withdraw from representation in all matters and cases as counsel for you, Backpage.com, LLC, and all related entities owned or controlled by you, including UGC Tech Group CV; Website Technologies, LLC; Altantische Bedrijven CV; Amstel Holdings, LLC; Lupine Holdings LLC; Kickapoo River Investments LLC, CF Holdings GP LLC, and CF Acquisitions LLC.

Attached is a list of the pending civil cases in which DWT has appeared.  We have annotated the list to indicate pending motions (including two dismissal motions we plan to withdraw) and upcoming deadlines, so that you may secure replacement counsel and take steps as you deem appropriate regarding these cases.  If you would like us to transfer the pleadings files for the cases, please let me know so we can discuss arrangements.

In the coming week, DWT will file notices of withdrawal in the cases, in which we will indicate that you are currently represented by Clarence Dyer and Cohen, LLP.  We will also alert co-counsel in the respective cases about DWT's withdrawal, and, although we cannot speak for these other firms, we expect that they will also seek to withdraw, as DWT has.

Sincerely,

DAVIS WRIGHT TREMAINE LLP

James C. Grant

Enclosure

**ATTACHMENT**
**Litigation Matters/Clients From Which Davis Wright Tremaine, LLC Will Withdraws as Counsel (parties in bold)**

| Plaintiff(s) | | Defendant(s) | Case No./Court | Upcoming Deadlines of Note | |
|---|---|---|---|---|---|
| *Rodgers* | *v.* | ***Backpage.com, LLC, Carl Ferrer, Atlantische Bedrijven, C.V,*** | No. 38-CV-2017-900041.00 (Houston Cty. Cir. Ct., Alabama) | Defendants Reply on Motions to:<br>- Dismiss/Def. Statement<br>- Strike PSI Report<br>- Set Scheduling Order<br><br>Hearing on Motions | 5/15/18<br>5/15/18<br>5/15/18<br><br>5/31/18 |
| *Jane Doe* | *v.* | ***Carl Ferrer Backpage.com, LLC, Atlantische Bedrijven, C.V. UGC Tech Group C.V.*** | No. MCC1700068 (Super. Ct. Riverside Cty., Cal.) | Hearing on demurer<br><br>Case management conference | 5/1/18<br><br>5/1/18 |
| *Florida Abolitionist & Jane Doe* | *v.* | ***Backpage.com, LLC Carl Ferrer EvilEmpire.com BigCity.com*** | No. 6:17-cv-218-Orl-28TBS (M.D. Fla.) | Plaintiffs deadline to file amended complaint | 4/30/18 |
| ***Backpage.com, LLC*** | *v.* | *Sheriff Thomas J. Dart* | No. 15-cv-06340 (N.D. Ill.) | Status Conference | 4/26/18 |

| Plaintiff(s) | | Defendant(s) | Case No./Court | Upcoming Deadlines of Note | |
|---|---|---|---|---|---|
| *Ambrose* | *v.* | ***Backpage.com, LLC*** | No. 17 L4979<br>(Cook Cty. Cir. Ct., Ill.) | Opposition to Plaintiff's Motion to Redact Ex. B | 5/10/18 |
| | | | | Reply | 5/31/18 |
| | | | | Plaintiff's Opposition to Defendants' Motions to:<br>- Dismiss/Def. Statement<br>- Strike PSI Report | 5/21/18<br>5/21/18 |
| | | | | Defendants Reply on Motions to:<br>- Dismiss/Def. Statement<br>- Strike PSI Report | 6/4/18<br>6/4/18 |
| | | | | Status Conf. on Motions | 6/5/18 |
| ***Backpage.com LLC*** | *v.* | *Healey* | No. 17-2090 (1st Cir.) | Appellee's Brief | 4/30/18 |
| | | | | Appellant's Reply Brief | 5/14/18 |
| *Jane Doe Nos. 1, 2 & 3* | *v.* | ***Backpage.com, LLC***<br>***Carl Ferrer*** | No. 17-cv-11069-LTS (D. Mass.) | Response to Amended Complaint | 5/3/18 |
| ***Backpage.com LLC*** | *v.* | *Hawley* | No. 18-1096 (8th Cir.) | Appellant's Reply Brief | 4/26/18<br>(extension to be filed until 5/3/18) |
| *Hawley* | *v.* | ***Backpage.com*** | No. 1711-CC00589<br>(11th Jud. Dist. Mo.) | | |

