# **Exhibit C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BACKPAGE.COM, LLC, | |
| Plaintiff, | Case No. 1: 15-cv-06340 |
| v. | Judge John J. Tharp, Jr. |
| THOMAS J. DART, Sheriff of Cook County, Illinois, | Magistrate Judge Young B. Kim |
| Defendant. | |

## NON-PARTY DAVIS WRIGHT TREMAINE LLP'S
## OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS

Non-party respondent, Davis Wright Tremaine LLP ("DWT"), by counsel, respectfully submits this response in opposition to the motion of defendant Thomas J. Dart, Sheriff of Cook County ("Sheriff Dart"), for sanctions against Backpage.com ("Backpage") and its attorneys ("Motion").[1] DWT formerly represented Backpage in this action, but withdrew from that representation with the Court's approval on April 26, 2018. (Dkt. No. 228.) Backpage and Carl Ferrer (its CEO and owner) have been notified of Sheriff Dart's Motion, DWT's withdrawal, and the Court's May 17, 2018 deadline for responses, so that they may respond to the Motion as they choose through substitute counsel.

## INTRODUCTION

Sheriff Dart's Motion is legally and factually baseless. From a legal perspective, the Motion flows from the same flawed premise Sheriff Dart has advanced in multiple forms at various

---

[1] Under Rule 1.6(b)(5) of the ABA Model Rules of Professional Conduct, an attorney may use privileged communications in defense of a claim challenging the attorney's conduct. *See* N.D. Ill. L.R. 83.50. However, DWT is not using privileged information in response to the Motion at this time; it is unnecessary because Sheriff Dart has established no basis for the Motion under the law or the facts. However, DWT respectfully reserves all rights, including rights under Rule 1.6(b)(5).

stages of the litigation—that there could be no constitutional claim if he could show that advertisements posted on Backpage.com related to or resulted in illegal conduct.  (Dkt. Nos. 126, 130, 143, 145, 157, 189.)  Sheriff Dart now asks this Court to impose sanctions, under its inherent authority and 28 U.S.C. § 1927, based on plea agreements entered April 5, 2018 by Carl Ferrer on behalf of himself and Backpage that, Sheriff Dart claims, show that this case was a "hoax" from the beginning.  (Mot. at 1.)  This argument is fundamentally wrong, and is no more than a reincarnation of the same "illegality" defense Sheriff Dart has attempted to advance and the Court has rejected repeatedly because it is based on a fatally flawed premise.  (*See* Aug. 9, 2016 Tr., at 7:19-7:21, 9:12-9:15, Dkt. No. 174; Dkt. No. 192.)  Sheriff Dart wants to put Backpage (and its lawyers) on trial, but this case is about *his* improper and unconstitutional efforts to use pressure tactics to impose an informal prior restraint, an illegitimate exercise of governmental power that has been condemned under the First Amendment for over half a century.  *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015).

Whatever else may be the legal significance of Mr. Ferrer's plea agreement in 2018, it cannot retroactively cure the Sheriff's illegal actions in 2015 or override the constitutional claims that formed the basis of this case.  More to the point here, Sheriff Dart's *post hoc* challenges cannot serve as a rationale for imposing sanctions on the lawyers who successfully advanced the constitutional claims.  This Court should reject this argument once again, just as it did when it explained that "the sheriff's theory completely ignores the law of prior restraint as the Seventh Circuit has interpreted it in this case specifically," (Aug. 9, 2016 Tr., at 7:19-7:21, Dkt. No. 174), and concluded "in the context of [this] case where the claim is that the sheriff has imposed an informal prior restraint on speech, the illegality defense isn't a viable defense."  (*Id.* at 9:12-9:15.)

Sheriff Dart's Motion is also factually baseless. The sole bases for Sheriff Dart's argument are (1) to pit Mr. Ferrer's statements in the recent plea agreements against his earlier sworn statements in declarations and deposition testimony in this case, and (2) to raise (really, raise again) certain alleged "red flags," previously known to the Sheriff and the Court, which are nothing more than legally appropriate actions in this and other cases (like objecting to subpoenas, hiring counsel, and asserting one's constitutional defenses). Whatever inducements may have led to Mr. Ferrer's recent plea agreements, the fact that the April 5, 2018 plea agreements differ from Mr. Ferrer's earlier statements cannot provide a basis for sanctions against DWT. Sheriff Dart offers no evidence—none at all—to support his request for sanctions. Sheriff Dart provides nothing but innuendo, intemperate invective, and speculation to assert that DWT "must have known" or "should have known" that Mr. Ferrer would change and contradict averments he made not just in this case but in a half dozen others.

The Sheriff's Motion is unprecedented under the law and the standards in this Court and the Seventh Circuit to impose sanctions on counsel because Sheriff Dart does not come close to showing that legal counsel acted with the requisite bad faith or that legal counsel "acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice." *See Secure Leverage Group, Inc. v. Bodenstein*, 558 B.R. 226, 249 (N.D. Ill. 2016) (Tharp, J.); *see also Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) (finding that courts use their inherent authority and section 1927 to sanction "bad-faith conduct" or raising baseless claims "despite notice of the frivolous nature of these claims"). This Court should deny the Motion.

## BACKGROUND

Because the Court has presided over this litigation for nearly three years, the background for the Motion can be summarized briefly.

