# **Exhibit E**



U.S. Department of Justice

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main:  (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax:  (602) 514-7693 |
| Phoenix, AZ  85004-4408 | Direct Fax:  (602) 514-7450 |

May 3, 2018

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel PC
2 East Congress Street, Suite 1000
Tucson, AZ  85701

VIA EMAIL

    Re:    *Your Letter of April 26, 2018*

Dear Mike:

    We wish to respond to your April 26, 2018, letter.  The letter begins with the following statement:  "It is my understanding that Carl Ferrer has indicated to the government that he is waiving the attorney-client privilege on behalf of himself, Backpage, and the other entities he controls.  If that is not the case, please let me know."

    On this issue, your understanding is not fully accurate.  It is true that Mr. Ferrer has executed a broad waiver of the *corporate* attorney-client privilege possessed by Backpage.com, LLC and various other Backpage-related entities.  Enclosed with this letter is a copy of the waiver agreement.  However, as you will see, the waiver agreement makes clear that Mr. Ferrer has not waived his *individual* attorney-client privilege, either as to his current criminal defense attorneys or to the prior attorneys who represented him on an individual basis.

    Your letter also states that "regardless of whether Mr. Ferrer and the entities he controls waive the attorney-client privilege as to themselves, such a waiver or waivers would not waive the privilege of other individuals or entities, nor would it waive any privileges held jointly by Mr. Ferrer and/or his entities and other individuals or entities, whether in materials seized by the government or as to other privileged communications."

    Once again, we do not fully agree.  On the one hand, it is true that, to the extent Mr. Ferrer or any of the Backpage entities entered into a joint defense agreement ("JDA") with others, there may be restrictions on the ability to unilaterally waive JDA-derived privileges.  For this reason, we have taken steps to avoid the disclosure of any JDA-protected material.  However, when it comes to communications covered by Backpage's corporate attorney-client privilege (or by the corporate attorney-client privilege held by any of Backpage's

predecessor/related entities), the law makes clear that Mr. Ferrer—as Backpage's CEO and 100% owner since 2015—is empowered to waive the corporation's privilege, as he has done here. *See generally Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well.  New managers . . . may waive the attorney-client privilege with respect to communications made by former officers and directors.  Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.").

Furthermore, once the corporate privilege has been so waived, it is very difficult for an individual corporate employee (such as your client, Mr. Padilla) to prevent the disclosure of communications that were previously covered by the privilege.  In *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010), the Ninth Circuit addressed this issue in detail, noting that "[o]ne of these special problems" that arises in the context of the corporate attorney-client privilege "is that corporate officers, directors, and employees who communicate with corporate counsel on behalf of the corporation may later attempt to claim a personal attorney-client privilege regarding those communications after the corporation has waived its own privilege." *Id.* at 1156.  The *Graf* court held that a corporation is ordinarily "*free to obtain information from its officers, employees, and consultants about company matters and then control the attorney-client privilege, waiving it when necessary to serve corporate interests*," and that an employee may prevent such a disclosure only under limited circumstances.  *Id.* at 1160-61 (emphasis added).  Specifically, once the corporate privilege has been waived, an individual employee may prevent disclosure only by establishing the following five factors:  "*First*, they must show they approached counsel for the purpose of seeking legal advice.  *Second*, they must demonstrate that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities.  *Third*, they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise.  *Fourth*, they must prove that their conversations with counsel were confidential.  And *fifth*, they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company." *Id.* at 1160 (citation omitted) (emphasis in original).

Here, we have not seen any evidence suggesting these five factors are satisfied.  If you are aware of any such evidence (such as proof that Mr. Padilla, while working at Backpage, had discussions with corporate counsel about purely personal matters unrelated to the general affairs of Backpage and made clear he was seeking legal advice in an individual capacity), please let us know.

Finally, you may also be aware (through your discussions with co-counsel) that Backpage has, in the past, voluntarily shared certain privileged materials with third parties. Such disclosure provides an independent basis, apart from the written waiver agreement, for concluding that the corporate attorney-client privilege has been waived.  *See, e.g., In re Pac.*

May 3, 2018
Page 3 of 3

*Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege.").

                                                                Sincerely,

                                                                ELIZABETH A. STRANGE
                                                                First Assistant United States Attorney
                                                                District of Arizona

                                                               */s Kevin Rapp*
                                                                KEVIN M. RAPP
                                                                Assistant U.S. Attorney

KMR/zs

## WAIVER OF ATTORNEY CLIENT PRIVILEGE

I, Carl Ferrer, state the following in my capacity as sole owner and manager of Dartmoor Holdings LLC, which wholly owns and operates Backpage.com LLC (of which I am Chief Executive Officer), Website Technologies LLC, IC Holdings LLC, Posting Solutions LLC, and Postfaster LLC, hereafter referred to as "the Companies." I am authorized to waive each of the Companies' attorney-client privilege and am doing so because I believe executing such waiver is in each of the Companies' best interest.

I further state that, being represented by counsel and being fully advised as to this matter, I hereby voluntarily waive all aspects of the attorney-client privilege, on behalf of the Companies, which otherwise may have applied to communications, documents and information that I or the Companies have provided to law enforcement or which law enforcement may already have in its possession from other sources, as follows:

a. All communications related to the "adult," "escort," "dating," and "services" sections of the Companies' websites, including but not limited to company policies, moderation practices, age verification practices, legality, content, and compliance with law enforcement.

b. All communications related to the Companies' financial activity, including but not limited to the sale of Backpage.com in 2015, all loans and financing agreements related to the sale of that company in 2015, monetization of the Companies' websites, payment processing, credit card processing, banking, and payment of loans.

c. All communications regarding the relationship between the Companies (including their current owner and employees) and their former owners and officers, including but not limited to, James Larkin, Michael Lacey, John ("Jed") Brunst and Scott Spear, as well as communications between the Companies (including their current owner and employees) and Don Bennett Moon.

I further state that, in addition to the foregoing waiver, I hereby voluntarily waive, on behalf of the Companies, all aspects of the attorney-client privilege which otherwise may have applied to the Companies' relationship with any attorney ("previous attorneys") who was retained to represent the Companies in connection with various matters related to the subjects listed above. This attorney-client privilege waiver is meant to apply to all communications between the Companies and any attorney representing them at any time; all acts undertaken by others acting on the Companies' attorneys' behalf taken in connection with representing the

Companies related to the subjects listed above; and any and all documents generated through their representation of the Companies that belong to the Companies.

I further state that this waiver does not apply in any respect to any aspect of the Companies' representation by David Botsford of Botsford & Roark LLP, or to any aspect of my personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me in an individual capacity, including, but not limited to, Nanci Clarence, Jonathan Baum and Shaneeda Jaffer of Clarence, Dyer & Cohen, and the Law Offices of E.G. Morris.

4/5/2018
DATED

Carl Ferrer