Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com

Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
emccampbell@lglaw.com

*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| United States of America, | NO. CR-18-00422-PHX-SPL (BSB) |
|---|---|
| Plaintiff, | DEFENDANT LACEY'S MOTION FOR DISCLOSURE OF DOCUMENTS RELATED TO CARL FERRER'S WAIVER OF PRIVILEGE AS MATERIAL TO DISQUALIFICATION |
| vs. | |
| Michael Lacey, *et al.*, | |
| Defendants. | (Oral argument requested) |

Defendant Michael Lacey, by and through his undersigned attorney, hereby moves under Rule 16 of the Federal Rules of Criminal Procedure for an order compelling the government to produce all documents pertaining to Carl Ferrer's waiver of the attorney-client and work-product privileges as material to resolution of the Government's Motion to Disqualify (Doc. 118), which is pending before this Court.  The record on disqualification is incomplete because defendants and this Court lack material information to determine whether disqualification is necessary;

1   namely, the extent to which Mr. Ferrer has waived privilege.  The government's disclosures thus
2   far indicate that Mr. Ferrer has waived privilege as to all communications for which he, alone,
3   can unilaterally waive by virtue of being the sole privilege holder.  Further, the government has
4   indicated that it possesses additional documents material to a determination on the scope and
5   extent of Mr. Ferrer's waiver, which should be disclosed as vital to protection of Mr. Lacey's
6   Sixth Amendment right to counsel of choice.  Because a combination of the government's
7   disclosures and statements makes it unclear whether any of Mr. Ferrer's communications remain
8   subject to privilege at this time, discovery on this issue is essential to Mr. Lacey's ability to
9   exercise his Sixth Amendment right to counsel of choice.

10          It is expected that excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as
11  a result of this motion or an order based thereon, as explained more fully below.

12          RESPECTFULLY SUBMITTED this 28th day of June, 2018,
13

14                              /s/     *Paul J. Cambria, Jr.*
15                              LIPSITZ GREEN SCIME CAMBRIA LLP
16                              Attorneys for Defendant Michael Lacey
17
18
19
20
21
22
23
24
25
26
27
28                                          2

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Michael Lacey respectfully moves this Court for an order compelling the government to disclose all documents pertaining to Carl Ferrer's waiver of attorney-client privilege in his personal capacity and in his official capacity as Chief Executive Officer of Backpage.com, LLC ("Backpage") with respect to all of his former counsel, as well as all documents evidencing waiver of attorney-work product privilege. As set forth in greater detail below, this discovery is material to this Court's determination of the Government's Motion to Disqualify Davis Wright Tremaine LLP ("DWT") and Henze Cook Murphy PLLC ("HCM") (Doc. 118), in which the government has sought to interfere with Mr. Lacey's Sixth Amendment right to counsel of choice. Because disqualification is subject to potential abuse, and must be reviewed under "particularly strict judicial scrutiny," *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985), a determination of disqualification without a complete record runs the risk of violating Mr. Lacey's constitutional right to counsel of choice for this prosecution.

## I.      The record on disqualification is incomplete because defendants and this Court lack material information to determine whether disqualification is necessary.

Shortly after the government indicted Mr. Lacey and his co-defendants, the government informed defense counsel that it intended to move to disqualify DWT and HCM from any further representation of Mr. Lacey in this prosecution. According to the government, Mr. Ferrer was a former client of those firms and because he pleaded guilty, entered a guilty plea on behalf of Backpage.com, LLC ("Backpage"), and intended to testify as a government witness at trial, DWT and HCM could not continue their representation of Mr. Lacey because there was the potential that they would use privileged information to Mr. Ferrer's detriment in violation of Rule 1.9.

A primary question, pivotal to resolution of the government's theory of disqualification, is whether any of the communications between Mr. Ferrer and his former counsel remained protected

1  under the attorney-client or work-product privileges.[1]  Defense counsel knew that Mr. Ferrer and his

2  counsel had communicated with the government about his plea, and believed that Mr. Ferrer on his

3  own, or though counsel, might have waived privilege through communications with the

4  government.  Consequently, on May 1, 2018, Michael L. Piccarreta requested that the government

5  produce several categories of documents relevant to the potential waiver of privilege by Mr. Ferrer.

6  (A true and correct copy of the May 1, 2018 Piccarreta Letter is attached hereto as Ex. A.)

7          On May 14, 2018, the government responded to defense counsel's discovery request,

8  declining to produce the requested documents because the relevance of those documents to

9  disqualification was "unclear" to the government.  (A true and correct copy of the Government's

10  May 14, 2018 Response is attached hereto as Ex. B.)  However, the government provided defense

11  counsel with one document attached to its response—a copy of Mr. Ferrer's Proffer/Interview

12  Agreement.  (A true and correct copy of the Proffer/Interview Agreement is attached hereto as Ex.

13  C.) Notably, the Proffer/Interview Agreement stated that Mr. Ferrer "voluntarily waive[d] all claims

14  of attorney-client privilege, whether in his personal or official capacity as Chief Executive Officer

15  of Backpage.com, LLC as to communications with any attorney or law firm that represented

16  Backpage.com, or any related entity, where such communications concerned or related to

17  Backpage.com or any related entity" except with respect to his current counsel, "Nanci Clarence,

18  Jonathan Baum and anyone working on their behalf."  (*Id.* ¶ 2.)  Further, Mr. Ferrer "voluntarily

19  agree[d] to provide all documents and other material that may be relevant to the investigation." (*Id.*)

20          Further, in response to a different letter from defense counsel, the government disclosed a

21  Waiver of Attorney Client Privilege signed by Mr. Ferrer on April 5, 2018, in which he purported to

22  waive "all aspects of attorney-client privilege" on behalf of Backpage (and related entities) and with

23  respect to "communications,; documents and information that" Mr. Ferrer or Backpage (and related

24  entities) "have provided to law enforcement or which law enforcement may already have in its

---

[1]          Arizona E.R. 1.9 is solely "for the protection of clients."  Ariz. Ethics Op. 91-05.  In
particular, the Arizona State Bar has opined that "[t]he duty of confidentiality is the *only* duty
owed by an attorney to a former client."  Ariz. Ethics Op. 92-03 (emphasis added).  Consequently,
disqualification is unnecessary when "confidential information . . . is not in jeopardy."  *Id.*

4

possession from other sources." (A true and correct copy of the Waiver of Attorney Client Privilege is attached hereto as Ex. D.)[2]  He purported to waive privilege with respect to communications related to the "adult" advertisement sections of the Backpage website, communications concerning Backpage's finances, and communications concerning the relationships between Backpage and its related entities and the owners and former owners of those companies. (*See id.*)  The waiver further stated that it applied to "all communications" between counsel and Backpage (and related entities) "at any time" and "all documents generated through their representation." (*See id.*)  It also indicated that it did not extend to "any aspect of [his] personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me in an individual capacity."[3]

Finally, defense counsel obtained copies of the plea agreements Mr. Ferrer executed in criminal prosecutions pending in courts in the States of California and Texas.  In the California Plea Agreement, Mr. Ferrer agreed "to cooperate with the investigation . . . by making himself available to the Attorney General's Office to assist in the investigation and prosecution, truthfully recalling and relating information regarding the case [and] providing truthful testimony." (A true and correct copy of the California Plea Agreement is attached hereto as Ex. E.)  In the Texas Plea Bargain Agreement, Mr. Ferrer promised to "give full, complete, and truthful evidence concerning my knowledge of any and all offenses committed by any and all co-defendants" and was granted "'use immunity' as to any statements made by him . . . to Texas authorities." (A true and correct copy of the Texas Plea Bargain Agreement is attached hereto as Ex. F.)  Moreover, he promised to "additionally give sworn written or recorded statement(s) detailing any additional facts if that is

---

[2]       Critically, Mr. Lacey does not concede that Mr. Ferrer's waivers entitle the government to access all communications with Backpage's counsel, as those communications are the subject of joint privileges to which Mr. Lacey and Mr. Larkin (and the entities in which they hold ownership interests) are parties.  Mr. Lacey and Mr. Larkin have notified the government about this concern.

