ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          v.<br><br>Michael Lacey, et al.,<br><br>                    Defendants. | CR-18-422-PHX-SPL (BSB)<br><br>**UNITED STATES' RESPONSE TO DEFENDANT LACEY'S MOTION FOR DISCLOSURE OF DOCUMENTS RELATED TO CARL FERRER'S WAIVER OF PRIVILEGE MATERIAL TO DISQUALIFICATION**<br><br>**[CR 202]** |

Preliminary Statement

Defendant Michael Lacey's Motion for Disclosure of Documents Related to Carl Ferrer's Waiver of Privilege Material to Disqualification should be denied for two essential reasons.  First, the motion is based on a flawed theory of "materiality" – namely, the notion

that the incurable ethical conflict identified in the United States' Motion to Disqualify Counsel (CR 118) would somehow disappear if Lacey could show Carl Ferrer had waived his personal attorney-client privilege. Lacey's materiality theory is based on a too-cramped conception of Ethical Rule 1.9(a) of the Arizona Rules of Professional Conduct, Ariz. S. Ct. R. 42. ER 1.9(a) commands that "[a] lawyer who has formerly represented a client in a matter ***shall not*** thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." ER 1.9(a) (emphasis added). ER 1.9(a) is mandatory and applicable regardless of whether Ferrer disclosed *any* confidences to prior counsel. *See Foulke v. Knuck*, 784 P.2d 723, 728 (Ariz. Ct. App. 1989) (discussing "the mandatory nature of ER 1.9(a)"; "[t]he rule does not require that confidences and secrets be divulged in order for a conflict to exist or for disqualification to be proper"); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980) ("[I]t matters not whether confidences were in fact imparted to the lawyer by the client. The substantial relationship between the two representations is itself sufficient to disqualify.").

Moreover, attorney-client privilege and client confidentiality are entirely distinct concepts. ER 1.6's "sweep is much broader than the attorney-client privilege," and waiver of attorney-client privilege does *not* vitiate an attorney's ethical duties under ERs 1.6 and 1.9 to safeguard confidences and secrets learned during a client representation. *See* Ariz. Ethics Op. 97-05.[1] Further, ER 1.9(a) is based not only on the duty of confidentiality, but also on the duty of loyalty to former clients and the need to protect the integrity and fairness of legal proceedings that could be compromised when an attorney represents a client adverse to a former client in a substantially related matter.

Simply put, regardless of whether Ferrer waived the attorney-client privilege in any respect, his former law firms – Davis Wright Tremaine ("DWT") and Henze Cook Murphy ("HCM") – have ongoing and comprehensive duties to safeguard all information they

---

[1] The Arizona Ethics Opinions cited in this Response are available at http://www.azbar.org/Ethics/EthicsOpinions.

acquired about Ferrer when they represented him.  The "broad, prophylactic approach" of ER 1.9(a) requires DWT's and HCM's disqualification to avoid even the possibility that they might use such information adversely to Ferrer. *See* Ariz. Ethics Op. 91-05. Accordingly, the discovery Lacey seeks is *not* "material" to the disqualification motion.

Second, Ferrer has not waived – but instead has expressly reserved – his personal attorney-client privilege. On April 5, 2018, Ferrer executed a two-page Waiver of Attorney Client Privilege.  In the last paragraph, he expressly made clear he was only waiving Backpage's corporate attorney-client privilege and not waiving his personal attorney-client privilege, either with his current attorneys (from the Clarence Dyer law firm) or any attorneys who previously represented him on an individual basis: "*I further state that this waiver does not apply to any aspect…of my personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me*…." CR 174-2 at 5-6 (emphasis added).  Lacey cites a statement from a separate Proffer Agreement to assert Ferrer waived his personal attorney-client privilege.  As explained below (and in CR 192 at 7-8), the Proffer Agreement only applied to "communications with any attorney or law firm that represented Backpage.com, or any related entity."  Even if the language could be construed as encompassing Ferrer's personal attorney-client privilege, it simply indicated that, during Ferrer's proffer sessions with the government, he would discuss matters related to these firms *if asked to do so*.  This topic, however, was never broached during the proffer sessions; accordingly, nothing was waived.  If the Court has any doubts, the government is prepared to submit for the Court's *in camera*, *ex parte* review the 302 interview memoranda from Ferrer's proffer sessions.  These memoranda will show that nothing about Ferrer's personal legal representations was discussed.  Lacey's motion should be denied.

<u>Factual Background</u>

Since 2010, Ferrer has been named as a defendant, in his personal capacity, in at least ten lawsuits in state and federal courts across the country.  CR 118 at 3-5.  DWT and HCM repeatedly represented Ferrer in those lawsuits.  CR 118 at 3-5.  Lawyers from DWT

and HCM prepared Ferrer to testify orally and/or in writing; provided legal advice to Ferrer; and otherwise advocated for Ferrer and defended his interests in those cases.  CR 118 at 3-5.  These matters involved claims or investigations concerning Backpage.com ("Backpage") and Ferrer's involvement in facilitating prostitution; several of the civil lawsuits were filed by victims who had been trafficked via Backpage.  CR 118 at 3-5.

On March 28, 2018, a grand jury in the District of Arizona issued a 61-page, 93-count indictment charging Lacey and six other defendants with facilitating prostitution, money laundering and conspiracy offenses arising from their years-long operation of Backpage, which had become notorious as the internet's leading source of prostitution advertisements.  CR 1 at 1-2.  Backpage was co-founded by Lacey, Jim Larkin and Ferrer in 2004.  CR 1 at 2.  Lacey and Larkin purported to sell Backpage to entities controlled by Ferrer in 2015, but they continued to retain significant control over the website and received tens of millions of dollars of Backpage-related distributions.  CR 1 at 2, 7-8.

On April 5, 2018, Ferrer entered into a cooperation-based plea agreement with the government.  CR 18-464-PHX-SPL, CR 7.  In the factual basis of his plea agreement, Ferrer expressly implicated Lacey and Larkin in the knowing facilitation of prostitution crimes committed by Backpage's advertising customers, and in money laundering offenses concerning hundreds of millions of dollars in Backpage advertising-related revenue.  CR 18-464-PHX-SPL, CR 7 at 12-14.  It is anticipated that Ferrer will be a key prosecution witness against Lacey and Larkin at trial.  CR 118 at 2, 5-6.  Accordingly, Lacey and Larkin's interests are directly and materially adverse to Ferrer's in this prosecution.

Notwithstanding this stark adversity, the two law firms that formerly represented Ferrer in his personal capacity in the lawsuits referenced above – DWT and HCM – entered appearances for Lacey and Larkin in this case.  CR 118 at 7.

Because the case law makes clear that prosecutors should bring conflict-of-interest issues to the Court's attention as soon as they become apparent, and have faulted prosecutors (and reversed convictions) for failing to do so or waiting until the eve of trial, the United States promptly met and conferred with defense counsel, and filed a motion to

disqualify the DWT and HCM firms on April 25, 2018.  CR 118; *see* CR 202-2 at 3-4.

On May 1, 2018, counsel for Andrew Padilla, one of Lacey's co-defendants, wrote the government on behalf of all the defendants to seek production of 12 categories of documents that, in Padilla's counsel's view, "are necessary in order to properly prepare the response" to the motion to disqualify DWT and HCM.  CR 202-1 at 1.  The one-paragraph letter did not explain why the requested documents were "necessary" – or even relevant – to the motion.  CR 202-1 at 1.  Government counsel met with Padilla's counsel on May 4, 2018 and reiterated that defendants had provided no rationale for seeking the documents.  CR 202-2 at 1.  On May 14, 2018, the government again pointed this out in a letter to Padilla's counsel, and invited the defense to "articulate why [the requested documents] might be subject to discovery under the relevant rules of criminal discovery."  CR 202-2 at 1.  Defense counsel did not reply to the government's letter.

