Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
pcambria@lglaw.com

Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580
emccampbell@lglaw.com

*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR-18-00422-PHX-SPL (BSB) |
| Plaintiff, | |
| vs. | DEFENDANT LACEY'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR DISCLOSURE OF DOCUMENTS RELATED TO CARL FERRER'S WAIVER OF PRIVILEGE AS MATERIAL TO DISQUALIFICATION (DOC. 202) |
| Michael Lacey, *et al.*, | |
| Defendants. | |
| | (Oral argument requested) |

On June 28, 2018, Defendant Michael Lacey filed a Motion for Disclosure of Documents Related to Carl Ferrer's Waiver of Privilege as Material to Disqualification ("Motion") (*see* Mot., Doc. 202), which the government has opposed ("Government's Opposition") (*see* Gov't's Opp'n to Mot., Doc. 216).  Mr. Lacey submits the instant reply memorandum in further support

of his Motion.[1]  As set forth in greater detail below, the government has not provided this Court with any justification for denial of the Motion.

## ARGUMENT

### I.  The government's submissions to this Court demonstrate that statements Mr. Ferrer made to the government evidencing his purported waiver of privileges are material and relevant to motions pending before this Court.

This Court should reject the government's suggestion that the discovery sought—documents evidencing Mr. Ferrer's purported waiver of the attorney-client or attorney-work-product privileges—is irrelevant to the issues before this Court.  To the contrary, the government has filed two motions that turn on Mr. Ferrer's purported claims of privileges and the extent to which he has waived or retained those privileges.  (*See* Gov't's Mot. to Disqualify, Doc. 118 (moving for disqualification of DWT and HCM); Gov't's Mot. to Resolve Privilege Issues, Doc. 195 (moving for permission to review all documents seized from Backpage) (collectively, the "Government's Motions").)  The government's inconsistent position between these two motions as to whether waiver is or is not relevant, what has or has not been waived, and whether the waiver was in Mr. Ferrer's personal or official capacity is confusing at best.  And amid this confusion, the government seeks to interfere with and deprive Mr. Lacey of his Sixth Amendment right to counsel of choice.

It is incredible (and fundamentally unfair) that the government now takes the position, after having placed Mr. Ferrer's purported waivers before this Court, that Mr. Ferrer's waivers are irrelevant to resolution of the Government's Motions and, for that reason, Mr. Lacey's Motion should be denied.  First, Mr. Ferrer's waivers are central to the disqualification motion.  (*See* Defs.' Mot. at 7-13.)  As the Arizona Supreme Court has recognized, when "the client himself does not treat the particular communication as privileged, that communication will not be recognized as a confidence by this court."  *Alexander v. Superior Court*, 141 Ariz. 157, 163 (1984).  The court further explained that by waiving the right to maintain confidences, the "substantial relationship test" of Rule 1.9(a) "is not applicable," and thus no conflict would be found.  *Id*. at 164; *accord United States*

---

[1]      All of the designations and abbreviations set forth in the Motion will be used herein.

*v. Almeida*, 341 F.3d 1318, 1323-27 (11th Cir. 2003) (vacating conviction and holding that a defendant who was party to a joint defense agreement waived privilege when he turned state's evidence, "thereby entirely removing the possibility of a conflict of interest" with counsel for the other defendant/party to the agreement). Because any waiver by Mr. Ferrer erodes the government's claim of a conflict, defense counsel must have the opportunity to review all documents evidencing Mr. Ferrer's waiver.[2]

Second, because a decision to disqualify defense counsel interferes with a defendant's constitutional right to counsel of choice, it should only be allowed upon demonstration of extreme circumstances and on a complete record on the need for such a drastic measure. Both of those factors are absent here. The government has failed to demonstrate the extreme circumstances requisite for disqualification. (*See* Docs. 176, 177, 180.) More important to the instant Motion, the record on the purported need for disqualification is incomplete because inconsistencies between the Government's Motions have sowed confusion about Mr. Ferrer's purported waiver and unless the discovery sought is produced, the record will be incomplete on this most significant of issues—Mr. Lacey's Sixth Amendment right to counsel of choice. On the one hand, the government has stated that Mr. Ferrer has not disclosed (and purports to preserve) his "personal" privileges. (*See* Gov't Mot. to Disqualify (Doc. 118).) On the other hand, the government claims that Mr. Ferrer has waived all privileges "relating to Backpage." (*See* Gov't Mot. to Resolve Privilege Issues (Doc. 195).) Defendants are not required to accept these contradictory positions on privilege at face value, particularly when a defendant's ability to exercise the Sixth Amendment right to counsel of choice has been placed in jeopardy.

