ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Michael Lacey, et al.,

Defendants.

CR-18-422-PHX-SPL (BSB)

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO RESOLVE ATTORNEY-CLIENT PRIVILEGE ISSUES AND RESPONSE TO CROSS-MOTION TO OBTAIN DISCOVERY AND ADDRESS PRIVILEGE ISSUES**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendants Lacey and Larkin advance two primary arguments in an attempt to convince the Court that Carl Ferrer—as Backpage's CEO and 100% owner—does not have authority to waive the company's attorney-client privilege. The first argument is facially wrong and the second strains credulity.

First, for communications that occurred before April 2015, Defendants argue that Ferrer lacked authority to waive the company's attorney-client privilege because he was

only an employee before the sale and his purchase of the company "did not vest him with authority he did not have before." CR 226 at 22. That argument is wrong. It is hornbook law that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Commodity Futures Trading Comm'n v. Weintruab*, 471 U.S. 343, 349 (1985). Moreover, the very cases cited in Defendants' brief (*Polycast* and *Glidden*) recognize that this authority extends to communications that occurred before the sale. Put simply, Ferrer possesses the authority to waive the attorney-client privilege and he's exercised it. CR 195-3. All communications between Backpage and its attorneys that occurred before April 2015 are, therefore, not subject to a privilege and the prosecution team should be permitted to review those documents immediately.

Defendants' second argument relates to communications that occurred after Backpage's sale. Here, Defendants make an opaque argument about the relationship between Backpage and several of the individual Defendants and various oral and written agreements that were purportedly entered into by those parties. Their argument boils down to this: from the moment Backpage was sold by Lacey and Larkin to Ferrer, the parties "recognized the importance of having joint representation" and entered into an oral agreement to be represented jointly in all issues that involved Backpage. CR 226 at 13. This purported oral agreement, they continue, was then memorialized some 20 months later "so that all dealings and communications from April 22, 2015 and afterward were encompassed and protected by the parties' joint privilege undertakings." *Id.* Defendants do not limit the scope of this supposed joint representation agreement to any specific attorneys or subject matter, but rather argue that it applies broadly *to any communications* between Backpage and *any attorneys* from April 22, 2015 through April 2018. *Id.* at 14. The government believes this argument is not only convenient but also unlikely to withstand scrutiny, especially considering that the burden to prove a privilege rests with Lacey and Larkin. The government, however, is unable to fully respond because the actual written agreements were filed *in camera*.

The government currently has 10,733 documents segregated for filter review from compliance of the two search warrants discussed in its motion. Out of those documents, only 1,328 are communications that occurred after Ferrer purchased Backpage in April 2015. Accordingly, the Court can, and should, issue an order finding that Backpage—through Ferrer—has waived the attorney-client privilege for all communications that occurred before April 2015, which would permit the government to review 9,405 of the segregated documents. Further, based on Judge Campbell's waiver ruling, the Court can conclude that the subject matters of ad moderation and acknowledgment of the prevalence of prostitution ads on the Backpage website have both been waived. Any communications about either one of those two subjects are not privileged and should also be disclosed to the government. For the remaining 1,328 documents, Lacey and Larkin must specifically demonstrate what privileges apply and why they have not been waived. Even if Defendants are able to demonstrate that certain documents are privileged, case law suggests that when a joint privilege is shared between individuals and a corporation the corporation can unilaterally waive the privilege over the individual's objection. If, however, the Court finds there are privileged documents that the corporation cannot unilaterally waive, the filter team would produce those specific documents to both Defendants and the Court to permit further litigation.

## ARGUMENT

A. Ferrer Had Authority To Waive Backpage's Corporate Attorney-Client Privilege

Since 2015, Carl Ferrer has been the CEO and 100% owner of Backpage.com, LLC. In April 2018, Ferrer executed a written waiver of Backpage's corporate attorney-client privilege. CR 195-3. The issue before the Court is whether Ferrer had authority to execute such a waiver over the objection of Backpage's former owners and managers (*i.e.*, Defendants Lacey and Larkin).

The answer to this question is a resounding yes. As the United States showed in its motion (*see* CR 195 at 10-11), the Supreme Court (*Weintraub*) and Ninth Circuit (*Graf*) have long recognized the authority of a corporation's current owners and managers to

execute privilege waivers in these circumstances. Put simply, "[d]isplaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Weintraub*, 471 U.S. at 349.

Notwithstanding the clarity of the law in this area, Lacey and Larkin ask the Court to disregard Ferrer's waiver. *See* CR 226 at 15-18. As explained below, their arguments with respect to all communications pre-sale are unavailing and much more is required for Defendants to support their contention that privileges still exist for all post-sale communications.

1. **Ferrer Did Not Need To Obtain The Consent of Backpage's Former Parent Company Before Waiving Backpage's Corporate Attorney-Client Privilege For All Pre-Sale Communications**

Lacey and Larkin's first argument is that, because Backpage was a wholly-owned subsidiary of various parent companies (referred to collectively, for sake of simplicity, as Village Voice Media Holdings ("VVMH")) until 2015, and because the privilege waiver would encompass communications predating the 2015 sale, Ferrer cannot waive Backpage's privilege without the joint consent of its former parent, VVMH. *See* CR 226 at 16-17 ("For the period before the 2015 sale, it is clear that Backpage.com (as a subsidiary) . . . had no separate authority to control or waive privileges. . . . Thus, . . . his purchase of Backpage.com in April of that year did not vest him with authority he did not have before."); *see also id.* at 18 ("[Ferrer] has no authority otherwise to waive privileges as to VVHM . . . .").

This argument is easily rejected. In fact, it is directly contradicted by the two cases (*Polycast* and *Glidden*) cited in the opposition brief. In *Polycast Tech. Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47 (S.D.N.Y. 1989), a parent company (Uniroyal) once owned a subsidiary (Uniroyal Plastics) but later sold the subsidiary to a new owner (Polycast). *Id.* at 48. After a post-sale dispute arose, the buyer propounded a discovery request seeking certain documents describing pre-sale communications between the parent's general counsel and the subsidiary's vice president. *Id.* at 49-50. When the parent refused to produce this

material on attorney-client privilege grounds, the district court intervened to address "[t]he issue . . . of control over a corporate subsidiary's attorney-client privilege after the subsidiary is sold." *Id.* at 49. The court concluded that, although the parent still retained an interest in the privileged communications, the new buyer possessed the unilateral right to waive the privilege: "*Because . . . the privilege is jointly held by Polycast and Uniroyal, and because Polycast acquired control over Plastics' privilege rights when it purchased the company, Polycast and Plastics' new management may now waive the privilege at their discretion*." *Id.* at 51 (emphasis added).

Meanwhile, in *Glidden Co. v. Jandernoa*, 173 F.R.D. 459 (W.D. Mich. 1997), a parent company (Grow) once owned a wholly-owned subsidiary (Perrigo), but the subsidiary was spun off into a new company (also called Perrigo) via a management buyout. *Id.* at 464. Afterward, the parent sued the new company for fraud. *Id.* During discovery, the parent sought various pre-buyout communications between the subsidiary and its lawyers, but the new company opposed this request under the theory that "the attorney-client privilege belonging to [the subsidiary] passed to the present Perrigo . . . by operation of merger, and that the attorney-client privilege now belongs to . . . Perrigo." *Id.* at 470. The district court disagreed and ordered the new company to produce the requested documents. Notably, the court recognized that, under *Weintraub*, "*[a]s the surviving entity after a merger . . . , Perrigo does indeed have the authority to assert or waive the attorney-client privilege*." *Id.* at 472 (emphasis added). Nevertheless, the court held that, because "[t]he universal rule of law . . . is that the parent and subsidiary share a community of interest, such that the parent (as well as the subsidiary) is the 'client' for purposes of the attorney-client privilege," the new company couldn't invoke the privilege as a *shield* against the former parent. *Id.* at 472-73. Thus, the court concluded: "Perrigo Company had no reasonable expectation that it could keep anything secret from its parent corporation. As long as Perrigo was a wholly owned subsidiary of Grow, Perrigo's officers had no legal ability to resist disclosure to Grow of any of Perrigo's records, including its attorney-client communications." *Id.* at 473.

Notably, the *Polycast* and *Glidden* courts each cited an earlier decision—*Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 689 F. Supp. 841 (N.D Ill. 1988)—in support of their privilege analyses. In that case, a parent company (Baxter) once owned a subsidiary (Medcom, Inc.) but later sold the subsidiary to a new owner (Medcom Holding). *Id.* at 842. The issue presented was whether the new owner could, over the objection of the parent, waive the attorney-client privilege as to pre-sale communications involving the subsidiary. *Id.* at 842-44. The court held the new owner *could* effectuate such a unilateral waiver: "Medcom Holding controls Medcom Inc.'s privilege with respect to attorney-client communications occurring prior to or relating to the sale of Medcom, Inc. Therefore, Baxter's objections . . . are without merit." *Id.* at 844. The court further noted that this outcome was consistent with *Weintraub*, which "expressly included takeovers and mergers in its finding that new corporate managers may waive the attorney-client privilege as to communications of prior management." *Id.*; *see also. id.* at 842-43 ("[P]arties who negotiate a corporate acquisition should expect that the privileges of the acquired corporation would be incidents of the sale. . . . Because Medcom, Inc. was a party to the communications in issue, it was reasonable to assume that successor management of Medcom, Inc. would control the attorney-client privilege.").

The bottom line is that *Polycast*, *Glidden*, and *Medcom* all recognize that, once a subsidiary has been sold or spun off from a parent company, the new owners of the subsidiary may waive the corporate attorney-client privilege without the consent of (and even over the objection of) the parent. Lacey and Larkin thus cannot prevent Ferrer from waiving the attorney-client privilege as to all communications that occurred before April 2015.

### 2. Defendants' "Joint Representation" And "Joint Defense" Arguments, Which Could Apply Only To Post-April 2015 Documents, Are Opaque And Imprecise

Defendants assert that, the moment they sold Backpage to Ferrer in April 2015, all parties orally entered into a "joint representation" agreement that prevents Ferrer from executing a privilege waiver without their consent. *See* CR 226 at 7-8, 17-18. This

supposed oral agreement, they contend, was then purportedly memorialized in subsequent written agreements.

The government cannot speak directly to what the written agreements say, because Defendants have filed all such agreements *in camera*.  CR 180 at 12.  In previous filings, however, Defendants have referenced the following:

(1)     an engagement agreement between Davis Wright Tremaine LLP ("DWT") and Ferrer, Larkin, and Lacey (dated December 12, 2016);

(2)     a Common Interest and Litigation Management Agreement (the "Common Interest Agreement") (dated December 31, 2016), executed by the three individuals on behalf of themselves and the companies they control; and

(3)     a joint defense agreement ("JDA") entered into June 2017 that Ferrer, Larkin, and Lacey and others signed (but which DWT apparently did not sign).

CR 180 at 12-13.

As far as the government can discern, these are all the agreements that form the basis for Defendants' argument that, post-April 2015, Backpage held joint privileges with Lacey and Larkin for *all communications with any attorneys*.  In an effort to address this argument, the government breaks down Defendants' claims with respect to (a) joint representation and (b) the JDA and the Common Interest Agreement, and discusses each in turn.

a.     The Purported Joint Representation Agreements

Defendants argue that Backpage, under Ferrer's ownership, has always had agreements with Lacey and Larkin for joint representation.  To support this argument, Defendants suggest that DWT entered into "joint representation agreements" with the parties, but fail to point to any other agreements between and among Lacey, Larkin, and Backpage.  Defendants bear the burden of "establishing the relationship *and* the privileged nature of the communication."  *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations omitted) (emphasis in original).  Mere conclusory statements about privileges are not sufficient.  Thus, even assuming Defendants' contention about DWT's joint

representation is correct, then all communications between Backpage and *any attorneys other than DWT* that occurred after the April 2015 sale would not be subject to any attorney-client privilege.[1]   Accordingly, the 1,328 documents that represent post-April 2015 potentially privileged material would further be reduced by eliminating all communications from any attorneys other than DWT.

Moreover, even if Backpage had entered into oral agreements for joint representation with every attorney it engaged after April 2015, Defendants are incorrect in their assertion that the company would have needed to secure their consent before waiving the attorney-client privilege.  The First Circuit has held that, when an individual corporate officer and a corporation are jointly represented by the same attorney, the corporation can unilaterally waive the privilege over the individual officer's objection: "[W]e hold that a corporation may unilaterally waive the attorney-client privilege with respect to any communications made by a corporate officer in his corporate capacity, notwithstanding the existence of an individual attorney-client relationship between him and the corporation's counsel." *In re Grand Jury Subpoena*, 274 F.3d 563, 573 (1st Cir. 2001).  Admittedly, the Ninth Circuit, in *Ruehle*, acknowledged the First Circuit's approach on this issue but declined to say whether it was adopting it.  583 F.3d at 608 n.7 ("[W]e need not reach and decide in this case whether our circuit should adopt the rule of [the First Circuit]: that the corporation, without consent of an executive asserting privilege, can waive the attorney-client privilege in a dual-representation context where the subject matter of the waiver concerns matters of interest to the corporation.").  Nevertheless, the existing case law significantly undermines Defendants' theory as to the significance of the supposed oral joint representation that was executed following the April 2015 sale.

