ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00422-PHX-SPL |
| Plaintiff, | **GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTIONS TO STAY SEIZURE OF ATTORNEYS' FEES (Docs. 360, 365, 366)** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | |

Plaintiff United States of America (the "Government"), by and through its counsel of record, the United States Attorney's Office for the District of Arizona and Special Assistant United States Attorney John J. Kucera, requests that this Court deny the motions to stay seizure of attorneys' fees (Docs. 360, 365, 366), because they are improperly filed

in the wrong jurisdiction and seek relief that is invalid as a matter of law.[1]  In support, the Government states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On October 31, 2018, the Honorable Rozella A. Oliver, United States Magistrate Judge for the Central District of California (the "CDCA Court"), issued twelve seizure warrants for funds held in seventeen different bank accounts, which were held in the names of fifteen different law firms (collectively, the "Seizure Warrants").[2]  The Seizure Warrants were issued upon the CDCA Court's probable cause finding that, pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), the funds were property involved in or traceable to money laundering, or were proceeds of violations of 18 U.S.C. §§ 1952, 1956, and 1957 (interstate and foreign travel or transportation in aid of racketeering enterprises, and money laundering offenses, respectively).

As it would in the normal course, the Government had intended to serve the seizure warrants on the banks to which they were issued.  However, during execution of a similar warrant several weeks prior, that process resulted in one bank's inadvertent freezing of a law firm's entire Interest on Lawyer's Trust Account ("IOLTA") account, rather than a simple withdrawal of seized funds, causing an unintended interruption to the firm's operations.  To prevent similar interruptions, the Government contacted the fifteen law firms affected by the Seizure Warrants before executing the warrants at the respective banks. Beginning on November 6, 2018, attorneys from the Money Laundering and Asset Recovery Section of the Department of Justice's Criminal Division began making courtesy calls to

---

[1] At a minimum, the Government requests that the Court deny the motions without prejudice and transfer them to the CDCA Court.  However, should this Court decide to reach the merits, the Government requests that the Court dismiss the motions because they do not state a legally valid basis to grant a stay.

[2] Despite the warrants being marked "*SEALED*", twice, at the top of each warrant, the warrants were not filed under seal. In addition, Doc. 365-1 contains the bank account information of the United States Postal Service, and the Government has requested that defense counsel seal that exhibit to prevent public disclosure of Government bank account information.

affected law firms to offer a wire-in-lieu-of-execution of the seizure warrants. (*See* Doc. 360, Ex. C at 1). The Government explained to each law firm that while normally these warrants would be served on the bank, the Government was attempting to minimize interruption by allowing the firms to wire the funds to the Government instead.

Two days later, on November 8, 2018, counsel for Padilla and Vaught responded by challenging the warrants issued by the CDCA Court, but filed their "Emergency Motion of Defendants Andrew Padilla and Joye Vaught to Stay Seizure of Attorneys' Fees and Request for Immediate Hearing" in the District of Arizona. (*See* Doc. 360.) On November 9, 2018, the law firm of Mitchell, Stein, Carey, Chapman PC ("Mitchell Stein") filed a similar motion to stay the seizure of funds that were paid to them "in connection with the representation of witnesses." (Doc. 365.) Shortly after, counsel for defendants Michael Lacey, James Larkin, John Brunst, and Scott Spear filed a motion to join defendants' Andrew Padilla and Joye Vaught Emergency Motion to Stay Seizure of Attorneys' Fees and Request for Immediate Hearing. (Doc. 366.) The defendants request that this Court stay *all twelve* of the warrants issued by the CDCA Court, despite the fact that not a single one of the twelve warrants was directed at any of the law firms or any of the defendants involved in that motion. *Id.*[3] Because the arguments presented in all of the above-listed motions are largely the same, the Government is filing this collective response in opposition. On November 13, 2018, the court issued an order temporarily staying the execution of the seizure warrant on the IOLTA accounts for Mitchell Stein. (Doc. 369). Accordingly, the government is holding in abeyance the execution of the seizure warrants for *only* accounts held by Mitchell Stein, and attorneys for Vaught (Weiss) and Padilla (Piccarretta) pending the hearing on November 16, 2018.

