Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
pcambria@lglaw.com
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580

*Attorneys for Defendant Michael Lacey*

Thomas H. Bienert, Jr. (Cal. Bar No. 135311, admitted *pro hac vice*)
tbienert@bmkattorneys.com
Whitney Z. Bernstein (Cal. Bar No. 304917, admitted *pro hac vice*)
wbernstein@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

*Attorneys for Defendant James Larkin*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>                    Defendants. | NO. CR-18-00422-PHX-SPL (BSB)<br><br>DEFENDANTS LACEY'S AND LARKIN'S OPPOSITION TO GOVERNMENT'S MOTION FOR ACCESS TO THE JOINT REPRESENTATION AND JOINT DEFENSE AGREEMENTS (DOC. 354)<br><br>(Oral argument requested) |

On October 26, 2018, the government filed its Motion for Access to the Joint Representation and Joint Defense Agreements Previously Submitted by Defendants Michael Lacey and James Larkin for *In Camera* Review ("Motion for Access").   (*See* Doc. 354.)

Defendants Michael Lacey and James Larkin submit the instant memorandum of law in opposition to the Motion for Access. As set forth in greater detail below, this Court should deny the Motion because the government has waived the opportunity to bring this Motion. More importantly, this Court should deny the Motion on the papers because the Motion is disruptive to the fair, orderly, and efficient litigation of this complex criminal action. Finally, this Court should deny the Motion because the documents the government seeks are privileged and there has been no waiver of privilege.

## BACKGROUND

Recently, this Court issued orders denying two of the government's motions. (*See* Docs. 345, 338.) Both denials were supported, in part, by this Court's consideration of certain documents defendants submitted *in camera* on notice to the government well in advance of this Court's October 5, 2018 hearing. (*See id.*) Now, many months after the documents were submitted *in camera* but after its failed motion to disqualify counsel, the government filed its Motion for Access, in which it seeks access *for the first time* to those *in camera* submissions for the purpose of litigating its unsuccessful motions a second time. The government had ample opportunity to challenge the *in camera* submission, but did not do so. Instead, the government made the strategic choice to challenge the relevance of those documents to resolution of its motions. The record demonstrates that the Motion for Access is nothing more than an unwarranted attempt at a "do-over."

### I.   The government did not challenge defendants' submission of *in camera* exhibits during the litigation of its motions.

On April 24, 2018, the government moved to disqualify the law firm of Davis Wright Tremaine LLP ("DWT") from representing any of the defendants named in the superseding indictment and the law firm of Henze Cook Murphy PLLC ("HCM") from representing defendant Lacey in this prosecution ("Motion to Disqualify"). (*See* Doc. 118.)

On June 6, 2018, defendants Larkin and Lacey filed their Opposition to the Motion to Disqualify ("Defendants' Opposition"). (*See* Doc. 180.) In support, defendants submitted a

2

declaration from James C. Grant, an attorney with DWT, under seal for *in camera* review with certain documents attached as exhibits ("Grant Declaration").   The exhibits to the Grant Declaration included three joint representation agreements:  (1) an engagement letter advising Carl Ferrer, Lacey and Larkin on the parameters of DWT's joint representation and providing for consent to such representation, which was executed by all three individuals (Grant Decl. Ex. A); (2) a Common Interest and Litigation Management Agreement ("CI/LM Agreement") (Grant Decl. Ex. B); and (3) a Joint Defense Agreement ("JDA") (Grant Decl. Ex. C) (collectively, the "*In Camera* Exhibits").[1]

Defendants submitted the *In Camera* Exhibits to this Court because the government was attempting to interfere with their Sixth Amendment right to counsel of choice by seeking disqualification of DWT without understanding or presenting to this Court the true nature of the relationships among counsel and the parties (both individually and as to their corporate entities). Those documents squarely refuted the government's conflict claims.   To preserve the privileged nature of the documents, defendants submitted them under seal for *in camera* review and in public filings referred only generally to the topics discussed in the *In Camera* Exhibits.  (*See, e.g.*, Defs.' Opp'n at 6 ("Because the agreements about DWT's representation are privileged, they are provided *in camera* . . . and are described here only generally.").)

