ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-18-00422-PHX-SPL |
| PLAINTIFF, | **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT LACEY'S MOTION FOR RELEASE OF FUNDS UNRELATED TO BACKPAGE AND REQUEST FOR EXPEDITED RELIEF (Doc. 385)** |
| V. | |
| MICHAEL LACEY, ET AL., | |
| DEFENDANTS. | |

Plaintiff United States of America (the "Government"), by and through its counsel of record, the United States Attorney's Office for the District of Arizona and Special Assistant United States Attorney John J. Kucera, requests that this Court issue an order denying Michael Lacey's ("Defendant") motion for release of funds (Doc. 385 (the

"Motion"), thereby mooting Defendant's "Notice of Government's Non-Opposition" (Doc. 403)).

In support, the Government states as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

On April 26, 2018, a United States Magistrate Judge sitting in the Central District of California (the "CDCA Court") issued seizure warrants for funds held in the Republic Bank of Arizona accounts '2485, '1897, and '3126 (the "Seizure Warrants") after finding probable cause that the funds were property involved in or traceable to money laundering, or were proceeds of violations of 18 U.S.C. §§ 1952, 1956, and 1957 (interstate and foreign travel or transportation in aid of racketeering enterprises, and money laundering offenses, respectively).

On November 16, 2018, almost six months after the CDCA Court issued the Seizure Warrants, and the same day this Court heard argument on certain defendants' Emergency Motion to Stay Seizure of Attorney Fees and Request for an Immediate Hearing (Dkt. 360) and related filings (Docs. 365, 376, and 377), Defendant filed this Motion.  In its ruling on the Emergency Stay Motion, this Court determined that it would not exercise jurisdiction over seizure warrants issued in the Central District of California ("CDCA"), finding that the defendants had an adequate remedy for their allegations before that rendering court. (Transcript, pp. 55 – 56 (Nov. 16, 2018), excerpts attached at Exhibit A).  As of this Court's November 16 ruling, this is now the "law of the case," and its application should result in this Motion being denied.  Indeed, the Government did not immediately file a response to this Motion due to its having been filed earlier on the same day as this Court's ruling on the "Emergency Stay Motion," and because this Court's ruling resolved the very same issues raised by this Motion.

Additionally, even if this Court's prior decisions were not applicable to this Motion, the relief Defendant seeks constitutes a motion for return of property, arising under Rule 41(g) of the Federal Rules of Criminal Procedure.  However, such a motion is inappropriate

and must be denied where, as here, the property is subject to a civil forfeiture proceeding or is the subject to criminal forfeiture.

Finally, to the extent that Defendant's Motion seeks the release of funds necessary to his criminal defense, Defendant has failed to set forth the necessary basis for a hearing because he has not made the prerequisite showing that he lacks sufficient un-seized assets to retain counsel of his choice.

## II.    DEFENDANT'S MOTION IS PRECLUDED BY THE LAW OF THE CASE

The 'law of the case doctrine' relieves a court from having to reconsider an issue already decided by the same court or by a superior court in the identical action.  *United States v. Real Prop. Located at Incline Vill.*, 958 F. Supp. 482, 487 (D. Nev. 1997) (citing *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied*, 508 U.S. 951 (1993)); *see Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) ("The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)) ("*Musacchio*").  The doctrine is a discretionary principle designed to ensure judicial consistency and to prevent the reconsideration, during the course of a single continuous lawsuit, of those decisions which are intended to put a particular matter to rest.  *Id.*  Under the law of the case doctrine, a previous decision on a factual or legal issue must be followed in all subsequent proceedings in the trial court or on a later appeal in the appellate court...."  *Id.*

Even 'summary' treatment of a legal of factual issue becomes the law of the case."  *Id.* at 488 (citing *Leslie Salt*, 55 F.3d at 1392).  The Ninth Circuit even "adhered to the law of the case even where a prior ruling was "cryptic and somewhat ambiguous."  *Id*. (quoting *Hanna Boys Ctr. v. Miller*, 853 F.2d 682, 687 (9th Cir. 1988)).  "Whether a previous proceeding's ruling becomes the law of the case 'turns on whether a court previously decided upon a rule of law … not on whether, or how well, it explained the decision.'"  *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).  However, certain exceptions to this doctrine apply.  For example, the "law of the case doctrine" is not

applicable where (1) the court is presented with substantially additional or different evidence, (2) where a contrary decision of the applicable law is made with respect to a particular issue, and (3) the prior decision was clearly erroneous resulting in a manifest injustice.  *Id.* (citing *In re Benny*, 81 F.3d 91, 94 (9th Cir. 1996); *United States v. Garcia*, 77 F.3d 274, 276 (9th Cir. 1996); *Helger v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995).

