**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No.  CR-18-00422-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Michael Lacey, et al., | |
| Defendants. | |

Before the Court is the Government's Motion for Access to the Joint Representation and Joint Defense Agreements Previously Submitted by Defendants Michael Lacey and James Larkin for In Camera Review (the "Motion"). (Doc. 354)  The Motion was fully briefed on January 4, 2019.  For the reasons set forth below, the Motion is granted in part and denied in part.

**I.    Background**

On October 12, 2018, the Court issued an order denying the Government's motion to disqualify ("Motion to Disqualify") the law firm of Henze Cook Murphy from representing Defendant Michael Lacey and the law firm of Davis Wright Tremaine from representing Lacey and Defendant James Larkin. (Doc. 338)  On October 18, 2018, the Court issued an order denying the Government's motion to resolve attorney-client privilege issues. (Doc. 345)  In each of these orders, the Court relied on two documents: (i) a Common Interest and Litigation Management Agreement (the "JRA"), or joint representation agreement; and (ii) a joint defense agreement (the "JDA").  The JRA and

JDA (together, the "Defense Agreements") were submitted to the Court for in camera review as exhibits to the Defendants' response to the Motion to Disqualify. (Doc. 180 at 12)  The Government did not object to the Court's in camera review of the Defense Agreements at any point prior to the Court's rulings on the Government's motions.  On October 26, 2018, the Government filed the Motion seeking access to the Defense Agreements and a Joint Engagement Letter dated December 12, 2016 (the "Engagement Letter"), all of which were exhibits submitted with the Defendants' response to the Motion to Disqualify.

## II.    Discussion

The Government seeks access to the Defense Agreements on the basis that (i) the Defense Agreements are not protected by attorney-client or attorney work product privilege, and (ii) the Court's review of the Defense Agreements played a central role in denying two of the Government's motions. (Doc. 354 at 2–8)  The Government also argues that any privilege that may have attached to the Defense Agreements has been waived through various arguments made by the Defendants in this case. (Doc. 354 at 9–10)  In response, the Defendants argue that (i) the Government has waived its right to seek access to the Defense Agreements because the request is untimely; (ii) the Motion constitutes an improper attempt to relitigate the Government's earlier motions; and (iii) the Defense Agreements are protected by the attorney-client privilege. (Doc. 408)

The Government has not directed the Court to any controlling or persuasive authority that excuses its delayed request for access to the Defense Agreements.  The Government did not object to the Defendants' submission of the Defense Agreements for in camera review; therefore, the Court is confident in finding that the Government has now waived that objection. *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000) (stating that as a general matter, the government may waive certain defenses by not raising them in a timely manner).  There is very limited precedent discussing the proper timing of objections to evidence submitted to a court for in camera review in the context of a criminal case.  However, there is precedent demonstrating how other courts have handled challenges

to documents submitted for in camera review. *United States v. Whitworth*, 856 F.2d 1268, 1276–77 (9th Cir. 1988) (stating that defendant's failure to object to in camera review material was not reversible error); *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 631 (7th Cir. 2008) (stating that a defendant's failure to object to a court's in camera review of certain personnel files in a criminal case meant that the defendant was not prejudiced for not having access to the files).  In each of these instances, the challenges to the in camera review occurred before the respective courts reviewed the evidence at issue, and certainly not four months after the documents were submitted, reviewed, and then incorporated into a ruling.  The Court finds that the Government cannot seek access to the Defense Agreements on the basis of fairness when it did not challenge the submission of the Defense Agreements for in camera review during the course of active briefing.  The Government's argument that the Defense Agreements are "highly relevant" only accentuates the fact that the Government should have brought its objection to the Court's in camera review prior to the Court's ruling.

Furthermore, the Court finds that the Defendants have demonstrated that the Defense Agreements are protected under the attorney-client privilege.  The proper procedure for asserting the attorney-client privilege as to particular documents is to submit them in camera for the Court's inspection and provide an explanation of how the information fits within the privilege. *In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982).  It is well settled that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992).  However, the client's ultimate motive for litigation, motive for retention of an attorney, litigation strategy, the specific nature of the services provided, and the confidential communications between attorney and client made in order to obtain legal assistance are privileged. *Grand Jury Witness*, 695 F.2d at 362; *Clarke*, 974 F.2d at 129.  The burden of establishing that the attorney-client

privilege applies to the documents in question rests with the party asserting the privilege. *Clarke*, 974 F.2d at 129.

