PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Suite 1000
Tucson, AZ  85701
(520) 622-6900
Michael L. Piccarreta
State Bar No. 003962
Email: mlp@pd-law.com
Attorney for Defendant Andrew Padilla

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR-18-00422-06-PHX-SPL |
| Plaintiff, | DEFENDANTS' JOINT STATUS REPORT |
| vs. | |
| 6.  Andrew Padilla,<br>    (Counts 1-51) | |
| Defendant. | |

Defendants, by and through their attorneys undersigned, hereby submit their Status Report for the hearing scheduled for January 25, 2019.

RESPECTFULLY SUBMITTED this 18th day of January, 2019.

**PICCARRETA DAVIS KEENAN FIDEL PC**
/s/ Michael Piccarreta
Attorney for Andrew Padilla

**FEDER LAW OFFICE, PA**
/s/ Bruce Feder
Attorney for Scott Spear

**LIPSITZ GREEN SCIME CAMBRIA, LLP**
/s/ Paul Cambria
Attorney for Michael Lacey

**BIENERT MILLER & KATZMAN, PLC**
/s/ Thomas Bienert, Jr.
Attorney for James Larkin

**BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW PC**
/s/ Gary Lincenberg
Attorney for Jed Brunst

**KIMERER & DERRICK, PC**
/s/ Michael Kimerer
Attorney for Jed Brunst

**KARP & WEISS, PC**
/s/ Stephen Weiss
Attorney for Joye Vaught

2

**DEFENDANTS' JOINT STATUS REPORT**

**I. INTRODUCTION**

The Defendants have requested a status conference because the Government's actions since the beginning of the case have created constant interference with the Defendants' ability to defend this case. Virtually all of the Defendants' assets have been seized, virtually all of the money in their attorneys' trust accounts designated to fund the defense has been been seized or is effectively frozen, and the Defendants are currently litigating those issues in the Central District of California and the Ninth Circuit Court of Appeals so they can continue to fund their defense. The Defendants therefore respectfully request that the Court continue Defendants' upcoming deadlines for a period of **four** (4) **months** to allow time for the Ninth Circuit and Central District of California to address Defendants' pending challenges to the Government's seizures and determine whether Defendants will be able to continue to exercise their right to counsel of choice. Defendants further request that the Court set another status hearing approximately four months from now.

Virtually all of the Defendants are without funds to pay for their defense. The Government seized nearly all their funds in overbroad and constitutionally deficient civil seizures executed at the outset of this case and in the ensuing months. Defendants have challenged those seizures as improper in the Central District of California, but, due to the Government's tactics, Defendants' objections to the seizures have not yet been heard. These issues currently are on appeal before the Ninth Circuit Court of Appeals.

The Government began seizing Defendants' assets and the assets of Backpage and other companies in April of 2018. The Government assured counsel for two defendants at that time that the Government was not seeking attorney trust funds. The Government first mentioned its "concerns" about funds for Mr. Padilla's representation in May of 2018, and Mr. Padilla's counsel provided a detailed response, setting forth reasons they and Mr. Padilla believed the funds were not tainted and could not be subject to seizure or forfeiture (*see* Doc. 360). The Government did not raise the matter again with Mr. Padilla's counsel until, after months of vigorous litigation, the Court issued numerous rulings in mid-October 2018, including denying the Government's attempt to disqualify the Davis Wright Tremaine firm. The Government obtained seizure warrants for the retainers shortly thereafter on October 31, 2018.

Defendants also challenged the propriety of the seizure warrants for the attorney trust funds, first in this Court and then in the District Court for the Central District of California. Although the warrants expired, the Government obtained the bulk of the funds in these trust accounts under the threat of execution of the warrants. Despite Defendants' challenges to the seizures, the Government has refused to return the funds. The Government has informed counsel for Defendants Padilla and Vaught that the trust funds they hold cannot be used to pay any fees earned after November 2018. (*See* Exhibit 1, attached hereto). The Government also has represented that it likely will seek to seize any funds remaining in the trust accounts, and that Defense Counsel may expose themselves to criminal liability if they use those funds to pay fees earned after November 2018. Thus, the Government has engaged in a pattern of

escalation resulting in the inability to use funds in attorney trust accounts. Challenges to these seizure warrants are currently in front of Magistrate Judge Rozella A. Oliver in California.

