**United States v. Lacey, et al.**

**Case No. 18-CR-0422-PHX-SMB**

## <u>INDEX OF EXHIBITS</u>

| EXHIBIT | DESCRIPTION |
|:---:|:---|
| A | Discovery production chart prepared by Defendants |
| B | Virus & malware report generated by TrendMicro security software |
| C | Letter from M. Piccarreta to K. Rapp dated October 26, 2018 |
| D | Letter from R. Jones to W. Bernstein dated March 7, 2019 |
| E | Email chain between R. Jones and W. Bernstein dated April 10, 2019 |

# EXHIBIT A

*United States v. Lacey, et al.,* Case No. 18-CR-0422-PHX-SMB
**PRODUCTION CHART**

| Production # | Date | Pages | Bates Range | Government's Purported "Index" | Assorted Summary of Actual Contents |
|---|---|---|---|---|---|
| 1 | May 24, 2018 | 4,426,710 | 1-4426710 | Hard Drive #1:<br>  "USAO 108 Subpoena;<br>  PSI;<br>  USAO 359 Subpoena;<br>  CA Dep't of Justice;<br>  Carl Ferrer Gmail;<br>  Add'l Co-Star;<br>  SW Applications/Affidavits and Sealed GJ Pleadings/Orders;<br>  USAO 108 Subpoena (supplemental)" | "USAO 108 Subpoena" refers to 1,037,594 pages, with no other identification or indexing;<br>  "PSI" refers to over one million pages from a U.S. Senate subcommittee, with no other identification or indexing;<br>  "CA Dep't of Justice" refers to over 34,000 pages obtained from California, with no other identification or indexing;<br>  "Carl Ferrer Gmail" refers to over 1.7 million pages, with no other identification or indexing (including many irrelevant documents, like emails about Ferrer's children's activities and school);<br>  "USAO Subpoena 108 (supplemental) refers to an additional 1,089 pages, with no other identification or indexing. |
| | | 5,948,910 | 1-5901038 & 1-47872 | Hard Drive #2:<br>  "Co-Star records" | "Co-Star Records" refers to nearly 6 million pages, with no other identification or indexing (including many irrelevant documents, like documents relating to customers of Co-Star other than Backpage, computer system files, and documents relating to Backpage operations in foreign countries.  The data has not been loaded to an electronic database because of the costs associated with readying the files for loading and because many of the files may contain viruses and malware. |

*United States v. Lacey, et al.*, Case No. 18-CR-0422-PHX-SMB

**PRODUCTION CHART**

| 2 | July 2, 2018 | 174,326 | 4426712-4601038 | "Released Records; Civil Seizure Warrants" (Clawed Back) | This production contained over 174,000 pages, with no other identification or indexing. The production included large numbers of documents from previous civil litigation ("J.S."), as well as copies of civil seizure warrants, documents from NCMEC, and FBI 302s and other investigation documents, among others.  (The government clawed back portions of this production.) |
|---|---|---|---|---|---|
| 3 | July 19, 2018 | 1.071 | 4601039-4602110 | "Hot Docs" | This production contained over 1,000 pages, with no other identification or indexing.  The government asserts these documents are "hot docs" supporting its charges—although defendants don't understand this claim. |
| 4 | September 24, 2018 | 81,433 | 4602111-4683544 | "Backpage Agendas;   Backpage Superseding Indictment 'Hot Docs';    Co-Star 'Hot Docs';    Financial Records" | "Backpage Agendas" refers to 397 pages of meeting agendas from 2006 through 2015, with no other identification or indexing;   "Backpage Superseding Indictment 'Hot Doc'" refers to 344 pages purportedly supporting the superseding indictment, with no other identification or indexing;   "Co-Star 'Hot Docs'" refers to a training manual for Co-Star and a several page contract between Avion and Backpage from October 2013;   "Financial Records" refers to over 80,000 pages of bank records for Michael Gage, Posting Solutions, Website Technologies, and others, with no identification or indexing. |

2

*United States v. Lacey, et al.,* Case No. 18-CR-0422-PHX-SMB
**PRODUCTION CHART**

| 5 | October 4, 2018 | | | Reproduction of 79 documents from the July 2, 2018 production | This production reproduced, with redactions, several thousand pages of the documents from production no. 2 that the government previously clawed back. |
|---|---|---|---|---|---|
| 6 | October 10, 2018 | 2,260 | 4683545-4685805 | "Victim Records" | This production contained over 2,200 pages of so-called "victim records," with no other identification or indexing. The documents include FBI 302s, police reports, copies of Backpage ads, and documents from previous civil litigation against Backpage. |
| 7 | November 30, 2018 | 34,730 | 4685806-4720536 | "Add'l Superseding 'Hot Docs'; Backpage Historical Ads; Erick Bauer Civil Case; John Becker Documents; Add'l CA Dep't of Justice; Add'l Financial Records; Add'l Search Warrants and Affidavits; Add'l Victim Records; WDWA BP GJ Transcripts" | "Add'l Superseding 'Hot Docs'" refers to 71 additional "hot docs," with no other identification or indexing; "Backpage Historical Ads" refers to over 2,800 pages of ads (spanning from 2006-2013), apparently selected by the government from among the tens of millions of ads that ran on Backpage during that period, with no other identification or indexing; "Erick Bauer Civil Case" refers to a document dump from previous civil litigation against Backpage (the J.S. case), with no other identification or indexing; "John Becker Documents" refers to 2,785 pages of documents obtained via a grand jury subpoena to an attorney for one of the defendants, with no other identification or indexing; "Add'l CA Dep't of Justice" refers to over 8,700 pages of documents, with no other identification or indexing; |

3

*United States v. Lacey, et al.*, Case No. 18-CR-0422-PHX-SMB
**PRODUCTION CHART**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | "Add'l Financial Records" refers to over 16,000 pages of documents, with no other identification or indexing;  "Add'l Search Warrants and Affidavits" refers to over 2,700 pages of documents, with no other identification or indexing;  "Add'l Victim Records" refers to 376 pages of documents, many duplicative of previously produced documents, with no other identification or indexing;  "WDWA BP GJ Transcripts" refers to 826 pages of transcripts of various witnesses from a grand jury investigation in Washington, with no other identification or indexing. |
| 8 | February 22, 2019 | 26,033  *plus* | 4720537-4746570 | "BDO Consulting Documents;  Reports of Interviews;  Subpoena Compliance,  Reports of Interviews, and other FBI Case Documents" | This production contained over 26,000 pages, with no other identification or indexing, plus thousands of pages of "victim records" and over 37 hours of recorded audio/video.  The numbered portion of the production appears to include documents produced by BDO (an accounting/consulting firm), documents relating to research conducted by one of the government's noticed experts, grand jury subpoenas, and documents related to the government's seizure and review of electronic devices.

