Thomas H. Bienert, Jr. (CA State Bar No. 135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA State Bar No. 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone:     (949) 369-3700
Facsimile:     (949) 369-3701
Email:        tbienert@bienertkatzman.com
              wbernstein@bienertkatzman.com
*Counsel for James Larkin*


Paul J. Cambria, Jr. (NY State Bar No. 1430909, admitted *pro hac vice*)
Erin McCampbell (NY State Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone:    (716) 849-1333
Facsimile:    (716) 855-1580
Email:        pcambria@lglaw.com
              emccampbell@lglaw.com
*Counsel for Michael Lacey*


Additional counsel listed on next two pages

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 18-CR-00422-PHX-SMB |
| Plaintiff. | **DEFENDANTS' JOINT STATUS REPORT** |
| v. | Hon. Susan M. Brnovich<br>Date:  June 24, 2019<br>Time:  11:00 a.m. |
| Michael Lacey, *et al.*, | |
| Defendants. | |

James C. Grant (Wash. Bar No. 14358; admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Ave, Suite 2200
Seattle, Washington 98101
Telephone:     (206) 757-8096
Facsimile:     (206) 757-7096
Email:         jimgrant@dwt.com
*Counsel for Michael Lacey and James Larkin*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone:     (602) 257-0135
Email:         bf@federlawpa.com
*Counsel for Scott Spear*

Gary S. Lincenberg (CA State Bar No. 123058, admitted *pro hac vice*)
Ariel A. Neuman (CA State Bar No. 241594, admitted *pro hac vice*)
Gopi K. Panchapakesan (CA State Bar No. 279586, admitted *pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone:     (310) 201-2100
Facsimile:     (310) 201-2110
Email:         glincenberg@birdmarella.com
               aneuman@birdmarella.com
               gpanchapakesan@birdmarella.com
*Counsel for John Brunst*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Ste. 1155
Phoenix, Arizona 85012
Telephone:     (602) 237-5076
Facsimile:     (602) 314-6273
Email:         david@deisenbergplc.com
*Counsel for Andrew Padilla*

Additional counsel listed on next page

DEFENDANTS' JOINT STATUS REPORT

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone:     (602)374-5321
Facsimile:     (480)361-4694
Email:         joy.bertrand@gmail.com
*Counsel for Joye Vaught*

DEFENDANTS' JOINT STATUS REPORT

## I.   INTRODUCTION

At the April 23, 2019 status conference, the Court directed the parties to submit status reports addressing any developments with respect to the outstanding discovery issues raised in Defendants' last status report.  There has been little or no change in the government's discovery production since then.[1]

Although Defendants have been seeking access to the Backpage.com computer systems and their data since May 2018 (*see* Exhibit A, Michael Piccarreta's May 1, 2018 Letter to AUSAs Lanza and Rapp), the government's first significant production of that data did not occur until March 2019. The government appears to have produced millions of emails and other documents, plus database tables with some information relating to tens of millions of ad records and millions of images from those ads—not in the usable Relativity format in which the government has made its prior disclosures, but in raw or native formats that are not accessible to or useable by Defendants at present.  The government also acknowledges in its status report that it has not yet produced Backpage's payment processing data and says it expects to produce the data to Defendants in mid-July.  This outstanding evidence includes the data and systems that received and tracked online payments for Backpage.com and is pertinent to the government's numerous money laundering charges.  The government proposes to produce this data (likely tens of millions of records) by providing images of disks from servers, with the data in raw or native formats, not in a Relativity format.  In a raw or native format, the data will not be accessible to or useable by Defendants. Moreover, if the payment data is no longer correlated to the ads to which the payments relate, which Defendants expect, the data likely will be meaningless.  In short, while the government repeatedly claims it provided 90% of pertinent records a year ago, in fact the government has just recently produced millions of emails and documents, just recently produced tens of millions of records relating to ads, and has yet to produce tens of millions of payment records—and most of that data

---

[1]  At 5:00 p.m. Friday evening, the government filed its status report, which included several exhibits providing details about Backpage.com's computer systems that the government had never previously disclosed to Defendants.  Because of the timing of the government's disclosure of this new information, Defendants are unable to meaningfully address this here, but will provide a supplemental status report addressing this new information in advance of the June 24, 2019 hearing.

is in a format that is not usable to Defendants (primarily because the government destroyed the computer systems needed to meaningfully access the data).

With respect to the disclosure of *Jencks* Act materials, the government identified the cooperation agreement of one of its cooperating witnesses, but otherwise produced no *Jencks* Act materials, saying it has produced all *Jencks* Act materials except for those pertaining to cooperating witness Carl Ferrer, which it represents it will produce later this month.  The upcoming disclosures relating to Ferrer are crucial to the defense investigation, identification of witnesses and evidence, and trial preparation.

Finally, more than a month after the government promised to identify its proposed exhibits by Bates number among the nearly eleven million pages of discovery produced thus far, just three days ago it sent Defendants a new exhibit list.  This *incomplete* list identifies *some* of the exhibits by Bates numbers and fails to identify others, but also lists documents the government has *never produced* to Defendants.  This list also uses different exhibit numbers than the previous exhibit list, so the lists no longer correlate.

In addition to the discovery inadequacies, two recent developments in this case necessitate a suspension of the current scheduling order.  First, on May 2, 2019, this Court relieved prior counsel for Defendants Padilla and Vaught (*see* Doc. No. 559), appointing new counsel for those defendants on May 3, 2019 (*see* Doc. Nos. 565, 566).  New counsel, appointed more than a year after this complex case began, needs additional time to get up to speed on the case, to familiarize themselves with the fifteen year history the government claims is pertinent to the charges, and to obtain the requisite infrastructure and databases to begin reviewing the nearly eleven million pages of discovery the government produced before March 2019, as well as the millions of emails and other documents the government produced in March 2019 and the millions of records it proposes to produce in July 2019.  Consequently, a motion to continue the trial date is forthcoming.  Additionally, on April 22, 2019, Defendants filed a motion to dismiss the Indictment.  *See* Doc. Nos. 539, 561.  On May 28, 2019, amicus briefs were filed in support of the motion to dismiss by the DKT Liberty Project, Cato Institute, and Reason Foundation and by the Arizona ACLU.  *See* Doc. Nos. 624, 625.  The motion to dismiss the indictment likely will not be fully briefed before end of June.  The Court's ruling on

the motion likely will significantly inform the trajectory of the case and the parties' strategies (and thus discovery needs) going forward.

Finally, as the Court is aware, Defendants Larkin, Lacey, Brunst, and Spear challenged the government's sweeping seizures of their assets in the Central District of California. That challenge now is before the Ninth Circuit Court of Appeals, where the appeal is fully briefed and set for expedited oral argument on July 9, 2019. *See United States v. James Larkin et al.*, Case No. 18-56455. Much like this Court's ruling on the Motion to Dismiss, the Ninth Circuit's ruling will significantly impact the case, both because it may address fundamental First Amendment issues going to the heart of the government's charges and also because it will inform the ability of Larkin, Lacey, Brunst, and Spear to fund their defense, including discovery review, expert retention, and trial preparation. These defendants generally do not have the funds to review discovery, retain experts, and properly prepare for trial. On their shoestring budgets, they have been able to identify experts who are willing to testify in this case, but they have generally been unable to retain them, and cannot do so without additional funds. Further, most of them have incurred significant arrears with their counsel, as counsel conduct a limited review of the discovery to meet scheduling deadlines, but are unable to pay their current counsel, or to retain contract counsel, to conduct the in-depth review of the discovery necessary to locate all exculpatory material. The same is true with trial preparation.

Accordingly, Defendants propose suspending the current scheduling order until discovery is complete, or alternatively, and at a minimum, adjourning all outstanding dates by six months.

## II.   STATUS OF DISCOVERY AND JENCKS

### A.   The government has not produced *any* additional server discovery.

The Court requested an update as to the status of the review of the servers. Doc. No. 545. Nothing has changed since the parties were last before the Court. At that time, Defendants explained that that government seized at least 106 servers, currently had possession of 46 servers, provided imaged copies of five servers, and was still awaiting approximately 60 additional servers from Amsterdam. Defendants explained that no meaningful "inspection" had occurred of the servers in the government's possession and that the government was refusing to even copy the servers in its possession. Beyond forensic images of that data, Defendants need and requested "access to the

servers in the functioning condition that they were in when the government seized them." *See* Transcript at 28:5-28:7.

To effectively mount a defense to the charges, Defendants need access to the Backpage.com computer systems with the same functionality and in the same condition and configuration they were in at the time of the government's seizures, so Defendants can search the data for exculpatory information. Defendants explained this request in more detail in a May 23, 2019 letter to the government. *See* Exhibit B. As of the time of this filing, the government has not responded.

At a minimum, Defendants need to determine the type of data that resides on each server and whether that data is pertinent to the defense. It is impossible to identify data that might be relevant to the defense without knowing what data is on the servers.[2] Until yesterday, despite repeated requests, the government had not even provided Defendants with an overview of the information that is contained on the servers in its possession. It also now refuses to provide imaged copies of the servers in its possession, despite previous representations that it would do so. *See* Exhibit C, AUSA Rapp's December 10, 2018 Letter, at 2 ("Once all servers are imaged, investigators *will be able to provide hash verified image copies of all imaged drives*. Due to the capacity of the Backpage servers this will be a time intensive undertaking and the *imaged copies will be distributed* over hundreds of hard disk drives." (emphasis added).)

The government only produced imaged copies of five servers on March 8, 2019. The government's decision to produce imaged copies of these servers was guided by information it received from a cooperating witness whom the Defendants have not been able to question. *See* Transcript at 32:9-32:17. Imaged copies of these five servers were delivered in 56 separate hard drives containing 69 terabytes of data. The data is not viewable on a standard computer, and Defendants must retain a forensic expert with adequate infrastructure to even *view* the data. In its December 10, 2018 letter, the government recognized this problem: "These raw database files cannot

---

[2] For example, the information the government provided just yesterday in the exhibits to its status report states that one server contains "email and subpoena data preservation requests." (Doc. 646, Ex. D, p. 7.) Defendants don't believe the government has produced the data from this server, but both email and evidence of Backpage.com's cooperation with law enforcement investigations plainly are relevant to the defense. In light of Backpage.com's extensive cooperation with law enforcement, Defendants expect this data will be voluminous.

simply be reviewed or loaded into a viewer to reconstruct the data. We are currently working on a solution to review these database files and correlate the images posed [sic] to the image server to the posts from the database files." Exhibit C.  Despite acknowledging that Defendants cannot review this evidence, the government has not provided Defendants with access to the data in the same functionality, condition, and configuration it was in at the time of the government's seizures, nor has the government provided any "solution" for correlating the millions of pieces of disparate data contained across any of the imaged hard drives.

