MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-18-422-PHX-SMB |
|---|---|
| Plaintiff, | **UNITED STATES' RESPONSE TO MOTION TO COMPEL DISCOVERY [CR 643]** |
| v. | |
| Michael Lacey, et al., | **Oral Argument: Sept. 13, 2019, 11:00 a.m.** |
| Defendants. | |

## **INTRODUCTION**

In the nearly 16 months since indictment, the government has taken numerous steps to provide Defendants with early and broad Rule 16 discovery, including the production of more than 7.8 million documents in searchable electronic format. To facilitate Defendants' review of this evidence, the government has: (1) provided indices with descriptions

identifying the sources of produced items and Bates number references to allow Defendants to focus their review; (2) disclosed a subset of "hot" documents that support the allegations in the indictment; (3) disclosed subsets of "hot" documents to various defense counsel regarding the allegations contained in the indictment against their respective clients; (4) produced ads concerning victims in the indictment; (5) made available a Department of Justice (DOJ) discovery specialist to assist with technical questions; (6) provided a preliminary witness and exhibit list more than 13 months prior to trial; (7) disclosed a large portion of *Jencks* statements more than a year before trial; and (8) offered to meet with counsel for a number of Defendants to discuss the government's theory of the case, key evidence, and the allegations against Defendants in great detail.

The government has also exceeded its Rule 16 discovery obligations in its handling of any potentially material Backpage.com server data in its possession.   Although Defendants—who owned and operated Backpage for most of its 14-year existence—were undoubtedly aware of the nature of the content hosted on Backpage's servers, the government provided Defendants with: (1) documents specifically describing the function of Backpage.com servers; (2) copies of all of the ads and images that were on Backpage.com at the time the website shutdown in April 2018; (3) copies of Backpage.com ads (and underlying data) associated with Counts 2-51 in the superseding indictment as those ads (and underlying data) appear in the server data; and (4) email data on the Backpage.com servers. The government is currently imaging payment processing transactional data from the Backpage.com servers and will make that data available to Defendants as soon as the imaging process is complete.  The government has also informed Defendants that it would provide them with exhibits of any of the aforementioned server data it might utilize at trial.

Notwithstanding these efforts, Defendants have filed a motion to compel that asserts two baseless demands: (1) the government produce Backpage server data in Defendants' preferred format—a format the government neither has nor can obtain for its own case preparation; and (2) the government affirmatively search discovery to single out every

piece of potentially exculpatory evidence.  In essence, Defendants request the Court compel the government to conduct *Defendants'* investigation (to include analyzing Defendants' evidence) and prepare Defendants' defense for trial.  Yet, courts have repeatedly held that the government is not obliged to produce discovery to Defendants in a format that the government does not have, nor is it compelled to point Defendants to potentially exculpatory evidence within a larger mass of disclosed evidence.  Defendants seek to impose burdens on the government that are far outside the normal practice in this district, inconsistent with national e-discovery protocols, and well exceed what the law requires.  Their motion should be denied.

## **ARGUMENT**

## I.      **THE GOVERNMENT HAS FULLY COMPLIED WITH ITS RULE 16 DISCOVERY OBLIGATIONS AND THE ESI PROTOCOL.**

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure addresses the discovery of documents and tangible objects in criminal cases.  Rule 16(a)(1)(E) provides that on a defendant's request, the government must permit the defendant to inspect . . . data, . . . tangible objects, . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control" and "the item is material to preparing the defense." *United States v. Clegg,* 740 F.2d 16, 18 (9th Cir. 1984); *see also United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995); *United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003).

In 2012, the Administrative Office of the U.S. Courts published "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases" (commonly referred to as the "ESI Protocol"), available at http://www.uscourts.gov/sites/default/files/finalesiprotocolbookmarked.pdf.    The ESI protocol states that (1) the parties should meet at the outset of the case to "discuss what formats of production are possible and appropriate. . . .  Any format selected for producing discovery should maintain the ESI's integrity, allow for reasonable usability, and reasonably limit costs, and, if possible, conform to industry standards for the format"; and

(2) that "[w]hen producing ESI discovery, a party should not be required to take on substantial additional processing or formatting conversion costs and burdens beyond what the party has already done or would do for its own case preparation or discovery production." ESI Protocol, Introduction at 1-2 (summarizing Principles 4 and 5). The ESI Protocol also suggests that, even if a case involves millions of pages of discovery, the government does not have any special *Brady* obligations so long as it produces the ESI in a searchable format, provides a table of contents, and produces a subset of "hot" documents." ESI Protocol, Strategies at 2 & n.1.

The government has far exceeded its Rule 16 obligations and has compiled with the ESI Protocol in this case. To start, although Rule 16 only requires that the government permit Defendants to inspect and copy discovery material to preparing their defense, the government has spent a significant amount of time and expense to produce discovery to Defendants in the agreed-upon, electronic, searchable, industry-standard format. Moreover, the government created indices denoting the source from which discovery was obtained to assist Defendants in navigating these materials. Furthermore, the government provided the vast majority of discovery (approximately 90%) to Defendants two years in advance of trial, produced subsets of "hot" documents that support the allegations in the superseding indictment, and provided counsel for a number of Defendants with subsets of "hot" documents specifically related to the allegations in the superseding indictment against their respective clients. (*See* CR 444; Exhibits D-I.) The government has also offered to meet and met with several Defendants to discuss its theory of the case and the allegations against Defendants in detail. *Id.* Additionally, on February 22, 2019 (more than 14 months before trial), the government provided Defendants a large portion of *Jencks* statements. (*See* CR 524; Exhibit A.)

