Robert Corn-Revere (D.C. Bar No. 375415, admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone:     (202) 973-4225
Facsimile:     (202) 973-4499
Email:         bobcornrevere@dwt.com

James C. Grant (Wash. Bar No. 14358, admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave, Suite 3300
Seattle, WA 98104-1610
Telephone:     (206) 757-8096
Facsimile:     (206) 757-7096
Email:         jamesgrant@dwt.com

*Counsel for Michael Lacey and James Larkin*

Additional counsel listed on following pages

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>     Plaintiff,<br><br> v.<br><br>Michael Lacey, *et al.*,<br><br>     Defendants. | No. CR-18-422-PHX-SMB<br><br>**REPLY OF DEFENDANTS LACEY, LARKIN AND SPEAR IN SUPPORT OF MOTION TO DISMISS INDICTMENT**<br><br>**PUBLIC VERSION - REDACTED** |

Paul J. Cambria, Jr. (Cal. Bar No. 177957, admitted *pro hac vice*)
Erin E. McCampbell (N.Y. Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite #120
Buffalo, NY 14202
Telephone:     (716) 849-1333
Facsimile:     (716) 855-1580
Email:           pcambria@lglaw.com
                     emccampbell@lglaw.com

*Counsel for Defendant Michael Lacey*

Thomas H. Bienert, Jr. (Cal. Bar No. 135311, admitted *pro hac vice*)
Whitney Z. Bernstein (Cal. Bar No. 304971, admitted *pro hac vice*)
BIENERT KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone:     (949) 369-3700
Facsimile:     (949) 369-3701
Email:           tbienert@bmkattorneys.com
                     wbernstein@bmkattorneys.com

*Counsel for Defendant James Larkin*

Bruce Feder (Ariz. Bar No. 004832)
Feder Law Office, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, AR 85016
Telephone:     (602) 257-0135
Facsimile:     (602) 954-8737
Email:           bf@federlawpa.com
                     fl@federlawpa.com

*Counsel for Defendant Scott Spear*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ...................................................................................ii

I.      INTRODUCTION .......................................................................................1

II.     ARGUMENT ...............................................................................................3

        A.      Does the First Amendment Apply In This Case?............................3

        B.      Must the Indictment Comply with First Amendment Requirements? .........4

        C.      Under the First Amendment, Do Different Standards Apply
                for Potential Liability of Speakers and Publishers?........................8

        D.      May the Government Found an Indictment on Generalized
                Knowledge that Third-Party Speech Resulted in Criminal Conduct?........14

        E.      What Does the Indictment Actually Allege Regarding Defendants? .........17

III.    CONCLUSION...........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. ACLU,*
    535 U.S. 564 (2002)..................................................................................... 3

*Ashcroft v. Free Speech Coalition,*
    535 U.S. 234 (2002)...............................................................................1, 3, 7

*Ashton v. Kentucky,*
    384 U.S. 195 (1966) ..................................................................................... 4

*Backpage.com, LLC v. Cooper,*
    939 F. Supp. 2d 805 (M.D. Tenn. 2013) ........................................9, 11, 18

*Backpage.com, LLC v. Dart,*
    807 F.3d 229 (7th Cir. 2015)..................................................................11, 12

*Backpage.com, LLC v. Hoffman,*
    2013 WL 4502097 (D.N.J. Aug. 20, 2013)........................................... 9, 11

*Backpage.com, LLC v. McKenna,*
    881 F. Supp. 2d 1262 (W.D. Wash. 2012) .............................. 4, 9, 11, 18

*Bartniki v. Vopper,*
    532 U.S. 514 (2001)..................................................................................... 7

*Brandenburg v. Ohio,*
    395 U.S. 444 (1969)..................................................................................... 4

*Braun v. Soldier of Fortune Magazine, Inc.,*
    968 F.2d 1110 (11th Cir. 1992)................................................................... 8

*Brown v. Entm't Merchs. Ass'n,*
    564 U.S. 786 (2011)..................................................................................... 4

*Bruton v. United States,*
    391 U.S. 123 (1968)................................................................................... 11

*California v. Ferrer,*
    2016 WL 7237305 (Cal. Super. Ct. Sac. Cty. Dec. 9, 2016).............2, 3, 12

*California v. Ferrer,*
    No. 16FE024013 (Cal. Super. Ct. Sac. Cty. Aug. 23, 2017). ..........3, 5, 12

*Chaplinsky v. New Hampshire*,
   315 U.S. 568 (1942) ................................................................................ 4

*Coyote Publ'g, Inc. v. Miller*,
   598 F.3d 592 (9th Cir. 2010) ................................................................... 8

*Daniel v. Armslist, LLC*,
   926 N.W.2d 710 (Wis. 2019) ................................................................. 12

*Dart v. Craigslist, Inc.*,
   665 F. Supp. 2d 961 (N.D. Ill. 2009) ..................................... 10, 11, 12

*Doe v. Backpage.com, LLC*,
   104 F. Supp. 3d 149 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016),
   *cert. denied*, 137 S. Ct. 622 (2017) ......................................................... 2

*Doe v. GTE Corp.*,
   347 F.3d 655 (7th Cir. 2003) ................................................................. 11

*Erotic Serv. Provider Legal Educ.& Res. Project v. Gascon*,
   880 F.3d 450 (9th Cir. 2018) ................................................................... 8

*Giboney v. Empire Storage & Ice Co.*,
   336 U.S. 490 (1949) ................................................................................ 7

*In re Grand Jury Subpoenas to Backpage.com, LLC and Village Voice Media Holdings, LLC*,
   No. GJ12-172RAJ (W.D. Wash. Jan. 17, 2013) ............................. 13, 14

*Ingram v. United States*,
   360 U.S. 672 (1959) .............................................................................. 19

*J.S. v. Village Voice Media Holdings, Inc.*,
   359 P.3d 714 (Wash. 2015) .................................................................. 12

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016) ............................................................. 2, 12

*Jefferson v. United States*,
   340 F.2d 193 (9th Cir. 1965), *vacated sub nom. on other grounds*,
   *Dunn v. United States*, 570 U.S. 901 (2013) ....................................... 18

*Lee v. Illinois*,
   476 U.S. 530 (1986) .............................................................................. 11

*Miller v. California*,
   413 U.S. 15 (1973) ................................................................................. 4

*Mishkin v. New York,*
    383 U.S. 502 (1966) ..................................................................................... 15

*NAACP v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982) ..................................................................................... 19

*Phillips v. United States,*
    356 F.2d 297 (9th Cir. 1965) ...................................................................... 19

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rights,*
    413 U.S. 376 (1973) .................................................................................. 8, 9

*Reisman v. United States,*
    409 F.2d 789 (9th Cir. 1969) ...................................................................... 19

*Smith v. California,*
    361 U.S. 147 (1959) ................................................................................. 1, 15

