UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | 2:18-cr-00422-SMB |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | June 24, 2019 |
| Michael Lacey, et al., | ) | 11:09 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE SUSAN M. BRNOVICH, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

STATUS CONFERENCE:  DISCOVERY


Official Court Reporter:
Charlotte A. Powers, RMR, FCRR, CCR, CSR, CMRS
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 40
Phoenix, Arizona  85003-2151
(602) 322-7250

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                    A P P E A R A N C E S

 2


 3    For the Government:

 4              U.S. Attorney's Office – Los Angeles, CA
                By: JOHN JACOB KUCERA, ESQ.
 5              312 North Spring Street, Suite 1200
                Los Angeles, CA  90012
 6
                U.S. Attorney's Office – Phoenix, AZ
 7              By: KEVIN M.  RAPP, ESQ.
                    ANDREW C. STONE, ESQ.
 8                  PETER SHAWN KOZINETS, ESQ.
                40 North Central Avenue, Suite 1800
 9              Phoenix, AZ  85004

10              U.S. Department of Justice – Child Exploitation
                By: REGINALD E. JONES, ESQ.
11              1400 New York Avenue, NW, Suite 600
                Washington, D.C.  20530
12


13


14    For the Defendant Michael Lacey:
                Liptsitz Green Scime Cambria, LLP
15              By: PAUL JOHN CAMBRIA, JR., ESQ.
                42 Delaware Avenue, Suite 120
16              Buffalo, NY  14202

17              Davis Wright Tremaine, LLP – Seattle, WA
                By: JAMES C. GRANT, ESQ.
18              920 5th Avenue, Suite 3300
                Seattle, WA  98104
19
                Henze Cook Murphy, PLLC
20              By:  JANEY HENZE COOK, ESQ.
                     TOM HENZE, ESQ.
21              722 E. Osborn Road, Suite 120
                Phoenix, AZ  85014
22


23


24


25
```

UNITED STATES DISTRICT COURT

```
 1                A P P E A R A N C E S (continued)

 2    For the Defendant James Larkin:
                 Bienert Katzman, PC
 3               By: WHITNEY Z. BERNSTEIN, ESQ.
                 903 Calle Amanecer, Suite 350
 4               San Clemente, CA  92673

 5               Davis Wright Tremaine, LLP - Seattle, WA
                 By: JAMES C. GRANT, ESQ.
 6               920 5th Avenue, Suite 3300
                 Seattle, WA  98104

 7

 8    For the Defendant Scott Spear:
                 Feder Law Office PA
 9               By: BRUCE S. FEDER, ESQ.
                 2930 E. Camelback Road, Suite 160
10               Phoenix, AZ  85016

11

12    For the Defendant John Brunst:
                 Bird Marella Boxer Wolpert Nessim Drooks Lincenberg
13    & Rhow PC
                 By: ARIEL A. NEUMAN, ESQ.
14               1875 Century Park E, Suite 2300
                 Los Angles, CA  90067
15
                 Kimerer & Derrick PC
16               By: MICHAEL D. KIMERER, ESQ.
                 1313 E. Osborn Road, Suite 100
17               Phoenix, AZ  85014

18

19    For the Defendant Andrew Padilla:
                 Joy Bertrand, Esq., LLC
20               By: JOY BERTRAND, ESQ.
                 1826 N. 7th Avenue
21               Phoenix, AZ  85007

22

23    For the Defendant Joye Vaught:
                 Joy Bertrand, Esq., LLC
24               By: JOY BERTRAND, ESQ.
                 1826 N. 7th Avenue
25               Phoenix, AZ  85007
```

