MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-18-422-PHX-SMB |
|---|---|
| Plaintiff, | **UNITED STATES' RESPONSE TO JOHN BRUNST'S MOTION TO COMPEL GOVERNMENT COMPLIANCE WITH COURT'S ORDER FOR SPECIFIC IDENTIFICATION OF DOCUMENTS SUBJECT TO PROTECTIVE ORDER [Doc. 740]** |
| v. | |
| 1. Michael Lacey, et. al. | |
| Defendants. | |

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant John Brunst's motion to compel is unavailing for several reasons and should be denied. *First*, this motion stems from the recent publishing of excerpts of inadvertently disclosed internal memoranda previously ordered destroyed by the Court that

caused the government going forward to seek a protective order over sensitive government discovery. It is noteworthy that a week after the hearing on August 19, 2019, the same internal memoranda were published in two different online magazines, in their entirety, complete with the government's Bates numbers.[1] These latest disclosures further underscore the need for restrictions on the dissemination of government discovery.

*Second*, the Court recently clarified the scope of the September 20, 2019 Protective Order regarding Jencks Act material by limiting it to "an interview memorandum of Carl Ferrer, *all* civil discovery material that remains under the Protective Order and other Jencks Act materials not publicly available." (Doc. 737 (emphasis added).) [2]

*Third*, in response to Brunst's concerns about emails and documents that might have been filed in other cases, the Court indicated at the September 13, 2019 hearing that, "I'm not willing to remove from that order anything other than to say publicly available information." (9/13/19 Hr'g Tr., Exh. A at 15, lines 2-4.) Despite the Court's clarification, Brunst has filed a motion to compel that is, in light of the Court's previous rulings, utterly unclear about what it's asking the government (and the Court) to further clarify. It appears the defense's primary grievance is that it should not be required to check the dockets in two civil cases (*Dart* and *McKenna)* to determine what documents were publicly filed.

In sum, this motion should be denied and the Court should simply reiterate its Order that if the defense believes a document should be removed from the Protective Order, the defense should first be required to confer with the government and, if unsatisfied with the response, and as the Court directed, the defense should file a pleading with a designation of the specific documents so that the Court may rule on whether the documents are subject to the Protective Order.

---

[1] https://reason.com/2019/08/26/secret-memos-show-the-government-has-been-lying-about-backpage/; https://www.techdirt.com/articles/20190826/17065842857/new-government-documents-reveal-that-backpage-was-actively-helping-law-enforcement-track-down-traffickers.shtml.

[2] It is likely the Court meant *a* protective order (referring to protective orders imposed in parallel civil cases) rather than *the* protective order.

**RELEVANT PROCEDURAL FACTS**

On August 19, 2019 the Court orally granted the government's request for a Protective Order and on August 20 issued a Protective Order. (Doc. 730.) On September 3, 2019, pursuant to the Order, the government provided Defendants a spreadsheet that detailed 51 documents by Bates number and description. (*See* Doc. 740-1 at 3-7.)

On September 13, 2019, by email, Defendants sought clarification of what materials are subject to the Protective Order. (*See* Doc. 740-1 at 23-24.) In response, the Court issued a minute entry stating that, "the Court's order with respect to limitations on Jencks Act material is clarified that that order is limited to the government's interview memoranda of Carl Ferrer, *all civil discovery material that remains under a protective order*…." (Exh. A, 9/13/19 Hr'g Tr. at 13, lines 17-21 (emphasis added).) Indeed, the Court indicated (at the September 13, 2019 hearing) that "I'm not willing to remove from that order anything other than to say publically available information." (Exh. A, 9/13/19 Hr'g Tr. at 15, lines 2-4.) Importantly, the Court further directed the defense that "if there is something else that should be removed from the protective order, then…you need to file something specific with that designation so that I can make that determination." (Exh. A, 9/13/19 Hr'g Tr. at 15, lines 2-8.) Following this hearing, on September 24, 2019, Brunst filed a Motion to Compel claiming that the government is refusing to identify what documents must be protected from dissemination. (Doc. 740)

