# Exhibit A

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR-18-0422-PHX-SMB |
| Plaintiff, | )<br>) | |
| vs. | )<br>) | Phoenix, Arizona<br>September 13, 2019 |
| Michael Lacey, | ) | 11:02 a.m. |
| James Larkin, | ) | |
| Scott Spear, | ) | |
| John Brunst, | ) | |
| Andrew Padilla, | ) | |
| Joye Vaught, | ) | |
| Defendants. | ) | |
| | ) | |

**BEFORE:   THE HONORABLE SUSAN M. BRNOVICH,  JUDGE**

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

## MOTIONS HEARING

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1   them.   There is a few issues with that.

2          One, I haven't done a careful review, but I don't

3   believe that the Bates numbers of the missing documents are

4   sequential, meaning that they're -- and I haven't checked this,

5   but I think that's right -- that, presumably, there is a whole

6   host of other documents with in between Bates numbers that they

7   haven't produced to us, so I think we need clarification on

8   that, first.

9          Second, there is a big issue, and that is, again, the

10  government missing a deadline that the Court imposed.   And

11  without explanation, suddenly we're told, oh, thanks for

12  telling us we missed this, even though they've designated it.

13  I think the Court should inquire as to what happened here, and,

14  again, determine whether sanctions are appropriate.   So those

15  are the two issues that I see with the first -- with the first

16  matter I raised in my first paragraph, given Mr. Jones'

17  response today.

18         Second, I appreciate that he has said that they agree

19  to the second item, that, basically, our request is that the

20  protective order only cover the Carl Ferrer interview

21  memoranda.   And I just want to be clear that that is the

22  request since the e-mail is not in the record.   I want to be

23  clear that that was the request.   And it appears he agrees,

24  other than the civil discovery documents that are subject to a

25  protective order.

1          It's interesting, those, apparently, were produced to

2   us without the -- without the Court's -- this Court's

3   protective order, without any designation that they're subject

4   to some other protective order, yet this is the first time

5   we're being told.  So there is just an issue, we didn't even

6   know that until, literally, today, as far as I know, but I'm

7   glad he agreed on that.

8          On the third issue, I, quite frankly, take issue with

9   what Mr. Jones said.  I think he skated over a number of issues

10  here.  First of all, I am troubled that only -- certain

11  documents are only being produced to one of my colleagues here.

12  Just because they get it, doesn't mean the rest of us get it.

13         Number two, if they did produce the plea agreement,

14  there is, as I understand the practice, a cooperation addendum,

15  which we don't have, a transcript, which we don't have, and all

16  of the proffer letters that are referenced in the -- in the

17  Carl Ferrer interview memoranda, that we don't have.  So there

18  is a number of things that Mr. Jones, apparently, thinks that

19  they've produced, which I can represent to the Court I don't

20  have.  Maybe somebody else does, we don't have them, and I'd

21  ask that they be produced forthwith.

22         Third, on the last issue, I think it's important for

23  the Court to understand what we're talking about when we refer

24  to documents that are referenced in the Carl Ferrer interview

25  memoranda.  These are the recently produced documents that the

1   it via e-mail with them before we come to the Court, but it

2   seems like there is a discovery problem here with the most

3   basic documents, which are their interview memoranda.  So I

4   would ask that each of these issues we need to address, because

5   there is, apparently, missing Bates out there, missing

6   discovery out there, and a number of things related to

7   Mr. Ferrer's statements, which I can tell the Court after

8   reviewing them, I am thankful that the Court ordered them

9   disclosed when it did, because there is a lot of issues in

10  there that we'll raise in subsequent pleadings.

11          THE COURT:  Okay.

12          MR. NEUMAN:  Thank you.

13          THE COURT:  So with respect to these issues, with the

14  first issue, obviously, when you get your FedEx packages, if

15  something is missing, you should discuss it with the

16  government.

17          With respect to the second issue, the Court's order

18  with respect to limitations on Jencks Act material is clarified

19  that that order is limited to the government's interview

20  memoranda of Carl Ferrer, all civil discovery material that

21  remains under a protective order, but that only relates to the

22  Carl Ferrer, because there is other Jencks material, correct?

23          MR. JONES:  That's correct, Your Honor.  For Daniel

24  Hyer as well, Your Honor.  The government, just to reiterate,

25  you know, anything that's publically available, as Mr. Neuman

1   and where we have limits and where we don't have limits.

2          THE COURT:  Okay.  Well, I'm not willing to remove

3   from that order anything other than to say publically available

4   information.  So if you think there are -- I haven't seen the

5   list that you're talking about -- so if you think there is

6   something else that should be removed from the protective

7   order, then I guess you need to file something specific with

8   their designation so that I can make that determination.

9          MR. NEUMAN:  It would be helpful, Your Honor, if the

10  Court could order the government to tell us what do they think

11  is publically available so that they're designating what they

12  think falls under the protective order.

13         THE COURT:  They gave you a list, from what I'm

14  understanding.  They already gave you the list of what they

15  think is Jencks material.

