Paul J. Cambria, Jr. (NY 15873, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Defendant Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al*.,<br><br>              Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**LACEY AND LARKIN'S COMBINED REPLY TO THE UNITED STATES' COMBINED RESPONSE TO  LACEY'S AND LARKIN'S SUPPRESSION MOTIONS (Docs. 775, 786)**<br><br>(Oral argument requested) |

The government's combined response (Doc. 786) to the individual motions of Defendants Michael Lacey and James Larkin seeking suppression of the Home and Device Search Warrants[1] ("Motions") (Doc. 775 and Doc. 786) fails to provide a basis for denial of Defendants' Motions.   Therefore, this Court should suppress all evidence (and derivative evidence) obtained as a result or, alternatively, grant Lacey and Larkin a *Franks* hearing.

---

[1]    For consistency, this reply will use the designations and abbreviations set forth in the original motions.

I.   **This Court should suppress evidence obtained from execution of the Home and Device Search Warrants.**

   A.   **The government's response fails to establish that the warrant affidavits were supported by probable cause.**

   In their Motions, Lacey and Larkin asserted that the magistrate erred in authorizing the Home and Device Search Warrants because the applications for those warrants were not supported by probable cause. The affidavits submitted in connection with those warrants did not contain facts known to the affiant, but instead referenced and summarized the indictment. Therefore, the magistrate could not conduct an independent analysis of the facts supporting probable cause as is required. (Doc. 775 at 5-7; Doc. 778 at 5-8.)

   In *United States v. Rubio*, the Ninth Circuit explained that an issuing magistrate must make a "neutral and detached" determination on probable cause based on presentation of "sufficient facts" in the warrant application. 727 F.2d 786, 794-95 (9th Cir. 1984). Further, the Court held that "[t]he facts upon which the magistrate bases his probable cause determination must appear within the four corners of the warrant affidavit; the warrant cannot be supported by outside information." *Id*. at 795. The government does not address *Rubio*, much less distinguish it. Instead, it cites *United States v. Seybold*, 726 F.2d 502 (9th Cir. 1984), arguing that a magistrate's consideration of an indictment is not fatal to his or her probable cause determination. (Opp'n at 7.) But neither *Seybold* nor *Rubio* hold that relying on an indictment, *alone*, is sufficient to establish probable cause. In *Rubio*, the Ninth Circuit held that a magistrate can consider an indictment "*along with other facts* . . . in determining probable cause," but an indictment "*is not, of itself*, an adequate substitute for articulable facts in the warrant affidavit." *Rubio*, 727 F.2d at 795 (emphasis added); *see also Seybold*, 726 F.2d at 505 (recognizing that magistrate could "consider the information in the indictment *together with the allegations contained in the affidavit* in making his probable cause determination" (emphasis added)). Notably, the *Seybold* affidavits contained several categories of factual

information that the Court found to be sufficient to establish probable cause when considered in addition to the indictment.  *See Seybold*, 726 F.2d at 504-505.

Unlike the *Seybold* affidavits, the Fryberger Affidavit for the Home Search Warrant does not contain extensive categories of factual information indicative of wrongdoing that are separate from the indictment.  In fact, the Fryberger Affidavit contains *no factual information* alleging that Lacey and Larkin:  (1) participated, were members of a conspiracy, or knew that a conspiracy existed; (2) facilitated prostitution; (3) knew and conspired with specific website users to facilitate prostitution through use of the website; (4) had general knowledge that prostitutes had posted advertisements to the website;[2]  (5) knowingly and intentionally promoted/facilitated a "business enterprise" involving prostitution; or (6) had the intent to launder the proceeds of crime.  (*See generally* Doc. 775-2.)  For these critical categories of factual information, the Fryberger  relies exclusively on the indictment.  (*Id.* ¶ II.1-2.)[3]  The affidavit thus fails to provide any facts establishing probable cause to believe that Lacey and Larkin conspired or facilitated prostitution.   Fryberger's descriptions of various financial transactions of Lacey, Larkin, and Backpage (*id.* at ¶ IV.1.a.i-viii, x, xi); or Lacey and Larkin's

---

[2]     Even if general knowledge rather than specific intent was sufficient to hold a publisher criminally liable for third-party content in the manner alleged in this case (*see* Doc. 561), the Fryberger Affidavit does not contain *any* factual information establishing even general knowledge of facilitation of prostitution.

