MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-18-422-PHX-SMB |
| Plaintiff, | **UNITED STATES' RESPONSE TO MOTION TO CONTINUE TRIAL** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | |

## SUMMARY OF ARGUMENT

Defendants' motion to continue trial should be denied. On April 9, 2018—nearly two years ago—a 61-page indictment was unsealed placing Defendants on notice of the government's theories in this case. Since then, the government has provided Defendants extensive insight into its evidentiary theories through identified "hot documents"[1] (*i.e.*,

---

[1] In May 2019, Counsel for Defendants Padilla and Vaught (who are charged in

documents specifically related to the allegations contained in the superseding indictment), motion responses, witness and exhibit lists, *Jencks* statements, and meetings with counsel for a number of Defendants. Additionally, as of the trial date, Defendants will have had access to more than 90% of the government's case-related electronically stored information (ESI) for two years in an agreed-upon load-ready, industry-standard format. The government's productions have been accompanied by detailed indices denoting the source from which the materials were obtained. The government also made available a DOJ discovery support specialist to assist Defendants with technical questions it might have in accessing discovery, and arranged an in-person tutorial by Matt Frost, an FBI electronic forensics expert, to assist Defendants.[2] The defense team is also deep—including experienced attorneys with decades of legal experience from several law firms.

Notwithstanding, Defendants have moved to continue a trial[3] date set more than seven months ago, citing three bases: (1) on January 27, 2020, the government produced "new" Backpage server data on three hard drives; (2) the government produced more than 300,000 pages of documents in December 2019; and (3) on January 27, 2020 (more than three months before trial) the government updated its list of potential trial witnesses. These rationales are insubstantial and unsupported, and are deliberately calculated to delay a trial already scheduled to start more than 25 months after Defendants' arraignment. The motion should be denied.

---

Counts 1-50) were provided "hot documents" pertaining to allegations contained in the superseding indictment against all Defendants as well as specifically tailored to their individual clients. At that time, the government requested counsel reach out with any questions pertaining to the charges against their client. Neither counsel reached out to the government regarding this request. (*See* CR 626, Exhibits B and C.)

[2] As of the day of this response, defense counsel had previously contacted the government to attempt to resolve a technical difficulty with its ESI production *only once* since receiving over 90% of ESI more than 20 months ago. The government promptly responded to this alleged technical issue. (*See* CR 524, Exhibit J.)

[3] Defendants have already been granted two trial continuances in this case. At the May 2018 scheduling conference, the Court granted Defendants' request for trial to commence in January 2020, three months after the October 2019 trial date requested by the government. Additionally, on July 1, 2019, the Court granted Defendants' motion to continue the January 2020 trial date to May 2020.

**RELEVANT FACTS**

The parties agreed at the outset that this is a complex case and negotiated a scheduling order that included deadlines related to an October 7, 2019 trial date. (CR 121). At the scheduling conference in May 2018, Defendants argued that they needed additional time to prepare for trial and the Court granted their request to continue the trial date until January 15, 2020. (CR 131). In exchange for the certainty of a trial date, the government agreed to certain disclosures in advance of the government's statutory obligations and precedent in the District of Arizona. In setting the trial date for January 15, 2020, the Court did not alter any other deadlines. In other words, the trial was extended three months but the other disclosure deadlines (*e.g.*, Rule 16, Jencks Act material, expert notices, *etc*.) remained the same. As a result, Defendants received disclosures earlier than they would have under the parties' original negotiated schedule.

On June 3, 2019, Defendants filed a motion to continue the January 2020 trial date. On July 1, 2019, the Court granted the motion, continuing the January trial date for an additional four months until May 5, 2020. (CR 664.) On January 29, 2020, Defendants filed a second motion to continue trial. (CR 862).

**ARGUMENT**

**I.  THE COURT SHOULD DENY DEFENDANTS' REQUEST FOR CONTINUANCE**

A.  Standard Governing Requests for Continuances

A district court has a great deal of latitude in scheduling trials. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). This is so because of the inherent logistical difficulties in scheduling trials: "Not the least of [trial courts'] problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Id*. at 11-12. Therefore, "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Id*. at 11-12 (internal citations omitted); *see also United States v. Harris*, 501 F.2d 1, 4-5 (9th Cir. 1974) ("we do not find a clear abuse

of discretion unless, after carefully evaluating all of relevant factors, we conclude that the denial [of a motion to continue trial] was arbitrary or unreasonable").

