MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>     v.<br><br>Michael Lacey, et al.,<br><br>            Defendants. | No. CR-18-00422-PHX-SMB<br><br>**RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE CERTAIN EXPERT TESTIMONY OF QUOC THAI [DOC. 914]** |

Defendants' motion *in limine* to preclude Special Agent Quoc Thai's expert testimony should be denied. Defendants attempt to impermissibly limit the government's presentation of evidence at trial to avoid relevant details about Backpage's financial history. First, Defendants argue that SA Thai should not be permitted to provide his

opinion about Backpage-related transactions. This argument runs contrary, however, to both the Federal Rules of Evidence and applicable case law. Second, Defendants argue that neither SA Thai, nor any other government witness, should be permitted to testify about virtual (or digital) currency. This argument fails, because (a) digital currency is not within the understanding of the average juror, so SA Thai's specialized knowledge will help the trier of fact to understand the evidence, and (b) the information is relevant to understand Backpage's financial history, which included receiving millions of dollars in digital currency per month starting in late-2015. Backpage's receipt of digital currency is highly relevant to the company's financial history, including how the company continued to receive revenue after the major credit card companies stopped doing business with it.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Procedural Background**

    **A.     Government's Expert Disclosure**

On December 14, 2018, the government filed its notice of expert witnesses. (Doc. 422.)[1] In its filing, the government disclosed SA Thai among other potential expert witnesses. (*Id.* at 2-3.) At the time, SA Thai was a Special Agent with the Internal Revenue Service. He has since become a Postal Inspector for the United States Postal Inspection Service (USPIS).

    **B.     Special Agent Quoc Thai's Qualifications**

SA Thai's qualifications include extensive experience, knowledge, and training in digital currency and money laundering. Listed on SA Thai's CV, which was attached to

---

[1] Defendants continue to violate local rules by attaching exhibits that have already been filed in this case. *See* LRCrim 12.1, which references LRCiv 7.1. LRCiv 7.1(d)(1) states: "No copy of a pleading, exhibit or minute entry which has been filed in a case shall be attached to the original of a subsequent pleading, motion or memorandum of points and authorities." Yet, Defendants' three exhibits attached to its motion to exclude SA Thai's testimony all violated this rule. As the local rules make clear, "If a party desires to call the Court's attention to anything contained in a previous pleading, motion or minute entry, the party shall do so by incorporation by reference." LRCiv 7.1(d)(2). Defendants inexplicably re-filed the government's notice of expert witnesses (Doc. 422), with all of its exhibits, rather than citing to the document number. Further, Defendants filed two memoranda of interview, which they've now filed with the Court at least three times. (Docs. 780-1, 780-2, 914, 940.)

- 2 -

the government's disclosure, are the following relevant subjects:

- Nationally recognized subject matter expert in digital currency (such as Bitcoin) and developed cybercrime training material implemented nationwide by IRS-Criminal Investigation Division;
- Investigated numerous cases involving money laundering, cybercrime, and digital currency;
- Experienced with numerous bitcoin blockchain analytics tools; and
- Experienced in the various methodologies of identifying and seizing various digital currencies and the challenges related to them.

In addition to the qualifications listed on his CV, SA Thai has been identified as one of eight money laundering experts for USPIS. In that role, he assists in preparing training materials to provide USPIS money laundering specialists throughout the country.

## II. Argument

Federal law enforcement agents may testify as expert summary witnesses. *See, e.g., United States v. Bosch*, 914 F.2d 1239, 1242 (9th Cir. 1990). A summary witness need not be an expert. *United States v. Singh*, 2017 WL 4700042, at *3 (E.D. Cal. October 19, 2017) ("The Ninth Circuit allows the use of non-expert summary witnesses.") (collecting Ninth Circuit cases). But, if the requirements of Rules 702 and 704 are met, a summary witness may testify as an expert. *United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993). "Courts have found that IRS agents, in specific, may testify as expert summary witnesses." *Id.* (collecting cases).

Summary witnesses "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of multitude of witnesses." *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989) (citations omitted). Further, it is "well-established that 'the nature of a summary witness' testimony requires that he draw conclusions from the evidence presented at trial.'" *United States v. Pree*, 408 F.3d 855, 869 (7th Cir. 2005) (quoting *United States v. Esser*, 520 F.2d 213, 218 (7th Cir. 1975)).

