Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin E. McCampbell (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Thomas H. Bienert, Jr. (CA Bar No.135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>　　　　　　Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**DEFENDANTS' MOTION TO CONTINUE TRIAL**<br><br>(Oral argument requested) |

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

ii

**MOTION**

Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught ("Defendants"), by and through their undersigned attorneys, move for an order continuing the August 17, 2020 trial date.  This Motion is based on the following Memorandum of Points and Authorities, the Court's file, and any evidence or argument presented at the hearing on this matter.  Excludable delay under 18 U.S.C. § 3161(h)(1) may occur as a result of this Motion or of an order based on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

This trial is scheduled to commence on August 17, 2020.  The government most recently estimated that its case-in-chief, inclusive of 98 named witnesses, will take six to eight weeks.  The estimated overall trial time for jury selection, the government's case-in-chief, the defense case, and any government rebuttal case will likely exceed twelve weeks.  Although all but one of the motions in limine is fully briefed, and Defendants continue to diligently prepare their defense as best they can, current events outside the Parties' control present good cause for continuing the trial.  In short, due to the ongoing pandemic, proceeding to trial at this time would prevent Defendants from receiving a fair trial with all of the attendant due process rights.

The State of Arizona, like much of the rest of the world, is under siege by the rapid spread of the novel coronavirus, and the illness it causes, COVID-19.  According to the Centers for Disease Control and Prevention ("CDC"), nearly 1.7 million people in the United States have contracted the virus and more than 100,000 Americans have died.[1]  In Arizona, more than 17,000 people have been infected, with Maricopa County having the largest number of confirmed cases in the State.[2]  Critically, Arizona's curve continues to swing upward.  Statewide hospitalizations for positive and suspected COVID-19 infections hit an all-time high during Memorial Weekend,[3] and are projected to continue

---

[1]     *See* CDC, Cases in the U.S. (May 21, 2020), available at https://www.cdc.gov/covid-data-tracker/ (last visited May 29, 2020).
[2]     *See* Arizona Department of Health Services Data Dashboard, available at: https://azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/covid-19/dashboards/index.php (last visited May 29, 2020).
[3]     *See* Stephanie Innes and Alison Steinback, Arizona Republic, *Gov. Doug Ducey says a downward trend in Arizona COVID-19 cases 'is not here yet'* (May 28, 2020), available at:

rising.[4]  At this time, much remains unknown about the virus, and there is no treatment, cure, or vaccine.

This novel virus is not fully understood; however, it is widely known to cause severe, acute respiratory distress in a portion of those who have been infected.  The symptoms are so serious that medical professionals have been traumatized by what they have observed while treating patients with COVID-19.[5]  The data available from the CDC shows that 20.7-31.4% of those infected require hospitalization, 4.9-11.5% require admission to the ICU, and 1.8-3.4% die.[6]  In addition to the short-term risk of death posed by COVID-19, contracting the virus can lead to other serious long-term medical conditions, including cardiovascular disease and permanent reduction of lung function.[7]

Although no one is safe from the virus, it impacts certain portions of the population much more severely than others.  Individuals over the age of 65, pregnant people, and anyone with pre-existing conditions such as diabetes, obesity, heart disease, lung disease, chronic and severe kidney problems, autoimmune conditions, and cancer are at increased risk for severe symptoms requiring hospitalization and for death.[8]

The virus impacts individuals differently on another basis as well.  Racial and ethnic minorities are disproportionately affected by the virus both in terms of severity of symptoms and death rates.[9]

---

https://www.azcentral.com/story/news/local/arizona-health/2020/05/28/downward-trend-arizona-covid-19-cases-is-not-here-yet-governor-says/5279585002/ (last visited on May 29, 2020).

[4]      *See* Institute for Health Metrics and Evaluation, Arizona Projections, available at: https://covid19.healthdata.org/united-states-of-america/arizona (last visited on May 27, 2020).

[5]      *See* https://www.propublica.org/article/a-medical-worker-describes--terrifying-lung-failure-from-covid19-even-in-his-young-patients (last visited May 22, 2020).

[6]      *See* https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm (last visited May 22, 2020).

[7]      *See* https://www.bloomberg.com/news/articles/2020-05-12/covid-19-s-health-effects-can-last-long-after-virus-is-gone (last visited on May 22, 2020).

[8]      *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 28, 2020); https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/other-at-risk-populations.html (last visited May 28, 2020).

[9]      *See* CDC, *COVID-19 in Racial and Ethnic Minority Groups* (April 22, 2020), available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited on May 22, 2020).

