**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00422-001-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Compel Production of Brady Material.[1] (Doc. 777, "Mot." or "Motion".)  The Government responded, (Doc. 810, "Resp."), and Defendants replied, (Doc. 825, "Reply").  Defendants requested oral argument, but the Court elects to resolve the motion without it.  *See* L.R. Civ 7.2(f).  After considering the motions, their attached exhibits, and relevant case law, the Court enters the following Order:

## I.    BACKGROUND

Defendants are former officers, executives, and employees of Backpage.com, a classified advertisement website that specialized in "adult" services and largely served as a forum for soliciting prostitution.[2]  (*See generally* Doc. 230, "Superseding Indictment" or "SI".)  On July 25, 2018, a federal grand jury returned a 100-count Superseding Indictment

---

[1] Defendants Larkin, Lacey, Brunst, Spear, Padilla, and Vaught move jointly to compel production of *Brady* materials.  (Mot. at 1.)

[2] As this Court previously established, the Superseding Indictment's factual allegations are taken as true at this stage.  (*See* Doc. 793, "Order" (citing *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002))).

against Defendants alleging their commission of numerous criminal acts—conspiracy, violations of the Travel Act, and money laundering—in the operation of Backpage.com ("Backpage").[3]

The instant dispute is far from fresh. Defendants' Motion relates to a previous order issued by the Honorable Steven P. Logan, United States District Judge of the District of Arizona. (Doc. 339, "J. Logan Order".) At core, that order concerned Defendants' attempt to compel the Government to sift through voluminous, previously disclosed discovery, and furnish Defendants with an itemized list of exculpatory documents pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 154 (1972). (*Id.* at 1-2.) After reviewing the relevant precedent, Judge Logan concluded that the Government was "under no obligation to identify *Brady* or *Giglio* material within voluminous discovery" and denied the motion. (*Id.* at 5.) In so doing, Judge Logan reminded the Government to abide by earlier stipulations and "turn over any *Brady/Giglio* material it comes across in the future to Defendants within 10 days." (*Id.* at 6.) That order did not end the parties' disagreements over what *Brady* required. In subsequent correspondence with the Government, Defendants identified thirty-one (31) categories of information they believed the Government was required to disclose to satisfy its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1969) and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). (Mot., Ex. 1.) Unsatisfied with the Government's response, Defendants sought the Court's intervention and filed the current motion.

## II.   LEGAL STANDARD

As a general rule, a defendant has no constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). But under *Brady v. Maryland* and its progeny, a prosecutor has an obligation, imposed by the Due Process Clause, to disclose "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87, 83 S.Ct. 1194.

---

[3] This Court's prior order explains the Superseding Indictment's charges in greater detail. (*See generally* Doc. 793.)

Favorable evidence is "any evidence" that "tend[s] to call the government's case into doubt" including "both exculpatory and impeachment material that is relevant to either guilt or punishment." *Milke v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013) (citing *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d (1999)).  The failure to disclose such evidence violates due process "irrespective of the good faith or bad faith of the prosecution." *Strickler*, 527 U.S. at 280, 119 S.Ct. 1936 (*quoting Brady*, 373 U.S. at 87).  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." [4] *United States v. Cano*, 934 F.3d 1002, 1022 (9th Cir. 2019) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Unlike other discovery obligations,[5] the duty to disclose *Brady* material is an affirmative, self-executing duty that exists irrespective of a defendant's request. *Paradis v. Arave*, 240 F.3d 1169, 1176 (9th Cir. 2001) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  But *Brady* does not oblige the government "to produce information which it does not possess or of which it is unaware." *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995).  Nor does it require the government to open its files merely

---

[4] Although at times Defendants use Federal Rule of Civil Procedure 16's materiality standard, (Reply at 3 (citing *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2006) (emphasizing that materiality under Rule 16 requires production of "information . . . [that] would have helped to prepare a defense."), interchangeably with *Brady*'s more exacting standard, it is *Brady* and not Rule 16 that is the moving force behind Defendants' motion. In fact, Defendants' Motion does not cite or mention Rule 16 once. (*See generally* Mot.)

[5] For example, Rule 16 requires the Government, upon a defendant's request, to provide or allow the defendant access to documents and objects in the Government's possession. Fed. R. Civ. P. 16(a)(1)(E).  To obtain discovery under Rule 16, a prima facie showing of materiality is required. *United States v. Zone*, 403, F.3d 1101, 1107 (9th Cir. 2005); *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995).  That, in turn, "requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'" *Santiago*, 46 F.3d at 894. (quoting *United States v. Mandel*, 914 F.2d 1214, 1219 (9th Cir. 1990)).  While Rule 16 encompasses all information "material to preparing the defense," *Brady* requires the Government disclose information in its possession, custody, or control if "favorable to an accused . . . [that] is *material either to guilt or punishment.*" *Brady*, 373 U.S. at 87 (emphasis added).  Thus, "[t]he *Brady* standard for materiality is higher than Rule 16's, and its scope narrower." *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-001785-TEH, 2016 WL 3185008, at *2 (N.D. Cal. June 8, 2016) (citing *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Rule 16 is thus broader than *Brady*. Information that is not exculpatory or impeaching may still be relevant to developing a possible defense.")).

because a defendant requests or "permit a defendant to sift through information held by the government to determine materiality." *United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016); *see also Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837 ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one."). Instead, *Brady* imposes a duty on the government to turn over only material, exculpatory or otherwise helpful to the defense, in its possession.[6]   "Possession," however, is not limited to a prosecutor's personal knowledge. *Browning v. Baker*, 875 F.3d 444, 460 (9th Cir. 2017), *cert. denied*, — U.S.— , 138 S.Ct. 2608, 201 L.Ed.2d 1014 (2018); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).  That is because prosecutors' "unique position to obtain information known to other agents of the government," obliges them to "disclos[e] what [they] do not know but could have learned. *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (en banc); *see also Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (describing the individual prosecutors "duty to learn of any favorable evidence known to [those] acting on the government's behalf").   This requirement extends to information held by subordinates, *see Kyles*, 514 U.S. at 438; *United States v. Price*, 566 F.3d 900, 908-09 (9th Cir. 2009), and at times, information held by other executive branch agencies, *see United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995); *United States v. Jennings*, 960 F.2d 1488, 1490-91 (9th Cir. 1992).  Ultimately, these duties are unequivocally the Government's alone. "It is the government, not the defendant or the trial court, that decides *prospectively* what information, if any, is material and must be disclosed under *Brady*." *Lucas*, 841 F.3d at 807 (emphasis in original).

