Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin E. McCampbell (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Thomas H. Bienert, Jr. (CA Bar No.135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Additional counsel listed on next page

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>                    Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**DEFENDANTS' MOTION TO CONTINUE TRIAL**<br><br>(Oral argument requested) |

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

ii

## MOTION

Defendants Michael Lacey, James Larkin, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught ("Defendants"), by and through their undersigned attorneys, move for an order continuing the trial date from April 12, 2021, to September 20, 2021, because of the ongoing coronavirus pandemic and because the Ninth Circuit has recently taken action related to Defendants' petition for a writ of mandamus regarding their Motion to Recuse. Specifically, just last week the Ninth Circuit scheduled oral argument on the mandamus petition for March 3, 2021, just one month before the trial in this case is scheduled to commence.   Given the basis of that motion, this Court should await that ruling before making further substantive rulings in the case (including the outstanding motion to dismiss and various motions in limine), and the parties should be allowed sufficient time after the Ninth Circuit rules to address further proceedings, whether they be before this judge or a different judge. Continuing the trial to September should accommodate these concerns, and should ensure the safety of all participants as it relates to the ongoing pandemic. The Motion is based on the following Memorandum of Points and Authorities, the Court's file, all of the submissions associated with Defendants' May 29, 2020, Motion to Continue (see Docs. 990, 992-95, 1025), incorporated herein by reference, and any evidence or argument presented at the hearing on this Motion. Excludable delay under 18 U.S.C. § 3161(h)(1) may occur as a result of this Motion or of an order based on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### *Background*

On June 29, 2020, this Court continued the trial of this matter from August 17, 2020, to January 12, 2021, because the Court felt it could not "ensure the health and safety of all trial participants" because of the pandemic. (See Doc. 1031 at 1.) In its Order, the Court noted "there will always likely be 40 people in the Courtroom," "there is not enough space to ensure that everyone is physically distanced," and "many witnesses, attorneys and parties must travel to Arizona for trial and travel is still fraught with risk." (*Id.*) The Court also expressed concern "about maintaining the health and safety of the jurors give[n] the space issues and the length of the trial, 12 weeks." (*Id.*) Defendant Larkin subsequently moved to continue the trial until April 13, 2021, due to the ongoing

DEFENDANTS' MOTION TO CONTINUE TRIAL

pandemic and a medical leave for one of the defense counsel.  (Doc. 1058.)  The Court granted that motion.  (Doc. 1068.)

Although the number of COVID-19 cases declined over the summer, the fall and winter have brought an explosive resurgence of COVID-19.  When the Court continued the trial on June 29, 2020, the national seven-day average of new COVID-19 cases was 40,008 cases per day.[1]  On January 13, 2021, the national seven-day average of new COVID-19 cases was 246,354 cases per day—more than six times the number of cases on June 29, 2020.[2]  Coronavirus-related fatalities and hospitalizations in the United States now are at record highs.[3]

In Arizona, on June 29, 2020, the seven-day average of new COVID-19 cases was 2,834 cases per day; on January 13, 2021, the number was 9,294 cases per day—more than three times the number of cases on June 29.[4]  Arizona now has the highest rate in the Nation for seven-day COVID-19 positivity.[5]  The number of individuals hospitalized in Arizona is nearly double what it was during the worst days of the summer surge.[6]  These conditions are expected to get worse.[7]  Recognizing that Arizona has one of the "highest per capital COVID infection rates in the world," Chief Judge G. Murray Snow just prohibited all civil and criminal jury trials for the months of January and February.

---

[1]     *See* New York Times, Coronavirus in the U.S.: Latest Map and Case Count, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?action=click&module=Top%20Stories&pgtype=Homepage (last visited January 14, 2021).

[2]     *Id.*

[3]     *See* Maria Caspani, Peter Szekely, Reuters, *United States Tops 21 Million COVID-19 Cases With Record Hospitalizations as States Ramp Up*, Reuters (Jan. 6, 2021) available at: https://www.reuters.com/article/us-health-coronavirus-usa/u-s-tops-21-million-covid-19-cases-with-record-hospitalizations-as-states-ramp-up-vaccinations-idUSKBN29B23B  (last visited Jan. 12, 2021).

[4]     https://www.nytimes.com/interactive/2020/us/arizona-coronavirus-cases.html (last visited January 14, 2021).

[5]     *See* Alison Steinbach, USA Today, *Arizona Again Ranks No. 1 for Weekly COVID-19 Case Rate as State Reports Nearly 9k New Cases, Rising Hospitalizations* (Jan. 11, 2020), available at: https://www.usatoday.com/story/news/local/Arizona-health/2021/01/11/Arizona-coronavirus-jan-11-update-8-995-new-cases-6-new-known-deaths/6621642002/ (last visited Jan. 12, 2021).

[6]     *See id.*

[7]     *See id.*

1   (*See* General Order 21-02.)  He warned that trials may be further postponed depending on the public

2   health situation.  (*See id.*)

3        In short, the same reasons that justified the previous continuances of the trial still exist, but

4   are even more compelling today.

