Thomas H. Bienert, Jr. (CA Bar No.135311, *admitted pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, *admitted pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No. 1430909, *admitted pro hac vice*)
Erin McCampbell (NY Bar. No 4480166, *admitted pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>　　　　　　Defendants. | Case No. 2:18-cr-00422-PHX-SMB<br><br>**DEFENDANTS' OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE (DKT. 931)**<br><br>(Oral argument requested) |

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

# Table of Contents

I.      INTRODUCTION....................................................................................................1

II.     BACKGROUND. ....................................................................................................2

III.    THE US HAS FAILED TO ESTABLISH ITS PROPOSED EXHIBITS ARE NON-
        HEARSAY OR SATISFY HEARSAY EXCEPTIONS...................................................3

IV.     THE MOTION IGNORES MYRIAD CONFRONTATION CLAUSE ISSUES. .......12

V.      THE FERRER/BACKPAGE EXHIBITS ARE NOT SELF-AUTHENTICATING. .13

VI.     OBJECTIONS TO PARTICULAR CATEGORIES OF DOCUMENTS.....................14

VII.    LACEY'S COUNSEL'S DOCUMENTS SHOULD NOT BE ADMITTED................24

VII.    THE "SUMMARY" EXHIBITS CANNOT BE ADMITTED PRETRIAL..................24

VIII.   CONCLUSION.....................................................................................................26

3709425.1

**Table of Authorities**

**Cases**                                                                    **Page(s)**

*Amarel v. Connell,*
  102 F.3d 1494 (9th Cir. 1996) ........................................................... 25

*Ashcroft v. Free Speech Coalition,*
  535 U.S. 234 (2002) ........................................................................ 16

*AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.,*
  637 Fed. App'x 645 (2d Cir. 2016) .................................................. 13

*Automated Merch. Sys., Inc. v. Crane Co.,*
  2012 WL 12892417 (N.D.W.V. Feb. 28, 2012) ................................... 3

*Backpage.com v. Cooper,*
  939 F.Supp.2d 805 & (M.D. Tenn. 2013) ....................................16, 18

*Bd. of Trs. v. State Univ. of N.Y. v. Fox,*
  492 U.S. 469 (1989) ........................................................................ 15

*Bemis v. Edwards,*
  45 F.3d 1369 (9th Cir. 1995) ............................................................. 3

*Bogutz v. Arizona,*
  2008 WL 11440636 (D. Ariz. Oct. 27, 2008) ..................................... 6

*Crawford v. Washington,*
  541 U.S. 36 (2004) .......................................................... 5, 12, 13, 14

*Doe v. Torrington Board of Education,*
  2019 WL 625696 (D. Conn. Feb. 14, 2019) ...................................9, 10

*Haddad v. Lockheed Calif. Corp,*
  720 F.2d 1454 (9th Cir. 1983) ........................................................... 9

*In re Oil Spill by the Oil Rig "Deepwater Horizon,",*
  2012 WL 85447 (E.D. La. Jan. 11, 2012) .....................................10, 11

*John Paul Mitchell Systems v. Quality King Distributors,*
  106 F. Supp. 2d 462 (S.D.N.Y. 2000) ..........................................13, 14

*Khoja v. Orexigen Therapeutics*,

    899 F.3d 988 (9th Cir. 2018) ................................................................................ 22

*Lion Oil Trading & Transp., Inc. v. Statoil Marketing & Trading (US) Inc.*,

    2011 WL 855876 (S.D.N.Y. Feb. 28, 2011) ......................................................... 10

*Litton Systems, Inc. v. American Telephone & Telegraph Co.*,

    700 F.2d 785 (2d Cir. 1983) ................................................................................. 12

*Martins v. 3PD, Inc.*,

    2013 WL 1320454 (D. Mass. Mar. 28, 2013) ....................................................... 22

*Matter of Extradition of Santos*,

    228 F. Supp. 3d 1034 (C.D. Cal. 2017) .................................................................. 3

*Merrick v. Farmers Ins. Group*,

    892 F.2d 1434 (9th Cir.1990) ................................................................................. 6

*Nassar v. Nassar*,

    2017 WL 26859 (M.D. Fla. Jan. 3, 2017) ............................................................ 22

*Packingham v. North Carolina*,

    137 S. Ct. 1730 (2017) .......................................................................................... 16

*Park W. Radiology v. CareCore Nat. LLC*,

    675 F. Supp. 2d 314 (S.D.N.Y. 2009) .................................................................. 11

*People v. Ferrer*,

    2016 WL 7237305 (Sup. Ct. Sacramento Cty. Dec. 9, 2016) ............................... 24

**Rules**

    801 or 803 ............................................................................................................. 12

*Sabel v. Mead Johnson & Co.*,

    737 F. Supp. 135 (D. Mass. 1990) .......................................................................... 6

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC*,

    285 F.3d 808 (9th Cir. 2002) .................................................................................. 5

*Thomas v. Stone Container Corp.*,

    922 F. Supp. 950 (S.D.N.Y. 1996) ....................................................................... 12

3709425.1   TABLE OF CONTENTS AND TABLE OF AUTHORITIES

*Transcap Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*,

    2009 WL 3260014 (N.D. Ill. Oct. 9, 2009) ................................................................. 21

*U.S. ex rel. Poong Lim/Pert v. Dick Pac./Ghemm*,

    2006 WL 568321 (D. Ak. Mar. 7, 2006) ................................................................. 26

*U.S. v. Aiyaswamy*,

    2017 WL 1365228 (N.D. Cal. Apr. 14, 2017) ....................................................... 19, 21

*U.S. v. Bibbero*,

    749 F.2d 581 (9th Cir. 1984) ................................................................................. 4

*U.S. v. Bonds*,

    2009 WL 416445 (N.D. Cal. Feb. 19, 2009) ........................................................ 6

*U.S. v. Bustamante*,

    687 F.3d 1190 (9th Cir. 2012) ............................................................................. 13

*U.S. v. Castaneda*,

    16 F.3d 1504 (9th Cir. 1994) ............................................................................... 4

*U.S. v. Chang*,

    207 F.3d 1169 (9th Cir. 2000) .......................................................................... 3, 6

*U.S. v. Curtin*,

    489 F.3d 935 (9th Cir. 2007) ................................................................ 10, 12, 15

*U.S. v. Daneshvar*,

    925 F.3d 766 (6th Cir. 2019) .............................................................................. 11

*U.S. v. Eubanks*,

    591 F.2d 513 (9th Cir. 1979) ............................................................................... 4

*U.S. v. Liera*,

    585 F.3d 1237 (9th Cir. 2009) ............................................................................ 4

*U.S. v. Marguet-Pillado*,

    560 F.3d 1078 (9th Cir. 2009) .......................................................................... 10

*U.S. v. Miller*,

    771 F.2d 1219 (9th Cir. 1985) .......................................................................... 25

iv

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

3709425.1

*U.S. v. Moore,*

   522 F.2d 1068 (9th Cir. 1975) ................................................................................. 7

*U.S. v. Playboy Entm't Grp., Inc.,*

   529 U.S. 803 (2000) ............................................................................................. 15

*U.S. v. Rosen,*

   94 F. App'x 567 (9th Cir. 2004) ........................................................................... 5

*U.S. v. Silverman,*

   861 F.2d 571 (9th Cir. 1988) ................................................................................. 4

*U.S. v. Soulard,*

   730 F.2d 1292 (9th Cir. 1984) ........................................................................ 19, 25

*U.S. v. Tellier,*

   83 F.3d 578 (2d Cir. 1996) ..................................................................................... 4

*U.S. v. Villa,*

   19 Fed. Appx. 696 (9th Cir. 2001) ................................................................... 7, 11

*U.S. v. Waters,*

   627 F.3d 345 (9th Cir. 2010) ........................................................................... 18, 19

U.S. v. Wood,

   943 F.2d 1048 (9th Cir. 1991) ............................................................................. 24

*United States v. Cone,*

   714 F.3d 197 (4th Cir. 2013) ............................................................................... 11

**Other Authorities**

*Federal Evidence*, § 602.02 (2d ed. 2004) ................................................................. 12

Instruction 4.9, *Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit*

   *Dec. 2019* .......................................................................................................... 5

## I.      INTRODUCTION.

In its Motion *In Limine* to Admit Evidence ("Motion"), the US seeks to admit 452 exhibits (roughly 85% of its 532 proposed exhibits), *plus* an additional 423 secondary documents,[1] "through a government agent or other summary witness," without foundational testimony from any witnesses with actual knowledge. Dkt. 931 at 17. The US essentially asks to be excused from calling witnesses in its case-in-chief. Allowing the US to short-cut basic rules of evidence would violate Defendants' due process rights. Despite its sweeping request, the Motion discusses just 22 of the 875 documents the US seeks to admit[2] (and, even as to the 22, does not provide the required foundational information and evidence for non-hearsay or hearsay exceptions).[3] The US primarily relies on unsupported allegations (and, for an unspecified handful of proposed exhibits, proposes to present foundational testimony at trial), offering evidence only for a few proposed exhibits.

