Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin E. McCampbell Paris (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>                    Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**DEFENDANT MICHAEL LACEY'S UNOPPOSED MOTION TO AMEND HIS CONDITIONS OF RELEASE**<br><br>(Oral argument requested) |

Defendant Michael Lacey, by and through his undersigned attorneys, hereby moves under 18 U.S.C. § 3142(c)(1)(B) & (3) for an order amending his conditions of pretrial release as set forth in the Court's April 13, 2018 Order (Doc. 67). During a recent home visit, Ian Scott, the Pretrial Services Officer assigned to Mr. Lacey, suggested that Mr. Lacey petition this Court to have his ankle bracelet removed. Undersigned counsel spoke with the government about this request, and the government does not object to the removal of the ankle bracelet.

As discussed in greater detail below, the condition of release requiring continued electronic monitoring is not the lease restrictive condition that will reasonably ensure Mr. Lacey's presence at trial and the safety of the community.  Further, electronic monitoring prevents Mr. Lacey from engaging in the form of exercise that he has relied upon his entire life – swimming – to ameliorate the effects of a heart condition, maintain physical fitness, and alleviate stress.

This unopposed motion is based on the attached Memorandum of Points and Authorities, the Court's file, and any evidence or argument presented at the hearing on this matter.  U.S. Pretrial Services has no objection to the removal of Mr. Lacey's electronic monitoring ankle bracelet, and, in fact, suggested that he move the Court to have it removed.  The government does not object.

Excludable delay under 18 U.S.C. § 3161(h)(1) may occur as a result of this Motion or of an order based thereon.

RESPECTFULLY SUBMITTED this 7th day of April, 2023,

        Paul J. Cambria, Jr.
        Erin McCampbell Paris
        LIPSITZ GREEN SCIME CAMBRIA LLP

        By:   /s/ Paul J. Cambria, Jr.
                 Paul J. Cambria, Jr.
                 Attorneys for Michael Lacey

## MEMORANDUM OF POINTS AND AUTHORITIES

As set forth in greater detail below, Michael Lacey moves to amend the order setting his conditions of supervised release (Doc. 67) to strike the condition requiring electronic monitoring.

## BACKGROUND

### I. Mr. Lacey is a 74-year-old, long-term resident of Arizona, with deep ties to this District.

Mr. Lacey is an honored journalist who has been an active member of the Arizona community for fifty-seven years. In 1966, Mr. Lacey moved to Arizona to attend Arizona State University. In 1970, Mr. Lacey co-founded an alternative newspaper originally called the *Arizona Times* and subsequently renamed the *Phoenix New Times*. The newspaper became and has remained a prominent voice for free speech and journalism in Arizona for forty-nine years. In addition to founding the *Phoenix New Times*, Mr. Lacey and his partners acquired sixteen other newspapers, forming a nationwide conglomerate which they operated under Village Voice Media Holdings, LLC ("VVMH"). Collectively, the newspapers, which provided their publications free of charge, had more than 1.8 million readers. Because the newspapers did not require subscriptions, the publication of classified advertisements evolved as a key part of the revenue supporting the newspapers.

Mr. Lacey, who served as the editor-in-chief of the newspapers, oversaw investigative journalism covering a broad array of topics. During his tenure, the newspapers won hundreds of awards, including the Pulitzer Prize. Indeed, Mr. Lacey has been honored numerous times for his excellence in journalism.[1]

---

[1] Mr. Lacey won the 2011 Clarion Award from the Association for Women in Communications for his story about a diabetic woman who died in jail custody. *See* Michael Lacey, *What's Mom Worth?: When a Woman Became Deathly Ill in Sheriff Joe Arpaio's Jail, Guards and Nurse Ignored Her Agony,* PHOENIX NEW TIMES (Dec. 9, 2010), http://www.phoenixnewtimes.com/news/whats-mom-worth-when-a-woman-became-deathly-ill-in-sheriff-joe-arpaios-jail-guards-and-nurses-ignored-her-agony-6446744. Mr. Lacey was awarded the 2010 Best in the West journalism competition award for Immigration and Minority Affairs Reporting (along with Stephen Lemons and Paul Rubins of the *New Times*) for a series concerning immigration enforcement tactics of the Maricopa County Sheriffs County sheriff's office. *See* Michael Lacey, *Are Your Papers In Order?,* Phoenix New Times (March. 12, 2009), http://www.phoenixnewtimes.com/news/are-your-papers-in-

