**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00422-001-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Lacey, et al. | |
| Defendant. | |

Before the Court are four Motions in Limine filed by Defendants Michael Lacey, James Larkin, Scott Spear, John Brunst, Dan Hyer, Andrew Padilla, and Joye Vaught (collectively "Defendants") (Docs. 1588; 1589; 1591; 1593).  Plaintiff United States of America (the "Government") has filed Responses in Opposition (Docs. 1604; 1613; 1603; 1607).  Additionally, the Government has filed nine Motions in Limine (Docs. 1590; 1592; 1594; 1595; 1596; 1597; 1598; 1599; 1600).   Defendants have filed Responses in Opposition (Docs. 1602; 1612; 1615; 1609; 1610; 1616; 1614; 1608; 1611).  The Court will address each Motion in turn.[1]

## I.   Legal Standard

Motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit*

---

[1] In this Order, the Court will resolve all of Defendants' Motions in Limine (Docs. 1588; 1589; 1591; 1593) and seven of the Government's Motions in Limine (Docs. 1590; 1594; 1595; 1596; 1597; 1599).  The Court will address the Government's remaining Motions in Limine (Docs. 1592; 1598; 1600) at the Final Pretrial Conference.

*v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted).  Orders on motions in limine are "entirely within the discretion of the Court."  *Jaynes Corp. v. American Safety Indem. Co.*, 2014 WL 1154180, at *1 (D. Nev. March 20, 2014) (citing *Luce v. United States*, 469 U.S. 38, 41–42 (1984)).  Moreover, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has pass."  *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015) (citing *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)).

Some of the parties' Motions argue certain evidence should be excluded as irrelevant or unfairly prejudicial.  Federal Rule of Evidence 401 provides that "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Under Rule 402,[2] relevant evidence is admissible unless otherwise provided. Fed. R. Evid. 402.  However, all relevant evidence is subject to the balancing test set forth by Rule 403.  That is, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Although styled as "Motions in Limine," certain Motions by the parties' object to words or phrases used in opening statements not yet made. (*See* Docs. 1588; 1590; 1592; 1598).  But opening statements are not evidence, *see United States v. Maurice*, 416 F.2d 234, 236 (9th Cir.1969), and the Court will advise the jury accordingly.  *See* Crim. Jury Instruction  1.4; 6.7.[3]

With these principles in mind, the Court rules as follows:

---

[2] Unless otherwise noted, all Rule references are to the Federal Rules of Evidence.

[3] A cursory review of the prior opening statements show exhaustive and confusing statements—certainly not concise roadmaps, of what the evidence will or will not show. The Court will address the aforementioned Motions at the final pretrial conference but cautions the parties that misstating the law or promising evidence and testimony that they cannot later produce will result in juror confusion and potential prejudice to a party.

## II.     Discussion

### A.     Defendants' Motions in Limine

**1.     Defendants' Motion to Preclude Testimony Statements or Arguments that Escort Services Dating Ads, Massage Services and Adult Advertising Are Unlawful or Presumed to Involve Prostitution (Doc. 1588); the Government's Response (Doc. 1604).**

In this Motion, Defendants seek an Order precluding the Government from making statements or arguments that escort services, online dating services, massage services, and adult advertising of such services are unlawful or presumed to involve prostitution because escort, massage, and online dating services are legal under Arizona law. (Doc. 1588 at 4–5). The Government counters that in upholding the sufficiency of the Superseding Indictment ("SI") (Doc. 230), the Court has already found that its alleged facts are sufficient to show the ads were for prostitution. (Doc. 793 at 10).

But at trial, it is the Government's burden to convince the fact finder, beyond a reasonable doubt, that the SI's allegations are true and that Defendants conspired to commit the acts alleged. The Government's obvious theory is that the specific ads noted in the SI were really ads for prostitution, and not for lawfully sanctioned escort, massage, or online dating services. The Government is therefore tasked with convincing a jury of that distinction, and that the ads at issue were illegal. The Government is not precluded from stating that they intend to prove that the ads at issue are illegal.

Accordingly,

**IT IS ORDERED denying** Defendants' Motion in Limine (Doc. 1588).

**2.     Defendants' Motion to Preclude Irrelevant and Prejudicial Testimony (Doc. 1589); the Government's Response (Doc. 1613)**.

