1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

United States of America,

          Plaintiff,

v.

Michael Lacey, et al.,

          Defendants.

No. CR-18-00422-001-PHX-DJH

**NOTICE OF FILING OF DRAFT JOINT STATEMENT OF THE CASE AND DRAFT JURY INSTRUCTIONS**

      This Notice of Filing contains "The Court's Proposed Statement of the Case" and the "Jury Instructions Draft" as they were discussed on the record at the Final Pretrial Conference held on July 27, 2023 (Doc. 1650).

      Dated this 2nd day of August, 2023.

_____
Honorable Diane J. Humetewa
United States District Judge

**The Court's Proposed Statement of the Case**:

Six individual Defendants—Michael Lacey, James Larkin, Scott Spear, John "Jed" Brunst, Andrew Padilla, and Joye Vaught—have been charged in a superseding indictment with conspiracy to commit violations of the Travel Act; and with violations of the Travel Act by using the mail and any facility in interstate commerce with the intent to facilitate the promotion, management, establishment or carryon on of a business enterprise involving prostitution offenses in violation of the state laws, including Arizona, and the laws of the United States.

Four of these Defendants—Michael Lacey, James Larkin, Scott spear, John Brunst— have been charged with conspiracy to commit money laundering; concealment money laundering; international promotional money laundering; and transactional money laundering.

Defendant Michael Lacey has been charged with international concealment money laundering.

These charges arise from the Defendants' various roles in the creation, operation, and management of the website Backpage.com.  All Defendants have pleaded not guilty to the charges against him and are presumed innocent.  The United States has the burden of proving each individual guilty beyond a reasonable doubt.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | CR-18-00422-PHX-DJH |
| Plaintiff, | |
| vs. | **JURY INSTRUCTIONS DRAFT** |
| Michael Lacey, et al., | |
| Defendants. | |

**I.   MODEL INSTRUCTIONS**

1.   <u>Preliminary Instructions</u>

ST   1.1   Duty of Jury

PL   1.2   The Charge – Presumption of Innocence*

DF   1.2   The Charge – Presumption of Innocence*

ST   1.3   What Is Evidence

ST   1.4   What Is Not Evidence

ST   1.5   Direct and Circumstantial Evidence

ST   1.6   Ruling on Objections

ST   1.7   Credibility of Witnesses

ST   1.8   Conduct of the Jury

ST   1.9   No Transcript Available to Jury

ST   1.10   Taking Notes

ST   1.11   Outline of Trial

| | | | |
|---|---|---|---|
| | PL | 1.13 | Separate Consideration for Each Defendant |
| | DF | 1.13 | Separate Consideration for Each Defendant* |
| | ST | 1.16 | Bench Conferences and Recesses |
| 2. | | | Instructions In The Course Of Trial |
| | ST | 2.1 | Cautionary Instruction – First Recess |
| | ST | 2.2 | Stipulated Testimony [if necessary] |
| | ST | 2.3 | Stipulations of Fact [if necessary] |
| | ST | 2.12 | Evidence for Limited Purpose [if necessary] |
| 3. | | | Consideration of Particular Evidence |
| | ST | 3.9 | Testimony of Witnesses Involving Special Circumstances—Immunity, Benefits, Accomplice, Plea |
| | ST | 3.14 | Opinion Evidence, Expert Witness |
| | ST | 3.15 | Dual Role Testimony |
| | ST | 3.16 | Charts and Summaries Not Admitted into Evidence [if necessary] |
| | ST | 3.17 | Charts and Summaries Admitted into Evidence |
| 4. | | | Responsibility |
| | PL | 4.8 | Knowingly |
| | PL | 4.9 | Deliberate Ignorance* |
| | DF | 4.11 | Advice of Counsel* |
| 5. | | | Specific Defenses |
| | DF | 5.12 | Mere Presence* |
| 6. | | | Jury Deliberations |
| | ST | 6.1 | Duties of Jury to Find Facts and Follow Law |
| | PL | 6.2 | Charge Against Defendant Not Evidence—Presumption of Innocence—Burden of Proof |
| | DF | 6.2 | Charge Against Defendant Not Evidence—Presumption of Innocence—Burden of Proof* |
| | ST | 6.3 | Defendant's Decision Not to Testify [if necessary] |

| | | | |
|---|---|---|---|
| | ST | 6.4 | Defendant's Decision to Testify [if necessary] |
| | PL | 6.5 | Reasonable Doubt—Defined |
| | DF | 6.5 | Reasonable Doubt—Defined* |
| | ST | 6.6 | What Is Evidence |
| | ST | 6.7 | What Is Not Evidence |
| | ST | 6.8 | Direct and Circumstantial Evidence |
| | ST | 6.9 | Credibility of Witnesses |
| | ST | 6.10 | Activities Not Charged |
| | PL | 6.13 | Separate Consideration of Multiple Counts—Multiple Defendants |
| | DF | 6.13 | Separate Consideration of Multiple Counts—Multiple Defendants* |
| | ST | 6.18 | On or About—Defined |
| | ST | 6.19 | Duty to Deliberate |
| | ST | 6.20 | Consideration of Evidence—Conduct of the Jury |
| | ST | 6.21 | Use of Notes |
| | ST | 6.22 | Jury Consideration of Punishment |
| | ST | 6.23 | Verdict Form |
| | ST | 6.24 | Communication with Court |
| 11. | | | <u>Conspiracy</u> |
| | PL | 11.1 | Conspiracy—Elements (Count 1)* |
| | DF | 11.1 | Conspiracy—Elements (Count 1)* |
| | DF | 11.3 | Multiple Conspiracies (Count 1)* |
| | DF | 11.3 | Multiple Conspiracies (Count 52)* |
| | PL | 11.4 | Conspiracy—Knowledge of and Association with Other Conspirators |
| | DF | 11.4 | Conspiracy—Knowledge of and Association with Other Conspirators* |
| | PL | 11.6 | Conspiracy—Liability for Travel Act Violations Committed by Co-Conspirator (*Pinkerton* Charge)* |
| | DF | 11.6 | Conspiracy—Liability for Travel Act Violations Committed by Co- |

1              Conspirator (*Pinkerton* Charge)*

2    PL    11.6   Conspiracy—Liability for Concealment Money Laundering

3              Committed by Co-Conspirator (*Pinkerton* Charge)*

4    DF    11.6   Conspiracy—Liability for Concealment Money Laundering

5              Committed by Co-Conspirator (*Pinkerton* Charge)*

6    PL    11.6   Conspiracy—Liability for International Promotional Money

7              Laundering Committed by Co-Conspirator (*Pinkerton* Charge)*

8    DF    11.6   Conspiracy—Liability for International Promotional Money

9              Laundering Committed by Co-Conspirator (*Pinkerton* Charge)*

10   18.    <u>Money Laundering and Racketeering Offenses</u>

11    PL    18.1   Travel Act—Interstate or Foreign Travel in Aid of Racketeering

12              Enterprises*

13    DF    18.1   Travel Act—Interstate or Foreign Travel in Aid of Racketeering

14              Enterprises*

15

16    PL    18.4   Laundering Monetary Instruments*

17    DF    18.4   Laundering Monetary Instruments*

18    PL    18.5   Transporting or Attempting to Transport Funds to Promote Unlawful

19              Activity*

20    DF    18.5   Transporting or Attempting to Transport Funds to Promote Unlawful

21              Activity*

22    PL    18.6   Transporting or Attempting to Transport Monetary Instruments for

23              the Purpose of Laundering*

24    DF    18.6   Transporting or Attempting to Transport Monetary Instruments for

25              the Purpose of Laundering*

26    PL    18.7   Money Laundering*

27    DF    18.7   Money Laundering*

28    PL    18.7A Money Laundering Conspiracy*

| | DF | | 18.7A Money Laundering Conspiracy* |
|---|---|---|---|

**II.     NON-MODEL STIPULATED INSTRUCTIONS**

**III.    NON-MODEL INSTRUCTIONS REQUESTED BY THE UNITED STATES**

| | PL | 1. | State Law Need Not Be Violated for Defendants to Be Found Guilty Under the Travel Act |
|---|---|---|---|
| | PL | 2. | "Business Enterprise" Defined |
| | PL | 3. | "Uses Any Facility in Interstate Commerce" Defined |
| | PL | 4. | "Facilitate" Defined |
| | PL | 5. | Specific Intent Defined |
| | PL | 6. | Proof of Knowledge or Intent |

