UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| **United States of America,** ) | |
| ) | No. 2:18-cr-00422-DJH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Phoenix, Arizona |
| **Michael Lacey, et al.,** ) | August 4, 2023 |
| ) | 1:49 p.m. |
| Defendants. ) | |
| _____ ) | |


BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

(DOES NOT CONTAIN SEALED PROCEEDINGS)

IN-COURT STATUS HEARING


Official Court Reporter:
Cathy J. Taylor, RMR, CRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    **A P P E A R A N C E S**

2

3   For the Plaintiff:
        UNITED STATES ATTORNEY'S OFFICE
        By:  **Mr. Kevin M. Rapp, Esq.**
4            **Mr. Andrew C. Stone, Esq.**
             **Mr. Peter Shawn Kozinets, Esq.**
5            **Ms. Margaret Wu Perlmeter, Esq.**
        40 North Central Avenue, Suite 1800
6       Phoenix, Arizona  85004-4408

7   For the Defendant James Larkin:
        OSBORN MALEDON
8       By:  **Mr. Timothy J. Eckstein, Esq.**
             **Mr. Joseph Nathaniel Roth, Esq.**
9       2999 North Central Avenue, 21st Floor
        Phoenix, Arizona  85012
10

11  For the Defendant Andrew Padilla:
        DAVID EISENBERG, PLC
        By:  **Mr. David S. Eisenberg, Esq.**
12      3550 North Central Avenue, Suite 1155
        Phoenix, Arizona  85012
13

14  For the Defendant Scott Spear:
        KESSLER LAW OFFICE
        By: **Mr. Eric Walter Kessler, Esq.**
15      6720 North Scottsdale Road, Suite 210
        Scottsdale, Arizona  85253
16      - and -
        FEDER LAW OFFICE, PA
17      By:  **Mr. Bruce S. Feder, Esq.**
        2930 East Camelback Road, Suite 160
18      Phoenix, Arizona  85016

19  For the Defendants:
        BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
20      By:  **Mr. Gopi K. Panchapakesan, Esq.**
        1875 Century Park E, Suite 2300
21      Los Angeles, California  90067

22  For the Defendant Joye Vaught:
        JOY BERTRAND, ESQ, LLC
23      By:  **Ms. Joy Malby Bertrand, Esq**
        P.O. Box 2734, [!ADDRESS-B6]
24      Scottsdale, Arizona  85252-2734

25

<u>**P R O C E E D I N G S**</u>

(Proceedings commence at 1:49 p.m.)

(Sealed proceedings previously held on the record contained in a separate sealed transcript.)

THE COURT:  All right.  Let me just provide just some direction for those who are in the public proceeding and also to counsel.

I want to remind counsel that we have no Wi-Fi or Internet access in this courtroom.  I think that was the case previously, but we've actually had to reestablish some of those connections for court staff.  So counsel are permitted to bring in a hotspot or use their own Wi-Fi during the proceedings.  And, of course, we have indicated to the public that there is no recording under local rule of the proceedings.  And so with that, let me move forward.

First, let me inquire of Mr. Eckstein or the government.  Is there a -- is there a motion?

MR. RAPP:  If the Court would take an oral motion to dismiss, I'm happy to make that, or to provide the Court a written motion.

THE COURT:  You may make the oral motion, and you may supplement it with a filing.

MR. RAPP:  All right.  The Court would move to dismiss the superseding indictment against James Larkin as to James Larkin only.

1          THE COURT:  And the Court will so order.

2          Now, we have determined the necessity to delay the

3    start of trial.  But having submitted a voluminous jury

4    questionnaire to a venire of a few hundred, we have worked

5    diligently to ensure that those questionnaires were returned,

6    and they were reviewed in a previous hearing.

7          And so let me clarify what I think I understood the

8    government to say, that, Mr. Rapp, you believe that there is no

9    necessity to extend any trial days beyond November 3rd.

10          Is that what I heard you say?

11          MR. RAPP:  That's what you heard me say, yes.

12          THE COURT:  So there is no modification in the jury

13    schedule, which then would have us begin the trial on Tuesday,

14    August 22nd, through November the 3rd, as previously

15    determined, keeping in mind the half day Fridays, the vacant

16    trial week the first week in August, and the modified schedule

17    over the Labor Day holiday period.

