Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin McCampbell Paris (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                              Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>                              Defendants. | NO. CR-18-00422-PHX-DJH<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR A CURATIVE INSTRUCTION (Dkt. 1763)** |

Defendant Michael Lacey, by and through his undersigned counsel, submits the instant opposition to the government's Motion for Curative Instructions ("Motion," Dkt. 1738). The government's Motion should be denied. None of the government's claims about defense counsel's opening statements have any merit whatsoever.

**I.   There is no basis to rebuke defense counsel in front of the jury because defense counsel told the jury that *Ferrer* had attorneys.**

Days after the jury heard opening arguments, the government asks this Court to rebuke defense counsel in the jury's presence because the government now takes issue with the following statements: (1) Ferrer had "a bunch of lawyers to advise" him (8.31.23 Tr. at 182; (2) "Ferrer had a whole cast of attorneys advising him." (*Id.* at 192); and (3) Michael Lacey's attorney for personal matters had his banking relationship terminated even though the attorney and his law firm did no work for Backpage (*id.* at 192). The government's request should be denied for several reasons.

First, the government has waived its argument with respect to statements (1) and (3). The government had the opportunity to object to these statements and, instead, did nothing. (8.31.23 Tr. at 182, 192.) The government's failure to object is a waiver of the request for the highly prejudicial remedy it now seeks, nearly a week after the jury heard opening statements. *See United States v. Felix*, 561 F.3d 1036, 1041 (9th Cir. 2009) (concluding that the government "waived its waiver argument" because "the sentencing judge on two occasions told [the defendant] that he could appeal his sentence and the government failed to object"). However, even with respect to the one contemporaneous objection the government did make, defense counsel immediately changed topics (8.31.23 Tr. at 192), and did not discuss the existence of attorneys advising Ferrer on Backpage again.

Second, even if the government had objected, there is no merit to their request. The statements at issue – counsel's indication of the existence of lawyers advising Ferrer on Backpage and Lacey on personal matters unrelated to Backpage – are factual matters that the government has said it intends to introduce in the course of presenting its case. These statements in no way can be conflated with the assertion of an advice-of-counsel defense or even the "smuggling" in of such a defense, as the government claims, because there was no discussion whatsoever of advice sought or received. This apples to oranges argument should be rejected.

Third, the government opened the door for the statements concerning the existence of attorneys advising Ferrer on Backpage. The government told the jury that: "These

2

defendants also received letters from the National Association of Attorneys General ["NAAG"]. They received a number of those letters. And one of their responses was, look at our moderation program. Look at how we're reducing prostitution on our website." (8.31.23 Tr. at 169.) The response letters from Backpage to NAAG were, of course, written by attorneys. The particular letter the prosecution mentioned in their opening was authored by attorney Samuel Fifer, of the international law firm Dentons (then SNR Denton). In fact, the government intends to introduce at least four letters from NAAG to counsel for Backpage, and at least two letters from counsel from Backpage to NAAG. (*See* Exhs. 119, 486, 487, 681, 1906/1906a.) Additionally, the government seeks to introduce scores of documents, if not hundreds of documents, sent to or from numerous attorneys for Backpage, even if not specifically identified as such in the government's exhibit list. At a minimum, even a cursory review of the government's exhibit list reveals dozens of exhibits involving various Backpage attorneys. The two comments about Ferrer's lawyers to which the government now objects are nothing more than accurate statements about what the government's evidence will show.

The same is true with respect to the existence of an attorney-client relationship between Lacey and his attorney for personal matters, John Becker. The government referred to a portion of Exhibit 1 in its opening (8.31.23 Tr. at 172-73), which is an email exchange between Lacey and Becker. Further, the government put the issue of the closure of bank accounts squarely in front of the jury—implying that account closures are notice of illegal activity. (*Id.* at 171-73.) Defense counsel's statement that banks terminate accounts for reasons other than illegal activity, as happened to Becker, whose law firm was merely associated with a non-Backpage, personal transaction, is something that will be established at trial and is in response to the government's claims about banking.

Thus, the government is asking this Court to rebuke defense counsel for stating what the government's own proof will show.

