EXHIBIT A

| **Ferrer Testimony** | **"Opens Door" to:** |
|---|---|
| Q. And were you involved in responding in any way to the subpoena request?<br>A. Yes, I was. I even had to testify at times as a custodian of records.<br>Q. Okay. So can you explain to the jury what a subpoena is?<br>A. A subpoena is a request from law enforcement to provide records on a particular posting or user.<br>Q. All right. And as time went on between 2004 and 2018, did subpoena requests increase or decrease?<br>A. Subpoena requests continually increased. We ended up having a total of 20,000 subpoenas involving prostitution investigations in that time frame.<br><br>[09/13/23 AM Tr. at 63:4-15]<br><br>Q. Did you -- when you were asked to testify in these cases, did you ever disclose to anybody these marketing strategies that you've testified to the last couple of days, the aggregation, the super poster and the relationship with The Erotic Review?<br>A. I did not disclose that, nor was I asked.<br><br>[09/13/23 AM Tr. at 65:10-15]<br><br>Q. All right. So when you -- just so the jury is clear, when you receive these subpoenas, did you have any choice not to comply? | - All responses from law enforcement concerning Backpage's assistance.<br>- The testimony Mr. Ferrer provided in the cases in which he was called to admit records from Backpage.<br>- All responses from law enforcement that show that Backpage not only provided the requested information but also provided information outside the scope of the subpoena. |

3891321.1                                                                1

| Ferrer Testimony | "Opens Door" to: |
|---|---|
| A. There was no realistic choice. I mean, you could you try to quash it and go to court. We just did not do that. We just had to comply, and we complied.<br><br>[9/13/23 AM at 68:14-19] | |
| Q. And then what does Mr. Lacey say in response to these e-mails?<br>A. "We do how many million ads and he picks out one, tells us at the end of the day and wants our total response by a.m.? Of course there are kids who get through system. As there are in bars. This makes pursuit of solution, ie USC study, more critical rather than scoring political points."<br>Q. This reference to, "As there are in bars," what did you take that to mean from Mr. Lacey?<br>A. In bars you would have an I.D. to get into the bar to drink alcohol.<br><br>[9/19/23 PM Tr. at 44:8-18]<br><br><br>Q. Why didn't you implement **age verification**?<br>A. Well, we did the slow dance with [Seattle] Mayor McGinn to add age verification and it was kind of clunky and it was decided later by -- by the owners to no longer pursue the **age verification**.<br><br>[9/19/23 AM Tr. at 77:22-25] (emphasis added). | • Following the discussions with Seattle Mayor McGinn and the Washington Attorney General's Office, Washington passed a statute (SB 6251) criminalizing the dissemination of content that included "depiction of a minor" and any "explicit or implicit offer" of sex. *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1268 (W.D. Wash. 2012). A defense to the statute was "that a defendant obtained and retained government or school identification for the person depicted," *i.e.*, age verification. *Id*. at 1268. The statute was set to go into effect on June 7, 2012. *Id*. at 1269.<br><br>• Backpage then sued McKenna. The Western District of Washington enjoined the enforcement of the statute as violative of the First Amendment, as well as the CDA. *Id*. at 1275.<br><br>• Specifically, with respect to Mr. Ferrer's testimony regarding the purported reasons Backpage did not implement age verification in response to the state of Washington's efforts, the Western District of Washington held: "At first blush, requiring publishers to check identification before publishing an escort ad seems as commonsensical as requiring bar owners to check identification before allowing patrons to enter the door. There is, however, a key difference between these two scenarios. The latter is an identification requirement related to conduct—drinking alcohol in a bar. The former is an identification requirement—imposed by the |

| **Ferrer Testimony** | **"Opens Door" to:** |
|---|---|
| Q. All right. Was there -- do you know if there was any effort in Seattle by either the mayor or law enforcement that was asking for **age verification** by backpage.com? <br> MS. BERTRAND: Objection, leading. <br> THE COURT: Well, he can say "yes" or "no" if he knows. <br> BY MR. RAPP:  Q. Do you know? <br> 17 A. Yes, I know. <br> 18 Q. Okay. And was there some effort? <br> 19 A. Yes, Mayor McGinn. <br><br> [9/14/23 PM Tr. at 94:9-19] (emphasis added). <br><br> Q. And the **Mayors surrounding Seattle**, what do they tell Mr. Larkin in this letter that was ultimately forwarded to Mr. Lacey? Can you read it? <br> A. "We the undersigned mayors of the cities in **Washington State**, write to urge you to take steps to prevent the use of Backpage.com for underage sex trafficking **by requiring in-person verification** of any prospective escort advertiser's ID, as well as proof of identity and age for anyone pictured in an escort ad. There is an urgent need to act quickly, as our cities have continued to find advertisements on your site that reflect underage sex trafficking in recent weeks . . . . Backpage.com does not employ adequate safeguards to prevent underage sex trafficking. To place an ad on Backpage.com, all one has to do is check a box saying that the person featured in the ad is over 18. Other | government and punishable by imprisonment—related to speech. Since there is no constitutional right to drink alcohol, courts tasked with upholding the Constitution care little if a bar's identification verification process results in a line forming outside the door, or causes some restaurants to stop serving liquor.  However, because there is a constitutional right to free speech, the Constitution cannot permit similar collateral consequences in the First Amendment context.  *See United States of America v. United States District Court for the Central District of California*, 858 F.2d 534, 539 (9th Cir.1988) ("[A] speaker may not be put at complete peril in distinguishing between protected and unprotected speech. Otherwise, he could only be certain of avoiding liability by holding his tongue, causing him 'to make only statements which 'steer far wide [ ] of the unlawful zone.'")).  *Id*. at 1277. <br><br> • The Court also held that "it unlikely that Defendants would be able to prove that *all* online advertisements for escort services are ads for prostitution. ***Thus, a website that contains a section for postings for escort services that chooses to either shut down that section or require age verification will likely chill protected speech in the course of doing so***." *Id.* at 1282 (emphasis added). |

