1

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | November 2, 2023 |
| Michael Lacey, et al. | ) | 10:03 a.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TRIAL - DAY 29 - AM SESSION**

**(IN-COURT HEARING)**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Government:
    UNITED STATES ATTORNEY'S OFFICE
    By:  **Mr. Kevin M. Rapp, Esq.**
        **Mr. Peter S. Kozinets, Esq.**
        **Mr. Andrew C. Stone, Esq.**
        **Ms. Margaret Wu Perlmeter, Esq.**
        **Mr. Daniel G. Boyle, Esq.**  (Los Angeles, CA)
    40 North Central Avenue, Suite 1200
    Phoenix, Arizona 85004
    kevin.rapp@usdoj.gov
    peter.kozinets@usdoj.gov
    andrew.stone@usdoj.gov
    margaret.perlmeter@usdoj.gov
    daniel.boyle2@usdoj.gov

For the Government:
    UNITED STATES DEPARTMENT OF JUSTICE
    By:  **Mr. Austin Berry, Esq.**
    1301 New York Avenue, NW, 11th Floor
    Washington, DC 20005
    austin.berry2@usdoj.gov

For the Defendant Michael Lacey:
    LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
    By:  **Mr. Paul J. Cambria, Jr., Esq.**
    42 Delaware Avenue, Suite 120
    Buffalo, NY 14202
    pcambria@lglaw.com

For the Defendant Scott Spear:
    FEDER LAW OFFICE, P.A.
    By:  **Mr. Bruce S. Feder, Esq.**
    2930 East Camelback Road, Suite 160
    Phoenix, AZ 85016
    bf@federlawpa.com
    - and -
    KESSLER LAW OFFICE
    By:  **Mr. Eric Walter Kessler, Esq.**
    6720 N. Scottsdale Road, Suite 210
    Scottsdale, AZ 85253
    eric.kesslerlaw@gmail.com

```
 1   For the Defendant John Brunst:
          BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
 2        LINCENBERG & RHOW, P.C.
          By:  Mr. Gopi K. Panchapakesan, Esq. (Appears by Zoom)
 3             Mr. Gary S. Lincenberg, Esq.
          1875 Century Park E, Suite 2300
 4        Los Angeles, CA 90067
          gpanchapakesan@birdmarella.com
 5        glincenberg@birdmarella.com

 6
     For the Defendant Andrew Padilla:
 7        DAVID EISENBERG, P.L.C.
          By:  Mr. David S. Eisenberg, Esq.
 8        3550 North Central Avenue, Suite 1155
          Phoenix, AZ 85012
 9        david@deisenbergplc.com

10
     Also Present:
11
     John Brunst and Scott Spear appear by telephone
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>**P R O C E E D I N G S**</u>

(Proceedings commence at 10:03 a.m.)

THE COURT:  All right.  Please be seated.  All right.
Before -- before we turn to the forfeiture proceeding, and I
note the -- we don't have Mr. Eisenberg or Ms. Bertrand, and
I'll make inquiry about that in a few minutes.  We don't have
Mr. Spear either or Mr. Brunst, but I understand they are
present by telephone.

I wanted to go back to the motion that Mr., or the
objection, I should say, that Mr. Kessler raised at the end of
the government's rebuttal, and it was in relation to
Mr. Berry's statements about why not call other witnesses.  And
I looked at the transcript, and the particular statement that
Mr. Berry made was, "First of all, why not call a couple of
employees that maybe you didn't throw $5,000 out?  And two, why
not call employees that know something about you and your
company?  He didn't," meaning Mr. Lacey.  I'll take that issue
first, and that was what prompted Mr. Kessler's objection.

In looking at that statement, and I tried to find
other similar statements like that, and I did not find any, but
I'm guided by the Ninth Circuit case, *U.S. vs. Cabrera*, 201
F.3d 1243, and in that case it sets forward that a prosecutor's
comment on a defendant's failure to call a witness does not
shift the burden of proof and is, therefore, permissible, and

10:04:08

10:04:41

10:05:20

10:05:55

10:06:28

UNITED STATES DISTRICT COURT

1   so long as the prosecutor does not violate the defendant's

2   Fifth Amendment right by commenting on the defendant's failure

3   to testify.  So in that regard, I do not find that Mr. Berry

4   crossed the line.

5          There was another statement that Mr. Kessler raised in    10:06:54

6   objection to, and it related to balancing the witnesses, and

7   Mr. Berry did indeed say, "Let's balance the defense witnesses

8   against the prosecution witnesses."  And then he then goes

9   forward to describe Mr. Ferrer, Mr. Hyer, Mr. Adams, and the

10  quality, as he puts it, of their testimony and versus the      10:07:24

11  quality of the defense witnesses' testimony, including the

12  expert.  And so in that regard there wasn't a burden shifting

13  in the Court's view, so I don't find that error occurred there.

14         And so I think I covered the crux of Mr. Kessler's

15  objection.                                                      10:08:00

16         MR. FEDER:  Judge, we just got the transcript, got the

17  transcript last night, and there's --

18         THE COURT:  As did I.

19         MR. FEDER:  -- another issue, which I think Mr. Berry

20  contends, and that is his commentary about the 50 ads that the  10:08:14

21  defendants do not have to basically be proven to have seen the

22  ads or known about the ads, which, I think is afoul on not only

23  on the instructions, but undermine all motions of knowledge,

24  knowledge and therefore intent.  Give me a moment.  Maybe

25  Mr. Kessler can find the page for you to look at, 'cause he was  10:08:38

UNITED STATES DISTRICT COURT

