# Exhibit A

| Exhibit | Government Characterization of Testimony | Actual Testimony | Commentary |
|---|---|---|---|
| 162 | In Ex. 162, P.R. complained about the removal of an image from one of her ads, and Ferrer testified that she provided him that image as an email attachment.  9/14/23 p.m. Tr. at 84:24-85:11; Exs. 162, 162a. | Q. All right. I'm showing you Exhibit 162 and 162's a two-page. Is this e-mail exchange in 162, is this with the individual by the name of Pamela Robinson?<br>A. Yes.<br>Q. And is this the person that -- based upon these e-mail exchanges and her postings, that you had an opinion that she was engaged in prostitution?<br>A. Yes.<br>***<br>Q. So looking at Page 2 of 162, **what question is Pamela Robinson asking Carl at carl@backpage.com**?<br>A. She's asking, "can i use the promo code to get a discount on my escort ads?"<br>Q. **And what do you respond? What does carl@backpage.com respond?**<br>A. "Yes. It will work in any category. Carl."<br>***<br>Q. All right. Let's look at -- so in this exchange with Pamela Robinson does she -- does she have a complaint about the removal of an image?<br>A. Yes.<br>Q. All right. So looking at -- this is just for the witness' eyes only.  **Does she provide you as an attachment the image that got removed?**<br>**A. Yes, she does.**<br><br>9/14/23 p.m. Tr. at 80:7-14; 80:24-81:5; 84:24-85:7. | The prosecutor asked Ferrer whether Robinson "provide[d] you as an attachment the image," but only after the prosecutor twice questioned Ferrer about Robinson emailing carl@backpage.com (not Ferrer).  In one of the questions, the prosecutor corrected the question, changing "you" to "carl@backpage.com." |
| 163 | Ferrer confirmed that Ex. 163 was an email exchange between himself and P.R.  9/14/23 p.m. Tr. at 86:3-15. | Q. *So 163, is this also an e-mail exchange between you and Pamela Robinson?*<br>*A. Yes, it is*.<br>***<br>Q. All right, and then going to the first page of 163.  What does Pamela Robinson -- *what is she saying to you down here below*?<br>A. Pamela Robinson writes, "Please let me edit my ad to this ad below and I will cancel my complaint with the Better Business Bureau. companionship and massage services are NOT illegal. Nothing sexual is implied here."<br>*Q. And then what does carl@backpage.com tell her?*<br>A. "Ok, please try editing the ad now. Carl." | The prosecutor initially asked Ferrer whether the email exchange was "between you and Pamela Robinson," but then twice asked Ferrer "what does carl@backpage.com tell her" (not what do you tell her). |

## Exhibit A

| | | | |
|---|---|---|---|
| | | ***<br>Q. *And then what does carl@backpage tell her*?<br>A. "Read the posting rules. One hour rates minimum at this time."<br><br>9/14/23 p.m. Tr. at 86:13-15; 87:11-19; 88:10-12. | |
| 164 | He testified that Ex. 164 was a marketing email that he "would write up and then have Scott Spear approve before I sent it out." 9/14/23 p.m. Tr. at 89:19-90:5. | Q. All right. Then let's go to Exhibit 164 for the witness' eyes only. Now, Exhibit 164, *is this also a continuation of an exchange between you and Pam -- or carl@backpage and Pamela Robinson?*<br>A. Yes.<br>***<br>Q. *What is this? Can you tell us what -- what is this in effort -- or what are you saying here to Pamela Robinson?*<br>A. So Pamela Robinson, she received a marketing e-mail from *carl@backpage.com* and it had her last post on 2010 March 27th in the category of biz ops.<br>9 Q. All right. And then -- so why is she receiving this --this -- is this an automatic e-mail that she's receiving or what is this?<br>A. It's – it's an e-mail that's sent to clients who –who's (sic) e-mail address is inactive. There's no active ad and it's sent like bulk e-mail.<br>Q. Okay. And what's the point of the e-mail?<br>A. Well, *we send hundreds of thousands of e-mails*, and the point is to bring inactive clients back to the site to renew their ads or post again.<br>***<br>Q. All right. And then looking at the first page of 164, what does -- what is she saying down here?<br>9 A. Pamela Robinson writes, "I would really appreciate it if you would please take the block off my ad for editing my ad.  I have to change the phone number when the minutes run out of my cell phone each month. I wont post any more objectionable pics, ok? my ad is under the heading of 50 red roses special-dont miss out. and my e-mail address is."<br>Q. *Now, what does carl@backpage.com tell her*?<br>A. "Hi, you should be able to edit now. Please let us know if you are still having trouble."<br>***<br>Q. All right. And then what does -- *what does she ask you about that article in her e-mail to carl@backpage*?<br><br>9/14/23 p.m. Tr. at 88:19-23; 89:4-18; 90:7-17; 93:11-12. | The prosecutor started to ask whether the email was between Ferrer and Robinson, but then corrected himself and asked it was between carl@backpage.com and Robinson.  The prosecutor then asked what Ferrer was saying to Robinson, bur Ferrer said the original email was a marketing email (*i.e.* not from Ferrer), after which the prosecutor asked "what does carl@backpage.com tell her" and what does Robinson ask "in her email to carl@backpage.com." |

