**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00422-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Lacey et al., | |
| Defendants. | |

The United States (the "Government") has filed a "Motion for Protective Order Containing Sensitive Victim Information" (Doc. 1948) ("Motion for Protective Order" or "Motion"). Defendant Spear filed a Response (Doc. 1982).[1] Non-party David M. Morgan ("Mr. Morgan") filed an Intervenor's Notice of Joinder to Defendant Spear's Response (Doc. 1985). Upon consideration of the same, the Court will grant the Government's Motion.

**I.    Background and Procedure[2]**

From August 29–November 16, 2023, the parties proceeded to a public jury trial in a case involving allegations relating to Travel Act offenses and multiple money laundering accounts. The Travel Act offenses alleged that Defendants conspired to operate a for-profit

---

[1] At the close of trial, the Court reminded the parties of the Government's Motion for Protective Order Containing Sensitive Victim Information, noting that it had not received any response thereto. So, the Court extended the response filing time. Only Defendant Spear filed a Response.

[2] The Court's docket is replete with the facts of the case so they need not be fully recited here.

1  webpage, Backpage.com, as a marketing platform for advertisers of sex for money in
2  violation of multiple state statutes. During trial, the Government introduced exhibits of
3  screenshotted advertisements that were listed on Backpage.com and allegedly offered sex
4  for money. The exhibits included partially clothed females—the alleged victims—in
5  various provocative poses. Some exhibits pictured the alleged victims while underage. All
6  alleged victims testified at trial as adults and each identified themselves in the exhibits.
7  Each admitted exhibit was published to the jury and the attending public. Upon return of
8  the jury's verdict, all admitted and non-admitted trial exhibits were returned to the
9  Government.

10  The Government filed its Motion for Protective Order after non-party Mr. Morgan,
11  who operates a webpage offering court documents for a fee, sought access to "admitted
12  and non-admitted" trial exhibits. (Docs. 1948 at 2; 1948-3). Mr. Morgan's request was
13  not made in any court filing. Rather, they were made in email communications with the
14  Clerk of the Court. (Docs. 1948-3; 1948-4).

15  **II.   Discussion**

16  The Government's Motion for Protective Order is based on two grounds: (1) to
17  invoke the Court's discretionary and supervisory power over its own record under Federal
18  Rule of Criminal Procedure 16(d) (Doc. 1948 at 7–9); and (2) to protect the victims' rights
19  to privacy and dignity under the Crime Victims' Rights Act, 18 U.S.C. § 3771, and the
20  Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509 ("Child Victims' Act")
21  (Doc. 1948 at 9–13). The Government seeks a Protective Order that would require Defense
22  Counsel to securely maintain and not disseminate the "identifying information" including
23  the victims' names, social security numbers, addresses, telephone numbers, and images of
24  individuals contained in the discovery and exhibits. (Doc. 1948-1). The Government
25  further seeks protection of exhibits not introduced in trial. (*Id.*)

26  Defendant Spear asserts, among other arguments, that the Government's Motion
27  lacks any evidentiary basis, violates the First and Sixth Amendments, is untimely, and is
28  not narrowly tailored to protect any legitimate privacy interest. (Doc. 1982). The Court

disagrees.

**A.     The Court's Discretionary & Supervisory Powers Over its Own Records**

Because the impetus for the Government's Motion was a reporter's inquiry for exhibits, the Court will first address its associated arguments. The press has a constitutional interest in access to the courts and the judicial process described as "a right to gather information." *Richmond Newspapers v. Virginia*, 448 U.S, 555, 576 (1980). But that right is to sit, listen, watch and report. *Id*.

The United States Supreme Court's precedent *Nixon v. Warner Commc'n Inc*. is highly instructive for the Court's purposes. 435 U.S. 589 (1978).[3] In *Nixon*, the Court stated that a common-law right of access to judicial records is not absolute; rather, whether to permit access is best left to the discretion of the trial court considering the relevant facts and circumstances of the particular case. *Id.* at 598–99. The Court further instructed that the First Amendment does not provide members of the press with a right to evidence "about a trial superior to that of the general public." *Id*. at 609. So, *Nixon* disposes of any need to analyze a reporter's request, such as Mr. Morgan's, to access evidence not introduced or admitted during trial. Finally, *Nixon* stated that the release of trial evidence is not required by the Sixth Amendment because the guarantee of a public trial "confers no special benefit on the press" but such guarantee is satisfied by the public and the press' ability to attend the trial and report on what they observed. *Id*. at 610; *see also KPNX Broadcasting Co., v. Superior Court*, 678 P.2d 431, 441 (Ariz. 1984) (en banc); *United States v. Hastings*, 695 F.2d 1278, 1280 (11th Cir. 1983) (holding the press' right of access is a right to attend, not to televise, a criminal trial).

The Court notes that during all unsealed pretrial and trial proceedings, the press, including Mr. Morgan, were present. Indeed, Mr. Morgan was present for what appeared to be the entirety of the trial. The Court was equipped with large video screens adjacent to the public viewing area on which the admitted trial exhibits were published. Mr. Morgan, the public, and all members of the press were able to view each admitted exhibit

---

[3] Of course, the congressional statute at issue in *Nixon* is not relevant here.

simultaneously with the jury. So, the Court is not convinced that this case presents some unique circumstance which would lead it to stray from *Nixon*'s guidance.[4] Based on *Nixon* and its progeny, the Court finds a Protective Order would not violate a First or Sixth Amendment right. Still, it finds further reason to protect the admitted and non-admitted exhibits of victim advertisements on Backpage.com.

