MITCHELL | STEIN | CAREY | CHAPMAN PC

Lee Stein (AZ Bar No. 012368)
lee@mscclaw.com
Anne Chapman (AZ Bar. No. 025965)
anne@mscclaw.com
Karen Smith (AZ Bar No. 033494)
karen@mscclaw.com
MITCHELL | STEIN | CAREY | CHAPMAN, PC
2600 North Central Avenue, Suite 1000
Phoenix, AZ 85004
Telephone: (602) 358-0290

Eric McCampbell Paris (NY Bar No. 4480166, admitted *pro hac vice*)
eparis@mauricewutscher.com
MAURICE WUTSCHER LLP
50 Fountain Plaza, Suite 1400
Buffalo, NY 14202
Telephone: (716) 261-4703

*Attorneys for Michael Lacey*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Michael Lacey, et al.,<br>Defendants. | 2:18-cr-00422-PHX-DJH<br>**MOTION FOR RECONSIDERATION** |

Defendant Michael Lacey, through undersigned counsel, respectfully requests this Court reconsider its Order denying Mr. Lacey's motion to modify his bail conditions ("Motion") to release the Union Street property from the conditions of bail. (Doc. 2408.) In the Order, this Court ruled that there was no jurisdiction to entertain

the Motion based on statutory and factual issues which the parties had not briefed. Mr. Lacey respectfully requests reconsideration of those rulings because this Court has jurisdiction by statute, *see* 18 U.S.C. § 3143(b), and by the Ninth Circuit's express grant of jurisdiction following its release of Mr. Lacey on bail pending appeal. Further, this Court's finding that it should not release the Union Street property because it could be tied to the issues on appeal in the Ninth Circuit is contradicted by the record in this case. Mr. Lacey respectfully requests that this Court reconsider these findings, and address his Motion on its merits.

**FACTUAL BACKGROUND**

Following Mr. Lacey's arrest on April 6, 2018, he was released on bail. The conditions of release required Mr. Lacey to, among other things, post a $1 million surety bond as well as two secured property bonds, corresponding to property located at XXXX Union Street #700 in San Francisco, California, and Mr. Lacey's primary residence in Paradise Valley, Arizona. (Doc. 65; Doc. 67.)

After a jury trial in 2023, Mr. Lacey was convicted on one count of International Concealment Money Laundering (Count 100) and sentenced to 60 months imprisonment and a $3 million fine. (Doc. 2174.) The jury acquitted Mr. Lacey of one count of International Promotional Money Laundering (Count 63) and did not reach a verdict on the remaining counts with respect to Mr. Lacey. (Doc. 1978; Doc. 2063.) This Court granted Mr. Lacey's Rule 29 Motion in part and acquitted Mr. Lacey as a matter of law of Counts 19–51 (Travel Act violations), Counts 66–68 (International Promotional Money Laundering), and Counts 69–70, 81, 83–84, 86, 88–92 and 94–99 (Transactional Money Laundering). (Doc. 2063, Doc. 2064.)

Mr. Lacey filed a Notice of Appeal (Doc. 2192), and the case is currently pending before the Ninth Circuit Court of Appeals (Case No. 24-5376). Mr. Lacey self-surrendered and was briefly incarcerated. In November 2024, the Ninth Circuit ordered his release on bail pending appeal. (Doc. 2254.) The same security remains in place as secured his pre-trial release. (Doc. 2255; Doc. 2264.) Additionally, he has deposited

$3,000,000 with the District Court's Registry for his fine, which will be held by the Registry pending resolution of the merits of his appeal.

On July 13, 2026, Mr. Lacey filed the Motion seeking to modify his bail by releasing the property bond for the Union Street property in San Francisco. (Doc. 2405.) Mr. Lacey asserted that "including both properties as security, in addition to the $1 million surety bond, is not necessary to reasonably assure his appearance, as required by 18 U.S.C. § 3142(c)(1)(B)." (Doc. 2405 at 3.) He explained that, "[b]ecause the Ninth Circuit has already found that Mr. Lacey satisfied the factors set out in 18 U.S.C. § 3143(b)(1)(A), (B)(i)-(iv) in granting his motion for release pending appeal, this Court must determine the appropriate conditions for release 'in accordance with the provisions of 18 U.S.C. § 3142(c).'" (Doc. 2405 at 3 n.1 (quoting *United States v. Handy*, 761 F.2d 1279, 1284 (9th Cir. 1985)).) The Government opposed Mr. Lacey's Motion. (Doc. 2407.)

The Court denied Mr. Lacey's motion, finding, as a statutory matter, that it "does not have jurisdiction over [his] request." (Doc. 2408 at 2; *see also id.* at 3 ("[H]aving been divested of its jurisdiction to consider the Motion, it will be denied.").) The Court also ruled, as a factual matter, that "the Union Street property . . . is arguably related to the conviction he has appealed," and concluded that "[a]bsent instruction from the Ninth Circuit, the Court will not affect any aspect of the case that may be involved in [Mr. Lacey's] appeal." (*Id.* at 3.)

Mr. Lacey now seeks reconsideration of that Order. The parties did not brief these jurisdictional matters, which do not provide a barrier to relief.

## ARGUMENT

District courts have the "inherent authority" in criminal matters to "reconsider their own orders." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). A motion for reconsideration is appropriate to allow a district court to correct errors of fact or law. *United States v. Villapudua-Perada*, 896 F.2d 1154, 1156 (9th Cir. 1990); *see also United States v. Earle*, 2022 WL 1128937, at *2 (D. Ariz. Apr. 15, 2022),

*aff'd*, 2025 WL 1540947 (9th Cir. May 30, 2025) ("[M]otions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings" and are appropriate if "the Court . . . committed clear error" (internal citations omitted).) Reconsideration is appropriate here because (1) the Court committed legal error in concluding that it did not have a statutory basis for jurisdiction, and (2) committed factual error by relying on a factual assertion that is erroneous and contradicted by the record.