| Plaintiff(s) | | Defendant(s) | Case No./Court | Upcoming Deadlines of Note | |
|---|---|---|---|---|---|
| *Kocher* | *v.* | **Backpage.com, LLC**<br>**Carl Ferrer**<br>**UGC Tech Group, LLC**<br>**Website Technologies, LLC**<br>**Altantische Bedrijven C.V.**<br>**Amstel Holdings, LLC**<br>**Lupine Holdings, LLC**<br>**Kickapoo River, LLC**<br>**CF Holdings, LLC**<br>**CF Acquisitions LLC** | No. 3:18-cv-00449-SB (D. Or.) | Opposition to Motion for Remand | 4/27/18 |
| | | | | | |
| *Plaintiff XXXXXXX* | *v.* | **Backpage.com, LLC**<br>**Carl Ferrer**<br>**UGC Tech Group, LLC**<br>**Website Technologies, LLC**<br>**Altantische Bedrijven C.V.**<br>**Amstel Holdings, LLC**<br>**Lupine Holdings, LLC**<br>**Kickapoo River, LLC**<br>**CF Holdings, LLC**<br>**CF Acquisitions LLC** | No. DC-17-00951<br>(44th Jud. Dist. Ct. Dallas, Tex.) | Motion to Dismiss briefed, argued and awaiting decision | |
| | | | | | |
| *Jane Doe #1* | *v.* | **Backpage.com, LLC**<br>**Carl Ferrer**<br>**Altantische Bedrijven C.V.**<br>**UGC Tech Group, LLC**<br>**Amstel Holdings, LLC**<br>**Lupine Holdings**<br>**Kickapoo River, LLC**<br>**CF Holdings GP**<br>**CF Acquisitions LLC** | NO. 2018-04-501<br>(270th Jud. Dist. Ct. Houston, Tex.) | Opposition to Motion to Dismiss<br><br>NOTE:  Defendants' counsel intend to withdraw the motion to dismiss by April 25, 2018 unless directed otherwise | 4/27/18 |
| | | | | | |

3

| Plaintiff(s) | | Defendant(s) | Case No./Court | Upcoming Deadlines of Note | |
|---|---|---|---|---|---|
| *Jane Doe #2* | *v.* | **Backpage.com, LLC**<br>**Carl Ferrer**<br>**Altantische Bedrijven C.V.**<br>**UGC Tech Group, LLC**<br>**Amstel Holdings, LLC**<br>**Lupine Holdings**<br>**Kickapoo River, LLC**<br>**CF Holdings GP**<br>**CF Acquisitions LLC** | No. 2018-09781<br>(270th Jud. Dist. Ct. Houston, Tex.) | Motion to Dismiss | 4/23/18 |
| | | | | | |
| *Jane Doe #3* | *v.* | **Backpage.com, LLC** | No. 2018-12781<br>(125th Jud. Dist. Ct. Houston, Tex.) | Opposition to Motion to Dismiss<br><br>NOTE:  Defendants' counsel intend to withdraw the motion to dismiss by April 25, 2018 unless directed otherwise | 5/4/18 |
| | | | | | |
| *Jane Doe #4* | *v.* | **Backpage.com, LLC**<br>**Carl Ferrer**<br>**Altantische Bedrijven C.V.**<br>**UGC Tech Group, LLC**<br>**Amstel Holdings, LLC**<br>**Lupine Holdings**<br>**Kickapoo River, LLC**<br>**CF Holdings GP**<br>**CF Acquisitions LLC** | No. 2018-12747<br>(157th Jud. Dist. Ct. Houston, Tex.) | Motion to Dismiss | 5/4/18 |
| | | | | | |

| Plaintiff(s) | | Defendant(s) | Case No./Court | Upcoming Deadlines of Note | |
|---|---|---|---|---|---|
| *R.O. & K.M* | *v.* | *Backpage.com, LLC*<br>*Carl Ferrer*<br>*UGC Tech Group, LLC*<br>*Website Technologies, LLC*<br>*Altantische Bedrijven C.V.*<br>*Amstel Holdings, LLC*<br>*Lupine Holdings*<br>*Kickapoo River, LLC*<br>*CF Holdings GP*<br>*CF Acquisitions LLC* | No. 17-2-04897-1<br>(Super. Ct. Pierce Cty.,<br>Wash.) | Substantial document production<br>due per court order of 1/12/18<br><br>Disclosure of rebuttal witnesses<br><br>Discovery cutoff | <br><br>5/23/18<br><br>7/25/18 |
| | | | | | |
| *O.L.* | *v.* | *Backpage.com, LLC*<br>*Carl Ferrer*<br>*UGC Tech Group, LLC*<br>*Website Technologies, LLC*<br>*Altantische Bedrijven C.V.*<br>*Amstel Holdings, LLC*<br>*Lupine Holdings*<br>*Kickapoo River, LLC*<br>*CF Holdings GP*<br>*CF Acquisitions LLC* | No. 13-2-13382-8<br>(Super. Ct. Pierce Cty.,<br>Wash.) | | |