On June 29, 2015, Sheriff Dart sent letters to the CEOs of Visa and MasterCard making numerous threats and demanding that the companies "immediately cease and desist from allowing your credit cards to be used to place ads on . . . Backpage.com." (Compl., Exs. B, C, Dkt. No. 2.) Within 48 hours, the card companies announced they would cease doing business with Backpage. (Ferrer Decl. ¶ 25, Dkt. No. 6; Zycherman Decl., Ex. G, Dkt. No. 7-1.) The Sheriff then issued a press release announcing that his demands to Visa and MasterCard had compelled them to "defund" and sever ties with Backpage. (Compl., Ex. A, Dkt. No. 2.)

Backpage filed suit on July 21, 2015, seeking injunctive and declaratory relief because the Sheriff's actions constituted an unconstitutional prior restraint under *Bantam Books*. (Compl., Dkt. No. 1.) Backpage also sought a temporary restraining order. (Dkt. Nos. 4, 5.) Backpage's complaint and TRO motion were supported by a twelve-page declaration from Mr. Ferrer that was supported with roughly 60 pages of exhibits. (*See* Ferrer Decl., Dkt. No. 6.) Mr. Ferrer's declaration attested to facts concerning Backpage and its operations, averring that users provided all content for ads they posted on the website; Backpage had long imposed and enforced rules to prevent improper content or misuse of the site; Backpage employed more than 100 people in moderation efforts and blocked more than 1 million ads per month; Backpage had regularly worked with and supported law enforcement; Mr. Ferrer and others representing Backpage previously met and communicated with the Sheriff's office to explain efforts to "prevent misuse of our website and to partner with law enforcement"; and, because of Sheriff Dart's actions,

Backpage removed charges for ads on the website, cutting off essentially all of the website's revenues. (*Id.* at ¶¶ 4, 7-11, 14-15, 16-17, 18-21, 27-28.)

Mr. Ferrer's declaration was one of many he filed in several cases starting in 2012 (three years before he executed the declarations in this case), in which he similarly explained Backpage's efforts to screen third-party content, to prevent misuse of the site, to cooperate with law enforcement, and to regularly report ads of concern to authorities.[2]

This Court granted a Temporary Restraining Order (Dkt. No. 33), but denied Backpage's request for a preliminary injunction. (Dkt. Nos. 59, 63, 66.) The Seventh Circuit reversed and entered a preliminary injunction, concluding that ads on Backpage.com were constitutionally protected speech, rejecting the Sheriff's arguments that all such ads were criminal, and holding that "a public official who tries to shut down an avenue of expression of ideas and opinions through actual or threatened imposition of government power or sanction is violating the First Amendment." *Dart*, 807 F.3d at 230, 234, 239 (internal quotation marks omitted).

After the case returned to this Court, six times Sheriff Dart filed motions and other pleadings attempting to advance his theory that all ads on the Backpage.com website were illegal and therefore his actions could be excused even if they did infringe First Amendment rights. (*See* Mot. Strike, at 3-6, Dkt. No. 126; Mot. Compel Disc., Dkt. No. 130; Bench Mem., at 1-11, Dkt. No. 143; Supp. Mem. Re Mot. Compel, at 5-11, Dkt. No. 145; Mot. Leave to Amend Affirm.

---

[2] Several of these declarations (without exhibits) are attached as Exhibits 1-3, including Mr. Ferrer's declarations from *Backpage.com, LLC v. McKenna*, No. 2:12-00954-RSM (W.D. Wash.) (declaration filed June 4, 2012) (Ex. 1); *Backpage.com, LLC v. Cooper*, No. 3:12-cv-00654 (M.D. Tenn.) (declaration filed June 27, 2012) (Ex. 2); and *Backpage.com, LLC v. Hoffman*, No. 2:13-cv-03952-DMC (D.N.J.) (declaration filed June 26, 2013) (Ex. 3). Mr. Ferrer filed similar declarations in two other actions, *Backpage.com, LLC v. Healey*, No. 16-CV-10236-ADB-SEALED (D. Mass.) (declaration filed Feb. 4, 2015); *In re In re Subpoenas to Produce Documents to Grand Jury Nos. 15823 and 16093*, No. GJ12-172 (W.D. Wash.) (declaration filed June 27, 2012).

Defenses, Dkt. No. 155; Mot. Leave to File Sur-Resp., Dkt. No. 189.)  The Court rejected the

Sheriff's arguments every time, correctly concluding that "the sheriff's theory completely ignores

the law of prior restraint as the Seventh Circuit interpreted it in this case specifically," and "the

illegality defense isn't a viable defense" in this case.  (Aug. 9, 2016 Tr., at 7:19-7:21, 9:12-9:15,

Dkt. No. 174; Dkt. No. 192.)

On April 5, 2018, in the federal action in Arizona Mr. Ferrer entered a plea agreement to

one count of conspiracy (18 U.S.C. § 371) and entered a plea agreement on behalf of Backpage

and other corporate entities controlled by Mr. Ferrer to one count of money laundering (18 U.S.C.

§ 1956(h)).  (*See* Plea Agreements, *United States v. Ferrer*, No. 18-464-PHX-DJH (D. Ariz.);

*United States v. Backpage.com, LLC*, No. 18-465-PHX-DJH (D. Ariz.), Mot., Exs. A, B.)  DWT

was not counsel to Mr. Ferrer or Backpage in connection with these plea agreements.