[3]       This disclaimer stands in contrast with the waiver he effected in the Proffer/Interview Agreement, in which he waived privilege "in his *personal* or official capacity." (Ex. C (emphasis added).)  This confusion on the extent of his personal waiver underscores the need for review of the statements he has actually made to the government because statements, alone, can constitute a waiver, notwithstanding a former reservation in a written waiver.

requested by an attorney for Texas or California or federal Assistant U.S. Atttorney." (*See id.*) These documents, too, indicate that Mr. Ferrer may have revealed privileged information through statements made to prosecutors or law enforcement officers in California or Texas.

In light of these disclosures, defense counsel continued to press the government for disclosure of all documents related to Mr. Ferrer's waiver of the attorney-client and attorney-work-product privileges because, if none of the communications between Mr. Ferrer and his former counsel were subject to those privileges any longer, the government's proposed motion to disqualify would be baseless. However, the government refused to provide any further discovery into Mr. Ferrer's waiver of those privileges.

On May 25, 2018, the government moved for disqualification of DWT and HCM on the basis that DWT and HCM's continued representation of Mr. Lacey constituted a violation of Mr. Ferrer's rights under E.R. Rule 1.9 because there was a risk that the firms would use privileged information obtained from Mr. Ferrer to his detriment, particularly during cross-examination of him at trial. (*See* Doc. 118.) Although the parties have submitted legal memoranda to the Court on this issue, the record before this Court is incomplete. The government's motion to disqualify is founded on the alleged harm to Mr. Ferrer's interests if his former counsel were to use privileged information to his detriment in this prosecution as part of their representation of Mr. Lacey in this prosecution. (*See id.*) Before this Court can make that determination, a more primary determination must be made, namely, whether there remains *any* information subject to the attorney-client and work-product privileges at this time or whether Mr. Ferrer has waived all such privileges through his disclosures to the government and non-attorney third parties.

Additionally, discovery on this issue is relevant and material to this Court's resolution of the Government's Motion to Resolve Attorney-Client Privilege Issues (Doc. 195). In that motion, the government contends that it should have access to documents withheld by the filter team as protected from government review on the basis of privilege because Mr. Ferrer "executed a written waiver of the corporate attorney-client privilege possessed by Backpage and related entities" which "obviates the need for the continued segregation of the withheld communications." (*See id.* at 2.) Critically,

6

as will be set forth in greater detail in defendants' opposition to this motion, Mr. Ferrer was not the sole privilege holder for Backpage and he lacked the authority to unilaterally waive privilege on behalf of Backpage and related entities. Any documents indicative of the extent to which Mr. Ferrer purported to waive privilege on behalf of Backpage and related entities is essential to resolution of this motion (in addition to resolution of the Government's Motion to Disqualify).

**II.  The government must disclose all documents relevant to Mr. Ferrer's waivers to allow defendants (and this Court) to determine whether any of Mr. Ferrer's communications remain subject to privilege, without which, disqualification under E.R. 1.9 is unnecessary.**

Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16"), "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). The government must disclose "documents . . . within the government's possession . . . [that are] material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). A defendant establishes materiality when the defendant presents "facts which would tend to show that the Government is in possession of information helpful to the defense." *Stever*, 603 F.3d at 752; *Strickler v. Greene*, 527 U.S. 263, 280 ("[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (quotations omitted)). In addition to Rule 16, courts have the inherent authority to order discovery that is necessary for an effective defense. *See United States v. W.R. Grace*, 526 F.3d 499, 509-511 (9th Cir. 2008) (affirming order compelling the government to produce its witness list one-year in advance of trial in a complex matter because district courts "have inherent power to control their dockets").

Here, a determination on the extent to which Mr. Ferrer has waived privilege is not just material to the defense, but is pivotal to this Court's analysis of the Government's Motion to Disqualify. Documents necessary to protect Mr. Lacey's Sixth Amendment right to counsel of choice are obviously material to preparing his defense. *See United States v. Soto-Zuniga*, 837 F.3d 992, 1000-02 (9th Cir. 2016) (recognizing that evidence necessary to support a suppression motion

7

to protect Fourth Amendment rights is discoverable under Rule 16(a)(1)(E) and places the district court "in a superior position to assess and decide the motion to suppress"). The discovery sought by this motion will enable Mr. Lacey (and this Court) to determine whether the government can establish the "extreme circumstances" requisite for disqualification of DWT and HCM, *see Alexander v. Sup. Ct.*, 141 Ariz. 157, 161 (1984), which the government will fail to establish if none of Mr. Ferrer's communications remain subject to privilege at this time.

> **A.** **The government's disclosures suggest that Mr. Ferrer has waived privilege as to all communications for which he, alone, can unilaterally waive by virtue of being the sole privilege holder.**

The government's disclosures thus far undermine the government's claim that privileged information is at risk for potential misuse. To claim that privileged communications exist, the party invoking the privilege, here, the government purportedly on behalf of Mr. Ferrer, must demonstrate that information subject to protection under the attorney-client privilege exists. *See In re Grand Jury Subpoenas*, 803 F.2d 493, 496 (9th Cir. 1986) ("The burden is on the party asserting the attorney-client privilege to demonstrate how the information sought fits within it."). "One of the elements that the asserting party must prove is that *it has not waived* the privilege." *Weil v. Investment/Indicators, Research & Mgmt., Inc.* 647 F.2d 18, 25 (9th Cir. 1981) (emphasis added). The Proffer/Interview Agreement and the Waiver of Attorney Client Privilege suggest that Mr. Ferrer has waived privilege as to all communications with any legal counsel for which he was the sole privilege holder.[4]

Further, clients cannot disclose privileged communications or documents to the government or third parties and then continue to assert that those communications or documents are privileged as to other parties. The Ninth Circuit has resoundingly rejected the theory of "selective waiver" of

---

[4]   The government contends that none of the communications between Backpage and its former counsel remain subject to privilege at this time, because Mr. Ferrer has waived privilege with respect to all such communications. (*See* Gov't's Mot. to Resolve Attorney-Client Privilege Issues, Doc. 195.) The government is wrong and fails to understand that Mr. Ferrer lacked the authority to unilaterally waive privilege on behalf of Backpage, as will be set forth in greater detail in Defendants opposition.

the attorney-client privilege. Instead, when a client discloses privileged communications or documents to the Federal government, the client has waived the privilege as to those disclosed communications or documents "as to the world at large." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127-30 (9th Cir. 2012) ("Given that Congress has declined broadly to adopt a new privilege to protect disclosures of attorney-client privileged materials to the government, we will not do so here."); *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (recognizing that "once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert"); *Ringelberb v. Vanguard Integrity Professionals-Nevada, Inc.*, 2018 WL 555694, at *5 (D. Nev. Jan. 24, 2018) ("[A] party may not selectively waive the attorney-client privilege. . . . [V]oluntary disclosure to one waives the attorney-client privilege as to the world at large."). Indeed, as one court explained, "[h]aving lowered the shield to foster an amicable relationship with the government, [the privilege holder]'s attorneys may not then raise it against parties injured by their disclosures." *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006) (rejecting "selective waiver" claim).

Moreover, "[e]ven when a party does not explicitly disclose the content of an attorney-client communication, he may waive the privilege implicitly." *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir. 1997). Indeed, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which *in fairness* requires disclosure of the protected communication, the privilege may be implicitly waived." *Id.* (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)) (emphasis in original).