Instead, Lacey and Larkin filed two motions seeking extensions to respond to the disqualification motion, and obtained six weeks to respond.  *See* CR 172 at 1.  On June 6, 2018, Lacey, Larkin, Padilla and HCM filed responses to the disqualification motion.  CRs 174, 176-77, 180.  The government filed replies on June 13, 2018.  CRs 192-94.

On June 28, 2018, two weeks *after* the disqualification motion had been fully briefed, Lacey filed the instant motion.  CR 202.  Lacey now claims that the disqualification motion cannot be decided until he obtains the discovery described in his motion.  In effect, his motion operates as an impermissible sur-reply regarding disqualification – and serves to further prolong the parties' litigation regarding DWT's and HCM's stark conflict.

<u>Argument</u>

## I.   LACEY'S ASSERTION THAT THE REQUESTED DISCOVERY IS "MATERIAL" TO THE DISQUALIFICATION MOTION LACKS MERIT.

Lacey asserts that the defense is entitled, under Fed. R. Crim. P. 16, to "an order compelling the government to produce all documents pertaining to Carl Ferrer's waiver of the attorney-client and work-product privileges as material to resolution of the Government's Motion to Disqualify."  CR 202 at 1.  He claims "[t]he record on

disqualification is incomplete because defendants and this Court lack material information to determine whether disqualification is necessary; namely, the extent to which Mr. Ferrer has waived privilege." CR 202 at 1-2. As Lacey knows, the government has long contended that Ferrer waived Backpage's *corporate* attorney-client privilege. *See, e.g*., CR 192 at 7-8. Accordingly, Lacey's motion appears to be premised on the theory that if Ferrer also waived his *personal* attorney-client privilege, then ER 1.9(a) would no longer apply and require DWT's and HCM's disqualification. *See* CR 202 at 6. For several reasons, Lacey's theory is fundamentally incorrect and his motion should be denied.

First, Lacey ignores the text and structure of ER 1.9. ER 1.9(a) applies – and requires disqualification – when a lawyer who has formerly represented a client in a matter thereafter "represent[s] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." ER 1.9(a). ER 1.9(a) does not expressly reference confidential information. On its face, it requires disqualification regardless of whether the lawyer actually received or possesses any confidential information about his or her former client, and regardless of whether subsequent events have rendered any such information non-confidential. *Foulke*, 784 P.2d at 728 ("[t]he rule does not require that confidences and secrets be divulged in order for a conflict to exist or for disqualification to be proper"). While separate parts of ER 1.9 – specifically, ER 1.9(b) and 1.9(c) – address conflicts arising from the acquisition of confidential and other information in a former representation, mandatory disqualification under ER 1.9(a) does not depend on whether the lawyer actually possesses confidences of the former client. *Foulke*, 784 P.2d at 727 (noting that ER 1.9(a) establishes an "absolute prohibition" against representation falling within its terms); *Trone*, 621 F.2d at 999.

Second, Lacey's theory that waiver of privilege vitiates ER 1.9(a) fundamentally misapprehends the critical distinction between the evidentiary attorney-client privilege codified in A.R.S. §§ 12-2234 and 13-4062(2), and the "much broader" protections of ER 1.6. Ariz. Ethics Op. 97-05. "They are entirely separate legal concepts." *Id*. "ER 1.6 is much broader than the attorney-client privilege. It protects all information relating to the

representation against even non-compulsory disclosure." *Samaritan Found. v. Goodfarb*, 862 P.2d 870, 879 (Ariz. S. Ct. 1993).   ER 1.6 extends "'not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.'"  Ariz. Ethics Op. 97-05 (quoting ER 1.6, Comment). *See also* Ariz. Ethics Op. 00-11 (ER 1.6 applies to "all information relating to representation, regardless of the fact that the information can be discovered elsewhere"). The rule "imposes confidentiality on information relating to the representation even if it is acquired before or after the relationship existed" and "does not require the client to indicate information is to be confidential."  Ariz. Ethics Op. 97-05.

Third, Lacey's theory ignores other duties and interests that ER 1.9(a) embodies, including an attorney's duty of loyalty to former clients and the strong public interest in maintaining the integrity and fairness of legal proceedings.  As recognized in *T. C. Theatre Corp. v. Warner Bros. Pictures* – "the seminal case in the area of former client representation," *Foulke*, 784 P.2d at 728 n.2 – "[a] lawyer's *duty of absolute loyalty* to his client's interests does not end with his retainer.  He is enjoined for all time, except as he may be released by law, from disclosing matters revealed to him by reason of the confidential relationship.  Related to this principle is the rule that where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited." *T. C. Theatre*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953) (emphasis added). *See also Trone*, 621 F.2d at 998-99 ("Confidentiality, however, is not the only aspect of the professional tie preserved by the disqualification rule", and a lawyer's professional commitment to his or her clients "is endangered, if the possibility exists that the lawyer will change sides later in a substantially related matter....From this standpoint it matters not whether confidences were in fact imparted to the lawyer by the client.  The substantial relationship between the two representations is itself sufficient to disqualify.").

Fourth, for all of these reasons, "[d]isqualification does not depend upon proof of the abuse of confidential information.  Because of the sensitivity of client confidence and

the profession's institutional need to avoid even the appearance of a breach of confidence, disqualification is required when lawyers change sides in factually related cases." *Trone*, 621 F.2d at 1001.  Accordingly, courts have ordered disqualification under ER 1.9 even where the former client's communications with counsel have lost their confidentiality.  *See, e.g., United States v. Fawell*, 2002 WL 1284388, at *6 (N.D. Ill. 2002) ("[T]he court does not agree that the [loss of confidentiality] eliminates the conflict resulting from Altheimer's prior representation…That suggestion assumes that the purpose of Rule 1.9(a) is limited to protecting the former client's secrets.  Other courts and commentators do not view the purpose so narrowly; they conclude instead that the prohibition against representation of another person in a same or substantially related matter relates both to the lawyer's duty of confidentiality and his or her duty of loyalty to that former client.").  *See also Touchcom, Inc. v. Bereskin & Parr*, 299 Fed. App'x 953, 955 (Fed. Cir. 2008) (granting disqualification motion and emphasizing that Rule 1.9 "was designed not only to protect client confidences, but to establish broader standards of attorney loyalty"); *Sec. Investor Protection Corp. v. R.D. Kushnir & Co.*, 246 B.R. 582, 589 (N.D. Ill. Bkr. Ct. 2000) ("Rule 1.9 is not limited to situations where a former client would be harmed by the divulgence of confidential information….[T]he loyalty principle is an independent and sufficient basis for precluding a lawyer from accepting an adverse subsequent representation."); *Selby v. Revlon Consumer Prods. Corp.*, 6 F. Supp. 2d 577, 582 (N.D. Tex. 1997) ("[T]he ethical obligations embodied in ABA Rule 1.9 go far beyond the preservation of client confidences.  The rule also concerns the duty of loyalty to a former client.").

In *Alexander v. Super. Ct.*, 685 P.2d 1309, 1314-17 (Ariz. S. Ct. 1984), the court ruled that disqualification was not warranted where the attorney had received only *one* item of ostensibly confidential information, which his former one-time client later disclosed in a publicly-filed affidavit.  *Id*. at 1314-17.  Unlike the attorney in *Alexander*, multiple attorneys from DWT and HCM represented their former client – Ferrer – in various lawsuits against Ferrer in his personal capacity across the country.  See CR 118 at 3-5. These law firms have acquired significant amounts of information relating to their

representations of Ferrer over the years.  Even if Ferrer has somehow waived his personal attorney-client privilege, that waiver would not absolve DTW and HCM of their ethical duties under ERs 1.6 and 1.9.