---

[2]     To the extent that the Government's Opposition is based on the complaint that granting the Motion would give Mr. Lacey access to documents earlier than he would otherwise receive access to them under the Scheduling Order, the solution to this purported problem would be to hold the Government's Motions in abeyance until the discovery sought is disclosed to Mr. Lacey under the Scheduling Order to enable the Court to resolve the Government's Motions on the basis of a full and accurate record.

The determination on disqualification of defense counsel is one of the most significant decisions to be made in a criminal case and a full and accurate record on the need for disqualification is essential to that determination.   The Supreme Court has made it clear that a faulty decision to disqualify a defendant's counsel of choice has just one remedy—automatic reversal.  *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 146-18 (2006) (recognizing that when "the right to be assisted by counsel of one's choice is wrongly decided" a defendant's Sixth Amendment right to counsel of choice has been violated and any convictions obtained must be vacated).  Because a determination on disqualification of defense counsel has such important consequences for both the defendant (deprivation of a constitutional right) and the government (because an incorrect determination on disqualification will result in reversal of any convictions obtained), the Ninth Circuit has emphasized the importance of the parties presenting district courts with complete and accurate evidence for the record:

> It is easy to express vague concerns about public confidence in the integrity of the judicial process. It is quite a different matter to demonstrate that public confidence will in fact be undermined . . . .  We are unwilling to sacrifice a defendant's Sixth Amendment right to counsel of his choice on such an unsubstantiated premise.

*United States v. Washington*, 797 F.2d 1461, 1466 (9th Cir. 1986) (vacating conviction and remanding for reconsideration of the government's motion for disqualification in light of the court's evidentiary rulings); *see also United States v. Feuchtener*, 2016 WL 6561559, at *2 (D. Nev. Nov. 3, 2016) ("Specific facts must be alleged to support disqualification."); *United States v. Schafer*, 2006 WL 3271290, at *9-10 (E.D. Cal. Nov. 12, 2006) (denying government's motion to disqualify and noting that the government had presented "little evidence" in support of its motion).

Here, Mr. Lacey needs access to all documents evidencing any waiver by Mr. Ferrer to understand whether there is any ground for the government's continued insistence on interfering

4

with Mr. Lacey's Sixth Amendment right to counsel of choice.  At this time, Mr. Lacey has nothing more than the government's "unsubstantiated" claim that Mr. Ferrer has not waived his privileges in his personal capacity, yet it is entirely unclear what this supposedly means, and this claim appears to be at odds with the position the government has taken in its Motion to Resolve Privilege Issues.  However, the Ninth Circuit has provided clear guidance in ruling that the government must provide more than "unsubstantiated premise[s]" when it seeks to interfere with a defendant's Sixth Amendment right to counsel of choice.  *See Washington*, 797 F.2d at 1466; *see also United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009) (rejecting chief financial officer's claim that he was personally represented by corporate counsel, noting that he "made no effort to identify with particularity which communications to the . . . attorneys are within his claim of privilege").

Third, the government's contention that discovery is unnecessary to evaluate disqualification under Rule 1.9(a) is grounded upon authority that does not advance its argument.  As an initial matter, the cases have remarkably different facts from this case.  Critically, the government's cases do not involve situations in which parties entered into joint-representation agreements that contained advance conflict waivers.  As Rule 1.9(a) expressly provides, disqualification is inappropriate when the former client has provided advance "informed consent, confirmed in writing" agreeing that counsel can continue to represent other parties.  *See* Rule 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives *informed consent, confirmed in writing*." (emphasis added)).  None of the government's cases address this aspect of Rule 1.9(a).  As it has before, the government continues to ignore that Mr. Ferrer signed agreements for joint representation with Messrs. Larkin and Lacey, which expressly waived conflicts of interest and provided that Mr. Ferrer could not seek to disqualify counsel if he withdrew from the joint representation.  (*See infra.*, Point III.)  The government's reliance on cases that do not account for informed consent, confirmed in writing by the former client do nothing to defeat Mr. Lacey's discovery requests.