---

[1] The government recognizes some communications with attorneys other than DWT may theoretically be subject to a privilege under the JDA or the Common Interest Agreement, which the government addresses below.

b.      The JDA and the Common Interest Agreement

The privileges arising from a joint-defense agreement differ from those arising from attorney-client communications.  As one court has explained, "the joint defense privilege differs sufficiently from the attorney-client privilege in both purpose and scope that the two should be viewed as entirely separate doctrines."  *United States v. Stepney*, 246 F. Supp. 1069, 1073 (N.D. Cal. 2003).  In broad terms, the joint-defense privilege is an extension of the attorney-client privilege that permits parties who are represented by separate counsel to share certain types of privileged information with each other confidentially.  *Id.* at 1086 ("Each defendant entering into a joint defense agreement already has a representative, fully and confidentially informed of the client's situation.  The joint defense privilege allows defendants to share information . . . ."); *see also In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) ("Rather than a separate privilege, the 'common interest' or 'joint defense' rule is an exception to ordinary waiver that allows attorneys for different clients pursuing a common legal strategy to communicate with each other."); *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 n.7 (9th Cir. 1987) ("The joint defense privilege . . . is an extension of the attorney client privilege . . . [under which] 'communications by a client to his own lawyer remain privileged when the lawyer subsequently shares them with co-defendants for purposes of a common defense.'") (citation omitted).

Here, the United States is not suggesting that Ferrer can unilaterally waive any *joint-defense* privileges that may exist between him, Lacey, and Larkin.  To the contrary, the United States previously sent a letter to defense counsel drawing a distinction between the joint-defense and attorney-client privileges and making clear that it was not seeking access to any materials that might be covered by a joint-defense privilege.  *See* Exhibit A (May 3 letter to defense counsel).

Nevertheless, it is highly unlikely that any of the documents currently segregated in the government's filter review contain material covered by the joint-defense privilege.  Indeed, the filter team has confirmed that *none* of the segregated documents involves

communications from December 2016 or later. This is relevant because Ferrer, Lacey, and Larkin didn't enter into a joint-defense agreement until late December 2016.[2]

In *In re Grand Jury Subpoena*, 415 F.3d 333 (4th Cir. 2005), the Fourth Circuit encountered a similar issue. There, AOL Time Warner ("AOL") began conducting an internal investigation in March 2001 and had its outside counsel, as part of the investigation, interview several AOL employees, including Wakeford. *Id.* at 335-36. In November 2001, the SEC opened an investigation into AOL. *Id.* at 336. Soon afterward, AOL and Wakeford entered into an "oral 'common interest agreement,'" which they later memorialized in writing. *Id.* Several years later, the grand jury issued a subpoena to AOL for the memorandum summarizing its outside counsel's interview with Wakeford. *Id.* at 337. AOL agreed to waive its corporate attorney-client privilege and produce the memorandum but Wakeford intervened to oppose the request, arguing that the memorandum was covered by the joint-defense privilege and that AOL couldn't waive that privilege unilaterally. *Id.* The district court rejected this argument, holding that "Wakeford's interviews were not privileged because . . . Wakeford's common interest with AOL postdated the March-June 2001 interviews" (*id.*), and the Fourth Circuit affirmed, concluding that "[b]ecause there is no evidence that Wakeford and AOL shared a common interest before December 2001, we find no error in the district court's conclusion that Wakeford had no joint defense privilege before that time." *Id.* at 341. So, too, here—all of the segregated documents involve communications that predate the execution of

---

[2] In their opposition brief, Lacey and Larkin seem to suggest they entered into an "oral" joint-defense agreement with Ferrer and Backpage at some unspecified date and simply "memorialized" this agreement in writing in December 2016. *See* CR 226 at 17 n.19. The Court should reject this claim. The United States doesn't dispute that it's possible to enter into an oral joint-defense agreement, *see United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012), but the party claiming the existence of such agreement bears the burden of proving it. Here, Lacey and Larkin have failed to meet that burden. And, in any event, the criminal lawsuit in California against Lacey, Larkin, and Ferrer wasn't initiated until October 2016, and there is no evidence suggesting that any sort of joint-defense agreement, oral or otherwise, existed before then.

Defendants' joint defense agreement with Ferrer.

B.    Judge Campbell's Ruling Was Broad, Based On Backpage's Privilege Log

Between 2010 and 2016, Backpage repeatedly divulged privileged information to third parties, including three different public relations firms and an investment bank.  In a thorough ruling issued in April 2018, Judge Campbell ruled that Backpage had waived its privilege by failing to maintain the confidentiality of these communications.  CR 195-8. Accordingly, Judge Campbell ordered Backpage to produce a particular set of documents—which were responsive to a grand jury subpoena and which Backpage had previously attempted to withhold on privilege grounds—to the prosecution.

In its motion, the United States showed that Judge Campbell's ruling has important ramifications with respect to the issues now before the Court (*i.e.,* the extent to which Backpage has waived its attorney-client privilege and how to complete the review of approximately 10,000 other documents that were obtained via search warrant).  Specifically, the United States showed that (1) under Ninth Circuit law, Backpage should be deemed to have waived the privilege as to any "subject matter" addressed in the privileged documents that were previously disseminated to the PR firms and the investment bank, (2) two of the "subject matters" that were addressed in those documents were ad moderation and whether/how to acknowledge the prevalence of prostitution ads on the Backpage website, and (3) the 10,000 segregated documents may therefore be disclosed to the prosecution team if they touch upon the same "subject matters."  *See* CR 195 at 11-12; *see also Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("Disclosing a privileged communication or raising a claim that requires disclosure of a protected communication results in waiver as to all other communications on the same subject."); *United States v. Plache*, 913 F.2d, 1375, 1380 (9th Cir. 1990) ("[T]he district court properly found that Plache voluntarily disclosed his privileged attorney communication, thereby waiving the privilege on all other communications on the same subject.").

In their opposition brief, Defendants urge the Court to disregard Judge Campbell's

ruling and find that has no bearing on the current issues. *See* CR 226 at 18-19. Although Defendants do not appear to dispute the legal principle underlying the United States' position (*i.e.*, intentionally disclosing a privileged communication results in waiver as to all other communications touching upon the same subject matter), they fault the United States for taking an "absurdly broad" view of the subject matters that were actually discussed in the set of documents that Judge Campbell required Backpage to produce. *Id.* at 19. Defendants do not, however, attempt to provide their own definition of the subject matters at issue. Instead, they conclude by accusing the United States of attempting to "morph Judge Campbell's ruling into a blanket privilege waiver." *Id.*

These arguments lack merit. As an initial matter, the United States has never argued that Judge Campbell's ruling should result in a "blanket privilege waiver" as to all issues. To the contrary, the United States made clear in its motion that Judge Campbell's ruling should only result in a finding of a subject matter waiver as to the particular topics addressed in the PR firm and investment bank documents.

On the merits, it is obvious that one of the "subject matters" addressed in the PR firm documents was the subject of ad moderation. Indeed, Backpage's own privilege logs—which Backpage used to justify its initial refusal to produce the PR-firm documents, and which were provided to Judge Campbell as part of the subpoena litigation—concede this point. For example, Backpage initially sought to withhold the document enclosed as Exhibit B on the ground that it "*contain[ed] legal advice from outside counsel Hemanshu Nigam, Esq. regarding ad moderation*." *See* Exhibit C (JMS privilege log, with relevant entry highlighted at top of page six) (emphasis added). As the Court can see, the document itself is a detailed memo from Backpage's outside counsel containing legal advice about ad moderation, including advice about how to review the content of ads (Section 1), how to review the images appearing within ads (Section 2), how to enable users to report illegal ads (Section 3), how to "create and enforce guidelines for adult forums prohibiting prostitution" and other topics (Section 4), and legal advice concerning "age related restrictions and safety" (Section 5). Similarly, Backpage initially sought to withhold the

document enclosed as Exhibit D on the ground that it "*contain[ed] legal advice from outside counsel Edward E. McNally, Esq. regarding ad moderation*." *See* Exhibit E (Culloton privilege log, with relevant entry highlighted in the middle of page two) (emphasis added). The document itself is an email chain addressing how to deal with the fact that Backpage advertisements were appearing on a prostitution-related blog that "pimps use . . . as a resource to identify trends, hotspots and stay current on laws and law enforcement authority." *See* Exhibit D at 4. After Backpage's public relations consultants warned that such advertisements were "a BIG problem," because "law enforcement may perceive BP [Backpage] to be playing to the pimp audience," Backpage's principals and outside counsel discussed strategies for removing the ads. *Id.* at 1-4.

These documents are just of the tip of the iceberg in terms of the ad moderation-related documents that were disclosed by Backpage pursuant to Judge Campbell's ruling. For example, Backpage initially sought to withhold the document enclosed as Exhibit F on the ground that it "contain[ed] legal advice from outside counsel Hemanshu Nigam, Esq. regarding safety and security policies." *See* Exhibit C (JMS privilege log, with relevant entry highlighted in middle of page one). In fact, the document is a detailed three-page spreadsheet from Backpage's outside counsel containing legal advice about certain "action items" to pursue. One such item, listed in the category of "Finding Illegal Ads," warned that "'New In Town' terminology is often used by pimps who shuttle children to different locations where they do not know anyone and cannot get help." Another item, also listed in the category of "Finding Illegal Ads," recommended that Backpage should "[d]etermine if there is a way to figure out if a [credit] card being used is prepaid; this could be one indicator (of many) . . . as a potential trafficking ad." And yet another recommendation, under the category of "Finding Illegal Ads," was to "[c]reate a way to figure out if one phone number is being used on numerous different ads . . . [because] this could indicate a prostitution situation or a human trafficking situation." It is accurate—and not "absurdly broad"—to characterize this document as containing legal advice on the subject matters of ad moderation and whether/how to acknowledge the

prevalence of prostitution ads on the Backpage website. Similarly, Backpage initially sought to withhold the document enclosed as Exhibit G on the ground that it "contain[ed] legal advice from outside counsel regarding proposed policy changes." *See* Exhibit C (JMS privilege log, with relevant entry highlighted on bottom of page six). In fact, the document is a detailed five-page spreadsheet from Backpage's outside counsel addressing such topics as "Finalize policy on acceptable conduct" (which was accompanied by the note "List of prostitution-related terms banned from site; additional content rules pending"), "Finalize policy on whether unacceptable content is removed from ads or if the entire ad is deleted," and "Remove return of results when certain keywords are used (on the front end) that indicate illegal activity (i.e., rape, incest, Lolita, etc.)."

For these reasons, the Court should find that, separate and apart from the broader privilege waiver discussed in Section A of this reply, Backpage has waived the privilege as to the subject matters of ad moderation and whether/how to acknowledge the prevalence of prostitution ads on the Backpage website.

C. The *J.S.* Waiver Ruling

The government believes that its arguments in Section A and B are sufficient to establish that Backpage's attorney-client privilege has been waived for the vast majority of the 10,733 documents currently segregated in its filter review. The issue raised by the *J.S.* waiver ruling provides a closer call. The government has been unable to find any case that stands for the proposition that a settlement is the same as "abandon[ing] the claim that gives rise to the waiver condition." *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003). But, likewise, the government hasn't found cases that hold a settlement is insufficient to cure an implied-waiver finding.[3]

[3] Backpage's decision to use its general counsel—Elizabeth McDougall—as a corporate spokesperson in a civil lawsuit demonstrates that her position with the company went beyond simply providing legal advice. In any event, Defendants do not claim there are any joint representation agreements that involve Elizabeth McDougall, therefore her communications are no longer privileged.

D. Government's Use Of A Filter Team Is Proper

Lacey and Larkin criticize the government's use of a filter team in this matter. Their complaints fit into four categories: (1) courts have expressed doubts about the use of filter teams; (2) the government should not "take matters into its own hands" by implementing filter teams without judicial approval; (3) the government used an incomplete list of attorneys' names when segregating documents for review; and (4) the government's filter review must have been inadequate because the California Attorney General's Office ("AGO") segregated over 64,000 documents while the government's review only set aside 10,733. Each of these complaints is unfounded.

First, while Lacey and Larkin identify a handful of district court decisions that have expressed doubts about filter teams, there are many additional cases upholding and approving the validity of filter teams. *See, e.g., United States v. Loughner*, 782 F. Supp. 2d 829, 833 (D. Ariz. 2011) ("The Court approves the Government's use of a filter team to screen BOP's records for possible privilege issues."); *Hicks v. Bush*, 452 F. Supp. 2d 88, 103 (D.D.C. 2006) (granting government's motion to authorize filter-team review and explaining that there was "[n]o practical and effective alternative to the Filter Team. . . . Neither review by special masters nor pre-screening by counsel for the detainees could be accomplished in a reasonable amount of time."); *In re Search of 5444 Westheimer Road, Suite 1570, Houston, Texas, on May 4, 2006*, 2006 WL 1881370, *2 (S.D. Tex. July 6, 2006) (noting that "[o]ther courts have upheld the use of taint team procedures" and authorizing "the Government to commence reviewing the materials through use of the proposed taint team procedure"); *United States v. Grant*, 2004 WL 1171258, *3 (S.D.N.Y. May 25, 2004) (same). As one court has put it: "The use of a taint team is a proper, fair and acceptable method of protecting privileged communications when a search involves property of an attorney." *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 43 (D. Conn. 2002).

Second, this is not a case where the government unilaterally chose to use a filter team. To the contrary, the government sought and obtained permission from two different

magistrate judges before doing so. *See* CR 195-1, 195-2. The case cited by Defendants—*United States v. Neill*, 952 F. Supp. 834 (D.D.C. 1997)—dealt with a situation where no court had issued an order approving the filter team review.

Third, Lacey and Larkin state the government has woefully under-segregated the documents for filter team review. That, again, is false. The government used the attached list (Exhibit H) with over 265 search terms to determine what documents may need further review, which include search terms that would identify communications from all attorneys listed in Defendants' response. *Compare* Exhibit H *with* CR 226 at 12 n.14. This list led to 10,733 potentially privileged documents.