---

[3] Because several non-defendants have moved or joined in the Motions to Stay Execution of the Seizure Warrants, for clarity, all represented parties seeking to stay execution of the Seizure Warrants shall be referred to as "Movants".

## II.   THE MOTIONS ARE IMPROPERLY FILED AND THIS COURT SHOULD NOT EXERCISE EQUITABLE JURISDICTION

To the extent that Movants have any basis to contest the Seizure Warrants, such motions should have been filed in the Central District of California, where the warrants were issued.  The Seizure Warrants were issued pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), upon the CDCA Court's probable cause finding that they are property involved in or traceable to money laundering, or were proceeds of violations of 18 U.S.C. §§ 1952, 1956, and 1957 (interstate and foreign travel or transportation in aid of racketeering enterprises, and money laundering offenses, respectively).  The statute does not provide a basis for another court to obtain jurisdiction until *after* property has been seized.  18 U.S.C. § 981(b)(3)("Any motion for the return of property seized under this section shall be filed in the district court in which the seizure warrant was issued or in the district court for the district in which the property was seized.").[4]  Such a motion for the return of property, however, would be filed pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure.  However, neither § 981 nor Rule 41 provides a jurisdictional basis for a court, other than the court that issued the warrants, to adjudicate a *pre-execution motion*, especially one that seeks to stay or vacate the warrants themselves.  *See Hewlett Packard Co. v. Equipment Resources, Inc.*, 1992 U.S. Dist. LEXIS 12653, *1 (Misc. No. 92-362, D.D.C. Aug. 25, 1992) (denying without prejudice, and transferring, defendant's motion to stay a seizure order issued by a judge in the Northern District of California, because that judge had asserted

---

[4] Although the location of seizure has not yet been determined, most of the Seizure Warrants would have been served by a law enforcement agent based in Los Angeles who would have served them on California-based branches of the banks involved, as most of these warrants were issued to national banks such as JP Morgan Chase, Citibank, US Bank, etc.  A small number of the banks at issue, for example, Alliance Bank of Arizona, have branches only in Arizona, and would have required service in the District of Arizona.  Notably, the law firm that holds an account there, Mitchell Stein, does not represent any charged defendants in this case, but merely represents witnesses, the relevance of which is discussed *infra*. The only law firm that represents charged defendants, Piccarreta Davis Keenan Fidel, P.C. (Doc. 360), has its IOLTA account(s) at Chase Bank, the warrant for which would have been served in California.

jurisdiction and any relief defendant sought must be presented to the issuing court).[5] Allowing Movants to file motions such as this also creates forum-shopping problems where, in cases where they fear they may not get the result they want from the issuing district, they file motions to stay the warrant with a different court.[6]

And, while this Court could find that it has discretionary, equitable jurisdiction over this matter, it is unnecessary to exercise it. Equitable jurisdiction "is to be exercised, if at all, with caution and restraint and in accordance with familiar limitations on the granting of equitable relief." *Meier v. Keller*, 521 F.2d 548, 554 (9th Cir. 1975) (citing *Hunsucker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974)); *see also Smith v. Katzenbach*, 351 F.2d 810, 815-16 (D.C. Cir. 1965); *Centracchio v. Garrity*, 198 F.2d 382, 385-86 (1st Cir. 1952); *Rodgers v. United States*, 158 F. Supp. 670, 675-78 (S.D. Cal. 1958); 3 C. Wright, *Federal Practice and Procedure, Criminal* § 673 (1969)).