On June 13, 2018, the government filed three reply briefs in support of their Motion to Disqualify.  (*See* Docs. 192, 193, 194.)  One of the briefs said nothing about the *In Camera* Exhibits.  (*See* Doc. 192.)  Another brief disputed the relevance of the *In Camera* Exhibits to the issues pending before the Court, but made no request for access to those documents.  (*See* Doc. 194.)  In the third brief (its reply on the motion to disqualify DWT) the government focused its

---

[1]      Additionally, defendants submitted correspondence that contained quotes from the joint representation agreements as part of its *in camera* submission (*see* Grant Decl. Exs. D-I); however, the government's Motion for Access does not seek access to those privileged documents (Doc. 354 at 2).  Consequently, the instant opposition is limited to the government's request for access to the joint representation agreements (Grant Decl. Exs. A-C), even though all of those exhibits are privileged.

argument on a declaration from Ferrer (*see* Doc. 193 at 4-9; *see also* Doc. 193-9) and said in passing that Ferrer's summary of the CI/LM Agreement "suggests it isn't covered by the attorney-client privilege," and "[i]f the Court agrees, it should order the defendants to provide a copy to the government." (Doc. 193 at 7.) This was the only allusion the government made regarding accessing the *In Camera* Exhibits. The government never moved for disclosure of the *In Camera* Exhibits or otherwise request that they be provided in this brief or any other submission to this Court.

On June 28, 2018, defendant Lacey filed a Motion for Disclosure of Documents Related to Carl Ferrer's Waiver of Privilege as Material to Disqualification, seeking discovery to challenge the Motion to Disqualify. (*See* Doc. 202.)

On June 14, 2018, the government filed its Motion to Resolve Attorney-Client Privilege Issues in which it sought an order allowing it to review privileged communications because, according to the government, Ferrer waived privileges ("Motion to Resolve Privilege Issues"). (*See* Doc. 195.) In their opposition, defendants discussed the *In Camera* Exhibits explaining that, under the parties' agreements, Ferrer could not unilaterally waive privilege. (Doc. 235 at 7-9, 17-18.) Defendants reiterated that those documents had been submitted *in camera* because they were privileged. (*Id.* at n.9.) In its August 17, 2018 reply, the government acknowledged that the joint representation agreements had been filed *in camera* (*see* Doc. 269 at 7 ("The government cannot speak directly to what the written agreements say, because Defendants have filed all such agreements *in camera*."); *see also id.* at 2), but again did not seek disclosure of the documents.

On October 5, 2018, the parties appeared for the hearing on the Motions to Disqualify and to Resolve Privilege Issues, in addition to other motions. At the hearing, the government made no application for access to the *In Camera* Exhibits, even though it was clear that the Court had reviewed them and would likely consider them in resolving the Motions. (*See* 10/5/18 Tr., Docs. 347, 348.) Instead, the government made arguments about why it contended that the joint representation agreements did not refute their motions. (*See* Doc. 347 at 14-16; Doc. 348 at 74-

4

75.)  Further, this Court expressly warned the government that it had the opportunity to bring any additional issues to the Court's attention prior to taking the Motion to Disqualify under consideration.  (Doc. 347 at 21 ("This is your last chance, as it relates to [the Motion to Disqualify]).")  Once again, the government made no request for access to the *In Camera* Exhibits.  (*See* Docs. 347, 348.)

## II.    This Court issues two orders rejecting the government's motions.

On October 12, 2018, this Court issued an Order denying the Motion to Disqualify.  (*See* Doc. 338.)  This Court held that "the express terms of the JRA and JDA are fatal to the Government's argument for disqualification" because the agreements contained a waiver of future conflicts and Ferrer executed them upon advice of counsel.  (*Id*. at 7 (footnote omitted).) This Court acknowledged that "it may be difficult for the Government to understand what it cannot see," nonetheless, this Court ruled that the terms of the joint representation agreements must be enforced and those terms rendered the Motion to Disqualify infirm.  (*Id*. at 9.)  The Court noted – as the record amply reflected – that "the Government does not dispute the existence or validity of either agreement."  (*Id*. at 7 n.8.)