On November 16, 2018, this Court reviewed and addressed almost the exact same issues and concerns raised by defendant James Larkin's "Supplemental Brief" in support of defendants' Emergency Motion to Stay Seizure of Attorney Fees and Request for an Immediate Hearing (Dkt. 377 ("Supplemental Brief")), which was filed one day prior to the hearing set for the Emergency Motion.  In defendant Larkin's Supplemental Brief, he argued that the seizure of funds was improper because, among other things, the seizure restrained funds unrelated to the criminal allegations contained in the Indictment and First Superseding Indictment and because the seizure has left defendant with insufficient funds to afford his counsel of choice.  (*See* Supplemental Brief, p. 2).  During oral argument, the Court asked government counsel whether the government would request that the Court consider the Response to the Emergency Motion (Dkt. 371) as also responding to the Supplemental Brief.

The Court:  And Mr. Kucera [government counsel at the hearing], I am treating the government's response [to Document 377] as Document Number 371, since 371 was filed in the [Emergency Motion].  Is that what you would like?
Mr. Kucera:  Notwithstanding the fact that these other documents were filed after the response –
The Court:  Correct.
Mr. Kucera:  -- yes, Your Honor.
The Court:  I mean, would your response be pretty much the same?  It's the same issue.
Mr. Kucera:  Certainly along those same lines, yes, Your Honor.
(Transcript, pp. 51 – 52).

The instant Motion contains substantially the same issues as those included in the Supplemental Brief that this Court found to be "the same issue" adjudicated by the Court in the Emergency Motion.  This Court found that "[t]he defendants have not set forth any persuasive reasons as to why [this] Court should interfere with the Central District of

California's issuance of the search warrants, and [this] Court finds that the defendants have sufficient legal remedy for any challenges to the seizure warrants issued by the Central District of California in that district." (*Id.* at 59).[1] For these reasons, this Court denied defendants' Emergency Motion (Dkt. 376). (*Id.*) As such, on November 16, 2018, during oral argument this Court already decided the issues presented by this Motion.

Because the Motion raises issues that were already decided, and because the Motion does not present "substantially additional or different evidence" that should cause this Court to reconsider its previous ruling, the rule of the case set forth on November 16 applies, and the Motion should be denied.

## III. DEFENDANT'S IMPROPER MOTION FOR RETURN OF PROPERTY

### A. A Motion For Return Of Property Is Unavailable Once The Government Has Initiated Forfeiture Proceedings

Even if this Court had not ruled on the issues presented by Defendant's Motion, Defendant seeks the return of property seized pursuant to a seizure warrant. Motions for the return of property are an equitable remedy governed by Rule 41(g) of the Federal Rules of Criminal Procedure. However, where, as here, the government has commenced civil or criminal forfeiture proceedings, those proceedings provide an adequate remedy at law for a defendant to seek relief, and a motion for return of property is unavailable. *See United States v. Premises of 2nd Amendment Guns, LLC*, 917 F. Supp. 2d 1120, 1122 (D. Or. 2012) (citing *United States v. Bluitt*, 815 F. Supp. 1314, 1316-17 (N.D. Cal. 1992) ("A rule 41(g) motion is unavailable . . . when property is retained pursuant to administrative or civil forfeiture . . . This is because Rule 41(g) provides an equitable remedy and is not available when a claimant has [an] adequate legal remedy")).[2]

---

[1] The Government maintains its position that this Court would be the appropriate venue for a *Monsanto*-type motion and/or hearing, but Defendant has not sought such relief.