The Defendants submitted the Defense Agreements as exhibits to their pleading in response to the Government's Motion to Disqualify. (Doc. 180)  In the pleading, the Defendants asserted that the Defense Agreements "recognized that the parties shared interests in defending claims related to Backpage.com . . . [and] spelled out the parties' undertakings to retain joint counsel, share confidential information, and waive potential conflicts of interest." (Doc. 180 at 13)  Furthermore, the Defense Agreements "requested that [Davis Wright Tremaine] act as joint counsel . . . in connection with the California criminal case or other proceedings."(Doc. 180 at 7–8; Doc. 235 at 13)  The Court finds that the information described in the Defendants' pleadings demonstrates that the Defense Agreements go far beyond simply identifying parties, listing information related to fees and payments, and discussing the attorney services to be provided generally.  It is clear on the face of the pleadings that the Defense Agreements themselves constituted a trial strategy by contracting for a conglomerate of parties to band together for a common defense in the California litigation and future potential litigations.  Per the pleadings, the Defense Agreements discussed the parties' common interests in defending the California litigation and desire to coordinate a joint defense and share confidential information. (Doc. 235 at 13)  Furthermore, the Court's in camera review of the Defense Agreements finds that there is information present in the Defense Agreements that rises to the level of defense strategy. Therefore, the Court finds that the Defendants have met their burden of demonstrating that the Defense Agreements were privileged.  Accordingly, the Court finds that the Defense Agreements are protected by the attorney-client privilege, and the Government's Motion will be denied in part as it pertains to the JRA and JDA.

The stark difference between the Engagement Letter and the Defense Agreements helps demonstrate the Court's findings more thoroughly.  The Court finds that the information contained in the Engagement Letter is exactly the type of bare bones recitation of parties, fees, and general purpose of representation that is not protected by the attorney-

client privilege. *Clarke*, 974 F.2d at 129 (stating that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.) The Engagement Letter mirrors a version of the most common initial communication between lawyer and client, and the Court does not find that the information contained in the Engagement Letter has any bearing on legal planning, strategy or motive for retaining counsel. Accordingly, the Court will grant the Government's Motion as it applies to the Joint Engagement Letter dated December 12, 2016, that was filed as Exhibit A to the Declaration of James C. Grant in Support of Opposition to United States' Motion to Disqualify Counsel and submitted to the Court for in camera review.

Finally, the Government argues that any privilege protecting the Defense Agreements has been waived. In determining whether attorney-client privilege has been waived, a court considers: (i) whether the party is asserting the privilege as the result of some affirmative act; (ii) whether through this affirmative act, the asserting party puts the privileged information at issue; and (iii) the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense. *Home Indemnity Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995); *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). The Court finds that the Defendants have not invoked an implicit waiver of the attorney-client privilege based on this standard. First, the Court finds that responding to the Government's Motion to Disqualify constitutes an affirmative act. However, the Court finds that the Defendants did not put the entirety of the privileged information in the Defense Agreements at issue. As discussed above, the Defense Agreements address several aspects of the Defendants' agreement to move forward in future litigation as one group. The waivers at issue in the Motion to Disqualify and the Motion to Resolve Attorney-Client Privilege Issues are only one part of the overall agreement, and the Defendants have not summarized other vital parts of the Defense Agreements in any past pleadings or put those sections at issue in this case. Finally, the Court finds that denying the Government access to the Defense Agreements does not deny

it access to any information that is vital to the prosecution of this case. The contents of the Defense Agreements are not essential pieces of evidence necessary to any element of any offense that the Government has the burden of proving in this criminal case. Accordingly,

**IT IS ORDERED**:

1. That Government's Motion for Access to the Joint Representation and Joint Defense Agreements Previously Submitted by Defendants Michael Lacey and James Larkin for In Camera Review (Doc. 354) is **granted in part** as it applies to the Engagement Letter. Counsel for the Defendants shall provide a copy of the Engagement Letter to counsel for the Government within 21 days of this Order.

2. That Government's Motion for Access to the Joint Representation and Joint Defense Agreements Previously Submitted by Defendants Michael Lacey and James Larkin for In Camera Review (Doc. 354) is **denied in part** as it applies to the JRA and JDA.

Dated this 17th day of January, 2019.

_____
Honorable Steven P. Logan
United States District Judge