Additionally, the Government has produced over two terabytes of data to Defendants -- which likely translates to 10,000,000 to 22,000,000 documents.[1] For some perspective, two terabytes of data is the equivalent of 2,000 pickup truck loads of paper documents.[2] Due to the Government's seizures, Defendants cannot pay the costs of reviewing these documents -- which would include paying a third-party vendor to process and host these documents and

---

[1] To date, the Government has produced over 2.2 terabytes (2,200 gigabytes) of data to Defendants. Although it is not possible to directly translate terabytes or gigabytes to a number of documents, the range typically is 5,000 documents per gigabyte to 25,000 documents per gigabyte -- with 10,000 documents per gigabyte being the accepted norm. David Degnan, Accounting for the Costs of Electronic Discovery, *Minnesota Journal of Law, Science & Technology*, 2011, Vol. 12:1, p. 163. Using the 10,000 documents per gigabyte norm, and 2,200 gigabytes of data, the Government's production can be presumed to include roughly 22,000,000 documents. Even using the lowest figure in the range, 5,000 documents per gigabyte, the production likely includes at least 11,000,000 documents.

[2] *Degnan*, p. 160 and fn. 67 ("1 gigabyte of data is equivalent to about 75,000 pages of documents, which would fill a pickup truck.").

then paying lawyers to review them.[3]

As a result of the Government's actions, Defendants have been deprived of resources necessary to defend the case and have had to expend time and resources litigating the Government's actions, while continuing their best efforts to prepare for trial and comply with their upcoming obligations in this case. Therefore, Defendants respectfully request that the

---

[3] For Defendants to review these documents, there are two main costs: 1) the costs for a litigation support vendor to load, process, and host the documents on an electronic review platform like Relativity; and 2) the costs for personnel to review the documents. The costs for a litigation support vendor to load and cull data, with related costs, is typically in the range of $750 to $1,800 per gigabyte, with an industry average of about $1,000 per gigabyte. Degnan, p. 165. For 2,200 gigabytes, that would translate to $2,200,000. (This data processing cost would be incurred *in addition to* the cost for attorneys to review the data.)

For the review of documents, the standard assumption is that a reviewer can review 400 documents per day (allowing just over one minute to review each document, with eight hours of review each day). *Degnan*, p. 165. Even if Defendants could cull ½ the documents before review, by eliminating duplicates and obvious irrelevant documents with electronic tools, they would need to review 5,250,000 to 11,000,000 documents. To review that volume of documents across one year would require Defendants to engage 55 outsourced review lawyers on a full-time basis (400 documents per day x 55 lawyers x 5 days/week x 48 weeks/year = ~5,250,000 documents)) or 115 review lawyers (for 11,000,000 documents). Assuming an hourly rate for review lawyers at $40 per hour (the low end of the range for domestic reviewers, Degnan, p. 164), the cost for that initial review would be in the range of $4,576,000 to $9,568,000. Due to the Government's seizure of assets, even a reduced review cannot be undertaken. These figures do not include the cost of the defense team reviewing the documents identified by the review team as being pertinent to the Government's case or to the Defense. (And, if the number of documents per gigabyte turns out to be at the high end of the range, or if culling the documents removes less than ½ the documents, these rough estimates might understate the cost by a factor of two to ten.)

Moreover, Defendants believe the 2.2 terabyte figure, and hence the review costs, will grow significantly over time, as the Government has produced little or none of what it has seized from Backpage.com, LLC last year -- likely many tens of millions of electronic records. The 2.2 terabyte figure also does not include a similarly enormous number of documents that the Government's "partners" in California seized and are in the process of producing to Defendants.

Court continue Defendants' upcoming deadlines for a period of four months, to allow time for the Ninth Circuit and the Central District of California to address Defendants' pending challenges and determine whether Defendants will be able to keep their counsel of choice.

## II. PROCEDURAL HISTORY

### 1. The Government's Initial Seizures of Defendants' Assets

Commencing in April 2018, the Government seized, or otherwise caused to be frozen, millions of dollars of Defendants' money and other assets. (*See* Doc. 360.) In early August, Defendants challenged the constitutionality of those seizures in the District Court for the Central District of California, which is the district that authorized the civil seizure warrants used to seize those assets, under the First, Fourth, Fifth, and Sixth Amendments, as well as on *Franks* grounds. (See Mot. to Vacate (Doc. 6), 18-CV-06742.)