The "victim records" includes thousands of pages of documents and lengthy recordings of interviews pertaining to crimes having no apparent connection to the charges in this |
| | | Unnumbered "victim records" | 6 add'l DVDs | "ROIs for Dan Hyer;  Jail Calls for Lacey and Larkin; | |

*United States v. Lacey, et al.*, Case No. 18-CR-0422-PHX-SMB
**PRODUCTION CHART**

| | | | | | |
|---|---|---|---|---|---|
| | | & <br><br>Unnumbered audio/video recordings of at least 37:54:22 | | interview from local investigation of James C. Brown; <br>    local investigation of Victim #4; <br>    local investigation of Victim #15" | case—except that someone connected to the crimes may, at some time, have placed an ad on Backpage. |
| 9 | March 14, 2019 | 44,669 | 4746571-4791240 | "Add'l Financial Records; <br>    Add'l Reports of Interview; <br>    Add'l Subpoena Compliance, Reports of Interviews, and other FBI Case Documents" | This production contained nearly 45,000 pages, with no other identification or indexing. The production appears to include FBI 302s, financial records from Backpage, unredacted bank records from attorney trust accounts for defense counsel for defendants and their entities, and unredacted records from banks and other financial institutions for defendants. |
| 10 | April 11, 2019 | 66,048 | 4791241-4857289 | "Add'l BDO Consulting Docs; <br>    EPIQ data; <br>    Sampling of Backpage Ads with Associated Databases and Images" | This production contained more than 66,000 pages, with no other identification or indexing. This production was recently received and contained viruses and malware. |
| TOTAL | | 10,806,199 & unnumbered records & nearly 38 hours of audio/video | | | |

# EXHIBIT B

📄 Export

| Date/Time ▼ | File Name/Target | Threat | Result | Scan Type | Path |
|---|---|---|---|---|---|
| 4/12/2019 (Fri) 13:10 | DOJ-BP-0004827945.msg | TSC_GENCLEAN | Cleaned | DCS | E:\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 13:10 | DOJ-BP-0004827945.msg | TSC_GENCLEAN | Cleaned | DCS | E:\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 13:10 | DOJ-BP-0004827945.msg | WORM_CRIDEX.TN | Quarantined | Scheduled Scan | E:\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 13:09 | DOJ-BP-0004824343.msg | TSC_GENCLEAN | Cleaned | DCS | E:\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 13:09 | DOJ-BP-0004824343.msg | TSC_GENCLEAN | Cleaned | DCS | E:\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 13:09 | DOJ-BP-0004824343.msg | JS_REDIR.EX | Quarantined | Scheduled Scan | E:\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 12:24 | DOJ-BP-0004827945.msg | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\Desktop\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 12:24 | DOJ-BP-0004827945.msg | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\Desktop\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 12:24 | DOJ-BP-0004827945.msg | WORM_CRIDEX.TN | Quarantined | Scheduled Scan | C:\Users\cboyd\Desktop\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 12:23 | DOJ-BP-0004824343.msg | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\Desktop\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 12:23 | DOJ-BP-0004824343.msg | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\Desktop\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 12:23 | DOJ-BP-0004824343.msg | JS_REDIR.EX | Quarantined | Scheduled Scan | C:\Users\cboyd\Desktop\190408 - Backpage Discovery\VOL000002\NATIVES\NATIVE000001\ |
| 4/12/2019 (Fri) 12:16 | DOJ-BP-0004827945_2336280.msg | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\AppData\Local\Box\Box\unsyncedFiles\ |
| 4/12/2019 (Fri) 12:16 | DOJ-BP-0004827945_2336280.msg | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\AppData\Local\Box\Box\unsyncedFiles\ |
| 4/12/2019 (Fri) 12:16 | DOJ-BP-0004827945_2336280.msg | WORM_CRIDEX.TN | Quarantined | Scheduled Scan | C:\Users\cboyd\AppData\Local\Box\Box\unsyncedFiles\ |
| 4/12/2019 (Fri) 12:15 | DOJ-BP-0004824343_2332683.msg | JS_REDIR.EX | Quarantined | Scheduled Scan | C:\Users\cboyd\AppData\Local\Box\Box\unsyncedFiles\ |
| 4/12/2019 (Fri) 12:15 | DOJ-BP-0004824343_2332683.msg | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\AppData\Local\Box\Box\unsyncedFiles\ |
| 4/12/2019 (Fri) 12:10 | b1e283b5-e2d5-4742-be7e-5399d3cfd0ef | JS_REDIR.EX | Quarantined | Scheduled Scan | C:\Users\cboyd\AppData\Local\Box\Box\cache\ |
| 4/12/2019 (Fri) 12:10 | b1e283b5-e2d5-4742-be7e-5399d3cfd0ef | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\AppData\Local\Box\Box\cache\ |
| 4/12/2019 (Fri) 12:05 | 12019b82-7b80-4c62-9d60-9f4a1542ba82 | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\AppData\Local\Box\Box\cache\ |
| 4/12/2019 (Fri) 12:05 | 12019b82-7b80-4c62-9d60-9f4a1542ba82 | TSC_GENCLEAN | Cleaned | DCS | C:\Users\cboyd\AppData\Local\Box\Box\cache\ |
| 4/12/2019 (Fri) 12:05 | 12019b82-7b80-4c62-9d60-9f4a1542ba82 | WORM_CRIDEX.TN | Quarantined | Scheduled Scan | C:\Users\cboyd\AppData\Local\Box\Box\cache\ |

# EXHIBIT C

PICCARRETA DAVIS KEENAN FIDEL PC
LAWYERS

MICHAEL L. PICCARRETA
JEFFERSON KEENAN
LOUIS S. FIDEL

2 EAST CONGRESS STREET, SUITE 1000
TUCSON, ARIZONA 85701
(520) 622-6900
FAX (520) 622-0521
WWW.PD-LAW.COM

BARRY M. DAVIS
(1948-2016)

October 26, 2018

**VIA EMAIL: <u>kevin.rapp@usdoj.gov</u>
AND U.S. FIRST CLASS MAIL**

Kevin Rapp, Esq.
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Ste. 1200
Phoenix, AZ 85004-4408

    Re:    United States v. Lacey, *et al.*, No. CR-18-00422-PHX-SPL (BSB)

Dear Kevin:

    I am writing to request that the government comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), and to provide you with an enumerated list of documents we believe fall within this mandate.[1] As acknowledged in Judge Logan's order on our request for itemization of *Brady/Giglio* material: "*Brady* places an affirmative duty on the prosecutor to seek out information in the government's possession that is favorable to the defendant; here, the Government has the duty to affirmatively review its discovery materials in order to determine and acquire those materials which would be considered *Brady* exculpatory and *Giglio* impeaching materials." Doc. 339, p. 3.