Barring technical issues and assuming that these five servers were imaged correctly with no errors, Defendants understand that it would take a forensic expert approximately 1,380-2,760 hours (8-16 months of full time work) and untold costs to forensically analyze the data contained on the 56 hard drives alone.  Further, these hard drives alone are essentially useless without additional information such as how the hard drives were configured in each server, how each server was configured and connected to the other servers, and recreation of the relational codes that made the website and database functional.  None of this would be required to access the data if the government had not destroyed Backpage.com's computer systems.

Moreover, despite the December 3, 2018 deadline for discovery, the government has yet to provide payment processing data from the Backpage.com servers, and other records, related to the dozens of money laundering counts against Defendants.  The government claims Defendants were laundering money, misleading the public, misleading banks, and misusing merchant accounts, but has produced almost no evidence relating to these charges, and none from the online payment processing databases.  Defendants have repeatedly requested this information.  The government has represented that it believes the data from the online payment processing databases is contained among the approximately 60 servers that have been forthcoming for months from Amsterdam.  On April 23, 2019, the government indicated that "we'll get that to them hopefully within the next six weeks."  Transcript at 34:5-34:6.  The government has not responded to any requests as to the status of the Amsterdam servers (though the government's status report filed yesterday evening provides another proposed timeline as to their arrival), and Defendants have been and presently remain entirely without access to the payment processing data in the same functionality, condition, and

configuration it was in at the time of the government's seizure.  Consequently, Defendants cannot begin to adequately prepare their defense to the 48 counts of money laundering charges.

**B.      The government has not provided all Bates numbers of its trial exhibits.**

At the last hearing, Defendants demonstrated to the Court that most of the government's lengthy trial exhibit list did not include an identifying Bates number that corresponded to the discovery the government had produced.  *See* Transcript at 35:25-39:25.  On April 23, 2019, the Court directed the government to provide the Bates number of each of its trial exhibits, and the government agreed.  *See* Doc. No. 545; Transcript at 43:12-43:14, 42:22-42:23, 46:6-46:8.  Defendants reiterated this request in correspondence with the government subsequent to the last hearing.

On the afternoon of May 29—three days before this report was due—the government sent defense counsel a letter purportedly updating their exhibit list.  That list presents at least three issues: (1) the list is incomplete, (2) the list cites to Bates prefixes that the government has not produced, and (3) the list reordered and relabeled the government's exhibits, rendering all work done to date to find and identify previously identified exhibits moot.  In its ten discovery productions from May 2018 through April 2019, the government has sent nearly eleven million pages of documents, <u>all</u> of which are Bates-stamped with the prefix "DOJ-BP."  *See* Exhibit D (collecting the government's discovery production cover letters).  Yet its updated, 76-page exhibit list includes 150 exhibits that are identified either with multiple other Bates prefixes that the government has never produced to Defendants or with no Bates page(s) at all.

Defendants' request was and remains for the government to send complete identifying Bates numbers for all trial exhibits of documents it has produced.

**C.      No additional Jencks materials have been disclosed.**

The Court also requested an update as to the status of the government's *Jencks* Act production.  Doc. No. 545.  Since the last status conference, the government provided a draft of Daniel Hyer's cooperation addendum and later his signed cooperation addendum.  The government neither produced nor identified any additional *Jencks* Act materials and represented that it has produced all *Jencks* Act material in its possession, except for Carl Ferrer's materials which it will produce by the extended deadline of June 25, 2019.

Defendants' ability to prepare their defense is crippled by the government's withholding of its main cooperator's *Jencks* Act materials.  The scheduling order to which Defendants agreed contemplated that *Jencks* Act materials would be provided by February 2019.  Defendants believe Ferrer is the government's key alleged percipient witness, and Defendants therefore will not be able to make significant decisions as to necessary investigations, witnesses to call, or evidence to rebut Ferrer's claims until Defendants have received and reviewed Ferrer's *Jencks* Act material, which they expect will be voluminous.

## III.    REQUEST FOR DEADLINES

The current state of discovery renders undersigned counsel unable to adequately represent Defendants, unable to identify exhibits and witnesses by current deadlines, and unable to identify and bring all motions by current deadlines.  Thus, Defendants propose suspending the current scheduling order until the government has complied with its discovery obligations.  As the Court noted at the April 23, 2019 hearing, "until the government gets [the Amsterdam] servers in their possession, [it] seems premature to talk about … what is realistic" in terms of the scheduling order. *See* Transcript at 31:12-31:17.  Alternatively, in the meantime, Defendants propose extending the outstanding deadlines in the scheduling order by at least six months.

Given the incomplete discovery Defendants have received to date and the lack of clarity from the government, it appears that the government's case is predicated on four main categories of evidence: (1) claims that the Backpage.com website was mostly, if not entirely, ads for prostitution; (2) individual ads as alleged in the Superseding Indictment; (3) a limited number of purported factual witnesses who presumably will say that Defendants were present when certain things were said or done; and (4) a scattershot of inadmissible hearsay conclusions, including news reports, a Senate report, and police investigations of murders and other crimes completely unrelated to the act of publishing.

As to the first category of the government's evidence, claims that the entirety of the Backpage.com website was for prostitution, Defendants accordingly must be able to access the entirety of the website and utilize experts and others to rebut and defend against these claims. Defendants currently do not have access to the website in any format, let alone in the format and

with the same functionality, condition, and configuration as when the government seized it. Regarding the government's reliance on specific cherry-picked advertisements, Defendants need to be able to search the Backpage.com database, with the same functionality it had when the government seized it, to be able to meaningfully investigate each ad, its history, any changes or modifications made to the ad, whether the ad was reported to law enforcement, whether the ad was free or paid, and other potentially exculpatory information.  Defendants do not have meaningful access to this type of information now either.  As to the government's third category of evidence, its percipient factual witnesses, it is known that Carl Ferrer is the government's key witness.  The government has not produced any of Ferrer's statements, interviews, testimony, or *Jencks* Act materials.  Once Defendants receive and review this forthcoming voluminous information, Defendants will need to conduct substantial additional investigation into people and things mentioned by Ferrer.  Defendants have no ability to do this at present.  And finally, regarding the government's reliance on hearsay conclusions of third parties, which comprise the bulk of the government's exhibit and witness lists, Defendants anticipate motion practice challenging admissibility and the government's predicating its case on non-admissible evidence.

As discussed above, it is logical to suspend the briefing schedule until the Court rules on the pending motion to dismiss (Doc. No. 561).  That ruling may terminate the case or at least refine the issues, which would then be addressed via further motion practice and litigation, including, but not limited to, motions for grand jury instructions and transcripts.  Even if the pending motion to dismiss is not granted, the ruling on the motion may inform the discovery necessary to review for trial.

Moreover, should the case continue past the motion to dismiss, Defendants need time to adequately review discovery produced to date, receive and then review voluminous outstanding discovery, and prepare a trial defense.  The failure to receive the additional outstanding discovery and the inability to the access the few databases produced to date with the same functionality and in the same condition and configuration as when they were seized stymies Defendants' ability to prepare.  *See, e.g.*, Exhibit B.  For counsel for the Defendants to meet their obligations under the Sixth Amendment, it is fundamental that Defendants have access to, and the ability to meaningfully analyze, the data, including ad histories and financial transactions, on which the government's case

is predicated.  At present, Defendants are not able to do that.  Additionally, Defendants still await a response from the government to their May 23, 2019 letter.  *Id.*  The government's response to this letter may necessitate forthcoming motions to compel discovery.  Defendants intend to file a motion and/or supplement this report in advance of the June 24, 2019 status conference regarding discovery.

Further, additional time also is needed to permit new counsel to obtain the resources and infrastructure needed to review the many millions of documents the government has produced and continues to produce, such as possible assistance from the National Litigation Support Team's Coordinating Discovery Attorney program.  New counsel will file a separate motion to continue which will further elaborate on these issues and the need for additional time.

Additionally, the appeal of defendants Larkin, Lacey, Brunst, and Spear is pending before the Ninth Circuit, with expedited oral argument set for July 9, 2019.  Because this appeal addresses issues of the First Amendment as it relates to the government's pretrial seizures of publishing assets and current prosecution of publishers, it makes sense to await the Ninth Circuit's ruling.  The government's sweeping seizures in the Central District of California have been the subject of substantial litigation.  The Ninth Circuit's ruling regarding these seizures will inform the future of the case, as Defendants will obtain the resources needed to the defend the case or will be forced to pursue additional litigation and seek alternate remedies.  The Ninth Circuit's decision likely also will clarify the First Amendment interests at issue in this case, impacting many aspects of this case.[3]

As it stands, undersigned counsel are unable to adequately do all that is needed to defend this case by the dates set in the current scheduling order at Doc. No. 131.  It would be a denial of due process to force Defendants to go to trial before they are adequately prepared.  Accordingly, in light

---

[3] The DKT Liberty Project, Cato Institute, and Reason Foundation also filed an amicus brief in support of the Defendants' appeal.  The concluding paragraph of the amicus brief states: "Backpage.com has been repeatedly subjected to prosecutorial attempts to impose criminal liability for what courts have repeatedly recognized is constitutionally protected expression.  The government, however, has not stopped with prosecuting Backpage.com.  Instead, it appears that the government intends to bankrupt anyone who has ever had anything to do with Backpage.com.  The government's unconstitutional seizure of assets and proceeds from Backpage.com and weekly newspapers, then, is simply one more attempt to erode the First Amendment's carefully erected bulwarks around free expression.  This Court should not countenance this attempt." *United States v. James Larkin et al.*, Case No. 18-56455, Doc. 29, p. 17-18 (citations omitted).

1  of the above, and in consideration of the entire record of this case, Defendants respectfully request

2  that the Court suspend the current scheduling order until the government has completed discovery.

3  Alternatively, in the meantime, Defendants request that the Court move all outstanding dates in the

4  scheduling order back by at least six months.

5  Dated:  June 1, 2019                                    Respectfully submitted,

6

7                                                                    BIENERT | KATZMAN PC
                                                                     s/ Whitney Z. Bernstein
                                                                     Whitney Z. Bernstein

8                                                                    Thomas H. Bienert, Jr.

9                                                                    Attorneys for James Larkin

10                                                                   LIPSITZ GREEN SCIME CAMBRIA LLP
                                                                     s/ Paul J. Cambria, Jr.