Moreover, on April 1, 2019 (more than 13 months before trial), the government provided Defendants a preliminary witness and exhibit list that it has continued to update and periodically disclose. (*See* CR 511.) A vast majority of the government's exhibits are documents Backpage disclosed to the Senate Permanent Subcommittee in 2016 as part of

the Senate's investigation into Backpage[1], and were subsequently compelled by this Court to be produced to the government in September 2017 as part of the USAO 108 grand jury subpoena litigation. (*See* CR 444, Exhibit B.) Defendants' attempt to write-off the government's re-production of these trial exhibits by asserting "Defendants are not Backpage" and "Defendants did not produce these documents nor can the government avoid its discovery obligations by pretending otherwise" is ineffective. (Mot. at 17.) First, more than a year ago, the government disclosed to Defendants all documents Backpage produced in September 2017.  Second, as the government emphasized in its January 18, 2019 and April 16, 2019 status reports (CRs 444 and 524), and its May 31, 2019 email and June 3, 2019 letter to Defendants (May 31, 2019 email, Exhibit A; June 3, 2019 letter, CR 643-3), these documents were Bates labeled and produced to the government by Davis Wright Tremaine (DWT)—the same law firm (and firm counsel) that represented Backpage in connection with its compelled production of these documents to the Senate and Arizona grand jury, and the same law firm (and law firm counsel) jointly representing Defendants Lacey and Larkin in this case.  The government does not think it presumptuous to believe DWT is aware of these documents and in a position to discuss their contents with other defense counsel in this case, particularly in light of the fact that most defense counsel are actively engaged in a joint defense agreement.

## II.   THE GOVERNMENT PRODUCED MATERIAL BACKPAGE SERVER DATA TO DEFENDANTS IN THE SAME MANNER IT WAS RECEIVED BY THE GOVERNMENT.

The United States Supreme Court has interpreted "material to preparing the defense" to solely involve "the defendants' response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996).  Thus, "[w]hile it might be argued that as a general matter, the concept of a 'defense' includes any claim that is a 'sword,' challenging the prosecution's conduct of the case, the term may encompass only the

---

[1] Declaration of Breena Ross, *Senate Permanent Subcommittee on Investigations v. Carl Ferrer*, Misc. No. 1:16-mc-00625-RMC (D.D.C. Nov. 30, 2016).

narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged." *Id*.  As the moving party, Defendants bear the burden of showing the elements of Rule 16 (possession and materiality).  *See United States v. Goris*, 2017 WL 5663479, at \*45 (1st Cir. Nov. 27, 2017).  A showing of materiality requires "some indication" that pretrial disclosure of the information sought "would have enabled the defendant significantly to alter the quantum of proof in his favor."  *Id*.  A general description of the item will not suffice; neither will a conclusory argument that the requested item is material to the defense.  *See United States v. Cadet*, 727 F.2d 1453, 1466 (9th Cir. 1984); *United States v. Carrasquillo-Plaza*, 873 F.2d 10, 12-13 (1st Cir. 1989).

## A.    Government's Production of Server Data

The government's May 31, 2019 status report specifically described the roles of the servers that hosted the Backpage.com website.  (*See* CR 626-4 at 11.)  As detailed in this report, on March 8, 2019, the government provided Defendants with copies of the master database servers and image servers (*i.e.*, all of the ads and images that were on Backpage.com at the time the website was seized and shutdown).  (*See* CR 626 at 3; 626-4 at 22.)   Therefore, Defendants' assertion that "the government does not provide copies of the ads about which it complains—but merely offers its characterizations of ads on Backpage.com and practices of the website" is incorrect.  (Mot. at 15.)   While the government had hoped to preserve the servers in the Amsterdam Switch data center to improve the possibility of being able to more easily search and display ads as they would have appeared when the Backpage.com site was active, when the Dutch authorities became aware of the allegations contained in the indictment (CR 3), they refused the government's request to keep the servers live and demanded they be shut down.  (*See* CR 626-4 at 8.) On March 7, 2019, the government made available to Defendants an imaged copy of the servers containing Backpage email data seized from Dallas, Texas.[2]  *Id*.   Moreover, the

---

[2] This email data was produced to Defendants in load-ready file format that is searchable.

government is currently imaging the payment processing island server that stored all credit card, bitcoin and money order transactions, and the internal applications servers that presented data to Backpage employees and related companies. (*See* CR 626-4 at 16-17.) The government will make this data available to Defendants when processing is complete.[3] That production will complete the government's disclosure of any potentially material server data.

Additionally, Defendants' demand for server data in a "functional format" is unavailing (Mot. at 14-15.) Defendants have had access to all of the ads and images on Backpage at the time the website was seized and shutdown in the same format they were received by the government for months now. That format is "functional." Moreover, on March 15, 2019, the government went a step further to assist Defendants' review of this ad and image data by providing them with underlying data pertaining to all of the ads (and related ads) referenced in the superseding indictment. (*See* CR 524, Exhibit K.) Among other things, this underlying data included ad poster name, ad poster email address, ad post identification number, the date ad was posted, and whether the ad was paid. This disclosure was in addition to the government's previous disclosure of victim ads referenced in the superseding indictment obtained from subpoenas to Backpage in various federal, state, and local sex trafficking investigations. (*See* November 30, 2018 discovery transmittal letter, Exhibit B.) Thus, Defendants' contention that they have to perform a "complicated search through millions of records" to obtain backend administrative data regarding an ad is inaccurate. (Mot. at 7.)