*United States v. Baker,*
    890 F. Supp. 1375 (E.D. Mich. 1995), *aff'd on other grounds sub nom.*
    *United States v. Alkhabaz,* 104 F.3d 1492 (6th Cir. 1997) ........................... 6

*United States v. Buddenberg,*
    2010 WL 2735547 (N.D. Cal. July 12, 2010) ................................... *passim*

*United States v. Cassel,*
    408 F.3d 622 (9th Cir. 2005) ...................................................................... 15

*United States v. Cassidy,*
    814 F. Supp. 2d 574 (D. Md. 2011) .................................................. *passim*

*United States v. Dellinger,*
    472 F.2d 340 (7th Cir. 1972) ...................................................................... 19

*United States v. Du Bo,*
    186 F.3d 1177 (9th Cir. 1999) .................................................................... 15

*United States v. Freeman,*
    761 F.2d 549 (9th Cir. 1985) ........................................................................ 7

*United States v. Gibson Specialty Co.,*
    507 F.2d 446 (9th Cir. 1974) ...................................................................... 16

*United States v. Hurant,*
    No. CR 16-cr-00045-MKB (E.D.N.Y.) ...................................................... 12

*United States v. Jackson,*
    865 F.3d 946 (7th Cir. 2017), *vacated,* 138 S. Ct. 1983 (2018) .............. 12

iv

*United States v. Landham*,
   251 F.3d 1072 (6th Cir. 2001) ................................................................ 5, 6

*United States v. Omuro*,
   No. 14-cr-00336-WHO (N.D. Cal.) ............................................................. 12

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000) ...................................................................................... 3

*United States v. Polizzi*,
   500 F.2d 856 (9th Cir. 1974) ...................................................................... 14

*United States v. Sineneng-Smith*,
   910 F.3d 461 (9th Cir. 2018) .............................................................. *passim*

*United States v. Spock*,
   416 F.2d 165 (1st Cir. 1969) ...................................................................... 19

*United States v. Stevens*,
   559 U.S. 460 (2010) ...................................................................................... 1

*United States v. Stone*,
   2012 WL 1034937 (E.D. Mich. Mar. 27, 2012) ........................................ 19

*United States v. Tavelman*,
   650 F.2d 1133 (9th Cir. 1981) ............................................................. 14, 16

*United States v. Ulbricht*,
   31 F. Supp. 3d 540 (S.D.N.Y. 2014) ............................................... 1, 2, 13

*United States v. Vallone*,
   698 F.3d 416 (7th Cir. 2012), *vacated sub nom on other grounds*,
   *Dunn v. United States*, 570 U.S. 901 (2013) ............................................ 19

*United States v. Vera*,
   893 F.3d 689 (9th Cir. 2018) ...................................................................... 11

*United States v. Wagner*,
   1984 U.S. Dist. LEXIS 20481 (N.D.N.Y. Jan. 12, 1984) ............................ 6

*United States v. Welch*,
   327 F.3d 1081 (10th Cir. 2003) ........................................................... 14, 16

*United States v. White*,
   638 F. Supp. 2d 935 (N.D. Ill. 2009), *rev'd*, 610 F.3d 956 (7th Cir. 2010) ............ 10

*Valle Del Sol Inc. v. Whiting*,
   709 F.3d 808 (9th Cir. 2013) ........................................................................ 9

v

*Virginia v. Black*,
    538 U.S. 343 (2003) ............................................................................. 4

*Watts v. United States*,
    394 U.S. 705 (1969) ............................................................................. 4

*Woodhull Freedom Found. v. United States*,
    334 F. Supp. 3d 185 (D.D.C. 2018), *appeal filed*, No. 18-5298
    (U.S. Oct. 12, 2018) ..................................................................... 15, 16

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................. *passim*

**Statutes**

18 U.S.C. § 43 ......................................................................................... 5

47 U.S.C. § 230 .......................................................................... 1, 2, 11, 12

**Other Authorities**

Compl., *Dart v. Craigslist* (No. 09 CV 1385), 2009 WL 564291 (N.D. Ill. 2009) ...................... 11

Resp. to Craigslist's Mot. for Jdgmt. on the Pldgs., *Dart v. Craigslist*
    (No. 09 CV 1385), 2009 WL 2010677 (N.D. Ill. 2009) ............................ 11

# I.    INTRODUCTION

No court has ever upheld a Travel Act prosecution of a publisher for the act of publishing online advertisements, *see infra* 13-14, yet the government insists the First Amendment is a stranger to this case.  Contrary to the bedrock constitutional principle that all speech is presumptively protected, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002), the government contends there is no constitutional overreach with this first-of-its-kind prosecution based on vicarious liability where speech "concerns illegal activity."  Resp. 2.[1]  But the government ignores several of the most basic tenets of First Amendment law, including that the government cannot create new unprotected categories of speech, *United States v. Stevens*, 559 U.S. 460, 468-69 (2010); that it cannot prosecute a speech intermediary for material that person has never seen, *Smith v. California*, 361 U.S. 147, 152-55 (1959); that speech cannot be criminalized absent a showing of specific intent, *United States v. Sineneng-Smith*, 910 F.3d 461, 480-81 (9th Cir. 2018); and that any indictment based on speech must satisfy elevated First Amendment standards.  *Id.* at 485.

This prosecution was mounted in the face of numerous cases holding that online classified advertising sites—including Backpage.com specifically—receive First Amendment protection.  Mot. 5-8, 17-18 (listing cases).  The government tries to evade this expansive body of law by falsely claiming these cases pertain only to immunity provided under Section 230 of the Communications Decency Act, Resp. 2, 21, 28, and asserting that those rulings have been eclipsed by a "sea-change" resulting from information unearthed about Backpage.  *Id.* 2, 22.  It does so by misdirection:  presenting broad accusatory conclusions as if they were allegations of fact and blatantly misstating the law.

The government tries to deny this case presents a "novel theory" of vicarious liability, and claims that several courts "have recently recognized that prostitution websites like Defendants [sic] may be prosecuted under federal law."  *Id.* 3 (citing *United States v. Ulbricht*, 31 F. Supp. 3d 540

---

[1]  The United States' Response to Defendants' Motion to Dismiss Indictment (Doc. 634) is cited here as "Resp."  Defendants' motion (Doc. 561) is cited as "Mot."  "Defendants" refers to the movants:  James Larkin, Michael Lacey, John Brunst, and Scott Spear.

(S.D.N.Y. 2014)).  This, in a nutshell, illustrates the government's habit of playing fast and loose with legal authorities and highlights the glaring deficiencies of this flawed indictment.  Two of the three "cases" it cites are nothing more than plea bargains, and in the third (*Ulbricht*), the prosecution targeted *active participation in selling contraband, including accepting payment for and taking a cut of every illegal sale*—not the hosting of third-party content, as in this case.  *See infra* 13.