```
 1                    P R O C E E D I N G S
 2              (Proceedings resume at 11:09 a.m.)
 3         THE COURT:  Thank you.
 4         Please be seated.
 5         COURTROOM DEPUTY:  Criminal case 2018-422, United
 6   States of America versus Michael Lacey and others, on for a
 7   status conference.
 8              Will the parties please announce.
 9         MR. JONES:  Good morning, Your Honor.
10         Reggie Jones, John Kucera, Kevin Rapp, Peter Kozinets,
11   and Andrew Stone on behalf of the United States.
12         THE COURT:  Okay.
13         MR. CAMBRIA:  Good morning, Your Honor.
14         Paul Cambria, along with Janey and Tom Henze, on
15   behalf of Mr. Lacey, as well as Mr. Grant -- James Grant -- on
16   behalf of Mr. Lacey.
17         MS. BERNSTEIN:  Good morning, Your Honor.
18         Whitney Bernstein on behalf of Mr. Larkin, who is
19   present before the Court on bond.
20         MR. NEUMAN:  Good morning, Your Honor.
21         Ariel Neuman and Michael Kimerer on behalf of John
22   Brunst, who is present in court.
23         MR. FEDER:  Bruce Feder for Scott Spear, who is also
24   present in court.
25         MS. BERTRAND:  Good morning, Your Honor.
```

1          Joy Bertrand appears for Joye Vaught.

2          I'd ask that her appearance be excused today.  She

3    lives in the Dallas area.

4          And I also am appearing for David Eisenberg and his

5    client, Mr. Padilla, today.

6          MR. GRANT:  Morning, Your Honor.

7          Not to be redundant, but Jim Grant on behalf of

8    Mr. Lacey and Mr. Larkin.

9          THE COURT:  Okay.  And we're set for a status

10   conference.

11         So I set today's status conference because I was

12   concerned when I read a statement in defendants' motion to

13   dismiss the indictment on page 11 where the defense -- well, it

14   reads:  Defendants bring the present motion because before

15   addressing how the case might proceed, it's logical to first

16   address whether the case can proceed.

17         That caused me some concern because I was already

18   concerned about the status of discovery at the last status

19   conference.

20         I'm kind of getting the idea that the defense hasn't

21   been working on the defense or the review of the discovery.

22   There was a question from Judge Logan during a status

23   conference about this issue, as well, where he had the

24   impression that the defense hadn't done anything.  And I want

25   to make it very clear that the -- this case is moving forward.

1    This motion to dismiss should not delay discovery or your work

2    on the case at all.  So that's why I set today's hearing,

3    because I wanted to make that clear.

4           Since I set the hearing, of course, there's been

5    multiple filings of -- of endless motions, which will be dealt

6    with.  And I'm going to go over a couple of them now, starting

7    with doc 654, which is the notice of errata.  And that was

8    Mr. Grant.

9           I had a question, because it says doc 652 and 653 are

10   duplicative.  I think also doc 651, because it was actually

11   filed four times.

12          MR. GRANT:  It was filed four times, Your Honor --

13          THE COURT:  Okay.

14          MR. GRANT:  -- with apology.  That's correct.  If it's

15   appropriate to file just the one time, that's perfectly fine.

16          THE COURT:  Okay.  So I'm going to just deem doc 651,

17   652, and 653 withdrawn.

18          Doc 650 is the motion for more time, which I'm deeming

19   moot because I ruled on doc 634.  And I know the ruling didn't

20   get docketed until just this morning, but based on that motion,

21   I had already granted an extension to July 17th.  That

22   motion -- or that ruling, however, is not clear on the request

23   for a page extension, and that request is denied.  The reply is

24   limited to the previously ordered 20 pages.

25          Doc 645 is the United States' motion to extend

1   deadline for response to defendants' motion to compel.  That

2   was just filed on the 21st.  I understand there's an objection.

3        Can we hear it now, or do you want to actually file a

4   written response?

5        MS. BERNSTEIN:  I'm sorry.  Which -- which document by

6   the government and objection from defense, Your Honor?

7        THE COURT:  645.  The United States' motion to extend

8   deadline for response to defendants' motion to compel.  In

9   their motion, they indicated that they had contacted defense,

10  and defense indicated they were going to object.

11       MR. GRANT:  And, Your Honor, the -- if I may.

12       THE COURT:  Yes.

13       MR. GRANT:  Jim Grant.

14       The -- the objection that we had as to that related to

15  the timing on the motion to dismiss response, which the Court

16  has now ruled on.  We don't object as to the timing of the

17  government's request for additional time to respond to the

18  motion to compel, with the -- the caveat that we would also ask

19  the same courtesy for the reply brief of defendants on the

20  motion to compel; in other words, an additional two weeks,

21  which is what the government respectfully asks for as well.

22       And I think -- I think you folks had said

23  previously -- I don't mean to speak for the government -- but

24  that they did not have an objection to that request.

25       And that would make defendants' reply brief on the

1    motion to compel, August 5.

2            THE COURT:  And does any other defense counsel want to

3    be heard on that?

4            MS. BERNSTEIN:  No, Your Honor.  That's accurate.

5            THE COURT:  Okay.  And does the government have any

6    objection to their proposal for the August 5th reply date?

7            MR. JONES:  No objection, Your Honor.

8            THE COURT:  Okay.  So the United States' motion is

9    granted.  So the response is due July 15th and the reply will

10   be due August 5th.

11           I'm not going to ask for any discussion of it.  I just

12   have a, I guess, a technical question.  Doc 628 is defendant

13   Padilla's motion to continue trial, which was joined by

14   defendant Vaught, and the government filed their response.

15           I didn't see that a reply had been filed.

16           MS. BERTRAND:  No, ma'am.  Mr. Eisenberg is out of

17   town.  In speaking with him, he was comfortable with me

18   addressing the motion.

19           We didn't have any further reply; simply we'll just

20   plan to discuss it with the Court today.  I'm happy to do that

21   now or sit down and wait our turn here.

22           THE COURT:  No, we can do it now.

23           MS. BERTRAND:  Okay.  Would you like me to approach

24   the lecturn?

25           THE COURT:  You can stay there.

1      MS. BERTRAND:  Okay.

2      THE COURT:  That's fine.  Unless you're more

3   comfortable over there.

4      MS. BERTRAND:  No.  Thank you, though.

5      Mr. Eisenberg and I are in a really unusual

6   circumstance, even as experienced white-collar defense lawyers.

7   We've never seen a data set like this before.  And we are

8   working actively with the Ninth Circuit's complex case

9   budgeting coordinator, and hoping to also get from that IT

10   assistance through their contract lawyers.

11      We have been moving toward that.  We have a meeting

12   with Ms. Fox, the director, on July 2nd.  And at that point

13   we'll be going through the CJA budget and also talking about

14   those contract computer people that I think will be a big help

15   to us.

16      But David and I knew this was a white-collar case, we

17   knew it was big, and now we're drinking out of a firehose and

18   would rather come to the Court earlier than later and say,

19   realistically, even if we put the rest of our caseloads to the