**ARGUMENT**

The government has provided the defense a list of Jencks Act documents (and other sensitive documents) that are subject to the Protective Order. (Doc. 740-1 at 3-5.) In response, the defense has questioned whether certain materials should even be subject to Protective Order, stating that "these are not properly subject to the protective order…because they are all available to any number of other parties and/or are publicly available…." (Doc. 740-1 at 9.) On September 23, the government responded in an effort to clarify the government's position that many emails are not, in fact, publicly available. Moreover, consistent with the Court's ruling on September 13, documents produced in the

various civil cases where Backpage was a defendant (that have been reproduced in discovery in this case) should be subject to the Protective Order if the documents are not publicly filed.[3] In addition, the government specifically exempted the January 2017 report of the U.S. Senate Permanent Subcommittee on Investigations, BACKPAGE.COM'S KNOWING FACILITATION OF ONLINE SEX TRAFFICKING, because the report and its accompanying appendix (which consists primarily of internal Backpage emails) are posted on the Subcommittee's website.

As for the array of civil cases the government is concerned (in light of the recent publication of internal memoranda ordered destroyed) with various victim statements and other related sensitive documents. And, in many of these parallel civil cases the discovery was subject to a protective order. In sum, if those statements are not publicly filed they are subject to the Protective Order in this case.

Despite the government's efforts to clarify what documents are subject to the protective order, Brunst has filed a motion complaining that Defendants are burdened with looking up the docket on PACER before they disseminate a document. (Doc. 740 at 5.) He focuses on two civil cases (*Dart* and *McKenna*.)[4] Both cases were prosecuted by lawyers from Davis Wright Tremaine ("DWT"), the same law firm that represents two of Brunst's co-Defendants in this case.[5]

---

[3] For example, the Backpage defendants have received discovery from cases brought by underage sex trafficking victims against Backpage including: J.*S., v. Village Voice Media Holdings*, No.12-2-11362-4, *Jane Doe, v. Medalist Holdings*, et. al., NoMCC1700068, and *R.O. and K.M. v. Medalist Holdings, Inc., et al*., No. 17-2-04897-1 (Wash. Super. Ct.).

[4] In McKenna, Backpage was the Plaintiff seeking injunctive relief against a law passed in Washington State (*Backpage.com, LLC* v.*McKenna,* 881 F. Supp. 2d 1262 (W.D. Wash. 2012)). In *Dart v. Craigslist, Inc. ,* 665 F. Supp.2d 961, 962-63, 967-68 (N.D. Ill. 2009), Backpage sought to enjoin Sherriff Thomas Dart from encouraging credit card companies (primarily Visa and Mastercard) from blocking Backpage customers' use of the cards as payment for posting ads.

[5] The *Dart* case has since been dismissed and $250,000 in sanctions have been imposed against Backpage for, among other things, misleading the court about Backpage's internal business practices. The current motion to reconsider sanctions against the attorneys for DWT is pending.

In any event, neither *Dart* nor *Mckenna* have lengthy dockets. *Dart* has 274 docket entries and *McKenna* has 87.[6] In contrast, this case has nearly 800. To determine if a document is publicly filed, one has only to press "Control-F", type the name of the document and voilà! – if it is on the docket it will appear. As a result, it is neither unreasonable nor unduly burdensome for counsel to consult the dockets in either case or consult with co-counsel to determine whether a particular document has been publicly filed.

Lastly, there are numerous other cases across the country where the plaintiffs are underage sex trafficking victims (or family members of deceased victims) that sued one or more of the Defendants in this case.[7] It is in these cases that the discovery is subject to protective orders. The plaintiffs in these cases are expected to testify in the May 2020 trial here. The government has obtained police reports, recorded statements of interviews, depositions, copies of posted ads, etc. that were used in those cases. Brunst complains that he was not party to those cases and is not familiar with the pleadings. This is disingenuous at best. First, his co-counsel (DWT) were attorneys in those cases, and as noted in previous pleadings Brunst is in a joint defense agreement with DWT and has joined numerous motions filed by DWT. Brunst's interests at the recent Ninth Circuit argument in Pasadena were represented by DWT. Moreover, Brunst was intimately familiar with the various civil cases filed against Backpage because as a percentage owner of Backpage and the architect of the concealment money laundering scheme, the outcome of the cases would impact his financial interests. In any event, if Defendants have questions about whether particular documents are public, Defendants should confer with the government before designating the document for the Court's ultimate determination of whether it is subject to the Protective Order.