16         Is that accurate, Mr. Jones?

17         MR. JONES:  Yes, Your Honor.  What we will do is we'll

18  review the list we gave them.  If there are additional

19  documents, we will make defendants aware that, you know, by

20  Monday, end of -- close of business Monday of next week just so

21  we're clear, but we believe all the documents on the list were

22  the documents that we believe should be subject to the

23  protective order.  But there are also some victim statements

24  that may not be a part of that list that we want to -- we would

25  like to clarify, and we'll do that by the close of business

1  stated, we don't object to those documents not being a part of

2  the protective order.  But if they aren't publically available,

3  you know, the government believes that, you know, those

4  documents should fall under your current order.

5       THE COURT:  Yeah.  I think I should rephrase it the

6  other way.

7       MR. NEUMAN:  The only issue, Your Honor, is if it's

8  Mr. Ferrer's interview memoranda and Mr. Hyer's interview

9  memoranda, that's clear.  If it's some sort of vague whatever

10  is not publically available, this becomes much more

11  problematic, because, just as an example, among the documents

12  they've designated are e-mails.  Those e-mails may well have

13  been available to third parties, so any controls that the Court

14  puts in place on them limit us to say they are out there in the

15  ether somewhere, somebody comes back and says we violated the

16  court order, so that's number one.

17       Number two, they may have been filed in other cases, I

18  don't know.  I've been involved only in this criminal case.

19  And so to the extent that the government is saying only

20  publically available, I think we need a specific designation.

21  And I think they agreed earlier to what we requested, which was

22  Carl Ferrer's interview memoranda.  They want to add

23  Mr. Hyer's, I understand that, and it needs to be specific.

24  And that's been the issue here is they've given us this big

25  list, and it's very difficult to know what we're talking about

1    next Monday with them.

2              MR. NEUMAN:   This is the problem, Your Honor.   He's

3    not actually agreeing to what -- he's saying, basically,

4    they're going to designate Jencks material.   What we need --

5    and what he's just said includes -- I'll just tell the Court --

6    a Netflix documentary transcript.   So it can't be that

7    everything on their list falls within the protective order.

8    The Court just somewhat clarified by saying not publically

9    available documents.   It would be very helpful -- the

10   government is in the best position to tell us what do they

11   think needs to be under the protective order.   If we need to

12   fight about it, we'll fight about it; if we don't, we don't.

13   But they're creating this list of what they think is Jencks.

14   They're the ones who know who is going to testify.   They know

15   what -- they think they know what qualifies as Jencks.   They

16   should tell us what needs to be protected.

17             THE COURT:   They just did.   You disagree with it.

18             MR. NEUMAN:   But so does the Court.

19             THE COURT:   That's their position.

20             MR. NEUMAN:   But the Court just ruled against --

21   sorry.

22             THE COURT:   I haven't seen the list.   So they said

23   this is what they want protected.   You're telling me there is

24   things that shouldn't be protected.   So what I just said is

25   this e-mail is not sufficient for me to rule on, if you want

16

1    next Monday with them.

2              MR. NEUMAN:  This is the problem, Your Honor.  He's

3    not actually agreeing to what -- he's saying, basically,

4    they're going to designate Jencks material.  What we need --

5    and what he's just said includes -- I'll just tell the Court --

6    a Netflix documentary transcript.  So it can't be that

7    everything on their list falls within the protective order.

8    The Court just somewhat clarified by saying not publically

9    available documents.  It would be very helpful -- the

10   government is in the best position to tell us what do they

11   think needs to be under the protective order.  If we need to

12   fight about it, we'll fight about it; if we don't, we don't.

13   But they're creating this list of what they think is Jencks.

14   They're the ones who know who is going to testify.  They know

15   what -- they think they know what qualifies as Jencks.  They

16   should tell us what needs to be protected.

17             THE COURT:  They just did.  You disagree with it.

18             MR. NEUMAN:  But so does the Court.

19             THE COURT:  That's their position.

20             MR. NEUMAN:  But the Court just ruled against --

21   sorry.

22             THE COURT:  I haven't seen the list.  So they said

23   this is what they want protected.  You're telling me there is

24   things that shouldn't be protected.  So what I just said is

25   this e-mail is not sufficient for me to rule on, if you want

1   anything more specific than things that are public are not

2   protected.   So all you need to do is send me the list with·your

3   motion saying this is what I don't think should be protected

4   and here's why.

5                MR. NEUMAN:   Just so the Court knows, it is attached

6   to the e-mails, but if the Court -- I know the Court only got

7   it yesterday, so, understood, and we can do that.   We can

8   provide the specifics to the Court after we confer with the

9   government further.

10               It would be their -- their spreadsheet was attached.

11               THE COURT:   Oh, okay.   I do see an attachment, but

12  that's not going to tell me which specific things, unless you

13  think they're just -- unless you think your e-mail paragraph is

14  specific enough.

15               MR. NEUMAN:   It, essentially, covers everything on

16  their list, Your Honor, so.   Your Honor, if the Court prefers,

17  we can file something.   That's easy enough.

18               THE COURT:   Okay.

19               MR. NEUMAN:   Because there is declarations, there is

20  trial testimony, there is, as I said, a Netflix documentary

21  transcript.   If the government is going to stand on the

22  position that that's all subject to the protective order, we'll

23  have to deal with it specifically, I guess.   We'll confer with

24  Mr. Jones and see if he changes his position.

25               THE COURT:   With respect to the third issue which