[3]     While these references to the indictment are insufficient to establish probable cause, they are infirm for a second reason—they are conclusions of law and not allegations of facts.  *See United States v. Underwood*, 725 F.3d 1076, 1082-84 (9th Cir. 2013) (affirming suppression where affidavit contained only expert opinion and conclusory statements that defendant trafficked ecstasy); *United States v. Cervantes*, 703 F.3d 1135, 1139-40 (9th Cir. 2012) (reversing denial of suppression due to affiant's failure to offer facts establishing probable cause to believe that defendant's home was a "narcotics stash location"); *United States v. Weber*, 923 F.2d 1338, 1345-46 (9th Cir. 1990) (reversing conviction and ruling that suppression was warranted where affidavit in support contained only generalized conclusions about the behavior of child pornographers rather than particular evidence suggesting that the defendant was a child pornographer).

international travel (*id.* at ¶ IV.1.a.ix) do not establish probable cause.  Engaging in financial transactions, forming offshore trusts, acquiring real estate abroad, or travelling internationally *without more* are  insufficient to support the conspiracy and Travel Act violations that underlie the money laundering allegations.

Defendants have not "overstate[d] the level of proof required" to establish probable cause as the government claims (Opp'n at 5), but instead point out that the government gave the magistrate *no factual information* from which a finding of probable cause could be inferred.  *See Rubio*, 727 F.2d at 794-95 (vacating conviction); *see also United States v. Bailey*, 327 F. Supp. 802, 806 (N.D. Ill. 1979) (concluding that the government failed to establish probable cause and recognizing that "the finding of probable cause for the arrest of an individual that accrues from his being indicted does not . . . become the equivalent of a finding of probable cause for a warrant to search that person's home").

The Robinson Affidavit in support of the Device Search Warrant is similarly lacking. Like the Fryberger Affidavit, it references and summarizes the indictment, and quotes from the factual bases of two pleas; it does not provide factual information known to the affiant beyond a description of financial transactions.  (*See* Doc. 775-5.)  Moreover, even if the Robinson Affidavit could survive this Court's probable-cause review, all evidence obtained from execution of the Device Search Warrant should, nonetheless, be suppressed as derivative of the defective Home Search Warrant.[4]

### B.    The Home Search Warrant is insufficiently particular.

The Motions establish that to satisfy the particularity requirement, the "executing officer must be able to identify from the face of the warrant, as well as any attached or expressly incorporated documents, what it is they are being asked to search for and seize from the targeted property."  *United States v. Bridges*, 344 F.3d 1010, 1017 (9th Cir. 2003).  Here, the directive to

---

[4]      The Robinson Affidavit states that the government obtained the devices that are the subject of the Device Search Warrant during its execution of the Home Search Warrant. (*See* Doc. 775-5 at ¶ II.1.i.)

4

search for "*evidence of wealth*, assets, and real estate obtained from the illicit activity" was insufficiently particular.  Although the search warrant provides a non-exclusive list of items as examples of what may constitute "evidence of wealth," the plain text of the search warrant and its attachments give no further clarification or definition as to what constitutes "evidence of wealth" and the officers were not limited to the identified examples.  Instead, the officers who participated in execution of the Home Search Warrant had the unfettered discretion to decide for themselves which household goods constituted "evidence of wealth."  Where, as here, there was no directive as to what this term meant or how the officers should determine the value of any particular items and whether to seize them, a search warrant is insufficiently particular.  *See United States v. Washington*, 797 F.2d 1461, 1472-73 (9th Cir. 1986) (vacating conviction and concluding that "the section of the warrant permitting the officers to seize articles 'tending to establish the wealth and financial status'" of the defendant rendered the warrant unconstitutional on its face).

The government claims that the term "evidence of wealth" survives Fourth Amendment scrutiny because "[w]hen circumstances are permeated with fraud . . . it may not be possible to provide a more particular description," and "the use of a broader warrant can be approved." (Opp'n at 11 (citing *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747 (9th Cir. 1989), *United States v. Offices Known as 50 State Distrib. Co.*, 708 F.2d 1371 (9th Cir. 1983)).) While Lacey and Larkin dispute the government's characterization of Backpage as being "permeated" with illegality, even under this standard on particularity, this Court must suppress all evidence (and derivative evidence) obtained from execution of the Home Search Warrant because the Fryberger Affidavit and Home Search Warrant do not satisfy the *50 State* standard (which, in any event, has limited application).