A district court should consider four factors when ruling on a motion to continue trial: (1) the defendant's diligence in his efforts to ready his defense prior to the [trial] date; (2) the usefulness of the continuance; (3) the extent to which granting the continuance inconveniences the court, the government, and its witnesses; and (4) prejudice to the defendant as a result of the failure to grant a continuance. *See United States v. Tham*, 960 F.2d 1391, 1396 (9th Cir. 1991); *United States v. Flynt*, 756 F.2d 1352, 1358-59 (9th Cir. 1985), *amended by* 764 F.2d 675 (9th Cir. 1985); *United States v. Ibarra-Ramirez* 2012 WL 12903868, at *2 (D. Ariz. 2012).[4] The weight attributed to any one factor may vary. *Id.* (citation omitted). However, in order to obtain a reversal, appellant must show at a minimum that he has suffered prejudice as a result of the denial of his request. *United States v. Maybusher*, 735 F.2d 366, 369 (9th Cir. 1984); *United States v. Lusting*, 555 F.2d at 744 (9th Cir. 1977).

B.   Continuance of the May 5, 2020 Trial Date is Unwarranted

Defendants' attempt to use the Backpage server data—produced to them nearly one year ago—as a basis to delay this trial should be rebuffed. Indeed, more than half of Defendants' motion rehashes assertions regarding Backpage server data that the Court has already rejected. "Defendants' characterizations [of Backpage.com server data] are unsupported by the nearly fourteen hours of testimony from the fact and expert witnesses of both parties. That testimony established the Government's discovery is sufficient in scope and satisfies Defendants' request for Backpage.com data in a 'functional and operation format.'" (CR 839 at 8.) Thus, Defendants' assertion that "[they] through no

---

[4] A slightly different standard governs motions to continue that implicate a defendant's Sixth Amendment right to counsel. *See United States v. Thompson*, 587 F.3d 1165, 1174 (9th Cir. 2009). In that scenario, which isn't the basis for Defendants' motion, a court must balance the following five factors: (1) whether the continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for the delay; (4) whether the delay is the defendant's fault; and (5) whether a denial would prejudice the defendant. *Id.* Under either standard, Defendants' motion to continue should be denied.

- 4 -

fault of their own, have been unable to review the IT System" is inaccurate and misleading. (CR 862 at 4.) Also, as the Court acknowledged in its Order denying Defendants' motion to compel, "Defendants can easily access and analyze all the data on Backpage.com at the time of the seizure. The tools required are open source, publicly available and free to download." (CR 839 at 10.)

Moreover, Defendants' assertion that the three new hard drives recently provided to them were integral for "review of and access to the significant information on [backpage.com's] IT System" is false. (CR 862 at 6.) This is so because none of those drives contained unique data. In other words, the data contained on those drives is encompassed within the multiple copies of the master database server the government provided Defendants nearly a year ago. "Backpage used four database servers-one 'master' and three 'replicates'—containing identical information to store its website data." (CR 839 at 2; *see also* FBI Forensic Examiner Matthew Frost's February 6, 2020 email, attached as Ex. A.) Indeed, "[t]hese hard drives contain a part of the data that was already provided to defense on other hard drives. Therefore these drives are redundant of data already provided." (Ex. A at 1.) The government attempted to explain this to Defendants in multiple emails prior to Defendants' filing a motion to continue trial. Therefore, Defendants' attempt to further delay trial based on Backpage server data is unsubstantiated and meritless.

**II.   DEFENDANTS' ATTEMPT TO DELAY TRIAL BASED ON THE VOLUME OF DISCOVERY SHOULD BE DENIED**

A.   Documents from the Taint Team

Defendants' assertions that "the government has produced millions of pages of discovery, including hundreds of thousands of pages of materials produced since the December 2018 Rule 16 deadline," in-person review of every produced document is necessary and Defendants "require several months to get through the written discovery" is exaggerated and misleading. (CR 862 at 6-7.)