### A. SA Thai Is Permitted To Provide Opinion Testimony

Defendants argue that SA Thai's trial testimony should be limited for fear that it would violate Rule 704(b). (Doc. 914 at 3-4.) The Ninth Circuit, however, has interpreted Rule 704(b) "much more narrowly than its text might indicate." *United States v. Hayat*, 710 F.3d 875, 901 (9th Cir. 2013). "Under our precedent, Rule 704(b) does not bar testimony supporting an inference or conclusion that a defendant does or does not have the requisite mental state, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." *Id.* (citing *United States v. Younger,* 398 F.3d 1179, 1189 (9th Cir. 2005)) (internal quotations omitted).

For example, in *Younger*, the jury was required to decide whether the defendant possessed cocaine with the intent to distribute it. An expert witness for the government testified that "[t]he person, individual, whoever possessed this, possessed it for the purposes of selling." 398 F.3d at 1189. The Ninth Circuit upheld the admission of that testimony because, "the expert never directly commented on *defendant's* mental state, and the jury could have accepted his testimony and still infer that defendant was atypical." *Id.* (emphasis in original).

SA Thai, therefore, would be permitted to offer his expert testimony on whether a certain transaction was "unusual," or "consistent" with money laundering strategies, as long as he did not testify about Defendants' actual mental state. Similarly, he could offer testimony related to Backpage's specific transactions, and what that may indicate given his training and experience, so long as he does not attribute a culpable mental state to the individual Defendants.

Defendants concede that SA Thai may testify about the flow of funds between the various Backpage-related entities (Doc. 914 at 3). But, as an expert, he is also able to "explain his analysis of the facts based on his special expertise." *Moore*, 997 F.2d at 58 ("As a summary witness, an IRS agent may testify as to the agent's analysis of the transaction which may necessarily stem from the testimony of other witnesses."); *see also,*

*e.g., Bosch*, 914 F.2d at 1243 ("Because [IRS SA] had training and experience in conducting narcotics investigations and explained a basis for his opinion that would help the jury determine [defendant's] role in the charged offense, the district court did not abuse its discretion by admitting this testimony."); *United States v. McCollum*, 802 F.2d 344, 346 (9th Cir. 1986) ("Expert testimony regarding the typical structure of mail fraud schemes could help the jury to understand the operation of the scheme and to assess [defendant's] claim of noninvolvement.").

SA Thai has expertise in money laundering activities—indeed he's one of eight designated experts on the topic for the USPIS. SA Thai's knowledge, skill, experience, and training in money laundering transactions will assist the jury to better understand the evidence. Fed. R. Evid. 702(a). His testimony in this area should be permitted.[2]

**B.    Expert Testimony Regarding Digital Currency Is Permissible**

Defendants imbue light and goodness into the use of digital currency in an attempt to convince the Court that the government should be precluded from presenting evidence about it. (Doc. 914 at 6-9.) Defendants argue that neither SA Thai, nor any other government witness, should be permitted to testify about digital currency, because its use is ubiquitous and transparent. (*Id.*) These arguments, even if true, do not preclude expert testimony on the topic.[3]

1.    <u>Digital Currency Isn't Known To The Average Juror</u>

Digital currency, as noted by Defendants, is not likely within the understanding of the average juror. (Doc. 914 at 9 ("One can easily imagine a situation in which a juror . . . has never heard of or used virtual currency.")); *see also United States v. Costanzo*, --- F.3d ---, 2020 WL 1898836, at *1 (9th Cir. April 17, 2020) ("This appeal involves what would

---

[2] Defendants, no doubt, will raise specific objections during SA Thai's testimony if they believe the questions violate the applicable rules.

[3] Digital currency is clearly used for some legal purposes as documented by Defendants, but can also lend itself to criminal use. *See United States v. Bondarenko*, 2019 WL 2450923, at *1 (D. Nev. June 12, 2019) (members of group helped protect themselves from criminal liability by remaining anonymous to one another and "concealed the nature of their transactions by using digital currencies").

appear to be a straightforward money laundering transaction with a twist: payment was made via bitcoin, a form of digital currency based on mathematical algorithms that is not controlled by any country, bank, or individual."). An expert can fill this void. Fed. R. Evid. 702(a). Indeed, "[a]n expert's testimony may take the form of an opinion if it serves to inform the jury about affairs not within the understanding of the average man." *Moore* 997 F. 2d at 57 (citing *United States v. Webb*, 625 F.2d 709, 711 (5th Cir. 1980)). SA Thai's expert testimony on digital currency will help the jury understand this evidence.