DEFENDANTS' MOTION TO CONTINUE TRIAL

By virtue of their age, several Defendants and counsel in this case fall into the category of individuals for whom the virus presents grave risk.  Some Defendants and counsel have additional considerations that render them further at risk.  (*See* Physician Letters, filed as Sealed Exs. A, B, C, D.)  Some unknown but substantial number of potential jurors will also likely fall into these categories, as may witnesses, Court staff, the press, the public, and others who would attend the proceedings.

The day-to-day activities of a trial will readily enable spread of the virus among the trial participants, including Court personnel, counsel, witnesses, and jurors.  The virus spreads easily through the movement of airborne droplets emitted each time someone speaks, coughs, or sneezes.[10] Additionally, the virus is believed to spread when an individual touches his or her face after touching a contaminated surface, such as an exhibit, a doorknob, a desktop, or a seatback.[11]  Further, people can carry and transmit the virus even though they show no symptoms.  All of these methods of transmission can be expected to occur regularly during the trial.  Social distancing, the wearing of non-medical grade masks, and temperature checks are insufficient to stop the spread.  The virus can survive in the air for three hours and can spread well beyond six feet in an indoor, air conditioned environment.[12]  Temperature checks will not identify a positive but asymptomatic carrier, and non-surgical masks are not particularly effective at preventing an individual from becoming infected, even when such masks are properly worn.

Further, the commencement of the scheduled jury trial, while the spread of this deadly virus is on the rise in Arizona, with no cure or vaccine, presents enormous public health risks.  A jury based on a fair cross-section of this District will bring together strangers from all parts of this District.  Counsel and staff will travel to this courthouse from New York and California, two well-documented hot spots.  Witnesses will travel from across the country to the Courtroom from known hot spots such as New York, California, and Washington, and emerging hot spots.  This gathering of people, who otherwise would not encounter each other, will give the virus access to wholly new lines of

---

[10]    *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited on May 22, 2020).

[11]    *See id.*

[12]    *See* https://www.cbsnews.com/news/coronavirus-study-six-feet-spread-restaurants-reopen/ (last visited on May 22, 2020).

DEFENDANTS' MOTION TO CONTINUE TRIAL

transmission.  It will implicate the rights and lives not merely of the trial participants, but of their loved ones and anyone with whom they may come into contact.

Recognizing these concerns, courts across the nation are postponing jury trials, concluding that a jury trial in the current era endangers the lives of everyone involved, and poses a serious risk to the health of the general population.  At the time of filing this Motion, civil and criminal jury trials have been continued by federal courts across the country.[13]  Indeed, the outlier decision of an Ohio judge to commence a jury trial proved disastrous as the defendant was taken to the hospital with symptoms of the coronavirus and the case was unable to conclude to verdict.[14]  Unlike that case, which involved one defendant, one defense attorney, and a simple indictment, this case involves six defendants, each with multiple counsel, some traveling from out of state, several prosecutors (including at least two from out of state), more than 100 witnesses (many of whom are out of state), and a 92-page indictment that has been designated complex.  The disruption associated with starting and then pausing this trial due to a trial participant displaying symptoms or contracting the virus would be untenable.  This complex trial should not proceed until there is confidence that it can begin and conclude without a pause due to a trial participant displaying symptoms or the anticipated second wave of infections with potential stay-home orders.  Thus, even if other, single-defendant or non-complex trials resume, it nonetheless remains imprudent to proceed in August with this lengthy, complex, six-Defendant, 100-count case.

In addition to these serious medical and safety concerns, the virus has had an unprecedented impact on the economy, which is of direct concern when the Court considers selecting a jury that can fairly judge this case.  At this time, 38.6 million Americans have filed for unemployment benefits,

---

[13]  *See* https://www.paulhastings.com/about-us/advice-for-businesses-in-dealing-with-the-expanding-coronavirus-events/u.s.-court-closings-cancellations-and-restrictions-due-to-covid-19 (last visited May 22, 2020).

[14]  *See* Cory Shaffer, *An Ohio Judge Determined to Hold a Trial, A Defendant Removed from the Courtroom with Coronavirus Symptoms Illustrate Perils of Pandemic-era Trials* (May 1, 2020), available at https://www.cleveland.com/court-justice/2020/05/an-ohio-judge-determined-to-hold-a-trial-a-defendant-removed-from-the-courtroom-with-coronavirus-symptoms-illustrate-perils-of-pandemic-era-trials.html (last visited on May 22, 2020).

DEFENDANTS' MOTION TO CONTINUE TRIAL

with the jobless rate at its highest since the Great Depression.[15]  Indeed, the impact on individuals and small businesses was so significant that a two trillion dollar economic stimulus program was enacted with bipartisan support.[16]  This means that many prospective jurors will have experienced economic hardship from layoffs, loss of hours, and temporary or permanent closure of their own businesses in the weeks that precede the scheduled start of this twelve-week trial.  Compounding matters, many of these prospective jurors may not have child care due to school or daycare closings.