## III.   DISCUSSION

Defendants accuse the Government of withholding approximately forty-two separate categories of *Brady* material.  Outside of rehashing a dormant discovery dispute, Defendants argue (1) that the Government misunderstands its *Brady* obligations in the

---

[6] *Brady*'s "possession" element "is treated as coextensive with that of Rule 16." *United States v. Cano*, 934 F.3d 1002, 1023 n.16 (9th Cir. 2019) (citing *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989); and *United States v. W.R. Grace*, 401 F.Supp.2d 1069, 1076 (D. Mont. 2005) ("Whether exculpatory information is in the government's possession for *Brady* purposes is measured by the same . . . test used under Rule 16(a)(1)(E) for discovery.")).

1  context of a pretrial request; (2) that its obligations require disclosure of materials in

2  possession of the National Center for Missing and Exploited Children ("NCMEC"); and

3  (3) the Attorneys General of California and Texas— organizations that they argue function

4  as an arm of the government.  (Mot. at 14-17.)

5      Before parsing Defendants individual claims, the Court briefly addresses the

6  circumstances underlying this Motion and the effects of resolution of other discovery

7  disputes on the Motion.  First, as a procedural matter, the Motion violates orders of this

8  Court.  In August 2018, Defendant Padilla moved to compel the government to furnish

9  Defendants with an itemized list identifying specific *Brady* and *Giglio* materials within the

10 Government's voluminous production of discovery materials.  As discussed previously, by

11 that time the Government's discovery productions were extensive, (*see generally* Doc.

12 294),[7] and the Court subsequently affirmed that the Government had no obligation to

13 itemize *Brady* and *Giglio* material.  (Doc. 339 at 5-6.)  Since then, the Government has

14 disclosed vast amounts of additional material in more functional format.  Discovery

15 disputes in this case have been numerous, constant, and consuming—to date, the Court has

16 considered seven separate motions to compel, (*see e.g.* Docs. 352, 400, 643, 662, 665, 740,

17 777), and their associated responsive motions.  To better manage the emergent discovery

18 disputes, the Court assumed a more active role in managing discovery and, in an August

19 19, 2019 motions hearing, (considering Doc. 679, "Motion for Sanctions", Doc. 561,

20 "Motion to Dismiss", Docs 662, 665 "Motions to Compel," and Doc. 531, "Motion for

21 Discovery"), the Court expressly "prohibit[ed] the parties from filing any further motions

22 to compel or motions for discovery until the parties contact the Court to discuss," (Doc.

23 728 at 2)—a prohibition Defendants ignored entirely in filing the instant Motion.[8]  The

24 imposition of sanctions, to include possible dismissal of Defendants' Motion, is justified

25 on this ground alone.  *See State Farm Fire and Cas. Co. v. ex rel. Rigsby*, 137 S.Ct. 436,

26

27 _____

[7] Among other things, the Government's response to Defendants prior motion, (Doc. 273),
details the manner and scope of discovery production at that early stage—to include over
10.4 million pages of documents in electronically searchable format.  (Doc. 294 at 5.)

28 [8] Including the Motion to Compel Production of Brady Material now before the Court,
Defendants have ignored that order twice.  (*See* Docs. 740, 777.)

444, 196 L.Ed.2d 340, 85 USLW 4011 (2016) ("District courts have inherent power, moreover, to impose sanctions short of dismissal for violations of court orders.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Without condoning their documented disregard for this Court's instructions, the Court nonetheless considers the merits of Defendants' arguments to ensure that this issue is not further delayed.

Second, many of Defendants' requests are now moot.[9]   Defendants also seek production of "any and all witnesses, documents and information" along three broad categories: (1) Backpage ads reported to NCMEC; (2) exculpatory information relating to Backpage's moderation practices and alleged *mens rea*; and (3) information related to user posts (or attempts) of lawful adult categories. (*See* Mot. at 9.)   The Court finds those requests satisfied by Government disclosures subsequent to the filing of this Motion. (*See* Doc. 839.)   Much of the material requested by the Motion is either currently impossible to produce or material that Defendants now possess.   For example, Defendants request for disclosure of every ad ever posted on Backpage is largely moot. (*See* Mot. at 8-9.)   Because Backpage users regularly posted ads for "lawful adult services," Defendants argue that "each and every such ad" is *Brady* material insofar as it contradicts the Government's position that the "vast majority" of Backpage ads were for illegal prostitution. (*Id.*)   But Defendants now have "each and every such ad"—at least those that still exist.   As the Court previously found after carefully considering Defendants' first motion to compel discovery,[10] (Doc. 643): "Defendants possess all the ad data held on Backpage at the time of seizure" and "are further aware of cost-free, effective tools to analyze the data." (Doc. 839 at 15.)   And because "Backpage did not use versioning . . . Defendants cannot expect to find all historical versions" versions of Backpage ads "if later deleted." (*Id.* at 15-16.)   In many ways, the Government's disclosures have far exceeded what *Brady* requires.   The

---

[9] This Order addresses those requests that remain.   *See* discussion *infra* pages 19-21 (concerning the dispute over disclosure of the thirty-one separate categories of material that gave rise to this Motion).