*Argument*

6        As set forth in more detail in Defendant's first motion to continue the trial on account of the

7   pandemic (Doc. 990), which Defendants incorporate by reference, the pandemic implicates the

8   Court's obligation to provide a fair trial and protect the health of trial participants.  Among other

9   things, a trial during the pandemic would:

10   - impair Defendants' right to effective assistance of counsel;

11   - deprive the Defendants of trial before a fair cross-section of the community;

12   - compromise the Defendants' right to meaningful confrontation;

13   - compromise the Defendants' right to compulsory process, to present evidence, and to

14     testify;

15   - compromise the Defendants' right to be present and to be judged without the effect of a

16     prejudicial face covering;

17   - compromise the Defendants' right to be tried by an impartial jury and to be free of coercive

18     verdicts;

19   - compromise the Defendants' right to be free of coercive pressure to plead guilty; and

20   - violate the Defendants' due process right to the exercise of reasonable care toward the

21     health and safety of persons confined by government action.

22   **I.   The COVID-19 Pandemic is Worse Now Than in June and August 2020.**

23        The COVID-19 pandemic has not improved since last May when Defendants moved for a

24   continuance, nor last June when the Court granted the continuance, nor last August when the trial

25   was scheduled, but instead has worsened significantly.  Not only is the incidence of COVID-19 up

26   dramatically, but:

27

28

- **Hospital Utilization/COVID-19 Deaths**. The health care system is straining to cope with the surge of cases and in certain places is "approaching a breaking point."[8]   On October 13, there were 36,000 people with COVID-19 in U.S. hospitals on January 13, there were 130,000.[9]  This week states reported 23,259 COVID-19 deaths, 25 percent more than in any other week since the pandemic began.[10]  The State of California, where counsel for two defendants and one government counsel reside and practice, has imposed a regional stay home order and banned all travel in excess of 120 miles from home because the ICUs are operating in surge mode in many regions in the state.[11]  Tragically, some hospitals have formed teams to assess and ration care, something previously thought of as unthinkable in the United States.[12]  Arizona hospitals are preparing for the possibility of rationing hospital care too, as the number of patients hospitalized in Arizona for known or suspected COVID-19 cases was at 4,866 on January 15, 2021, far above last summer's peak of 3,517 on July 13.[13]

- **More Contagious Coronavirus Variants**. A new, significantly more contagious variant of the coronavirus has been identified in five States, one of them being Arizona.[14]  The impact of this new variant on public health is unclear, but prior public health measures, such as social distancing of at least six feet and mask wearing, may not provide protection

---

[8]   *Id.*

[9]   *See The Worst Week for Deaths Since the Pandemic Began*, The Atlantic (Jan. 14, 2021), available at https://www.theatlantic.com/health/archive/2021/01/covid-19-deaths-are-25-percent-higher-any-other-week/617686/ (last visited Jan. 15, 2021).

[10]   *Id.*

[11]   *See, e.g.*, Jonathan Vigliotti, CBS News, *Coronavirus Surge in Southern California Leaves Hospitals On Verge of Rationing Care* (Jan. 8, 2021), available at: https://www.cbsnews.com/news/covid-california-hospitals-surge-rationing-care/ (last visited January 13, 2021).

[12]   *See id.*

[13]   *See* Alison Steinbach, *Arizona passes 11K known COVID deaths as state remains national hot spot for case and death rates*, The Arizona Republic (Jan. 15, 2021), available at https://www.azcentral.com/story/news/local/arizona-health/2021/01/15/arizona-coronavirus-jan-15-update-9-146-new-cases-185-new-known-deaths/4173742001/ (last visited Jan. 15, 2021).

[14]   *See* Ryan W. Miller, USA Today, *How Will You Be Told When It's Your Turn for a COVID-19 Vaccine?  It's Complicated* (Jan. 6, 2021), available at: https://www.usatoday.com/story/news/health/2020/12/24/covid-vaccine-eligibility-how-when-americans-notified/4008128001/ (last visited Jan. 12, 2021).

DEFENDANTS' MOTION TO CONTINUE TRIAL

from the new variants.  As a result, the likelihood for COVID-19 to spread among trial participants or witnesses travelling to the trial is much greater than last August.

- **S**low **Vaccine Rollout**.  Although the United States has authorized two vaccines for distribution and has begun vaccination of healthcare workers and, in some places, those over age 75 or 65, it unrealistic to assume that all or even many of the trial participants will be vaccinated by April.  Indeed, it is anticipated that there will not be enough vaccine supplies to make the vaccines readily available to all Americans until the summer.[15]

## II.   This Lengthy Multi-Defendant Case Cannot Be Properly Prepared or Safely Tried as the Pandemic Rages.

First, the defense cannot effectively prepare the more significant witnesses for their testimony remotely, which means counsel's trial preparation efforts will be ineffective.   Although videoconferencing is suitable for some tasks, it is not suitable for preparing significant witnesses.  In seeking a pandemic-related continuance in another complex, four-defendant criminal case, the government recently justified its request for a continuance by telling the Court (in a joint filing with the defense):