The Court should reject the Motion, first, because the US fails to set out, with specificity, the reasons why each proposed exhibit is admissible. Second, the US fails to demonstrate, by a preponderance of the evidence, the factual predicates for each document under each rule. The US' allegations and opinions are not evidence. Third, during the meet and confer process, the US refused to provide the specifics of its theories for admitting its proposed exhibits and to provide the facts purportedly supporting them. Finally, the US seeks relief that is fundamentally at odds with the Confrontation Clause of the Constitution, as it seeks to present the core of its case through case agents and documents, without competent foundational witnesses.

Defendants have not lodged objections to each individual document the US seeks to move into evidence, as the US has failed to present a factual and legal basis to justify the admission of each document, so the defense would be shooting in the dark if it tried to address each document. Moreover, the 26 page limit on this response would allow less than one line of text for each of the

---

[1]  The US identified 452 potential exhibits, *see* Exhibit A (attached), but nearly all of them (423) include secondary documents (*e.g.*, attachments to an email chain) that must be separately assessed. Therefore, the number of documents actually at issue in the Motion is 875, not 452.

[2]  The 22 were Exhs. 176, 177, 58, 7, 798, 52, 140, 116, 119, 8, 9, 14, 21, 23, 30, 101, 311, 312, 313, 314, 260, 1. *See* Dkt. 931 at 11, 12, 16, 17, 18, 20, 24.

[3]  The US also sought a blanket pretrial ruling that five "categories" of unidentified documents will be admissible:  (1) emails, (2) "intra-Backpage documents," (3) business records, (4) documents produced by counsel for Michael Lacey, and (5) summary exhibits. Dkt. 931 at 1-2.

875 documents. Accordingly, Defendants focus this response on overarching issues and contend the Court should address the proposed exhibits during trial, after the US establishes a factual and legal basis for the admission of each exhibit (and before the US actually references the exhibit before the jury). If the Court prefers a document-by-document analysis before trial, Defendants will lodge a document-by-document response at the Court's direction but would request that the Court require the US to first:  a) set out, document-by-document, all the information Defendants and the Court would need to assess the admissibility of each document and b) establish, with admissible evidence, the factual predicates required for each document under the applicable rule(s). Defendants could then address the actual factual and legal bases the US asserts to support admission of the 875 documents, rather than guessing at arguments not yet made based on facts not yet established.

## II.    BACKGROUND.

In an effort to obtain information to analyze the Motion, address its deficiencies, and narrow the issues, Defendants asked to meet and confer, but the US refused. After the Court ordered the parties to meet and confer (Dkt. 937), Defendants and the US exchanged emails and spoke by phone, *see* Dkt. 977, but the US largely refused to provide even basic information in support of its Motion. For example, Defendants asked the US to identify the witness through whom it intended to admit each exhibit, but the US refused. *See* Exhibit B (attached), Thomas Declaration ("Thomas Decl.") at ¶ 8. For each exhibit the US proposed to admit as non-hearsay premised on the action or inaction of a Defendant, such as the admission of an agent or an adoptive admission, Defendants asked the US to identify each Defendant who was a principal for each agent and who adopted each purported admission, but the US again refused. *Id.* at ¶ 8. Defendants asked the US to identify each Defendant against whom it believes each exhibit can be admitted and the purpose for which the exhibit can be admitted. *See, e.g., id.*; *see also* Dkt. 977-1 at 3. The US said it seeks to introduce each exhibit against all Defendants and all the exhibits were "relevant." Thomas Decl. at ¶ 8. Defendants also asked the US to identify all members of each purported conspiracy, so they could assess the US' claim that 150 exhibits are admissible as co-conspirator statements. *Id.* at ¶ 9. The US said the conspirators included all Defendants, cooperators Ferrer and Hyer, David Elms, William Mersey, and "every

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

prostitute or pimp who ever emailed Backpage" from 2004 to 2018.[4] *Id.* Finally, Defendants asked the US to provide the documents its summary exhibits purport to summarize, but the US refused and told Defendants to take it up with the Court. Thomas Decl. at ¶ 10.

## III.   THE US HAS FAILED TO ESTABLISH ITS PROPOSED EXHIBITS ARE NON-HEARSAY OR SATISFY HEARSAY EXCEPTIONS.

The US, as the proponent of its exhibits, bears the burden of establishing their admissibility, by both explaining why they are admissible and providing the factual foundation required under the rules. *Automated Merch. Sys., Inc. v. Crane Co.*, 2012 WL 12892417, at *2 (N.D.W.V. Feb. 28, 2012) (denying motion *in limine* to admit secondary evidence because the "proponent of the secondary evidence has the burden of proving loss or destruction, which are preliminary facts for the court to determine under Rule 104(a)" and failed to "show by a preponderance of the evidence that all originals have been lost or destroyed").[5] The Motion discusses only 22 specific exhibits and does not provide the information required to establish admissibility even as to those 22 exhibits. Moreover, except for certifications of purported records custodians (addressing records of financial institutions and certain Backpage ads) and an affidavit addressing a video, the US fails to present any evidence to establish each proposed exhibit meets the requirements of the cited evidentiary rule.

**A.   Co-Conspirator Statements.** The US seeks to admit 150 exhibits and attachments as non-hearsay co-conspirator statements under Rule 801(d)(2)(E), but presents no evidence to establish the factual predicates for doing so. "[A]n accused's knowledge of and participation in an alleged conspiracy with the putative co-conspirator are *preliminary* facts that must be established, by a

---

[4]  The US effectively admitted it ***is*** asserting a "boundless conspiracy," as Defendants alleged in their motion to dismiss the indictment for failing to allege the necessary elements of the Travel Act (Dkt. 746) and the Court rejected in its order. Order, Dkt. 946 at 13 ("Defendants' suggestion that the SI improperly indicts a 'boundless conspiracy to facilitate prostitution in general,' however, mischaracterizes the charges against them. Such a claim is simply untrue. They were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution.") (cleaned up).

[5]  *Accord U.S. v. Chang*, 207 F.3d 1169, 1176 (9th Cir. 2000) ("Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's [agency or] employment."); *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) ("As the proponent of the evidence [under Rules 803(1) and (2)], Bemis had the burden of establishing personal perception by a preponderance of the evidence."); *Matter of Extradition of Santos*, 228 F. Supp. 3d 1034, 1037 (C.D. Cal. 2017) ("The proponent of evidence generally bears the burden of establishing its admissibility.").

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

preponderance of the evidence, *before* the co-conspirator's out-of-court statements can be introduced into evidence." *U.S. v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994) (emphasis added). To establish a declarant knowingly participated in a conspiracy, "the US cannot rely solely on the alleged co-conspirator statements themselves." *Id.* (citing *U.S. v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988)); *see also U.S. v. Tellier*, 83 F.3d 578 (2d Cir. 1996) (finding hearsay statements are "presumptively unreliable" and "for such statements to be admissible, there must be some independent corroborating evidence of defendant's participation in the conspiracy"). To prove the connection between each accused and the alleged conspiracy, the US must produce "some independent evidence which, viewed in light of the coconspirator statements, establishes the requisite connection between the accused and the conspiracy." *Castaneda*, 16 F.3d at 1507. The US must prove not only that each Defendant was a member of the conspiracy, but also that each declarant was. *U.S. v. Liera*, 585 F.3d 1237, 1245 (9th Cir. 2009) (conviction vacated because the US failed to prove declarant was a member of the conspiracy before the admission of hearsay statements). The US also must prove that any hearsay statements it seeks to introduce were made "*in furtherance*" of the conspiracy. Fed. R. Evid. 801(d)(2)(E); *U.S. v. Bibbero*, 749 F.2d 581, 583–84 (9th Cir. 1984) ("statement [must] further[] the common objectives of the conspiracy; 'mere conversation between conspirators' is not admissible"); *U.S. v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979) ("Not all statements made by co-conspirators can be considered to have been made in furtherance of the conspiracy.").[6]

The US claims every email sent by each Defendant and purported co-conspirator is non-hearsay because the US *alleges*: a) they are co-conspirators and b) every email was made during the course of and in furtherance of the alleged conspiracy—but the US offers no *evidence* to support its implausible and sweeping claims. The US points only to Backpage's plea to a charge of *money laundering conspiracy* and the indictment's allegations. Whatever Backpage's plea may establish about *Backpage*, the plea is not evidence that each Defendant knowingly conspired with Backpage (or others) or that specific communications furthered a conspiracy, whether with respect to money laundering or any other crime. Throughout the Motion, the US focuses on Backpage, Ferrer, and others, but, as the Court

---

[6] Defendants incorporate by reference their more fulsome discussion of the law relating to Rule 801(d)(2)(E) from their response to another US motion i*n limine. See, e.g.*, Dkt. 964 at 11-16.