In addition to his commitment to providing free access to trail-blazing journalism, Mr. Lacey has been very generous to the Arizona community. For example, from 2014-2017, Mr. Lacey and his co-defendant James Larkin donated $3.75 million dollars to various non-profit organizations that assist immigrants and refugees.[2] Mr. Lacey has also donated to various non-profit organizations including those focused on encouraging minorities to vote. Further, Mr. Lacey (through VVMH), created paid digital fellowships for minority journalists in conjunction with the Walter Cronkite School of Journalism and Mass Communication at Arizona State University (and the Medill School of Journalism at Northwestern University). These programs were instrumental in providing aspiring minority journalists with a jump start on their careers. These are just examples of the many philanthropic activities in which Mr. Lacey has participated.

Mr. Lacey has significant personal ties to Arizona and the United States. Mr. Lacey is a long-term resident of Arizona and resides in Arizona. He owns numerous properties in Arizona, including his primary residence, where he has resided since 2005. Additionally, he owns several properties in the State of California. He has two sons, one who lives with him at his primarily

---

order-6426683. He led a VVM series called *Amongst Us*, deploying reporters across the country to report stories of the travails and contributions of Latinos, which won the 2011 James Aronson Award for Social Justice Journalism. *See* http://brie.hunter.cuny.edu/aronson/?page_id=1169. Mr. Lacey has also received the Valley of the Sun Society of Professional Journalists' President's Award, and has been honored by the Arizona chapters of the American Civil Liberties Union and the NAACP.

[2] These funds represent the settlement that Mr. Lacey and Mr. Larkin obtained after filing a successful Civil Rights Act suit against former Maricopa County Sheriff Joe Arpaio for their wrongful arrests. The events that led to this lawsuit are indicative of Mr. Lacey's commitment to vindication of his constitutional rights and defending himself against bogus criminal charges. Beginning in 2004, the *Phoenix New Times* published a series of articles critical of Sheriff Arpaio. These articles led to the arrests of Mr. Lacey and Mr. Larkin in the dead of night, *see* David Carr, *A Knock in the Night in Phoenix*, New York Times (May 12, 2008), http://nytimes.com/2008/05/12/business/media/12carr.html; however, all of the charges against them were promptly dismissed. Subsequently, they filed the civil action, and prevailed with an *en banc* victory in the Ninth Circuit, in which the Court recognized that "[i]t is hard to conceive of a more direct assault on the First Amendment than public officials ordering the immediate arrests of their critics." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012) (*en banc*).

residence in Arizona, and is preparing to attend graduate school in Phoenix, and one who lives in California. Mr. Lacey also has a brother who lives in Kansas, and a sister who lives in New York. He has always and continues to maintain strong relationships with his children and siblings.

**II.     The charges pending against Mr. Lacey.**

On March 28, 2018, a grand jury sitting in this District indicted Mr. Lacey and his co-defendants for allegedly conspiring to violate the Travel Act (18 U.S.C. §§ 371, 1952), as well as violations of the Travel Act (18 U.S.C. §1952), and the money laundering statutes (18 U.S.C. §§ 1956, 1957). (*See* Indict., Doc. 3.) On July 25, 2018, the government obtained a superseding indictment, which is the operative indictment in this case. (*See* Super. Indict., Doc. 230.) The superseding indictment included the original charges, as well as additional charges under the Travel Act and money laundering statutes. (*See id*.) In August 2021, the parties proceeded to trial, which ended in the Court granting the Defendants' oral motion for a mistrial. The new trial is scheduled to begin on August 8, 2023. At this time, there is a motion to dismiss pending. (*See* Doc. 1557.)

During the more than five years that this case has been pending, Mr. Lacey has complied with all conditions of release, has attended all necessary Court appearances, including the first trial, and has been in constant contact with his attorneys.

Additionally, prior to issuance of the indictment in this case, the Attorney General of the State of California filed a criminal complaint against Messrs. Lacey, Larkin, and Ferrer, charging them with one count of conspiracy and nine counts of pimping. On December 9, 2016, the court granted defendants' demurrer, dismissing all counts and recognizing that "providing a forum for online publishing is a recognized legal purpose." *People v. Ferrer*, No. 16FE019224 (Sup. Ct. Sacramento Cnty. Dec. 9, 2016), slip op. at 13. Although the California Attorney General filed a new criminal complaint, all charges, including pimping, were dismissed except for bank fraud charges. *See People v. Ferrer*, No. 16FE024013 (Sup. Ct. Sacramento Cnty. Aug. 23, 2017).