"[D]ue to new facts," Defendants' seek an order from this Court to "preclude irrelevant and unfairly prejudicial witness testimony about the experiences of person engaging in prostitution (including as a victim of sex trafficking) and crimes committed by or against such persons." (Doc. 1589 at 4). Defendants explain that the new facts arose from the mistrial that occurred when the Government elicited irrelevant and prejudicial

testimony.  (*Id.*)  So, they state that such evidence should be precluded as irrelevant and prejudicial unless "it relates to one or more of the fifty charged ads and one or more defendants *knew* that the person who was the subject of a charged ad was engaged in prostitution or was being trafficked at the time the charged ad was posted[.]"  (*Id.*)

The Government responds that the there are no new facts, and the law of the case permits them to show that Defendants knew about and intended to promote or facilitate prostitution, and that sex trafficking and child sex trafficking are both subsets of prostitution.  (Doc. 1613 at 2).  They further argue that "[c]onspiracy law does not require proof that a defendant know his fellow co-conspirators . . . [or] that one or more of Defendants here had knowledge that an individual in a charged ad was engaged in prostitution or being trafficked contemporaneous with when the ad was published on Backpage."  (*Id.* at 3).  The Court agrees with the Government.

First, in the prior Court's May 7, 2021, Order observed that '[s]ex trafficking and child sex trafficking are, by definition, both forms of prostitution" and the Government "must prove that Defendants intended to facilitate prostitution through Backpage.com."  (Doc. 1156 at 3).  The Court noted that "[e]vidence that tends to prove the Defendants were aware that Backpage.com was being used to facilitate sex trafficking and child sex trafficking are extremely probative to show notice to Defendants that the website was being used for illegal purposes."  (*Id.*)  Though it is necessary for the Government to show that, based on the ads, the sex trafficking and child trafficking victims engaged in sex in exchange for money, the Court cautioned that it "will not allow the Government to linger on the details of the abuse sex trafficking victims suffered as a result of being trafficked."  (*Id.* at 4).  The Court reasserts that admonishment.

Second, though not clearly stated, Defendants seem to argue that the Government is prohibited from offering testimony or evidence about acts unrelated to a posted ad or witnesses who are not connected to a charged ad.  Yet, the Court has already clarified that the Government may introduce proof of the entirety of the scope of the conspiracy.  Proof of a conspiracy requires showing that each conspirator is responsible for the acts of the

others pursuant to and in furtherance of the conspiracy, and that "he is liable for the acts of his co-conspirators though he was not aware of the performance of those acts, nor even of the actors involved. *Hernandez v. United States*, 300 F.2d 114, 122 (9th Cir. 1962); *see also Pinkerton v. United States*, 328 U.S. 640 (1946). As Defendants assert, the Government need not show that each defendant *knew* "that the person who was the subject of a charged ad was engaged in prostitution or was being trafficked at the time the charged ad was posted." (Doc. 1589 at 4). The Government need only prove that Defendants were *aware* of the conspiracies objectives and participated in achieving those objectives.

Among the alleged objectives were to "promote, manage, establish, carry on and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: prostitution offenses in violation of the laws of the State in which they are committed and of the United States . . . and thereafter performed and attempted to perform an act that  did promote, manage, establish, carry on, and facilitate the promotions, management establishment, and carrying of the unlawful activity" as described in Counts 2–51. (Doc. 230 at 50). As the prior court observed, testimony about how the Backpage ads were created, paid for, and posted, as well as how those ads made it easier for individuals to engage in prostitution is relevant to the allegations charged. As the Court previously cautioned, however, lingering on the details about acts of prostitution or victimization of the individuals who were trafficked or prostituted, though probative of the conspiracy's objective, can become irrelevant and prejudicial to Defendants.

Accordingly,

**IT IS ORDERED denying** Defendants' Motion in Limine (Doc. 1589).

**IT IS FURTHER ORDERED reiterating** the prior court's Order (Doc. 1156) that the Government may not illicit irrelevant and cumulative testimony about the abuse sex trafficking victims suffered as it may result in prejudice to Defendants.

/ / /

/ / /

/ / /

**3.      Defendants Motion to Preclude References to Alleged Former "Prostitution" Marketing Strategies (Doc. 1591); the Government's Response (Doc. 1603)**.