**IV.    NON-MODEL INSTRUCTIONS REQUESTED BY DEFENDANTS WITH THE UNITED STATES' OBJECTIONS**

| | DF | 1. | Specific Intent |
|---|---|---|---|
| | DF | 2. | Defendant's Good Faith |
| | DF | 3. | Defense Theory of the Case |
| | DF | 4. | Conspiracy – Willfulness Defined |
| | DF | 5. | Business Enterprise Explained |
| | DF | 6. | Business Enterprise Defined |
| | DF | 7. | First Amendment Protection—Speech Presumed Protected |
| | DF | 8. | First Amendment Protection—Speech Presumed Protected |
| | DF | 9. | First Amendment Protection—Offensive and Sexual Speech |
| | DF | 10. | First Amendment Protection—Protected Free Speech |
| | DF | 11. | First Amendment Protection—Ads Presumed Protected |
| | DF | 12. | First Amendment Protection—Coded Advertisement Language |
| | DF | 13. | First Amendment Protection—Examples of Legal "Adult" Services |
| | DF | 14. | First Amendment Protection—Ads Presumed Protected |
| | DF | 15. | First Amendment Protection—Government's Burden to Overcome Presumption |

DF   16.   First Amendment Protection—Ads Presumed Protected

DF   17.   First Amendment Protection—No Requirement to Investigate

DF   18.   First Amendment Protection—No Requirement to Shut Down

DF   19.   First Amendment Protection—Website has the Right to Exercise Editorial Control and Judgment

DF   20.   First Amendment Protection—Government's Burden of Proof

**1.2 THE CHARGE—PRESUMPTION OF INNOCENCE**

This is a criminal case brought by the United States government. The United States charges defendants with conspiracy, violations of the Travel Act, and money laundering. The charges against defendants are contained in the indictment. The indictment[1] simply describes the charges the United States brings against each defendant. The indictment is not evidence and does not prove anything.

Each defendant has pleaded not guilty to the charges and is presumed innocent unless and until the United States proves that defendant guilty beyond a reasonable doubt. In addition, each defendant has the right to remain silent and never has to prove innocence or present any evidence.

In order to help you follow the evidence, I will now give you a brief summary of the elements of the crimes that the United States must prove to make its case against each charged defendant:

*Count 1: Conspiracy*

Defendants are charged in Count 1 of the indictment with conspiring to facilitate prostitution in violation of the Travel Act under Section 1952(a)(3A) of Title 18 of the United States Code.  For each defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about 2004 and ending on or about April 2018, there was an agreement between two or more persons to commit at least one Travel Act offense as charged in the indictment;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after March 28, 2013, for the purpose of carrying out the conspiracy.

---

[1] All references to "indictment" in these instructions refer to the United States' superseding indictment (Doc. 230).

*Counts 2–51: Travel Act Violations*

Defendants are charged in Counts 2–51 of the indictment with violating Section 1952(a)(3) of Title 18 of the United States Code.  For each defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant used mail or any facility in interstate or foreign commerce with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of a business enterprise involving prostitution offenses in violation of state or federal law;

Second, after doing so the defendant performed or attempted to perform an act that did promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of a business enterprise involving prostitution offenses; and

Third, the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

Further, you may find a given defendant guilty of the Travel Act offense as charged in Counts 2–51 of the indictment if the United States has proved each of the following elements beyond a reasonable doubt:

First, the defendant committed the Travel Act offense as charged in Counts 2-51 of the indictment;

Second, the defendant who committed the charged Travel Act offense was a member of the conspiracy as charged in Count 1 of the indictment;

Third, the defendant who committed the charged Travel Act offense did so in furtherance of the charged conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the Travel Act offense charged in Counts 2-51 was committed; and

Fifth, the charged Travel Act offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

1

*Count 52: Conspiracy to Commit Money Laundering*

2   Defendants are charged in Count 52 of the indictment with money laundering

3   conspiracy in violation of Section 1956(h) of Title 18 of the United States Code.  For each

4   defendant to be found guilty of that charge, the United States must prove each of the

5   following elements beyond a reasonable doubt:

6   First, there was an agreement to commit money laundering;

7   Second, the defendant knew the objective of the agreement;

8   Third, the defendant joined the agreement with the intent to further its unlawful

9   purpose.

10

11

*Count 53–62: Concealment Money Laundering*

12   Defendants are charged in Counts 53–62 of the indictment with concealment money

13   laundering in violation of Section 1956(a)(1)(B) of Title 18 of the United States Code.  For

14   each defendant to be found guilty of that charge, the United States must prove each of the

15   following elements beyond a reasonable doubt:

16   First, the defendant conducted a financial transaction involving property that

17   represented the proceeds of promoting, managing, establishing, carrying on, or facilitating

18   the promotion, management, establishment, or carrying on, of any business enterprise

19   involving prostitution offenses;

20   Second, the defendant knew that the property represented the proceeds of some form

21   of unlawful activity; and

22   Third, the defendant knew that the transaction was designed in whole or in part to

23   conceal or disguise the nature, location, source, ownership, or control of the proceeds of

24   the specific unlawful activity.

25

26

*Count 63–68: International Promotional Money Laundering*

27   Defendants are charged in Count 63–68 of the indictment with transporting funds

28   to promote unlawful activity in violation of Section 1956(a)(2)(A) of Title 18 of the United

- 11 -

States Code. For each defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant transported money from a place in the United States to or through a place outside the United States; and

Second, the defendant acted with the intent to promote the carrying on of the specified criminal activity charged in the indictment, that is promoting or facilitating the promotion of any business enterprise involving prostitution offenses.

*Count 69–99: Transactional Money Laundering*

Defendants are charged in Counts 69–99 of the indictment with transactional money laundering in violation of Section 1957 of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from specified unlawful activity, that is promoting or facilitating the promotion of any business enterprise involving prostitution offenses; and

Fifth, the transaction occurred in the United States

*Count 100: International Concealment Money Laundering*

Defendants are charged in Count 100 of the indictment with transporting money for the purpose of laundering in violation of Section 1956(a)(2)(B) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant transported money from a place in the United States to or

through a place outside the United States;

Second, the defendant knew that the money represents the proceeds of promoting or facilitating the promotion of any business enterprise involving prostitution offenses; and

Third, the defendant knew the transportation was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of promoting or facilitating the promotion of any business enterprise involving prostitution offenses.

**1.13 SEPARATE CONSIDERATION FOR EACH DEFENDANT**

Although the defendants are being tried together, you must give separate consideration to each defendant.  In doing so, you must determine which evidence in the case applies to each defendant, disregarding any evidence admitted solely against some other defendants.  The fact that you may find one of the defendants guilty or not guilty should not control your verdict as to any other defendants.