18          Is that correct, Mr. Rapp?

19          MR. RAPP:  That's correct.

20          THE COURT:  All right.  So to that end, and having

21    reset the trial, is there any counsel who wishes to place a

22    statement or objection on the record?

23          MS. BERTRAND:  Yes, Your Honor.  May I approach?

24          THE COURT:  Yes, please.

25          MS. BERTRAND:  Good afternoon, Your Honor.

1          The defense -- I think I speak for my colleagues as

2     well -- is very grateful to the Court for being willing to talk

3     about this and find a solution that serves the Court's

4     interests, the interests of our jurors, the government's

5     interests, and the defense.

6          It is the consensus of the defense that the -- that

7     the two-week continuance does not allow sufficient time for us

8     to effectively defend this matter.  That takes into

9     consideration the -- I'll call them the logistical and

10    administrative issues that Mr. Larkin's death presents that we

11    talked about under seal.  It -- the defense believes, and I

12    think this can still allow the Court to hold onto the venire

13    panel it has, that if we were allowed to begin the -- I think

14    it's the Wednesday after Labor Day.  That's the 4th or the 5th

15    of September.  That's an additional two weeks.  It would allow

16    us to get up to speed with these large transitions that need to

17    occur, redistribute the witness assignments, prepare the new

18    witness assignments, and still allow us to hold on to this jury

19    venire panel.

20          It might mean asking the venire panel if they can go

21    until November 17th, but that seems -- and this all presumes

22    that the government's case ends up taking as long as the

23    government anticipates.  I don't know that it will be the case.

24    But I speak for the defense when I say in evaluating the -- the

25    investment these potential jurors have made in this

1    participation, the Court's investment in planning such a

2    complex trial, and all the logistics here, the -- the best we

3    can do, given this transition, is a four-week continuance.  And

4    even then, the defense has concerns, but we've agreed we can

5    make that work.

6         And I don't believe that that would create an undue

7    inconvenience in an already inconvenient situation,

8    particularly when evaluated in the light of the requirements

9    each of these lawyers have under the Sixth Amendment to provide

10   a thorough, fulsome defense for the clients.

11        I don't know if my colleagues have further comment,

12   but I drew the short straw, so I went first.

13        THE COURT:  Anything other from any other counsel?

14        MR. CAMBRIA:  May I, Your Honor?

15        THE COURT:  Yes.

16        MR. CAMBRIA:  First let me say, Your Honor, that we

17   appreciate that you are recognizing the need for some

18   alteration in the schedule.  What concerns me is we worked with

19   the so-called hot seat person in the past, and each one of us

20   had to meet with that individual, coordinate.

21        This is a case with a lot of exhibits.  We're sitting

22   here now where, through no fault of our own, obviously, we have

23   20 witnesses and all of their exhibits who have to be doled out

24   among us, and that has not been able to be accomplished yet.

25   When it is, we have to prepare for all those individuals.

1          In fact, I do recall the other day Mr. Eckstein

2     indicating that all the time that he had from the beginning of

3     the case until the other day, he still felt he was not prepared

4     on all the witnesses.  Now we have to take all those witnesses

5     and, once we're prepared, then meet with the hot seat person so

6     we can coordinate things.

7          It -- it -- I appreciate, obviously, the service of

8     jurors, and at the same time appreciate the fact that the Court

9     clearly has -- is going to accommodate the fairness to the

10    defendants here and the effective assistance of their

11    attorneys.  We've worked very hard on this case.  I know the

12    government's worked very hard on the case.  But there's so many

13    exhibits here.  I mean, we were -- the Court knows the volume

14    that we have.  Those of us who have not taken on these new

15    witnesses really don't know what we're facing at this point and

16    how -- how -- how difficult that job will be to be able to

17    prepare.

18         I think asking for an additional two weeks is

19    conservative.  We'll do everything possible to be ready.  As I

20    say, maybe the jurors can be accommodated.  They might be

21    questioned about their own situations and schedules.  I don't

22    know.  But I'm concerned because I do remember the process of

23    meeting with the hot seat person.  I might say I'm -- that

24    that's a -- a whole new thing for me.  In fact, back in the

25    East and so on where I practice, we don't have a hot seat

1    individual.  We have -- you know, I might hand an exhibit to

2    somebody, or we have computer exhibits, obviously.  But I do

3    know that it -- I spent more than a day with the hot seat

4    person that we did have before coordinating all the exhibits

5    that were necessary to do that job.