/
/
/

**II.    There is no basis to rebuke defense counsel in front of the jury for telling the jury that a website cannot be held responsible for the bad acts of people who have misused their website "unless it was clear on the face of the ad that it was definitely a crime."**

There is no basis to rebuke defense counsel in front of the jury for this statement. First, as discussed above, the government had the opportunity to object to this statement and, instead, did nothing. (8.31.23 Tr. at 180.) As a result, the government has waived the ability to seek this far more prejudicial remedy. *See Felix*, 561 F.3d at 1041.

Second, with respect to the facially lawful/unlawful distinction, the government's own law enforcement witness, Special Agent Brian Fichtner, will testify that (i) it generally is not possible to tell from the face of an ad whether the person posting the ad is engaging in lawful or unlawful conduct, (ii) it is not possible to make an arrest for prostitution based solely on the information contained in an ad, and (iii) he knows of no law enforcement officer who ever made such an arrest because ads that propose facially lawful transactions, or propose transactions that could be completed lawfully, do not provide a basis to make an arrest for prostitution. (Doc. 1335, 9.10.21 P.M. Trial Tr. at 116-118 (indicating that an ad for a dominatrix is not an illegal ad and that the only way law enforcement would know if the person who posted the ad intended to engage in illegal conduct would be if law enforcement contacted the person who posted the ad and he/she offered to and then engaged in an exchange of sex acts for money); Doc. 1345, 9.13.21 A.M. Trial Tr. at 56-61 (indicating, among other things, that an ad for a stripper, an ad for an adult woman displaying a sex toy and her desire to put on a show while using the sex toy on herself, and an ad for an escort wherein she offers to go to someone's house and do various non-sex acts naked, such as cleaning the home, or providing a massage that does not involve touching genitals, are not ads for illegal transactions or ads for prostitution).

Third, the statement at issue is counsel's theory that the proof will show that the website operated in compliance with the law and/or that the Defendants had a good faith basis to believe that the website was operating lawfully.

Finally, the government opened the door to statements such as this one when it repeatedly told the jury that every ad on the website for an escort was an ad for a prostitute

4

(*see, e.g.*, Tr. at 147, 150), knowing full well that the government has no ability to prove that every escort ad was a prostitution ad, and that the government's own witness, Special Agent Fichtner, previously testified that it was not possible to know that based on the content of ads.

**II.  There is no basis to rebuke defense counsel in front of the jury for telling the jury that the government shut down the website without a conviction or ruling from a judge**.

There is no basis to rebuke defense counsel in front of the jury for telling the jury that the government shut down the website without a finding of guilt by a judge or jury. First, the government had the opportunity to object and did nothing (8.31.23 Tr. at 183), thereby waiving the ability to seek this far more prejudicial remedy. *See Felix*, 561 F.3d at 1041.

Second, the government opened the door to this statement in its opening. In particular, government counsel told the jury that Backpage "was shut down by the federal government in April of 2018." (Tr. 148.) The government did not give the jury any caveats and the jury easily could have believed that another jury had already convicted Backpage. Counsel's statement is factually correct – no judge or jury convicted Backpage – and was necessary to negate the suggestion that a judge or jury had. Indeed, the government's statement, left unaddressed, could have infected the entire trial with jurors wondering, what is the point of this trial if the website already was found guilty?

## CONCLUSION

For all these reasons, Lacey respectfully request that this Court decline to rebuke defense counsel in the presence of the jury, or to provide any curative instruction. This Court has already informed the jury that openings are not evidence, and that the Court will explain the law in the case to the jury, principles that defense counsel, too, reaffirmed in the opening.

/

/

/

/

/

5

RESPECTFULLY SUBMITTED this 11th day of September, 2023,

                Paul J. Cambria, Jr.
                Erin McCampbell Paris
                LIPSITZ GREEN SCIME CAMBRIA LLP

                By:    /s/ Paul J. Cambria, Jr.
                          Paul J. Cambria, Jr.
                          Attorneys for Michael Lacey

On September 11, 2023, a PDF version of this document was
filed with Clerk of the Court using the CM/ECF System
for filing and for Transmittal of a Notice of Electronic
Filing to the to the CM/ECF registrants who have
entered their appearance as counsel of record