| Ferrer Testimony | "Opens Door" to: |
|---|---|
| advertising services require a photo ID to be brought to an office, in person, to verify age . . . ."<br>Q. Let me just stop you there. **Was there at any point in the history of Backpage from 2004 to 2018 that you required in-person proof of who you were and what age you were**?<br>MS. BERTRAND: Objection. Argumentative. Leading.<br>THE COURT: Overruled.<br>THE WITNESS: No.<br>BY MR. RAPP:<br>Q. All right. And if you would go on starting with "We believe."<br>A. "We believe this practice is substantially more effective at rooting out under[age] sex tracking. In the last 18 months the City of Seattle has not found any evidence of underage sex trafficking on sites requiring photo ID. Since the beginning of 2010, 22 children advertised on Backpage.com were recovered by the Seattle Police Department. The Tacoma Police Department reports that they are currently working on 16 cases of juvenile prostitution involving 14 persons who had Backpage.com ads. "**We urge to you take quick action and help us address underage sex trafficking by requiring photo ID**. Sincerely."<br>Q. Now, did you continue to receive letters from the National Association of Attorney Generals?<br>A. Yes.<br><br>[09/19/23 AM Tr. at 80:3-81:17] (emphasis added). | |

| **Ferrer Testimony** | **"Opens Door" to:** |
|---|---|
| A. The second bullet point is that AG McKenna has been attacking Backpage in Washington state, and so we just are going to try to attack him, attack him from getting campaign donations from Bing, and then Bing is a search engine that strikes content.<br><br>[09/19/23 PM Tr. at 41:25-42:4] | |
| Q. And in 2012, if you know, were you experiencing any pressure regarding the website?<br>A. Yes, there was another prostitution investigation of the site.<br><br>[09/13/23 AM Tr. at 80:5-7]<br><br><br>Q. All right. And then No. 2, what is -- what is the second agenda item?<br>A. The second agenda item is, "fallback business plan scenarios in 2013 if business interrupted."<br>Q. What did you take that to mean?<br>A. We're under a lot of pressure from different groups and the media. **We're under investigation**, that we're wondering what is our business plan in the event that we have to turn off the adult section.<br><br>[09/20/23 AM Tr. at 47:2-10] (emphasis added). | • Defendants should be permitted to cross-examine Mr. Ferrer regarding what investigation he was referring to and the result of that investigation.<br>• If Defendants are not permitted to do so, then the jury will be left with the misimpression that a "prostitution investigation" in 2012 produced an adverse result for Backpage and the Defendants. |
| References to attorneys, including Samuel Fifer, Steve Suskin, and Edward McNally. | • To the extent there are communications in admitted exhibits involving these attorneys, Defendants should be permitted to question Mr. Ferrer about those communications, as doing so does |

3891321.1

5

| Ferrer Testimony | "Opens Door" to: |
|---|---|
| Q. Okay. Steve Suskin, who is that?<br>A. Steve Suskin is in-house counsel, Village Voice Media.<br><br>[9/15/23 Tr. at 41:4-5]<br><br><br>Q. How is it, sir, that you received this document?<br>A. It was a document that went to Sam Fifer that was eventually sent to us indicating problems that Backpage had that they wanted to address.<br>Q. Okay. When you say us," who are you referring to?<br>A. Myself, Scott Spear, the owners, Jed Brunst.<br>Q. All right. And this letter is -- how many pages is this letter?<br>A. Three pages.<br>Q. All right. And you identify the individual went to -- I believe you said his name was Sam Fifer. Who is Sam Fifer?<br>A. Sam Fifer was a lawyer that Scott Spear engaged.<br><br>[09/13/23 PM Tr. at 76:14-25]<br><br><br>Q. And who are the signatories of this letter?<br>A. These are Attorneys Generals from most of the U.S. states.<br>Q. All right. And who is this letter addressed to?<br>A. It's addressed to Mr. Sam Fifer, counsel for Backpage.com, | not require the waiver of any privilege or assertion of a formal advice of counsel defense. |