```
1    going in and out about the conspiracy charge, but he seemed to

2    indicate that as to the 50 distinct ads charged, I think that

3    the defendants didn't have to -- what page is this?

4            MR. STONE:  I can short-circuit this, if you want.

5            MR. FEDER:  It starts at page 59, 5-9.  We're trying       10:09:11

6    to look at this on a cell phone, so...

7            MR. STONE:  I would just stipulate that that is what

8    Mr. Berry said, and that has been our position the entire five

9    years of this case is that defendants do not need to have

10   direct knowledge of the 50 ads that are listed in the            10:09:43

11   indictment.

12           And the Court agrees in Doc 793, the order on the

13   Motion to Dismiss, Judge Brnovich went through the allegations

14   in the superseding indictment that never state that these

15   defendants saw or knew about these particular ads.  Rather, it   10:10:01

16   was the policies and the implementation of those policies and

17   the management of the business that led to these 50 ads, these

18   sampling of ads that were chosen to be published.  And Judge

19   Brnovich ruled, as did Your Honor in subsequent orders, that

20   the facts in the superseding indictment, if proven to be true,   10:10:25

21   allege that these defendants violated the Travel Act.

22           Defendants have now for five years continued to posit

23   that their clients needed to have knowledge of these ads,

24   otherwise they could not be found guilty, and that just isn't

25   the law of the case.  This case is not about whether or not      10:10:48
```

these defendants knew of these particular ads.  It's about

everything that we've presented, which is these prostitution

marketing strategies in the first phase of the company, and it

is their maintenance of the website in the second phase, and it

will be up to the jury, based on these jury instructions, which

do not state that these defendants needed to have personal

knowledge of these ads, to determine whether the evidence at

trial proves that these individuals are guilty or not guilty.

And I have more to say, but I don't think I need to,

Your Honor, unless you have questions.

THE COURT:  Well, again, here it's rather unfair for

me to make a ruling before I've seen the actual transcript

language that Mr. Berry used and the objections about them.

Though all defense counsel have had this ongoing agreement that

one objection made is an objection for all, I do not have the

presence of two defendants or two defense lawyers, and so to

the extent that they wish to make a similar or adjacent

objection, I think we should permit them to do so.

But at this juncture, what I will say is the jury has

been instructed on how to apply the evidence and testimony to

the particular ads in question, direct and circumstantial

evidence, and so the jury has been so instructed.

And so beyond that, that's all I'll say because I do

want to see if Mr. Eisenberg, Ms. Bertrand wish to join in or

make an additional argument, and then we'll proceed further.

UNITED STATES DISTRICT COURT

1    Let me turn now to the issue of forfeiture.  I thought

2    frankly this was going to be a cut and dry issue.  I only asked

3    you to brief the question about whether or not you thought the

4    defendants were entitled to a jury determination of the

5    forfeiture allegations, but I want to put a couple of things          10:13:17

6    before you because I don't think this is a cut and dry issue,

7    and I understand Mr. Panchapakesan is taking the bulk of this

8    issue for the defendants.

9    So the superseding indictment alleges a forfeiture

10   allegation, a forfeiture Allegation 1 under 18 U.S.C.                  10:13:37

11   981(a)(1)(C) and 28 U.S.C. 2461(c).  Now, 981 is a civil

12   forfeiture provision, and it essentially refers to any

13   property, real or personal, derived from proceeds traceable to

14   a violation.  Now, 2461(c) basically states that if a person is

15   charged in a criminal case for which the civil or criminal          10:14:24

16   forfeiture of property is authorized, the government may

17   include notice of the forfeiture in the indictment or

18   information pursuant to the Federal Rules of Criminal

19   Procedure.  And if the defendants are convicted of the offense