## Exhibit A

| 165 | Ex. 165 was another marketing email that Ferrer drafted, sent to Spear for approval, and "remember[ed] sending." 9/14/23 p.m. Tr. at 94:12- 96:23. | Q. This is Page 2. *Is this also an e-mail exchange between you and Pamela Robinson?* <br> A. *It's another marketing e-mail reaching out to Pamela Robinson.* <br> \*\*\* <br> Q. Let's look at the first page of 165. Do you see the e-mail and the date of the e-mail? <br> A. Yes. <br> Q. And is this -- *do you know that this is an e-mail between carl@backpage and Pamela Robinson?* <br> A. Yes, I wrote the e-mail and then had the ad text – the e-mail text approved by Scott Spear before sending out. <br> \*\*\* <br> Q. And is this -- *do you know that this is an e-mail between carl@backpage and Pamela Robinson?* <br> A. Yes, I wrote the e-mail and then had the ad text – the e-mail text approved by Scott Spear before sending out. <br> \*\*\* <br> Q. Mr. Ferrer, do you remember sending this -- this e-mail? <br> A. Yes, I do. <br> Q. How is it that you remember that, sir? <br> A. Because *I wrote the e-mail and I programmed it to be sent out with our e-mail service provider*. <br> Q. Why -- why were you sending this -- this e-mail out? <br> A. Because *I gathered e-mail addresses in the Backpage database that did not have an active ad*. <br> Q. All right. And why were you doing that? Why were you doing that? <br> A. Because *it was one of our marketing initiatives to reach out to users whose ads had expired but they had not renewed, and this was something that we did on a regular basis, once a quarter*. <br> \*\*\* <br> Q. So -- so the jury knows what we're talking about, is the bottom part of this, is this what you were referring to about -- that was sent out as some type of a marketing program? <br> 12 A. Yes. <br> Q. And then up here what does -- do you learn that Pamela Robinson actually received this marketing e-mail? <br> A. Yes. | The prosecutor initially asked "is this an e-mail exchange between you and Pamela Robinson; Ferrer said it was "another marketing email" (*i.e.* not from Ferrer). In follow up questions, the prosecutor twice asked whether the emails were between carl@backpage.com (not Ferrer) and Robinson. |

## Exhibit A

| | | | |
|---|---|---|---|
| | | Q. And *what does she say to you -- at carl@backpage, what does she say to you regarding her postings*?<br><br>9/14/23 p.m. Tr. at 95:1-4; 95:12-18; 96:22-97:10; 99:9-17. | |
| 168 | Ferrer testified that Ex. 168 was an email that he received from P.R.<br>9/14/23 p.m. Tr. at 99:23-100:4. | Q. All right. Now moving to 168. Now, you receive -- is this yet another e-mail that you receive from Pamela Robinson in -- now in 2012?<br>A. Yes.<br><br>9/14/23 p.m. Tr. at 99:23-100:1. | |
| All | But Ferrer never testified that the emails with P.R. that he discussed at trial (Exs. 162-165 and 168) reflected communications with anyone other than himself. | Q. Okay. Your official email at Backpage.com was Carl.Ferrer@backpage.com, correct?<br>A. Correct.<br>Q. And there was another email that Backpage used that was *Carl@backpage.com*. Right?<br>A. *That email was for marketing*.<br>Q. Okay. So that was a different email?<br>A. *It really wasn't my email address*.<br>Q. So if it wasn't your email address, does that mean other people could access that email address?<br>A. They did. They would often bring emails to my attention if they needed some help with, but it was for marketing.<br>Q. And that same email address, other people could respond from, correct?<br>A. Correct.<br>Q. *So if an email is coming from the Carl@backpage.com email, the one that you're referring to as the marketing email, that could have been written by several people, right?*<br>A. *You mean it could have been responded to by several people?*<br>Q. *Correct.*<br>A. Yes.<br><br>10/10/23 Tr. at 104:3-23. | |