### B. The Victims' Rights Act & the Child Victims' and Child Witnesses' Rights Act

As noted, though the exhibits are not within the Court's custody, they remain a part of the Court's judicial record. Thus, there is an ongoing need to ensure that the Court's records are not accessed or distributed for some purely prurient interests, especially when involving minors identifying information.

The Crime Victims' Rights Act provides that a crime victim has "the right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Furthermore, "the court shall ensure that the crime victim is afforded the rights described. *Id.* § 3771(b). The statute provides that either the Government or a crime victim may seek to enforce its proscribed rights. *Id.* § 3771(d). The Court observes that, when viewing the evidence in a light most favorable to the Government, each subject victim, with rare exception, was under the control of a third person who photographed them, housed them, clothed them, advertised them, often transported them, and them paid them part of the proceeds accrued from a sex act. Thus, they are entitled to the protections of the Crime Victims' Rights Act because they meet the definition of crime victim. *Id.* § 3771(b)(2)(D).[5]

Similarly, the Child Victims' Rights Act provides protections for a "child"—that is,

---

[4] Nor is the Court convinced by the First or Sixth Amendment right arguments advanced by Defendant Spear. Indeed, it is difficult to determine whether Defendant Spear has standing to assert the rights of Mr. Morgan or any third party, including the "Wayback Machine," "advertisers" on Backpage.com, or any media outlet. (*See* Doc. 1982 at 7).

[5] The Victims' Rights Act defines the term "crime victim" to mean "the person against whom the State offense is committed or, if that person is killed or incapacitated, that person's family member or other lawful representative." 18 U.S.C. § 3771(b)(2)(D).

- 4 -

"a person who is under the age of 18 [and] who is or is alleged to be a victim of a crime of physical abuse, sexual abuse, or exploitation[.]" *Id*. § 3509(a)(2). The statute further instructs that the Government, members of the jury, and *defense attorneys* "shall keep all documents that disclose the name or any other information concerning a child in a secure place to which no person who does not have reason to know their contents has access." *Id*. § 3509(d)(1). The protections established by the Child Victims' Rights Act apply even after the child becomes an adult. *See United States v. Gardner*, 2016 WL 5404207 at *2 (E.D. Mich. Sept. 28, 2016) (rejecting as disingenuous the argument that "[the victim] '[was] not truly underage' because she was 17 at the time of the alleged offense and will be 18 at time of trial" because the victim was a minor when the alleged sexual misconduct occurred).

These statutes, taken together, indicate a Congressional intent to protect a crime victim, particularly children, from needless invasion of privacy that may impair his or her dignity or further psychological harm to him or her. *See United States v. Graham*, 2015 WL 6161292 at *10  (S.D.N.Y Oct. 20, 2015) (finding a "'legitimate and substantial' interest in protecting the victim and the uncharged victims from 'likely adverse personal, professional and psychological consequences for publicly linking their identities' to their prior prostitution activity warrants protection of their personal identifying information"). In *Graham*, the district court observed that withholding such information would not impair the defendant's right to cross-examination. *Id*. The difference here is that the Government's Motion for Protective Order was filed after the victims testified. So, it begs the question: what purpose is served by permitting a defense counsel or defendant from now reproducing or sharing a victim's personal identifying information? The Court sees none.[6] *See United States v. Paris*, 2007 WL 1484974 at *2 (D. Conn. May 8, 2007).

**III.   Conclusion**

The Government's Motion for Protective Order Containing Sensitive Victim Information is substantially supported. Access to non-admitted and admitted exhibits,

---

[6] This of course would not preclude any defendant from using the exhibits in this case or any other resulting judicial proceeding.

- 5 -

including identifying information, by the press for commercial purposes or a defendant for unspecified reasons does not amount to a protected constitutional right. Furthermore, Congress has indeed sought to protect victims, including minors, from unwarranted invasions of privacy through the Crime Victims' Rights Act and the Child Victims' and Witnesses' Rights Act.

Accordingly, and with good cause appearing,

**IT IS ORDERED** that the United States' Motion for Protective Order Containing Sensitive Victim Information (Doc. 1948) is **GRANTED**.

**IT IS FURTHER ORDERED** as follows:

1. Defense counsel shall securely maintain in their custody any and all "identifying information" including victims' names, social security numbers, addresses, telephone numbers, and images of individuals contained in the discovery and designated exhibits in this matter, namely advertisements that were posted on Backpage, including but not limited to the trial exhibits listed in Attachment A to this Order.

2. Reproduction and dissemination of such "identifying information" and images shall be limited to defense counsel and defense experts, as necessary, for purposes of this matter, with any such reproduced copies being returned to defense counsel at the conclusion of the case.

3. Defendants shall not possess the aforementioned "identifying information" and images outside of defense counsel's presence, and shall not maintain any such images in his or her custody.

4. The "identifying information" and images of the individuals depicted in the ads and exhibits are for use only in this case by counsel and the defendant, and may not be disseminated or used for any other purpose; and

5. All "identifying information" and images of the individuals depicted in the ads and exhibits shall be returned to the United States or destroyed at the conclusion of this case. If defense counsel chooses to destroy rather than return, each counsel shall provide a sworn statement to the United States stating the date on which the documents were destroyed and

the Bates numbers and/or Exhibit numbers of the documents destroyed.

6. This Order shall be presented to any individual to whom, under the terms of this Order, defense counsel discloses images covered by this Order. By accepting the covered images, such persons agree to submit to the jurisdiction of the United States District Court for the District of Arizona for the sole purpose of enforcing the terms of this Order.

Dated this 18th day of January, 2024.

Honorable Diane J. Humetewa
United States District Judge