**1. The Court erred in finding, as a matter of law, that it was divested of jurisdiction to consider Mr. Lacey's Motion.**

This Court appears to have overlooked the legal basis for its jurisdiction over the Motion. First, the Ninth Circuit expressly granted this Court jurisdiction over determining Mr. Lacey's conditions of bail pending appeal. (Doc. 2254.) That grant of jurisdiction is consistent with the lead case on bail pending appeal, *Handy*, in which the Ninth Circuit granted bail and remanded to the district court "for imposition of appropriate conditions of release." *Handy*, 761 F.2d at 1284.

Second, the plain text of 18 U.S.C. § 3143(b) vests the "judicial officer," *i.e.*, district court, with the power to grant bail pending appeal in accordance with 18 U.S.C. § 3132(c), which authorizes release on conditions. Rather than preclude jurisdiction, this provision explicitly provides jurisdiction while an appeal is pending.

Third, the Ninth Circuit has recognized that district courts must, on some occasions, address issues like conditions of confinement or bail while an appeal of a conviction is pending. For example, in *Stein v. Wood*, 127 F.3d 1187 (9th Cir. 1997), the Court held that "a district court retains jurisdiction to issue orders regarding the custody . . . [of a defendant] even after an appeal has been taken." *Id*. at 1189. Further, in *United States v. Zherebchevsky*, 849 F.2d 1256 (9th Cir. 1988), the defendant filed a motion in the district court for bail pending appeal ***after*** he filed his notice of appeal challenging his conviction. In resolving an appeal of the denial of bail, the Ninth Circuit explained that any motion to modify conditions of release should "be made in the first instance in

the district court," *id*. at 1256 (quoting Fed. R. App. P. 9(b)), strongly suggesting that district courts retain jurisdiction for such matters while an appeal is pending.

More pointedly, other courts in this Circuit have expressly recognized that "even after a conviction and appeal, a district court retains jurisdiction over the person of the defendant for the limited purposes of reviewing, altering or amending the conditions under which the court released the defendant." *E.g., United States v. Whittemore*, 2014 WL 2548097, at *2 (D. Nev. June 5, 2014) (quotations omitted). That same view is shared by at least three other Courts of Appeal. The Sixth Circuit, quoting from an opinion from the Seventh Circuit, expressly held that:

> The filing of a notice of appeal, although transferring jurisdiction over the case from the district court to the Court of Appeals, does not render the district judge powerless or without jurisdiction to enforce the conditions of a bond under which defendant has been released pending appeal. **The court retains jurisdiction over the person of the defendant at least for the limited purposes of reviewing, altering or amending the conditions under which that court released the defendant** . . . . In view of the fact that, during the pendency of an appeal, facts may come to light which render it advisable for the district court to alter the conditions upon which the defendant has been released . . . the same statute which explicitly empowers the district court to impose conditions upon release pending appeal, implicitly empowers the district court to make such adjustments in those conditions as circumstances may necessitate.

*United States v. Kryzske*, 857 F.2d 1089, 1091 (6th Cir. 1988) (quoting *United States v. Black*, 543 F.2d 35, 37 (7th Cir. 1976)) (emphasis added); *accord United States v. Catino*, 562 F.2d 1, 4 (2d Cir. 1977).

Consequently, this Court has jurisdiction to entertain motions to modify Mr. Lacey's conditions of bail because: (1) the Ninth Circuit expressly said so in its remand to this Court; (2) the plain text of 18 U.S.C. § 3143(b) authorizes district courts to make determinations on bail pending appeal, including by means of conditions of release under 18 U.S.C. § 3142(c); and (3) courts in this Circuit and elsewhere have ruled that district courts maintain jurisdiction for such matters.

**2. The record contradicts the Court's ruling that it could not release the Union Street property bond because that property was "related to the conviction that [Mr. Lacey] has appealed."**

The record contradicts the Court's finding that the Union Street property is "arguably related to the conviction [Mr. Lacey] has appealed." (Doc. 2408 at 3.) In the related forfeiture action pending in the United States District Court for the Central District of California, the Government agreed that:

> The government shall not seek forfeiture of the following property (or the proceeds from the sale of any of the following property) identified and alleged to be subject to forfeiture in United States v. Lacey, et al., D. Az. Case No. 18-cr-422-DJH (the "Criminal Action"): . . .
>
> b. Real property located at XXXX Union Street, Unit 700[.]

(**Ex. 1**, attached (Partial Consent Judgment in CDCA Case No. 2:18-cv-08420 (Doc. 320) at 11.) Because the Government already agreed that it will not seek to forfeit the Union Street property, there is no concern that it is somehow related to Mr. Lacey's appeal; due to the settlement the Government entered into in the forfeiture action, the property is not subject to forfeiture now or in the future.

In its response to the Motion, the Government incorrectly stated that Mr. Lacey did not avail himself of the opportunity to sell the property in 2019. (Doc. 2407 at 2, 3.) Pursuant to the terms of the interlocutory sale agreement, only **the government** could market and sell the property, not Mr. Lacey. (**Ex. 2**, attached **(**Order for Interlocutory Sale, ¶ 7.0).) Suggesting that Mr. Lacey had control over the sale of the property in 2019 is false. Moreover, the Government's representations to the Court regarding "economic danger" and forfeiture are false. (Doc. 2407 at 2-3) As noted above, the property was returned to Mr. Lacey pursuant to a settlement agreement and is not forfeitable now or in the future.

Thus, the only question is whether including that property as security—in addition to the other collateral—is necessary to ensure Mr. Lacey's appearance. For the reasons explained in Mr. Lacey's motion (Doc. 2405), it is not.