DWT and Schiff Hardin LLP moved to withdraw from representation of Backpage in this

action on April 24, 2018.  (Dkt. No. 220.)[3]  The Court conducted a hearing, including *in camera*

proceedings with counsel for the two firms to address the withdrawal request, and thereafter

granted the motion. (Dkt. No. 228.)

## ARGUMENT

### I.  Sheriff Dart's Arguments Are Legally Irrelevant and Merely Attempt to Resurrect His Oft-Rejected "Illegality" Defense.

Sheriff Dart asserts that this lawsuit constituted a fraud on the court, claiming that it was

based on "untrue facts from the beginning, and thus a hoax." (Mot. at 1.)  Citing Mr. Ferrer's plea

agreement, Sheriff Dart argues (contrary to his own July 1, 2015 press release) that "the reason

credit cards companies [sic] stopped doing business with Backpage was due to the illegal nature

---

[3] In addition to DWT, lawyers from Schiff Hardin LLP, Paul Hastings LLP and Henze Cook Murphy, PLLC filed appearances on behalf of Backpage in this matter.

of Backpage's business, and not the Sheriff's letters to the credit card companies." (*Id.* at 2.)  Based on this, Sheriff Dart concludes that "[f]rom day one, Backpage's complaint against the Sheriff was a fraud, neither grounded in fact nor [sic] law." (*Id.* at 3.)  This hyperbolic claim fails to acknowledge the most elementary principles of First Amendment law (as well as the high standard for imposing sanctions), and it ignores the application of that precedent here.

Any sanction pursuant to 28 U.S.C. § 1927 or the court's inherent authority would require an explicit finding that Backpage's counsel acted with "subjective bad faith" or that counsel's conduct was extremely negligent, reckless, or indifferent. *See Grochocinski*, 719 F.3d 785 at 799; *Mi-Jack Products v. Int'l Union of Operating Engineers, Local 150*, No. 94 C 6676, 1996 WL 149133, at *5 (N.D. Ill. Mar. 28, 1996).  As this Court and the Seventh Circuit have acknowledged, sanctions are warranted "when an attorney has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice." *Secure Leverage Group, Inc.*, 558 B.R. at 249 (Tharp, J.).  The Seventh Circuit has recognized that the imposition of attorneys' fees is appropriate only where the attorney intentionally acts without a plausible legal or factual basis. *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir. 1984).  Here, Sheriff Dart cannot demonstrate that Backpage's claim—supported by Supreme Court First Amendment precedent and the Seventh Circuit's decision in this case—lacks "a colorable basis in the law" to support sanctions.

The Seventh Circuit articulated the straightforward legal principle that controls this case: "[A] public official who tries to shut down an avenue of expression and ideas and opinions through 'actual or threatened imposition of government power or sanction' is violating the First Amendment." *Dart*, 807 F.3d at 230 (quoting *Am. Family Ass'n, Inc. v. City and Cty. of San Francisco*, 277 F.3d 1114, 1125 (9th Cir. 2002)).  This has been the law for more than five decades.

7

*See Bantam Books*, 372 U.S. at 72.  From its early First Amendment cases the Supreme Court has described prior restraints as "the essence of censorship," *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713 (1931), and "the most serious and the least tolerable infringement on First Amendment rights," *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  Accordingly, the Seventh Circuit applied those principles in this case and held that "[t]hreatening penalties for future speech goes by the name of 'prior restraint,' and a prior restraint is the quintessential first-amendment violation." *Dart*, 807 F.3d at 235 (quoting *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009)).  Given this well-established legal doctrine, Sheriff Dart's assertion that Plaintiff's arguments were legally unsupported is frivolous.

It has never been disputed that Sheriff Dart assembled a team "to take down Backpage.com" "legally or otherwise," and that they developed "an out-of-the-box idea" to use "the financial route" of pressuring Visa and MasterCard.  (*See* Zycherman Decl., Ex. G, Dkt. No. 7; *see also* Aug. 20, 2015 Prelim. Inj. Hr'g Tr., at 51:13-22, 75:3-75:8, Dkt. No. 65.)  This resulted in the June 29, 2015 letters to the CEOs of Visa and MasterCard demanding that they "immediately cease and desist from allowing your credit cards to be used to place ads on . . . Backpage.com." (Compl., Exs. B, C, Dkt. 2.)  The companies capitulated within 48 hours, and Sheriff Dart was quick to claim credit for this outcome, issuing a press release proclaiming that his demand compelled Visa and MasterCard to sever ties with Backpage.  (Compl., Ex. A.)  Given the law of prior restraint, Sheriff Dart's argument that the constitutional claims lacked any basis in fact or law cannot be taken seriously.