Finally, the "attorney work-product privilege is not absolute and may be waived, for example, when an attorney . . . reveals it to an adversary." *Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006); *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (recognizing that the attorney-work product privilege is waivable and finding that disclosure of protected work product to a third-party constituted waiver of the privilege as to that disclosure).

Thus, the disclosures the government has provided to defendants suggest that Mr. Ferrer has waived privilege to the extent he had the authority to waive privilege. His waivers suggest that there is no opportunity for misuse of privileged information because none exists.

**B.    The government has indicated that it possesses additional documents material to a determination on the scope and extent of Mr. Ferrer's waiver, which should be disclosed as vital to protection of Mr. Lacey's Sixth Amendment rights.**

Central to this motion, the government has indicated that its disclosure of discovery on the scope of Mr. Ferrer's waivers is incomplete. For example, the government alluded to a "cooperation addendum to Mr. Ferrer's plea agreement," which it has declined to provide the defense on the ground that it is subject to a sealing order. (*See* Ex. B. at 2.) This document would assist this Court to reach a fair and correct resolution on the Government's Motion to Disqualify because it indicates the extent of Mr. Ferrer's waivers of privilege.

Additionally, disclosure of any documents summarizing statements Mr. Ferrer made to the government or third parties is material to determining the extent to which Mr. Ferrer has waived communications in his personal capacity during proffer sessions with the government. Mr. Ferrer's statements are material because the privilege can be waived through statements, alone. "It makes no difference whether a privilege-holder copies a written text, reads from a written text, or describes a written text to an outside party. The purpose and effect is the same in all cases; the transmission of privilege information is what matters, not the medium through which it is conveyed." *Reyes*, 239 F.R.D. at 604 (concluding that attorney-client and work-product privileges were waived by voluntary disclosures to the government).

The terms of the California Plea Agreement and the Texas Plea Bargain Agreement suggest that Mr. Ferrer has made statements to law enforcement officers and prosecutors in those states (*see* Exs. E, F), which may have involved revelation of privileged information.

Defendants have asserted that the language of the Proffer/Interview Agreement on Mr. Ferrer's waiver is clear. Mr. Ferrer agreed to waive privilege as to all communications "in his personal or official capacity" as C.E.O. of Backpage. (Ex. C. ¶ 2.) However, the government insists

10

that this waiver was limited to Mr. Ferrer's official capacity as C.E.O. of Backpage (*see* Gov't's Repl. Mem. on Mot. to Disq. HCM, Doc. 192 at 8), and that, even if the Proffer/Interview Agreement could be interpreted as effecting a waiver of communications made in his personal capacity, "[t]his topic has never been broached during Ferrer's proffer sessions [and] [a]ccordingly, nothing has been waived" (*see id*.).   Neither Mr. Lacey nor this Court is required to accept the government's description of the scope of the waiver that has been effected.   "Our system of criminal justice relies on an adversary system to help ensure that justice will be done."  *Soto-Zuniga*, 837 F.3d at 1000 (reversing conviction because district court denied discovery on a suppression motion thereby making its decision on suppression while "blindfolded, considering only one version of the evidence").   As a matter of fundamental fairness, Mr. Lacey should be given discovery on all statements Mr. Ferrer made to the government and documents provided to determine whether any of his communications remain subject privilege such that DWT and HCM, counsel of choice for Mr. Lacey, must be disqualified under E.R. 1.9.   Discovery should not be withheld when a defendant's constitutional rights are implicated.

Further, the government provided this Court with a declaration from Mr. Ferrer in connection with its Reply on its Motion to Disqualify which underscores the need for discovery on Mr. Ferrer's statements to the government. (*See* Ferrer Decl., Doc. 193-9.)  In that declaration, Mr. Ferrer asserted that both DWT and HCM represented him in his *personal* capacity in addition to his official capacity as a representative of Backpage. (*See id*.)[5]  Mr. Lacey has disputed the claim that DWT represented Mr. Ferrer personally (*see* Defs.' Opp'n to Gov't's Mot. to Disq., Doc. 180 at 3-8), and intends to oppose the government's contention that Mr. Ferrer had the authority to unilaterally waive privilege on behalf of Backpage and related entities for all time.   However, regardless of whether DWT represented Mr. Ferrer solely in his official capacity as a representative of Backpage or additionally, in his personal capacity as Mr. Ferrer claims, there can be no objective resolution of the extent of

---

[5]    As Mr. Lacey has explained, DWT represented Mr. Ferrer nominally, as a named representative of Backpage, and as part of a combined representation of multiple parties pursuant to a joint defense agreement, with each party having his own personal counsel distinct from DWT. (*See* Defs.' Opp'n to the Gov't's Mot. to Disq., Doc. 180 at 3-8.)

Mr. Ferrer's waiver without review of the documents which memorialize his statements to the government.  The government has indicated that Mr. Ferrer made statements that impact the determination of the extent of his waiver, and Mr. Lacey should have access to them to thoroughly and effectively protect his Sixth Amendment right to counsel of choice.

Based on the foregoing, the extent of Mr. Ferrer's waivers needs to be determined.  Certain documents suggest that he waived privilege as to all attorney-client communications (*see* Exs. C, D) and has made statements to law enforcement officers or prosecutors (*see* Exs. E, F); however, the government claims that the waiver is much more limited, and does not involve any information conveyed by Mr. Ferrer in his personal capacity, and that Mr. Lacey and his co-defendants should take the government's word for it that nothing further has been disclosed during Mr. Ferrer's proffer sessions.  To the contrary, the discovery sought in this motion is material to whether the government has met its heavy burden in seeking disqualification and the defense is not bound by the prosecution's claims as to the scope of Mr. Ferrer's waivers.

For all these reasons, Mr. Lacey respectfully requests an order from this Court compelling the government to produce the following categories of documents to defendants:

- All documents evidencing communications with the U.S. Attorney's Office for the District of Arizona ("USAO") or any government authorities or third parties concerning legal representation of Backpage and its related entities disclosed by Mr. Ferrer, his counsel, or any other representative of Mr. Ferrer, including but not limited to FD-302 Forms;

- All documents including engagement letters, common interest or joint defense agreements or related communications among counsel, parties or others related to joint representation or defense of Backpage and its related entities that Mr. Ferrer, his counsel, or any other representative of Mr. Ferrer provided to, disclosed or referenced in communications with the government;

- All notes or reports or transcripts of Mr. Ferrer's discussions with any third party, including all government agents.

- All documents evidencing communications with the government about letters or other communications sent to counsel, courts or any other parties about representation or putative

12

conflicts of counsel, including all correspondence Mr. Ferrer, his counsel, or any other representative of Mr. Ferrer has sent the government any exchanges of drafts or other communications about such correspondence; and

- All documents evidencing the date when Mr. Ferrer, his counsel, or any representative of Mr. Ferrer first had communications with the government related to a possible cooperation or with the intention of exploring possible cooperation.

## CONCLUSION

Because a combination of the government's disclosures and statements makes it unclear whether any of Mr. Ferrer's communications remain subject to privilege at this time, discovery on this issue is material and vital to Mr. Lacey's ability to exercise his Sixth Amendment right to counsel of choice.   Mr. Lacey respectfully requests that this Court order the government to disclose documents that are essential for resolution of the Government's Motion to Disqualify.