Subsequent Arizona cases confirm that ER 1.9(a) requires disqualification where the current and former representations are substantially related, regardless of whether the former client provided confidential information to the attorney.  In *Foulke*, decided after *Alexander*, the Arizona Court of Appeals rejected the contention disqualification wasn't necessary because "no confidences or secrets were divulged, except perhaps those which are now a matter of public record and no longer privileged, and therefore no 'true conflict exists.'" 784 P.2d at 728.  The court held this contention "fails to recognize the mandatory nature of ER 1.9(a). The rule does not require that confidences and secrets be divulged in order for a conflict to exist or for disqualification to be proper." *Id*.  Rather, "[r]egardless of what was communicated during the representation of the former client, the rule prohibits subsequent representation of an individual whose interests are substantially adverse to those of the former client." *Id*. *Foulke* quoted *T.C. Theatre Corp.* as stating:

> [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client.  The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent.

*Id.* (quoting *T.C. Theater*, 113 F. Supp. 265, 268-69 (S.D.N.Y. 1953)).

*Foulke* emphasized the "shall not" of ER 1.9(a) "incorporates the *T.C. Theatre* presumption of receipt of confidential information; the attorney is not given the option of showing that there is no danger of misuse of confidential information because he never received any." *Id*.  This principle has been repeated in numerous Arizona federal and state decisions.  *See, e.g.*, *In re Ockrassa*, 799 P.2d 1350, 1352 (Ariz. S. Ct. 1990) (noting "[t]he majority of courts that have considered the issue have held that the presumption that a lawyer received such confidences may not be rebutted"); *Meschkow & Gresham, P.L.C. v. Fran. Capital Corp.*, 2010 WL 11515666, at *2 (D. Ariz. June 4, 2010) (disqualifying law

firm and rejecting screening); *Denny's, Inc. v. Kennedy Restaurants, L.L.C.*, 2009 WL 10673455, at *5 (D. Ariz. June 16, 2009) (granting disqualification under ER 1.9(a)).

Fifth, the only authority Lacey cites in support of his materiality theory consists of a single footnote that misapprehends Arizona law regarding disqualification. Lacey writes:

> Arizona E.R. 1.9 is solely "for the protection of clients." Ariz. Ethics Op. 91-05. In particular, the Arizona State Bar has opined that "[t]he duty of confidentiality is the only duty owed by an attorney to a former client." Ariz. Ethics Op. 92-03 (emphasis added). Consequently, disqualification is unnecessary when "confidential information ... is not in jeopardy." *Id.*

CR 202 at 4 n.1. Ironically, the cited Ethics Opinions demonstrate precisely why DWT and HCM are subject to mandatory disqualification regardless of whether they received or possess confidential information regarding Ferrer.

The first opinion, Ariz. Ethics Op. 91-05, emphasizes the automatic nature of disqualification in situations like this. It considered whether a lawyer whose partner formerly represented a bookkeeper in IRS proceedings involving unpaid payroll taxes owed by her employer's businesses could represent the employer in a financial fraud prosecution in which the bookkeeper would serve as a prosecution witness. The lawyer avowed that he never received any information regarding the firm's prior representation of the bookkeeper. While noting, as Lacey does, that ER 1.9(a) was adopted "for the protection of clients," the Opinion continued: "[The rule] seeks to assure clients that their lawyers will not use confidential information against them in a subsequent proceeding. **To accomplish this important objective, the rule takes a broad, prophylactic approach**." *Id.* (emphasis added). Rather than merely prohibiting the lawyer from using confidential information against his or her former client, "**the rule prohibits the lawyer from even entering into a relationship where such misuse is possible**. The former client is thus protected not only from the misuse of his confidences, but also from the possibility of such misuse." *Id.* (emphasis added). The Opinion concluded:

> (1) lawyer A may not ethically continue to represent D over the objection of W, a witness in the prosecution against D and a former client of A's law firm; (2) lawyer A may not, with ethical propriety, conduct the cross examination of W, question her motives and competency to testify, and comment on her testimony and demeanor in final summation to the jury; and (3) in response

1 | to the question whether there are any restrictions on examination of W other
2 | than A's obvious obligation not to disclose privileged information, we respond that there are indeed additional restrictions. ***There is a complete prohibition. A may not represent D in the current criminal proceeding***.

3  *Id*. (emphasis added).  The Opinion also concluded the involvement of a lawyer from

4  another law firm as co-counsel for the employer would *not* obviate lawyer A's conflict.  *Id*.

5  Lacey also misreads Ariz. Ethics Op. 92-03, which underscores the client-protective

6  focus of ER 1.9.  The Opinion makes clear that under ER 1.9, "if the two representations

7  are substantially related, it is presumed that confidentiality will be impinged."  *Id*.  The

8  Opinion emphasizes the mandatory nature of disqualification in cases where – as here –

9  the new matter is "substantially related" to the former representation:  "Because B is a

10  former client of the inquiring attorney, he must disqualify himself from a representation

11  which is adverse to B [if] the subject matter of the new representation is substantially

12  related to that of the former representation…"  *Id*.

13  Lacey's citations to cases holding disclosures of attorney-client privileged

14  documents to the government waives the privilege "as to the world at large" miss the mark.

15  CR 202 at 8-9.  Even if Ferrer waived his personal attorney-client privilege by disclosing

16  information to the government (which he did not, as discussed in Part II below), ER 1.9(a)

17  would still apply and require disqualification for the reasons discussed above.

18  The conflict posed by DWT's continued representation of Lacey is so palpable that

19  the Washington state court in *R.O. and K.M. v. Medalist Holdings, Inc., et al*., No. 17-2-

20  04897-1 (Wash. Super. Ct.), a Backpage-related civil case, recently disqualified DWT from

21  representing Lacey and Larkin based on DWT's prior representation of Ferrer.  In a written

22  order issued June 28, 2018, and after reviewing *in camera* "supporting materials"

23  submitted by DWT, the court "conclude[d] that continued representation of the Medalist

24  Defendants [including Lacey and Larkin] by [DWT] is impermissible pursuant to the Rules

25  of Professional Conduct," and disqualified DWT "from continuing to represent any parties

26  in this litigation, including the Medalist Defendants."  Exhibit 1 at 12-13.  The court found

27  that "Defense counsel has jointly represented all defendants in numerous lawsuits across

28  the country that are also substantially related to the facts and claims in this litigation and

the federal criminal proceedings.  These past and current representations are relevantly interconnected such that defense counsel is familiar with both the Backpage.com Defendants' [including Ferrer's] and Medalist Defendants' pattern of conduct as it relates to the claims in this litigation."  Exhibit 1 at 13.  The court held "that there is a high possibility that [DWT] will encounter an impermissible conflict of interest jeopardizing the effective administration of justice if they continue to represent the Medalist Defendants [including Lacey and Larkin] in this litigation."  Exhibit 1 at 13-14.

The court also noted that DWT continues to possess "two terabytes of data" pertaining to Backpage, despite its withdrawal from representing Ferrer and Backpage in the *R.O.* litigation, and ordered DWT to preserve that data. Exhibit 1 at 6-7.  Two terabytes is roughly the equivalent of 100 million pages.[2]

The bottom line is that disqualification is required regardless of whether DWT and HCM ever possessed confidential information about Ferrer.  Lacey's motion fails for this reason alone.