The government's cases are further distinguishable based on critical factual differences. The cases do not involve situations in which the counsel at issue—here HCM and DWT—will not serve as trial counsel and thus, would not be in a situation where they would need to make a decision about whether to use confidential and privileged information to the purported detriment of a former client or forego the opportunity to use such information to the detriment of their existing client. (*See* Docs. 176, 177, 180 (indicating that HCM and DWT will not serve as trial counsel).)  Additionally, the government's cases do not involve blanket waivers of privilege by the former client. (*See id.*)  This distinctions render the government's opposition to discovery infirm.

Further, the unfair position the government takes on discovery is tethered almost exclusively to *civil* cases that do not address the appropriateness of disqualification under Rule 1.9 when a *criminal* defendant's Sixth Amendment right to counsel of choice has been placed in jeopardy. The government's reliance on civil cases, which are steeped in absolutes and void of any analysis on the impact of disqualification on a criminal defendant's constitutional right to counsel of choice, is "misplaced." *E.g.*, *United States v. Cunningham*, 672 F.2d 1064, 1071 (2d Cir. 1982) (concluding that the government's reliance on "civil cases" was "misplaced" because in those cases "no Sixth Amendment rights were implicated," which renders the analysis in those cases lacking with respect to the "constitutional dimension"—the pivotal issue in a criminal case).  Instead, when the government seeks to disqualify counsel of choice for a *criminal* defendant, "the government bears a *heavy burden* of establishing that concerns about the integrity of the judicial process justify the disqualification." *Washington*, 797 F.2d at 1465 (emphasis added); *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986) ("[D]isqualification of defense counsel should be a measure of last resort.").  And a decision imposing requirements on defense counsel that fall short of disqualification is preferred because when evaluating a motion to disqualify defense counsel, "the fundamental deciding factor is defendant's Sixth Amendment right to have counsel of his own choosing." *United States v. Pizzonia*, 415 F. Supp. 2d 168, 186 (E.D.N.Y. 2006) (denying government's motion to disqualify defense counsel).

Fourth, the government's civil authority is not as strong as it suggests.  For example, the government leads its opposition to discovery with citation to *Foulke v. Knuck*, 162 Ariz. 517 (Ariz. Ct. App. 1989), suggesting that because *Foulke* states that Rule 1.9(a) mandates disqualification when an attorney's representation of a current client conflicts with a former client, regardless of whether privileged of confidential communication was ever conveyed from the former client to the attorney, discovery on Mr. Ferrer's purported waiver is irrelevant.  (*See* Gov't's Opp'n at 6-7.)  However, the government fails to acknowledge that the Arizona Court of Appeal's decision in *Foulke* is in tension with the Arizona Supreme Court's ruling in *Alexander*.  In *Alexander*, the Supreme Court recognized that a client's waiver of privileged or confidential information can erode the attorney-client relationship in such a significant way that the "substantial relationship test" for a Rule 1.9(a) determination "is not applicable."  *Alexander*, 141 Ariz. at 164.  Because the government has provided documents indicating that Mr. Ferrer has waived all personal privileges (except with respect to his current counsel), defense counsel must have access to the discovery sought to determine whether Rule 1.9(a) is applicable at this stage, as explained in *Alexander*.

Equally troubling for the government, *Foulke* expressly provided for an *exception* to its holding, recognizing that disqualification under Rule 1.9(a) would be inappropriate when disqualification would pose a "hardship" to the current client.  *Foulke*, 162 Ariz. at 523.  The court indicated that factors indicative of an unacceptable "hardship" to the current client included:  (1) counsel's "specialized expertise"; (2) the long-term nature of the relationship between the attorney and current client; and (3) the complexity of the litigation.  *See id.*  Here, each of those factors weighs against disqualification (*see* Defs.' Opp'n to Govt's Mot. to Disqualify (Docs. 176, 177, 180), in addition to the fact that disqualification in this criminal prosecution would deprive Mr. Lacey of his constitutional right to counsel of choice.