Fourth, and finally, it is incorrect to conclude—as Defendants do—that the federal filter team's efforts must have been inadequate because it didn't segregate as many documents as the AGO's filter team. In fact, federal authorities didn't take possession of the 64,000 documents that the AGO had previously culled. The 10,733 documents at issue here are *additional* documents that the federal filter team segregated for further review.[4]

**CONCLUSION**

The record is clear that the privilege has been waived for all of Backpage's attorney-client communications before April 2015. The authority to waive the privilege transferred to Carl Ferrer when he purchased the company and he has exercised that right. Additionally, Backpage waived its privilege as to the subject matter of many of those documents by sharing privileged materials with third-party public relations firms and an investment bank. The practical impact of an order on this issue would be to permit 9,405 out of the 10,733 documents that have been segregated for filter review—all of the communications that occurred before April 2015—to be immediately turned over to the

[4] Defendants use their response brief to raise, again, the issue of disclosure of the government's communications with Ferrer. CR 226 at 23-24. The government responded to this argument previously (CR 216). Further disclosure from the government is neither necessary nor relevant for the Court to determine whether Backpage's attorney-client privilege has been waived. As discussed above, however, the Court may require further disclosure from Defendants before it can rule on Defendants' claim of joint privilege with respect to Backpage's post-sale communications.

prosecution team.

Defendants' assertion that privilege attaches to all communications between Backpage and all of the company's attorneys after April 2015 is dubious. As an initial matter, between April 2015 and December 2016, any communications between Backpage and any attorneys that had not been engaged in joint representation with the individual Defendants (i.e., all lawyers and law firms other than DWT) should also be provided to the prosecution team. For all remaining documents, Defendants must specifically demonstrate the privileges that apply and why they have not been waived. Even if Defendants are able to demonstrate that certain documents are privileged, case law suggests that when a joint privilege is shared between individuals and a corporation the corporation can unilaterally waive the privilege over the individual's objection. In the end, if the Court finds that privileged documents remain, the government would propose that the filter team produce those specific documents to both Defendants and the Court to permit further litigation.

Respectfully submitted this 17th day of August, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

/s Andrew C. Stone
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
JOHN J. KUCERA
Assistant U.S. Attorneys

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

**Certificate of Service**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Anne Chapman, Erin McCampbell, Gregory Zamora, James Grant, Larry Debus, Lawrence Kazan, Lee Stein, Paul Cambria, Robert Corn-Revere, Ronald London, Janey Henze Cook, John Littrell, Kenneth Miller, Thomas Bienart, Jr., Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, David Wakukawa, Michael Piccarreta, Stephen Weiss.

*s/Rose Marie Trandicosta*
U.S. Attorney's Office

# Exhibit A



**U.S. Department of Justice**

United States Attorney
District of Arizona

Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, AZ 85004-4408

Main: (602) 514-7500
Main Fax: (602) 514-7693
Direct Fax: (602) 514-7450

May 3, 2018

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel PC
2 East Congress Street, Suite 1000
Tucson, AZ 85701

VIA EMAIL

Re: *Your Letter of April 26, 2018*

Dear Mike:

We wish to respond to your April 26, 2018, letter. The letter begins with the following statement: "It is my understanding that Carl Ferrer has indicated to the government that he is waiving the attorney-client privilege on behalf of himself, Backpage, and the other entities he controls. If that is not the case, please let me know."

On this issue, your understanding is not fully accurate. It is true that Mr. Ferrer has executed a broad waiver of the *corporate* attorney-client privilege possessed by Backpage.com, LLC and various other Backpage-related entities. Enclosed with this letter is a copy of the waiver agreement. However, as you will see, the waiver agreement makes clear that Mr. Ferrer has not waived his *individual* attorney-client privilege, either as to his current criminal defense attorneys or to the prior attorneys who represented him on an individual basis.

Your letter also states that "regardless of whether Mr. Ferrer and the entities he controls waive the attorney-client privilege as to themselves, such a waiver or waivers would not waive the privilege of other individuals or entities, nor would it waive any privileges held jointly by Mr. Ferrer and/or his entities and other individuals or entities, whether in materials seized by the government or as to other privileged communications."

Once again, we do not fully agree. On the one hand, it is true that, to the extent Mr. Ferrer or any of the Backpage entities entered into a joint defense agreement ("JDA") with others, there may be restrictions on the ability to unilaterally waive JDA-derived privileges. For this reason, we have taken steps to avoid the disclosure of any JDA-protected material. However, when it comes to communications covered by Backpage's corporate attorney-client privilege (or by the corporate attorney-client privilege held by any of Backpage's

predecessor/related entities), the law makes clear that Mr. Ferrer—as Backpage's CEO and 100% owner since 2015—is empowered to waive the corporation's privilege, as he has done here. *See generally Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers . . . may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.").

Furthermore, once the corporate privilege has been so waived, it is very difficult for an individual corporate employee (such as your client, Mr. Padilla) to prevent the disclosure of communications that were previously covered by the privilege. In *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010), the Ninth Circuit addressed this issue in detail, noting that "[o]ne of these special problems" that arises in the context of the corporate attorney-client privilege "is that corporate officers, directors, and employees who communicate with corporate counsel on behalf of the corporation may later attempt to claim a personal attorney-client privilege regarding those communications after the corporation has waived its own privilege." *Id.* at 1156. The *Graf* court held that a corporation is ordinarily "*free to obtain information from its officers, employees, and consultants about company matters and then control the attorney-client privilege, waiving it when necessary to serve corporate interests*," and that an employee may prevent such a disclosure only under limited circumstances. *Id.* at 1160-61 (emphasis added). Specifically, once the corporate privilege has been waived, an individual employee may prevent disclosure only by establishing the following five factors: "*First*, they must show they approached counsel for the purpose of seeking legal advice. *Second*, they must demonstrate that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. *Third*, they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. *Fourth*, they must prove that their conversations with counsel were confidential. And *fifth*, they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company." *Id.* at 1160 (citation omitted) (emphasis in original).

Here, we have not seen any evidence suggesting these five factors are satisfied. If you are aware of any such evidence (such as proof that Mr. Padilla, while working at Backpage, had discussions with corporate counsel about purely personal matters unrelated to the general affairs of Backpage and made clear he was seeking legal advice in an individual capacity), please let us know.

Finally, you may also be aware (through your discussions with co-counsel) that Backpage has, in the past, voluntarily shared certain privileged materials with third parties. Such disclosure provides an independent basis, apart from the written waiver agreement, for concluding that the corporate attorney-client privilege has been waived. *See, e.g., In re Pac.*

*Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege.").

Sincerely,

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s Kevin Rapp*
KEVIN M. RAPP
Assistant U.S. Attorney

KMR/zs

# WAIVER OF ATTORNEY CLIENT PRIVILEGE

I, Carl Ferrer, state the following in my capacity as sole owner and manager of Dartmoor Holdings LLC, which wholly owns and operates Backpage.com LLC (of which I am Chief Executive Officer), Website Technologies LLC, IC Holdings LLC, Posting Solutions LLC, and Postfaster LLC, hereafter referred to as "the Companies." I am authorized to waive each of the Companies' attorney-client privilege and am doing so because I believe executing such waiver is in each of the Companies' best interest.

I further state that, being represented by counsel and being fully advised as to this matter, I hereby voluntarily waive all aspects of the attorney-client privilege, on behalf of the Companies, which otherwise may have applied to communications, documents and information that I or the Companies have provided to law enforcement or which law enforcement may already have in its possession from other sources, as follows:

a. All communications related to the "adult," "escort," "dating," and "services" sections of the Companies' websites, including but not limited to company policies, moderation practices, age verification practices, legality, content, and compliance with law enforcement.

b. All communications related to the Companies' financial activity, including but not limited to the sale of Backpage.com in 2015, all loans and financing agreements related to the sale of that company in 2015, monetization of the Companies' websites, payment processing, credit card processing, banking, and payment of loans.

c. All communications regarding the relationship between the Companies (including their current owner and employees) and their former owners and officers, including but not limited to, James Larkin, Michael Lacey, John ("Jed") Brunst and Scott Spear, as well as communications between the Companies (including their current owner and employees) and Don Bennett Moon.

I further state that, in addition to the foregoing waiver, I hereby voluntarily waive, on behalf of the Companies, all aspects of the attorney-client privilege which otherwise may have applied to the Companies' relationship with any attorney ("previous attorneys") who was retained to represent the Companies in connection with various matters related to the subjects listed above. This attorney-client privilege waiver is meant to apply to all communications between the Companies and any attorney representing them at any time; all acts undertaken by others acting on the Companies' attorneys' behalf taken in connection with representing the

Companies related to the subjects listed above; and any and all documents generated through their representation of the Companies that belong to the Companies.

I further state that this waiver does not apply in any respect to any aspect of the Companies' representation by David Botsford of Botsford & Roark LLP, or to any aspect of my personal attorney-client relationship with attorneys who have represented me in the past or who currently represent me in an individual capacity, including, but not limited to, Nanci Clarence, Jonathan Baum and Shaneeda Jaffer of Clarence, Dyer & Cohen, and the Law Offices of E.G. Morris.

4/5/2018
DATED

Carl Ferrer

# Exhibit B

**From:** Hemanshu Nigam [hnigam@sspblue.com] on behalf of Hemanshu Nigam
**Sent:** Thursday, October 14, 2010 6:34 PM
**To:** Jamie Schumacher; Carl Ferrer; Fifer, Samuel; Boyd, Rodney J.; Jim Larkin; Michael Lacey; Steve Suskin; Carl Ferrer
**Cc:** Simrin Hooper
**Subject:** Backpage Recommendations v6
**Attachments:** Backpage Recommendations v6.docx

Here is the one we are using

SSP Blue
Backpage Recommendations
DRAFT
Attorney-Client Privileged

1. Content
    a. Review
        i. Separate content and image review into two distinct processes.
        ii. Begin keyword searches of known bad words specific to Adult and Personals ad sections.
        iii. Instill review of paid ads in Adult and Personal sections; this includes ads that purchase any kind of upsell from Backpage.
            1. Requires extensive technical development.
        iv. Create "Tier 2" Process for all content that is "flagged" by a vendor for additional review and potential deletion.
        v. Finalize policy on determining whether bad content is stripped out of the ad and the ad is allowed to run without the bad content, or if the entire ad is rejected due to bad content.
    b. Limits
        i. Limit the amount of text allowed in an ad, to allow for quicker review. (BP)
        ii. Require selection from list of legal adult services in Adult section postings. (BP)
        iii. Block all html in ads; reinstate for certain trusted users and sites over time. (BP)
        iv. Create a blacklist of links and do not allow any links to these sites.
        v. Raise rates for posting certain ads, thereby reducing volume. (BP)
        vi. Charge for Adult Jobs posting. (BP; already in practice)
        vii. Instill Captcha and re-captcha for violation monitors. (BP)
        viii. Keyword Searches: Remove return of results when certain keywords are used that indicate illegal activity (i.e. rape, incest, Lolita, etc.).
2. Image Review
    a. Separate content and image review into two distinct processes.
    b. Begin image review for all images uploaded to the website in the Adult and Personals sections. This will be a multi-faceted process.
        i. Finalize image policy in terms of what is allowed on the site.
        ii. Hire a vendor to handle image review.
        iii. Integrate technology allowing the vendor access to uploaded images.
        iv. Create an internal "Tier 2" process for all images that are "flagged" by a vendor for additional review and potential deletion.
        v. Employ image hashing to prevent repeat inappropriate image uploads.
    c. Work with NCMEC to build automated mechanism to send possible child exploitation reports to NCMEC from Backpage employees.
3. Reporting
    a. Add the ability for a user to report a specific image to Backpage, as opposed to only being able to report a post (which is how it is now.)

b. Add dropdowns in the current reporting area so users can indicate why they are reporting something (Scam, Copyright, Child Porn, Prostitution, etc.) and fast track higher priority issues.
   c. Establish a goal for how long it takes Backpage to respond to user reports.

4. Forums
   a. Create and enforce guidelines for adult forums prohibiting prostitution, discussion of sexual activity involving minors, and solicitations for rape and physical abuse. This will be a multi-faceted process.
      i. Finalize guidelines in terms of what is prohibited discussion in forums.
      ii. Generate a list of potential keywords that will automatically alert/trigger the team to review a forum. This list may be obtained from Law Enforcement.
      iii. Create an easy way for users to report abuse in these sections.
      iv. Hire an individual to review the user generated reports and any alerts generated by the keyword triggers in forums only.
      v. Educate the super user moderators on the new rules.
5. Age Related Restrictions and Safety
   a. Posting and Viewing Adult and Personal Ads
      i. Require account creation, involving birth date and year entry, zip code, etc. in order to post an ad in Adult and Personals Sections. Users under 18 cannot post in these sections.
      ii. Require either an account log-in that indicates a user is over 18, or birth-date entry indicating the user is over 18, in order to enter into the full view of Adult or Personal Ads.
   b. When an under 18 user creates an account, require the user to read a list of safety tips and refer the user to the Safety section (to be created) on the site. User indicates they have read the information via a check-box.
   c. When a known under 18 user posts ads and pictures, show the under-18 a warning regarding the disclosure of personal information and photos.
6. Safety, Security and Privacy
   a. Create a safety, security and privacy section on the website that is accessible on the bottom of every page.
   b. Content in this section would include information on avoiding and recognizing scams, explaining illegal ads, linking to legitimate NGO's, explaining reporting mechanisms, providing access information to Law Enforcement, FTC tips, and other safety, security and privacy tips.
7. Temporary Suspension of Subsections
   a. Personals
      i. NSA
      ii. Missed Connections
   b. Images in Adult Jobs