In *Meier*, the Ninth Circuit held that a California district court erred in exercising equitable jurisdiction over Meier's request for a temporary restraining order, a preliminary and permanent injunction prohibiting his attorney from appearing before any grand jury, suppression of all leads and evidence derived from his attorney's cooperation, and a Rule 41 request that seized documents be returned to him. *See id.* at 550, 554-56. Meier had been indicted in Nevada, but filed complaints in Nevada and California requesting relief. *See id.* at 554-55. The Nevada court in which he had been indicted immediately dismissed his request, but the district court in California granted it. *Id.* On appeal, the Ninth Circuit

---

[5] The dearth of case law on *pre-seizure* motions to stay execution of warrants is likely due to the fact that notice is not legally required, nor is it usually given, prior to executing a seizure warrant. A "seizure for purposes of forfeiture is one of those 'extraordinary situations' that justify postponing notice and opportunity for a hearing." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 676-77 (1974) (citing *Fuentes v. Shevin*, 407 U.S. 67, 90 (1972)).

[6] For example, for other assets that were previously seized in this case pursuant to warrants issued by the Central District of California, Defendant James Larkin previously filed a 52-page "Motion to Vacate or Modify Seizure Warrants" in the Central District of California, where the seizure warrants were issued. (Case No. Case No. 18-MJ-00722, CDCA, filed July 31, 2018.) The CDCA Court did not immediately rule on that motion, nor was there a hearing.; It is worth considering whether Movants elected to file this round of "emergency motions" in the District of Arizona, where a hearing was already scheduled on other matters and set for only eight days later.

looked first at whether there was an alternative remedy available to prevent irreparable harm. *See id*. at 555. Finding that post-seizure remedies existed, the Court held that the exercise of equitable jurisdiction was unnecessary. *See id*. The Court further found that defendant's reasons for forum shopping were "all too evident: at best, he hoped for a forum more sympathetic to his position, at worst, he hoped to delay the Nevada prosecutions and to gain broader discovery than that normally available." *Id*.

Similarly, since the CDCA Court already found probable cause that the funds at issue are subject to seizure, Movants in this case are hoping that this Court will prove more sympathetic and repudiate the CDCA Court's finding. Furthermore, the Government contacted every law firm subject to these Seizure Warrants and informed them of the proper legal remedy they have if they feel the warrants were issued in error – to file a claim in this Court's ancillary proceedings, or, if the Sixth Amendment applies to their client(s), to request a *Monsanto*-type hearing, as discussed further below. But what Movants actually want from this Court is clear – an end-run around lawful forfeiture proceedings and a means to avoid the threshold showing requirements of *Monsanto*. Consequently, this Court should respect the probable cause finding of the CDCA Court, reject Movants' attempts to forum shop, and refuse to exercise jurisdiction over this matter.

## III.   STAY OF SEIZURE WARRANTS IS NOT THE APPROPRIATE REMEDY

In addition to filing in the wrong jurisdiction, Movants' request for a stay of the Seizure Warrants is not an appropriate remedy. As discussed above, Movants have a statutory remedy in the ancillary proceedings that will occur in this case, as well as being entitled to a *Monsanto* hearing if the Sixth Amendment is applicable.[7]

### A.   Proper Remedy for Seizures is the Ancillary Proceeding and Forcing Parties to Wait Does Not Violate Due Process

---

[7] Not only are defendants entitled to a *Monsanto* hearing, but the Government repeatedly offered to release a portion of funds for attorneys' fees, for indigent defendants upon an informal showing of need. (*See*, *e.g.*, Doc. 360, Ex. C at 5). None of the defendants have attempted to make such a showing. Counsel for Larkin expressed interest in doing so, but to date, has not provided anything to support a claim of indigence.

Title 21 U.S.C. § 853(k) ensures an orderly forfeiture process and protects the district court's exclusive jurisdiction over assets subject to criminal forfeiture.[8]  Section 853(n) sets forth the procedures for determining third party rights in criminal forfeiture cases, and expressly bars third parties from contesting the forfeiture in any other forum.  The Movants' "emergency motions" are simply another attempt by third parties and defendants in the Backpage proceedings to contest forfeiture in another forum,[9] a tactic that is barred by Section 853.