On October 18, 2018, this Court issued an Order denying the Motion to Resolve Privilege Issues.  (Doc. 345.)  Again, the joint representation agreements were relevant to the Court's analysis.  (*See id*. at 3-4.)  In denying the motion, this Court explained that the "plain text of the JDA states that the materials shared between the parties to the JDA are to be protected from disclosure unless the disclosing party first obtains the written consent of all parties," which Ferrer had not done.  (*Id*. at 4.)  Similarly, Ferrer was bound to uphold the terms of the CI/LM Agreement.  (*Id*. at 4 n.3.)  Again, the Court recognized that the government made no effort to dispute the validity of the joint representation agreements, which were submitted to this Court for *in camera* review only.  (*Id*.)

## III.   The government seeks a second opportunity to litigate the Motions.

In the Motion for Access, the government claims that it needs access to the *In Camera* Exhibits to "meaningfully assess" this Court's Orders.  (Doc. 354 at 10.)  The government faults

defendants for submitting the joint representation agreements for *in camera* review without "showing that the attorney-client privilege applies." (*Id*. at 3.)  The government argues that the agreements are "highly relevant and material" to resolution of its Motions (*id*. at 4-8); yet, as discussed below, offers no explanation or excuse for why it did not seek access to these "highly relevant and material" documents prior to the October 5, 2018 hearing or before the Court ruled on the Motions.  Finally, the government claims that the documents should be disclosed because defendants' submissions constitute a waiver of privilege.  (*Id*. at 8-10.)

## ARGUMENT

There is no merit to the government's claims.  First, the government waived the opportunity to bring the Motion for Access.  Second, this Court should deny the Motion on the papers because it is an affront to the orderly, fair, and efficient resolution of this action.  Finally, the *In Camera* Exhibits are privileged, and compelled disclosure of them would constitute an unwarranted intrusion into the defendants' privilege rights, strategies, and defenses.

## I.   The government has waived the ability to seek access to the *In Camera* Exhibits.

The government failed to take any steps to obtain access to the *In Camera* Exhibits in the months prior to the hearing on the Motions, or at any time before this Court issued its Orders, even though the government had ample opportunity to bring such a challenge.  Now, months later, and after this Court heard argument and issued its Orders, the government has finally determined that it wants access to those documents.  However, the time to challenge defendants' *in camera* submission was months ago when it occurred, not now.  For this reason alone, this Court should deny the Motion for Access.

It is well-settled that the government, like any litigant, can waive an argument by failing to properly present it.  *See United States v. Hoffman*, 2015 WL 5604419, at *2-4 (E.D. Cal. Sept. 23, 2015) (granting motion to dismiss because the government waived its arguments against dismissal by failing to submit a timely brief in opposition to the defendants' motion); *see also United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000) ("As a general matter, the government may waive certain defenses by not raising them in a timely manner."); *United*

6

*States v. Doe*, 53 F.3d 1081, 1082-83 (9th Cir. 1995) (ruling that the government's failure to raise the issue of defendant's waiver as a barrier to reversal of his conviction, when the government instead argued for affirmance of the conviction on the merits in its briefs and during oral argument, constituted waiver of the government's argument).

A party fails to properly present an argument when the party presents the argument for the first time during the hearing on a motion, when it could have been presented in pre-hearing submissions. *See Hoffman*, 2015 WL 5604419, at *2-4 (granting dismissal of indictment and declining to allow the government to present its opposition to the defendant's motion to dismiss for the first time at oral argument on the motion when the government failed to submit any written opposition prior to argument because that failure constituted waiver of the argument). Further, a party fails to properly present an argument when the party's "argument" is nothing more than a stray comment in a brief, rather than an argument point developed and supported by relevant authority. *See United States v. Murguia-Rodriguez*, 815 F.3d 566, 572-73 (9th Cir. 2016) (recognizing that the government waives its harmless-error argument "even when the government 'mentions' that harmless error applies in its brief but fails to advance a developed theory about how the errors were harmless").

This Court should not entertain the Motion for Access at this late date. The government was on notice as to the importance of the *In Camera* Exhibits when defendants submitted them as part of their opposition to the Motion to Disqualify and urged this Court to deny the Motion on the basis of those documents. That submission occurred *four months* prior to the October 5, 2018 hearing. Then, defendants emphasized the documents a second time in their opposition to the Motion to Resolve Privilege Issues, again asserting that those documents provided a basis for denial of the Motion. (*See* Doc. 235.) There can be no legitimate claim that the government was unaware of the importance of those documents to this Court's resolution of the motions. Indeed, this Court recognized that the government was aware of the joint representation agreements submitted *in camera* and that the government had not disputed their validity. (*See* Doc. 338 at 7 n.8; Doc. 345 at 4 n.3.)