[2] Although a Rule 41(g) motion is not permissible under these circumstances, were this Court to permit defendant's Motion, the Motion would be treated as a civil complaint and the government would be entitled to 60 days to respond pursuant to Rule 12(a) under the Federal Rules of Civil Procedure. *Ladele v. United States*, No. CR 06-00125 MMM, 2010 WL 476957, at *6 (C.D. Cal. Feb. 2, 2010) (treating movant's Rule 41(g) motion as a civil

Long lists of headnotes confirm the well settled law that motions for return of property are unavailable once the defendant can contest any forfeiture in an existing civil or criminal proceeding:  "The proper office of a Rule 41(g) motion is, before any forfeiture proceeding have been initiated or before any criminal charges have been filed, to seek the return of property seized without probable cause, or property held an unreasonable length of time without the institution of proceedings that would justify the seizure and retention of property."  *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004).  A motion for return of property is properly denied once a civil forfeiture action has been filed.  *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988) ("*$83,310.78*"); *see also*, *Cartwright v. United States*, No. 00-4400-CIV-JORDAN, slip op. at 5 (S.D. Fla. Feb. 26, 2001) (refusing to exercise equitable jurisdiction over motion for return of property seized for civil forfeiture because defendant's subsequent indictment, including forfeiture, gives defendant adequate remedy at law; there is nothing wrong with starting case with civil seizure and proceeding with criminal forfeiture).

For this reason, Defendant's request for return of property is properly denied.

B.    The Proper Remedy For Sixth Amendment Claims Is A Monsanto Hearing

Although Defendant seeks the return of property pursuant to a Sixth Amendment claim, the only proper path to this remedy (before trial) is a motion pursuant to *Monsanto*,[3] and the Government reasserts the arguments made in its November 15, 2018, Response In Opposition to Defendant's Motion to Stay Seizure of Attorneys' Fees (Dkt. 371).

---

complaint; where "the government claim[ed] the property sought was already the subject of an administrative foreclosure proceeding, the court must convert the government's opposition into a motion for summary judgment…."); *see United States v. Williams*, 267 F. Supp. 2d 1130, 1138 (M.D. Ala. 2003) (motion for return of seized property denied, despite finding of lack of probable cause and granting of motion to suppress, because the property was restrained in a criminal case under 21 U.S.C. § 853(e)(1) and an civil forfeiture complaint had been filed under 18 U.S.C. § 983(a)(3)(B)(ii)(II)).

[3]  The Government has repeatedly offered to release a portion of funds for attorneys' fees, for indigent defendants upon an informal showing of need. (*See*, *e.g.*, Doc. 360, Ex. C at 5). None of the defendants have attempted to make such a showing.

A post-restraint, pretrial hearing is available only if (1) the Sixth Amendment is implicated, and (2) the defendant makes a prima facie showing that there is no probable cause for the forfeiture of the restrained property.  *United States v. Monsanto*, 491 U.S. 600, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989).   Only where <u>all</u> of a defendant's assets have been seized or restrained are the defendant's Fifth and Sixth Amendment rights violated.  *See United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993).  This is so because neither the Fifth nor the Sixth Amendment requires Congress to permit a defendant to use tainted assets adjudged to be forfeitable to pay legal fees.  *See Caplin & Drysdale v. United States*, 491 U.S. 617, 633 (1989) (post-trial); *United States v. Monsanto*, 491 U.S. 600, 616 (1989) (pretrial).  Congress' rationale for this was clear: "[p]ermitting a defendant to use assets for his private purposes that ... will become the property of the United States if a conviction occurs cannot be sanctioned."  *Monsanto*, 491 U.S. at 613, 109 S.Ct. 2657.

 "To even be entitled to the hearing, defendants must first show a genuine need to use the assets to retain counsel of choice."  *See Kaley v. United States*, 571 U.S. 320, 353-54 (2014) 353-54 (Roberts, C.J., dissenting) (citing *United States v. Bonventre*, 720 F.3d 126, 133 (2d Cir. 2013) (holding that to qualify for a post-restraint *Monsanto* hearing, the defendant must disclose his net worth, provide a comprehensive list of his assets, and explain how he has been paying his significant living expenses; it is not enough to contrast his income stream and bank account balances with his living expenses and legal fees)); *see also United States v. Wetselaar*, 2013 WL 8206582, *19-20, *23 (D. Nev. Dec. 31, 2013) (applying *Unimex* and denying request for probable cause hearing; Government not required to "re-establish" probable cause that property is traceable to the offense until defendant shows that he lacks other funds); *United States v. Swenson*, 2013 WL 3322632 (D. Idaho July 1, 2013) (if property is seized, the court applies *Unimex*, which permits a hearing only if the defendant satisfies the burden of proving need and that funds are not tainted); *United States v. Approximately $144,001 in U.S. Currency*, 2011 WL 5345266 (N.D. Cal. Nov. 7, 2011) (applying *Unimex*, finding defendant not entitled to a probable cause hearing in his

civil forfeiture case without first showing that he lacked other funds with which to retain counsel in the related criminal matter).