With respect to their First Amendment challenge, Defendants argued that the government's pursuit of the seizure of assets that constitute the proceeds of publishing activity before trial and a conviction through *ex parte* seizure warrants violated the First Amendment, pointing to *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46 (1989), and *Adult Video Ass'n v. Barr*, 960 F.2d 781(9th Cir. 1992) (readopted in *Adult Video Ass'n v. Reno*, 41 F.3d 503 (9th Cir. 1994)). Based on well-settled Supreme Court and Ninth Circuit authority, the Defendants believe that their efforts in the matter that is now pending before the Ninth Circuit will be successful.

In *Fort Wayne Books*, the Supreme Court reaffirmed that "rigorous procedural safeguards must be employed before expressive materials can be seized." 489 U.S. at 62.

The Court outlined the "special rules" that must be followed to render a pretrial seizure of expressive materials acceptable. First, the establishment of "mere probable cause to believe a legal violation has transpired is not adequate" to permit the pretrial seizure of expressive materials. *Id*. at 66. Second, the government cannot achieve the pretrial restraint of expressive materials through *ex parte* seizure warrants. Instead, the government must establish the "claimed justification for seizing" expressive materials "in an adversary hearing." *Id*. at 67. As a result, even though the materials that were seized prior to trial and without an adversary hearing might, ultimately, be forfeitable upon conviction, the Court explained that "the seizure at issue . . . [was] unconstitutional." *Id*. at 65.

Years later the Ninth Circuit recognized these same principles in *Barr*. In discussing the pretrial seizure of expressive materials that had occurred in *Fort Wayne Books* and the case pending before it, the Ninth explained that "[t]he First Amendment will not tolerate such seizures until the government's reasons for seizure weather the crucible of an adversary hearing." *Barr*, 960 F.2d at 788.

Further, even though *Fort Wayne Books* and *Barr* dealt directly with expressive materials, it is well-settled that the profits or proceeds of participation in protected expression are subject to the same "special rules" concerning pretrial forfeiture as are expressive materials. In S*imon & Schuster, Inc. v. Members of the New York State Crime Victims Bd*., 502 U.S. 105 (1991), the Court invalidated a law that "impose[d] a financial burden on speakers because of the content of their speech" as "presumptively inconsistent with the First Amendment." *Id*. at 115. The profits or proceeds that flow from participation in protected

expression are part and parcel of protected expression. *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 468-69 (1995) (recognizing that a statute that banned federal employees from accepting compensation for making speeches or writing articles "chills potential speech before it happens" because the "prohibition on compensation unquestionably imposes a significant burden on expressive activity"); *American Library Ass'n v. Thornburgh*, 713 F. Supp. 469, 484 n. 19 (D.D.C. 1989) (recognizing that the "pre-trial seizure of non-expressive material [including printing presses, bank accounts, etc.] *ex parte* from a business engaged in expressive material also is unconstitutional"), *rev'd on standing grounds sub nom. American Library Ass'n v. Barr*, 956 F.2d 1178, 1194-96 (D.C. Cir. 1992); *see also Citizens United v. F.E.C.*, 558 U.S. 310, 336-37 (2010) (explaining that law suppressing speech "may operate at different points in the speech process," including by "imposing a burden by impounding proceeds on receipts or royalties"); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 812 (2000) (recognizing that reducing the profitability of a business can infringe the First Amendment because "[t]he distinction between laws burdening and laws banning speech is but a matter of degree").

Indeed, the Department of Justice, too, knows that the proceeds of participation in protected expression are entitled to full First Amendment protection. In the wake of *Simon & Schuster*, the Department of Justice amended its Criminal Resource Manual explaining that special forfeiture statutes that had allowed the government to seek forfeiture of "proceeds received or to be received by criminals convicted of violent crimes from sales of the literary rights to their stories about their crimes" should not be enforced "because there is little doubt,

if any, that they are inconsistent with the First Amendment." U.S. D.O.J. Criminal Resource Manual § 1104 (quotations omitted).