    This part of Judge Logan's order is, of course, based on well-settled case law. *See Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *United States v. Price*, 566 F.3d 900, 908-09 (9th Cir. 2009); *United States v. W. R. Grace*, 401 F.Supp.2d 1069, 1075-76 (D. Mont. 2005), *id.*, as well as the Justice Manual which requires federal prosecutors to conduct a

---

[1] My October 23, 2018, letter to Reginald Jones specifically addressed the *Brady* and *Giglio* issues relating to the government's request to claw back "inadvertently" disclosed *Brady/Giglio* materials in specific government memoranda. This letter supplements that separate request.

PICCARRETA DAVIS KEENAN FIDEL PC

"review process" of investigative agency files, witness files, evidence and information gathered during the investigation, substantive case-related communications, potential *Giglio* information relating to witnesses, and information obtained in witness interviews. Justice Manual, § 9-5.002(B). The Justice Manual also states that "[h]aving gathered the information described above, prosecutors must ensure that the material is reviewed to identify discoverable information." *Id.*[2] Importantly, for the purposes of the *Brady/Giglio* material in this case, "[a] prosecutor must disclose information that is *inconsistent with any element of any crime charged* against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime." *Id.*, § 9-5.001(C)(1) (emphasis added). "[T]his policy encourages prosecutors to err on the side of disclosure in close questions of materiality and identify standards that favor greater disclosure in advance of trial through the production of exculpatory information that is *inconsistent with any element of any charged crime* and impeachment information that casts a substantial doubt upon either the accuracy of any evidence the government intends to rely on to prove an element of any charged crime or that might have a significant bearing on the admissibility of prosecution evidence." *Id.*, § 9-5.001(F) (emphasis added). As the defendants have previously noted, the Travel Act and money laundering offenses charged against the defendants are both specific intent crimes.[3] Therefore, any information in the government's possession that would tend to negate this *mens rea* is *Brady* material that must be disclosed to the defendants.

There appears to be no fundamental disagreement regarding your constitutional obligations. At the hearing on the motion for itemization of the *Brady/Giglio* materials, the government assured the court that the government understood and would comply with its *Brady/Giglio* obligations:

| THE COURT: | If you do have exculpatory information, I'm sure it's your position that you'll turn that over immediately. |
|---|---|
| MR. STONE: | 100 percent. The exculpatory material is absolutely going over to the extent there is anything exculpatory. And we are doing our review as required under *Brady*, |

---

[2] Internal Department of Justice memoranda also "command an *actual review* of the materials acquired during investigation of a criminal case for the purpose of disclosing *Brady/Giglio* materials." *United States v. Salyer*, 2010 WL 3036444, *3 (E. D. Cal. 2010) (citing *Memorandum for Department Prosecutors*, dated January 4, 2010).

[3] *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974); *United States v. Gurolla*, 333 F.3d 944, 957 (9th Cir. 2003).

PICCARRETA DAVIS KEENAN FIDEL PC

> *Giglio*, and Rule 16 to determine what we might have
> in our investigative files, and that's going over.

Reporter's Transcript, October 5, 2018, p. 104.

However, after providing those assurances to the court, the government also stated that the agents working on this case have not pulled out anything that they consider exculpatory. *Id.* at 114 ("[W]e have not identified or segregated a document or subset of documents that would be identified as *Brady*"). The government added: "If we come across documents that fall into *Brady* or exculpatory, just to identify those to the defendants, we could do that, Your Honor." *Id.* As noted above, the government assured the court that the government would turn over any *Brady/Giglio* material that it comes across in the future to the defendants immediately. As a consequence, Judge Logan's order specifically "notes that at the October 5th hearing the Government stipulated that it will turn over any *Brady/Giglio* material that it comes across in the future to the Defendants within 10 days. The court implores the Government to abide by this stipulation, without an order from the court." Doc. 339, pp. 5-6.

Despite this pledge to adhere to legal obligations, the government made repeated statements to the court that the government is purportedly "unclear" or "unsure" about what exculpatory *Brady/Giglio* material "would look like." The government stated that, with respect to each specific defendant:

> here are the documents that relate to your defendant, why we think the allegations and the facts support the charges in the superseding indictment.
>
> What they have asked for is the converse of that, which is give us all the documents that help our clients that would be *Brady* material or possibly *Giglio*. And that's where the government's having difficulty identifying those documents, because we're not sure what those particular documents would look like.

*Id.* at 103. *See also id.* at 101 ("it's a little unclear what the exculpatory material would look like"), and 102 ("with respect to *Brady* or exculpatory, we're unsure what that would look like, Your Honor").

These statements are puzzling to the defendants because there is abundant information in the government's possession and/or generated by the government that is favorable and exculpatory to the defendants. Accordingly, by this letter, the defendants specifically advise the government as to areas that are *Brady/Giglio* materials and that

PICCARRETA DAVIS KEENAN FIDEL PC

we believe are subject to your office's pledge (and the Court's order) to be turned over immediately.

First, it is imperative that you produce some of the documents the government is attempting to claw back, identified as the initial category of *Brady/Giglio* materials, which the previous prosecutors readily identified as areas of exculpatory evidence. The memoranda coupled with the underlying documents and any other documents that the government locates relative to those issues should assist the government as a beginning point as to identifying additional *Brady/Giglio* material.

1.   My October 23 letter to Mr. Jones explained that the government has already disclosed exculpatory materials that it now claims were inadvertently produced and seeks to claw back. It is the defendants' position that the government "inadvertently" disclosed *Brady* material that it was legally, ethically, and constitutionally required to disclose in the first place.[4] Although counsel for the defendants ceased their review of the purportedly inadvertently disclosed documents when the government made its claw-back request, counsel for the defendants had been in possession of these documents for weeks and had already reviewed the clearly exculpatory material. From memory, two internal government memoranda[5] contained *Brady/Giglio* material contradicting, legally and factually, the government's theory of the case, including statements made by the government at the hearing regarding the level of knowledge required for criminal prosecution. These *Brady/Giglio* memoranda also contain witness statements favorable to the defense, contain information contradicting representations made to federal magistrates, and contain material relevant to defendants' challenges to the grand jury proceedings and to the searches and seizures in this prosecution, the filing of additional pretrial motions, the cross-examination of government witnesses, and other purposes relating to the present criminal proceedings. The documents undoubtedly will be exhibits at multiple pretrial hearings and will be exhibits at trial.