11                                                                   Paul J. Cambria, Jr.
                                                                     Erin McCampbell

12                                                                   Attorneys for Michael Lacey

13                                                                   DAVIS WRIGHT TREMAINE LLP
                                                                     s/ James C. Grant

14                                                                   James C. Grant

15                                                                   Attorneys for James Larkin and Michael Lacey

16                                                                   BIRD MARELLA BOXER WOLPERT NESSIM
                                                                     DROOKS LINCENBERG AND RHOW

17                                                                   s/ Gary S. Lincenberg
                                                                     Gary S. Lincenberg

18                                                                   Ariel A. Neuman

19                                                                   Gopi K. Panchapakesan
                                                                     Attorneys for John Brunst

20                                                                   FEDER LAW OFFICE, P.A.

21                                                                   s/ Bruce Feder
                                                                     Bruce Feder

22                                                                   Attorneys for Scott Spear

23                                                                   DAVID EISENBERG PLC
                                                                     s/ David Eisenberg

24                                                                   David Eisenberg

25                                                                   Attorneys for Andrew Padilla

26                                                                   JOY BERTRAND ESQ LLC
                                                                     s/ Joy Bertrand

27                                                                   Joy Bertrand
                                                                     Attorneys for Joye Vaught

28

DEFENDANTS' JOINT STATUS REPORT

**CERTIFICATE OF SERVICE**

I certify that on this 1st day of June 2019, I electronically transmitted a PDF version of this document to the Clerk of the Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants listed below.

*/s/ Whitney Z. Bernstein*
Whitney Z. Bernstein

Anne Michelle Chapman, anne@mscclaw.com

Erin E. McCampbell, emccampbell@lglaw.com

Anthony R. Bisconti, tbisconti@bienertkatzman.com

Ariel A. Neuman, aan@birdmarella.com

Bruce S. Feder, bf@federlawpa.com

James C. Grant, jimgrant@dwt.com

Lee David Stein, lee@mscclaw.com

Paul J. Cambria, pcambria@lglaw.com

Robert Corn-Revere, bobcornever@dwt.com

Ronald Gary London, ronnielondon@dwt.com

Janey Henze Cook, janey@henzecookmurphy.com

John Lewis Littrell, jlittrell@bmkattorneys.com

Seetha Ramachandran, Seetha.Ramachandran@srz.com

Thomas H. Bienert, Jr. tbienert@bienertkatzman.com

Whitney Z. Bernstein, wbernstein@bienertkatzman.com

Gary S. Lincenberg, glincenberg@birdmarella.com

Gopi K. Panchapakesan, gpanchapakesan@birdmarella.com

Michael D. Kimerer, mdk@kimerer.com

Rhonda Elaine Neff, rneff@kimerer.com

David S. Eisenberg, david@deisenbergplc.com

Joy Malby Bertrand, joyous@mailbag.com

John Jacob Kucera, john.kucera@usdoj.gov

Kevin M. Rapp, Kevin.Rapp@usdoj.com

Margaret Wu Perlmeter, Margaret.perlmeter@usdoj.gov

Reginald E. Jones, reginald.jones4@usdoj.gov

Peter Shawn Kozinets, Peter.Kozinets@usdoj.gov

Andrew C. Stone, andrew.stone@usdoj.gov

DEFENDANTS' JOINT STATUS REPORT

## <u>Index of Exhibits</u>

Exhibit A:  Michael Piccarreta's May 1, 2018 Letter to AUSAs Rapp and Lanza

Exhibit B:  Whitney Z. Bernstein's May 23, 2019 Letter to AUSAs Jones and Rapp

Exhibit C:  AUSA Rapp's December 10, 2018 Letter to Defense Counsel

Exhibit D:  Government Discovery Production Discovery Letters

# Exhibit A

PICCARRETA DAVIS KEENAN FIDEL PC
LAWYERS

MICHAEL L. PICCARRETA
JEFFERSON KEENAN
LOUIS S. FIDEL

BARRY M. DAVIS
(1948-2016)

2 EAST CONGRESS STREET, SUITE 1000
TUCSON, ARIZONA 85701
(520) 622-6900
FAX (520) 622-0521
WWW.PD-LAW.COM

May 1, 2018

VIA EMAIL

Dominic Lanza (Dominic.Lanza@usdoj.gov)
Kevin Rapp (Kevin.Rapp@usdoj.gov)
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Ste. 1200
Phoenix, AZ 85004-4408

Re:     United States v. Lacey, et al.

Dear Dom and Kevin:

It is my understanding that there have been various computers, hard drives, servers, etc., that have been seized from individuals and/or various entities. These items contain evidence which we believe is exculpatory to the defendants. It is critical when we gain access to these items that we are able to access the servers in the same condition and configuration as when they were seized. In essence, we will need to examine these items in the same condition as they were received by the government. Accordingly, we request whatever individual or entities are maintaining this evidence that they maintain it in the same condition as it was seized and received by the government and take all steps to maintain its integrity. I am assuming, based on past experience, that this has been done and will continue to be done, but I thought it best to forward this request in writing on behalf of the defendants.

Sincerely,

Michael L. Piccarreta

MLP:mh
cc:     Tom Bienert (via email: tbienert@bmkattorneys.com)
        Paul Cambria (via email: pcambria@lglaw.com)
        Bruce Feder (via email: bf@federlawpa.com; fl@federlawpa.com)
        Mike Kimerer (via email: mdk@kimerer.com)
        Gary Lincenberg (via email: gsl@birdmarella.com)
        KC Maxwell (via email: kmaxwell@bgrfirm.com)
        Steve Weiss (via email: sweiss@karpweiss.com)

# Exhibit B



May 23, 2019

**Via E-Mail**

Reginald E. Jones
Assistant U.S. Attorney
E-Mail: reginald.jones4@usdoj.gov

Kevin Rapp
Assistant U.S. Attorney
E-Mail: kevin.rapp@usdoj.gov

**Re:   *United States v. Lacey, et al.*, No. 18-CR-00422-PHX-SMB**

Dear Counsel:

In the April 23, 2019 status conference, you represented that the government will provide data from the Backpage.com servers and systems upon Defendants' request regarding what they need. *See* 4/23/19 Hearing Transcript at 24 ("Your Honor, but we went a step further. We said, hey, can you articulate to us what else on these servers that you would like extracted and we can look for it and provide it to you."); *see id.* at 25 ("We've asked them repeatedly, hey, is there anything that we haven't provided[?]"); *see also* 5/10/19 Letter from R. Jones at 2 ("What the government has repeatedly asked Defendants … is to provide it specific server data … that you believe is material to your defense.").

We appreciate the government's position, as Defendants need to obtain specific materials the government believes supports its charges as well as exculpatory information in the government's possession. This is particularly important here, because the government alone has the information technology ("I.T.") systems, servers, and databases that ran the Backpage.com website. The government's case ultimately must be premised on actual ads and data, not generalized characterizations or selected out-of-context quotes from emails. At the same time, Defendants are entitled to obtain and present evidence about what Backpage.com actually did regarding publication, blocking, editing, or other moderation of third-party ads, and who was involved (and not involved) in these activities. Indeed, we believe the evidence of Backpage.com's *actual practices* – in screening and blocking ads, in cooperating with law enforcement, and in other respects – is exculpatory information the government is required to produce under *Brady v. Maryland*, 373 U.S. 83 (1963).

What Defendants most need is access to the Backpage.com I.T. systems, servers, and databases, functioning as they existed at the time of the government's seizures. As you know, the Backpage.com systems contained and connected a number of different servers



and databases, which, along with operating and administrative software, enabled the functionality and user-interface of the website and allowed for payment processing, moderation, administrative, and other tasks.  The I.T. systems, servers, and databases, as they existed, enabled review, collection, and analyses of data in numerous ways and with relative ease.  Obtaining access to the functioning version of the date-of-seizure Backpage.com website and systems is crucial, as Defendants need the ability to query the systems to search for information pertinent to their defense.

More generally, and in accordance with the government's commitment to extract and provide data from the Backpage.com servers and systems as articulated by Defendants, we provide the following list of data and information Defendants request and need.  We think the importance of this information is apparent and disagree with the government's assertions that Defendants must prove materiality in order for the government to produce data and information it holds.  *See, e.g.*, 4/23/19 Trans. at 25 (Mr. Jones asserting that Defendants should be required to show materiality).[1]  Nonetheless, to avoid objections or further back-and-forth that would delay Defendants from obtaining the information they need, we have included brief explanations of some of the ways the requests are material to the defense of the charges the government has lodged.

Under Rule 16 of the Federal Rules of Criminal Procedure, the government must disclose any information that "is material to preparing the defense."  The Ninth Circuit has continuously and repeatedly emphasized that "Rule 16 . . . grants defendants a broad right to discovery."  *See United States v. Doe*, 705 F.3d 1134, 1150 (9th Cir. 2013); *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010) (same).  Information is material if it is relevant to a possible defense, *id.*, and includes both inculpatory and exculpatory information, *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Information that is not exculpatory or impeaching may still be relevant to developing a possible defense.").  Even information that merely "causes a defendant to completely abandon a planned defense and take an entirely different path" must be disclosed under Rule 16's broad discovery right.  *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (internal quotation marks omitted).  As the Ninth Circuit held in *United States v. Soto-Zuniga*, "[t]he test is not whether the discovery is admissible at trial, but whether the discovery may assist [the defendant] in formulating a defense."  837 F.3d 992, 1003 (9th Cir. 2016).  In *Soto-Zuniga*, the Ninth Circuit also reiterated that "it behooves the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case."  *Id.* (quoting *Hernandez-Meza*, 720 F.3d at 768) (internal quotations omitted).

---

[1] These requests are without prejudice and in addition to other requests Defendants have made for complete production of the Backpage servers, *Brady* and *Jencks* materials, and other information.



Accordingly, and mindful of footnote 1, Defendants request and need:

## A. Backpage.com Website Generally

1. Full read-only access to the Backpage.com I.T. systems, servers, and databases, as they existed and functioned on the date of the government's seizures, with accompanying software and interconnections to enable queries, searches, collection, and analyses of data.

   *Explanation*: As noted above, this is Defendants' highest priority in terms of data disclosures from the government.