Additionally, Defendants' claim that certain ad data could have been accessed "by clicking a hyperlink" before the website was seized and shutdown is inconsequential. (Mot. at 6-7.) Defendants have the server data in a functional format. While this format

---

[3] The government indicated in its May 31, 2019 status memo and at the June 23, 2019 status conference that it believed imaging of the payment processing data would be completed by July 15, 2019 (*see, e.g.,* CR 626 at 4); however, the imaging process will require a few additional weeks. The government will notify the court when this data has been made available to Defendants.

may not be their preferred format for receiving this data, the government has no duty to produce discovery in a format it does not have (nor can obtain in this case). *See United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("Having turned over the underlying data, the prosecutors had no duty to go further and conduct the defense's investigation for it."); *see also United States v. Budovsky*, 2016 WL 386133, at *12 (S.D.N.Y. 2016) ("There is no basis to find here that the government was obliged to produce the discovery to defense in a format that the government did not have."); ESI Protocol Principle 5 ("When producing ESI, a party should not be required to take on substantial additional processing or formatting costs and burdens beyond what the party has already done or would do for its own case preparation or discovery production.").

> **B.      Defendants' Request for Immaterial and Redundant Server Data Should be Denied or in the Alternative, Defendants Should be Ordered to Bear the Production Cost.**

Although the government provided Defendants with materials specifically describing the function of the Backpage.com servers, copies of all ads, images, and emails on Backpage.com at the time the website was shutdown, and will provide them with payment processing data, they still request the government image and produce copies of all remaining server data in its possession.  (*See* CR 627 at 6.)  They make this demand for irrelevant server data while asserting that it would take 8-16 months of full-time work to examine the potentially relevant server data currently in their possession. "Barring technical issues and assuming that these five servers were imaged correctly with no errors, Defendants understand that it would take a forensic expert approximately 1,380-2,760 hours (8-16 months of full-time work) and untold cost to forensically analyze the data contained on the 56 hard drives alone."  (CR 627 at 8.)  Given Defendants' timeframe for analyzing the potentially relevant server data currently in their possession, it is unclear why they would request copies of extraneous server data other than as a trial delay tactic.

In any event, circuit courts have consistently held that requests for discovery must be reasonable and not place undue burden on the government.  The discovery motion could

very well be viewed as a "fishing expedition," in the hope that some favorable evidence would turn up. Such "general descriptions of the materials sought and conclusory arguments as to their materiality have been rejected repeatedly as insufficient under Rule 16(b)." *See United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir. 1976) (internal quotations omitted). The reasonableness requirement of the Rule demands that "a request for documents must not be unduly burdensome to the Government, and, equally important, must be framed in sufficiently specific terms to show the Government what it must produce." *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975).

Here, like *Marshall*, Defendants' request for the government to image and produce irrelevant server data would be nothing less than a fishing expedition—that is even if they could review these tens of millions of immaterial records in the months leading up to trial. As articulated in the government's May 31, 2019 status report, because of the high degree of redundancy built into the Backpage servers, copying immaterial and redundant server data would be an unduly burdensome and very expensive undertaking, not to mention a waste of limited resources. (*See* CR 626-4 at 6-7.)

For example, the government's computer forensics experts estimate that imaging the remaining approximately 650 terabytes of immaterial server data would cost approximately $250,000. This estimate includes the cost of purchasing storage equipment to process this large amount of data. Moreover, it would take approximately six months for the government to image this extraneous server data and make copies available to Defendants. Given the undue burden and expense of imaging the nearly 650 terabytes of immaterial data—data Defendants admit they could not come close to analyzing prior to trial given their 8-16 month timeframe to analyze the 56 hard drives currently in their possession—their demand for imaged copies of the remaining server data should be denied.

However, as an alternative, if the Court consents, the government would be willing to image the remaining immaterial server data at Defendants' expense. Although Rule 16 only requires the government make discovery available to Defendants to inspect and copy, the government has produced all discovery and potentially material server data in the case

to Defendants at its own expense.  Consequently, if Defendants want the 650 terabytes of immaterial server data, they (not the government) should bear the production cost.

### III.   BRADY DOES NOT REQUIRE THE GOVERNMENT CULL THROUGH DISCOVERY TO SINGLE OUT POTENTIALLY EXCULPATORY EVIDENCE.

Despite the government providing Rule 16 discovery and any server data that could remotely be material to assist Defendants in preparing their defense, Defendants continue to make unreasonable demands for additional materials about Backpage's moderation practices, certain victim ads, the Backpage website generally, Backpage's aggregation practices, and Backpage's involvement in reciprocal link programs. (Mot. at 15-25.)  In asserting their demands, they contend that "the government's counsel said plainly and repeatedly that they would extract and provide data and information from Backpage's servers if only Defendants would identify what they need," but "the government has refused to produce anything."  (Mot. at 12-13.)

As expressed in the government's May 10, 2019 letter to Defendants, what the government has repeatedly asked them is to identify material server data that the government has not produced besides the millions of ads, images, and emails that have been previously produced and payment processing data that will be produced when the imaging process is complete.  (*See* May 10, 2019 letter, Exhibit C.)  Defendants failed to identify any additional material server data, all the while complaining that "searching through thousands of pages of [hot] documents to attempt to line them up to the allegations in the indictment is an arduous, burdensome, and time-consuming task that [they] should not have to do."  (CR 643-2 at 5.)  Yet, they expect the government to cull through discovery to identify materials that may be helpful to its defense, placing the government in the untenable position of having to prepare both sides of the case at once.  This is a demand courts (including the district court in this case) have rejected.  (*See* Judge Logan's October 15, 2018 Order Denying Defendants' Motion for Itemization of Brady/Giglio Material; CR 339 at 5 ("The government is under no general obligation to identify *Brady*

or *Giglio* material within voluminous discovery); *Rhoades v. Henry,* 638 F.3d 1027, 1039 and n.12 (9th Cir. 2011) (the government is not "obliged to sift fastidiously" through millions of pages (whether paper or electronic)); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010).  The government is "under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence." *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009).

As articulated above, the government is neither responsible for preparing Defendants' defense nor in a better position than Defendants to identify exculpatory material.  Nevertheless, a review of the "hot" documents provided in the case details much of what Defendants demand the government cull through discovery to locate.