For all the conclusory chest-pounding about the supposed "sea-change—from congressional investigations, subpoena responses, and other sources, Resp. 22-23—the SI contains *no* allegations of actual participation in illegal activities by Defendants, unlike in *Ulbricht*. Nor does the government enlighten this Court as to a single substantive holding in a single case that might have been different had the government's "new and improved" evidence been visited upon the deciding court.  In both civil and criminal cases, courts rejected liability based on Backpage's website design and moderation policies and practices, finding they "amount to neither affirmative participation in an illegal venture nor active web content creation."  *Doe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 157, 162 (D. Mass. 2015), *aff'd*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017) ("*Doe No. 1*").  Courts found Backpage's use of moderation policies "is not prohibited activity" but instead "generally falls within the scope of protected editorial functions."  *California v. Ferrer*, 2016 WL 7237305, at *5 (Cal. Super. Ct. Sac. Cty. Dec. 9, 2016) ("*Ferrer I*") (citing, *inter alia*, *Doe No. 1*, 817 F.3d at 20-21).  The government's attempt to brush off this robust body of case law by claiming it only dealt with statutory immunity under Section 230, Resp. 2, 21, 28, is a transparent falsehood, as is its suggestion that any holdings have been "reversed" by the issuance of sanctions against Backpage.  *See infra* 11-12 n.14.

For all the hype about the Senate investigations, subpoena responses, and internal documents, the SI still lacks the essential allegations of fact necessary to charge a publisher of third-party content with a crime in conformance with First Amendment standards—allegations that Defendants had advance knowledge of specific illegal ads and acted to further those ends.

1   If there has been any "sea-change," it is not in the strength of the government's case, but in its

2   willingness to disregard constitutional commands.  In bringing this indictment, the government

3   embarked on a scorched-earth approach that closed down the second largest classified ad website

4   in the United States and carted publishers off to jail for publishing third-party content that no

5   Defendant is alleged to have written, helped write, or read.  The government asks this Court to

6   write a lot of new First Amendment law by ignoring decades of bedrock principles.  The Court

7   should decline this invitation.

8                              **II.      ARGUMENT**

9           Cutting through the clutter, this Motion to Dismiss can be decided by answering the

10   following five questions:

11   **A.      Does the First Amendment Apply In This Case?**

12          The First Amendment is central to this case, which seeks to prosecute a publisher for

13   publishing.  The government asserts *ad nauseam* that the First Amendment does not apply at all

14   because solicitations for illegal activity are entirely excluded from First Amendment protection,

15   Resp. 16-17, 35, but this ignores the basic principle that speech is presumed protected, and that

16   the government always has the burden to prove otherwise.[2]  In particular, "[p]roviding a forum

17   for online publishing is a recognized legal purpose" protected by the First Amendment.

18   *California v. Ferrer*, No. 16FE024013 (Cal. Super. Ct. Sac. Cty. Aug. 23, 2017) ("*Ferrer II*"), slip

19   op. at 13.[3]  Charging speech as "unprotected" is precisely why the First Amendment *does* apply,

20   because it defines the substance of what the government must allege, and at what level of

21   specificity.

22

23   ─────────────

24          [2]  *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002); *United States v. Playboy Entm't Grp., Inc.*, 529
     U.S. 803, 818 (2000).  "The Government may not suppress lawful speech as the means to

25   suppress unlawful speech.  Protected speech does not become unprotected merely because it
     resembles the latter. The Constitution requires the reverse."  *Free Speech Coalition*, 535 U.S. at

26   255.

27          [3]  *See also Ferrer I*, 2016 WL 7237305, at *3, *10 (holding Backpage's provision of "a forum
     for online publishing" and receiving payments for ads insufficient to support charges of

28   facilitating prostitution, or money laundering).

While certain categories of speech have always lacked constitutional protection, *e.g.*, "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct," *Sineneng-Smith*, 910 F.3d at 470 (citation omitted), "third-party publication of offers to engage in illegal transactions" does not fall within those "'well-defined and narrowly limited classes.'" *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1281-82 (W.D. Wash. 2012) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942); *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 791 (2011)).  When the government seeks to prosecute speech as falling into one of these exceptions, pleading requirements are governed by the First Amendment.[4]

**B.     Must the Indictment Comply with First Amendment Requirements?**

In addition to basic Fifth and Sixth Amendment requirements, an indictment charging crimes based on speech is defective on its face and must be dismissed if it fails to meet First Amendment standards.  *Sineneng-Smith*, 910 F.3d at 480-85.  This is because a charge under any statute "which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. United States*, 394 U.S. 705, 707 (1969); *Ashton v. Kentucky*, 384 U.S. 195, 198, 200 (1966) ("When First Amendment rights are involved, we look even more closely lest, under the guise of regulating conduct that is reachable by the police power, freedom of speech or of the press suffer.").  In such cases, the government must "more specifically identify the precise conduct upon which it seeks to hold each defendant criminally liable." *United States v. Buddenberg*, 2010 WL 2735547, at *9 (N.D. Cal. July 12, 2010).  The indictment must allege (1) what *specific* conduct (or speech) falls within the elements of the applicable statute, **and** (2) how *particular speech* in question lacks protection under substantive First Amendment principles.  *Sineneng-Smith*, 910 F.3d at 480-85; *United States v. Cassidy*, 814 F. Supp.

---

[4]  *E.g.*, *Miller v. California*, 413 U.S. 15, 23-25 (1973) (government must show that work, taken as a whole, meets three-part test to be considered obscene); *Brandenburg v. Ohio*, 395 U.S. 444, 447-49 (1969) (government must prove that speaker intended to provoke immediate commission of crime and that speech was likely to produce such a result to be considered incitement); *Virginia v. Black*, 538 U.S. 343, 359 (2003) (to show a "true threat," government must prove "speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals").

2d 574, 587 (D. Md. 2011).  The SI alleges neither.  It simply culls a few individual Backpage ads from a 14-year period—none of which it alleges any defendant wrote, helped write or read—and attempts to use those to criminalize the publication of tens of millions of ads over the same period.

It does not address this deficiency to argue the SI meets the "minimal" constitutional requirements of Rules 7 and 12, and that it is enough simply to recite the elements of the Travel Act and the money laundering and conspiracy statutes.  Resp. 12-16.  The Travel Act allegations are the key to all of the SI's flaws, and they perfectly illustrate the government's blindness to its immovable First Amendment problem.[5]  It argues it is enough to simply allege Defendants (1) used a facility in interstate commerce, (2) with intent to facilitate unlawful activity, and (3) performed overt acts to further that objective.  Resp. 30.  The Travel Act on its face does not purport to regulate speech, and in the cases the government cites—none of which involve speech—bare recitation of those statutory elements may suffice.  But the prosecution in *this* case is for operating a website—a publishing enterprise involving *nothing but* speech—so "[m]ore is needed to inform each defendant of the specific offense … than merely reciting the statutory language."  *Buddenberg*, 2010 WL 2735547, at *8.  *See United States v. Landham*, 251 F.3d 1072, 1079-80, 1084 (6th Cir. 2001).