20   side and neglected all of our other clients, just in getting

21   our hands around the data and then how it implicates or does

22   not, how it exculpates either of our clients, will take several

23   months, even if the computer assistance were to occur starting

24   today.

25      So that's why I joined Mr. Eisenberg's motion.  The

1    government claimed statutory bases to not extend it, but those

2    statutes don't trump the Fifth and Sixth Amendments.  And

3    Mr. Eisenberg and I have obligations to these clients to do our

4    very best to make sure that their prosecution of them is fair

5    and that we find any exculpatory information in this

6    10 million-plus-page document set.

7            THE COURT:  And what about the government's position

8    that your two clients have a much smaller database of relevant

9    evidence?

10           MS. BERTRAND:  Well, we won't know that until we go

11   through it all.  And if -- if that's the case, that they have a

12   much smaller set of evidence against them, then all the more

13   reason that Mr. Eisenberg and I need to assure that what they

14   do have actually merits a conviction.  If -- if they're really

15   saying that Mr. Padilla and Ms. Vaught are less culpable,

16   that's even more frightening to me, Judge.  We have to be able

17   to prepare for these defendants.

18           MR. JONES:  Your Honor, if -- when -- may I respond

19   just whenever she's done?  I just want to respond to the

20   relativity issue, the database issue, just as to the

21   government's position because I don't know if it's clear in

22   regards to the database and who has access to it.

23           THE COURT:  Oh, yeah.  I'll hear from the government.

24   Just --

25           MR. JONES:  Okay.

UNITED STATES DISTRICT COURT

1      THE COURT:  -- I just want to see if I had any other

2 questions for counsel.

3      And you don't make a specific request of how long

4 you're asking for a continuance.

5      MS. BERTRAND:  No.  Mr. Eisenberg's thinking, and I --

6 I join in the suggestion -- obviously it's a suggestion -- is

7 that we just vacate the date until a whole bunch of the other

8 complexities of this matter are resolved, and then we're going

9 to know who's going to trial, how long the trial is going to

10 last, and what this really is.  Right now it's this big mass of

11 unknown.  We don't know if it's a six-week trial, a 12-week

12 trial.  But by the time motion practice is resolved and we get

13 some of this discovery sorted out, we're all going to have a

14 better idea what kind of resources this case is going to take.

15      THE COURT:  Okay.  Well, I'm not willing to do that

16 because with the number of counsel involved, scheduling a trial

17 is not as easy as it would be normally.

18      MS. BERTRAND:  Yeah.

19      THE COURT:  So --

20      MS. BERTRAND:  That makes sense, Judge.  I understand.

21      THE COURT:  -- I need to make sure that everybody

22 keeps whatever trial is set, set.

23      Okay.

24      MR. JONES:  Just briefly, Your Honor.

25      We wanted to just make clear that, pertaining to the

1    Relativity database that defendants have access to that we all

2    agreed upon, would be utilized to produce discovery in the

3    case.

4           Your Honor, the law firm of DWT, who was representing

5    both Lacey and Larkin, have access to relative -- to the

6    Relativity database, as well as Bird Marella, who is

7    representing Brunst.  They stated so in doc 310.  They replied

8    to our -- to the motion for itemization of Brady material,

9    which was denied.

10          Your Honor, Relativity is a cloud base.  It's a

11   web-based software program that is run over the Internet,

12   meaning that you don't have to be physically located in a

13   location in order to access the -- the database.  For example,

14   I'm located in D.C., Your Honor.  My co-counsels here are

15   located in California and Arizona.  We all have access to the

16   exact same Relativity database.  All you have to do is put in

17   your user name, as well as your password, and whether you're at

18   home or your office, you can access those documents.

19          We just want to make clear that there's no need to

20   have six different Relativity databases.  You only need -- the

21   defense only needs one Relativity database in order for all of

22   them to be able to share, Your Honor.  And we know that they

23   have access and are utilizing this Relativity database --

24   sorry.  I apologize.  I talk too fast.

25          They only need one access to one Relativity database,

1    Your Honor.  And we know they have access to this database

2    because they have reached out to us and -- on several

3    occasions, you know, with, hey, we can't load this document, we

4    can't load that document, which we happily -- happily replied

5    and got those materials to them.

6         But we just want -- just want to be clear, Your Honor,

7    that, you know, as far as counsel as to Padilla as well as

8    Vaught is concerned, there is no need for the expenditure --

9    expending additional court resources to pay for a Relativity

10   database that the defense attorneys already have.

11        And just looking, I was looking at the pocket guide

12   that was published by the Federal Judicial Center that was

13   published in order to assist courts in large discovery cases,

14   and the pocket guide makes very clear that, you know, court --

15   in large discoveries, courts should encourage minimization of

16   costs by calling for cooperation -- cooperation -- cooperation

17   sharing among databases.  And this has been done -- they go on

18   to say:  Hey, this has been done in a number of years in paper

19   document cases, and it's the most efficient use of resources

20   for large ediscovery cases as this one, Your Honor.

21        So we just wanted to make that clear from a Relativity

22   database standpoint.

23        THE COURT:  Okay.  And while you're up here, this

24   doesn't relate to the motion to continue, but in the defense

25   status reports, they indicated that you disclosed a bunch of

1    emails and are planning on disclosing or have disclosed some

2    payment data that they said was not in Relativity format.  Is

3    that accurate?

4         MR. JONES:  Yeah, that's accurate, Your Honor.  We

5    have produced to defendants, you know, over 10 million pages of

6    documents that are in low-rated format.  The server data, which

7    the government doesn't -- we'll flesh this out in our response

8    to their motion to compel more succinctly -- but there it's

9    not -- you know, we don't review this additional server data

10   as -- as being discoverable as it pertains to this case, Your

11   Honor.  We have produced over 10 million pages of documents in

12   Relativity format.  We have produced these others, the hard

13   drives that contain the emails, as well as the tens of millions

14   of ads and images that we've given them, all the marketplace of

15   the ads that are on Backpage, including the underlying data,

16   all of the images that were on Backpage, you know, in the same

17   format as the government has -- has them, Your Honor.  We don't

18   have them in Relativity format because of the volume of it.

19   And that's why we -- in -- in our conversations with the

20   defendants in -- in attempting to focus their efforts on

21   material data, we have, you know, let them know that, hey,

22   these are tens of millions of documents that you couldn't

23   possibly review if you had five or 10 years to prepare for

24   trial.

25        You know, that being said, Your Honor, we have in this