---

[6] *See* PACER dockets for *Backpage.com, LLC v. Dart*, 15-CV-6340 (N.D. Ill), and *Backpage.com, LLC v. McKenna*, 2012-CV-954-RSM (W.D. Wash).

[7] *Ambrose v. Backpage.com LLC*, et, al., 1:2017cv05081. Again, this case is defended by, among other attorneys, DWT (Grant and Corn-Revere).

|   |   |
|---|---|
| 1 | Respectfully submitted this 8th the day of October, 2019. |
| 2 | MICHAEL BAILEY |
| 3 | United States Attorney<br>District of Arizona |
| 4 | *S/Kevin M. Rapp* |
| 5 | KEVIN M. RAPP<br>MARGARET PERLMETER |
| 6 | PETER S. KOZINETS<br>ANDREW C. STONE |
| 7 | JOHN J. KUCERA<br>Assistant U.S. Attorneys |
| 8 | BRIAN BENCZKOWSKI |
| 9 | Assistant Attorney General<br>Criminal Division, U.S. Department of Justice |
| 10 | REGINALD E. JONES |
| 11 | Senior Trial Attorney<br>U.S. Department of Justice, Criminal Division |
| 12 | Child Exploitation and Obscenity Section |

**Certificate of Service**

I hereby certify that on October 8, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*S/ Angela Schuetta*_____
Angela Schuetta
U.S. Attorney's Office

# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CR-18-0422-PHX-SMB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | September 13, 2019 |
| Michael Lacey, | ) | 11:02 a.m. |
| James Larkin, | ) | |
| Scott Spear, | ) | |
| John Brunst, | ) | |
| Andrew Padilla, | ) | |
| Joye Vaught, | ) | |
| Defendants. | ) | |

BEFORE:   THE HONORABLE SUSAN M. BRNOVICH, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTIONS HEARING

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1  them.  There is a few issues with that.
2      One, I haven't done a careful review, but I don't
3  believe that the Bates numbers of the missing documents are
4  sequential, meaning that they're -- and I haven't checked this,
5  but I think that's right -- that, presumably, there is a whole
6  host of other documents with in between Bates numbers that they
7  haven't produced to us, so I think we need clarification on
8  that, first.
9      Second, there is a big issue, and that is, again, the
10 government missing a deadline that the Court imposed.  And
11 without explanation, suddenly we're told, oh, thanks for
12 telling us we missed this, even though they've designated it.
13 I think the Court should inquire as to what happened here, and,
14 again, determine whether sanctions are appropriate.  So those
15 are the two issues that I see with the first -- with the first
16 matter I raised in my first paragraph, given Mr. Jones'
17 response today.
18     Second, I appreciate that he has said that they agree
19 to the second item, that, basically, our request is that the
20 protective order only cover the Carl Ferrer interview
21 memoranda.  And I just want to be clear that that is the
22 request since the e-mail is not in the record.  I want to be
23 clear that that was the request.  And it appears he agrees,
24 other than the civil discovery documents that are subject to a
25 protective order.