In *50 State*, the court upheld a search warrant that authorized the seizure of nearly all property located at a corporation's office.  *See 50 State*, 708 F.2d at 1372-76.  In reaching that result, the court emphasized that the affidavit contained detailed information concerning widespread consumer fraud occurring at that particular office such that it was not unreasonable

to seize all property from the office.  Critically, the affidavit included the observations of an undercover investigator who worked at the office where the fraud allegedly occurred. Employees of the business taught the investigator fraudulent sales techniques, which he observed the entire sales floor employ, using offices phones, computers, and mail, to defraud consumers.  *See id.* at 1372-73.

Unlike in *50 State*, the Motions do not challenge searches of *Backpage offices* for "evidence of wealth," but instead, the homes of Lacey and Larkin.  The affidavit contains no information indicating that Backpage's operations were conducted at Lacey and Larkin's homes, permeated with illegality, or that it would be impossible to separate items traceable to the illegality from those that are not.  The lack of information in the affidavit on these issues is fatal to the Home Search Warrant under the relaxed particularity standard advocated by the government as recognized in *Washington*.  *See Washington*, 797 F.2d at 1472-73 (describing the government's reliance on *50 State* to justify a directive to search for items "tending to establish the wealth and financial status" of the defendant as "misplaced" because, unlike that case, "the FBI made no showing that Washington was running a business out of his home, that any such business was permeated with crime, or that there was any reason whatsoever why records in Washington's home could not be segregated on the basis of whether or not they evidenced criminal activity").  Indeed, *Center Art* reiterated that *50 State* was an "exception" that only applied when the affidavit states that the search will occur at a location permeated with criminality and that it is impossible to separate property traceable to the crime from property that is not.  *See Center Art*, 875 F.2d at 749-51 (affirming suppression).  There is simply no evidence that Larkin and Lacey's homes were "permeated with criminality."

The government's attempt to defend the directive to search for "[d]ocumentation of funds received from Backpage or *other related companies* and disposition of those funds" likewise falls flat.  The Home Search Warrant and its attachments do not identify entities related to Backpage or Lacey or Larkin.  The government has conceded as much, but notes that the Fryberger Affidavit identified one company, Website Technologies (*see* Opp'n at 12); however,

6

the Fryberger Affidavit does not limit the term "other related companies" to this single entity.[5] Without a list identifying the specific entities that the government alleged were "other related entities," executing officers had unfettered discretion to search and seize items that have nothing to do with Backpage.

The government's suggestion that this term is not problematic because none of the officers who executed the Home Search Warrant seized documents concerning "other related entities" (Opp'n at 12) is wrong. The agents' conduct during the search has no relevance to the constitutional validity of a search term put before an issuing magistrate and cannot save an infirm warrant. *See Maryland v. Garrison*, 480 U.S. 79, 85 (1987) (explaining that the "validity of a warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate").

Finally, the directive to search for "any property or proceeds resulting from money laundering" is insufficiently particular. Without the mandate to tie a household good to a receipt that demonstrates that it was purchased with funds traceable to Backpage, law enforcement officers had the discretion to seize any and all household goods. *See United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982) (reversing conviction and holding that when a warrant authorizes the search of "items that are illegal, fraudulent or evidence of illegality . . . the warrant must contain some guidelines to aid the determination of what may or may not be seized"). Again, the government defends this term by pointing to the relaxed particularity standard articulated in *50 State*, which the Ninth Circuit has said is not applicable under the facts present here.

The government contends that because the warrant authorized them to seize items acquired after 2010, and at that time, Lacey and Larkin's income "was almost entirely" traceable to Backpage, the search term meets the particularity requirements. (Opp'n at 12.) This assertion lacks merit because it ignores the fact that Lacey and Larkin, who are in their 70s, accumulated significant wealth well before the inception of Backpage, and that they could easily have used

---

[5]     Further, Website Technologies was a company controlled by Carl Ferrer, not Lacey or Larkin.

funds traceable to their newspaper conglomerate to purchase items held in their homes.  It further ignores the fact that, at the time their homes were searched, Larkin and Lacey were receiving significant revenue from the sale of their newspaper business separate from revenue traceable to Backpage.

Because the Home Search Warrant was insufficiently particular, officers had the unfettered discretion to seize property that had no tie to Backpage and that was acquired prior to 2010.  For example, the government seized dozens of pieces of jewelry from Mr. Lacey's spouse that she acquired prior to 2010—and prior to meeting Mr. Lacey—with funds not traceable to Backpage.  (*See* Jul. 29, 2018 Ltr. to K. Rapp, attached hereto as Ex. A.)  The seizure of her long-possessed jewelry demonstrates the flawed nature of the Home Search Warrant.