First, Defendants' related claim that the government produced more than 300,000

documents in December 2019 is particularly off the mark. The prosecution team produced 2,284 pages of records to Defendants on December 17, 2019. The remaining supposed 355,000 pages of documents Defendants contend "the government produce[d]" in December 2019 were produced by the government's taint team following a November 2019 letter sent to the government from defense counsel.[5] (*See* Exhibit B). In the November 2019 letter, Defendants asked that all privileged documents not disclosed to the prosecution team by the taint team be "identified for the defense." Although Defendants state in this letter that these privileged documents should be "either destroyed and/or returned to the defense" in accordance with the filter protocol in this case, the government (in continuing to exceed its discovery obligations) disclosed these records to Defendants.

Also, importantly, it has clearly been evident since the outset of this case (as is the case in high-volume discovery cases) that review of the millions of pages of discovery produced does not require counsel to manually review each page. In fact, immediately after indictment, the prosecution team met and conferred with Defendants to discuss how the ESI in this case would be produced. (*See* CR 273-2 at 5.) During this process, everybody agreed that it would be acceptable for the government to produce ESI in an industry-standard format—word-searchable load files that could be reviewed using Relativity, a commonly-used discovery platform.[6] (*See* CR 273-2 at 5-6.) During the April 20, 2018 status conference, the government specifically discussed the plan to disclose the ESI in a Relativity-accessible format. (*See* CR 137, Tr. 4/30/18 at 5-6.) Defendants agreed to this approach. (*See* CR 137, Tr. 4/30/18 at 1-14.)[7]

---

[5] Since the prosecution team does not have access to these records, it can neither confirm nor deny the page discrepancy Defendants assert in their motion. (CR 862 at 6 n.3.)

[6] Records in Relativity can be searched by name, date, key word, etc.

[7] In the government's status memorandum filed in January 2019, it noted that "more than 5.9 million pages of documents disclosed to Defendants originated from a source entitled 'Co-Star materials.' Because of the large production of Co-Star materials, the government agreed to disclose to Defendants materials contained in this production that it believes are relevant to the case and might be utilized at trial. The government provided these approximately 100 pages of materials to Defendants on August 14, 2018." (CR 444

B.  Jencks Act Material

Defendants' complaints about Jencks Act disclosures and updates to the government's witness list are not well founded. Defendants assert that the "deadline for providing *Jencks* and impeachment materials was over four months ago . . . and Defendants are still awaiting production of additional *Jencks*." (CR 862 at 7). The government has provided witness-related information (so-called *Jencks* information) for the witnesses on its witness list in the government's possession. In other words, when a witness has adopted a statement, investigating agents produce that statement (with a report detailing any changes or edits the witness has made to their original statement) to Defendants. The government is under no obligation (unless the statements constitute *Brady* material) to disclose witness statements that have not been adopted by the witness. Nevertheless, in numerous cases the government has produced statements that have *not* been adopted to avoid delays of the trial date and during trial. In sum, the rolling production of Jencks Act material as it becomes available is not a basis to continue the trial.

C.  Witness Identification and Preparation

The government has been providing Defendants a witness list on a rolling basis. As noted previously, the practice in the District of Arizona is to provide a witness list shortly before the commencement of trial. Instead, the parties agreed they would exchange witness lists well in advance of trial. Here, the government provided Defendants a preliminary witness list over a year before trial. As the government has continued to prepare its case for trial, it has updated its witness list and advised Defendants accordingly.

Defendants conflate the data on the servers with the relevance to witnesses at trial. For example, the ads for the victims (both testifying and deceased) have already been provided to the defense. They have also been provided victim witness statements. And, of course, some of the victims are already well known to Defendants as they filed civil suits against Defendants and discovery has occurred in those parallel cases.

---

at 3.)

- 7 -

D.  Courts Have Denied Requests for Trial Continuances in Similar High-Volume Discovery Cases

Courts have denied defendants' motions to continue trial based on the volume of discovery produced in similar cases. For example, in *United States v. Gross*, 2019 WL 7421961 (C.D. Cal. 2019), the defendants filed a motion to continue a trial that was to commence 18 months post-indictment based on the over six million pages of documents (mostly ESI) and 1,600 audio recordings produced by the government.[8] Considering the factors outlined in *Flynt*, 756 F.2d at 1358-59, the Court denied Defendants' requested continuance. In analyzing *Flynt*'s diligence factor, the *Gross* court explained:

> [A]ny discussion of diligence must begin with the underlying premise, evident to all parties and to the Court, that a review of the discovery produced does not require counsel to manually review 6 million pages of documents. . . . Therefore, a variety of electronic searches are generally used both to identify relevant documents and to identify irrelevant and duplicate documents, which can be culled from the data to reviewed.