### 2. Digital Currency Is Relevant To The Criminal Charges

The allegations in the Superseding Indictment demonstrate why expert testimony on digital currency is relevant and appropriate. In 2015, the three major credit card companies stopped doing business with Backpage. (Doc. 230 at ¶ 182.) Part of the company's response was to utilize digital currency. For example, on October 16, 2015, Backpage received an email from a customer complaining about her inability to pay for ads using a credit card. (Doc. 230 at ¶ 185.) In response, a Backpage representative wrote, "[i]f you would like to pay for upgrades or buy credits, we suggest posting with alternative payment methods such as Bitcoin. . . . Please do not make your payments out to backpage.com as we will no longer be able to accept them." (*Id*.) Without any further explanation about what Bitcoin is, or how digital currency works, a juror could be confused as to how to understand this evidence.

The government also alleges that Backpage "furthered its money laundering efforts through the use of bitcoin processing companies." (*Id.* at ¶ 193.) "Over time, Backpage utilized companies such as CoinBase, GoCoin, Paxful, Kraken, and Crypto Capital to receive payments from customers and/or route money through the accounts of related companies." (*Id.*) Finally, the government alleges Backpage furthered its money laundering efforts by "developing ways for customers to purchase ads using gift cards issued by third-party vendors." (*Id.* at ¶ 194.) An email exchanged between various Backpage employees stated: "[W]hat if we used a customers [sic] payment method, say visa prepaid card, to buy [bitcoin] from our seller account . . . giving said bitcoin to our

catch-all wallet elsewhere (instead of to user), simultaneously adding credits/purchasing paid ad or upsells? From the user's perspective they just input their prepaid card and get their creds or purchase." (*Id.*)

In addition to the allegations in the Superseding Indictment, the government anticipates that SA Thai will testify as to the rapid growth Backpage experienced with bitcoin exchangers.[4] For example, between January 2015 and June 2015, records reflect that Backpage had monthly transactions with a bitcoin exchanger of between around $13,000 and $35,000. After the credit card companies stopped accepting charges on Backpage.com, however, the monthly amount dramatically increased. In July 2015, the monthly cash transactions on the same bitcoin exchanger increased to around $234,000; in August 2015, it doubled to around $468,000. In October 2015, it increased to over $1.1 million, and between December 2015 and May 2017, the monthly ranges were between $1.7 million and $3.5 million. In other words, starting in mid-2015, a significant part of Backpage's revenue flowed through digital currency. Accordingly, without testimony related to digital currency, the jury would only hear part of the story about the company's finances. A jury is entitled to know the circumstances and background of a criminal charge. *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (The jury "cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge."). Expert testimony regarding digital currency is relevant to the government's case against Defendants.

        3.      <u>Rule 403 Does Not Preclude Expert Testimony Regarding Digital Currency</u>

Despite highlighting that "[v]irtual currency is legal currency," that no "federal law bars its use," and that prominent businesses accept payment through digital currency, Defendants argue that any testimony on the topic would "impermissibly compel the inference that Defendants engaged in illegal conduct." (Doc. 914 at 5-6, 8.) Defendants,

---

[4] A bitcoin exchange is a digital marketplace where bitcoins can be bought or sold. https://bitcoin.org/en/exchanges#international, last visited May 6, 2020.

however, provide a response to their own argument when they state: "The use of virtual currency is no more indicative of criminal activity than any other sort of payment method." (Doc. 914 at 9.) Testimony about digital currency cannot be "unfairly prejudicial," when that payment is no different than any other.

Defendants' final argument is that the government will not offer expert testimony about credit card transactions or any other sort of payment, including money orders, gift cards, or prepaid credit cards, so the only purpose for offering testimony about digital currency is to taint those transactions. (Doc. 914 at 9.) Not so. While the average juror likely understands money orders, gift cards, and prepaid credit cards, the same is not true with respect to digital currency. Indeed, "[o]ne can easily imagine a situation in which a juror has never heard of or used virtual currency." (*Id.*) Expert testimony on digital currency is therefore relevant and appropriate to help the jury understand the evidence and determine a fact in issue, *i.e.*, Count 52 – conspiracy to commit money laundering.

### III. Conclusion

Defendants' motion *in limine* to preclude SA Quoc Thai's testimony should be denied.

Respectfully submitted this 8th day of May, 2020.

> MICHAEL BAILEY
> United States Attorney
> District of Arizona
>
> *s/ Andrew C. Stone*
> KEVIN M. RAPP
> MARGARET PERLMETER
> PETER S. KOZINETS
> ANDREW C. STONE
> Assistant U.S. Attorneys
>
> JOHN J. KUCERA
> Special Assistant U.S. Attorney
>
> BRIAN BENCZKOWSKI
> Assistant Attorney General
> U.S. Department of Justice
> Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of May, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Marjorie Dieckman*
Marjorie Dieckman
U.S. Attorney's Office