At the time of filing this Motion, the trial is not permissible at the Courthouse.  Under District of Arizona General Order 20-26, "[m]ulti-defendant proceedings . . . remain cancelled until further notice." Order at 3.  Further, a gathering of the size of this trial runs afoul of the current version of Arizona's Stay Healthy, Return Smarter, Return Stronger Executive Order, which discourages gatherings of more than ten people when feasible.[17]  The CDC likewise discourages large gatherings. This multi-defendant trial will have no fewer than fifty trial participants on a daily basis, including the six Defendants, multiple counsel and staff for each Defendant, multiple prosecutors and their staff, numerous Courthouse staff, jurors, alternate jurors, and witnesses.[18]  Further, it is unclear whether any courtroom has the capacity to accommodate the trial participants with appropriate social distancing, as required by the CDC and General Order 20-26.  However, even if a courtroom could accommodate socially distant trial participants, many Defendants and defense counsel, by virtue of their assigned location in the courtroom, will be unable to view the jurors or to view or hear the witnesses.  In short, as things stand in this District at this time, the trial cannot proceed.  Although the standards may change between now and August, all of the Parties need to know now whether this

---

[15]     *See* https://www.usatoday.com/story/money/2020/05/21/coronavirus-2-4-m-file-unemployment-benefits-amid-covid-19/5228863002/ (last visited on May 22, 2020).

[16]     *See* https://www.nytimes.com/2020/03/25/us/politics/coronavirus-senate-deal.html (last visited on May 22, 2020).

[17]     *See* Executive Order 2020-36 (May 12, 2020) available at: https://azgovernor.gov/executive-orders (last visited on May 22, 2020).

[18]     In addition to these trial participants, there will be gallery observers, such as the journalists who have attended every appearance and family of the Defendants.  Even if the gallery members are excluded to make room for socially distant trial participants, a requirement under General Order 20-26, the trial participants, alone, are in excess of fifty.  Further, Defendants strenuously object to being tried in a closed courtroom to which the public has been denied access.

trial will actually proceed as scheduled.  Out-of-state defense counsel need to make travel and housing arrangements for the duration of the trial.  It is unfair to require defense counsel to risk traveling during this pandemic and to incur costs for lodging when this trial is not feasible and could so easily get derailed if it proceeds in August, particularly because it is not anticipated that the CDC will lift its recommendation against gatherings of fifty people or more anytime soon.

The pandemic has also affected trial preparation.  While defense counsel are able to engage in certain areas of trial preparation, such as review of electronic evidence, they are unable to engage in several critical areas of trial preparation.  Defense counsel are unable to meet with their clients in person to begin the process of preparing testimony, should a Defendant elect to testify.  Defense counsel are unable to review key evidence with the Defendants because the protective order prohibits Defendants from access to Jencks material outside the presence of counsel, and counsel are unable to meet in person with Defendants due to the risk of infection.  This is true for both instate and out-of-state counsel.  Defense counsel also cannot meet with potential witnesses in person to assess their demeanor and credibility.  Even if defense counsel were willing to travel to meet with the defense witnesses who are scattered arcross the country, such risky travel will not result in efficient use of counsel's time.  At this time, twenty-one states still have orders imposing a fourteen-day quarantine for out-of-state travelers.[19]  As a result, defense counsel would be required to travel to a witness's state fourteen days before an interview, which is inefficient and expensive.  Further, defense counsel have been working from home since March and have not had access to the full resources of their law firm offices to aid in trial preparation.  Thus, while certain aspects of trial preparation are possible at this time, many critical aspects of trial preparation are impeded by the risk of infection and by the current stay-home orders, and it is not certain whether the landscape will change significantly, if at all, before August.

Finally, the pandemic will affect the trial proceedings themselves in ways that cannot be wholly anticipated.  The CDC and other authorities have recommended the wearing of masks for the

---

[19]    *See* Julia Thompson, et al., USA Today, *States are reopening but many require travels to self quarantine* (May25, 2020), available at: https://www.usatoday.com/story/travel/destinations /2020/05/25/coronavirus-travel-restrictions-us-states-quarantine-requirements/5256975002/ (last visited on May 28, 2020).