[10] The Court heard nearly fourteen hours of testimony relating to Doc. 643 alone. (*See* Doc. 839 at 8.)

Government's disclosures allow Defendants to identify every Backpage ad reported to NCMEC, exculpatory information related to Backpage's moderation practices, and user post information related to ads posted in lawful adult categories.  Thus, Defendants have both the material (in a searchable format) and the means to "search for exculpatory . . . practices." (*Id.* at 15 (finding that "[c]ombined with the earlier hot document production . . . the Government's disclosures meet their Rule 16 obligations.")).  With that understanding, the Court considers Defendants' request for the categories of *Brady* material the Government has allegedly withheld.

### a. *Brady*'s Materiality Requirement

Failure to disclose information only constitutes a *Brady* violation if the requested information is material to the defense.  *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995).  So, to compel contested *Brady* disclosures Defendants must establish the requested information is "material."  The parties disagree over just what "material" means in the context of a pretrial motion.  Citing *Brady*'s standard definition of materiality, the Government contends "[t]he test . . . is whether the requested evidence might affect the outcome of the trial."  (Resp. at 3 (citing *United States v. Alvarez*, 358 F.3d 1194, 1211-12 (9th Cir. 2004)); *see also United States v. Nagra*, 147 F.3d 875, 881 (9th Cir. 1998) (discussing *Brady*'s pre-trial disclosure requirements) (quoting *United States v. Hanna*, 44 F.3d 1456, 1459 (9th Cir. 1995)).  Defendants argue that definition conflates a post-trial with a pretrial materiality standard, (*see* Reply at 3 (citing *United States v. Acosta*, 357 F.Supp.2d 1228 (D. Nev. 2005) and *United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D. Cal. 1999)), and instead urge the Court to adopt the more expansive standard articulated in *United States v. Sudikoff* which interprets *Brady* to require "disclosure of exculpatory information that is either admissible or is reasonably likely to lead to admissible evidence." 36 F.Supp.2d at 1200.  Effectually, this means producing any evidence that "will 'assist [Defendants] in formulating a defense.'"  (Reply at 4 (citing *Soto-Zuniga*, 837 F.3d at 1003).)

This incongruity reflects a tension inherent in applying *Brady*'s materiality

standard—a backwards looking standard that contemplates a post-trial judicial decision—to a pretrial prosecutorial judgment.  *See Agurs*, 427 U.S. at 108 (finding a "significant practical difference" between pretrial and post-trial application of the "inevitably imprecise" *Brady* standard).  Unsurprisingly, trial courts have wrestled with applying *Brady* materiality standard's in the pretrial context—with uneven results.[11]  *See e.g., United States v. Lischewski*, No. 18-cr-00203-EMC-1, 2019 WL 2211328, at *2 (N.D. Cal. May 22, 2019) (finding it "clear that a defendant must do more than provide mere speculation that *Brady* material exists, but it is not clear that the Court must apply the post-trial materiality standard when reviewing a motion to compel *Brady* material"); *United States v. Heine*, 314 F.R.D. 498, 504 (D. Or. 2016) (defining  materiality according to "Ninth Circuit law" as "whether the requested evidence *might affect* the outcome of the trial") (emphasis added); *Acosta*, 357 F.Supp.2d at 1243 (characterizing *Sudikoff* as "a significant departure from the Supreme Court's articulation of the prosecutor's constitutional *Brady* obligations" to emphasize "[t]he Supreme Court and Ninth Circuit have held prosecutors must turn over material exculpatory evidence in pretrial discovery, not all exculpatory evidence however insignificant."); *Sudikoff*, 36 F.Supp.2d at 1200 (rejecting materiality as applied in the appellate context in favor of a pretrial standard requiring disclosure of "evidence that may reasonably be considered favorable to the defendant's case and that would likely lead to admissible evidence") (citing *Bagley*, 473 U.S. at 696); *United States v. McVeigh*, 954 F. Supp. 1441, 1449-50 (D. Colo. 1997) ("[t]here is no established procedure for due process disclosures required by *Brady* . . . [because] it is not possible to

---

[11] This difficulty is equally evident at the appellate level.  *See United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) ("Although the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty—and, concomitantly, the scope of a defendant's constitutional right—is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial."); *United States v. Neal*, 27 F.3d 1035, 1050 (5th Cir.), *cert. denied*, 513 U.S. 1008 (1994) and 513 U.S. 1179 (1994) (finding no prejudice to the defendant when the government disclosed *Brady* information during its case-in-chief); *United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) ("[U]nder *Brady*, the government need only disclose during pretrial discovery . . . evidence which, in the eyes of a neutral and objective observer, could alter the outcome of proceedings.").

1    apply the materiality standard . . . before the outcome of the trial is known").

2           The Ninth Circuit's guidance on this narrow issue is somewhat vague.[12]  The Ninth

3    Circuit has recognized that the "significant practical difference between the pretrial

4    decision of the prosecutor and the post-trial decision of the judge" is borne from unease in

5    relying on a "trial prosecutor's speculative prediction[s] about the likely materiality of

6    favorable evidence."  *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013)

7    (noting trial courts' divergent approaches) (quoting *United States v. Agurs*, 427, U.S. 97,

8    108 (1976)).  The circuit once noted *Sudikoff* with approval, but stopped short of explicitly

9    adopting *Sudikoff*'s exceptionally broad conception of pretrial materiality.[13]  *See United*

10   *States v. Price*, 566 F.3d at 913 n.14 ("For the benefit of trial prosecutors . . .we note

11   favorably the thoughtful analysis set forth by two district courts in this circuit: '[T]he

12   materiality standard usually associated with *Brady* . . . should not be applied to pretrial

13   discovery of exculpatory materials. . . .") (quoting *Acosta*, 357 F.Supp.2d at 1239-40)

14   (alterations in original).  What is clear since that thoughtful approval, however, is that

15   "[t]he mere possibility that an item of undisclosed information" might help a defense or

16   affect the outcome of a trial, "does not establish 'materiality' in the constitutional sense."