> [V]ideoconferencing may be adequate to prepare certain out-of-state witnesses whose testimony is limited in scope, and/or does not involve numerous exhibits.  The government estimates that there are at least half a dozen witnesses it could prepare in this manner.  In this case, however, many witnesses—all of whom reside out of state—are expected to testify at length on direct and cross-examination.  Their testimony will involve hundreds of exhibits, including documents and audio recordings.  The parties respectfully submit that videoconferencing is not an adequate substitute for in-person preparation of such witnesses.  It cannot, for instance, replace the nonverbal cues between lawyers and clients (or lawyers and co-counsel), which can be just as important as the words spoken, but are missed when communicating via video.  It likewise hampers lawyers' ability to pick up on nonverbal cues from witnesses.  It imposes heightened burdens on witnesses—including third-party civilian witnesses—by increasing the amount of time needed to prepare due to unavoidable communication lags and other technological issues, as well as the fact that presenting exhibits to a witness remotely, or

---

[15]   *See* Ryan W. Miller, USA Today, *How Will You Be Told When It's Your Turn for a COVID-19 Vaccine?  It's Complicated* (Jan. 6, 2021), available at: https://www.usatoday.com/story/news/health/2020/12/24/covid-vaccine-eligibility-how-when-americans-notified/4008128001/ (last visited Jan. 12, 2021).

DEFENDANTS' MOTION TO CONTINUE TRIAL

> playing audio remotely, can be cumbersome.   Thus, while videoconferencing has allowed some cases in this district to proceed, it is substantially more difficult in a case involving as many witnesses, exhibits, defendants and attorneys as this one. And no case has, to date, required preparing the majority of trial witnesses via videoconference, as this one would.

(*See United States v. Colburn*, 19-CR-10080-NMG (D. Mass.), Joint Response to Court Notice at 2, a true and correct copy of which is attached hereto as Ex. A.)  Here, with one exception, the defense counsel all reside and practice at great distance from *their clients* as well as from nearly all the potential witnesses.

Second, this will not be an ordinary trial.  This case has six defendants and the government projects the trial of its 100-count indictment will last twelve weeks (inclusive of its case-in-chief, defense case, and rebuttal case), with 98 named government witnesses, plus numerous defense witnesses, many of whom must travel from out of State.  The trial likely will involve no fewer than 50 daily trial participants (six Defendants, defense counsel and staff, government counsel and staff, judiciary staff, jurors, and alternates), *plus* members of the press, Defendants' family members, and the public.  If any trial participant, witness, or spectator experienced any symptoms of the coronavirus (with mild symptoms mirroring symptoms associated with the common cold or seasonal allergies such as a runny nose), or contracted the virus, the trial would have been halted until all trial participants quarantined and tested negative for the virus.  (See Doc. 990 at 4-7.)  With the community spread of the coronavirus rampant across the country, and in Arizona, the odds that this case could be tried without at least one quarantine, and likely multiple quarantines, are slim, particularly with witnesses and counsel having to fly to and from Phoenix and dozens of out-of-town trial participants risking exposure from things like going to a restaurant for dinner.  Repeated breaks for quarantining and testing almost assuredly would derail a trial of this complexity and duration.  Moreover, in the event that one of the trial participants tests positive for the virus, the contact tracing that would be required would be monumental, and could become a multi-state endeavor, something that Arizona's already stressed public health system should not be forced to bear in the name of expediency.

Third, certain Defendants and defense counsel are at high-risk of serious complications or death, by virtue of their age, medical conditions, or both (*see* Docs. 992-95), if they contract this virus

DEFENDANTS' MOTION TO CONTINUE TRIAL

and should not be placed in harm's way when we are months away from being able to proceed to trial safely. The illness associated with this virus can be devastating even to those who are in excellent health, as it is well-documented that it has killed otherwise healthy young people or has left them with serious, long-term health complications. No one—witness, juror, counsel, Defendant, or Court staff—should have to put their life in jeopardy to appear at an April trial when a brief adjournment will enable the trial to proceed safely. The defense also faces the very real risk that witnesses will refuse to travel to Arizona and testify in a crowded courtroom as the pandemic rages. Moreover, defense counsel are not aware of any courtroom that would allow the trial participants to participate in a socially distant manner that also provides for their meaningful participation.

## III. Federal Courts Across the Country are Suspending Jury Trials Because of the Pandemic.

The vast majority of federal courts have suspended *all* jury trials, including in uncomplicated single-defendant cases.[16] Unsurprisingly, courts also are routinely postponing lengthy multi-defendant cases.