1   recently noted, "this case is not about Backpage...[but] these individual defendants and whether they

2   had specific knowledge of these ads as facilitating illegal activity." Transcript, Dkt. 1099, p. 39.

3       Moreover, although the US presumably will seek at trial to present a factual basis to support its

4   conspiracy allegations through the testimony of Ferrer or Hyer, their statements as cooperating

5   witnesses will deserve careful scrutiny and Defendants are entitled to cross-examine them to test the

6   reliability of their testimony. *Crawford v. Washington*, 541 U.S. 36, 61 (2004) (Confrontation Clause

7   "commands" that the "reliability [of testimonial statements] be assessed in a particular manner:  by

8   testing in the crucible of cross-examination"); *U.S. v. Rosen*, 94 F. App'x 567, 571 (9th Cir. 2004)

9   (where a cooperating witness has been rewarded by the government for his testimony, the

10  "cooperating witness is by definition cut from untrustworthy cloth, and must be managed and

11  carefully watched by the government and the courts to prevent them from falsely accusing the

12  innocent, from manufacturing evidence against those under suspicion of crime, and from lying under

13  oath in the courtroom") (cleaned up), *vacated*, 543 U.S. 1106, *reinstated*, 137 Fed. Appx. 67; *see also*

14  Instruction 4.9, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth

15  Circuit, Dec. 2019 (testimony of witness who receives "favored treatment" from the US should be

16  examined "with greater caution than that of other witnesses").

17      **B.  Statements of a Party's Agent.** The US seeks to admit 646 exhibits and attachments as non-

18  hearsay statements of a party's agent under Rule 801(d)(2)(D), but presents no evidence to establish

19  the required factual predicates. Before the Court may admit statements under Rule 801(d)(2)(D), the

20  US first must establish:  (1) the out-of-court declarant was an agent of a Defendant; (2) the out-of-

21  court statements were made by that Defendant's agent during the existence of the agency; and (3)

22  the out-of-court statements were within the scope of the agency. *See Sea-Land Serv., Inc. v. Lozen Int'l,*

23  *LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (a party seeking to admit a statement under Rule 801(d)(2)(D)

24  must lay an adequate foundation to show the statement "relates to a matter within the scope of the

25  agent's employment"). The contents of the out-of-court statement alone cannot establish the

26  existence or scope of the relationship necessary to apply Rule 801(d)(2)(D). Rule 801(d)(2). As the

27  proffering party, the US bears the burden to demonstrate the foundational requirement that "an

28  otherwise excludable statement relates to a matter within the scope of the agent's agency or

employment." *Chang*, 207 F.3d at 1176 (cleaned up). Moreover, even if the US establishes a statement is admissible under an agency theory against one Defendant, the statement will remain inadmissible hearsay as to all other Defendants.[7] *See Bogutz v. Arizona*, 2008 WL 11440636, at *1 (D. Ariz. Oct. 27, 2008) ("It is well established that under Rule 801(d)(2), 'a party's statement is admissible as non-hearsay only if it is offered against that party.'").[8]

The US presents no *evidence* to meet the foundational requirements of Rule 801(d)(2)(D), but merely claims various persons or entities were agents of *Backpage*. Moreover, even as to Backpage, the US presents no evidence those parties were agents of Backpage *within the meaning of Rule 801(d)(2)(D)* nor that their statements were within the scope of any agency. Merely engaging an independent contractor does not make the contractor an agent for purposes of Rule 801(d)(2)(D). *U.S. v. Bonds*, 2009 WL 416445, at *5 (N.D. Cal. Feb. 19, 2009) ("independent contractors do not qualify as agents for the purposes of Rule 801(d)(2)(D)") (citing *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1440 (9th Cir.1990)). Rule 801(d)(2)(D) is premised on the theory that an agent authorized to act on a principal's behalf is impliedly authorized to speak on the same matters. *Sabel v. Mead Johnson & Co.*, 737 F. Supp. 135, 139 (D. Mass. 1990). Thus, unless a *defendant* controls the consultant, the consultant has "the power to legally bind *defendant* through their statements and actions," and the consultant has "enter[ed] into a fiduciary relationship *with defendant*, the factors which support attribution of an agent's statements to her principal are completely missing." *Id.* (emphasis added). The US presents no evidence Backpage had an agency relationship with Monita Mohan, DesertNet, any public relations firms representatives, or any employees to support attribution of any of their statements *even to Backpage, let alone to Defendants*. The US does not even argue, much less present evidence, that any *Defendant* had an agency relationship within the scope of Rule 801(d)(2) with the authors of any exhibits it seeks to admit as admissions of agents or that any pertinent statements were made during the existence of such an agency and within the scope of the agency. The US completely fails to meet its burden of demonstrating that any statements of third parties can be attributed to Defendants as non-hearsay under Rule 801(d)(2).

---

[7] The same will be true under other hearsay exceptions as well.

[8] Defendants incorporate by reference their more fulsome discussion of the law relating to Rule 801(d)(2)(C) and (D) from their response to another US motion i*n limine. See, e.g.*, Dkt. 964 at 4-11.

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

**C. Adoptive Admissions.** The US seeks to admit 644 exhibits and attachments as non-hearsay adoptive admissions under Rule 801(d)(2)(B), but fails to establish the required factual predicate for doing so. The Court cannot admit a statement as an adoptive admission unless the US first establishes:  a) an accusatory statement was made in a defendant's presence and hearing, b) that defendant understood the accusatory statement and had an opportunity to respond to it, c) the circumstances were such that "an innocent defendant would normally be induced to respond," and d) that defendant did not respond, but instead acceded to the statement. *U.S. v. Moore*, 522 F.2d 1068, 1076 (9th Cir. 1975) ("The general rule concerning admissions by silence or acquiescence is well established. When an accusatory statement is made in the defendant's presence and hearing, and he understands and has an opportunity to deny it, the statement and his failure to deny are admissible against him."). In *Moore*, the US established accusatory statements were made to a group, Moore "was in the group that was 'around'" when the statements were made, and Moore did not deny the accusatory statements, but the Ninth Circuit found the foundational testimony "wholly insufficient" to admit the statements as adoptive admissions, because there was "no testimony whatsoever concerning such matters as how close Floyd Moore was to Rezabek, whether there was noise at the time, and whether Moore appeared to be listening." 522 F.2d at 1076.[9]

Here, the US presents no foundational evidence whatsoever to support the admission of any statements in the 644 documents as adoptive admissions. The US identifies no accusatory statements. The US presents no evidence any Defendant(s) heard (or read) and understood any accusatory statements. The US presents no evidence any Defendant(s) failed to respond to any accusatory statements. The US cites no authority for the proposition that failing to respond to an email generally is treated as an admission by silence or acquiescence (and Defendants are aware of none). Moreover, the US presents no evidence the circumstances presented compelled a response and the lack of a response was an accession.

The US discusses just three exhibits it claims were adoptive admissions, but abjectly fails to even

---

[9]  A*ccord U.S. v. Villa*, 19 Fed. Appx. 696, 697 (9th Cir. 2001) (reversing conviction where evidence was sufficient to support a finding that defendant was aware of his father's accusatory statement, but did not establish "whether under the circumstances an innocent defendant would normally be induced to respond").

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

make a plausible *claim* those documents qualify as adoptive admissions, much less support a plausible claim with *evidence*. The US discusses Exh. 176, a blank email from Ferrer to Defendants Larkin, Brunst, and Spear transmitting a PowerPoint presentation, but does not establish any Defendant saw the email or reviewed the PowerPoint. Dkt. 931 at 11. The US quotes some phrases from the PowerPoint, but none was accusatory. Even crediting the US' inaccurate characterization of the phrases, the US does not explain why the phrases would have compelled a response nor prove there was no response. The US says Larkin, Brunst, and Spear never emailed back to disagree with Ferrer's ideas, but presents no evidence that a) the PowerPoint represented Ferrer's ideas or b) Larkin, Brunst, or Spear never responded, whether by email or in some other manner at some other time. In short, the US fails to establish any elements of an adoptive admission.

The US claims Exh. 177 was a "textbook example" of an adoptive admission, but that hardly is so. Exh. 177 appears to be an email among unknown recipients and a seeming forward of the email to five email addresses, prompting a response from one. The US does not establish the other four addressees received or read the email. The email contained no accusatory statements, nor does the US explain why it compelled a response. Moreover, the proposed exhibit shows one addressee, Brunst, did respond, questioning what the underlying email proposed and saying "we will discuss when I get back next week"—hardly an accession to any statements in the underlying email. Moreover, given that response, the US cannot plausibly claim the other recipients were compelled to respond. The US says Spear was obligated to respond, but presents no evidence in support or to show the discussions Brunst requested never took place, nor does it show how the email is relevant.