Throughout the California proceedings, Mr. Lacey has been released on bail without the requirement of use of an electronic monitoring anklet or other forms of monitoring.

### III. The current conditions of pretrial release were more restrictive than necessary and should be revisited.

For five years, Mr. Lacey has been monitored by Pretrial Services, during which time he has fully complied with his pretrial release conditions. At this time, his Pretrial Services Officer, the person in the best position to opine on his risk of flight and danger to public safety, has suggested that he seek an order from this Court amending his conditions or release to strike the condition requiring the electronic monitoring anklet. The government does not oppose this request.

### IV. The condition requiring use of an electronic monitoring anklet prohibits Mr. Lacey from swimming, which he relies upon to maintain health and alleviate stress.

Mr. Lacey is 74 years old. Prior to his arrest, he regularly swam to maintain his health, manage his weight, and alleviate stress. This discipline is the one form of exercise to which he has been able to successfully commit. He has been unable to swim since his arrest because he is required to wear an electronic monitoring anklet. In light of Mr. Lacey's advanced age, and the stress of having lived under an indictment for five years, makes the ability to swim much more important to his overall health and well being.

### **ARGUMENT**

Based on all of the above and the opinion of Mr. Lacey's Pretrial Services officer, electronic monitoring is not a necessary condition to ensure his presence at trial or public safety. For that reason, Mr. Lacey respectfully requests that this Court amend the Order to strike the condition requiring the continued use of an electronic monitoring anklet. This Court is empowered to "at any time[,] amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). Further, conditions of release must be the "least restrictive" conditions necessary to "reasonably assure" the defendant's appearance and the community's safety." 18 U.S.C. § 3142(c)(1)(B). The requirement that the conditions "reasonably assure" appearance and safety do not require a guarantee of safety or non-flight. *See United States v. Hir*, 517 F.3d 1081, 1086, 1092 n.2 (9th Cir. 2008); *United States v. Gentry*, 455 F. Supp. 2d

1018, 1032 (D. Ariz. 2006). In making a determination on the appropriateness of the conditions of release, courts must consider: the defendant's history and characteristics; danger to the community; and nature of the offense and weight of the evidence. *See* 18 U.S.C. § 3142(g).

**I.    Mr. Lacey's history and characteristics weigh in favor of amending the Order to omit the condition requiring continued use of an electronic monitoring anklet.**

Mr. Lacey's history and characteristics weigh in favor of removal of the anklet because he presents no risk of flight. He is 74 years old and has resided in this District since 1966. He has strong familial ties to this District and owns numerous properties in this District, in addition to properties in California.

For more than five years, Mr. Lacey has fully complied with all conditions of release and has appeared at every court appearance, including the first trial.

More importantly, Mr. Lacey's Pretrial Services Officer suggested to Mr. Lacey that he file the instant motion seeking authorization to remove the anklet, which the government does not oppose. This factor, alone, weighs heavily in favor of removal of the anklet.

**II.   The removal of Mr. Lacey's anklet does not increase the risk of danger to the community.**

This factor is a non-issue for this Court. The only risk that Mr. Lacey purportedly presented to the public concerns his purported involvement with the website www.backpage.com, which the government shut down more than five years ago.

**III.  The government's case.**

The government's case has been pending for more than five years, during which time the first trial ended in mistrial. At this time, a motion to dismiss is pending. (Doc. 1557.)

/
/
/
/

7

## CONCLUSION

In light of the unopposed motion to amend, Mr. Lacey respectfully requests that this Court amend the Order to remove the condition requiring use of an electronic monitoring anklet. Given that this motion is unopposed, and was encouraged by Pretrial Services, undersigned counsel does not believe that oral argument would benefit the Court, but certainly would appear, to the extent that the Court would like to hear from the parties.

RESPECTFULLY SUBMITTED this 7th day of April, 2023,

/s/   *Paul J. Cambria, Jr.*
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Defendant Michael Lacey

On April 7, 2023, a PDF version of this document was filed with Clerk of the Court using the CM/ECF System for filing and for Transmittal Of a Notice of Electronic Filing to the Following CM/ECF registrants:

Kevin Rapp, kevin.rapp@usdoj.gov
Peter Kozinets, peter.kozinets@usdoj.gov
Daniel Boyle, daniel.boyle2@usdoj.gov
Margaret Perlmeter, margaret.perlmeter@usdoj.gov
Andrew Stone, andrew.stone@usdoj.gov
Austin Maxwell Berry, austin.berry2@usdoj.gov