In this Motion, Defendants seek an order precluding the Government from introducing "evidence of alleged strategies to increase purported 'prostitution' ads on the site not specific to these fifty ads" because they are not relevant.[4]  (Doc. 1591 at 3).  The evidence of concern include ads that involve "(1) ad moderation (allowing moderators to modify the wording of ads and then allowing the ads to run); (2) Backpage's alleged "reciprocal" advertising/link program with the Erotic Review (TER) (a different website with adult content)[5]; and (3) content "aggregation' alleged to be the provision of free ads 'in an attempt to secure future advertising revenues." (*Id*.)

Given the nature of the SI's allegations, these categories of evidence are relevant to show Defendants knowledge of the ads, how and why they were created and their intended purposes.  Further, it is relevant to show whether Defendants "intended to promote a business of prostitution" by posting the ads.  (*See* Doc. 1272 at 3).  Finally, the Court already found that facts that pre-date the 2013 allegations were relevant as evidence demonstrating "furtherance of the charged conspiracy."  Therefore, evidence of ad moderation,  Backpage's "reciprocal" advertising/link program with the Erotic Review, and content "aggregation' to secure future advertising revenues will not be precluded to the extent that (1) the SI provides notice to Defendants of these acts, and (2) the acts demonstrate Defendants' knowledge, intent and conduct in furtherance of the conspiracy's objective,

Accordingly,

**IT IS ORDERED denying** Defendants' Motion in Limine (Doc. 1591).

/ / /

/ / /

---

[4] Defendants' supporting exhibit is irrelevant to the Court's determination as it is related to a Motion to Recuse considered by the previously assigned court.
[5] *See* Doc.1593, Defendants related motion to preclude evidence of a prior relationship between the owner of TER and Backpage.com, LLC.

4. **Defendants' Motion to Preclude Irrelevant and Inadmissible Evidence Re Mersey and Elms (Doc. 1593);  the Government's Response (Doc. 1607).**

In this Motion, Defendants seek an order precluding the Government from introducing statements of William Mersey and David Elms under the co-conspiracy hearsay exception for three reasons: (1) neither Elms nor Mersey are connected to the fifty charged ads; (2) there is no evidence of any conspiracy involving Mersey or Elms and Defendants; and (3) introducing such statements would be prejudicial to Defendants. (Doc. 1593 at 5).  The Government states it intends to prove that the conspiracy "lasted from 2004 through April 2018."  (Doc. 1607 at 2).  The Government alleges that Defendants had relationships with Mersey and Elms during this time, which "played in Backpage's development as a source of online prostitution ads . . . . [including] how to increase referral traffic." (*Id*. at 3).  The Government further asserts that during the relevant time, "Mersey received discounts and commissions on thousands of Backpage prostitution ads . . . . [and] Larkin directed Ferrer to develop partners, including Mersey for Backpage's adult section."  (*Id*.) The Government proffers that evidence of communications with Mersey and Elms "shows that Defendants knew that their website was in the business of publishing prostitution solicitations." (*Id*. at 4).

Though the Court is not aware of the precise testimony or evidence to be offered, it does find the proffer that Defendants' relationships with Elms and Mersey "were critical to prostitution marketing strategies during the early years of the conspiracy." (*Id*. at 3–4).  Whether Defendants had knowledge that either Elms or Mersey were involved in the business of prostitution when they posted their ads and information is relevant to the existence of a conspiracy and acts done in furtherance of the conspiracy.  Nonetheless, the Court will withhold ruling on the Motion until the Government lays the proper foundation and explains its relevance.

Accordingly,

**IT IS ORDERED** denying Defendants' Motion in Limine (Doc. 1593).

**B.    The Government's Motions in Limine**

    **1.    The Government's Motion to Preclude References to First Amendment and Free Speech (Doc. 1590); the Defendants' Response (Doc. 1602)**

The Government seeks an order precluding Defendants from referring to "the First Amendment and 'free speech' at any time in the presence of the jury" because they repeatedly referenced exercising their First Amendment in this case. (Doc. 1590 at 2). One example offered is Defendants' statement that "[t]his whole case is about the First Amendment." (*Id*. quoting Doc. 1342 at 76). Defendants oppose, stating "the evidence will show Defendants intended to facilitate the First Amendment rights of Backpage.com and its users – not criminal offenses." (Doc. 1602 at 2).