**UNITED STATES' PROPOSED INSTRUCTION**

**4.9 DELIBERATE IGNORANCE**

You may find that the defendant acted knowingly if you find beyond a reasonable doubt that:

First, the defendant was aware of a high probability that the vast majority of the "adult" and "escort" ads appearing on Backpage.com were actually ads for prostitution, and

Second, the defendant deliberately avoided learning the truth.

You may not find such knowledge, however, if you find that the defendant actually believed that the vast majority of the "adult" and "escort" ads appearing on Backpage.com were not ads for prostitution, or if you find that the defendant was simply negligent, careless, or foolish.

**DEFENDANTS' OBJECTION**

The government's proposed *Jewell* instruction, one that typically is used in drug smuggling cases, is inappropriate here.  *See* Ninth Circuit Model Criminal Jury Instructions at 5.8 (providing the example of a defendant being aware of a high probability that "drugs were in the defendant's automobile"); *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir. 1976) (involving drugs sealed in a secret compartment of a car).

The Travel Act and money laundering charges are specific intent crimes; it would therefore be reversible error to provide a "Deliberate Ignorance" instruction to the jurors here.  *See Jewell*, 532 F.2d at 700-701 (such an instruction is only appropriate where the underlying crime requires mere knowledge).  S*ee also United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974) (evidence that would establish that manufacturers of gambling paraphernalia repeatedly sold punchboards and pulltabs to distributors in Montana, despite knowing that the mere possession of punchboards and pulltabs violated Montana's gambling laws, was insufficient to establish a violation of the Travel Act, because the Travel Act is a specific intent crime, "intent to facilitate a criminal venture is

expressly made part of the offense," and, therefore, "the prosecutor must show that the manufacturer in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement").  The Ninth Circuit expressly rejected the government's contention that the "presumption that one intends the natural and probable consequences of his actions" was sufficient "to establish intent to facilitate criminal activity" because it was "as likely as not that a vendor similar to the defendants in this proceeding is totally indifferent to the actions of his purchaser."  *Id*. at 450 fn.8.  *See also United States v. Gallo*, 782 F.2d 1191, 1194 (4th Cir. 1986) (a "defendant is entitled to an instruction as to the elements of the offense charged" and "[o]ne element of a Travel Act violation is proof of specific intent to promote 'unlawful activity.'"); *United States v. James*, 210 F.3d 1342, 1345 (11th Cir. 2000) (same); *see* Ninth Circuit Model Criminal Jury Instructions at 18.3 cmt. ("Because it is a specific intent crime, it is reversible error to give Instruction 4.8 (Knowingly–Defined) in a money laundering case.") (citing *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994).  *Cf. United States v. Turman*, 122 F.3d 1167, 1169 (9th Cir. 1997)).

Further, such an instruction is only appropriate "if the jury rejects the government's case as to actual knowledge." *United States v. Heredia*, 483 F.3d 913, 922 (9th Cir. 2007) ("In deciding whether to give a willful blindness instruction, in addition to an actual knowledge instruction, the district court must determine whether the jury could rationally find willful blindness even though it has rejected the government's evidence of actual knowledge. If so, the court may also give a *Jewell* instruction."). And "[e]ven if the factual predicates of the instruction are present, the district judge has discretion to refuse it." *Id.*

Further, even if such an instruction were appropriate, whether a given defendant "was aware of a high probability that the vast majority of the 'adult' and 'escort' ads appearing on Backpage.com were actually ads for prostitution" is not a substitute for the government having to prove beyond a reasonable doubt that each defendant specifically intended to facilitate the prostitution offenses committed by the particular business enterprise associated with one or more of the fifty advertisements at issue in Counts 2-51

- 16 -

through publishing the ad(s).  *See United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").  Willful blindness therefore cannot meet the elements of the offenses.

Additionally, even if a *Jewell* instruction was appropriate in this case, the government's proposed instruction ignores the language of *Jewell* restricting the instruction to circumstances where a defendant's ignorance "was solely and entirely a result of . . . a conscious purpose to avoid learning the truth."  *United States v. Jewell*, 532 F.2d 697, 704 (9th Cir. 1976).

Finally, the government's proposed *Jewell* instruction also is inconsistent with the First Amendment.  The government's proposed instruction would suggest to the jury that the government can prosecute the publisher of speech that is presumptively protected by the First Amendment because the speech looked like it might be associated with unlawful activity or because various parties claim that it was associated with unlawful activity.  The government, in effect, claims that it can do indirectly through the Travel Act what three federal courts previously have held that the government cannot do directly—criminalize the publication of third-party speech because it looks like speech associated with criminal activity.  *Backpage.com, LLC v. Hoffman*, Case No. 13–cv–03952 (DMC)(JAD), 2013 WL 4502097 (D.N.J. Aug. 20, 2013) (striking down, under First Amendment, state statute criminalizing advertisements "that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act…with a minor" and

rejecting state's claim that the statute "regulates illegal advertisements…not protected by the First Amendment" because, among other things, "[d]escribing criminal conduct as anything that is 'implicit' is inherently vague, because it means '[n]ot directly expressed [and] existing [only] inferentially' and 'fails to clearly mark the boundary between what is permissible and impermissible'"); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013) (striking down, under First Amendment, state statute criminalizing advertisements "that would appear to a reasonable person to be for the purpose of engaging in what would be a commercial sex act…with a minor" and rejecting state's claim that the statute did not "not implicate First Amendment scrutiny because it criminalize[d] only offers to engage in illegal transactions" because, among other things, "the statute as written does not 'criminalize only offers to engage in illegal transactions' because—as discussed above—the statute's potential reach extends to notices related to legal, consensual activity by adults"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1268, 1277 (W.D. Wash. 2012) (striking down, under First Amendment, state statute criminalizing "'directly or indirectly' caus[ing] content to be published, disseminated or displayed if it contains a 'depiction of a minor' and any 'explicit or implicit offer' of sex for 'something of value'" because, among other things, the statute was unconstitutionally vague: "'[A] speaker may not be put at complete peril in distinguishing between protected and unprotected speech. Otherwise, he could only be certain of avoiding liability by holding his tongue, causing him 'to make only statements which 'steer far wide [ ] of the unlawful zone.''").

The Court should not permit the government to suggest to the jury either that defendants had an obligation to stop publishing facially lawful third-party speech on Backpage.com because some of that speech might be associated with unlawful activity or that the jury can find that defendants intended to violate the law because Backpage.com did not stop publishing speech presumptively protected by the First Amendment. *Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 142 & fn.170 (3d Cir. 2020) (rejecting city's argument that speech "concern[ed] unlawful activity" where the speech *might* relate to unlawful activity because "commercial speech should not lose

the protection of the First Amendment simply because a legislature has prohibited one of many uses of the regulated speech," unlike restricting "advertising of the sale of cocaine, for example, [which] would present a speech restriction that *always* and *only* related to illegal activity because there are no other legal uses/purposes behind the sale of cocaine") (emphasis in original); *IMDB.com Inc. v. Bacerra*, 962 F.3d 1111, 1123 (9th Cir. 2020) ("*Pittsburgh Press* implicates only those instances when the state restricts *speech that itself proposes an illegal transaction*…SAG's interpretation of *Pittsburgh Press* would require this court to permit the restriction not only of speech that proposes an illegal activity but also facially inoffensive speech that a third-party might use to facilitate its own illegal conduct.   But as the Supreme Court has noted, 'it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party.' *Bartnicki v. Vopper*, 532 U.S. 514, 529–30, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001)…Rather than restrict truthful speech, the typical 'method of deterring unlawful conduct is to  impose an appropriate punishment on the person who engages in it.' *Bartnicki*, 532 U.S. at 529, 121 S.Ct. 1753.") (emphasis added); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F3d 104, 114 (2d Cir. 2017) ("[T]he First Amendment offers no protection to speech that proposes a commercial transaction if consummation of that transaction would *necessarily* constitute an illegal act.   However, if, as here, there are plausible ways to complete a proposed transaction lawfully, speech proposing that transaction 'concerns lawful activity' and is therefore protected commercial speech.") (emphasis in original); *Valle Del Sol Inc. v. Whiting*, 709 F3d 808, 822 (9th Cir. 2013) ("*Central Hudson's* legality requirement [] has traditionally focused *on the content of affected speech—i.e.*, *whether the speech proposes an illegal transaction*—instead of whether the speech is *associated with unlawful activity*.") (emphasis added)); *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F3d 898, 904 fn.7 (9th Cir. 2009) ("Central Hudson asks if the commercial speech is 'related to unlawful activity.' Thus, *in the context of advertising, one must ask whether the goods or services the party advertises are illegal*.") (emphasis added, citation omitted); *Pruett v. Harris Cty. Bail Bond*