6         So all I'm saying is I appreciate everything the Court

7    has done in considering this.  I do think that in fairness we

8    should have an additional couple of weeks to try to make this

9    happen.

10        Thank you.

11        THE COURT:  Thank you, Mr. Cambria.

12        Mr. Feder.

13        MR. FEDER:  I appreciate that the Court has contacted

14   the administrative staff in regard to the so-called hot seat

15   and the transfer of the database; however, as we sit here, we

16   don't know when that will happen, when that happens, and the

17   transition will begin.

18        But I want to talk specifically about Mr. Spear.  As

19   the Court knows, I am at this point an unpaid Knapp counsel.

20   Mr. Kessler joined in the motion that was made by -- by

21   Mr. Eckstein last week, or earlier this week.  And the

22   transition, I think I want to tell the Court, is that falls

23   especially heavy on both.  The Court has mentioned on several

24   occasions, as has the government, that I've been on this case

25   for five years, but I'm no longer in a primary role.  And --

and I think the expectation that I am -- I, as opposed to
Mr. Kessler, am going to take on this responsibility without
remuneration is unfair, and it -- it is also unfair to
Mr. Spear in regard to the effective assistance of counsel.

So I join in what the other folks have said.
Certainly the Court could inquire of the venire now about
whether or not an additional two weeks would cause a hardship
on them, and maybe if -- I guess depending on the results, we
could revisit this at worst.

THE COURT:  Thank you.

Mr. Eisenberg.

MR. EISENBERG:  Thank you, Your Honor.

The Court earlier had mentioned the possibility of
extending the venire of the trial by two weeks to around
mid-November.  I think that would still work, assuming that
this case can be extended four weeks instead of two weeks.  It
appears as though, based upon the government's schedule, they
will be done within the same amount of time as -- as had been
initially projected.  And it still allows us to do what we need
to do in order to prepare for an extra -- you divide all those
witnesses up among us, those cross-examination and lead counsel
in terms of direct examination, that's a whole new ball game,
Your Honor.

So I echo my counsel's -- my co-counsels' request in
terms of having this extended by just another two weeks.  I

1    think it's workable.

2              THE COURT:  Thank you.

3              Anyone else wish to be placed on the record?

4              MR. PANCHAPAKESAN:  No, Your Honor.

5              THE COURT:  Mr. Rapp.

6              MR. RAPP:  Well, we would object to that for a number

7    of reasons.  One, we're still a little bit unclear about

8    this -- this service that they're talking about, the -- the

9    transfer from Osborn Maledon to the current.  That -- that

10   would be something that would seem like it would come up at the

11   beginning of the case or in the middle of the case, but we're

12   at the point where the defense has identified 1,000 exhibits

13   and given it to us on a disc, and we have given them 2,000

14   exhibits and provided them on a disc.  This case was in trial,

15   so I -- it's a little bit unclear what they're talking about in

16   terms of this --

17             THE COURT:  Let me just interject there.

18             There's a little bit more of a fine point to that, and

19   it is that there has to be a licensing agreement that's entered

20   into.  The budget -- our Ninth Circuit budget office has to

21   review the parameters of those agreements and determine whether

22   or not we have the -- the ability to pay an hourly rate,

23   whether it comes in a reduced or a higher amount.  We've got

24   some negotiation to go through.

25             So there's a -- there's a few more logistics that we

1  have to work out in order to make this transition as smooth as

2  possible.  So I just wanted to make that point.

3          MR. RAPP:  I fully appreciate that.  I just don't know

4  what the material they're talking about, because we're -- we're

5  at the point where we've exchanged exhibits.  They have

6  exhibits that they've given us that they intend to use at

7  trial; we've given them exhibits digitally that we intend to

8  use at trial.

9          What -- what is this information that needs -- I

10  understand there's a budget issue here.  I just don't

11  understand what the material is since we've -- we already

12  started this trial a couple years ago, and now we're at the

13  point where we've exchanged exhibits.  That's my -- that's my

14  first point on that -- that issue.

15          The second thing is they keep referring to this hot

16  seat.  I've never heard that term, but if this is a person who

17  sits there and simply uses the -- a Trial Director platform and

18  puts an exhibit on, that's -- that's not a very difficult role.