| **Ferrer Testimony** | **"Opens Door" to:** |
|---|---|
| LLC.<br><br>[09/19/23 AM Tr. at 81:23-82:2]<br><br>Q. So when we broke, I believe you were testifying that the portion that starts with Dear Councilman Burgess you didn't write?<br>A. Correct. I did not write it.<br>Q. Who do you believe wrote this?<br>A. Edward McNally who was hired by Jim Larkin.<br><br>[09/19/23 AM Tr. at 57:24-58:4]<br><br>*See, e.g.,* Exhs. 52, 804, 902, 938, 1185a (as revised per the Court's order to show Mr. Suskin's statements to CNN). | |
| Government admitted Exhibit 23 through Ferrer. [09/12/23 AM Tr. at 70-71].<br><br>Page 8 of Exhibit 23 states that: "Larkin and Lacey [were] arrested by Arpaio." | • Lacey must have the opportunity to show that this arrest – for his anticipation in protected expression by publishing – was not warranted and, in fact, violated the Constitution, as recognized by the Ninth Circuit in an en banc opinion. This decision then resulted in Maricopa County paying a settlement, which Larkin and Lacey stated that they would donate to, among other things, organizations dedicated to protecting free speech on the internet. |
| Q. Do you know if Craigslist is receiving any pressure?<br>MS. BERTRAND: Seek speculation.<br>THE COURT: Overruled, "yes" or "no."<br>THE WITNESS: Yes.<br>BY MR. RAPP: Q. How do you know that? | • Defendants must have the opportunity to put before the jury everything that they "follow[ed]" about Craigslist including Craigslist's announcement with the National Association of Attorney's General, litigation involving Craigslist, information on |

| **Ferrer Testimony** | **"Opens Door" to:** |
|---|---|
| A. We follow Craigslist and the news closely, and he's under frequent attacks from the Attorneys General.<br><br>[9/13/23 PM Tr. at 71:3-21]<br><br>Q. So starting down here, does this give you any type of notice, this Google alert?<br>A. Yes, it does and. . .<br>Q. What does it tell you?<br>A. It states, So. Carolina eyes 'criminal investigation' of Craigslist<br><br>[09/13/23 PM Tr. at 73:20-25]<br><br>Q. All right. And what changes did you understand Craigslist was making with its adult section?<br>A. Well, he had two sets of changes. One was erotic services cancelled, and then it all moved to adult services; and then later he terminated adult services.<br>Q. All right. And did you -- did it come to your attention that Craigslist -- did Craigslist have a blog?<br>A. Yes, he had a blog.<br>Q. When you keep saying "he," who are you --<br>A. Craigslist, Craig Newmark and Jim Buckmaster often posted in the blog, the Craigslist blog.<br><br>[09/13/23 Tr. PM at 112:8-18] | Craigslist's blog, and Congressional testimony concerning Craigslist. |

| Ferrer Testimony | "Opens Door" to: |
|---|---|
| Q. And was there some type of a testimony that you were – of Mr. Allen that you were made aware of?<br>A. Yes.<br>Q. And does Mr. Spear alert you to that testimony?<br>A. Yes. He gives me a summary of the testimony.<br>Q. Okay.<br>MR. RAPP: Move to admit 925.<br>MR. FEDER: Same.<br>THE COURT: Yes, it may be admitted.<br>(Exhibit 925 admitted into evidence.)<br>THE COURT: And it may be published.<br>BY MR. RAPP:<br>Q. All right. And so what does Mr. Spear tell you in this email below here?<br>A. Scott Spear writes, "Just finished. We got called out once with CL. Lots of history of the CL saga over the last two years. He strayed from script at times."<br>Q. And what does Mr. Larkin say to Mr. Spear in response?<br>A. Jim Larkin writes, "I've got the hearing up. Do we know anything about the underage example Ernie Allen cited from Backpage? Did they ever notify us of this?"<br><br>[9/14/23 AM Tr. at 51:25-52:18] | |
| Ferrer testified today that: (1) he came to learn during the first week of July 2015 that Visa and MasterCard terminated their relationships with Backpage and (2) the credit card companies did so in the face of "pressure put | • The "pressure" Mr. Ferrer testified to was in fact exerted by Sheriff Dart. As contemporaneous emails and Mr. Ferrer's statements to the government (as documented in FBI 302s) will show, Ferrer understood that (1) Dart was exerting pressure on Visa and Mastercard and (2) Backpage sued Dart in response, and ultimately |

| **Ferrer Testimony** | **"Opens Door" to:** |
|---|---|
| on them." He also referred to this as the "credit card apocalypse." | prevailed, which put Ferrer and Defendants on notice that the terminations were due to illegal coercion by a government official. |
| Today, the Government showed Mr. Ferrer the Senate PSI Report and elicited testimony that Ferrer read it, the report was publicly available, as well as testimony regarding Ferrer's reaction to the report. | - The Senate Permanent Subcommittee on Investigations is a quasi-judicial body. As the government was permitted to ask Mr. Ferrer about that committee's investigation of Backpage and its final report/findings of fact (a quasi-judicial opinion), Defendants should be permitted to do the same as to court opinions that Ferrer was aware of and relied on, as those opinions counter the government's "notice" evidence. |