20   giving rise to the forfeiture, the Court shall order the             10:14:44

21   forfeiture of the property as part of the sentence in the

22   criminal case.

23   There's a distinction, though, in the superseding

24   indictment because Allegation 1 is to Counts 2 through 51, and

25   Allegation 2 only is filed under 981(C), excuse me,                   10:15:06

1    981(a)(1)(C), which is the civil forfeiture proceeding.  And

2    then when you look at the rule on criminal forfeiture, it

3    basically states that as soon as practical after a verdict of

4    finding of guilty on any count in which a forfeiture is sought,

5    the Court must determine what property is subject to              10:15:37

6    forfeiture, and nowhere in the rule does it say that it is a

7    jury determination.

8         It also goes on to say that the Court must determine

9    the nexus between the property and the offense, and the amount

10   of money the defendants must pay.                                 10:15:59

11        Now, here it is true that the government submitted a

12   jury instruction, and I have those instructions on, I believe

13   it was August the 18th.  I have, by the way, never seen an

14   opposing motion by the defendants or a separately filed

15   defendants' list of instructions.  I don't know if silence       10:16:25

16   means you agree with what was proposed by the government, and I

17   will hear that in a moment.

18        So it was only last week toward the end of the week

19   that I was informed by the government that the defendants

20   wished to have the jury determine forfeiture.  As we sit here    10:16:47

21   today there is no special verdict form.  And indeed, the jury

22   instructions that the government has proffered are incomplete.

23   They are not perfected.

24        And I go back to the conflicting law, which really

25   begins in Phillips, and it seems to indicate the treatment, the  10:17:16

1  different treatment of property versus financial assets.  It

2  seems clear to me that the case law at least governs that the

3  property determination of whether or not that's forfeitable is

4  the jury determination, whereas I believe it gives the Court

5  the ability to determine the financial assets.                    10:17:48

6       So I have a couple of questions I want to ask.  Let me

7  start with the government.  So why the two distinctions in the

8  two forfeiture allegations?  And I note, property, substantial

9  property and assets are listed under both, so why the

10  distinction?                                                      10:18:16

11       MR. BOYLE:  Yes, Your Honor.  The distinction is

12  because under the money laundering statute we alleged

13  forfeiture under 982(a)(1) for money laundering property.

14  Under for the Travel Act property, we've alleged forfeiture

15  under 981, and the functional reason for that is it's a broader  10:18:32

16  forfeiture statute, Your Honor, and 981(a)(1)(C) includes any

17  proceeds of a violation of the Travel Act or a conspiracy to

18  commit the same.

19       And as the Court noted, under 2461 where civil

20  forfeiture would be appropriate or permissible, that forfeiture  10:18:52

21  under such a statute can be included in a criminal indictment.

22  I'd also note for the Court, we did file Supplemental Jury

23  Instructions and a Forfeiture Special Verdict Form last night.

24  I apologize for filing them late last night, Your Honor, and I

25  concede --                                                        10:19:11

1          THE COURT:  Let me just say, it's astonishing to me

2     the type of delay that has gone on in this case.  You've had it

3     for, what, since 2018, and you're only now telling me last

4     night you filed these new instructions and the special verdict

5     form?                                                              10:19:40

6          MR. BOYLE:  As the Court noted, Your Honor, we filed

7     instructions some months ago.  Last night we filed updated

8     instructions.  And I concede, Your Honor, we would have to

9     conform them again because we have written them as if all

10    defendants are convicted on all counts, and we simply don't      10:19:55

11    know if any defendants will be convicted, if there will be

12    partial convictions.  They would have to be conformed after any