For all these reasons, Mr. Lacey respectfully requests that this Court reconsider its ruling on jurisdiction. This Court has jurisdiction for the reasons stated above, and a ruling releasing the Union Street property from the conditions of bail will have no impact on Mr. Lacey's appeal (or retrial).

RESPECTFULLY SUBMITTED on September 15, 2026.

MITCHELL | STEIN | CAREY | CHAPMAN, PC

By: *\/s/ Lee Stein*

Lee Stein
Anne Champan
Karen Smith

MAURICE WUTSCHER LLP

Erin McCampbell Paris

*Attorneys for Michael Lacey*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2026, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and copy of the transmittal to the following ECF registrant:

TIMOTHY COURCHAINE
United States Attorney
District of Arizona
KEVIN M. RAPP
JOSEPH BOZDECH
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Attorneys for Plaintiff

*/s/ G. Armstrong*

**Exhibit 1 - Partial Consent Judgment in CDCA Case No. 2:18-cv-08420**

NO JS6

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>V.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, ET AL.,<br><br>DEFENDANTS.<br><br>MARGARET LARKIN, AS REPRESENTATIVE OF THE ESTATE OF JAMES LARKIN, ET AL,<br><br>CLAIMANTS. | No. CV 18-08420-RGK<br><br>**[~~PROPOSED~~]**<br>**PARTIAL CONSENT JUDGMENT – NOT CASE DISPOSITIVE**<br><br>[319] |

Plaintiff United States of America (the "government") and claimants the Estate of James Larkin (the "Estate"), Margaret Larkin, ("M. Larkin"), Kathleen D. Larkin ("K. Larkin"), John C. Larkin ("J. Larkin"), Quinn M. Larkin ("Q. Larkin"), Rose L. Larkin ("R. Larkin"), Anne Hawkins ("A. Hawkins"), Scott Spear ("Spear"), John Brunst ("Brunst"), Mary Ann Brunst ("M. Brunst"), the Brunst Family Trust (the "Brunst Family Trust"), Michael Lacey ("Lacey"), Finca Manzana for Sebastopol, LLC ("Finca Manzana"), Creek Hideaway, LLC ("Creek Hideaway"), Casa Bahia for San Francisco, LLC ("Casa Bahia"), Roarke Lacey ("R. Lacey"), Colin Lacey ("C. Lacey"), Medalist Holdings, Inc. ("Medalist"), Leeward Holdings, LLC ("Leeward"); Camarillo Holdings, LLC ("Camarillo"); Vermillion Holdings, LLC ("Vermillion"); Cereus Properties, LLC ("Cereus"); Shearwater Investments, LLC ("Shearwater"); Broadway Capital, LLC ("Broadway"), Alyson Talley ("Talley"), Jill Anderson ("Anderson"), either *pro se* or by and through their counsel of record (collectively, "Claimants,"), as well as non-parties Joye Vaught ("Vaught") and Andrew Padilla ("Padilla") (each, individually, a "Party" and collectively with the government, the "Parties"), have stipulated and requested that the Court enter this partial Consent Judgment to carry into effect the terms of the stipulation among the Parties elating to all defendants in this action (the "Defendant Assets"), with the exception of defendant $16,500,000.00 in Bank Funds Seized from K&H Bank Account '1210 (the "Excluded Assets"), and thus this partial Consent Judgment is not dispositive of this action.

The Court, having considered the stipulation of the Parties, and good cause appearing therefor, HEREBY ORDERS, ADJUDGES AND DECREES:

1. The government has given and published notice of this action as required by law, including Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and the Local Rules of this Court. The government has received timely claims from Claimants, no other claims or answers have been filed or remain pending, and the time for filing claims and answers has expired. This Court has jurisdiction over the Parties and the Defendant Assets. The government has agreed to the return or dismiss certain of the Defendant Assets. Any potential claimants to the Defendant Assets other than Claimants are deemed to have admitted the allegations of the complaint. Except as to other assets expressly addressed herein, this Consent Judgment does not operate as a release of claims, actions, or rights with respect to the seizure or retention of any funds or assets other than the Defendant Assets, nor should this Consent Judgment be admitted in any other proceeding against Claimants to prove any of the facts relied upon to establish reasonable cause for the seizure of the Defendant Assets. Nothing in this Consent Judgment is intended or should be interpreted as an admission of wrongdoing by Claimants.

2. The government shall return the following Defendant Assets to the Parties identified below (the "Returned Estate Assets"):

| **Asset** | **To Be Returned to:** |
|---|---|
| $1,001,731.18 In Bank Funds Seized from Republic Bank of Arizona Account 2592 held in the name of Larkin | Estate of J. Larkin |
| $1,546,076.35 In Bank Funds Seized from Republic Bank of Arizona | Estate of J. Larkin |

| | |
|---|---|
| Account 1889 held in the name of Larkin | |
| $1,412,085.94 in Bank Funds Seized from USAA Savings Account 2155 held in the name of Anne Hawkins | A. Hawkins as Trustee |
| $1,422,147.37 in Bank Funds Seized from USAA Savings Account 1507 held in the name of Anne Hawkins | A. Hawkins as Trustee |
| $1,453,008.51 in Bank Funds Seized from USAA Savings Account 2171 held in the name of Anne Hawkins | A. Hawkins as Trustee |
| $1,502,927.74 in Bank Funds Seized from USAA Savings Account '2058 held in the name of Anne Hawkins | A. Hawkins as Trustee |

3. The government shall return an imputed amount of interest that such currency, instruments, or proceeds identified in paragraph 2 would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid on the returned property, pursuant to 28 U.S.C. 2465(b)(1)(C)(ii).