Sheriff Dart points to Mr. Ferrer's April 5, 2018 plea agreement to argue that "the speech at issue was never protected by the first amendment, and Backpage was a content provider and distributor of illegal, non-protected speech."  (Mot. at 4.)  This is simply another pass at Sheriff

Dart's "illegality defense," which this Court has considered and rejected multiple times already.[4]

Its premise is that Sheriff Dart cannot be held responsible for any unconstitutional behavior if, in the end, his beliefs about the illegality of the material are borne out (at least according to the statements of one party in a negotiated plea agreement). It is a philosophy that would bar constitutional claims against law enforcement officials who conduct illegal searches or beat confessions out of prisoners and then claim justification based on their results. But it is bedrock law that the government cannot retroactively justify unconstitutional acts in this way. *See, e.g.,* *Ft. Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 65-67 (1989) (prior restraint without advance adversary hearing cannot be justified by later findings); *A Quantity of Books v. Kansas*, 378 U.S. 205, 211-12 (1964) (invalidity of illegal search cannot be purged by subsequent finding that books were obscene).

Sheriff Dart's citation to Mr. Ferrer's plea agreement does not change this basic law or its application here. Not even Mr. Ferrer's current statement that he believed "most" ads related to prostitution can cloak Sheriff Dart's censorship campaign with a veneer of legality. As the Seventh Circuit explained:

> Nor is Sheriff Dart on solid ground in suggesting that everything in the adult section of Backpage's website is criminal, violent, or exploitive. Fetishism? Phone sex? Performances by striptease artists? (Vulgar is not violent.) . . . The district judge remarked that "the majority of the advertisements [in Backpage's adult section] are for sex"—but a majority is not all, and not all advertisements for sex are advertisements for illegal sex.

*Dart*, 807 F.3d at 234. Mr. Ferrer's plea agreement—and the Sheriff's current argument—also does not take into account the millions of ads posted in non-adult categories. As a consequence, nothing in the plea agreement addresses the essence of the constitutional claim, that Sheriff Dart

---

[4] The last time Sheriff Dart repeated this argument the Court instructed the parties not to submit any further briefing unless the Court requested it. (Dkt. No. 192.)

9

was "using the power of his office to threaten legal sanctions against the credit-card companies for facilitating future speech, and by doing so he is violating the First Amendment unless there is *no* constitutionally-protected speech in the ads on Backpage's website—and no one is claiming that." *Id*. at 231 (emphasis in original).

Sheriff Dart also attempts to revive his "causality" argument, claiming there was no basis for the Plaintiff to argue that the credit card companies severed ties to Backpage in response to his letters and that they instead withdrew service because of the nature of the advertisements on the site. (Mot. at 17.) This generalization is incorrect, but more importantly, it misses the point. The constitutional violation occurred when Sheriff Dart issued the threat in the first place. The Seventh Circuit explained that "such a threat is actionable and thus can be enjoined even if it turns out to be empty—the victim ignores it, and the threatener folds his tent." *Dart*, 807 F.3d at 231.

None of the cases Sheriff Dart cites even remotely supports the imposition of sanctions in these circumstances because the sanctioned attorneys in those cases pursued legal theories they knew or should have known were meritless. In *Reichmann v. Neumann*, the district court awarded sanctions pursuant to its inherent authority because the plaintiff and his counsel pursued the case even though it was clear from the outset that plaintiff's claim to recover a previously-settled debt was "utterly devoid of a legal of factual basis." 553 F.Supp.2d 307, 320 (S.D.N.Y. 2008). In *In re Narragansett Clothing Corp*., the bankruptcy court awarded sanctions against a Chapter 11 trustee's attorney under Bankruptcy Rule 9011 because at no time during the matter, including at a hearing on the merits, was there a justifiable reason to litigate the claim. 143 B.R. 582, 584 n. 2 (Bankr. D.R.I. 1992).

In *In re Evergreen Sec., Ltd.*, the bankruptcy court awarded sanctions pursuant to its inherent powers after finding that respondents had engaged in bad faith by filing a frivolous recusal

motion with false allegations. 384 B.R. 882, 933 (Bankr. M.D. Fla). In *Kotsilieris v. Chalmers*, the Seventh Circuit affirmed the district court's finding that counsel acted in bad faith due to extreme negligence where counsel failed to protect its client's right to a jury trial, but then proceeded with the case as if that right had been preserved and forced the other side to litigate the jury demand issue. 966 F.2d 1181, 1183 (7th Cir. 1992). Similarly, in *Lightspeed Media Corp. v. Smith*, the Seventh Circuit affirmed the district court's award of sanctions under section 1927 where counsel pursued claims that had no conceivable merit. 761 F.3d 699, 708-09 (7th Cir. 2014). These cases bear no resemblance to this case.[5]

Both the Supreme Court and the Seventh Circuit have cautioned that the exercise of inherent powers and sanctions under section 1927 should be strictly construed and used sparingly. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Indianapolis Colts v. Mayor & City Council of Baltimore*, 775 F.2d 177, 182 (7th Cir. 1985). Accordingly, courts should refrain from imposing sanctions when a legal theory is plausible or has been accepted by another judge. *See Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1003-04 (7th Cir. 1996) (reversing award of sanctions and finding no bad faith where plaintiff's counsel relied on an unreversed district judge's decision); *Tuf-Flex Glass v. N.L.R.B.*, 715 F.2d 291, 298 (7th Cir. 1983) (denying motion for sanctions under section 1927 where the challenged legal basis, although unsuccessful,