RESPECTFULLY SUBMITTED this 28th day of June, 2018,

/s/      Paul J. Cambria, Jr.
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On June 28, 2018, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Dominic Lanza, dominic.lanza@usdoj.gov
Kevin Rapp, kevin.rapp@usdoj.gov

14

PICCARRETA DAVIS KEENAN FIDEL PC
LAWYERS

MICHAEL L. PICCARRETA
JEFFERSON KEENAN
LOUIS S. FIDEL

BARRY M. DAVIS
(1948-2016)

2 EAST CONGRESS STREET, SUITE 1000
TUCSON, ARIZONA 85701
(520) 622-6900
FAX (520) 622-0521
WWW.PD-LAW.COM

May 1, 2018

VIA EMAIL

Dominic Lanza (Dominic.Lanza@usdoj.gov)
Kevin Rapp (Kevin.Rapp@usdoj.gov)
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Ste. 1200
Phoenix, AZ 85004-4408

Re:    United States v. Lacey, et al.

Dear Dom and Kevin:

I have been asked by the defendants to request early production by the government of the following categories of documents as soon as possible so that they can be made part of the record in regards to the government's motion for disqualification. These requested documents, which are attached to this letter, are necessary in order to properly prepare the response and also prepare whatever related motions need to be filed and heard with the government's motion. I would hope that we could receive some or all of whatever records can be gathered together as quickly as possible.

I am willing to modify my request for ease of production or clarify it if you have any questions.

Sincerely,

Michael L. Piccarreta

MLP:mh
Enclosure
cc:    Tom Bienert (via email: tbienert@bmkattorneys.com)
        Paul Cambria (via email: pcambria@lglaw.com)
        Bruce Feder (via email: bf@federlawpa.com; fl@federlawpa.com)
        Mike Kimerer (via email: mdk@kimerer.com)
        Gary Lincenberg (via email: gsl@birdmarella.com)
        KC Maxwell (via email: kmaxwell@bgrfirm.com)
        Steve Weiss (via email: sweiss@karpweiss.com)

LIST OF DOCUMENTS

1.     All communications between the USAO or any other governmental law enforcement authorities and Carl Ferrer or his counsel concerning DWT's representation of any Backpage parties (this and all of the following requests include any and all communications between Carl Ferrer, his counsel, or any other government representative).

2.     All documents including engagement letters, common interest or joint defense agreements or related communications among counsel, parties or others related to joint representation or defense of Backpage parties that have been provided to the government by Mr. Ferrer or his counsel.

3.     All communications with Mr. Ferrer or his counsel about representation or putative conflicts of counsel, including all correspondence that has been received from April 5, 2018, onward.

4.     Any documents that reflect the date upon which Mr. Ferrer's counsel first had communications with the government related to possible cooperation or with the intention of exploring possible cooperation.

5.     All correspondence, documents, writings, tangible or electronic, that were provided by the law firm of Clarence Dyer & Cohen (CDC) to any representative of the government in relation to the criminal and civil resolution of the legal issues relating to Carl Ferrer, Backpage, or any of its related entities.

6.     Any correspondence, documents, writings, tangible or electronic, that were provided to any government representatives by the law firm of CDC in relation to the criminal and civil resolution of the legal issues relating to Carl Ferrer, Backpage, or any of its related entities.

7.     All reports, FBI Form 302s, or other memoranda prepared by the USAO or any federal law enforcement agency relating to information provided by Carl Ferrer or his legal counsel to the government relating to the entering of a negotiated civil and/or criminal agreement or provided to the government subsequent to entering into a plea agreement.

8.     All written agreements between Carl Ferrer, Backpage, or any related entities and the government, or any of its cooperating governmental entities relating to the investigation of Mr. Ferrer, Backpage or any of its related entities that have not previously been provided.

9.     Any notes, memoranda, or summaries of any oral conversations or telephone calls between any representative of the government and any representatives of CDC or Carl

Ferrer related to the negotiated civil and/or criminal resolution of the legal issues relating to Carl Ferrer, Backpage, or any of its related entities, whether prior or subsequent to the negotiated resolution of these matters.

10.     Copies of any tapes or electronic memorialization of any conversations, interviews, discussions with the law firm of CDC or Carl Ferrer related to the negotiated resolution of the case or subsequent to the negotiated resolution of the case.

11.     Any written or recorded statements or testimony provided by Carl Ferrer about the operations of Backpage, or any of its related entities, or any of the defendants.

12.     All communications with the USAO or any other government authorities to and from lawyers representing plaintiffs in litigation against Backpage, its employees, or related entities.



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main: (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: (602) 514-7693 |
| Phoenix, AZ 85004-4408 | Direct Fax: (602) 514-7450 |

May 14, 2018

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel PC
2 East Congress Street, Suite 1000
Tucson, AZ 85701

<u>VIA EMAIL</u>

      Re:    *Your Letter of May 1, 2018*

Dear Mike:

      I wish to respond to a letter you sent on May 1, 2018, requesting the production of certain categories of documents. As an initial matter, and as discussed during our May 4 meeting, the relevance of the materials you are requesting is unclear. The motion pending before the Court seeks to determine whether the DWT and HCM law firms have a conflict of interest. The materials you have requested do not, in many instances, have any apparent connection to that topic. We are happy to provide additional consideration to your request if you can articulate why they might be subject to discovery under the relevant rules of criminal discovery.

      I would further note that it appears, based on the nature of your requests, that you believe it was improper for the United States to enter into a cooperation-based plea agreement with Mr. Ferrer because he was a member of a joint defense agreement ("JDA") and/or you suspect the United States has improperly obtained JDA-protected information from Mr. Ferrer. Through this letter, I wish to explain why neither premise is valid.

      The courts have recognized that a JDA participant must retain the ability to plead guilty and cooperate and that the government has a strong, legitimate interest in considering such requests. For example, in *United States v. LeCroy*, 348 F. Supp. 2d 375 (E.D. Pa. 2005), the court recognized that "[a] JDA is not an escape-proof prison" and that "the right of the grand jury to get the facts, and the right of [a JDA participant] to decide to cooperate with the grand jury, are paramount." *Id.* at 382, 386. The courts have further recognized that a JDA participant is free to disclose liability-generating matters in which he personally participated, even if those matters are also the subject of JDA-related sharing and discussion. *See, e.g., In re Grand Jury Subpoena*, 274 F.3d 563, 572 (1st Cir. 2001) ("[W]hat the parties call a 'joint

defense' privilege is more aptly termed the 'common interest' rule. Even when that rule applies, however, a party always remains free to disclose his own communication."); *United States v. Balsiger*, 2013 WL 3490873, *11 (E.D. Wisc. 2013) ("Balsiger and Currey cannot stop . . . another person . . . from waiving its privilege as to its own communications simply because the communication was shared with them or their counsel as part of the joint defense."); *United States v. Bekaert Steel Wire Corp.*, 1985 WL 25747, *3 (D. Md. 1985) (rejecting JDA-related claim where cooperator "Neri was not called before the grand jury to answer questions about what he may have learned through defense counsel; he was called to testify about events in which he had actively participated. . . . Neri participated in several meetings and had an ongoing relationship with the principals in the case for several years. It was that information that the government sought, not the substance of any communications between counsel.").

For these reasons, the courts have stated that, when engaging in cooperation-related discussions with a JDA participant, the government should simply take reasonable steps to prevent the receipt of any JDA-protected information. *See, e.g., United States v. Salvagno*, 306 F. Supp. 2d 258, 272-73 (N.D.N.Y. 2004). Here, the United States has taken extensive efforts to do so. The United States' first meeting with Mr. Ferrer did not take place until the morning of April 5, 2018. The proffer agreement (enclosed as Exhibit A) specifically stated that Mr. Ferrer should not discuss JDA-protected material, this instruction was reiterated on several occasions during the proffer, and Mr. Ferrer's attorneys have confirmed that no such material was discussed on April 5. The requirement not to disclose any JDA-protected material was also reiterated in the cooperation addendum to Mr. Ferrer's plea agreement (which is currently under seal but will be produced to you in the future), and Mr. Ferrer's counsel have confirmed that no JDA-protected material has been discussed during Mr. Ferrer's subsequent interviews by the government. Finally, the government also has not received a copy of the actual JDA or any other common interest agreement (we have avoided doing so, in an abundance of caution, precisely because we wish to avoid any grey areas).