## II.   ALTERNATIVELY, FERRER DID NOT WAIVE HIS *PERSONAL* ATTORNEY-CLIENT PRIVILEGE.

Second, Lacey's motion also should be denied because Ferrer has not waived his personal attorney-client privilege.  On April 5, 2018, Ferrer executed a two-page document entitled "Waiver of Attorney Client Privilege."  In the last paragraph, he made clear that he was only waiving Backpage's corporate attorney-client privilege and was not waiving his personal attorney-client privilege, either with his current attorneys (from the Clarence Dyer law firm) or with any attorneys who previously represented him on an individual basis: "*I further state that this waiver does not apply to any aspect...of my personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me....*"  CR 174-2 at 5-6 (emphasis added).

Lacey identifies a separate document—a "proffer agreement" that Ferrer executed

---

[2] *See Criminal E-Discovery: A Pocket Guide for Judges*, at 14 n.35 (Federal Judicial Center 2015), https://www.fjc.gov/sites/default/files/2016/Criminal%20e-Discovery.pdf.

on April 5, 2018—as the basis for his claim that Ferrer has waived his personal attorney-client privilege. Lacey points to the proffer agreement's second paragraph, which states:

> Mr. Ferrer voluntarily waives all claims of attorney-client privilege, whether in his personal or official capacity as the Chief Executive Officer of Backpage.com, LLC **as to communications with any attorney or law firm that represented Backpage.com, or any related entity**, where such communications concerned or related to Backpage.com or any related entity.

CR 174-2 at ¶ 2 (emphasis added). It was the parties' intention that this language would simply track the approach set forth in the formal "Waiver of Attorney Client Privilege" document—that is, it would only waive Backpage's corporate attorney-client privilege but not Ferrer's personal privilege. *See* CR 193-9 at 7,¶ 45 (Ferrer Declaration). This is why the waiver only applied to "communications with any attorney or law firm that represented Backpage.com, or any related entity." It was not meant to apply to attorneys and law firms that represented Ferrer in a personal capacity (such as DWT or HCM). The prefatory language at the beginning of the paragraph, discussing Ferrer's "personal or official capacity," was simply meant to demonstrate that Ferrer had a basis for effectuating the corporate privilege waiver.

Even if the language in the proffer agreement encompassed Ferrer's personal attorney-client privilege, the waiver was not irrevocable or permanent—it was simply a conditional agreement that, during Ferrer's proffer sessions with the government, he would agree to discuss matters related to these firms *if asked to do so*. This topic, however, was never broached during Ferrer's proffer sessions. Accordingly, nothing has been waived.

Lacey asserts that the defense should not be "required to accept the government's description of the scope of the waiver that has been effected," CR 202 at 11, and he seeks "disclosure of any documents summarizing statements Mr. Ferrer made to the government or third parties…during proffer sessions with the government." CR 202 at 10. This argument is unavailing. Lacey has already entered into a stipulated scheduling order providing that interview reports need not be produced by the government until February 2019. *See* CR 131 at 2-3. (It should be noted that the government's agreement to provide the interview reports by February 2019 was a significant concession—under Rule 16(a)(2)

and the Jencks Act, witness statements ordinarily aren't discoverable until trial.)  Requiring the premature disclosure of the reports from Ferrer's interviews (which Ferrer has not yet reviewed or adopted) would not only violate this stipulation, but it would be unfairly prejudicial to the government.  Among other things, the government is conducting further investigation and intends to seek a superseding indictment and/or a separate indictment of one or more other individuals relating to Backpage.  In addition, state prosecutorial agencies in California and Texas are conducting ongoing investigations of various individuals relating to Backpage.

Nevertheless, to the extent the Court determines that review of the Ferrer 302s may assist in resolving the instant motion, the government is willing to provide the non-finalized Ferrer 302s in its possession to the Court on an *ex parte* basis for *in camera* review.  Such review will show that Ferrer never discussed, during his interviews with the government, legal advice that he sought or received from DWT and HCM during the lawsuits in which they represented him in his personal capacity.  In other words, the Court's review will confirm that there has been no waiver of Ferrer's *personal* attorney-client privilege.

Lacey also requests the sealed "Cooperation Addendum" to Ferrer's plea agreement. CR 202 at 10.  The government is taking steps to unseal this document for production to the defense.

Finally, to the extent not otherwise addressed above, Lacey's document requests and the government's responses are as follows:

1.      All "FD-302 Forms" and other documents evidencing communications from Ferrer or his representatives to the government "concerning legal representation of Backpage and its related entities."  CR 202 at 12.

As noted, Lacey previously agreed that the 302s from Ferrer's interviews need not be produced until February 2019.  Moreover, Lacey's current motion does not even attempt to explain why Ferrer's communications with the government "concerning legal representation of Backpage" could have anything to do with the government's disqualification motion.  The government concedes Ferrer "has executed a broad waiver of

the *corporate* attorney-client privilege possessed by Backpage.com, LLC and various other Backpage-related entities." CR 192-5 at 2.  The instant motion, however, concerns whether Ferrer waived his *personal* attorney-client privilege, and does not provide a Rule 16 basis for this request.  *Cf. United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (describing Rule 16 requirements; "neither a general description…nor conclusory allegations" suffice).

2.   "All documents including engagement letters, common interest or joint defense agreements or related communications among counsel, parties or others related to joint representation or defense of Backpage and its related entities that Mr. Ferrer, his counsel, or any other representative of Mr. Ferrer provided to, disclosed or referenced in communications with the government." CR 202 at 12.

The government never received any engagement letters, common interest or joint defense agreements. CR 202-2 at 2 (the government "has not received a copy of the actual JDA or any other common interest agreement").  The government has produced its Proffer/Interview Agreement with Ferrer, which states Ferrer "shall not" discuss JDA-protected material.  CR 202-2 at 2; CR 202-3 at 1, ¶ 2.  The instant motion does not articulate, under Rule 16 or any other rule of criminal discovery, why the requested documents are relevant and discoverable.

3.   "All notes or reports or transcripts of Mr. Ferrer's discussions with any third party, including all government agents." CR 202 at 12.

For the reasons discussed above, Lacey is not entitled to the draft 302s from Ferrer's interviews with the government.  Moreover, the government is not required to disclose rough "notes"; nor is it required to produce materials subject to its own attorney-client privilege or work product protections.  *See, e.g.*, 18 U.S.C. § 3500; Fed. R. Crim. P. 16(a)(2) and 26.2(f); *United States v. Griffin,* 659 F.2d 932, 937 (9th Cir. 1981) (Jencks Act applies to formal written narratives or reports that contain "a complete recital" of facts, rather than fragmentary notes); *United States v. Bobadilla-Lopez*, 954 F.2d 519, 522 (9th Cir. 1992) (same); *United States v. Spencer,* 618 F.2d 605, 606 (9th Cir. 1980) (notes that

are "not complete" are not covered by Jencks Act). Finally, the government does not possess "transcripts" of Ferrer's discussions with third parties, apart from deposition transcripts in civil cases equally available to the defense.

4.     "All documents evidencing communications with the government about letters or other communications sent to counsel, courts or any other parties about representation or putative conflicts of counsel, including all correspondence Mr. Ferrer, his counsel, or any other representative of Mr. Ferrer has sent the government any exchanges of drafts or other communications about such correspondence." CR 202 at 12-13.

Lacey has not even attempted to explain why these materials could have any relevance to the disqualification and privilege-waiver issues pending before the Court.

5.     "All documents evidencing the date when Mr. Ferrer, his counsel, or any representative of [his] first had communications with the government related to a possible cooperation or with the intention of exploring possible cooperation." CR 202 at 13.