For all these reasons, defense counsel must have the opportunity to review the statements Mr. Ferrer made to the government.  Those statements are material and relevant to the government's demand for disqualification of defense counsel in a criminal prosecution and

1   necessary to provide the requisite complete record to assess the government's claims.  Mr. Lacey

2   respectfully requests that this Court grant his Motion, whether as a matter of the "broad right to

3   discovery" that Rule 16 conveys criminal defendants, *see United States v. Stever*, 603 F.3d 747,

4   752 (9th Cir. 2010), or as a matter of this Court's exercise of its inherent authority, *see United*

5   *States v. W.R. Grace*, 526 F.3d 499, 509-511 (9th Cir. 2008).

6   **II.    Mr. Ferrer expressly waived privilege in his personal capacity.**

7           The government's contention that Mr. Ferrer has not waived his attorney-client privilege in

8   his personal capacity (*see* Gov't's Mot. at 12-16) is indefensible.   The plain language of the

9   Proffer/Interview Agreement states that "Mr. Ferrer voluntarily waives all claims of attorney-client

10  privilege, whether in his *personal* or official capacity."  (*See* Proffer/Interview Agreement attached

11  as Ex. C to Def.'s Mot. (emphasis added).)   The government, who is believed to be the drafter of this

12  waiver, has admitted that the waiver is "not the model of clarity."  (*See* Gov't's Repl. to HCM's

13  Response to Gov't's Mot. to Disqualify (Doc. 192) at 8.)  It does not matter that the government now

14  contends that the waiver *should have been written* to pertain solely to Mr. Ferrer's official capacity.

15  (*See* Gov't's Opp'n at 13.)  All ambiguities must be construed against the drafter.  *See United States*

16  *v. Seckinger*, 397 U.S. 203, 210 (1970) (holding that "a contract should be construed most

17  strongly against the drafter, which in this case was the United States"); *accord United States*

18  *v. Lo*, 839 F.3d 777, 785 (9th Cir. 2016) ("Because we construe plea agreements according to

19  the principles of contract law, any ambiguities in the contract language are construed

20  against the drafter, which in this case is the government.").  The waiver, on its own, supports

21  a determination to deny the Government's Motion for Disqualification because it suggests that there

22  are no longer any privileged information with respect to Mr. Ferrer's personal capacity.

23          At the very least, Mr. Lacey should have access to the requested discovery to determine

24  whether the government's interpretation of Mr. Ferrer's wavier is valid.   Otherwise, the plain

25  language of the waiver he signed will be overridden by the government's "unsubstantiated premise"

26  that the waiver does not mean what it actually says.

27

28                                                    8

**III.     The government has misstated DWT's prior representations on matters concerning Backpage.**

The Government's Opposition is grounded on an inaccurate description of DWT's prior representations on matters concerning Backpage.com.  Critically, the government has made the misleading claim that DWT "represented Ferrer in his *personal* capacity" in various civil and criminal lawsuits "[s]ince *2010*."  (Gov't Opp'n at 3-4 (emphasis added).)  This description is wrong for several reasons[3] and only serves to further undermine the government's position in opposition to this Motion and the government's own motions because it demonstrates that the Government's Motions, too, are based on demonstrably false premises.

First, DWT did not begin its representations on matters concerning Backpage.com *until 2012*.  In 2012, Village Voice Media Holdings, LLC ("VVMH"), which at that time was the parent company to subsidiary Backpage, engaged DWT to bring a suit challenging a Washington State statute enacted to target Backpage by seeking to make the website criminally responsible for ads posted by third-party users.[4]  Mr. Ferrer was not an officer, director or representative of VVMH.  DWT had no involvement with Backpage or its employees or representatives prior to 2012, which demonstrates that the government's claim as to timing is false.