SSP Blue
Backpage Recommendations
DRAFT
Attorney-Client Privileged

Confidential BP-AZGJ_01110890

# **Exhibit C**

| PRODBEG | PRODBEG_ATT | PRODEND_ATT | File Create Date | File Mod Date | File Author | Email Author | Occupation of Author | Employer of Author | Email Sent Date | Email To | Email CC | Email BCC | Privilege | Privilege Basis | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BP-PSI-017747 | BP-PSI-017747 | BP-PSI-017749 | 8/12/2013 | 8/12/2013 | | Carl Ferrer <carl.ferrer@backpage.com> | CEO | Backpage | 12/14/2010 | Hemanshu Nigam <hnigam@sspblue.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com> | | Privileged - Redact | AC | Email chain requesting and containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding response to media inquiry. |
| BP-PSI-017750 | BP-PSI-017750 | BP-PSI-017752 | 8/12/2013 | 8/12/2013 | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 12/14/2010 | Carl Ferrer <carl.ferrer@backpage.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | Steve Suskin <steve.suskin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com> | | Privileged - Redact | AC | Email chain requesting and containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding response to media inquiry. |
| BP-PSI-020506 | BP-PSI-020506 | BP-PSI-020508 | 8/12/2013 | 8/12/2013 | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 1/26/2011 | Carl Ferrer <carl.ferrer@backpage.com> | Scott Spear <scott.spear@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Simrin Hooper <shooper@sspblue.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged - Redact | AC | Email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| BP-PSI-020508 | BP-PSI-020506 | BP-PSI-020508 | | | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Attached document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding safety and security policies. |
| BP-PSI-021343 | BP-PSI-021342 | BP-PSI-021344 | | | | Simrin Hooper <shooper@sspblue.com> | | SSP Blue | 4/27/2011 | Carl Ferrer <carl.ferrer@backpage.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com> | Hemanshu Nigam <hnigam@sspblue.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email reflecting legal advice from outside counsel Hemanshu Nigam, Esq. regarding policy changes. |
| BP-PSI-021344 | BP-PSI-021342 | BP-PSI-021344 | 4/26/2011 | 4/26/2011 | Simrin Hooper | | | SSP Blue | | | | | Privileged-Withhold | AC | Attached document reflecting legal advice from outside counsel Hemanshu Nigam, Esq. regarding policy changes. |
| BP-PSI-021591 | BP-PSI-021590 | BP-PSI-021593 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 12/3/2010 | Scott Spear <scott.spear@villagevoicemedia.com> | Carl Ferrer <carl.ferrer@backpage.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged - Redact | AC | Email seeking and providing legal advice from outside counsel Hemanshu Nigam, Esq. regarding non-profit requests. |
| BP-PSI-021640 | BP-PSI-021639 | BP-PSI-021642 | | | | Elissa Blabac <elissa.blabac@villagevoicemedia.com> | Corporate Executive Administrator | Village Voice Media | 11/23/2010 | Carl Ferrer <carl.ferrer@backpage.com>; Scott Spear <scott.spear@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com>; Hemanshu Nigam <hnigam@sspblue.com>; Steve Suskin <steve.suskin@villagevoicemedia.com> | | Privileged - Redact | AC | Email chain seeking and containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding responses to media inquiries. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BP-PSI-021662 | BP-PSI-021661 | BP-PSI-021662 | | | | Carl Ferrer <carl.ferrer@backpage.com> | CEO | Backpage | 11/19/2010 | Hemanshu Nigam <hnigam@sspblue.com> | Scott Spear <scott.spear@villagevoicemedia.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email chain seeking and containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding posting rules. |
| BP-PSI-021664 | BP-PSI-021663 | BP-PSI-021664 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 11/19/2010 | Carl Ferrer <carl.ferrer@backpage.com> | Scott Spear <scott.spear@villagevoicemedia.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email chain seeking and containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding posting rules. |
| BP-PSI-021676 | BP-PSI-021675 | BP-PSI-021676 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 11/18/2010 | Jim Larkin <jim.larkin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com> | Steve Suskin <steve.suskin@villagevoicemedia.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email chain seeking and containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding response to media inquiry. |
| BP-PSI-021682 | BP-PSI-021681 | BP-PSI-021682 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 11/17/2010 | Scott Spear <scott.spear@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding response to advertisements. |
| BP-PSI-022209 | BP-PSI-022208 | BP-PSI-022209 | | | | Steve Suskin <steve.suskin@villagevoicemedia.com> | Attorney | Village Voice Media | 10/13/2010 | Carl Ferrer <carl.ferrer@backpage.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com>; Rodney J. Boyd <rodney.boyd@snrdenton.com>; Samuel Fifer <samuel.fifer@snrdenton.com>; Hemanshu Nigam <hnigam@sspblue.com>; Simrin Hooper <shooper@sspblue.com>; Andy VanDeVoorde <andy.vandevoorde@villagevoicemedia.com>; Elissa Blabac <elissa.blabac@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com> | | | Privileged-Withhold | AC | Email requesting and containing legal advice from inside counsel Steve Suskin, Esq. and outside counsel Hemanshu Nigam, Esq. regarding law enforcement and media issues. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BP-PSI-022916 | BP-PSI-022911 | BP-PSI-022919 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 12/30/2010 | Jim Larkin <jim.larkin@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged - Redact | AC | Email containing legal advice from inside counsel Steve Suskin, Esq. and outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| BP-PSI-022919 | BP-PSI-022911 | BP-PSI-022919 | | | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Attached draft document containing legal advice from inside counsel Steve Suskin, Esq. and outside counsel Hemanshu Nigam, Esq. regarding safety and security policy. |
| BP-PSI-023798 | BP-PSI-023798 | BP-PSI-023801 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 1/24/2011 | Scott Spear <scott.spear@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged - Redact | AC | Email chain containing legal advice from inside counsel Steve Suskin, Esq. and outside counsel Hemanshu Nigam, Esq. regarding response to media inquiry. |
| BP-PSI-023801 | BP-PSI-023798 | BP-PSI-023801 | | | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Attached draft document containing legal advice from inside counsel Steve Suskin, Esq. and outside counsel Hemanshu Nigam, Esq. regarding response to media inquiry. |
| BP-PSI-2_00013268 | BP-PSI-2_00013268 | BP-PSI-2_00013269 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 12/30/2010 | Jim Larkin <jim.larkin@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| BP-PSI-2_00013270 | BP-PSI-2_00013270 | BP-PSI-2_00013274 | | | | Samuel Fifer <samuel.fifer@snrdenton.com> | Attorney | SNR Denton | 10/22/2010 | Hemanshu Nigam <hnigam@sspblue.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com> | Carl Ferrer <carl.ferrer@backpage.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com>; Simrin Hooper <shooper@sspblue.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com> | | Privileged - Redact | AC/WP | Email chain containing legal advice from outside counsel Samuel Fifer, Esq. regarding current or anticipated litigation or government investigation. |
| BP-PSI-2_00013275 | BP-PSI-2_00013275 | BP-PSI-2_00013278 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 12/29/2010 | Jim Larkin <jim.larkin@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged - Redact | AC | Email chain containing legal advice from inside and outside counsel Hemanshu Nigam, Esq.and Steve Suskin, Esq. regarding media inquiry. |
| BP-PSI-2_00013278 | BP-PSI-2_00013275 | BP-PSI-2_00013278 | 12/29/2010 | 12/29/2010 | Jonathan | | | | | | | | Privileged-Withhold | AC | Attached document providing information to facilitate legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BP-PSI-2_00013462 | BP-PSI-2_00013461 | BP-PSI-2_00013462 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 12/8/2010 | Scott Spear <scott.spear@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Hemanshu Nigam <hnigam@sspblue.com> | | Privileged-Withhold | AC | Attached email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| BP-PSI-2_00013464 | BP-PSI-2_00013463 | BP-PSI-2_00013464 | | | | Scott Spear <scott.spear@villagevoicemedia.com> | Scott Spear <scott.spear@villagevoicemedia.com> | Classifieds Director | 12/8/2010 | Hemanshu Nigam <hnigam@sspblue.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | | Privileged-Withhold | AC | Attached email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| BP-PSI-2_00013466 | BP-PSI-2_00013465 | BP-PSI-2_00013466 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 12/8/2010 | Scott Spear <scott.spear@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | | Privileged-Withhold | AC | Attached email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| BP-PSI-2_00013598 | BP-PSI-2_00013597 | BP-PSI-2_00013600 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 10/16/2010 | Scott Spear <scott.spear@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Attached email containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |
| BP-PSI-2_00013599 | BP-PSI-2_00013597 | BP-PSI-2_00013600 | 10/16/2010 | 10/16/2010 | Jamie Schumacher | | President | JMS Public Relations | | | | | Privileged-Withhold | AC | Attached draft document reflecting legal advice from outside counsel Hemanshu Nigam, Esq. regarding press releases. |
| BP-PSI-2_00013600 | BP-PSI-2_00013597 | BP-PSI-2_00013600 | 10/16/2010 | 10/16/2010 | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Attached draft document reflecting legal advice from outside counsel Hemanshu Nigam, Esq. regarding press releases. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BP-PSI-2_00013643 | BP-PSI-2_00013642 | BP-PSI-2_00013643 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 9/28/2010 | Samuel Fifer <sfifer@sonnenschein.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com> | Carl Ferrer <carl.ferrer@backpage.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Rodney J. Boyd <rboyd@sonnenschein.com>; Simrin Hooper <shooper@sspblue.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Attached email chain containing legal advice from outside counsel Samuel Fifer, Esq.and Hemanshu Nigam, Esq. regarding media reports. |
| BP-PSI-2_00013659 | BP-PSI-2_00013658 | BP-PSI-2_00013662 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 1/26/2011 | Carl Ferrer <carl.ferrer@backpage.com> | Scott Spear <scott.spear@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Simrin Hooper <shooper@sspblue.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged - Redact | AC | Attached email chain containing legal advice from inside and outside counsel Hemanshu Nigam, Esq.and Steve Suskin, Esq. regarding media inquiry. |
| BP-PSI-2_00014687 | BP-PSI-2_00014686 | BP-PSI-2_00014689 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 10/18/2010 | Hemanshu Nigam <hnigam@sspblue.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |
| BP-PSI-2_00014688 | BP-PSI-2_00014686 | BP-PSI-2_00014689 | 10/18/2010 | 10/18/2010 | Jamie Schumacher | | President | JMS Public Relations | | | | | Privileged-Withhold | AC | Draft document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |
| BP-PSI-2_00014689 | BP-PSI-2_00014686 | BP-PSI-2_00014689 | 10/18/2010 | 10/18/2010 | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Draft document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |
| BP-PSI-2_00014693 | BP-PSI-2_00014690 | BP-PSI-2_00014693 | 10/17/2010 | 10/17/2010 | Jamie Schumacher | | President | JMS Public Relations | | | | | Privileged-Withhold | AC | Attached draft document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |
| BP-PSI-2_00014695 | BP-PSI-2_00014694 | BP-PSI-2_00014697 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 10/16/2010 | Jim Larkin <jim.larkin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |
| BP-PSI-2_00014696 | BP-PSI-2_00014694 | BP-PSI-2_00014697 | 10/16/2010 | 10/16/2010 | Jamie Schumacher | | President | JMS Public Relations | | | | | Privileged-Withhold | AC | Draft document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |
| BP-PSI-2_00014697 | BP-PSI-2_00014694 | BP-PSI-2_00014697 | 10/15/2010 | 10/16/2010 | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Draft document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BP-PSI-2_00014699 | BP-PSI-2_00014698 | BP-PSI-2_00014700 | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 10/14/2010 | Jamie Schumacher <jschumacher@jmspublicrelations.com>; Carl Ferrer <carl.ferrer@backpage.com>; Samuel Fifer <samuel.fifer@snrdenton.com>; Rodney J. Boyd <rboyd@sonnenschein.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com> | Simrin Hooper <shooper@sspblue.com> | | Privileged-Withhold | AC | Email containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding ad moderation. |
| BP-PSI-2_00014700 | BP-PSI-2_00014698 | BP-PSI-2_00014700 | 10/14/2010 | 10/14/2010 | Jonathan | | | | | | | | Privileged-Withhold | AC | Document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding ad moderation. |
| BP-PSI-2_00014703 | BP-PSI-2_00014701 | BP-PSI-2_00014703 | 10/14/2010 | 10/14/2010 | Jonathan | | | | | | | | Privileged-Withhold | AC | Document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding ad moderation. |
| BP-PSI-2_00015515 | BP-PSI-2_00015514 | BP-PSI-2_00015516 | | | | Jamie Schumacher <jschumacher@jmspublicrelations.com> | President | JMS Public Relations | 1/24/2011 | Scott Spear <scott.spear@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Steve Suskin <steve.suskin@villagevoicemedia.com> | Hemanshu Nigam <hnigam@sspblue.com>; Simrin Hooper <shooper@sspblue.com> | | Privileged-Withhold | AC | Attached email reflecting legal advice from inside counsel Steve Suskin, Esq. regarding media inquiry. |
| BP-PSI-2_00015516 | BP-PSI-2_00015514 | BP-PSI-2_00015516 | | | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Attached document reflecting legal advice from inside counsel Steve Suskin, Esq. regarding media inquiry. |
| BP-PSI-2_00015518 | BP-PSI-2_00015517 | BP-PSI-2_00015519 | | | | Jamie Schumacher <jschumacher@jmspublicrelations.com> | President | JMS Public Relations | 1/14/2011 | Hemanshu Nigam <hnigam@sspblue.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Scott Spear <scott.spear@villagevoicemedia.com> | | | Privileged-Withhold | AC | Attached email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| PSI-PrivWH-0964 | | | 8/12/2013 | 8/12/2013 | | Simrin Hooper <shooper@sspblue.com> | | SSP Blue | 12/20/2010 | Scott Spear <scott.spear@villagevoicemedia.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com>; Hemanshu Nigam <hnigam@sspblue.com>; Carl Ferrer <carl.ferrer@backpage.com> | | | Privileged-Withhold | AC | Email reflecting legal advice from outside counsel regarding proposed policy changes. |
| PSI-PrivWH-0965 | | | 10/24/2010 | 12/20/2010 | Simrin Hooper | | | SSP Blue | | | | | Privileged-Withhold | AC | Attached spreadsheet reflecting legal advice from inside and outside counsel regarding proposed policy changes. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSI-PrivWH-0999 | | | 8/12/2013 | 8/12/2013 | | Jamie Schumacher <jschumacher@jmspublicrelations.com> | President | JMS Public Relations | 1/24/2011 | Scott Spear <scott.spear@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Steve Suskin <steve.suskin@villagevoicemedia.com> | Hemanshu Nigam <hnigam@sspblue.com>; Simrin Hooper <shooper@sspblue.com> | | Privileged-Withhold | AC | Email reflecting legal advice from inside and outside counsel Steve Suskin, Esq. and Hemanshu Nigam, Esq. regarding media inquiry. |
| PSI-PrivWH-1000 | | | | | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Attached document providing legal advice from outside counsel Hemanshu Nigam, Esq. regarding safety and security policies. |
| PSI-PrivWH-1005 | | | 8/12/2013 | 8/12/2013 | | Carl Ferrer <carl.ferrer@backpage.com> | CEO | Backpage | 1/26/2011 | Hemanshu Nigam <hnigam@sspblue.com> | Scott Spear <scott.spear@villagevoicemedia.com>; Steve Suskin <steve.suskin@villagevoicemedia.com>; Simrin Hooper <shooper@sspblue.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| PSI-PrivWH-1006 | | | 8/2/2013 | 8/2/2013 | | Marie Slayton <mslayton@sspblue.com> | Exact occupation unknown, worked with attorney Hemanshu Nigam | SSP Blue | 6/21/2011 | Andrew Padilla <andrew.padilla@backpage.com>; Carl Ferrer <carl.ferrer@backpage.com> | Hemanshu Nigam <hnigam@sspblue.com>; Simrin Hooper <shooper@sspblue.com> | | Privileged-Withhold | AC | Email reflecting legal advice and prepared at the direction of outside counsel Hemanshu Nigam, Esq. regarding ad moderation. |
| PSI-PrivWH-1007 | | | 6/21/2011 | 6/21/2011 | Marie Slayton | | Exact occupation unknown, worked with attorney Hemanshu Nigam | SSP Blue | | | | | Privileged-Withhold | AC | Attached report reflecting legal advice and prepared at the direction of outside counsel Hemanshu Nigam, Esq. regarding ad moderation. |
| PSI-PrivWH-1008 | | | 6/21/2011 | 6/21/2011 | Marie Slayton | | Exact occupation unknown, worked with attorney Hemanshu Nigam | SSP Blue | | | | | Privileged-Withhold | AC | Attached report reflecting legal advice and prepared at the direction of outside counsel Hemanshu Nigam, Esq. regarding ad moderation. |
| PSI-PrivWH-1178 | | | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 1/28/2011 | Jim Larkin <jim.larkin@villagevoicemedia.com> | Scott Spear <scott.spear@villagevoicemedia.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Email chain reflecting requests for and provision of legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| PSI-PrivWH-1179 | | | | | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Attached document reflecting legal advice from outside counsel, Hemanshu Nigam, Esq. regarding policies and procedures. |
| PSI-PrivWH-1274 | | | 10/17/2010 | 10/17/2010 | Jamie Schumacher | | President | JMS Public Relations | | | | | Privileged-Withhold | AC | Attached draft document reflecting legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |
| PSI-PrivWH-1275 | | | 10/17/2010 | 10/17/2010 | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Attached draft document reflecting legal advice from outside counsel Hemanshu Nigam, Esq. regarding press release. |
| PSI-PrivWH-1276 | | | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 10/16/2010 | Carl Ferrer <carl.ferrer@backpage.com>; Scott Spear <scott.spear@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com>; | | Privileged-Withhold | AC | Email containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| PSI-PrivWH-1277 | | | 10/16/2010 | 10/16/2010 | Hemanshu Nigam | | Attorney | SSP Blue | | | | | Privileged-Withhold | AC | Attached draft document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSI-PrivWH-1278 | | | 10/16/2010 | 10/16/2010 | Jamie Schumacher | | President | JMS Public Relations | | | | | Privileged-Withhold | AC | Attached raft document containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| PSI-PrivWH-1298 | | | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 12/14/2010 | Carl Ferrer <carl.ferrer@backpage.com>; Jamie Schumacher <jschumacher@jmspublicrelations.com> | Steve Suskin <steve.suskin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding media inquiry. |
| PSI-PrivWH-1529 | | | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 10/18/2010 | Scott Spear <scott.spear@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Attached email containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding ad posting rules. |
| PSI-PrivWH-1529 | | | | | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 10/18/2010 | Scott Spear <scott.spear@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com> | | Privileged-Withhold | AC | Attached email containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding ad posting rules. |
| PSI-PrivWH-1530 | | | 10/18/2010 | 10/18/2010 | Jamie Schumacher | | President | JMS Public Relations | | | | | Privileged-Withhold | AC | Attached document reflecting legal advice from outside counsel Hemanshu Nigam, Esq. regarding ad posting rules. |
| PSI-PrivWH-1530 | | | 10/18/2010 | 10/18/2010 | Jamie Schumacher | | President | JMS Public Relations | | | | | Privileged-Withhold | AC | Attached document reflecting legal advice from outside counsel Hemanshu Nigam, Esq. regarding ad posting rules. |
| PSI-PrivWH-1571 | | | | 2/14/2011 | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 2/14/2011 | Carl Ferrer <carl.ferrer@backpage.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Simrin Hooper <shooper@sspblue.com>; Steve Suskin <steve.suskin@villagevoicemedia.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding cooperation with law enforcement. |
| PSI-PrivWH-1571 | | | | 2/14/2011 | | Hemanshu Nigam <hnigam@sspblue.com> | Attorney | SSP Blue | 2/14/2011 | Carl Ferrer <carl.ferrer@backpage.com> | Jamie Schumacher <jschumacher@jmspublicrelations.com>; Scott Spear <scott.spear@villagevoicemedia.com>; Simrin Hooper <shooper@sspblue.com>; Steve Suskin <steve.suskin@villagevoicemedia.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Hemanshu Nigam, Esq. regarding cooperation with law enforcement. |