The Supreme Court has consistently held that deferring ownership issues to the ancillary proceeding was a policy choice that Congress was entitled to make, even if it prolongs the forfeiture process.  *See Libretti v. United States*, 516 U.S. 29, 44 (1995); *see also United States v. Coffman*, 574 F. App'x 541, 564 (6th Cir. 2014) (same).  Forcing third parties to wait until the ancillary proceeding to contest the forfeiture does not violate due process.  *See United States v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) (forcing a third party to wait until the ancillary proceeding to contest a forfeiture, rather than granting an immediate hearing on a motion to vacate a seizure pursuant to section 853(f), does not violate the third party's right to due process); *see also United States v. Watts*, 786 F.3d 152, 175 (2d Cir. 2015) (holding that, beyond § 853(n)(6)(A), (B), the statute authorizes no challenges to the forfeitability of a defendant's property by interested third parties); *United*

---

[8] "Except as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may… commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section." 21 U.S.C. § 853(k)(2).

[9] When Defendant Larkin's "Motion to Vacate or Modify Seizure Warrants" was not immediately ruled on by the Central District of California, he and several other defendants filed an 84-page civil complaint in the Delaware Chancery Court, attempting to collaterally attack assets that were subject to federal forfeiture, in direct contradiction of 21 U.S.C. § 853(n).  *Camarillo Holdings, LLC vs. Amstel River Holdings, LLC*, Del. Ct. of Chancery, Case No. 2018-0606-SG, Aug. 16, 2018, Doc. 1.  On the same day they filed their Verified Complaint, defendants filed a Motion for Expedited Proceedings, requesting "that trial be scheduled as soon as the Court's calendar permits in the 45-60 day time-frame [*sic*]." *Id.* at Doc.15.  One day after being notified of the seizure warrants issued in CDCA, Movants filed motions to stay the ancillary proceedings in defendant Carl Ferrer's criminal case (Case No. 2:18-cr-00464-SPL, Dist. Of Ariz.), because the "Delaware court's ruling will have a direct and material impact on Claimants' petitions and this Court's adjudication of Claimants' interest(s) in the relevant assets." *Id.* at Doc. 44.  *See also*, *id.* at Docs. 45-48.

*States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 477 (5th Cir. 2007) (*en banc*) (Section 853(k) ensures an orderly process that relieves the Government of the burden of having to defend the forfeiture against third party claims during an ongoing prosecution while protecting the third party's right to a day in court in the ancillary proceeding; this procedure does not violate the third party's right to due process); *De Almeida v. United States*, 459 F.3d 377, 381 (2nd Cir. 2006) (until the ancillary proceeding, the ownership of the property is irrelevant; any property involved in the offense of conviction may be forfeited; thus, the Government does not have to establish the defendant's ownership of the property to seize it pending trial or to obtain a preliminary order of forfeiture, and section 853(k) makes it clear that the third party must wait until the ancillary proceeding to assert his rights); *Sunrise Acad. v. United States*, 791 F. Supp. 2d 200, 205-07 (D.D.C. 2011) (conducting a thorough due process analysis and concluding that absent a showing of irreparable injury, requiring a third party to wait until the ancillary proceeding does not violate due process); *United States v. McCorkle*, 143 F. Supp. 2d 1311, 1318-19 (M.D. Fla. 2001) ("Congress has established the procedure for adjudicating third party interests in forfeited property.  21 U.S.C. § 853(n).  A petitioner must follow the specified procedure, and may not commence a separate action against the United States concerning the validity of his alleged interest in the forfeited property. 21 U.S.C. § 853(k).").