The government had ample opportunity to raise any evidentiary or discovery issues prior to this Court's October 5, 2018 hearing on the motions. In the *four months* that passed from defendants' submission of the *In Camera* Exhibits to the October 5, 2018 hearing, the government filed no such motions. In contrast, Defendants filed *two motions* seeking disclosures and discovery prior to the October 5, 2018 hearing (*see* Docs. 202, 235), which the government opposed (*see* Docs. 216, 269). When defendants believed discovery was necessary to fully oppose the Motions, defendants took steps to gain access. In contrast, the government did *nothing* to seek access to the *In Camera* Exhibits, which the government now claims are "highly relevant and material" to the re-litigation of *its own* motions.

Under these circumstances, the government has waived any bases to bring the Motion for Access. *See Hoffman*, 2015 WL 5604419, at *2-4; *see also United States v. Grandberry*, 730 F.3d 968, 980 n.10 (9th Cir. 2013) (recognizing that "the district court would almost certainly have had the discretion to refuse to entertain an issue first raised after the briefing and hearing on the motion to suppress"); *United States v. Smith*, 506 F. App'x 600, 602 (9th Cir. 2013) (recognizing that the district court's refusal to entertain an argument raised by the government for the first time in its objections to a magistrate's report and recommendation was an appropriate exercise of discretion). The government had notice and ample opportunity to develop the record prior to the October 5, 2018 hearing on the Motions with respect to any evidentiary issues, and it should not get a do-over.

The government's Motion for Access also cannot be founded on its stray mention of the CI/LM Agreement in the scores of pages of prior briefing on the Disqualification Motion and the Motion to Resolve Privilege Issues. (*E.g.*, Doc. 193 at 7 (suggesting the CI/LM Agreement might be disclosed "[i]f the Court agrees" that "it isn't covered by the attorney-client privilege").) As the Ninth Circuit has explained, waiver occurs even when the government "mentions" an argument in passing but does not make an explicit request or develop and explain an argument. *See Murguia-Rodriguez*, 815 F.3d at 572-73 (explaining that "mention[ing]" an argument is insufficient to be considered presenting the argument to a court). Here, the government's

isolated comment in a reply brief does not constitute proper presentation of an argument for this Court's consideration. *See id.*

Critically, in this case, the party that failed to properly present an argument to this Court is the federal government, which is to be held to a higher standard than any other litigant. *See Hoffman*, 2015 WL 5604419, at *2-4 (dismissing indictment because the government waived its right to oppose dismissal and noting that one of the reasons the court found waiver appropriate was that "the failure here was on behalf of the federal government, which the Court holds to a higher standard than the usual litigant"); *see also Smith*, 506 F. App'x at 602 n.3 ("[T]he party who failed to raise arguments in a timely fashion is not a party to whom we feel especially compelled to grant the benefit of the doubt—someone who like a pro se petitioner is bereft of legal guidance and litigation experience.  Rather, it is the federal government.").

Finally, the government has not offered any excuse or any showing of good cause for its failure to file the Motion for Access before now.  The ability to move for access to the *In Camera* Exhibits was "available to the government throughout the entirety of the proceedings"; the government simply elected not to pursue that issue.  *See Smith*, 506 F. App'x at 602 n.3.  The government should not get a free pass on its litigation choices.

For all these reasons, defendants respectfully request that this Court deny the Motion for Access because the issues presented therein have been waived by the government.

## II.   This Court should reject the government's attempt to re-litigate unsuccessful motions as an affront to the orderly, fair, and efficient litigation of criminal cases.

The Motion for Access is little more than an attempt to re-litigate two resolved motions a second time.  This Court should reject this litigation approach because allowing do-overs and second bites (advancing no proper grounds for reconsideration) disrupts the orderly, fair, and efficient litigation of this complex criminal action.