After a showing of financial necessity,[4] a defendant may make a prima facie showing that there is no probable cause for the forfeiture of the restrained property in order to be entitled to a *Monsanto* hearing. At the probable cause hearing, a defendant cannot challenge the grand jury's finding of probable cause with respect to the underlying crime, but he retains the right to challenge the probable cause regarding the nexus between the property and the offense. *Cf. Kaley v. United States*, 571 U.S. 320, 341 (2014). However, to be entitled to this remedy, the defendant must first have his assets seized or restrained, and prove that he otherwise has insufficient funds to mount a defense.

Defendant seeks to have the Government litigate the merits of the forfeiture case now, and prove the Government's theory of forfeit ability prior to seizure. But that is not the law and Defendant has made no threshold showing of financial need that would entitle him to a hearing at this point.

For this reason, Defendant's request for return of property is properly denied.

///

///

///

---

[4] "Perhaps recognizing that *Monsanto* hearings might be used only to gain a sneak peak of the Government's case and witnesses, thereby wasting prosecutorial resources, a majority of courts have held that such hearings are necessary only where the criminal defendant makes at least an initial showing that he has no other assets with which to retain private counsel." *United States v. Kramer*, No. 1:06CR200-ENV-CLP, 2006 WL 3545026, at *4 (E.D.N.Y. Dec. 8, 2006) (citing *United States v. Jamieson*, 427 F.3d 394, 406 n. 3 (6th Cir.2005) (cataloguing other circuit's approaches)).

**IV.     CONCLUSION**

For the forgoing reasons, the Government respectfully requests that Defendant's Motion be denied, thereby mooting his "Notice of Government Non-Opposition."

Respectfully submitted this 11th of December, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

BRIAN BENCZKOWSKI
Assistant Attorney General
U.S. Department of Justice
Criminal Division, U.S. Department of Justice

KEVIN RAPP
MARGARET PERLMETER
ANDREW STONE
PETER KOZINETS
Assistant United States Attorneys

REGINALD E. JONES
Senior Trial Attorney

        *s/Kevin Rapp*
_____

JOHN J. KUCERA
Special Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Anne Chapman, Erin McCampbell, Gregory Zamora, James Grant, Lee Stein, Paul Cambria, Robert Corn-Revere, Ronald London, Janey Henze Cook, John Littrell, Kenneth Miller, Thomas Bienart, Jr., Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, David Wakukawa, Michael Piccarreta, Stephen Weiss, Gopi Panchapakesan, Ariel Neuman, Gary Lincenberg, Anthony Bisconti, Whitney Bernstein, Seetha Ramachandran.


 *s/Angela Schuetta*
U.S. Attorney's Office

# <u>Exhibit A</u>

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

United States of America,      )
                               )
                Plaintiff,     )      CR-18-0422-PHX-SPL
                               )
        vs.                    )      Phoenix, Arizona
                               )      November 16, 2018
Michael Lacey,                 )         9:06 a.m.
James Larkin,                  )
Scott Spear,                   )
John Brunst,                   )
Andrew Padilla,                )
Joye Vaught,                   )
                               )
                Defendants.    )
                               )
_____)


BEFORE:  THE HONORABLE STEVEN P. LOGAN, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTIONS HEARING


Official Court Reporter:
Elva Cruz-Lauer, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 33
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1      inquire, Your Honor.

2              THE COURT:  I don't have any questions for the

3      government on that either.

4              This is actually a perfect time to take our morning

5      recess.  Court will be in recess until 10:35.

6              (Recess taken at 10:18 a.m.; resumed at 10:37 a.m.)

7              THE COURT:  This Court will come to order.  All

8      parties present when the court last closed are present again.

9              The last thing I want to take up is Document Number

10     376.  I know we have the arguments that have already been

11     presented in the earlier 360; however, I will give the defense

12     an opportunity.

13             376 is the Defendants' Emergency Motion to Stay

14     Seizure of Attorneys' Fees, and that's Defendant Michael Lacey,

15     James Larkin, John Brunst, Scott Spears.  Emergency Motion to

16     Stay Seizure of Attorneys' Fees and Request for an Immediate

17     Hearing.  The supplemental brief is Document Number 377.

18             And Mr. Kucera, I am treating the government's

19     response as Document Number 371, since 371 was filed in the 360

20     original emergency motion to stay the seizure.  Is that what

21     you would like?