Critically, numerous courts have recognized that the publication of classified advertisements, even advertisements for adult services, are protected expression. *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015) (recognizing that Backpage's publication of classified advertisements constituted protected expression); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1280-82 (W.D. Wash. 2012) (invalidating state law targeting Backpage and holding that the advertisements posted on the website are constitutionally protected speech); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *8 (D.N.J. Aug. 20, 2013) (same regarding a different state law).

In response to Defendants' challenges to the seizures, the Government employed a variety of procedural tactics to avoid having any court hear Defendants' challenges. First, by way of an *ex parte* submission, the Government asserted that these issues should be addressed before this Court, not in the Central District of California. Then, while motions related to the seized assets were pending both in this Court and in the Central District of California, the Government filed dozens of civil forfeiture complaints in the Central District of California and moved *ex parte* for a stay of all civil forfeiture proceedings (including the motion pending in California), pending resolution of the criminal case. The Honorable R. Gary Klausner (U.S.D.J., C.D.C.A.) granted that motion. The stay order and the constitutionally infirm civil seizures are currently on appeal before the Ninth Circuit. Defendants do not anticipate that the Ninth Circuit will issue a decision on the appeal any

earlier than April 2019. As set forth in greater detail below, Defendants' inability to obtain a prompt adversary hearing on the Government's seizures has impacted this case.

**2. The Government's Seizures of Funds Contained in Attorney Trust Accounts**

The Government's recent seizure of funds contained in attorney trust accounts has seriously and adversely impacted Defense Counsel's ability to prepare for trial and comply with the upcoming deadlines in this case. Defendants initially raised the validity of these seizures with this Court. Although the Government previously took the position in front of Judge Klausner that any issues pertaining to its seizures should be heard by this Court, the Government asserted the contrary position before this Court -- that the attorney trust account seizures should be dealt with by the District Court for the Central District of California, the court that issued the warrants. This Court agreed with the Government and denied the Motion. (Doc. 393).

Defendants, and counsel for other interested parties whose fees were also the subject of seizure warrants, then filed an Application and Motion to (1) Stay Execution of Seizure Warrants; and (2) Provide Notice to the Court of First Amendment and *Franks* Violations on November 21, 2018, in the Central District of California. The Government's primary response was that these seizure warrants had expired, and therefore Defendants' arguments were moot. This was despite the fact that the Government had obtained the bulk of the funds in the trust accounts under the threat of the impending seizures. The Government also indicated the likelihood the seizure warrants for any remaining retainers would be reissued. Moreover, the Government has refused to agree that Defense Counsel may draw upon any

11

funds remaining in their attorney trust accounts to cover their clients' fees for any services rendered after November 2018, despite Defendants' pending motion to stay those seizures. On December 12, 2018, a hearing was held before Judge Oliver.[4] Following this hearing, Judge Oliver ordered the parties to submit further briefing. Defendants' motion now is fully briefed and the parties are awaiting a ruling from Judge Oliver.

### III. PROPOSED SUBJECTS OF DISCUSSION AT THE STATUS CONFERENCE

Without a current ability to access adequate funds to pay for their defenses, Defendants cannot meaningfully comply with their upcoming discovery obligations, including reciprocal Rule 16 discovery and expert disclosures, which are due on March 4 and March 14, 2019, respectively. The Government's actions have effectively precluded Defendants from continuing to pay for their counsel of choice, who have represented them since (and sometimes before) the indictment was issued.

Under these circumstances, it is exceedingly difficult for the Defendants to continue to prepare for trial and comply with their upcoming discovery obligations. Defense Counsel

---

[4] During the December 12 hearing, in response to a question from Judge Oliver regarding the Government's "de facto" seizures of the remaining funds contained in the attorney trust accounts, counsel for the Government stated that the use of these funds to pay for the costs of the defense might be viewed by the Government "as being criminal activity prospectively." This implied threat has precluded most of Defendants from funding their defense by using retainer money that the Government may seek to seize (again) at some point in the future. Notably, the Government's efforts to deprive Defendants of access to trust funds deposited to fund their defenses stands in stark contrast to the position the Government has taken on the trust funds held by the defense counsel for cooperators Ferrer and Hyer, as it has permitted the cooperators' counsel to freely expend similarly-sourced funds in their trust accounts.

cannot retain experts, who will require retainers and some assurance that their fees will be paid. It is highly unlikely that any expert would agree to provide services under the circumstances. Defense Counsel also have been unable to make any meaningful review of the documents produced by the Government.