---

[4] Indeed, it appears the primary reason the government seeks to claw back these materials is that they *are* very favorable to the defendants, and therefore, by definition, constitute *Brady* material. This is demonstrated quite clearly by the fact that the government previously disclosed (without any claim of work product privilege) an internal memorandum on the viability of prosecuting the defendants under 18 U.S.C. § 1591 containing conclusions unfavorable to the defense, but now seeks to withhold memoranda that are clearly favorable to the defense.

[5] *See* Declaration of Reginald E. Jones in support of United States' Motion to Compel Destruction of Inadvertently Produced Documents, p. 6 ¶ 20, and Privilege Log attached as Exhibit I.

PICCARRETA DAVIS KEENAN FIDEL PC

> *Brady/Giglio* materials would also include documentation backing up these
> government memoranda, *i.e.* interviews, documents, investigative
> memoranda, and other documents and materials referred to, or contributing
> to, the memoranda.

In addition to these specific documents, I list below some general areas that
implicate the government's obligations under *Brady* and *Giglio*, followed by additional
enumerated areas.

> 2.      High-ranking Department of Justice officials have informed Congress that
> similar activities involving the posting of third-party advertisements by the
> website Craigslist could not be prosecuted under federal criminal law. The
> DOJ's National Coordinator for Child Exploitation, Prevention, and
> Interdiction, Francie Hakes, testified that "I am not aware of any laws that
> would make them [criminally] liable [for third-party postings], unless there
> was evidence that Craigslist was a participant...conspiring with those who
> were misusing their site, that is, knowingly conspiring to violate laws....I
> am not aware of anything that shows us that Craigslist might be criminally
> liable...." Domestic Minor Sex Trafficking: Hearing Before Subcommittee
> on Crime, Terrorism, & Homeland Security of the House Committee on
> the Judiciary, 111th Cong. 215-16 (2010). Any similar materials in the
> government's possession also constitute *Brady* material and must be
> disclosed immediately.

> 3.      Key legislators very recently admitted (a little over a month before the
> government obtained its initial indictment in this matter) that "current
> federal criminal law...lacks proper prosecutorial tools to combat these
> websites" and "*general knowledge that sex trafficking occurs on a website
> will not suffice as the knowledge element must be proven as to a specific
> victim.*" House of Representatives Report 115-572 Part 1, p. 5, February 20,
> 2018 (emphasis added). Any similar information also constitutes *Brady*
> material that must be disclosed immediately.

In light of these examples, it is simply difficult for the defendants to fathom the
government's claim that it would not know what *Brady/Giglio* materials "would look
like." It is clear that *any* factual or legal matters that contradict the prosecution's theory
of the case are, by definition, *Brady* materials that must be disclosed to the defendants.
*See, e.g., Bies v. Sheldon*, 775 F.3d 386, 398-403 (6th Cir. 2014) (upholding the district
court's finding of a *Brady* violation due to the state's suppression of "Evidence
Undermining the State's Theory of the Case"); *Wolfe v. Clarke*, 819 F.Supp.2d 538, 558

PICCARRETA DAVIS KEENAN FIDEL PC

(E. D. Va. 2011) (vacating capital defendant's conviction after finding that the prosecution violated *Brady* by withholding investigation reports and interviews "undermining its theory of the case"). *See also United States v. Avellino,* 1995 WL 228352, *1 (E. D. N. Y. 1995) ("The government agreed to submit to the Court for determination any evidence which may contradict its theory of the case and about which it questions whether the evidence properly falls within the scope of *Brady* and/or *Giglio* and their progeny").

The defendants believe that these and similar materials are clearly *Brady/Giglio* materials that the government is legally, ethically, and constitutionally obligated to turn over to the defendants within 10 days, in accordance with the government's assurances to Judge Logan and the terms of his order. To be clear: we are not requesting that the government has to conduct searches or investigation other than what they have already done or will do in regards to prosecution of this matter. We do request, however, while conducting its normal investigation and pretrial preparation in accordance with its obligations under *Brady/Giglio* and the Justice Manual, that if this information is located, that it then be segregated and provided. None of us want this case to turn into another Ted Stevens fiasco.

Accordingly, and pursuant to the above authority, Mr. Padilla additionally requests the government to disclose the following additional information:[6]

4.      All communications to and from any federal, state, or local elected officials relating to the possible criminal prosecution of Backpage and its employees and officers. *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (due process prohibits prosecution based on improper influence exerted on the prosecutor to seek the indictments).

5.      All communications to and from any civil plaintiff's lawyers or advocates for alleged sex trafficking victims and local, state, and federal law enforcement agents, officers, investigators, prosecutors, and other officials involved in any manner with the investigation or prosecution of the website Backpage.com ("Backpage"). *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (due process prohibits prosecution based upon improper outside influences).

---

[6] Although "the duty to disclose such evidence is applicable even though there has been no request by the accused," *Strickler v. Greene*, 527 U.S. 263, 280 (1999), "[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *United States v. Bagley*, 473 U.S. 667, 681 (1985).

6

PICCARRETA DAVIS KEENAN FIDEL PC

6.    All documents and commendations from law enforcement to Backpage relating to Backpage's cooperation in any criminal investigations.[7]

7.    All communications to and from local, state, and federal law enforcement agents, officers, investigators, prosecutors, and other officials involved in any matter with the investigation or prosecution relating to Backpage.

8.    All communications to and from Nanci Clarence, or any lawyers representing Mr. Ferrer or Backpage, that relate in any manner to plea negotiations or the plea agreement and all documents to or from the government and any other local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials relative to Mr. Ferrer that relate to the plea negotiations or plea agreement and all writings subsequent to said plea agreement.

9.    All communications to and from K.C. Maxwell or any lawyers representing Mr. Hyer or Backpage that relate in any manner to plea negotiations or the plea agreement and all documents to or from the government and any other local, state, or federal law enforcement agents, officers, investigators, prosecutors, and other officials relative to Mr. Hyer that relate to the plea negotiations or plea agreement and all writings subsequent to said plea agreement.

10.   All documents to and from Backpage and the National Center for Missing and Exploited Children (NCMEC) relating to possible unlawful activity involving underage individuals.

11.   All documents sent by Backpage to law enforcement relating to cooperation with law enforcement efforts.

12.   All Department of Justice memoranda relating to the department's understanding of the applicable law governing Backpage during the relevant time periods.

I am also requesting specific *Brady/Giglio* material relating to government witnesses, including cooperating individuals and co-defendants:

13.   Any plea bargain, immunity agreement, explicit or implied agreement, or any other promises any witness has received or will receive from any federal, state or local authority in exchange for his or her testimony or cooperation in this case or in any other case.

---

[7] For reference, documents and communications include both tangible and electronic.