2. Data reflecting, by month, the numbers of ads run on Backpage.com within each category of the website (*e.g.*, "buy/sell/trade," "jobs," "rentals," "adult," etc.) and for each subcategory within the "adult" category (*e.g.*, "escorts," "massage," "dating," etc.).[2]

3. Data reflecting total revenues, by month, for ads within each category and subcategory of the Backpage.com website.

   *Explanation*: Defendants seek this data to show that Backpage.com was a general purpose classified ad website, only a fraction of ads were posted in the adult categories, and the site earned many millions of dollars from non-adult ads.

4. All ads Backpage.com reported to the National Center for Missing and Exploited Children (NCMEC) or other law enforcement (along with all administrative data and information regarding such ads) and data reflecting the numbers of ads reported, by month.

   *Explanation*: The government has alleged that Backpage.com's referrals to NCMEC were "artificially limit[ed]" and not made in good faith.  *See* Superseding Indictment (referred to herein as the "Indictment" and cited as "SI") ¶ 14. Defendants need to obtain all such referrals to demonstrate how extensive Backpage.com's efforts were.  Defendants also believe the government is aware that NCMEC complained that Backpage.com was making too many

---

[2] All of the requests set forth in this letter encompass all data within Backpage.com's databases and systems as they existed at the time of the government's seizures and wherever located, including servers and systems hosted by Backpage.com affiliates or vendors, such as DesertNet (including data and communications from Mantis), Amazon Web Services, or others.  They cover the whole of the period of time for which the government has asserted charges, 2004 - April 2018, and any and all such data within the Backpage.com databases and systems.



referrals, and data of the numbers of referrals by month will show
Backpage.com's response to NCMEC's request to limit referrals.

5. All documents and data reflecting Backpage.com's cooperation with law enforcement
authorities in investigations or prosecutions, including (a) responses to subpoenas,
warrants, and/or other government requests about ads or users; (b) communications
relating to such responses; and (c) testimony or other evidence provided by
Backpage.com personnel in criminal proceedings or trials.

*Explanation*: Defendants believe the government is aware that law enforcement
authorities repeatedly commended Backpage.com for its cooperation and
assistance in investigations and prosecutions and for blocking (or not
blocking) ads and users at the request of authorities (including, *e.g.*, a May
2011 commendation by FBI Director Robert S. Mueller, and scores of other
communications from DOJ thanking Backpage.com or its personnel for
their support and assistance).  Defendants seek this information, as well, to
respond to the government's accusations that testimony of Backpage.com
personnel supporting law enforcement allegedly reflected knowing
participation in prostitution activities of users.  *See* SI ¶¶ 71, 92.

6. All documents quoted or mentioned in the Indictment, identifying the paragraphs in
the Indictment where each document is quoted or mentioned, and providing all other
communications relating to each such document (*e.g.*, all emails in a chain).

*Explanation*: Defendants asked for this information in my April 25, 2019 letter, and the
government responded by providing document Bates ranges of over 2,200
pages of materials without any indication of which paragraphs of the
Indictment refer to which documents.  *See* 5/10/19 Letter from R. Jones,
at 1.  As noted before, searching through thousands of pages of documents
to attempt to line them up to the allegations in the Indictment is an
arduous, burdensome, and time-consuming task that Defendants should
not have to do, because it is information known to the government, which
could be readily disclosed.

## B.  Moderation

7. Data reflecting the numbers of ads, by category and month, that Backpage.com
blocked or prevented from running (whether before or after the ads went live on the
website) and the reasons the ads were blocked or prevented from running.



8.  Data reflecting the numbers of ads, by category and month, for which Backpage.com revised or edited any text in an ad, identifying the numbers of ads revised/edited by (a) automated filters and (b) human moderators.

9.  Data reflecting the numbers of ads, by category and month, that Backpage.com edited to remove images, identifying the number of ads with images removed by (a) automated filters and (b) human moderators.

10. Data reflecting the numbers of ads, by category and month, that Backpage.com edited in a manner other than as set forth in categories 7 and 8 above (*e.g.*, to remove links to potential malware or spam), identifying the number of ads edited by (a) automated filters and (b) human moderators

*Explanation*:  It is important to show Backpage.com's actual moderation practices to respond to and rebut mischaracterizations (*i.e.*, to show that Backpage actually blocked and removed tens of millions of ads; did not edit ads to promote any illegal conduct; enforced the website's terms of use; and undertook screening and removal practices customary among websites).

The government has alleged that Backpage.com routinely edited ads to remove terms so as to facilitate prostitution.  *See* SI ¶¶ 11, 68.  Defendants believe the data regarding Backpage.com's actual practices will reflect that this is patently false.  For example, Defendants believe the data concerning Backpage.com's actual practices will reflect that the website blocked and removed approximately 1,000,000 ads per month in all categories for a variety of different reasons (*e.g.*, violations of the site's terms of use, offensive content, possible malware, spam, scams, etc.).  Defendants also believe the government is aware that, to the extent ads on Backpage.com were "edited" to remove text, this occurred only for a brief period, ending many years before the indictment.  Defendants also believe the data will show that such editing occurred almost entirely through use of automated filters – which are commonly used by websites – and, after automated filtering, Backpage had additional layers of review by human moderators to determine if ads should be blocked or removed altogether.

11. All ads the government alleges Backpage.com revised to "remov[e] particular terms that were indicative of prostitution," SI ¶ 68, including all administrative data and information regarding such ads, and identifying (a) the ads as they were submitted by users; (b) the ads as they ran on the website; (c) the specific edits made to the ads; (d) how and/or by whom each ad was edited; (e) all data about whether each ad was blocked or removed; and (f) the dates of the ads.



12. All iterations of lists of prohibited terms or phrases for ads on Backpage.com in a complete and searchable format (*i.e.*, spreadsheets as they existed on the systems and not merely images of spreadsheets) including the dates each list was in effect and how the list was applied to different categories on the website (*e.g.,* the differences in standards for ads posted by users in the dating subcategory as opposed to the escort subcategory).

*Explanation*: Defendants believe the government is aware that Backpage.com's policies and instructions to moderators – at all times – were to block and remove any ads that offered sex for money.  It is unclear what the government may believe are terms "indicative of prostitution," as alleged in the Indictment. To be able to respond to the government's claim that Backpage.com allegedly edited ads to promote or facilitate specific instances of advertised prostitution, Defendants need to see all ads the government contends are evidence of such instances.  In addition, Defendants seek evidence reflecting that Backpage.com's screening searched for more than 26,000 terms, phrases, URLs, and addresses and blocked over 1,000,000 user submissions per month as a result.  *See Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 814 (M.D. Tenn. 2013).

13. All ads the government alleges Backpage.com edited to remove terms such as "Lolita," "New In Town," "young," "amber alert," "teen," "fresh," "tight," "high school," "rape," "teenage," "little girl,", "innocent," or "school girl" including all administrative data and information regarding such ads, and identifying (a) the ads as they were submitted by users; (b) the ads as they ran on the website; (c) the specific edits made to the ads; (d) how and/or by whom each ad was edited; (e) all data about whether each ad was blocked or removed; and (f) the dates of the ads.

*Explanation:*  The government has alleged that Backpage.com omitted these terms from user-submitted ads to promote known instances of sex trafficking.  *See, e.g.*, SI ¶¶ 13, 85, 95, 104, 116 *see also* 4/23/19 Hearing Transcript at 65 (AUSA Rapp stating, "They don't respond to our arguments about the moderation practices where they removed terms indicative of child sex trafficking, like Lolita, Amber Alert, Sweet Young Thing, New in Town, and then continue to post the ads. They don't respond to that.").  Defendants are not aware of any instances when this occurred, and therefore need to obtain all ads the government contends were so edited, as well as all other information about such ads (*e.g.*, the context of the terms as used in given ads, whether the ads were blocked or removed entirely by human moderators, and whether the ads were reported to NCMEC or law enforcement authorities).



## C. "Aggregation"

14. All ads that the government alleges concerned prostitution and were posted on Backpage.com through the process of "aggregation," *see* SI ¶¶ 35-44, including all administrative data and information regarding such ads, identifying (a) the websites on which the ads previously appeared; (b) the ads as they appeared on the other websites and on Backpage.com, respectively; (c) the categories/subcategories in which the ads ran on Backpage.com; and (d) the dates of the ads.

*Explanation*: Defendants believe the government is aware that Backpage.com employed "aggregation" efforts (*i.e.*, contacting individuals who had posted ads on other websites such as Craigslist.org to ask if they wanted to run the same ads on Backpage.com) in the adult categories in the United States only for a short time early in the website's history and ceased this marketing effort for the adult categories on its U.S. website many years ago. *See, e.g.*, SI ¶¶ 37-42 (alluding to emails about aggregation only in 2007-2008). Defendants further believe the ads posted to Backpage.com through these efforts were primarily located via Google searches.

15. Data reflecting the numbers of ads, by category and month, that Backpage.com posted through the process of "aggregation."

16. All data and documents reflecting that, in such aggregation efforts, "Backpage employees … identif[ied] prostitutes advertising," SI ¶ 36, and each ad posted on Backpage.com through "aggregation" that the government alleges was, on its face, an ad for prostitution.

*Explanation*: Defendants believe the government is aware that Backpage.com personnel solicited ads of many types, including for jobs, therapeutic massage, sporting goods, local places, and pet sales, as well as (for a period of time many years ago) escort ads. These efforts were similar to marketing done for newspaper classified advertising sales for many years. Defendants also believe the government is aware that Backpage.com's policies for these marketing efforts forbade soliciting any ads that appeared to be for illegal or improper services and that the actual ads posted will reflect that this policy was followed.

## D. "Reciprocal Link and Affiliate Programs"

17. All banner ads or other ads run by Backpage.com on theeroticreview.com, and documents and data reflecting the dates of each such ad.



18. All banner ads or other ads run by theeroticreview.com on Backpage.com, and documents and data reflecting the dates of each such ad.

19. All contracts or agreements between Backpage.com and theeroticreview.com (whether directly or through affiliated entities) referring or relating to "a reciprocal link program" or a "business arrangement."  *See* SI ¶¶ 45, 46.

20. All documents reflecting that any Defendant had knowledge that theeroticreview.com was a notorious "prostitution website."  *See* SI ¶ 54.