### A.   The Government's "Hot" Documents Provide Extensive Insight Into Backpage's Moderation Practices.

Paragraphs 68-152 of the superseding indictment detail Backpage's moderation practices and are corroborated by "hot" documents provided to Defendants in the case. (*See* CR 230 at 16-37.)   For instance, paragraph 78 of the superseding indictment alleges that on October 16, 2010, former Backpage Operations Manager Defendant [Andrew] Padilla sent an email with two attachments to a large group of Backpage employees on how to moderate ads.  The aforementioned email and attachments were sent as part of the government's July 19, 2018 "hot" document production to Defendants. (*See* DOJ-BP-0004601386, DOJ-BP-0004602109, and DOJ-BP-0004601051.)

Similarly, paragraph 100-101 of the superseding indictment alleges that on April 27, 2011, Defendants [Michael] Lacey and [Scott] Spear received a set of recommended action items from a firm Backpage had hired to assist it with "internet safety" issues.  Among other action items, the firm warned Lacey, Spear, and other Backpage personnel that certain terminology was often used by pimps who shuttle children to different locations where they do not know anyone and cannot get help.  Backpage disregarded these recommendations by continuing to publish ads that contained this terminology.  Documents corroborating these allegations were sent as part of the government's

1   September 24, 2018, "hot" document production to Defendants. (*See* DOJ-BP-

2   0004602509-DOJ-BP-4602512.)

3        These are merely two of numerous "hot" documents about Backpage's moderation

4   practices that support the allegations contained in the superseding indictment.

5   Consequently, not only has the government provided Defendants millions of pages of

6   discovery that includes the requested "data from Backpage's systems to show the website's

7   actual [moderation] practices," (Mot. at 15) it has given them more than 2,200 "hot"

8   documents that detail Backpage's moderation practices.

9        Additionally, Defendant's citation to language included in a search warrant affidavit

10  as evidence that the government has not complied with its discovery obligations is baseless.

11  (Mot. at 3-4 and 16.)   Specifically, Defendants assert that "in [the government's] April

12  2018 search warrant application …, the government represented that these servers contain

13  current and historical content of the ads that were posted on Backpage …all versions of an

14  advertisement …, it was on that basis the magistrate judge granted the government's

15  application to seize the servers." (Mot. at 3-4.)   Not only is this assertion inaccurate, it is

16  beside the point.   While the Fourth Amendment requires a factual showing sufficient to

17  comprise probable cause to issue a search warrant, this does not mean that every fact recited

18  in the warrant affidavit is necessarily correct, for probable cause may be founded upon

19  hearsay and upon information received from informants, as well as upon information

20  within the affiant's own knowledge.  *Aguilar v. Texas*, 378 U.S. 108, 114-115 (1964) ("A

21  warrant affidavit must set forth particular facts and circumstances underlying the existence

22  of probable cause, so as to allow the magistrate to make an independent evaluation of the

23  matter"); *see also United States v. Leon*, 468 U.S. 897, 922 (1984) ("finding officers'

24  reliance on warrant was objectively reasonable"; the "judge was not misled by information

25  in the affidavit, he did not abandon his judicial role, and the affidavit was certainly not

26  lacking probable cause as to render belief in its existence unreasonable").   Here, certainly

27  Defendants do not contend the magistrate lacked probable cause to issue the warrant—a

28  warrant that included as an attachment a 61-page indictment issued just a week before by

an Arizona grand jury charging Defendants with 93 counts of conspiracy, facilitating prostitution and money laundering for their work at Backpage.com.  (*See* CR 3.)  Not to mention the fact that Backpage's co-founder and CEO as well as several Backpage-related corporate entities had pleaded guilty to conspiring to facilitate prostitution and money laundering just days before the warrant was issued.  2:18-cr-00464, CR 7, April 5, 2018 (D. Arizona 2018); 2:18-cr-000465, CR 8, April 5, 2018 (D. Arizona 2018).

More importantly, the government's compliance with its Rule 16 obligations (the subject of this motion) is not premised on language included in a search warrant.  While the government may have had a good-faith belief at the time the warrant affidavit was drafted that the server data would contain "all versions of an advertisement," as plainly articulated in the government's May 31, 2019 status report, there was no "versioning" built into Backpage's databases—meaning changed text in an ad would not have a version saved from before the change.  Thus, the changed text would be the new data. (*See* CR 626-4 at 13.)   Additionally, Defendants' citation to bits and pieces of this section in the government's status report asserting that "[the government] confirmed that the databases contained all underlying data relating to a given ad, including: any 'filters that were applied to ads,' '[m]oderation changes or actions that would apply to all ads,' moderator action logs, '[i]mages that were deleted by a moderator,' and the original versions of ads posted to Backpage.com"—while conveniently failing to reference the lack of "versioning" built into Backpage's databases—very obviously mischaracterizes this section of the government's status report. (Mot. at 4.)   The bottom line is that the government cannot create data Defendants contend may be useful to their defense, nor do the rules require the government to do so.  Defendants have been provided all Rule 16 discovery in the government's possession regarding Backpage's moderation practices.[4]  It is the Defendants

---

[4] As per the Scheduling Order, any additional records obtained during pre-trial preparation shall be disclosed to Defendants as soon as possible.  (CR 121, p.1 at 27-28 ("If additional records are discovered by, or disclosed to, the government during pre-trial preparation or otherwise, pursuant to Rule 16(c), Fed. R. Crim. P., the government shall promptly disclose any additional documentary evidence or materials to the defense as soon as practicable

responsibility—not the government's—to analyze this evidence and prepare their case for trial.