The First Amendment requires far more specificity where a statute does not precisely define the speech subject to prosecution (as is certainly the case for the Travel Act's unbounded "facilitation" element, which includes anything that makes the offense "easy or less difficult."  Resp. 32 n.16).  Thus, in *Buddenberg*, the court dismissed an indictment charging violation of the Animal Enterprise Terrorism Act, 18 U.S.C. § 43 (and conspiracy to violate the law), which alleged that defendants engaged in a "course of conduct" involving threats, acts of vandalism, property damage, criminal trespass, harassment, and intimidation, but that failed to

---

[5] All charges in the SI are dependent on the constitutional sufficiency of the Travel Act allegations.  Dismissal of those counts necessarily requires dismissal of charges based on conspiracy and money laundering as well.  *See*, *e.g.*, *Ferrer II*, slip op. at 18 ("Because this Court has rejected the prosecution based on … pimping, the[] purported use of proceeds from prostitution cannot [] serve as the basis for money laundering charges.").

identify the specific statements at issue.  2010 WL 2735547, at *1.  The court rejected

government claims that it need not allege "specific acts" because a "course of conduct that

includes … trespass and vandalism … is not protected by the First Amendment."  It held for

any constitutionally protected conduct, "the government [must] prove [it] amounts to 'true

threats' which are not protected."  *Id.* at *5.  The court explained that specific allegations in the

indictment are essential "for the court to be able to determine whether the specific conduct

charged is protected by the First Amendment."  *Id.* at *9.  Courts in other First Amendment

cases have similarly dismissed indictments that failed to specify why the speech at issue was

allegedly unprotected under relevant standards.[6]

The government acknowledges that the First Amendment imposes additional pleading

requirements, but tries to distinguish cases like *Buddenberg* and *Landham* on their facts.  It agrees

"true threat" cases face heightened pleading because they "involve unique contextual consid-

erations of the relationship between the parties," but disregards them because "this is not a

threats case."  Resp. 16 n.17.  This misses the point entirely.  *Every attempt* to criminalize speech

faces heightened pleading requirements, and what the indictment must allege is controlled by

substantive First Amendment law that applies to the particular offense.  In *this case*, which seeks

to hold a web publisher criminally liable for ads posted by third parties, the First Amendment

requires specific allegations as to **both** the particular speech for which Defendants are alleged

to be criminally responsible, *and* that it is unprotected under established First Amendment

doctrine.  *Sineneng-Smith*, 910 F.3d at 480-85; *Buddenberg*, 2010 WL 2735547, at *8.  This

---

[6]  *See Cassidy*, 814 F. Supp. 2d at 583 (dismissing federal cyberstalking indictment where allegations failed to meet substantive First Amendment standard for harassment); *United States v. Baker*, 890 F. Supp. 1375, 1385 (E.D. Mich. 1995) ("Whether … prosecution under § 875(c) encroaches on constitutionally protected speech is a question appropriately decided by the Court as a threshold matter."), *aff'd on other grounds sub nom. United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997); *United States v. Wagner*, 1984 U.S. Dist. LEXIS 20481 (N.D.N.Y. Jan. 12, 1984) (to be constitutionally sufficient, indictment must allege details of threat to allow determination of whether it is protected speech).  *See also Landham*, 251 F.3d at 1084 ("[T]he statement at issue … is not a threat and [indictment] should have been dismissed on Landham's motion."); *Sineneng-Smith*, 910 F.3d at 480-85 (reversing denial of motion to dismiss charges for facilitating illegal immigration).

1   requirement specificity is completely absent in the SI.

2          The government suggests that providing a platform for ads is unprotected "speech

3   integral to criminal conduct," Resp. 17, but neither sets forth the constitutional test for this

4   First Amendment exception nor attempts to show how the SI includes the necessary

5   allegations.  The Ninth Circuit explained that "some speech that aids or abets a crime is so

6   integral to the crime itself that it is not constitutionally protected, [but] *other speech related to*

7   *criminal activity is not so integral as to be unprotected.*"  *Sineng-Smith*, 910 F.3d at 481 (emphasis

8   added) (speech encouraging or inducing violation of immigration law is not integral to criminal

9   conduct).  To satisfy the "speech integral" exception, the government must show the targeted

10  speech is for the "sole immediate purpose" of furthering a specific crime.  *Id.* at 480-81

11  (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498-502 (1949)).  Knowledge that a

12  publisher is transmitting a third party's "illegal speech" is not enough to render publication

13  "integral to criminal conduct" and outside First Amendment protection.  *Bartniki v. Vopper*, 532

14  U.S. 514, 529-30 (2001).[7]

15         Additionally, it is not enough for a speaker to encourage illegal action (which necessarily

16  requires advance knowledge of the speech in question), but the speaker must also take active

17  steps to assist the illegality.  *Sineng-Smith*, 910 F.3d at 481-82.  *See Free Speech Coalition*, 535 U.S.

18  at 253-54 ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason

19  for banning it."); *United States v. Freeman*, 761 F.2d 549, 551-52 (9th Cir. 1985) (reversing

20  convictions for 12 counts for counseling tax evasion but affirming two where defendant "not

21  only counseled *but also assisted* in the filing of false returns") (emphasis added).  Because the

22  "speech integral" exception requires the government to show "specific intent to facilitate the

23  commission of a crime," *Sineng-Smith*, 910 F.3d at 482 (citation omitted), a web publisher

24

25         [7]  The government falsely asserts that Defendants' counsel "admitted" that an online
26  platform's knowledge of an illegal posting is alone sufficient for an indictment.  Resp. 21.  But
    as the quoted language indicated, counsel explained that criminal liability may apply when there
27  is actual advance knowledge of an illegal proposal *and* active participation in the crime.  Doc.
    446-1 at 39.
28

1  must have both knowledge of the particular "solicitation" at issue and take steps to further the

2  particular illegal acts.[8]  Such specifics must be alleged in the indictment, but they are missing

3  from the SI.

**C.    Under the First Amendment, Do Different Standards Apply for Potential Liability of Speakers and Publishers?**

6  The government's conclusory mantra that prostitution ads are not protected by the First

7  Amendment erroneously conflates the speaker with the publisher/distributor.  Resp. 2, 17, 27.

8  Contrary to the SI's assumptions and numerous statements in the Response, *see*, *e.g.*, Resp. 33,

9  Defendants are not charged with proposing illegal transactions—they are charged with owning,

10  operating, and profiting from a platform on which third parties posted ads.  Thus, citation to

11  cases that say the First Amendment does not protect ads written *by prostitutes* specifically to

12  advertise sex for money are inapposite.[9]  Those cases do not apply to the activities of

13  publishers of third-party speech.