```
 1    case, you know, given them, you know, all -- produced all
 2    discovery in this case at the government expense, you know.
 3    Although Rule -- you know, Rule 16 is clear that all we need to
 4    do is make this available for them to inspect and -- and copy,
 5    but we produced everything on hard drives, thumb drives, on
 6    also CDs at our expense to all -- all of these counsels, Your
 7    Honor.
 8              And as it pertains to the server data that we deem to
 9    be irrelevant and immaterial --
10              THE COURT:  Okay.  Wait.  Stop, because I don't really
11    want to get into server data --
12              MR. JONES:  Okay.
13              THE COURT:  -- because I know there's a motion to
14    compel, and it needs to be fully fleshed out.
15              So my specific question is -- let me look at their
16    motion --
17              MR. JONES:  Okay.
18              THE COURT:  -- or their status report.  I think that's
19    why -- where I got this question.
20              Is the email data that they're referring to one of the
21    image servers, or is it something separate?
22              MR. JONES:  It's one of the image servers, Your Honor,
23    that was seized from -- from Dallas.
24              THE COURT:  Okay.
25              MR. JONES:  Yes.  Yes, ma'am.
```

UNITED STATES DISTRICT COURT

1          THE COURT:  Okay.

2          MR. JONES:  One other thing, Your Honor, that we --

3     that we haven't mentioned though, but defense has requested on

4     several occasions, access to image copies of all of the servers

5     in our possession, which I believe number more than 100.

6          You know, although we view the status to be immaterial

7     and not relevant, we are willing to, you know, image and copy

8     all this data and give it to them, you know, they want it, Your

9     Honor, at their expense.  And so we talked with our tech folks,

10    and we would need about a thousand terabytes of storage in

11    order to start copying this data.  And it would take

12    approximately 60 days.  But if they want it all, Your Honor,

13    they can have it all.  But it will be at their -- at their --

14    at their expense.

15         THE COURT:  Isn't that the subject of the motion to

16    compel?

17         MR. JONES:  Well, I guess within the motion to compel,

18    I mean, they're asking for -- I mean, more than just the server

19    data.  But that is -- I guess we can address that as part of it

20    as well.

21         THE COURT:  Okay.

22         And then I just have one other question not related to

23    the motion to continue.

24         In your status report, you indicated that you expected

25    to get the servers from Amsterdam the week of June 7th.  Did

1    you get them?

2          MR. JONES:  Yes.  Agents physically went to Amsterdam

3    to retrieve the servers, Your Honor.  They are in -- they are

4    in transit here, approximately 44 servers.  We should be able

5    to start imaging them this week, I think, the payment

6    processing data, and we'll have them -- have that data to

7    defendants by -- on or before July 15th.  And we will notify

8    the Court once we have made that available -- server data --

9    data available to them.

10         THE COURT:  So you still expect to be able to do that

11   by July 15th, even though you don't physically have them yet?

12         MR. JONES:  Yes.  They went over there and inspected

13   them, so we have an amount of -- a good estimate of how large

14   the payment processing album is, and we do expect to be able to

15   give them -- make available to them the payment processing

16   album by that July 15th date.

17         THE COURT:  Okay.  All right.  Thank you.

18         MR. JONES:  Thank you.

19         THE COURT:  Anything else?

20         MS. BERTRAND:  Well, Your Honor, very little, if

21   anything, of what Mr. -- what the government just discussed has

22   anything to do with Mr. Eisenberg and my's predicament.

23         Even with one Relativity database, the searches in it

24   are somewhat primitive, and we're not -- first of all, the

25   government has no standing to bring -- to fight CJA issues.