1    It's interesting, those, apparently, were produced to
2  us without the -- without the Court's -- this Court's
3  protective order, without any designation that they're subject
4  to some other protective order, yet this is the first time
5  we're being told. So there is just an issue, we didn't even
6  know that until, literally, today, as far as I know, but I'm
7  glad he agreed on that.
8    On the third issue, I, quite frankly, take issue with
9  what Mr. Jones said. I think he skated over a number of issues
10 here. First of all, I am troubled that only -- certain
11 documents are only being produced to one of my colleagues here.
12 Just because they get it, doesn't mean the rest of us get it.
13   Number two, if they did produce the plea agreement,
14 there is, as I understand the practice, a cooperation addendum,
15 which we don't have, a transcript, which we don't have, and all
16 of the proffer letters that are referenced in the -- in the
17 Carl Ferrer interview memoranda, that we don't have. So there
18 is a number of things that Mr. Jones, apparently, thinks that
19 they've produced, which I can represent to the Court I don't
20 have. Maybe somebody else does, we don't have them, and I'd
21 ask that they be produced forthwith.
22   Third, on the last issue, I think it's important for
23 the Court to understand what we're talking about when we refer
24 to documents that are referenced in the Carl Ferrer interview
25 memoranda. These are the recently produced documents that the

1  it via e-mail with them before we come to the Court, but it
2  seems like there is a discovery problem here with the most
3  basic documents, which are their interview memoranda.  So I
4  would ask that each of these issues we need to address, because
5  there is, apparently, missing Bates out there, missing
6  discovery out there, and a number of things related to
7  Mr. Ferrer's statements, which I can tell the Court after
8  reviewing them, I am thankful that the Court ordered them
9  disclosed when it did, because there is a lot of issues in
10 there that we'll raise in subsequent pleadings.
11         THE COURT:  Okay.
12         MR. NEUMAN:  Thank you.
13         THE COURT:  So with respect to these issues, with the
14 first issue, obviously, when you get your FedEx packages, if
15 something is missing, you should discuss it with the
16 government.
17         With respect to the second issue, the Court's order
18 with respect to limitations on Jencks Act material is clarified
19 that that order is limited to the government's interview
20 memoranda of Carl Ferrer, all civil discovery material that
21 remains under a protective order, but that only relates to the
22 Carl Ferrer, because there is other Jencks material, correct?
23         MR. JONES:  That's correct, Your Honor.  For Daniel
24 Hyer as well, Your Honor.  The government, just to reiterate,
25 you know, anything that's publically available, as Mr. Neuman

1   and where we have limits and where we don't have limits.
2          THE COURT:  Okay.  Well, I'm not willing to remove
3   from that order anything other than to say publically available
4   information.  So if you think there are -- I haven't seen the
5   list that you're talking about -- so if you think there is
6   something else that should be removed from the protective
7   order, then I guess you need to file something specific with
8   their designation so that I can make that determination.
9          MR. NEUMAN:  It would be helpful, Your Honor, if the
10  Court could order the government to tell us what do they think
11  is publically available so that they're designating what they
12  think falls under the protective order.
13         THE COURT:  They gave you a list, from what I'm
14  understanding.  They already gave you the list of what they
15  think is Jencks material.
16         Is that accurate, Mr. Jones?
17         MR. JONES:  Yes, Your Honor.  What we will do is we'll
18  review the list we gave them.  If there are additional
19  documents, we will make defendants aware that, you know, by
20  Monday, end of -- close of business Monday of next week just so
21  we're clear, but we believe all the documents on the list were
22  the documents that we believe should be subject to the
23  protective order.  But there are also some victim statements
24  that may not be a part of that list that we want to -- we would
25  like to clarify, and we'll do that by the close of business

1  stated, we don't object to those documents not being a part of
2  the protective order. But if they aren't publically available,
3  you know, the government believes that, you know, those
4  documents should fall under your current order.
5          THE COURT: Yeah. I think I should rephrase it the
6  other way.
7          MR. NEUMAN: The only issue, Your Honor, is if it's
8  Mr. Ferrer's interview memoranda and Mr. Hyer's interview
9  memoranda, that's clear. If it's some sort of vague whatever
10 is not publically available, this becomes much more
11 problematic, because, just as an example, among the documents
12 they've designated are e-mails. Those e-mails may well have
13 been available to third parties, so any controls that the Court
14 puts in place on them limit us to say they are out there in the
15 ether somewhere, somebody comes back and says we violated the
16 court order, so that's number one.
17         Number two, they may have been filed in other cases, I
18 don't know. I've been involved only in this criminal case.
19 And so to the extent that the government is saying only
20 publically available, I think we need a specific designation.
21 And I think they agreed earlier to what we requested, which was
22 Carl Ferrer's interview memoranda. They want to add
23 Mr. Hyer's, I understand that, and it needs to be specific.
24 And that's been the issue here is they've given us this big
25 list, and it's very difficult to know what we're talking about

1   next Monday with them.