### C.   The Home Search Warrant is overbroad.

As set forth in greater detail in Lacey's Motion to Suppress (Doc. 775 at 12), the Fryberger Affidavit discusses incidents that occurred on isolated dates, but does not identify any period of time for which there is probable cause.  The Home Search Warrant authorizes the search and seizure of items acquired during the period 2010 to the time of the search, which exceeds the time period for which probable cause was established in the Fryberger Affidavit, rendering the Home Search Warrant overbroad.  *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 704-05 (9th Cir. 2009); *Center Art*, 875 F.2d at 750-51.  The government fails to refute or even address this defect.

### III.   Defendants are entitled to a *Franks* hearing because the Fryberger and Robinson Affidavits contain material misstatements and omissions.

Lacey and Larkin moved for an order granting a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), asserting that the Fryberger and Robinson affidavits omitted material information, including that: (1) the First Amendment protects online classified advertisement websites, including Backpage; (2) at the time it sought these search warrants, the government knew that the novel legal theory upon which it was proceeding had been rejected by every

8

court that had considered it, including rulings indicating that there can be *no liability for publishing and editing third-party ads*; (3) federal courts have expressly recognized that adult speech is protected; and (4) federal courts have expressly held that adult speech is not synonymous with prostitution or trafficking.

The government claims that it was not required to inform the issuing magistrate about contrary rulings because it unilaterally decided that those rulings were "inapposite." (Opp'n at 14.)  Essentially, the government asserts that it has the ability to omit the fact that every court has rejected the government's theory of a case, as long as the government thinks the prior rulings are "inapposite."  The government provides no support for this misstatement of its obligations.  Indeed, a neutral, detached, and independent issuing magistrate, not the government, must make a determination on a search warrant application; to do so, the issuing magistrate needs complete information.

The government's withholding of critical rulings is particularly troubling where, as here, it asserts a novel theory of criminal liability that all prior courts rejected.  This Court's order denying Defendants' Motion to Dismiss (Doc. 793) does not, as the government claims, innoculate the government from its failure to inform the magistrate about critical rulings because the proper inquiry is what the issuing magistrate knew at the time the warrants were authorized, not what a later court decided at a different stage in a prosecution.

The materially misleading statements found in the indictments (attached to the warrant affidavits) provides another basis for ordering a *Franks* hearing.  The indictments are riddled with material misstatements as discussed in detail in Defendant John Brunst's Motion to Dismiss for Grand Jury Abuse (Docs. 780 (sealed); 782 (publicly filed) at 7-11) incorporated herein by reference.  In its Opposition, the government says that this Court should ignore those misstatements because the "appropriate way to challenge an Indictment is through trial." (Opp'n at 15.)  But the government cannot attach the indictments to the affidavits and point to them as providing foundation for the issuing magistrate's probable-cause determination, and then, at the same time, say that the numerous materially misleading statements found in

9

the indictments are irrelevant to this Court's *Franks* inquiry. The government is instead required to present truthful statements to the magistrate judge.  Its failure to do so supports an order that the Defendants are entitled to a *Franks* hearing.

## CONCLUSION

For all these reasons, this Court should: (1) suppress the evidence obtained from execution of the Home and Device Search Warrants and any evidence derived from them; and, to the extent required, (2) hold a *Franks* hearing for Lacey and Larkin to demonstrate that the Home and Device Search Warrants contain material misstatements and omissions in violation of the Fourth Amendment.

RESPECTFULLY SUBMITTED this 23rd day of December, 2019,


DATED: December 23, 2019        Paul J. Cambria, Jr.
                                Erin E. McCampbell
                                LIPSITZ GREEN SCIME CAMBRIA LLP

                                By:    /s/ Paul J. Cambria, Jr.
                                       Paul J. Cambria, Jr.
                                       Attorneys for Michael Lacey

DATED: December 23, 2019        Thomas H. Bienert, Jr.
                                Whitney Z. Bernstein
                                BIENERT KATZMAN, PLC

                                By:    /s/ Whitney Z. Bernstein
                                       Whitney Z. Bernstein
                                       Attorneys for James Larkin

On December 23, 2019, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Patrick Reid, Patrick.Reid@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Amanda Wick, Amanda.Wick@usdoj.gov