*Gross*, 2019 WL 7421961, at *2. The court concluded that there was nothing unsettling about the voluminous production by the Government. *Id*. at 3.

In *United States v. Budovsky*,[9] the defendant sought a continuance of a trial that was set to commence 17 months after arraignment. Among other reasons, Budovsky argued that the need to review the exceptionally large discovery production in the case (64 terabytes of data) warranted a continuance. The court denied Budovsky's request, observing: "Given the fact that discovery contains so many pages and lines of data, no attorney or team of attorneys could meaningfully review all of it even with years to prepare for trial." *Id*. at *12. The court explained that "choices have to be made; the Government freely admits that it has not reviewed all of the material in this case. . . . The indictment . . . clearly identified the Government's theories in this case and also discussed some of the

---

[8] In *Gross*, the government made available 200 boxes of hard copy documents. *Gross*, 2019 WL 7421961, at *1.

[9] 2016 WL 386133 (S.D.N.Y. Jan. 28, 2016) (a case involving the laundering of over six billion dollars in criminal proceeds).

- 8 -

most important pieces of the Government's evidence." *Id*. The court further noted that the government had provided Defendants an index, explained what documents supported the allegations contained in the indictment, and promptly responded to defendant's requests for assistance in navigating discovery. *Id*. Additionally, the court acknowledged that defense counsel "has the advantage of being able to discuss the Government's evidence with the defendant, a sophisticated man with intimate knowledge [of the facts] who is well-equipped to help his attorneys prioritize their efforts and locate any materials that might assist in his defense." *Id*.

Like *Gross* and *Budovsky*, given the volume of records produced in this case, no attorney or team of attorneys could meaningfully review each page of discovery in this case. That is why discovery has been produced in the agreed-upon industry standard format to allow for electronic search strategies (*e.g.*, word searches, document searches, date searches, sender/recipient searches, etc.). Additionally, as mentioned above, the government has provided Defendants with indices, hot documents, *Jencks* statements, and preliminary witness and exhibit lists[10] (that it has continued to update and send) many months before trial.[11] These materials (along with the 92-page superseding indictment), identify the government's theories in the case and provide some of the government's most important pieces of evidence. Furthermore, unlike in *Budosky* where the defendant was incarcerated pending trial, Defendants in this case have been on pre-trial release for over 22 months, giving them an abundance of time to work with their counsel in prioritizing their trial prep efforts and assist in their defense.

---

[10] On January 30, 2020, the Government sent Defendants an updated exhibit list. Though this exhibit list includes exhibits that are renumbered from previous disclosed lists, each exhibit includes the Bates numbers that would permit Defendants to easily locate each document in Relativity.

[11] Discovery in the multi-defendant case *United States v. Causey*, 356 F.Supp. 2d 681 (2005), contained at least 80 million pages of materials including 1,500 boxes of documents, 1,500 CDs, and 74 computer hard drives as well as separate email accounts of over 500 employees. *Id*. at 693. Despite this volume of discovery, trial commenced less than two years post-indictment. Moreover, in *Causey*, the government was only ordered to produce Jencks statements and a witness list 30 days prior to trial. *Id*. at 698-699.

### III. THE WEIGHING OF THE *FLYNT* FACTORS DOES NOT WARRANT A CONTINUANCE

#### A. Diligence/Usefulness

The vast majority of the government's ESI discovery was produced to Defendants more than two years ago. (*See* CR 444, Exhibit A.) Moreover, the Backpage server data was made available to Defendants 11 months ago—and what will be 14 months before trial. Throughout the pretrial period, the Court has repeatedly reminded Defendants of the need to continue trial preparations. (*See* CR 459, Tr. 1/25/19 at 46-67 (THE COURT(Judge Logan): "And I also appreciate the fact that you placed on the record that despite the financial issues that you are confronted with, your law firm continues to do their job as it relates to preparing for the trial currently set for 15 January 2020.").) This sentiment was reiterated by Judge Brnovich and the Defendants confirmed they were diligently preparing for trial. (*See* CR 716, Tr. 6/24/19 at 30-32) In the final analysis, Defendants have failed to show that their ability to prepare for trial has been hampered in this case and that the trial continuance it seeks would serve a useful purpose.