DEFENDANTS' MOTION TO CONTINUE TRIAL

foreseeable future.  General Order 20-26 requires all persons entering the Courthouse to wear masks. This means no trial participants will be able to regularly observe the demeanor of or make critical credibility assessments of witnesses, Defendants, and others.  Although General Order 20-26 gives judges the authority to allow a witness to testify without a mask, being present at a large gathering of this nature without a mask is dangerous and runs afoul of CDC recommendations.  Trial participants, including attorneys, Defendants, witnesses, jurors, and Court staff, will understandably be preoccupied with potential infection every time they enter the crowded courtroom, touch a courtroom surface, examine an exhibit, or interact with another person.  Jurors will potentially seek to escape the dangers posed by intense deliberation by unduly rushing deliberations.  A cough or a sneeze in the courtroom will reverberate in untold fashion.  In short, everyone will be distracted from what should be the solemn process of evaluating the government's case.

## ARGUMENT

I.   **The Court's duty to provide a fair trial and protect the health of trial participants requires postponing the trial.**

Under the utterly unprecedented circumstances of the present moment, a continuance is necessary to:  (1) preserve the defendants' rights to effective assistance of counsel, including pre-trial preparation, trial performance, and midtrial consultation with counsel; (2) be tried by a fair cross-section of the community; (3) have meaningful confrontation; (4) have compulsory process; (5) have an impartial jury that can reasonably be expected to hear the evidence with the appropriate attention and to be free of coercive verdicts; (6) to be free of coercive pressure to plead guilty; and (7) engage in the exercise of reasonable care for the safety of those endangered by state action.  As set forth in greater detail below, it would be an abuse of discretion to deny a continuance.  The Ninth Circuit reviews the denial of a continuance under the abuse-of-discretion standard of review, *see United States v. Nguyen*, 262 F.3d 998, 1002 (9th Cir. 2001); reversing a conviction when the district court's denial was "arbitrary or unreasonable" under the circumstances of the case, *see United States v. Pope*, 841 F.2d 954, 956 (9th Cir. 1988).  Even if the decision to grant the continuance is not compelled by the preservation of the Defendants' constitutional protections, howerver, the present circumstances create a strong case for the exercise of discretion to continue the trial.

**A.      Trial during this highly contagious pandemic will impair the Defendants' right to effective assistance of counsel.**

Defendants enjoy a right to the assistance of counsel at all critical stages of a criminal proceeding, *see Montejo v. Louisiana*, 556 U.S. 778, 786 (2009), including trial and the period between indictment and trial, *see Kirby v. Illinois*, 406 U.S. 682, 688 (1972).  When defendants suffer the impairment of counsel by a government-created barrier, they need not show that inadequate performance affected the outcome – they need only show that such barriers affected counsel's performance.  *See Smith v. Robbins*, 528 U.S. 259, 287 (2000) (explaining that "various kinds of state interference with counsel's assistance can warrant a presumption of prejudice" (quotations omitted)); *Perry v. Leeke*, 488 U.S. 272, 279-80 (1989) (recognizing that, while most claims for ineffective assistance require a showing of prejudice, claims involving "direct governmental interference with a right to counsel [are] a different matter").  Where the effective performance of counsel is so unlikely as to amount to the functional equivalent of a complete denial of counsel, automatic reversal is merited.  *See United States v. Chronic*, 466 U.S. 648, 659 (1984).

Trial under the current circumstances would destroy the Defendants' right to counsel in multiple ways, and would constitute both government interference with the duties of counsel and the constructive denial of counsel.  First, trial in a setting that gravely threatens an attorney's own physical well-being amounts to the constructive denial of counsel.  *See Powell v. Alabama*, 287 U.S. 45, 53 (1932) (concluding that demand to try a capital case under threat of mob violence effectively deprived defendants of counsel).  Conducting a jury trial, particularly in a complex case like this one with a twelve-week estimate, requires sustained focus.  Commencing this trial in August will mean that counsel will be seriously concerned about exposure to a deadly virus from everyday tasks such as passing an exhibit to a trial participant, questioning a witness, consulting with co-counsel, and conferring with a client.  It would be entirely distracting to be in the Courtroom with any sneezing or coughing trial participant.

Second, in light of the masks that all trial participants will be required to wear to ensure safety, defense counsel will be unable to perform basic and essential functions, such as evaluating the demeanor or credibility of witnesses and the reactions of the court and the jurors.

8

Further, it will be difficult to hear trial participants when they speak, whether it be a witness's testimony or a whispered communication among co-counsel or paralegals.

Most importantly, Defendants have an unqualified right to consult with their attorneys throughout trial, *see Geders v. United States*, 425 U.S. 80, 88-92 (1976), which will be impossible to exercise when counsel and Defendants are wearing masks and sitting six feet apart from each other as required under General Order 20-26 and CDC recommendations.  Assuming Defendants could communicate loudly enough that their counsel could hear them, the communications would not be private, as contemplated by the Sixth Amendment.  *See Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977).