17   *Olsen*, 704 F.3d at 1184 (quoting *Barker v. Fleming*, 423 F.3d 1085, 1099 (9th Cir. 2005)).

18          As other courts have recognized, this nod to *Sudikoff* does not obviate a district

19   court's mandate to follow *settled* Ninth Circuit law.  *See e.g., United States v. Heine*, 314

20   F.R.D. 498, 504 (D. Ore. 2016); *United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL

21   ---

[12] Defendants deceptively characterize *United States v. Soto-Zuniga*, 837 F.3d 992, 1003
(9th Cir. 2016) as "expressly rejecting application of the post-trial materiality standard to
the government's pretrial disclosure obligations" in the *Brady* context.  Again, *Soto-Zuniga*
concerned the appropriate scope of Rule 16's materiality standard.  *See* discussion *supra*
note 4.  While analytical treatment of Rule 16 and *Brady* is identical in some areas, *see
Cano*, 934 F.3d at 1023 n. 16 ("The possession element of *Brady* is treated as coextensive
with that of Rule 16.") (citation and internal quotation marks omitted), their respective
standards for materiality are an exception.  *See also United States v. Muniz-Jaquez*, 718
F.3d 1180, 1183 (9th Cir. 2013) ("Rule 16 is thus broader than *Brady*. Information that is
not exculpatory or impeaching may still be relevant to developing a possible defense.")).
[13] The Ninth Circuit's hesitance is perhaps telling.  As other courts have noted, *Sudikoff*'s
exceptionally broad encapsulation of materiality "create[s] a general and impermissible
right to conduct discovery and impose[s] 'an oppressively heavy burden on prosecutors
[that] would drastically undermine the finality of judgments." *United States v. Izunza*, No.
03cr2434 JM, 2004 WL 7334066, at *3 (S.D. Cal. Jul. 8, 2004) (quoting *Spicer v. Roxbury
Correctional Institute*, 194 F.3d 547, 555 (4th Cir. 1999)).

2271430, at *48 (D.N.M. Feb. 8, 2017); *United States v. Izunza*, No. 03cr2434 JM, 2004 WL 7334066, at *3 (S.D. Cal. Jul. 8, 2004); *see also United States v. Hopkins*, 427 U.S. 123, 125 (1976) ("[C]ourts should refrain from legislating by judicial fiat.") (citation omitted). "[I]n a case like this, in which the defendant requests specific evidence under *Brady*, he must show that it is material." *Alvarez*, 358 F.3d at 1211-12. The clunky application of *Brady*'s materiality standard-- whether the requested evidence might affect the outcome of the trial"—in the pretrial context may counsel more expansive Government disclosure where doubt exists as to the usefulness or impeachment value of evidence, but does not transform *Brady* into an expansive discovery device. *Id.*; *see also United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (finding a district court did not abuse its discretion in denying a pretrial request for specific *Brady* material because "in a case in which a specific request is made, 'the test for materiality is whether the requested evidence might affect the outcome of the trial.'") (quoting *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1975)). Thus, the Court cannot adopt Defendants' position that, in the pretrial context, *Brady* compels the Government to produce any material that a defendant believes will assist formulation of a defense. And regardless, Defendants' broad requests speculating that *Brady* material exists does not satisfy another baseline *Brady* requirement. "'Mere speculation about materials in the government's files' [does] not require the district court to make those materials available, or mandate an *in camera* inspection." *United States v. Mincoff*, 574 F.3d 1186, 1200 (9th Cir. 2009) (quoting *Michaels*, 796 F.2d at 1116); *see also Lucas*, 841 F.3d at 808 ("to challenge the government's representation that it does not have *Brady* evidence, [a defendant] must do more than speculate that *Brady* material exists"). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109-10 (internal quotations and citations omitted), *reversed on other grounds by Bagley*, 473 U.S. 667.

Of course, where doubt exists as to the materiality of favorable evidence, the

Government *should* resolve such doubts in favor of full disclosure. *See Olsen*, 704 F.3d at 1183 n.3; *U.S. v. Van Brandy*, 726 F.2d 548, 552 (9th Cir. 1984) (emphasis added) (citing *Agurs*, 427 U.S. at 104). But that does not "alter the fundamental construct of *Brady*." *Lucas*, 841 F.3d at 809. It remains the case that the prosecutor, not a defendant, "make[s] judgment calls about what would count as favorable evidence" and that "the character of a piece of evidence as favorable will often turn on the context of the existing or potential evidentiary record." *Kyles*, 514 U.S. at 439. This responsibility does not, as Defendants seem to imply, translate into an "open file policy."[14] *Weatherford*, 429 U.S. at 559; *see also Kyles*, 514 U.S. at 439 (recognizing that *Brady* "requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of evidence tending to exculpate or mitigate"). Insofar as Defendants' disclosure requests rely on application of their chosen pretrial materiality standard, the requests will be denied.

### b.  Possible *Brady* Material Possessed By NCMEC

Defendants seek to bring materials in possession of the NCMEC under the Government's *Brady* umbrella because NCMEC, they argue, is an agent and arm of the government, serves a traditional police function and, here, operated as a member of the Government's "prosecution team"[15] for *Brady* purposes. (Mot. at 14-15.) They first point

---

[14] A comprehensive assessment of Defendants' positions reveals a view of *Brady* that contravenes settled precedent. Taking their positions together, it is clear Defendants see *Brady* as a discovery tool that creates an open file policy. *Contra Weatherford*, 429 U.S. at 559. Their core demand is that the Government produce identified categories of *Brady* material, or alternatively, search for and certify that such materials do not exist. That material, they argue, is any material that may be helpful to formulating a defense. (Reply at 3-4 (applying Rule 16's materiality standard to the *Brady* context).) But they "will not be limited to asserting only those defenses approved by the government." (*Id.* at 7.) Thus, "the government must produce [such] evidence . . . even if the government disagrees." (*Id.*) This flips *Brady* on its head, turning a self-executing prosecutorial duty designed to satisfy minimum due process standards into a "broad, constitutionally required right of discovery [that] 'would entirely alter the character and balance of our present systems of criminal justice.'" *Bagley*, 473 U.S. at 675 n.7.