For example, in one of the Varsity Blues cases in the District of Massachusetts, the defense recently moved to postpone the trial from February 2021 to September 2021. That case will be "a four-defendant criminal trial" "that is likely to last four or five weeks—and perhaps longer, depending on the length of any defense cases and whether any of the defendants choose to testify—in a closed courtroom." (Ex. A at 3.) (In other words, that case has *fewer* defendants than here and the trial likely will be much *shorter* than here.) The case will be tried in Boston, where COVID-19 is not as rampant as in Arizona. When the court questioned that need for the continuance, the government said it wished to "try this case as soon as is reasonably practical and safely possible" and "the earliest, most realistic such date is September 2021." (Ex. A at 6.) The court subsequently granted the continuance and rescheduled the trial for September 13, 2021. (*See United States v. Colburn*, 19-CR-10080-NMG (D. Mass.), Order at 2, a true and correct copy of which is attached hereto as Ex. B.)

---

[16] *See* U.S. Court Closings, Restrictions, and Reopenings Due to COVID-19, Paul Hastings (last updated Jan. 12, 2021) https://www.paulhastings.com/about-us/advice-for-businesses-in-dealing-with-the-expanding-coronavirus-events/u.s.-court-closings-cancellations-and-restrictions-due-to-covid-19 (last visited January 12, 2021).

Similarly, in a complex criminal case in the Northern District of California (also a location with less COVID-19 than in Arizona), a trial that was anticipated to last for several months on an indictment that was issued in 2018 was continued from March 9, 2021, to July 13, 2021, to ensure that the trial commences at a time when the "community is safe" due to vaccination of the general public. (*See United States v. Elizabeth Holmes*, 18-CR-258-EJD (N.D.C.A. Dec. 18, 2020) (Doc. 650) at 2, a true and correct copy of which is attached hereto as Ex. C.)  In continuing the trial, the court recognized that "a continuance of the trial will cause great inconvenience to the victims," as well as the Defendant "who wishes a speedy opportunity to defend against the charges." (*Id.*)  The court described those rights as "important," but nonetheless continued the trial because "paramount to the court is the safety and health of the community."[17] (*Id.*)

## IV.   The Significant Logistical Challenges to Prepare This Case for Trial Require a Prompt Decision.

We currently are three months out from the scheduled trial date, but the Court should not hold off on ruling on this Motion until closer to the trial.  Although the incidence of COVID-19 might drop from its current peaks, there is no reason to believe the incidence will drop to a level where this case can be properly prepared and safely tried before a significant part of the general population is vaccinated—and that will not happen before this summer.

The defense (and the government) need a decision on this Motion as soon as possible.  They need to block off more than twelve weeks from their calendars and need as much notice as possible to accomplish that scheduling feat.  If the trial is not postponed, the defense team needs to make housing arrangements in Phoenix and arrange for witness to travel to Phoenix.  These logistical issues must be addressed with as much notice as possible, but also knowing that the trial will indeed proceed as planned.  By the time the parties are six weeks away from the trial date, these arrangements must be completed to enable counsel to focus on the important work of preparing for the trial, rather than

---

[17]   Last week, the Chief Judge of the Ninth Circuit, Sydney R. Thomas, also cancelled the Ninth Circuit Judicial Conference, scheduled for mid-July 2021, noting that the "national surge in COVID-19 cases and issues regarding accessibility of vaccines" made it "safer and more prudent" to cancel the conference. (*See* Email from Sydney R. Thomas, Jan. 7, 2021, a true and exact copy of which is attached hereto as Exhibit D.).

scrambling to address logistical issues at the last minute.  For these reasons, Defendants have filed the Motion now, rather than a month from now, as all participants need a ruling on this Motion as soon as possible.  Further, based on the information available at this time concerning the widespread availability of the vaccine by the end of summer, a September start date is realistic.

**V.    A Continuance Will Enable the Parties to Obtain a Ruling From the Ninth Circuit.**

As the parties discussed at the most recent status conference, the Ninth Circuit ordered briefing on the Defendants' petition for a writ of mandamus in which Defendants seek an order overturning this Court's denial of the Defendants' Motion to Recuse.  Since then, on January 15, 2021, the Ninth Circuit announced that it would hear oral argument on March 3, 2021.  This material development, alone, merits granting the brief continuance requested in this Motion.  Based on the Ninth Circuit's expeditious handling of the petition, a decision from the Ninth Circuit can be expected within a reasonable period of time after the argument.  Granting this Motion will ensure that the trial participants have the time to obtain the Ninth Circuit's order, and obtain rulings from the presiding judge in this case on the outstanding motions (including motions in limine, a discovery motion, and a motion to dismiss), in sufficient time to finalize their trial preparation before the start of the trial. Indeed, starting the trial in April not only creates health and safety issues for the trial participants and the Phoenix community, but it also could result in the logistical nightmare of this Court being ordered to recuse on the eve of, or during, the trial.

## CONCLUSION

For all these reasons, Defendants request that the Court continue the April 12, 2021, trial date to September 20, 2021.  The continuance should allow many of the trial participants to be vaccinated prior to the start of the lengthy trial, as well as providing time for a large part of the general population to be vaccinated.  The continuance will dramatically reduce the potential for a COVID-19 outbreak among the trial participants and provide reasonable certainty that, once the trial begins, the trial will be able to proceed to a verdict, if needed.[18]

---

[18]    Public health officials are reasonably certain that life will return to normal in the third or fourth quarters of 2021, after the vaccine has been made available to the general population.  *See* Elisabeth Rosenthal, When Will We Throw Our Masks Away? I asked Dr. Fauci, New York Times (Nov. 19.