Finally, the US characterizes its proposed Exh. 58, an email from Andrew Padilla to his subordinates including Joye Vaught (but no other Defendants), as providing guidance on ad moderation, transmitting a 38-page PDF showing images that would require deleting an ad versus deleting an image. The email said the PDF was "a guideline" and moderators would "not get into trouble for being too clean right now." The email also attached a list of terms violating guidelines and instructed moderators to look for "misspellings that the filters and bans are missing" (*i.e.* intentional misspelling of words violating guidelines). The US does not establish Vaught (or any other Defendant) received or read the email, the PDF, or the list of terms. Nothing in them was

accusatory, nor does the US explain why the email compelled Vaught to respond. Moreover, the US does not allege, or present any evidence, Vaught did not question the email in some other manner at some other time. Once again, the US fails to establish any elements of an adoptive admission.

The US apparently contends every time someone receives an email, and does not respond in disagreement, the email is an adoptive admission by the recipient of all statements in the email—but that simply is not the law. Because the US fails to establish any of the foundational requirements for the admission of any out-of-court statements as adoptive admissions, the Court should reject as inadmissible hearsay all the exhibits the US proposes to admit as adoptive admissions.

**D.  Statements Not Offered for their Truth**. The US argues 70 exhibits and attachments are not hearsay because it will not offer them for the truth of the matters asserted. The Motion does not discuss any specific exhibits, but generally identifies the exhibits as:  documents in which third parties opined about the volume of ads on Backpage relating to prostitution and sex trafficking; emails relating to customer credit card charges being declined due to banks' purported concerns about some ads on Backpage relating to criminal activities; and emails relating to customer complaints about Backpage blocking their ads, in whole or in part. The US asserts these documents can be admitted to show notice, knowledge, state of mind, intent, etc. under Rule 803(3), but makes no attempt to explain how the documents could be relevant if the statements in them are not true.[10] Unless the statements in the proposed exhibits are true, the exhibits are irrelevant (and, as discussed below, even if the statements are true, they still must be excluded).

Even if the US presents a basis for the Court to conclude some of the proposed exhibits were non-hearsay, the Court should exclude them because their probative value is low and the risk of unfair prejudice is extreme. *Doe v. Torrington Board of Education*, 2019 WL 625696 (D. Conn. Feb. 14, 2019). *Doe* brought claims against a school district alleging he was bullied and sexually assaulted while a student. He sought to introduce investigative reports of a state agency that had investigated allegations of abuse at the school arguing, among other things, the reports were not hearsay because

---

[10]  This is not a case where the existence of complaints is relevant, even if they are untrue. *Contra Haddad v. Lockheed Calif. Corp*, 720 F.2d 1454, 1456 (9th Cir. 1983) ("[T]his testimony was not...offered to prove the truth of the complaints. Instead, this testimony was offered to show that Lockheed management had received complaints regarding Haddad. Such testimony was relevant in demonstrating Lockheed's non-discriminatory intent in its employment practices.").

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

he would not offer them for their truth, but to show the defendants were on notice of bullying, hazing, and assaults. The court granted a defense motion to exclude the exhibits under Rule 403, finding they created an unfair risk of prejudice, noting the reports:  a) contained multiple levels of hearsay and were unreliable; b) suggested the conduct described in the reports was criminal; c) contained conclusions of law reserved for the court; and d) contained inadmissible opinion testimony by a lay witness. *Id.* at *2. The proposed exhibits the US seeks to admit as non-hearsay here suffer from all of these flaws and should be excluded even if they are not hearsay and are relevant. The analysis under Rule 403 must be conducted on a document by document basis. *See, e.g., U.S. v. Curtin*, 489 F.3d 935, 958 (9th Cir. 2007) ("we hold as a matter of law that a court does not properly exercise its balancing discretion under Rule 403 when it fails to place on the scales and personally examine and evaluate *all* that it must weigh") (emphasis in original).

**E.  Business Records.** The US seeks to admit 21 exhibits and attachments under Rule 803(6) as records of a regularly conducted activity (business records). To establish an exhibit is admissible under this exception, the US must demonstrate, through the testimony or certification of a qualified witness, each "record of an act, event, condition, opinion, or diagnosis" 1) "was made at or near the time by—or from information transmitted by—someone with knowledge;" 2) "was kept in the course of a regularly conducted activity of a business," and 3) "making the record was a regular practice of that activity." Rule 803(6). Not every record kept by a business qualifies as a business record for purposes of the hearsay exception; rather only those records "considered trustworthy because they are the product of 'systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.'" *Lion Oil Trading & Transp., Inc. v. Statoil Marketing & Trading (US) Inc.*, 2011 WL 855876, *6 (S.D.N.Y. Feb. 28, 2011) (the PowerPoint slides, letters, and memoranda at issue were "unique responses to unusual or isolated events" and the proponent failed to show they were business records within the scope of Rule 803(6)).[11]

---

[11]  Admitting a document under the business records hearsay exception does not allow the admission of any "double hearsay" or "hearsay within hearsay" in the document, unless it too satisfies an exception. *In re Oil Spill by the Oil Rig "Deepwater Horizon,"* 2012 WL 85447, *3 (E.D. La. Jan. 11, 2012). The same also is true for other hearsay exceptions. *U.S. v. Marguet-Pillado*, 560 F.3d 1078, 1086 (9th Cir. 2009) (reversing conviction where the US had evidence admitted under a hearsay exception, but failed to demonstrate an exception for each level of hearsay within the document). The US's

Because the exception applies only to records considered trustworthy on account of systematic checking or the like, the Sixth Circuit recently rejected the claim that all emails are business records:

> An email is not a business record for purposes of the relevant hearsay exception simply because it was sent between two employees in a company or because employees regularly conduct business through emails; such evidence alone is insufficient to show that the email is a record, made as 'a regular practice' of the company, Fed. R. Evid. 803(6)(C), and that 'the record was kept in the course of a regularly conducted activity of a business,' *id.* at 803(6)(B). '[I]t would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives e-mails, then *ergo* all those e-mails are business records falling with the ambit of Rule 803(6)(B).' *United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013). If that were the case, then every single email sent within any company would fall within the exception. This result would obviate the entire purpose of the business records exception, which is designed for a limited category of records—namely those that are regularly produced as a part of a company's business activities.

*U.S. v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019).[12] Except for certifications from records custodians for certain financial institutions, three certifications from purported records custodians relating to purported Backpage ads, and an affidavit in support of a video, the US makes no effort, and presents no evidence, to establish that any exhibits it seeks to admit under the business records exception satisfy the requirements of the exception. As discussed below, even as to the three certifications relating to ads, they are deficient, the proposed exhibits relating to them are objectionable, and the Court should not admit them notwithstanding the certifications.

**F. Admissions of Party-Opponents.** The US seeks to admit 73 exhibits and attachments as non-hearsay admissions of party opponents under Rule 801(d)(2)(A), which says statements "offered against an opposing party and" "made by the party in an individual or representative capacity" are not hearsay. Although the US identifies dozens of exhibits as purported admissions, it fails to identify any statements in those documents that are admissions or which Defendant made each purported admission. The US also fails to state how any of the purported admissions relate to any charged offense. Moreover, the US presents no evidence to establish the out-of-court declarants whose purported admissions the US seeks to admit were competent to make the purported

---

proposed exhibits are replete with multiple levels of hearsay—an issue the US ignores.

[12] *Accord In re Oil Spill*, 2012 WL 85447 at *3 ("[c]learly, there is no across-the-board rule that all emails are admissible as business records;" rather "a custodian or qualified witness must attest that these conditions [under Rule 803(6)] have been fulfilled—which certainly requires an email-by-email inquiry"). *See also Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 331 (S.D.N.Y. 2009) ("The Court holds that the ERMI Business Plan Document is hearsay and not admissible under the business records exception to the hearsay rule because it is a unique document not kept in the regular course of business.").

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

admissions. *Thomas v. Stone Container Corp.*, 922 F. Supp. 950, 957 (S.D.N.Y. 1996) ("the proponent of an admission by a party opponent must establish the declarant's competence; office or plant gossip does not become admissible simply because it is put into the mouth of someone whose statements are not subject to hearsay objection") (citing *Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 700 F.2d 785, 816-17 (2d Cir. 1983)), *cert. denied*, 464 U.S. 1073 (1984).[13]

**G. Compliance with Other Rules of Evidence.** The Court should reject the US' invitation to make sweeping determinations of admissibility using the US' broad categorizations of evidence, without specifically evaluating each individual exhibit under the Rules of Evidence. *Curtin*, 489 F.3d at 958. Even if the US establishes that certain of its proposed exhibits could be admitted under Rules 801 or 803, admissible exhibits must also comport with the other Rules of Evidence. For example, an admissible exhibit must be relevant (R. 401) and substantially more probative than prejudicial, confusing, misleading, wasteful, or cumulative (R. 403). An admissible exhibit must be authentic (R. 901), complete (R. 106), and cannot contain hearsay (R. 802) (unless subject to an exception). The witness through whom an exhibit is admitted must lay the proper foundation and be competent to testify to the exhibit (Rs. 601 & 602). The US makes no effort to demonstrate its proposed exhibits satisfy these other rules—and a great deal of certainly them do not. Indeed, even if the US could lay an appropriate foundation for its proposed exhibits under Rules 801 or 803, the Court nonetheless will be required to exclude many of them due to problems such as hearsay on hearsay, undue prejudice with little or no probative value, improper lay opinions, and improper invasions on the Court's right to instruct the jury on the law.