The Court has previously stated that "[t]he First Amendment does not protect 'offers to engage in illegal transaction.'" (Doc. 793 at 14). And "[a]s alleged, Backpages' efforts to promote its website facilitated prostitution and were not protected business practices." (*Id*. at 14–15). The Government will bear the burden of showing as much at trial. Defendants certainly may defend these allegations on the grounds that the ads were for lawful business practices, and thus their publication of lawful ads were protected under the First Amendment. They may not, however, assert that their facilitation of unlawful business practices, i.e., publishing ads for prostitution, is activity that is protected by the First Amendment. It plainly is not and the Court is not aware of any precedent declaring the Travel Act statute at issue violative of the First Amendment on such a basis. A statute may be facially invalid if it prohibits protected speech because the threat of enforcement of an overbroad law deters individuals from engaging in constitutionally protected speech and inhibits the free exchange of ideas. But a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects. *See Virginia v. Hicks*, 539 U.S. 113, 119–120 (2003). Accordingly, to the extent that Defendants seek to invoke their First Amendment rights as a defense to the allegations that they conspired to promote and/or facilitate

prostitution through veiled ads for prostitution, they are prohibited from doing so.

Moreover, should Defendants intend to rely upon "advice of counsel" to assert they were within their First Amendment rights to produce and post the alleged ads, they must set forth the requisite criteria as further discussed below.  Notwithstanding this fine distinction, Defendants are not precluded from referring to their general business of publishing articles and information on Backpage.com, LLC to promote their First Amendment rights.

Accordingly,

**IT IS ORDERED granting, in part,** the Government's Motion (Doc. 1590).  The Motion is granted to the extent that Defendants may not claim they were advised by counsel that they were permitted to post advertisements like those described in the SI under the First Amendment unless they make the requisite production.  The Motion is otherwise denied.

### 2. The Government's Motion to Preclude References to Section 230 of the Communications Decency Act (Doc 1594); Defendants' Response (Doc. 1615)

In this Motion, Government seeks an order precluding Defendants' from "introducing evidence or argument at trial about Section 230 of the Communications Decency Act of 1996" ("CDA")  because courts have "construed Section 230 to provide immunity from civil claims for websites that publish content created by third parties." (Doc. 1594 at 2).  Defendants counter that they "must be permitted to present evidence tending to negate unlawful intent, including by showing that Backpage.com's moderation and aggregation processes were driven by factors other than facilitating crime." (Doc. 1615 at 4).  They assert that "[the Court] cannot bar Defendants from presenting evidence about their contemporaneous understanding of Section 230 and the First Amendment values and interest it advanced[.]"  (*Id*. at 4).  So, Defendants say to prohibit them from doing so would be a violation of their Fifth and Sixth Amendment rights to due process and a fair trial. (*Id*. at 5).

Defendants' reliance on Section 230 of the CDA for their immunity argument is a

misstatement of the law.  The trial court has previously analyzed whether the CDA applies to this case and found that the facts in the SI are "qualitatively different" than the Defendants' cited CDA cases.  (Doc. 793 at 13).  In so doing, the court opined that "[t]his case . . . does not concern civil liability, and the CDA has '*no effect*' on 'any other Federal criminal statute.'" (*Id*. citing 47 U.S.C. § 230(e)(1) (emphasis added)).  To date, no party has provided this Court with case precedent holding that the CDA immunizes criminal activity like that alleged here.  It follows that a jury should not be told that the CDA does.  To do so is a misstatement of law and will lead to jury confusion.

Accordingly,

**IT IS ORDERED granting** the Government's Motion in Limine (Doc. 1594). Defendants may not argue that Section 230 of the CDA immunizes Defendants from Counts 2–51 of the SI for violating the Travel Act.

### 3. The Government's Motion Regarding Introduction of Details of Defendants' family, background, and prior lawsuits (Docs. 1595; 1596; 1597); Defendants' Responses (Doc. 1609; 1610; 1616).

Three of the Government's Motions seek to preclude Defendants from referring to other litigation outside the present matter.  First, the Government seeks an order precluding "Defendants, their counsel, and their witnesses from commenting, during opening statements or closing argument, on any fact or evidence or individuals that are not anticipated to be introduced into evidence at the trial."  (Doc. 1596 at 2).  As an example, the Government represents that introduction of  details regarding a Defendant's family, background, and relief obtained in prior lawsuits are improper during opening arguments. (*Id*. at 2–3).  Second, the Government seeks to preclude Defendants from referring to "any prior case or legal decision not involving Backpage" because they are inadmissible under Rules 401–403 and 802 (Doc. 1595 at 2).   Third, the Government seeks to preclude Defendants referring to "decisions, rulings, or opinions issued in, or the outcomes of any prior litigation in which Backpage.com, LLC (Backpage) or any of its then-owners or parent companies was a plaintiff or defendant[.]"  (Doc. 1597 at 2). These Motions will be discussed together because they seek virtually identical rulings for essentially the same

issue.