- 19 -

*Bd.*, 499 F.3d 403, 414 (5th Cir. 2007) (the "threshold inquiry" asks whether "the product or service spoken about is illegal," not whether a commercial solicitation might lead to a violation of the law); *Eimann v. Soldier of Fortune Mag., Inc.*, 880 F.2d 830, 837-38 (5th Cir. 1989) (publishers are not required to reject "any suspicious, ambiguous ad that might cause serious harm," because "in the constitutional arena we have noted that the possibility of illegal results does not necessarily strip an ad of its commercial speech protection"); *Dunagin v. City of Oxford*, 718 F.2d 738, 743 (5th Cir. 1983) (*en banc*) ("The commercial speech doctrine would disappear if its protection ceased whenever the advertised product might be used illegally."); *Art & Antique Dealers League of Am., Inc. v. Seggos*, 394 F. Supp. 3d 447, 459 (S.D.N.Y. 2019) ("Although the First Amendment does not protect speech proposing a transaction that 'necessarily constitute[s] an illegal act,' if 'there are plausible ways to complete a proposed transaction lawfully, speech proposing that transaction 'concerns lawful activity' and is therefore protected commercial speech.'"); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 128 F. Supp. 3d 597, 615 (E.D.N.Y. 2015) ("When the legality of a proposed commercial transaction depends on circumstances outside the content of the speech, the activity is lawful and the speech is entitled to protection under *Central Hudson*."), *aff'd*, 868 F.3d 104 (2d Cir. 2017).

## UNITED STATES' RESPONSE

Defendants are wrong that a *Jewell* instruction can't be given when the alleged crimes require specific intent. As the Ninth Circuit recently recognized:

> We have repeatedly held that a *Jewell* instruction is proper in specific-intent cases (including conspiracy cases). *See United States v. Ramos-Atondo*, 732 F.3d 1113, 1120 (9th Cir. 2013) (rejecting appellants' argument that "it is impossible to conspire to be deliberately ignorant" and holding that "the *Jewell* standard eliminates the need to establish such positive knowledge to obtain a conspiracy conviction"); *United States v. Heredia*, 483 F.3d 913, 922 & n.13 (9th Cir. 2007) (en banc) (approving of *Jewell* instruction in possession-with-intent-to-distribute prosecution, and observing that "willful blindness is tantamount to knowledge"); *United States v. Nosal*, 844 F.3d 1024, 1039–40 (9th Cir. 2016) (approving *Jewell* instruction in aiding-and-abetting case).… [T]he district court did not err in instructing the jury.

*United States v. Asefi*, 788 F. App'x 449, 452 (9th Cir. 2019).

The "theory of deliberate ignorance need not be exclusive, it may be an argument alternative to actual knowledge." *Ramos-Atondo*, 732 F.3d 1113, 1120. The instruction does not "risk[] lessening the state of mind that a jury must find" and is appropriately given when a jury could rationally find willful blindness. *Heredia*, 483 F.3d at 922 & 924.

Defendants' comment that the charges are based on "presumptively protected and lawful speech" is misplaced in this case, which concerns prostitution advertising (a form of commercial speech that is categorically excluded from First Amendment protection), as more fully explained in the United States' objections to Defendants' case-specific instructions in Part IV, *infra*. The SI clearly alleges that Defendants had ample notice that prostitution advertising was rampant on Backpage, and that Defendants took numerous steps to expand and capitalize on Backpage's role as the internet's primary source of prostitution advertising.

1
2

**DEFENDANTS' PROPOSED INSTRUCTION**
**4.11 ADVICE OF COUNSEL**

3   One element that the government must prove beyond a reasonable doubt is that each
4   defendant had the unlawful intent to violate the Travel Act by promoting or facilitating
5   prostitution offenses committed by a particular business enterprise in violation of the laws
6   of the State in which they were committed. Evidence that a defendant in good faith
7   followed the advice of counsel would be inconsistent with such an unlawful intent.
8   Unlawful intent has not been proved if a defendant, before acting, made full disclosure of
9   all material facts to an attorney, received the attorney's advice as to the specific course of
10  conduct that was followed, and reasonably followed the attorney's recommended course
11  of conduct or advice in good faith.

12                          **Supporting Authorities**

13  Ninth Circuit Manual of Model Criminal Jury Instructions 4.11. *See United States*
14  *v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987) (defendant entitled to an advice of
15  counsel instruction if it has some foundation in the evidence); *United States v. DeFries*,
16  129 F.3d 1293, 1296 (D.C. Cir. 1997) (holding instruction required when there is even
17  minimal foundation in the evidence, and defense applies to advice given about how to
18  implement a business plan in a legally acceptable manner).

19                          **UNITED STATES' OBJECTIONS**

20  Defendants aren't entitled to an advice of counsel defense. As the United States
21  articulated in its recent motion (Doc. 1599), there are certain prerequisites that Defendants
22  need to establish before an advice of counsel defense may be invoked. *Id.* at 3 (citing
23  *United States v. Holmes*, No. 5:18-CR-00258-EJD-1, 2021 WL 2044470, at *51 (N.D. Cal.
24  May 22, 2021). The most critical piece of an advice of counsel defense is demonstrating
25  that the defendants told their attorneys all relevant and material facts. Defendants agree
26  with this point. Doc. 1250 at 10. Defendants have failed to do so. To establish this point,
27  Defendants need to waive the privilege. *Holmes*, 2021 WL 2044470, at *51. They haven't.
28  And at this point, more than five years after the case has been charged, they should be

precluded from doing so.  To permit Defendants to waive the privilege now, would lead to a voluminous disclosure that would either (a) unfairly prejudice the United States, or (b) have the effect of delaying trial while the United States (and potentially the Court) reviewed the communications to determine if Defendants told their attorneys all relevant and material facts.

**DEFENDANTS' PROPOSED INSTRUCTION**

**5.12 MERE PRESENCE**

Mere presence at the scene of a crime or mere knowledge that a crime is being committed is not sufficient to establish that a defendant committed the crime of violating the Travel Act by promoting, or facilitating the promotion of, prostitution offenses committed by a particular business enterprise in violation of the laws of the State in which they were committed or the crime of money laundering.   The defendant must be a participant and not merely a knowing spectator.   If a defendant was present, that defendant's presence may be considered by the jury along with other evidence in the case.