19  You just give them the list of the exhibits.  They just, you

20  know, call them up.  I understand that there might be some

21  budget considerations.  So we don't view those as, you know,

22  too -- I still am unclear as to what they're talking about, the

23  material that Osborn Maledon is hosting.

24          With respect to the division of the witnesses, clearly

25  we don't want to get into the defense strategy, but what I do

1    know is from the previous trial that multiple attorneys

2    cross-examined the -- the few witnesses that took the stand.

3    So they didn't -- there didn't seem like it was just one

4    attorney handling one witness.  I'm just going on that

5    particular trial.

6          But on -- on balance, four weeks, I think, would not

7    be fair to this venire.  We'd have to -- we would have to ask

8    for an extension, and then we would then start losing jurors.

9          THE COURT:  Let me pose something, and then I'm going

10   to have to take a couple minutes and confer with our jury

11   administrator.

12         I'm willing to entertain a trial date of August 29th.

13   And the only reason that I -- and I think that's as far as I

14   can go with the hopes of using this venire.  And the reason I

15   say that is because we would have to -- I know this to be sure.

16   We would have to use the jury panel that comes in on the 14th

17   to supplement those that we will most assuredly lose either

18   because they've heard about the recent events from media,

19   social media, the news, and whatnot, and have changed opinions

20   because of that, and because of any extension of the trial

21   time.  And that said, however, I need to confer with my jury

22   administrator.

23         But before I do, let me say this:  If we were to start

24   on the 29th of August, would then, Mr. Rapp, that require us to

25   use the first week in November, November 6th and ending on the

1    9th, or going through the 17th?

2            MR. RAPP:  Yeah.  I mean, I think the consensus is

3    that we would need an additional -- we'd need till the 17th if

4    we're going to lose another week.  We would be in a very

5    aggressive pace with some of the breaks that we're taking.

6    We -- and the -- the Court has already told us those are the

7    breaks.  And my experience is Courts are loathed to give up

8    those breaks because they've already made other commitments.

9            So if -- if you're going to add another week, we would

10   like to go to the 17th.  We just don't know what the extent of

11   the defense case is.

12           THE COURT:  All right.

13           MR. RAPP:  I know what they're saying, but I don't

14   know.

15           THE COURT:  All right.  Let me -- give me about

16   five minutes to confer with the jury administrator.

17           (Recess from 2:10 p.m. to 2:20 p.m.)

18           THE COURT:  All right.  We are back on the record.

19           I conferred with our jury administrator.  Let me --

20   let me just say that -- one thing.  It dawned on me I had not

21   received clarification about when this trial calendar was set.

22   And, as the parties know, I set the trial calendar based on the

23   weeks that you had previously agreed to prior to the first

24   trial.

25           In your calculation of weeks of trial, 12 weeks, did

1    that incorporate room for jury deliberation?  Is that built

2    into this 12-week calendar?

3            MR. RAPP:  It was as far as the United States is

4    concerned, yes.

5            THE COURT:  Does anyone not have that same

6    understanding from defense counsel?  Okay.  So it was built in.

7            So in conferring with the jury administrator, it is

8    feasible to use the same screened panel if we move the trial

9    date to August the 29th.  Now, because Mr. Rapp indicated that

10   a one-week addition would not create an issue with regard to

11   the prior November 3rd end date, I'm going to hold to that, so

12   our end date now is going to be November 9th.  That cuts a day

13   off because of the November 10th holiday.  However, I do intend

14   during the course of the trial to inquire of the -- of the

15   seated jurors whether or not they have any opposition to going

16   later on certain Fridays, and that will build in additional

17   safeguards in time.

18           Now, I will say there is a reality that even though

19   we're trying to salvage and use these good citizens who have

20   diligently filled out these questionnaires, there's a great

21   likelihood that we will lose a tremendous number of them.  And

22   in order to use those individuals who will be reporting for

23   service in other trials on the 14th, I'm going to modify and

24   streamline the questionnaire that they will be receiving.  I am

25   going to cut out primarily all of those questions that I

normally would probe into in any voir dire process.  I will

send to you my revised questions.  I know that there are going

to be objections, but there's just no way that these jurors are

going to sit there and fill out a 75-page questionnaire and do

it within the time allotted that they are reporting and to

permit us to then screen out those who have calendar conflicts.