13    verdict.  What we've attempted to do is provide the best

14    versions we can now, which we can then conform once we know

15    what the jury's verdict look like.  I can concede, they can't    10:20:10

16    be complete until after a verdict comes back, Your Honor.

17         THE COURT:  Did you share those with the defense

18    counsel last night too?

19         MR. BOYLE:  Yes, we did, Your Honor.  Defense counsel

20    has had our earlier version from when we filed it, and we        10:20:22

21    shared the versions that we filed last night with defense

22    counsel, Your Honor.

23         I understand the Court's frustration, Your Honor.  The

24    government --

25         THE COURT:  No, you really don't.  You truly don't.         10:20:45

1           MR. BOYLE:  My apologies, Your Honor.

2           THE COURT:  It's poor practice on all levels.  Notice

3    to the opposing counsel, their clients, to the Court, it's

4    beyond me.  I don't know what causes this, but when you have

5    these types of mistakes, they create extra work for people when          10:21:14

6    we have all of these moving parts.  It's just -- it's beyond

7    me.  I don't -- I frankly am at a loss for words.

8           MR. BOYLE:  Your Honor, I don't know that -- well, the

9    government is not seeking to retain the jury.  We only found

10   out from the defense they were seeking to retain the jury last          10:21:40

11   week --

12          THE COURT:  Let me make my inquiry.

13          MR. BOYLE:  Understood, Your Honor.

14          THE COURT:  Mr. Stone last week indicated that there

15   were two witnesses that the government intended to call in the          10:22:00

16   forfeiture case.  Were those two witnesses on the original

17   witness list that was vetted to this jury?

18          MR. BOYLE:  Yes, Your Honor, and they have already

19   testified once.  That would be Mr. Ferrer and former Agent Quoc

20   Thai.  I expect their testimony would go no more than          10:22:21

21   90 minutes combined, most likely less, and we have --

22          THE COURT:  For the government.

23          MR. BOYLE:  I can't speak to any cross-examination.

24   We have disclosed those two witnesses to the defense.

25          THE COURT:  Well, and here too, I will throw this out          10:22:41

1    to you, the jury was screened not as Ms. Bertrand thought

2    yesterday, but they are only screened for their ability through

3    the 9th, and so what happens when we get toward that date and

4    they maybe have arrived at some sort of verdict, or maybe not,

5    what do we do in that circumstance?                          10:23:10

6         MR. BOYLE:  As to guilt, I would defer to Mr. Stone,

7    but if the question is asked of holding them for forfeiture,

8    the government's position is that the defendants do have a

9    statutory right to retain the jury.  If the jury loses a

10   quorum, there is case law saying the Court could request or   10:23:27

11   empanel a new jury, and we would have to present evidence to

12   that new jury.  That's obviously not our preference and that's

13   why we will attempt to move as expeditiously as possible if the

14   defendants continue to retain the jury.

15        THE COURT:  All right.  Let me hear from                 10:23:46

16   Mr. Panchapakesan.

17        MR. PANCHAPAKESAN:  Good morning, Your Honor,

18   Gopi Panchapakesan for the --

19        THE COURT:  I frankly don't know where to look.  I am

20   looking at -- okay.  Let me make sure that I'm looking at you.  10:23:57

21        MR. PANCHAPAKESAN:  So my understanding, a few points,

22   one is under Rule 32.2(B)(5)(A), the timing on making the

23   election, as I understand it for a jury in connection with a

24   forfeiture, would have to be done prior to jury deliberating as

25   opposed to some earlier point.                                10:24:23

1        THE REPORTER:  Not hearing through my earpiece.

2        THE COURT:  We're trying to accommodate our court

3   reporter.  So standby one second.  Test.  Say "test,"

4   Mr. Panchapakesan.

5        MR. PANCHAPAKESAN:  Testing.                    10:25:16

6        THE REPORTER:  It's still not coming out really clear.

7        COURTROOM DEPUTY:  Can you speak again,

8   Mr. Panchapakesan?

9        MR. PANCHAPAKESAN:  Testing.  Yes.  Thank you.