4. The following assets are hereby dismissed from this action, and all interest earned on any of such dismissed assets shall remain with the principal:

| **Asset** |
|---|
| $9,882,828.72 in Securities and Investment Funds Seized from Perkins Coie Trust Company '0012 held in the name of M. Larkin |
| Real Property Located in Chicago, Illinois titled in the name of John C. Larkin, M. Larkin and Larkin, APN 20-14-201-079-1054 |
| Real Property Located in Paradise Valley, AZ 1 titled in the name of Larkin, APN 173-11-006C |
| Real Property Located in St. Helena, California titled in the name of Larkin and M. Larkin, Trustees of Ocotillo Family Trust, APN 030-050-028-000 |

5. The Estate, M. Larkin, K. Larkin, J. Larkin, Q. Larkin, R. Larkin, and A. Hawkins are deemed to have withdrawn their claims to all Defendant Assets in this consolidated action other than the Returned Estate Assets.

6. If the government elects to make the payment of the Returned Estate Assets, including all interest as identified above, by check, the check shall be payable to the client trust account of counsel designated by the Party identified herein, and mailed in care of such attorney. If the government elects to make the payment by wire transfer, the funds shall be wire transferred to the client trust account of counsel designated by the Party identified herein. Upon request from the government, M. Larkin, through counsel, shall provide the necessary bank account information to complete any such transfer(s).

7. The government shall return the following Defendant Assets to the Parties identified below (the "Returned Lacey Assets"):

| **Asset** | **To Be Returned to:** |
|---|---|
| $601,827.10 seized from or frozen in Republic Bank of Arizona Certificate of Deposit '8316 held in the name of Lacey | Lacey |
| $689,884.48 seized from First Federal Savings & Loan of San Rafael Account 3620 held in the name of Michael Lacey | Lacey |

8. The government also shall return an imputed amount of interest that such currency, instruments, or proceeds identified in paragraph 7 would have earned at the rate applicable to the 30-day

Case 2:18-cr-00422-DJH Document 3209 Filed 07/15/26 Page 6 of 19

Treasury Bill, for any period during which no interest was paid on the returned property, pursuant to 28 U.S.C. 2465(b)(1)(C)(ii).

9. The following assets are hereby dismissed from this action, and all interest earned on any of such dismissed assets shall remain with the principal:

| **Asset** |
|---|
| Real Property Located in San Francisco County, CA titled in the name of Lacey and Alyson Talley, APN Lot 057 Block 008 |
| Real Property Located in Coconino County, AZ titled in the name of Creek Hideaway, LLC, APN 405-06-001B |
| Real Property Located in Sebastopol, California titled in the name of Finca Manzana, APN 076-100-0008-000 |
| Real Property Located in Paradise Valley, AZ titled in the name of Lacey, APN 164-05-122 |
| Real Property Located in San Francisco, CA titled in the name of Lacey, APN Lot 008 Block 0097 |

10. Lacey, Finca Manzana, Creek Hideaway, Casa Bahia, R. Lacey, C. Lacey, and Anderson are deemed to have withdrawn their claims to all Defendant Assets in this consolidated action, other than the Returned Lacey Assets and the Excluded Assets.

11. If the government elects to make the payment of the Returned Lacey Assets, including all interest as identified above, by check, the check shall be payable to the client trust account of counsel designated by the Party identified herein, and mailed in care of such attorney. If the government elects to make the payment by wire transfer, the funds shall be wire transferred to the client

trust account of counsel designated by the Party identified herein. Upon request from the government, Lacey, through counsel, shall provide the necessary bank account information to complete any such transfer(s).

12. This Consent Judgment does not alter the position of any Parties who filed claims to the Excluded Assets or of the government with respect to the Excluded Assets.

13. The government shall return the following Defendant Assets to the Parties identified below (the "Returned Spear Assets"):

| **Asset** | **To Be Returned to:** |
|---|---|
| $260,283.40 in Bank Funds seized from Live Oak Bank account 6910 | Spear |
| $56,902.99 Seized From or Frozen in Ascensus Broker Services 8001 | Spear |
| $64,552.82 in Bank Funds Seized From or Frozen in Ascensus Broker Services 4301 | Spear |
| $75,000 of $404,374.12 in Bank Funds Seized From National Bank of Arizona Account 0178 | Spear |
| $1,925.80 in Bank Funds Seized from National Bank of Arizona Account 0151 held in the name of Spear and Ellona Spear | Spear |

14. The government also shall return an imputed amount of interest that such currency, instruments, or proceeds identified in paragraph 13 would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid on the returned property, pursuant to 28 U.S.C. 2465(b)(1)(C)(ii).

15. Spear is deemed to have withdrawn his claims to all Defendant Assets in this consolidated action other than the Returned Spear Assets.

16. If the government elects to make the payment of the Returned Spear Assets, including all interest as identified above, by check, the check shall be payable to the client trust account of counsel designated by the Party identified herein, and mailed in care of such attorney. If the government elects to make the payment by wire transfer, the funds shall be wire transferred to the client trust account of counsel designated by the Party identified herein. Upon request from the government, Spear, through counsel, shall provide the necessary bank account information to complete any such transfer(s).

17. The government shall return the following Defendant Assets to the Parties identified below (the "Returned Brunst Assets"):

| **Asset** | **To Be Returned to:** |
|---|---|
| $359,527.06 held in Compass Bank Account '3825 held in the name of the Brunst Family Trust | Brunst/Dismissal |

18. The government also shall return an imputed amount of interest that such currency, instruments, or proceeds identified in paragraph 17 would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid on the returned property, pursuant to 28 U.S.C. 2465(b)(1)(C)(ii).