---

[5] Sheriff Dart also string cites several decisions from the Northern District of Illinois that do not support the application of sanctions pursuant to this Court's inherent powers or Section 1927; indeed, the opinions cited by Sheriff Dart all involve sanctions under Rules 11 and 37. (Mot. at 11-12.) Rule 11 places a lower burden on movants requiring only a showing of objective unreasonableness on the part of the attorney signing the offending paper. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994). Because invoking the court's inherent authority is a higher burden that requires a showing of subjective or objective bad faith, these cases are not relevant to the Court's inquiry. *Id.* at 120. Similarly, the conduct in the Rule 37 cases has no bearing on this case because its addresses discovery orders and failing to timely supplement or correct a previous disclosure. Fed. R. Civ. P. 37(b), (c). In the first instance, Sheriff Dart cannot proceed under Rule 11 because he has not complied with the required safe harbor provision. More importantly, for the reasons discussed in this response, Sheriff Dart could not meet his burden under Rule 11 or Rule 37.

was plausible).  For example, in *Harriston v. Chicago Tribune Co.*, Judge Norgle declined to

impose sanctions under section 1927 when the court could not find that the filing of a motion to

disqualify was "so lacking in legal or factual basis as to be implausible."  136 F.R.D. 482, 485

(N.D. Ill. 1991); *see Sommerfield v. City of Chicago*, No. 08 C 3025, 2012 WL 13069769, at *2

(N.D. Ill. July 18, 2012) (Gottschall, J.) (declining to award sanctions under section 1927 against

counsel who was "mistaken and somewhat negligent in interpreting the relevant case law" when

filing a summary judgment motion); *see also Specht v. Google, Inc.*, 805 F. Supp. 2d 551, 559-60

(N.D. Ill. 2011) (Leinenweber, J.) (denying motion for sanctions under section 1927 and the court's

inherent authority where counsel acted unreasonably but not vexatiously by pursuing injunctive

relief that had a plausible legal basis).

In this case, Backpage's allegations—supported by decades of First Amendment

precedent—were far more than plausible; they were strong and they were meritorious.  As he has

done throughout this litigation, Sheriff Dart fails to explain why Backpage's First Amendment

claims lack merit under applicable law, nor has Sheriff Dart provided any reason to disregard the

Supreme Court's prior restraint precedent or the Seventh Circuit's decision.

## II.     Sheriff Dart's Efforts to Impose Sanctions on DWT Are Factually Baseless.

Sheriff Dart's Motion offers invective, innuendo, and gross speculation but no factual basis

to impose sanctions on DWT.[6]  The Sheriff disregards the record evidence supporting the claims

and arguments advanced about Backpage in this and other cases.  Sheriff Dart instead argues that

the Court should impose sanctions based on the recent plea agreements and alleged "red flags"

---

[6] (*See, e.g.*, Mot. at 8 ("counsel **must have known** [Ferrer's sworn statements] were lies when stated");
11 ("counsel **may well have known** all along about their client's lies"); 14 ("Backpage's attorneys … **had
to know** that Backpage was a part author in a great majority of the prostitution ads on the website"); 18
("Once Backpage's attorneys **learned** that the factual basis for the entire amended complaint was false, …
they had a duty and obligation to inform the Court …") (emphasis added)).

from this and other proceedings (which are nothing more than the same incorrect and rejected premises for Sheriff Dart's prior "illegality" defense).

Sheriff Dart's Motion is largely founded on Mr. Ferrer's statements in connection with his plea agreements.  The Sheriff asserts that everything said in the plea agreements must be true and therefore everything Mr. Ferrer said in prior declarations, testimony and elsewhere (including in meetings with the Sheriff's office) must have been false.  (*See* Mot. at 2-7.)  Mr. Ferrer's statements in connection with his negotiated plea agreements are inconsistent with his prior sworn testimony in certain respects, and he will have to answer for the contradictions on his own.[7]  Regardless, Mr. Ferrer's recent decision to plead as he has—and whatever may be his motivations for doing so— cannot establish that it was inappropriate to rely on his six-plus years of prior sworn statements.

Sheriff Dart does not point to any record evidence, any extant statement of Mr. Ferrer, or anything else that is inconsistent with positions taken by Backpage in this case (and advanced by DWT) when they were asserted.  Sheriff Dart cannot offer any such evidence, because there is none.

Instead, Sheriff Dart contends there were "red flags," from which counsel should have inferred that Mr. Ferrer was lying, and, apparently, that he would later contradict his averments. (*See* Mot. at 11-18.)  Sheriff Dart's attempts to cast aspersions based on his argued inferences, rather than actual evidence underscores why his Motion is improper.  Additionally, the Sheriff's "red flag" accusations are things he has asserted before in his failed attempts to pursue an "illegality" defense, and are inaccurate in any event.  In brief:

---

[7]  Mr. Ferrer's inconsistent statements undoubtedly will be subject to cross-examination in other proceedings.  For present purposes, however, it is not necessary for DWT to use any privileged communications in defense of Sheriff Dart's Motion, although it reserves its rights under Rule 1.6(b)(5) of the Model Rules of Professional Conduct.