Furthermore, even if (contrary to the government's best efforts) Mr. Ferrer had somehow disclosed JDA-protected information during his discussions with the government, the timing of his proffer undermines any claim of prejudice. As noted, the United States did not meet with Mr. Ferrer, or receive a proffer of information from Mr. Ferrer's counsel, until April 5, 2018. As a result, no information from Mr. Ferrer was used to obtain the March 28, 2018 indictment or obtain any of the search warrants in this case. Moreover, as you know from our extensive "reverse proffer" to you in December 2017, the theory underlying the indictment has long been transparent.

Courts have concluded that when (as here) the government establishes that it has taken steps to avoid the disclosure of JDA-protected information, the cooperator's counsel has averred that no such disclosure has occurred, and the defendant merely suspects (notwithstanding those avowals) that he was prejudiced by an improper disclosure, there is no entitlement to an evidentiary hearing. *See, e.g., United States v. Aulicino*, 44 F.3d 1102, 1117 (2d Cir. 1995) (affirming district court's denial of evidentiary hearing, where defendants

alleged that government had obtained JDA-protected information from a cooperator, because the "government presented evidence of the steps it took to insulate the [prosecutors] from any knowledge gained by [the cooperating witness] from his contact with the codefendants after he agreed to cooperate" and the defendants "did not present any evidence to suggest that [the cooperating witness] revealed any privileged information to the government"); *Salvagno*, 306 F. Supp. 2d at 272 ("[T]he court denies defendants' motion requesting an order directing an evidentiary hearing.   Defendants have failed to allege specific facts that indicate communication of privileged information to the Government and prejudice resulting therefrom.   Moreover, the government avers that it neither sought nor accepted any [such] information."); *United States v. Anderson*, 288 F.3d 335, 338 (7th Cir. 2002) (affirming denial of evidentiary hearing, where defendant alleged that cooperators shared privileged information with the prosecution, because the defendant had "not alleged with sufficient detail, definitiveness, or specificity" the privileged matters that were allegedly disclosed).

Finally, to the extent your letter reflects a belief that the government's decision to file the disqualification motion was somehow improper, that belief is incorrect.   The potential conflict-of-interest issues in this case did not even come to my attention until April 8, during a phone call with Mr. Larkin's former attorneys (who simply inquired if the government had any concerns about the anticipated representation arrangements in the case).   We did not initially recognize the seriousness of those issues, as evidenced by the fact that the government did not object when the HCM firm represented Mr. Lacey during various hearings on the week of April 9-13 or when various DWT lawyers filed notices of appearance during the week of April 9-13.

Once the conflict-of-interest issues became more apparent to us, we conducted legal research.   This research confirmed that the DWT and HCM firms were, in fact, laboring under deep conflicts of interest.   Nevertheless, due to the sensitivity of the issues, we sought to engage in a meet-and-confer process before filing anything with the Court.   Among other things, we mentioned our concerns to Mr. Cambria and Ms. Henze Cook during a phone call on April 23, sent an email to Mr. Cambria and Ms. Henze Cook on April 24 identifying the various cases and ethical rules supporting our concerns, and participated in a conference call with you and other members of the defense team on April 25.   During this call, we specifically asked if there were any written agreements in which Mr. Ferrer had agreed to waive the DWT and HCM firms' conflicts of interests so they could represent Messrs. Lacey and Larkin.   None were mentioned.

The case law makes clear that prosecutors should bring conflict-of-interest issues to the Court's attention as soon as they become apparent, and courts have faulted prosecutors (and reversed convictions) for failing to do so or waiting to do so until the eve of trial.   *See, e.g.*, *United States v. Iorizzo*, 786 F.2d 52, 59 (2d Cir. 1986) ("We add a final note.   The reversal here is the direct result of the prosecution's using defense counsel's conflict of interest as a means of affecting the evidence going before the jury instead of moving for his disqualification before the trial. . . .   We trust that this decision will ensure that a pretrial disposition of such issues will occur in the future."); *United States v. Henke*, 222 F.3d 633, 638 (9th Cir. 2000).

May 14, 2018
Page 4 of 4

That is simply what we have done here.  Indeed, before filing the motion, the United States consulted with Mr. Ferrer's counsel, primarily to confirm that the factual representations contained in the motion were accurate.  During these discussions, Mr. Ferrer's counsel stated that Mr. Ferrer did not wish to be a party to the motion.  As a result, the United States filed the motion on its own behalf, in the interest of protecting the integrity of the trial.  *See, e.g., United States v. Kight*, 2017 WL 4619024, *13 n.19 (N.D. Ga. 2017)  ("[T]he Court rejects Kight's argument that the Government, without Lankford's permission, is precluded from seeking Armstrong's disqualification or that Lankford was required to join in the Government's Motion.");  *United States v. Culp*, 934 F. Supp. 394, 399 (M.D. Fla. 1996) (granting government's disqualification motion and stating that defense counsel's "argument that the Government lacks standing to raise the issue of a potential conflict gives short shrift to the respective interests of the Government and the Court in ensuring that judgments remain intact on appeal. . . .  [Counsel's] challenges to the Government's standing betray a conception of the interests at stake in this motion which is both unduly narrow and overly simplistic.").

Sincerely,

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s Kevin Rapp*
KEVIN M. RAPP
Assistant U.S. Attorney

KMR/zs

## PROFFER/INTERVIEW AGREEMENT

The ground rules and conditions for any proffer/interview are set forth in this document, which is 3 pages.

The parties to this Agreement are the First Assistant United States Attorney through her Assistant U.S. Attorneys, Kevin M. Rapp, Dominic Lanza, Margret Perlmeter and Reginald Jones, Trial Attorney, Department of Justice, Kirsta Leeburg Melton, Assistant Attorney General, State of Texas, Randy Mailman, Deputy Attorney General, Office of the Attorney General, State of California, ("the Prosecution") and Carl Ferrer and Mr. Ferrer's counsel, Nanci Clarence and Jonathan Baum.

This Agreement binds the U.S. Department of Justice, and the Attorney Generals' Offices for the States of California and Texas.

1.   The purpose of any proffer/interview is to evaluate oral and written statements and proffered information given by Mr. Ferrer and his agents (including but not limited to his attorneys) concerning his involvement with Backpage.com and related entities. Mr. Ferrer agrees to proffer information or participate in any interview on an entirely voluntary basis. Mr. Ferrer also understands and agrees that he is not compelled in any way to participate in this interview.

2. Mr. Ferrer voluntarily waives all claims of attorney-client privilege, whether in his personal or official capacity as the Chief Executive Officer of Backpage.com, LLC as to communications with any attorney or law firm that represented Backpage.com, or any related entity, where such communications concerned or related to Backpage.com or any related entity. This waiver does not apply to Mr. Ferrer's current attorneys, Nanci Clarence, Jonathan Baum and anyone working on their behalf. Mr. Ferrer voluntarily agrees to provide all documents and other material that may be relevant to the investigation and that are in his possession or control. However, Mr. Ferrer shall not disclose any documents or information protected by the Joint Defense Agreement in this matter. Mr. Ferrer understands that his proffer/interview and any benefit he may receive from information he provides to the prosecution does not depend on his waiver of the attorney-client privilege.