Again, Lacey does not explain how this information is material to whether Ferrer waived his personal attorney-client privilege. Production is not required by Rule 16.

## III.     THE REQUESTED DOCUMENTS ARE NOT "RELEVANT AND MATERIAL" TO THE MOTION TO RESOLVE PRIVILEGE ISSUES.

Without authority or other explanation, Lacey also asserts the requested documents are "relevant and material" to resolution of the United States' Motion to Resolve Attorney-Client Privilege Issues (CR 195). CR 202 at 6. That motion asks the Court to confirm that Backpage's corporate attorney-client privilege has been waived for three independent reasons, including Ferrer's execution of a written waiver of the corporate attorney-client privilege possessed by Backpage and related entities. CR 195 at 2.

Lacey contends in the instant motion that "Ferrer lacked the authority to unilaterally waive privilege on behalf of Backpage...." CR 202 at 8 n.4. However, he does not explain how Ferrer's communications with the government – which, essentially, is what he seeks in this motion – are relevant to determining Ferrer's authority to waive Backpage's corporate attorney-client privilege. Lacey presumably already has access to the documents

1   he intends to rely upon in challenging Ferrer's authority as Backpage's Chief Executive

2   Officer and 100% owner to waive the corporate attorney-client privilege, including

3   documents concerning Lacey and Larkin's sale of Backpage to entities owned by Ferrer in

4   2015.   Simply put, Ferrer's communications with the government are irrelevant and

5   immaterial to determining whether Ferrer was authorized as Backpage's CEO to waive

6   Backpage's corporate attorney-client privilege.

7                                              Conclusion

8           For the foregoing reasons, Lacey's Motion for Disclosure of Documents Related to

9   Carl Ferrer's Waiver of Privilege Material to Disqualification should be denied.

10

11          Respectfully submitted this 12th day of July, 2018.

12                                              ELIZABETH A. STRANGE
                                                First Assistant United States Attorney
13                                              District of Arizona

14                                              /s Peter S. Kozinets
                                                KEVIN M. RAPP
15                                              MARGARET PERLMETER
                                                PETER S. KOZINETS
16                                              ANDREW C. STONE
                                                Assistant U.S. Attorneys
17
                                                JOHN J. KUCERA
18                                              Special Assistant U.S. Attorney

19                                              JOHN P. CRONAN
                                                Acting Assistant Attorney General
20                                              Criminal Division, U.S. Department of Justice

21                                              REGINALD E. JONES
                                                Senior Trial Attorney
22                                              U.S. Department of Justice, Criminal Division
                                                Child Exploitation and Obscenity Section
23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### Certificate of Service

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Anne Chapman, Erin McCampbell, James Grant, Lee Stein, Paul Cambria, Robert Corn-Revere, Ronald London, Janey Henze Cook, John Littrell, Kenneth Miller, Thomas Bienart, Jr., Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, David Wakukawa, Michael Piccarreta, Stephen Weiss.

*s/Melody Karmgard*
U.S. Attorney's Office

# EXHIBIT 1

ASSIGNED TO THE HONORABLE G. HELEN WHITENER
HEARING DATE: JUNE 28, 2018, AT 9:00 A.M.
WITH ORAL ARGUMENT

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR PIERCE COUNTY

| | |
|---|---|
| R.O. and K.M., | NO.  17-2-04897-1 |
| Plaintiffs, | [~~PROPOSED~~ REVISED] |
| v. | COMBINED ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL, PLAINTIFFS' MOTION FOR SANCTIONS, DAVIS WRIGHT TREMAINE'S NOTICE OF INTENT TO WITHDRAW, AND NOTICE OF LODGING OF *IN CAMERA* DECLARATION AND MOTION TO SEAL |
| MEDALIST HOLDINGS, INC., et al., | |
| Defendants. | |

THESE MATTERS came before the Court on (1) Plaintiffs' Motion to Compel Compliance with Court's Order and Motion to Preserve Evidence, (2) Plaintiffs' Motion for Sanctions Against Backpage Defendants, (3) the Notice of Intent to Withdraw filed by Davis Wright Tremaine, and (4) Notice of Lodging of *In Camera* Declaration and Motion to Seal filed by Davis Wright Tremaine.  The Court heard oral argument from the parties, reviewed the existing record, and reviewed the materials submitted by the parties, including the following:

//

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St.  Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

**Plaintiffs' Motion to Compel Compliance with Court's Order and Motion to Preserve Evidence**

> (1) Plaintiffs' Motion to Compel Compliance with Court's Order and Motion to Preserve Evidence, including the Declaration of Michael T. Pfau submitted in support thereof;

> (2) Defendants' Opposition to Plaintiffs' Motion to Compel Compliance with Court's Order and Motion to Preserve Evidence, including the Declaration of Eric Stahl submitted in support thereof;

> (3) Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Compliance with Court's Order and Motion to Preserve Evidence, including the Declaration of Michael T. Pfau submitted in support thereof;

> (4) Supplemental Declaration of Michael T. Pfau in Support of Plaintiffs' Motion to Compel Compliance with Court's Order and Motion to Preserve Evidence; and

> (5) _____

> _____

**Plaintiffs' Motion for Sanctions Against Backpage Defendants**

> (1) Plaintiffs' Motion for Sanctions Against Backpage Defendants, including the Declaration of Michael T. Pfau submitted in support thereof;

> (2) Defendants' Request for Extension and Opposition to Plaintiffs' Motion for Sanctions, including the Declaration of Eric M. Stahl submitted in support thereof;

> (3) Plaintiffs' Reply in Support of Plaintiffs' Motion for Sanctions and Plaintiffs' Opposition to Defendants' Motion for Extension, including the Declaration of Michael T. Pfau submitted in support thereof; and

> (4) _____

> _____

**Notice of Intent to Withdraw Filed by Davis Wright Tremaine and Notice of Lodging of _In Camera_ Declaration and Motion to Seal filed by Davis Wright Tremaine**

> (1) Notice of Intent to Withdraw filed by Davis Wright Tremaine LLP;

> (2) Supplement to Notice of Intent to Withdraw filed by Davis Wright Tremaine LLP;

COMBINED ORDER GRANTING PLTFFS'
MOT TO COMPEL, MOT FOR SANCTIONS,
NOTICE OF WITHDRAWAL, & MOT
TO SEAL - 2 of 16

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St.  Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

(3) Plaintiffs' Objections to Backpage Defendants' Counsel's Notice of Intent to Withdraw;

(4) Notice of Lodging of *In Camera* Declaration and Motion to Seal filed by Davis Wright Tremaine, LLP, as well as the documents that Davis Wright Tremaine filed with the Court for *in camera* review;

(5) The Declaration of James C. Grant Regarding Davis Wright Tremaine's Notice of Intent to Withdraw;

(6) Plaintiffs' Opposition to the Notice of Lodging of In Camera Declaration and Motion to Seal filed by Davis Wright Tremaine, including the Declaration of Jason P. Amala submitted in support thereof; and

(7) _____

The Court has also considered the following materials regarding the contents and presentation of this Order:

(1) Medalist Defendants' Objections to Plaintiffs' Proposed Combined Order;

(2) Plaintiffs' Response to Medalist Defendants' Objections to Plaintiffs' Proposed Combined Order; and

(3) _____

Based on the Court's review of the foregoing and the existing record, and for the reasons the Court articulated at the hearing in open court on May 23, 2018,[1] for the reasons stated below, and for the reasons stated in Plaintiffs' briefing, the Court enters the following findings and conclusions. The Court adopts its findings and conclusions from that hearing as if fully articulated in this written order, which is intended to memorialize and supplement the Court's findings and conclusions.