Second, on occasion, as necessary to its representation of Backpage, DWT entered an appearance in a matter on behalf of Mr. Ferrer, when Mr. Ferrer was named as a nominal party or a representative of Backpage.com.  The sole purpose of entering such an appearance was to carry out its representation of the corporate parties, Backpage.com, VVMH or both.  For example, the United

---

[3]     A more detailed discussion of the history of DWT's representations on matters concerning Backpage is found in Defendants' Opposition to United States' Motion to Resolve Privilege Issues and Cross-Motion to Obtain Discovery and Address Privilege Issues and is hereby incorporated by reference.  (*See* Defs.' Opp'n (Doc. 226) at 4-9.)

[4]     DWT successfully represented VVMH and Backpage in that suit and two successive cases concerning similar statutes, winning injunctions in all three cases: *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013); and *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *8 (D.N.J. Aug. 20, 2013).  DWT continued to successfully represent VVMH and Backpage in other matters.  (*See* Defs.' Opp'n (Doc. 226) at 5-7.)

States Senate Permanent Subcommittee on Investigations directed a subpoena to Mr. Ferrer in his representative capacity as CEO of Backpage.com in *Senate Permanent Subcomm.on Investigations v. Ferrer*, No. 1:16-MC-00621-RMC (D.D.C.).  To represent Backpage.com in addressing and challenging the subpoena, DWT and other counsel (including Akin Gump Strauss Hauer & Feld LLP) entered appearances on behalf of the representative of Backpage.com who had been served with the subpoena, which was Mr. Ferrer.

No one asserted claims or charges against Mr. Ferrer in his personal capacity (or any other individual associated with Backpage) until October 2016.  Then, the California Attorney General's office arrested and jailed Mr. Ferrer, Mr. Lacey, and James Larkin, alleging that they had engaged in "pimping" under California Penal Code § 226h.  Shortly thereafter, each defendant engaged counsel to represent them personally,[5] while agreeing to be jointly represented by DWT to address common issues.  Consequently, Messrs. Ferrer, Lacey, and Larkin entered into an engagement agreement with DWT, a Common Interest and Litigation Management Agreement (on behalf of themselves and their respective companies), and a joint defense agreement with all Defendants in this action and their respective counsel, which were provided to the Court *in camera*.  (*See* Exs. A, B, C to the Declaration of James C. Grant (submitted *in camera*) in support of Defs.' Opp'n to Govt's' Mot. to Disqualify (Doc. 180).)  These agreements spelled out the parties' undertakings to retain joint counsel, coordinate joint defenses, share confidential information, and waive potential conflicts of interest as to any claims—civil or criminal whether past, present or future.  (*See* Grant Decl. ¶ 16.)  Mr. Ferrer and the other parties agreed they would share privileged information with one another and with joint counsel, and would maintain and protect all privileges and confidentiality as to third parties.  (*See id.* ¶ 18.)  The agreements expressly acknowledged that the parties' interests could diverge in the future, and so allowed that a party could withdraw from the joint representation but could not unilaterally waive privileges or seek to disqualify DWT from continuing to represent other parties.  (*See id.* ¶¶ 19, 24.)  Moreover, when Mr. Ferrer entered into the joint representation

---

[5]      Mr. Ferrer engaged Nanci Clarence of Clarence Dyer Cohen LLP as his personal counsel.

agreements, he was separately represented by his own personal counsel and corporate counsel (including Ms. Clarence who separately signed the joint-defense agreement on behalf of Mr. Ferrer). (*See id.* ¶¶ 7, 10, 11, 21.)

In sum, the government description of DWT's representation on matters concerning Backpage.com contains inaccuracy on top of inaccuracy and does nothing to advance the Government's Opposition to the discovery sought in the Motion (or the relief the government has sought in the Government's Motions).

## CONCLUSION

For all these reasons, Mr. Lacey respectfully requests that this Court order the government to disclose documents requested in the Motion because those documents are essential for resolution of the Government's Motion to Disqualify (as well as the Government's Motion to Resolve Privilege Issues), and the government should not be permitted to interfere with Mr. Lacey's Sixth Amendment right to counsel of choice on the basis of an incomplete and unsubstantiated record.

RESPECTFULLY SUBMITTED this 16th day of August, 2018,

/s/   *Paul J. Cambria, Jr.*
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

On August 16, 2018, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Dominic Lanza, dominic.lanza@usdoj.gov
Kevin Rapp, kevin.rapp@usdoj.gov