# **Exhibit D**

**From:** Fifer, Samuel [samuel.fifer@snrdenton.com] on behalf of Fifer, Samuel
**Sent:** Thursday, April 21, 2011 8:53 PM
**To:** Carl Ferrer
**Cc:** Dennis Culloton; Edward E. McNally; Jim Larkin; Michael Lacey
**Subject:** RE: Chicago PD issues re: blog: Folks Alert

Thanks, Carl. Very helpful to know.

Samuel Fifer
SNR Denton US LLP
D +1 312 876 3114
M +1 847 644 1828
F +1 312 876 7934
samuel.fifer@snrdenton.com
snrdenton.com

233 South Wacker Drive
Suite 7800
Chicago, IL 60606-6306

SNR Denton is the collective trade name for an international legal practice. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see snrdenton.com for Legal Notices, including IRS Circular 230 Notice.

**From:** Carl Ferrer [mailto:Carl.Ferrer@backpage.com]
**Sent:** Thursday, April 21, 2011 2:29 PM
**To:** Fifer, Samuel
**Cc:** Dennis Culloton; Edward E. McNally; Jim Larkin; Michael Lacey
**Subject:** Re: Chicago PD issues re: blog: Folks Alert

Commission Junction has been notified. Banning affiliates for rogue marketing is common practice.
My hope it happens quick.

FolksAlert.com is a 3rd party, my only practical option is to insure commission junction does not compensate them in anyway.
I tried to look up the owners of the site for direct contact but the ownership is hidden.

If this website is connected to Gotfolks.com, I do not want to engage them direct.
The owner is trouble and has retaliated we banned their URL.
http://en.wikipedia.org/wiki/Rayon_Payne
http://www.wftv.com/news/7517017/detail.html

carl

On Apr 21, 2011, at 10:33 AM, Fifer, Samuel wrote:

Thanks, Carl. If there is any way to push this, can we get them to take it down sooner than 7 days?

SAM

Samuel Fifer
SNR Denton US LLP
D +1 312 876 3114
M +1 847 644 1828
F +1 312 876 7934
samuel.fifer@snrdenton.com
snrdenton.com

233 South Wacker Drive
Suite 7800
Chicago, IL 60606-6306

SNR Denton is the collective trade name for an international legal practice. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see snrdenton.com for Legal Notices, including IRS Circular 230 Notice.

**From:** Carl Ferrer [mailto:Carl.Ferrer@backpage.com]
**Sent:** Thursday, April 21, 2011 12:30 PM
**To:** Dennis Culloton
**Cc:** Fifer, Samuel; Edward E. McNally; Jim Larkin; Michael Lacey
**Subject:** Chicago PD issues re: blog: Folks Alert

Thank you for bringing this to my attention. You always want to alert me direct on issues like these.

Folksalert.com seems closely affiliated to Gotfolks.com, a very bad site we banned over a year ago. We agree a backpage banner ad on this site is unacceptable.

I did some digging and discovered this:
- Backpage did NOT place the banner ad on Folksalert.com.
- We had no knowledge of this banner ad on Folksalert.com till today.
- The banner ad was placed by a Commission Junction affiliate.

We will contact Commission Junction and tell them to ban this affiliate.
Our expectations are for this banner ad to be removed from the site in the next 7 days.

- carl

---------- Forwarded message ----------
From: "Edward E. McNally" <EMcNally@kasowitz.com>
To: <Carl.Ferrer@backpage.com>, <jim.larkin@villagevoicemedia.com>, <Michael.Lacey@VillageVoiceMedia.com>
Date: Thu, 21 Apr 2011 12:55:49 -0400
Subject: Chicago PD issues re: blog: Folks Alert

Carl, the below issue spot from Culloton and his network in Chicago.

Unless you have a different view, we'll leave addressing this in your good hands --

(Pls keep us posted on any steps/updates.)

Thanks Carl --

-- McNally

Edward E. McNally
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
Tel. (212) 506-1708
Fax (212) 835-5279
EMcNally@kasowitz.com

---

**From**: Dennis Culloton <dc@cullotonstrategies.com>
**To**: Fifer, Samuel <samuel.fifer@snrdenton.com>; Edward E. McNally
**Sent**: Thu Apr 21 12:16:28 2011
**Subject**: FW: Folks Alert!!

We've confirmed the Backpage ad on a site Chicago police believe is a pimp blog. This is a BIG problem that we need to resolve before we meet with the Sheriff Dart or any other law enforcement agency. See below. I just saw the banner ad.

 Please support the Bear Necessities Pediatric Cancer Foundation, www.bearnecessities.org

**Dennis Culloton**

CEO and President

**Culloton Strategies**

Chicago Office 312.228.4780

Mobile 630.699.8811

Naperville Office 630.544.3387

dc@cullotonstrategies.com

http://www.cullotonstrategies.com

---

**From:** Dave Bayless [mailto:baylessdave@gmail.com]
**Sent:** Thursday, April 21, 2011 11:09 AM
**To:** Dennis Culloton; Tracey Mendrek
**Subject:** Folks Alert!!

Website discussed where BP advertises is www.folksalert.com. At first glance, it's hard to figure out what the site is, who its intended audience is, and what purpose it serves. My contact said a prostitute told him pimps use it as a resource to identify trends, hotspots and stay current on laws and law enforcement activity. The BP ad is right up top and has appeared each of the several times that I've hit the site.

I guess the ads themselves are not as important as the point that law enforcement may perceive BP to be playing to the pimp audience. BP's presence on these types of sites is the first thing my source pointed out when I mentioned BP. Granted it's one cop's perspective, but my guess he's not the only one that's aware of the site and BP's ads on the site. Will continue to explore and see what's what on this front.

--

**Dave Bayless**

**Principal**

**Bayless Communications LLC**

**312.533.0059**

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.