Even the traditional post-seizure remedy of Rule 41 is inappropriate in the case of a third party seeking the release of property seized or restrained for criminal forfeiture.  While Rule 41 allows claimants to file a motion to return property if they believe the initial seizure was improper, *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555, 569 (1983), Section 853(k) bars third parties from commencing any action against the United States after an indictment has been filed and the asset becomes subject to criminal forfeiture.  *See*, *e.g.*, *United States v. Lugo*, 2012 WL 32452, *2 (E.D.N.Y. Jan. 5, 2012) (§ 853(k) bars a third party from seeking the return of property subject to criminal forfeiture by filing a Rule 41(g) motion pre-trial; that there was no forfeiture notice in the indictment when the motion was filed did not matter because the

Government filed a superseding information that did contain such notice); *Sunrise Acad. v. United States*, 791 F. Supp. 2d 200, 203-04 (D.D.C. 2011) (§ 853(k) bars a third party from seeking pre-trial release of property seized from its own bank account by filing a lawsuit against the U.S.; it is not trumped by Rule 41(g)); *Walker v. United States*, 2011 WL 62139, *1 (W.D. Wash. Jan. 7, 2011) (defendant's mother could not use Rule 41(g) to seek pre-trial return of vehicle seized from the defendant and listed in his indictment as subject to forfeiture); *Account Servs. Corp. v. United States*, 2009 WL 2755649, *2-4 (S.D. Cal. Aug. 27, 2009) (once seized property is included in a criminal indictment, a third party who alleges that the property belongs to it cannot file a Rule 41(g) motion for its return; despite the inevitable delay, the third party's right to contest the forfeiture in the post-trial ancillary proceeding is an adequate remedy at law; but the court must be sure that the seizure did not involve a "callous disregard" for the third party's Fourth Amendment rights and that the third party is not suffering irreparable harm). "The law appears settled that an ancillary proceeding constitutes the only avenue for a third party claiming an interest in seized property." *Lazarenko*, 469 F.3d at 821.

The CDCA Court found probable cause that the funds at issue in the Seizure Warrants were subject to forfeiture. Many of the bank accounts have already been included in a Preliminary Order of Forfeiture in defendant Carl Ferrer's criminal case. *See* Case No. 2:18-cr-00465-SPL, Dist. of Ariz., at Doc. 43-1. Because the assets at issue are subject to forfeiture, the appropriate remedy to challenge the seizure is through the ancillary proceeding.

**B.    Proper Remedy for Sixth Amendment Claims over Seized Funds is a *Monsanto* Hearing**

A post-restraint, pretrial hearing is available as an exception to the ancillary proceeding remedy, but only if (1) the Sixth Amendment is implicated, and (2) the defendant makes a prima facie showing that there is no probable cause for the forfeiture of the restrained property. *United States v. Monsanto*, 491 U.S. 600, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989). Neither the Fifth nor the Sixth Amendment requires Congress to permit a

defendant to use tainted assets adjudged to be forfeitable to pay legal fees. *See Caplin & Drysdale v. United States*, 491 U.S. 617, 633 (1989) (post-trial); *United States v. Monsanto*, 491 U.S. 600, 616 (1989) (pretrial). Congress' rationale for this was clear: "[p]ermitting a defendant to use assets for his private purposes that ... will become the property of the United States if a conviction occurs cannot be sanctioned." *Monsanto*, 491 U.S. at 613, 109 S.Ct. 2657.