At considerable expense, counsel for defendants filed oppositions to the Motions to Disqualify and to Resolve Privilege Issues, went through multiple rounds of briefing, and prepared for and traveled to Arizona to appear at the October 5, 2018 hearing.  Now the

government seeks to reopen what has been decided, requiring defendants to expend more time and resources to address a motion the government chose not to raise before. As a matter of fundamental fairness, defendants should not be forced to bear extra costs simply because the government is displeased with the results of its litigation strategy. This is particularly so because the government has engaged in extensive seizures of defendants' assets and attorney retainers, and has otherwise pursued a tack of multiplying proceedings and motions (such as the Motion for Disqualification and the Motion to Resolve Privilege Issues), to bleed defendants of resources and deprive them of the ability to defend the charges in this action. Having to address the Motion for Access forces defendants to stretch an already tenuously thin defense budget even further.

As a matter of its inherent authority to oversee orderly, fair, and efficient litigation of criminal actions, this Court should deny the Motion for Access as improper and untimely because it could have and *should have* been brought prior to the October 5, 2018 hearing. *See Dietz v. Bouldin*, 579 U.S. ___, 136 S.Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (recognizing "[a]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders"). There could be no better exercise of inherent authority than to deny the Motion for Access, which is imposing needless additional costs on defendants, causing avoidable delay on the finality of the resolution of the government's attempt to deprive defendants of their Sixth Amendment rights to counsel of choice, and interfering with a prompt resolution of this complex action on its merits by bogging down the parties and the Court with side litigation about litigation.

The stated purpose of the Motion for Access is for the government to obtain the *In Camera* Exhibits to use them to "assess" the validity of the Orders, and then to move for reconsideration. (*See* Doc. 354.) The Court reviewed, understood, and correctly applied the joint representation agreements that are the *In Camera* Exhibits. The government's eleventh-

hour motion to access the *In Camera* Exhibits, seeking to override attorney-client and work product privileges (again), cannot change the terms or import of the agreements.  This is simply not one of the "rare circumstances" requisite for reconsideration.  *See Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351-52 (D. Ariz. 1995) (denying reconsideration because the movant failed to present "rare circumstances" warranting revisiting an otherwise final decision). Even if the government could override privilege protections to access the agreements in an effort to argue against the Court's interpretations, it is difficult to see how this could constitute "manifest error" or facts or legal authority that "could not have been brought to [the Court's] attention earlier with reasonable diligence.  *See* L.R. Civ. 7.2(g)(1).

Instead, the government would be moving for reconsideration to seek a second opportunity to litigate its Motions on the grounds already argued and rejected by this Court, which is impermissible.  *See United States v. Alva*, 2017 WL 4856154, at *2 (D. Nev. October 25, 2017) (denying reconsideration and recognizing that "[g]ranting a motion to reconsider is an 'extraordinary remedy, to be used sparingly in the interests of finality and conversation of judicial resources'" (quoting *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003))); *United States v. Cornejo*, 2017 WL 4022412, at *1 (D.N.M. Sept. 11, 2017) (denying government's motion for reconsideration and explaining that "[a] motion to reconsider is not a second chance for the losing party to make its strongest case[,] to revisit issues that have already been addressed[,] or to dress up arguments that previously failed" (quotations omitted)).

For all these reasons, the Court should deny the Motion for Access on the papers.

**III.     This Court should deny the Motion for Access because the *In Camera* Exhibits are privileged and should not be disclosed to any non-signatory.**

The *In Camera* Exhibits are privileged, there has been no waiver, and they should not be disclosed.  The government is simply wrong in arguing otherwise.

Courts have an obligation to protect criminal defendants from any "unjustified intrusion into the attorney-client relationship," which includes protecting against disclosure of privileged

communications to the government. *In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982). The Ninth Circuit has explained that the following categories of documents, among others, are privileged and should not be disclosed to the government in a criminal prosecution: (1) any document reflecting "the client's ultimate motive for litigation or for retention of an attorney"; (2) "[c]onfidential communications between attorney and client made in order to obtain legal assistance"; (3) "correspondence between attorney and client which reveals the client's motivation for creation of the relationship or possible litigation strategy"; and (4) documents that "reveal the nature of services provided." *Id.*