22             MR. KUCERA:  Notwithstanding the fact that these other

23     documents were filed after the response --

24             THE COURT:  Correct.

25             MR. KUCERA:  -- yes, Your Honor.

1              THE COURT:  I mean, would your response be pretty much

2       the same?  It's the same issue.

3              MR. KUCERA:  Certainly along those same lines, yes,

4       Your Honor.

5              THE COURT:  Okay.  Well, I will allow you an

6       opportunity to present on the record any additional information

7       you would like to as it relates to Docket Number 376, after I

8       hear from the defense.

9              MR. KUCERA:  Thank you, Your Honor.

10             THE COURT:  You're welcome.

11             Is there anyone from the defense that wishes to place

12      anything else on the record as it relates to Document Number

13      376?

14             MR. GRANT:  Briefly, Your Honor.  376 is the motion as

15      to Mr. Larkin, Lacey, Brunst, and Spear.

16             THE COURT:  For the record, Mr. Grant.  I just wanted

17      to make sure I had your name.

18             MR. GRANT:  I'm sorry, Your Honor.  I forgot.

19             THE COURT:  Go ahead.

20             MR. GRANT:  It raises very similar issues, the same

21      impropriety of the government's seizure in the first instance.

22      The basic proposition here that -- we are not here to talk

23      about *Monsanto* issues until we first establish whether the

24      government's seizures in the first instance were permissible.

25      You don't begin to talk about Monsanto until we find out if

1    they are legal in the first instance.

2         And I want to point out one other -- and that is not

3    the case here because the government couldn't effect the

4    seizures under the First Amendment.

5         I wanted to point out one other thing as well, that

6    the nature of the request here, of course, is we are asking the

7    Court to permit us to proceed with the stay and be able to

8    brief further and argue further about the government's

9    seizures.

10        And the issue is not so much looking at the exact

11   warrants that have been issued by the Central District of

12   California, it would simply be -- tell the government at this

13   stage, we are going to maintain the status quo, there will be

14   no seizures of attorney trust accounts going forward, in order

15   to be able to address that issue.  Without having to, you know,

16   parse through the warrants in the Central District of

17   California.

18        THE COURT:  Thank you very much.

19        Anyone else?

20        Mr. Kucera?

21        MR. KUCERA:  Yes, Your Honor, just briefly.

22        Defense counsel cites to Monsanto and points out just

23   essentially generally to several pages of Monsanto, that

24   Monsanto stands for the proposition that the government must

25   first establish the legality of its seizure prior to having

1    Monsanto hearing.

2              This isn't really found anywhere specifically.  There

3    is certainly no holding to that.  But the government takes the

4    point that there has to be some sort of legal mechanism by

5    which the government takes hold of this property.  The

6    government submits that that's exactly what it did by going out

7    and obtaining the seizure warrants based on probable cause from

8    a federal magistrate.

9              This isn't a function of like a PC arrest or a PC

10   seizure by an agent just at the discretion of the agent and

11   then having a decision made by a court after the fact.

12             The government went through the procedure that it

13   always goes through when it obtains a seizure warrant and does

14   have lawful possession of the asset pursuant to a seizure

15   warrant, or would have but for the stay.

16             THE COURT:  Thank you very much.

17             This is an oral decision.

18             After consideration of Defendant Andrew Padilla, Joye

19   Vaught's Emergency Motion to Stay Seizure of Attorneys' Fees

20   and Request for Immediate Hearing, which is Document Number

21   360, the government's response, which is Document Number 371,

22   the Defendants' Joint Reply, which is Docket Number 382, the

23   joinders and supplements, which are Docket Numbers 363, 365,

24   363, and 370, this Court's also taken into consideration the

25   arguments presented by counsel, and I rule as follows:

1    As it relates to Docket Number 360, this Court

2    declines to exercise jurisdiction over the seizure warrants at

3    issue in the emergency warrant -- I'm sorry, the emergency

4    motion.

5    It is well settled that a court should rarely

6    interfere with the order of another Court as any such

7    interference usurps the power of the rendering court.

8    Although courts have held that justice may

9    occasionally demand this type of interference, the

10   identification of those rare situations is committed to the

11   sound discretion of the District Court.