Defendants therefore request that the Court continue their upcoming obligations under the current Scheduling Order for **four (4) months**, to allow time for the Ninth Circuit Court of Appeals and the District Court for the Central District of California to address Defendants' pending challenges to the Government's seizures. Defendants further request that the Court set another status hearing approximately four months from now.[5] Depending on the timing and substance of the decisions of the Ninth Circuit Court of Appeals and the District Court for the Central District of California, Defendants may need to seek other relief from this Court.

---

[5] By seeking to extend certain upcoming deadlines, Defendants are not asking the Court to defer ruling on any pending motions, including, but not limited to, Defendant Lacey's pending Motion for Release of Funds (Doc. 385). Lacey's motion concerns funds that are unrelated to Backpage -- funds originating with Voice Media Group, Inc. and paid in connection with its purchase of *The Village Voice* and other print newspapers in 2013. Release of these approximately $1.1 million in funds would enable Lacey's counsel to continue to pursue his client's interests in this matter.

DATED this 18th day of January, 2019.

**PICCARRETA DAVIS KEENAN FIDEL PC**
/s/ Michael Piccarreta
Attorney for Andrew Padilla

**FEDER LAW OFFICE, PA**
/s/ Bruce Feder
Attorney for Scott Spear

**LIPSITZ GREEN SCIME CAMBRIA, LLP**
/s/ Paul Cambria
Attorney for Michael Lacey

**BIENERT MILLER & KATZMAN, PLC**
/s/ Thomas Bienert, Jr.
Attorney for James Larkin

**BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW PC**
/s/ Gary Lincenberg
Attorney for Jed Brunst

**KIMERER & DERRICK, PC**
/s/ Michael Kimerer
Attorney for Jed Brunst

**KARP & WEISS, PC**
/s/ Stephen Weiss
Attorney for Joye Vaught

14

# CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of January, 2019, I electronically transmitted the foregoing to the Clerk of the Court via the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Kevin Rapp:**  Kevin.Rapp@usdoj.gov
**Andrew Stone:**  Andrew.Stone@usdoj.gov
**Margaret Perlmeter:**  Margaret.Perlmeter@usdoj.gov
**John Kucera:**  John.Kucera@usdoj.gov
**Reginald Jones:**  Reginald.Jones@usdoj.gov
**Peter S. Kozinets:**  Peter.Kozinets@usdoj.gov
**Amanda Wick:**  Amanda.Wick@usdoj.gov
*Attorneys for the United States*

**Paul Cambria:**  pcambira@lglaw.com
**James Grant:**  jimgrant@dwt.com
**Erin McCampbell:**  emccampbell@lglaw.com
**Robert Corn-Revere:**  bobcornrevere@dwt.com
**Ronald London:**  ronnielondon@dwt.com
**Janey Henze Cook:**  janey@henzecookmurphy.com
**John Littrell:**  jlittrell@bmkattorneys.com
**Kenneth Miller:**  kmiller@bmkattorneys.com
**Whitney Bernstein:**  wbernstein@bmkattorneys.com
**Michael Piccarreta:**  mlp@pd-law.com
**Stephen M. Weiss:**  sweiss@karpweiss.com
**Michael Kimerer:**  mdk@kimerer.com
**Tom Bienert:**  tbienert@bmkattorneys.com
**Gary Lincenberg:**  gsl@birdmarella.com
**Ariel Neuman:**  aneuman@birdmarella.com
**KC Maxwell:**  kcm@kcmaxlaw.com
**David Wakukawa:**  dsw@kcmaxlaw.com
**Tom Henze:**  Tom@henzecookmurphy.com
*Attorneys for the Defense*

*By: /s/*  Melissa Hahn

# EXHIBIT 1

## Barbara Polowetz

**From:** Michael Piccarreta
**Sent:** Saturday, January 5, 2019 9:45 AM
**To:** Barbara Polowetz
**Cc:** Jefferson Keenan
**Subject:** Fwd: Padilla: November redacted billings

**From:** "Wick, Amanda (CRM)" <Amanda.Wick@usdoj.gov>
**Date:** January 4, 2019 at 11:18:51 PM MST
**To:** Michael Piccarreta <mlp@pd-law.com>
**Cc:** "sweiss@karpweiss.com" <sweiss@karpweiss.com>
**Subject: RE: Padilla: November redacted billings**

Mike, apologies for not responding to your email sooner. I was traveling for the last few weeks and had eye surgery, and am just catching up on correspondence that came in while I was out.