7

PICCARRETA DAVIS KEENAN FIDEL PC

14.      Any information suggesting any bias, prejudice or motive that the witness may have for testifying falsely against the defendant. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988); *United States v. Abel*, 469 U.S. 45 (1984).

15.      All promises, agreements, benefits, monies or anything of value whatsoever made to or provided to the witness, his/her family or friends by federal, state or local authorities in this matter or any other matter. *See United States v. Uramoto*, 638 F.2d 84, 86 (9th Cir. 1980); *United States v. Leja*, 568 F.2d 493 (6th Cir. 1977).

16.      Any monies paid, or any other benefit provided, to any of the government's witnesses by the United States government or any other governmental agency that was in any way contingent upon the outcome of this or any other investigation as a result of information provided by any such witnesses. *United States v. Bagley*, 473 U.S. 667, 683 (1985).

17.      All documents between the witness, or his/her representative and the government relating to the negotiations of the plea bargain agreement or where the witness has offered or proposed testimony. *Brown v. Dugger*, 831 F.2d 1547 (11th Cir. 1987) (evidence that witness sought plea bargain is to be disclosed even if no deal struck); *Haber v. Wainwright*, 756 F.2d 1520, 1524 (11th Cir. 1985).

18.      Proffers and statements made by an accomplice witness in negotiating a cooperation agreement with the government, along with information revealing the negotiation process, including but not limited to any and all variations in the accomplice witness' statements. *United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D. Cal. 1999).

19.      All documents, including the government's reports which indicate instances of illegal behavior of the witness or specific instances of misconduct which relate in any manner whatsoever to the witness' credibility. *See* Rule 608(b), Federal Rules of Evidence. This request includes any law enforcement reports relating to these instances. *See United States v. Ray*, 731 F.2d 1361 (9th Cir. 1984).

20.      Any prior contrary statements made by the government witness. *Giles v. Maryland*, 386 U.S. 66 (1967); *Spicer v. Roxbury Correctional Institute*, 194 F.3d 547 (4th Cir. 1999).

21.      The existence of any witnesses or witness statements favorable to the defendant. *United States v. Wilkins*, 326 F.2d 135 (2d Cir. 1964); *Jackson v. Wainwright*, 390 F.2d 288 (5th Cir. 1968).

PICCARRETA DAVIS KEENAN FIDEL PC

22.   Negative exculpatory statements, such as statements by informed witnesses that fail to implicate the defendants in any criminal activity. *See, e.g., United States v. Torres*, 719 F.2d 549, 555-56 (2d. Cir. 1983); *Jones v. Jago*, 575 F.2d 1164, 1168 (6th Cir. 1978); *Clemmons v. Delo*, 124 F.3d 944, 952 (8th Cir. 1997); *White v. Helling*, 194 F.3d 937, 944 (8th Cir. 1999).

23.   Any threats, express or implied, direct or indirect, or other coercion made or directed against the witnesses, including but not limited to, criminal prosecutions, investigations, other incidents which are pending or could be brought against the witnesses.

24.   The existence and notification of each occasion upon which the witnesses testified before a Court, grand jury, or other tribunal or made other statements so defendant can order transcripts for use in cross-examination or investigation. *See* Rules 801(d)(1) and 806, Federal Rules of Evidence. *See also Davis v. Heyd*, 479 F.2d 446 (5th Cir. 1973).

25.   Any grand jury statements of any witnesses which are favorable to the defendant. *United States v. Sink*, 56 F.R.D. 365 (E. D. Pa. 1972).

26.   The identity of any witnesses who testified before the grand jury and who will be unavailable to testify at trial. Arizona State Bar Ethics Opinion No. 94-07 (March 1994). *See* LRCiv 83.2(e), Rules of Practice of the United States District Court for the District of Arizona.

27.   Names and addresses of any witnesses to offenses charged in the indictment whom the government does not intend to call at trial. *United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir. 1984) (it is appropriate "to conclude from the fact that the government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense").

28.   In regard to law enforcement agents in this case, counsel requests to know whether there have been any prior instances of untruthful statements by the agents or any complaints filed with their governmental employer at any time relating to any incidents which relate in any manner whatsoever to the agent's credibility. *See* Rule 608(b), Federal Rules of Evidence; *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013).

29.   It is further requested that the prosecutor further personally review the personnel files for *Brady* material.

9

PICCARRETA DAVIS KEENAN FIDEL PC

30.   Any reports prepared by prosecution experts relating to the legality of the procedure used by government agents in the course of their investigation. *United States v. Gerena*, 116 F.R.D. 596 (D. Conn. 1987).

31.   Evidence that is inconsistent with the witness' testimony. *United States v. Fisher*, 106 F.3d 622, 634-35 (5th Cir. 1997); *Ballinger v. Kerby*, 3 F.3d 1371, 1375-76 (10th Cir. 1993); *Derden v. McNeel*, 938 F.2d 605, 617 (5th Cir. 1991).

I would request that a copy of this letter be sent to your case agent or agents so that each agency is aware of this request.

Sincerely,

Michael L. Piccarreta

JK:mh
cc:   Brian Benczkowski, brian.benczkowski@usdoj.gov
      Peter Kozinets, peter.kozinets@usdoj.gov
      John Kucera, John.Kucera@usdoj.gov
      Reginald Jones, reginald.jones4@usdoj.gov
      Margaret Perlmeter, margaret.perlmeter@usdoj.gov
      Andrew Stone, andrew.stone@usdoj.gov
      Tom Bienert, tbienert@bmkattorneys.com
      Paul Cambria, pcambria@lglaw.com
      Robert Corn-Revere, bobcornrevere@dwt.com
      Bruce Feder, bf@federlawpa.com
      James Grant, jimgrant@dwt.com
      Michael Kimerer, mdk@kimerer.com
      Stephen Weiss, sweiss@karpweiss.com

# EXHIBIT D



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main:  (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax:  (602) 514-7693 |
| Phoenix, AZ  85004-4408 | |

March 7, 2019

<u>Via E-Mail</u>
Whitney Z. Bernstein
Bienart, Miller & Katzman PLC
EMail:wbernstein@bmkattorneys.com
(attorney for Defendant James Larkin)

Re:     <u>Your letter of February 26, 2019</u>

Dear Ms. Bernstein:

We write in response to your February 26, 2019 letter summarizing our February 20, 2019 phone call regarding Backpage server data. Your letter contains a number of inaccuracies.  However, instead of addressing each inaccuracy contained within the letter, we believe it would be most fruitful to provide you with the below written summary of the government's handling of the Backpage server data to date.