*Explanation*:    The government alleges Backpage.com entered into a "business arrangement with [theeroticreview.com to] post reciprocal ads on each other's websites," SI ¶ 45, but has not identified or provided any documents reflecting what the supposed agreed arrangement was, or what ads actually appeared on the respective websites.  Defendants also believe the government is aware – and data from the website will reflect – that such arrangements for banner ads were discontinued many years ago.  *See, e.g.*, SI ¶¶ 48-52 (reflecting that alleged arrangements were in place in 2007-2008).  The government also has not provided any data or information for the period when the banner ads appeared reflecting that any Defendant had any knowledge that theeroticreview.com supposedly was a known "prostitution website."

21. All data and documents reflecting Backpage.com policies and practices to preclude or block references to theeroticreview.com in user-submitted ads, including all ads Backpage.com blocked or removed on this basis.

22. All ads posted on Backpage.com that contained references to theeroticreview.com and that the government contends related to unlawful prostitution, including all administrative data and information regarding such ads and identifying (a) the categories/subcategories in which the ads ran on Backpage.com; (b) the content on theeroticreview.com to which the ads referred; and (c) the dates of the ads.

*Explanation*:    The Indictment alludes generally to banner ads run by theeroticreview.com and Backpage.com in 2007-2008, but does not mention Backpage.com's policies and practices disallowing references to theeroticreview.com in user-submitted ads, which Defendants believe were imposed and in effect from 2011 onward.

23. All documents reflecting that the individual "known as 'Dollar Bill'" was "known to be involved in the prostitution industry," SI ¶ 59, and (a) who affiliated with



Backpage.com the government alleges knew of this (and when); (b) who had dealings with "Dollar Bill" (and when); and (c) whether any Defendant ever had any dealings or involvement with "Dollar Bill."

24. All ads posted on Backpage.com by "Dollar Bill," including all administrative data and information regarding such ads, and identifying (a) the categories/subcategories in which the ads ran on Backpage.com; and (b) the dates of the ads.

25. All ads posted on Backpage.com by "Dollar Bill" that Backpage.com blocked or removed, including all administrative data and information regarding such ads, and identifying (a) when and why the ads were blocked or removed; (b) whether and when they were restored or reposted; (c) who was responsible or involved in blocking, removing, restoring, or reposting the ads; and (d) whether each Defendant had any knowledge or awareness of or involvement with the ads.

*Explanation*:   The Indictment alludes to "Dollar Bill," but offers no basis for asserting that he was "known to be involved in the prostitution industry," SI ¶ 59, much less any showing that any Defendant had any knowledge or awareness of this. *See* SI ¶¶ 59-67 (alleging that Ferrer had all contacts and dealings with "Dollar Bill"). In terms of fact allegations, the indictment only mentions that Backpage.com blocked or removed ads posted by "Dollar Bill," *see* SI ¶¶ 61, 64, 66, 67, not that Backpage.com knew of, promoted, or allowed any improper content. Defendants believe that data and documents concerning actual practices will reflect that "Dollar Bill" posted ads for massage businesses, and that Backpage.com enforced its terms of use and policies regarding ads posted by "Dollar Bill" as it did for other users.

## E. Ads That Are Alleged Predicates for Charges

26. All ads from Backpage.com's systems and databases that are or relate to the alleged "victims" identified in the Indictment, *see* SI ¶¶ 160-176, 201, including all ads submitted by, on behalf of, or for the individuals referenced in the ads (collectively, the "alleged victim ads").

*Explanation*:   The government has asserted that it has produced the alleged victim ads from Backpage.com's databases and systems. *See* 4/23/19 Trans. at 23 ("we have also extracted, you know, all of the ads that were on Backpage.com and given them to the defendants"); *id.* at 24 (we [have] given them the ads that were referenced in our superseding indictment"). In fact, however, the ads produced by the government apparently come



from the Internet Archive Wayback Machine (https://archive.org), *see, e.g.*, DOJ-BP-0004719487, or are merely captures of the text from ads (but not the ads as they appeared on the website), *see, e.g.*, DOJ-BP-0004719353, or appear to be image copies of subpoena responses provided by Backpage.com, *see, e.g.*, DOJ-BP-0004719354-69.  On March 15, 2019, the government provided a disk purportedly containing "sample ads," but which actually consisted of spreadsheets with some information about given ads (but not the text of the ads), and a separate collection of images from ads.  This information is grossly incomplete and provided in a format that is all but useless.  To be clear, Defendants seek the alleged victim ads and related ads as they appeared in Backpage.com's systems and databases when they were operational, along with all administrative data and information about the ads (discussed further below).

27. All ads posted using the same (a) email addresses; (b) IP addresses; (c) telephone numbers; (d) credit card numbers; (e) images; or (f) other identifying cross-references associated with the alleged victim ads (referred to here as "related ads").

*Explanation*:  As Defendants believe the government is aware, Backpage.com routinely identified these categories of information from its systems and databases in response to law enforcement subpoenas (ordinarily responding in less than 24 hours), and used the information to block and remove ads as requested by law enforcement authorities (or to maintain ads on the website when requested by law enforcement).  Defendants need to obtain this information about the alleged victim ads and related ads to address the government's accusations about the ads (*e.g.*, to show that the ads were not facially unlawful) and to show how Backpage.com actually dealt with the ads.

28. All administrative data and information regarding the alleged victim ads and related ads, including (a) credit card and/or other payment information; (b) editing or revision of ads by users; (c) editing or revision of ads by Backpage.com automated filters or moderators (and whether such revisions ever happened); (d) whether such ads were posted on Backpage.com through "aggregation" efforts; (e) all persons who reviewed, moderated, approved, revised or blocked such ads; (f) blocking or removal of any such ad by Backpage.com; (g) reporting of any such ad to NCMEC or law enforcement authorities; and (h) all cooperation of and information provided by Backpage.com to law enforcement or other authorities related to such ads and the individuals involved with the ads.



*Explanation*:   This too is information available in Backpage.com's systems and databases, which Backpage.com often collected and provided in response to requests from law enforcement authorities.  To be clear, Defendants seek all data and information in Backpage.com's systems and databases including in the "object editor," "adref," and "cardref" portions of the systems (*i.e.*, reflecting all actions taken with regard to ads, payment information, and all other backend data collected and retained by Backpage.com about ads).  Defendants strongly suspect that none of the alleged victim ads were edited by Backpage.com and none were posted through "aggregation" efforts.  Defendants further believe Backpage.com cooperated with law enforcement with respect to some or many of the alleged victim ads and/or blocked or removed the ads or users.  Defendants also seek information about review and moderation of the alleged victim ads and related ads to show that Defendants had no involvement.

29. For each ad on Backpage.com that the government alleges provides a basis for criminal charges against any Defendant, provide (a) all data and information regarding all persons who reviewed or moderated such ads, and any data or information reflecting whether any Defendant (b) saw the ad before publication; (c) approved the ad for publication; (c) edited or revised the ad before publication; or (d) saw the ad or had any knowledge of it before the government disclosed the original indictment on or about April 6, 2019.

*Explanation*:   Defendants believe the government is aware that Defendants had no knowledge or awareness of or involvement with any of any of the third-party ads on Backpage.com that the Indictment alleges as the bases for charges against Defendants.  Administrative data about the ads from Backpage.com's systems and databases will reflect this.

\* \* \* \* \*

Given the case schedule as it stands, it is important for Defendants to obtain this data and information as soon as possible.  We recognize that extracting and providing some of the categories of data may take more time than others, and we are willing to discuss prioritizing the list.  Also, if the government can provide prompt access to a functioning version of the Backpage.com systems and databases, we may be able to limit certain of categories of data to be extracted.  In all events, however, we need to move forward to obtain the actual data and information about the Backpage.com website and its operations, and we therefore ask for a response to these requests by May 24, 2019.



May 23, 2019
Page 12

Very truly yours,

**BIENERT KATZMAN, PC**

Whitney Z. Bernstein
Thomas H. Bienert, Jr.

## Whitney Bernstein

**From:** Whitney Bernstein
**Sent:** Thursday, May 23, 2019 9:32 PM
**To:** Rapp, Kevin (USAAZ); Jones, Reginald (CRM)
**Cc:** Tom Bienert; Toni Thomas
**Subject:** RE: 18cr0422-PHX-SMB Letter re Disclosure of Data

Hi – We request the information by May 31, 2019, not by tomorrow. Apologies for that typo and thank you again for your prompt attention to this matter.

Thank you,

Whitney

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700
www.bienertkatzman.com

---

**From:** Whitney Bernstein
**Sent:** Thursday, May 23, 2019 7:23 PM
**To:** Rapp, Kevin (USAAZ) <Kevin.Rapp@usdoj.gov>; Jones, Reginald (CRM) <Reginald.Jones4@usdoj.gov>
**Cc:** Tom Bienert <tbienert@bienertkatzman.com>; Toni Thomas <tthomas@bienertkatzman.com>
**Subject:** 18cr0422-PHX-SMB Letter re Disclosure of Data

Hi Kevin and Reggie,

Please see attached.

Best,

Whitney

**Whitney Z. Bernstein**
**Attorney**

Bienert | Katzman PC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Main (949) 369-3700
Website: www.bienertkatzman.com

*Please note my new email address: wbernstein@bienertkatzman.com

 

The foregoing message is confidential and intended for the designated recipient only.  The foregoing information may be protected by attorney-client and/or work product privileges.  Accordingly, if you have received this message in error, please contact BIENERT | KATZMAN PC at (949) 369-3700 immediately, and delete the message without reviewing, copying, or making further use of the information contained herein.

# Exhibit C



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| The Two Renaissance Square | Main: (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: (602) 514-7693 |
| Phoenix, AZ 85004-4408 | |

December 10, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria
42 Delaware Ave | Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200,
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Beinart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road, Suite
160
Phoenix, Arizona 85016
(attorney for Scott Spear)

Gary Lincenberg,Esq.
Ariel A. Neuman, Esq.
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg &
Rhow, P.C.
1875 Century Park East, 23rd
Floor
Los Angeles, California
90067-2561
(attorney for Jed Brunst)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel PC
2 East Congress Street, Suite 1000
Tucson, AZ 85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, P.C.
3060 North Swan Rd.
Tucson, Arizona 85712
(attorney for Joye Vaught)

      Re:    <u>U.S. v. Michael Lacey, et al.</u>
              CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

      This letter is meant to address the content on a number of servers that were seized and how we intend to comply with our Rule 16 obligations. As background, the United States seized 32 servers and three hard drives located in Tucson at an Internet service provider known as Desert Net. Desert Net was the primary domestic (Internet) host for Backpage. The servers have varying

December 10, 2018
Page 2

amounts of storage: some have 14.4 Terabyte (TB), another 7.2 TB, others 19.2 TB while others have 120 TB of storage. We have not gone through every server to determine the capacity. In the last subpoena we wrote, we estimated the capacity at approximately 500 TB or ½ petabyte (PB). Five additional servers were seized from Dallas, TX; one from Backpage Headquarters, and four additional servers from a datacenter in Dallas. Investigating agents also located 40 servers at a datacenter in Amsterdam, the Netherlands. Agents took possession of nine of the 40 servers in Amsterdam pursuant to an MLAT request and brought those servers to the Pocatello FBI office for examination. To date, two of the servers seized from the Tucson, AZ datacenter have been imaged, and the examination is ongoing. Also, four of the servers from the Amsterdam datacenter have been imaged.