**B.    Defendants Have Been Provided Victim Ads Referenced in the Superseding Indictment.**

The government has fully complied with its discovery obligations as it relates to victim ads.  As previously stated, not only did the government specifically identify and provide Defendants victim ads referenced in the superseding indictment nearly eight months ago, it has also provided Defendants with victim ads (including underlying ad data) as they appear in the Backpage server data.  (*Supra* at 7.)  Thus, Defendants' assertion that the government "think[s] it is sufficient to produce some copies of these [victim] ads but not the underlying data about the ads or other related ads or Backpage's actual actions concerning the ads" lacks merit.  (Mot. at 11.)

Defendants' citation to a May 1, 2018 letter from former attorney for Defendant Padilla (Mot. Exhibit F) asserting "[they] raised concerns about the need to preserve the Backpage systems and data intact three weeks after this case began" is also unavailing.  (Mot. at 21.)  The government has preserved and produced all discovery (including victim ads) to Defendants in the same condition it was "seized and received by the government," and has "take[n] all steps to maintain its integrity."  (Mot. at Exhibit F.)  As the letter correctly indicates, the government produced discovery to Defendants in the same condition it was seized and received, which is the government's standard practice.  (*Id.*)  What Defendants are demanding the government do now is modify or convert the server data to a format preferable to them.  The government is not required (nor can it in this case) produce discovery to Defendants in a format it does not possess.  The primary point here is that the government provided Defendants with Rule 16 discovery (to include victim ads referenced in the superseding indictment) in the same format it was received.

---

after such disclosure or discovery occurs.").)

- 14 -

### C.   The Government Has Produced Discovery in its Possession Regarding the Backpage.com Website.

The government has provided Defendants all Rule 16 discovery and server data in its possession regarding the Backpage.com website that is material to preparing their defense.   These materials include Defendants' demands for "ads and ad revenue as a whole," information regarding "Backpage's referrals to NCMEC," and "Backpage's purported "cooperation with law enforcement." (Mot. at 18-19.) Not only has the government provided more than 10 million pages of discovery with accompanying indices to Defendants about the Backpage website, it has gone to great lengths to ensure that these materials were organized and searchable.  The 90-page superseding indictment, the more than 2,200 "hot" documents, and *Jencks* statements disclosed to Defendants also provide an abundance of information about the Backpage website.  Again, what Defendants are requesting is that the government cull through discovery and pull out information they consider helpful to their defense, a demand the law does not require.

### D.   The Government Has Produced Discovery in its Possession Regarding Backpage's Aggregation Practices and Reciprocal Link Program.

Defendants have been provided discovery regarding Backpage's aggregation practices and reciprocal link agreements.  For example, among other things, on September 24, 2018, the government disclosed to Defendants 400 pages of Backpage meeting agendas that give insight into Backpage's aggregation practices.  (*See* September 24, 2018 discovery transmittal letter, Exhibit D.)   *Jencks* statements from former Sales and Marketing Director Dan Hyer (disclosed to Defendants more than 14 months before trial) also detail Backpage's aggregation and content creation practices.  (*See* CR 524, Exhibit A.)  Also, the government's January 23, 2019 response to Defendants' January 18, 2019 joint status report (CR 443) provides evidence of Backpage's relationships with certain prostitution websites.   (*See* CR 446 at 11-12; 446-1 at 40-62, 65-69, and 70-72.) Additionally, the "hot" documents provide emails and supporting materials regarding Backpage's ongoing relationships with prostitution websites, to include The Erotic Review.

1

2                                    **CONCLUSION**

3          Based on the foregoing, the Motion to Compel Discovery (CR 643) should be

4   denied.

5          Respectfully submitted this 15th day of July, 2019.

6

7                                        BRIAN BENCZKOWSKI
                                         Assistant Attorney General
8                                        Criminal Division, U.S. Department of Justice

9                                        *s/Reginald E. Jones*
                                         REGINALD E. JONES
10                                       Senior Trial Attorney
                                         U.S. Department of Justice, Criminal Division
11                                       Child Exploitation and Obscenity Section

12                                       MICHAEL BAILEY
                                         United States Attorney
13                                       District of Arizona

14                                       KEVIN M. RAPP
                                         MARGARET PERLMETER
15                                       PETER S. KOZINETS
                                         ANDREW C. STONE
16                                       JOHN J. KUCERA
                                         Assistant U.S. Attorneys

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **CERTIFICATE OF SERVICE**

3

4

5

6

7

I hereby certify that on July 15, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

8

9

*s/ Angela Schuetta*
Angela Schuetta
U.S. Attorney's Office

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>Exhibit A</u>

| From: | Jones, Reginald (CRM) |
|---|---|
| To: | "Whitney Bernstein" |
| Cc: | Tom Bienert; Toni Thomas |
| Subject: | RE: Updated Exhibit List with Bates Numbers |
| Date: | Friday, May 31, 2019 8:07:20 PM |
| Attachments: | DWT september 2017 letter to government.pdf |
|  | May 2018 discovery transmittal letter.pdf |

Hi Whitney:

It's a bit surprising that your firm was not aware of the source of the DOJ-AZGJ docs as Defendant Larkin is being jointly represented in this case by your firm and the firm Davis Wright Tremaine. DWT represented Backpage in the Arizona GJ litigation (and has been representing the BP Defendants in various civil and criminal litigation since 2012)  and was compelled to produce to the government the DOJ-AZGJ Bates labeled docs.  DWT Bates labeled the docs beginning in DOJ-AZGJ and turned them over to us in September 2017.  *See* the attached letter from DWT to the government. Additionally, the discovery documents DWT Bates labeled with beginning prefix DOJ-AZGJ are clearly labeled next to the DOJ-BP Bates number in the discovery we produced to your firm than a year ago with accompanying indexes USAO 108 Subpoena and USAO Subpoena Supplemental (DWT was compelled to comply with USAO 108 Subpoena which is why the indexes are labeled as such.)  *See* May 2018 discovery transmittal letter from the government to your firm attached. In addition, Dan Quigley (who appears to be some type of consulting attorney for Larkin and Lacey) was also presumably familiar with this discovery and he has represented Lacey and Larkin in some type of capacity since 2015.  As you know, he has been present for court appearances and on telephonic conferences pertaining to discovery in this case.