14  The government is on no firmer ground citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on*

15  *Human Rights*, 413 U.S. 376 (1973).  Resp. 2, 17.  *Pittsburgh Press* involved a newspaper advertising

16  category that *on its face* violated a municipal anti-discrimination ordinance, and would apply here

17  only if Backpage had maintained a "prostitution" category and accepted ads with explicit sex-

18  for-money offers.  That is not the situation here, of course, and the SI contains no such allega-

19  tion.  The government attempts to overcome this by simply equating adult or escort ads with

20  ads for illegal prostitution, alleging that if Defendants sought to promote ads in the adult

21  category, they were automatically "facilitating" prostitution, and trying to shift the burden to

---

8  *Braun v. Soldier of Fortune Magazine, Inc.*, 968 F.2d 1110 (11th Cir. 1992), cited by the government, provides no support for its position.  Resp. 17.  The modified negligence standard in that case was applicable *only* where the publisher was aware in advance of the particular ads that on their face (and without investigation) unambiguously promoted illegal activity.  This standard for liability applied only for compensatory civil damages, and the court emphasized it would not apply to punitive sanctions.  *Braun*, 968 F.2d at 1119 & n.7.

9  *E.g.*, Resp. 2, 17, 27, 29 (citing, *e.g.*, *Erotic Serv. Provider Legal Educ.& Res. Project v. Gascon*, 880 F.3d 450, 461 (9th Cir. 2018); *Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592, 604 (9th Cir. 2010)).

8

Defendants to prove otherwise.  *See, e.g.*, Resp. 28 ("These assertions are based on the false premise that these practices didn't involve prostitution ads.").  The SI is based on the fallacy that the government has no obligation to allege facts regarding specific illegal ads once it makes the generalized charge that "all" adult ads were for illegal activity.  *Id.* 2, 17, 27, 29.  The government asserts this assumption is valid, because otherwise, "posting even one licit ad—among millions of illicit ones—would immunize the website."  *Id.* 35.

This is nonsense.  As with the overarching theory of prosecution, it gets things backwards.  The issue is not that a single legal ad bars prosecution; it is that the First Amendment presumes speech is protected, so a constitutionally-sufficient indictment must allege that: (1) *particular* ads were for illegal activity, (2) Defendants had knowledge *of those ads in advance*, and (3) they specifically intended to further *those ads'* illegal purpose.  This is because selling ad space is lawful activity that is unquestionably protected, even in the adult category.[10]  As the Ninth Circuit has cautioned, *Pittsburgh Press* does not support an assumption that the government may dispense with First Amendment requirements and presume speech is unlawful.  *See Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 822 (9th Cir. 2013); *cf. Sineneng-Smith*, 910 F.3d at 481 n.10. (observing that *Pittsburgh Press* "relies on the since-weakened distinction between commercial and non-commercial speech").

The government's conflation of speaker and publisher in this case exposes the emptiness of its position.  If a person is charged with making statements alleged to be constitutionally unprotected speech, the indictment is obviously defective if it fails to set forth the specific statements that person allegedly made.[11]  That was the point of *Buddenberg*, where

---

[10]  *McKenna*, 881 F. Supp. 2d at 1282 (escort ads have long been permitted and many states license and regulate the practice); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 828-40 (M.D. Tenn. 2013) (Tennessee law targeting Backpage is invalid under the First Amendment "as a clear-cut example of a content-based regulation on speech"); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *9-11 (D.N.J. Aug. 20, 2013) (New Jersey law invalidated as "a clear cut example of a content based restriction on speech").

[11]  *Buddenberg*, 2010 WL 2735547, at *3-4 (examination of whether protected speech is at issue "cannot occur unless the specific speech and conduct is identified").  Of course, an

the defendants were charged with making threats and engaging in harassment and intimidation. The court dismissed the indictment on First Amendment grounds because it alleged "no facts identifying what each defendant is alleged to have done, to whom, where or when." *Buddenberg*, 2010 WL 2735547, at \*3.  It held it is plainly inadequate to rely on allegations regarding "defendants' conduct as a whole." *Id.* at \*8-10.

The government contrasts *Buddenberg* with the indictment in *United States v. White*, 638 F. Supp. 2d 935 (N.D. Ill. 2009), *rev'd*, 610 F.3d 956 (7th Cir. 2010), Resp. 41-42, but *White* did not involve third-party speech, much less an attempt to hold publishers responsible for content of postings of which the defendants had neither advance knowledge nor specific intent to further an associated business enterprise.  There, the Seventh Circuit upheld the sufficiency of the indictment for soliciting a crime of violence where it listed specific content and dates of posts *the defendant made* on his website (including providing names and addresses of jurors in a hate crime trial as well as specific statements such as "everyone associated with the Matt Hale trial has deserved assassination for a long time").  *White*, 610 F.3d at 957-58.  If *White* were like this case—the defendant charged for "solicitations" made by others with no allegations he had ever seen the specific statements—the indictment would  have been instantly dismissed.

Cases cited in the Motion (pp. 35-37) highlight the SI's flaws in alleging culpability for third-party speech, and the government's attempt to distinguish them falls flat.  Resp. 42.  It dismisses *Dart v. Craigslist* as merely involving a civil complaint for "negligent publishing" while ignoring that the allegations in that case were nearly *identical* to those in the SI:  that a website violated local law banning prostitution and the Travel Act because users "routinely post ad[s] …'openly promis[ing] sex for money,'" often using "code words" and including "nude or

---

indictment that lists specific statements but fails to allege how those statements meet substantive First Amendment standards also must be dismissed.  *Cassidy*, 814 F. Supp. 2d at 583, 588-92 (dismissing indictment that detailed numerous statements on specific dates as "directed at protected speech that is not exempted from protection by any of the recognized areas").

nearly-nude pictures." *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 962-63 (N.D. Ill. 2009).[12]
The sheriff argued the case was not about freedom of speech because "[o]ffers to engage in
illegal transactions are excluded from First Amendment protection" and, instead, it was "about
a business that created an online forum for illegal conduct."  Resp. to Craigslist's Mot. for
Jdgmt. on the Pldgs., *Dart v. Craigslist* (No. 09 CV 1385), 2009 WL 2010677, at 3-4 (N.D. Ill.
2009).  Rejecting this, the court dismissed the complaint, finding it "relies heavily on a few
conclusory allegations to support the contention that Craigslist induces users to post ads for
illegal services," 665 F. Supp. 2d at 967, 969, and that providing a platform for speech of
someone who might commit illegal acts "does not satisfy the ordinary understanding of
culpable assistance to a wrongdoer."  *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003).