```
 1   Those are by statute to be addressed in camera with the Court,

 2   and we'll be happy to do that after we meet with Ms. Fox.  But,

 3   really, even if -- even if the IT guys were sitting right here

 4   and had met with Mr. Eisenberg and I several times and we had a

 5   plan, it takes 60 days to even download some of this data at a

 6   time.

 7           So Mr. Eisenberg and I are hustling to get up to speed

 8   on this.  I know both of us are taking no further CJA cases

 9   until this case is done.  We've already talked to the Federal

10   Defender about it because this is going to be it for us, and

11   we -- we can't go to trial in early 2020 competently.

12           THE COURT:  Okay.  Thank you.

13           MS. BERTRAND:  Okay.

14           MR. NEUMAN:  Your Honor, Ariel Neuman for Mr. Brunst.

15           Do you want to hear a response to Mr. Jones on the

16   Relativity database or not at this time because --

17           THE COURT:  Well, no, I'm going to ask you about it

18   because actually in -- I'm trying to find the exact

19   statement -- but there was a statement in either the status

20   report or the supplemental status report saying you don't have

21   it --

22           MR. NEUMAN:  All right.

23           THE COURT:  -- or something similar to that, which

24   also caused me great concern.

25           MR. NEUMAN:  All right.  I'm not -- I'm not sure
```

1    exactly which statement the Court is referring to.  I can

2    address that.  But --

3              THE COURT:  All right.

4              MR. NEUMAN:  But the short answer is that there is, as

5    Mr. Jones said, there is one database -- and Mr. Grant can

6    address it more specifically -- one database right now that has

7    the Relativity information in it.  We also at Bird Marella, my

8    firm, are hosting a very limited set of the data because it is

9    so voluminous.

10             But my problem with the government's position here,

11   and their -- this suffuses also their response, I believe, to

12   the -- to the motion to continue -- is that they somehow view

13   the defendants as one undifferentiated mass.  And so the idea

14   that we all have to share this information, see each other's

15   work product, share that work product, is simply baseless.  And

16   that's what happens if we're all sharing this database, is that

17   it is impossible to do things really privately.

18             And so I have a responsibility to my client, and

19   everybody around me has a responsibility to their clients.  And

20   as we've already seen in this case, while at times we may be

21   aligned and other times we may not be aligned.  And my client,

22   for instance, had very limited involvement, if any, in certain

23   practices that other people may have had involvement.

24             And -- and so this idea that, well, they all know this

25   or they can all share it or they can all do it all together,

1    that's not how this works, and it's not how it's supposed to

2    work.

3             And it -- it goes back to their response to us, that,

4    well, the defense produced all this information to us.  That's

5    not accurate.  My client had nothing to do with producing this

6    information to them.  He hasn't owned or had an ownership stake

7    in this company since 2015.

8             So it just doesn't work, this idea that we are an

9    undifferentiated mass.  We are individual -- we are individual

10   counsel for individual defendants who have a responsibility to

11   each of our clients.  And while I may have limited access to

12   certain information, other people don't.  And we have no

13   obligation to share it with each other, and we may have good

14   reason not to share it with each other.

15            THE COURT:  Well, that is all true.  However, your

16   motions and your status reports collectively refer to you as

17   "defendants," and you group yourselves together in saying we

18   can't do this, this, and this.  So I'm unable to distinguish

19   between the defendants.

20            MR. NEUMAN:  Okay.  There -- there is a lot of things

21   that we as a group cannot do, Your Honor.  For instance,

22   these -- what appears to be millions of emails that were

23   produced just recently that are not loadable in Relativity,

24   none of us can look at them.

25            Similarly, none of us have access to the servers as

1    they existed at the time and, thus, the ability to defend this

2    case in a way that's reasonable; for instance, figuring out how

3    each individual ad was actually changed.  One of the basic

4    charges in the government's indictment is that the

5    defendants -- and they don't differentiate -- were involved in

6    what they call moderation, meaning changing ads as they went

7    along.  Well, my client had nothing to do with that.  But if I

8    don't have the server data to show it, we, as a collective

9    group, can't defend the case.

10          And so there is a lot of "we," but this idea that we

11   have to all operate as a unit continuously, I think, is

12   mistaken, and that's not the way a criminal defense is supposed

13   to work.

14          So the issues in the motion to dismiss, those do --

15   they are relevant to all of us.  The issues in the motion to

16   compel, those are relevant to all of us.  But the fact that the

17   suggestion from the government, which is essentially maybe one

18   counsel knows it so all counsel know it, is simply wrong, and

19   that's not -- first of all, it's not correct.  And secondly,

20   it's not how we need to do it.  We all to need to prepare this

21   case for our individual clients, make individual decisions as

22   we go along, and independently evaluate the evidence against

23   them and prepare for trial.

24          THE COURT:  Okay.  One last question about the

25   government's disclosure, because the defense is still

1    complaining about the Bates numbers, which we already discussed

2    a little bit because I acknowledged that there were Bates

3    numbers, you grouped them, but now there's some issue with your

4    evidence list -- exhibit list.

5         MR. JONES:  We were a bit -- excuse me, Your Honor.

6         We were a bit confused about that request, as well,

7    the defense indicated in their status memo.  We have -- Your

8    Honor stated correctly.  We were here on April 23rd.  The

9    government agreed to provide the defendants, you know, Bates

10   labels to accompany the exhibit list there we had produced to

11   them much before trial.

12        About May 28th, a few weeks ago, Your Honor, we

13   provided the defendants an updated and revised preliminary

14   exhibit list that the included Bates numbers for approximately

15   90 percent of our exhibits.  And in submitting that to the

16   defendants, we indicated to them at that point, Your Honor,

17   that we would continue to give them updated and revised

18   preliminary exhibit lists, you know, up until -- up until our

19   final exhibit list deadline was due, Your Honor.  And we would

20   also -- you know, those 10 percent of Bates-numbered exhibits

21   that weren't included there, we told them that over the next

22   coming weeks that we would give those to them as well, Your

23   Honor.

24        So we just wanted it, you know, to be clear that we

25   are, you know, seven months out from trial, Your Honor, so we

1     are -- we're in trial prep.  So, you know, some of -- some of

2     these exhibits that's currently on our exhibit list may be off.

3     You know, we may -- we will likely add others, you know, which

4     is -- which we feel the right to do up until that final exhibit

5     list is due.  But we will continue to update and send them

6     revised exhibit lists with Bates numbers in the coming weeks

7     and months.

8              THE COURT:  Okay.

9              MR. JONES:  Your Honor, if I may make one other point.

10             I just wanted to -- just to clarify that there are

11    ways in Relativity that defendants can, you know, hide, you

12    know, any confidential or privileged material so other counsels

13    can't have -- have access to it.  And we have a Relativity

14    database specialist that's available to assist them in any way

15    that they can, if -- if that's helpful, Your Honor.

16             THE COURT:  Okay.

17             Ms. Bernstein?

18             MS. BERNSTEIN:  Your Honor, I was just going to

19    request to briefly address Mr. Jones' comments about the

20    exhibit list, but can take this in whatever order the Court

21    prefers.

22             THE COURT:  No, that's what I was going to ask you

23    about.

24             MS. BERNSTEIN:  As for the exhibit list, Your Honor, I

25    think there's four issues with the way the government produced

1    its exhibit list subsequent to the last time we were before

2    Your Honor.

3            The -- it's a 76-page single-spaced exhibit list that

4    they have produced.  It includes thousands of exhibits.  And

5    the list that was recently produced to us at the end of May,

6    first of all, reorders all of the exhibits that had been