2           MR. NEUMAN:  This is the problem, Your Honor.  He's
3   not actually agreeing to what -- he's saying, basically,
4   they're going to designate Jencks material.  What we need --
5   and what he's just said includes -- I'll just tell the Court --
6   a Netflix documentary transcript.  So it can't be that
7   everything on their list falls within the protective order.
8   The Court just somewhat clarified by saying not publically
9   available documents.  It would be very helpful -- the
10  government is in the best position to tell us what do they
11  think needs to be under the protective order.  If we need to
12  fight about it, we'll fight about it; if we don't, we don't.
13  But they're creating this list of what they think is Jencks.
14  They're the ones who know who is going to testify.  They know
15  what -- they think they know what qualifies as Jencks.  They
16  should tell us what needs to be protected.

17          THE COURT:  They just did.  You disagree with it.

18          MR. NEUMAN:  But so does the Court.

19          THE COURT:  That's their position.

20          MR. NEUMAN:  But the Court just ruled against --
21  sorry.

22          THE COURT:  I haven't seen the list.  So they said
23  this is what they want protected.  You're telling me there is
24  things that shouldn't be protected.  So what I just said is
25  this e-mail is not sufficient for me to rule on, if you want

Case 2:18-cr-00422-SMB   Document 767-1   Filed 10/08/19   Page 9 of 10

16

next Monday with them.

MR. NEUMAN: This is the problem, Your Honor. He's not actually agreeing to what -- he's saying, basically, they're going to designate Jencks material. What we need -- and what he's just said includes -- I'll just tell the Court -- a Netflix documentary transcript. So it can't be that everything on their list falls within the protective order. The Court just somewhat clarified by saying not publically available documents. It would be very helpful -- the government is in the best position to tell us what do they think needs to be under the protective order. If we need to fight about it, we'll fight about it; if we don't, we don't. But they're creating this list of what they think is Jencks. They're the ones who know who is going to testify. They know what -- they think they know what qualifies as Jencks. They should tell us what needs to be protected.

THE COURT: They just did. You disagree with it.

MR. NEUMAN: But so does the Court.

THE COURT: That's their position.

MR. NEUMAN: But the Court just ruled against -- sorry.

THE COURT: I haven't seen the list. So they said this is what they want protected. You're telling me there is things that shouldn't be protected. So what I just said is this e-mail is not sufficient for me to rule on, if you want

1  anything more specific than things that are public are not
2  protected.  So all you need to do is send me the list with your
3  motion saying this is what I don't think should be protected
4  and here's why.
5      MR. NEUMAN:  Just so the Court knows, it is attached
6  to the e-mails, but if the Court -- I know the Court only got
7  it yesterday, so, understood, and we can do that.  We can
8  provide the specifics to the Court after we confer with the
9  government further.
10     It would be their -- their spreadsheet was attached.
11     THE COURT:  Oh, okay.  I do see an attachment, but
12 that's not going to tell me which specific things, unless you
13 think they're just -- unless you think your e-mail paragraph is
14 specific enough.
15     MR. NEUMAN:  It, essentially, covers everything on
16 their list, Your Honor, so.  Your Honor, if the Court prefers,
17 we can file something.  That's easy enough.
18     THE COURT:  Okay.
19     MR. NEUMAN:  Because there is declarations, there is
20 trial testimony, there is, as I said, a Netflix documentary
21 transcript.  If the government is going to stand on the
22 position that that's all subject to the protective order, we'll
23 have to deal with it specifically, I guess.  We'll confer with
24 Mr. Jones and see if he changes his position.
25     THE COURT:  With respect to the third issue which