#### B. Inconvenience to Others

This case has been pending for nearly 23 months and the May 5, 2020 trial date has been set for over seven months. The government has expended significant resources with the expectation that trial will begin on May 5, 2020. Further, the government's witnesses, (many of whom are victims of sex trafficking facilitated through Backpage), have cleared their schedules to be available for a trial that is estimated to take up to twelve weeks.

In addition, Defendants' requested continuance should be denied for a further reason: the public and the victims have a right conferred by statute to "proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7) (the "Crime Victims' Rights Act" or "CVRA"); *see also* 18 U.S.C. § 3161(h)(7)(A). The Superseding Indictment contains 17 select victim summaries. (CR 230 ¶¶ 160-176.) Of these victims, at least five were juveniles when they were trafficked on Backpage. (CR 230 ¶¶ 163, 164, 167, 169, 172.) Four of the victims were murdered or killed as a result of being trafficked on Backpage, and their

surviving family members or lawful representatives stand in their shoes for purposes of the CVRA. *See* 18 U.S.C. § 3771(e)(2)(B); *see also* (CR 230 ¶¶ 165, 173, 174, 175).

The victims' statutory rights—and their need for an expeditious resolution of this prosecution—strongly militates against further delay. The victims, representatives of the surviving victims, and the family members of the deceased victims have been contacted and all but one object to a continuance. Many of the victims and their families, have endured years of pain and suffering and wish to put the past behind them and move forward with their lives. A trial continuance would only add to the stress and pain they have already endured. Attached as Exhibit C is a letter from an attorney who represents several victims expressing his clients' opposition to a continuance.

In sum, these victims are seeking to put this case behind them in order to heal and focus on their future and deserve a trial without further delay.[12] *See Barker v. Wingo*, 407 U.S. 514, 519 (1972) ("It is axiomatic that the Sixth Amendment right to a speedy trial belongs both to a criminal defendant and to the public. The societal interest in providing a speedy trial . . . exists separate from, and at times in opposition to, the interests of the accused.")

C.  Prejudice

The government is ready to proceed to trial, and further delay would cause it to lose the institutional memory associated with significant efforts in preparing for trial. *United States v. Bert*, 801 F.3d 125, 137 (2d Cir. 2015) ("Moreover, there is a risk [of] loss of important evidence" if a trial is unduly delayed. Certainly, the public is the loser when a criminal trial is not prosecuted expeditiously, as suggested by the aphorism, 'justice delayed is justice denied.'") Further, as previously noted, Defendants were placed on notice of the May 5 trial date more than seven months ago, giving them more than sufficient time to organize their resources and efforts in preparation for trial. *See Budovsky*, 2016 WL 386133, at *11 ("there is also an independent virtue in setting a firm trial date and

---

[12] Additionally, some of these witnesses are cooperating witnesses awaiting sentencing and closure in their own criminal matters.

- 11 -

enforcing it. . . . A firm trial date encourages all parties to access the strengths and weaknesses of their case in a timely manner and permits the parties to organize their resources and efforts to prepare for trial when the defendant elects that course.").

## CONCLUSION

Based on the foregoing, Defendants' motion to continue trial (CR 862) should be denied.

Respectfully submitted this 11th day of February, 2020.

>MICHAEL BAILEY
>United States Attorney
>District of Arizona
>
> *s/Kevin Rapp*_____
>KEVIN M. RAPP
>MARGARET PERLMETER
>PETER S. KOZINETS
>ANDREW C. STONE
>JOHN J. KUCERA
>Assistant U.S. Attorneys
>
>BRIAN BENCZKOWSKI
>Assistant Attorney General
>Criminal Division, U.S. Department of Justice
>
>REGINALD E. JONES
>Senior Trial Attorney
>U.S. Department of Justice, Criminal Division
>Child Exploitation and Obscenity Section

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Angela Schuetta*
Angela Schuetta
U.S. Attorney's Office