Finally, Defendants have the right to effective counsel pretrial, including effective preparation for trial, *see Maine v. Moulton*, 474 U.S. 159, 170 (1985), which has been impaired by the pandemic. Counsel cannot meet with and interview witnesses in person, which means that they are unable to assess their demeanor and credibility, an essential factor in determining whom to call to testify at trial. However, even if defense counsel and potential witnesses were willing to risk an in-person meeting, many states require a fourteen-day quarantine for out-of-state travelers, which would render such a meeting inefficient and expensive, on top of being dangerous.  Counsel cannot meet with their clients to review important documents because this Court's Protective Order prohibits Defendants from access to all Jencks Act material outside the presence of their counsel, and Defendants cannot meet with their counsel due to risk of infection.  Further, defense counsel cannot meet with the Defendants to prepare their testimony, should they elect to testify.

As a result, the assistance of counsel that the Defendants would receive would not be what the constitution demands.  Indeed, the denial of a continuance would represent an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay,'" which "violates the right to the assistance of counsel."  *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

1

**B.    Trial during this highly contagious pandemic will deprive the Defendants of trial before a fair cross-section of the community.**

2    The Defendants are guaranteed a trial before a fair cross-section of the community under both

3    the Sixth Amendment and the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, *et seq.* (the

4    "Act"), which will not occur if the trial commences in August.  "The test for a constitutionally selected

5    jury is the same, whether challenged under the Sixth Amendment of the Constitution or under the

6    [Act]."  *United States v. Miller*, 771 F.2d 1219, 1227 (9th Cir. 1985).  To prevail on such a claim, a

7    defendant must first make a prima facie showing that:  (1) a "group alleged to be excluded [from the

8    jury system] is a 'distinctive' group in the community," (2) "the representation of this group in venires

9    from which juries are selected is not fair and reasonable in relation to the number of such persons in

10   the community," and (3) "this underrepresentation is due to systematic exclusion of the group in the

11   jury selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1976).

12   Jury summonses issued for an August trial cannot produce a lawful cross-section of the

13   community.  Neither the coronavirus nor the economic impact it has occasioned have affected all

14   groups within the community uniformly.  Some portions of this District have suffered higher rates

15   of infection and experienced greater risks of serious illness and death than others.[20]  Fear of the virus

16   is not uniform along ethnic or racial lines.[21]  Additionally, "[j]ob and wage losses due to COVID-19

17   have hit Hispanic adults the hardest," and "[m]ost black and Hispanic Americans do not have

18   financial reserves to cover expenses in case of an emergency."[22]

19   It is clear that the group of people who answer the summons will not resemble that produced

20   by this Court's pre-virus jury selection panel.  Just like a jury summons issued on a major religious

21   holiday observed by a plurality of the community would not produce a "random" selection of

22   residents, neither would the act of sending a summons at the height of this pandemic when it is known

23

24   [20]    *See* CDC, *COVID-19 in Racial and Ethnic Minority Groups* (April 22, 2020), available at:

25   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited on May 22, 2020).

26   [21]    *See* Mark Hugo Lopez, et al., *Financial and health impacts of COVID-19 vary widely by race and ethnicity*, Pew Research Center (May 5, 2020), available at: https://www.pewresearch.org/

27   fact-tank/2020/05/05/financial-and-health-impacts-of-covid-19-vary-widely-by-race-and-ethnicity/ (last visited May 22, 2020).

28   [22]    *See id.*

DEFENDANTS' MOTION TO CONTINUE TRIAL

that the pandemic affects black and Hispanic American residents, "distinctive groups in the community," *see United States v. Hernandez-Estrada*, 749 F.3d 1154, 1159 (9th Cir. 2014), more severely than white residents.  Instead, such a summons "destroys the random nature" of jury selection in violation of the Act.  It also violates the Sixth Amendment because the issuance of such a summons will likely skew the venire by large margins along multiple cognizable groups.   The unequal probabilities for jury service among each group will result from systematic, rather than random factors.  Indeed, the decision to convene a jury at this time of intense social dislocation represents a "systematic exclusion" of a "distinctive group" during "the jury selection process."  *Duren*, 439 U.S. at 364.  For this reason, the trial should be continued.

### C.      Trial during this highly contagious pandemic will compromise the Defendants' right to meaningful confrontation.

The Sixth Amendment guarantees the Defendants the right to confront the witnesses against them.  An essential component of that right is:

> . . . opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States*, 156 U.S. 237, 242 (1896); *accord Maryland v. Craig*, 497 U.S. 836, 845 (1990) ("The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing.").