[15] It is unclear exactly what the "prosecution team" concept means to Defendants. In the Ninth Circuit, there is no "prosecution team" requirement. *W.R. Grace*, 401 F.Supp.2d at 1078 (observing the "'prosecution team' concept . . . is a product of case law from other circuits" and "has not been embraced by the Ninth Circuit"). Instead, the scope of the government's obligation in this regard turns on "the extent to which the prosecutor has knowledge of and access to the documents" in question. *Bryan*, 868 F.2d at 1036. "Knowledge and access" are imputed when considering materials in the "custody or control of any federal agency participating in the same investigation of the defendant." *Bryan*, 868 F.2d at 1036.

to cases from other circuits finding that NCMEC acted as a government entity or agent for Fourth or Sixth Amendment purposes and ask the Court to hold similarly concerning *Brady*. Defendants then highlight facts that purportedly establish this. (Mot. at 16.) The Government counters that NCMEC is a private, non-profit organization beyond the scope of *Brady*'s disclosure requirements. And while, admittedly, NCMEC was found to have acted as a government entity or agent in other cases, the Government contends such cases are factually distinguishable, limited to Fourth and Sixth Amendment inquiries, and do not incorporate recent responsive statutory amendments. (Resp. at 6-7.) The Government argues that Defendants' position is premised on an unjustifiable expansive reading of case law "which no court has endorsed." (*Id.* at 6.) The Government is correct—Defendants offer little to persuade the Court to extend out-of-circuit rulings to hold that NCMEC is a governmental entity for *Brady* purposes or show that NCMEC's involvement in the instant investigation triggers the Government's *Brady* obligations.

At the outset, the Court reiterates that *Brady* does not require a prosecutor "to produce information which it does not possess or of which it is unaware." *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995). Instead, prosecutors are obligated to turn over only material, exculpatory or otherwise helpful to the defense, that it has in its possession. What is in a prosecutor's "possession" extends beyond what the prosecutor personally knows to include information held by subordinate investigating police officers or other executive branch agencies participating in an investigation. *See Cano*, 934 F.3d at 1023. An agency's participation in an investigation is sufficient, but not necessary, to establish that the Government has access the agency's information. *United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995). So while there remains "no obligation to turn over documents maintained by independent third parties who are not part of the investigation team," *United States v. Lankford*, No. 10-CR-00398 AWI BAM, 2013 WL 2295988 at *1 (E.D. Cal. May 24, 2013) (citing *Santiago*, 46 F.3d at 894), courts may deem the Government has "knowledge and access" of materials held by separate governmental divisions with no responsibility for the investigation or prosecution of the crime in

question.[16]  *See e.g., Santiago*, 46 F.3d at 893-94. *United States v. Blanco*, 392 F.3d 382, 393-94 (9th Cir. 2004) (finding the prosecution had knowledge and access of material in custody of the investigating agency); *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995) (holding that an "agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute."). This factual determination is necessarily made case-by-case and agency-by-agency. *W.R. Grace*, 401 F.Supp.2d at 1078.

Broadly, Defendants make three related claims: (1) that NCMEC is a governmental entity; (2) that, in relation to this case, NCMEC acted as an agent of the government and/or (3) acted as a member of the prosecution team. Defendants support their position with four out-of-circuit cases—*United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016); *United States v. Cameron*, 699 F.3d 621 (1st Cir. 2012); *United States v. Keith*, 980 F.Supp.2d 33 (D. Mass. 2013); and *United States v. Coyne*, Nos. 5:16-cr-154-01, 5:17-cr-21-01, 2018 WL 8667649 (D. Vt. Apr. 10, 2018). Chief among them is *United States v. Ackerman*. The *Ackerman* court recognized that NCMEC's authorizing statutes mandated collaboration with all levels of law enforcement and granted the organization law enforcement powers that extended far beyond those enjoyed by primary citizens, to conclude that, in the Fourth Amendment context, NCMEC is a governmental entity, and, at minimum, served as a government agent in that case.[17] *Id.* at 1296-1302. Defendants' arguments largely rehash *Ackerman*'s analysis.[18] *Compare* Mot. at 15-16 (providing five justifications to assert

---

[16] This principle is not, however, without limit. *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("[K]nowledge on the part of persons employed by a different office of government does not in all instances warrant the imputation of knowledge to the prosecutor, for the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'") (quoting *United States v. Gambino*, 835 F. Supp. 74, 95 (E.D.N.Y. 1993)).

[17] Other cases, including one cited by Defendants, disagree with *Ackerman*'s assessment. *See United States v. Coyne*, 387 F.Supp.3d 387, 398-99 (D. Vt. 2018) (recognizing NCMEC's statutory authorizations but finding that it "performs its clearinghouse function without governmental supervision" and "no evidence that NCMEC is controlled by federal or state law enforcement agencies").