If the trial does not conclude before the end of October, the defense anticipates the need for a brief recess from November 2-10, 2021, to accommodate one counsel's wedding ceremony.

RESPECTFULLY SUBMITTED this 19th day of January, 2021,


Paul J. Cambria, Jr.
Erin E. McCampbell
LIPSITZ GREEN SCIME CAMBRIA LLP

By:       /s/ Paul J. Cambria, Jr.
          Paul J. Cambria, Jr.
          Attorneys for Michael Lacey

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) § II (C) (3), Erin E. McCampbell hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*



Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT KATZMAN, PLC

By:       /s/ Whitney Z. Bernstein
          Whitney Z. Bernstein
          Attorneys for James Larkin



Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.

By:       /s/ Ariel A. Neuman
          Ariel A. Neuman
          Attorneys for John Brunst

2020), available at:  https://www.nytimes.com/2020/11/19/opinion/sunday/anthony-fauci-covid-interview.html (last visited Jan. 14, 2021).

DEFENDANTS' MOTION TO CONTINUE TRIAL

Bruce Feder
FEDER LAW OFFICE, P.A.

By:     /s/ Bruce Feder
        Bruce Feder
        Attorneys for Scott Spear


David Eisenberg
DAVID EISENBERG, P.L.C.

By:     /s/ David Eisenberg
        David Eisenberg
        Attorneys for Andrew Padilla


Joy Bertrand
JOY BERTRAND, ESQ.

By:     /s/ Joy Bertrand
        Joy Bertrand
        Attorneys for Joye Vaught



On January 19, 2021, a PDF version
of this document was filed with
Clerk of the Court using the CM/ECF
System for filing and for Transmittal
Of a Notice of Electronic Filing to the
Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Reginald Jones, reginald.jones4@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Daniel Boyle, daniel.boyle2@usdoj.gov

DEFENDANTS' MOTION TO CONTINUE TRIAL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:19-CR-10080-NMG |
| GREGORY COLBURN et al., | |
| Defendants | |

**JOINT RESPONSE TO COURT NOTICE (DKT. 1648)**

Defendants Gamal Abdelaziz, John Wilson, Homayoun Zadeh, and Robert Zangrillo ("the defendants") and the government respectfully submit this joint response to the Court's November 25, 2020 Notice (Dkt. 1648).

The parties are mindful of the Court's desire to try this case expeditiously. The parties share that desire and seek a realistic trial date as soon as practicable. The motion to continue the current date was filed only after extensive discussions about finding a date that would allow the parties to safely prepare their witnesses, and to have those witnesses testify, in a courtroom that can accommodate the parties, the witnesses, and their counsel. The parties believe that September 2021 is a date that is likely to hold, and that a continuance to that date would be reasonable in light of the ongoing pandemic and because of issues specific to this case that are not present in other cases tried or scheduled for trial during the pandemic, including the fact that there are four defendants and that almost all of the witnesses are from outside of Massachusetts.[1]

In response to the Court's specific questions:

---

[1] As previously noted, the parties have proposed June 2021 as an earlier alternative, though one that is less preferable given that it does not avoid all the concerns set forth herein.

<u>First</u>, the Court asked why discovery and trial preparation cannot be adequately accomplished by video conference. The parties agree that videoconferencing may be adequate to prepare certain out-of-state witnesses whose testimony is limited in scope, and/or does not involve numerous exhibits. The government estimates that there are at least half a dozen witnesses it could prepare in this manner. In this case, however, many witnesses—all of whom reside out of state—are expected to testify at length on direct and cross-examination.[2] Their testimony will involve hundreds of exhibits, including documents and audio recordings. The parties respectfully submit that videoconferencing is not an adequate substitute for in-person preparation of such witnesses. It cannot, for instance, replace the nonverbal cues between lawyers and clients (or lawyers and co-counsel), which can be just as important as the words spoken, but are missed when communicating via video. It likewise hampers lawyers' ability to pick up on nonverbal cues from witnesses. It imposes heightened burdens on witnesses—including third-party civilian witnesses—by increasing the amount of time needed to prepare due to unavoidable communication lags and other technological issues, as well as the fact that presenting exhibits to a witness remotely, or playing audio remotely, can be cumbersome.[3] Thus, while videoconferencing has allowed some cases in this district to proceed, it is substantially more difficult in a case involving as many witnesses, exhibits, defendants and attorneys as this one. And no case has, to date, required preparing the majority of trial witnesses via videoconference, as this one would.[4]

---

[2] The defendants may also testify, and any such testimony would likely also be extensive.

[3] Emailing or sending exhibits to witnesses in advance would help but it does not solve the problem, particularly given that witnesses may not be able to have even their own counsel present with them in person to orient them to the documents.