## IV.   THE MOTION IGNORES MYRIAD CONFRONTATION CLAUSE ISSUES.

Even if an out-of-court statement survives a hearsay challenge, a defendant still has a Sixth Amendment right to confront his or her accusers. The Confrontation Clause provides an absolute bar to the admission of testimonial out-of-court statements unless certain conditions are met. *Crawford*, 541 U.S. at 68. *Crawford* holds a declarant's "testimonial" out-of-court statement is not admissible under the Confrontation Clause unless (1) the declarant testifies, *id.* at 53-54, (2) the

---

[13] *See also* Weinstein & Berger, *Weinstein's Federal Evidence*, § 602.02 (2d ed. 2004) ("A witness may testify only about matters on which he or she has first-hand knowledge. The witness's testimony must be based on events perceived by the witness through one of the five senses.").

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

1    defendant had a prior opportunity for cross-examination and the declarant is unavailable, *id.* at 54,

2    or (3) the evidence is admitted for purposes other than establishing the truth of the matter asserted,

3    *id.* at 59 n. 9. The Confrontation Clause cannot be satisfied by the US' mere assurances of reliability.

4    Rather, the Confrontation Clause "commands, not that evidence be reliable, but that reliability be

5    assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61. The Ninth

6    Circuit reviews *de novo* a trial court's findings about whether proffered evidence violates the

7    Confrontation Clause. *U.S. v. Bustamante*, 687 F.3d 1190, 1193 (9th Cir. 2012).

8        Here, the US seeks to admit hundreds of documents and attachments without foundational

9    testimony from knowledgeable witnesses, to preclude the defense from confronting its witnesses.

10   Defendants not only have the right to confront the witnesses about the authenticity of the

11   documents, but also to confront them about the content of any testimonial statements in the

12   proposed exhibits. *Crawford*, 541 U.S. at 61. The US' attempt to present much of its case through

13   testimonial documents, without giving the defense any opportunity to confront those who

14   participated in the communications, plainly violates the Sixth Amendment.

15   **V.    THE FERRER/BACKPAGE EXHIBITS ARE NOT SELF-AUTHENTICATING.**

16       In its Motion, the US argues many of its proposed exhibits are self-authenticating because they

17   were produced either by its lead cooperator, Ferrer, or by Backpage.com, LLC. Dkt. 931 at 6-7.

18   Once again, the US conflates Backpage and Ferrer with Defendants. Backpage and Ferrer are not

19   parties to this proceeding, so *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, 637

20   Fed. App'x 645, 649 n.7 (2d Cir. 2016), which dealt with the authentication of documents produced

21   by parties to a lawsuit, is inapposite. While *John Paul Mitchell Systems v. Quality King Distributors*, 106 F.

22   Supp. 2d 462, 473 (S.D.N.Y. 2000), dealt with documents produced by third parties (in civil

23   litigation), the US fails to cite the more pertinent part of the decision, which held documents

24   produced by one party's paid informant would not be assumed to be authentic:

25       The second set of CDM documents—produced by JPMS's paid informant—are excluded
         due to lack of authentication. At least for the purposes of this preliminary injunction
26       hearing, JPMS has offered inadequate evidence of how these documents were obtained.
         Several of the documents appear to bear the letterhead of CDM and Robert Seibel's law
27       firm. Several also bear the signatures of certain of the defendants invoking the Fifth
         Amendment privilege. Still, the Court has been given no letterhead to compare with these
28       documents. Most importantly, the paid informant never testified to their authenticity.
         Adequate proof of the authenticity of this set of documents [] has not been offered as of

1    this date and those documents are therefore not admitted into evidence.

2 *Id.* Moreover, the US cites no authority holding documents produced in other litigation can be

3 treated as self-authenticating in a separate criminal prosecution against different parties.

4    The Court should hold the US to the standards imposed by Rule 901 and require the

5 authentication of each individual document it seeks to admit. Rule 901(b) allows authentication

6 through "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics

7 of the item, taken together with all the circumstances," but does not allow that to happen absent a

8 witness. At a minimum, someone must testify about the indicia of authenticity in the documents. At

9 trial, Ferrer might be able to authenticate some of the US' proposed exhibits, but, for example, he

10 likely cannot authenticate emails purportedly received by Defendants from others.

11    Finally, there is good cause to be dubious about the authenticity of the US' exhibits, regardless of

12 whether they "appear" authentic. Counsel have examined the metadata from a small number of the

13 US' proposed exhibits and the metadata shows: a) one of the documents was modified by the US

14 *after* the documents originally were produced by Ferrer/Backpage in 2017 and b) two of the

15 documents were modified by Ferrer's counsel five months *after* the commencement of this case.[14]

16 The metadata for the US' proposed Exh. 5 shows the document was last modified on January 9,

17 2018, and was last saved by a member of the prosecution team. The metadata for the US' proposed

18 Exhs. 23 and 101 shows both documents were last modified on September 20, 2018, and were last

19 saved by Jonathan Baum (Ferrer's criminal counsel). Given this evidence of modifications to the

20 exhibits (whether inadvertent or intentional), the Court should not excuse the US from providing

21 evidence of authenticity and holding it to its burden under Rule 901. Defendants cannot be denied

22 the opportunity to cross-examine the US' witnesses about issues of the sort raised by the metadata

23 in the US' proposed exhibits. *See Crawford*, 541 U.S. at 61.

24 **VI.    OBJECTIONS TO PARTICULAR CATEGORIES OF DOCUMENTS.**

25 **A. "Letter Correspondence."** The US seeks to admit letters to Backpage, Larkin, and Lacey

26 asserting numerous Backpage ads related to prostitution or sex trafficking and urging them to

27 discontinue accepting all adult-oriented advertising. Those letters plainly are improper and

28

---

[14] The Court can examine the metadata by opening the documents in Word and PowerPoint and using the File|Info command in PowerPoint or the File|Properties command in Word.

inadmissible. First, the US says it seeks to admit the letters to show "notice, knowledge, state of mind, intent, and pattern of communication," Dkt. 931 at 16, not for the truth of their statements, but the US plainly seeks to do what it denies. Unless the statements in the letters are true, the letters are utterly irrelevant. If the claims in the letters about prostitution are untrue, Defendants' state of mind about those letters is irrelevant. Second, hearsay aside, even testimony from the letters' authors about their statements in the letters would be improper because none of the statements relate to the 50 charged ads, and the authors do not have personal knowledge of the charged ads, the persons who posted them, the persons advertised in them, or the activities in which they were engaged, s*ee* Dkt. 946 at 13; *supra* Section II, n. 5, much less personal knowledge about *Defendants*' knowledge or intent with respect to those ads, those persons, or their activities. Third, the letters are replete with hearsay, hearsay on hearsay, statements without foundation, improper lay opinions, and statements that would improperly invade the Court's right to instruct the jury on the law. The letters plainly would be immensely prejudicial and of little or no probative value and should be excluded under Rules 401 and 403. *See Curtin*, 489 F.3d at 958.

Moreover, in seeking to admit the letters, the US ignores the Constitutional principle that speech must be presumed to be protected unless and until the US proves otherwise. The burden of proving speech is unlawful always falls to the US. *See U.S. v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the US restricts speech, the US bears the burden of proving the constitutionality of its actions."); *id.* at 818 ("When First Amendment compliance is the point to be proved, the risk of nonpersuasion...must rest with the US, not with the citizen."); *Bd. of Trs. v. State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) ("the State bears the burden of justifying its restrictions"). The US cannot meet its burden to prove that each Defendant knew, at the time of publication, that the 50 charged ads related to unlawful activity conducted by a business enterprise, but nonetheless chose to publish the ads to facilitate the enterprises' unlawful activities, by offering the opinions of third parties (whether in-court or out-of-court) that many or most of the millions of adult-oriented Backpage ads looked like they related to unlawful activity—regardless of how fervently the third-parties held such beliefs or even if they had actual knowledge some other ad or ads did relate to unlawful activity.