Though introduction of a Defendant's family and details of their background are irrelevant to the allegations in the SI, such introductions are not prohibited.  So, the Court will not preclude Defendants from so doing in a limited and resourceful way.  However, statements about prior unrelated civil cases and money judgments are irrelevant to the specific Travel Act violations and will only mislead and confuse the jury.

Relatedly, and as previously discussed, CDA Section 230 does not immunize Defendants from prosecution of Counts 2–51 for Travel Act crimes. Similarly, it follows that Defendants are instructed not to refer to prior court decisions, rulings, opinions or results filed by or against Backpage.Com, LLC, unless those prior cases were adjudications of 18 U.S.C. § 1952(a)(3)(A) offenses.  Though some previously referenced cases alleged Backpage.com, LLC, engages in similar acts of posting ads for prostitution, those prior cases are distinguishable because they were (1) civil adjudications; (2) brought by different parties; and (3) reviewed under differing legal standards.  Therefore, they are irrelevant because they bear no relation to this case or the criminal issues to be decided.  To refer to any prior court case as legally controlling the issues here is are misstatements of the law, would confuse the jury, and would prejudice the Government.

Accordingly,

**IT IS ORDERED granting, in part**, the Government's Motion in Limine to preclude defense from introducing non-witnesses or non-evidence  (Doc. 1596). Defendants are precluded from comparing this case to any prior unrelated civil cases and/or money judgements in their opening and closing arguments.  The Motion is otherwise denied.

**IT IS FURTHER ORDERED granting** the Governments' Motions in Limine to preclude references to certain other litigation, court decisions, rulings, opinions, or results from prior litigation (Docs. 1595; 1597).

/ / /

/ / /

- 11 -

**4.    The Government's Motion to Preclude Defendants Good Faith Reliance on Advice of Counsel The Advice of Counsel (Doc. 1599); the Defendants' Response (Doc. 1608).**

In this Motion, the Government seeks to preclude Defendants from making statements that they relied upon the advice of counsel in their opening argument. Defendants state that the law of the case, evident by the Court's overruling the Government's objections to their opening statements that they relied upon advice of counsel, forecloses their argument. The Court disagrees. Nowhere in the record is it apparent that this or any prior Court issued a definitive ruling on whether Defendants may rely on an advice of counsel defense.

It is true that Defendants may assert they relied upon the advice of counsel to negate the scienter requirement of the alleged charge, but only if they *first* meet the following factors: (1) they made a complete disclosure to counsel; (2) they requested counsel's advice as to the legality of the contemplated action; (3) they received advice that it was legal; and (4) they relied in good faith on the advice. *See United States v. McLennan*, 563 F.2d 943, 946 (9th Cir. 1977). None of the prior Orders described by Defendants definitively ruled that they could rely upon this argument because so far, no Defendant has waived the attorney/client privilege as it relates to the allegations in the SI. So, to the extent that Defendants intend to raise this argument, whether in opening statement, closing argument, or their case in chief, they must first proffer a showing of all four factors.

For example, the Court will permit Defendants to argue an advice of counsel defense if they show they provided "complete disclosure[s]" about the advice they sought on an ad listed in Counts 2–51 (or similar ad described in the SI); sought advice relating to the legality of the ad; received advice that the contemplated conduct was legal; and relied on that advice. (*See* Doc. 1626-3 at 31) ("[u]nlawful intent has not been proved if a defendant, before acting, made full disclosure of all *material facts* to an attorney . . ."). However, if none of the four factors has been disclosed or produced prior to opening statements, Defendants are precluded from making such early pronouncements. To permit Defendants

- 12 -

to tell the jury that they broadly sought advice on conduct unrelated to the SI's allegations would present irrelevant evidence, could be factually misleading, would result in jury confusion, and would prejudice the Government.

Accordingly,

**IT IS ORDERED granting** the Government's Motion in Limine (Doc. 1599). Defendants may not suggest in opening statements that they relied on advice of counsel until they make a proffer of specific testimony and/or evidence, relevant to the alleged charges.

Dated this 24th day of July, 2023.

Honorable Diane J. Humetewa
United States District Judge