**Supporting Authorities**

Ninth Circuit Manual of Model Criminal Jury Instructions 5.12, 18.1 (modified to reflect charges); *Woodhull Freedom Foundation v. United States*, 334 F. Supp. 3d 185, 199-201 (D.D.C. 2018), rev'd. 948 F.3d 363 (D.C. Cir. 2020); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

**UNITED STATES' OBJECTIONS**

The Comment to this Model Criminal Jury Instruction demonstrates why this instruction is unnecessary for this case.  "Such a 'mere presence' instruction is unnecessary if the government's case is not solely based on the defendant's presence and the jury has been instructed on the elements of the crime."  *See United States v. Tucker*, 641 F.3d 1110,

1123 (9th Cir. 2011); *see also United States v. Gooch*, 506 F.3d 1156, 1160 (9th Cir. 2007). The evidence at trial will demonstrate that each defendant was more than "merely present" for the alleged crimes.  *See United States v. Howell*, 231 F.3d 615, 629 (9th Cir. 2000).

## 6.2 INSTRUCTION CHARGE AGAINST DEFENDANT NOT EVIDENCE—PRESUMPTION OF INNOCENCE—BURDEN OF PROOF

The indictment is not evidence.  Defendants have pleaded not guilty to the charges.  Each defendant is presumed to be innocent unless and until the United States proves the defendant guilty beyond a reasonable doubt.  In addition, the defendant does not have to testify or present any evidence.  The defendant does not have to prove innocence; the United States has the burden of proving every element of the charges beyond a reasonable doubt.

### 6.5 INSTRUCTION REASONABLE DOUBT—DEFINED

Proof beyond a reasonable doubt is proof that leaves you firmly convinced the defendant is guilty.  It is not required that the United States prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation.  It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty.  On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.

## 6.13 INSTRUCTION SEPARATE CONSIDERATION OF MULTIPLE COUNTS—MULTIPLE DEFENDANTS

A separate crime is charged against one or more of the defendants in each count. The charges have been joined for trial. You must decide the case of each defendant on each crime charged against that defendant separately. Your verdict on any count as to any defendant should not control your verdict on any other count or as to any other defendant.

All the instructions apply to each defendant and to each count unless a specific instruction states that it applies only to a specific defendant or count.

## 11.1 CONSPIRACY—ELEMENTS

The defendants are charged in Count 1 of the indictment with conspiring to violate the Travel Act in violation of Section 1952(a)(3)(A) of Title 18 of the United States Code. In order for each defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, beginning in or around 2004, and ending on or about April 2018, there was an agreement between two or more persons to commit at least one Travel Act crime as charged in the indictment, namely promoting or facilitating the promotion of any business enterprise involving prostitution offenses in violation of 18 U.S.C. § 1952(a)(3)(A) and § 1952(b)(i)(1);

Second, the defendant became a member of the conspiracy knowing of at least one of its illegal objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act on or after March 28, 2013, for the purpose of carrying out the conspiracy.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime, *i.e.*, Travel Act violations, which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the

originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The United States is not required to prove that the defendant personally did one of the overt acts.

**Unanimity Requirements**

For a defendant to be found guilty of Count 1 (Conspiracy to Violate the Travel Act), you must find beyond a reasonable doubt that the defendant joined in a plan to commit at least one illegal object of the alleged conspiracy – specifically intending to promote, or facilitate the promotion of, prostitution offenses committed by a particular business enterprise upon which you all agree.

## 11.3 MULTIPLE CONSPIRACIES

### (Count 1 – Multiple Conspiracies)

Count 1 of the indictment alleges a single conspiracy to commit a violation of the Travel Act by promoting, or facilitating the promotion of, prostitution offenses committed by a particular business enterprise in violation of the laws of the State in which they were committed. You must decide whether the single conspiracy to violate the Travel Act as charged in Count 1 of the indictment existed, and, if it did, who at least some of its members were. If you find that the single conspiracy to violate the Travel Act charged in Count 1 did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy or conspiracies existed. For example, if you find that Count 1 concerns two or more conspiracies, you must find each defendant not guilty of the single conspiracy alleged in Count 1. Similarly, if you find that any defendant was not a member of the conspiracy to violate the Travel Act charged in Count 1, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy or conspiracies.

### Supporting Authorities

Model Crim. Jury Instr. 9th Cir. 11.3 (modified to reflect the charges in the indictment); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Doc. No. 946 at 13 (Order denying motion to dismiss) ("[Defendants] were not indicted for facilitating the amorphous notion of 'prostitution.' They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution."); *see United States v. Lacey, et al.* (D. Ariz.), Case No. 18-CR-00422-PHX-SMB, Transcript of December 4, 2020 Hearing ("And I think one of the key things in my reason for denying the recusal is that this case is not about Backpage. Backpage was prosecuted in a separate case, entered a plea in a separate case. This case is about these individual defendants and whether they had specific knowledge of these ads as facilitating illegal activity.").

### UNITED STATES' OBJECTIONS

This instruction should only be given when Defendants raise a multiple conspiracy defense. *United States v. Job*, 871 F.3d 852, 867 (9th Cir. 2017). To support such an instruction, evidence would need to be presented at trial in which a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment. *Id.* That's not the case here. The conspiracy charged in Count One would not give rise to a reasonable juror believing that multiple conspiracies occurred. *Id.* at 868 ("Although a single conspiracy can include 'several subagreements or subgroups of conspirators,' that does not mean there are separate conspiracies.") "A single conspiracy exists, as compared with multiple conspiracies, where there is 'one overall agreement' to perform various functions to achieve the objectives of the conspiracy." *United States v. Bauer,* 84 F.3d 1549, 1560 (9th Cir. 1996).

Defendants' instruction also incorrectly states that Count One "alleges a single conspiracy to commit *a violation* of the Travel Act by promoting, or facilitating the promotion of, prostitution offenses *committed by a particular business enterprise* in violation of the laws of the State in which they were committed." (Emphasis added.) But Count One is not limited to a conspiracy to commit a single Travel Act violation, committed by a particular business enterprise. Indeed, the indictment alleges that Defendants engaged in a conspiracy to promote, or facilitate the promotion of *many different* business enterprises. Doc. 230 at ¶¶ 1, 9, 160-176. Even though the United States has alleged that Defendants' criminal conspiracy involved a vast number of business enterprises, the underlying conspiracy remains the same—to violate the Travel Act. The evidence at trial will not show that Defendants engaged in any subagreements that are "separate" from and "unrelated" to the overall charged conspiracy. *Job*, 871 F.3d at 868. This instruction is not necessary and should be not given. The United States' conspiracy charge contemplates Defendants conspiring with many different business enterprises to violate the Travel Act.

### 11.3 MULTIPLE CONSPIRACIES

### (Count 52 – Multiple Conspiracies)

Count 52 of the indictment alleges a single conspiracy to commit concealment money laundering in violation of Section 1956(a)(1)(B)(i), international promotional money laundering in violation of Section 1956(a)(2)(A), transactional money laundering in violation of Section 1957(a), and international concealment money laundering in violation of Section 1956(a)(2)(B)(i).  You must decide whether the single conspiracy to commit concealment, international promotional, transactional, and international concealment money laundering as charged in Count 52 of the indictment existed, and, if it did, who at least some of its members were.  If you find that the single conspiracy to commit concealment, international promotional, transactional, and international concealment money laundering as charged in Count 52 of the indictment did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed.  For example, if you find that Count 52 concerns two or more conspiracies, you must find the defendants not guilty of the single conspiracy alleged in Count 52.  Similarly, if you find that any defendant was not a member of the conspiracy to commit concealment, international promotional, transactional, and international concealment money laundering as charged in Count 52, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy.

### Supporting Authorities

Model Crim. Jury Instr. 9th Cir. 11.3 (modified to reflect the charges in the indictment).