I'm reminded by a jury administrator that of the over

500 questionnaires that we sent out, we've got about a

25 percent rate of return of what are sitting here in the court

as usable citizens.  So I ask you to be understanding of that

in the revised questionnaire.  I know you want to get to every

nook and cranny, but I think the -- the primary issues are

going to be related to their awareness of recent events.  And I

think possibly moving this out a little bit further will

address those concerns as well.  I think.  And I'm -- I hope

that is the case.

And so what I will do is I will take the first cut on

that juror -- jury questionnaire that will be provided to the

panel that will appear on Monday the 14th.  I will set forth in

a minute entry the calendar that will follow in terms of

providing that to counsel, you reviewing that, and getting

those possible stipulated hardship removals out.  And we will

move forward with a proposed trial date of the 29th.

Is there any point of clarification that is needed by

government's counsel?

1          MR. RAPP:  Yes.  And I confess.  I apologize.  Do

2     you -- we don't need to be here on -- next Tuesday?

3          THE COURT:  No.

4          MR. RAPP:  Just the jury's showing up?

5          THE COURT:  Just the jury.

6          MR. RAPP:  And we don't need to be here on the 14th?

7          THE COURT:  You do not need to be here on the 14th.

8          MR. RAPP:  Thank you.

9          THE COURT:  You will receive by the end of the day on

10    Tuesday the 8th the supplemental, and I'll submit to you today

11    a copy of the supplemental questions that I ask of the -- those

12    jurors that will appear on the 8th.  Now -- and so I will issue

13    a minute entry in terms of any other required responses that

14    are needed on a changed jury questionnaire.

15          Now, let me just say that I have received and I have

16    reviewed the government's revised statement of the case.  I've

17    looked at it.  I have my own review.  I believe that their

18    revisions are acceptable.  I have received the renewed

19    objection on the Court's First Amendment jury instruction.  And

20    while I want to have a few more minutes to consider it, at this

21    point I'm not inclined to change my earlier decision, but I

22    will give it careful consideration and inform the parties at a

23    later date.

24          We, of course, will have to undertake rewriting those

25    instructions and any other materials that may be publicly

placed on the docket in the trial, and we will do that and have

begun doing that.  And I suggest that if you identify parts of

your case that -- your opening statements and so on, that you

do so as well and be very diligent about that.

Now, what I will intend to do is in the minute entry I

will set a final pretrial conference to go over any other

housekeeping matters that need to be addressed.  And I will

also have that time so that we undertake the process of

reviewing those new jury questionnaires.  I'll set that for the

morning, because I don't want to put it beyond the 5:00 o'clock

hour as we did previously.  And I will -- I'll calendar that

when I get back to chambers after hearing.

Now, what I do intend to do, Mr. Rapp, is order that

the government produce its revised witness list no later than

next Wednesday --

MR. RAPP:  Okay.

THE COURT:  -- and provide it to defense counsel so

that they can at least review that and prepare accordingly.

Is there anything further from the government?

MR. STONE:  Your Honor, one point, if I may, on the

jury instructions?

THE COURT:  Yes.

MR. STONE:  We raised this, but I just wanted to make

sure it was clear.  And it deals with the second element for

conspiracy.  The instructions that the Court filed that's

1    Docket 1656, the draft joint statement, has some

2    inconsistencies.  I just want to make sure that we point that

3    out.

4            THE COURT:  I think you pointed it out in your final.

5    Is that --

6            MR. STONE:  It is, but I wasn't -- I wasn't as clear

7    as I wish I'd been.  And that's the -- the term illegal before

8    the -- the word objects in the conspiracy instruction.

9            For example, on page 9, the Court -- this is, again,

10   at Document 1656.  The Court does not have the term illegal

11   before -- in the second element of conspiracy, and we think

12   that's correct.  That's how the model instruction reads.  And

13   that's based on case law, which states that a conspiracy is

14   defined as a combination of two or more persons to accomplish

15   some unlawful purpose or some lawful purpose by unlawful means.

16           So the object doesn't need to be illegal.  But in --

17   on page 29, which is the actual instruction for conspiracy,

18   that word illegal does appear before objects in the second

19   element.