10       THE COURT:  We're good.                          10:25:54

11       MR. PANCHAPAKESAN:  Okay.  All right.  So Your Honor,

12  I will sort of take the Court's question one by one.  First, in

13  connection with the election of a jury on the forfeiture phase,

14  in my opinion is under Rule 32.2(B)(5)(A), that election is

15  typically made towards right before the jury deliberates.  And  10:26:12

16  so I think it was Mr. Stone or Mr. Berry had asked us, I think

17  this was last week or the week before, and that's when we made

18  the election, the government, the Court, that we intended to

19  proceed by jury as to the forfeiture phase.

20       Second is, you know, as to this issue of jury          10:26:35

21  instruction and verdict form, we spoke to Mr. Boyle about this

22  earlier in the week.  The government indicated that they intend

23  to resubmit a revised instructions and a verdict form, which

24  they did last night.  We asked for a word count, which the

25  government provided to us, so we intend to submit some        10:26:56

UNITED STATES DISTRICT COURT

1    objection and redline the instructions, and we can do that, you

2    know, as soon as the Court wants that to be done.

3            And in terms of the witnesses and exhibits, my

4    understanding is the government has two witnesses.  I think

5    they have an additional sort of tracing exhibits, or the charts          10:27:16

6    that Mr. Thai used during his testimony, but these are a

7    different set, I think, that tie some of the counts the

8    government is seeking to forfeit.  We received that, I think

9    yesterday, and I am not aware of any other exhibits the

10   government intends to use.  That's what we believe and          10:27:35

11   provided.

12           In terms of the jury and them being time qualified,

13   there is a couple of potential options.  I think one is, you

14   know, the Court can make an inquiry as to whether and to what

15   extent any of the jurors have the ability to stay longer.  I          10:27:55

16   think, you know, we need to be cautious about how and when and

17   how we make that inquiry.  I don't know that we -- at least as

18   far as the defense is concerned, we wouldn't want to signal

19   that there is potential forfeiture because I think that might

20   imply guilt, and it may potentially incentivize them to rush          10:28:17

21   deliberations, but I would defer to the Court in terms of

22   how -- if we make an inquiry, how we do so.

23           The other potential option if less than a quorum of

24   the jurors are available, then I think the defense would have

25   to come to a decision as to whether we're willing to stipulate          10:28:35

16

1    to a smaller jury.  I haven't asked my colleagues about that,

2    but that would be another option in terms of keeping the jury.

3            THE COURT:  Have either of you contemplated

4    bifurcating the property from the assets?  Because it seems to

5    me that at least in the first instance the property question is          10:29:03

6    a jury question.  Ultimately my understanding of the law is

7    that this court, assuming that there are properties to be

8    forfeited, has to then make the determination relative to any

9    third-party interests that may arise, but it seems very clear

10   with regard to the statute that the, at least the assets, the          10:29:37

11   financial proceeds, should be a court determination, and it

12   might be a little bit more manageable in terms of the jury's

13   time and their ability to deliberate on what are at least 26

14   listed separate properties.

15           MR. BOYLE:  So we are, and I apologize for the recent          10:30:12

16   filing of our Proposed Special Verdict Form.  We've only

17   identified about 40 items of what we call specific property.

18   That's a combination of, I think, three or maybe five or six

19   real properties, and the rest are financial accounts.  However,

20   our read of Rule 32.2, Your Honor, is that while the Court does          10:30:30

21   have the decision as to a money judgment, the seizure of a

22   specific asset as in the contents of an account would fall

23   within the provision for specific property where the defendant

24   does have a right to request to retain the jury solely to

25   determine that limited question of nexus.          10:30:50