19. The following assets are hereby dismissed from this action, and all interest earned on any of such dismissed assets shall remain with the principal:

| **Asset** |
|---|
| $275,328.00 held in Alliance Bernstein Account '7888 held in the name of the Brunst Family Trust |
| $306,277.00 held in Alliance Bernstein Account '7889 held in the |

| | |
|---|---|
| name of the Brunst Family Trust | |
| $342,596.00 held in Alliance Bernstein Account '7892 held in the name of the Brunst Family Trust | |
| $372,878.00 held in Alliance Bernstein Account '4954 held in the name of the Brunst Family Trust | |
| $527,624.00 Seized from Alliance Bernstein Account '6485 held in the name of the Brunst Family Trust | |

20. As to the $5,848,729.00 Seized from Alliance Bernstein Account '6878 held in the name of the Brunst Family Trust, the Government will use proceeds from the liquidation of that asset to satisfy the full amount of the margin loan owed to Alliance Bernstein by Brunst and/or the Brunst Family Trust and secured by their Alliance Bernstein accounts.

21. Brunst, M. Brunst, and the Brunst Family Trust are deemed to have withdrawn their claims to all Defendant Assets in this consolidated action other than the Returned Brunst Assets.

22. If the government elects to make the payment of the Returned Brunst Assets, including all interest as identified above, by check, the check shall be payable to the client trust account of counsel designated by the Party identified herein, and mailed in care of such attorney. If the government elects to make the payment by wire transfer, the funds shall be wire transferred to the client trust account of counsel designated by the Party identified herein. Upon request from the government, Brunst, through counsel, shall provide the necessary bank account information to complete any such transfer(s).

23. The government agrees to return the following Defendant Assets to the Parties identified below (the "Returned Corporate Assets"):

| Asset | To Be Returned to: |
|---|---|
| $5,193,679.21 in bank funds seized from Bank of the West Account #035-171363 in the name of Rusing Lopez & Lizardi PLLC | Medalist |
| $4,906,320.79 of $5,462,027.17 in bank funds seized from Compass Bank Acct. '3873 held in the name of Cereus Properties, LLC | Medalist |

24. The government also shall return an imputed amount of interest that such currency, instruments, or proceeds identified in paragraph 23 would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid on the returned Corporate Assets, pursuant to 28 U.S.C. 2465(b)(1)(C)(ii).

25. Medalist, Leeward, Camarillo, Vermillion, Cereus, Shearwater, and Broadway shall use the Returned Corporate Assets solely to pay attorneys' fees and costs for counsel to Claimants, which shall not be returned to any Claimant. If any Returned Corporate Assets remain after paying such fees and costs, Medalist, Leeward, Camarillo, Vermillion, Cereus, Shearwater, and Broadway shall return any remainder and forfeit the remainder to the government.

26. Medalist, Leeward, Camarillo, Vermillion, Cereus, Shearwater, and Broadway are deemed to have withdrawn their claims to all Defendant Assets in this consolidated action other than the Returned Corporate Assets.

27. If the government elects to make the payment of the Returned Corporate Assets, including all interest as identified above, by check, the check shall be payable to the client trust account of counsel designated by the Party identified herein, and mailed in care of such attorney. If the government elects to make the payment by wire transfer, the funds shall be wire transferred to the client trust account of counsel designated by the Party identified herein. Upon request from the government, Medalist, through counsel, shall provide the necessary bank account information to complete any such transfer(s).

28. The government shall have judgment as to the Defendant Assets identified in Appendix 1, plus any interest earned by the government on the entirety of the Defendant Assets identified in Appendix 1, which are hereby condemned and forfeited to the United States of America. The government having judgment as to the Defendant Assets identified in Appendix 1, no other person or entity shall have any right, title, or interest therein. The government shall dispose of such assets in accordance with law.

29. The government shall not seek forfeiture of the following property (or the proceeds from the sale of any of the following property) identified and alleged to be subject to forfeiture in United States v. Lacey, et al., D. Az. Case No. 18-cr-422-DJH (the "Criminal Action"):

a. Real property located at 10647 N. State Route 89A, Sedona, AZ 86336;
b. Real property located at 1100 Union Street, Unit 700, San Francisco, CA 94109;
c. Real property located at 2043 Pleasant Hill Road,

Sebastopol, CA 95472;

d. Real property located at 343 Presidio Avenue, San Francisco, CA 94115;

e. Real property located at 3300 East Stella Lane, Paradise Valley, AZ 85253;

f. Real property located at 2416 N. Foote Dr., Phoenix, AZ 85008;

g. Real property located at 3304 E. Stella Lane, Paradise Valley, AZ 85253;

h. Real property located at 3308 E. Stella Lane, Paradise Valley, AZ 85253;

i. Real property located at 3311 E. Stella Lane, Paradise Valley, AZ 85253;

j. Real property located at 6300 N. 33rd Street, Paradise Valley, AZ 85253;

k. Real property located at 6314 N. 33rd Street, Paradise Valley, AZ 85253;

l. Real property located at 5751 N. 77th Place, Scottsdale, AZ 85250;

m. Real property located at 8604 E. San Ardo Dr., Scottsdale, AZ 85258,

n. Real property located at 5830 E. Calle Del Media (Medio), Phoenix, AZ 85018;

o. Real property located at 3353 Red Robin Road, Pinetop, AZ 85935;

p. Real property located at 4931 E. White Gates Drive, Phoenix, AZ 85018;

q. Miscellaneous Artwork seized from Michael Lacey’s

residence located in Paradise Valley, AZ;

r. Miscellaneous Rugs seized from Michael Lacey's residence located in Paradise Valley, AZ;

s. Miscellaneous Artwork seized from Michael Lacey's residence located in Sedona, AZ;

t. Miscellaneous Artwork seized from Michael Lacey's residence located in Sedona, AZ; and

u. Approximately "83 x "57 Navajo weaving with a diamond "Eyedazzler" pattern in red, black, white, orange, yellow, brown, purple, gray and natural white or ivory.