Sheriff Dart suggests "red flags" based on Backpage's challenge to subpoenas issued by the U.S. Senate Permanent Subcommittee on Investigations ("PSI") demanding information about Backpage's editorial practices. (*See* Mot. at 12 ("Backpage sent the Subcommittee a letter stating it was refusing to answer its subpoena.")) Yet, the Sheriff previously made the same argument that the Court should have regarded the PSI's investigation and subpoena as proof that ads on the website were illegal.[8] Sheriff Dart asserts that opposition to the subpoena was nothing more than "legal theatrics," (Mot. at 16), which again reflects the Sheriff's reliance on hyperbole rather than an understanding of free speech principles. DWT and two other law firms[9] raised significant First Amendment challenges to the PSI's subpoenas and process seeking to compel discovery of an online publisher's editorial practices and decisions.[10]

Sheriff Dart goes on to hoist another spurious "red flag" by claiming that the PSI subpoenaed Mr. Ferrer but he "did not show up at the Subcommittee's hearing as he had fled the country." (Mot. at 13.) We will accord the Sheriff and his counsel the benefit of the doubt that perhaps they are not familiar with the actual record, as Backpage's counsel (Akin Gump) informed the PSI before the hearing that Mr. Ferrer was already out of the country and could not attend, and offered to make him available on other dates. (Exs. 4, 5.)

---

[8] (*See* Bench Mem., at 2-3, Dkt. 143; Supp. Mem. re Mot. to Compel, at 6-8, Dkt. 145; Mot. to Strike, Dkt. 126).

[9] Akin Gump Strauss Hauer & Feld LLP and Paul Hastings LLP, including two attorneys who formerly served as general counsel to the United States House of Representatives.

[10] The First Amendment and other objections ultimately were never resolved, because the PSI issued its report and then declared its investigation at an end. *See Ferrer v. Permanent Subcommittee on Investigations*, 856 F.3d 1080, 1083, 1086-87 (D.C. Cir. 2017) (vacating district court decision and dismissing Backpage's appeal as moot).

Sheriff Dart next argues that the various motions and other pleadings his office previously submitted to attempt to pursue the "illegality" defense were more red flags (Mot. at 14-15), despite the Court's rulings (which the Sheriff's Motion does not mention) that his theory was irrelevant under First Amendment prior restraint law.[11]  In this vein, the Sheriff returns to another rejected argument that Backpage allegedly revised the fake "Red Beauty" ad submitted by a member of his staff to hide that the "subject was a child."  But, the evidence actually showed that staff person tried to evade the website's protections, Backpage actually flagged and reported the ad to the FBI, and the Sheriff's office ultimately admitted the ad was "bogus."  (*See* Opp. Mot. Leave to Amend Affirm. Defenses, at 4-6, Dkt. 160.)

The Sheriff also contends that "Carl Ferrer was indicted" in California proceedings.  (Mot. at 16.)  But, the Sheriff fails to state that two courts dismissed the criminal complaints filed by the California attorney general based on charges virtually the same as Sheriff's Dart's "illegality" theory (*i.e.*, that publishing and accepting payments for ads amounted to pimping or promotion of prostitution).  *See People v. Ferrer*, No. 16FE019224, 2016 WL 7237305 (Cal. Super. Ct. Dec. 9, 2016); *People v. Ferrer*, No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017).

Sheriff Dart goes on to claim that the December 2016 indictments in the California case "detailed efforts that Backpage had undertaken to set up sham companies to bypass detection by American Express" and conduct transactions in May 2015 of some $48,000.  (Mot. at 16.)  This is simply not accurate, as Sheriff Dart knows from the actions of his office and discovery in this case.

---

[11] Aside from misstating facts and prior motions and rulings in this case, Sheriff Dart also attempts to ascribe motives to Backpage and its attorneys—contending they filed an amended complaint to drop damage claims because they "knew . . . the Court would allow discovery into Backpage's . . . moderation practices for purposes of determining which 'contracts' were illegal." (Mot. at 15.)  As explained, however, Backpage sought to simplify the case (in contrast to Sheriff Dart's tack in the litigation), as the legal and factual issues were undisputed, making summary judgment appropriate to bring the case to its end.  (*See* Mot. Renew Req. for Summ. J., Dkt. 169.)

(*See* Dkt. No. 82, Exs. PX33, PX34; Ferrer Dep., at 100:8-19, 109:12-19; Aug. 20, 2015 Prelim. Inj. Hr'g Tr., at 118:10-119:11; Dkt. No. 65.) In fact, in or about April 2015, American Express asked Backpage to cease charges to its cards for adult ads on the website and Backpage complied with this request. (Ferrer Dep., at 100:8-19, 106:7-11, 109:12-19.) However, after Sheriff Dart's July 1, 2015 letters to "defund" Backpage, his "Backpage team" determined that users could purchase general credits on the website using American Express cards. (*See id.* at 107:7-108:25.) The Sheriff then contacted American Express executives to demand that this too had to stop. (*See* Aug 20, 2015 Prelim. Inj. Hr'g Tr., at 118:10-119:11, Dkt. No. 65; *see also* Dkt. No. 82, Exs. PX33, PX34.) When American Express asked Backpage to bar use of its cards for general credits too (after the Sheriff's pressure), Backpage complied. (Ferrer Dep., at 107:7-109:19.)