3.   The agreement is explicitly contingent upon Mr. Ferrer providing truthful statements and truthful information.  In any interview or proffer, Mr. Ferrer and his agents will completely and truthfully answer all questions, will provide complete and truthful information relating to any and all matters, and will make no material misstatements or omissions of facts.  Mr. Ferrer further understands that he will neither attempt to protect any person or entity nor falsely implicate any person or entity, through false information or omission. Nevertheless, no truthful statements made by or truthful information provided by Mr. Ferrer or his agents during the interview, or otherwise proffered, will be used directly against Mr. Ferrer during any litigation or proceeding instituted by the Prosecution.   The Prosecution will be the ultimate arbiter of the truthfulness of any statement or information.

4. Nothing in paragraph 4 above, however, prevents the Prosecution from making derivative use of and pursuing any investigative leads (i.e. fruits) suggested by any statements made by or other information proffered or provided by Mr. Ferrer or his agents. In other words, except as expressly stated above, Mr. Ferrer understands and agrees that there are no limitations whatsoever on the use the Prosecution can make of the testimony and information provided in any interview or otherwise proffered by Mr. Ferrer or his agents, either orally or in writing, both before and after any interview of Mr. Ferrer.   Mr. Ferrer expressly waives any right to challenge the derivative use of any statements or information provided during the interview or otherwise proffered by Mr. Ferrer or his agents.   It is the intent of this agreement that such derivative use is proper and the Prosecution and Mr. Ferrer hereby agree that Federal Rule of Criminal Procedure 11(f), and Federal Rules of Evidence 408 and 410 and, do not govern such derivative use in any litigation or other proceedings.   This provision is necessary to eliminate any need or argument for a *Kastigar* hearing at which the Prosecution would have to prove that the evidence it would introduce at trial, or any other proceedings, is not associated with or tainted by any statements made by or other information provided by Mr. Ferrer during any interview, or was otherwise proffered to the Prosecution by Mr. Ferrer or his agents.

5.   If Mr. Ferrer is a witness at any trial or other proceeding relating to the information he provides to investigating agents, and offers testimony materially different from any statements or other information provided during the interview or otherwise proffered by Mr. Ferrer or his agents, the Prosecution may cross-examine witnesses (including Mr. Ferrer) and introduce rebuttal evidence concerning any statements or other information provided during any interview or otherwise proffered by Mr. Ferrer or his agents.   In addition, the Prosecution reserves the right to prosecute Mr. Ferrer for perjury, false official statement or obstruction of justice to the fullest extent provided by law.   If such a prosecution occurs, the Prosecution can use directly, and derivatively, in their case-in-chief, in cross-examination and in rebuttal, any statements and information provided by Mr. Ferrer, whether directly or indirectly through his agents, or derivatively linked to the statements and other information Mr. Ferrer or his agents supplied in any interview or other proffer by Mr. Ferrer or his agents. This provision is needed to ensure that Mr. Ferrer does not abuse the opportunity for an interview or proffer of information, does not make materially false statements to a government agency either orally or in writing (directly or indirectly), and does not commit perjury when testifying at trial or in any other legal proceeding

6.   Mr. Ferrer understands that the law (specifically, *Brady v. Maryland*) requires that the Prosecution provide any person against whom charges are brought, all information which tends to mitigate or negate the person's guilt as to the offenses charged. Therefore, Mr. Ferrer understands that if *Brady* material is developed or produced from the interview or in any proffer, then the Prosecution would be required to disclose this information to the appropriate defendants and/or their attorneys at the time the obligation is imposed on the Prosecution. This provision is included to permit the Prosecution to comply with its discovery obligations and is not intended to discourage Mr. Ferrer from providing information to the Prosecution.

7.   With the exception of providing required notice under the Joint Defense Agreement in this case, Mr. Ferrer will not, personally or through any other person (including but not limited to his attorneys), disclose the existence of this agreement or any interview or proffer, or anything otherwise said during the interview or proffered to the Prosecution, or any information relating to

Mr. Ferrer's cooperation with the Prosecution (except that if an attorney for another putative or actual defendant asks Mr. Ferrer's counsel or successors whether Mr. Ferrer is cooperating with the United States, counsel or successors may confirm the fact that Mr. Ferrer is cooperating, but will not disclose any other information about Mr. Ferrer's cooperation).

      8.  This document is the full and complete Agreement of the parties with regard to any interview or proffered information.  No other promises, representations or agreements have been made by or between the parties with regard to any proffer/interview or the underlying matters referenced in this written agreement. The parties shall at all times act in good faith to accomplish their intent in entering into this Agreement. Any dispute between the parties as to whether either party has failed to fulfill any of its obligations under this Agreement shall be submitted to and decided by the United States District Court for the District of Arizona.

AGREED:

ELIZABETH A. STRANGE
First Assistant United States Attorney

__4/5/18__
DATE

_____
KEVIN M. RAPP
DOMINIC LANZA
MARGRET PERLMETER
Assistant U.S. Attorneys

_____
DATE

_____
REGINALD E. JONES, Trial Attorney
U.S. Department of Justice
Child Exploitation and Obscenity Section

__4/5/18__
DATE

_____
KIRSTA LEEBURG MELTON
Assistant Attorney General,
Office of the Attorney General, State of Texas

__4/5/18__
DATE

_____
RANDY MAILMAN,
Deputy Attorney General,
Office of the Attorney General, State of California

__4/5/18__
DATE

_____
CARL FERRER

__4/5/18__
DATE

_____
NANCI CLARENCE, ESQ.
JONATHAN BAUM, ESQ.

## WAIVER OF ATTORNEY CLIENT PRIVILEGE

I, Carl Ferrer, state the following in my capacity as sole owner and manager of Dartmoor Holdings LLC, which wholly owns and operates Backpage.com LLC (of which I am Chief Executive Officer), Website Technologies LLC, IC Holdings LLC, Posting Solutions LLC, and Postfaster LLC, hereafter referred to as "the Companies." I am authorized to waive each of the Companies' attorney-client privilege and am doing so because I believe executing such waiver is in each of the Companies' best interest.

I further state that, being represented by counsel and being fully advised as to this matter, I hereby voluntarily waive all aspects of the attorney-client privilege, on behalf of the Companies, which otherwise may have applied to communications, documents and information that I or the Companies have provided to law enforcement or which law enforcement may already have in its possession from other sources, as follows:

a. All communications related to the "adult," "escort," "dating," and "services" sections of the Companies' websites, including but not limited to company policies, moderation practices, age verification practices, legality, content, and compliance with law enforcement.

b. All communications related to the Companies' financial activity, including but not limited to the sale of Backpage.com in 2015, all loans and financing agreements related to the sale of that company in 2015, monetization of the Companies' websites, payment processing, credit card processing, banking, and payment of loans.

c. All communications regarding the relationship between the Companies (including their current owner and employees) and their former owners and officers, including but not limited to, James Larkin, Michael Lacey, John ("Jed") Brunst and Scott Spear, as well as communications between the Companies (including their current owner and employees) and Don Bennett Moon.

I further state that, in addition to the foregoing waiver, I hereby voluntarily waive, on behalf of the Companies, all aspects of the attorney-client privilege which otherwise may have applied to the Companies' relationship with any attorney ("previous attorneys") who was retained to represent the Companies in connection with various matters related to the subjects listed above. This attorney-client privilege waiver is meant to apply to all communications between the Companies and any attorney representing them at any time; all acts undertaken by others acting on the Companies' attorneys' behalf taken in connection with representing the

Companies related to the subjects listed above; and any and all documents generated through their representation of the Companies that belong to the Companies.

I further state that this waiver does not apply in any respect to any aspect of the Companies' representation by David Botsford of Botsford & Roark LLP, or to any aspect of my personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me in an individual capacity, including, but not limited to, Nanci Clarence, Jonathan Baum and Shaneeda Jaffer of Clarence, Dyer & Cohen, and the Law Offices of E.G. Morris.