---

[1] A copy of the Verbatim Transcript of Proceedings from May 23, 2018, is attached hereto as Exhibit 1. The Court adopts its findings and conclusions from that hearing as if fully articulated in this written order, which is intended to memorialize and supplement the Court's findings and conclusions.

COMBINED ORDER GRANTING PLTFFS'
MOT TO COMPEL, MOT FOR SANCTIONS,
NOTICE OF WITHDRAWAL, & MOT
TO SEAL - 3 of 16

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St. Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

1

2
3

**Plaintiffs' Motion to Compel Compliance with Court's Order and Motion to Preserve Evidence**

4

5

Plaintiffs' Motion to Compel Compliance with Court's Order and Motion to Preserve Evidence is **GRANTED** as to the "Backpage Corporate Defendants,"[2] and discovery

6

7

sanctions are imposed, as set forth below, should those defendants fail to comply with this Order.  In support of this ruling, the Court makes the following findings and conclusions:

8

9

1.     On January 12, 2018, the Court entered the Order Granting Plaintiffs' Motion to Compel Full and Complete Responses from Backpage Corporate Defendants with Regards

10

11

to Discovery Requests Outlined in Appendix A ("January 12th Order").

12

13

2.     The Backpage Corporate Defendants failed to comply with the January 12th Order or otherwise make reasonable efforts to substantially comply with the January 12th

14

15

Order, including but not limited to the production of responsive documents on a rolling basis. The limited documents that were produced by the Backpage Corporate Defendants did not

16

comprise the scope of relevant documents covered in the January 12th Order.

17

18

3.     The Backpage Corporate Defendants' failure to comply with the Court's January 12th Order was willful and was not substantially justified under the circumstances.

19

20

The claim by Davis Wright Tremaine that it could not comply with the Court's January 12th Order without first reviewing the entire set of responsive documents for privilege is

21

22

unsupported.  ~~The evidence demonstrates (1) that much of the materials have already been~~

23

~~reviewed for privilege in the context of other similar litigation; and (2) that Davis Wright~~

24

~~Tremaine has vetted the documents for privilege, per Mr. Ferrer.~~

25

26

[2] Consistent with the January 12th Order, the "Backpage Corporate Defendants" include Medalist Holdings, Inc.; Leeward Holdings, LLC; Camarillo Holdings, LLC; Dartmoor Holdings, LLC; Backpage.com, LLC; UGC Tech Group CV; Website Technologies, LLC; Atlantische Bedrijven, CV; Amstel River Holdings, LLC; Lupine Holdings, LLC; Kickapoo River Investments, LLC; CF Holdings GP, LLC; and CF Acquisitions, LLC.

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St.  Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

4. The Backpage Corporate Defendants' failure to comply with the Court's January 12th Order has caused undue delay and has substantially prejudiced Plaintiffs' ability to prepare for the trial scheduled to begin October 16, 2018.

5. The Court has considered lesser sanctions than those set forth below, including lesser monetary sanctions, but finds that lesser sanctions would not suffice in deterring these defendants from continued noncompliance with the Court's prior Order.

6. The Court finds that Defendant Carl Ferrer has waived the attorney/client privilege, on behalf of himself and Defendants Backpage.com, L.L.C., Dartmoor Holdings, L.L.C., IC Holdings, L.L.C., and Website Technologies, L.L.C., with respect to the topics set forth in the document executed April 5, 2018, which was attached as Exhibit A to the Declaration of Jason P. Amala in Support of Plaintiffs' Opposition to the Notice of Lodging of In Camera Declaration and Motion to Seal Filed by Davis Wright Tremaine.

7. _____

_____

_____

Based on the foregoing, the Court hereby **ORDERS** as follows:

1. Within 60 days of this Order, the Backpage Corporate Defendants shall produce to Plaintiffs the approximately 1.2 million responsive documents identified by Eric Stahl in his letter dated March 20, 2018, which was attached as Exhibit 2 to the Declaration of Michael T. Pfau in Support of Plaintiffs' Motion to Compel Compliance with Court's Order and Motion to Preserve Evidence.

2. If the defendants fail to produce the approximately 1.2 million responsive documents referenced above within 60 days of this Order, the defendants will be sanctioned in the amount of $1.00 per document for every 14 days of noncompliance with this Order.

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St. Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

3.     Within 60 days of this Order, the Backpage Corporate Defendants shall produce any remaining documents responsive to the January 12th Order that are in their possession, which includes documents in the possession of Davis Wright Tremaine and other legal counsel who represents any of these defendants.

4.     To the extent the defendants assert that any of the foregoing responsive documents should be withheld on the basis of the attorney/client privilege or work product doctrines, defendants shall produce to Plaintiffs any such records that have been provided to the United State Senate or other law enforcement after a court concluded the records were not subject to the attorney/client privilege or work product doctrines.   The Court so orders because the defendants are not entitled to re-litigate whether those records may be withheld on the basis of privilege.  The defendants shall also produce to Plaintiffs any such records that are no longer subject to the attorney/client privilege because of the express waiver executed by Defendant Ferrer on April 5, 2018, or because such records were disclosed to third parties.

5.     To the extent additional records exist that defendants assert are subject to the attorney/client privilege or work product doctrine, defendants shall provide Plaintiffs with a privilege log that includes the basis for how the defendants defined their "control group" as to each withheld record.  The log shall be sufficiently detailed so that Plaintiffs are able to determine whether the asserted privilege is valid as to each record, including whether any privilege may have been waived based on who sent or received the record.  The privilege log shall also include the date of the record, the time of the record (where available), who authored the record, who received the record, and a general description of the record.  A privilege log shall be produced contemporaneously with the records that are produced pursuant to this Order.

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St.  Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334   Fax: (206) 623-3624
http://www.pcvalaw.com

6.      Defendants and Davis Wright Tremaine shall secure and continue to preserve all electronic evidence in their possession, including the two terabytes of data that Davis Wright Tremaine previously identified as described in Plaintiffs' motion.  Defendants and Davis Wright Tremaine shall also duplicate ~~that electronic evidence~~ the 2 terabytes of data and place it in trust, ~~either with the Court or~~ with a neutral third party approved by the Court, within 60 days after this Order is entered.  Unless the parties agree otherwise at the hearing on this Order, the Court approves John Cooper of WAMS as the approved neutral third party.  The purpose of duplicating the data is to ensure that the Court's existing order can be honored, and in the event the federal government desires to seize the data, a copy will remain available for this litigation.

7.      _____

_____

_____

**Plaintiffs' Motion for Sanctions Against Backpage Defendants**

Plaintiffs' Motion for Sanctions Against Backpage Defendants is **GRANTED as to all defendants**.  In support of this ruling, the Court makes the following findings and conclusions:

1.      The CEO of defendant Backpage.com, defendant Carl Ferrer, recently pled guilty to a range of crimes and admitted the following relevant facts:

> In 2004, I co-founded the website www.Backpage.com ("Backpage"), along with M.L. [Michael Lacey] and J.L. [James Larkin].  Backpage eventually became the second-largest classified advertising in the world, during its 14 years of existence, has derived the great majority of its revenue from fees charged in return for publishing advertisements for 'adult' and 'escort' services.