7

Highly Confidential

BP-AZGJ_01110853

# **Exhibit E**

| PRODBEG | PRODBEG_ATT | PRODEND_ATT | File Create Date | File Mod Date | File Author | Email Author | Occupation of Author | Employer of Author | Email Sent Date | Email To | Email CC | Email BCC | Privilege | Privilege Basis | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BACKPAGE00036958 | BACKPAGE00036959 | BACKPAGE00036957 | | | | Dennis Culloton <dc@cullotonstrategies.com> | President & CEO | Culloton Strategies | 5/2/2011 | Michael Lacey <michael.lacey@villagevoicemedia.com>; Edward E. McNally <emcnally@kasowitz.com>; Jim Larkin <jim.larkin@villagevoicemedia.com> | Carl Ferrer <carl.ferrer@backpage.com>; Shalini K. Rajoo <srajoo@kasowitz.com> | | Privileged-Withhold | AC | Attached email chain providing information to facilitate legal advice from outside counsel Edward E. McNally, Esq.and Shalini K. Rajoo, Esq. regarding media inquiry. |
| BP-PSI-020518 | BP-PSI-020518 | BP-PSI-020521 | 8/12/2013 | 8/12/2013 | | Carl Ferrer <carl.ferrer@backpage.com> | CEO | Backpage | 4/13/2011 | Dennis Culloton <dc@cullotonstrategies.com> | Steve Suskin <steve.suskin@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com> | | Privileged - Redact | AC | Email reflecting legal advice from inside counsel Steve Suskin, Esq. regarding response to media inquiry. |
| BP-PSI-022823 | BP-PSI-022823 | BP-PSI-022825 | | | | Dennis Culloton <dc@cullotonstrategies.com> | | | 8/4/2011 | Carl Ferrer <carl.ferrer@backpage.com> | Tracey Mendrek <tm@cullotonstrategies.com>; Jodie Shpritz <js@cullotonstrategies.com>; David Bayless <baylessdave@gmail.com> | | Privileged-Withhold | AC | Email reflecting legal advice from outside counsel Edward E. McNally, Esq. and Samuel Fifer, Esq. regarding response to law enforcement inquiry. |
| BP-PSI-022888 | BP-PSI-022888 | BP-PSI-022889 | | | | Tracey Mendrek <tm@cullotonstrategies.com> | Executive Vice President | Culloton Strategies | 7/28/2011 | Samuel Fifer <samuel.fifer@snrdenton.com>; Edward E. McNally <emcnally@kasowitz.com>; Dennis Culloton <dc@cullotonstrategies.com>; Carl Ferrer <carl.ferrer@backpage.com> | | | Privileged - Redact | AC | Email reflecting legal advice from outside counsel, Edward E. McNally, Esq. and Samuel Fifer, Esq. regarding response to law enforcement inquiry. |
| BP-PSI-022889 | BP-PSI-022888 | BP-PSI-022889 | 7/28/2011 | 7/28/2011 | Tracey Mendrek | | | Culloton Strategies | | | | | Privileged-Withhold | AC | Attached draft letter reflecting legal advice from outside counsel Edward E. McNally, Esq. and Samuel Fifer, Esq. regarding response to law enforcement inquiry. |
| BP-PSI-022995 | BP-PSI-022994 | BP-PSI-022996 | | | | Carl Ferrer <carl.ferrer@backpage.com> | CEO | Backpage | 4/4/2011 | Tracey Mendrek <tm@cullotonstrategies.com> | David Bayless <dbayless@cullotonstrategies.com>; Dennis Culloton <dc@cullotonstrategies.com>; emcnally@kasowitz.com | | Privileged - Redact | AC | Email reflecting legal advice from outside counsel Edward E. McNally, Esq. regarding law enforcement inquiry. |
| BP-PSI-023017 | BP-PSI-023017 | BP-PSI-023019 | | | | Carl Ferrer <carl.ferrer@backpage.com> | CEO | Backpage | 6/24/2011 | Dennis Culloton <dc@cullotonstrategies.com> | Edward E. McNally <emcnally@kasowitz.com>; Samuel Fifer <samuel.fifer@snrdenton.com>; Tracey Mendrek <tm@cullotonstrategies.com> | | Privileged - Redact | AC | Email providing information to facilitate legal advice from outside counsel Edward E. McNally, Esq. and Samuel Fifer, Esq. regarding response to law enforcement inquiry. |
| BP-PSI-023511 | BP-PSI-023511 | BP-PSI-023513 | | | | Carl Ferrer <carl.ferrer@backpage.com> | CEO | Backpage | 4/13/2011 | Dennis Culloton <dc@cullotonstrategies.com> | Steve Suskin <steve.suskin@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Scott Spear <scott.spear@villagevoicemedia.com> | | Privileged - Redact | AC | Email seeking legal advice from inside counsel Steve Suskin, Esq. regarding response to media inquiry. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BP-PSI-027865 | BP-PSI-027865 | BP-PSI-027867 | 8/12/2013 | 8/12/2013 | | Carl Ferrer <carl.ferrer@backpage.com> | CEO | Backpage | 5/27/2011 | Jim Larkin <jim.larkin@villagevoicemedia.com> | Dennis Culloton <dc@cullotonstrategies.com>; Edward E. McNally <emcnally@kasowitz.com>; Samuel Fifer <sfifer@sonnenschein.com>;Michael Lacey <michael.lacey@villagevoicemedia.com> | | Privileged - Redact | AC | Email chain containing legal advice from outside counsel Samuel Fifer, Esq. regarding law enforcement issue. |
| BP-PSI-2_00013010 | BP-PSI-2_00013010 | BP-PSI-2_00013015 | 8/12/2013 | 8/12/2013 | | Jim Larkin <jim.larkin@villagevoicemedia.com> | Former VVM Owner | Village Voice Media | 7/8/2011 | Dennis Culloton <dc@cullotonstrategies.com> | Carl Ferrer <carl.ferrer@backpage.com>; Tracey Mendrek <tm@cullotonstrategies.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | | Privileged - Redact | AC | Email chain providing information to facilitate legal advice from inside counsel Steve Suskin, Esq. regarding media inquiry. |
| BP-PSI-2_00013601 | BP-PSI-2_00013601 | BP-PSI-2_00013603 | | | | Tracey Mendrek <tm@cullotonstrategies.com> | Executive Vice President | Culloton Strategies | 7/29/2011 | Carl Ferrer <carl.ferrer@backpage.com>; Edward E. McNally <emcnally@kasowitz.com>; Dennis Culloton <dc@cullotonstrategies.com> | | | Privileged - Redact | AC | Email requesting legal advice from outside counsel Edward E. McNally, Esq. regarding media inquiry. |
| BP-PSI-2_00013826 | BP-PSI-2_00013825 | BP-PSI-2_00013826 | | | | Edward E. McNally <emcnally@kasowitz.com> | Attorney | Kasowitz Benson | 5/1/2011 | Samuel Fifer <samuel.fifer@snrdenton.com>; Carl Ferrer <carl.ferrer@backpage.com> | Dennis Culloton <dc@cullotonstrategies.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | | Privileged-Withhold | AC | Attached email chain containing legal advice from outside counsel Samuel Fifer, Esq.and Edward E. McNally, Esq. regarding media inquiry. |
| BP-PSI-2_00013853 | BP-PSI-2_00013852 | BP-PSI-2_00013853 | | | | Samuel Fifer <samuel.fifer@snrdenton.com> | Attorney | SNR Denton | 4/21/2011 | Carl Ferrer <carl.ferrer@backpage.com> | Dennis Culloton <dc@cullotonstrategies.com>; Edward E. McNally <emcnally@kasowitz.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | | Privileged-Withhold | AC | Attached email chain containing legal advice from outside counsel Edward E. McNally, Esq. regarding ad moderation. |
| BP-PSI-2_00013939 | BP-PSI-2_00013938 | BP-PSI-2_00013939 | | | | Jim Larkin <jim.larkin@villagevoicemedia.com> | Former VVM Owner | Village Voice Media | 4/8/2011 | Dennis Culloton <dc@cullotonstrategies.com>; Carl Ferrer <carl.ferrer@backpage.com> | Michael Lacey <michael.lacey@villagevoicemedia.com>; Samuel Fifer <samuel.fifer@snrdenton.com> | | Privileged-Withhold | AC/WP | Attached email chain containing legal advice from outside counsel Samuel Fifer, Esq. regarding cooperation with law enforcement. |
| PSI-PrivWH-1035 | | | 8/12/2013 | 8/12/2013 | | Edward E. McNally <emcnally@kasowitz.com> | Attorney | Kasowitz Benson | 8/27/2011 | Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | Carl Ferrer <carl.ferrer@backpage.com> Dennis Culloton <dc@cullotonstrategies.com>; Tracey Mendrek <tm@cullotonstrategies.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Edward E. McNally, Esq. regarding clergy inquiry. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSI-PrivWH-1206 | | | | | | Dennis Culloton <dc@cullotonstrategies.com> | | | 5/27/2011 | Carl Ferrer <carl.ferrer@backpage.com>; Edward E. McNally <emcnally@kasowitz.com>; Samuel Fifer <sfifer@srdenton.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com> | David Bayless <dbayless@cullotonstrategies.com>; Jodie Shpritz <js@cullotonstrategies.com>; "Lissa Druss christman"; Tracey Mendrek <tm@cullotonstrategies.com>; | | Privileged-Withhold | AC | Email requesting legal advice from outside counsel Samuel Fifer, Esq.and Edward E. McNally, Esq. regarding media inquiry. |
| PSI-PrivWH-1207 | | | 5/12/2011 | 5/27/2011 | Jodie Shpritz | | Vice President of Media Relations and Branding | Culloton Strategies | | | | | Privileged-Withhold | AC | Attached draft document providing information to facilitate legal advice from outside counsel Samuel Fifer, Esq.and Edward E. McNally, Esq. regarding media inquiry. |
| PSI-PrivWH-1214 | | | | | | Tracey Mendrek <tm@cullotonstrategies.com> | Executive Vice President | Culloton Strategies | 7/1/2011 | Edward E. McNally <emcnally@kasowitz.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com> | Carl Ferrer <carl.ferrer@backpage.com>; Dennis Culloton <dc@cullotonstrategies.com>; Jodie Shpritz <js@cullotonstrategies.com> | | Privileged-Withhold | AC | Email requesting legal advice from outside counsel, Edward E. McNally, Esq. regarding communication with the press. |
| PSI-PrivWH-1215 | | | 7/1/2011 | 7/1/2011 | Dave Bayless | | | Culloton Strategies | | | | | Privileged-Withhold | AC | Attached draft document providing information to facilitate legal advice from outside counsel Edward E. McNally, Esq. regarding communication with the press. |
| PSI-PrivWH-1374 | | | | | | Samuel Fifer <samuel.fifer@snrdenton.com> | Attorney | SNR Denton | 7/8/2011 | Dennis Culloton <dc@cullotonstrategies.com>; Carl Ferrer <carl.ferrer@backpage.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Edward E. McNally <emcnally@kasowitz.com> | Tracey Mendrek <tm@cullotonstrategies.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Samuel Fifer, Esq. regarding media inquiry. |
| PSI-PrivWH-1375 | | | | | | Dennis Culloton <dc@cullotonstrategies.com> | | | 7/8/2011 | Carl Ferrer <carl.ferrer@backpage.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Edward E. McNally <emcnally@kasowitz.com>; Samuel Fifer <samuel.fifer@snrdenton.com> | Tracey Mendrek <tm@cullotonstrategies.com> | | Privileged-Withhold | AC | Email chain requesting legal advice from outside counsel Edward E. McNally, Esq. regarding media inquiry. |
| PSI-PrivWH-1376 | | | | | | Dennis Culloton <dc@cullotonstrategies.com> | | | 7/7/2011 | Carl Ferrer <carl.ferrer@backpage.com> | | | Privileged-Withhold | AC | Email chain reflecting legal advice from inside counsel Steve Suskin, Esq. regarding media inquiry. |
| PSI-PrivWH-1377 | | | | | | Samuel Fifer <samuel.fifer@snrdenton.com> | Attorney | SNR Denton | 6/23/2011 | Edward E. McNally <emcnally@kasowitz.com>; Carl Ferrer <carl.ferrer@backpage.com>; Dennis Culloton <dc@cullotonstrategies.com> | Fabiola Estrada <fe@cullotonstrategies.com>; Tracey Mendrek <tm@cullotonstrategies.com> | | Privileged-Withhold | AC | Email containing legal advice from outside counsel Samuel Fifer, Esq. regarding media inquiry. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSI-PrivWH-1413 | | | | | | Samuel Fifer <samuel.fifer@snrdenton.com> | Attorney | SNR Denton | 9/1/2011 | Michael Lacey <michael.lacey@villagevoicemedia.com>; Tracey Mendrek <tm@cullotonstrategies.com> | Jim Larkin <jim.larkin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Edward E. McNally <emcnally@kasowitz.com>; Dennis Culloton <dc@cullotonstrategies.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Samuel Fifer, Esq. regarding government inquiry. |
| PSI-PrivWH-1414 | | | | | | Samuel Fifer <samuel.fifer@snrdenton.com> | Attorney | SNR Denton | 6/22/2011 | Dennis Culloton <dc@cullotonstrategies.com>; Carl Ferrer <carl.ferrer@backpage.com> | Edward E. McNally <emcnally@kasowitz.com>; Fabiola Estrada <fe@cullotonstrategies.com>; Tracey Mendrek <tm@cullotonstrategies.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Samuel Fifer, Esq.and Edward E. McNally, Esq. regarding cooperation with law enforcement. |
| PSI-PrivWH-1417 | | | | | | Michael Lacey <michael.lacey@villagevoicemedia.com> | Executive Editor | Village Voice Media | 9/1/2011 | Tracey Mendrek <tm@cullotonstrategies.com> | Jim Larkin <jim.larkin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Edward E. McNally <emcnally@kasowitz.com>; Samuel Fifer <samuel.fifer@snrdenton.com>; Dennis Culloton <dc@cullotonstrategies.com> | | Privileged-Withhold | AC | Email chain preparing information for or at the direction of counsel to facilitate legal advice from outside counsel Samuel Fifer, Esq. regarding cooperation with law enforcement. |
| PSI-PrivWH-1418 | | | | | | Edward E. McNally <emcnally@kasowitz.com> | Attorney | Kasowitz Benson | 6/2/2011 | Dennis Culloton <dc@cullotonstrategies.com>; Samuel Fifer <samuel.fifer@snrdenton.com> | Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com> | | Privileged-Withhold | AC | Email containing legal advice from outside counsel Edward E. McNally, Esq. regarding presentation to government. |
| PSI-PrivWH-1419 | | | | | mac | | | | | | | | Privileged-Withhold | AC | Attached draft presentation reflecting legal advice from outside counsel Edward E. McNally, Esq. regarding investigative tools for law enforcement. |
| PSI-PrivWH-1420 | | | | | | Tracey Mendrek <tm@cullotonstrategies.com> | Executive Vice President | Culloton Strategies | 9/2/2011 | Michael Lacey <michael.lacey@villagevoicemedia.com> | Jim Larkin <jim.larkin@villagevoicemedia.com>; Carl Ferrer <carl.ferrer@backpage.com>; Edward E. McNally <emcnally@kasowitz.com>; Samuel Fifer <samuel.fifer@snrdenton.com>; Dennis Culloton <dc@cullotonstrategies.com> | | Privileged-Withhold | AC | Email chain providing information to facilitate legal advice from outside counsel Edward E. McNally, Esq. and Samuel Fifer, Esq. regarding government inquiry. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSI-PrivWH-1428 | | | | | | Tracey Mendrek <tm@cullotonstrategies.com> | Executive Vice President | Culloton Strategies | 7/1/2011 | Michael Lacey <michael.lacey@villagevoicemedia.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; emcnally@kasowitz.com | Carl Ferrer <carl.ferrer@backpage.com> Dennis Culloton <dc@cullotonstrategies.com>; Jodie Shpritz <js@cullotonstrategies.com> | | Privileged-Withhold | AC | Email reflecting legal advice from outside counsel Edward E. McNally, Esq. regarding media inquiry. |
| PSI-PrivWH-1429 | | | 7/1/2011 | 7/1/2011 | Dave Bayless | | | Culloton Strategies | | | | | Privileged-Withhold | AC | Attached draft document reflecting request for legal advice from outside counsel Edward E. McNally,, Esq. regarding media inquiry. |
| PSI-PrivWH-1441 | | | | | | Samuel Fifer <samuel.fifer@snrdenton.com> | Attorney | SNR Denton | 7/23/2011 | Dennis Culloton <dc@cullotonstrategies.com>; Tracey Mendrek <tm@cullotonstrategies.com> | Edward E. McNally <emcnally@kasowitz.com>; Carl Ferrer <carl.ferrer@backpage.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Samuel Fifer, Esq. regarding law enforcement inquiry. |
| PSI-PrivWH-1442 | | | | | | Carl Ferrer <carl.ferrer@backpage.com> | CEO | Backpage | 7/22/2011 | Jim Larkin <jim.larkin@villagevoicemedia.com>; Sam Fifer <samuel.fifer@snrdenton.com>; Edward E. McNally <emcnally@kasowitz.com>; Dennis Culloton <dc@cullotonstrategies.com> | | | Privileged-Withhold | AC | Email chain requesting legal advice from outside counsel Samuel Fifer, Esq. and Edward E. McNally, Esq. regarding discussion with non-profit. |
| PSI-PrivWH-1443 | | | 7/23/2011 | 7/23/2011 | | | | | | | | | Privileged-Withhold | AC | Attached draft document reflecting legal advice from outside counsel Samuel Fifer, Esq. regarding law enforcement. |
| PSI-PrivWH-1480 | | | | | | Dennis Culloton <dc@cullotonstrategies.com> | | | 5/2/2011 | Michael Lacey <michael.lacey@villagevoicemedia.com>; Edward E. McNally <emcnally@kasowitz.com>; Jim Larkin <jim.larkin@villagevoicemedia.com> | Carl Ferrer <carl.ferrer@backpage.com>; Shalini K. Rajoo <srajoo@kasowitz.com> | | Privileged-Withhold | AC | Attached email requesting legal advice from outside counsel Edward E. McNally, Esq. and Shalini K. Rajoo, Esq. regarding media inquiry. |
| PSI-PrivWH-1481 | | | 5/2/2011 | 5/2/2011 | Owner | | | | | | | | Privileged-Withhold | AC | Attached document providing information to facilitate legal advice from outside counsel Edward E. McNally, Esq. and Shalini K. Rajoo, Esq. regarding media inquiry. |
| PSI-PrivWH-1483 | | | | | | Edward E. McNally <emcnally@kasowitz.com> | Attorney | Kasowitz Benson | 3/28/2011 | Carl Ferrer <carl.ferrer@backpage.com> Dennis Culloton <dc@cullotonstrategies.com> | | | Privileged-Withhold | AC | Attached email containing legal advice from outside counsel Edward E. McNally, Esq. regarding internal policies and procedures. |
| PSI-PrivWH-1484 | | | 2/14/2011 | 3/28/2011 | | | | | | | | | Privileged-Withhold | AC | Attached draft presentation containing legal advice from outside counsel Edward E. McNally, Esq. regarding internal policies and procedures. |
| PSI-PrivWH-1485 | | | | | | | | | | | | | Privileged-Withhold | AC | Attached document reflecting legal advice from outside counsel Edward E. McNally, Esq. regarding internal policies and procedures. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSI-PrivWH-1610 | | | 8/12/2013 | 8/12/2013 | | Samuel Fifer <samuel.fifer@snrdenton.com> | Attorney | SNR Denton | 7/9/2011 | Dennis Culloton <dc@cullotonstrategies.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Edward E. McNally <emcnally@kasowitz.com>; Carl Ferrer <carl.ferrer@backpage.com> | Tracey Mendrek <tm@cullotonstrategies.com>; David Bayless <dbayless@cullotonstrategies.com>; Jodie Shpritz <js@cullotonstrategies.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Samuel Fifer, Esq. regarding cooperation with law enforcement. |
| PSI-PrivWH-1610 | | | 8/12/2013 | 8/12/2013 | | Samuel Fifer <samuel.fifer@snrdenton.com> | Attorney | SNR Denton | 7/9/2011 | Dennis Culloton <dc@cullotonstrategies.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Michael Lacey <michael.lacey@villagevoicemedia.com>; Edward E. McNally <emcnally@kasowitz.com>; Carl Ferrer <carl.ferrer@backpage.com> | Tracey Mendrek <tm@cullotonstrategies.com>; David Bayless <dbayless@cullotonstrategies.com>; Jodie Shpritz <js@cullotonstrategies.com> | | Privileged-Withhold | AC | Email chain containing legal advice from outside counsel Samuel Fifer, Esq. regarding cooperation with law enforcement. |
| PSI-PrivWH-1614 | | | | | | Mike Seely <mseely@seattleweekly.com> | Editor-In-Chief | Seattle Weekly | 8/10/2011 | Dennis Culloton <dc@cullotonstrategies.com> | Tracey Mendrek <tm@cullotonstrategies.com>; Carl Ferrer <carl.ferrer@backpage.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Edward E. McNally <emcnally@kasowitz.com> | | Privileged-Withhold | AC | Email chain providing information to facilitate legal advice from outside counsel Edward E. McNally, Esq.and Don Bennett Moon, Esq. regarding media inquiry. |
| PSI-PrivWH-1614 | | | | | | Mike Seely <mseely@seattleweekly.com> | Editor-In-Chief | Seattle Weekly | 8/10/2011 | Dennis Culloton <dc@cullotonstrategies.com> | Tracey Mendrek <tm@cullotonstrategies.com>; Carl Ferrer <carl.ferrer@backpage.com>; Jim Larkin <jim.larkin@villagevoicemedia.com>; Edward E. McNally <emcnally@kasowitz.com> | | Privileged-Withhold | AC | Email chain providing information to facilitate legal advice from outside counsel Edward E. McNally, Esq.and Don Bennett Moon, Esq. regarding media inquiry. |