1.     **The Sixth Amendment is not implicated where an individual has not been charged.**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. CONSTITUTION, 6TH AMEND. In *McNeil v. Wisconsin*, 501 U.S. 171 (1991), the Supreme Court explained when this right arises:

> The Sixth Amendment right [to counsel] ... is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

*Id.*, at 175 (citations and internal quotation marks omitted). The only other "right to counsel" found outside of the Sixth Amendment, is the Fifth Amendment guarantee that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." *Id.*, at 176. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court "established a number of prophylactic rights designed to counteract the "inherently compelling pressures" of custodial interrogation, including the right to have counsel present." *Id.* Thus, a right to counsel can attach at the time of arrest or during custodial interrogation, where the Fifth Amendment is implicated and a subject requests that counsel be present. *Id.* Whether *Monsanto* applies to a Fifth Amendment right to counsel in a situation where the defendant has been arrested or requests counsel during a custodial interrogation, appears to be an issue of first impression. However, where an individual has not been charged, is not under arrest,

and is not requesting counsel as part of a custodial interrogation, the right to counsel has not attached, and no Sixth Amendment rights are implicated.

Here, the only Movants who have a Sixth Amendment right to counsel, and have counsel who are subject to the Seizure Warrants, are Padilla and Vaught.  (Case No. 2:18-cr-00422-SPL, Dist. of Ariz., Doc. 360.)  Defendants Larkin, Lacey, Spear and Brunst have a Sixth Amendment right to counsel, but none of the Seizure Warrants were issued to a law firm that represents them and none of their attorneys' fees are included in the twelve warrants.  It is unclear what standing they are claiming to have to contest warrants issued to accounts completely unrelated to their retained attorneys, and which are neither in their possession nor control.

The only law firm bank account included in the Seizure Warrants that ostensibly represents one of the charged Defendants belongs to Mitchell Stein, who, according to PACER, represents defendants Larkin, Spear, Brunst, Hyer, Padilla, Vought, and several uncharged "movants."  However, Mitchell Stein's Motion states that they were only filing on behalf of eight clients who consist of "various current and former Backpage employee witnesses in this case," rather than any charged defendants (Case No. 2:18-cr-00422-SPL, Dist. of Ariz., Doc. 365).  Consequently, Mitchell Stein's uncharged clients have no Sixth Amendment basis to contest the Seizure Warrants.

       2.    **Not a single Movant has made the threshold showing that they do not possess sufficient assets to obtain counsel.**

To seek relief from seizure, a defendant must first make a showing that they do not possess sufficient assets to obtain counsel.  Only where <u>all</u> of a defendant's assets have been seized or restrained are the defendant's Fifth and Sixth Amendment rights violated.  *See United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993) ("Unimex's right to counsel under the Sixth Amendment and to Due Process under the Fifth Amendment were violated by taking away all of its assets, denying it an opportunity to show cause prior to its criminal trial that an amount it could have used for attorneys' fees was non-forfeitable.").  "To even be entitled to the hearing, defendants must first show a genuine need to use the assets to

retain counsel of choice." *See Kaley v. United States*, 571 U.S. 320, 353-54 (2014) 353-54 (Roberts, C.J., dissenting) (citing *United States v. Bonventre*, 720 F.3d 126, 133 (2d Cir. 2013) (holding that to qualify for a post-restraint *Monsanto* hearing, the defendant must disclose his net worth, provide a comprehensive list of his assets, and explain how he has been paying his significant living expenses; it is not enough to contrast his income stream and bank account balances with his living expenses and legal fees)).  In applying *Unimex*, courts put the initial burden upon the defendant to show that he lacks sufficient funds.  *See United States v. McCray*, 113 F. App'x. 770, 772 (9th Cir. 2004) (upholding district court's refusal to grant *Monsanto* hearing regarding funds held in parallel civil case; holding defendant has no Sixth Amendment right to a hearing unless he offers evidence as to the source of the restrained property and "his inability to compensate counsel from other funds available to him") (citing *Unimex*, 991 F.2d at 551); *see also United States v. Wetselaar*, 2013 WL 8206582, *19-20, *23 (D. Nev. Dec. 31, 2013) (applying *Unimex* and denying request for probable cause hearing; Government not required to "re-establish" probable cause that property is traceable to the offense until defendant shows that he lacks other funds); *United States v. Swenson*, 2013 WL 3322632 (D. Idaho July 1, 2013) (if property is seized, the court applies *Unimex*, which permits a hearing only if the defendant satisfies the burden of proving need and that funds are not tainted); *United States v. Approximately $144,001 in U.S. Currency*, 2011 WL 5345266 (N.D. Cal. Nov. 7, 2011) (applying *Unimex*, finding defendant not entitled to a probable cause hearing in his civil forfeiture case without first showing that he lacked other funds with which to retain counsel in the related criminal matter).