Here, the joint representation agreements that are the *In Camera* Exhibits are privileged because they contain the types of information the Ninth Circuit has recognized as privileged and as to which disclosure to the government cannot be compelled. (*See* Grant Decl. Exs. A-C.) Providing the *In Camera* Exhibits would violate the Ninth Circuit's "clear and unambiguous" dictate to courts to refrain from ordering disclosure of such documents to the government. *In re Horn*, 976 F.2d 1314, 1317-18 (9th Cir. 1992) (concluding that a subpoena requesting that an attorney "produce letters of consultation and retainer agreements describing the intended scope of the attorney-client relationship . . . may reveal the client's motivation for seeking legal representation, the nature of the services provided or contemplated, strategies to be employed in the event of litigation, and other confidential information" which "constitutes 'an unjustified intrusion into the attorney-client relationship'" (quoting *In re Grand Jury Witness*, 695 F.2d at 362)). Parties' communications about their joint interests and common issues as part of their decisions about their legal positions and retention of counsel are also plainly privileged. *See Hunydee v. United States*, 355 F.2d 183, 184-85 (9th Cir. 1965) (reversing conviction and recognizing that statements concerning "common issues" that were made "to facilitate representation in possible subsequent proceedings" are privileged and should not be disclosed to the government in a criminal prosecution); *Eisenberg v. Gagnon*, 766 F.2d 770, 787-88 (3d Cir. 1985) ("Communications to an attorney to establish a common defense strategy are privileged," including communications that are "part of an ongoing and joint effort to set up a common

defense strategy between a defendant and an attorney who was responsible for coordinating a common defense position.").

None of the government's cases support interference with defendants' privilege rights and Sixth Amendment rights. The government relies primarily on select civil cases, which do not address the fundamental constitutional rights at issue for a *criminal defendant* to disclose joint representation or defense agreements to the government. Compelling such disclosure in a criminal action implicates Sixth Amendment rights, fair trial rights, and "the integrity of the proceedings." *United States v. Stepney*, 246 F. Supp. 2d 1069, 1078 (N.D. Cal. 2003) (conducting an *in camera* review of the joint defense agreements at issue "to avoid offering the prosecution any hint of defense strategies," which would violate a defendant's constitutional rights). Notably, in contrast to the few civil cases the government cites, courts uniformly accept *in camera* submission of joint representation agreements in criminal actions. *See United States v. Friedman*, 2018 WL 3456341, at *9 (recognizing that courts "frequently rely" on "*ex parte* or *in camera* procedures . . . to protect privileges and defendants' rights" and allowing an *in camera* submission of "evidence of joint representation"); *Stepney*, 246 F. Supp. 2d at 1078 (conducting *in camera* review of a joint defense agreement "to avoid offering the prosecution any hint of defense strategies"); *see also United States v. Caramadre*, 892 F. Supp. 2d 397, 401 (D.R.I. 2012) (allowing *in camera* submission of clients' written conflict waivers); *United States v. Wasson*, 2008 WL 11451928, at *2-4 (D.N.M. Feb. 6, 2008) (denying government's motion to compel *in camera* submission of joint representation agreements).

Further, a defendant does not waive the privileged nature of materials by submitting them for *in camera* review in connection with a motion and then discussing them generally in public filings before the court. The purpose of an *in camera* submission is to "protect privileges and defendants' rights." *Friedman*, 2018 WL 3456341, at *9 (explaining that the *in camera* submission of a joint representation agreement and a client file in connection with a conflict motion did not alter the privileged status of those documents). Here, defendants' submission of the *In Camera* Exhibits to this Court and the brief and general reference to those agreements in

public submissions does not constitute a privilege waiver.[2]  Defendants submitted the joint representation agreements *in camera* to *preserve privileges* and did not discuss or disclose the specific terms of those agreements.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny the Government's Motion.


RESPECTFULLY SUBMITTED this 10th day of December, 2018,

> /s/     *Paul J. Cambria, Jr.*
> LIPSITZ GREEN SCIME CAMBRIA LLP
> Attorneys for Defendant Michael Lacey

> /s/     *Thomas Henry Bienert, Jr.*
> BIENERT MILLER & KATZMAN PLC
> Attorneys for Defendant James Larkin

---

[2]     Further, even when a party asserts that a joint defense agreement is material to the court's resolution of a motion, courts must be careful to protect against "improper disclosure of the terms of the joint defense agreement" to non-signatories.  *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583-84 (9th Cir. 1987).

On December 10, 2018, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Patrick Reid, Patrick.Reid@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Amanda Wick, Amanda.Wick@usdoj.gov