12   See *Ord versus United States* and also *Treadway versus*

13   *Academy of Motion Picture Arts and Sciences.*

14   Furthermore, the Ninth Circuit Court of Appeals has

15   held that considerations of comity and orderly administration

16   of justice demand that the nonrendering court should decline

17   jurisdiction of an action and remand the parties for their

18   relief to the rendering court.

19   See *Delson Group Incorporated versus GSM Association,*

20   which is also a Ninth Circuit case.

21   Through the emergency motion, the defendants are

22   seeking an order from this Court to interfere with two criminal

23   seizure warrants that were issued upon findings of probable

24   cause by a magistrate judge in the Central District of

25   California.

UNITED STATES DISTRICT COURT

1        This Court finds that the defendants have not set

2    forth any persuasive reasons as to why this Court should

3    interfere with the Central District of California's issuance of

4    the search warrants, and this Court finds that the defendants

5    have a sufficient legal remedy for any challenges to the

6    seizure warrants issued by the Central District of California

7    in that district.

8        Accordingly, the relief requested in the Defendants'

9    Emergency Motion to Stay Seizure of Attorneys' Fees and Request

10   for Immediate Hearing, which is Document Number 360, is denied.

11       The temporary stay imposed by this Court's order,

12   which is Document Number 361, is lifted and the government may

13   move forward with execution of the seizure warrants at issue if

14   so ordered.

15       As it relates to Docket Number 365, again, I have

16   carefully considered the pleadings, which are the Emergency

17   Motion to Stay the Seizure of Attorneys' Fees, which is

18   Document Number 365.  The government's response, which is

19   Document Number 371.  Counsel's reply to the response, which is

20   document -- I'm sorry, Docket Number 379, and the arguments of

21   counsel.

22       Again, this Court declines to exercise jurisdiction

23   over the seizure warrants at issue in this emergency warrant,

24   as already stated before, but since this is a different order

25   because there was a different filing under Document Number 365,

1  it's well settled that a court should rarely interfere with the

2  order of another court, as any such interference usurps the

3  power of the rendering court.

4          Although courts have held that justice may

5  occasionally demand this type of interference, the

6  identification of those rare situations is committed to the

7  sound discretion of the District Court.

8          See *Ord versus United States* or *Treadway versus the*

9  *The Academy of Motion Picture and Arts and Sciences,* both Ninth

10 Circuit cases.

11         Furthermore, the Ninth Circuit Court of Appeals has

12 held that considerations of comity and orderly administration

13 of justice demand that the nonrendering court should decline

14 jurisdiction of an action and remand the parties for their

15 relief to the rendering court.

16         See *Delson Group Incorporated versus GSM,* which is a

17 Ninth Circuit 2014 case.

18         Through the emergency motion, counsel seeks an order

19 from this court to interfere with one criminal seizure warrant

20 that was issued upon a finding of probable cause by a

21 magistrate judge in the Central District of California.

22         The movant has not set forth any persuasive reasons as

23 to why this Court should interfere with the Central District of

24 California's issuance of the seizure warrant, and this Court

25 finds that the movant has sufficient legal remedy for any

1    challenges to the seizure warrant issued by the Central

2    District of California in that district.

3            Accordingly, counsel's Emergency Motion to Stay

4    Seizure of Attorneys' Fees, which is Docket Number 365, is

5    denied.

6            The temporary stay imposed by this Court's order,

7    Docket Number 369, is lifted and the government may move

8    forward with executing the seizure warrants at issue if so

9    ordered.

10           And last, as it relates to Docket Number 376, this is

11   the Court's oral decision, after consideration of defendant

12   Michael Lacey, James Larkin, John Brunst, and Scott Spears'

13   Emergency Motion to Stay Seizure of Attorneys' Fees and Request

14   for Immediate Hearing, which is Document Number 376, the

15   supplemental brief, which is Document Number 377, and the

16   government's response, which is nearly identical to the

17   response 371, in the docket filing 360, this Court declines to

18   exercise jurisdiction over the seizure warrants at issue in the

19   emergency motion.

20           It is well settled that the court should rarely

21   interfere with the order of another court as any such

22   interference usurps the power of the rendering court.  Although

23   courts have held that justice may occasionally demand this type

24   of interference, the identification of those rare situations is

25   committed to the sound discretion of the District Court.

1          See *Ord versus United States*, or *Treadway versus The*

2   *Academy of Motion Picture, Arts and Sciences,* both Ninth

3   Circuit cases.

4          Furthermore, the Ninth Circuit Court of Appeals has

5   held that considerations of comity and orderly administration

6   of justice demand that the nonrendering court should decline

7   jurisdiction of an action and remand parties for their relief

8   to the rendering court.