I do not remember you conditioning production of your invoices on who reviewed them, because had you raised it prior to producing the invoices, I would have told you the government would not agree to this. MLARS is assisting the prosecution team with the IOLTA funds issue, and some other related forfeiture issues. We are all criminal prosecutors and all part of the "criminal prosecution" team, in that sense. However, as recent additions to the team, our knowledge of the case and its history is limited, and there was no way we could do any kind of substantive due diligence review of the bills without consulting other attorneys on the team. However, the promise I *did* make to you – that the invoices you provided would be used solely for our due diligence review, no matter who reviewed them – does still stand.

Also, there is no need to send invoices beyond November 2018 at this point in time. During the execution of the seizure warrants, the government stated it would not be seizing earned fees up through the date of seizure, and asked for bills through the end of November. Subsequently, litigation ensued and that matter is still pending resolution. Please do not move any funds from any Backpage entities that were for fees earned after November 2018. Those funds should remain in your IOLTA account until the litigation is resolved.

If you have any additional questions or requests, please let me know.

Thanks,

**Amanda Schlager Wick**
Trial Attorney, Asset Forfeiture & Money Laundering Unit
Money Laundering & Asset Recovery Section (MLARS)
1400 New York Ave. NW, 10th Floor
U.S. Dept. of Justice, Washington, D.C. 20004
(202) 514-2842
(202) 597-0435 (cell)
(202) 514-5522 (fax)

1

**CONFIDENTIALITY NOTICE:** This communication with its contents and attachments, if any, may contain confidential, law enforcement sensitive, privileged attorney/client communications or work products, and is not subject to disclosure. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use, or disclosure is prohibited. If you believe that you have received this communication in error, please notify the sender immediately and permanently delete the email, any attachments, and all copies from your computer.

**From:** Barbara Polowetz [mailto:bpolowetz@pd-law.com]
**Sent:** Monday, December 10, 2018 11:47 AM
**To:** Wick, Amanda (CRM) <Amanda.Wick@CRM.USDOJ.GOV>
**Cc:** Michael Piccarreta <mlp@pd-law.com>; sweiss@karpweiss.com
**Subject:** RE: Padilla: November redacted billings

Amanda,

In my initial packet of invoices, I requested that the invoices not be shared with attorneys working on the criminal prosecution and I would request the same for the packet I sent to you on December 7. I understand that the government needs to review these for the purpose of doing due diligence but by providing the past invoices and this recent invoice, we would request that they not be disseminated other than to personnel needed to complete this due diligence task. Best wishes.

Mike Piccarreta


**From:** Barbara Polowetz
**Sent:** Friday, December 7, 2018 10:38 AM
**To:** 'Amanda.Wick@usdoj.gov' <Amanda.Wick@usdoj.gov>
**Cc:** Michael Piccarreta <mlp@pd-law.com>
**Subject:** Padilla: November redacted billings

Amanda,

I previously sent you billings in the format that we use when we send billings to third party payors. The billings are in those formats as when the corporation or some other third party is paying the bill, we err on the side of caution by not disclosing the details of any work performed on behalf of the client. We were advised today that the government needs slightly more detail but without releasing any privileged information in order to do its due diligence in order to approve the November withdrawal from the IOLTA trust account. Accordingly, I have attached a copy of the redacted client billing which is the same billing, minus redactions of course, that is sent to the client. Based on our conversation, I am assuming this redacted version is similar to some of the billings that you have received from other law firms.

2

I would request that the government review this redacted billing as soon as possible and authorize us to receive payment from the IOLTA trust account for earned fees in the month of November.

Feel free to give me a call if you have any questions. Best wishes.

Mike Piccarreta

Barbara Polowetz, Legal Assistant
PICCARRETA DAVIS KEENAN FIDEL PC
2 East Congress Street, Ste 1000, Tucson, AZ 85701
t 520.622.6900, ext. 137 | f 520-622-0521 | www.pd-law.com