<u>Total Servers</u>

The government has 46 Backpage servers in its possession obtained from Amsterdam, Netherlands ("Amsterdam"), Tucson, Arizona ("Tucson"), and Dallas, Texas ("Dallas").  We are currently awaiting receipt of approximately 60 additional servers from Amsterdam through the Mutual Legal Assistance Treaty ("MLAT") process.

<u>Amsterdam Servers</u>

We currently have in our possession nine servers obtained from Amsterdam through the MLAT process.  Of these nine servers, three are slave database servers, three are image servers, two are master database servers, and one is a backup server.  Backpage operated

March 7, 2019
Page 2

as a classified advertising website for approximately 14 years so we're certain you are aware of the content hosted on the site. However, we extracted all of the Backpage marketplace database files (i.e. all of the ads that were on Backpage.com) from these servers and have imaged the server containing all of the Backpage images in order to help facilitate any review you would like to conduct of this data.  As I indicated in my March 4, 2019 email to you, the hard drives containing this data are available for pick-up at an FBI facility in Phoenix.  Additionally, in accordance with Federal Rule of Criminal Procedure 16(a)(1)(E), these nine servers are available for your inspection at an FBI data center facility in Pocatello, Idaho.  Our forensic examiners located at this facility are available to facilitate your review of these servers and answer any technical questions you may have regarding this particular data.

In addition to the aforementioned nine servers currently in the government's possession, we are awaiting receipt of approximately 60 servers from Dutch officials through the MLAT process.  We have been advised by a former Backpage employee who managed these servers that these 60 servers contain payment processing data and data redundancy from the nine Amsterdam servers currently in the government's possession. These servers will also be available for your inspection at an FBI data center facility in Pocatello, Idaho when we receive them.

Dallas Servers

We currently have in our possession five Backpage servers seized from Dallas.  Of these five servers, we were advised by a former Backpage employee who managed these servers that two of these servers contain Backpage-related email data.  These two servers have been imaged and the hard drives containing this data are available for pick-up at an FBI facility in Phoenix.  The former Backpage employee who managed these servers also advised us that the remaining three Dallas servers in our possession contain antivirus servers, asset tracking/inventory software, a backup server, web user interface, virtual private network for end point, VM servers, and WSUS.  In accordance with Federal Rule of Criminal Procedure 16(a)(1)(E), these three servers are available for your inspection at an FBI data center facility in Pocatello, Idaho.  Our forensic examiners located at this facility are available to facilitate your review of these servers and answer any technical questions you may have regarding this particular data.

Tucson Servers

We currently have in our possession 32 servers and three hard drives seized from Tucson.  We were advised by a former Backpage employee who managed these servers that they contain data redundancy of the marketplace database files and images from the

March 7, 2019
Page 3

Amsterdam servers. We have imaged the master marketplace database and image servers. The hard drives containing this data are available for pick-up at an FBI facility in Phoenix. In accordance with Federal Rule of Criminal Procedure 16(a)(1)(E), these 32 servers are available for your inspection at an FBI data center facility in Pocatello, Idaho. Our forensic examiners located at this facility are available to facilitate your review of these servers and answer any technical questions you may have regarding this particular data.

<u>Sampling of Ad data and Ad data the Government Might Utilize at Trial</u>

During our February 20, 2019 phone conversation (and again in your February 26, 2019 letter), you requested samples of "[Backpage] advertisements as such ads now appear in the data the government has imaged." You also requested "discrete parts of all advertisements that are the subject of counts in the Superseding Indictment." To be clear, the government has previously produced to you in discovery ads that are referenced in counts in the Superseding Indictment. However, we are willing to produce samples of Backpage ads as the ads appear in the server data the government has imaged, to include ads referenced in counts in the Superseding Indictment. Although we had hoped to have this sampling to you this week, our forensic examiner culling this data was unexpectedly away from the office for a number of days, so we will need additional time to compile the requested sampling. We will send this sampling to you as soon as possible. Also, as previously noted, the entire marketplace of Backpage ads have been extracted for you and is available for pick-up at your convenience.

Additionally, given the voluminous amount of server data, the government agrees to provide to you with exhibits of any server data that we might utilize at trial. This should greatly assist you in focusing your efforts and attention on server data relevant to the case.

Please reach out to me with additional questions. We will continue to work diligently to answer them and facilitate your review of materials in this case.

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

s/Reginald E. Jones
REGINALD E. JONES
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

March 7, 2019
Page 4

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
Assistant United States Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

# EXHIBIT E

## Whitney Bernstein

**From:** Jones, Reginald (CRM) <Reginald.Jones4@usdoj.gov>
**Sent:** Wednesday, April 10, 2019 4:54 PM
**To:** Whitney Bernstein
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB
**Attachments:** Response to W. Bernstein's 2.26.19 letter.pdf

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Hi Whitney:

I've been out of the office today on work-related travel. I spoke with FBI personnel in Pocatello, Idaho today and unfortunately we are unable to meet with you this Thursday. The FBI datacenter in Pocatello is required to run background checks on all non-FBI personnel who enter the building and thus require 48-72 hour notice before non-FBI personnel can enter the building.   That being said, we are available to meet with you to inspect the Backpage server data next Wednesday April 17, 2018 at 1pm in Pocatello. The nine servers seized from Amsterdam and three of the five servers seized from Dallas are located in Pocatello. The 37 servers seized from Tucson and two of the five servers seized from Dallas are now available for your review at an FBI facility in Phoenix, Arizona. Since you will be in Phoenix later this month and indicated you plan to pick-up Defendant Larkin's personal devices from FBI Phoenix during your visit, we are happy to facilitate the inspection of the servers located in Phoenix on April 23rd or April 24th.   As I articulated in my March 7, 2019 email to you (email is attached) per Federal Rule of Criminal Procedure Rule 16, the Backpage server data located in Pocatello and Phoenix is available for you to inspect and copy.

If next Wednesday April 17, 2019, still works for you to travel to Pocatello, please provide me the name, date of birth, and social security number of everyone who will be traveling to the datacenter so FBI can start conducting the necessary background investigation.

Also, I'm currently on work-related travel, but will plan to send you the chain of custody for all servers when I'm back in the office on Friday. The chain of custody will provide a list of all servers in the government's possession. As we indicated to you previously, there is no master list that describes what data is on each server, but as you know, we've imaged several servers and have spoken with the former Backpage employee who managed the server data and described to you in the attached March 7 letter the data contained on the servers currently in our possession. We were informed by this same former Backpage employee that the payment processing data is located on the remaining servers in Amsterdam. As per your request (and as we indicated in our March 7 letter to you), we will make that data as well as any other data contained on those remaining servers available to you when it is received via the MLAT process.