All seized servers are being prioritized to be added to the queue to be imaged and prepared for review. One of the domestic servers contain literally millions of images that were uploaded for postings. The second server has over 100 separate databases which were used by Backpage to house, organize, and store data for the Backpage websites. The server's databases were named based on geographic regions. Some databases correlate with airport codes and others are a three-letter code that represent a yet undetermined geographic region. From this server we have access to the raw database files and are working to reconstruct the .ibd and .frm database files. These raw database files cannot be simply reviewed or loaded into a viewer to reconstruct the data. We are currently working on a solution to review these database files and correlate the images posed to the image server to the posts from the database files. Investigators were informed by the DesertNet administrators that the 31 servers remaining in Amsterdam did not contain pertinent data, but were utilized for frontend services associated with Backpage. Once all servers are imaged, investigators will be able to provide hash verified image copies of all imaged drives. Due to the capacity of the Backpage servers this will be a time intensive undertaking and the imaged copies will be distributed over hundreds of hard disk drives.

In the final analysis, these servers contain millions of postings, both domestic and international, that are typical of the ads that are referenced in the PSI report, the Superseding Indictment, and provided discovery. As you know, the international postings contain considerably more explicit text and photos indicative of prostitution because they were not subject to moderation and in some of the countries, unlike the United States, prostitution is legal. A random sampling demonstrates that the domestic postings are typical of all too familiar ads that contain coded text and photos indicative of prostitution. It is unclear how a review of each posting would lend itself to the stated defense that they are protected by the First Amendment. In any event, we intend to provide defendants a single copy of the hard drives for review. If you disagree with this process please advise so that we may promptly raise this issue with the Court.

December 10, 2018
Page 3

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

ELIZABETH A. STRANGE
First Assistant U.S. Attorney


s/ Kevin M. Rapp
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
Assistant United States Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

# Exhibit D



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main: (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: (602) 514-7693 |
| Phoenix, AZ 85004-4408 | |

May 24, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 205
Phoenix, AZ 85016
(attorney for Scott Spear)

KC Maxwell, Esq.
Law Office of K.C. Maxwell
235 Montgomery Street,
Suite 1070
San Francisco, CA 94104
(attorney for Dan Hyer)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel, PC
2 East Congress Street,
Suite 1000
Tucson, AZ 85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Re:   U.S. v. Michael Lacey, et.al.
      CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

Pursuant to your request for discovery and the government's obligations under Fed. R. Crim. P. 16 and the stipulated scheduling order in this case, please find enclosed two hard drives containing the government's initial disclosure.[1] The drive labeled *Hard Drive #1* contains the following Bates Stamped records:

---

[1] Hard Drives containing disclosure for defendants Michael Lacey and James Larkin are being provided to Paul J. Cambria Jr. and Thomas H. Bienart Jr., respectively.

- USAO 108 Subpoena – DOJ-BP-0000000001-DOJ-BP-0001037594
- Permanent Subcommittee Investigation (PSI) – DOJ-BP-0001037595-DOJ-BP-0002102561
- USAO 359 Subpoena – DOJ-BP-0002102562-DOJ-BP-0002137199
- California Department of Justice – DOJ-BP-0002137200-DOJ-BP-0003851025
- Carl Ferrer Gmail – DOJ-BP-0003851026-DOJ-BP-0004425148
- Additional Co-Star[2] – DOJ-BP-0004425149-DOJ-BP-0004425622
- SW Applications/Affidavits and Sealed GJ Pleadings/Orders – DOJ-BP-0004425623-DOJ-BP-0004426152
- USAO 108 Subpoena (supplemental) – DOJ-BP-0004426153-DOJ-BP-0004426710

The drive labeled *Hard Drive #2* contains Co-Star Bates Stamped records 17-0040_000000001-17-0040_005901038 and 17-0040_MOBILE_000000001-17-0040_MOBILE_000047872.

Any discovery provided which is not mandated by court order, the Federal Rules of Criminal Procedure, federal statute, or federal case law is provided voluntarily solely to expedite litigation of this case. Additional Rule 16 discovery within the government's possession will be provided to you by the court-imposed compliance deadline of December 3, 2018. The remainder of this letter sets forth government requests, and concludes with general discovery expectations.

   A.   Defense requests

Pursuant to Rule 16.1 of the Arizona Local Rules of Criminal Procedure and Rules 12(b)(4) and 16(a)(1)(A) & (B) of the Federal Rules of Criminal Procedure, the government gives notice of its intent to use at trial the following information: (1) the substance of any relevant oral statements made by the defendant before or after arrest in response to interrogation by any person then known to the defendant to be a government agent if such statements will be used at trial; (2) any relevant written or recorded statements made by the defendant before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; (3) any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and (4) any recorded testimony by the defendant before a grand jury relating to the charged offense. In the event that additional evidence of this nature becomes available, it will be provided to you as part of the discovery process.

In the event that any interview notes subsequently prove to be discoverable, and pursuant to *U.S. v. Harris*, 543 F.2d 1247 (9th Cir. 1976), federal government agents have preserved and will continue to preserve any notes of interviews with the defendants in this case.

The United States does not share the view, nor is it aware of authority to support the position, that the Sentencing Guidelines create additional defense discovery privileges. Please be advised that the United States will continue to comply with its discovery obligations pursuant to

---

[2] Co-Star records produced to the government without assigned bates numbers.

applicable constitutional requirements, federal discovery rules, and applicable case law, including but not limited to *Brady v. Maryland*, 373 U.S. 83 (1963).

Pursuant to Rule 16(a)(1)(F) & (G), the government intends to use expert testimony at trial. The government will supplement this response by the deadline specified in the scheduling order (i.e., December 14, 2018) after the experts have been retained and their reports have been prepared and their intended testimony is known.

Pursuant to Rule 404(b) of the Federal Rules of Evidence, the discovery now being provided to you (as well as the discovery materials that will be produced in the future) may relate to other acts by the defendant which may be relevant to the actions of the defendant that resulted in the criminal charges in this case. This letter serves as notice of the government's intent to use this evidence at trial.

You have also requested notice of all evidence which may be used at trial by the government. Pursuant to Rule 12(b)(4)(B) and Rule 16(a)(1)(E), the government may use all evidence disclosed at trial. The government reserves the right to supplement the evidence disclosed prior to trial.

B.      Government requests

Please also consider this letter the government's request for reciprocal discovery pursuant to Rule 16(b)(1)(A) and (B) of the Federal Rules of Criminal Procedure by the court-imposed March 4, 2019 deadline. I am requesting permission to inspect and copy or photograph any books, papers, documents, photographs, tangible objects, or copies of portions thereof, which are in your possession, custody or control, and which you intend to introduce as evidence in your case-in-chief at trial. We also request permission to inspect and copy or photograph any results or reports of physical or mental examinations, scientific tests or experiments made in connection with the case, or copies thereof, within your possession, custody, or control, which you intend to introduce as evidence in your case-in-chief at trial, or which were prepared by a witness whom you intend to call at trial.

Pursuant to Rule 16(b)(1)(C), I am requesting a written summary of any expert testimony the defendant intends to use as evidence at trial by the court-imposed March 14, 2019.

I also wish to respectfully call your attention to Rules 12.1, 12.2, and 12.3 of the Federal Rules of Criminal Procedure with respect to the defenses of alibi, mental capacity and public authority. Failure to comply with the time limits of those rules may result in a refusal by the court to permit testimony in support of those defenses.

Pursuant to Rule 12.1(a) of the Federal Rules of Criminal Procedure, the government specifically requests that the defendant serve upon the undersigned a written notice of intention to offer an alibi defense within ten days of the receipt of this letter. Please include in your response each specific place your client claims to have been as well as the names, addresses, and telephone numbers of any witnesses upon whom you intend to rely to establish the alibi. The government hereby states that the offenses were committed on the dates set forth in the charging document and

Lacey, et. al. Discovery Letter 1
May 24, 2018
Page 4

that the offenses were committed at the locations indicated in the charging document and/or discovery materials.

      C.     General expectations

      To avoid delay during the trial, it is my intention that information, statements, and reports discoverable under the Jencks Act and Fed. R. Crim. P. 26.2 which are not provided sooner will be produced by the court-imposed February 25, 2019 deadline.  In order to avoid delay in the defense obligations under Rule 26.2, please provide me with any typed, handwritten or recorded statements made by any defense witnesses other than the defendant by the court-imposed May 27, 2019 deadline..

      We have no desire to prosecute the wrong person, and would appreciate the opportunity to evaluate the necessity of proceeding in light of any information you have indicating that your client did not commit the offense or offenses charged.  Please communicate this request to your client so that, through you, we can receive and consider any such information.

      Finally, the government will comply with, and expects reciprocal compliance with, Fed. R. Crim. P. 16(c), which states as follows:

> "A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if:  (1) the evidence or material is subject to discovery or inspection under this rule; and (2) the other party previously requested, or the court ordered, its production."

Lacey, et. al. Discovery Letter 1
May 24, 2018
Page 5

Thank you for your cooperation.  Please call with any questions or concerns.