As to your second question, the government will be providing an update regarding the Backpage servers shortly.

Best,
Reggie

**From:** Whitney Bernstein [mailto:wbernstein@bienertkatzman.com]
**Sent:** Wednesday, May 29, 2019 8:42 PM
**To:** Jones, Reginald (CRM) <Reginald.Jones@CRM.USDOJ.GOV>
**Cc:** Tom Bienert <tbienert@bienertkatzman.com>; Toni Thomas <tthomas@bienertkatzman.com>
**Subject:** RE: Updated Exhibit List with Bates Numbers

Reggie:

Thank you for sending that promised list, and we look forward to hearing from the government with the outstanding identifications.  Thank you as well for clarifying the Bates labeling, especially as we were not aware of the source of the documents.  Please advise which discovery production contains the documents labeled DOJ-AZGJ.  As the government well knows, our firm did not come into this case until May 2018 and was not involved in any discovery productions to the government or related litigation prior to that date.

Relatedly, as I'm sure you saw in my email to you earlier today, please advise as to whether you have the outstanding approximately 60 servers from Amsterdam.

Thank you,

Whitney

**Whitney Z. Bernstein** | Attorney
Bienert | Katzman PC
Tel.: (949) 369-3700
www.bienertkatzman.com

---

**From:** Jones, Reginald (CRM) <Reginald.Jones4@usdoj.gov>
**Sent:** Wednesday, May 29, 2019 2:55 PM
**To:** Paul Cambria <pcambria@lglaw.com>; Tom Bienert <tbienert@bienertkatzman.com>; Ariel A. Neuman <aneuman@birdmarella.com>; Bruce Feder <bf@federlawpa.com>; Whitney Bernstein <wbernstein@bienertkatzman.com>; Erin E. McCampbell (emccampbell@lglaw.com) <emccampbell@lglaw.com>; 'gpanchapakesan@birdmarella.com' (gpanchapakesan@birdmarella.com) <gpanchapakesan@birdmarella.com>; glincenberg@birdmarella.com; 'joyous@mailbag.com' <joyous@mailbag.com>; 'david@deisenbergplc.com' <david@deisenbergplc.com>
**Cc:** Rapp, Kevin (USAAZ) <Kevin.Rapp@usdoj.gov>; Perlmeter, Margaret (USAAZ) <Margaret.Perlmeter@usdoj.gov>; Kozinets, Peter (USAAZ) <Peter.Kozinets@usdoj.gov>; Stone, Andrew (USAAZ) <Andrew.Stone@usdoj.gov>; Kucera, John (USACAC) <John.Kucera@usdoj.gov>
**Subject:** RE: Updated Exhibit List with Bates Numbers

Dear Counsel:

Please find attached an updated and revised preliminary exhibit list with DOJ-BP Bates numbers for approximately 90% of the government's exhibits.  We'll continue to periodically provide you with an updated and revised preliminary exhibit list in the coming weeks.  (This will include adding DOJ-BP Bates numbers for the approximately 10% of documents that do not already contain a DOJ-BP Bates number.)

Additionally, approximately 20 out of the nearly 1,100 exhibits contain a Bates prefix of DOJ-AZGJ.  As you are aware, documents beginning with prefix DOJ-AZGJ are documents Backpage Defendants Bates labeled and provided to us in September 2017 and we subsequently re-disclosed to you.  (Backpage Defendants also previously provided these documents to the U.S. Senate Permanent Subcommittee on Investigations in 2016 as part of its investigation into Backpage.)  Nevertheless, we will update the DOJ-AZGJ Bates numbered documents on the exhibit list with the corresponding DOJ-BP Bates numbers and provide the updated Bates numbers to you in the coming weeks.

Thanks,
Reggie

**Reginald E. Jones**
**U.S. Department of Justice, Criminal Division**
T: 202.616.2807 | reginald.jones4@usdoj.gov

# <u>Exhibit B</u>



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main:    (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax:   (602) 514-7693 |
| Phoenix, AZ  85004-4408 | |

November 30, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

Mike Piccaretta, Esq.
Piccaretta Davis Keenan Fidel,
PC
2 East Congress Street,
Suite 1000
Tucson, AZ  85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Gary Lincenberg
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg & Rhow,
P.C.
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
(attorney for Jed Brunst)

Re:   U.S. v. Michael Lacey, et.al.
CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

Pursuant to your request for discovery and the government's obligations under Fed. R. Crim.
P. 16 and the stipulated scheduling order in this case, please find enclosed a DVD and Thumb Drive
containing the government's sixth disclosure.[1] The DVD contains the following Bates Stamped
records:

---

[1] A thumb drive containing disclosure for defendants Michael Lacey, James Larkin, and Jed Brunst
are being provided to Paul J. Cambria Jr., Thomas H. Bienart Jr., and Gary Lincenberg respectively.

Lacey, et. al. Discovery Letter 6
November 30, 2018
Page 2

- Additional Superseding "Hot Docs" – DOJ-BP-0004685806 to DOJ-BP-0004685877
- Backpage Historical Ads – DOJ-BP-0004685878 to DOJ-BP-0004688678
- Erick Bauer Civil Case – DOJ-BP-0004688679 to DOJ-BP-0004688928
- John Becker Documents – DOJ-BP-0004688929 to DOJ-BP-0004691714

The Thumb Drive contains the following Bates Stamped records:

- Additional California Department of Justice – DOJ-BP-0004691715 to DOJ-BP-0004700499[2]
- Additional Financial Records – DOJ-BP-0004700500 to DOJ-BP-0004716582
- Additional Search Warrants and Affidavits – DOJ-BP-0004716583 to DOJ-BP-0004719327
- Additional Victim Records – DOJ-BP-0004719328 to DOJ-BP-0004719709
- WDWA BP GJ Transcripts – DOJ-BP-0004719710 to DOJ-BP-0004720536

Please call with any questions or concerns.