The government's attempt to distinguish *Dart* and rulings involving Backpage as
relevant only to statutory Section 230 immunity is wrong both in fact, and on the law.  Resp. 2,
21, 28.  It ignores how three federal courts invalidated state laws designed to shut down
Backpage (on both First Amendment grounds and under Section 230) because they relied on
the same fallacious assumption as here that equates adult ads with prostitution.[13]  It also tries to
discount the Seventh Circuit's First Amendment ruling in *Backpage.com, LLC v. Dart*, 807 F.3d
229 (7th Cir. 2015) as undermined by Ferrer's untested plea agreement, Resp. 3, 21, but nothing
has affected that court's holding that it is unconstitutional to assume all adult ads are illegal and
to censor speech on that basis.[14]

---

[12]  *See* Compl.*, Dart v. Craigslist* (No. 09 CV 1385), 2009 WL 564291, ¶¶ 1, 30-31 (N.D. Ill.
2009); *id.* ¶ 32A.-L. (listing examples of the offending ads); *id.* ¶¶ 86-89, 99, 112 (detailing
condemnation of Craigslist by national media, members of Congress, state attorneys general,
and the local sheriff); *id.* ¶¶ 116-126 (alleging Craigslist violated the Travel Act because it was
"responsible in part for the creation of the offending content" and that it "induces users to
post prostitution related ad[s]").

[13]  *McKenna*, 881 F. Supp. 2d at 1282; *Cooper*, 939 F. Supp. 2d at 833-34; *Hoffman*, 2013 WL
4502097, at *9-11.  *Cf. Craigslist*, 665 F. Supp. 2d at 968 (the sheriff "is simply wrong when he
insists that these terms are all synonyms for illegal sexual services").

[14]  The government emphasizes how the *Dart* district court sanctioned Backpage on
grounds Ferrer's plea agreement here contradicted his earlier testimony in that case.  That

Even where courts dismissed criminal charges against Backpage defendants under Section 230, they framed the legal question as "whether, and to what extent, Defendants' activities entitle them to protection of their *First Amendment rights* through the immunity provision of the CDA." *Ferrer I*, 2016 WL 7237305, at \*3 (emphasis added).  As one of those courts noted, "protections afforded by the First Amendment were the motivating factors behind the enactment of the CDA."  *Ferrer II*, slip op. at 11.  On that basis, the courts held the editorial practices at issue here, including "aggregation" and "moderation" are not valid bases for imposing criminal liability. *Ferrer II*, slip op. at 16; *Ferrer I*, 2016 WL 7237305, at \*11.[15]

The government's assertion that several courts "have recently recognized that prostitution websites like Defendants [sic] may be prosecuted under federal law" is false.  Resp. 3, 20-21.  Two of the three references in what the government calls "several cases" involve no more than plea agreements with very different allegations, where no First Amendment

---

court's reliance on Ferrer's statement is premature, given that no court has yet accepted his plea.  Moreover, plea agreements "may adopt facts that the government wants to hear in exchange for some benefit," *United States v. Vera*, 893 F.3d 689, 692-93 (9th Cir. 2018), and are "presumptively unreliable."  *Lee v. Illinois*, 476 U.S. 530, 541 (1986).  *Cf. Bruton v. United States*, 391 U.S. 123 (1968) (admission of co-defendant's confession inculpating defendant is reversible error).  More importantly, the government's suggestion that the Seventh Circuit reconsidered its First Amendment holding in *Dart*, citing *United States v. Jackson*, 865 F.3d 946 (7th Cir. 2017), *vacated*, 138 S. Ct. 1983 (2018), is a blatant effort to mislead this Court.  Resp. 3, 25, 35-36. *Jackson* says nothing of the kind, but merely notes in dictum that Backpage formerly had an "adult section" that included ads for "sex work."  Nothing in *Jackson* disturbs the Seventh Circuit's First Amendment *holding* that "not all advertisements for sex are advertisements for illegal sex."  *Dart*, 807 F.3d at 234.

[15]  Moreover, the government's argument that cases involving Section 230 are irrelevant does not stop it from trying to rely on allegations in civil cases to support the SI.  *E.g.*, Resp. at 3, 25 (citing *J.S. v. Village Voice Media Holdings, Inc.*, 359 P.3d 714 (Wash. 2015); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016)).  Notably, *J.S.* has recently been debunked as reliant on pleading standards totally at odds with those for criminal liability and as an erroneous application of law.  *Daniel v. Armslist, LLC*, 926 N.W.2d 710, 725 (Wis. 2019).  In *Doe No. 1*, 817 F.3d at 21, the First Circuit held that Backpage was not liable, and suggested the degree of involvement "sufficient to render its operator both a publisher and a participant" might include where "the website operator helped to procure the underaged youths who were being trafficked."  Of course, the SI contains no such allegations.

12

questions were presented or decided.[16]  *See supra* n.14 (discussing unreliability of plea

agreements).  The third, *United States v. Ulbricht*, 31 F. Supp. 3d 540 (S.D.N.Y. 2014), involved

prosecution of the creator of Silk Road, whose website openly invited ads for unlawful

activities (with categories such as "Cannabis," "Opioids," and "Ecstasy"), openly advertised the

purchase and sale of thousands of kilograms of heroin and cocaine and "malicious software

designed for computer hacking," and participated in each sale by escrowing payments pending

completion of transactions and collecting a commission of 8% to 15% from every sale.  *Id.* at

549-50; *United States v. Ulbricht*, No. 13-mj-02328 (S.D.N.Y.), Sealed Indictment, Dkt. 1, ¶¶ 8(a),

19(b)-(c), 21(d)-(h) (attached as Exhibit A).  In short, *Ulbricht* involved the type of knowledge

and active assistance required for the "speech integral to criminal conduct" exception that is

missing here.  And contrary to the government's claims, Ulbricht was not even charged with a

Travel Act violation, but for narcotics trafficking.  Even more damning, the indictment did not

allege Ulbricht was criminally liable for launching a website that others misused, and the court

pointedly noted "[i]f that were ultimately the case, *he would lack the mens rea for criminal liability*."

*Ulbricht*, 31 F. Supp. 3d at 556 (emphasis added).

The government is painfully aware of the constitutional limits of its theory of vicarious

liability because of its unsuccessful effort to pursue Backpage and its owners through a grand

jury proceeding in the Western District of Washington.  Judge Richard Jones quashed

government subpoenas after expressing concerns ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[16]  *See United States v. Omuro*, No. 14-cr-00336-WHO (N.D. Cal.); *United States v. Hurant*, No. CR 16-cr-00045-MKB (E.D.N.Y.).

1  ███████████████████████████[17]  █████████████████████████

2  ███████████████████████████████████████████████

3  ██████████████████████████████████████████████████

4  ██████████████████████████████████████████

5  ███████████████  The SI makes the same fatal error.

**D.    May the Government Found an Indictment on Generalized Knowledge that Third-Party Speech Resulted in Criminal Conduct?**

The government's central theme is that, if third parties commit criminal conduct through online posts, the website's publisher or owners may be criminally liable for the conduct even if they have no knowledge of particular ads and no intent to further an unlawful business enterprise associated with those ads.  Resp. 37 (advancing theory it can prosecute a website based on general design and operation).  The government even goes farther out on this limb, claiming liability can be imposed if it was "reasonably foreseeable" that violations of the law would occur, *even without* direct knowledge or involvement by any particular Defendant.  *Id.* 14. This is the "novel theory of vicarious liability" courts have rejected repeatedly for 30 years, and specifically as to Backpage.  Such generalized allegations are facially deficient under general First Amendment principles, under the "speech integral to crime" exception, and under the applicable statutory *mens rea* provisions.