7    previously disclosed to us in their initial exhibit list, which

8    renders all of the extensive work that defense counsel has done

9    to date to locate and find and segregate and review any of the

10   exhibits completely mute -- completely moot.

11           Additionally, the list that they provided us is

12   incomplete, as Mr. Jones acknowledges.  I believe it's more

13   than 10 percent incomplete, Your Honor, because one of the

14   things that's a problem is that the list includes the

15   identification of documents that have never been produced to

16   the defendants.  It includes a Bates prefix that's from wholly

17   separate and apart litigation that most counsel here has never

18   been a part of.

19           And I think this goes back to the government's

20   continual attempt to sort of treat us as a whole and impute the

21   knowledge of one counsel or the knowledge of historical counsel

22   to everyone as we get down to trial prep.

23           My firm, for example, was never a part of any

24   production whatsoever.  The government continues to say that

25   counsel has participated in this, that we know what these

1    documents are because we gave it to them.  I don't think that's

2    true of any of our clients, and it's particularly not true of

3    Mr. Larkin.

4          In historical litigation, Backpage has been required

5    to disclose documents to the government, and none of us

6    represent Backpage.  Backpage is not any of our clients.  So

7    the government's exhibit list not only reorders all of the

8    exhibits, is incomplete, it includes things that have never

9    been produced to defendants.  We asked for that information and

10   have yet to get the pre -- the correct Bates prefix so we can

11   find those documents.

12         And finally, I think as we point out in our

13   supplemental status report, some of the documents that are

14   identified as trial exhibits are over 100,000 pages long.

15   We've asked if that can be narrowed down, and we haven't

16   received a response to date.

17         THE COURT:  Well, those are all -- a lot of what you

18   discuss are all little issues that have to be dealt with as you

19   get closer to trial.  But the government's point is is that

20   we're seven months before trial and you already have an exhibit

21   list, which in a case this size is probably appropriate.

22         But let me ask you about renumbering.  Did the

23   renumbering change the Bates numbers?

24         MS. BERNSTEIN:  No, Your Honor.  But the way we

25   operated off of the initial list that was -- well, first of

1    all, I don't know, actually.  The way we operated off the

2    initial list that had been provided is that we would -- we made

3    our best efforts to go through these 10 million pages --

4    10 million-plus pages of documents, find what they were

5    referring to, segregate it and label it by the number that the

6    government provided us as its exhibit.  That's all useless and

7    meaningless.  We have to -- we have to scrap all that and go

8    back to the drawing board on this new list to go through all of

9    it.

10            THE COURT:  I find it hard to believe that that's

11   useless.  If you've segregated it, it's still an exhibit, it's

12   just a different number.  You just to have relabel it.

13            MS. BERNSTEIN:  It requires duplication of all of the

14   work that we've done to date, whether that's because we go --

15            THE COURT:  Well --

16            MS. BERNSTEIN:  I'm sorry.

17            THE COURT:  -- duplicate -- you don't have to

18   re-search for it; right?  You have it.  You just to have

19   change --

20            MS. BERNSTEIN:  Well, what we now need to do is go

21   through everything that we have, to reidentify what the

22   document is and relabel it based on the new exhibit list that

23   the government provided.

24            THE COURT:  Okay.

25            Okay.  So the motion to compel is still pending.

1          I'm going to re-look at the motion to continue trial

2     before I rule on that.

3          I do want to set oral argument on the motion to

4     dismiss.  I know the reply hasn't been filed, but I do want to

5     get it on the calendar so that everybody can plan for it.

6          When is the reply due?

7          MS. BERNSTEIN:  July 17, Your Honor.

8          THE COURT:  So, like, mid August, 45 minutes.

9          COURTROOM DEPUTY:  Okay.

10         THE COURT:  Is anybody out of town in August that I

11    need to know about?

12         MS. BERTRAND:  It may be that my August plans just

13    aren't workable; and if so, I'll ask for coverage counsel.  I'm

14    teaching at the Trial Lawyers' College in Wyoming from August 8

15    to the 15th.  And then I'm teaching for Justice Advocacy Africa

16    in Mombasa, Kenya.  I'll be gone September 23rd through

17    approximately September(sic) 4th.

18         THE COURT:  Okay.

19         MS. BERTRAND:  Thanks.

20         THE COURT:  Anybody else out in August?

21         MR. GRANT:  Yes, Your Honor.  For related proceedings

22    in Sacramento, California, currently a hearing date on a

23    relatively large motion set for August 23rd.  So -- and then

24    the week prior to that is more or less going to be consumed.

25         THE COURT:  Anybody else?

1          MR. CAMBRIA:  Your Honor, Paul Cambria on behalf on

2     Mr. Lacey.

3          I'm troubled by this statement that we're dragging our

4     feet with regard to discovery.  I think that that -- there is

5     no factual basis to say that whatsoever.

6          In our situation, we have remotely accessed the

7     Relativity.  We don't have the same capability remotely that

8     they do if you were there.  We're struggling with that.  I have

9     basically two people nearly full time reviewing discovery in

10    this case.  The sheer volume, the millions of documents that

11    are involved, they're all relevant for us to be familiar with

12    to see whether or not it has relevance to our particular

13    defendant.

14          There's certain things that the government has

15    represented here that aren't true, Your Honor.  I'll give you

16    an example.  The last time we were here they said:  Well, the

17    defense just needs to tell us several discrete documents and so

18    on that they need, and we'll retrieve them for them.  So we

19    did.  And they responded:  No.  Find them yourself.  Or if you

20    have any proof like that, you can introduce it at the trial.

21    So that wasn't true at all.

22          There are a number of items that we've chronicled in

23    our motion and in our status report where they were -- they had

24    access to documents and they didn't disclose them at their

25    deadline for disclosure until several weeks and so on after.

1      It seems to me that one of the things that we have to

2  address, and it's very critical to Mr. Lacey.  And as much as

3  they have focused on him, he has a slight contact to most of

4  the transactions that they're relying on.  And one of the

5  things that I need that's critical to my defense is that I need

6  access to the servers in their original functioning mode.

7      THE COURT:  And Mr. Cambria, I -- that's why I

8  indicated I'm not addressing the servers.  It's -- the subject

9  of the motion to compel I wouldn't be knowledgeable enough

10  without reading the motion and the response to --

11      MR. CAMBRIA:  I under --

12      THE COURT:  -- to discuss it.

13      MR. CAMBRIA:  I understand that.  I'm trying to not be

14  arguing that motion.  But what I'm saying is, part of my

15  discovery, critical discovery, is to have that access so that

16  the things that are in there or not in there will have a huge

17  impact on my client's defense.

18      And, of course, all these emails.  And now they're

19  telling us there are millions of emails that we haven't had

20  access to.  We need these things.  This -- this isn't -- you

21  know -- and I agree with what was said here by Ms. Bernstein.

22  We had no part of production of any of the documents that

23  they're saying, well, you produced them, so you should know

24  what's in them, and so on.  Rule 16 applies to lawyers also, so

25  that there can be effective assistance of counsel.  We need to

1    know what that information was.  We weren't any part of those

2    litigations where those things were produced.  So that's no

3    substitute for what we have to do.

4         We have been working tirelessly, hour after hour after

5    hour trying to make sense of the discovery, trying to read it,

6    trying to get into it and -- and do our job.  And for somebody

7    to say that we're dragging our feet just isn't true.  We're not

8    dragging our feet.

9         THE COURT:  I'm pretty sure I didn't say you were

10   dragging your feet.

11        MR. CAMBRIA:  I'm sorry?

12        THE COURT:  I'm pretty sure I did not say that you

13   were dragging your feet.

14        MR. CAMBRIA:  Okay.

15        THE COURT:  And if it sounded like I did, that's not

16   my intention.  I had concerns based on statements made by