Here, compelling witnesses to testify while wearing a mask – a CDC and Courthouse requirement during this pandemic – would impair the jury's capacity to judge the witnesses' facial expressions, demeanor, and credibility when "standing face to face" and "looking at" the witnesses.  Although on rare occasions, courts have permitted a witness to testify with a partial facial covering to protect the witness's safety, that exception was permitted because the witness was at risk for retaliation and no alternative measure could assure the witness's safety.  For example, in *United States v. DeJesus-*

*Castenada*, 705 F.3d 1117, 1120 (9th Cir. 2013), the Ninth Circuit found no violation of the defendant's confrontation right even though the witness at issue wore a wig and a mustache to disguise himself while on the stand.  The Ninth Circuit reached this result by noting that both the government and the witness had an interest in the witness's safety because the witness was a confidential informant still working undercover to investigate a drug cartel.  Here, by contrast, nothing more is at stake than a continuance of the trial date – unmasked testimony will be perfectly safe after the pandemic.  If masked witnesses cannot be understood or have their credibility assessed, their testimony – as comprehended and evaluated by the jury – is not reliable.

Moreover, the right of confrontation may be stripped of its value even if the Court exercises its discretion under General Order 20-26 and allows witnesses testify without masks.  If the jury finds that unmasked witnesses appear nervous or concerned during their testimony, such an observation may have little probative value during a pandemic because it will be difficult to assess whether the unmasked witness is nervous about his or her safety or due to a case-related reason.  Indeed, it is reasonable to anticipate that large numbers of the trial participants will be scared to be in public during a deadly infection, a matter wholly independent of the truth of their testimony.  A continuance is necessary to protect the core of the Defendants' confrontation right.

### D.   Trial during this highly contagious pandemic will compromise the Defendants' right to compulsory process, to present evidence, and to testify.

The Sixth Amendment guarantees a defendant in a criminal case "compulsory process for obtaining witnesses in his favor."  U.S. Const., amend. IV.  "Few rights are more fundamental than that of an accused to present witnesses in his own defense."  *Taylor v. Illinois*, 484 U.S. 400, 408 (1987).  "This right is a fundamental element of due process of law."  *Id.* at 409.  Moreover, this right carries special force when the defendant himself seeks to testify.  *See Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987).  "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution."  *Id.* at 51.  The right is personal in nature and protects a defendant's right to be heard "in his own words."  *Id.* at 52.

Proceeding to trial in August will undermine these fundamental rights.  The Department of Justice has explained that the act of personal service is dangerous for both the defense investigators who would serve subpoenas on witnesses and for the witnesses and their families because personal service violates stay-home orders, travel bans, and social distancing requirements.  (*See* April 17, 2020 Letter, attached hereto as Exhibit E.)  Assuming defense investigators are even able to personally serve subpoenas, the pandemic creates a real risk of witness non-compliance.  Witnesses for the defense are located across the country.  To comply with the subpoena, each witness would be required to travel from his or her state to Arizona, stay at least one night at a hotel, eat at resturants, and appear in a courtroom filled with at least fifty people.  Each of these actions is considered to be high risk and not recommended at this time by State or Federal public health officials.  That said, even if the witnesses are willing to undertake these highly risky measures to appear at the Defendants' trial, the jury will be unable to evaluate their credibility, whether positively or negatively, if they testify while wearing masks (or without masks, as discussed above).

In any event, causing a witness to testify in a state of fear significantly prejudices the Defendants.  There is risk that the witness will sound nervous and be unable to properly focus his or her testimony.  This could lead the jury to unfairly determine that the witness is not credible, which would not be an issue if the case is continued so the trial can take place at a time when the trial participants, including witnesses, are not fearful during court appearances.

Further, the need to testify in facial coverings will seriously abridge the Defendants' right to be heard.  This is true in a literal sense – early experience with speaking through facial coverings suggests that communications are often incomprehensible.  But it also true in another sense – the jury will not be able to see and evaluate the Defendants' faces when they testify.  Speech is more than simply the expulsion of sound waves; it is a full presentation of the self, especially through facial expression.  Accordingly, if the Defendants are compelled to testify behind masks, they are not heard in their own words any more than if compelled to deliver testimony in writing.  Yet, if they are permitted to testify without masks, they do so at serious risk of infection.

DEFENDANTS' MOTION TO CONTINUE TRIAL

**E.    Trial during this highly contagious pandemic will compromise the Defendants' right to be present and to be judged without the effect of a prejudicial face covering.**

If this trial begins in August, the Defendants will attend the trial with masks as recommended by the CDC and required under General Order 20-26.  Proceeding to trial at a time when masks are needed  is unfair to the Defendants.  As a matter of due process, courts must consider whether the appearance of a defendant will prejudice the jury and take care to avoid such prejudice.  *See Estelle v. Williams*, 425 U.S. 501, 505 (1976).  For this reason, defendants may not be tried in prison attire, *see id.*, nor in shackles barring clear threats to the safety or good order of the proceedings, *see Deck v. Missouri*, 544 U.S. 622, 626-635 (2005).