[18] Defendants' remaining cases deal explicitly with NCMEC's CyberTipline function and

- 13 -

NCMEC is an agent of the government) *with Ackerman*, 831, F.3d 1296-99 (listing the same).[19]  But as the Government's emphasizes, the NCMEC functions cited by Defendants, and which in *Ackerman* "illustrat[ed] and "confirm[ed] the special law enforcement duties and powers [NCMEC] enjoys"—primarily, the CyberTipline—are not at issue here. *Ackerman*, 831, F.3d 1296-99.   Thus, while much of the *Ackerman* court's reasoning remains generally relevant, its specific application outside the Fourth Amendment context to the instant prosecution is more questionable.   Put otherwise, "just because an entity is a government entity or agent for purposes of a Fourth Amendment analysis does not necessarily mean that it is part of the prosecution team for discovery purposes in a particular case."  *United States v. Rosenschein*, No. 16-4571 JCH, 2019 WL 2298810, at *6 (D.N.M. May 30, 2019).   At the least, this distinction gives the Court pause before adopting *Ackerman*'s holding wholesale in the *Brady* context.  This is especially so when, unlike in Defendants' cases, there is little to indicate that the prosecution of Backpage directly implicated the investigatory functions (like the CyberTipline) that in *Ackerman* confirmed NCMEC's "special law enforcement duties." *Ackerman*, 831 F.3d at 1296. And Defendants do not identify any additional statutory functions—outside of those operative in *Ackerman* but not at issue here—to persuade the Court to hold that NCMEC is a governmental entity for *Brady* purposes.  A quick look at the Superseding Indictment further undermines Defendants' argument here. As the Government observes, the Superseding Indictment scarcely mentions NCMEC—the organization appears in a mere four of 211 paragraphs within the 92-page, 100-count Superseding Indictment.  At most, the Superseding Indictment shows NCMEC's involvement in a handful of previous

---

are distinguishable.  *See Cameron*, 699 F.3d at 644 (finding that "[a]lthough NCMEC is not officially a government entity," it "effectively acted as an agent of law enforcement" by receiving a "government grant to accept reports of child pornography and forward them along to law enforcement"); *Keith*, 980 F.Supp.2d at 41 ("In examining the contents of the emailed image file from the defendant's computer that was uploaded to its CyberTipline server, NCMEC was acting as an agent of federal law enforcement, and the Fourth Amendment applied.")

[19] Defendants mistakenly apply the *Ackerman* analysis holding that NCMEC was a *governmental entity* to affirm that, here, "NCMEC is an *agent* of the government."  (*See* Mot. at 15.)   Unlike in *Ackerman*, Defendants' cursory analysis hardly establishes the existence of an agency relationship between NCMEC and the Government regarding the instant prosecution.

- 14 -

attempts to persuade Backpage executives to adopt safeguards to combat sex trafficking. (SI ¶¶ 89, 97, 134, 140.)  Not once does the Superseding Indictment implicate the statutory functions central to *Ackerman*'s holding.  Nor do Defendants address the effect of post-*Ackerman* changes to NCMEC's authorizing statutes.[20]   *See The CyberTipline Modernization Act of 2018*, Pub. L. No. 115-395, 132 Stat. 5287 (Dec. 21, 2018) (emphasizing NCMEC serves it's "clearinghouse role as a private, nonprofit organization"); *The Missing Children's Assistance Act*, Pub. L. No. 115-267, § 2, 132 Stat. 3757-3760 (Oct. 11, 2018) (setting forth NCMEC's statutory duties and responsibilities).

The facts matter here.  *W.R. Grace*, 401 F.Supp.2d at 1078.  That NCMEC generally fit the definition of a government agent or entity in other cases does not, contrary to Defendants' position, automatically place NCMEC within the ambit of the Government's *Brady* requirements in this case.[21]   The Government's *Brady* requirements are not limitless.[22]   Even assuming Defendants are correct to characterize NCMEC as a government entity, the Government's *Brady* obligation to "learn of any favorable evidence known to [those] acting on the government's behalf", *Kyles*, 514 U.S. at 437, only extends to those entities "participating in the same investigation of the defendant"—something

---

[20] Ignoring the import of the statutory changes since *Ackerman*, Defendants seem to argue the statutory language is of no consequence as it does not "immunize NCMEC from being found to operate as an arm of the government."  (Reply at 6.)  That may be so. But Defendants fail to provide sufficient evidence that, as relates to the Government's investigation in this case, NCMEC "exceeded its role as a purported 'private, nonprofit organization.'"  (*Id; See also* discussion *infra* at 16-17.)

[21] Defendants are correct that other courts' rulings finding that NCMEC operated as an arm of the government in the Fourth and Sixth Amendment context are relevant.  (Reply at 4.) It does not follow, however, that such analysis can substitute for a *Brady* inquiry, or establish that, in this case, NCMEC acted as a member of the prosecution team. *See Ackerman*, 831 F.3d at 1302 (reviewing the distinct tests adopted by the Courts of Appeal to analyze agency relationships for Fourth Amendment purposes).

[22] A prosecutor is "under no obligation to turn over materials not in its control." *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991).  These *Brady* obligations do sometimes extend to information held by other executive branch agencies, particularly agencies that participated in the investigation.  "Documents held by another executive branch agency are deemed to be 'in possession of the government' if the prosecutor has 'knowledge and access to the documents.'"  *Cano*, 934 F.3d at 1023 (quoting *Bryan*, 868 F.2d at 1036)).  When the agency participates in the same investigation, knowledge and access are presumed. *Id.*  This case-by case determination turns on "the extent to which the prosecutor has knowledge of and access to *the documents* sought by the defendant," not whether "the prosecutor has knowledge that certain *facts* might exist."  *Id.* at 1024 (quoting *Bryan*, 868 F.2d at 1036) (emphasis in original).

1    Defendants fail to establish.  *Bryan*, 868 F.2d at 1036.  What Defendants offer to prove

2    NCMEC's participation is weak.  Namely, Defendants cite: (1) the public statements of

3    NCMEC's former President urging the Department of Justice to prosecute Backpage; (2)

4    NCMEC's voluntary compliance to the Government's request for information; and (3) the

5    fact that four current or former NCMEC employees are listed as possible Government

6    witnesses. (Mot. at 16-17.)