[4] The defendants anticipate that a February trial date may prompt witnesses from California and other states to seek to avoid receiving trial subpoenas and then move to quash on the grounds of their age or medical vulnerabilities or that of their families, given that appearance at trial will require cross-country round-trip air travel and both Massachusetts and California currently require travelers entering from other states to quarantine for 14 days upon arrival. The defendants also

Second, the Court has asked how many people associated with this case are 65 years old or older.  The answer is multiple.  Attorneys for defendants Abdelaziz and Zangrillo are over 70 years old.  Several likely witnesses and/or their attorneys are also over 65 years old, including those set forth in the accompanying *ex parte* declarations.  The parties do not know how many witnesses reside with other adults over 65 years old, or with otherwise vulnerable family members.  Other attorneys associated with this case, on both sides, have conditions, or immediate family members with conditions, that the CDC classifies as creating an increased risk for severe illness, hospitalization, or death from COVID-19.  As set forth in the accompanying sealed and ex parte declarations from defense attorneys, counsel are currently following the direction of the public health authorities in this regard.

The defendants acknowledge and respect that the Court is willing to try this case with appropriate precautions, but note that proper preparation for and participation in a four-defendant criminal trial from a witness's or attorney's perspective requires a significant amount of close contact with others.  These risks are even more significant in a multi-defendant trial that is likely to last four or five weeks—and perhaps longer, depending on the length of any defense cases and whether any of the defendants choose to testify—in a closed courtroom.  The defendants respectfully state that they are not willing to have any of their attorneys withdraw from the case to accommodate an earlier trial date, and that requiring withdrawal of counsel based on age or underlying medical conditions, or setting the trial date in a manner that forces counsel of advanced

---

have significant concerns about their ability to adequately defend their clients during trial given current restrictions such as social-distancing and masking that will make real-time communications with clients and co-counsel difficult if not impossible.  The defendants respectfully suggest that these issues raise substantial implications for the defendants' Sixth Amendment rights to effective assistance of counsel, especially in the context of a multi-defendant trial.

age or with underlying medical conditions to withdraw, would have serious implications for the defendants' Sixth Amendment rights.[5]   To the extent possible, the government seeks to avoid creating additional appellate issues in this regard.

Third, the Court noted that the parties will each be limited to two attorneys, with paralegals and support staff in another courtroom.  Even with such restrictions, however, and assuming only two alternate jurors—a number that is likely insufficient in a case such as this one—there is no courtroom of which the parties are aware that could accommodate 30 or more individuals while adhering to social distancing protocols.[6]

In addition, the government respectfully submits that further severing the case into two-defendant trial groupings would not wholly address the problem, because it would still require that the remaining defendants be tried at a later date.  Moreover, the government submits that severance—as compared a seven-month delay—is not in the public interest.  Should the Court sever the defendants in this trial and the six remaining in the April trial, the result would be as many as five trials in this case.  Even if some defendants plead guilty—a prospect that is unlikely as to the four remaining defendants in this trial—there would necessarily be multiple trials, imposing a far greater burden on the witnesses, the Court, the government, and the public (via jury selection) than a continuance of several months.

---

[5] *See United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) (Scalia, J.) ("Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation.  Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants...").

[6] The defendants note that the public will not be able to observe the proceedings in-person and that the exclusion of family members from the courtroom will seriously prejudice them.

Fourth, the defendants note that jury selection will be more difficult in this case given the substantial media attention that the case has received.[7]

Finally, the Court noted that the motion did not provide a supporting citation for the proposition that COVID-19 will have abated by September 2021.  The parties acknowledge that there is no date certain by which the pandemic will end.  However, public health officials have made clear that an effective COVID vaccine is likely to be widely available to adults in the United States by late spring of 2021.  In a November 19, 2020 interview, the Director of the National Institute of Allergy and Infectious Diseases, Dr. Anthony Fauci, stated: "I think we're going to have some degree of public health measures together with the vaccine for a considerable period of time. But we'll start approaching normal—if the overwhelming majority of people take the vaccine—as we get into the third or fourth quarter [of 2021]."[8]  Similarly, a recent report from McKinsey & Company stated:

> The positive readouts from the vaccine trials mean that the United States will most likely reach an epidemiological end to the pandemic (herd immunity) in Q3 or Q4 2021. An earlier timeline to reach herd immunity—for example, Q1/Q2 of 2021—is now less likely, as is a later timeline (2022).[9]

For the foregoing reasons, it is reasonable to assume that the parties (and witnesses) will be able to be fully vaccinated by the summer, thus allowing one or two months for counsel to meet with witnesses and prepare for a September trial.  Such a schedule would be consistent with the

---

[7] The defendants reserve their rights with respect to Constitutional challenges to the current jury selection process.

[8] Elisabeth Rosenthal, When Will We Throw Our Masks Away?  I asked Dr. Fauci, New York Times (Nov. 19. 2020).