Moreover, the letters' authors called on Backpage to discontinue *all* adult advertising because *some*

---

15

adult advertising related to unlawful conduct—but adult-oriented advertising is unquestionably protected by the First Amendment and Backpage had no obligation to censor First Amendment protected ads in an effort to suppress ads relating to unlawful activity. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002); *accord Packingham v. North Carolina*, 137 S. Ct. 1730, 1738 (2017) ("The government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter."). The US clearly seeks to use these letters, and the testimony of various witnesses, to contend Backpage was obligated to suppress lawful speech as the means to suppress unlawful speech—something the Constitution clearly forbids. The US' effort to present evidence, under whatever guise, that "anyone could tell," just by looking, that dating ads, massage ads, or escort ads containing no offers of sex for money actually related to illegal prostitution is just a transparent effort to indirectly get to the same unconstitutional endpoint—the suppression of all adult advertising. The Travel Act would fail Constitutional muster, as applied, if, to avoid liability for facilitating unlawful activity, a publisher must suppress facially lawful ads that *might* relate to unlawful activity to avoid the threat of prosecution. *E.g., Backpage.com v. Cooper*, 939 F.Supp.2d 805, 829 & (M.D. Tenn. 2013) (enjoining on First Amendment grounds the enforcement of a statute criminalizing selling or offering to sell an ad that "would *appear* to promote a commercial sex act with a minor" because otherwise "print and online media across the country could face the choice Backpage.com has described between foregoing the right to publish third-party content and risking felony charges") (emphasis in original).

**B.  "Intra-Backpage" PowerPoint Slides.** The US seeks to admit at least five sets of PowerPoint slides as co-conspirator statements made by Backpage or by offering them not for their truth but to show "Backpage's state of mind"—but Backpage is not on trial. Dkt. 931 at 14. Moreover, the Motion says nothing about the slides, except to claim they "bear Backpage's name and/or logo." *Id.* The US does not prove the slides were prepared by Backpage or contain statements made by Backpage. The US presents no evidence of a conspiracy (beyond saying Backpage plead guilty to conspiracy to commit *money laundering*), nor any evidence Defendants participated in that purported conspiracy, that the slides contain statements made in the course of the purported conspiracy, or that the slides contain statements in furtherance of the purported conspiracy.

1   The US not only fails at a general level to provide any foundation for the slides, but the slides

2   themselves disclose further flaws with the US' theory. For example, two of the slide sets expressly

3   say they were not prepared by Backpage, which made no representations regarding their accuracy.

4   *See* Exhs. 3 and 120, at slide 2 ("[t]his confidential management presentation...has been prepared by

5   Duff & Phelps Securities, LLC with input from the management of Backpage.com, LLC" and

6   "neither Backpage nor any of its officers, directors, employees, controlling persons, agents, or

7   advisers...makes any express or implied representation or warranty as to the accuracy or

8   completeness of the information contained herein"). Likewise, the metadata for two other slide sets

9   say they were prepared by Duff & Phelps. *See* Exhs. 2 and 4 ("Author: David Prekop"; Company:

10  Duff & Phelps").[15] One slide set does ***not*** bear Backpage's name or logo and appears to have been

11  prepared for New Times, Inc. (Backpage's former ultimate parent company) for the financing of a

12  proposed merger with the Village Voice newspaper chain. *See* Ex. 5.[16] The document cannot

13  conceivably be construed as a statement of Backpage, much less a statement relating to or in

14  furtherance of its purported money laundering conspiracy, and cannot be admitted against

15  Defendants. Further, the US claims it may seek to admit these slides not for the truth of their

16  statements, but fails to explain how the slides would be relevant if not offered for the truth.

17  **C.   "Performance Appraisals."** The US seeks to admit nine Word files it claims are

18  "performance appraisals" of employees "supervised by [Defendants] Padilla and Vaught." Dkt. 931

19  at p. 15 (referring to Exhs. 141 (two files) & 458-470). The documents do not appear to have been

20  prepared by Defendants Padilla or Vaught, nor do they either purport to be or appear to be

21  "performance appraisals" in the usual sense of the term. Rather, they appear to be quick notes of an

22  unidentified person's or persons' perceptions of the moderation skills of several Backpage

23  employees, as observed on a given day. The US obviously has no idea who prepared these

24  documents, as it says "Padilla and Vaught were employees at the time they completed the

25  performance evaluations," but two sentences later says "to the extent the performance appraisals

26

27  _____

    [15]   If the US shifts and claims these documents are admissible as statements of Backpage's "agent,"
28  that position nonetheless would fail for the reasons discussed in Section III(B).

    [16]   As discussed above, the metadata for this proposed exhibit shows the document, which is dated
    2006, was last modified in January 2018 by a former member of the prosecution team.

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

1  were prepared by other Backpage employees," they would be admissions of Backpage's agent. *Id.*

2  The US claims the documents can be admitted as admissions by a party opponent or as co-

3  conspirator statements (apparently under the theory that Padilla and Vaught prepared the

4  documents), as admissions of Backpage's "agent" (whomever that might have been, if not prepared

5  by Padilla or Vaught), or as business records. Despite advancing four theories for the admission of

6  the documents, the US fails to establish they are admissible under any of the four, for all the reasons

7  discussed above in the sections pertaining to each theory.

8  **D. "Consulting Firm Documents."** The US claims documents prepared for "Backpage and

9  related entities" by consulting firms (*e.g.*, BDO and Duff and Phelps) constitute statements of

10  Backpage's "agent" "because the firms were hired by Backpage to perform work related to its

11  business operations." Dkt. 931 at 15. The US' argument widely misses the mark because, as discussed

12  above, independent contractors do not qualify as agents under Rule 801(d)(2)(D), the US failed to

13  show the firms could legally bind Backpage, and the US identifies no statements on subjects where

14  the consultants could bind Backpage—much less bind each Defendant.

15  **E. Bank Records.** The US seeks to pre-admit "(a) records from Backpage-related bank

16  accounts; and (b) records from Defendants' personal bank accounts," under Rule 803(6). Dkt. 931

17  at 17-18. The US does not offer these records as an exhibit to the Motion, but they apparently are

18  listed at Dkt. 889-1, which consists of 9 pages of a table, with somewhere between 20 and 25 exhibit

19  entries per page, with each entry apparently between one and one hundred pages (or more). During

20  the parties' meet and confer, the US would not explain the relevance of these exhibits, to which

21  Defendants they relate, or how they will be used at trial. *See* Thomas Decl. at ¶ 8. At this point, the

22  relevance of the avalanche of bank records is entirely unclear, and this category of exhibits cannot

23  be admitted pretrial, as the Court cannot analyze whether such exhibits comport with Rules 401 and

24  403. *See U.S. v. Waters*, 627 F.3d 345, 357 (9th Cir. 2010) ("The district court had the responsibility

25  to read every page of the articles in order properly to understand their contents before ruling on

26  their admissibility. Its failure to do so means that it could not have properly weighed the impact of

27  the articles under Rule 403."). The money laundering counts identify specific transactions among

28

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

exactly twenty financial institutions. *See* Counts 53-100.[17] The listed bank documents in Dkt. 889-1 go well beyond the twenty, and the records from those twenty institutions do not appear limited to the specific money laundering transactions. Accordingly, the relevance of the offered documents is not clear.[18] Bank records cannot be admitted until "foundational showings of authenticity *and relevancy* have been made." *U.S. v. Soulard*, 730 F.2d 1292, 1298 (9th Cir. 1984) (emphasis added). The US failed to meet that burden in its Motion or during the meet and confer. Accordingly, the bank records should not be admitted at this time.

**F.  Purported "Meeting Agendas."** The US says "it is anticipated that Ferrer will" testify and lay a business record foundation for "Backpage-related Meeting Agendas" and, based on that "foundational testimony," the US "will seek to admit" the agendas pursuant to Rule 803(6). Dkt. 931 at 18 (referring to Exhs. 14, 21, 23, 30, & 101). The US thus is not asking for a pre-trial ruling on these documents and the Court should not provide one, particularly as the US has not established the purported agendas satisfy the business records exception. *See* Rule 803(6)(D) (conditions for business record exception to hearsay rule must be "shown by the testimony of the custodian or another qualified witness, or by a certification" prior to admission); *U.S. v. Aiyaswamy*, 2017 WL 1365228, at *2 (N.D. Cal. Apr. 14, 2017). After the US presents its foundational testimony and offers the documents for admission, Defendants will raise any evidentiary objections they may have.

Moreover, although some of the purported meeting agendas are labelled as such, and include dates and participants (*see* Exhs. 14 and 21), some of the documents plainly are *not* "meeting agendas" and others may well not be. For example, the US' exhibit list (Dkt. 931-1) described Exh. 23 as "Agenda, 12/20/2007," but the Bates pages (DOJ-BP0004602308-DOJ-BP-0004602331) are a 24-page "2008 Budget and Business Plan for Backpage.com"—plainly not a "meeting agenda."[19]

---

[17]  The entities identified in these counts are:  Ad Tech, B.V., Ally Bank, Arizona Bank and Trust, Bank of America, BMO Harris, Branch Banking and Trust, Charles Schwab, Fidelity Title, Industrial Property Trust, Johnson Bank, Lincoln National Life, National Bank of Arizona, Primus Trust/K&H Bank, SB, Stewart Title, Strategic Storage Trust, TD Ameritrade, UBS Financial, US Bank, and Wells Fargo. *See id.*

[18]  Moreover, the records in Dkt. 889-1 are not limited to "Backpage-related" accounts or Defendants' personal accounts, as the US claims. Dkt. 931 at 17. They also include, *e.g.*, statements from the personal money market accounts of Margaret Larkin, who is not a defendant.