### UNITED STATES' OBJECTIONS

"A defendant is entitled to a multiple conspiracies instruction only if the defendant's theory of multiple conspiracies is supported by law and has some foundation in the evidence." *United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir. 1989) (internal citations and quotations omitted).  As discussed above, "[a] single conspiracy exists, as compared with multiple conspiracies, where there is 'one overall agreement' to perform

1   various functions to achieve the objectives of the conspiracy."  *United States v. Bauer,* 84

2   F.3d 1549, 1560 (9th Cir. 1996).

3         This instruction should be evaluated after the evidence has been presented in order

4   to better understand "Defendants' theory of multiple conspiracies."

## 11.4 CONSPIRACY – KNOWLEDGE OF AND ASSOCIATION WITH OTHER CONSPIRATORS

A conspiracy may continue for a long period of time and may include the performance of many transactions. It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members.

Even though a defendant did not directly conspire with every other defendant or every other conspirator in the overall scheme, that defendant has, in effect, agreed to participate in the conspiracy if the government proves each of the following beyond a reasonable doubt:

First, that a defendant directly conspired with one or more conspirators to carry out at least one of the illegal objects of the conspiracy;

Second, that a defendant knew or had reason to know that other conspirators were involved with those with whom the defendant directly conspired; and

Third, that a defendant had reason to believe that whatever benefits the defendant might get from the conspiracy probably were dependent upon the success of the entire enterprise.

It is not a defense that a person's participation in a conspiracy was minor or for a short period of time.

**11.6 CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE (TRAVEL ACT) COMMITTED BY CO-CONSPIRATOR (*PINKERTON* CHARGE)**

Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find the defendant guilty of committing a Travel Act crime as charged in Counts 2-51 of the indictment if the United States has proved each of the following elements beyond a reasonable doubt:

First, a member of the conspiracy committed the Travel Act offense alleged in that count;

Second, the person was a member of the conspiracy charged in Count 1 of the indictment;

Third, the person committed the Travel Act offense in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offenses charged in Counts 2-51 were committed; and

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

## 11.6 CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE (CONCEALMENT MONEY LAUNDERING) COMMITTED BY CO-CONSPIRATOR (*PINKERTON* CHARGE)

Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find the defendant guilty of Concealment Money Laundering as charged in Counts 53-62 of the indictment if the United States has proved each of the following elements beyond a reasonable doubt:

First, a member of the conspiracy committed Concealment Money Laundering alleged in that count;

Second, the person was a member of the conspiracy charged in Count 52 of the indictment;

Third, the person committed Concealment Money Laundering in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offenses charged in 53-62 were committed; and

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

### 11.6 CONSPIRACY—LIABILITY FOR SUBSTANTIVE OFFENSE (INTERNATIONAL PROMOTIONAL MONEY LAUNDERING) COMMITTED BY CO-CONSPIRATOR (*PINKERTON* CHARGE)

Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find the defendant guilty of International Promotional Money Laundering as charged in Counts 63-68 of the indictment if the United States has proved each of the following elements beyond a reasonable doubt:

First, a member of the conspiracy committed International Promotional Money Laundering alleged in that count;

Second, the person was a member of the conspiracy charged in Count 52 of the indictment;

Third, the person committed International Promotional Money Laundering in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offenses charged in 63-68 were committed; and

Fifth, the offense fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

**18.1 TRAVEL ACT—INTERSTATE OR FOREIGN TRAVEL IN AID OF RACKETEERINGENTERPRISE (18 U.S.C. § 1952(a)(3))**

The defendants are charged in Counts 2-51 of the indictment with violating Section 1952(a)(3) of Title 18 of the United States Code, a statute also referred to as "the Travel Act." In order for the defendants to be found guilty of Counts 2-51, the United States must prove, for each count, the following elements beyond a reasonable doubt:

First, the defendant used any facility in interstate commerce with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses in violation of the laws of the State in which they are committed (as specified below), and

Second, after doing so the defendant performed or attempted to perform an act that did promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses, specifically, by publishing on Backpage.com the ads listed in Counts 2-51 of the indictment.

Third, the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime. Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must demonstrate that the crime will take place unless interrupted by independent circumstances.

Jurors do not need to agree unanimously as to which particular act or actions constituted a substantial step toward the commission of a crime.

Counts 2, 4, 27, 29-30, 33, 35, 37, 40 and 43 concern prostitution offenses in violation of the laws of the State of Massachusetts. A prostitution offense in Massachusetts occurs when:

(1) A person engaged, agreed to engage, or offered to engage, in sexual conduct with another person; and

(2)  The sexual conduct was, or was to be, done in return for a fee.

The term "sexual conduct" includes sexual intercourse; anal intercourse; fellatio, or oral sex involving contact between the mouth of one person and the penis of another person; cunnilingus, or oral sex involving contact between the mouth of one person and the female sex organs—the vagina, vulva or labia—of another person; masturbation of another person; or any intrusion of a part of one person's body or some other object into the genital or anal opening of another person's body.

Counts 3, 6-11, 18, 25-26, and 28 concern prostitution offenses in violation of the laws of the State of Washington.  A prostitution offense in Washington  occurs when:

(1) A person engaged, agreed to engage, or offered to engage in sexual conduct with another person; and

(2) The sexual conduct, agreement, or offer was in return for a fee.

"Sexual conduct" means sexual contact or sexual intercourse.  "Sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party.  "Sexual intercourse" means that the sexual organ of the male entered and penetrated the sexual organ of the female and occurs upon any penetration, however slight, or any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, or any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

Counts 14-15, 21-22, and 31 concern prostitution offenses in violation of the laws of the State of Arizona. A prostitution offense in Arizona occurs when:

A person knowingly engaged, agreed, or offered to engage in sexual conduct with another person under a fee arrangement with any person for money or any other valuable consideration.

- 41 -

"Sexual conduct" means sexual contact, sexual intercourse, oral sexual contact, or sadomasochistic abuse.

"Sexual contact" means any direct or indirect fondling or manipulating of any part of the genitals, anus or female breast.

"Sexual intercourse" means penetration into the penis, vulva or anus by any part of the body or by an object.

"Oral sexual contact" means oral contact with the penis, vulva or anus.

"Sadomasochistic abuse" means flagellation or torture by or on a person who is nude or clad in undergarments or in revealing or bizarre costume or the condition of being fettered, bound or otherwise physically restrained on the part of one so clothed.

Counts 12-13, 23, and 34 concern prostitution offenses in violation of the laws of the State of California. A prostitution offense in California occurs when:

An individual solicits, or agrees to engage in, or engages in, any act of prostitution with the intent to receive compensation, money, or anything of value from another person.

An act of prostitution occurs when a person has sexual intercourse or does a lewd act with someone else in exchange for money or other compensation. A lewd act means touching the genitals, buttocks, or female breast of either the prostitute or customer with some part of the other person's body for the purpose of sexual arousal or gratification.

Counts 45-47 and 51 concern prostitution offenses in violation of the laws of the State of New York. A prostitution offense in New York occurs when:

A person engaged, agreed, or offered to engage, in sexual conduct with another person for a fee.

Counts 19-20 and 50 concern prostitution offenses in violation of the laws of the State of Texas. A prostitution offense in Texas occurs when:

A person knowingly offers or agrees to receive a fee from another to engage in

sexual conduct.

"Sexual conduct" includes deviate sexual intercourse, sexual contact, and sexual intercourse.

"Sexual intercourse" means any penetration of the female sex organ by the male sex organ.

"Sexual contact" means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person.

"Fee" means the payment or offer of payment in the form of money, goods, services, or other benefit.

"Deviate sexual intercourse" means any contact between the genitals of one person and the mouth or anus of another person.

A person acts knowingly, or with knowledge, with respect to the nature of his/her conduct or to circumstances surrounding his/her conduct when he/she is aware of the nature of his/her conduct or that the circumstances exist.