20           So I just wanted to make that clear, Your Honor.

21           THE COURT:  Anything further from the government?

22           MR. PANCHAPAKESAN:  Your Honor, I can respond to that.

23           Sorry.  This is Gopi Panchapakesan, and I can respond

24   to Mr. Stone on that issue, if the Court would like to --

25           THE COURT:  Yes.  Do you have a response?

1          MR. PANCHAPAKESAN:  Sure.

2          On -- it was a general matter on the jury

3  instructions.  We're prepared to discuss them but understand

4  that, you know, that'll take place of the course of the trial.

5          On the conspiracy issue that Mr. Stone flags, the

6  reason we included that language is because the object in the

7  superseding indictment is defined as to obtain money, which in

8  and of itself is not illegal.  In the Ninth Circuit, our

9  understanding is that the object of the conspiracy itself has

10  to constitute a federal offense.  The case I'm looking at is --

11  is *U.S. vs. Manarite*, 44 F.3d 1407 at page 14, 14, note 7.  The

12  Court says, quote:  A single charge of conspiracy can have

13  multiple objects but each object alleged must constitute a

14  federal offense.

15          So the concern is that the jury thinks that making

16  money or obtaining money is -- is a sufficient object, which

17  it's not.

18          THE COURT:  All right.  Anyone else want to be heard?

19          MR. CAMBRIA:  Your Honor, I would ask that -- you

20  indicated that you were going to send us a revised schedule

21  with a final pretrial date.  I would ask that on September 8th

22  that you maintain the half day.  As you know, I had made an

23  application to be able to attend my daughter's wedding.  With

24  the half day, I can still accomplish that and be back here --

25          THE COURT:  I'm -- Mr. Cambria, just to be clear, the

1    only modification to the trial schedule is that which we

2    discussed, the start date of the 29th and the extension through

3    November 9th.  And so on -- everything else is the same.

4              MR. CAMBRIA:  Oh, fantastic.

5              THE COURT:  So, yes.

6              MR. CAMBRIA:  Thank you.

7              THE COURT:  Anyone else?

8              All right.  As I mentioned, I will follow up with the

9    minute entry and with additional dates, and we will send to you

10   the Court's revised supplement or -- supplemental voir dire

11   that will go to the venire that will be showing up on the 8th.

12   And I've looked at the two submissions and I've modified that,

13   and I -- I think the course is probably the best way to go with

14   regard to the supplement to ensure that those who don't have

15   knowledge of these recent events are tainted.  And that was my

16   goal, and so I think the revised supplemental takes care of

17   that.

18             (The Court and the courtroom deputy confer.)

19             THE COURT:  All right.  And so, as I mentioned, the

20   other matters are under advisement, and I will consider them

21   and rule on them as soon as I can.

22             Is there anything further from the government?

23             MR. RAPP:  No, Your Honor.  Thank you.

24             THE COURT:  Before I leave, let me just say that if

25   there could be a designated counsel who if you become aware of

1    a service that might occur that will interfere with any of the

2    proposed days that you let me know right away, because I think

3    that -- of course I would vacate any hearing if it conflicts

4    with -- if that may occur within that time period.

5         Anything further from defense counsel?

6         MR. PANCHAPAKESAN:  Your Honor, the only thing I

7    wanted to flag -- this is Mr. Panchapakensan -- is the defense

8    did file an objection to the statement of the case on

9    Wednesday.

10        THE COURT:  And I looked at that as well.

11        MR. PANCHAPAKESAN:  Thank you.

12        THE COURT:  Thank you.

13        There being nothing further, then we are adjourned.

14   Thank you.

15         (Proceedings conclude at 2:36 p.m.)

16                    ---oOo---

17

18

19

20

21

22

23

24

25

1

2

3

4

5              **C E R T I F I C A T E**

6

7          I, CATHY J. TAYLOR, do hereby certify that I am duly

8     appointed and qualified to act as Official Court Reporter for

9     the United States District Court for the District of Arizona.

10         I FURTHER CERTIFY that the foregoing pages constitute

11    a full, true, and accurate transcript of all of that portion of

12    the proceedings contained herein, had in the above-entitled

13    cause on the date specified therein, and that said transcript

14    was prepared under my direction and control.

15         DATED at Phoenix, Arizona, this 9th day of August,

16    2023.

17

18

19                          */s/Cathy J. Taylor*

20                          Cathy J. Taylor, RMR, CRR, CRC

21

22

23

24

25