```
 1            Ultimately, the question of forfeiture would be a

 2   question for the Court because as the Court correctly notes,

 3   the Court has to conduct an inquiry to determine if there are

 4   third-party interests, but that initial nexus question would be

 5   a question for the jury, Your Honor, if the defendants so          10:31:05

 6   request.

 7            THE COURT:  So what I hear you saying, and you can

 8   correct me if I'm wrong, rather than the 26 properties and the

 9   268 assets, you only have 40 total.

10            MR. BOYLE:  Correct, Your Honor, and a number of those    10:31:32

11   are related to each other, so they are similar to one asset in

12   terms of the time it would take to present them.

13            THE COURT:  Is that your understanding,

14   Mr. Panchapakesan?

15            MR. PANCHAPAKESAN:  That's my understanding based on,     10:31:43

16   you know, I believe the government submitted a proposed verdict

17   form last night, and so I take it that the assets they are

18   seeking to forfeit, those are the ones that are listed on the

19   verdict form.  You know, the one place where I think I have a

20   slight disagreement, maybe with Mr. Boyle, and this is            10:32:01

21   something we can brief, we just received the verdict form last

22   night, is I think as to financial accounts, for example,

23   because the rules require tracing, for example, 18 U.S.C. 981

24   concerns proceeds derived from a violation of the Travel Act or

25   a conspiracy to violate the Travel Act, is we think the jury     10:32:25
```

```
 1   also ought to determine the extent to which are the amounts
 2   that ought to be forfeited.  Because I think, I think the risk
 3   we run is, look, our view is that this case concerns 50
 4   advertisements.  That's what the prior Court said.  The Court's
 5   jury instructions concerning the conspiracy counts are tied to      10:32:46
 6   Counts 2 through 51, so we run the risk of forfeiting an entire
 7   bank account with several million dollars when let's say there
 8   is only a conviction on the Travel Act count, not traceable,
 9   with minimal.  So I think we want to avoid a situation where by
10   virtue of some jury finding the entire account is forfeited         10:33:10
11   when there is no showing of tracing.
12           I am aware of prior cases where, you know, a verdict
13   form in a situation like this is included not just where
14   there's nexus, but what is the amount to be forfeited.
15           MR. BOYLE:  With respect to the number of assets, Your      10:33:28
16   Honor, I can explain.  The reason we have a much smaller subset
17   here, once the defendants elected to retain the jury, we made a
18   decision, a tactical decision, instead of trying to put all 400
19   of those assets and frankly using too much of the jury's time,
20   a lot of those assets were also in the civil forfeiture case or     10:33:43
21   they have already been surrendered by Backpage in that case.
22   So for all those assets where we can resolve them in the civil
23   case or the ancillary petitions, we've left those assets there.
24   So we've tried to limit it down to a fairly manageable number
25   for the sake of the jury's time, Your Honor.                        10:34:01
```

1          THE COURT:  Well, I have yet -- I have just been

2     handed your filing, so I have yet to look at it.  The

3     defendants are entitled to make their objections known.

4          I frankly think that it is a substantial ask for this

5     Court to have this jury make this determination.  I don't know    10:34:44

6     how many of you pay attention to this jury; I do.  They

7     appeared very overwhelmed by the jury instructions as they are,

8     and so they are taking their obligation seriously.  That's what

9     that tells me.  They have a heavy lift in front of them.  And

10    then to have them deliberate on the matter, try to come to some   10:35:19

11    agreement and then to -- if they end up convicting on one or

12    more counts, to have them then be told, "Well, you have to go

13    back and you have to do more work," is really in many ways

14    unfair.

15         And so I ask you to be prepared for the potential that        10:35:44

16    if we lose this jury, that you be ready to proceed with a Plan

17    B, whether that be calling in a new jury or agreeing, if we can

18    voir dire the existing jury to see whether or not some of them

19    can continue service for this purpose, whether you agree to

20    that.  If there's no agreement to that, then the Plan B is        10:36:13

21    going to be empanelment immediately of a new jury.

22         And what that means is that you're going to have to

23    determine, because of the issues involved in the case and the

24    people that are involved in the case, we're going to have a

25    situation where undoubtedly the public who gets called in for     10:36:33

1    service are going to be aware of the case.

2          MR. BOYLE:  Absolutely, Your Honor.

3          THE COURT:  And so there is all kinds of issues that

4    you to confront in that scenario.

5          MR. BOYLE:  Absolutely, Your Honor.  Very briefly, we          10:36:49

6    fully agree this is a big ask of the jury.  If the defendants

7    do not elect to retain the jury, we are fully prepared to go

8    forward on the papers.  However, at this point we are going to

9    be as expeditious as possible.

10         But to the Court's point about having a Plan B, we          10:37:00

11   absolutely do.  There is case law showing that where a jury

12   hangs on forfeiture, the Court can empanel a new jury.  There

13   is also case law saying that with respect to the Court's

14   concern about voir dire, it is not an issue that a juror in a

15   forfeiture phase is aware of a conviction because in a          10:37:16

16   forfeiture phase the jurors are always going to be aware that

17   the defendant was convicted.

18         So we are prepared for that Plan B, whether that's a

19   new jury or proceeding in some other fashion, and will be ready

20   for that if this jury loses a quorum and cannot continue their          10:37:31

21   service, Your Honor.

22         THE COURT:  Well, I am talking about public awareness

23   of what is out there in the media.  I am not talking about the

24   people coming in and being told that there was a prior

25   conviction.  That's the distinction.          10:37:45