30. The government shall not seek forfeiture of the following funds held or turned over to the government by former or current counsel to certain of the Parties, specifically:

a. $163,612.53 held by former counsel to Padilla, Piccarreta Davis Keenan Fidel PC;

b. $159,072.51 held by former counsel to Vaught, Karp & Weiss PC;

c. $100,000.00 held by counsel to Medalist, Camarillo, and Leeward, Copeland, Franco, Screws & Gill PA;

d. $2,527.06, $24.31, and $25.00 held by counsel to Lacey, Henze, Cook, Murphy PLLC; and

e. $191,246.00 seized from or restrained in Western Alliance Bank account number ending 6979 held in the name of Mitchell Stein Carey Chapman PC.

31. The government shall not seek forfeiture of the following stale/uncashed checks held by Lacey and/or his counsel, or any replacements or substitutions, or any proceeds thereof:

a. Staples Refund check dated 6/12/2018, amount: $714.50;

b. IL Tax Refund check dated 4/13/2018, amount: $10,235.66;

c. The Camby Hotel check dated 4/23/2018, check no. ending '5748, amount: $3,337.54;

d. Fidelity National Title Agency check dated 5/1/2018, check no. ending '2783, amount: $50,000.00;

e. U.S. Treasury check dated 02/26/2018, check no. ending '3477, amount: $637.32; and

f. State of Minnesota check dated 10/09/1019, check no. ending '0883, amount: $13,235.38.

32. The government shall return the Returned Estate Assets, the Returned Lacey Assets, the Returned Spear Assets, the Returned Brust Assets, and the Returned Corporate Assets (collectively, the "Returned Assets") in accordance with 28 U.S.C. § 2465(a)(1). If the government has recorded a *lis pendens* against any of the real property dismissed from this action or as to which it has agreed not to seek forfeiture, it shall record a release of each such *lis pendens* forthwith. The government shall not seek forfeiture of any of the Returned Assets, the assets dismissed from this action or the assets as to which it has agreed not to seek forfeiture (or the proceeds of any of the foregoing) in United States v. Carl Ferrer, D. Az. Case No. 18-cr-464-DJH, or United States v. Backpage.com LLC, et al., D. Az. Case No. 18-cr-465-DJH, and shall seek final orders of forfeiture in those actions that exclude those from forfeiture.

33. This Consent Judgment constitutes final and complete satisfaction of all claims asserted by the government and Claimants, and each of them, as they relate to all Defendant Assets, with the

exception of the Excluded Assets, and the other assets expressly addressed herein.

34. This Consent Judgment is not dispositive of this action as to the Excluded Assets.

35. This Consent Judgment constitutes a certificate of reasonable cause pursuant to 28 U.S.C. § 2465.

36. Each of the Parties shall bear its own attorneys' fees and costs in connection with the seizure, retention, and prosecution of this action relative to the Defendant Assets, with the exception of the Excluded Assets.

IT IS SO ORDERED.

Dated: 12/17/2024

THE HONORABLE R. GARY KLAUSNER
UNITED STATES DISTRICT JUDGE

Presented by:

E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

*/s/ Jonathan Galatzan*
JONATHAN GALATZAN
Chief, Asset Forfeiture & Recovery Section
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

| Appendix 1 | |
|---|---|
| **Asset** | **Original C.D.Cal. Case No.** |
| $251,436.93 In Bank Funds Seized from Republic Bank of Arizona Account 8162 held in the name of Larkin | CV 18-8420 |
| $253,639.96 in U.S. Currency seized from Republic Bank of Arizona account '8189 held in the name of Larkin | CV 18-8420 |
| $34,149,280.00 Seized from Acacia Conservation Fund LP account 2020 held in the name of the Ocotillo Family Trust | CV 18-8420 |
| $501,248.14 In Bank Funds Seized from Republic Bank of Arizona Account 8103 held in the name of Larkin | CV 18-8420 |
| $621,832.06 In U.S. Currency Seized from Perkins Coie Trust Company Account 0012 held in the name of M. Larkin | CV 18-8420 |
| $329,374.12 of $404,374.12 Seized From National Bank of Arizona Account 0178 held in the name of Scott Spear | CV 18-8423 |
| $613,573.28 in Bank Funds Seized from National Bank of Arizona Account 3645 held in the name of Spear and E. Spear Family Trust | CV 18-8423 |
| Real Property Located in San Francisco, CA 2 titled in the name of Case Bahia, APN Lot 029, Block 0563 | CV 18-8551 |
| $555.706.38 of $5,462,027.17 in bank funds seized from Compass Bank Acct. '3873 held in the name of Cereus Properties, LLC | CV 18-8566 |
| $5,848,729.00 Seized from Alliance Bernstein Account '6878 held in the name of the Brunst Family Trust | CV 18-8568 |
| 1,680,028.85 EUROS In Bank Funds Seized from FIO Account -2226 held in the name of the Gold Leaf SRO | CV 18-8569 |
| 60.98 POUNDS in Bank Funds Seized from FIO Account -2231 held in the name of the Gold Leaf SRO | CV 18-8569 |
| 72.87 USD in Bank Funds Seized from FIO Account -2230 held in the name of Gold Leaf SRO | CV 18-8569 |
| Any and all funds seized from Bank Frick account 'K000 E on or about June 1, 2018 held in the name of Ad Tech BV | CV 18-8570 |
| Any and all funds seized from Bank Frick account 'K000 U on or about June 1, 2018 held in the | CV 18-8570 |