More generally, Sheriff Dart contends Backpage and its counsel "lied to this Court" in asserting that Visa's and MasterCard's terminations in response to Sheriff Dart's threat letters cut off virtually all revenues, because, the Sheriff alleges, "***if*** Backpage was still running transactions though the credit card companies, albeit illegally, Backpage was never suffering the harm it alleged . . . ." (Mot. at 17 (emphasis added.)) The Sheriff's argument is sophistry. It is undisputed that "the credit card companies broke with Backpage" "within days of receiving [Sheriff Dart's] letter[s]." *Dart*, 807 F.3d at 233. It likewise is undisputed that Backpage stopped charging for ads on the website shortly after that and lost the vast majority of its revenues at the time. (Ferrer Decl. ¶ 27-28, Dkt. 6.) Sheriff Dart instead mischaracterizes the statements in Mr. Ferrer's plea agreement that ***after*** the credit card companies and certain banks declined to permit charges through Backpage, he made arrangements to process payments through other banks, processors and other alternate means. (*See* Mot., Ex. B, at ¶ 10.a.)

Sheriff Dart's Motion is replete with accusations that DWT "lied to the Court," "learned that the factual basis for the entire amended complaint was false," and "knew or should have known that Backpage was engaged in a criminal conspiracy," (Mot. at 17, 18, 20.) These are serious accusations that should be countenanced only if a party presents proof of misrepresentations, misconduct or bad faith. This Court has cautioned against making such accusations and using the type of loose and intemperate language that permeates Sheriff Dart's Motion. *Martin v. Living Essentials, LLC*, 2017 WL 4572499 *5 (N.D. Ill. 2017). Your Honor has warned that "fraud on the Court is a serious accusation" that is particularly inappropriate where the allegations take issue with legal positions that "both this Court and the Seventh Circuit found to be meritorious." *Id.* Moreover, "[m]oving for sanctions based on scurrilous, unsupported allegations of bad faith is itself bad faith conduct, rendering it sanctionable." *Id.*

Sheriff Dart does not even attempt to meet the high "bad faith" standard for sanctions. "[T]he underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith.'" *Adams v. Carlson*, 521 F.2d 168, 170 (7th Cir. 1975). Bad faith is a high threshold and "[t]he standards for bad faith are necessarily stringent." *Id.*; *see Satoskar v. Indiana Real Estate Comm'n*, 517 F.2d 696, 698 (7th Cir. 1975).

Decisions from this district illustrate that the actions of DWT lawyers are not sanctionable under section 1927 or the Court's inherent powers.[12] In *Goldberg v. 401 N. Wabash Venture LLC*,

---

[12] While Sheriff Dart references sanctions (at 1) under Rule 26(g)(3), he fails to cite any authority supporting this position and fails to make any argument as to why sanctions pursuant to this rule are appropriate. Consequently, Sheriff Dart has waived this argument. *Giffney Perret, Inc. v. Matthews*, No. 07C0869, 2009 WL 792484, at *16 (N.D. Ill. Mar. 24, 2009) (quoting *Weinstein v. Schwartz,* 422 F.3d 476, 477 n. 1 (7th Cir. 2005) (finding that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). To the extent Sheriff Dart is pursuing sanctions under Rule 26, the argument fails because Sheriff Dart must show that Backpage's attorneys' conduct was objectively unreasonable at the time the discovery submissions were filed. *See Thompson v. Duke*, 940

Judge St. Eve denied the defendants' motion for sanctions under section 1927 and the court's inherent powers predicated on the same type of allegations raised in this case. No. 09 C 6455, 2013 WL 5376556, at *5 (N.D. Ill. Sept. 25, 2013). It was argued that Plaintiff's counsel acted in bad faith because it submitted claims and sought damages based on information provided by its client that was later contradicted by its witnesses' testimony. *Id.* The court found that counsel did not act in bad faith by pressing claims later contradicted by its witness's testimony because the defendants failed to show that counsel knew the testimony would contradict his client's statements. *Id.* Judge St. Eve also found that the claims needed to be wholly implausible or baseless to justify an award of fees. *Id.* at *6. S*ee also Mi-Jack Products*, 1996 WL 149133, at *10 (denying sanctions pursuant to section 1927 and the court's inherent authority because counsel did not act with objective or subjective bad faith when there were inconsistencies between plaintiff's affidavit and statements from plaintiff's attorneys that were explainable).[13]

Sheriff Dart erroneously relies upon *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1490 (7th Cir. 1989), *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F.Supp.3d 817, 848-49 (N.D. Ill. 2015), and *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063 (7th Cir. 2000), where the attorneys pursued claims that were known to be meritless. In *Kapco*, the court imposed sanctions under section 1927 against the plaintiff's attorney because the claims were frivolous,

---

F.2d 192, 195 (7th Cir. 1991); *see also* Fed. R. Civ. P. 26(g) advisory committee note (1983). Here, Sheriff Dart has made no attempt to make the required showing.