_4/5/2018_
DATED

Carl Ferrer

1  XAVIER BECERRA
   Attorney General of California
2  JAMES ROOT
   Senior Assistant Attorney General
3  RANDY MAILMAN
   Deputy Attorney General
4  State Bar No. 246134
   1300 I Street, Suite 125
5  P.O. Box 944255
   Sacramento, CA 94244-2550
6  Telephone: (916) 210-7253
   Fax: (916) 322-2368
7  E-mail: Randy.Mailman@doj.ca.gov
   *Attorneys for the People of the State of*
8  *California*

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        COUNTY OF SACRAMENTO

12

13  **PEOPLE OF THE STATE OF**              Case No. 16FE024013
    **CALIFORNIA,**
14
                                Plaintiff,
15                                           **PLEA AGREEMENT**
            **v.**
16

17  **CARL FERRER**
    (DOB: 03-16-1961) (Xref # 5094010)
18
                                Defendant.
19

20

21      In order to resolve the charges against him, Carl Ferrer ("Defendant"), represented by and

22  through his attorney of record, Nanci Clarence, agree with the People as follows:

23      1.    Defendant will plead **guilty** to counts 1, 2, 3, and 12 in the First Amended

24  Criminal Complaint charging him as follows:

25           a.   Count 1 – Conspiracy to commit money laundering in violation of California

26                Penal Code sections 182 (a)(1) and 186.10(a)(1) and (2), a felony.

27           b.   Count 2 – Money laundering in violation of Penal Code section 186.10(a), a

28                felony.

                                    1

                                                        PLEA AGREEMENT

    c.  Count 3 – Money laundering in violation of Penal Code section 186.10(a), a

        felony.

    d.  Count 12 – Money laundering in violation of Penal Code section 186.10(a), a

        felony.

2.     The People and Defendant stipulate to the following facts:

      On or between January 1, 2013 and September 1, 2016, in the County of Sacramento and throughout the State of California, Defendant, along with Michael Lacey and James Larkin, operated multiple websites, including Backpage.com. Backpage.com offers online classified services, but its overwhelming source of income was generated by charging customers money to post advertisements in the adult escort section. Because of the nature of the revenue stream, several financial institutions refused to process payments for advertisements on Backpage.com. However, Defendant created new merchant accounts, manipulated billing descriptors, misled financial institutions, and created shell companies in order to circumvent the financial institutions' unwillingness to process Backpage.com's commercial sex and other transactions.

      Between July 1, 2014 and July 31, 2014, Defendant transferred, between bank accounts, more than $563,575 in revenue generated from the sale of California based adult services section advertisements on Backpage.com, through Bank Corporation, Wells Fargo, and J. P. Morgan Chase, knowing that the money represented the proceeds of bank and wire fraud.

      Between August 1, 2014 and August 31, 2014, Defendant transferred, between bank accounts, more than $1,099,309 in revenue generated from the sale of California based adult services section advertisements on Backpage.com, through Bank Corporation, Wells Fargo, and J. P. Morgan Chase, knowing that the money represented the proceeds of bank and wire fraud.

      Between May 1, 2015 and May 31, 2015, Defendant transferred, between bank accounts, more than $48,288.85 in revenue generated from the sale of California based adult services section advertisements on Backpage.com, through American Express, knowing that the money represented the proceeds of bank and wire fraud.

3.     Defendant agrees to cooperate with the investigation and prosecution of co-conspirators Michael Lacey and James Larkin in Sacramento County Superior Court case number 16FE024013 by making himself available to the Attorney General's Office to assist in the investigation and prosecution, truthfully recalling and relating information regarding the case, providing truthful testimony at preliminary hearing, grand jury, trial, or other court proceeding

2

1  without further process of subpoena, identifying forfeitable assets, and providing access to

2  Backpage.com transaction data.

3

4          4.      No later than five business days after entering this plea agreement, or otherwise as

5  directed by the U.S. Attorney's Office for the District of Arizona, Defendant agrees to take all

6  steps within his power to shut down Backpage.com in all countries where it operates.

7          5.      No later than fourteen business days after entering this plea agreement, or

8  otherwise as directed by the U.S. Attorney's Office for the District of Arizona, Defendant agrees

9  to take all steps within his power to forfeit, to the United States, all operating rights for all

10 internet domains—such as Backpage, Ymas, Postfastr, and Truckrjobs—used to operate the

11 website Backpage.com throughout the world.

12         6.      Defendant agrees that he will make Backpage.com data available for law

13 enforcement and act as the declarant to authenticate business records as the custodian of records,

14 if necessary, until the time of sentencing,

15         7.      The People and Defendant agree that sentencing will be scheduled for as soon as

16 possible after Defendant has completed his cooperation and after sentencing in the federal matter.

17         8.      The maximum sentence that can be imposed under this plea agreement is 5 years.

18 Admission to the factual basis contained in paragraph 2 will not be used to support the imposition

19 of enhancements under Penal Code § 186.10 subd. (c).

20         9.      Pursuant to Penal Code § 1192.5, the People agree to recommend that Defendant

21 be sentenced to a period of incarceration concurrent with and not to exceed the custodial time

22 imposed in the matter of *United States v. Carl Ferrer*, United States District Court, District of

23 Arizona, case number CR-18-464-PHX-DJH.  Such sentence shall be served in a federal facility.

24 If the court in this matter, 16FE024013, determines that the Defendant has failed to satisfy the

25 above-described obligations to cooperate and testify truthfully, Defendant may be sentenced up to

26 the maximum term of five years in state custody. The People shall, in good faith, consider the

27 nature and extent of Defendant's cooperation in whatever sentencing recommendation is made to

28

3

PLEA AGREEMENT

the Court.

10.     In lieu of a fine, Defendant agrees, pursuant to his federal plea agreement, to pay full restitution to all victims directly or proximately harmed by his conduct.

11.     The People agree to file any motion necessary in order to achieve the People's recommended sentence.

12.     Defendant understands that the Court is not bound by the terms of this agreement. However, if the Court does not follow the People's recommendations outlined in paragraph 9 above, Defendant will be permitted to withdraw the plea and no statement of Defendant received during the plea will be admitted against the Defendant in any subsequent criminal proceedings.

13.     The Defendant agrees and acknowledges that this plea waives any and all of his appellate rights.

///

4

PLEA AGREEMENT

14.     The People and the Defendant enter into this agreement with the intent to achieve a global resolution of the various criminal actions now pending against Defendant. If the Defendant's plea agreements in Texas and the federal matter in Arizona are not accepted, Defendant may the withdraw his plea of guilty to the charges set forth in paragraphs 1 and 2 above.

Dated: April _____, 2018

_____
CARL FERRER
Defendant

Dated: April _____, 2018

_____
NANCI CLARENCE
JONATHAN BAUM
Attorneys for Defendant

Dated: April _____, 2018

_____
RANDY MAILMAN
Deputy Attorney General
People of the State of California

STIPULATION SO APPROVED.  The above stipulation will be incorporated into the record, and its terms made a part of, or considered by, any probationary order.

Dated: April _____, 2018

_____
JUDGE OF THE SUPERIOR COURT
LAWRENCE G. BROWN

5

PLEA AGREEMENT

State's Exhibit #1

gR 18FC-1652C

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 94TH JUDICIAL DISTRICT |
| | § | |
| CARL FERRER | § | NUECES COUNTY, TEXAS |

## PLEA BARGAIN AGREEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

I, Carl Ferrer, the undersigned Defendant, having had the advice of counsel, hereby agree to the following:

1. I, Carl Ferrer, will enter a plea of guilty to Money Laundering as alleged in the above-referenced cause.

2. I, Carl Ferrer, will give full, complete, and truthful evidence concerning my knowledge of any and all offenses committed by any and all co-defendants identified by Texas, California, or federal authorities. This agreement includes testimony during trial, pre-trial, post-conviction, appellate and re-trial proceedings in any Court, state or federal. Carl Ferrer, the District Attorney of Nueces, County, Texas, [hereinafter The District Attorney] and the Texas Attorney General agree that Carl Ferrer shall be given "use immunity" as to any statements made by him pursuant to this agreement, including statements made to Texas authorities and during trial, pre-trial, post-conviction, appellate and re-trial proceedings given in any Texas court or hearing. The Court, by acceptance of this plea agreement confers use immunity with respect to the aforementioned statements coextensive with Defendant's right against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution.