COMBINED ORDER GRANTING PLTFFS'
MOT TO COMPEL, MOT FOR SANCTIONS,
NOTICE OF WITHDRAWAL, & MOT
TO SEAL - 7 of 16

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St.  Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

**I have long been aware that the great majority of these advertisements are, in fact, advertisements for prostitution services (which are not protected by the First Amendment and which are illegal in 49 states and in much of Nevada).** Acting with this knowledge, **I conspired with other Backpage principals (including but not limited to M.L., J.L., S.S., D.H., A.P., and J.V.) to find ways to knowingly facilitate state-law prostitution crimes being committed by Backpage customers.** For example, **I worked with my co-conspirators to create 'moderation' processes through which Backpage would remove terms and pictures that were particularly indicative of prostitution and then publish a revised version of the ad.** Such editing did not, of course, change the essential nature of the illegal service being offered in the ad—**it was merely intended to create a veneer of deniability for Backpage. These editing practices were one component of an overall, company-wide culture and policy of concealing and refusing to officially acknowledge the true nature of the services being offered in Backpage's 'escort' and 'adult' ads.**

In addition to conspiring to knowingly facilitate the state-law prostitution offenses being committed by Backpage's customers, I also conspired with other Backpage principals (including but not limited to M.L., J.L., S.S., D.H., A.P., and J.V.) to engage in various money laundering offenses. **Since 2004, Backpage has earned hundreds of millions of dollars in revenues from publishing "escort" and "adult" ads.** Over time, many banks credit card companies, and other financial institutions refused to do business with Backpage due to the illegal nature of its business. In response, I worked with my co-conspirators to find ways to fool credit card companies into believing Backpage-associated charges were being incurred on different websites, to route Backpage-related payments and proceeds through bank accounts held in name of seemingly unconnected entities, . . . and to use cryptocurrency-processing companies . . . for similar purposes.

2.      Defendant Ferrer's plea agreement admits the existence of an overriding conspiracy to facilitate illegal sex trafficking beginning in 2004 and persisting through March 2018. This timeframe covers when Plaintiffs allege they were marketed and sold for sex on Backpage.com, and when the plaintiffs in the *J.S.* litigation allege they were marketed and sold for sex on Backpage.com. Defendant Ferrer's guilty plea contains admissions that are highly consistent with the allegations of Plaintiffs in this case, and with the allegations of the plaintiffs

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St.  Suite 500
Seattle, Washington  98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

in the *J.S.* litigation, yet the defendants in both cases expressly denied those allegations. ~~This timeframe also implicates all named defendants as co-conspirators.~~

3. ~~The defendants have not provided any convincing evidence, including sworn testimony or other evidence, to refute the sworn statements in defendant Ferrer's guilty plea. Nor have the defendants filed an Answer in this case to refute Plaintiffs' allegations.~~

4. The evidence presented by Plaintiffs demonstrates that the Backpage Corporate Defendants collectively operated and owned the backpage.com website and have acted collectively in all relevant respects throughout the course of this litigation, including but not limited their responses to Plaintiffs' discovery requests.

5. Defendant Ferrer's guilty plea admits that "moderation processes" were implemented to remove terms and images indicative of prostitution in order to "create a veneer of deniability for Backpage." Defendant Ferrer further admits that the defendants engaged in "various money laundering offenses" in order to realize "hundreds of millions of dollars" in revenue from the illegal conduct facilitated on the Backpage.com website.

6. The above admissions by Defendant Ferrer are central to Plaintiffs' claims and allegations against the defendants as set forth in the First Amended Complaint. Further, the admissions in Defendant Ferrer's guilty plea directly contradict the defendants' responses to several interrogatories, requests for admission, and requests for production propounded by Plaintiffs in this litigation as outlined in Plaintiffs' briefing.

7. Based on the foregoing, the Court finds that the defendants have engaged in pre-litigation misconduct. Defendants have knowingly undertaken a pattern of misconduct over several years to deny claims asserted by Plaintiffs and similarly situated plaintiffs in the *J.S.* litigation, which Defendant Ferrer's plea agreement confirms were true. Accordingly, the

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St.  Suite 500
Seattle, Washington  98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

defendants' conduct in this litigation in responding to the claims and discovery requests propounded by Plaintiffs has not been grounded in fact.

8.     Based on the foregoing, the Court further finds that defendants have committed procedural bad faith by engaging in vexatious conduct throughout this litigation designed to necessitate undue delay and force Plaintiffs to incur significant costs in pursuing their claims. For example, defendants' denials in response to Plaintiffs' discovery requests were untruthful and submitted for the improper purpose causing unnecessary delay and increasing the costs of litigation, as demonstrated by Defendant Ferrer's guilty plea.

9.     Defendants' misconduct and procedural bad faith has severely prejudiced Plaintiffs, causing undue delay and needlessly increasing the costs of litigation.  Defendants misconduct and procedural bad faith has also wasted judicial resources.

10.     The Court finds that sanctions are warranted in order to deter the defendants from engaging in future misconduct, to punish the defendants for the misconduct described above, and to compensate Plaintiffs for the costs they were forced to incur as a result of the misconduct.  The Court has considered the punitive, compensatory, and educational impact of the sanctions set forth below in light of the misconduct engaged in by the defendants.  The Court has also considered the financial status of the defendants in fashioning the sanctions set forth below. ~~Specifically, the Court takes note of the report issued by the U.S. Senate's Permanent Subcommittee on Investigations, which states that Backpage.com's gross revenues were $135 million as of 2014 and the company's domestic operations were purchased in 2015 for $26 million.[3]~~  .

---

[3] *See* Staff Rep. of S. Perm. Subcomm. on Investig., 114th Cong., Backpage.com's Knowing Facilitation of Online Sex Trafficking (Comm. Print 2017) (available at

COMBINED ORDER GRANTING PLTFFS'
MOT TO COMPEL, MOT FOR SANCTIONS,
NOTICE OF WITHDRAWAL, & MOT
TO SEAL - 10 of 16

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St.  Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

11.     The Court has considered whether alternative lesser sanctions would suffice, including lesser monetary sanctions than those set forth below.  The Court concludes, however, that the sanctions set forth below are the least severe sanctions necessary to fulfill the purposes of sanctions underlying CR 11.  The Court's conclusion is based on (1) the extent and duration of defendants' bad-faith misconduct, which has spanned many years, (2) the serious prejudicial effect suffered by Plaintiffs as a result of defendants' misconduct, which includes the significant amount of time and resources they have spent pursuing discovery ~~to prove allegations that Defendant Ferrer now concedes in his guilty plea, time and resources that could have been spent focusing on other discovery and preparing for trial~~, (3) the litigation costs the defendants' misconduct has caused Plaintiffs to incur along with the needless waste of judicial resources, and (4) the defendants' financial status ~~as described above~~. •

12.     _____

_____

_____

Based on the foregoing, the Court **ORDERS** as follows:

1.     The defendants are jointly sanctioned in the amount of $200,000.00 ($100,000.00 per Plaintiff).  This amount shall be paid to the trust account of Plaintiffs' counsel within 30 days of this Order.

2.     Plaintiffs are awarded their reasonable attorney's fees and costs that were necessitated by defendants' misconduct.  Within 30 days of the entry of this Order, Plaintiffs

https://www.hsgac.senate.gov/imo/media/doc/Backpage%20Report%202017.01.10%20FINAL.pdf, *last visited* June 15, 2018).

COMBINED ORDER GRANTING PLTFFS'
MOT TO COMPEL, MOT FOR SANCTIONS,
NOTICE OF WITHDRAWAL, & MOT
TO SEAL - 11 of 16

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St. Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334   Fax: (206) 623-3624
http://www.pcvalaw.com

shall file a separate motion that requests the awarded attorney's fees and costs and shall special

set the motion for a date approved by the Court.