# **Exhibit F**

**From:** Simrin Hooper [shooper@sspblue.com] on behalf of Simrin Hooper
**Sent:** Wednesday, April 27, 2011 5:17 PM
**To:** Carl Ferrer; Jim Larkin; Scott Spear
**Cc:** Hemanshu Nigam; Jamie Schumacher
**Subject:** BP NCMEC-Polaris Action Items
**Attachments:** Backpage NCMEC-Polaris Action Items v1.xlsx

Hi there,

Attached is a tracking document for the agreed upon changes and initiatives based on the meetings with NCMEC and Polaris, as well as our subsequent call. I'll coordinate with Carl on the details.

Please let me know if you have any questions!

Thanks,
Simrin

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | Area | Issue | Change | Owner | Date |
| 2 | NCMEC Reports | Appearance that reports are coming from users instead of moderators | Train moderators that while they are reviewing images for compliance with Terms, they should be reviewing images to ensure that there aren't any users under 18 in these photos. | | |
| 3 | NCMEC Reports | Appearance that reports are coming from users instead of moderators | Inform moderators they need to amp up review in terms of reporting possible under 18 images. | | |
| 4 | NCMEC Reports | Appearance that reports are coming from users instead of moderators | Inform moderators that they should be reporting these images NCMEC. | | |
| 5 | NCMEC Reports | Appearance that reports are coming from users instead of moderators | Tell moderators in how to report images to NCMEC. | | |
| 6 | NCMEC Reports | Appearance that reports are coming from users instead of moderators | Send vendor sample photos of under 18 images. | | |
| 7 | NCMEC Reports | Appearance that reports are coming from users instead of moderators | Remove password entry requirement to increase ease of moderator reporting. | | |
| 8 | NCMEC Reports | Blurred Images causing difficulty in identifying underage photos | Use blurred images as a flag for moderators that the ad/image may be indicative of under age user, so look at that more closely. If it's obvious the image is not of an under 18, then do not report (obvious = individual appears to be 30+). | | |
| 9 | NCMEC Reports | User Reports | Carl to send Simrin examples of user reports to see what similarities there are in the user reports to see if that info can be given to moderators to assist in identifying potential under-age ads/images. | | |
| 10 | Partnerships | Join "Demi & Ashton Foundation" | Hemu to draft letter to the foundation for Scott to send, expressing their interest in joining the foundation and explaining the reasons for the slow response. | | |
| 11 | Partnerships | Join "Demi & Ashton Foundation" | Determine requirements of foundation members. | | |
| 12 | Finding Illegal Ads | Key Words | "New In Town" terminology is often used by pimps who shuttle children to locations where they do not know anyone and cannot get help. When this phrase is used, moderators should be told to be on heightened alert that the images may belong to an under 18. | | |

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 13 | Finding Illegal Ads | Credit Cards and Phone Numbers | Determine if there is a way to see if one credit card is used to post numerous ads for different girls, and flag these ads for moderators; this could indicate a prostitution situation or a human trafficking situation. | | |
| 14 | Finding Illegal Ads | Credit Cards and Phone Numbers | Create a way to figure out if one phone number is being used on numerous different ads and flag these for moderators and put these in a separate review queue, this could indicate a prostitution situation or a human trafficking situation. | | |
| 15 | Finding Illegal Ads | Credit Cards and Phone Numbers | Determine if there is a way to figure out if a card being used is prepaid; this could be one indicator (of many) to moderators to pay closer attention to the ad as a potential trafficking ad. | | |
| 16 | Finding Illegal Ads | The Erotic Review: TER.com | Automate a periodic flush out of TER ID's. | | |
| 17 | Finding Illegal Ads | The Erotic Review: TER.com | Inform moderators that all ID numbers that are not clearly marked as massage license authentication numbers should be removed upon discovery. | | |
| 18 | Finding Illegal Ads | The Erotic Review: TER.com | Ads visited directly from TER should be indentified and removed. | | |
| 19 | Human Trafficking | User Reporting to Polaris | Add the Polaris 1-800 # in the "Report Ad" Area. | | |
| 20 | Human Trafficking | User Reporting to Polaris | Add a link to Polaris that also explains trafficking and encourages reporting | | |
| 21 | Human Trafficking | Moderator Reporting | Set up trainings between Backpage moderators and Polaris on how to identify potential victims in ads. | | |
| 22 | Human Trafficking | Moderator Reporting | Provide moderators with human trafficking terms/situations: Use of fake names, like "Diamonds", Pictures that are taken in obvious hotel rooms (as opposed to homes), Massage Parlors with terms like "Grand Opening" or "New Management", Ads written from masculine perspective or with particularly graphic photos or text. | | |
| 23 | Human Trafficking | Moderator Reporting | Inform moderators to pay increased attention to "Body Rubs" section in terms of human trafficking. | | |
| 24 | Human Trafficking | Partnerships | Backpage needs to meet with Byron Fassett in Dallas (High Risk Victim Technology Creator). | | |

SSP Blue|Backpage|NCMEC|Polaris
Action Items

Internal Document
Attorney-Client Privileged

Based on meetings 3/1/11

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 25 | User Education | Increase user awareness of human trafficking through iniative across BP | Target Audience: Anyone who believes they are a victim of human trafficking, Users who may have knowledge of a victim, General users | | |
| 26 | User Education | Increase user awareness of human trafficking through iniative across BP | Methods: Banners ads on partner sites, Sponsor ads on the Backpage sites, Links on top of the page in the adult and personals section, Announcement in Backpage blog, Additional methods to be identified | | |
| 27 | User Education | Safety, Security and Privacy Section | Create and develop content for SSP section on BP | | |

Confidential BP-AZGJ_01110848

# **Exhibit G**

**From:** Simrin Hooper [shooper@sspblue.com]
**Sent:** Monday, December 20, 2010 9:05 PM
**To:** Scott Spear; Jamie Schumacher; Hemanshu Nigam; Carl Ferrer
**Subject:** Updated Excel for call
**Attachments:** Backpage Changes Excel v5.xlsx

Please see the attached updated Excel for the call today.