After making a showing of financial necessity,[10] a defendant may make a prima facie showing that there is no probable cause for the forfeiture of the restrained property in order

---

[10] "Perhaps recognizing that *Monsanto* hearings might be used only to gain a sneak peak of the Government's case and witnesses, thereby wasting prosecutorial resources, a majority of courts have held that such hearings are necessary only where the criminal defendant makes at least an initial showing that he has no other assets with which to retain private counsel." *United States v. Kramer*, No. 1:06CR200-ENV-CLP, 2006 WL 3545026, at *4 (E.D.N.Y. Dec. 8, 2006) (citing *United States v. Jamieson*, 427 F.3d 394, 406 n. 3 (6th Cir.2005) (cataloguing other circuit's approaches)).

to be entitled to a *Monsanto* hearing.  At the probable cause hearing, a defendant cannot challenge the grand jury's finding of probable cause with respect to the underlying crime, but he retains the right to challenge the probable cause regarding the nexus between the property and the offense.  *Cf. Kaley v. United States*, 571 U.S. 320, 341 (2014).  However, to be entitled to this remedy, the defendant must first have his assets seized or restrained, and prove that he otherwise has insufficient funds to mount a defense.

Movants argue that the Government should have to litigate the merits of the forfeiture case now, and prove the Government's theory of forfeitability prior to seizure.  But that is not the law and Movants have made no threshold showing of financial need that would entitle them to such a hearing at this point.

## IV.   CONCLUSION

Despite Movants' contention that this case is somehow different from any other federal case that involves the seizure of proceeds and funds involved in money laundering, as the CDCA Court determined in its probable cause finding - it is not.  All but two of the Movants lack any Sixth Amendment claim to the finds, and the two who have been charged, did not make the requisite threshold showing of financial need to be entitled to a hearing. Consequently, the proper legal recourse for challenging the Government's theory of forfeiture (which will undoubtedly be litigated as part of the Government's criminal case in chief), is for Movants' to file a claim in the ancillary proceeding.  The Emergency Motions to Stay Seizure of Attorneys' Fees (Docs. 360, 365, 366) should be **DENIED** because: this Court should respect the jurisdiction of the CDCA Court and its rulings; most of the Movants lack standing to request the relief they seek; none of the Movants have made the requisite threshold showing of financial need; and the requested remedy is inappropriate – any remaining third party claims must be adjudicated during the ancillary proceeding.

- 13 -

Respectfully submitted this 13th of November, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

BRIAN BENCZKOWSKI
Assistant Attorney General
U.S. Department of Justice
Criminal Division, U.S. Department of Justice

KEVIN RAPP
MARGARET PERLMETER
ANDREW STONE
PETER KOZINETS
Assistant United States Attorneys

REGINALD E. JONES
Senior Trial Attorney

_s/John J. Kucera_

JOHN J. KUCERA
Special Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA


## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant: Anne Chapman, Erin McCampbell, Gregory Zamora, James Grant, Lee Stein, Paul Cambria, Robert Corn-Revere, Ronald London, Janey Henze Cook, John Littrell, Kenneth Miller, Thomas Bienart, Jr., Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, David Wakukawa, Michael Piccarreta, Stephen Weiss, Gopi Panchapakesan, Ariel Neuman, Gary Lincenberg, Anthony Bisconti, Whitney Bernstein, Seetha Ramachandran.


_s/_
U.S. Attorney's Office