9          See *Delson Group Incorporated versus GSM,* which is a

10  Ninth Circuit 2014 case.

11         Through the emergency motion the defendants are

12  seeking an order from this Court to interfere with nine

13  criminal seizure warrants that were issued upon a finding of

14  probable cause by a magistrate judge in the Central District of

15  California.

16         The defendants have not set forth any persuasive

17  reasons as to why the Court should interfere with the Central

18  District of California's issuance of the seizure warrants, and

19  the Court finds that the defendants have sufficient legal

20  remedy for any challenges to the seizure warrants issued by the

21  Central District of California in that district.

22         Accordingly, the Defendants' Emergency Motion to Stay

23  Seizure of Attorneys' Fees and Request for Immediate Hearing,

24  which is Document Number 376, is denied.  The temporary stay

25  imposed by this Court's order, which was Document Number 384,

| | |
|---|---|
| 1 | is lifted and the government may move forward with the |
| 2 | execution of the seizure warrants at issue, if so ordered. |
| 3 | The hearing is adjourned. |
| 4 | MR. PICCARRETA:  Judge, may I say one thing? |
| 5 | THE COURT:  I'm sorry? |
| 6 | MR. PICCARRETA:  May I say one thing? |
| 7 | THE COURT:  Sure.  Go ahead. |
| 8 | MR. PICCARRETA:  I would ask the Court to continue |
| 9 | this stay -- |
| 10 | THE COURT:  Can you speak into the microphone and tell |
| 11 | me who you are? |
| 12 | MR. PICCARRETA:  Mike Piccarreta. |
| 13 | Judge, we would ask the Court to stay these orders for |
| 14 | seven days to allow us time to consider bringing motions in the |
| 15 | Central District. |
| 16 | THE COURT:  Your request is denied. |
| 17 | The hearing is adjourned. |
| 18 | MS. BERNSTEIN:  Your Honor, may I address 377?  I |
| 19 | didn't have an opportunity to do that.  That was Mr. Larkin's |
| 20 | supplemental brief. |
| 21 | THE COURT:  I specifically asked you if there was any |
| 22 | defense counsel that wished to address that issue. |
| 23 | MS. BERNSTEIN:  I understood that to be about 376.  I |
| 24 | apologize. |
| 25 | THE COURT:  Go ahead. |

1          MS. BERNSTEIN:  Thank you, Your Honor.

2          Especially in light of the Court's ruling just now,

3    we -- I do want to just highlight the issues that were raised

4    by Mr. Larkin in Document Number 377.

5          He is in an untenable position that the government has

6    seized nearly all of his assets through Central District of

7    California seizure warrants, which we did challenge.  We raised

8    and briefed the serious Franks issues that were present there.

9    The government never responded to that on the merits.  Instead

10   said they could file a civil complaint.  Filed a civil

11   complaint.  They sought the stay and obtained a stay.  Now, the

12   government has obtained the seizure of funds, of all other

13   funds that were earmarked for Mr. Larkin's defense.

14         And additionally has put Mr. Larkin on notice that

15   should he spend other money that he has from newspaper print

16   proceeds, the government views that as somehow criminal,

17   subjecting him to possible further charges, as well as further

18   bond revocation.

19         Mr. Larkin owned a newspaper empire with the Phoenix

20   New Times, SF Weekly, LA Weekly, Village Voice, Denver

21   Westword, Dallas Observer, Miami New Times, many print

22   newspapers.  He had a history of running those.  He -- they

23   made millions of dollars.

24         They were sold and he continues to generate income

25   from the sale of the newspaper.  That is not Backpage money.

1    The government has -- and has not seized that money, but the

2    government has told Mr. Larkin that it will move to indict if

3    he does spend that money.  So he is in an untenable position

4    that he can't use money that was earmarked for his defense as

5    it was just restrained and seized, and he can't spend newspaper

6    print proceeds without any repercussions.

7            And so we are seeking clarity as to what money

8    Mr. Larkin, if he is able to use those newspaper print proceeds

9    to fund his legal defense and his life.

10           THE COURT:  Mr. Kucera, do you wish to respond to

11   that -- or Mr. Rapp?