Backpage operated as a classified website for more than 14 years so we're sure your client, as owner of the company, is aware of the data that was hosted on the website. So, if there is specific data other than ads, images, emails, and payment processing data that you believe is material to your defense, please let us know and we will attempt to locate that data for you.
We've worked diligently to image and make available to you server data currently in our possession that you might find relevant to the case and have even agreed to provide you with exhibits of any server data we might utilize at trial to assist you in focusing your efforts and attention.

Again, in accordance with the Federal Rules of Criminal Procedure, all Backpage server data in the government's possession is available for your inspection; however, we believe it would be most efficient for all parties if you could consult with Defendants and provide the government specific server data other than the ad, image, and email data we've imaged and made available to you (and payment processing data we will make available to you when we receive it), that you believe is material to your defense.

Please send me the names, dates of birth, and social security numbers for next Wednesday as soon as possible, and I will get you the chain of custody documents by the end of the week.

Best,
Reggie

---

**From:** Whitney Bernstein [mailto:wbernstein@bienertkatzman.com]
**Sent:** Wednesday, April 10, 2019 5:01 PM
**To:** Jones, Reginald (CRM) <Reginald.Jones@CRM.USDOJ.GOV>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Hi Reggie:

I am following up again.  I also left you a voicemail this morning.  You've explained that the servers are only available for review at the FBI facility in Pocatello and won't be imaged or otherwise produced.  We'd like to go to Pocatello.  You've explained that we have to clear our request for an appointment through you and not through the FBI tech agent directly.  As discussed with you yesterday, we'd like to go this Thursday or sometime next week (with the exception of Tuesday, as I said in my voicemail this morning).  I've still yet to hear back from you about this.  I would really appreciate the courtesy of a reply, so we can sort this visit out, obtain travel arrangements if necessary, and generally plan our schedules.

I can be reached at 949-369-3700 or via email here anytime.

Thank you in advance for a prompt reply,

Whitney

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700

---

**From:** Whitney Bernstein
**Sent:** Tuesday, April 9, 2019 1:23 PM
**To:** 'Jones, Reginald (CRM)' <Reginald.Jones4@usdoj.gov>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Sorry, one more logistics email! – please let me know about Thursday 4/11, and if that doesn't work, please let me know if next week—Monday 4/15, Tuesday 4/16, Wednesday 4/17, Thursday 4/18, or Friday 4/19—works.

Thank you, I'm at 949-369-3700,

Whitney

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700

---

**From:** Whitney Bernstein
**Sent:** Tuesday, April 9, 2019 1:02 PM
**To:** 'Jones, Reginald (CRM)' <Reginald.Jones4@usdoj.gov>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Hi Reggie:

Additionally, if Thursday afternoon is not available, please let me know if Monday 4/15 is.

Thank you, I'll wait to hear back from you,

Whitney

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700

---

**From:** Whitney Bernstein
**Sent:** Tuesday, April 9, 2019 12:05 PM
**To:** 'Jones, Reginald (CRM)' <Reginald.Jones4@usdoj.gov>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Hi Reggie,

Thanks for speaking just now.

Thank you for following up with the Pocatello folks and getting back to me as soon as you can. I'd like to come this Thursday, April. 12, afternoon (~1pm until close of business) to inspect, view, turn on, manipulate, copy, etc. the 46 servers that are there now. (As discussed, you indicated that no court order is needed to be able to inspect, view, turn on, manipulate, copy, etc. the servers—just that the forensic FBI people would need to supervise the process; and that regarding imaging of any servers, we can coordinate that process once we identify the servers we'll need imaged copies of). Please let me know whether this visit can occur as soon as you can.

Thank you as well for sending, or redirecting me to, the (i) evidence logs, (ii) detailed inventories, and (iii) chain of custody logs for all 46 servers in Pocatello as soon as you can. This will allow us to answer your request as to which items in particular we want to inspect in Pocatello to make it most efficient for everyone.

Additionally, it would help us to tell you which servers we want to inspect if you could provide a list of all servers, what is on each server, where each server came from, etc. I believe when I asked for a list like this on our February 20, 2019 phone call, Matt Frost said one did not exist, but perhaps it now does. Especially since I now understand that the government does not intend to image or produce any additional servers of the 46 in Pocatello and the 60 forthcoming in

the MLAT process, and only intends to make this discovery of 106 servers available to us for our inspection in Pocatello, I would hope to be able to get a list of what the servers contain, where they're from, etc. so we can expedite and streamline future review.

Regarding future trips to Pocatello, I will check my calendar and get back to you shortly with some dates this month and next that we'll need to view the servers.

You indicated that the government expects to receive the additional 60 servers currently in the MLAT process in the next one to two months.  The payment processing data is expected to be included in these 60 servers.  Once the government gets these 60 additional servers, please send (i) an evidence log, (ii) detailed inventory, (iii) chain of custody, and (iv) list of all servers, what is on each server, where each server came from, etc. so we can coordinate our review of these 60 servers.

Finally, regarding the data available for pick up in Phoenix (Backupify data and Larkin's personal devices), I will plan to pick these up either April 22, 23, or 24.

Thank you again for speaking, and please let me know about Thursday as soon as you can.

Thank you,

Whitney

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700

---

**From:** Whitney Bernstein
**Sent:** Monday, April 8, 2019 3:22 PM
**To:** 'Jones, Reginald (CRM)' <Reginald.Jones4@usdoj.gov>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Great, please call me at 949-369-3700 then.  Thank you.

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700

---

**From:** Jones, Reginald (CRM) <Reginald.Jones4@usdoj.gov>
**Sent:** Monday, April 8, 2019 3:13 PM
**To:** Whitney Bernstein <wbernstein@bienertkatzman.com>
**Subject:** Re: US v. Lacey et al., 18-CR-0422-PHX-SMB

Tomorrow morning 11am PST works for me.

On Apr 8, 2019, at 5:41 PM, Whitney Bernstein <wbernstein@bienertkatzman.com> wrote:

> Anytime tomorrow* morning.

**From:** Whitney Bernstein
**Sent:** Monday, April 8, 2019 2:38 PM
**To:** 'Jones, Reginald (CRM)' <Reginald.Jones4@usdoj.gov>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Hi Reggie:

I just tried you again and left a VM.  I'm at my desk for the rest of the afternoon, so now would be a good time for this call.  Otherwise, I can speak anytime morning.  I appreciate speaking ASAP regarding logistics of picking up/viewing discovery at both Phoenix and Pocatello offices.

Thanks,

Whitney

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700

---

**From:** Whitney Bernstein
**Sent:** Monday, April 8, 2019 2:26 PM
**To:** 'Jones, Reginald (CRM)' <Reginald.Jones4@usdoj.gov>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Hi Reggie:

Can you call me at 949-369-3700 regarding Phoenix and Pocatello?