                                        Sincerely,

                                        ELIZABETH A. STRANGE
                                        First Assistant United States
                                        Attorney
                                        *s/Kevin M. Rapp*
                                        KEVIN M. RAPP
                                        MARGARET PERLMETER
                                        PETER S. KOZINETS
                                        ANDREW STONE
                                        Assistant U.S. Attorneys

                                        JOHN J. KUCERA
                                        Special Assistant U.S. Attorney

                                        REGINALD E. JONES
                                        Senior Trial Attorney, USDOJ

KMR/sh
Enclosures



**U.S. Department of Justice**

United States Attorney
District of Arizona

Two Renaissance Square        Main:   (602) 514-7500
40 N. Central Ave., Suite 1800    Main Fax:  (602) 514-7693
Phoenix, AZ 85004-4408

July 2, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 205
Phoenix, AZ 85016
(attorney for Scott Spear)

KC Maxwell, Esq.
Maxwell Law PC
899 Ellis Street
San Francisco, CA 94109
(attorney for Dan Hyer)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel, PC
2 East Congress Street,
Suite 1000
Tucson, AZ 85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Re:   U.S. v. Michael Lacey, et.al.
        CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

        Pursuant to your request for discovery and the government's obligations under Fed. R.
Crim. P. 16 and the stipulated scheduling order in this case, please find enclosed a thumb drive
containing the government's second disclosure.[1] The thumb drive contains the following Bates
Stamped records:

---

[1] A thumb drive containing disclosure for defendants Michael Lacey and James Larkin are being provided to Paul J.
Cambria Jr. and Thomas H. Bienart Jr., respectively.

Lacey, et. al. Discovery Letter 1
July 2, 2018
Page 2

- Released Records – DOJ-BP-0004426712-DOJ-BP-0004598396[2]
- Civil Seizure Warrants – DOJ-BP-0004598397-DOJ-BP-0004601038

Please call with any questions or concerns.

Sincerely,

ELIZABETH A. STRANGE
First Assistant United States
Attorney
*s/Reginald E. Jones*
REGINALD E. JONES
Senior Trial Attorney, USDOJ

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
Assistant U.S. Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

Enclosures

---

[2] USAO 108 subpoena, PSI, and USAO 359 subpoena records mistakenly withheld from the government's May 25, 2018, original disclosure.



**U.S. Department of Justice**

United States Attorney
District of Arizona

| Two Renaissance Square | Main: (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: (602) 514-7693 |
| Phoenix, AZ 85004-4408 | |

July 19, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

KC Maxwell, Esq.
Maxwell Law PC
899 Ellis Street
San Francisco, CA 94104
(attorney for Dan Hyer)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel, PC
2 East Congress Street,
Suite 1000
Tucson, AZ 85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Re:   U.S. v. Michael Lacey, et.al.
       CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

Pursuant to the government's agreement to disclose documents it believes support the allegations contained in the indictment, please find enclosed a DVD containing the following Bates Stamped records:

Lacey, et. al.
July 19, 2018
Page 2

- "Hot Docs" – DOJ-BP-0004601039-DOJ-BP-0004602110[1]

This disclosure is without prejudice and will be supplemented throughout the case.

      Please let us know if you have any questions or concerns.

                        Sincerely,

                        ELIZABETH A. STRANGE
                        First Assistant United States
                        Attorney

                        *s/Reginald E. Jones*
                        REGINALD E. JONES
                        Senior Trial Attorney, USDOJ

                        KEVIN M. RAPP
                        MARGARET PERLMETER
                        PETER S. KOZINETS
                        ANDREW STONE
                        Assistant U.S. Attorneys

                        JOHN J. KUCERA
                        Special Assistant U.S. Attorney

Enclosures

---

[1] A DVD containing disclosure for defendants Michael Lacey and James Larkin are being provided to Paul J. Cambria Jr. and Thomas H. Bienart Jr., respectively.



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | | |
|---|---|---|
| Two Renaissance Square | Main: | (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: | (602) 514-7693 |
| Phoenix, AZ 85004-4408 | | |

September 24, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel,
PC
2 East Congress Street,
Suite 1000
Tucson, AZ 85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Gary Lincenberg
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg &
Rhow, P.C.
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
(attorney for Jed Brunst)

    Re:    <u>U.S. v. Michael Lacey, et.al.</u>
                CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

      Pursuant to your request for discovery and the government's obligations under Fed. R.
Crim. P. 16 and the stipulated scheduling order in this case, please find enclosed a thumb drive

Lacey, et. al. Discovery Letter 1
September 24, 2018
Page 2

containing the government's fourth disclosure.[1] The thumb drive contains the following Bates Stamped records:

- Backpage Agendas – DOJ-BP-0004602111-DOJ-BP-0004602507
- Backpage Superseding Indictment "Hot Docs" – DOJ-BP-0004602508-DOJ-BP-0004602851
- Co-Star "Hot Docs" – DOJ-BP-0004602852-DOJ-BP-0004602926
- Financial Records – DOJ-BP-0004602927-DOJ-BP-0004683544

Please call with any questions or concerns.

<div style="margin-left: 50%;">

Sincerely,

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

REGINALD E. JONES
*/s Reginald Jones*
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
Assistant United States Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

</div>

Enclosures

---

[1] A thumb drive containing disclosure for defendants Michael Lacey, James Larkin, and Jed Brunst are being provided to Paul J. Cambria Jr., Thomas H. Bienart Jr., and Michael Kimerer respectively.



**U.S. Department of Justice**

United States Attorney
District of Arizona

| Two Renaissance Square | Main: (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: (602) 514-7693 |
| Phoenix, AZ 85004-4408 | |

October 4, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel,
PC
2 East Congress Street,
Suite 1000
Tucson, AZ  85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Gary Lincenberg
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg &
Rhow, P.C.
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
(attorney for Jed Brunst)

Re:    U.S. v. Michael Lacey, et al.
       CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

As discussed in prior email correspondence, the United States inadvertently produced 118 documents to you on or about July 2, 2018. When we became aware of the issue, we immediately looked into the matter, confirmed that the memos (and other USAO-WDWA materials) had been inadvertently produced, and sent an email to you asking that the inadvertently-produced materials be destroyed. Since this inadvertent-disclosure notice sent to you, at your request, we have provided you additional information about the 118 documents and

October 4, 2018
Page 2

the inadvertent production, and indicated to you that we understood our discovery obligations and would review and disclose materials subject to disclosure.

We have now completed review and made the appropriate privacy redactions to the below 79 documents previously inadvertently disclosed, and are re-disclosing them to you on the enclosed DVD.[1]  As for the other 39 inadvertently disclosed documents, 22 are work product and not subject to disclosure.  The remaining 17 documents are Western District of Washington grand jury matters, 10 of which are under Court seal by the United States District Court for the Western District of Washington.  We will disclose any of these materials that are subject to disclosure pursuant to the stipulated scheduling order in the case.

| 1) | DOJ-BP-0004569193 |
|----|-------------------|
| 2) | DOJ-BP-0004569228 |
| 3) | DOJ-BP-0004569314 |
| 4) | DOJ-BP-0004569409 |
| 5) | DOJ-BP-0004570015 |
| 6) | DOJ-BP-0004570091 |
| 7) | DOJ-BP-0004571033 |
| 8) | DOJ-BP-0004571035 |
| 9) | DOJ-BP-0004571036 |
| 10) | DOJ-BP-0004571037 |
| 11) | DOJ-BP-0004571040 |
| 12) | DOJ-BP-0004571041 |
| 13) | DOJ-BP-0004571044 |
| 14) | DOJ-BP-0004571047 |
| 15) | DOJ-BP-0004571057 |
| 16) | DOJ-BP-0004571113 |
| 17) | DOJ-BP-0004571116 |
| 18) | DOJ-BP-0004571118 |
| 19) | DOJ-BP-0004571124 |
| 20) | DOJ-BP-0004571125 |
| 21) | DOJ-BP-0004571131 |
| 22) | DOJ-BP-0004571137 |
| 23) | DOJ-BP-0004571139 |
| 24) | DOJ-BP-0004571145 |
| 25) | DOJ-BP-0004571150 |
| 26) | DOJ-BP-0004571153 |
| 27) | DOJ-BP-0004571182 |
| 28) | DOJ-BP-0004571595 |
| 29) | DOJ-BP-0004572583 |
| 30) | DOJ-BP-0004572717 |
| 31) | DOJ-BP-0004572718 |

---

[1] DVD's for defendants Michael Lacey, James Larkin, and Jed Brunst are being provided to Paul J. Cambria Jr., Thomas H. Bienart Jr., and Michael Kimerer respectively.

October 4, 2018
Page 3

| | |
|---|---|
| 32) | DOJ-BP-0004572719 |
| 33) | DOJ-BP-0004572720 |
| 34) | DOJ-BP-0004572721 |
| 35) | DOJ-BP-0004572722 |
| 36) | DOJ-BP-0004572723 |
| 37) | DOJ-BP-0004572726 |
| 38) | DOJ-BP-0004572727 |
| 39) | DOJ-BP-0004572728 |
| 40) | DOJ-BP-0004572747 |
| 41) | DOJ-BP-0004572766 |
| 42) | DOJ-BP-0004572767 |
| 43) | DOJ-BP-0004572799 |
| 44) | DOJ-BP-0004572831 |
| 45) | DOJ-BP-0004572832 |
| 46) | DOJ-BP-0004572861 |
| 47) | DOJ-BP-0004572890 |
| 48) | DOJ-BP-0004572891 |
| 49) | DOJ-BP-0004572916 |
| 50) | DOJ-BP-0004572941 |
| 51) | DOJ-BP-0004572942 |
| 52) | DOJ-BP-0004572969 |
| 53) | DOJ-BP-0004572996 |
| 54) | DOJ-BP-0004572997 |
| 55) | DOJ-BP-0004573000 |
| 56) | DOJ-BP-0004573003 |
| 57) | DOJ-BP-0004573004 |
| 58) | DOJ-BP-0004573008 |
| 59) | DOJ-BP-0004573012 |
| 60) | DOJ-BP-0004573013 |
| 61) | DOJ-BP-0004573090 |
| 62) | DOJ-BP-0004573091 |
| 63) | DOJ-BP-0004573191 |
| 64) | DOJ-BP-0004573192 |
| 65) | DOJ-BP-0004573193 |
| 66) | DOJ-BP-0004573195 |
| 67) | DOJ-BP-0004573250 |
| 68) | DOJ-BP-0004573252 |
| 69) | DOJ-BP-0004573326 |
| 70) | DOJ-BP-0004573403 |
| 71) | DOJ-BP-0004574501 |
| 72) | DOJ-BP-0004574502 |
| 73) | DOJ-BP-0004574655 |
| 74) | DOJ-BP-0004575495 |
| 75) | DOJ-BP-0004575682 |
| 76) | DOJ-BP-0004575733 |

October 4, 2018
Page 4

| | |
|---|---|
| 77) DOJ-BP-0004576816 | |
| 78) DOJ-BP-0004576994 | |
| 79) DOJ-BP-0004578472 | |

Please call with questions or concerns.