Sincerely,

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

REGINALD E. JONES
*/s Reginald Jones*
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
JOHN J. KUCERA
Assistant United States Attorneys

Enclosures

---

[2] Amazon Web Service data and Virtual Machine data obtained from California DOJ were not loaded in Relativity.  This data will be produced upon request.

# Exhibit C



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | | |
|---|---|---|
| Two Renaissance Square | Main: | (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax: | (602) 514-7693 |
| Phoenix, AZ  85004-4408 | | |

May 10, 2019

Via E-Mail
Whitney Z. Bernstein
Bienart, Miller & Katzman PLC
EMail:wbernstein@bmkattorneys.com
(attorney for Defendant James Larkin)

Re:  Your letter of April 25, 2019

Dear Ms. Bernstein:

We write in response to your April 25, 2019 letter.  To start, on July 19, 2018, the government disclosed more than 1,070 pages of documents it believes support the allegations contained in the indictment.  *See* government letter to defense with accompanying index entitled *Backpage "Hot Docs"* – Bates Stamped Records DOJ-BP-0004601039-DOJ-BP-0004602110.  Moreover, on September 24, 2018, the government disclosed an additional more than 340 pages of documents it believes support the allegations contained in the superseding indictment.  *See* government letter to defense with accompanying index entitled *Backpage Superseding Indictment "Hot Docs"* – Bates Stamped Records DOJ-BP-0004602508-DOJ-BP-0004602851.  Also, on November 30, 2018, we disclosed to you an additional 70 pages of documents we believes support the allegations contained in the superseding indictment.  *See* government letter to defense with accompanying index entitled *Additional Superseding "Hot Docs"* – Bates Stamped Records DOJ-BP-0004685806-DOJ-BP-0004685877.  Enclosed with the November 30, 2018, *hot docs* disclosure we also provided you with victim ads referenced in the superseding indictment.  *See* government letter to defense with accompanying index entitled *Additional Victim Records* – Bates Stamped Records DOJ-BP-0004719328-DOJ-BP-0004719709.

These comprehensive disclosures included, to our knowledge, emails, ads, and other internal Backpage documents that are referenced in the superseding indictment.  It is therefore surprising to hear you contend that "we are not aware of where the government has identified the indictment referenced documents, i.e., providing Bates numbers or copies of each document quoted or mentioned in the Indictment."

In regard to your second request for Bates numbers of "documents identified in the government's exhibit list," – the government will provide Bates numbers for documents identified on the preliminary exhibit list it provided Defendants on April 1, 2019, as soon as practicable.

Concerning your third request, your assertion that "you [I] reiterated in court that the government has asked Defendants to identify particular areas of disclosure requested so the government may prioritize discovery" is incorrect.  What the government has repeatedly asked Defendants in both verbal and written communications (*see* my April 10, 2019, email to you) is to provide it specific server data – other than the marketplace of ad, image, and email data we imaged and made available to you on March 7, 2019 (and payment processing data we will make available to you when we receive it via the MLAT process) – that you believe is material to your defense.  You have not identified any such additional data.

Regarding your fourth request "for the government's position on the Jencks Act materials" – the government has complied with the Scheduling Order and produced all Jencks Act material in its possession (except Carl Ferrer's Jencks statements) to Defendants.[1]  In accordance with the Scheduling Order, if we obtain additional Jencks Act material, we will disclose those materials to you as soon as practicable.  *See* CR 121; p.2, footnote 3. ("If the government obtains any additional written Jencks material after this date [02/25/19], this Jencks material shall be produced promptly to the defense as soon as practicable.")

Also, we will provide Daniel Hyer's cooperation addendum to you next week, and we will provide Carl Ferrer's cooperation addendum to you on or before June 25, 2019.

Additionally, see below responses concerning your fifth request for an update as to the items you requested in your April 17, 2019 letter to me:

---

[1] As per the Court's April 22, 2019, Order (CR 535), the government will disclose any Jencks Act statements of Carl Ferrer on or before June 25, 2019.  As you know, the Jencks Act requires the government produce statements that have been adopted by a witness *after* the witness testifies. 18 USC §3500(e)(1); *See also United States v. Jackson,* 978 F.2d 903, 913 (5th Cir.1992)("To adopt a statement under the Jencks Act. . . a witness must read the entire statement and formally approve the statement.") *United States v. Newman,* 849 F.2d 156, 160 (5th Cir.1988) (Witness did not adopt a DEA report when he told the DEA agent that he did not disagree with anything in the report.).

1) Request: "We need imaged copies of the remaining nine servers located in Pocatello."[2]

   Response: As previously requested, could you please identify what server data that the government has not made available to you (other than the payment processing data) that you believe is material to your defense.[3] *See* Federal Rules of Criminal Procedure Rule 16(a)(1)(E). Backpage operated as a classified advertising website for nearly a decade and a half so we are certain that Defendants—as owners and executives of the company—are aware of the data hosted on the website. Also, we are currently working to provide you with additional information regarding the servers currently in the government's possession as well as the outstanding servers we await receipt of from Amsterdam via the MLAT process to further assist you in this process. We should have this information to you within the next few weeks.

2) Request: Provide "pictures of the servers located in Pocatello."

   Response: *See* pictures of the servers located in Pocatello attached.

3) Request: Provide "pictures of all servers in their native state, the way they were set up when they were running in their racks at the facilities."