The government's effort to avoid specific intent as the required *mens rea* is unavailing and fatal to the SI.  None of the cases it cites on *mens rea* involved First Amendment issues.[18]  Allegations of knowledge of the specific statement alleged to be illegal (combined with the requisite intent) are essential to any claim that speech is unprotected.  *See supra* 4-8.  The government's

_____

[17] *In re Grand Jury Subpoenas to Backpage.com, LLC and Village Voice Media Holdings, LLC*, No. GJ12-172RAJ (W.D. Wash. Jan. 17, 2013) (order granting Backpage's motion to quash and denying the government's motion to compel) (attached as Exhibit B).  Materials from this grand jury proceeding were previously filed in this case.  *See* Doc. 541-4.

[18] Resp. 30-31.  *See United States v. Welch*, 327 F.3d 1081 (10th Cir. 2003) (bribery); *United States v. Tavelman*, 650 F.2d 1133 (9th Cir. 1981) (conspiracy to possess cocaine); *United States v. Polizzi*, 500 F.2d 856 (9th Cir. 1974) (gambling enterprise).

claim that *mens rea* is a "jury issue," Resp. 30, simply does not apply in the First Amendment context, where the indictment must identify specific speech and how it is allegedly unprotected. *United States v. Cassel*, 408 F.3d 622, 632 (9th Cir. 2005) ("[T]he element of intent [is] the determinative factor separating protected expression from unprotected criminal behavior."). Where, as here, the SI fails to recite an essential element of the charged offense, the indictment must be dismissed. *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). *See* Mot. 37.

The government misreads *Smith v. California*, 361 U.S. 147 (1959), and *Mishkin v. New York*, 383 U.S. 502 (1966), in arguing it need only allege a defendant was generally aware "of the character" of Backpage's "adult" ads. Resp. 35-36. In *Mishkin*, the Court found the State's showing of scienter sufficient as to 50 specific books where the defendant hired writers and *specifically instructed them about the content to include*. 383 U.S. at 503-05, 511-12. In *Smith*, 361 U.S. at 153-54, the Court held a bookseller could not be criminally liable for allegedly obscene books in its store absent proof he had knowledge concerning contents of a given book.[19] No case supports the government's expansive claim that the government may allege *mens rea* regarding unprotected speech in bulk. Were the law otherwise, the government could indict a bookseller based on the allegation that he operated an "adult bookstore" without naming any of the titles subject to the charge. The government's reading of the cases is all the more absurd in this context, where a website publishes millions of ads written by third parties.

The government tries, unconvincingly, to distance itself from *its own admissions* that federal statutes require specific foreknowledge and intent. See Mot. 28-30. It has argued in other cases that it must prove not just that *defendants* knew that *particular ads* were for prostitution, but that they had *specific intent to facilitate those particular acts* of prostitution. *Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 199-201 (D.D.C. 2018) (government argued prosecutions under the Travel Act must prove "not simply that the defendant was aware of a

---

[19]  Any attempt to compare the level of involvement in *Mishkin* to Backpage's operation is obviously inapposite, where none of the Defendants were alleged to have engaged with any third-party posters and there are no allegations they ever saw any of the ads in the SI.

potential result of the criminal offense, but instead that the defendant intended to 'explicitly further[]' a specified unlawful act"), *appeal filed*, No. 18-5298 (U.S. Oct. 12, 2018).  The court agreed and held that, to avoid First Amendment problems, the new law challenged in *Woodhull*, like the Travel Act, could apply only to "specific unlawful acts with respect to a particular individual, not the broad subject-matter of prostitution."  *Id.*

The government's claim that this *mens rea* is a statutory requirement only under other laws, Resp. 37, is utterly disingenuous.  It claims specific intent is the standard when it defends statutes (including FOSTA and the Travel Act) from constitutional challenge, then reverts to an entirely different standard in its theory of prosecution.  Here, the government claims it can prosecute based on the general design of the website, Resp. 37, or even where it is "reasonably foreseeable" prostitution ads will be posted.  *Id.* 14.  But the government cites no authority to support prosecuting a publisher of third-party content under such lax *mens rea* standards.

Even apart from baseline First Amendment requirements, the SI fails under the specific intent requirements of the Travel Act.  Mot. 26-27.  *See United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974).  The government does not take serious issue with *Gibson*'s holding that the sale of a legal product or service does not satisfy specific intent even when a seller knows the buyer may be violating a particular law.  *Id.* at 449-50.[20]  Instead, it cites *Tavelman*, 650 F.2d at 1138, and asserts prosecutors need only allege general intent "to promote an unlawful activity."  Resp. 32.  But *Tavelman* involved sale of illegal drugs, not a legal service like the sale of ad space, so the attempt to distinguish *Gibson* fails.

On the other hand, if the Travel Act can be interpreted and applied as broadly as the

---

[20]  The government speculates that *Gibson* might have gone the other way if the allegations there had been more like those in the SI.  Resp. 31.  But in doing so, it contradicts *Gibson*'s holding that merely engaging in a legal business, even with knowledge that particular customers violate state laws by purchasing your goods and services, is not sufficient to show "intent to facilitate a criminal venture."  507 F.2d at 449.  *Accord Welch*, 327 F.3d at 1095 (the Travel Act requires government to "prove Defendants acted with a higher level of culpability than mere knowledge; it "requires a specific 'intent to ... promote[.]'"

government suggests, so that it can prosecute the operator of any website that makes criminal activity "easier," the Act as applied violates the First Amendment because it is both overly broad and vague. Mot. 39-42. The government actually embraces this boundless reading of the law, noting that "facilitation" under the Act means "to make easy or less difficult," Resp. 32 n.16, but then argues the Travel Act is not overly broad because it employs a *mens rea* requirement of specific intent. *Id.* 43. But the government cannot have it both ways—arguing the Travel Act is constitutional because it requires specific intent, but claiming this prosecution may proceed if it was "reasonably foreseeable" that violations of the law would occur. The government's theory that it may prosecute even without direct knowledge or involvement by any particular Defendant is fatal to its case. Resp. 14. As in *Cassidy*, 814 F. Supp. 2d at 587, such untethered regulation of speech should result in the dismissal of this indictment.

### E.    What Does the Indictment Actually Allege Regarding Defendants?

As Amici DKT Liberty Project, Cato Institute, and Reason Foundation note, "[u]nder the government's theory of the case set forth in the indictment, the only distinction between protected sexually oriented speech and the unlawful speech Defendants are alleged to have promoted is Defendants' purported ambient awareness of the speech's general unlawfulness." (Amicus at 9). The government responds the SI is sufficient because it "contains more than 200 paragraphs of allegations showing how Defendants worked together to facilitate prostitution" and "more than 50 examples of prostitution ads published on Backpage." Resp. 16. But what the SI lacks—which the government concedes—are any allegations that the Defendants had any connections to, or any awareness of, any of the "50 examples" (or of any particular illegal ad), or any intent to further any unlawful business enterprise.