17   defense counsel in the motions about lack of preparation that

18   caused me some concern about the status of -- of -- and it

19   wasn't just me.  Judge Logan asked about it at a status

20   conference in front of him.

21        So that's my only question, is to make sure that

22   everybody understands that just because this -- this pending

23   motion to dismiss doesn't mean everything should just be on

24   hold.

25        MR. NEUMAN:  So, Your Honor, perhaps it's worth us

1    reassuring the Court that it's not on hold, and we are all

2    working very diligently with what we have, and the problem

3    right now is the format in which we have it and the things that

4    we don't have.

5              THE COURT:  Right.  And I believe a lot of that seems

6    to be -- well, I've hoping it will be clarified in the motion

7    to compel.

8              MR. NEUMAN:  It's not everything, Your Honor.  This

9    is -- the motion to compel addresses the most critical, but I

10   think our status -- the supplemental status report probably

11   lays out even more issues that are coming.  And then I think,

12   for a lot of counsel at this table, the finances are a huge

13   issue that are also pending.  So that's not for me to speak to

14   right now, but that's another issue that's inhibiting the

15   preparation.

16             But everybody is doing, I think -- I don't want to

17   speak for everybody -- but everybody is working as diligently

18   as they can and we are preparing right now with the deadlines

19   in mind.  But with the -- I think we've asked in the status

20   report for a six-month continuance because of all of the issues

21   that have arisen.  So we're not waiting on the motion to

22   dismiss.  We have a lot of faith in it, but obviously there's

23   more happening here.

24             THE COURT:  And I think -- is the July 9th oral

25   argument in California, does that affect the finances; did

1    someone say that in the status report?

2         MS. BERNSTEIN:  That is where we believe -- I mean,

3    that's where we intend to argue about a lot of what's been

4    going on with the government's pretrial seizures.  We do hope

5    and anticipate that a ruling from the Ninth Circuit following

6    oral argument would clarify some of these issues.  But we don't

7    know when that ruling would come.  We would hope that that

8    would come by the fall, but we don't know.

9         And what's on appeal, Your Honor, procedurally for

10   clarification, is that it's the appeal of a hearing that was

11   stayed.  So procedurally the Ninth Circuit, should we prevail,

12   is likely to remand to it the District Court.

13        THE COURT:  And you're still pending a ruling from one

14   of the District Courts; right?

15        MS. BERNSTEIN:  We are, Your Honor.  There's still

16   cases pending before Magistrate Judge Oliver in the Central

17   District.  Those matters -- I'm not -- I don't believe are

18   technically consolidated into the Ninth Circuit appeal, though

19   many of the fundamental issues that underlie the infirmities of

20   the government seizures were replicated in the seizures of

21   attorney IOLTA funds, but those are still pending before Judge

22   Oliver.

23        MR. GRANT:  Your Honor, if I might.

24        THE COURT:  Yes.

25        MR. GRANT:  Just a brief word about the Ninth Circuit

1   appeal.

2          Ms. Bernstein and Mr. Neuman are correct.  The

3   fundamental question in the Ninth Circuit appeal is whether the

4   government's seizures of essentially all the assets they could

5   find of all the defendants is permissible under the First

6   Amendment under the Constitution.  And we're hopeful -- we

7   fully -- firmly believe that the Ninth Circuit should rule that

8   the seizures were improper.  That does, of course, directly go

9   to the question of the resources the defendants have to defend

10  the case.

11         THE COURT:  Okay.

12         So with respect to oral argument on the motion --

13         MR. KOZINETS:  Your Honor?  Pardon me.  Peter Kozinets

14  for the government.

15         THE COURT:  Okay.

16         MR. KOZINETS:  With respect to oral argument on the

17  motion to dismiss --

18         THE COURT:  Yeah.

19         MR. KOZINETS:  -- we do have a scheduling conflict the

20  week of August 26th.

21         THE COURT:  Okay.  August 26th, Monday.  Okay.

22         What about August 9th at 10:00?  I think that doesn't

23  interfere with anything.

24         MS. BERTRAND:  Judge, I'm sorry.  I pulled up my

25  calendar because I had a nagging suspicion I misspoke about

1     my -- let me just make sure I have the correct month.

2             Oh, I'll sit down.  The 19th is fine.  Sorry.  That's

3     fine.

4             THE COURT:  Okay.

5             MS. BERTRAND:  Excuse me.

6             MR. GRANT:  I think I'm the one with the most direct

7     conflict of that, Your Honor, because of the hearing on the

8     23rd and the breadth of that and scope of that hearing.  My

9     request would be to push it out after that, although I

10    understand the government's conflict for the 26th, the week of

11    the 26th, so that would push it out further than that.  But I

12    think that's the principal issue we have collectively.

13            THE COURT:  Was your conflict just on the 26th or that

14    whole week?

15            MR. KOZINETS:  It was -- it was that week, Your Honor.

16            THE COURT:  Well, my preference would be to move it

17    earlier.

18            Which -- what about August 7th in the afternoon?  Oh,

19    wait.  No, she's leaving.

20            COURTROOM DEPUTY:  Yeah.  Uh-huh, yeah.

21            THE COURT:  In the morning?

22            COURTROOM DEPUTY:  In the morning?

23            Yeah.  I mean, it's just a busy afternoon, but that's

24    okay.

25            THE COURT:  August 5th at 10:00?

1          MR. GRANT:  Of the choices, Your Honor, I would prefer

2     going the 19th as opposed to the 5th because, if you

3     remember -- recall, we just set the motion to compel briefing

4     that goes up to the 5th, so that would cram us at that end.

5          THE COURT:  Oh.

6          MR. GRANT:  So I may -- given -- if those are the

7     Court's preferences, the 19th is preferable.  It just means it

8     sort of compresses the time we have available for the

9     California proceedings, but we can deal with that as best we

10    can.

11         THE COURT:  All right.

12         MR. KOZINETS:  The 19th is better for the government

13    as well, Your Honor.

14         THE COURT:  Okay.  Well, we'll do it on the 19th at

15    10:00.  It's in the morning, so at least by the afternoon

16    you'll be free to work on the California.

17         MR. GRANT:  Thank you, Your Honor.

18         THE COURT:  So August 19th at 10:00, and I'm setting

19    it for 45 minutes.  I've found that oral argument any longer

20    than that is not particularly helpful, and I will try to have

21    some precise questions for you.

22         All right.  I don't have anything else.

23         Does the government have any other questions that you

24    want to raise now?

25         MR. JONES:  No, Your Honor.

1          THE COURT:  Any --

2          MR. NEUMAN:  Your -- Your Honor, Ms. Bernstein is just

3    pointing out, we have disclosure deadlines coming up here that

4    we need to deal with.

5          THE COURT:  Which ones?

6          MR. NEUMAN:  Go ahead, Ms. Bernstein.

7          MS. BERNSTEIN:  Your Honor, in reference to the

8    scheduling order that's at docket -- document 131, prior to

9    coming to the Court on August 19th, there are a number of

10   deadlines that have been set, including a substantive motions

11   deadline, disclosure deadlines of exhibits and witnesses, and

12   Rule 26.2 government rebuttals, motions in limine,

13   Court-imposed plea offer, jury questionnaire and screening, and

14   responses to the motions in limine.

15         THE COURT:  Okay.  A lot of those I am willing to move

16   because they're more trial-related, and I know Judge Logan set

17   the final trial management conference three months in advance

18   of the start of trial.  So I think -- do you have it up, Traci?

19         COURTROOM DEPUTY:  I do.

20         THE COURT:  Do you have a printer in here?  Can you

21   print it?

22         COURTROOM DEPUTY:  I can print it, uh-huh.

23                   (Pause in proceedings.)

24         THE COURT:  Okay.  So for right now, I'm going to

25   vacate the motions in limine deadline, the jury questionnaire

UNITED STATES DISTRICT COURT

1    and screening deadline, the responses to the motion in limine;

2    and I'll reset those, depending on how I rule on the motion to

3    continue, because if I deny the motion to continue, I'll just

4    move it out closer to the trial date.  I don't have a problem

5    with moving that.

6              I'm not going to move the preliminary exhibit and

7    witness list because it is preliminary, and it's not -- it's

8    not set in stone.  There's always, in any case, sort of ongoing

9    disclosures.

10             So that being said, for the two defendants that have