If this case is tried at a time when masks are still needed, even if not mandatory, Defendants will be prejudiced.  Throughout the country there is significant controversy about the decision to wear a mask, or alternatively, to not wear a mask. [23]  Each trial participants' decision whether to wear a mask could potentially draw unwarranted prejudice from jurors.  A Defendant who chooses to wear a mask to protect themselves and those around them could draw unwarranted reactions from those jurors who dislike the masks and judge those who wear them.  Conversely, a Defendant who chooses not to wear a mask in order to avoid the other prejudice that could result (as described herein) would potentially suffer prejudice from jurors who may believe masks are a necessity.  Further, the Courthouse's mandate to wear masks, too, could prejudice the Defendants as those jurors who dislike the masks may resent being forced to wear a mask against their wishes.  In short, the prejudicial effect of the Defendants and other trial participants wearing masks – or not wearing masks – merits continuing the trial start date to a time when masks are no longer needed to ensure health.

Because both options prejudice the Defendants, this Court should continue the trial to a time when masks are no longer a divisive issue.

---

[23]    *See* Ryan Lizza & Daniel Lippman, Politico, *Wearing a mask is for smug liberals.  Refusing to is for reckless Republicans* (May 1, 2020), available at:  https://www.politico.com/news/2020/05/01/masks-politics-coronavirus-227765 (last visited on May 27, 2020).

DEFENDANTS' MOTION TO CONTINUE TRIAL

### F.   Trial during this highly contagious pandemic will compromise the Defendants' right to be tried by an impartial jury and to be free of coercive verdicts.

The Supreme Court "has recognized that a defendant has a right to a tribunal both impartial and mentally competent to afford a hearing." *Tanner v. United States*, 483 U.S. 107, 126 (1987); *see also Remmer v. United States*, 350 U.S. 377, 381-82 (1956) (recognizing that a defendant's fair trial rights are violated when outside influences "affect [a juror's] freedom of action as a juror."). The jury must be reasonably attentive. *See United States v. Barrett*, 703 F.2d 1076, 1083 n.13 (9th Cir. 1983). Further, the jury cannot be coerced into rendering a premature verdict. *See United States v. Reyes-Perez*, 956 F.2d 1169 (9th Cir. 1992). Nor can the jury be prejudiced against one party or another.

A trial starting in August cannot be accomplished consistently with these principles. Jurors cannot devote their full attention to the testimony and evidence while they worry about their safety and that of their loved ones. They cannot be expected to remain neutral in these circumstances, free of any resentment toward the prosecution for bringing the case, or, more likely, the Defendants for insisting on a jury trial. Finally, when the jury returns for deliberations, it will be incentivized to reach a quick verdict to terminate the proceedings, notwithstanding the fact that this complex case involves 100 counts. Other than avoiding service through *voir dire* or non-compliance with a summons, which should both be expected as jurors seek to avoid potentially deadly exposure to the virus, as well as the economic hardship that jury service would entail on the heels of the worst economic slump this country has faced since the Great Depression, the speed of the verdict will be the one way that empaneled jurors can control the duration of their viral exposure and economic hardship.

### G.   Trial during this highly contagious pandemic will compromise the Defendants' right to be free of coercive pressure to plead guilty.

The choice between trial and plea of guilty must be made voluntarily, and without any threats or promises of unlawful action. *See, e.g.*, *Brady v. United States*, 397 U.S. 742, 748 (1970). A trial beginning in August will undermine the voluntary character of this solemn choice in two ways. First, denial of the continuance undermines the value of the jury trial as a means for obtaining exoneration or acquittal upon less than proof beyond a reasonable doubt. Even if the government fails to present proof beyond a reasonable doubt, the Defendants may be convicted for improper reasons, including because: defense counsel is not adequately prepared; the jury lacks the accumulated wisdom and

experience of a diverse cross-section of the community; the jury cannot see a witness smirk beneath his or her mask; a crucial defense witness ignores a subpoena rather than risk his or her life to testify; the jury feels prejudice toward the Defendants because they are or are not wearing masks; the jury is too distracted to properly evaluate the evidence; the jury resents the Defendants' insistence on a trial; or a last hold-out juror surrenders his or her honest convictions to get out of a situation in which the juror is risking continued exposure to a deadly virus.

Second, denial of the continuance would force the Defendants to choose between their right to a trial and their personal safety.  The decision to waive trial by a jury is not voluntary if the trial could result in death or permanent lung damage to the Defendants or another trial participant, or their loved ones.

### H.    Trial during this highly contagious pandemic will violate the Defendants' due process right to the exercise of reasonable care toward the health and safety of persons confined by government action.

The Due Process Clause "imposes a duty on state actors to protect or care for citizens when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (*en banc*).  Due process imposes a duty on government actors to protect or care for citizens when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.  *See Wells v. Walker*, 852 F.2d 368, 370 (8th Cir. 1988); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989).  The government violates an individual's right to due process when it "affirmatively place[s] [the] individual in danger," or acts "with deliberate indifference to [a] known or obvious danger." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006).

Barring a continuance of the August trial, the Defendants will be compelled to attend the trial at a time when Arizona's coronavirus infections are at dangerous levels.  Regardless of how that trial is conducted, the Defendants will be exposed to a serious risk of contracting a deadly virus.  Failure to continue the trial will deprive them of the due process right to physical security in the face of state-created danger.

## II.   Assuming a continuance is not merited by this Court's duty to provide a fair trial and protect the health of trial participants, this Court should nonetheless exercise its discretion in favor of a continuance.

Even if the foregoing does not establish an abuse of discretion in denying the continuance, it at least provides strong reason to exercise discretion in favor of granting the motion.  Further, this crisis has interrupted trial preparation and disrupted the lives of the Defendants and defense counsel, just as it has disrupted the lives of people throughout the District.  Because defense counsel have been working from home since early March, the resources and infrastructure of defense counsel's offices have been compromised or, at times, unavailable.  The same crises afflicting the community have visited the households of defense counsel, and they make a continuance appropriate.

## III.   A continuance will not prejudice the government.

The government's case consists of voluminous documents and the testimony of its witnesses, much of it stemming from alleged conduct dating back nearly a decade.  The charges in the indictment date from 2004 through 2018  The website at issue has been shut down.  The documents at issue have been and will remain in the possession of the government, regardless of whether the trial proceeds in August or at a later time.  The government is unlikely to lose the testimony of its witnesses, who have previously testified before the grand jury or submitted to government interviews, where their information was memorialized, if the August trial date is adjourned.  Instead, those witnesses are located across the country and may decline to participate if the trial commences in August because their participation will involve interstate travel, with exposure to the virus at airports, hotels, public restrooms, and the courtroom.  To the extent that any of the witnesses are at high risk for severe symptoms of the virus or death, or the witnesses live with individuals who are high risk, traveling to Arizona for this trial would be to their detriment.

Even if the government might suffer some prejudice, it would be overwhelmingly outweighed by the risk of harm to the public and all trial participants were the trial to proceed in the near future.

## CONCLUSION

For all these reasons, this Court should enter an order continuing the August 17, 2020 trial date and setting ongoing status conferences to continue to reassess the situation and viability of conducting a safe, uninterrupted, months-long, complex trial.

1   RESPECTFULLY SUBMITTED this 29th day of May, 2020,

2

3                        Paul J. Cambria, Jr.
4                        Erin E. McCampbell
                         LIPSITZ GREEN SCIME CAMBRIA LLP
5
                         By:    /s/ Paul J. Cambria, Jr.
6                               Paul J. Cambria, Jr.
7                               Attorneys for Michael Lacey

8   *Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) § II (C)*
9   *(3), Erin E. McCampbell hereby attests that all other signatories listed, and on whose behalf this filing is submitted,*
    *concur in the filing's content and have authorized its filing.*
10

11                       Thomas H. Bienert, Jr.
12                       Whitney Z. Bernstein
                         BIENERT KATZMAN, PLC
13
                         By:    /s/ Whitney Z. Bernstein
14                              Whitney Z. Bernstein
15                              Attorneys for James Larkin

16                       Gary S. Lincenberg
17                       Ariel A. Neuman
                         Gopi K. Panchapakesan
18                       BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
                         DROOKS, LINCENBERG & RHOW, P.C.
19
                         By:    /s/ Ariel A. Neuman
20                              Ariel A. Neuman
21                              Attorneys for John Brunst

22                       Bruce Feder
                         FEDER LAW OFFICE, P.A.
23
24                       By:    /s/ Bruce Feder
                                Bruce Feder
25                              Attorneys for Scott Spear

26

27

28

DEFENDANTS' MOTION TO CONTINUE TRIAL

David Eisenberg
DAVID EISENBERG, P.L.C.

By:     /s/ David Eisenberg
        David Eisenberg
        Attorneys for Andrew Padilla


Joy Bertrand
JOY BERTRAND, ESQ.

By:     /s/ Joy Bertrand
        Joy Bertrand
        Attorneys for Joye Vaught


On May 29, 2020, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
John Kucera, john.kucera@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov

DEFENDANTS' MOTION TO CONTINUE TRIAL