7           First, Defendants argue the statements of NCMEC Co-founder and Director John

8    Walsh from a DOJ-sponsored event confirm that NCMEC acted as "an arm of the

9    government with respect to *this specific case*."  (Reply at 5 (emphasis in original)).  Mr.

10   Walsh's comments alone are insufficiently probative of NCMEC's degree of participation

11   to merit the imposition of expansive discovery obligations on the prosecution nor are they

12   properly attributable to the government merely because the government sponsored the

13   event.  Rather, his remarks focus on NCMEC's mission generally.  (*See* Reply. at 5 (citing

14   Video of Oct. 4, 2019 Event, available at https://www.justice.gov/opa/video/lawful-access-

15   summit).)   Where the comments do implicate Backpage.com, Mr. Walsh focuses on

16   NCMEC's congressional advocacy designed to shed light on Backpage's alleged illegal

17   activities.  The Court cannot draw any conclusions from NCMEC seeking congressional

18   action on an issue that falls squarely within nonprofit mission to "lead[] the fight against

19   abduction, abuse and exploitation."  NATIONAL CENTER FOR MISSING AND EXPLOITED

20   CHILDREN, https://www.missingkids.org/ (last visited June 26, 2020).   Only one brief

21   comment indicates any NCMEC involvement in this case.  And while, admittedly, Walsh's

22   laudatory representation that a single employee "helped [the Government] prepare the

23   case" might indicate some NCMEC involvement in the instant prosecution, it hardly

24   indicates the level of that involvement. (Reply at 5.)  The degree of NCMEC's involvement

25   is pivotal to this inquiry.  A single off-hand comment by a former NCMEC executive is

26   insufficient to support expanding the Government's *Brady* obligations as Defendants

27   request.[23]

28   _____

[23] Defendants' argument concerning the meetings and emails of another former NCMEC
President, Ernie Allen with Department of Justice officials fail for similar reasons.  (*See*

Second, Defendants fail to show how complying with the Government's request for information transforms an entity into "agent of the government." (Mot. at 17.) Mere compliance with a government request for information that squarely falls within NCMEC's nonprofit mission does not indicate an agency relationship with the government in a specific case. *See United States v. DiTomasso*, 932 F.3d 58, 69 (2d Cir. 2019) (holding that NCMEC's "forwarding of reports to law enforcement" was no foundation the "contention that there was an action by NCMEC that violated [defendant's] Fourth Amendment rights").

Lastly, Defendants' remaining justification—that an identifying former NCMEC employees as possible witnesses makes NCMEC an arm of the Government—is not supported. Of course, the inclusion of witnesses in some instances could add weight to a well-developed argument supported by probative facts indicating that an organization like NCMEC acted as an arm of the government. But here, Defendants' argument is not well developed and is lacking facts. Like each argument Defendants raise, the Government's inclusion of four current or former NCMEC employees as possible witnesses is not, by itself, sufficiently probative to deem information held by NCMEC is within the knowledge and access of the Government.[24]

Non-profit organizations like NCMEC "do not become government entities simply because they are engaged in work of public significance," have a mission coextensive with a government investigation, and then cooperate with that investigation. *United States v. Coyne*, 387 F.Supp.3d 387, 397 (D. Vt. 2018). Without more to establish NCMEC's participation in the instant investigation and affirm the materiality of the information sought, the Court will not order the Government to search a non-profit organizations coffers for *Brady* material neither party knows exists. It remains the case that "a federal prosecutor need not comb the files of every federal agency which might have documents" regarding the defendant. *Zuno-Arce*, 44 F.3d at 1427.

---

Mot. at 16-17.)

[24] None of the above facts are particularly surprising given the obvious overlap between NCMEC's mission and the Government's charges; all seem likely to occur regardless of NCMEC's involvement in the instant prosecution.

### c. *Brady* Material Held by the California and Texas Attorneys General

In the closing paragraphs of their motion, Defendants tack on a final, sparsely worded request for disclosure of any *Brady* evidence in possession of the Attorneys General of the States of California and Texas. (Mot. at 17.) As discussed, the Government is required to disclose materials beyond that in physical possession of the prosecution team itself. *See United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1089) (citing *United State v. Robertson*, 634 F.Supp. 1020 (E.D. Cal. 1986), *aff'd*, 815 F.2d 714 (9th Cir.), *cert. denied*, 484 U.S. 912, 108 S.Ct. 258, 98 L.E.2d 215 (1987) ("Limiting 'government' to the prosecution alone unfairly allows the prosecution access to documents without making them available to the defense.")). But a prosecutor is "under no obligation to turn over materials not in its control," *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991), including materials held exclusively by state agencies. The Ninth Circuit has consistently held "that prosecutors are never deemed to have access to material held by state agencies." *U.S. v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (citing *Aichele*, 941 F.2d at 764). Normally, the federal government's *Brady* obligations do "not extent to 'files that were under the exclusive control of state officials,'" *Amado v. Gonzalez*, 758 F.3d 1119, 1137 (9th Cir. 2014) (quoting *Benn v. Lambert*, 283 F.3d 1040, 1061 (9th Cir. 2002)), but in special circumstances, federal prosecutors can be so obligated. For instance, when federal and state authorities pool investigative energies to a considerable extent and state investigators function as agents of the federal government under the principles of agency law, a court may require federal prosecutors to disclose related *Brady* material. *See United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011) (citing *United States v. Antone*, 603 F.2d 566, 569-70 (11th Cir. 1989)).

As far as the Court can tell, this is not a like circumstance. Defendants cite no case law or substantively address the Government's response on this matter. Instead, Defendants point to a single DOJ press release that praises state law enforcement for its assistance. Defendants claim this "admission of partnership" throws open the doors of discovery and obliges the Government to produce any *Brady* material in the possession of

those state law enforcement agencies.[25]  (Mot. at 17.)  It does not.  Defendants' claims are unavailing.  Defendants brief argument cites no other facts indicating the state agencies pooled their investigative resources with the prosecution or functioned as agents of the federal government.  (Reply at 6.)  Instead, they imply that it is Government's burden to deny their unsupported allegations.  (*Id.*)  That is simply not the case.  Given the paucity of evidence supporting Defendants' claim and the clear weight of case law against granting their request, the Court concludes that Defendants fail to adequately challenge the Government's representation that it has complied with its *Brady* obligations regarding the Attorneys' General of Texas and California.  *See Lucas*, 841 F.3d at 808.  This does not, of course, affect the Government's continuing duty to comply with its *Brady* obligations, prior stipulations, and representations to this Court.  *See United States v. Fort*, 478 F.3d 1099, 1100 (9th Cir. 2007) (order denying reh'g *en banc*) (clarifying that "evidence gathered by state and local actors becomes subject to the disclosure obligation established by Rule 16 when it passes into federal possession for the purposes of a federal prosecution of the same defendants for the same acts that were initially subject to the state or local investigation"); *see also United States v. Cerna*, 633 F.Supp.2d 1053, 1060 (N.D. Cal. 2009) ("When state police gives a federal investigator access to its files for the purpose of pulling items of interest to a federal investigation, *Brady* requires that the prosecution team review as well for *Brady* materials within the same universe of files.").

### d.  Defendants' Specific Requests

The above debate obscures the fact that the Government has already responded to Defendants' request for the disclosure of thirty-one categories of *Brady* materials.  (Mot. at 10-14; Resp., Ex. A.)  Finding many of these responses infirm, (Reply at 7), Defendants

---

[25] The DOJ press release is far less probative of the level of partnership between the federal and state authorities than Defendants represent. "Partner" is used twice in the document. In the first instance, it modifies "the IRS Criminal Investigation," not "the Texas and California Attorney Generals' offices." In the second, it is used prospectively to signal future cooperation on human trafficking with law enforcement agencies generally. *See* April 9, 2018 DOJ Press release, available at https://www.justice.gov/usao-cdca/pr/justice-department-leads-effort-seize-backpagecom-internet-s-leading-forum-prostitution (last visited Jan. 16, 2020) ([S]ex trafficking will not be tolerated. Together with our law enforcement partners, the FBI will continue to vigorously combat this activity and protect those who are victimized.").

take particular issue with specific responses where they conclude the Government has improperly restricted production to only material relevant "to the defenses that the *government* has decided Defendants can assert," (*see* Resps. 1, 2, 6, 10, 11, 13, 24, 27), or responses where the Government improperly "qualif[ies] its duty to disclose by what it understands to be its 'obligations under Rule 16, *Brady*, and 18 U.S.C. § 3500' (*see* Resps. 4, 6, 7, 9, 12, 15, 17, 18, 19, 20, 21, 22, 23, 25, 26, 28, 29.)." (Reply at 7-8.) Accordingly, their defense "will not be limited to asserting only those defenses approved by the government" and, "[c]onsequently, the government must produce any evidence that may 'assist in formulating a defense' even if the government disagrees about the viability of a defense." (Reply at 7.) As discussed, the Court does not endorse Defendants' view of *Brady*'s pretrial materiality obligations and, while counseling the Government to err on the side of disclosure where doubt exists as to the usefulness of possible favorable evidence, finds the Government responses satisfactory. (*See* Resps. 4, 6, 7, 9, 12, 15, 17, 18, 19, 20, 21, 22, 23, 25, 26, 28, 29.) Furthermore, while some of Defendants' requests seek access to specific material they believe in the Government's possession, the remaining requests are both overbroad and unsupported. Such conclusory allegations do not satisfy the threshold showing of materiality required under *Brady*. Merely alleging the Government has failed to disclose favorable evidence is not enough; such a rule "would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgments." *Bagley*, 475 U.S. at 675 n.7.

Defendants' also ask this Court to ignore well-settled precedent. "It is the government, not the defendant or the trial court, that decides *prospectively* what information, if any, is material and must be disclosed under *Brady*." *Lucas*, 841 F.3d at 807. Contrary to Defendants' representations, *Brady*'s constitutional mandates are self-executing and fall exclusively within the province of a prosecutor. *Paradis*, 240 F.3d at 1176. *Brady* is not an evidentiary rule granting broad powers to a defendant. *Weatherford*, 429 U.S. at 559; *see also Bagley*, 473 U.S. at 675 n. 7 (holding a defendant's right to disclosure of favorable evidence does not "create a broad, constitutionally required right

- 20 -

of discovery."). Defendants cite no case that "alter[s] th[is] fundamental construct of *Brady*, which makes a prosecutor the initial arbiter of materiality and disclosure." *Lucas*, 841 F.3d at 809 (citing *Ritchie*, 480 U.S. at 60). True, the Government cannot restrict Defendants strategy of defense, but it remains a prosecutor's duty to comply with *Brady* and prospectively decide what information is material. This discretionary obligation may be vexing to Defendants and difficult to administer for the Government, but Defendants simply do not provide enough to rebut the Government's positions regarding its *Brady* compliance. Although the lack of support for their challenge to Government's representations on all the above questions is fatal to Defendants Motion, the Court leaves the Government with a cautionary note—it is the Government that is best placed to understand the degree to which NCMEC and state law enforcement was involved in the investigation of this case. The continuing duty to meet the minimum constitutional standards of due process enshrined by *Brady* belongs to the Government. It is there too, that the risks of incomplete disclosure squarely fall.

### IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** DENYING Defendants' Motion to Compel Production of Brady Material. (Doc. 777.)

Dated this 26th day of June, 2020.

Honorable Susan M. Brnovich
United States District Judge