[9] https://www.mckinsey.com/industries/healthcare-systems-and-services/our-insights/when-will-the-covid-19-pandemic-end#.  The defendants separately note that, as recent news reports suggest, it is possible that the vaccine will be widely distributed by June but it is currently unclear whether both doses (given three or four weeks apart) will be distributed by June, or whether the population will have had time to develop sufficient antibodies from the vaccinations by June.

deadlines for reciprocal pretrial disclosures and in limine motions contemplated by the Court's pretrial scheduling order. And, importantly, the parties expect that a September date is realistic and will hold, and they do not expect to seek additional continuances.[10] The parties note that they do not seek a delay for delay's sake, or for some tactical or strategic purpose. The parties share with the Court a desire and a willingness to try this case as soon as is reasonably practical and safely possible. The parties respectfully submit, however, that the earliest, most realistic such date is September 2021.

Dated: December 4, 2020

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   /s/ Stephen E. Frank
      /s/ Karin M. Bell
      JUSTIN D. O'CONNELL
      LESLIE A. WRIGHT
      KRISTEN A. KEARNEY
      KARIN M. BELL
      STEPHEN E. FRANK

/s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Joshua C. Sharp (BBO No. 681439)
Lauren M. Maynard (BBO No. 698742)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
jsharp@nixonpeabody.com
lmaynard@nixonpeabody.com

Robert Sheketoff (BBO No. 457340)
One McKinley Square
Boston, MA 02109
617-367-3449

*Counsel for Gamal Abdelaziz*

---

[10] The government is cognizant that there is currently also an April trial scheduled in this case and that the arguments set forth here may also apply to that trial. However, the government submits that a continuance of the April trial is premature at this time. Some of the defendants in that trial may yet choose to resolve the charges, which in the government's view, could permit the proceedings to be reconsolidated.

*/s/ Martin G. Weinberg*
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Matthew L. Schwartz (pro hac vice)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
E-mail:  mlschwartz@bsfllp.com

*Counsel for Robert Zangrillo*

*/s/ Michael Kendall*
Michael Kendall (BBO # 544866)
Yakov Malkiel (BBO # 689137)
WHITE & CASE LLP
75 State Street
Boston, MA 02109-1814
Telephone: (617) 979-9310
michael.kendall@whitecase.com
yakov.malkiel@whitecase.com

Andrew E. Tomback (pro hac vice)
McLAUGHLIN & STERN LLP
260 Madison Ave.
New York, NY 10016
Telephone: (212) 455-0438
atomback@mcloughlinstern.com

*Counsel for John Wilson*

*/s/ Tracy A. Miner*
Tracy A. Miner (BBO No. 547137)
Megan A. Siddall (BBO No. 568979)
MINER ORKAND SIDDALL LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8377
tminer@mosllp.com
msiddall@mosllp.com

*Counsel for Homayoun Zadeh*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the forgoing was filed electronically on December 4, 2020, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

<u>*/s/ Joshua C. Sharp*</u>
Joshua C. Sharp

**United States District Court**
**District of Massachusetts**

```
                                )
United States of America,       )
                                )
          v.                    )
                                )
Gregory Colburn, et al.,        )
                                )   Criminal Action No.
          Defendants.           )   19-10080-NMG
                                )
                                )
```

**ORDER**

**GORTON, J.**

Having carefully considered the assented-to motion to continue the February, 2021 trial filed by defendants Gamal Abdelaziz, John Wilson, Homayoun Zadeh and Robert Zangrillo ("Group 1 defendants"), the declarations filed ex parte and under seal in support thereof (Docket Nos. 1660-66) and the joint response of the parties (Docket No. 1659) to the Notice entered by this Court on November 25, 2020 (Docket No. 1648), the subject motion (Docket No. 1634) is **ALLOWED**.

The following amended pretrial schedule deadlines shall apply:

   1) Government expert disclosures: Friday, May 28, 2021;

   2) Reciprocal discovery from defendants: Monday, June 7, 2021;

   3) Government exhibit/witness lists: Thursday, June 17, 2021;

   4) Defense expert disclosures: Monday, June 28, 2021;

   5) Defense exhibit/witness lists: Friday, July 16, 2021;

6) Meet/confer on documents, etc.: Wednesday, July 21, 2021;

7) Rebuttal expert disclosures: Wednesday, July 28, 2021;

8) All parties motions in limine, voir dire, jury instructions: Friday, July 30, 2021;

9) All responses to motions in limine, voir dire, jury instructions: Friday, August 6, 2021;

10) Final pretrial conference: Wednesday, August 18, 2021 at 11:00 A.M.;

11) Jury empanelment to commence on Wednesday, September 8, 2021 at 9:00 A.M. (to be completed on or before Friday, September 10, 2021); and

12) Jury trial, opening statements and evidence, to commence on Monday, September 13, 2021 at 9:00 A.M.

During the extensive pre-trial period, the parties shall, if necessary to comply with the extended deadlines, 1) complete discovery by taking video depositions, 2) review documents and prepare witnesses remotely, i.e., by zoom video-technology and 3) ensure immunization and/or the requisite quarantining to have counsel and witnesses available for an in-person trial in September, 2021. If still warranted by the status of the pandemic or government regulations then in force, the parties are encouraged to agree upon the appearance of witnesses at trial by video deposition.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated December 21, 2020

- 2 -

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>ELIZABETH A. HOLMES,<br><br>                    Defendant. | Case No.  18-cr-00258-EJD-1<br><br>**REVISED ORDER SETTING CASE SCHEDULE** |

        This case was set for jury trial to commence on March 9, 2021. This setting followed continuances of the trial for a variety of reasons including the court's concerns for the health of all potential trial participants and the public.  The court has been vigilant in keeping informed as to the impact of the COVID-19 Pandemic in the nation and state and in day to day life in the San Francisco bay area.  The court notes sadly, the impact on our lives is grim.  California is in the midst of an unprecedented surge in cases and hospitalizations.  As of December 18, 2020, California has 1,764,374 confirmed cases of COVID-19, resulting in 22,160 deaths.  *See* https://covid19.ca.gov/state-dashboard.  Today alone, 300 lives were lost to COVID-19.  *Id.*  We are operating under a Regional Stay Home Order to save lives, protect the health care delivery system and keep those at highest risk and essential workers safe.  Locally, Santa Clara County is reporting that the 7-day rolling average of new cases is 1,170 and that hospitals are nearing maximum capacity.  These conditions will impact the jury panel and the public's confidence in an in-person trial estimated to last several months.   The court is hopeful conditions will improve significantly in the near future.  The FDA has approved a second Covid vaccine.  *See*

https://www.cnbc.com/2020/12/18/moderna-covid-vaccine-approved-fda-for-emergency-use.html. The nation's top infectious disease expert, Dr. Anthony Fauci, estimates that the general public should be able to be vaccinated within two to four months. *See* https://www.today.com/health/dr-fauci-hoping-get-covid-19-vaccine-within-next-few-t204241. All of this supports continuing the trial to a time when our community is safer. The court recognizes that a continuance of the trial will cause great inconvenience to victims who would like their day in court, as well as Defendant, who wishes a speedy opportunity to defend against the charges. All of these rights are important, but paramount to the court is the safety and health of the community.

Accordingly, the court sets the following case schedule in light of the ongoing COVID-19 Pandemic and the need for effective preparation for trial due to the complexities of the case:

| DATE | EVENT |
| --- | --- |
| Friday, January 8, 2021 by 5pm | Responses to motions in limine |
| Monday, February 15, 2021 by 5pm | Replies for motions in limine |
| 10:00 a.m., March 23, 24, 2021 | Hearing for motions in limine and motions re: experts. |
| Thursday, May 27, 2021 | Proposed jury instructions, juror questionnaire, and voir dire questions due |
| Thursday, June 3, 2021 | Pretrial Conference statement due per Criminal Local Rule 17.1-1(b). <br><br> The Government shall advise the court that it has produced all *Brady* and *Giglio* information in its possession and will continue to produce any the Government subsequently discovers |
| 10:00 a.m., Tuesday, June 15, 2021 | Pretrial Conference |
| 9:00 a.m., Tuesday, July 13, 2021 | Trial (first day of jury selection) |

It is further ordered that time is excluded pursuant to 18 U.S.C. § 3161(h)(7)(A), 18 U.S.C. §3161(h)(7)(B)(iv) and 18 U.S.C. §3161(h)(7)(B)(ii). The court finds that the ends of justice served by the continuance outweigh the best interest of the public and the Defendant in a speedy trial, and excludes time through and including July 13, 2021.

Case No.: 18-cr-00258-EJD-1
REVISED ORDER SETTING CASE SCHEDULE

For the above stated reasons, time is excluded.

**IT IS SO ORDERED.**

Dated: December 18, 2020

EDWARD J. DAVILA
United States District Judge

**From:** Ninth Circuit Judicial Conference <ncjc@ce9.uscourts.gov>
**Sent:** Thursday, January 7, 2021 1:41 PM
**To:** Recipient List Suppressed <recipient_list_suppressed@o365.uscourts.gov>
**Subject:** [EXTERNAL]2021 Ninth Circuit Judicial Conference



**All Ninth Circuit Judicial Officers, Lawyer Representatives & Court Unit Executives:**

After conducting a survey of all the circuit and chief judges, unit executives, members of the Conference Executive Committee, and the Lawyer

Representatives Coordinating Committee, I am very disappointed to announce that the 2021 Ninth Circuit Judicial Conference is cancelled.

With the recent national surge upon a surge in COVID-19 cases and issues regarding accessibility of vaccines, it may be too soon to get together. Currently, Big Sky is not accepting large groups and, after discussions with leadership and Conference staff, we have concluded that it will be safer and more prudent to wait until 2022.

We are in the process of reworking our contracts and anticipate that we will hold the 2022 Ninth Circuit Judicial Conference in Big Sky, July 17-21.  I will send you a "save the date" once the contract is signed and approved.

Martha and I extend to all of you our best wishes for a happy, healthy, and safe 2021.  Although this was a difficult decision, we will celebrate being together with all of you when it is safe, and we can all see each other in person.

Sincerely,

Sidney R. Thomas

Chief Judge