[19]  As discussed above, this document's metadata shows the prosecution modified it in January 2018.

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

Likewise, Exhs. 30 and 101[20] are not labelled as "meeting agendas," neither included a list of participants, and both were undated.[21] On their face, either could just be someone's notes to themselves. These documents underscore the problems posed by the US seeking to pre-admit hundreds of exhibits without presenting appropriate foundational information and evidence on an exhibit-by-exhibit basis—issues that are only compounded by inaccurate exhibit descriptors.

**G.  Purported "Google Analytics" Reports.** The US says "it is anticipated that Carl Ferrer and/or Dan Hyer" will provide testimony about documents the US calls "Google Analytics" reports and, "based on this foundational testimony, the [government] will seek to introduce" some of the reports. Dkt. 931 at 18-19 (referring to Exhs. 311, 312, 313 & 314). Again, the US does not ask for a pre-trial ruling on these documents and the Court should not provide one. Rule 803(6)(D). Defendants will evaluate the exhibits and make any evidentiary objections after the US presents any foundational testimony and offers the documents for admission.[22]

**H.  Spreadsheet of News Articles Discussing Backpag**e. The US says "it is anticipated that Carl Ferrer and/or Dan Hyer" will provide testimony about a document it calls "Backpage Stories" and, "[b]ased on this foundational testimony, [it] will seek to introduce" Exh. 260 as a business record under Rule 803(6). Dkt. 931 at 20. The US does not ask for a pre-trial ruling on Exh. 260 and the Court should not provide one, particularly as the US has not established the spreadsheet satisfies the business records exception. Defendants will evaluate the exhibit and make any evidentiary objections after the US presents any foundational testimony and offers it for admission. Defendants note, however, that much of the information in Exh. 260 is embedded hearsay and, even if the US provides a foundation for the spreadsheet itself as a business record, none of the embedded hearsay could be admitted on that ground. The headlines, links to publications/sites with embedded headlines, URLs with embedded headlines, and capsule summaries, among others, all are hearsay (often including embedded hearsay) for which there is no exception. Moreover, the document is highly prejudicial, and of little or no probative value, so also should be excluded under Rule 403.

---

[20]  As discussed above, the document's metadata says Ferrer's lawyer modified it on Sept. 20, 2018.
[21]  The US's Exhibit List shows no date for Exh. 30 but somehow shows a date for Exh. 101.
[22]  Defendants also question the relevance of one of the proposed exhibits, Exh. 314, which relates not to www.backpage.com, but to an unrelated website (www.adultsearch.com).

**I.   Ads from Wayback Machine, Unchartered Inc., and Exh. F (Dkt. 916-6).** The US seeks to admit pretrial 47 pages of documents from the Internet Archive and its "Wayback Machine"— mainly purported historical Backpage ads. Dkt. 931 at 20-22; Exh. D (Dkt. 916-4, under seal). The Court should exclude this exhibit as inaccurate, potentially misleading, and offered out of context. *See*, *e.g.*, Rules 106, 401, & 403. First, the exhibit plainly is not an accurate or fair representation of the purported ads on the date the Internet Archive says they were captured. The stated capture dates all were in *2016* and *2017*, but every ad is emblazoned with the April 6, *2018*, notice of the Backpage website seizure. The Internet Archive's affiant says images displayed with the captured ads may or may not have been displayed on the date the ads were captured—and that clearly is the case here: "The date assigned by the Internet Archive applies to the HTML file but not to image files linked therein. Thus images that appear on a page may not have been archived on the same date as the HTML file....Attached hereto as Exhibit A are true and accurate copies of printouts of the Internet Archive's records *of the HTML files.*" *Id.* at p. 1 (emphasis added). Even ignoring the seizure notices, we cannot know whether the captured ads existed in the form depicted in Exh. D, whether on the date the HTML files (*i.e.* the text) were captured or at any other time. The records custodian only certified that the accuracy of the HTML files (*i.e.* the text), not the images.

More generally, the Wayback Machine, an Internet "library" that browses the web and attempts to capture and store webpages (or pieces of webpages) as of certain times, is not reliable. As the Internet Archive acknowledges, pages can be removed or excluded from its archive, "[n]ot every date for every site archived is 100% complete," and the pages captured often include "broken pages [and] missing graphics." *See Using the Wayback Machine,* https://help.archive.org/hc/en-us/articles/360004651732-Using-The-Wayback-Machine (last accessed June 5, 2020). "The Wayback Machine tool *was not designed for legal use.*" *Id.* (emphasis added). *See Transcap Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 2009 WL 3260014, at *7 (N.D. Ill. Oct. 9, 2009) (court "troubled" by "reliance on the way back machine" as "the Internet Archive warns of missing links and images in webpages that may be accessed through the way back machine"). *At best*, the Internet Archive accurately depicts the *text* of a web page, as captured at a given moment. A frozen moment can be misleading, however, particularly as any given Backpage ad could have changed over time and the

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

evolution of an ad (or its subsequent deletion by Backpage) could be important to its assessment. The authorities the US cites raise this very concern. For example, in *Martins v. 3PD, Inc.*, 2013 WL 1320454, *16 (D. Mass. Mar. 28, 2013), the court admitted captures from the Wayback Machine only after finding they were historically accurate and identical to what actually appeared on the website, which was static. *Id.* ("More fundamentally, the 3PD website appears to have remained substantially identical since it was created sometime in 2006–2007. Certainly, all of the substantive content quoted above from the page itself has remained identical, save for slight changes in the number of deliveries and delivery teams."). The Court should not permit the US to use Exh. D, which unquestionably does not accurately depict ads as they ran on the Backpage website. Alternately, if the Court permits the use of Exh. D, it should:  a) require the US to redact the prejudicial seizure notices from the ads and b) instruct the jury the exhibit may not accurately depict the ads as they ran on the website.

The US tries to circumvent the evidence rules through judicial notice of its proposed exhibit, Dkt. 931 at 2, but judicial notice would only anoint these inaccurate, unreliable, and potentially misleading historical ad captures as accurate portrayals of the ads. *See Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."); *see also Nassar v. Nassar*, 2017 WL 26859, *5 (M.D. Fla. Jan. 3, 2017) (Internet Archive website "makes no warranty or representation regarding the accuracy, currency, completeness, reliability, or usefulness of [Wayback Machine] content"). At most, the Court could take judicial notice that the US' proposed exhibit is an inaccurate, unreliable, and potentially misleading version of certain ads, as captured by the Wayback Machine. Judicial notice cannot be taken regarding the accuracy of the content of a given document, yet that is exactly what the US proposes.

Likewise, the US offers no authority or analysis that ads from Uncharted Software, Inc. are admissible or have ever been accepted by a court. Dkt. 931 at 22. The US offers no argument that the ads in Exh. E (Dkt. 916-5, under seal) are relevant, more probative than prejudicial, authentic, reliable, or complete. *See, e.g.*, Rules 106, 401, 403, & 901. Moreover, the purported business record certification for the Uncharted Software records, Exh. E, does not provide the required foundation

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

for business records under Rule 803(6). The certification says Uncharted had possession of the records, but the certification's passive voice sentences provide no information about how these records came to be created, how Uncharted came to possess them, or why they should be deemed trustworthy. The certification uses as circular and unintelligible language like "these records were created by the regularly conducted activity as a regular practice." The certification does *not*: say the records were created by someone with knowledge of the facts reflected in the records; identify the business that created the records; say the records were kept in the course of a regularly conducted activity of the business; or say making the records was a part of a regular practice of the activity of the business. Without such information, the Court has no basis to assess whether the declarant was competent or the records are admissible under Rule 803(6).

Finally, as to Exh. F (Dkt. 916-6, under seal), Ferrer may be qualified to certify certain business records for Backpage.com, LLC, but Defendants dispute his ability to certify the particular records he purported to certify here. Ferrer executed his certification on January 15, 2020. The records he purported to certify appear to be printouts of documents the US produced to Defendants in November 2018, which themselves appear to be printouts from the Backpage website from January and February 2018. Unless Ferrer provided these documents to the US in early 2018, a time the US claims he was not cooperating, the US apparently obtained documents from a source other than Ferrer, produced them to Defendants, and then later asked Ferrer to certify them as business records—but, if that is so, the documents are not business records of Backpage, but litigation materials of the US. The Court should not admit Exh. F unless the US establishes, with admissible evidence, that Ferrer is competent to certify these particular records—rather than "certifying" records given to him by the US that he has no basis to certify.

**J.   SA Fitchner's Irrelevant 2015 Video Recording**. The US seeks to admit a video "demonstrat[ing] how the Sacramento Backpage adult-escort and buy-sell-trade sections looked and operated at the time of the recording," March 6, 2015. Dkt. 931 at 23. SA Fitchner's declaration, Exh. G (Dkt. 916-7, under seal), acknowledges his video has no relation to this prosecution, but was created in the California Attorney General's 2013 investigation of Backpage. Dkt. 916-7. The video depicts a "sting" Fitchner conducted, which showed little more than a) his adult ad attracted more

1   responses than his sofa ad and b) Backpage promptly deleted *both* ads after he called Backpage

2   claiming the adult ad related to prostitution (without mentioning the sofa ad). The video has no

3   relation to the allegations in the indictment, the charged ads, or any purported victim. Rather, the

4   video is irrelevant to the charges, is extremely prejudicial since it relates to a different criminal

5   investigation, and should be excluded under Rules 401 and 403. If the Court admits the video, it

6   should require the US to inform the jury of the ultimate outcome of the California investigation—

7   two different judges in two separate cases ruled Backpage lawfully published adult ads and all the

8   content displayed in the video. *See People v. Ferrer*, 2016 WL 7237305 (Sup. Ct. Sacramento Cty. Dec.

9   9, 2016); *People v. Ferrer*, No. 16FE024013 (Sup. Ct. Sacramento Cty. Aug. 23, 2017).

## VII.   LACEY'S COUNSEL'S DOCUMENTS SHOULD NOT BE ADMITTED.

11   Mr. Lacey maintains these exhibits are privileged and were wrongly found unprivileged.

12   Consequently, they should not have been released to the US and should not be admitted at trial.

## VII.   THE "SUMMARY" EXHIBITS CANNOT BE ADMITTED PRETRIAL.

14   The US seeks to pre-admit three purported "summary" exhibits:  (1) a set of 34 flowcharts

15   purporting to depict the transactions at issue in the indictment's money laundering counts; (2) charts

16   reflecting annual revenues for certain Backpage-related entities and the annual earnings of certain

17   Defendants; and (3) a chart reflecting Backpage's gross revenues by ad category over a two-year time

18   period. *See* Dkt. 931 at 24-25, Dkt. 977-1 at 2. None of these exhibits are attached to the Motion

19   and none appear on the US' Exhibit List. *See* Ex. A. As a preliminary matter, given the US' stated

20   intention of offering the underlying records into evidence at trial, Dkt. 931 at 25, none of the

21   purported "summaries" are admissible as evidence and the Motion should be denied on this basis

22   alone. *U.S. v. Wood*, 943 F.2d 1048, 1053–54 (9th Cir. 1991) ("charts or summaries of testimony or

23   documents already admitted into evidence are merely pedagogical devices, and are not evidence

24   themselves"). In fact, the Ninth Circuit has "long held that such pedagogical devices should be used

25   only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury

26   during deliberations." *Id.* at 1053. Simply put, the US' proposed summaries are nothing more than

27   demonstratives, and there is no "evidence" for the Court to pre-admit here.[23]

28   _____

[23]  The US says it "will produce any remaining summary exhibits to Defendants within a reasonable
time prior to trial," Dkt. 931 at 24-25, so there is nothing to be done as to those exhibits now.

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

1    Nor should the Court now authorize the blanket use of summary exhibits. "A proponent of a

2    summary exhibit must establish a foundation that (1) the underlying materials on which the summary

3    exhibit is based are admissible in evidence, and (2) those underlying materials were made available

4    to the opposing party for inspection." *Amarel v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1996) (as

5    amended Jan. 15, 1997). The US has not met this standard. First, the US refuses to produce the

6    underlying materials purportedly summarized in the revenue and income charts. Thomas Decl. at ¶

7    10; Dkt. 977-1 at 2. When Defendants requested disclosure of this information during the meet and

8    confer, the US refused, saying only that it was tax return information and refusing to further clarify.

9    Thomas Decl. at ¶ 10. Neither Defendants nor the Court can meaningfully evaluate the admissibility

10   of the US' proposed charts without the underlying records. Nonetheless, without explanation, the

11   US demanded that Defendants file a motion to obtain access to the records underlying the US'

12   purported summary chart. *Id.* The Court should reject the US' misguided attempt to shift its burden

13   under Rule 1006 to Defendants. *See Amarel*, 102 F.3d at 1516 ("The purpose of the availability

14   requirement is to give the opposing party an opportunity to verify the reliability and accuracy of the

15   summary prior to trial.") (cleaned up); *U.S. v. Miller*, 771 F.2d 1219, 1238 (9th Cir. 1985) (summary

16   was not admissible under Rule 1006 because the US "failed to provide appellants with a copy of the

17   underlying documents prior to the introduction of the summary").

18   Second, as to all of the purported summary exhibits, the US fails to establish the underlying

19   materials are admissible. Instead, the US merely asserts in conclusory fashion "the documents on

20   which the [three] exhibits are based—intra-Backpage records, the records from Backpage's many

21   bank accounts, and the records from Defendants' bank accounts—are themselves admissible,"

22   without any further explanation or argument. Dkt. 931 at 25.[24] The US does not even mention the

23   tax return information it cited during the meet and confer. *Id.* Such conclusory statements do not

24   support admission or use of summary charts. *See Soulard*, 730 F.2d at 1300 ("The trial court, out of

25   the presence of the jury, should carefully examine the summary charts to determine that everything

26   contained in them is supported by the proof."). In any event, the US indicates it "intends to offer

27

28   [24]  None of these records is on the US's exhibit list. *See* Ex. A. To the extent these records are of the
     same nature as the exhibits that the US seeks to pre-admit, the US has not established their
     admissibility for the same reasons discussed elsewhere in this opposition.

[the underlying documents] into evidence at trial." Dkt. 931 at 25. Thus, the Court will have an opportunity to determine admissibility then and there is nothing for the Court to do now.[25]

Third, the 34 proposed "summary" flowcharts do not comply with Rule 1006. The US describes the charts as summaries of "how Backpage-generated proceeds flowed through various entities" named in the indictment. Mot. at 24. In fact, each chart is labeled as "Flowchart COUNT XX," with a reference to a specific money laundering count(s). The inclusion of the words "Count X" on the charts make them akin to closing argument slides, not Rule 1006 summary exhibits. They should be precluded as improper argument and under Rule 403. Indeed, the charts do not summarize voluminous records, but are demonstratives that apparently will summarize some analysis of the US' witness Quoc Thai.[26] While they might be appropriately used as demonstratives (if the references to specific counts are removed and depending on the testimony), there is no basis to pre-admit them or pre-authorize their use absent foundational testimony from a witness. *See U.S. ex rel. Poong Lim/Pert v. Dick Pac./Ghemm*, 2006 WL 568321, at *5 (D. Ak. Mar. 7, 2006) ("a flow chart that goes far beyond merely summarizing the contents of documents…is inadmissible under Rule 1006.").

## VIII.  CONCLUSION.

For the foregoing reasons, the Court should deny the Motion in its entirety.

---

[25]  The US's stated intent to offer the documents into evidence at trial only makes more bizarre its refusal to provide the unidentified "tax information" to Defendants. Of course, the US should not be permitted to introduce into evidence documents it refuses to give to Defendants in discovery.

[26]  The charts do not even purport to summarize "voluminous" records. Some relate to a single monetary transaction (*e.g.*, for Counts 63-68). Others are visual representations of only a few wire transactions, money transfers, or checks (*e.g.*, for Counts 78, 82, & 86-93, where each contain a visual depiction of seven transactions). Even the more complex charts contain relatively few transactions, not "thousands of thousands of pages" worth, as the US claims.

RESPECTFULLY SUBMITTED this 31st day of March 2021,

BIENERT | KATZMAN PC
*s/ Thomas H. Bienert, Jr.*
Thomas H. Bienert, Jr.
Whitney Z. Bernstein
Attorneys for James Larkin

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) § II(C)(3), Thomas H. Bienert, Jr. hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin McCampbell Paris
Attorneys for Michael Lacey

BIRD MARELLA BOXER WOLPERT
NESSIM DROOKS LINCENBERG AND
RHOW PC
*s/ Ariel A. Neuman*
Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Attorneys for John Brunst

FEDER LAW OFFICE PA
*s/ Bruce Feder*
Bruce Feder
Attorneys for Scott Spear

DAVID EISENBERG PLC
*s/ David Eisenberg*
David Eisenberg
Attorneys for Andrew Padilla

JOY BERTRAND ESQ LLC
*s/ Joy Bertrand*
Joy Bertrand
Attorneys for Joye Vaught

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*
Toni Thomas

3709425.1