Counts 16-17 concern prostitution offenses in violation of the laws of the State of Colorado.  A prostitution offense occurs in Colorado when:

A person performed, offered, or agreed to perform, any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse, with any person who was not his or her spouse, in exchange for money or other thing of value.

Or when:

A person solicited another for the purpose of prostitution.

Colorado law provides the following definitions:

"Anal intercourse" means contact between human beings of the genital organs of one and the anus of another.

"Fellatio" means any act of oral stimulation of the penis.

"Cunnilingus" means any act of oral stimulation of the vulva or clitoris.

"Masturbation" means stimulation of the genital organs by manual or other bodily

- 43 -

1   contact exclusive of sexual intercourse.

2       "Thing of value" includes real property, tangible and intangible personal property,

3   contract rights, choses in action, services, confidential information, medical records

4   information, and any rights of use or enjoyment connected therewith.

5

6       Counts 38 and 42 concern prostitution offenses in violation of the laws of the State

7   of Ohio.  A prostitution offense occurs in Ohio when:

8       A person engaged in sexual activity for hire.

9       Or when:

10      A person recklessly induces, entices, or procures another to engage in sexual activity

11  for hire in exchange for the person giving anything of value to the other person.

12      Ohio law provides the following definitions:

13      "Sexual activity" means sexual conduct or sexual contact, or both.

14      "Sexual conduct" means vaginal intercourse between a male and female; anal

15  intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without

16  privilege to do so, the insertion, however slight, of any part of the body or any instrument,

17  apparatus, or other object into the vaginal or anal opening of another.  Penetration, however

18  slight, is sufficient to complete vaginal or anal intercourse.

19      "Sexual contact" means any touching of an erogenous zone of another, including

20  without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a

21  breast, for the purpose of sexually arousing or gratifying either person.

22      "For hire" means for pay or compensation.

23

24      Counts 36 and 49 concern prostitution offenses in violation of the laws of the State

25  of Nevada.   A prostitution offense in Nevada occurs when:

26      A person engaged in prostitution or solicitation therefor, except in a licensed house

27  of prostitution.

28      "Prostitution" means engaging in sexual conduct with another person in return for

a fee, monetary consideration or other thing of value.

"Sexual conduct" means sexual intercourse, oral-genital contact or any touching of the sexual organs or other intimate parts of a person for the purpose of arousing or gratifying the sexual desire of either person.

Counts 24 and 44 concern prostitution offenses in violation of the laws of the State of Michigan.  A prostitution offense in Michigan occurs when:

A person engaged or offered to engage the services of another person, not his or her spouse, for the purpose of prostitution, lewdness, or assignation, by the payment in money or other forms of consideration.

Count 32 concerns prostitution offenses in violation of the laws of the State of Louisiana.  A prostitution offense in Louisiana occurs when:

A person engaged in indiscriminate sexual intercourse for compensation, or solicited another with the intent to engage in indiscriminate sexual intercourse for compensation.

"Sexual intercourse" means anal, oral, or vaginal sexual intercourse.

Count 48 concerns prostitution offenses in violation of the laws of the State of Florida.  A prostitution offense in Florida occurs when:

A person offered to commit, committed, or engaged in prostitution, lewdness, or assignation.

-OR-

A person solicited, induced, enticed, or procured another to commit prostitution, lewdness, or assignation.

"Prostitution" is the giving or receiving of the body for sexual activity for hire but excludes sexual activity between spouses.

"Lewdness" is any indecent or obscene act. "Indecent" means wicked, lustful,

unchaste, licentious, or sensual intention on the part of the person doing the act.

"Sexual activity" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another; anal or vaginal penetration of another by any other object; or the handling or fondling of the sexual organ of another for the purpose of masturbation; however, the term does not include acts done for bona fide medical purposes.

"Assignation" includes the making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement.

To "solicit" means to command, encourage, hire, or request another person to engage in specific conduct.

To "procure" means to persuade, induce, prevail upon or cause a person to do something.

Count 39 concerns prostitution offenses in violation of the laws of the State of Alabama.  A prostitution offense in Alabama occurs under any of the following:

(1)     A person commits an act of prostitution, which is .  any natural or unnatural sexual act, sodomy, or sexual contact for monetary consideration or other thing of value.

(2)     A person solicited, compelled, or coerced any person to have sexual intercourse or participate in any natural or unnatural sexual act, deviant sexual intercourse, or sexual contact for monetary consideration or other thing of marketable value.

(3)     A person agreed to engage in sexual intercourse, deviant sexual intercourse, or sexual contact with another or participate in the act for monetary consideration or other thing of marketable value and give or accept monetary consideration or other thing of value in furtherance of the agreement.

(4)     A person knowingly did any of the following:

        a)  Caused or aided a person to commit or engage in prostitution.

        b)  Procured or solicited patrons for prostitution.

        c)  Provided persons or premises for prostitution purposes.

        d)  Received or accepted money or other thing of value pursuant to a prior

- 46 -

agreement with any person whereby he or she participated or is to participate in the proceeds of any prostitution activity.

e) Operated or assisted in the operation of a house of prostitution or a prostitution enterprise.

Count 41 concerns prostitution offenses in violation of the laws of the State of Arkansas.  A prostitution offense in Arkansas occurs when:

A person engaged in, agreed, or offered to engage in sexual activity with any other person in return for or in expectation of a fee.

"Sexual activity" means sexual intercourse, deviate sexual activity, or sexual contact.

"Sexual intercourse" means penetration, however slight, of the labia majora by a penis.

"Deviate sexual activity" means any act of sexual gratification involving: (A) the penetration, however slight, of the anus or mouth of a person by the penis of another person; or (B) the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person.

"Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female.

Count 5 concerns prostitution offenses in violation of the laws of the State of Maine. A prostitution offense in Maine occurs when:

A person engages in, or agrees to engage in, or offers to engage in a sexual act or sexual contact in return for a pecuniary benefit to be received by the person engaging in prostitution or a 3rd person.

"Sexual act" means: (1) Any act between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact

- 47 -

between the genitals of one and the genitals of the other; (2) Any act between a person and an animal being used by another person which act involves direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other; or (3) Any act involving direct physical contact between the genitals or anus of one and an instrument or device manipulated by another person when that act is done for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.

"Sexual contact" means any touching of the genitals or anus, directly or through clothing, other than as would constitute a sexual act, for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact.

## "SPECIFIC INTENT" DEFINED

The Travel Act is a specific intent crime and that means for each defendant to be found guilty, the United States needs to prove that each defendant specifically intended to promote or facilitate the promotion of an activity which the defendant knew to be unlawful under state law, specifically, promoting or facilitating the promotion of any business enterprise involved in prostitution.

1

## "BUSINESS ENTERPRISE" IN THE TRAVEL ACT DEFINED

2       "Business enterprise," as used in the Travel Act, 18 U.S.C. 1952(b), means a

3 continuous course of criminal conduct, that is, engaging or planning to engage in two or

4 more violations of law, rather than a sporadic, casual, individual or isolated violation.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**"USES ANY FACILITY IN INTERSTATE COMMERCE" DEFINED**

2

    The phrase "uses any facility in interstate commerce" as used in the Travel Act, 18

3

U.S.C. § 1952(a), means employing or utilizing any method of communication or

4

transportation between one state and another, and includes, for example, the use of

5

telephones, mails, and the Internet.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES' PROPOSED INSTRUCTION NO. 4

## "FACILITATE" DEFINED

In the context of the Travel Act, the term "facilitate" means "to make easy or less difficult."

## 18.4 LAUNDERING MONETARY INSTRUMENTS
### (18 U.S.C. § 1956(a)(1)(B))

Defendants Lacey, Larkin, Spear, and Brunst are charged in Counts 53-62 of the indictment with Concealment Money Laundering in violation of Section 1956(a)(1)(B)(i) of Title 18 of the United States Code.  In order for a defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant conducted a financial transaction involving property that represented the proceeds of promoting, managing, establishing, carrying on, or facilitating the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses in violation of the laws of the State in which they are committed;

Second, the defendant knew that the property represented the proceeds of some form of unlawful activity; and

Third, the defendant knew that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity.

A financial transaction is a transaction involving the movement of funds by wire or other means that affects interstate or foreign commerce in any way.

The phrase "knew that the property represented the proceeds of some form of unlawful activity" means that the defendant knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony.  I instruct you that violating the Travel Act is a felony.

## 18.5 TRANSPORTING FUNDS TO PROMOTE
## UNLAWFUL ACTIVITY
## (18 U.S.C. § 1956(a)(2)(A))

Defendants Lacey, Larkin, Spear, and Brunst are charged in Counts 63-68 of the indictment with transporting funds to promote unlawful activity in violation of Section 1956(a)(2)(A) of Title 18 of the United States Code. In order for a defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant transported money from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States; and

Second, the defendant acted with the intent to promote the carrying on of violations of the Travel Act.

## 18.6 TRANSPORTING MONETARY INSTRUMENTS FOR THE
## PURPOSE OF LAUNDERING
### (18 U.S.C. § 1956(a)(2)(B))

Defendant Lacey is charged in Count 100 of the indictment with transporting money for the purpose of laundering in violation of Section 1956(a)(2)(B) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant transported money from a place in the United States to or through a place outside the United States;

Second, the defendant knew that the money represented the proceeds of some form of unlawful activity; and

Third, the defendant knew the transportation was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of promoting or facilitating the promotion of any business enterprise involving prostitution offenses to avoid a transaction reporting requirement under state or federal law, and

Fourth, the defendant did something that was a substantial step toward committing the crime.

A "substantial step" is conduct that strongly corroborated the defendant's intent to commit the crime. To constitute a substantial step, a defendant's act or actions must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances. Mere preparation is not a substantial step toward committing the crime of transporting money for the purposes of laundering.

Jurors do not need to agree unanimously as to which particular act or actions constituted a substantial step toward the commission of a crime.

**18.7 MONEY LAUNDERING**

**(18 U.S.C. § 1957)**

Defendant Lacey is charged in Counts 69-70, 81, 83-84, 86, 88-92, and 94-99; Defendant Larkin is charged in Counts 80 and 87; Defendant Spear is charged in Counts 71-78, 85, and 93; and Defendant Brunst is charged in Counts 69-70, 78-84, and 86-93, of the indictment with transactional money laundering in violation of Section 1957 of Title 18 of the United States Code.  For a defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction.  An act is done knowingly if the defendant is aware of the act, and does not act or fail to act through ignorance, mistake, or accident.  You may consider evidence of the defendants' words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Fourth, the property was, in fact, derived from violations of the Travel Act; and

Fifth, the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means an insured bank, commercial bank, or credit union.

The term "criminally derived property" means any property constituting, or derived from, the proceeds of a criminal offense. The United States must prove that the defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The United States does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of promoting or facilitating

the promotion of any business enterprise involving prostitution offenses.

Although the United States must prove that, of the property at issue more than $10,000 was criminally derived, the United States does not have to prove that all of the property at issue was criminally derived.

**18.7A MONEY LAUNDERING CONSPIRACY**

**(18 U.S.C. § 1956(h))**

Defendants Lacey, Larkin, Spear, and Brunst are charged in Count 52 the indictment with money laundering conspiracy in violation of Section 1956(h) of Title 18 of the United States Code. For each defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, there was an agreement to commit money laundering;

Second, the defendant knew the objective of the agreement;

Third, the defendant joined the agreement with the intent to further its unlawful purpose.

## STATE LAW NEED NOT BE VIOLATED FOR DEFENDANTS TO BE FOUND GUILTY UNDER THE TRAVEL ACT

The United States does not have to prove that the referenced states' laws were actually violated, only that each defendant had intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any business enterprise involving prostitution offenses in violation of state law, and committed a subsequent overt act in furtherance of the unlawful activity.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **DEFENDANT'S GOOD FAITH**

2          The government has the burden to prove to you, beyond a reasonable doubt, that a

3    defendant acted with criminal intent and lacked good faith.   The burden of

4    proving good faith does not rest with a defendant because a defendant does not have any

5    obligation to prove anything in this case.  If the government fails to meet its burden to

6    prove a defendant lacked good faith, its failure to do so is a complete and absolute defense

7    to the charges in this case and you must return a not guilty verdict.

8          If a defendant carried out his or her actions in good faith, there was no criminal

9    intent.

10         A person who acts, or causes another person to act, on a belief or an opinion honestly

11   held is not punishable under the charges in the indictment merely because the belief or

12   opinion turns out to be inaccurate, incorrect, or wrong.  An honest mistake in judgment or

13   an honest error in management does not rise to the level of criminal conduct.

14         While the term "good faith" has no precise definition, it encompasses, among other

15   things, a belief or opinion honestly held and an absence of malice or ill will.

16         If the evidence in the case leaves the jury with a reasonable doubt as to whether a

17   defendant acted with criminal intent and lacked good faith, the jury must acquit that

18   defendant.

19                              **Supporting Authorities**

20         *See* 1A Fed. Jury Prac. & Instr. § 19:06 (6th ed.), 1A Fed. Jury Prac. & Instr. § 19:06

21   (6th ed.).

22                              **UNITED STATES' OBJECTIONS**

23         "A defendant is not entitled to a separate good faith instruction when the court

24   adequately instructs on specific intent." *United States. v. Bonanno*, 852 F.2d 434, 439–40

25   (9th Cir. 1988) (citing *United States v. Green,* 745 F.2d 1205, 1209 (9th Cir.

26   1984), and *United States v. Cusino,* 694 F.2d 185, 188 (9th Cir. 1982)); *see also United*

27   *States v. Dees,* 34 F.3d 838, 842 (9th Cir. 1994) (same); *United States v. Rushton,* 963 F.2d

28   272, 274 (9th Cir. 1992) (same).  Here, the parties have already stipulated to the appropriate

"specific intent" instruction.  Doc. 1311 at 7; Doc. 1432 at 31-36.  Because the parties have stipulated to specific intent instruction, a "good faith" instruction should not be given.

The instruction also should not be given to the extent Defendants are attempting to use it to circumvent invoking an "advice of counsel" defense.  If Defendants claim that their asserted "good faith" is based in any way on legal advice, then they should be required to comply with the requirements of the "advice of counsel" defense, and the jury should receive an appropriate "advice of counsel" instruction instead of the proposed "good faith" instruction.[2]

---

[2] *See* Ninth Circuit Model Criminal Jury Instruction 4.11.

1

## DEFENSE THEORY OF THE CASE

2          Defendants intend to request instructions on the defense's theories of the case.

3   Defendants reserve their right to submit that request at the close of the trial.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDMENT PROTECTION—SPEECH PRESUMED PROTECTED**

All speech is presumptively protected by the First Amendment to the United States Constitution. Accordingly, you must presume that speech is protected. Speech relating to illegal activity, however, is not protected. Prostitution is illegal in 49 states and most of Nevada. Therefore, advertisements or solicitations for prostitution have no protection. The government has the burden to establish that the particular expressions of speech at issue are not protected by the First Amendment.

You may consider any direct or circumstantial evidence in assessing whether any ads in this case related to illegal activity.