```
 1              MR. BOYLE:  Yes, Your Honor.  And of course, on voir
 2   dire we would have to ensure that they could deliberate fairly
 3   on that question.
 4              THE COURT:  So what I'm going to permit
 5   Mr. Panchapakesan to do is by Monday morning you will have          10:37:58
 6   given me whatever your redline is with regard to whatever the
 7   government has provided.  And you will then meet and confer and
 8   come up with a procedure in the alternative if we lose the
 9   jury, and do what you can to come to some agreement with regard
10   to that.                                                            10:38:29
11              You can provide that to me by Tuesday, close of
12   business.  That second part, I should say.
13              MR. BOYLE:  Absolutely, Your Honor.
14              MR. PANCHAPAKESAN:  Understood, Your Honor.
15              THE COURT:  Is there anything more that any defense      10:38:49
16   counsel wishes to raise?
17              Mr. Cambria?
18              MR. CAMBRIA:  No, Your Honor.
19              THE COURT:  Mr. Feder?
20              MR. CAMBRIA:  No, Your Honor.                            10:38:59
21              MR. FEDER:  No, thanks.
22              THE COURT:  Anything further from you,
23   Mr. Panchapakesan?
24              MR. PANCHAPAKESAN:  No, Your Honor.
25              THE COURT:  All right.  I'll look forward to receiving   10:39:08
```

1    that, and I will look at your submissions.

2            And is there anything further?

3            MR. BOYLE:  Nothing from the government, Your Honor.

4            THE COURT:  I'll ask defense counsel who are present,

5    make an inquiry of Mr. Eisenberg and Ms. Bertrand if they wish          10:39:26

6    to join in on any objection that was raised here relating to

7    the jury charge regarding Travel Act, and if not, have them

8    just prepare to say so on the record on Tuesday.

9            MR. CAMBRIA:  Yes.  I believe everyone here joined in,

10   Your Honor, at this point.                                             10:39:56

11           THE COURT:  All right.  If there's nothing further,

12   then we are adjourned.

13       (Proceedings concluded at 10:40 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

## **C E R T I F I C A T E**

4

5          I, HILDA E. LOPEZ, do hereby certify that I am duly

6  appointed and qualified to act as Official Court Reporter for

7  the United States District Court for the District of Arizona.

8          I FURTHER CERTIFY that the foregoing pages constitute

9  a full, true, and accurate transcript of all of that portion of

10  the proceedings contained herein, had in the above-entitled

11  cause on the date specified therein, and that said transcript

12  was prepared under my direction and control.

13          DATED at Phoenix, Arizona, this 2nd day of November,

14  2023.

15

16

17                                      s/Hilda E. Lopez_____

18                                      HILDA E. LOPEZ, RMR, FCRR

19

20

21

22

23

24

25