| | |
|---|---|
| name of Ad Tech BV | |
| Any and all funds seized from Bank Frick account 'K001 K on or about June 1, 2018 held in the name of Ad Tech BV | CV 18-8570 |
| Any and all funds seized from Bank Frick account 'K000 K on or about June 1, 2018 held in the name of Ad Tech BV | CV 18-8570 |
| 52.65 POUNDS in Bank Funds seized from FIO Account -4198 held in the name of the Protecctio SRO | CV 18-8577 |
| 3,213,937.82 Euros Seized from Fio account 4194 held in the name of the Protecctio SRO | CV 18-8577 |
| 52.90 USD in Bank Funds seized from FIO Account -4196 held in the name of the Protecctio SRO | CV 18-8577 |
| $3,374,918.61 in Bank Funds Seized From Prosperity Bank Acct '7188 | CV 18-8578 |
| $2,412,785.47 Seized From or Frozen in Place at Money Gram Having Originated from Midfirst Bank Account 4139 held in the name of attorney, "J.B." for the benefit of Lacey | CV 18-8579 |
| $302,177.57 seized from or frozen in republic bank of Arizona CDARS account 8324 held in the name of Lacey | CV 18-8579 |
| $305,127.89 seized from or frozen in Republic Bank of Arizona CDARS account 8332 held in the name of Lacey | CV 18-8579 |
| $484,745.72 seized from or frozen in Credit Union account 2523 held in the name of Lacey and Jean K. Warren | CV 18-8579 |
| $500,000.00 seized from Republic Bank of Arizona Account 3126 held in the name of Lacey | CV 18-8579 |
| $515,899.85 seized from Republic Bank of Arizona account '2485 held in the name of Lacey | CV 18-8579 |
| $75,835.31 seized from Republic Bank of Arizona Account 1897 held in the name of Lacey | CV 18-8579 |
| $1,876.36 in Bank Funds from ING Bank '2071 held in the name of Payment Solutions BV | CV 18-8588 |
| $106,988.41 in Bank Funds from ING Bank '2071 held in the name of Payment Solutions BV | CV 18-8588 |
| $248,970.00 in Bank Funds from Citibank NA '0457, held in the name of Paul Hastings LLP | CV 18-8588 |
| $40,000.00 in Funds from Crypto Capital | CV 18-8588 |
| $499,910.01 in Bank Funds from US Bank '0239 held in the name of Affordable Bail Bonds LLC | CV 18-8588 |
| $5,534.54 from Enterprise Bank and Trust '7177 held in the name of Global Trading Solutions LLC | CV 18-8588 |
| $50,000.00 in Bank Funds from Enterprise Bank and Trust '7177 held in the name of Global | CV 18-8588 |

| | |
|---|---|
| Trading Solutions LLC | |
| $50,357.35 in Bank Funds from ING Bank '7684 held in the name of Payment Solutions BV | CV 18-8588 |
| $52,500.00 in Bank Funds from Enterprise Bank and Trust '7177, held in the name of Global Trading Solutions LLC | CV 18-8588 |
| $65,000.00 in Bank Funds from Enterprise Bank and Trust '7177, held in the name of Global Trading Solutions LLC | CV 18-8588 |
| Various Internet Domain Names | CV 18-8592 |
| 458.99 POUNDS Seized from FIO Account -8086 held in the name of the Varicok Company SRO | CV 18-8747 |
| 48.10 USD Seized from FIO Account -8080 held in the name of the Varicok Company SRO | CV 18-8747 |
| 605,976.95 EUROS in Bank Funds Seized from FIO Account -8083 held in the name of the Varicok Company SRO | CV 18-8747 |
| Any and All Funds Seized from Knab Bank Account -7664 held in the name of Procop Services BV | CV 18-8748 |
| Any and All Funds Seized from Rabo Bank Account 2452 held in the name of the Gulietta Group BV | CV 18-8749 |
| Any And All Funds Seized From Rabo Bank Acct. '4721 held in the name of the UniversAds BV | CV 18-8750 |
| 747,664.15 POUNDS from SAXO Payments Account '1262 held in the name of Cashflows Europe Limited | CV 18-8753 |
| Any and All Funds Seized from LHV Pank Account 4431 held in the name of Olist Ou | CV 18-8754 |
| Approximately $182,182.50 seized from Amro Bank N.V. Account 6352 held in the name of Ad Tech BV with Stichting Zencotrust | CV 19-7039 |
| Approximately $23,175.00 in Bank Funds Seized from Plains Capital Bank Account '3939 held in the name of Scheef & Stone, LLP | CV 19-7039 |
| Approximately $11,802.76 in Bank Funds Seized From Citibank Account '6973 held in the name of Schiff Hardin LLP | CV 19-7044 |
| Approximately $518,172.92 seized from Wells Fargo Bank Account 4455 held in the name of Cardquiry | CV 19-7048 |
| Approximately 2.70447488 Bitcoin held in Bitstamp account number 559092120831 | CV 19-9949 |

| | |
|---|---|
| Approximately 3.54986077 Bitcoin Cash Previously Held in Bitstamp Account 559092120831 | CV 19-9949 |
| 136.6544695 Bitcoin surrendered on or about June 15, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 16,310.79413202 Litecoins surrendered on or about April 26, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 173.97319 Bitcoin surrendered on or about April 26, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 199.99995716 Bitcoin surrendered on or about April 6, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 2,673.59306905 Bitcoin Cash surrendered on or about April 26, 2018 | CV 18-8420 |
| 2.00069333 Bitcoin surrendered on or about May 7, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 404.99984122 Bitcoin surrendered on or about April 6, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 411.00019 Bitcoin surrendered on or about April 13, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 509.81904619 Bitcoin Gold surrendered on or about June 21, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 55.50826185 Bitcoin Cash surrendered on or about May 3, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 6 Bitcoin surrendered on or about April 6, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 73.62522241 Bitcoin Cash surrendered on or about June 15, 2018, from a Backpage controlled wallet | CV 18-8420 |
| 783.9735116 Litecoins surrendered on or about June 15,2018, from a Backpage controlled wallet | CV 18-8420 |
| $3,713,121.03 in bank funds seized from Bank of America Acct #000050033414 in the name of Davis Wright Tremaine LLP | D. Az. Case No. 18-cr-465 |
| $2,900,000.00 in bank funds seized from Perkins Coie LLP US Bank Account No. 153555921235 | D. Az. Case No. 18-cr-465 |

**Exhibit 2 - Order for Interlocutory Sale**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>REAL PROPERTY LOCATED IN SAN FRANCISCO, CALIFORNIA,<br>Defendants. | CV 18-8420-RGK (PJWx)<br>No. CV 18-8763-RGK (PJWx)<br><br>**[~~PROPOSED~~] ORDER FOR INTERLOCUTORY SALE OF DEFENDANT REAL PROPERTY LOCATED IN SAN FRANCISCO, CALIFORNIA** |
| MICHAEL G. LACEY<br>Titleholder. | |

For good cause appearing, and upon the parties' stipulation, it is hereby ORDERED that the defendant real property located in San Francisco, California, be sold according to the procedures below:

1. The defendant real property located in San Francisco, California, APN: 0097C011 (the "Union Property"), is to be sold for fair market value, and the net proceeds of the sale, if any, should be substituted for the Union Property as the defendant *res* in this action.

2. An interlocutory sale of the Union Property is appropriate and necessary under Rule G(7)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") in order to preserve the value of the defendant *res* and to minimize expenses associated with keeping and maintaining the Union Property.

3. Due to the expense of keeping and maintaining the property, including tax payments, and Mr. Lacey's inability to pay those expenses, the property is at risk for deterioration, damage or disrepair if it is not sold.

4. The procedures set forth in 28 U.S.C. §§ 2001, 2002 and 2004 (providing for public sale of property under court control) are not reasonable, appropriate or likely to yield the highest price for the Union Property. Because of the high value of the Union Property, the limited and unique nature of the market to which the property can be marketed, and the expertise needed to sell and market real estate of this value and type to the public, the Court orders the interlocutory sale according to the terms described herein.

5. The legal description of the Union Property is:

> Apartment No. 700, as shown on plat attached to that certain document recorded May 19, 2004, Reel I641, Image 533, Official Records, of the improvements situated on the following described property:
>
> Commencing at the point of intersection of the Northerly line of Union Street with the Westerly line of Leavenworth Street and running thence Westerly along said line of Union Street 65 feet; thence at a right angle Northerly 137 feet and 6 inches to the Southerly line of Havens Street; thence Easterly along said line of Havens Street 65 feet to the Westerly line of Leavenworth Street, and thence Southerly along said line of Leavenworth Street 137 feet, 6 inches to the Northerly line of Union Street and the point of commencement.

Being part of 50 Vara Block No. 267. APN: Lot 008, Block 0097.

6. The government has indicated that the Union Property is titled in the name of Michael G. Lacey. Other than the government's *lis pendens*, there are no other recorded interests in the property.

7. The government shall cause the Union Property to be sold at the highest available reasonable price. Within 30 days of taking such custody, possession, and control, the government shall undertake to list for sale to the public the Union Property with the Multiple Listing Service, and/or any other similar form, and shall attempt to procure a ready, willing and able buyer. The listing agent(s) for the Union Property shall be a licensed real estate broker with experience selling properties in the area where the Union Property is located. The listing price of the Union Property shall not be less than $5,000,000. The minimum price to be accepted for the purchase of the Union Property is $5,000,000 unless the parties agree in a signed writing to a lesser amount.

8. At least three days prior to the close of escrow with respect to any attempted sale of the Union Property pursuant to the parties' stipulation, the government shall deliver to the escrow agent a conditional withdrawal of its *lis pendens* recorded against the Union Property. This conditional withdrawal may be recorded only if the terms of this agreement have been completely satisfied. The proceeds of the sale of the Union Property shall be distributed as follows:

a. First, payment to the San Francisco County Tax Collector of all outstanding real property taxes up to the date of closing of escrow;

b. Second, to the extent funds remain, payment of all costs of escrow and sale, including real estate sales commissions and applicable fees triggered by the sale of the Union Property and the government's actual costs incurred in preparing the Union Property for sale (including but not limited to utilities and insurance payments);

c. Third, to the extent funds remain, payment to any management company for any outstanding dues and payment to any home owner's association ("HOA") for all fees due on the Union Property at the time of sale;

d. Fourth, to the extent funds remain, payment to any secured lienholders whose security interests were recorded prior to recording of the government's *lis pendens* in this action;

e. Fifth, to the extent funds remain, payment to the government for any expenses related to the preparation for sale and sale of the Union Property; and

f. Sixth, as to any remaining funds (the "net proceeds"), the parties agree that the net proceeds shall constitute the substitute *res* in place of the Union Property. The net proceeds shall be wired from escrow directly to an interest-bearing account to be designated by the government, where such funds shall be held pending resolution of this forfeiture action. The government shall provide wiring instructions directly to the escrow company handling the sale of the Union Property. Following delivery of the net proceeds to the interest-bearing account, the government shall notify the parties and this Court of the amount that has been deposited as the substitute *res* by filing a notice with the Court.

9. The Court shall retain jurisdiction over the Union Property to effectuate the terms of the sale and resolve any issues or disputes that may arise regarding the interlocutory sale of the property until the sale is concluded.

DATED: January 31, 2020

THE HONORABLE R. GARY KLAUSNER
UNITED STATES DISTRICT COURT JUDGE

Submitted by:

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

*/s/*John J. Kucera
JOHN J. KUCERA
DANIEL G. BOYLE
Assistant United States Attorney
Attorneys for
UNITED STATES OF AMERICA