[13] Similarly, in *Fifth Third Bank v. Hirsch*, Judge Kendall denied sanctions under section 1927 and the court's inherent power. No. 10 C 5484, 2011 WL 24 70643, at *4 (N.D. Ill. 2011). The movant alleged that third-party plaintiff's counsel did not adequately investigate the factual basis for the claim because counsel merely adopted the allegations made by the plaintiff. *Id.* According to the movant, counsel's inadequate prefiling investigation multiplied the proceedings in an "unreasonable and vexatious" way. *Id.* Judge Kendall held that sanctions were improper even though the third party complaint failed to state a claim due to counsel's failure to investigate. *Id.* According to Judge Kendall, that is not the type of extreme conduct that warrants sanctions. *Id.*

baseless, and asserted for the purposes of harassment. *Id*. at 1493. In *Intellect Wireless*, the court awarded sanctions because the attorneys pursued litigation even though it was clear to the attorney that its client's declarations were false and the claims were meritless before the complaint was filed. *Intellect*, 87 F.Supp.3d at 848-49. In *Cleveland Hair Clinic, Inc.*, the Seventh Circuit affirmed sanctions against an attorney who failed to disclose a state court lawsuit (that he prepared and filed) at a hearing to determine whether counsel's client in the undisclosed state court action should have been added as a party in the federal case and whether to enjoin any state action. 200 F.3d at 1067-68. Again, these cases bear no resemblance to the Backpage matter.

Citing no evidence, Sheriff Dart fails to demonstrate that Backpage's complaint was improperly filed, and (as outlined above) he cannot do so based on controlling Seventh Circuit law, including the decision in this case.

## III.   Sheriff Dart's Request for Discovery Lacks Any Legal Basis.

At the very end of his Motion, Sheriff Dart requests some unspecified "limited discovery to prove that Backpage's counsel knew the pleadings, discovery requests, filings and statements in open Court were false when made." (Mot. at 21-22.) In addition to the undefined request for "limited discovery," he requests "supplemental briefing on the appropriateness and amount of sanctions," and "an evidentiary hearing on sanctions." These requests for a new proceeding focused on sanctions is nothing more than a fishing expedition in which Sheriff Dart essentially admits that he has failed to make the requisite showing. The Seventh Circuit has recognized that courts should "limit the scope of sanctions proceedings to the record and allow discovery only in extraordinary circumstances." *Indianapolis Colts*, 775 F.2d at 183 (citing Fed. R. Civ. P. 11 advisory committee note (1983)) (denying defendants request for remand to the district court for discovery related to its Rule 11 and section 1927 claims); *In re Central Ice Cream Co.*, No. 85 C

19

10073, 1986 WL 13635, at *6 (N.D. Ill. Nov. 21, 1986) (recognizing that the court must limit the

scope of sanctions proceedings under section 1927, Rule 11, and the court's inherent authority to

the record and only grant leave for additional discovery in extraordinary circumstances).

  Sheriff Dart fails to make any showing that could warrant discovery in this case, much less

any showing of extraordinary circumstances.[14]  Just as before, Sheriff Dart's discovery request is

a continuation of his rejected "illegality defense."  Sheriff Dart's request would result in prolonged

"satellite litigation" in the vain hope of turning up something that he things might support his

Motion, which again is based on his fallacious illegality theory.  *See Retired Chicago Police Ass'n*

*v. City of Chicago*, No. 90 C 407, 1997 WL 51673, at *5 (N.D. Ill. Feb. 5, 1997), *aff'd sub*

*nom. Retired Chicago Police Ass'n v. Firemen's Annuity & Benefit Fund of Chicago*, 145 F.3d 929

(7th Cir. 1998) (denying Rule 11 sanctions and section 1927 motion that required determining the

merits of claims that were unrelated to the sanctions motion).[15]  Sheriff Dart has attempted to lead

the Court down this path before, and it quite properly denied discovery requests it found would be

"a goose chase or a fishing expedition or a snipe hunt."  (*See* Aug. 9, 2016 Tr., at 11:17-19, 7:21-

8:3, 9:12-15, 12:9-11, 12:19-13:1, Dkt. 174.)  The Court should do the same here.

---

[14] Sheriff Dart's failure to articulate the scope and nature of the "limited discovery" he would seek, from
whom and in what format, deprives DWT the ability to adequately respond to the request, and is alone
reason to deny it. *See United States v. Auston*, 35 Fed. App'x 251, 255 (7th Cir. 2002) (finding discovery
request was vague and overbroad and failed to explain with any specificity why the materials were needed);
*Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 648 (N.D. Ill. 1994) (denying discovery requests
that were too vague to support any motion for production or motion to compel).

[15] Sheriff Dart offers no explanation for how discovery could be limited. If the Court were to permit
discovery based on allegations made in the Motion, as a matter of fundamental fairness it would become
necessary to allow discovery into all communications between Mr. Ferrer and the government related to
his plea agreement and to provide an opportunity to depose and cross-examine Mr. Ferrer.  The prospect of
such expanded litigation is one reason courts avoid engaging in collateral litigation to explore speculative
allegations.

## CONCLUSION

For the foregoing reasons, this Court should deny Sheriff Dart's Motion for Sanctions without any further proceedings.

Respectfully submitted,

By:  s/John R. Storino
Jeffrey D. Colman
John R. Storino
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone:  +1 312 222 9350
Facsimile:  +1 312 527 0484

## CERTIFICATE OF SERVICE

I certify that on May 17, 2018 I caused to be served a copy of DWT's Response in Opposition to Sheriff Dart's Motion for Sanctions via the Court's ECF system on all counsel of record registered through that system to receive electronic filings in this case.


By:s/John R. Storino_____
     Jeffrey D. Colman
     John R. Storino
     Jenner & Block LLP
     353 N. Clark Street
     Chicago, IL 60654-3456
     Telephone:  +1 312 222 9350
     Facsimile:  +1 312 527 0484