3. I, Carl Ferrer, agree that I will not disclose the existence of the investigations that have resulted in this plea, the substance of the investigations that have resulted in this plea, or the identity of any potential future targets of the investigations that resulted in this plea, except as may be required to effectuate withdrawal from the Joint Defense Agreement to which Carl Ferrer is a party.

4. I, Carl Ferrer, will additionally give sworn written or recorded statement(s) detailing any additional facts if that is requested by any attorney for Texas or California or federal Assistant U.S. Attorney.

5. I, Carl Ferrer, will immediately take steps within my power to permanently shut down Backpage.com in all countries in which it is operating, and will take no action to resume operation of Backpage.com or any similar website in the future. "Similar website" is defined as any website or web hosting platform that involves adult content, including classified postings or advertisements for dating, personals, massage, escorts, or any other sexually oriented service.

6. I, Carl Ferrer, will provide all available information to state and federal law enforcement regarding the largest purchasers of advertisements on Backpage.com.

7. I, Carl Ferrer, will assist both state and federal law enforcement in the seizure of all domain names registered to Backpage.com, LLC and all related companies.

8. I, Carl Ferrer, will identify all forfeitable assets of my own, co-defendants of which I have knowledge, Backpage.com, LLC, and all related companies to state and federal law enforcement. 18FC-1653C  18FC-1655C  18FC-1657C
18FC-1654C  18FC-1656C  18FC-1658C

9. I, Carl Ferrer, will plead Backpage.com LLC and all specified companies in [Case Number] to 1 Count of Trafficking of Persons, TPC 20A.02, and 1 Count of Engaging in Organized Criminal Activity with an underlying criminal activity of Money Laundering, TPC 34.02.

State's Exhibit #1

10. I, Carl Ferrer, agree that if I breach the terms of this plea agreement or if I intentionally, knowingly or recklessly conceal, misrepresent, or misstate any material fact relevant to this plea agreement, the Court may sentence me up to the maximum punishment allowed by law for a second-degree felony, 2-20 years in the Texas Department of Criminal Justice—Institutional Division.

In return and in consideration thereof, the State of Texas agrees that:

11. If there is a dispute regarding whether Carl Ferrer has met his obligations under this agreement, the Court shall determine whether the defendant has failed to comply with this agreement, including whether the defendant has been truthful.

12. The Court agrees to defer the sentencing of Carl Ferrer until he has had the opportunity to comply with his obligations under this Agreement, through completion of the trials against the other co-defendants discussed in paragraph 2 above. The Court agrees that Carl Ferrer will be sentenced first in the federal matter.

13. In the event Carl Ferrer is sentenced to prison in the federal system, he may serve his Texas prison sentence in a federal facility. The sentence Carl Ferrer receives in this matter shall run concurrent to the sentence he receives in the federal matter.

14. Neither the Court, the District Attorney or the Attorney General of Texas will communicate to the Texas Board of Pardon and Paroles a protest to Carl Ferrer being granted parole.

15. The Court, the District Attorney, and the Attorney General of Texas agree that Carl Ferrer may be released on bond, subject to necessary bond conditions, during the time period after he has been sentenced by Texas but before his federal prison sentence begins. If Carl Ferrer is not sentenced to prison in the federal system, his Texas sentence in TDCJ—Institutional Division will begin immediately upon sentencing.

16. Carl Ferrer, the District Attorney, and the Attorney General of Texas agree that Carl Ferrer will plead guilty to 1 Count of Money Laundering, Texas Penal Code, Section 34.02, a Second Degree Felony. Carl Ferrer, the District Attorney, and the Attorney General of Texas agree that, subject to Paragraph 10 above, in exchange for his plea of guilty and other terms stated herein, Carl Ferrer will be sentenced to a cap of 5 years in the Texas Department of Corrections Institutional Division. Carl Ferrer will make no application for probation or deferred adjudication. Carl Ferrer, the District Attorney, and the Attorney General of Texas shall have the right to argue for any sentence within the cap of 5 years, from a minimum of 2 years to a maximum of 5 years in the Texas Department of Corrections Institutional Division at the time of sentencing. The District Attorney and the Attorney General of Texas shall in good faith consider the nature and extent of the Defendant's cooperation in whatever sentencing recommendation is made to the court.

Other Terms:  Fine of $1,500 due at sentencing and Court Costs.

THE UNDERSIGNED certify they have READ ALL TERMS of the above agreement, and the agreement contains ALL the terms of the plea bargain to which they have agreed.

Criminal District Attorney
Nueces County, Texas

By:

Asst. Criminal District Attorney

Defendant

Attorney for Defendant

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

United States of America,

              Plaintiff,

  vs.

Michael Lacey, *et al.*,

              Defendants.

CASE NO.   CR-18-00422-PHX-SPL (BSB)

**CERTIFICATE OF PAUL J. CAMBRIA, JR., IN SUPPORT OF DEFENDANT MICHAEL LACEY'S MOTION FOR DISCLOSURE OF DOCUMENTS RELATED TO CARL FERRER'S WAIVER OF PRIVILEGE**

STATE OF NEW YORK    )
COUNTY OF ERIE       ) ss.:
CITY OF BUFFALO     )

Paul J. Cambria, Jr., Esq., being duly sworn, certifies that:

        1)    I am an attorney at law duly licensed to practice in the State of New York and am a partner in the law firm of Lipsitz Green Scime Cambria LLP, located at 42 Delaware Avenue, Suite 300, Buffalo, New York, attorneys for Defendant Michael Lacey. I was admitted to this Court *pro hac vice* for the instant prosecution.

        2)    I make this certificate based on personal knowledge and in support of Defendant Michael Lacey's Motion for Disclosure of Documents Related to Carl Ferrer's Waiver of Privilege ("Defendant's Motion).

        3)    As set forth in greater detail in the Memorandum of Points and Authorities in Support of Defendant's Motion, on May 1, 2018, Michael Piccarreta, counsel

for Andrew Padilla, requested the government to provide defendants with prompt disclosure of all documents related to Mr. Ferrer's waiver of privilege.

4)      The government declined this request.

5)      Mr. Piccarreta personally consulted with the government in a good faith and sincere effort to resolve this discovery dispute without the filing of a motion.

6)      Unfortunately, the parties have reached an impasse and are unable to reach a satisfactory resolution of these discovery demand.  In light of this impasse, it was necessary to file Defendant's Motion with this Court.

7)      I therefore certify, pursuant to LRCrim 12.1 and LRCiv 7.2(j), that after personal consultation and sincere efforts to do so, counsel have been unable to satisfactorily resolve this matter.


DATED:        June 28, 2018            Respectfully Submitted,
                                       LIPSITZ GREEN SCIME CAMBRIA LLP

                                       /s/      *Paul J. Cambria, Jr.*
                                                PAUL J. CAMBRIA, JR.
                                                Attorneys for Defendant Michael Lacey

Sworn to before me this
28th day of June, 2018.

s/ April Kelly
Commissioner of Deeds
In and For the City of Buffalo, N.Y.
My Commission expires December 31, 2018