3. _____

_____

_____

**Notice of Intent to Withdraw Filed by Davis Wright Tremaine and Notice of Lodging of *In Camera* Declaration and Motion to Seal filed by Davis Wright Tremaine**

The Notice of Intent to Withdraw filed by Davis Wright Tremaine was timely objected to by Plaintiffs. Accordingly, withdrawal may be obtained only by order of the court pursuant to CR 71(c)(4). The Notice of Intent to Withdraw pertains to twelve of the seventeen defendants jointly represented by Davis Wright Tremaine in this litigation (collectively, the twelve defendants are referred to herein as the "Backpage.com Defendants").[4] Defense counsel does not seek to withdraw from representing the five remaining Defendants (collectively, the five defendants are referred to herein as the "Medalist Defendants").[5]

Based on the Court's *in camera* review of the supporting materials submitted by Davis Wright Tremaine, including the Grant Declaration, Davis Wright Tremaine's request to withdraw with respect to the Backpage.com Defendants is **GRANTED**, subject to the conditions set forth in this Order. The Court further concludes that continued representation of the Medalist Defendants by Davis Wright Tremaine is impermissible pursuant to the Rules of Professional Conduct. The Court hereby **DISQUALIFIES** Davis Wright Tremaine, Davis

---

[4] Namely, Defendants Carl Ferrer, Backpage.com, L.L.C., Dartmoor Holdings, L.L.C., IC Holdings, L.L.C., UGC Tech Group C.V., Website Technologies, L.L.C., Atlantishe Bedrijven C.V., Amstel River Holdings, L.L.C., Lupine Holdings, L.L.C., Kickapoo River Investments, L.L.C., CF Holdings GP, L.L.C., and CF Acquisitions, L.L.C. (collectively "Backpage.com Defendants").

[5] Namely, Defendants Medalist Holdings, Inc., Leeward Holdings, L.L.C., Camarillo Holdings, L.L.C., Michael Lacy, and James Larkin (collectively "Medalist Defendants").

COMBINED ORDER GRANTING PLTFFS'
MOT TO COMPEL, MOT FOR SANCTIONS,
NOTICE OF WITHDRAWAL, & MOT
TO SEAL - 12 of 16

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St. Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

Wright Tremaine's attorneys, Eric Stahl, and James Grant, from continuing to represent any parties in this litigation, including the Medalist Defendants, subject to the conditions set forth in this Order. In support of this ruling, the Court makes the following findings:

1.      Defendant Carl Ferrer effectively revoked his consent allowing defense counsel to jointly represent the multiple Defendants in this lawsuit because of material changes in circumstances arising, in part, out of the federal criminal proceedings implicating several of the Backpage.com and Medalist Defendants.  This lack of consent is expressly stated in Mr. Ferrer's April 24, 2018 letter to the attorneys at Davis Wright Tremaine.

2.      The federal criminal proceedings are substantially related to the facts and claims in this litigation. ~~For example, both proceedings involve the central allegation that defendants knowingly facilitated sex trafficking and minor sex trafficking on the backpage.com website through various means such as the use "moderation" processes.  Defendant Ferrer's guilty plea, on behalf of himself and several other corporate defendants, effectively admits these allegation~~s. ~~Several of the Medalist Defendants are currently charged as co-defendants in the federal criminal proceedings, rendering their interests materially adverse to the interests of Mr. Ferrer and, by extension, the Backpage.com Defendant~~s. 

3.      Defense counsel has jointly represented all defendants in numerous lawsuits across the country that are also substantially related to the facts and claims in this litigation and the federal criminal proceedings.  These past and current representations are relevantly interconnected such that defense counsel is familiar with both the Backpage.com Defendants' and Medalist Defendants' pattern of conduct as it relates to the claims in this litigation.

4.      Given the above, the Court concludes that there is a high possibility that Davis Wright Tremaine, Davis Wright Tremaine's attorneys, Eric Stahl, and James Grant will

COMBINED ORDER GRANTING PLTFFS'
MOT TO COMPEL, MOT FOR SANCTIONS,
NOTICE OF WITHDRAWAL, & MOT
TO SEAL - 13 of 16

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St. Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

encounter an impermissible conflict of interest jeopardizing the effective administration of justice if they continue to represent the Medalist Defendants in this litigation.

5.      The Court further concludes that the Backpage.com Defendants' interest to preserve the confidences previously disclosed to Davis Wright Tremaine, Davis Wright Tremaine's attorneys, Eric Stahl, and James Grant combined with the high possibility that Davis Wright Tremaine, Davis Wright Tremaine's attorneys, Eric Stahl, and James Grant  will encounter conflict if allowed to continue representing the Medalist Defendants, outweighs the Medalist Defendants' interest in maintaining defense counsel as their attorneys in this litigation.

6.      _____

_____

_____

Based on the foregoing, the Court **ORDERS** as follows:

1.      Davis Wright Tremaine's request to withdraw is granted with respect to the Backpage.com Defendants.

2.      Davis Wright Tremaine is disqualified from continuing to represent any other parties in this litigation, including the Medalist Defendants.

3.      Davis Wright Tremaine may continue to represent the Medalist Defendants only insofar as is necessary to secure the interests of the Medalist Defendants pursuant to the obligations set forth in the Rules of Professional Conduct.  To this end, Davis Wright Tremaine shall file a status report with the Court, served upon all parties, within 30 days of this Order and every 30 days thereafter, detailing their progress in securing the interests of Medalist Defendants until such time as representation ceases.

COMBINED ORDER GRANTING PLTFFS'
MOT TO COMPEL, MOT FOR SANCTIONS,
NOTICE OF WITHDRAWAL, & MOT
TO SEAL - 14 of 16

4.      The Motion to Seal filed by Davis Wright Tremaine regarding the Declaration of James C. Grant:

[ ]     is granted in part.  Pursuant to GR 15(c)(3) and applicable law, Davis Wright Tremaine is directed to submit a redacted version of the Grant Declaration for Court approval within 5 court days of this Order.  Davis Wright Tremaine shall redact only those portions of the Grant Declaration subject to the attorney-client privilege.  Any proposed redactions shall not include unprivileged materials, such as joint defense agreements or retainer agreements or any communications no longer privileged because of the waiver executed by Defendant Ferrer on April 5, 2018.  The Court will approve, reject, or modify the redactions and file the final redacted version of the Grant Declaration in the court record.  The original, unredacted version of the Grant Declaration will remain under seal.

[X]     is granted.

[ ]     _____

        _____

        _____


DONE IN OPEN COURT this 28th day of June 2018.


_____
THE HONORABLE G. HELEN WHITENER

PRESENTED BY:


COMBINED ORDER GRANTING PLTFFS'
MOT TO COMPEL, MOT FOR SANCTIONS,
NOTICE OF WITHDRAWAL, & MOT
TO SEAL - 15 of 16

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St. Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

1
2
3          PFAU COCHRAN VERTETIS AMALA PLLC
4
5          By:
6             Michael T. Pfau, WSBA # 24649
              michael@pcvalaw.com
7             Jason P. Amala, WSBA # 37054
              jason@pcvalaw.com
8             Vincent T. Nappo, WSBA # 44191
              vincent@pcvalaw.com
9             Ryan J.P. Dyer, WSBA # 48016
              rdyer@pcvalaw.com
10            Attorneys for Plaintiffs
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

COMBINED ORDER GRANTING PLTFFS'                    PFAU COCHRAN VERTETIS AMALA PLLC
MOT TO COMPEL, MOT FOR SANCTIONS,                         403 Columbia St. Suite 500
NOTICE OF WITHDRAWAL, & MOT                              Seattle, Washington  98104
                                                    Phone: (206) 462-4334  Fax: (206) 623-3624
TO SEAL - 16 of 16                                         http://www.pcvalaw.com