We should discuss:
-13, 17, 18 and 30 specifically

Thanks!
Simrin

Backpage- SSP Blue
DRAFT ATTORNEY-CLIENT PRIVILEGED

11.2.10

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | Area | Issue | Change | Notes | Owner(s) | Status | Notes/Status |
| 2 | Policy | Support Operations | Hire image review vendor for tier one image review | Spoke with Sykes, who say BP is too small; Carl is waiting to hear back from TOD; in the meantime continuing with current vendor. | Carl | Ongoing | done |
| 3 | Policy | Support Operations | Hire internal personnel to handle tier two image review | Spoke with Sykes, who say BP is too small; Carl is waiting to hear back from TOD; in the meantime continuing with current vendor. | Carl | Ongoing | done |
| 4 | Policy | Support Operations | Hire internal personnel to handle content review | | | | done |
| 5 | Policy | Image | Finalize policy on acceptable image content | No topless; no genitalia, no bare butts | | Done and in practice | |
| 6 | Policy | Image | Finalize policy on whether unacceptable images are removed from ads or if the entire ad is deleted | Remove image; keep over all | | Done and in practice | |
| 7 | Policy | Content | Finalize policy on acceptable content | List of prostitution-related terms banned from site; additional content rules pending | | Ongoing | done |
| 8 | Policy | Content | Finalize policy on whether unacceptable content is removed from ads or if the entire ad is deleted | Sex act for money ad- entire ad is removed; if it's "one" illegal word, the word is removed | | Done and in practice | |
| 9 | Policy | Content | Identify adult or personal ads on which to raise rates to decrease their volume | Increased rates where there were high posting volumes- $1 became $3, $3 became $5, etc. Especially in personals | | Done | |
| 10 | Policy | Forums | Create guidelines for adult forums prohibiting prostitution, discussion of sexual activity involving minors, and solicitations for rape and physical abuse. | 1. Update V-Bulletin Software; 2. Integrate their moderation technology; 3. Add "sign in or sign up" Account process for sex & obits forums; 4. Resource commitment | Carl to assign someone internally to handle all forums issues. | updating software; in progress | |

Confidential

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 11 | Policy | Forums | Educate the super user moderators on the new rules. | 1. Update V-Bulletin Software; 2. Integrate their moderation technology; 3. Add "sign in or sign up" Account process for sex & obits forums; 4. Resource commitment | Carl to assign someone internally to handle all forums issues. | updating software; in progress | |
| 12 | Policy | Support Operations | Hire personnel to review the user generated reports and any alerts generated by the keyword triggers in forums only. | 1. Update V-Bulletin Software; 2. Integrate their moderation technology; 3. Add "sign in or sign up" Account process for sex & obits forums; 4. Resource commitment | Carl to assign someone internally to handle all forums issues. | updating software; in progress | |
| 13 | Backend: Technology | Overall Review | Separate content and image review into two distinct processes such that uploaded content goes into one review queue and uploaded images go into a different review queue for all Adults and Personals ads (including paid and unpaid ads) | | Carl | decided not to do this | |
| 14 | Backend: Technology | Image Review | Create two tier process for image review: tier one image review to be outsourced to vendor; tier two image review of images flagged by tier one to be handled internally by Backpage (for deletion or approval on site) | | Carl | current vendor being used | |
| 15 | Backend: Technology | Content Review | Create automated process for keyword searches of known bad words specific to Adult section, Personal section, and Forums sections | automated search already exists; incorporating additional prostitution related terms | Carl | Week of 11.2.10 | done |
| 16 | Backend: Technology | Content Review | Ads that contain known bad words found through the automated search are put into higher priority review queue for content review | Part of "User Reporting" re-design. | Carl | January | |
| 17 | Backend: Technology | Content Review of Edited Ads | Edited ads do not "go live" until they are approved. | See attached possible flow chart. | | edited ads are being allowed to go live prior to review--currently reviewing quicker | |

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 18 | Front end | Account Creation | Require either an account log-in that indicates a user is over 18, or account creation indicating the user is over 18, in order to enter into the full view (photos and all ad text included) of Adult or Personal Ads or to post in either section. Account creation involves dob entry, email address and password. SEE ATTACHED FLOW CHART. **Note- consider re-directing under 18 user to backpage.com/city they were looking at, as opposed to the backpage.com general home page | Issues: 1. How to handle existing users without a dob on record?-- Can hold off on cleaning up until this phase is complete. 2. Confirm language for disclaimer and sign-in/sign-up page (combine into one page and mimic YouTube language); 3. Finalize of length of cookie disallowing users who enter in a dob under 18 from being able to access the page. | Carl | currently cancelled | |
| 19 | Legal | Account Creation | Disclaimer Language Recommendation (based off YouTube model): "This ad or group of ads may contain content that is inappropriate for some users. To view these ads, please 'sign-in' or 'sign up'" | | | bc removed nudity, determined they didn tneed to ad this content | |
| 20 | Front end | User Reporting | Add the ability for a user to report a specific image to Backpage, as opposed to reporting the entire post | See attached flow chart. | | Feb/March; fixing actual reporting in January | |
| 21 | Front end | User Reporting | Add dropdowns in the current reporting area so users can indicate why they are reporting something (Scam, Copyright, Child Porn, Prostitution, etc.) | SEE ATTACHED FLOW CHART. | | January | |
| 22 | Backend: Technology | Reporting/Support Operations | Fast track higher priority reports from users in review queue | | | January | |
| 23 | Front end | Forums | Create an easy way for users to report abuse in forums; reports to be sent to forums review queue | 1. Update V-Bulletin Software; 2. Integrate their moderation technology; 3. Add "sign in or sign up" Account process for sex & obits forums; 4. Resource commitment | Carl to assign someone internally to handle all forums issues. | updating software step | |

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 24 | Front end | Content Control | Limit amount of text allowed in ads | Limited to 1500 | | 500 character limit | |
| 25 | Front end | Content Control | Require selection from list of legal adult services in Adult section postings | TABLED to be discussed later. | | made some mock-ups | |
| 26 | Front end | Content Control | Block all html in ads; reinstate for certain trusted users and sites over time | | | Week of Nov 1, 2010. | done |
| 27 | Front End | Content Control | Raise rates for posting certain adult or personal ads | | | DONE | |
| 28 | Front end | Content Control | Remove return of results when certain keywords are used (on the front end) that indicate illegal activity (i.e. rape, incest, Lolita, etc.) | SSP Blue to expand list and submit to Carl and team. | | | re-send list of terms to carl |
| 29 | Backend: Technology | Content | Create a blacklist of links and do not allow any links to these sites | | | In process now; constantly updated | done; now added in child porn url from ncmec |
| 30 | Backend: Technology | Image | Employ image hashing to prevent repeat inappropriate image uploads. | | | December | moved to february |
| 31 | Backend: Technology | NCMEC Reports | Work with NCMEC to build automated mechanism to send possible child exploitation reports to NCMEC from Backpage employees | Received API; in discussions with Megan at NCMEC. | | Ongoing- almost complete; finish in end of december | |
| 32 | Front end | Account Creation: Under 18s | Upon account creation by under 18, require the user to read a list of safety tips and refer the user to the Safety section (to be created) on the site. User indicates they have read the information via a check-box. | Will be added to "account creation" process for under 18s once the Safety Section has been created for Backpage. | | cancelled due to removing nudity | |
| 33 | Front end | Age Related Restrictions | When a known under 18 user posts ads and pictures, show the under-18 a warning regarding the disclosure of personal information and photos | | SSP Blue or NGO | impossible if account creation Is cancelled | |
| 34 | Front end | Safety Pages | Create a safety, security and privacy section on the website that is accessible on the bottom of every page | | SSP Blue or NGO | send content | |

Backpage- SSP Blue
DRAFT ATTORNEY-CLIENT PRIVILEGED
11.2.10

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 35 | Front end | Safety Pages | Content in this section would include information on avoiding and recognizing scams, explaining illegal ads, linking to legitimate NGO's, explaining reporting mechanisms, providing access information to Law Enforcement, FTC tips, and other safety, security and privacy tips. | | SSP Blue or NGO | send content | |
| 36 | Legal | Terms of Use | Change Terms to reflect changes in image and content policies | | Legal | | |

5

Confidential BP-AZGJ_01110667

# <u>Exhibit H</u>

**Name**
Lizmcd4
(Mary w/3 Alt)
Dayanim
(Hadley w/3 Mary)
Dorsi
Lyon
Cooley
"Cooley.com"
(Sam w/3 Neel)
(Hay w/3 John)
Lorentz
Lindau
(Bok w/3 Jasper)
Bogaard
"Jian-Cheng"
(Joel w/3 Cox)
(Bryan w/3 Wee)
Schaik
Sayre
Sibley
Wheeler
Brammer
(Stephen w/3 Ross)
(Steven w/3 Ross)
(Steve w/3 Ross)
Greer
Luskin
(Morton w/3 Keith)
(Chip w/3 Peters)
Zondag
Merks
Fitch
Fugal
Moll
Hemu
(Jason w/3 Elliott)
Painter
Kulpa
"Mwe.com"
McDermott
(Stephen w/3 Ryan)
(Steven w/3 Ryan)

(Steve w/3 Ryan)
Ditlevson
(Harry /3 Schneider)
Weinkauf
Burgin
Bugaighis
Bugagis
Breena
Roos
Ruedisulj
DiEsposti
Bornhoft
"Jtlaw.com"
Tobey
"Corn-Revere"
(Rusing w/3 lopez)
"Rllaz.com"
Greenbacker
Rawson
Gianni
Sachs
(Labar w/3 (Kerr or Wagstaffe))
(Perkins w/3 Coie)
(Preston w/3 (Gates or Ellis or Rouvelas or Meeds))
Suskin
Stahl
Shosid
Sabo
Rosen
Rohrbacher
Pyle
Perkins
Pera
Meredith
Meehan
McDougall
Manning
Maio
Liz
Labar
Kattan
Henze
Grant

Fogel
Farrimond
Doran
Ambika
Corrado
Coie
Cardozo
Boswell
Blume
Bertsche
â€œK&Lâ€
"paulhastings.com"
(Paul w/3 Hastings)
(Gust w/3 Rosenfeld)
(Steve w/3 Suskin)
(Robert w/3 Bertsche)
(Ambika w/3 Doran)
(Williams w/3 Rohrbacher)
(Elizabeth w/3 McDougall)
(Stinson w/3 (Morrison or Hecker))
"henzecookmurphy"
"beckerandhouse.com"
"Whiteandwilliams.com"
"Akingump.com"
â€œjohn@beckerandhouse.comâ€
â€œconnie@beckerandhouse.comâ€
â€œlizmcd4@gmail.comâ€
â€œdon.moon@azbar.comâ€
â€œliz@backpage.comâ€
â€œchristine.ogsbury@villagevoicemedia.comâ€
â€œchristine.ogsbury@voicemediagroup.comâ€
â€œmdyment@bdo.comâ€
â€œdonbmoon@yahoo.comâ€
â€œteh@gknet.com"
â€œjaney.henze@gknet.comâ€
â€œlmcdougall@backpage.comâ€
â€œJimGrant@dwt.comâ€
â€œAmbikaDoran@dwt.comâ€
â€œdonbennettmoon@gmail.comâ€
(Matthew w/3 Dyment)
(White w/3 Williams)
(Frank w/3 Adam)
(Dickinson w/3 Wright)

(Lees w/3 Mayfield)
(Meade w/3 Schrag)
(Becker w/3 House)
(Jennings w/3 (Haug OR Cunningham))
(Jackson w/3 Pyle)
(Jim w/3 Grant)
(Stahl w/3 Doran)
(Fogel w/3 Maio)
(Bennett w/3 Moon)
(Davis w/3 Tremaine)
"Stinson.com"
Pellar
Schiff
Kupiszewski
Kile
Kasowitz
Akin
Ogsbury
Hinckley
Fennemore
Dyment
SNR
Fifer
Gates
Quarles
Preston
Stinson
Mayer
McCusker
Wagstaffe
Kerr
Gibson
Denton
Bennett
Moon
counsel
lawyer
attorney
deliberativ*
(work w/3 product)
"work product"
Privileg*
(Larry w/3 Shosid)

Mail(john@beckerandhouse.com)
Mail(connie@beckerandhouse.com)
mail(lizmcd4@gmail.com)
mail(don.moon@azbar.com)
mail(liz@backpage.com)
mail(christine.ogsbury@villagevoicemedia.com)
mail(christine.ogsbury@voicemediagroup.com)
Mail(mdyment@bdo.com)
mail(donbmoon@yahoo.com)
mail(teh@gknet.com")
mail(janey.henze@gknet.com)
mail(lmcdougall@backpage.com)
mail(JimGrant@dwt.com)
mail(AmbikaDoran@dwt.com)
â€œgknet.com"
"thompsoncoburn.com"
"stinsonleonard.com"
"snrdenton.com"
"schiffhardin.com"
"rlf.com"
"reedsmith.com"
"quarles.com"
"princelobel.com"
"perkinscoie.com"
"pellarlaw.com"
"meehanlawoffice.com"
"meadeschrag.com"
"mayerbrown.com"
"marc-law.com"
"leesmayfield.com"
"klgates.com"
"kilekuplaw.com"
"kerrwagstaffe.com"
"kasowitz.com"
"hinckleyallen.com"
"Gustlaw.com"
"gibsondunn.com"
"frankadam.com"
"federlawpa.com"
"fclaw.com"
"farrimondlaw.com"
"dwt.com"
"dlapiper.com"

"Dickinson-wright.com"

"dickinsonwright.com"

"dentons.com"

"cwwpc.comâ€

"bellnunnally.com"

"azestatelaw.com"

"azbar.org"

"jhc-law.com"

(Jeffrey w/3 (Jackson or Pyle))

(James w/3 Grant)

(Susan w/3 Boswell)

(Samuel w/3 Fifer)

(Grant w/3 (Stahl OR Doran))

(Cardozo w/3 (Fogel or Maio))

(Richards w/3 (Layton or Finger))

(Prince w/3 (Lobel or Tye))

(McCusker w/4 (Anselmi or Rosen or Carvelli))

(Kerr w/3 Wagstaffe)

(Don w/3 (Bennett or Moon))

(Davis w/3 (Wright or Tremain))

(fennemore w/3 craig)

"Williams Rohrbacherâ€

â€œThompson Coburnâ€

â€œSusan Boswellâ€

â€œSNR Dentonâ€

â€œSamuel Fiferâ€

"Sam Fifer"

â€œRobert Bertscheâ€

â€œReed Smithâ€

â€œQuarles & Bradyâ€

â€œPreston Gates Ellis & Rouvelas Meedsâ€

"Perkins Coie"

â€œMcCusker, Anselmi, Rosen & Carvelliâ€

â€œLarry Shosidâ€

â€œLaw Office of Michael Meehanâ€

â€œKerr & Wagstaffeâ€

â€œKattan Blumeâ€

â€œJeffrey Jackson Pyleâ€

â€œJames Grantâ€

â€œGrant, Stahl, Doranâ€

â€œGibson, Dunn & Crutcherâ€

â€œFarrimond Law Officesâ€

â€œElizabeth McDougallâ€

â€œDon Bennett Moonâ€
"dentons us llp"
(Bell w/3 (Nunnally or Martin))
"capelegal.com"
"Barry, Corrado, Grassi & Gibson"
"adamsandreese.com"
mail(donbennettmoon@gmail.com)
"Adams and Reese"