12           MR. RAPP:  Well, first, this motion came in quite

13   late, and our response to the previous dockets doesn't really

14   address this.  We haven't had a chance to respond.  But in a

15   word, I don't know what she is talking about.

16           THE COURT:  I just asked co-counsel minutes ago if

17   there was some additional information that the government

18   wanted to place on the record and he had that opportunity.  I

19   don't know why -- what's your name again, ma'am?

20           MS. BERNSTEIN:  Whitney Bernstein.

21           THE COURT:  I don't know how you didn't understand

22   when I asked the question about the emergency motion, Document

23   Number 376, when I pointed to defense counsel if anyone had

24   anything to place on the record.  I don't know how you didn't

25   understand my question.

1        But Mr. Rapp, your co-counsel indicated that 371,

2   the -- when I asked the question, should it serve as the

3   response, he did say they had some additional information -- I

4   don't recall what you said exactly, Mr. Kucera, but I provided

5   the government with an opportunity to flush out the issue.

6        So go ahead.

7        MR. RAPP:  Well, I think there's some confusion.  You

8   were talking about 371.  This is 377.  This came in --

9        THE COURT:  No, there's no confusion.  My question

10  was, the issues raised in Docket Number 376 were similar to the

11  issues raised in 360.  I asked your co-counsel if he wanted to

12  use 371 to serve as a response.

13       Is that what I asked you, Mr. Kucera?

14       MR. KUCERA:  Yes, Your Honor.

15       THE COURT:  So where's the confusion?

16       MR. RAPP:  This is 377, not 376.  Maybe I could just

17  cut to the chase.

18       THE COURT:  Did you hear what I just told you?

19       MR. RAPP:  I --

20       THE COURT:  We are here to address document number --

21  Docket Number 376.  I understand 377 -- is her supplemental

22  brief, which is 377.  That's why I asked Mr. Kucera that exact

23  question, because I didn't receive a response from the

24  government.

25       MR. KUCERA:  Can we have a moment, Your Honor?

UNITED STATES DISTRICT COURT

1          THE COURT:  Of course.

2      (Discussion between government counsel held off the

3  record.)

4          MR. RAPP:  Judge, if the Court has any questions about

5  this motion, we are happy to respond to them.

6          THE COURT:  Go ahead.  Is there anything from you?

7          MS. BERNSTEIN:  We are seeking the government's

8  position that if Mr. Larkin accesses, utilizes money that is

9  newspaper print proceeds for his legal defense or his life, we

10  have been put on notice from the government that they would

11  find that to be criminal.

12          THE COURT:  Okay.  Is this relief that you are

13  requesting outside of what we were here for today?

14          MS. BERNSTEIN:  No, Your Honor.  I think it implicates

15  many of the same issues, it's just now, especially in light of

16  the fact that the money earmarked for the defense has been

17  restrained, Mr. Larkin -- we need some clarity as to whether he

18  can spend money that is not restrained and not related to

19  Backpage without incurring additional criminal charges.

20          THE COURT:  Is the government prepared to respond to

21  that?

22          MR. KUCERA:  The government is not prepared to respond

23  to it and I cannot imagine any situation where the government

24  ever would respond to the possibility of prospective action and

25  take a position on whether or not that action is subject to

1    indictment.

2           THE COURT:  Is there anything else you would like to

3    place on the record?

4           MS. BERNSTEIN:  Would the Court entertain an

5    evidentiary hearing upon further briefing at a later date as to

6    this issue?

7           THE COURT:  No.  This Court has ruled on the matters

8    that were pending, which is Docket Number 360, Docket Number

9    365, and Docket Number 376.  My ruling is on the record and the

10   hearing is adjourned.

11          MS. BERNSTEIN:  Thank you, Your Honor.

12          (Proceedings conclude at 10:58 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1          <u>C E R T I F I C A T E</u>

2

3          I, ELVA CRUZ-LAUER, do hereby certify that I am duly

4     appointed and qualified to act as Official Court Reporter for

5     the United States District Court for the District of Arizona.

6          I FURTHER CERTIFY that the foregoing pages constitute

7     a full, true, and accurate transcript of all of that portion of

8     the proceedings contained herein, had in the above-entitled

9     cause on the date specified therein, and that said transcript

10    was prepared under my direction and control.

11         DATED at Phoenix, Arizona, this 17th day of November,

12    2018.

13

14                                   <u>s/Elva Cruz-Lauer</u>
                                     Elva Cruz-Lauer, RMR, CRR
15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**