Thank,

Whitney

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700

---

**From:** Jones, Reginald (CRM) <Reginald.Jones4@usdoj.gov>
**Sent:** Monday, April 8, 2019 2:25 PM
**To:** Whitney Bernstein <wbernstein@bienertkatzman.com>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Hi Whitney:

I received today the voicemail you left for me after business hours EST on Friday regarding pick-up of the personal device data.  Please let me know a good time to schedule a call or let me know some times that work for your schedule to pick-up the data from FBI Phoenix.

Thanks,
Reggie

**From:** Jones, Reginald (CRM)
**Sent:** Friday, April 5, 2019 2:29 PM
**To:** 'Whitney Bernstein' <wbernstein@bienertkatzman.com>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

No problem.


Also, I checked with FBI and unfortunately the personal devices and documents data cannot be picked-up this weekend, however, they can be picked up on Monday morning.  Let me know if you'd like to pick-up these items Monday morning.  They are contained in one small box.

Thanks,

Reggie


**From:** Whitney Bernstein [mailto:wbernstein@bienertkatzman.com]
**Sent:** Friday, April 5, 2019 2:24 PM
**To:** Jones, Reginald (CRM) <Reginald.Jones@CRM.USDOJ.GOV>; Rapp, Kevin (USAAZ)
<KRapp@usa.doj.gov>; Kucera, John (USACAC) <jkucera@usa.doj.gov>; Perlmeter, Margaret (USAAZ)
<MPerlmeter@usa.doj.gov>; Kozinets, Peter (USAAZ) <PKozinets@usa.doj.gov>
**Cc:** Tom Bienert <tbienert@bienertkatzman.com>; Toni Thomas <tthomas@bienertkatzman.com>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Thanks, Reggie.


**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700


**From:** Jones, Reginald (CRM) <Reginald.Jones4@usdoj.gov>
**Sent:** Friday, April 5, 2019 11:18 AM
**To:** Whitney Bernstein <wbernstein@bienertkatzman.com>; Rapp, Kevin (USAAZ)
<Kevin.Rapp@usdoj.gov>; Kucera, John (USACAC) <John.Kucera@usdoj.gov>; Perlmeter, Margaret
(USAAZ) <Margaret.Perlmeter@usdoj.gov>; Kozinets, Peter (USAAZ) <Peter.Kozinets@usdoj.gov>
**Cc:** Tom Bienert <tbienert@bienertkatzman.com>; Toni Thomas <tthomas@bienertkatzman.com>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Hi Whitney,

We provided you with search warrants and affidavits (Bates labeled) in our November 30, 2018 production.  However, I'm happy to resend you these warrants – they are attached.   Please let us know if we can further assist.

Thanks,
Reggie

**From:** Whitney Bernstein [mailto:wberstein@bienertkatzman.com]
**Sent:** Thursday, April 4, 2019 2:57 PM
**To:** Jones, Reginald (CRM) <Reginald.Jones@CRM.USDOJ.GOV>; Rapp, Kevin (USAAZ)
<KRapp@usa.doj.gov>; Kucera, John (USACAC) <jkucera@usa.doj.gov>; Perlmeter, Margaret (USAAZ)
<MPerlmeter@usa.doj.gov>; Kozinets, Peter (USAAZ) <PKozinets@usa.doj.gov>
**Cc:** Tom Bienert <tbienert@bienertkatzman.com>; Toni Thomas <tthomas@bienertkatzman.com>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Hi Reggie:

Thank you for sending this.  As previously requested, please include wbernstein@bmkattorneys.com
and tthomas@bmkattorneys.com on all case-related electronic correspondence sent to Tom Bienert.

We will make arrangements to have the hard drives and CDs containing data seized from Mr. Larkin
picked up from the Phoenix FBI facility and reach out to you separately as requested in the letter to
schedule a time.

Finally, your letter also indicates that the government obtained court-authorized search warrants for the
devices.  Please also send us copies of the applications, affidavits, and warrants related to these
searches and seizures, as we don't believe we've previously received those.

Thank you,

Whitney

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PLC
Tel.: (949) 369-3700

---

**From:** Jones, Reginald (CRM) <Reginald.Jones4@usdoj.gov>
**Sent:** Thursday, April 4, 2019 10:41 AM
**To:** Whitney Bernstein <wbernstein@bienertkatzman.com>; Rapp, Kevin (USAAZ)
<Kevin.Rapp@usdoj.gov>; Kucera, John (USACAC) <John.Kucera@usdoj.gov>; Perlmeter, Margaret
(USAAZ) <Margaret.Perlmeter@usdoj.gov>; Kozinets, Peter (USAAZ) <Peter.Kozinets@usdoj.gov>
**Cc:** Tom Bienert <tbienert@bienertkatzman.com>; Toni Thomas <tthomas@bienertkatzman.com>
**Subject:** RE: US v. Lacey et al., 18-CR-0422-PHX-SMB

Hi Whitney:

Please find attached an email and letter sent to Tom Bienert of your firm on March 18, 2019, regarding
the personal devices and documents seized from your client, Defendant James Larkin.

Please reach out with additional questions.

Best,

Reggie

**Reginald E. Jones**
**U.S. Department of Justice, Criminal Division**

T: 202.616.2807 | reginald.jones4@usdoj.gov

---

**From:** Whitney Bernstein [mailto:wbernstein@bienertkatzman.com]
**Sent:** Thursday, April 4, 2019 1:26 PM
**To:** Rapp, Kevin (USAAZ) <KRapp@usa.doj.gov>; Kucera, John (USACAC) <jkucera@usa.doj.gov>;
Perlmeter, Margaret (USAAZ) <MPerlmeter@usa.doj.gov>; Jones, Reginald (CRM)
<Reginald.Jones@CRM.USDOJ.GOV>; Kozinets, Peter (USAAZ) <PKozinets@usa.doj.gov>
**Cc:** Tom Bienert <tbienert@bienertkatzman.com>; Toni Thomas <tthomas@bienertkatzman.com>
**Subject:** US v. Lacey et al., 18-CR-0422-PHX-SMB

Kevin,

Please see attached.

Thank you,

Whitney

**Whitney Z. Bernstein**
**Attorney**
Bienert | Katzman PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Main (949) 369-3700
Website: www.bmkattorneys.com

<image001.jpg>

The foregoing message is confidential and intended for the designated recipient only. The foregoing information may be protected by attorney-client and/or work product privileges. Accordingly, if you have received this message in error, please contact BIENERT | KATZMAN, PLC at (949) 369-3700 immediately, and delete the message without reviewing, copying, or making further use of the information contained herein.