Sincerely,

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

REGINALD E. JONES
*/s Reginald Jones*
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
Assistant United States Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

Enclosures



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main:  (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax:  (602) 514-7693 |
| Phoenix, AZ  85004-4408 | |

October 10, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel,
PC
2 East Congress Street,
Suite 1000
Tucson, AZ  85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Gary Lincenberg
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg &
Rhow, P.C.
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
(attorney for Jed Brunst)

Re:  U.S. v. Michael Lacey, et.al.
CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

Pursuant to your request for discovery and the government's obligations under Fed. R.
Crim. P. 16 and the stipulated scheduling order in this case, please find enclosed a DVD containing

Lacey, et. al. Discovery Letter
October 10, 2018
Page 2

the government's fifth disclosure.[1] The DVD contains the following Bates Stamped records:

- Victim Records – DOJ-BP-0004683545-DOJ-BP-0004685805

Please call with any questions or concerns.

<div style="text-align:right">

Sincerely,

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

REGINALD E. JONES
*/s Reginald Jones*
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
Assistant United States Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

</div>

Enclosures

---

[1] A DVD containing disclosure for defendants Michael Lacey, James Larkin, and Jed Brunst are being provided to Paul J. Cambria Jr., Thomas H. Bienart Jr., and Gary Lincenberg respectively.



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main: (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: (602) 514-7693 |
| Phoenix, AZ 85004-4408 | |

November 30, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel,
PC
2 East Congress Street,
Suite 1000
Tucson, AZ 85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Gary Lincenberg
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg & Rhow,
P.C.
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
(attorney for Jed Brunst)

Re:     U.S. v. Michael Lacey, et.al.
         CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

Pursuant to your request for discovery and the government's obligations under Fed. R. Crim. P. 16 and the stipulated scheduling order in this case, please find enclosed a DVD and Thumb Drive containing the government's sixth disclosure.[1] The DVD contains the following Bates Stamped records:

---

[1] A thumb drive containing disclosure for defendants Michael Lacey, James Larkin, and Jed Brunst are being provided to Paul J. Cambria Jr., Thomas H. Bienart Jr., and Gary Lincenberg respectively.

Lacey, et. al. Discovery Letter 6
November 30, 2018
Page 2

- Additional Superseding "Hot Docs" – DOJ-BP-0004685806 to DOJ-BP-0004685877
- Backpage Historical Ads – DOJ-BP-0004685878 to DOJ-BP-0004688678
- Erick Bauer Civil Case – DOJ-BP-0004688679 to DOJ-BP-0004688928
- John Becker Documents – DOJ-BP-0004688929 to DOJ-BP-0004691714

The Thumb Drive contains the following Bates Stamped records:

- Additional California Department of Justice – DOJ-BP-0004691715 to DOJ-BP-0004700499[2]
- Additional Financial Records – DOJ-BP-0004700500 to DOJ-BP-0004716582
- Additional Search Warrants and Affidavits – DOJ-BP-0004716583 to DOJ-BP-0004719327
- Additional Victim Records – DOJ-BP-0004719328 to DOJ-BP-0004719709
- WDWA BP GJ Transcripts – DOJ-BP-0004719710 to DOJ-BP-0004720536

Please call with any questions or concerns.

Sincerely,

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

REGINALD E. JONES
*/s Reginald Jones*
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
JOHN J. KUCERA
Assistant United States Attorneys

Enclosures

---

[2] Amazon Web Service data and Virtual Machine data obtained from California DOJ were not loaded in Relativity.  This data will be produced upon request.



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main:   (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax:  (602) 514-7693 |
| Phoenix, AZ 85004-4408 | |

February 22, 2019

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
920 Fifth Avenue,
Suite 3300
Seattle, WA 98104
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienert, Jr., Esq.
Bienert, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel,
PC
2 East Congress Street,
Suite 1000
Tucson, AZ 85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Gary Lincenberg
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg & Rhow,
P.C.
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
(attorney for Jed Brunst)

Re:   U.S. v. Michael Lacey, et.al.
      CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

Pursuant to your request for discovery and the government's obligations under Fed. R. Crim.
P. 16 and the stipulated scheduling order in this case, please find enclosed 7 digital media devices
containing the government's seventh disclosure.[1]

---

[1] Digital media devices containing disclosure for defendants Michael Lacey, James Larkin, and Jed
Brunst are being provided to Paul J. Cambria Jr., Thomas H. Bienert Jr., and Gary Lincenberg
respectively.

Lacey, et. al. Discovery Letter 7
February 22, 2019
Page 2

- The thumb drive contains the following Bates Stamped records:
  - BDO Consulting Documents – DOJ-BP-0004720537 to DOJ-BP-0004735011
  - Reports of Interviews – DOJ-BP-0004735012 to DOJ-BP-0004735223
  - Subpoena Compliance, Reports of Interviews, and other FBI Case Documents – DOJ-BP-0004735224 to DOJ-BP-0004746570

- The DVD labeled *Backpage Hyer Docs* contains reports of interviews for Defendant Daniel Hyer.
- The DVD labeled *Jail Calls* contains jail calls for Defendants Michael Lacey and James Larkin
- The DVD labeled *Macomb County Prosecutor* contains recorded interviews from the Macomb County, Michigan, quadruple murder investigation of James C. Brown.  In February of 2014, Brown was convicted of killing four women he met through Backpage.com.
- The DVD labeled *Recorded Interviews with Victim #4* contains recorded interviews from Victim 4's local investigation.  Victim 4's summary is included in paragraph 163 of the Superseding Indictment.
- The 2 DVD's labeled *JDPA Office Gretna, LA* contains case-related documents from the local investigation of Victim #15 trafficked via Backpage.com.  Victim 15's summary is included in paragraph 174 of the Superseding Indictment.

Additionally, the government has in its possession copies of tax returns and related transmittals prepared by BDO USA Consulting for Backpage and related clients.  These documents will not be made generally available to counsel.  If you believe you have a basis to access these documents, please let us know and we will address this matter with the Court.

Lastly, during our execution of search warrants on April 5, 2018, we seized data from Jill Anderson's personal devices.  Neither the prosecution team nor the taint team have reviewed (or intend to review) this data.  If you would like to review this data, please let us know and we will facilitate your review at an FBI facility in Phoenix.

Please reach out with any questions.

Sincerely,

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

*/s Reginald Jones*
REGINALD E. JONES
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

Lacey, et. al. Discovery Letter 7
February 22, 2019
Page 3

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
JOHN J. KUCERA
Assistant United States Attorneys

Enclosures



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main: (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: (602) 514-7693 |
| Phoenix, AZ 85004-4408 | |

March 14, 2019

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel,
PC
2 East Congress Street,
Suite 1000
Tucson, AZ 85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Gary Lincenberg
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg & Rhow,
P.C.
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
(attorney for Jed Brunst)

Re:   U.S. v. Michael Lacey, et.al.
CR-18-00422-PHX-SMB

Dear Counsel:

Pursuant to your request for discovery and the government's obligations under Fed. R. Crim.
P. 16 and the stipulated scheduling order in this case, please find enclosed a thumb drive containing
the government's eighth disclosure.[1]

---

[1] A thumb drive containing disclosure for defendants Michael Lacey, James Larkin, and Jed Brunst
are being provided to Paul J. Cambria Jr., Thomas H. Bienart Jr., and Gary Lincenberg respectively.

Lacey, et. al. Discovery Letter 8
March 14, 2019
Page 2

- The thumb drive contains the following Bates Stamped records:
  - Additional Financial Records — DOJ-BP-0004746571-DOJ-BP-0004791098
  - Additional Reports of Interviews – DOJ-BP-0004791099-DOJ-BP-0004791128
  - Additional Subpoena Compliance, Reports of Interviews, and other FBI Case Documents —DOJ-BP-0004791129-DOJ-BP-0004791240

Additionally, as we indicated in our November 30, 2018 discovery transmittal letter, Amazon Web Service ("AWS") data and a virtual machine on which some of the MySQL database was obtained from the State of California pursuant to a search warrant are available upon request. The AWS data includes raw MySQL data the State of California understood was data from the Backpage Payment Processing Island—a web server hosted by AWS that received credit card and similar payment data from Backpage users. The virtual machine includes some of the MySQL database data received from AWS.

Also, we have separately mailed counsel Whitney Bernstein of Bienart, Miller & Katzman a DVD that contains a sampling of approximately 70 Backpage ads with associated databases and images (as such ads appear in the server data the government has imaged and made available to you), to include ads referenced in the Superseding Indictment.

Please reach out with any questions.

Sincerely,

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

REGINALD E. JONES
/s Reginald Jones
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
JOHN J. KUCERA
Assistant United States Attorneys

Enclosures



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main: (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: (602) 514-7693 |
| Phoenix, AZ 85004-4408 | |

April 11, 2019

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
920 Fifth Avenue,
Suite 3300
Seattle, WA 98104
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienert, Jr., Esq.
Bienert, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel,
PC
2 East Congress Street,
Suite 1000
Tucson, AZ 85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Gary Lincenberg
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg & Rhow,
P.C.
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
(attorney for Jed Brunst)

Re:   <u>U.S. v. Michael Lacey, et.al.</u>
CR-18-00422-PHX-SMB

Dear Counsel:

Pursuant to your request for discovery and the government's obligations under Fed. R. Crim. P. 16 and the stipulated scheduling order in this case, please find enclosed a thumb drive containing the government's ninth disclosure.[1]

---

[1] A thumb drive containing disclosure for Defendants Michael Lacey, James Larkin, and Jed Brunst are being provided to Paul J. Cambria Jr., Thomas H. Bienert Jr., and Gary Lincenberg respectively.

Lacey, et. al. Discovery Letter
April 11, 2019
Page 2

- The thumb drive contains the following Bates Stamped records:
    - Additional BDO Consulting Docs – DOJ-BP-0004791241-DOJ-BP-0004809000
    - EPIQ data – DOJ-BP-0004809001-DOJ-BP-0004854243
    - Sampling of Backpage Ads with Associated Databases and Images[2] – DOJ-BP-0004854244-DOJ-BP-0004857289

Please reach out with any questions.

<div align="right">

Sincerely,


BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

*Reginald E. Jones*
REGINALD E. JONES
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
JOHN J. KUCERA
Assistant United States Attorneys

</div>

Enclosures

---

[2] This data was previously provided to counsel for Defendant Larkin as per their request on March 14, 2019; however, we wanted to provide counsel with Bates Stamped copies of these records.