   Response: To the government's knowledge, there were no pictures taken of the servers as they were running at the Dallas or Amsterdam facilities. You should receive pictures of the servers from Tucson via FedEx next week.

4) Request: Provide "a copy of the one page form from the Dutch police."

   Response: Requested form and accompanying FBI report of interview attached.

   In regard to your sixth request, as articulated above, as well as in our March 7, 2019, letter to you, our April 10, 2019 email to you, and in our status memorandum filed on April 16, 2019, the government will notify you when the remaining servers from Amsterdam are in its possession and available for inspection. Moreover, as it pertains to my April 10, 2019, email to you, I cite to Rule 16 of the Federal Rules of Criminal Procedure in stating that Backpage server data would be available to inspect and copy because Rule 16(a)(1)(E) makes clear that, "on a defendant's request, the government must permit the defendant to inspect … data … tangible objects … or copies or portions of any of these items, if the item is within the government's possession, custody, or control" and "the item is material to preparing the defense." I emphasized inspect and copy to highlight to you an inaccurate statement you

---

[2] On April 25, 2019, you requested the government also provide you with imaged copies of the servers and hard drives located in Phoenix. Our response incorporates both your April 17, 2019, and April 25, 2019, requests.

[3] As previously noted, we will provide you with the payment processing server data as soon as it is received from Amsterdam.

asserted in your April 8, 2019, email to me.  Specifically, you contended that I indicated to you that "no court order is needed to be able to inspect, view, turn on, manipulate, copy, etc. the servers–just that the forensic FBI people would need to supervise the process; and that regarding imaging of any servers, we can coordinate that process once we identify the servers we'll need imaged copies of."  I do not recall making any such statement and hope that you did not understand any of our verbal communications to imply that the government would allow data manipulation (i.e., adding, deleting, and/or updating data in a database) of the servers.

In any event, if you could show the government what additional server data located in Pocatello and Phoenix is material to your case, in accordance with Rule 16(a)(1)(E), we would provide you with imaged copies of that data.  As you are aware, a showing of materiality requires, among other things, that the disclosure of the information sought would enable you to significantly alter the quantum of proof in your favor.

Please reach out with additional questions.  We will continue to work with you over the course of the next months leading up to trial to answer them and facilitate your review of relevant material in the case.

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

*s/Reginald E. Jones*
REGINALD E. JONES
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

MICHAEL BAILY
United States Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
JOHN KUCERA
Assistant United States Attorneys

# **<u>Exhibit D</u>**



**U.S. Department of Justice**

United States Attorney
District of Arizona

| | |
|---|---|
| Two Renaissance Square | Main:  (602) 514-7500 |
| 40 N. Central Ave., Suite 1800 | Main Fax:  (602) 514-7693 |
| Phoenix, AZ  85004-4408 | |

September 24, 2018

Paul J. Cambria Jr.
Attorney at Law
Lipsitz Green Scime Cambria,
LLC
42 Delaware Ave, Suite 120
Buffalo, NY 14202
(attorney for Michael Lacey)

Jim Grant
Davis Wright Tremaine, LLP
1201 Third Avenue,
Suite 2200
Seattle, WA 98101
(attorney for Lacey and Larkin)

Robert Corn-Revere
Davis Wright Tremaine, LLP
1919 Pennsylvania Avenue N.W.,
Suite 800
Washington, DC 20006
(attorney for Lacey and Larkin)

Thomas H. Bienart, Jr., Esq.
Bienart, Miller & Katzman,
PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(attorney for James Larkin)

Michael D. Kimerer, Esq.
1313 E. Osborn Road,
Suite 100
Phoenix, AZ 85014
(attorney for Jed Brunst)

Bruce Feder, Esq.
2930 East Camelback Road,
Suite 160
Phoenix, AZ 85016
(attorney for Scott Spear)

Mike Piccarreta, Esq.
Piccarreta Davis Keenan Fidel,
PC
2 East Congress Street,
Suite 1000
Tucson, AZ  85701
(attorney for Andrew Padilla)

Steve Weiss
Attorney at Law
Karp & Weiss, PC
3060 North Swan Rd.
Tucson, AZ 85712
(attorney for Joye Vaught)

Gary Lincenberg
Bird, Marella, Boxer, Wolpert,
Nessim, Drooks, Lincenberg &
Rhow, P.C.
1875 Century Park East
23rd Floor
Los Angeles, CA 90067
(attorney for Jed Brunst)

     Re:    <u>U.S. v. Michael Lacey, et.al.</u>
               CR-18-00422-PHX-SPL (BSB)

Dear Counsel:

       Pursuant to your request for discovery and the government's obligations under Fed. R. Crim. P. 16 and the stipulated scheduling order in this case, please find enclosed a thumb drive

Lacey, et. al. Discovery Letter 1
September 24, 2018
Page 2

containing the government's fourth disclosure.[1] The thumb drive contains the following Bates Stamped records:

- Backpage Agendas – DOJ-BP-0004602111-DOJ-BP-0004602507
- Backpage Superseding Indictment "Hot Docs" – DOJ-BP-0004602508-DOJ-BP-0004602851
- Co-Star "Hot Docs" – DOJ-BP-0004602852-DOJ-BP-0004602926
- Financial Records – DOJ-BP-0004602927-DOJ-BP-0004683544

Please call with any questions or concerns.

Sincerely,

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division
U.S. Department of Justice

REGINALD E. JONES
*/s Reginald Jones*
Senior Trial Attorney, CEOS
(202) 616-2807
reginald.jones4@usdoj.gov

ELIZABETH A. STRANGE
First Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW STONE
Assistant United States Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

Enclosures

---

[1] A thumb drive containing disclosure for defendants Michael Lacey, James Larkin, and Jed Brunst are being provided to Paul J. Cambria Jr., Thomas H. Bienart Jr., and Michael Kimerer respectively.