Instead, the government alleges generally that Backpage was a "prostitution website" and that it may rely on general allegations that "all" or "nearly all" the ads were for illegal purposes. Resp. 17. Labeling Backpage a "prostitution advertising website" is no more meaningful as a constitutional matter than if the government called an adult bookstore an

"obscenity palace."  The government's allegation that it identified "scores" of prostitution ads that appeared on Backpage—out of the millions of ads that ran each month—says nothing about the criminal culpability of the website's former owners for the content of such ads.[21]

As explained in the Motion, the SI claims Defendants had a general awareness that "the vast majority" of the ads in Backpage's adult or escort sections were for prostitution based on the assumption that adult ads and prostitution ads are synonymous. Mot. 31-34 (analyzing specific allegations in SI as to each Defendant).   The government responds with several pages of bullet-points that repeat the allegations—but none suggest awareness of any particular ads by the Defendants. *See* Resp. 38-41.  For the self-service ads listed in the SI alleged to be for prostitution, the government does not allege any Defendant had ever seen them (or even had the opportunity to do so).  And even if the SI had alleged awareness by Defendants of any of the ads, it does not explain how that would translate to the required level of *mens rea*.[22]  The government concedes the SI draws no connection between any of the allegedly illegal ads and any Defendant in this case.

Tellingly, in every instance where the SI alleges any direct knowledge of a particular  ad or other involvement by "Backpage," the person named in the SI is Carl Ferrer, not any Defendant in this case.[23] The law is clear that where proof of defendant's specific knowledge is required, it is not satisfied via imputation of knowledge of alleged co-conspirators. *E.g.*, *United*

---

[21]  In just the month of April 2012, Backpage users posted more than 3.3 million ads. *Cooper*, 939 F. Supp. 2d at 813.  For the 14-year period of the government's prosecution, Backpage users posted some 350 million ads, and the government's accusations about a handful, or even "thousands upon thousands" that it claims were improper, amounts to an infinitesimal portion of the ads posted on the site.

[22]  *See McKenna*, 881 F. Supp. 2d at 1279 ("The pimp that publishes the ad[] certainly 'knows' whether his offer is for sex [but] … what does it mean for the website operator to 'know' that an ad[] … offers sex" when a third party is *incapable* of "ascertain[ing] that which is being offered before the transaction is consummated"?).

[23]  *See* Resp. 8 (citing SI ¶¶ 118-19); *id.* at 9 (citing SI ¶¶ 59-67, 91, 132); *id.* 17 (citing SI Counts ¶¶ 3, 6-11, 18, 25-26, ¶ 132); *id.* 32 n.17 (citing SI ¶¶ 61, 132, 160-176).

*States v. Vallone*, 698 F.3d 416, 457 (7th Cir. 2012) (citing *Jefferson v. United States*, 340 F.2d 193, 197-98 (9th Cir. 1965), *vacated sub nom. on other grounds, Dunn v. United States*, 570 U.S. 901 (2013)); *United States v. Spock*, 416 F.2d 165, 173 (1st Cir. 1969). The Supreme Court has long refused to attribute to criminal defendants actual knowledge of other conspirators.[24] As the Ninth Circuit held, "so-called 'constructive' notice or knowledge … based upon the actual knowledge of a co-conspirator … has no tendency, circumstantially or otherwise, to prove criminal intent." *Phillips*, 356 F.2d at 303. This is particularly true when the First Amendment is involved.[25] The government's reliance on *Ferrer's* asserted knowledge cannot satisfy the obligation to plead the specific intent and actual knowledge of the indicted Defendants.

The government tries to make up for these deficiencies by alleging Ferrer "knew" virtually all the ads on Backpage were for prostitution, and claiming this "knowledge" can be imputed to the other Defendants. However, with millions of ads placed each month, there is no basis for these claims. The fact that Ferrer now asserts in his plea agreement that he believed most adult ads on Backpage were for prostitution is of no relevance regarding sufficiency of the indictment here.[26]

Adult classified advertising is presumptively protected by the First Amendment, and blanket allegations regarding efforts to do business in the adult and escort areas through such methods as "aggregation," the "Dallas Plan," and reciprocal-link arrangements are not the type

---

[24] *See Phillips v. United States*, 356 F.2d 297, 304 (9th Cir. 1965) (discussing *Ingram v. United States*, 360 U.S. 672 (1959)); *see also*, *e.g.*, *Reisman v. United States*, 409 F.2d 789, 790-92 (9th Cir. 1969).

[25] "Where a conspiracy implicates First Amendment protections such as freedom of association and freedom of speech, the court must make a 'specially meticulous inquiry' into the government's evidence so there is not 'an unfair imputation of the intent of some participants to all others.'" *United States v. Stone*, 2012 WL 1034937, at *2 (E.D. Mich. Mar. 27, 2012) (quoting *United States v. Dellinger*, 472 F.2d 340, 392 (7th Cir. 1972)). *See also generally NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-24, 933-34 (1982).

[26] Ferrer's plea, which asserts things he cannot possibly know about millions of ads, is inherently unreliable (*see supra* 12 n.14), and does nothing to ameliorate the absence of any allegations of the specific *mens rea* of the Defendants.

of specific allegations necessary to identify what speech is alleged to be illegal. *Buddenberg*, 2010 WL 2735547, at *8-10 (government cannot rely on allegations regarding "the defendants' conduct as a whole"). Equally as important, because adult ads are constitutionally protected, the SI's allegations do not allege a chargeable crime congruent with the commands of the First Amendment. *Cassidy*, 814 F. Supp. 2d at 583, 588-92 (dismissing indictment because it was "directed at protected speech that is not exempted from protection by any of the recognized areas").

### III.   CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court dismiss the Indictment.

DATED this 17th day of July, 2019.

DAVIS WRIGHT TREMAINE LLP
*s/ Robert Corn-Revere*
*s/ James C. Grant*
Attorneys for Michael Lacey and James Larkin

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Attorneys for Michael Lacey

BIENERT KATZMAN, PLC
*s/ Thomas H. Bienert, Jr.*
Attorneys for James Larkin

FEDER LAW OFFICE PA
*s/ Bruce Feder*
Attorney for Scott Spear

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2019, a true and correct copy of the foregoing document was electronically filed with the Clerk of the United States District Court of the District of Arizona by using the CM/ECF system, and that service will be accomplished by the CM/ECF system to all counsel of record.

*s/ Robert Corn-Revere*
Attorney for Michael Lacey and James Larkin

# EXHIBIT A — REDACTED

# EXHIBIT B — REDACTED