11   new counsel, Padilla and Vaught, I understand why you might not

12   be able to do that because you're so new.

13             MS. BERTRAND:  Uh-huh.

14             THE COURT:  So I'm referring it for all defendants,

15   except Padilla and Vaught.  And if you -- after I rule on your

16   motion, I'll include some deadlines in there.

17             The substantive motions deadline and the government's

18   rebuttal -- well, I'll leave the government's rebuttal deadline

19   because I'm affirming their deadline for the preliminary

20   exhibit and witness list.

21             The substantive motions deadline will be affected by

22   my ruling on the motion to continue.  So we're at -- I'm going

23   to affirm it right now, and I'll highlight it for comments in

24   my ruling on the motion to continue trial.

25             And all the other September dates I'll either affirm

1    on the ruling on the motion to continue trial, or move it.

2            Yes?

3            MR. NEUMAN:  Thank you, Your Honor.

4            Just to note, the substantive motions deadline, I

5    think, would likely -- the substantive motions would likely be

6    affected both by the ruling on the motion to dismiss, assuming

7    it's not fully granted, and then the motion to compel as well,

8    depending on what happens with those servers, if -- if the --

9    there's a lot of issues to play out.  I don't want to take the

10   Court through it all now.

11           THE COURT:  Right.

12           MR. NEUMAN:  So I just want to flag that, and I think

13   that those will obviously also affect our exhibit and witness

14   list.  We can deal with that since it's only preliminary.  But

15   the substantive motions deadline I am concerned about,

16   subject -- understanding the Court may continue it in light of

17   the motion to continue the trial.

18           THE COURT:  Okay.  Does the government want to be

19   heard?

20           MR. RAPP:  Well, just on the -- on the 26.2

21   statements, the -- if the Court recalls, those were delayed for

22   the defense, pending the resolution of some of these motions.

23   It sounds as if the Court is keeping with the July 1st date for

24   the defense to disclose a preliminary exhibit and witness list.

25   They also should have to disclose the 26.2 statements that

1    would go with those witnesses on the exhibit -- witness list.

2         MS. BERNSTEIN:  Your Honor, I think part of the

3    problem is that, you know, until we have a lot of this

4    discovery that's outstanding, including particularly this

5    gigantic bucket of the outstanding Jencks Act materials that we

6    anticipate receiving tomorrow, we just -- it's difficult for us

7    to identify the evidence we intend to produce, the witnesses we

8    intend to put on, the investigation that we need to do.  I

9    mean, we anticipate getting a lot of that discovery, conducting

10   a review of what we expect to be voluminous Jencks Act

11   statements, and then being able to react from there.

12        So understanding the Court indicating that these are

13   tentative preliminary lists, we can endeavor to do our best to

14   respond to it.  We're just hampered by the state of discovery,

15   our lack of Jencks material.  If we receive that tomorrow, it's

16   unlikely that we're in a position to have reviewed all of it

17   and responded to all of it by next week, which is what a

18   July 1st deadline does.  If that's what the Court sets, we'll

19   obviously do our best to do that for both Rule 26.2 as well as

20   exhibit and witness list.  But that's -- especially within the

21   context of the sort of the limited of resources that we have

22   available to us right now, the significant arrears that many of

23   our clients find themselves in, and trying to also continue

24   litigating the motion practice in this case.  So I think that's

25   a bit of our difficulty in meeting some of these deadlines.

1    That said, of course, we'll endeavor to do the best that we

2    can, as we have been doing with discovery review.

3            THE COURT:  Okay.  And as I indicated, I'm affirming

4    that date because it's preliminary, and the case has been

5    pending for quite a while.

6            I understand there are some lapses in disclosure,

7    which would, of course, be a reason for disclosure later of new

8    witnesses and new exhibits.  But what you have right now needs

9    to be disclosed, including the Rule 26.2 for any of the

10   witnesses, which is preliminary and can always be updated --

11   well, not always.  But up to a certain point it can.

12           Yes?

13           MR. NEUMAN:  One last thing, Your Honor, from me.

14           It might be useful to put a date on calendar for the

15   motion to compel while we're all here.  Just a suggestion.  If

16   we -- maybe sometime in early September.

17           THE COURT:  I don't have a problem with that.  What --

18   let's see.

19           MR. GRANT:  Your Honor --

20           THE COURT:  What did we set for the reply date on

21   that; was that August 5th?

22           COURTROOM DEPUTY:  August 5th.

23           MS. BERNSTEIN:  Yes, Your Honor.

24           THE COURT:  Okay.

25           MR. GRANT:  And given -- taking into account that the

1    government has said that they aren't available the week of

2    August 26th, I was going to suggest September 6th.  We already

3    have the hearing date set on the motion to dismiss preceding

4    that, so...

5              THE COURT:  September 6th.

6              MR. GRANT:  Friday?

7              MR. JONES:  Your Honor, the government has a conflict

8    on the 6th.  If there's any way to move it to the next week

9    or...

10              MR. GRANT:  The other -- we could move it forward,

11    too.  September 5th.

12              MR. JONES:  I can't do the 5th as well.

13              MR. GRANT:  All right.

14              THE COURT:  Okay.  Can you do any time that week?

15              MR. JONES:  Yes.  Yeah.  Any day that week.

16              COURTROOM DEPUTY:  Monday is a holiday.

17              MR. GRANT:  Except for the 5th and 6th, is what you're

18    saying.

19              MR. JONES:  She asked about the week of the 9th.

20              MR. GRANT:  Oh, I'm sorry.  I thought --

21              THE COURT:  No, no, no.  I was asking about the week

22    of the 6th.

23              MR. JONES:  Oh, okay.

24              THE COURT:  The 2nd through the 6th.

25              MR. JONES:  Yeah.  We can -- I can --

1          THE COURT:  I can go into the following week.

2          MR. JONES:  Yeah.  The following week would be best,

3     Your Honor, because I'll be --

4          THE COURT:  Is that problematic for you, Mr. Grant?

5          MR. GRANT:  I don't believe so, Your Honor.  I can't

6     speak -- I can't speak for everyone on this side of the table.

7          THE COURT:  Well, okay.  So let me just suggest the

8     13th.  September 13th.

9          MR. GRANT:  September 13th?  Thursday, the 13th?  I'm

10    sorry, Friday, the 13th?

11         THE COURT:  I think it's Friday, yeah.

12         MR. GRANT:  No, Your Honor, not Friday, the 13th.

13         THE COURT:  Oh.

14              (Laughter in the courtroom.)

15         MR. GRANT:  That's fine.  I'm kidding.

16         THE COURT:  Anybody else going to be out of town or

17    anything?

18         Okay.  Traci, does 11 o'clock --

19         COURTROOM DEPUTY:  Yeah.

20         THE COURT:  11 o'clock on September 13th, for oral

21    argument on the motion to compel.

22         MR. JONES:  Thank you, Your Honor.

23         MR. GRANT:  Thank you, Your Honor.

24         COURTROOM DEPUTY:  Forty-five minutes, Judge?

25         THE COURT:  Thirty.

1    I'm going to set it for 30 minutes with the thought

2    that if there are other issues that we need to discuss, we'll

3    have the extra half-an-hour.

4    And the same with the argument on the motion to

5    dismiss.  I set it at 10:00 so that if there's something else

6    that comes up -- there seems to be a lot of moving parts --

7    that we can always deal with it on those two dates.  Okay?

8    Anything else?

9    MR. JONES:  Nothing from the government.

10    THE COURT:  Okay.  All right.  Thank you.

11    Court in recess.

12    MR. NEUMAN:  Thank you, Your Honor.

13    (Proceedings in recess at 12:10 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

## C E R T I F I C A T E

2

3        I, CHARLOTTE A. POWERS, do hereby certify that I am

4   duly appointed and qualified to act as Official Court Reporter

5   for the United States District Court for the District of

6   Arizona.

7        I FURTHER CERTIFY that the foregoing pages constitute

8   a full, true, and accurate transcript of all of that portion of

9   the proceedings contained herein, had in the above-entitled

10  cause on the date specified therein, and that said transcript

11  was prepared under my direction and control.

12        DATED at Phoenix, Arizona, this 24th day of July,

13  2019.

14

15                          s/Charlotte A. Powers
                            Charlotte A. Powers, RMR, FCRR
16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT